| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Derrick Talerico (SBN 223763)<br>WEINTRAUB ZOLKIN TALERICO & SELTH LLP<br>11766 Wilshire Blvd., Suite 730<br>Los Angeles, CA 90025<br>Telephone:  424-500-8552<br>Email:  dtalerico@wztslaw.com | |

☐ *Movant(s) appearing without an attorney*
☒ *Attorney for Movant(s)*

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br>SEATON INVESTMENTS, LLC<br><br>Affects:<br>SEATON INVESTMENTS, LLC (2:24-bk-12079-VZ)<br>COLYTON INVESTMENTS, LLC (2:24-bk-12080-VZ)<br>BROADWAY AVENUE INVESTMENTS, LLC (2:24-bk-12081-VZ)<br>SLA INVESTMENTS, LLC (2:24-bk-12082-VZ)<br>NEGEV INVESTMENTS, LLC (2:24-bk-12091-VZ)<br><br>Debtor(s). | CASE NO.: 2:24-bk-12079-VZ (Joint Admin)<br>CHAPTER: 11<br><br>**DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION**<br>**LBR 9013-1(o)(3)**<br><br>[No Hearing Required] |

1. I am the ☐ Movant(s) or ☒ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2. On (*date*): 04/20/2024    Movant(s) filed a motion or application (Motion) entitled: Application of Corporate Chapter 11 Debtors to Employ Weintraub Zolkin Talerico & Selth LLP as General Bankruptcy Counsel

3. A copy of the Motion and notice of motion is attached to this declaration.

4. On (*date*): 04/20/2024    Movant(s), served a copy of ☐ the notice of motion or ☒ the Motion and notice of motion on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5. Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6. More than 23  days have passed after Movant(s) served the notice of motion.

7. I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing was timely filed.

8. No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street address, email address, or facsimile number specified in the notice of motion.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

9.   Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Date: 05/14/2024          /s/ Derrick Talerico _____
                          Signature


                          Derrick Talerico _____
                          Printed name

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1  Derrick Talerico (State Bar No. 223763)
   dtalerico@wztslaw.com
2  David B. Zolkin (State Bar No. 155410)
   dzolkin@wztslaw.com
3  WEINTRAUB ZOLKIN TALERICO & SELTH LLP
   11766 Wilshire Boulevard, Suite 730
4  Los Angeles, CA 90025
   Telephone: (424) 500-8552
5

6
   [Proposed] General Bankruptcy Counsel to
7  Corporate Chapter 11 Debtors and
   Debtors in Possession
8

9

10              **UNITED STATES BANKRUPTCY COURT**

11         **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

12

13  In re:                                    Lead Case No. 2:24-bk-12079-VZ

14  SEATON INVESTMENTS, LLC, *et al.*,        Jointly Administered with Case Nos.:
                                              2:24-bk-12080-VZ; 2:24-bk-12081-VZ;
15              Debtors and Debtors In         2:24-bk-12082-VZ; 2:24-bk-12091-VZ;
                Possession.                    2:24-bk-12074-VZ; 2:24-bk-12075-VZ and
16                                             2:24-bk-12076-VZ

17  ☐ Affects All Debtors.                    Chapter 11

18  ☒ Affects Seaton Investments, LLC         **NOTICE OF APPLICATION OF**
                                              **CORPORATE CHAPTER 11**
19  ☒ Affects Colyton Investments, LLC        **DEBTORS AND DEBTORS IN**
                                              **POSSESSION TO EMPLOY**
20  ☒ Affects Broadway Avenue Investments, LLC **WEINTRAUB ZOLKIN TALERICO &**
                                              **SELTH LLP, AS GENERAL**
21  ☒ Affects SLA Investments, LLC            **BANKRUPTCY COUNSEL**

22  ☒ Affects Negev Investments, LLC

23  ☐ Affects Alan Gomperts                   [No Hearing Set Pursuant to Local
                                              Bankruptcy Rules 2014-1(b) and 9013-1(o)]
24  ☐ Affects Daniel Halevy

25  ☐ Affects Susan Halevy

26

27

28

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**TO THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on April 19, 2024, SEATON INVESTMENTS, LLC, ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev," and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors"), the debtors and debtors-in-possession in the pending jointly administered chapter 11 bankruptcy cases herein (the "Bankruptcy Cases"), filed an application (the "Application") with the United States Bankruptcy Court, Central District of California, Los Angeles Division, for an order authorizing the employment of Weintraub Zolkin Talerico & Selth LLP (the "Firm" or "WZTS") as the Corporate Debtors' general bankruptcy counsel as of March 19, 2024. A copy of the Application is enclosed with this Notice.

The Application seeks to employ the Firm pursuant to section 327(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Central District of California (the "Local Rules"), to perform the following services as the Corporate Debtors' general bankruptcy counsel in connection with the Bankruptcy Cases:

1. Advice concerning the Corporate Debtors' rights, powers, and duties under Sections 1107 and 1108 of the Bankruptcy Code;

2. Advice concerning all general administrative matters in the Bankruptcy Cases and dealings with the Office of the United States Trustee;

3. Representation of the Corporate Debtors at all hearings before the United States Bankruptcy Court involving the Corporate Debtors in their capacity as debtors-in-possession and as reorganized debtors, as applicable, unless the Corporate Debtors are represented in that proceeding or hearing by other/special counsel;

4. Preparation on the Corporate Debtors' behalf, as debtors in possession, of all necessary schedules and amendments thereto, applications, motions, orders and other legal papers;

5. Advice to the Corporate Debtors regarding matters of bankruptcy law, including the Corporate Debtors' rights and remedies with respect to assets of the Estates and creditor claims;

6. Representation of the Corporate Debtors with regard to all contested matters;

7. Representation of the Corporate Debtors in any litigation commenced by, or against,

the Corporate Debtors, provided that such litigation is within the Firm's expertise and subject to a further engagement agreement with the Corporate Debtors on terms acceptable to the Corporate Debtors and the Firm;

8.    Representation of the Corporate Debtors with regard to the negotiation, preparation and implementation of a plan of reorganization;

9.    Analysis of any secured, priority, or general unsecured claims that have been filed in this Bankruptcy Cases;

10.    Negotiation with the Corporate Debtors' secured and unsecured creditors regarding the amount and payment of claims;

11.    Objection to claims as may be appropriate; and

12.    Performance of all other legal services for the Corporate Debtors, in their capacity as debtors in possession, as may be necessary.

**PLEASE TAKE FURTHER NOTICE** that, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, the United States Trustee Guidelines, and this Court's rules, the Corporate Debtors propose to pay the Firm its customary hourly rates in effect at the time services are rendered, and to reimburse actual, necessary expenses incurred by the Firm. As set forth in the Application, the hourly rates range from $450 to $695 per hour for attorneys, and $175 - $250 for practice assistants and paralegals.

**PLEASE TAKE FURTHER NOTICE** that the Application provides specific information as to all funds received by the Firm in contemplation of the Bankruptcy Cases, including: (i) the amount of retainers the Firm received from the Corporate Debtors to compensate the Firm for its legal services and costs, including the filing fee for the Bankruptcy Cases; (ii) the sources of the Prepetition Retainers; (iii) the amounts of fees and costs incurred by the Firm prior to the Petition Date, which amount was paid from the Prepetition retainer; and (iv) the retainer balances for each of the respective Corporate Debtors' held in the Firm's client trust account (the "Chapter 11 Retainers"). The Firm was not owed any money by the Corporate Debtors as of the Petition Date and has not received or will receive any lien or other interest in property of the Corporate Debtors or of a third party to secure payment of the Firm's fees.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Application, the Firm may seek interim compensation during the Bankruptcy Case as permitted by sections 330 and 331 of the

Bankruptcy Code and Bankruptcy Rule 2016.  The Firm understands that its compensation in the Bankruptcy Case will be subject to the approval of the Court.

**PLEASE TAKE FURTHER NOTICE** that the Firm is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and the Firm does not hold or represent any interest adverse to the Debtor's estate, the Debtor, its creditors, the Office of the United States Trustee, or any other party in interest in the Bankruptcy Case.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Rule 2014-1(b)(1), a hearing is not required in connection with the Application unless requested by the United States Trustee, a party in interest, or otherwise ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that, if you do not oppose the proposed employment of the Firm, you need take no further action.  In accordance with Local Rule 2014-1(b)(3)(E), any response and request for hearing, in the form required by Local Rule 9013-1(f)(1), must be filed with the Court and served on the: (i) Corporate Debtors' proposed counsel, whose name and address appears in the upper-left hand corner of this Notice; and (ii) Office of the United States Trustee, Attn: Kelly L. Morrison, Esq., 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017, not later than **14 days** from the date of service of this Notice, plus 3 additional days if you were served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D), (E), or (F).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 9013-l(h), failure to timely file and serve a response or objection may be deemed to constitute consent to the relief requested.  If the objection period expires without the filing of a response and request for hearing, then the Debtor will submit an order for entry by the Court pursuant to Local Rule 9013-1(o)(4)

Dated:  April 19, 2024               **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

                                     By: _/s/ Derrick Talerico_____
                                        Derrick Talerico
                                        [Proposed] General Bankruptcy Counsel for
                                        Corporate Debtors

Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
David B. Zolkin (State Bar No. 155410)
dzolkin@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

[Proposed] General Bankruptcy Counsel to
Corporate Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br>        Debtors and Debtors In Possession.<br><br>---<br><br>☐ Affects All Debtors.<br>☒ Affects Seaton Investments, LLC<br>☒ Affects Colyton Investments, LLC<br>☒ Affects Broadway Avenue Investments, LLC<br>☒ Affects SLA Investments, LLC<br>☒ Affects Negev Investments, LLC<br>☐ Affects Alan Gomperts<br>☐ Affects Daniel Halevy<br>☐ Affects Susan Halevy | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ;<br>2:24-bk-12082-VZ; 2:24-bk-12091-VZ;<br>2:24-bk-12074-VZ; 2:24-bk-12075-VZ and<br>2:24-bk-12076-VZ<br><br>Chapter 11<br><br>**APPLICATION OF CORPORATE CHAPTER 11 DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY WEINTRAUB ZOLKIN TALERICO & SELTH LLP, AS GENERAL BANKRUPTCY COUNSEL; DECLARATION OF DERRICK TALERICO IN SUPPORT THEREOF**<br><br>[No Hearing Set Pursuant to Local Bankruptcy Rules 2014-1(b) and 9013-1(o)] |

-1-
CORPORATE DEBTORS' APPLICATION TO EMPLOY WEINTRAUB ZOLKIN
TALERICO & SELTH LLP AS GENERAL BANKRUPTCY COUNSEL

Seaton Investments, LLC, ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev;" and, collectively with Seaton, Colyton, Broadway, and SLA, the "Corporate Debtors"), the above-captioned corporate chapter 11 debtors and debtors-in-possession, file this application (the "Application") for the entry of an order authorizing the employment of Weintraub Zolkin Talerico & Selth LLP (the "Firm" or "WZTS") as their general bankruptcy counsel in the Corporate Bankruptcy Cases as of March `19, 2024, pursuant to Sections 327 and 1107 of Title 11 of the United States Code (beginning at 11 U.S.C. §§ 101, et seq., the "Bankruptcy Code"), with compensation to be paid to the Firm pursuant to Section 330 of the Bankruptcy Code.

The Corporate Debtors' bankruptcy cases (the "Corporate Bankruptcy Cases") are jointly administered with the above-captioned individual chapter 11 cases (the "Individual Bankruptcy Cases;" and, collectively with the Corporate Bankruptcy Cases, the "Bankruptcy Cases") of Susan Halevy ("Susan" or "Susan Halevy"), Daniel Halevy ("Daniel" or "Daniel Halevy"), and Alan Gomperts ("Alan" or "Alan Gomperts;" collectively with Susan Halevy and Daniel Halevy, the "Individual Debtors;" and collectively with the Corporate Debtors, the "Debtors").

A separate employment application has been filed by the Individual Debtors to employ the firm of Saul Ewing as general bankruptcy counsel in their chapter 11 cases (the "Individual Bankruptcy Cases"; and, collectively with the Corporate Bankruptcy Cases, the "Bankruptcy Cases").

**I.**

**INTRODUCTION**

**A.    The Bankruptcy Cases Background**

On March 18, 2024 (the "Individual Petition Date") the Individual Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court. On March 19, 2024 (the "Corporate Petition Date"), each of the Corporate Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. The Corporate Debtors continue to operate and manage their affairs as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   On April 1, 2024, the Court entered an order approving the joint

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

administration of the Debtors' Bankruptcy Cases. No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in the Corporate Bankruptcy Cases.

**B.    The Debtors' Businesses**

The Individual Debtors are family and operate a family business together. Debtor Susan Halevy is mother to debtor Daniel Halevy and three other non-debtor children, including Sharon Gomperts, wife of debtor Alan Gomperts.

Susan's husband, David Halevy (deceased), together with Daniel and Alan, and on occasion non-debtor Simon Harkham, invest in and operate real estate properties, including Corporate Debtors Seaton, Broadway and SLA. Upon David Halevy's passing in 2023, his interests, to the extent they were not community property, passed to Susan via the Halevy Trust (defined below). As such, Susan Halevy is now the owner – direct, beneficial, equitable, or otherwise – of all interests in the various Corporate Debtors previously owned by David Halevy.

The Bankruptcy Cases present two real estate investments that require a restructuring to address defaults on their senior loans: (1) the buildings at 440 Seaton Street, Los Angeles, CA, 90013 (the "Seaton Building"), and 421 Colyton Street, Los Angeles, CA, 90013 (the "Colyton Building"), which together are operated as an economic unit (the "Seaton/Colyton Buildings") and are owned by Corporate Debtors Seaton and Colyton, respectively; and (2) the building at 737 S. Broadway, Los Angeles, CA, 90014 (the "Broadway Building"), owned by Corporate Debtor Broadway.

The Individual Debtors have each jointly and severally guaranteed (1) certain debt owed to KDM California LLC ("KDM") on account of KDM's $37.1 million in principal amount loaned jointly to Seaton and Colyton and secured by the Seaton/Colyton Buildings, and (2) approximately $19.1 million of loans made by Archway Capital ("Archway") on account of the Broadway Building (the "Broadway Loans"). The Individual Debtors' guaranty liability to Archway is bifurcated into secured and unsecured tranches. Approximately $15 million of Archway's Broadway Loans are made directly to Broadway and guaranteed by the Individual Debtors without collateral. Approximately $4 million of Archway's Broadway Loans are made pursuant to three

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

loans to related entities or groups and are secured by pledges of various real properties owned by the Individual Debtors, 1040 S. Los Angeles Street, Los Angeles, CA (owned and pledged by SLA), and 12800 Foxdale Drive, Desert Hot Springs, CA (owned and pledged by Negev).

Archway has commenced an action against the Individual Debtors where it has sought pre-judgment writs of attachment against Daniel Halevy and Alan Gomperts. Archway has also commenced foreclosure proceedings against the properties owned by the Individual Debtors, SLA, and Negev to recover on their guarantees and collateral. KDM has commenced an action against Seaton and Colyton for appointment of a receiver.

## II.

## PROPOSED EMPLOYMENT AND QUALIFICATIONS OF THE FIRM

### A.    Services to be Performed

Subject to the approval of the Court, Sections 327 and 1107 of the Bankruptcy Code authorize a debtor, as debtor in possession, to employ counsel at the expense of the bankruptcy estate.  The Corporate Debtors require experienced bankruptcy counsel to represent them in matters before the Court and to assist them in reorganizing their financial affairs in the Corporate Bankruptcy Cases. Specifically, the Corporate Debtors anticipate that the following services will be required by them during the pendency of the Corporate Bankruptcy Cases (collectively, the "Services"):

1. Advice concerning the Corporate Debtor's rights, powers, and duties under Sections 1107 and 1108 of the Bankruptcy Code;

2. Advice concerning all general administrative matters in the Corporate Bankruptcy Cases and dealings with the Office of the United States Trustee;

3. Representation of the Corporate Debtors at all hearings before the United States Bankruptcy Court involving the Corporate Debtors in their capacities as debtors-in-possession and as reorganized debtors, as applicable, unless the Corporate Debtors are represented in that proceeding or hearing by other/special counsel;

4. Preparation on the Corporate Debtors' behalf, as debtor's-in-possession, of all necessary schedules and amendments thereto, applications, motions, orders and other

legal papers;

5.  Advice to the Corporate Debtors regarding matters of bankruptcy law, including the Corporate Debtors' rights and remedies with respect to assets of their bankruptcy estates (the "<u>Estates</u>") and creditor claims;

6.  Representation of the Corporate Debtors with regard to all contested matters;

7.  Representation of the Corporate Debtors in any litigation commenced by, or against, them, provided that such litigation is within the Firm's expertise and subject to a further engagement agreement with the Corporate Debtors on terms acceptable to them and the Firm;

8.  Representation of the Corporate Debtors with regard to the negotiation, preparation and implementation of one or more plans of reorganization;

9.  Analysis of any secured, priority, or general unsecured claims that have been filed in the Corporate Bankruptcy Cases;

10. Negotiation with the Corporate Debtors' secured and unsecured creditors regarding the amount and payment of claims;

11. Objection to claims as may be appropriate; and

12. Performance of all other legal services for the Corporate Debtors in their capacities as debtors-in-possession, as may be necessary.

**B.    <u>Qualifications of The Firm</u>**

The Corporate Debtors believe the Firm is well-qualified to render the Services. The Corporate Debtors selected the Firm to represent it in the Corporate Bankruptcy Cases because of the Firm's extensive experience and knowledge in the fields of corporate reorganization and bankruptcy law. The Corporate Debtors' Engagement Letters with the Firm are attached to the Declaration of Derrick Talerico (the "Talerico Decl.") as **<u>Exhibit 1</u>**. All attorneys comprising, or associated with, the Firm are admitted to practice law in all California courts and before the United States District Court for the Central District of California. The attorneys employed by the Firm have confirmed numerous chapter 11 plans for businesses and individuals. The attorneys primarily responsible for representing the Corporate Debtors, and their current standard hourly rates, are: Derrick Talerico,

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Partner, $625 per hour; David Zolkin, Partner, $650 per hour. CV's for the primary professionals anticipated to provide services are attached as **Exhibit 2** to the Talerico Decl.

Accordingly, the Firm possesses the requisite expertise and background to handle all matters that are likely to arise in the Corporate Bankruptcy Cases.  The Corporate Debtors therefore believe that employment of the Firm on the terms and conditions set forth in this Application is in the best interests of the Corporate Debtors and the creditors of their Estates.

### C.    The Firm is "Disinterested" and Does Not Hold an Adverse Interest

Except to the extent set forth in the attached *Declaration of Derrick Talerico*, to the best of the Firm's knowledge, after full investigation:

1.   The Firm does not hold or represent any interest adverse to the Corporate Debtors or the Estates;

2.   Other than the services provided by the Firm to the Debtors prepetition in an effort to settle the matters with their lenders that are addressed above and in connection with the preparation for the Bankruptcy Case, the Firm has no prior connection with the Corporate Debtor or any creditor of the Estates;

3.   The Firm has no prior connection with any insiders of the Corporate Debtors, any entities disclosed to the Firm to be related to the Corporate Debtors, any creditors of the Corporate Debtors, or any other party in interest in the Corporate Bankruptcy Cases or their respective attorneys or accountants, the United States Trustee, or any person employed by the United States Trustee; and

4.   None of the professionals, paraprofessionals, or other employees comprising or employed by the Firm are related to any judge of the United States Bankruptcy Court for the Central District of California, to the United States Trustee, or any employee of the United States Trustee.

Accordingly, the Firm is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

### D.   Interdebtor Claims

Claims exist among the Corporate Debtors. These claims were created within the ordinary

course of the Corporate Debtors' business management and are disclosed in the Schedules filed by the Corporate Debtors in their respective Bankruptcy Cases. The Corporate Debtors intend to file full-pay plans pursuant to a joint plan with the Individual Debtors, and will likely cancel intercompany debts through the joint plan.

If a dispute arises between the Corporate Debtors regarding any intercompany claims, or apportion of their joint and several liability, the Corporate Debtors will be advised to consider retainer special counsel to handle the dispute on behalf of each of the Corporate Debtors. Likewise, if a similar dispute results in litigation between any of the Corporate Debtors, the Firm will not represent any party to the dispute, and the Debtors will need to retain special counsel to represent each party involved in the dispute.

Courts have repeatedly held that there is no *per se* rule against representation of multiple entities that may have claims against one another. *See*, *In re Easterday Ranches, Inc.*, 647 B.R. 236, 245 (Bankr. E.D.Wash. 2022) ("The concurrent representation of affiliated debtors with potential intercompany claims against each other is not a categorical bar to court approval of common counsel or other professionals for joint debtors."); *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991) (holding that courts must take a "flexible" approach in considering employment of professionals and that "the existence of interdebtor claims is ... no longer an automatic ground for disqualification of counsel ... "); *In re International Oil Co.,* 427 F.2d 186**,** 187 (2nd Cir. 1970) (existence of intercompany claims was not "sufficient to saddle ... estates [of four affiliated corporations] with the expense of separate [counsel]"); *In re Star Broadcasting,* 81 B.R. 835, 844 (Bankr. D.N.J. 1988); *In re Robert,* 75 B.R. 402, 405-06 (D. Utah 1987).

> As the Collier treatise explains, in the face of such proposed representation, 'courts should examine the factual circumstances surrounding the representation to determine whether it is appropriate,' including the details of the potential conflict and any structural checks on the potential conflict evolving to the level of an actual conflict.

*Easterday Ranches, supra (*citing *3 Collier on Bankruptcy* ¶ 327.04[5][a] (16th ed. rev. 2022)).

In determining disinterestedness of an estate professional, courts must engage in a fact-specific inquiry taking into account the totality of the circumstances present. *See e.g.*, *In Re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008), *affirming* 355 B.R. 139, 151-152 (9th Cir. BAP 2006)

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

(affirming this Court's disqualification of chapter 7 trustee because of her relationship and prior representation of insider of the corporate debtor and his domestic partner who was an investor and limited partner of the debtor, because both had a direct interest in, or adverse interest to, the debtor at the time the trustee represented them); *also see Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 739-40 & n.10 (9th Cir. BAP 2006) (holding that where no *per se* disqualification exists, "the inquiry into whether the professional holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case and fact-specific.").

Here, Seaton and Colyton own adjacent property that together form a commercial real estate project that is operated as a single economic unit. Seaton and Colyton share financing as co-borrowers from the same secured creditor (KDM). SLA, Negev, and the Individual Debtors took loans from the Broadway secured creditor (Archway) to aid in the support and earlier restructure of the Archway loan to Broadway. The Archway and KDM loans and related obligations are all impacted by guaranties and/or pledges of collateral by the Individual Debtors. As set forth herein, the Individual Debtors operate a family business that includes the ownership, development, and operation of the Corporate Debtors. Much of the debt across the Debtors is joint and several in nature. All of the Debtors share a common goal of confirming a full-pay plan with plan payments to the Corporate Debtor creditors to be supported by the Individual Debtors. There is currently no conflict among the Debtors as to their goals and approach to the Bankruptcy Cases. Because of the interrelated restructuring plan, it would be prohibitively expensive and unnecessarily cumbersome for the Corporate Debtors to each retain separate counsel. Such separate representations would duplicate costs on account of administration, coordination among counsel, motion practice, and hearing appearances that would result in tens if not hundreds of thousands of dollars in additional legal expense for no tangible benefit.

### III.

### RETAINERS AND COMPENSATION PROCEDURES

This Application is brought in accordance with Bankruptcy Code Sections 327, Federal Rule of Bankruptcy Procedure 2014 and Local Bankruptcy Rule 2014-1(b).  For its services, and in

CORPORATE DEBTORS' APPLICATION TO EMPLOY WEINTRAUB ZOLKIN
TALERICO & SELTH LLP AS GENERAL BANKRUPTCY COUNSEL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

accordance with its Engagement Letter with the Corporate Debtors, the Firm has agreed to be employed and compensated subject to the provisions of the Bankruptcy Code, including without limitation, Section 330.  All fees and expenses for the Firm's services shall be compensated at the Firm's ordinary and customary hourly billing rates (billed in increments of tenths of an hour), which may be subject to adjustment from time to time, plus expenses.  The ordinary and customary hourly billing rates of the Firm, at the time of this Application, are set forth in the Firm's Engagement Letter.

The Firm understands the provisions of Bankruptcy Code Sections 327, 330, and 331 of the Bankruptcy Code, which require, among other things, Court approval of the Corporate Debtors' employment of the Firm and of all fees and reimbursement of expenses that the Firm will receive from the Estates for its services.  In compliance with Sections 330 and 331 of the Bankruptcy Code, the Firm intends to file applications for allowance of fees and reimbursement of costs as and when appropriate but will file interim fee applications not more frequently than once every four (4) months that the Corporate Bankruptcy Cases are pending.

The Firm began advising Seaton, Colyton, and Broadway on or about November 2023 and SLA and Negev on or about February 2024.  The Corporate Debtors provided the Firm with prepetition retainers (the "Prepetition Retainers") as set forth in the chart below.  Each of the Prepetition Retainers was paid to the Firm to compensate it for its legal services and costs, including the filing fees for the Corporate Bankruptcy Cases.  Prior to the Petition Date, the Firm incurred and drew down from the Prepetition Retainers the amounts as also set forth in the chart below, leaving Prepetition Retainer balances as of the Petition Date in the amounts set forth in the chart below.

| Corporate Debtor | Prepetition Retainer Paid to the Firm | Amount of Prepetition Retainer Drawn Down Prepetition | Balance of Prepetition Retainer Remaining as of Petition Date |
|---|---|---|---|
| Seaton | $65,000.00 | $29,686.50 | $35,313.50 |
| Colyton | $65,000.00 | $29,686.50 | $35,313.50 |
| Broadway | $40,000.00 | $25,334.50 | $14,665.50 |
| SLA | $20,000.00 | $3,002.00 | $16,998.00 |
| Negev | $10,000.00 | $2,983.00 | $7,017.00 |

CORPORATE DEBTORS' APPLICATION TO EMPLOY WEINTRAUB ZOLKIN
TALERICO & SELTH LLP AS GENERAL BANKRUPTCY COUNSEL

The sources of the Prepetition Retainers were as follows:

- Seaton: Seaton Investments, LLC

- Colyton: Seaton Investments, LLC

- Broadway: Commune Events, Inc.

- SLA: Commune Events, Inc.

- Negev: Commune Events, Inc.

The Firm was not owed any money by any Corporate Debtor as of the Petition Date. The Firm will draw down on the Prepetition Retainers in accordance with the Guide to Applications for Retainers, and Professionals and Insider Compensation ("Fee Guide"), promulgated by the Office of the United States Trustee, except that the Prepetition Retainers will be maintained in the Firm's attorney-client trust account. The Firm will submit a monthly Professional Fee Statement each month until the Prepetition Retainers are exhausted. This Professional Fee Statement procedure is appropriate in these Corporate Bankruptcy Cases because the work anticipated to be performed is significant, especially for a smaller firm such as the Firm. Waiting extensive periods for approval of interim fee applications would be an undue hardship for the Firm. Furthermore, to the extent any reassessment of fees is ordered by the Court, the Firm can respond accordingly.

During the Corporate Bankruptcy Cases, the Firm will seek Court authority to be paid by the Corporate Debtors for any and all fees incurred and expenses advanced by the Firm in its representation of them. All such fees and costs will be subject to review by the Court pursuant to one or more fee applications filed by the Firm.

## IV.

## CONCLUSION

**WHEREFORE**, the Corporate Debtors request that the Court enter an order:

1.      Granting the Application;

2.      Authorizing the Corporate Debtors, based upon the foregoing and pursuant to Bankruptcy Code Sections 327 and 1107, and in accordance with Federal Rule of Bankruptcy Procedure 2014(a) and Local Bankruptcy Rule 2014-1(b)(1), to employ the Firm as their general

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-10-

1  bankruptcy counsel in the Corporate Bankruptcy Cases, effective as of the Petition Date, with

2  compensation in such amount as the Court may hereafter allow in accordance with the law, on the

3  terms set forth above; and

4      3.      Granting such other and further relief as this Court deems just and proper under the

5  circumstances.

6

7  Dated: April 19, 2024                    SEATON INVESTMENTS, LLC

8

9                                           By: _____
10                                               Name: Alan Gomperts
11                                               Title: Managing Member

12

13  Dated: April 19, 202                     COLYTON INVESTMENTS, LLC

14

15                                           By: _____
16                                               Name: Alan Gomperts
17                                               Title: Authorized Representative

18

19

20

21

22

23

24

25

26

27

28

CORPORATE DEBTORS' APPLICATION TO EMPLOY WEINTRAUB ZOLKIN
TALERICO & SELTH LLP AS GENERAL BANKRUPTCY COUNSEL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1    Dated: April 19, 2024                    BROADWAY AVENUE INVESTMENTS, LLC

2

3

4                                            By: _____
                                                 Name: Alan Gomperts
5                                                Title: Manager

6

7    Dated: April 19, 2024                    SLA INVESTMENTS, LLC
8

9

10                                           By: _____
                                                 Name: Alan Gomperts
11                                               Title: Manager

12

13   Dated: April 19, 2024                    NEGEV INVESTMENTS, LLC

14

15

16                                           By: _____
                                                 Name: Alan Gompertz
17                                               Title: Authorized Representative

18   Presented by:

19   **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

20

21   By: /s/ Derrick Talerico
22       Derrick Talerico
         [Proposed] General Bankruptcy Counsel to
23       Corporate Debtors and Debtors-in-Possession

24

25

26

27

28

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## DECLARATION OF DERRICK TALERICO

I, Derrick Talerico, hereby declare as follows:

1.      I am an attorney duly admitted to practice law in the state of California and am admitted inter alia to the United States District Court for the Central District of California, and therefore to practice in the United States Bankruptcy Court for the Central District of California.  I have personal knowledge of the facts stated herein and knowledge based on business records of my law practice and of my law firm Weintraub Zolkin Talerico & Selth LLP (the "Firm")

2.      I submit this Declaration in support of the *Application of Corporate Chapter 11 Debtors and Debtors in Possession to Employ Weintraub Zolkin Talerico & Selth LLP, as General Bankruptcy Counsel* filed by Seaton Investments, LLC, ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev"; and, collectively with Seaton, Colyton, Broadway, SLA and Negev, the "Corporate Debtors"), the above-captioned corporate chapter 11 debtors and debtors-in-possession whose bankruptcy cases (the "Corporate Bankruptcy Cases").

3.      The Corporate Bankruptcy Cases are jointly administered with one another, as well as with the chapter 11 cases (the "Individual Bankruptcy Cases"; and, collectively with the Corporate Bankruptcy Cases, the "Bankruptcy Cases") of the following individuals who are insiders of the Debtors: Susan Halevy ("Susan" or "Susan Halevy"), Daniel Halevy ("Daniel" or "Daniel Halevy"), and Alan Gomperts ("Alan" or "Alan Gomperts"; collectively with Susan Halevy and Daniel Halevy, the "Individual Debtors"; and collectively with the Corporate Debtors, the "Debtors").

4.      In November 2024, the Firm and I were engaged and retained by Seaton, Colyton, and Broadway to represent them in the work out of their indebtedness to secured lenders.  Subsequently, the Debtors determined it necessary to file the Bankruptcy Cases. After having considered the Debtors' interconnections, the Firm determined that it would be

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

appropriate for it to represent the Corporate Debtors in their bankruptcies. The Firm began representing SLA and Negev in February 2024.

5.      On March 19, 2024 (the "Petition Date"), the Firm, on each of the Corporate Debtors' behalf, filed petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition"). It is anticipated that the Firm will be required to render the following services during the Corporate Bankruptcy Cases (the "Services"):

a.      Advice concerning the Corporate Debtors' rights, powers, and duties under Sections 1107 and 1108 of the Bankruptcy Code;

b.      Advice concerning all general administrative matters in the Corporate Bankruptcy Cases and dealings with the Office of the United States Trustee;

c.      Representation of the Corporate Debtors at all hearings before the Court involving the Corporate Debtors in their capacities as debtors in possession and as reorganized debtors, as applicable, unless the Corporate Debtors are represented in that proceeding or hearing by other/special counsel;

d.      Preparation on the Corporate Debtors' behalf, as debtors in possession, of all necessary schedules and amendments thereto, applications, motions, orders, and other legal papers;

e.      Advice to the Corporate Debtors regarding matters of bankruptcy law, including the Corporate Debtors' rights and remedies with respect to assets of the Estates and creditor claims;

f.      Representation of the Corporate Debtors with regard to all contested matters;

g.      Representation of the Corporate Debtors in any litigation commenced by, or against, the Corporate Debtors, provided that such litigation is within the Firm's expertise and subject to a further engagement agreement with the Corporate Debtors on terms acceptable to the Corporate Debtors and the Firm;

h.      Representation of the Corporate Debtors with regard to the negotiation, preparation, and implementation of a plan of reorganization;

i.      Analysis of any secured, priority or general unsecured claims that have been filed in the Corporate Bankruptcy Cases;

j.      Negotiation with the Corporate Debtors' secured and unsecured creditors regarding

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

the amount and payment of claims;

k.    Objection to claims as may be appropriate; and

l.    Performance of all other legal services for the Corporate Debtors, in their capacities as debtors in possession, as may be necessary.

6.    The Firm is well qualified for the type of representation required by the Corporate Debtors. The attorneys employed by the Firm have confirmed numerous chapter 11 plans for businesses and individuals. All attorneys comprising, or associated with, the Firm are admitted to practice law in all California courts and before the United States District Court for the Central District of California.  The Corporate Debtors' Engagement Letters with the Firm are attached hereto as **Exhibit 1**. The attorneys primarily responsible for representing the Corporate Debtors, and their current standard hourly rates, are: Derrick Talerico, Partner, $625 per hour; David Zolkin, Partner, $650 per hour. CV's for the primary professionals anticipated to provide services to the Corporate Debtors, including Martha Araki, Paralegal, $250 per hour, are attached hereto as **Exhibit 2**. Among other qualifications, my partners and I have served as general bankruptcy counsel to debtors in numerous chapter 11 cases.  We also have decades of experience representing other parties in interest in insolvency proceedings, including without limitation, creditors, creditors' committees and bankruptcy trustees. The Firm possesses the requisite expertise and background to handle all matters that are likely to arise in the Corporate Bankruptcy Cases.

7.    To the best of my knowledge, after full investigation,

a.    The Firm does not hold or represent any interest adverse to the Corporate Debtors or the Estates;

b.    Other than the services provided by the Firm to the Corporate Debtors prepetition in connection with the preparation for the Corporate Bankruptcy Cases and to the Debtors in connection with precipitating litigation, the Firm has no prior connection with the Debtors or any of the Debtors' creditors;

c.    Except as explicitly set forth in the Application and this Declaration, the Firm has no prior connection with any insiders of the Corporate Debtors, any entities disclosed to the Firm to

-15-

be related to the Corporate Debtors, any creditors of the Corporate Debtors, or any other party in interest in the Corporate Bankruptcy Cases or their respective attorneys or accountants, the United States Trustee, or any person employed by the United States Trustee; and

d. None of the professionals, paraprofessionals, or other employees comprising or employed by the Firm are related to any judge of the United States Bankruptcy Court for the Central District of California, to the United States Trustee, or any employee of the United States Trustee.

8. The Application is brought in accordance with Bankruptcy Code Section 327, Federal Rule of Bankruptcy Procedure 2014 and Local Bankruptcy Rule 2014-1(b). For its services, the Firm has agreed to be compensated subject to the provisions of Bankruptcy Code Section 330.

9. The Firm's services are to be compensated at the Firm's ordinary and customary hourly billing rates (billed in increments of tenths of an hour), plus expenses. The ordinary and customary hourly billing rates of the Firm, at the time of this Application, are set forth in an attachment to the Firm's Engagement Letter with the Corporate Debtors. These hourly rates are subject to periodic adjustments to reflect economic and other conditions. The Firm will maintain detailed records of any actual and necessary costs incurred in connection with the Services.

10. I understand the provisions of Sections 327, 330, and 331 of the Bankruptcy Code, require, among other things, Court approval of the Corporate Debtors' employment of the Firm and of all fees and reimbursement of expenses that the Firm will seek to be paid from the Estates for its services. In compliance with Sections 330 and 331 of the Bankruptcy Code, the Firm intends to file applications for allowance of fees and reimbursement of costs as and when appropriate, but will file interim fee applications not more frequently than once every four (4) months that the Corporate Bankruptcy Cases are pending.

11. The Firm began advising Seaton, Colyton, and Broadway on or about November 2023 and SLA and Negev on or about February 2024. The Corporate Debtors provided the Firm with prepetition retainers (the "Prepetition Retainers") as set forth in the chart below. Each of the Prepetition Retainers was paid to the Firm to compensate it for its legal services and costs, including the filing fees for the Corporate Bankruptcy Cases. Prior to the Petition Date, the Firm incurred and drew down from the Prepetition Retainers the amounts as also set forth in the chart below, leaving

-16-

Prepetition Retainer balances as of the Petition Date in the amounts set forth in the chart below.

| Corporate Debtor | Prepetition Retainer Paid to the Firm | Amount of Prepetition Retainer Drawn Down Prepetition | Balance of Prepetition Retainer Remaining as of Petition Date |
|---|---|---|---|
| Seaton | $65,000.00 | $29,686.50 | $35,313.50 |
| Colyton | $65,000.00 | $29,686.50 | $35,313.50 |
| Broadway | $40,000.00 | $25,334.50 | $14,665.50 |
| SLA | $20,000.00 | $3,002.00 | $16,998.00 |
| Negev | $10,000.00 | $2,983.00 | $7,017.00 |

The sources of the Prepetition Retainers were as follows:

- Seaton: Seaton Investments, LLC

- Colyton: Seaton Investments, LLC

- Broadway: Commune Events, Inc.

- SLA: Commune Events, Inc.

- Negev: Commune Events, Inc.

12.    The Firm was not owed any money by any Corporate Debtor as of the Petition Date. The Firm will draw down on the Prepetition Retainers in accordance with the Guide to Applications for Retainers, and Professionals and Insider Compensation ("Fee Guide"), promulgated by the Office of the United States Trustee, except that the Prepetition Retainers will be maintained in the Firm's attorney-client trust account. The Firm will submit a monthly Professional Fee Statement each month until the Prepetition Retainers are exhausted. This Professional Fee Statement procedure is appropriate in these Corporate Bankruptcy Cases because the work anticipated to be performed is significant, especially for a smaller firm such as the Firm. Waiting extensive periods for approval of interim fee applications would be an undue hardship for the Firm. Furthermore, to the extent any reassessment of fees is ordered by the Court, the Firm can respond accordingly.

13.    The Firm was not owed any money by any Corporate Debtor as of the Petition Date. During the Corporate Bankruptcy Cases, the Firm will seek Court authority to be paid by the

CORPORATE DEBTORS' APPLICATION TO EMPLOY WEINTRAUB ZOLKIN
TALERICO & SELTH LLP AS GENERAL BANKRUPTCY COUNSEL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Corporate Debtors for any and all fees incurred and expenses advanced by the Firm in its representation of them.  All such fees and costs will be subject to review by the Court pursuant to one or more fee applications filed by the Firm.

14.    The Firm has not shared or agreed to share any compensation to be received by it in the Bankruptcy Case with any other person, except as among partners of the Firm.

15.    The Firm's services are necessary to enable the Corporate Debtors to execute their duties as debtors in possession and to accomplish their goals of reorganization.

16.    I believe that authorizing the Corporate Debtors to employ the Firm is in the best interests of the Estates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19th day of April, 2024, at Los Angeles, California.


_/s/ Derrick Talerico_____
Derrick Talerico

-18-
CORPORATE DEBTORS' APPLICATION TO EMPLOY WEINTRAUB ZOLKIN
TALERICO & SELTH LLP AS GENERAL BANKRUPTCY COUNSEL

# EXHIBIT 1

# Engagement Letters

EXHIBIT 1 - Page 19



Derrick Talerico
424-500-8552
*dtalerico@wztslaw.com*

File No.:

March 12, 2024

<u>VIA EMAIL ONLY</u>
Seaton Investments, LLC
Attn: Alan Gomperts
Email: alangomperts@hotmail.com

      Re:     WZTS Chapter 11 Engagement Agreement

Dear Alan:

     This letter constitutes a formal agreement whereby Seaton Investments LLC ("Client" or "you"), is retaining the law offices of Weintraub Zolkin Talerico & Selth LLP ("WZTS" or "firm") to represent it in a bankruptcy filing under Chapter 11 of the United States Bankruptcy Code. By signing this agreement, you are hiring WZTS to help you with the legal matter described herein.

     This letter details the scope of your engagement of the firm, it describes how we calculate our charges and how the charges are paid, and it sets forth important information about the attorney/client relationship. In addition, this letter provides you with an introduction to some of the rules of Chapter 11.

## I.

## SCOPE OF REPRESENTATION

     WZTS has agreed to provide you with legal services and you hereby agree to pay fees and costs related to those services. Specifically, you have requested that the Firm perform the following services on your behalf:

- advise you regarding the requirements and procedures of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, U.S. Trustee Guidelines and Local Bankruptcy Rules, that might affect you in a Chapter 11 bankruptcy;
- assist you in preparing and filing the Petition, Schedules, Statement of Financial Affairs and other documents required to commence the bankruptcy case;
- represent you in the bankruptcy case including efforts to formulate and confirm a Chapter 11 plan in the bankruptcy case.

WZTS has not agreed to perform any services on your behalf beyond those described above. Unless

Seaton Investments, LLC
March 12, 2024
P a g e | 2

the scope of this engagement is hereafter expressly expanded pursuant to a supplemental letter or
email from the firm to you specifically describing the additional services to be performed, the scope
of the engagement is limited to the performance of the above-described services.

<u>Joint Representation and Waiver of Possible Conflict</u>.

The Firm is concurrently being engaged by Seaton Investments, LLC, Colyton
Investments, LLC, Broadway Investments, LLC, SLA Investments, LLC, and Negev
Investments, LLC (together, the "Debtors") for the scope of services described above.

An important aspect of a joint representation is its effect on the attorney-client privilege
and the confidentiality of information related to the representation. In general, a lawyer is
required to keep each client informed of the proceedings and the subject matter of the
representation so that each client can make informed decisions. At the same time, lawyers are
also required to not disclose client confidences. However, when a lawyer represents multiple
clients in a single matter or in related matters, the lawyer cannot simultaneously reveal important
information to one client that was obtained from another client and still keep the information
confidential.

The Firm cannot effectively represent each of the Debtors if we must preserve in
confidence without disclosure to one of you the material information disclosed to us by the other
relating to the engagement. Therefore, our agreement to represent you jointly is subject to the
express condition and understanding that any material information related to the engagement that
either of you discloses to the Firm, may be disclosed to the other Debtors if the Firm determines,
in the exercise of its independent professional judgment, that knowledge of such information
would be necessary for such other Debtor to make informed decisions regarding the engagement.
This does not mean that anyone else (i.e., any third party) can gain access to such
communications. Indeed, the privilege protecting the confidentiality of such communications
would remain fully intact vis-a-vis third parties. Moreover, any of the Debtors would be able to
waive that privilege without the consent of all of the Debtors.

At present, there does not appear to be any difference of opinion among the Debtors with
respect to the basic terms of this engagement. However, on further consultation, it may turn out
that the Debtors have differing opinions regarding the terms of the engagement, or regarding the
means by which the Firm's representation will be carried out. If we or any of the Debtors
determine that there are material differences on one or more issues that cannot be resolved
amicably or on terms compatible with the mutual best interests of the Debtors, then the Debtors
and the Firm agree to discuss whether the issues can be resolved through contemporaneous
consents by the Debtors, or whether we must withdraw from representing one or more of the
Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from
representing one or more of the Debtors for the reasons set forth in this paragraph, you
agree that the Firm may terminate this agreement and cease its representation hereunder
as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Seaton Investments, LLC
March 12, 2024
P a g e | 3

At present, there does not appear to be any conflict between the Debtors' interests concerning this engagement. However, as the engagement progresses, one or more conflicts could develop. If we or any of the Debtors determine that there are material conflicts between them that cannot be resolved amicably or on terms compatible with the mutual best interests of each of the Debtors, the Debtors and the Firm agree to discuss whether the conflicts can be resolved, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Your signatures below confirm that notwithstanding these disclosures and any existing or potential conflicts of interest which exist or may come into existence and you knowingly make the following acknowledgments and waivers:

(i)     you consent to the Firm's representation of each of the Debtors in the above-referenced matter;

(ii)    you acknowledge and agree that at no time will such representation of the Debtors be construed, claimed or deemed to be a breach of any fiduciary relationship, a conflict of interest or a violation of any other obligation to you, arising out of or relating to such representation;

(iii)   you agree that you shall not claim or contend that the Firm should be or is disqualified from representing any other Debtor in connection with the above-referenced matters or other foreseeable matters including defense or negotiation of claims made by other parties or insolvency proceedings by one or more of the Debtors, now or in the future;

(iv)    **Current and Advance Waiver: you understand that you may have now or in the future certain adverse claims against one or more of the other Debtors relating to liability to common creditors and hereby (a) waive such current conflicts and; and (b) make an advance waiver of such future conflicts;**

## II.

## FEES, COSTS, BILLS AND RETAINERS

Our goal is to charge a reasonable fee for the work we do. We want you to feel comfortable knowing that whenever you call, regardless of the legal problem, you will get quality work at a fair price or a referral to someone with the same concern for quality and fairness. That process begins with a detailed explanation of our billing procedures so that you can read and understand our bills.

Seaton Investments, LLC
March 12, 2024
P a g e | 4

    The WZTS billing process was designed to give you detailed information about what we are doing, who is doing the work, how much time is spent, the rates being charged and the incidental expenses being incurred.  There are two types of charges which appear in different sections on our bills: "fees" and "costs."  Fees are what you pay for professional time spent working on your case.  The time of each professional is multiplied by the hourly rate for that professional. The totals are then added.  Costs are out of pocket expenses related to your case which we advance for you.  You agree to reimburse us for those costs.

    <u>Fees</u>.  Fees are billed in intervals of one tenth (.10) of an hour. The hourly rates for each billing professional are listed on a schedule included with this letter.  Those rates reflect different levels of experience and training. WZTS will not raise existing rates more than once per year and you will receive a notice at least 30 days before any rates are increased.  WZTS may add new professionals without notice.

    <u>Costs</u>.  Only costs directly related to your case are included on your bill.  You will be charged, at our cost, for messenger services, long distance telephone calls, filing fees, deposition costs, postage, parking charges, outside copying jobs, and similar items.  In office copies and incoming faxes are charged at $.20 per page.  Outgoing faxes are charged $1.00 per page.  We charge you at the rate of $.66 per mile for any car travel.  Each entry on your bill for costs identifies the type of cost, the date incurred, the amount, and other identifying information.

    <u>Bills</u>.  PLEASE REVIEW OUR BILLS.  We are human and we do occasionally make mistakes.  Call us about any suspected errors. The bills show a beginning balance, current charges, credits, adjustments, and the ending balance.  Payments received after the first of the following month appear on the next statement.

    <u>Retainer</u>.  You have provided or agree to provide a $65,000 retainer (the "Retainer") to the Firm for the legal services the Firm performs and for the expenses the Firm incurs on Client's behalf. Payments made by credit card are charged at cost, a processing fee of approximately 2.75%. Before we file the bankruptcy petition we will assess the projected balance of the Retainer and may, in our reasonable discretion, require additional retainer funds or adequate carve-out from a proposed DIP loan.

    The Retainer will be applied to our pre-filing services and costs when invoices are issued pre-filing and at the time of the commencement of the case with any Retainer balance held in our firm's segregated client trust account.

    Upon filing the bankruptcy case we will promptly apply to the Bankruptcy Court to have our employment approved by the Court. We will request that any fees in excess of the Retainer be paid as an administrative claim and intend to seek permission from the Bankruptcy Court for the Debtor to pay our fees and costs monthly, with the Court retaining jurisdiction to review the fees and costs pursuant to a duly noticed fee application.

    **If the Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.**

Seaton Investments, LLC
March 12, 2024
P a g e | **5**

**Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party without your consent. Any person loaning funds to you or investing funds to pay some or all of the Retainer must be advised that we are not their counsel, can and will provide no advice to them and that they have the right to and we recommend they consult their own counsel in connection with any such loans or investments.**

Source of the Retainer. Due to strict conflict of interest laws built into the Bankruptcy Code, we must know who pays our Retainer and where the money came from. In this case, the source of the funds is from Seaton Investments, LLC.

If the initial Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.

Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party in their capacity as such without your consent.

Post-Petition Payments. We will request the Court to allow us to draw upon the balance of the Retainer and DIP carve-out, in accordance with the Guidelines of the Office of the United States Trustee. Any unpaid fees owed to WZTS must be paid as an administrative claim subject to approval of the Court, or upon entry of an Order dismissing the case.

Additional Fees and Costs. The rules of Chapter 11 prohibit the payment of fees and costs without specific Court authorization. For that reason, unless we receive authorization from the Court, fees and costs beyond the Retainer must accrue until we get proper Court authorization. The accrued amounts become due and payable on the day the Court enters an Order approving payment. The court order is the same as a judgment, so interest accrues at the federal judgment rate.

Fee Estimates. Some of our clients ask us to estimate their fees and costs for the bankruptcy. Chapter 11 cases are complex and involve many people. One or more of those people may take legal action against you during the case. Some actions are predictable; most are not. The actions may be settled quickly or may require multiple Court hearings. These challenges are initiated by others. You, the client, must decide how vigorously you wish to respond. By signing this letter, you confirm your understanding that fee estimates are completely unreliable and that you will be responsible for all fees and costs approved by the Court even if they are greater than any estimate WZTS has provided.

Fee Disputes. Any fee disputes will be resolved by the Bankruptcy Court.

Attorneys' Fees. In the event any claim, dispute and/or litigation arises out of this agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

Seaton Investments, LLC
March 12, 2024
P a g e | 6

## IV.

## MISCELLANEOUS

<u>Communication</u>.  Because new issues can surface with little or no notice, we must be able to reach you quickly either to get information, provide you with options, or get copies of documents.  Please make sure that we always have your current address, phone, facsimile, pager and cell phone numbers.  If you are planning a vacation or will not be reachable, please let us know as far in advance as possible.  If it is possible, we will try to schedule events around that time.

If an emergency arises and we cannot contact you, you agree that we have complete authority to make any decision which must be made in your absence.  In the event we must make decisions in your absence, you also agree that we will not be responsible for having made decisions that prove to be less than ideal so long as the decisions appeared reasonable at the time.

<u>Professional Liability Insurance</u>.  For your protection, we maintain professional liability insurance.

<u>Attorney Client Privilege</u>.  If the Client is a partnership, corporation, LLP, LLC or some other form of business entity, and if a Chapter 11 or Chapter 7 trustee is appointed in the case, the trustee as new "management," is entitled to examine our entire legal file.  This includes any matters which may normally be covered by the attorney/client privilege.

<u>Withdrawal and Substitution of Counsel</u>.  Subject to certain legal restrictions (explained herein), either WZTS or the Client may end the attorney-client relationship at any time.  We will cooperate with the new attorney to make the transition as easy as possible.  You agree that we are entitled to be paid under this agreement for the transition work.  If we want to stop representing you, we will try to give you a thirty (30) day notice so that you may find another attorney.  At the end of that time, you agree to sign a form which relieves us as your counsel and allows you to represent yourself.  Your new attorneys can take over from that point.  We may withdraw as your counsel with less than 30 days of notice if withdrawal becomes necessary due to: problems in the attorney/client relationship; the rules of ethics; or whenever such notice is impractical.

If the Bankruptcy Court has approved our employment, we cannot be terminated and we cannot withdraw without the approval of the Court.  Even if our employment has not been approved, but we have merely made an appearance on your behalf before the Court, we must follow proper procedures before we can be terminated or before we can withdraw.

Our services end when we no longer have any responsibility for your case, and when we have been paid in full.  This means that even after we are terminated or we withdraw, our employment will continue until we have filed the proper Court motion for approval of our fees and costs.

<u>Other Attorneys</u>.  Sometimes we recommend that our clients hire another attorney with a different specialty.  We may be able to recommend one or more attorneys whom we believe to be capable of doing the job.  It is up to the Client, however, to meet with the attorney, decide if you

Seaton Investments, LLC
March 12, 2024
P a g e | **7**

wish to engage the attorney, and negotiate fees with that attorney. Whether you choose the attorney we recommend or someone else, you agree that we are not to be responsible for work done by others.

_Conversion_. This retainer agreement provides only for representation of you in your Chapter 11 case. In the event your case is converted to another chapter of the Bankruptcy Code, including but not limited to Chapter 7, the firm is not and shall not be obligated to represent you in that converted case.

_Client Files_. With extremely limited exceptions, the client file and everything in it belongs to the Client. For that reason, the Client has the right to the Client's file.

If you ask for the file, we have the right to remove certain limited items such as attorney notes and documents needed to collect our fees and costs (such as the original of this retainer letter). We generally also have the right to keep the file for a brief period of time to copy some or all of the file, which you agree to pay for such that it is copied at your expense. Those copies belong to the firm.

Finally, we have the right to keep the file so long as we remain attorney of record and responsible for your case.

At the conclusion of our services (when all billing has been completed), you may ask for your file, or leave it with WZTS for storage. WZTS will store the file for a period of two calendar years. While we will take reasonable precautions during that time, we are not responsible if the file is accidentally lost or destroyed. At the end of the two years, we will attempt to contact you by mail at the last known address. We will advise you of our intent to destroy the file. If we have not heard from you or you have not picked up your file within thirty (30) days after that notice, you agree that we may destroy the file and all of its contents.

## IV.

### INTRODUCTION TO CHAPTER 11

The goal of Chapter 11 is to produce a "plan." That "plan" usually provides for repayment of some or all of the outstanding debt. The process of producing a plan can be complicated, frustrating, expensive, and even risky.

We have well over 100 years collectively among our attorneys in representing Chapter 11 debtors and we believe that we have the experience to guide you through a minefield of rules and guidelines. As part of that process, we do our best to anticipate upcoming problems and give you as much advance warning as possible.

The attached Addendum is the first step in that process. It describes many of the rules and regulations which a Chapter 11 Debtor must follow. Please read it carefully, several times. We want you to understand what your case is all about, so please call with any questions.

Seaton Investments, LLC
March 12, 2024
P a g e | **8**

## V.

## CONCLUSION

This letter is long and includes a lot of important information, but we believe it creates a good foundation for a successful working relationship.

After you have read the letter, and ONLY after we have answered any questions you may have, please sign the original (including initialing each page where indicated) and return it to the office.  The copy is for your files.

Sincerely,

WEINTRAUB ZOLKIN TALERICO  & SELTH, LLP

DERRICK TALERICO

Seaton Investments, LLC
March 12, 2024
P a g e | **9**

## CLIENT STATEMENT

I have read this retainer letter.  I understand how fees and costs will be charged.  I agree to the terms described in Section II including the Retainer.  I understand that estimates are not binding and agree that any disputes will either be resolved by the Bankruptcy Court or submitted to binding arbitration.  The information I have provided about the source of the Retainer is correct and I understand that WZTS has a duty of undivided loyalty to Client notwithstanding the source of money used to pay the fees and costs.  I understand when legal services begin and when they end. I understand that decisions concerning the employment and compensation of WZTS are subject to Bankruptcy Court approval.  I understand what happens to files maintained by WZTS on behalf of its clients.  I have received answers to every question I have asked, and I wish to employ Weintraub Zolkin Talerico & Selth LLP under the terms and conditions described in this retainer letter.

Dated:  March 12, 2024                   SEATON INVESTMENTS, LLC

By_____
      Alan D. Gomperts
      Managing Member

Seaton Investments, LLC
March 12, 2024
P a g e | 10

## **ADDENDUM TO CHAPTER 11 RETAINER LETTER**

 

In this Addendum, "we" and "our" means the law offices of "Weintraub Zolkin Talerico & Selth LLP". "You" and "your" means you, our client. The purpose of this Addendum is to introduce advise you about the special rules which apply in Chapter 11 cases in general.

<u>OFFICE OF THE UNITED STATES TRUSTEE</u>

The Office of the United States Trustee ("OUST") is a governmental agency assigned to monitor the progress of Chapter 11 cases. It is their job to be sure that debtors are following the rules and making progress in the case. If they believe that this is not so, they will ask the Court to dismiss the case, or to convert it to a Chapter 7 liquidation case.

To help them monitor the case, the OUST requires debtors to provide certain information. A list of what is required will be given to you with this Addendum. The list is very long, largely because each requirement is followed by information designed to help you satisfy the requirement.

Meeting the OUST requirements is one part of the case where you can control your legal fees. Experience has shown that clients who read the materials carefully need only a little bit of help from our office. The more you do, the less we do and the less we charge for doing it. The requirements generally require the debtor to provide information or copies of documents. We can and will remind you to provide these items, but ultimately, they must come from you.

If the items are not provided quickly enough, you will face a motion to dismiss or convert the case. Even if the Judge permits you to remain in Chapter 11 by denying the motion, you have spent thousands of dollars in legal fees AND you have damaged your reputation in the eyes of the Judge. This cannot help you the next time the Judge is asked to make a difficult decision about your case.

If you have any questions about the rules of Chapter 11 or the OUST requirements, please call the office. It is much better to ask questions now than to face a motion later.

Generally, when a new Chapter 11 case is filed the debtor is treated like a new person. If the debtor is not an individual, it must get a new IRS tax identification number. All debtors must open new bank accounts, take a physical inventory of business assets, and provide copies of all insurance policies then in force. There are many other requirements, all of which are described in the OUST materials we provide with this letter. If you have any questions about what is required or how to comply, please call the office as soon as possible.

Remember that complying with OUST guidelines and requirements is an important way to minimize your legal fees.

Seaton Investments, LLC
March 12, 2024
P a g e | **11**

EXECUTORY CONTRACTS.

While an extended discussion of this topic is premature, we must have copies of all
leases as soon as possible.  This includes office leases, warehouse leases, equipment leases, car
leases and any other type of lease.  We also need copies of any contract which the debtor has
signed, but which has not yet been completed by the debtor.

IF NO LEGAL ACTION IS TAKEN TO PRESERVE CERTAIN OF THESE
LEASES AND CONTRACTS WITHIN THE FIRST SIXTY (60) DAYS AFTER THE CASE
IS FILED, THE LEASES OR CONTRACT MAY BE TERMINATED.  If that happens, your
only alternatives are to negotiate a new deal, or go without.

DISMISSAL OF YOUR CASE.

Once the case is filed, the debtor DOES NOT have the right to have the case dismissed.
Instead, the permission of the Court is required and will be given only if it is in the best
interests of EVERYONE concerned (including the creditors).  Accordingly, filing a Chapter 11
case is not something to be undertaken without careful thought and preparation.

CLIENT PARTICIPATION.

Regardless of who your attorney may be, there is no substitute for client participation.
Our job consists of educating clients, describing options, estimating costs, and implementing
client decisions.  Clients, not lawyers, must make strategic decisions. Clients, not lawyers, must
consider the available options, the expected consequences of taking each action, and the costs
required to take that action.  Clients should stay abreast of developments in the case so that they
understand why the Court makes the decisions it does and they actions we recommend you take.
Chapter 11 cases quickly deteriorate without active client participation.

Seaton Investments, LLC
March 12, 2024
P a g e | **12**

## <u>CLIENT STATEMENT</u>

I have read the Addendum to this retainer letter.  I have received a copy of the OUST materials.  I have received the attached schedule of hourly billing rates.

Dated:  March 12, 2024                    SEATON INVESTMENTS, LLC

By:_____

                    Alan D. Gomperts
                    Managing Member

Seaton Investments, LLC
March 12, 2024
P a g e | **13**

## **WEINTRAUB ZOLKIN TALERICO & SELTH HOURLY RATES**

| | |
|---|---|
| DANIEL J. WEINTRAUB | 695.00 |
| DAVID ZOLKIN | 650.00 |
| DERRICK TALERICO | 625.00 |
| JAMES R. SELTH | 585.00 |
| CATHERINE LIU | 525.00 |
| MARTHA ARAKI | 250.00 |
| SACHIE FRITZ | 175.00 |



Derrick Talerico
424-500-8552
*dtalerico@wztslaw.com*

File No.:

March 12, 2024

<u>VIA EMAIL ONLY</u>
Colyton Investments, LLC
Attn: Alan Gomperts
Email: alangomperts@hotmail.com

   Re:  WZTS Chapter 11 Engagement Agreement

Dear Alan:

   This letter constitutes a formal agreement whereby Colyton Investments LLC ("Client" or "you"), is retaining the law offices of Weintraub Zolkin Talerico & Selth LLP ("WZTS" or "firm") to represent it in a bankruptcy filing under Chapter 11 of the United States Bankruptcy Code.  By signing this agreement, you are hiring WZTS to help you with the legal matter described herein.

   This letter details the scope of your engagement of the firm, it describes how we calculate our charges and how the charges are paid, and it sets forth important information about the attorney/client relationship.  In addition, this letter provides you with an introduction to some of the rules of Chapter 11.

**I.**

**SCOPE OF REPRESENTATION**

   WZTS has agreed to provide you with legal services and you hereby agree to pay fees and costs related to those services. Specifically, you have requested that the Firm perform the following services on your behalf:

- advise you regarding the requirements and procedures of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, U.S. Trustee Guidelines and Local Bankruptcy Rules, that might affect you in a Chapter 11 bankruptcy;
- assist you in preparing and filing the Petition, Schedules, Statement of Financial Affairs and other documents required to commence the bankruptcy case;
- represent you in the bankruptcy case including efforts to formulate and confirm a Chapter 11 plan in the bankruptcy case.

Colyton Investments, LLC
March 12, 2024
P a g e | **2**

WZTS has not agreed to perform any services on your behalf beyond those described above. Unless the scope of this engagement is hereafter expressly expanded pursuant to a supplemental letter or email from the firm to you specifically describing the additional services to be performed, the scope of the engagement is limited to the performance of the above-described services.

<u>Joint Representation and Waiver of Possible Conflict</u>.

The Firm is concurrently being engaged by Seaton Investments, LLC, Colyton Investments, LLC, Broadway Investments, LLC, SLA Investments, LLC, and Negev Investments, LLC (together, the "Debtors") for the scope of services described above.

An important aspect of a joint representation is its effect on the attorney-client privilege and the confidentiality of information related to the representation. In general, a lawyer is required to keep each client informed of the proceedings and the subject matter of the representation so that each client can make informed decisions. At the same time, lawyers are also required to not disclose client confidences. However, when a lawyer represents multiple clients in a single matter or in related matters, the lawyer cannot simultaneously reveal important information to one client that was obtained from another client and still keep the information confidential.

The Firm cannot effectively represent each of the Debtors if we must preserve in confidence without disclosure to one of you the material information disclosed to us by the other relating to the engagement. Therefore, our agreement to represent you jointly is subject to the express condition and understanding that any material information related to the engagement that either of you discloses to the Firm, may be disclosed to the other Debtors if the Firm determines, in the exercise of its independent professional judgment, that knowledge of such information would be necessary for such other Debtor to make informed decisions regarding the engagement. This does not mean that anyone else (i.e., any third party) can gain access to such communications. Indeed, the privilege protecting the confidentiality of such communications would remain fully intact vis-a-vis third parties. Moreover, any of the Debtors would be able to waive that privilege without the consent of all of the Debtors.

At present, there does not appear to be any difference of opinion among the Debtors with respect to the basic terms of this engagement. However, on further consultation, it may turn out that the Debtors have differing opinions regarding the terms of the engagement, or regarding the means by which the Firm's representation will be carried out. If we or any of the Debtors determine that there are material differences on one or more issues that cannot be resolved amicably or on terms compatible with the mutual best interests of the Debtors, then the Debtors and the Firm agree to discuss whether the issues can be resolved through contemporaneous consents by the Debtors, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Colyton Investments, LLC
March 12, 2024
P a g e | 3

At present, there does not appear to be any conflict between the Debtors' interests concerning this engagement. However, as the engagement progresses, one or more conflicts could develop. If we or any of the Debtors determine that there are material conflicts between them that cannot be resolved amicably or on terms compatible with the mutual best interests of each of the Debtors, the Debtors and the Firm agree to discuss whether the conflicts can be resolved, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Your signatures below confirm that notwithstanding these disclosures and any existing or potential conflicts of interest which exist or may come into existence and you knowingly make the following acknowledgments and waivers:

(i)     you consent to the Firm's representation of each of the Debtors in the above-referenced matter;

(ii)    you acknowledge and agree that at no time will such representation of the Debtors be construed, claimed or deemed to be a breach of any fiduciary relationship, a conflict of interest or a violation of any other obligation to you, arising out of or relating to such representation;

(iii)   you agree that you shall not claim or contend that the Firm should be or is disqualified from representing any other Debtor in connection with the above-referenced matters or other foreseeable matters including defense or negotiation of claims made by other parties or insolvency proceedings by one or more of the Debtors, now or in the future;

(iv)    **Current and Advance Waiver: you understand that you may have now or in the future certain adverse claims against one or more of the other Debtors relating to liability to common creditors and hereby (a) waive such current conflicts and; and (b) make an advance waiver of such future conflicts;**

## II.

## FEES, COSTS, BILLS AND RETAINERS

Our goal is to charge a reasonable fee for the work we do. We want you to feel comfortable knowing that whenever you call, regardless of the legal problem, you will get quality work at a fair price or a referral to someone with the same concern for quality and fairness. That process begins with a detailed explanation of our billing procedures so that you can read and understand our bills.

Colyton Investments, LLC
March 12, 2024
P a g e | **4**

The WZTS billing process was designed to give you detailed information about what we are doing, who is doing the work, how much time is spent, the rates being charged and the incidental expenses being incurred. There are two types of charges which appear in different sections on our bills: "fees" and "costs." Fees are what you pay for professional time spent working on your case. The time of each professional is multiplied by the hourly rate for that professional. The totals are then added. Costs are out of pocket expenses related to your case which we advance for you. You agree to reimburse us for those costs.

Fees. Fees are billed in intervals of one tenth (.10) of an hour. The hourly rates for each billing professional are listed on a schedule included with this letter. Those rates reflect different levels of experience and training. WZTS will not raise existing rates more than once per year and you will receive a notice at least 30 days before any rates are increased. WZTS may add new professionals without notice.

Costs. Only costs directly related to your case are included on your bill. You will be charged, at our cost, for messenger services, long distance telephone calls, filing fees, deposition costs, postage, parking charges, outside copying jobs, and similar items. In office copies and incoming faxes are charged at $.20 per page. Outgoing faxes are charged $1.00 per page. We charge you at the rate of $.66 per mile for any car travel. Each entry on your bill for costs identifies the type of cost, the date incurred, the amount, and other identifying information.

Bills. PLEASE REVIEW OUR BILLS. We are human and we do occasionally make mistakes. Call us about any suspected errors. The bills show a beginning balance, current charges, credits, adjustments, and the ending balance. Payments received after the first of the following month appear on the next statement.

Retainer. You have provided or agree to provide a $65,000 retainer (the "Retainer") to the Firm for the legal services the Firm performs and for the expenses the Firm incurs on Client's behalf. Payments made by credit card are charged at cost, a processing fee of approximately 2.75%. Before we file the bankruptcy petition we will assess the projected balance of the Retainer and may, in our reasonable discretion, require additional retainer funds or adequate carve-out from a proposed DIP loan.

The Retainer will be applied to our pre-filing services and costs when invoices are issued pre-filing and at the time of the commencement of the case with any Retainer balance held in our firm's segregated client trust account.

Upon filing the bankruptcy case we will promptly apply to the Bankruptcy Court to have our employment approved by the Court. We will request that any fees in excess of the Retainer be paid as an administrative claim and intend to seek permission from the Bankruptcy Court for the Debtor to pay our fees and costs monthly, with the Court retaining jurisdiction to review the fees and costs pursuant to a duly noticed fee application.

**If the Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.**

Colyton Investments, LLC
March 12, 2024
P a g e | 5

**Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party without your consent. Any person loaning funds to you or investing funds to pay some or all of the Retainer must be advised that we are not their counsel, can and will provide no advice to them and that they have the right to and we recommend they consult their own counsel in connection with any such loans or investments.**

Source of the Retainer. Due to strict conflict of interest laws built into the Bankruptcy Code, we must know who pays our Retainer and where the money came from. In this case, the source of the funds is from Colyton Investments, LLC.

If the initial Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.

Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party in their capacity as such without your consent.

Post-Petition Payments. We will request the Court to allow us to draw upon the balance of the Retainer and DIP carve-out, in accordance with the Guidelines of the Office of the United States Trustee. Any unpaid fees owed to WZTS must be paid as an administrative claim subject to approval of the Court, or upon entry of an Order dismissing the case.

Additional Fees and Costs. The rules of Chapter 11 prohibit the payment of fees and costs without specific Court authorization. For that reason, unless we receive authorization from the Court, fees and costs beyond the Retainer must accrue until we get proper Court authorization. The accrued amounts become due and payable on the day the Court enters an Order approving payment. The court order is the same as a judgment, so interest accrues at the federal judgment rate.

Fee Estimates. Some of our clients ask us to estimate their fees and costs for the bankruptcy. Chapter 11 cases are complex and involve many people. One or more of those people may take legal action against you during the case. Some actions are predictable; most are not. The actions may be settled quickly or may require multiple Court hearings. These challenges are initiated by others. You, the client, must decide how vigorously you wish to respond. By signing this letter, you confirm your understanding that fee estimates are completely unreliable and that you will be responsible for all fees and costs approved by the Court even if they are greater than any estimate WZTS has provided.

Fee Disputes. Any fee disputes will be resolved by the Bankruptcy Court.

Attorneys' Fees. In the event any claim, dispute and/or litigation arises out of this agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

Colyton Investments, LLC
March 12, 2024
P a g e | 6

## IV.

## MISCELLANEOUS

<u>Communication</u>.  Because new issues can surface with little or no notice, we must be able to reach you quickly either to get information, provide you with options, or get copies of documents.  Please make sure that we always have your current address, phone, facsimile, pager and cell phone numbers.  If you are planning a vacation or will not be reachable, please let us know as far in advance as possible.  If it is possible, we will try to schedule events around that time.

If an emergency arises and we cannot contact you, you agree that we have complete authority to make any decision which must be made in your absence.  In the event we must make decisions in your absence, you also agree that we will not be responsible for having made decisions that prove to be less than ideal so long as the decisions appeared reasonable at the time.

<u>Professional Liability Insurance</u>.  For your protection, we maintain professional liability insurance.

<u>Attorney Client Privilege</u>.  If the Client is a partnership, corporation, LLP, LLC or some other form of business entity, and if a Chapter 11 or Chapter 7 trustee is appointed in the case, the trustee as new "management," is entitled to examine our entire legal file.  This includes any matters which may normally be covered by the attorney/client privilege.

<u>Withdrawal and Substitution of Counsel</u>.  Subject to certain legal restrictions (explained herein), either WZTS or the Client may end the attorney-client relationship at any time.  We will cooperate with the new attorney to make the transition as easy as possible.  You agree that we are entitled to be paid under this agreement for the transition work.  If we want to stop representing you, we will try to give you a thirty (30) day notice so that you may find another attorney.  At the end of that time, you agree to sign a form which relieves us as your counsel and allows you to represent yourself.  Your new attorneys can take over from that point.  We may withdraw as your counsel with less than 30 days of notice if withdrawal becomes necessary due to: problems in the attorney/client relationship; the rules of ethics; or whenever such notice is impractical.

If the Bankruptcy Court has approved our employment, we cannot be terminated and we cannot withdraw without the approval of the Court.  Even if our employment has not been approved, but we have merely made an appearance on your behalf before the Court, we must follow proper procedures before we can be terminated or before we can withdraw.

Our services end when we no longer have any responsibility for your case, and when we have been paid in full.  This means that even after we are terminated or we withdraw, our employment will continue until we have filed the proper Court motion for approval of our fees and costs.

<u>Other Attorneys</u>.  Sometimes we recommend that our clients hire another attorney with a different specialty.  We may be able to recommend one or more attorneys whom we believe to be capable of doing the job.  It is up to the Client, however, to meet with the attorney, decide if you

Colyton Investments, LLC
March 12, 2024
P a g e | 7

wish to engage the attorney, and negotiate fees with that attorney. Whether you choose the attorney we recommend or someone else, you agree that we are not to be responsible for work done by others.

  Conversion. This retainer agreement provides only for representation of you in your Chapter 11 case. In the event your case is converted to another chapter of the Bankruptcy Code, including but not limited to Chapter 7, the firm is not and shall not be obligated to represent you in that converted case.

  Client Files. With extremely limited exceptions, the client file and everything in it belongs to the Client. For that reason, the Client has the right to the Client's file.

  If you ask for the file, we have the right to remove certain limited items such as attorney notes and documents needed to collect our fees and costs (such as the original of this retainer letter). We generally also have the right to keep the file for a brief period of time to copy some or all of the file, which you agree to pay for such that it is copied at your expense. Those copies belong to the firm.

  Finally, we have the right to keep the file so long as we remain attorney of record and responsible for your case.

  At the conclusion of our services (when all billing has been completed), you may ask for your file, or leave it with WZTS for storage. WZTS will store the file for a period of two calendar years. While we will take reasonable precautions during that time, we are not responsible if the file is accidentally lost or destroyed. At the end of the two years, we will attempt to contact you by mail at the last known address. We will advise you of our intent to destroy the file. If we have not heard from you or you have not picked up your file within thirty (30) days after that notice, you agree that we may destroy the file and all of its contents.

## IV.

### INTRODUCTION TO CHAPTER 11

  The goal of Chapter 11 is to produce a "plan." That "plan" usually provides for repayment of some or all of the outstanding debt. The process of producing a plan can be complicated, frustrating, expensive, and even risky.

  We have well over 100 years collectively among our attorneys in representing Chapter 11 debtors and we believe that we have the experience to guide you through a minefield of rules and guidelines. As part of that process, we do our best to anticipate upcoming problems and give you as much advance warning as possible.

  The attached Addendum is the first step in that process. It describes many of the rules and regulations which a Chapter 11 Debtor must follow. Please read it carefully, several times. We want you to understand what your case is all about, so please call with any questions.

Colyton Investments, LLC
March 12, 2024
P a g e | **8**

## V.

## CONCLUSION

This letter is long and includes a lot of important information, but we believe it creates a good foundation for a successful working relationship.

After you have read the letter, and ONLY after we have answered any questions you may have, please sign the original (including initialing each page where indicated) and return it to the office.  The copy is for your files.

Sincerely,

WEINTRAUB ZOLKIN TALERICO  & SELTH, LLP

DERRICK TALERICO

Colyton Investments, LLC
March 12, 2024
P a g e | **9**

## CLIENT STATEMENT

I have read this retainer letter. I understand how fees and costs will be charged. I agree to
the terms described in Section II including the Retainer. I understand that estimates are not binding
and agree that any disputes will either be resolved by the Bankruptcy Court or submitted to binding
arbitration. The information I have provided about the source of the Retainer is correct and I
understand that WZTS has a duty of undivided loyalty to Client notwithstanding the source of
money used to pay the fees and costs. I understand when legal services begin and when they end.
I understand that decisions concerning the employment and compensation of WZTS are subject to
Bankruptcy Court approval. I understand what happens to files maintained by WZTS on behalf of
its clients. I have received answers to every question I have asked, and I wish to employ Weintraub
Zolkin Talerico & Selth LLP under the terms and conditions described in this retainer letter.

Dated: March 12, 2024                COLYTON INVESTMENTS, LLC

By: _____
     Name: Alan Gomperts
     Title: Authorized Representative

11766 Wilshire Blvd., Suite 450, Los Angeles, CA 90025
222 Pacific Coast Hwy., El Segundo, CA 90245

Weintraub Zolkin Talerico & Selth LLP

EXHIBIT 1 - Page 41

Colyton Investments, LLC
March 12, 2024
P a g e | **10**

## **ADDENDUM TO CHAPTER 11 RETAINER LETTER**

 

       In this Addendum, "we" and "our" means the law offices of "Weintraub Zolkin Talerico & Selth LLP". "You" and "your" means you, our client. The purpose of this Addendum is to introduce advise you about the special rules which apply in Chapter 11 cases in general.

OFFICE OF THE UNITED STATES TRUSTEE

       The Office of the United States Trustee ("OUST") is a governmental agency assigned to monitor the progress of Chapter 11 cases. It is their job to be sure that debtors are following the rules and making progress in the case. If they believe that this is not so, they will ask the Court to dismiss the case, or to convert it to a Chapter 7 liquidation case.

       To help them monitor the case, the OUST requires debtors to provide certain information. A list of what is required will be given to you with this Addendum. The list is very long, largely because each requirement is followed by information designed to help you satisfy the requirement.

       Meeting the OUST requirements is one part of the case where you can control your legal fees. Experience has shown that clients who read the materials carefully need only a little bit of help from our office. The more you do, the less we do and the less we charge for doing it. The requirements generally require the debtor to provide information or copies of documents. We can and will remind you to provide these items, but ultimately, they must come from you.

       If the items are not provided quickly enough, you will face a motion to dismiss or convert the case. Even if the Judge permits you to remain in Chapter 11 by denying the motion, you have spent thousands of dollars in legal fees AND you have damaged your reputation in the eyes of the Judge. This cannot help you the next time the Judge is asked to make a difficult decision about your case.

       If you have any questions about the rules of Chapter 11 or the OUST requirements, please call the office. It is much better to ask questions now than to face a motion later.

       Generally, when a new Chapter 11 case is filed the debtor is treated like a new person. If the debtor is not an individual, it must get a new IRS tax identification number. All debtors must open new bank accounts, take a physical inventory of business assets, and provide copies of all insurance policies then in force. There are many other requirements, all of which are described in the OUST materials we provide with this letter. If you have any questions about what is required or how to comply, please call the office as soon as possible.

       Remember that complying with OUST guidelines and requirements is an important way to minimize your legal fees.

Colyton Investments, LLC
March 12, 2024
P a g e | **11**

        EXECUTORY CONTRACTS.

        While an extended discussion of this topic is premature, we must have copies of all
leases as soon as possible.  This includes office leases, warehouse leases, equipment leases, car
leases and any other type of lease.  We also need copies of any contract which the debtor has
signed, but which has not yet been completed by the debtor.

        IF NO LEGAL ACTION IS TAKEN TO PRESERVE CERTAIN OF THESE
LEASES AND CONTRACTS WITHIN THE FIRST SIXTY (60) DAYS AFTER THE CASE
IS FILED, THE LEASES OR CONTRACT MAY BE TERMINATED.  If that happens, your
only alternatives are to negotiate a new deal, or go without.

        DISMISSAL OF YOUR CASE.

        Once the case is filed, the debtor DOES NOT have the right to have the case dismissed.
Instead, the permission of the Court is required and will be given only if it is in the best
interests of EVERYONE concerned (including the creditors).  Accordingly, filing a Chapter 11
case is not something to be undertaken without careful thought and preparation.

        CLIENT PARTICIPATION.

        Regardless of who your attorney may be, there is no substitute for client participation.
Our job consists of educating clients, describing options, estimating costs, and implementing
client decisions.  Clients, not lawyers, must make strategic decisions. Clients, not lawyers, must
consider the available options, the expected consequences of taking each action, and the costs
required to take that action.  Clients should stay abreast of developments in the case so that they
understand why the Court makes the decisions it does and they actions we recommend you take.
Chapter 11 cases quickly deteriorate without active client participation.

Colyton Investments, LLC
March 12, 2024
P a g e | **12**

## CLIENT STATEMENT

I have read the Addendum to this retainer letter. I have received a copy of the OUST materials. I have received the attached schedule of hourly billing rates.

Dated:  March 12, 2024                    COLYTON INVESTMENTS, LLC

By: _____

Name: Alan Gomperts
Title: Authorized Representative

Colyton Investments, LLC
March 12, 2024
P a g e | **13**

## WEINTRAUB ZOLKIN TALERICO & SELTH HOURLY RATES

|                          |        |
|--------------------------|--------|
| DANIEL J. WEINTRAUB      | 695.00 |
| DAVID ZOLKIN             | 650.00 |
| DERRICK TALERICO         | 625.00 |
| JAMES R. SELTH           | 585.00 |
| CATHERINE LIU            | 525.00 |
| MARTHA ARAKI             | 250.00 |
| SACHIE FRITZ             | 175.00 |



Derrick Talerico
424-500-8552
*dtalerico@wztslaw.com*

File No.: 5151.01

March 12, 2024

<u>VIA EMAIL ONLY</u>
Broadway Avenue Investments LLC
Attn: Alan Gomperts
Email: alangomperts@hotmail.com

      Re:     WZTS Chapter 11 Engagement Agreement

Dear Alan:

      This letter constitutes a formal agreement whereby Broadway Avenue Investments LLC ("Client" or "you"), is retaining the law offices of Weintraub Zolkin Talerico & Selth LLP ("WZTS" or "firm") to represent it in a bankruptcy filing under Chapter 11 of the United States Bankruptcy Code. By signing this agreement, you are hiring WZTS to help you with the legal matter described herein.

      This letter details the scope of your engagement of the firm, it describes how we calculate our charges and how the charges are paid, and it sets forth important information about the attorney/client relationship. In addition, this letter provides you with an introduction to some of the rules of Chapter 11.

## I.

## SCOPE OF REPRESENTATION

      WZTS has agreed to provide you with legal services and you hereby agree to pay fees and costs related to those services. Specifically, you have requested that the Firm perform the following services on your behalf:

- advise you regarding the requirements and procedures of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, U.S. Trustee Guidelines and Local Bankruptcy Rules, that might affect you in a Chapter 11 bankruptcy;
- assist you in preparing and filing the Petition, Schedules, Statement of Financial Affairs and other documents required to commence the bankruptcy case;
- represent you in the bankruptcy case including efforts to formulate and confirm a Chapter 11 plan in the bankruptcy case.

Broadway Avenue Investments LLC
March 12, 2024
P a g e | 2

WZTS has not agreed to perform any services on your behalf beyond those described above. Unless the scope of this engagement is hereafter expressly expanded pursuant to a supplemental letter or email from the firm to you specifically describing the additional services to be performed, the scope of the engagement is limited to the performance of the above-described services.

<u>Joint Representation and Waiver of Possible Conflict</u>.

The Firm is concurrently being engaged by Seaton Investments, LLC, Colyton Investments, LLC, Broadway Investments, LLC, SLA Investments, LLC, and Negev Investments, LLC (together, the "Debtors") for the scope of services described above.

An important aspect of a joint representation is its effect on the attorney-client privilege and the confidentiality of information related to the representation. In general, a lawyer is required to keep each client informed of the proceedings and the subject matter of the representation so that each client can make informed decisions. At the same time, lawyers are also required to not disclose client confidences. However, when a lawyer represents multiple clients in a single matter or in related matters, the lawyer cannot simultaneously reveal important information to one client that was obtained from another client and still keep the information confidential.

The Firm cannot effectively represent each of the Debtors if we must preserve in confidence without disclosure to one of you the material information disclosed to us by the other relating to the engagement. Therefore, our agreement to represent you jointly is subject to the express condition and understanding that any material information related to the engagement that either of you discloses to the Firm, may be disclosed to the other Debtors if the Firm determines, in the exercise of its independent professional judgment, that knowledge of such information would be necessary for such other Debtor to make informed decisions regarding the engagement. This does not mean that anyone else (i.e., any third party) can gain access to such communications. Indeed, the privilege protecting the confidentiality of such communications would remain fully intact vis-a-vis third parties. Moreover, any of the Debtors would be able to waive that privilege without the consent of all of the Debtors.

At present, there does not appear to be any difference of opinion among the Debtors with respect to the basic terms of this engagement. However, on further consultation, it may turn out that the Debtors have differing opinions regarding the terms of the engagement, or regarding the means by which the Firm's representation will be carried out. If we or any of the Debtors determine that there are material differences on one or more issues that cannot be resolved amicably or on terms compatible with the mutual best interests of the Debtors, then the Debtors and the Firm agree to discuss whether the issues can be resolved through contemporaneous consents by the Debtors, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Broadway Avenue Investments LLC
March 12, 2024
P a g e | 3

At present, there does not appear to be any conflict between the Debtors' interests concerning this engagement. However, as the engagement progresses, one or more conflicts could develop. If we or any of the Debtors determine that there are material conflicts between them that cannot be resolved amicably or on terms compatible with the mutual best interests of each of the Debtors, the Debtors and the Firm agree to discuss whether the conflicts can be resolved, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Your signatures below confirm that notwithstanding these disclosures and any existing or potential conflicts of interest which exist or may come into existence and you knowingly make the following acknowledgments and waivers:

(i)     you consent to the Firm's representation of each of the Debtors in the above-referenced matter;

(ii)    you acknowledge and agree that at no time will such representation of the Debtors be construed, claimed or deemed to be a breach of any fiduciary relationship, a conflict of interest or a violation of any other obligation to you, arising out of or relating to such representation;

(iii)   you agree that you shall not claim or contend that the Firm should be or is disqualified from representing any other Debtor in connection with the above-referenced matters or other foreseeable matters including defense or negotiation of claims made by other parties or insolvency proceedings by one or more of the Debtors, now or in the future;

(iv)    **Current and Advance Waiver: you understand that you may have now or in the future certain adverse claims against one or more of the other Debtors relating to liability to common creditors and hereby (a) waive such current conflicts and; and (b) make an advance waiver of such future conflicts;**

## II.

## FEES, COSTS, BILLS AND RETAINERS

Our goal is to charge a reasonable fee for the work we do. We want you to feel comfortable knowing that whenever you call, regardless of the legal problem, you will get quality work at a fair price or a referral to someone with the same concern for quality and fairness.  That process begins with a detailed explanation of our billing procedures so that you can read and understand our bills.

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **4**

The WZTS billing process was designed to give you detailed information about what we are doing, who is doing the work, how much time is spent, the rates being charged and the incidental expenses being incurred.  There are two types of charges which appear in different sections on our bills: "fees" and "costs."  Fees are what you pay for professional time spent working on your case.  The time of each professional is multiplied by the hourly rate for that professional.  The totals are then added.  Costs are out of pocket expenses related to your case which we advance for you.  You agree to reimburse us for those costs.

<u>Fees</u>.  Fees are billed in intervals of one tenth (.10) of an hour.  The hourly rates for each billing professional are listed on a schedule included with this letter.  Those rates reflect different levels of experience and training.  WZTS will not raise existing rates more than once per year and you will receive a notice at least 30 days before any rates are increased.  WZTS may add new professionals without notice.

<u>Costs</u>.  Only costs directly related to your case are included on your bill.  You will be charged, at our cost, for messenger services, long distance telephone calls, filing fees, deposition costs, postage, parking charges, outside copying jobs, and similar items.  In office copies and incoming faxes are charged at $.20 per page.  Outgoing faxes are charged $1.00 per page.   We charge you at the rate of $.66 per mile for any car travel.  Each entry on your bill for costs identifies the type of cost, the date incurred, the amount, and other identifying information.

<u>Bills</u>.  PLEASE REVIEW OUR BILLS.  We are human and we do occasionally make mistakes.  Call us about any suspected errors. The bills show a beginning balance, current charges, credits, adjustments, and the ending balance.  Payments received after the first of the following month appear on the next statement.

<u>Retainer</u>.  You have provided or agree to provide a $40,000 retainer (the "Retainer") to the Firm for the legal services the Firm performs and for the expenses the Fir incurs on Client's behalf.  Payments made by credit card are charged, at cost, a processing fee of approximately 2.75%.  Before we file the bankruptcy petition we will assess the projected balance of the Retainer and may, in our reasonable discretion, require additional retainer funds or adequate carve-out from a proposed DIP loan.

The Retainer will be applied to our pre-filing services and costs when invoices are issued pre-filing and at the time of the commencement of the case with any Retainer balance held in our firm's segregated client trust account.

Upon filing the bankruptcy case we will promptly apply to the Bankruptcy Court to have our employment approved by the Court. We will request that any fees in excess of the Retainer be paid as an administrative claim and intend to seek permission from the Bankruptcy Court for the Debtor to pay our fees and costs monthly, with the Court retaining jurisdiction to review the fees and costs pursuant to a duly noticed fee application.

**If the Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.**

Broadway Avenue Investments LLC
March 12, 2024
P a g e | 5

**Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party without your consent. Any person loaning funds to you or investing funds to pay some or all of the Retainer must be advised that we are not their counsel, can and will provide no advice to them and that they have the right to and we recommend they consult their own counsel in connection with any such loans or investments.**

Source of the Retainer. Due to strict conflict of interest laws built into the Bankruptcy Code, we must know who pays our Retainer and where the money came from. In this case, the source of the funds is from Commune Events, Inc.

If the initial Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.

Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party in their capacity as such without your consent.

Post-Petition Payments. We will request the Court to allow us to draw upon the balance of the Retainer and DIP carve-out, in accordance with the Guidelines of the Office of the United States Trustee. Any unpaid fees owed to WZTS must be paid as an administrative claim subject to approval of the Court, or upon entry of an Order dismissing the case.

Additional Fees and Costs. The rules of Chapter 11 prohibit the payment of fees and costs without specific Court authorization. For that reason, unless we receive authorization from the Court, fees and costs beyond the Retainer must accrue until we get proper Court authorization. The accrued amounts become due and payable on the day the Court enters an Order approving payment. The court order is the same as a judgment, so interest accrues at the federal judgment rate.

Fee Estimates. Some of our clients ask us to estimate their fees and costs for the bankruptcy. Chapter 11 cases are complex and involve many people. One or more of those people may take legal action against you during the case. Some actions are predictable; most are not. The actions may be settled quickly or may require multiple Court hearings. These challenges are initiated by others. You, the client, must decide how vigorously you wish to respond. By signing this letter, you confirm your understanding that fee estimates are completely unreliable and that you will be responsible for all fees and costs approved by the Court even if they are greater than any estimate WZTS has provided.

Fee Disputes. Any fee disputes will be resolved by the Bankruptcy Court.

Attorneys' Fees. In the event any claim, dispute and/or litigation arises out of this agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

Broadway Avenue Investments LLC
March 12, 2024
P a g e | 6

## IV.

## MISCELLANEOUS

Communication.  Because new issues can surface with little or no notice, we must be able to reach you quickly either to get information, provide you with options, or get copies of documents.  Please make sure that we always have your current address, phone, facsimile, pager and cell phone numbers.  If you are planning a vacation or will not be reachable, please let us know as far in advance as possible.  If it is possible, we will try to schedule events around that time.

If an emergency arises and we cannot contact you, you agree that we have complete authority to make any decision which must be made in your absence.  In the event we must make decisions in your absence, you also agree that we will not be responsible for having made decisions that prove to be less than ideal so long as the decisions appeared reasonable at the time.

Professional Liability Insurance.  For your protection, we maintain professional liability insurance.

Attorney Client Privilege.  If the Client is a partnership, corporation, LLP, LLC or some other form of business entity, and if a Chapter 11 or Chapter 7 trustee is appointed in the case, the trustee as new "management," is entitled to examine our entire legal file.  This includes any matters which may normally be covered by the attorney/client privilege.

Withdrawal and Substitution of Counsel.  Subject to certain legal restrictions (explained herein), either WZTS or the Client may end the attorney-client relationship at any time.  We will cooperate with the new attorney to make the transition as easy as possible.  You agree that we are entitled to be paid under this agreement for the transition work.  If we want to stop representing you, we will try to give you a thirty (30) day notice so that you may find another attorney.  At the end of that time, you agree to sign a form which relieves us as your counsel and allows you to represent yourself.  Your new attorneys can take over from that point.  We may withdraw as your counsel with less than 30 days of notice if withdrawal becomes necessary due to: problems in the attorney/client relationship; the rules of ethics; or whenever such notice is impractical.

If the Bankruptcy Court has approved our employment, we cannot be terminated and we cannot withdraw without the approval of the Court.  Even if our employment has not been approved, but we have merely made an appearance on your behalf before the Court, we must follow proper procedures before we can be terminated or before we can withdraw.

Our services end when we no longer have any responsibility for your case, and when we have been paid in full.  This means that even after we are terminated or we withdraw, our employment will continue until we have filed the proper Court motion for approval of our fees and costs.

Other Attorneys.  Sometimes we recommend that our clients hire another attorney with a different specialty.  We may be able to recommend one or more attorneys whom we believe to be capable of doing the job.  It is up to the Client, however, to meet with the attorney, decide if you

Broadway Avenue Investments LLC
March 12, 2024
P a g e | 7

wish to engage the attorney, and negotiate fees with that attorney.  Whether you choose the attorney we recommend or someone else, you agree that we are not to be responsible for work done by others.

    Conversion.  This retainer agreement provides only for representation of you in your Chapter 11 case.  In the event your case is converted to another chapter of the Bankruptcy Code, including but not limited to Chapter 7, the firm is not and shall not be obligated to represent you in that converted case.

    Client Files.  With extremely limited exceptions, the client file and everything in it belongs to the Client.  For that reason, the Client has the right to the Client's file.

    If you ask for the file, we have the right to remove certain limited items such as attorney notes and documents needed to collect our fees and costs (such as the original of this retainer letter).  We generally also have the right to keep the file for a brief period of time to copy some or all of the file, which you agree to pay for such that it is copied at your expense.  Those copies belong to the firm.

    Finally, we have the right to keep the file so long as we remain attorney of record and responsible for your case.

    At the conclusion of our services (when all billing has been completed), you may ask for your file, or leave it with WZTS for storage.  WZTS will store the file for a period of two calendar years.  While we will take reasonable precautions during that time, we are not responsible if the file is accidentally lost or destroyed.  At the end of the two years, we will attempt to contact you by mail at the last known address.  We will advise you of our intent to destroy the file.  If we have not heard from you or you have not picked up your file within thirty (30) days after that notice, you agree that we may  destroy the file and all of its contents.

## IV.

### INTRODUCTION TO CHAPTER 11

    The goal of Chapter 11 is to produce a "plan."  That "plan" usually provides for repayment of some or all of the outstanding debt.  The process of producing a plan can be complicated, frustrating, expensive, and even risky.

    We have well over 100 years collectively among our attorneys in representing Chapter 11 debtors and we believe that we have the experience to guide you through a minefield of rules and guidelines.  As part of that process, we do our best to anticipate upcoming problems and give you as much advance warning as possible.

    The attached Addendum is the first step in that process.  It describes many of the rules and regulations which a Chapter 11 Debtor must follow.  Please read it carefully, several times.  We want you to understand what your case is all about, so please call with any questions.

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **8**

## V.

## CONCLUSION

      This letter is long and includes a lot of important information, but we believe it creates a good foundation for a successful working relationship.

      After you have read the letter, and ONLY after we have answered any questions you may have, please sign the original (including initialing each page where indicated) and return it to the office.  The copy is for your files.

      Sincerely,

      WEINTRAUB ZOLKIN TALERICO  & SELTH, LLP

      DERRICK TALERICO

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **9**

# CLIENT STATEMENT

       I have read this retainer letter.  I understand how fees and costs will be charged.  I agree to the terms described in Section II including the Retainer.  I understand that estimates are not binding and agree that any disputes will either be resolved by the Bankruptcy Court or submitted to binding arbitration.  The information I have provided about the source of the Retainer is correct and I understand that WZTS has a duty of undivided loyalty to Client notwithstanding the source of money used to pay the fees and costs.  I understand when legal services begin and when they end. I understand that decisions concerning the employment and compensation of WZTS are subject to Bankruptcy Court approval.  I understand what happens to files maintained by WZTS on behalf of its clients.  I have received answers to every question I have asked, and I wish to employ Weintraub Zolkin Talerico & Selth LLP under the terms and conditions described in this retainer letter.

Dated:  March 12, 2024           BROADWAY AVENUE INVESTMENTS, LLC

By: _____

       Alan D. Gomperts
       Managing Member

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **10**

## ADDENDUM TO CHAPTER 11 RETAINER LETTER

In this Addendum, "we" and "our" means the law offices of "Weintraub Zolkin Talerico & Selth LLP". "You" and "your" means you, our client. The purpose of this Addendum is to introduce advise you about the special rules which apply in Chapter 11 cases in general.

OFFICE OF THE UNITED STATES TRUSTEE

The Office of the United States Trustee ("OUST") is a governmental agency assigned to monitor the progress of Chapter 11 cases. It is their job to be sure that debtors are following the rules and making progress in the case. If they believe that this is not so, they will ask the Court to dismiss the case, or to convert it to a Chapter 7 liquidation case.

To help them monitor the case, the OUST requires debtors to provide certain information. A list of what is required will be given to you with this Addendum. The list is very long, largely because each requirement is followed by information designed to help you satisfy the requirement.

Meeting the OUST requirements is one part of the case where you can control your legal fees. Experience has shown that clients who read the materials carefully need only a little bit of help from our office. The more you do, the less we do and the less we charge for doing it. The requirements generally require the debtor to provide information or copies of documents. We can and will remind you to provide these items, but ultimately, they must come from you.

If the items are not provided quickly enough, you will face a motion to dismiss or convert the case. Even if the Judge permits you to remain in Chapter 11 by denying the motion, you have spent thousands of dollars in legal fees AND you have damaged your reputation in the eyes of the Judge. This cannot help you the next time the Judge is asked to make a difficult decision about your case.

If you have any questions about the rules of Chapter 11 or the OUST requirements, please call the office. It is much better to ask questions now than to face a motion later.

Generally, when a new Chapter 11 case is filed the debtor is treated like a new person. If the debtor is not an individual, it must get a new IRS tax identification number. All debtors must open new bank accounts, take a physical inventory of business assets, and provide copies of all insurance policies then in force. There are many other requirements, all of which are described in the OUST materials we provide with this letter. If you have any questions about what is required or how to comply, please call the office as soon as possible.

Remember that complying with OUST guidelines and requirements is an important way to minimize your legal fees.

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **11**

EXECUTORY CONTRACTS.

While an extended discussion of this topic is premature, we must have copies of all
leases as soon as possible.  This includes office leases, warehouse leases, equipment leases, car
leases and any other type of lease.  We also need copies of any contract which the debtor has
signed, but which has not yet been completed by the debtor.

IF NO LEGAL ACTION IS TAKEN TO PRESERVE CERTAIN OF THESE
LEASES AND CONTRACTS WITHIN THE FIRST SIXTY (60) DAYS AFTER THE CASE
IS FILED, THE LEASES OR CONTRACT MAY BE TERMINATED.  If that happens, your
only alternatives are to negotiate a new deal, or go without.

DISMISSAL OF YOUR CASE.

Once the case is filed, the debtor DOES NOT have the right to have the case dismissed.
Instead, the permission of the Court is required and will be given only if it is in the best
interests of EVERYONE concerned (including the creditors).  Accordingly, filing a Chapter 11
case is not something to be undertaken without careful thought and preparation.

CLIENT PARTICIPATION.

Regardless of who your attorney may be, there is no substitute for client participation.
Our job consists of educating clients, describing options, estimating costs, and implementing
client decisions.  Clients, not lawyers, must make strategic decisions. Clients, not lawyers, must
consider the available options, the expected consequences of taking each action, and the costs
required to take that action.  Clients should stay abreast of developments in the case so that they
understand why the Court makes the decisions it does and they actions we recommend you take.
Chapter 11 cases quickly deteriorate without active client participation.

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **12**

## <u>CLIENT STATEMENT</u>

I have read the Addendum to this retainer letter.  I have received a copy of the OUST
materials.  I have received the attached schedule of hourly billing rates.


Dated:  March 12, 2024                BROADWAY AVENUE INVESTMENTS, LLC



By:_____
      Alan D. Gomperts
      Managing Member

Broadway Avenue Investments LLC
March 12, 2024
P a g e | **13**

## WEINTRAUB ZOLKIN TALERICO & SELTH HOURLY RATES

| | |
|---|---|
| DANIEL J. WEINTRAUB | 695.00 |
| DAVID ZOLKIN | 650.00 |
| DERRICK TALERICO | 625.00 |
| JAMES R. SELTH | 585.00 |
| CATHERINE LIU | 525.00 |
| MARTHA ARAKI | 250.00 |
| SACHIE FRITZ | 175.00 |



Derrick Talerico
424-500-8552
<em>dtalerico@wztslaw.com</em>

File No.:

March 12, 2024

<u>VIA EMAIL ONLY</u>
Negev Investments, LLC
Attn: Alan Gomperts
Email: alangomperts@hotmail.com

Re:    WZTS Chapter 11 Engagement Agreement

Dear Alan:

This letter constitutes a formal agreement whereby Negev Investments LLC ("Client" or "you"), is retaining the law offices of Weintraub Zolkin Talerico & Selth LLP ("WZTS" or "firm") to represent it in a bankruptcy filing under Chapter 11 of the United States Bankruptcy Code.  By signing this agreement, you are hiring WZTS to help you with the legal matter described herein.

This letter details the scope of your engagement of the firm, it describes how we calculate our charges and how the charges are paid, and it sets forth important information about the attorney/client relationship.  In addition, this letter provides you with an introduction to some of the rules of Chapter 11.

I.

SCOPE OF REPRESENTATION

WZTS has agreed to provide you with legal services and you hereby agree to pay fees and costs related to those services. Specifically, you have requested that the Firm perform the following services on your behalf:

- advise you regarding the requirements and procedures of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, U.S. Trustee Guidelines and Local Bankruptcy Rules, that might affect you in a Chapter 11 bankruptcy;
- assist you in preparing and filing the Petition, Schedules, Statement of Financial Affairs and other documents required to commence the bankruptcy case;
- represent you in the bankruptcy case including efforts to formulate and confirm a Chapter 11 plan in the bankruptcy case.

WZTS has not agreed to perform any services on your behalf beyond those described above. Unless

Negev Investments, LLC
March 12, 2024
P a g e | **2**

the scope of this engagement is hereafter expressly expanded pursuant to a supplemental letter or email from the firm to you specifically describing the additional services to be performed, the scope of the engagement is limited to the performance of the above-described services.

<u>Joint Representation and Waiver of Possible Conflict</u>.

The Firm is concurrently being engaged by Seaton Investments, LLC, Colyton Investments, LLC, Broadway Investments, LLC, SLA Investments, LLC, and Negev Investments, LLC (together, the "Debtors") for the scope of services described above.

An important aspect of a joint representation is its effect on the attorney-client privilege and the confidentiality of information related to the representation. In general, a lawyer is required to keep each client informed of the proceedings and the subject matter of the representation so that each client can make informed decisions. At the same time, lawyers are also required to not disclose client confidences. However, when a lawyer represents multiple clients in a single matter or in related matters, the lawyer cannot simultaneously reveal important information to one client that was obtained from another client and still keep the information confidential.

The Firm cannot effectively represent each of the Debtors if we must preserve in confidence without disclosure to one of you the material information disclosed to us by the other relating to the engagement. Therefore, our agreement to represent you jointly is subject to the express condition and understanding that any material information related to the engagement that either of you discloses to the Firm, may be disclosed to the other Debtors if the Firm determines, in the exercise of its independent professional judgment, that knowledge of such information would be necessary for such other Debtor to make informed decisions regarding the engagement. This does not mean that anyone else (i.e., any third party) can gain access to such communications. Indeed, the privilege protecting the confidentiality of such communications would remain fully intact vis-a-vis third parties. Moreover, any of the Debtors would be able to waive that privilege without the consent of all of the Debtors.

At present, there does not appear to be any difference of opinion among the Debtors with respect to the basic terms of this engagement. However, on further consultation, it may turn out that the Debtors have differing opinions regarding the terms of the engagement, or regarding the means by which the Firm's representation will be carried out. If we or any of the Debtors determine that there are material differences on one or more issues that cannot be resolved amicably or on terms compatible with the mutual best interests of the Debtors, then the Debtors and the Firm agree to discuss whether the issues can be resolved through contemporaneous consents by the Debtors, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Negev Investments, LLC
March 12, 2024
P a g e | 3

At present, there does not appear to be any conflict between the Debtors' interests concerning this engagement. However, as the engagement progresses, one or more conflicts could develop. If we or any of the Debtors determine that there are material conflicts between them that cannot be resolved amicably or on terms compatible with the mutual best interests of each of the Debtors, the Debtors and the Firm agree to discuss whether the conflicts can be resolved, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Your signatures below confirm that notwithstanding these disclosures and any existing or potential conflicts of interest which exist or may come into existence and you knowingly make the following acknowledgments and waivers:

(i)      you consent to the Firm's representation of each of the Debtors in the above-referenced matter;

(ii)     you acknowledge and agree that at no time will such representation of the Debtors be construed, claimed or deemed to be a breach of any fiduciary relationship, a conflict of interest or a violation of any other obligation to you, arising out of or relating to such representation;

(iii)    you agree that you shall not claim or contend that the Firm should be or is disqualified from representing any other Debtor in connection with the above-referenced matters or other foreseeable matters including defense or negotiation of claims made by other parties or insolvency proceedings by one or more of the Debtors, now or in the future;

(iv)     **Current and Advance Waiver: you understand that you may have now or in the future certain adverse claims against one or more of the other Debtors relating to liability to common creditors and hereby (a) waive such current conflicts and; and (b) make an advance waiver of such future conflicts;**

## II.

## FEES, COSTS, BILLS AND RETAINERS

Our goal is to charge a reasonable fee for the work we do. We want you to feel comfortable knowing that whenever you call, regardless of the legal problem, you will get quality work at a fair price or a referral to someone with the same concern for quality and fairness. That process begins with a detailed explanation of our billing procedures so that you can read and understand our bills.

Negev Investments, LLC
March 12, 2024
P a g e | **4**

The WZTS billing process was designed to give you detailed information about what we are doing, who is doing the work, how much time is spent, the rates being charged and the incidental expenses being incurred.  There are two types of charges which appear in different sections on our bills: "fees" and "costs." Fees are what you pay for professional time spent working on your case.  The time of each professional is multiplied by the hourly rate for that professional. The totals are then added.  Costs are out of pocket expenses related to your case which we advance for you.  You agree to reimburse us for those costs.

Fees.  Fees are billed in intervals of one tenth (.10) of an hour. The hourly rates for each billing professional are listed on a schedule included with this letter.  Those rates reflect different levels of experience and training. WZTS will not raise existing rates more than once per year and you will receive a notice at least 30 days before any rates are increased.  WZTS may add new professionals without notice.

Costs.  Only costs directly related to your case are included on your bill.  You will be charged, at our cost, for messenger services, long distance telephone calls, filing fees, deposition costs, postage, parking charges, outside copying jobs, and similar items.  In office copies and incoming faxes are charged at $.20 per page.  Outgoing faxes are charged $1.00 per page.  We charge you at the rate of $.66 per mile for any car travel.  Each entry on your bill for costs identifies the type of cost, the date incurred, the amount, and other identifying information.

Bills.  PLEASE REVIEW OUR BILLS.  We are human and we do occasionally make mistakes.  Call us about any suspected errors. The bills show a beginning balance, current charges, credits, adjustments, and the ending balance.  Payments received after the first of the following month appear on the next statement.

Retainer.  You have provided or agree to provide a $10,000 retainer (the "Retainer") to the Firm for the legal services the Firm performs and for the expenses the Firm incurs on Client's behalf. Payments made by credit card are charged at cost, a processing fee of approximately 2.75%. Before we file the bankruptcy petition we will assess the projected balance of the Retainer and may, in our reasonable discretion, require additional retainer funds or adequate carve-out from a proposed DIP loan.

The Retainer will be applied to our pre-filing services and costs when invoices are issued pre-filing and at the time of the commencement of the case with any Retainer balance held in our firm's segregated client trust account.

Upon filing the bankruptcy case we will promptly apply to the Bankruptcy Court to have our employment approved by the Court. We will request that any fees in excess of the Retainer be paid as an administrative claim and intend to seek permission from the Bankruptcy Court for the Debtor to pay our fees and costs monthly, with the Court retaining jurisdiction to review the fees and costs pursuant to a duly noticed fee application.

**If the Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.**

Negev Investments, LLC
March 12, 2024
P a g e | **5**

**Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party without your consent. Any person loaning funds to you or investing funds to pay some or all of the Retainer must be advised that we are not their counsel, can and will provide no advice to them and that they have the right to and we recommend they consult their own counsel in connection with any such loans or investments.**

Source of the Retainer. Due to strict conflict of interest laws built into the Bankruptcy Code, we must know who pays our Retainer and where the money came from. In this case, the source of the funds is from Commune Events, Inc.

If the initial Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.

Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party in their capacity as such without your consent.

Post-Petition Payments. We will request the Court to allow us to draw upon the balance of the Retainer and DIP carve-out, in accordance with the Guidelines of the Office of the United States Trustee. Any unpaid fees owed to WZTS must be paid as an administrative claim subject to approval of the Court, or upon entry of an Order dismissing the case.

Additional Fees and Costs. The rules of Chapter 11 prohibit the payment of fees and costs without specific Court authorization. For that reason, unless we receive authorization from the Court, fees and costs beyond the Retainer must accrue until we get proper Court authorization. The accrued amounts become due and payable on the day the Court enters an Order approving payment. The court order is the same as a judgment, so interest accrues at the federal judgment rate.

Fee Estimates. Some of our clients ask us to estimate their fees and costs for the bankruptcy. Chapter 11 cases are complex and involve many people. One or more of those people may take legal action against you during the case. Some actions are predictable; most are not. The actions may be settled quickly or may require multiple Court hearings. These challenges are initiated by others. You, the client, must decide how vigorously you wish to respond. By signing this letter, you confirm your understanding that fee estimates are completely unreliable and that you will be responsible for all fees and costs approved by the Court even if they are greater than any estimate WZTS has provided.

Fee Disputes. Any fee disputes will be resolved by the Bankruptcy Court.

Attorneys' Fees. In the event any claim, dispute and/or litigation arises out of this agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

Negev Investments, LLC
March 12, 2024
P a g e | 6

# IV.

## MISCELLANEOUS

<u>Communication</u>.  Because new issues can surface with little or no notice, we must be able to reach you quickly either to get information, provide you with options, or get copies of documents.  Please make sure that we always have your current address, phone, facsimile, pager and cell phone numbers.  If you are planning a vacation or will not be reachable, please let us know as far in advance as possible.  If it is possible, we will try to schedule events around that time.

If an emergency arises and we cannot contact you, you agree that we have complete authority to make any decision which must be made in your absence.  In the event we must make decisions in your absence, you also agree that we will not be responsible for having made decisions that prove to be less than ideal so long as the decisions appeared reasonable at the time.

<u>Professional Liability Insurance</u>.  For your protection, we maintain professional liability insurance.

<u>Attorney Client Privilege</u>.  If the Client is a partnership, corporation, LLP, LLC or some other form of business entity, and if a Chapter 11 or Chapter 7 trustee is appointed in the case, the trustee as new "management," is entitled to examine our entire legal file.  This includes any matters which may normally be covered by the attorney/client privilege.

<u>Withdrawal and Substitution of Counsel</u>.  Subject to certain legal restrictions (explained herein), either WZTS or the Client may end the attorney-client relationship at any time.  We will cooperate with the new attorney to make the transition as easy as possible.  You agree that we are entitled to be paid under this agreement for the transition work.  If we want to stop representing you, we will try to give you a thirty (30) day notice so that you may find another attorney.  At the end of that time, you agree to sign a form which relieves us as your counsel and allows you to represent yourself.  Your new attorneys can take over from that point.  We may withdraw as your counsel with less than 30 days of notice if withdrawal becomes necessary due to: problems in the attorney/client relationship; the rules of ethics; or whenever such notice is impractical.

If the Bankruptcy Court has approved our employment, we cannot be terminated and we cannot withdraw without the approval of the Court.  Even if our employment has not been approved, but we have merely made an appearance on your behalf before the Court, we must follow proper procedures before we can be terminated or before we can withdraw.

Our services end when we no longer have any responsibility for your case, and when we have been paid in full.  This means that even after we are terminated or we withdraw, our employment will continue until we have filed the proper Court motion for approval of our fees and costs.

<u>Other Attorneys</u>.  Sometimes we recommend that our clients hire another attorney with a different specialty.  We may be able to recommend one or more attorneys whom we believe to be capable of doing the job.  It is up to the Client, however, to meet with the attorney, decide if you

Negev Investments, LLC
March 12, 2024
P a g e | 7

wish to engage the attorney, and negotiate fees with that attorney.  Whether you choose the attorney we recommend or someone else, you agree that we are not to be responsible for work done by others.

Conversion.  This retainer agreement provides only for representation of you in your Chapter 11 case.  In the event your case is converted to another chapter of the Bankruptcy Code, including but not limited to Chapter 7, the firm is not and shall not be obligated to represent you in that converted case.

Client Files.  With extremely limited exceptions, the client file and everything in it belongs to the Client.  For that reason, the Client has the right to the Client's file.

If you ask for the file, we have the right to remove certain limited items such as attorney notes and documents needed to collect our fees and costs (such as the original of this retainer letter).  We generally also have the right to keep the file for a brief period of time to copy some or all of the file, which you agree to pay for such that it is copied at your expense.  Those copies belong to the firm.

Finally, we have the right to keep the file so long as we remain attorney of record and responsible for your case.

At the conclusion of our services (when all billing has been completed), you may ask for your file, or leave it with WZTS for storage.  WZTS will store the file for a period of two calendar years.  While we will take reasonable precautions during that time, we are not responsible if the file is accidentally lost or destroyed.  At the end of the two years, we will attempt to contact you by mail at the last known address.  We will advise you of our intent to destroy the file.  If we have not heard from you or you have not picked up your file within thirty (30) days after that notice, you agree that we may destroy the file and all of its contents.

## IV.

## INTRODUCTION TO CHAPTER 11

The goal of Chapter 11 is to produce a "plan."  That "plan" usually provides for repayment of some or all of the outstanding debt.  The process of producing a plan can be complicated, frustrating, expensive, and even risky.

We have well over 100 years collectively among our attorneys in representing Chapter 11 debtors and we believe that we have the experience to guide you through a minefield of rules and guidelines.  As part of that process, we do our best to anticipate upcoming problems and give you as much advance warning as possible.

The attached Addendum is the first step in that process.  It describes many of the rules and regulations which a Chapter 11 Debtor must follow.  Please read it carefully, several times.  We want you to understand what your case is all about, so please call with any questions.

Negev Investments, LLC
March 12, 2024
P a g e | **8**

## V.

## CONCLUSION

This letter is long and includes a lot of important information, but we believe it creates a good foundation for a successful working relationship.

After you have read the letter, and ONLY after we have answered any questions you may have, please sign the original (including initialing each page where indicated) and return it to the office. The copy is for your files.

Sincerely,

WEINTRAUB ZOLKIN TALERICO & SELTH, LLP

DERRICK TALERICO

Negev Investments, LLC
March 12, 2024
P a g e  | 9

## CLIENT STATEMENT

I have read this retainer letter. I understand how fees and costs will be charged. I agree to the terms described in Section II including the Retainer. I understand that estimates are not binding and agree that any disputes will either be resolved by the Bankruptcy Court or submitted to binding arbitration. The information I have provided about the source of the Retainer is correct and I understand that WZTS has a duty of undivided loyalty to Client notwithstanding the source of money used to pay the fees and costs. I understand when legal services begin and when they end. I understand that decisions concerning the employment and compensation of WZTS are subject to Bankruptcy Court approval. I understand what happens to files maintained by WZTS on behalf of its clients. I have received answers to every question I have asked, and I wish to employ Weintraub Zolkin Talerico & Selth LLP under the terms and conditions described in this retainer letter.

Dated: March 12, 2024          NEGEV INVESTMENTS, LLC

By: _____
Name: Alan Gomperts
Title: Authorized Representative

11766 Wilshire Blvd., Suite 450, Los Angeles, CA 90025
222 Pacific Coast Hwy., El Segundo, CA 90245

Weintraub Zolkin Talerico & Selth LLP

EXHIBIT 1 - Page 67

Negev Investments, LLC
March 12, 2024
Page | 10

# ADDENDUM TO CHAPTER 11 RETAINER LETTER

In this Addendum, "we" and "our" means the law offices of "Weintraub Zolkin Talerico & Selth LLP". "You" and "your" means you, our client. The purpose of this Addendum is to introduce advise you about the special rules which apply in Chapter 11 cases in general.

## OFFICE OF THE UNITED STATES TRUSTEE

The Office of the United States Trustee ("OUST") is a governmental agency assigned to monitor the progress of Chapter 11 cases. It is their job to be sure that debtors are following the rules and making progress in the case. If they believe that this is not so, they will ask the Court to dismiss the case, or to convert it to a Chapter 7 liquidation case.

To help them monitor the case, the OUST requires debtors to provide certain information. A list of what is required will be given to you with this Addendum. The list is very long, largely because each requirement is followed by information designed to help you satisfy the requirement.

Meeting the OUST requirements is one part of the case where you can control your legal fees. Experience has shown that clients who read the materials carefully need only a little bit of help from our office. The more you do, the less we do and the less we charge for doing it. The requirements generally require the debtor to provide information or copies of documents. We can and will remind you to provide these items, but ultimately, they must come from you.

If the items are not provided quickly enough, you will face a motion to dismiss or convert the case. Even if the Judge permits you to remain in Chapter 11 by denying the motion, you have spent thousands of dollars in legal fees AND you have damaged your reputation in the eyes of the Judge. This cannot help you the next time the Judge is asked to make a difficult decision about your case.

If you have any questions about the rules of Chapter 11 or the OUST requirements, please call the office. It is much better to ask questions now than to face a motion later.

Generally, when a new Chapter 11 case is filed the debtor is treated like a new person. If the debtor is not an individual, it must get a new IRS tax identification number. All debtors must open new bank accounts, take a physical inventory of business assets, and provide copies of all insurance policies then in force. There are many other requirements, all of which are described in the OUST materials we provide with this letter. If you have any questions about what is required or how to comply, please call the office as soon as possible.

Remember that complying with OUST guidelines and requirements is an important way to minimize your legal fees.

Negev Investments, LLC
March 12, 2024
P a g e | **11**

EXECUTORY CONTRACTS.

While an extended discussion of this topic is premature, we must have copies of all leases as soon as possible.  This includes office leases, warehouse leases, equipment leases, car leases and any other type of lease.  We also need copies of any contract which the debtor has signed, but which has not yet been completed by the debtor.

IF NO LEGAL ACTION IS TAKEN TO PRESERVE CERTAIN OF THESE LEASES AND CONTRACTS WITHIN THE FIRST SIXTY (60) DAYS AFTER THE CASE IS FILED, THE LEASES OR CONTRACT MAY BE TERMINATED.  If that happens, your only alternatives are to negotiate a new deal, or go without.

DISMISSAL OF YOUR CASE.

Once the case is filed, the debtor DOES NOT have the right to have the case dismissed. Instead, the permission of the Court is required and will be given only if it is in the best interests of EVERYONE concerned (including the creditors).  Accordingly, filing a Chapter 11 case is not something to be undertaken without careful thought and preparation.

CLIENT PARTICIPATION.

Regardless of who your attorney may be, there is no substitute for client participation. Our job consists of educating clients, describing options, estimating costs, and implementing client decisions.  Clients, not lawyers, must make strategic decisions. Clients, not lawyers, must consider the available options, the expected consequences of taking each action, and the costs required to take that action.  Clients should stay abreast of developments in the case so that they understand why the Court makes the decisions it does and they actions we recommend you take. Chapter 11 cases quickly deteriorate without active client participation.

Negev Investments, LLC
March 12, 2024
P a g e | 12

## CLIENT STATEMENT

I have read the Addendum to this retainer letter. I have received a copy of the OUST
materials. I have received the attached schedule of hourly billing rates.

Dated:  March 12, 2024                NEGEV INVESTMENTS, LLC

By: _____
Name: Alan Gomperts
Title: Authorized Representative

Negev Investments, LLC
March 12, 2024
P a g e | **13**

## WEINTRAUB ZOLKIN TALERICO & SELTH HOURLY RATES

| | |
|---|---|
| DANIEL J. WEINTRAUB | 695.00 |
| DAVID ZOLKIN | 650.00 |
| DERRICK TALERICO | 625.00 |
| JAMES R. SELTH | 585.00 |
| CATHERINE LIU | 525.00 |
| MARTHA ARAKI | 250.00 |
| SACHIE FRITZ | 175.00 |



Derrick Talerico
424-500-8552
*dtalerico@wztslaw.com*

File No.:

March 12, 2024

<u>VIA EMAIL ONLY</u>
SLA Investments, LLC
Attn: Alan Gomperts
Email: alangomperts@hotmail.com

        Re:      WZTS Chapter 11 Engagement Agreement

Dear Alan:

        This letter constitutes a formal agreement whereby SLA Investments LLC ("Client" or "you"), is retaining the law offices of Weintraub Zolkin Talerico & Selth LLP ("WZTS" or "firm") to represent it in a bankruptcy filing under Chapter 11 of the United States Bankruptcy Code. By signing this agreement, you are hiring WZTS to help you with the legal matter described herein.

        This letter details the scope of your engagement of the firm, it describes how we calculate our charges and how the charges are paid, and it sets forth important information about the attorney/client relationship. In addition, this letter provides you with an introduction to some of the rules of Chapter 11.

## I.

## SCOPE OF REPRESENTATION

        WZTS has agreed to provide you with legal services and you hereby agree to pay fees and costs related to those services. Specifically, you have requested that the Firm perform the following services on your behalf:

- advise you regarding the requirements and procedures of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, U.S. Trustee Guidelines and Local Bankruptcy Rules, that might affect you in a Chapter 11 bankruptcy;
- assist you in preparing and filing the Petition, Schedules, Statement of Financial Affairs and other documents required to commence the bankruptcy case;
- represent you in the bankruptcy case including efforts to formulate and confirm a Chapter 11 plan in the bankruptcy case.

WZTS has not agreed to perform any services on your behalf beyond those described above. Unless

SLA Investments, LLC
March 12, 2024
P a g e | **2**

the scope of this engagement is hereafter expressly expanded pursuant to a supplemental letter or email from the firm to you specifically describing the additional services to be performed, the scope of the engagement is limited to the performance of the above-described services.

<u>Joint Representation and Waiver of Possible Conflict</u>.

The Firm is concurrently being engaged by Seaton Investments, LLC, Colyton Investments, LLC, Broadway Investments, LLC, SLA Investments, LLC, and Negev Investments, LLC (together, the "Debtors") for the scope of services described above.

An important aspect of a joint representation is its effect on the attorney-client privilege and the confidentiality of information related to the representation. In general, a lawyer is required to keep each client informed of the proceedings and the subject matter of the representation so that each client can make informed decisions. At the same time, lawyers are also required to not disclose client confidences. However, when a lawyer represents multiple clients in a single matter or in related matters, the lawyer cannot simultaneously reveal important information to one client that was obtained from another client and still keep the information confidential.

The Firm cannot effectively represent each of the Debtors if we must preserve in confidence without disclosure to one of you the material information disclosed to us by the other relating to the engagement. Therefore, our agreement to represent you jointly is subject to the express condition and understanding that any material information related to the engagement that either of you discloses to the Firm, may be disclosed to the other Debtors if the Firm determines, in the exercise of its independent professional judgment, that knowledge of such information would be necessary for such other Debtor to make informed decisions regarding the engagement. This does not mean that anyone else (i.e., any third party) can gain access to such communications. Indeed, the privilege protecting the confidentiality of such communications would remain fully intact vis-a-vis third parties. Moreover, any of the Debtors would be able to waive that privilege without the consent of all of the Debtors.

At present, there does not appear to be any difference of opinion among the Debtors with respect to the basic terms of this engagement. However, on further consultation, it may turn out that the Debtors have differing opinions regarding the terms of the engagement, or regarding the means by which the Firm's representation will be carried out. If we or any of the Debtors determine that there are material differences on one or more issues that cannot be resolved amicably or on terms compatible with the mutual best interests of the Debtors, then the Debtors and the Firm agree to discuss whether the issues can be resolved through contemporaneous consents by the Debtors, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

SLA Investments, LLC
March 12, 2024
P a g e | 3

At present, there does not appear to be any conflict between the Debtors' interests concerning this engagement. However, as the engagement progresses, one or more conflicts could develop. If we or any of the Debtors determine that there are material conflicts between them that cannot be resolved amicably or on terms compatible with the mutual best interests of each of the Debtors, the Debtors and the Firm agree to discuss whether the conflicts can be resolved, or whether we must withdraw from representing one or more of the Debtors. **If the Firm determines, in its sole discretion, that it must withdraw from representing one or more of the Debtors for the reasons set forth in this paragraph, you agree that the Firm may terminate this agreement and cease its representation hereunder as to one or more of the Debtors and may continue to represent the remaining Debtor(s).**

Your signatures below confirm that notwithstanding these disclosures and any existing or potential conflicts of interest which exist or may come into existence and you knowingly make the following acknowledgments and waivers:

(i)     you consent to the Firm's representation of each of the Debtors in the above-referenced matter;

(ii)    you acknowledge and agree that at no time will such representation of the Debtors be construed, claimed or deemed to be a breach of any fiduciary relationship, a conflict of interest or a violation of any other obligation to you, arising out of or relating to such representation;

(iii)   you agree that you shall not claim or contend that the Firm should be or is disqualified from representing any other Debtor in connection with the above-referenced matters or other foreseeable matters including defense or negotiation of claims made by other parties or insolvency proceedings by one or more of the Debtors, now or in the future;

(iv)    **Current and Advance Waiver: you understand that you may have now or in the future certain adverse claims against one or more of the other Debtors relating to liability to common creditors and hereby (a) waive such current conflicts and; and (b) make an advance waiver of such future conflicts;**

## II.

## FEES, COSTS, BILLS AND RETAINERS

Our goal is to charge a reasonable fee for the work we do. We want you to feel comfortable knowing that whenever you call, regardless of the legal problem, you will get quality work at a fair price or a referral to someone with the same concern for quality and fairness. That process begins with a detailed explanation of our billing procedures so that you can read and understand our bills.

SLA Investments, LLC
March 12, 2024
P a g e | 4

    The WZTS billing process was designed to give you detailed information about what we are doing, who is doing the work, how much time is spent, the rates being charged and the incidental expenses being incurred.  There are two types of charges which appear in different sections on our bills: "fees" and "costs."  Fees are what you pay for professional time spent working on your case.  The time of each professional is multiplied by the hourly rate for that professional.  The totals are then added.  Costs are out of pocket expenses related to your case which we advance for you.  You agree to reimburse us for those costs.

    <u>Fees</u>.  Fees are billed in intervals of one tenth (.10) of an hour. The hourly rates for each billing professional are listed on a schedule included with this letter.  Those rates reflect different levels of experience and training. WZTS will not raise existing rates more than once per year and you will receive a notice at least 30 days before any rates are increased.  WZTS may add new professionals without notice.

    <u>Costs</u>.  Only costs directly related to your case are included on your bill.  You will be charged, at our cost, for messenger services, long distance telephone calls, filing fees, deposition costs, postage, parking charges, outside copying jobs, and similar items.  In office copies and incoming faxes are charged at $.20 per page.  Outgoing faxes are charged $1.00 per page.   We charge you at the rate of $.66 per mile for any car travel.  Each entry on your bill for costs identifies the type of cost, the date incurred, the amount, and other identifying information.

    <u>Bills</u>.  PLEASE REVIEW OUR BILLS.  We are human and we do occasionally make mistakes.  Call us about any suspected errors. The bills show a beginning balance, current charges, credits, adjustments, and the ending balance.  Payments received after the first of the following month appear on the next statement.

    <u>Retainer</u>.  You have provided or agree to provide a $20,000 retainer (the "Retainer") to the Firm for the legal services the Firm performs and for the expenses the Firm incurs on Client's behalf. Payments made by credit card are charged at cost, a processing fee of approximately 2.75%. Before we file the bankruptcy petition we will assess the projected balance of the Retainer and may, in our reasonable discretion, require additional retainer funds or adequate carve-out from a proposed DIP loan.

    The Retainer will be applied to our pre-filing services and costs when invoices are issued pre-filing and at the time of the commencement of the case with any Retainer balance held in our firm's segregated client trust account.

    Upon filing the bankruptcy case we will promptly apply to the Bankruptcy Court to have our employment approved by the Court. We will request that any fees in excess of the Retainer be paid as an administrative claim and intend to seek permission from the Bankruptcy Court for the Debtor to pay our fees and costs monthly, with the Court retaining jurisdiction to review the fees and costs pursuant to a duly noticed fee application.

    **If the Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.**

SLA Investments, LLC
March 12, 2024
P a g e | 5

**Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party without your consent. Any person loaning funds to you or investing funds to pay some or all of the Retainer must be advised that we are not their counsel, can and will provide no advice to them and that they have the right to and we recommend they consult their own counsel in connection with any such loans or investments.**

Source of the Retainer. Due to strict conflict of interest laws built into the Bankruptcy Code, we must know who pays our Retainer and where the money came from. In this case, the source of the funds is from Commune Events, Inc.

If the initial Retainer or any later payments for your matter are paid by a third party, by signing below you acknowledge and agree that the firm may be paid by such party.

Notwithstanding any such payments, the firm's duty of loyalty is only to you, the client, and no information about your case will be shared or disclosed to any third party in their capacity as such without your consent.

Post-Petition Payments. We will request the Court to allow us to draw upon the balance of the Retainer and DIP carve-out, in accordance with the Guidelines of the Office of the United States Trustee. Any unpaid fees owed to WZTS must be paid as an administrative claim subject to approval of the Court, or upon entry of an Order dismissing the case.

Additional Fees and Costs. The rules of Chapter 11 prohibit the payment of fees and costs without specific Court authorization. For that reason, unless we receive authorization from the Court, fees and costs beyond the Retainer must accrue until we get proper Court authorization. The accrued amounts become due and payable on the day the Court enters an Order approving payment. The court order is the same as a judgment, so interest accrues at the federal judgment rate.

Fee Estimates. Some of our clients ask us to estimate their fees and costs for the bankruptcy. Chapter 11 cases are complex and involve many people. One or more of those people may take legal action against you during the case. Some actions are predictable; most are not. The actions may be settled quickly or may require multiple Court hearings. These challenges are initiated by others. You, the client, must decide how vigorously you wish to respond. By signing this letter, you confirm your understanding that fee estimates are completely unreliable and that you will be responsible for all fees and costs approved by the Court even if they are greater than any estimate WZTS has provided.

Fee Disputes. Any fee disputes will be resolved by the Bankruptcy Court.

Attorneys' Fees. In the event any claim, dispute and/or litigation arises out of this agreement, the prevailing party shall be entitled to recovery of its attorneys' fees and costs incurred in prosecuting or defending said claim, dispute and/or litigation.

SLA Investments, LLC
March 12, 2024
P a g e | 6

## IV.

## MISCELLANEOUS

Communication.  Because new issues can surface with little or no notice, we must be able to reach you quickly either to get information, provide you with options, or get copies of documents.  Please make sure that we always have your current address, phone, facsimile, pager and cell phone numbers.  If you are planning a vacation or will not be reachable, please let us know as far in advance as possible.  If it is possible, we will try to schedule events around that time.

If an emergency arises and we cannot contact you, you agree that we have complete authority to make any decision which must be made in your absence.  In the event we must make decisions in your absence, you also agree that we will not be responsible for having made decisions that prove to be less than ideal so long as the decisions appeared reasonable at the time.

Professional Liability Insurance.  For your protection, we maintain professional liability insurance.

Attorney Client Privilege.  If the Client is a partnership, corporation, LLP, LLC or some other form of business entity, and if a Chapter 11 or Chapter 7 trustee is appointed in the case, the trustee as new "management," is entitled to examine our entire legal file.  This includes any matters which may normally be covered by the attorney/client privilege.

Withdrawal and Substitution of Counsel.  Subject to certain legal restrictions (explained herein), either WZTS or the Client may end the attorney-client relationship at any time.  We will cooperate with the new attorney to make the transition as easy as possible.  You agree that we are entitled to be paid under this agreement for the transition work.  If we want to stop representing you, we will try to give you a thirty (30) day notice so that you may find another attorney.  At the end of that time, you agree to sign a form which relieves us as your counsel and allows you to represent yourself.  Your new attorneys can take over from that point.  We may withdraw as your counsel with less than 30 days of notice if withdrawal becomes necessary due to: problems in the attorney/client relationship; the rules of ethics; or whenever such notice is impractical.

If the Bankruptcy Court has approved our employment, we cannot be terminated and we cannot withdraw without the approval of the Court.  Even if our employment has not been approved, but we have merely made an appearance on your behalf before the Court, we must follow proper procedures before we can be terminated or before we can withdraw.

Our services end when we no longer have any responsibility for your case, and when we have been paid in full.  This means that even after we are terminated or we withdraw, our employment will continue until we have filed the proper Court motion for approval of our fees and costs.

Other Attorneys.  Sometimes we recommend that our clients hire another attorney with a different specialty.  We may be able to recommend one or more attorneys whom we believe to be capable of doing the job.  It is up to the Client, however, to meet with the attorney, decide if you

SLA Investments, LLC
March 12, 2024
P a g e | 7

wish to engage the attorney, and negotiate fees with that attorney.  Whether you choose the attorney we recommend or someone else, you agree that we are not to be responsible for work done by others.

   Conversion.  This retainer agreement provides only for representation of you in your Chapter 11 case.  In the event your case is converted to another chapter of the Bankruptcy Code, including but not limited to Chapter 7, the firm is not and shall not be obligated to represent you in that converted case.

   Client Files.  With extremely limited exceptions, the client file and everything in it belongs to the Client.  For that reason, the Client has the right to the Client's file.

   If you ask for the file, we have the right to remove certain limited items such as attorney notes and documents needed to collect our fees and costs (such as the original of this retainer letter).  We generally also have the right to keep the file for a brief period of time to copy some or all of the file, which you agree to pay for such that it is copied at your expense.  Those copies belong to the firm.

   Finally, we have the right to keep the file so long as we remain attorney of record and responsible for your case.

   At the conclusion of our services (when all billing has been completed), you may ask for your file, or leave it with WZTS for storage.  WZTS will store the file for a period of two calendar years.  While we will take reasonable precautions during that time, we are not responsible if the file is accidentally lost or destroyed.  At the end of the two years, we will attempt to contact you by mail at the last known address.  We will advise you of our intent to destroy the file.  If we have not heard from you or you have not picked up your file within thirty (30) days after that notice, you agree that we may  destroy the file and all of its contents.

## IV.

## INTRODUCTION TO CHAPTER 11

   The goal of Chapter 11 is to produce a "plan."  That "plan" usually provides for repayment of some or all of the outstanding debt.  The process of producing a plan can be complicated, frustrating, expensive, and even risky.

   We have well over 100 years collectively among our attorneys in representing Chapter 11 debtors and we believe that we have the experience to guide you through a minefield of rules and guidelines.  As part of that process, we do our best to anticipate upcoming problems and give you as much advance warning as possible.

   The attached Addendum is the first step in that process.  It describes many of the rules and regulations which a Chapter 11 Debtor must follow.  Please read it carefully, several times.  We want you to understand what your case is all about, so please call with any questions.

SLA Investments, LLC
March 12, 2024
P a g e | **8**

## V.

## CONCLUSION

      This letter is long and includes a lot of important information, but we believe it creates a good foundation for a successful working relationship.

      After you have read the letter, and ONLY after we have answered any questions you may have, please sign the original (including initialing each page where indicated) and return it to the office. The copy is for your files.

        Sincerely,

        WEINTRAUB ZOLKIN TALERICO  & SELTH, LLP

        DERRICK TALERICO

SLA Investments, LLC
March 12, 2024
P a g e | 9

## CLIENT STATEMENT

I have read this retainer letter.  I understand how fees and costs will be charged.  I agree to the terms described in Section II including the Retainer.  I understand that estimates are not binding and agree that any disputes will either be resolved by the Bankruptcy Court or submitted to binding arbitration.  The information I have provided about the source of the Retainer is correct and I understand that WZTS has a duty of undivided loyalty to Client notwithstanding the source of money used to pay the fees and costs.  I understand when legal services begin and when they end.  I understand that decisions concerning the employment and compensation of WZTS are subject to Bankruptcy Court approval.  I understand what happens to files maintained by WZTS on behalf of its clients.  I have received answers to every question I have asked, and I wish to employ Weintraub Zolkin Talerico & Selth LLP under the terms and conditions described in this retainer letter.

Dated:  March 12, 2024                    SLA INVESTMENTS, LLC

By:_____

Alan D. Gomperts
Managing Member

SLA Investments, LLC
March 12, 2024
P a g e | 10

<h1 style="text-align:center"><u>ADDENDUM TO CHAPTER 11 RETAINER LETTER</u></h1>

In this Addendum, "we" and "our" means the law offices of "Weintraub Zolkin Talerico & Selth LLP". "You" and "your" means you, our client. The purpose of this Addendum is to introduce advise you about the special rules which apply in Chapter 11 cases in general.

<u>OFFICE OF THE UNITED STATES TRUSTEE</u>

The Office of the United States Trustee ("OUST") is a governmental agency assigned to monitor the progress of Chapter 11 cases. It is their job to be sure that debtors are following the rules and making progress in the case. If they believe that this is not so, they will ask the Court to dismiss the case, or to convert it to a Chapter 7 liquidation case.

To help them monitor the case, the OUST requires debtors to provide certain information. A list of what is required will be given to you with this Addendum. The list is very long, largely because each requirement is followed by information designed to help you satisfy the requirement.

Meeting the OUST requirements is one part of the case where you can control your legal fees. Experience has shown that clients who read the materials carefully need only a little bit of help from our office. The more you do, the less we do and the less we charge for doing it. The requirements generally require the debtor to provide information or copies of documents. We can and will remind you to provide these items, but ultimately, they must come from you.

If the items are not provided quickly enough, you will face a motion to dismiss or convert the case. Even if the Judge permits you to remain in Chapter 11 by denying the motion, you have spent thousands of dollars in legal fees AND you have damaged your reputation in the eyes of the Judge. This cannot help you the next time the Judge is asked to make a difficult decision about your case.

If you have any questions about the rules of Chapter 11 or the OUST requirements, please call the office. It is much better to ask questions now than to face a motion later.

Generally, when a new Chapter 11 case is filed the debtor is treated like a new person. If the debtor is not an individual, it must get a new IRS tax identification number. All debtors must open new bank accounts, take a physical inventory of business assets, and provide copies of all insurance policies then in force. There are many other requirements, all of which are described in the OUST materials we provide with this letter. If you have any questions about what is required or how to comply, please call the office as soon as possible.

Remember that complying with OUST guidelines and requirements is an important way to minimize your legal fees.

SLA Investments, LLC
March 12, 2024
P a g e | **11**

EXECUTORY CONTRACTS.

While an extended discussion of this topic is premature, we must have copies of all leases as soon as possible. This includes office leases, warehouse leases, equipment leases, car leases and any other type of lease. We also need copies of any contract which the debtor has signed, but which has not yet been completed by the debtor.

IF NO LEGAL ACTION IS TAKEN TO PRESERVE CERTAIN OF THESE LEASES AND CONTRACTS WITHIN THE FIRST SIXTY (60) DAYS AFTER THE CASE IS FILED, THE LEASES OR CONTRACT MAY BE TERMINATED. If that happens, your only alternatives are to negotiate a new deal, or go without.

DISMISSAL OF YOUR CASE.

Once the case is filed, the debtor DOES NOT have the right to have the case dismissed. Instead, the permission of the Court is required and will be given only if it is in the best interests of EVERYONE concerned (including the creditors). Accordingly, filing a Chapter 11 case is not something to be undertaken without careful thought and preparation.

CLIENT PARTICIPATION.

Regardless of who your attorney may be, there is no substitute for client participation. Our job consists of educating clients, describing options, estimating costs, and implementing client decisions. Clients, not lawyers, must make strategic decisions. Clients, not lawyers, must consider the available options, the expected consequences of taking each action, and the costs required to take that action. Clients should stay abreast of developments in the case so that they understand why the Court makes the decisions it does and they actions we recommend you take. Chapter 11 cases quickly deteriorate without active client participation.

SLA Investments, LLC
March 12, 2024
P a g e | **12**

## **CLIENT STATEMENT**

I have read the Addendum to this retainer letter.  I have received a copy of the OUST materials.  I have received the attached schedule of hourly billing rates.

Dated:  March 12, 2024                    SLA INVESTMENTS, LLC

By _____

Alan D. Gomperts
Managing Member

SLA Investments, LLC
March 12, 2024
P a g e | **13**

## WEINTRAUB ZOLKIN TALERICO & SELTH HOURLY RATES

| | |
|---|---|
| DANIEL J. WEINTRAUB | 695.00 |
| DAVID ZOLKIN | 650.00 |
| DERRICK TALERICO | 625.00 |
| JAMES R. SELTH | 585.00 |
| CATHERINE LIU | 525.00 |
| MARTHA ARAKI | 250.00 |
| SACHIE FRITZ | 175.00 |

# EXHIBIT 2

# Biographies

EXHIBIT 2 - Page 85



# Derrick Talerico

Mr. Talerico's practice centers on bankruptcy, restructuring, and commercial litigation. He is versed in all aspects of financial restructuring, having represented debtors, creditors, and other interest holders in and out of court for more than two decades.  His litigation practice focuses on general commercial disputes.

Prior to founding Weintraub Zolkin Talerico & Selth LLP, Mr. Talerico was a founding partner of Zolkin Talerico LLP.  He began his career practicing for over ten years at the international law firms of Milbank LLP and Loeb & Loeb LLP.

Mr. Talerico represents debtors, secured and unsecured creditors, creditor committees, asset purchasers, receivers, and trustees, in regional and national restructuring matters, both in-court and out-of-court.  He has represented clients in bankruptcy cases throughout California and the United States, from Texas to New York, Delaware, and Florida.

As a litigator, Mr. Talerico has prosecuted and defended a wide range of commercial disputes including fraud, intellectual property, lender liability, insurance, re-insurance, and real estate, among others in both state and federal court. In appellate practice, he has successfully argued before both District Courts and Bankruptcy Appellate Panels.

Education

> University of Texas at Austin School of Law, Austin, TX; JD
> Bond University, Gold Coast, Australia; Legal Studies
> University of Richmond, Richmond, VA; B.S. Business Administration, B.A.
> Psychology

Professional Activities

> American Bankruptcy Institute
> Financial Lawyers Conference
> National Conference of Bankruptcy Judges
> Los Angeles Bankruptcy Forum

Awards & Recognition

> INSOL Fellow (international and cross-border specialist)
> Public Counsel Attorney of the Year Award - Early Childcare Education Project
> Milbank Tweed Pro Bono Award



# David B. Zolkin

Mr. Zolkin has been a corporate restructuring attorney for over 30 years and has experience in all aspects of financial restructuring, insolvency law and processes.

Prior to founding Weintraub Zolkin Talerico & Selth LLP, he was a founding partner of the bankruptcy and business litigation boutique of Zolkin Talerico LLP.  Prior to that, Mr. Zolkin was an attorney at the Wall Street law firm of Milbank LLP, where he represented debtors, equity owners, financial institutions, first and second lien lenders, hedge and bond funds, trade creditors, chapter 11 trustees and debt and asset purchasers in complex restructurings, workouts and foreclosures across a variety of industry sectors.

Mr. Zolkin provides his clients with in-court and out-of-court legal strategies and approaches designed to lead to value maximization. His expertise spans various legal and business documents, including secured and unsecured debt documents, indentures, servicing agreements, purchase and sale agreements, confidentiality documents and other commercial and business contracts. He has negotiated and drafted restructuring term sheets, plans of reorganization, cash collateral and debtor in possession financing agreements and orders, bidding procedures for assets sales, sale agreements and other pleadings and documents required in chapter 11 bankruptcy cases.

He has represented clients in bankruptcy cases and out-of-court restructurings that have taken place throughout the United States, including, California, New York, Delaware, Illinois, Indiana, Texas, Louisiana, Nevada, Arizona, Washington and Oregon.

Education

 J.D., University of Southern California, Gould School of Law
 B.A., University of California, Los Angeles

Professional Activities

 American Bankruptcy Institute
 Los Angeles Bankruptcy Forum



**Martha Araki** – Paralegal

Martha Araki has worked as a paralegal with law firms specializing in bankruptcy and litigation for more than 35 years. Ms. Araki attended Washington State University, completing classes towards a Bachelor of Arts Degree in English. She has worked with some of the most distinguished law firms in Los Angeles specializing in debtor representation practice in Chapters 11 and 7 cases in the Central District, Northern District, Eastern District and Southern District of California, in the District of Nevada, and in Honolulu, Hawaii. Ms. Araki attends multiple bankruptcy-related MCLE seminars to maintain paralegal compliance and was a member of IWIRC (International Women's Insolvency & Restructuring Confederation).

Prior to working with Weintraub Zolkin Talerico & Selth LLP, Ms. Araki was a senior paralegal with Zolkin Talerico LLP, Jeffer Mangels Butler & Marmaro LLP (now Jeffer Mangels Butler & Mitchell LLP) and Levene & Eisenberg, P.C., among others. She has also worked as a project manager at BMC Group, which is a leading global provider of legal, financial and corporate information management solutions that handles administrative and claims processing for large bankruptcy cases nationwide.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF APPLICATION OF CORPORATE CHAPTER 11 DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY WEINTRAUB ZOLKIN TALERICO & SELTH LLP, AS GENERAL BANKRUPTCY COUNSEL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 19, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF Service List

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   April 19, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

See attached US Mail Service List

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 19, 2024 | Martha E. Araki | */s/ Martha E. Araki* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

Seaton Investments, LLC – Jointly Administered

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Debtors Seaton Investment, LLC, Colyton Investments, LLC, Broadway Avenue Investments, LLC, Negev Investments, LLC, SLA Investments, LCC.</u>: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com
- <u>Attorneys for Debtors Alan Gomperts, Daniel Halevy, Susan Haley</u>: **Zev Shechtman, Carol Chow, Turner Falk**: zev.shechtman@salu.com; zshechtman@ecf.inforuptcy.com; carol.chow@saul.com; easter.santamaria@saul.com; turner.falk@saul.com
- <u>Attorneys for Creditor Korth Direct Mortgage, Inc.</u>: **Tanya Behnam**: tbehnam@polsinelli.com, tanyabehnam@gmail.com; ccripe@polsinelli.com; ladocketing@polsinelli.com
- <u>Attorneys for Creditor Archway Real Estate Income Fund I SPE I, LLC</u>: **Michael G. Fletcher, Bruce D. Poltrock, Gerrick Warrington**: mfletcher@frandzel.com; gwarrington@frandzel.com; bpoltrock@frandzel.com; sking@frandzel.com; achase@frandzel.com
- <u>Courtesy NEF/Interested Party</u>: **Todd S Garan**: ch11ecf@aldridgepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Jacqueline L James**: jjames@hrhlaw.com
- <u>Courtesy NEF/Interested Party</u>: **Jennifer C Wong**: bknotice@mccartyholthus.com; jwong@ecf.courtdrive.com
- <u>US Trustee's Office</u>: ustpregion16.la.ecf@usdoj.gov; **Kelly L. Morrison**: Kelly.l.morrison@usdoj.gov
- 

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

Seaton Investments, LLC
264 S Oakhurst Dr
Beverly Hills, CA 90212-3504

Colyton Investments LLC
421 Colyton St
Los Angeles, CA 90013-2210

Broadway Avenue Investments, LLC
264 S. Oakhurst Dr
Beverly Hills, CA 90212-3504

SLA Investments, LLC
264 S Oakhurst Dr
Beverly Hills, CA 90212-3504

Negev Investments LLC
257 S Linden Dr
Beverly Hills, CA 90212-3705

Alan D Gomperts
264 S Oakhurst Dr
Beverly Hills, CA 90212-3504

Daniel Halevy
8561 Horner St
Los Angeles, CA 90035

Sue Halevy
257 S Linden Dr
Beverly Hills, CA 90212-3704

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Archway Real Estate Income
Fund I SPE I, LLC
10100 Santa Monica Blvd Ste 500
Los Angeles, CA 90067-4121

Archway Real Estate Income
Fund I SPE I, LLC
Frandzel - c/o Michael Fletcher
1000 Wilshire Blvd 19th Fl
Los Angeles, CA 90017

Harvest Small Business Finance (SBA)
24422 Avenida de la Carlota Ste 400
Laguna Hills, CA 92653-3634

Korth Direct Mortgage Inc
135 San Lorenzo Ave Ste 600
Miami, FL 33146-1875

Korth Direct Mortgage Inc.
c/o Polsinelli LLP
2049 Century Park East Suite 2900
Los Angeles, CA 90067-3221

Los Angeles County Treasurer / Tax
Collector
Attn Bankruptcy Unit
PO Box 54110
Los Angeles Ca 90054-0110

US Small Business Administration
14925 Kingsport Rd
Fort Worth, TX 76155-2243

US Small Business Administration
409 3rd St SW
Washington, DC 20416-0005

U S  Small Business Administration
312 N Spring St 5th Floor
Los Angeles Ca 90012-2678

CA Dept of Tax and Fee Admin
Account Info Group MIC29
PO Box 942879
Sacramento, CA 94279-0029

Employment Development Dept
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

802 Mateo Street LLC
Attn Daniel Halevy
802 Mateo St
Los Angeles, CA 90021-1712

Alta Fire Pro
PO Box 7007
Mission Hills, CA 91346-7007

Balboa Capital Corporation
575 Anton Boulevard 12h Floor
Costa Mesa Ca 92626-7685

California Refrigeration & Supply
1926 Glendon Ave Apt 4
Los Angeles, CA 90025-4661

Deborah Feldman Esq
12466 Marsh Pointe Rd
Sarasota, FL 34238-2115

Deborah Feldman Esq
24611 Mulholland Hwy
Calabasas, CA 91302-2325

Los Angeles Dept of Water and Power
PO Box 30808
Los Angeles, CA 90030-0808

Mark Berkowitz CPA
5850 Canoga Ave Suite 220
Woodland Hills, CA 91367-6505

Mordechai Miky Acoca
1926 Glendon Ave #4
Los Angeles, CA 90025-4661

RG Fire Inc
8721 Laurel Canyon Blvd
Sun Valley, CA 91352-2919

Sienna Rose Inc
433 Colyton St
Los Angeles, CA 90013-2210

Simply Electrical
14101 S Budlong Ave
Gardena, CA 90247-2231

Southern California Edison Company
1551 W San Bernardino Road
Covina Ca 91722-3407

Southern California Gas
Centralized Correspondence
PO Box 1626
Monterey Park, CA 91754-8626

Urban Lime
915 Mateo St
Los Angeles, CA 90021-1784

American Express
PO Box 001
Los Angeles, CA 90096-0001

Silver Jeans
Attn Robert Silver
433 Colyton St Stes 201-203
Los Angeles, CA 90013-2210

Riverside County Tax Collector
PO Box 12005
Riverside, CA 92502-2205

Seapiper Inn Inc
264 S Oakhurst Dr
Beverly Hills, CA 90212-3504

Joshua Mogin Esq
Thompson Coburn LLP
10100 Santa Monica Blvd Ste 500
Los Angeles, CA 90067-4121

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
11766 Wilshire Blvd., Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled: **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION [LBR 9013-1(o)(3)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
05/14/2024
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF service list

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 05/14/2024 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
The Honorable Vincent Zurzolo          (via Priority Mail)
United States Bankruptcy Court
255 E Temple St, Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/14/2024 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.