Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
David B. Zolkin (State Bar No. 155410)
dzolkin@wztslaw.com
WEINTRAUB ZOLKIN
TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

Counsel to Debtors Seaton Investments, LLC,
Colyton Investments, LLC, Broadway Avenue
Investments, LLC, SLA Investments, LLC,
and Negev Investments, LLC

Zev Shechtman (State Bar No. 266280)
Zev.Shechtman@saul.com
Carol Chow (State Bar No. 169299)
carol.chow@saul.com
Turner N. Falk (Admitted pro hac vice)
turner.falk@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100

Counsel to Debtors
Alan Gomperts, Daniel Halevy, and
Susan Halevy

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

In re:

SEATON INVESTMENTS, LLC, *et al.*,

Debtors and Debtors in Possession.

☐ Affects All Debtors.

☒ Affects Seaton Investments, LLC

☒ Affects Colyton Investments, LLC

☐ Affects Broadway Avenue Investments, LLC

☒ Affects SLA Investments, LLC

☒ Affects Negev Investments, LLC

☒ Affects Alan Gomperts

☐ Affects Daniel Halevy

☒ Affects Susan Halevy

Lead Case No. 2:24-bk-12079-VZ

Jointly Administered with Case Nos.:
2:24-bk-12080-VZ; 2:24-bk-12081-VZ;
2:24-bk-12082-VZ; 2:24-bk-12091-VZ;
2:24-bk-12074-VZ; 2:24-bk-12075-VZ and
2:24-bk-12076-VZ

Chapter 11

**MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(C)(2); DECLARATIONS OF ALAN GOMPERTS, SUSAN HALEVY, DANIEL HALEVY AND DERRICK TALERICO IN SUPPORT THEREOF**

Hearing:

[TO BE SET BY COURT PURSUANT TO APPLICATION FOR SHORTENED NOTICE]

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF FACTS .................................................................................................. 2

    A.  Jurisdiction and Venue ........................................................................................ 2

    B.  Background and The Debtors' Businesses ........................................................... 2

        1.  General ...................................................................................................... 2

        2.  Seaton & Colyton .................................................................................... 3

        3.  Broadway .................................................................................................. 5

        4.  Negev Investments, LLC .......................................................................... 7

        5.  SLA Investments, LLC ............................................................................ 7

        6.  The Individual Guarantors ...................................................................... 8

    C.  The Secured Creditors, Real Property Collateral Values, and
        Proposed Use of Cash Collateral ........................................................................ 8

        •  Seaton and Colyton ................................................................................. 8

        •  SLA ......................................................................................................... 10

        •  Negev ...................................................................................................... 11

        •  Alan Gomperts ........................................................................................ 12

        •  Susan Halevy ........................................................................................... 14

II.  ARGUMENT ............................................................................................................... 16

    A.  The Debtors Should be Authorized to Use Cash Collateral Pursuant to
        11 U.S.C. § 363 to Operate, Maintain, and Preserve Assets of the Estate .............. 16

    B.  Secured Creditors are Adequately Protected ..................................................... 17

        1.  Certain Secured Creditors Interests are Adequately
            Protected by an Equity Cushion ............................................................. 18

        2.  Archway's and KDM's Interests are Protected by the
            Preservation of Real Property Value ...................................................... 19

        3.  Archway's and KDM's Interests May be Further Protected
            by Replacement Liens in Non-Debtor Real Property ................................. 20

III.  CONCLUSION ............................................................................................................ 22

Declaration of Alan Gomperts ..................................................................................... 23

Declaration of Susan Halevy ........................................................................................ 57

Declaration of Daniel Halevy ....................................................................................... 58

Declaration of Derrick Talerico .................................................................................... 62

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Dynaco Corp.*,
    162 B.R. 389 (Bankr. D.N.H. 1993)...................................................................... 17

*In re Forest Ridge, II, Ltd. Partnership*,
    116 B.R. 937 (Bankr. W.D.N.C. 1990) ............................................................... 20

*In re Llewellyn*,
    27 B.R. 481 (Bankr. M.D. Pa. 1983) ................................................................... 18,

*In re McCombs Properties VI, Ltd.*,
    88 B.R. 261 (Bankr. C.D. Cal. 1988) ........................................................ 17, 18, 20

*In re Mellor*,
    734 F.2d 1396 (9th Cir. 1984) ...................................................................... 17, 18

*In re O'Connor*,
    808 F.2d 1393 (10th Cir. 1987) ........................................................................... 17

*In re River W. Plaza-Chicago, LLC*,
    2010 Bankr. LEXIS 5378, *3 .............................................................................. 20

*In re San Clemente Estates*,
    5 B.R. 605 (Bankr. S.D. Cal. 1980) .................................................................... 18

*In re Statbucker*,
    4 B.R. 251 (Bankr. D. Neb. 1980) ...................................................................... 18

*Robert Neier v. Clark Oil & Refining Corp. (In re Apex Oil Company)*,
    85 B.R. 538 (Bankr. E.D. Mo. 1988) .................................................................. 18

*United Savings Association v. Timbers of Inwood Forest Associates*,
    484 U.S. 365 (1988) ........................................................................... 17, 18, 20

## STATUTES

11 U.S.C. § 361(2)............................................................................................... 20

11 U.S.C. § 361(3)............................................................................................... 19

11 U.S.C. § 363(a).......................................................................................... 17, 18

11 U.S.C. § 363(c)(1)........................................................................................... 16

11 U.S.C. § 363(c)(2)........................................................................................... 17

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

11 U.S.C. § 363(c)(2)(A)................................................................................17
17

11 U.S.C. § 363(c)(2)(B)................................................................................17

11 U.S.C. § 552(b)(2)....................................................................................18

11 U.S.C. § 1107(a)......................................................................................16

28 U.S.C. § 157..............................................................................................2

28 U.S.C. § 157(b)(2)(A)...............................................................................2

28 U.S.C. § 157(b)(2)(M)..............................................................................2

28 U.S.C. § 157(b)(2)(O)...............................................................................2

28 U.S.C. 1334..............................................................................................2

28 U.S.C. 1408..............................................................................................2

28 U.S.C. 1409..............................................................................................2

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 750
LOS ANGELES, CA 90025

Seaton Investments, LLC, ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), Negev Investments, LLC ("Negev," together with Seaton, Colyton, Broadway, and SLA, the "Corporate Debtors"), Susan Halevy ("Susan" or "Susan Halevy"), Daniel Halevy ("Daniel" or "Daniel Halevy"), and Alan Gomperts ("Alan" or "Alan Gomperts," together with Susan and Daniel, the "Individual Debtors," and the Individual Debtors, collectively with the Corporate Debtors, the "Debtors"), the debtors and debtors-in-possession in the pending jointly administered chapter 11 bankruptcy cases herein (the "Bankruptcy Cases"), hereby move (the "Motion") this court (the "Court"), for the entry of an order authorizing use of cash collateral pursuant to 11 U.S.C. § 363(c)(2).

## I.    STATEMENT OF FACTS

### A.    Jurisdiction and Venue

The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    Background and The Debtors' Businesses

On March 18, 2024 (the "Individual Petition Date") and on March 19, 2024 (the "Corporate Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. The Debtors continue to operate and manage their affairs as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in the Bankruptcy Cases.

#### 1.    General

The Individual Debtors are family and operate a family business together. Debtor Susan Halevy is mother to debtor Daniel Halevy and three other non-debtor children, including Sharon Gomperts, wife of debtor Alan Gomperts.

Susan's husband, David Halevy (deceased), together with Daniel and Alan, and on occasion non-debtor Simon Harkham, invest in and operate real estate properties, including debtors Seaton, Broadway and SLA. Upon David Halevy's passing in 2023, his interests, to the extent they were

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

not community property, passed to Susan via the Halevy Trust (defined below). As such, Susan

Halevy is now the owner – direct, beneficial, equitable, or otherwise – of all interests in the various

Debtors previously owned by David Halevy.

These Bankruptcy Cases present two real estate investments that require a restructuring to

address defaults on their senior loans: (1) the buildings at 440 Seaton Street, Los Angeles, CA,

90013 (the "Seaton Building"), and 421 Colyton Street, Los Angeles, CA, 90013 (the "Colyton

Building"), which together are operated as an economic unit (the "Seaton/Colyton Buildings") and

are owned by Debtors Seaton and Colyton, respectively; and (2) the building at 737 S. Broadway,

Los Angeles, CA, 90014 (the "Broadway Building"), owned by Debtor Broadway.

The Individual Debtors have each jointly and severally guaranteed (1) certain debt owed to

KDM California LLC ("KDM") on account of KDM's $37.1 million in principal amount loaned

jointly to Seaton and Colyton and secured by the Seaton/Colyton Buildings, and (2) approximately

$19.1 million of loans made by Archway Capital ("Archway") on account of the Broadway

Building (the "Broadway Loans"). The Individual Debtors' guaranty liability to Archway is

bifurcated into secured and unsecured tranches. Approximately $15 million of Archway's

Broadway Loans are made directly to Broadway and guaranteed by the Individual Debtors without

collateral. Approximately $4 million of Archway's Broadway Loans are made pursuant to three

loans to related entities or groups and are secured by pledges of various real properties owned by

the Individual Debtors, 1040 S. Los Angeles Street, Los Angeles, CA (owned and pledged by SLA),

and 12800 Foxdale Drive, Desert Hot Springs, CA (owned and pledged by Negev).

Archway has commenced an action against the Individual Debtors where it has sought pre-

judgment writs of attachment against Daniel Halevy and Alan Gomperts. Archway has also

commenced foreclosure proceedings against the properties owned by the Individual Debtors, SLA,

and Negev to recover on their guarantees and collateral. KDM has commenced an action against

Seaton and Colyton for appointment of a receiver.

### 2.    Seaton & Colyton

Seaton was formed in March 2010 for the purpose of acquiring, developing, and operating

the Seaton Building. Seaton's membership consists of: (1) the Halevy Family Trust dated

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

September 6, 2010 (the "Halevy Trust," Susan Halevy, beneficial owner); (2) the Gomperts and Halevy Family Trust (the "G&H Trust," Alan Gomperts and Sharon Gomperts, beneficial owners of community property); (3) Daniel Halevy; and (4) Simon Harkham.

Colyton was formed in June 2011 for the purpose of acquiring, developing, and operating the Colyton Building. Colyton is owned 100% by Susan Halevy as the beneficiary of the Halevy Trust. The Seaton/Colyton Buildings are adjacent to each other and together form a jigsaw of structures that are operated by Seaton and Colyton as a single economic unit. They also share overhead costs and are held out to the market as a common opportunity for the lease of commercial space.

In or about 2018, Seaton's members determined the Seaton Building needed a full structural upgrade in order to compete for top-of-the-market tenants in the burgeoning downtown arts district. Seaton took out a series of construction and bridge loans to finance a full modernization of the Seaton Building. The Seaton Building upgrade and development was a many years undertaking requiring careful and intensive coordination with the City of Los Angeles to preserve historical structures and to benefit from programs designed to reward historical preservation.

The investment in the Seaton Building attracted a multi-decade letter-of-intent from WeWork to lease an entire structure (100%) of the Seaton Building. Unfortunately, when WeWork experienced financial difficulties in 2019, the WeWork LOI was withdrawn, and Seaton was in the unenviable position of looking for a major anchor tenant to replace WeWork (or multiple smaller tenants) as the country entered the COVID lockdown. Having invested over $20 million into the Seaton Building, Seaton pushed forward with completion of the Seaton Building upgrades.

In or about April 2021, Seaton refinanced its outstanding loans with KDM. KDM, Seaton, and Colyton entered into a $35.1 million loan that consolidated all of their then outstanding loans and that provided additional working capital for Seaton and Colyton (the "KDM First Loan") to complete the Seaton Building remodel. KDM required the KDM First Loan to be a joint obligation of both Seaton and Colyton, reflecting their operation as a single economic unit. As part of its diligence, KDM obtained a third-party valuation of the Seaton/Colyton Buildings by Bowery that valued the Seaton/Colyton Buildings as a single economic unit and concluded their current

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

combined projected value to be $64.4 million as of February 17, 2021 (upon completion of upgrades) and $70.2 million as of August 17, 2021 (stabilized).

In January 2022, behind on both the completion of their remodel and lease-up due to the impact of the extended COVID shutdown, Seaton and Colyton closed on a supplementary $2 million loan from KDM (the "KDM Second Loan") for additional capital needed to complete work required for the issuance of a certificate of occupancy by the City of Los Angeles. In connection with the KDM Second Loan, David Halevy (now deceased, and therefore as to Susan Halevy only an in rem obligation against community assets now owned by Susan Halevy via the Halevy Trust), Daniel Halevy, and Alan Gomperts provided personal guarantees to KDM (together, the "KDM Guarantors").

Unfortunately, the KDM Second Loan was not sufficient to allow Seaton and Colyton to avoid defaults caused by the COVID pandemic. Because of prolonged COVID-19 related shutdowns and work-at-home orders, and, in particular, the closure of the Los Angeles Department of Building and Safety (the "LADBS") and the remote work-only status of all of its plan checkers for a protracted period, LADBS building plan approvals were severely slowed and took far longer than anticipated. This, and a stagnant leasing market, led to Seaton's and Colyton's defaults on the KDM First Loan and the KDM Second Loan in 2023.

Seaton did eventually obtain a certificate of occupancy on the remodeled structure in January 2024. As of the Petition Date, 47% of the Seaton/Colyton Buildings are leased and negotiations are in-process for leases on the remaining 53% of the Seaton/Colyton Buildings. After hitting a market low in the fourth quarter of 2023, commercial real estate has experienced a modest recovery and the Debtors expect the market to continue to strengthen over the coming months and years. As of the Petition Date, the outstanding debt owed to KDM totals $36,240,750 on account of the KDM First Loan and $2,091,840 on account of the KDM Second Loan.

### 3.    Broadway

Broadway was formed in July 2013 for the purpose of acquiring, developing, and operating the Broadway Building. Broadway's membership consists of: (1) the Halevy Trust (Susan Halevy,

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 750
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1    beneficial owner); (2) the G&H Trust (Alan Gomperts and Sharon Gomperts, beneficial owners of

2    community property); and (3) Daniel Halevy.

3        Broadway acquired the Broadway Building in 2013. The Broadway Building is an eight-

4    story structure. At the time it was acquired by Broadway, only the ground floor was habitable.

5    Broadway understands the seven higher floors had not been occupied since the 1950s. In 2015,

6    Broadway entered into a 15-year lease with The GAP for the ground floor of the Broadway Building

7    and developed a plan to remodel and modernize the entire Broadway Building to make every floor

8    habitable and available to lease to commercial tenants.

9        A majority of the intensive remodel and modernization of the Broadway Building took place

10   between 2015 and 2020.  The improvements that were performed included the rehabilitation of the

11   façade of the first three floors of the Broadway Building per the guidance of the Cultural Heritage

12   Commission, installation of a fire and life safety system throughout the building, modernization of

13   the elevator, installation of an HVAC system, fire pump and sprinkler system, emergency backup

14   generator and replacement and installation of electric and plumbing systems throughout the

15   building. In March 2020, after first confirming the full term of its lease, The GAP exercised a one-

16   time early termination provision on its lease as the uncertainty of COVID began to take hold.

17       With an end to the remodel and modernization in sight, Broadway refinanced its outstanding

18   loans with a single loan from Archway in July 2021, in the original principal amount of $16,942,500

19   (the "Broadway Loan"). The Broadway Loan was guaranteed by David Halevy, Daniel Halevy, and

20   Alan Gomperts.

21       The Broadway Loan matured on August 1, 2022.  After commencing an action for breach

22   against its guarantors and filing a notice of default to begin foreclosure on the Broadway Building,

23   the parties agreed to a restructure (the "Broadway Restructure") that extended the maturity date of

24   the Broadway Loan to December 1, 2023, affirmed the balance due under the Broadway Loan in

25   the principal amount of $15,241,093, and called for $4 million in new loans (the "New Loans")

26   from Archway to benefit the Broadway Loan and the Broadway Building. The New Loans were

27   made via three loan agreements: (1) to Negev for $1,300,000 (the "Negev Loan"); (2) to SLA for

28   $125,000 (the "SLA Loan"); and (3) jointly to David Halevy, the Halevy Trust, Alan Gomperts,

the G&H Trust, and Daniel Halevy for $2,575,000 (the "Guarantor Loan"). The Negev Loan was secured by the real property located at 12800 Foxdale Drive, Desert Hot Springs, California, and was guaranteed by David Halevy, with the guaranty secured by David Halevy's membership interests in Negev. The SLA Loan was secured by the real property located at 1040 S. Los Angeles Street and was guaranteed by David Halevy, Susan Halevy, Alan Gomperts, and Daniel Halevy, with the guarantees secured by the guarantors' membership interests in SLA. The Guarantor Loans were secured by the following real property: (1) 3538 Greenfield Avenue, Los Angeles, California (owned by the G&H Trust); (2) 133 S. Palm Drive, Beverly Hills, California (owned by the Halevy Trust); and (3) 8561 Horner Street, Los Angeles, California (owned by Daniel Halevy). The $4 million of proceeds from the New Loans were distributed exclusively for the benefit of Archway and the Broadway Loan, with $1,701,407.01 applied to pay down the balance of the Broadway Loan.

As of the Petition Date, the outstanding debt owed to Archway is $15,663,398 on the Broadway Loan, $1,336,020 on the Negev Loan, $128,958 on the SLA Loan, and $2,646,348.96 on the Guarantor Loan.

### 4. Negev Investments, LLC

Negev owns a motel located at 12800 Foxdale Drive, Desert Hot Springs, CA (the "Motel"). The Motel has 26-rooms with five natural spring water pools. It has been operated by Seapiper Inn, Inc. ("Seapiper") since 2014. Negev is owned by the Halevy Trust. Seapiper is not a debtor in these proceedings. Negev became a borrower of Archway by the Broadway Restructure in 2023 as set forth above. As of the Petition Date, the outstanding balance owed on the Negev Loan is $1,336,020.

### 5. SLA Investments, LLC

SLA was formed in 2009 for the purpose of acquiring, developing, and operating commercial real property located at 1040 South Los Angeles Street, Los Angeles, CA ("1040 South"). As of the Petition Date, 13 of 18 spaces are leased. SLA's membership consists of: (1) the Halevy Trust; (2) the G&H Trust; (3) Daniel Halevy; and (4) Simon Harkham. SLA became a

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

borrower of Archway by the Broadway Restructure in 2023 as set forth above. As of the Petition Date, the outstanding balance owed on the SLA Loan is $128,958.

### 6. The Individual Guarantors

Susan Halevy (not directly but via her interest in the community property of David Halevy), the Halevy Trust, Alan Gomperts, the G&H Trust, and Daniel Halevy are guarantors of the Archway and KDM debt as follows:

- KDM Second Loan in the amount of $2,091,841,[1] jointly and severally: the community assets of David Halevy (deceased), Alan Gomperts, and Daniel Halevy;

- Broadway Loan in the amount of $15,663,398, jointly and severally: the community assets of David Halevy (deceased), Alan Gomperts, and Daniel Halevy;

- Negev Loan in the amount of $1,336,020: Susan Halevy (not directly but via her sole ownership of community property);

- SLA Loan in the amount of $125,958: David Halevy (deceased), Susan Halevy, Alan Gomperts, and Daniel Halevy.

Susan Halevy (not directly but via her interest in the community property of David Halevy), the Halevy Trust, Alan Gomperts, the G&H Trust, and Daniel Halevy are also jointly and severally liable on the Guarantor Loan, which has a balance of $2,646,348.96 as of the Petition Date.

The commercial buildings of four of the five corporate debtors (all but Negev) are jointly managed by Daniel Halevy (daily property management through Almighty Builders, Inc.) and Alan Gomperts (financial management).

### C. The Secured Creditors, Real Property Collateral Values, and Proposed Use of Cash Collateral

The secured creditors in the Debtors' Cases with interests in cash collateral and the corresponding properties and values for which the Debtors seek Court authorization to use cash collateral are as follows:

///

---

[1] KDM has indicated the guaranty covers the entirety of its debt.

- Seaton and Colyton: KDM
  - Address: 431-433, 441 Colyton Street and 440 Seaton Street, Los Angeles, CA (Seaton); 421 Colyton Street, Los Angeles, CA (Colyton)
    - Secured Creditor: KDM
    - Value: $39,000,000
    - Seaton Monthly Rent: $19,959
    - Colyton Monthly Rent: $34,850 (not including rent from Urban Outfitters which only runs through June 2024)
    - Joint Monthly Expenses: $34,000 - $39,000
    - <u>Use of cash collateral</u>. Per the Seaton and Colyton budgets, **Exhibit 1** to the attached Declaration of Alan Gomperts (the "<u>Gomperts Declaration</u>"), the properties incur regular monthly expenses consisting primarily of insurance, repairs, maintenance, utilities, and tenant/property management. These services and expenses are critical to maintaining the value of the Seaton and Colyton real property. If these items are not paid when due, Seaton and Colyton would default on the leases with their tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 25-30%. The potential loss in value the property would suffer far exceeds the amount of cash collateral Seaton and Colyton seek authority to use. One component of the expenses Seaton and Colyton seek approval to pay from cash collateral is for property management services. The management fee is $5,000 per month for each of Seaton and Colyton for a total of $10,000 per month. The management services are provided by Almighty Builders, LLC ("<u>Almighty Builders</u>"), which is a company owned by Daniel Halevy, an insider to and partial owner of Seaton and Colyton. The services provided by Almighty Builders for which the management fee is earned

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

are performed almost entirely by Daniel Halevy. Per the attached Gomperts Declaration and the declaration of Daniel Halevy (the "Halevy Declaration"), the services provided by Almighty Builders to Seaton and Colyton are necessary to maintain the value of the real property. The services are charged at a fair price and if not performed by Almighty Builders, would need to be performed by some other management company at a rate that would likely be the same or more than that charged by Almighty Builders.

- ■ Secured Creditor Consent. KDM has reviewed the budgets attached as Exhibit 1 and approves of the use of its cash collateral as set forth in those budgets, with the exception of the management fee.

- SLA:
  - o Address: 1040 S. Los Angeles Street, Los Angeles, CA
    - ■ Secured Creditor: Harvest Small Business Finance (SBA) ("Harvest"); Archway
    - ■ Value:    $3,500,000
    - ■ Monthly Rent: $11,600
    - ■ Monthly Expenses: $7,353
    - ■ Use of cash collateral: Per the SLA budget, **Exhibit 2** to the Gomperts Declaration, the property incurs regular monthly expenses, primarily insurance, repairs, maintenance, utilities, and tenant/property management. These services and expenses are critical to maintaining the value of the SLA real property. If these items are not paid when due, SLA would default on the leases with their tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 15-20%. The potential loss in value the property would suffer far exceeds the amount of cash collateral SLA seeks authority to use. One component

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

of the expenses SLA seeks approval to pay from cash collateral is for management services. The management fee is $3,000 per month. The management services are provided by Almighty Builders. The services provided by Almighty Builders for which the management fee is earned are performed almost entirely by Daniel Halevy. Per the attached Gomperts Declaration and Halevy Declaration, the services provided by Almighty Builders to SLA are necessary to maintain the value of the real property. The services are charged at a fair price and if not performed by Almighty Builders, would need to be performed by some other management company at a rate that would likely be the same or more than that charged by Almighty Builders.

- Secured Creditor Consent. Harvest has not consented to the use of cash collateral. Archway does not consent to the use of any of its cash collateral.

- Negev: Archway
  - Address: 12800 Foxdale Drive, Desert Hot Springs, CA 92240
    - Secured Creditor: Archway
    - Value: $2,800,000
    - Monthly Room Revenue: $3,700 - $14,200 per month in 2024; average monthly room revenue of $7,700 over the first four months of 2024.
    - Monthly Expenses: $6,060 (monthly average)
    - Use of cash collateral[2]: The Foxdale property is an operating motel. It has been operated by Seapiper, which has common ownership with Negev, since the property was acquired. Pursuant to the management

---

[2] Negev does not admit that post-petition room revenue collected by Seapiper is cash collateral, but does not put this issue before the Court. Instead, Negev seeks authorization to use post-petition room revenue as if it was cash collateral and provide adequate protection to the extent deemed appropriate by the Court.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

agreement between Negev and Seapiper, Seapiper collects all revenue generated by Foxdale and pays all expenses of the property and motel operations. Profits, when available, are distributed as directed by Negev. The motel operations are somewhat seasonal but on average over the course of the past four years, operations are about break-even. Per the Seapiper P&L and budget, attached to the Gomperts Declaration as **Exhibit 3**, the property incurs monthly expenses for operation including merchant account fees, insurance, landscaping and groundskeeping, repairs, maintenance, utilities, taxes and licenses, and property management. These services and expenses are critical to maintaining the value of the Foxdale property. If these items are not paid, the motel would close, which would have an immediate and drastic impact on the value of the real property reducing its value by 30-35%. The potential loss in value the property would suffer far exceeds the amount of potential cash collateral Negev seeks authority for Seapiper to use.

- ▪ <u>Secured Creditor Consent</u>. Archway does not consent to the use of any of its cash collateral.

- Alan Gomperts:
  - o 2247 S. Canfield Avenue, Los Angeles, CA 90034
    - ▪ Secured Creditor: Wells Fargo Home Mortgage ("<u>Wells Fargo</u>")
    - ▪ Value: $2,000,000
    - ▪ Secured Debt: $363,480
    - ▪ Monthly Rent: $6,900 (increased from $6,600 in April 2024)
    - ▪ <u>Use of cash collateral</u>: As a landlord, Mr. Gomperts incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $1,816 per the Canfield annual cash flow, attached to the Gomperts Declaration as **Exhibit 4**. These

expenses are critical to maintaining the value of the Canfield property. If these items are not paid, Mr. Gomperts would default on the lease with the tenant incurring breach damages and potential loss of tenancy, which would negatively impact the value of the real property in excess of the amount of cash collateral Mr. Gomperts seeks authority to use. In addition to property expenses, Mr. Gomperts proposes to use rents generated from the Canfield property to fund plan payments to Wells Fargo and for ordinary living expenses for himself and his family.

- ▪ <u>Secured Creditor Consent</u>. Wells Fargo has not consented to the use of cash collateral.

o 2220 Bagley Avenue, Los Angeles, CA 90034

- ▪ Secured Creditor: Wells Fargo
- ▪ Value: $2,500,000
- ▪ Secured Debt: $728,121
- ▪ Monthly Rent: $5,550
- ▪ <u>Use of cash collateral</u>: As a landlord, Mr. Gomperts incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $2,665 per the Bagley annual cash flow, attached to the Gomperts Declaration as **Exhibit 5**. These expenses are critical to maintaining the value of the Bagley property. If these items are not paid, Mr. Gomperts would default on the lease with the tenant incurring breach damages and potential loss of tenancy, which would negatively impact the value of the real property in excess of the amount of cash collateral Mr. Gomperts seeks authority to use. In addition to property expenses, Mr. Gomperts proposes to use rents generated from the Bagley property to fund plan payments to Wells Fargo and for ordinary living expenses for himself and his family.

- ▪ <u>Secured Creditor Consent</u>. Wells Fargo has not consented to the use of cash collateral.

- o 3538 Greenfield Avenue, Los Angeles, CA 90034:

  - ▪ Secured Creditor: Wells Fargo; Archway

  - ▪ Value: $1,300,000

  - ▪ Monthly Rent: $4,875

  - ▪ <u>Use of cash collateral</u>: As a landlord, Mr. Gomperts incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $906 per the Greenfield annual cash flow, attached to the Gomperts Declaration as **Exhibit 6**. These expenses are critical to maintaining the value of the Greenfield property. If these items are not paid, Mr. Gomperts would default on the lease with the tenant incurring breach damages and potential loss of tenancy, which would negatively impact the value of the real property in excess of the amount of cash collateral Mr. Gomperts seeks authority to use. In addition to property expenses, Mr. Gomperts proposes to use rents generated from the Greenfield property to fund plan payments to secured creditors and for ordinary living expenses for himself and his family.

  - ▪ <u>Secured Creditor Consent</u>. Wells Fargo has not consented to the use of cash collateral. Archway does not consent to the use of any of its cash collateral.

- • Susan Halevy:

  - o 133 S. Palm Drive, Beverly Hills, CA 09212:

    - ▪ Secured Creditor: First Foundation Bank; Archway

    - ▪ Value: $2,500,000

    - ▪ Monthly Rent: $11,529

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

- **Use of cash collateral**: As a landlord, Ms. Halevy incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $2,833 per the S. Palm annual cash flow, attached to the Gomperts Declaration as **Exhibit 7**. These expenses are critical to maintaining the value of the S. Palm property. If these items are not paid, Ms. Halevy would default on the leases with the tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 25-30%. In addition to property expenses, Ms. Halevy proposes to use cash collateral generated from the S. Palm property to fund plan payments to secured creditors and for ordinary living expenses for herself and her family.

- **Secured Creditor Consent**. First Foundation Bank has not consented to the use of cash collateral. Archway does not consent to the use of any of its cash collateral.

- 140 S. Roxbury Drive, Beverly Hills, CA 09212 (50% interest):
  - Secured Creditor: Chase Bank
  - Value: $2,150,000 (Susan Halevy's 50% interest); $4,300,000 (entire property including non-debtor 50% interest)
  - Secured Debt: $2,090,481.53 (on entire property)
  - Monthly Rent: $13,672 (50% interest)
  - **Use of cash collateral**: As a landlord, the partnership that owns Roxbury incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. Ms. Halevy receives a quarterly profit distribution from the partnership. On a monthly average basis, her 50% share of these property expenses are estimated at $4,483 per the Roxbury budget, attached to the Gomperts Declaration as

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**Exhibit 8**. These expenses are critical to maintaining the value of the Roxbury property. If these items are not paid, Ms. Halevy would default on the leases with the tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 25-30%. In addition to property expenses, Ms. Halevy proposes to use her 50% share of rents generated from the Roxbury property to fund plan payments to Chase Bank and for ordinary living expenses for herself and her family.

- <u>Secured Creditor Consent</u>. Chase Bank has not consented to the use of cash collateral.

The following properties are pledged as collateral to the secured creditors, but they do not generate rent and are not implicated by this Motion:

- Broadway: Archway
- Daniel Halevy:
  - Horner: Athas; Archway

## II.    <u>ARGUMENT</u>

### A.    <u>The Debtors Should be Authorized to Use Cash Collateral Pursuant to 11 U.S.C. § 363 to Operate, Maintain, and Preserve Assets of the Estates</u>

The Debtors' use of property of the estates is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section … 1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. *See* 11 U.S.C. § 1107(a).

/ / /

"Cash collateral" is defined as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if "each entity that has interest in such cash collateral consents; or . . . the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(A) and (B).

Where a debtor is operating a business, it is extremely important that access to cash collateral be allowed to facilitate the goal of reorganization, as "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business". *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993), quoting *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). It is in the best interest of the estate and its creditors to continue to maintain the Debtor's business operations, as a shut-down would significantly reduce the value of the business and its real property and generate little to no recovery for general unsecured creditors. Furthermore, funding for the reorganization is dependent upon ongoing business operations.

Seaton and Colyton, SLA, Negev, S. Palm, and Roxbury are operated as commercial properties. Seaton and Colyton, SLA, and Negev lease to commercial tenants. S. Palm and Roxbury operate multi-tenant apartment buildings. Canfield, Bagley, Greenfield lease to single-family tenants. In all Cases, the Debtors operate businesses that rely upon the ongoing revenue generated from tenants to maintain the value of the real property and that will provide cash flow to fund plan payments for all creditors including general unsecured creditors.

/ / /

/ / /

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-17-
DEBTORS' MOTION FOR USE OF CASH COLLATERAL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**B.    Secured Creditors are Adequately Protected**

Pursuant to § 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected.  *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).  Under *United Savings Association v. Timbers of Inwood Forest Associates*, 484 U.S. 365 (1988) and subsequent case law, the property interest that a debtor must adequately protect pursuant to § 361(1) and (2) is only the value of the lien that secures the creditor's claim.  *Id.*; *see also McCombs*, 88 B.R. at 266 (stating that section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral").  Similarly, in *Robert Neier v. Clark Oil & Refining Corp. (In re Apex Oil Company)*, 85 B.R. 538, 541 (Bankr. E.D. Mo. 1988), the Bankruptcy Court, relying exclusively on *Timbers*, denied adequate protection to a husband and wife holding over-secured claims because "[n]o evidence was presented that the value of the [collateral] would diminish during the course of [the] Chapter 11 proceeding." *Id.*

To the extent that an entity has a valid security interest in the revenues generated by property, including rents, those revenues constitute "cash collateral" under 11 U.S.C. § 363(a) and 552(b)(2). As such, the secured creditors' collateral increases on a dollar-for-dollar basis as the Debtors collect rent post-petition. Therefore, the adequate protection required for the use of cash collateral is equal to the cash collateral proposed to be used as set forth herein.

For KDM – across Seaton and Colyton – the proposed use of cash collateral totals $34,000 – $39,000 per month. KDM consents to the use of all but $10,000 of the proposed use of cash collateral per month that would require adequate protection. In all other instances set forth herein, adequate protection applies to the entirety of the cash collateral that is sought to be used.

**1.    Certain Secured Creditors Interests are Adequately Protected by an Equity Cushion**

The existence of an "equity cushion," (the value of the collateral in excess of the amount of the secured claim), "is the classic form of protection for a secured debt,". *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984).  *Accord, In re Llewellyn*, 27 B.R. 481 (Bankr. M.D. Pa. 1983); *In re*

*San Clemente Estates*, 5 B.R. 605 (Bankr. S.D. Cal. 1980); *In re Statbucker*, 4 B.R. 251 (Bankr. D. Neb. 1980).    "[T]he existence of an equity cushion, standing alone, can provide adequate protection." Id., at 1400.  The Ninth Circuit Court of Appels in *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) found that an equity cushion of twenty percent (20%) constitutes adequate protection of a creditor's interest.

For certain of the Debtors' properties, the equity cushion far exceeds the amount of the secured claims. Specifically, significant equity cushions provide adequate protection for the secured claims of Harvest, Wells Fargo, First Foundation, and Chase Bank.

The Harvest loan on SLA is approximately $1.8 million on value of $3.5 million (equity cushion of approximately 94% equity cushion). The Wells Fargo loan on Greenfield is approximately $182,000 on value of $1.3 million (equity cushion of over 600%). The Wells Fargo loan on Bagley is approximately $728,000 on value of $2.5 million (equity cushion of over 200%). The Wells Fargo loan on Canfield is approximately $364,000 on value of $2.0 million (equity cushion of over 400%). The First Foundation loan on S. Palm is approximately $1,515,000 on value of $2.5 million (equity cushion of 65%). The Chase Bank loan on Roxbury is approximately $2,090,000 and is secured by the entirety of the property – not just Ms. Halevy's 50% interest – which has value of $4.3 million (equity cushion of 100%). Even if these cases should continue for a year, each of these properties has more than enough equity cushion to adequately protect the Debtors' hypothetical use of all the cash collateral collected post-petition over this period, and then some.

### 2.    Archway's and KDM's Interests are Protected by the Preservation of Real Property Value

Section 361 of Bankruptcy Code explicitly provides that "adequate protection may be provided by…granting such other relief… as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3). With respect to the security interest asserted by Archway (SLA, Negev, Greenfield, and S. Palm) and KDM (Seaton and Colyton), those interests are adequately protected by limiting the use of cash collateral to the attached budgets and cash flows. The use of cash collateral set forth in these budgets and

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

cash flows is necessary to maintain the value of the real property for which the cash collateral would be used. Absent the proposed use of cash collateral for these properties, their value will instantly decline in significant amounts that far exceed the proposed use of cash collateral as set forth in the Gomperts Declaration. This Court has held that committing cash collateral for operating expenses that maintain and improve the property, cash collateral is adequately protected. *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 267 ("By dedicating cash collateral for…[the maintenance and improvement of the property], debtor has substantially eliminated the risk of diminution of…[the secured creditor's] interest in cash collateral. The more likely scenario is that cash collateral will increase."). *See also In re River W. Plaza-Chicago, LLC*, 2010 Bankr. LEXIS 5378, *3 ("As adequate protection, the Debtor shall continue operating Joffco Square and use the Cash Collateral to pay operating and overhead expenses of Joffco Square, as more specifically set forth in the Operating Budget."); *see also In re Forest Ridge, II, Ltd. Partnership*, 116 B.R. 937, 949 (Bankr. W.D.N.C. 1990) ("To the extent any cash collateral of Debtor Forest Ridge is used to pay actual, reasonable, and necessary operating expenses related to the operation of Debtor Forest Ridge's property, Boston Company is adequately protected by an order which restricts Debtor Forest Ridge's use of cash collateral to the payment of actual, reasonable, and necessary operating expenses, and requires Debtor Forest Ridge to escrow net operating income for further disposition pursuant to an order confirming its Plan, or other order of Court.")

**3. Archway's and KDM's Interests May be Further Protected by Replacement Liens in Non-Debtor Real Property**

Section 361 of Bankruptcy Code explicitly provides that "adequate protection may be provided by . . . an additional or replacement lien to the extent that such . . . use [of cash collateral] results in a decrease in the value of such entity's interest in such property."  11 U.S.C. § 361(2); *See Timbers*, 484 U.S. at 370.  With respect to the security interest asserted by any of the secured creditors in the assets, their interests will be further protected through a replacement lien in the post-petition accounts receivable to the same extent and with the same validity of their pre-petition liens.

341 S. Canon LLC[3] owns the real property located at 341 S. Canon, Beverly Hills, CA 90212 (the "Replacement Collateral"). To the extent the Court deems the maintenance of value provided by the use of rents for property expenses to be insufficient adequate protection, the Debtors are able to offer Archway and KDM a replacement lien in the Replacement Collateral to the extent the authorized use of rents diminishes the value of the lenders' collateral during these cases. The Replacement Collateral has a first lien in the outstanding amount of $1,300,000 and has a value of $2,600,000. The Replacement Collateral could incur total liens of $2,166,667 and still maintain a 20% equity cushion, which equates to the availability of $866,667 of equity to be pledged as a replacement lien for the Debtors' use of cash collateral. As set forth herein and in the chart attached to the Gomperts Declaration as **Exhibit 9**, the maximum need for adequate protection for Archway is $35,704. Combined with the $10,000 KDM adequate protection requirement, there is a monthly maximum total of $45,704 of cash collateral that could require replacement liens for adequate protection.

Archway and KDM will share a *pari passu* lien priority to the extent of any diminution of value of their cash collateral. Assuming, arguendo, that all of the cash collateral at issue is spent and all of the cash collateral requires a replacement lien to provide adequate protection - $45,704 – the Replacement Collateral can support 19 months of adequate protection.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] Susan Halevy is the 100% owner of 341 S. Canon LLC.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

1

## III.    <u>CONCLUSION</u>

2          For the reasons set forth herein, the Debtors seek an order authorizing use of post-petition

3  cash collateral as set forth herein on the grounds that: (i) the cash collateral of Harvest, Wells Fargo,

4  First Foundation, and Chase Bank is adequately protected with an equity cushion in their real

5  property collateral; (ii) KDM has consented to the use of its cash collateral other than the

6  management fee; and (iii) the cash collateral of KDM (as to the proposed $10,000 management fee)

7  and Archway are adequately protected by the preservation and maintenance of their real property

8  collateral value or alternatively by a replacement lien in the Replacement Collateral.

9

Dated:  June 7, 2024              **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

10

11

                                  By: _/s/ Derrick Talerico_____
12                                      Derrick Talerico
                                  Counsel to Debtors Seaton Investments, LLC, Colyton
13                                Investments, LLC, Broadway Avenue Investments, LLC,
                                  SLA Investments, LLC, and Negev Investments, LLC
14

15                                      -and-

16                                SAUL EWING LLP
                                       Zev Shechtman
17                                     Carol Chow
                                       Turner N. Falk
18                                Attorneys to Debtors Alan Gomperts,
                                  Daniel Halevy, and Susan Halevy
19

20

21

22

23

24

25

26

27

28

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## <u>DECLARATION OF ALAN D. GOMPERTS</u>

I, Alan D. Gomperts, hereby declare as follows:

1.    I am the managing member of Seaton Investments, LLC. I am a manager of Broadway Avenue Investments, LLC and SLA Investments, LLC. I am an authorized representative of Colyton Investments, LLC, Negev Investments, LLC.

2.    I make this declaration in support of the *Debtor's Motion for Entry of Order for Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)* (the "Motion"), to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

3.    I have been intimately involved in the business investment and ventures with my brother-in-law Daniel Halevy, mother-in-law Susan Halevy, and now deceased father-in-law David Halevy for decades, including all of the corporate Debtors implicated by this Motion. As such, I am familiar with the management, operations, finances, and books and records of the corporate Debtors specifically and generally as to Susan Halevy and Daniel Halevy. I have either created or reviewed and approved the spreadsheets attached in support of this Declaration, which are the business records of the respective Debtors to which they apply.

4.    On March 18, 2024 (the "Individual Petition Date") and on March 19, 2024 (the "Corporate Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. The Debtors continue to operate and manage their affairs as debtors and debtors-in-possession.

5.    The Individual Debtors are family and we operate a family business together. Debtor Susan Halevy is mother to debtor Daniel Halevy and three other non-debtor children, including Sharon Gomperts, my wife.

6.    Susan's husband, my father-in-law, David Halevy (deceased), together with Daniel and I, and on occasion non-debtor Simon Harkham, invest in and operate real estate properties, including debtors Seaton, Broadway and SLA. Upon David Halevy's passing in 2023, his interests, to the extent they were not community property, passed to Susan via the Halevy Trust. As such,

1    Susan Halevy is now the owner – direct, beneficial, equitable, or otherwise – of all interests in the

2    various Debtors previously owned by David Halevy.

3         7.    These Bankruptcy Cases present two real estate investments that require a

4    restructuring to address defaults on their senior loans: (1) the buildings at 440 Seaton Street, Los

5    Angeles, CA, 90013 (the "Seaton Building"), and 421 Colyton Street, Los Angeles, CA, 90013 (the

6    "Colyton Building"), which together are operated as an economic unit (the "Seaton/Colyton

7    Buildings") and are owned by Debtors Seaton and Colyton, respectively; and (2) the building at

8    737 S. Broadway, Los Angeles, CA, 90014 (the "Broadway Building"), owned by Debtor

9    Broadway.

10        8.    The Individual Debtors have each jointly and severally guaranteed (1) certain debt

11   owed to KDM California LLC ("KDM") on account of KDM's $37.1 million in principal amount

12   loaned jointly to Seaton and Colyton and secured by the Seaton/Colyton Buildings, and (2)

13   approximately $19.1 million of loans made by Archway Capital ("Archway") on account of the

14   Broadway Building (the "Broadway Loans"). The Individual Debtors' guaranty liability to

15   Archway is bifurcated into secured and unsecured tranches. Approximately $15 million of

16   Archway's Broadway Loans are made directly to Broadway and guaranteed by the Individual

17   Debtors without collateral. Approximately $4 million of Archway's Broadway Loans are made

18   pursuant to three loans to related entities or groups and are secured by pledges of various real

19   properties owned by the Individual Debtors, 1040 S. Los Angeles Street, Los Angeles, CA (owned

20   and pledged by SLA), and 12800 Foxdale Drive, Desert Hot Springs, CA (owned and pledged by

21   Negev).

22        9.    Archway has commenced an action against the Individual Debtors where it has

23   sought pre-judgment writs of attachment against Daniel Halevy and me. Archway has also

24   commenced foreclosure proceedings against the properties owned by the Individual Debtors, SLA,

25   and Negev to recover on their guarantees and collateral. KDM has commenced an action against

26   Seaton and Colyton for appointment of a receiver.

27        10.   Seaton was formed in March 2010 for the purpose of acquiring, developing, and

28   operating the Seaton Building. Seaton's membership consists of: (1) the Halevy Family Trust dated

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

September 6, 2010 (the "Halevy Trust," Susan Halevy, beneficial owner); (2) the Gomperts and Halevy Family Trust (the "G&H Trust," of which my wife Sharon Gomperts and I are beneficial owners of community property); (3) Daniel Halevy; and (4) Simon Harkham.

11.     Colyton was formed in June 2011 for the purpose of acquiring, developing, and operating the Colyton Building. Colyton is owned 100% by Susan Halevy as the beneficiary of the Halevy Trust. The Seaton/Colyton Buildings are adjacent to each other and together form a jigsaw of structures that are operated by Seaton and Colyton as a single economic unit. They also share overhead costs and are held out to the market as a common opportunity for the lease of commercial space.

12.     In or about 2018, Seaton's members determined the Seaton Building needed a full structural upgrade in order to compete for top-of-the-market tenants in the burgeoning downtown arts district. Seaton took out a series of construction and bridge loans to finance a full modernization of the Seaton Building. The Seaton Building upgrade and development was a many years undertaking requiring careful and intensive coordination with the City of Los Angeles to preserve historical structures and to benefit from programs designed to reward historical preservation.

13.     The investment in the Seaton Building attracted a multi-decade letter-of-intent from WeWork to lease an entire structure (100%) of the Seaton Building. Unfortunately, when WeWork experienced financial difficulties in 2019, the WeWork LOI was withdrawn, and Seaton was in the unenviable position of looking for a major anchor tenant to replace WeWork (or multiple smaller tenants) as the country entered the COVID lockdown. Having invested over $20 million into the Seaton Building, Seaton pushed forward with completion of the Seaton Building upgrades.

14.     In or about April 2021, Seaton refinanced its outstanding loans with KDM. KDM, Seaton, and Colyton entered into a $35.1 million loan that consolidated all of their then outstanding loans and that provided additional working capital for Seaton and Colyton (the "KDM First Loan") to complete the Seaton Building remodel. KDM required the KDM First Loan to be a joint obligation of both Seaton and Colyton, reflecting their operation as a single economic unit. As part of its diligence, KDM obtained a third-party valuation of the Seaton/Colyton Buildings by Bowery that valued the Seaton/Colyton Buildings as a single economic unit and concluded their current

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

combined projected value to be $64.4 million as of February 17, 2021 (upon completion of upgrades) and $70.2 million as of August 17, 2021 (stabilized).

15.    In January 2022, behind on both the completion of their remodel and lease-up due to the impact of the extended COVID shutdown, Seaton and Colyton closed on a supplementary $2 million loan from KDM (the "KDM Second Loan") for additional capital needed to complete work required for the issuance of a certificate of occupancy by the City of Los Angeles. In connection with the KDM Second Loan David Halevy (now deceased, and therefore as to Susan Halevy only an in rem obligation against community assets now owned by Susan Halevy via the Halevy Trust), Daniel Halevy, and I provided personal guarantees to KDM (together, the "KDM Guarantors").

16.    Unfortunately, the KDM Second Loan was not sufficient to allow Seaton and Colyton to avoid defaults caused by the COVID pandemic. Because of prolonged COVID-19 related shutdowns and work-at-home orders, and, in particular, the closure of the Los Angeles Department of Building and Safety (the "LADBS") and the remote work-only status of all of its plan checkers for a protracted period, LADBS building plan approvals were severely slowed and took far longer than anticipated. This, and a stagnant leasing market, led to Seaton's and Colyton's defaults on the KDM First Loan and the KDM Second Loan in 2023.

17.    Seaton did eventually obtain a certificate of occupancy on the remodeled structure in January 2024. As of the Petition Date, 47% of the Seaton/Colyton Buildings are leased and negotiations are in-process for leases on the remaining 53% of the Seaton/Colyton Buildings. After hitting a market low in the fourth quarter of 2023, commercial real estate has experienced a modest recovery and the Debtors expect the market to continue to strengthen over the coming months and years. As of the Petition Date, the outstanding debt owed to KDM totals $36,240,750 on account of the KDM First Loan and $2,091,840 on account of the KDM Second Loan.

18.    Broadway was formed in July 2013 for the purpose of acquiring, developing, and operating the Broadway Building. Broadway's membership consists of: (1) the Halevy Trust (Susan Halevy, beneficial owner); (2) the G&H Trust (of which my wife Sharon Gomperts and I are beneficial owners of community property); and (3) Daniel Halevy.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

19.    Broadway acquired the Broadway Building in 2013. The Broadway Building is an eight-story structure. At the time it was acquired by Broadway only the ground floor was habitable. Broadway understands the seven higher floors had not been occupied since the 1950s. In 2015, Broadway entered into a 15-year lease with The GAP for the ground floor of the Broadway Building and developed a plan to remodel and modernize the entire Broadway Building to make every floor habitable and available to lease to commercial tenants.

20.    A majority of the intensive remodel and modernization of the Broadway Building took place between 2015 and 2020.   The improvements that were performed included the rehabilitation of the façade of the first three floors of the Broadway Building per the guidance of the Cultural Heritage Commission, installation of a fire and life safety system throughout the building, modernization of the elevator, installation of an HVAC system, fire pump and sprinkler system, emergency backup generator and replacement and installation of electric and plumbing systems throughout the building. In March 2020, after first confirming the full term of its lease, The GAP exercised a one-time early termination provision on its lease as the uncertainty of COVID began to take hold.

21.    With an end to the remodel and modernization in sight, Broadway refinanced its outstanding loans with a single loan from Archway in July 2021, in the original principal amount of $16,942,500 (the "Broadway Loan"). The Broadway Loan was guaranteed by David Halevy, Daniel Halevy, and me.

22.    The Broadway Loan matured on August 1, 2022.  After commencing an action for breach against its guarantors and filing a notice of default to begin foreclosure on the Broadway Building, the parties agreed to a restructure (the "Broadway Restructure") that extended the maturity date of the Broadway Loan to December 1, 2023, affirmed the balance due under the Broadway Loan in the principal amount of $15,241,093, and called for $4 million in new loans (the "New Loans") from Archway to benefit the Broadway Loan and the Broadway Building. The New Loans were made via three loan agreements: (1) to Negev  for $1,300,000 (the "Negev Loan"); (2)  to SLA for $125,000 (the "SLA Loan"); and (3) jointly to David Halevy, the Halevy Trust, the G&H Trust, Daniel Halevy and me for $2,575,000 (the "Guarantor Loan"). The Negev Loan was

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

secured by the real property located at 12800 Foxdale Drive, Desert Hot Springs, California, and was guaranteed by David Halevy, with the guaranty secured by David Halevy's membership interests in Negev. The SLA Loan was secured by the real property located at 1040 S. Los Angeles Street and was guaranteed by David Halevy, Susan Halevy, Daniel Halevy and me, with the guarantees secured by the guarantors' membership interests in SLA. The Guarantor Loans were secured by the following real property: (1) 3538 Greenfield Avenue, Los Angeles, California (owned by the G&H Trust); (2) 133 S. Palm Drive, Beverly Hills, California (owned by the Halevy Trust); and (3) 8561 Horner Street, Los Angeles, California (owned by Daniel Halevy). The $4 million of proceeds from the New Loans were distributed exclusively for the benefit of Archway and the Broadway Loan, with $1,701,407.01 applied to pay down the balance of the Broadway Loan.

23.     As of the Petition Date, the outstanding debt owed to Archway is $15,663,398 on the Broadway Loan, $1,336,020 on the Negev Loan, $128,958 on the SLA Loan, and $2,646,348.96 on the Guarantor Loan.

24.     Negev owns a motel located at 12800 Foxdale Drive, Desert Hot Springs, CA (the "Motel"). The Motel has 26-rooms with five natural spring water pools. It has been operated by Seapiper Inn, Inc. ("Seapiper") since 2014. Negev is owned by the Halevy Trust. Seapiper is not a debtor in these proceedings. Negev became a borrower of Archway by the Broadway Restructure in 2023 as set forth above. As of the Petition Date, the outstanding balance owed on the Negev Loan is $1,336,020.

25.     SLA was formed in 2009 for the purpose of acquiring, developing, and operating commercial real property located at 1040 S. Los Angeles Street, Los Angeles, CA ("1040 South"). As of the Petition Date, 13 of 18 spaces are leased. SLA's membership consists of: (1) the Halevy Trust; (2) the G&H Trust; (3) Daniel Halevy; and (4) Simon Harkham. SLA became a borrower of Archway by the Broadway Restructure in 2023 as set forth above. As of the Petition Date, the outstanding balance owed on the SLA Loan is $128,958.

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

26.    Susan Halevy (not directly but via her interest in the community property of David Halevy), the Halevy Trust, the G&H Trust, Daniel Halevy and I are guarantors of the Archway and KDM debt as follows:

- KDM Second Loan in the amount of $2,091,841,[4] jointly and severally: the community assets of David Halevy (deceased), Daniel Halevy and me;

- Broadway Loan in the amount of $15,663,398, jointly and severally: the community assets of David Halevy (deceased), Daniel Halevy and me;

- Negev Loan in the amount of $1,336,020: Susan Halevy (not directly but via her sole ownership of community property);

- SLA Loan in the amount of $125,958: David Halevy (deceased), Susan Halevy, Daniel Halevy and me.

27.    Susan Halevy (not directly but via her interest in the community property of David Halevy), the Halevy Trust, the G&H Trust, Daniel Halevy and I are also jointly and severally liable on the Guarantor Loan, which has a balance of $ 2,646,348.96 as of the Petition Date.

28.    The commercial buildings of four of the five corporate debtors (all but Negev) are jointly managed by Daniel Halevy (daily property management through Almighty Builders, Inc.) and me (financial management).

29.    The secured creditors in the Debtors' Cases with interests in cash collateral and the corresponding properties and values for which the Debtors seek Court authorization to use cash collateral are as follows:

- Seaton and Colyton: KDM
  - o Address: 431-433, 441 Colyton Street and 440 Seaton Street, Los Angeles, CA (Seaton); 421 Colyton Street, Los Angeles, CA (Colyton)
    - ▪ Secured Creditor: KDM
    - ▪ Value: $39,000,000
    - ▪ Seaton Monthly Rent: $19,959.00

---

[4] KDM has indicated the guaranty covers the entirety of its debt.

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

- Colyton Monthly Rent: $34,850 (not including rent from Urban Outfitters which only runs through June 2024)

- Joint Monthly Expenses: $34,000 - $39,000

- <u>Use of cash collateral</u>. Per the Seaton and Colyton budgets attached as **Exhibit 1**, the properties incur regular monthly expenses consisting primarily of insurance, repairs, maintenance, utilities, and tenant/property management. These services and expenses are critical to maintaining the value of the Seaton and Colyton real property. If these items are not paid when due, Seaton and Colyton would default on the leases with their tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 25-30%. The potential loss in value the property would suffer far exceeds the amount of cash collateral Seaton and Colyton seek authority to use. One component of the expenses Seaton and Colyton seek approval to pay from cash collateral is for property management services. The management fee is $5,000 per month for each of Seaton and Colyton for a total of $10,000 per month. The management services are provided by Almighty Builders, LLC ("<u>Almighty Builders</u>"), which is a company owned by Daniel Halevy, an insider to and partial owner of, Seaton and Colyton. Almighty Builders is responsible for repairs and maintenance, tenant improvements, tenant relations, and marketing and leasing. These services provided by Almighty Builders for which the management fee is earned are performed almost entirely by Daniel Halevy. These services provided by Almighty Builders to Seaton and Colyton are necessary to maintain the value of the real property. I believe the services are charged at a fair price and if not performed by Almighty

Builders, would need to be performed by some other management company at a rate that would likely be the same or more than that charged by Almighty Builders.

- ▪ <u>Secured Creditor Consent</u>. KDM has reviewed the budgets attached as Exhibit 1 and approves of the use of its cash collateral as set forth in those budgets, with the exception of the management fee.

- • SLA:
  - ○ Address: 1040 S. Los Angeles Street, Los Angeles, CA
    - ▪ Secured Creditor: Harvest Small Business Finance (SBA) ("Harvest"); Archway
    - ▪ Value: $3,500,000
    - ▪ Monthly Rent: $11,600
    - ▪ Monthly Expenses: $7,353
    - ▪ <u>Use of cash collateral</u>: Per the SLA budget attached as **Exhibit 2**, the property incurs regular monthly expenses, primarily insurance, repairs, maintenance, utilities, and tenant/property management. These services and expenses are critical to maintaining the value of the SLA real property. If these items are not paid when due, SLA would default on the leases with their tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 15-20%. The potential loss in value the property would suffer far exceeds the amount of cash collateral SLA seeks authority to use. One component of the expenses SLA seeks approval to pay from cash collateral is for management services. The management fee is $3,000 per month. The management services are provided by Almighty Builders. Almighty Builders is responsible for repairs and maintenance, tenant relations, and marketing and leasing.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 750
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

These services provided by Almighty Builders for which the management fee is earned are performed almost entirely by Daniel Halevy. These services provided by Almighty Builders to SLA are necessary to maintain the value of the real property. The services are charged at a fair price and if not performed by Almighty Builders, would need to be performed by some other management company at a rate that would likely be the same or more than that charged by Almighty Builders.

- ▪ <u>Secured Creditor Consent</u>. Harvest has not consented to the use of cash collateral. Archway does not consent to the use of any of its cash collateral.

- • Negev: Archway
  - o Address: 12800 Foxdale Drive, Desert Hot Springs, CA 92240
    - ▪ Secured Creditor: Archway
    - ▪ Value: $2,800,000
    - ▪ Monthly Room Revenue: $3,700 - $14,200 per month in 2024; average monthly room revenue of $7,700 over the first four months of 2024.
    - ▪ Monthly Expenses: $6,060 (monthly average)
    - ▪ <u>Use of cash collateral</u>[5]: The Foxdale property is an operating motel. It has been operated by Seapiper, which has common ownership with Negev, since the property was acquired. Pursuant to the management agreement between Negev and Seapiper, Seapiper collects all revenue generated by Foxdale and pays all expenses of the property

---

[5] Negev does not admit that post-petition room revenue collected by Seapiper is cash collateral, but does not put this issue before the Court. Instead, Negev seeks authorization to use post-petition room revenue as if it was cash collateral and provide adequate protection to the extent deemed appropriate by the Court.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

and motel operations. Profits, when available, are distributed as directed by Negev. The motel operations are somewhat seasonal but on average over the course of the past four years, operations are about break-even. Per the Seapiper monthly budget, attached as **Exhibit 3**, the property incurs monthly expenses for operation including merchant account fees, insurance, landscaping and groundskeeping, repairs, maintenance, utilities, taxes and licenses, and property management. These services and expenses are critical to maintaining the value of the Foxdale property. If these items are not paid, the motel would close, which would have an immediate and drastic impact on the value of the real property reducing its value by 30-35%. The potential loss in value the property would suffer far exceeds the amount of potential cash collateral Negev seeks authority for Seapiper to use.

- ▪ <u>Secured Creditor Consent</u>. Archway does not consent to the use of any of its cash collateral.

- • Alan Gomperts:

    - ○ 2247 S. Canfield Avenue, Los Angeles, CA 90034

        - ▪ Secured Creditor: Wells Fargo Home Mortgage ("Wells Fargo")

        - ▪ Value: $2,000,000

        - ▪ Secured Debt: $363,480

        - ▪ Monthly Rent: $6,900 (increased from $6,600 in April 2024)

        - ▪ <u>Use of cash collateral</u>: As a landlord, I incur expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $1,816 per the Canfield annual cash flow, attached as **Exhibit 4**. These expenses are critical to maintaining the value of the Canfield property. If these items are not

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

paid, I would default on the lease with the tenant incurring breach damages and potential loss of tenancy, which would negatively impact the value of the real property in excess of the amount of cash collateral I seek authority to use. In addition to property expenses, I propose to use rents generated from the Canfield property to fund plan payments to Wells Fargo and for ordinary living expenses for my family.

- ▪ Secured Creditor Consent. Wells Fargo has not consented to the use of cash collateral.

o 2220 Bagley Avenue, Los Angeles, CA 90034

- ▪ Secured Creditor: Wells Fargo Home Mortgage

- ▪ Value: $2,500,000

- ▪ Secured Debt: $728,121

- ▪ Monthly Rent: $5,550

- ▪ <u>Use of cash collateral</u>: As a landlord, I incur expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $2,665 per the Bagley annual cash flow, attached as **Exhibit 5**. These expenses are critical to maintaining the value of the Bagley property. If these items are not paid, I would default on the lease with the tenant incurring breach damages and potential loss of tenancy, which would negatively impact the value of the real property in excess of the amount of cash collateral I seek authority to use. In addition to property expenses, I propose to use rents generated from the Bagley property to fund plan payments to Wells Fargo and for ordinary living expenses for my family.

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

- Secured Creditor Consent. Wells Fargo has not consented to the use of cash collateral.

o 3538 Greenfield Avenue, Los Angeles, CA 90034:

- Secured Creditor: Wells Fargo Home Mortgage; Archway

- Value: $1,300,000

- Monthly Rent: $4,875

- <u>Use of cash collateral</u>: As a landlord, I incur expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $906 per the Greenfield annual cash flow, attached as **Exhibit 6**. These expenses are critical to maintaining the value of the Greenfield property. If these items are not paid, I would default on the lease with the tenant incurring breach damages and potential loss of tenancy, which would negatively impact the value of the real property in excess of the amount of cash collateral I seek authority to use. In addition to property expenses, I propose to use rents generated from the Greenfield property to fund plan payments to secured creditors and for ordinary living expenses for my family.

- Secured Creditor Consent. Wells Fargo has not consented to the use of cash collateral. Archway does not consent to the use of any of its cash collateral.

- Susan Halevy:

o 133 S. Palm Drive, Beverly Hills, CA 09212:

- Secured Creditor: First Foundation Bank; Archway

- Value: $2,500,000

- Monthly Rent: $11,529

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

- ▪ <u>Use of cash collateral</u>: As a landlord, Ms. Halevy incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. On a monthly average basis, these property expenses are estimated at $2,833 per the S. Palm annual cash flow, attached as **Exhibit 7**. These expenses are critical to maintaining the value of the S. Palm property. If these items are not paid, Ms. Halevy would default on the leases with the tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 25-30%. In addition to property expenses, Ms. Halevy proposes to use cash collateral generated from the S. Palm property to fund plan payments to secured creditors and for ordinary living expenses for herself and her family.

- ▪ Secured Creditor Consent. Wells Fargo has not consented to the use of cash collateral. Archway does not consent to the use of any of its cash collateral.

- o 140 S. Roxbury Drive, Beverly Hills, CA 09212 (50% interest):

  - ▪ Secured Creditor: Chase Bank

  - ▪ Value: $2,150,000 (Susan Halevy's 50% interest); $4,300,000 (entire property including non-debtor 50% interest)

  - ▪ Secured Debt: $2,090,481.53 (on entire property)

  - ▪ Monthly Rent: $13,672 (50% interest)

  - ▪ <u>Use of cash collateral</u>: As a landlord, the partnership that owns Roxbury incurs expenses in the ordinary course of business to maintain and repair the property, respond to tenant issues, and pay taxes. Ms. Halevy receives a quarterly profit distribution from the partnership. On a monthly average basis, her 50% share of these property expenses are estimated at $4,483 per the Roxbury budget,

attached as **Exhibit 8**. These expenses are critical to maintaining the value of the Roxbury property. If these items are not paid, Ms. Halevy would default on the leases with the tenants incurring breach damages and potential loss of tenancy, which would have an immediate and drastic impact on the value of the real property, reducing its value by 25-30%. In addition to property expenses, Ms. Halevy proposes to use her 50% share of rents generated from the Roxbury property to fund plan payments to Chase Bank and for ordinary living expenses for herself and her family.

▪ Secured Creditor Consent. Chase Bank has not consented to the use of cash collateral.

30.     Seaton and Colyton, SLA, Negev, S. Palm, and Roxbury are operated as commercial properties. Seaton and Colyton, SLA, and Negev lease to commercial tenants. S. Palm and Roxbury operate multi-tenant apartment buildings. Canfield, Bagley, Greenfield lease to single-family tenants. In all cases, the debtors operate businesses that rely upon the ongoing revenue generated from tenants to maintain the value of the real property and that will provide cash flow to fund plan payments for all creditors including general unsecured creditors.

31.     The use of cash collateral set forth in these budgets and cash flows is necessary to maintain the value of the real property for which the cash collateral would be used. Absent the proposed use of cash collateral for these properties, their value will instantly decline in significant amounts that far exceed the proposed use of cash collateral.

32.     The property management services needed for the property owned by Seaton, Colyton, and SLA are outlined in the Declaration of Daniel Halevy. Pre-petition, provision of these property management services has required the full-time and after-hours work of Daniel Halevy. Daniel is able to efficiently provide these property management services due to his years of knowledge and experience with these properties, which is proposed to continue post-petition exclusively through Almighty Builders, LLC. If Seaton, Colyton, and SLA are forced to retain a new property management company, I believe the services needed for their properties would require

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-37-
DEBTORS' MOTION FOR USE OF CASH COLLATERAL

at least two full time employees in addition to 24-hour on-call services. Furthermore, it would take many months for a new property management company to develop the current level of service that Almighty Builders, LLC can provide, which can only come through time and experience. I believe the $10,000 per month property management fee for Seaton/Colyton and $3,000 per month property management fee for SLA are a tremendous value to these Debtors and these management fees are fair and equitable in all respects.

33.    The chart attached as **Exhibit 9**, sets forth values of the Archway collateral and cash collateral amounts and the cash collateral for non-Archway secured lenders, other than KDM.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of June, 2024, at ____Los Angeles____, California.



ALAN D. GOMPERTS

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

# EXHIBIT 1

# Seaton/Colyton

**EXHIBIT 1 - Page 38**

**Seaton / Colyton Consolidated**
**Monthly Cash Flow**

**Rental Income:**
**Seaton:**

| | |
|---|---|
| Monfrere | 10,815.00 |
| Silver Jeans | 9,144.00 |
| **Seaton Rent** | **19,959.00** |

**Colyton:**

| | |
|---|---|
| Diguise Systems, Inc. | 24,850.00 |
| Relativity Architects | 10,000.00 |
| Urban Outfitters | 15,760.00 |
| **Colyton Rent** | **50,610.00** |
| **Total Rent:** | **70,569.00** |

**Fixed Seaton Expenses:**

| | |
|---|---|
| Property Taxes | - |
| Insurance | 7,916.67 |
| **Total Fixed Seaton Expenses** | **7,916.67** |

**Fixed Colyton Expenses:**

| | |
|---|---|
| Property Taxes | - |
| Insurance | 1,570.00 |
| **Total Fixed Colyton Expenses** | **1,570.00** |
| **Total Fixed Expenses:** | **9,486.67** |

**Seaton Operating Expenses:**

| | |
|---|---|
| Tenant Improvement Expenses | 5,000.00 |
| Bank Service Charges | 100.00 |
| Equipment lease, parking | - |
| Repairs and Maintenance | 5,900.00 |
| Taxes & Licenses | 100.00 |
| Utilities | 2,723.00 |
| **Total Seaton Operating Expenses** | **13,823.00** |

**Colyton Operating Expenses:**

| | |
|---|---|
| Bank Service Charges | 15.00 |
| Repairs and Maintenance | 4,300.00 |
| Taxes & Licenses | 100.00 |
| Utilities | 600.00 |
| **Total Colyton Operating Expenses** | **5,715.00** |

**Joint Operating Expenses:**

| | |
|---|---|
| Miscellaneous | 1,500.00 |
| Management Fee | 10,000.00 |
| **Total Join Operating Expenses:** | **11,500.00** |
| **Total Operating Expenses** | **25,338.00** |
| **Total Expenses** | **34,824.67** |
| **Net Cash Flow** | **35,744.33** |

Note 1: Property taxes are not included: Annual amount $97,297 (Seaton), $42,691 (Colyton)

**EXHIBIT 1 - Page 39**

# EXHIBIT 2

# SLA

**EXHIBIT 2 - Page 40**

**SLA Investments, LLC**
**Monthly Cash Flow**

**Rental Income:**

| | |
|---|---|
| Earth Bean Coffee | 2,300.00 |
| Pirate World | 2,050.00 |
| Tailor to Me | 2,000.00 |
| Miracle Watts Designer | 1,000.00 |
| Davix Foreman Recording | 1,000.00 |
| Secret Spot | 1,000.00 |
| NYA | 1,000.00 |
| Saul Good Clothing | 1,250.00 |
| **Total Rental Income** | **11,600.00** |

**Expenses:**

| | |
|---|---|
| Repairs and Maintenance | 2,500.00 |
| Management Fee | 3,000.00 |
| Utilities | 1,333.00 |
| Taxes and Licenses | 100.00 |
| Insurance | 420.00 |
| | **7,353.00** |
| **Net Cash** | **4,247.00** |

Note: Property taxes are not included: Annual amount $37,868

**EXHIBIT 2 - Page 41**

# EXHIBIT 3

# Seapiper

**EXHIBIT 3 - Page 42**

**Seapiper Inn, Inc.**
# Monthly Budget

| | |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Lodging Sales** | 8,500.00 |
| **Total Income** | 8,500.00 |
| **Cost of Goods Sold** | |
| **Merchant Account Fees** | 1,200.00 |
| **Total COGS** | 1,200.00 |
| **Gross Profit** | 7,300.00 |
| **Expense** | |
| **Automobile Expense** | 70.00 |
| **Bank Service Charges** | 10.00 |
| **Charitable Contribution** | 500.00 |
| **Housekeeping** | 700.00 |
| **Insurance Expense** | 420.00 |
| **Landscaping and Groundskeeping** | 1,300.00 |
| **Office Supplies** | 60.00 |
| **Repairs and Maintenance** | 2,300.00 |
| **Taxes and Licenses** | 200.00 |
| **Utilities** | 500.00 |
| **Total Expense** | 6,060.00 |
| **Net Ordinary Income** | 1,240.00 |
| **Net Income** | **1,240.00** |

EXHIBIT 3 - Page 43

# EXHIBIT 4

# Canfield

**EXHIBIT 4 - Page 44**

**Alan Gomperts**
**2247 S. Canfield Ave.**
**Los Angeles, CA 90034**

| Rental Income | **$** |
|---|---|
| 12 months @ $6,600 | **79,200.00** |

| Expenses | |
|---|---|
| Mortgage Interest | 24,600.84 |
| Property Taxes | 12,339.06 |
| Broker commission | - |
| Insurance | 1,057.15 |
| Homeowner Fees | 753.46 |
| Repairs est | 6,500.00 |
| Gardener | 1,140.00 |
| | **46,390.51** |

| Net income | **32,809.49** |
|---|---|

EXHIBIT 4 - Page 45

# EXHIBIT 5

# Bagley

**EXHIBIT 5 - Page 46**

**Alan Gomperts**
**2220 Bagley Avenue**
**Los Angeles, CA 90034**

| **Rental Income** | **$** |
|---|---|
| 12 months @ $5,550 | **66,600.00** |
| | **66,600.00** |

| **Expenses** | |
|---|---|
| Mortgage payment | 48,038.52 |
| Property Taxes | 22,510.48 |
| Insurance | 1,485.15 |
| Homeowner Fees | 906.94 |
| Repairs Est. | 5,400.00 |
| Pool man | 900.00 |
| Gardener | 780.00 |
| | **80,021.09** |

| **Net income** | **(13,421.09)** |
|---|---|

EXHIBIT 5 - Page 47

# EXHIBIT 6

# Greenfield

**EXHIBIT 6 - Page 48**

**Alan Gomperts**
**3538 Greenfield Avenue**
**Los Angeles, CA 90034**

| | |
|---|---:|
| **Rental Income** | **$** |
| 12 months @ $4,875/month | 58,500.00 |
| | **58,500.00** |
| | |
| **Expenses** | |
| Mortgage Payment | 17,002.92 |
| Property Taxes | 6,292.00 |
| Commissions | - |
| Insurance | 836.15 |
| Repairs est | 2,900.00 |
| Gardener | 840.00 |
| | **27,871.07** |
| | |
| **Net income** | **30,628.93** |

**EXHIBIT 6 - Page 49**

# EXHIBIT 7

## S. Palm

EXHIBIT 7 - Page 50

**133 S. Palm Drive**
**Beverly Hills, CA 90212**

|  | 2023 |
| --- | --- |
| **Annual Income** | 138,348 |
| **Annual Expenses** | |
| Insurance | 4,200 |
| Mortgage Interest | 48,000 |
| Repairs | 3,200 |
| Taxes | 14,000 |
| Utilities | 12,600 |
| Total Expenses | 82,000 |
| **Net Income** | 56,348 |

EXHIBIT 7 - Page 51

# EXHIBIT 8

# Roxbury

**EXHIBIT 8 - Page 52**

140 S Roxbury Drive
Profit and Loss Sheet

|  |  | Annual |
|---|---|---|
| **Gross Rents** | $ | **328,138.00** |
|  |  |  |
| **Expenses** |  |  |
| Insurance | $ | 3,877.00 |
| Legal and Accounting Fees | $ | 625.00 |
| Interest | $ | 78,750.00 |
| Repairs | $ | 21,033.00 |
| Property Taxes | $ | 34,662.00 |
| Business Tax | $ | 3,730.00 |
| Utilities | $ | 39,044.00 |
| Depreciation | $ | 1,263.00 |
| Amortization | $ | 119.00 |
| Maintenance | $ | 4,629.00 |
|  | $ | 187,732.00 |
|  |  |  |
| **Net income** | $ | **140,406.00** |
| **Susan Halevy 50% Share** | $ | **70,203.00** |
| **Susan Halevy Monthly Net Income** | $ | **5,850.25** |

**EXHIBIT 8 - Page 53**

# EXHIBIT 9

# Cash Collateral

**EXHIBIT 9 - Page 54**

**Archway Collateral:**

| Property | Value | Sr. Liens | Collateral Value for Archway | Post-Petition Monthly Cash Collateral | Monthly Property Expenses |
|---|---|---|---|---|---|
| Broadway | $11,500,000.00 | $0.00 | $11,500,000.00 | N/A | |
| SLA | $3,500,000.00 | $1,805,484.00 | $1,694,516.00 | $11,600.00 | $7,353.00 |
| Negev | $2,800,000.00 | $0.00 | $2,800,000.00 | $7,700.00 | $6,060.00 |
| Greenfield | $1,300,000.00 | $181,952.00 | $1,118,048.00 | $4,875.00 | $906.00 |
| Horner | $2,100,000.00 | $780,000.00 | $1,320,000.00 | N/A | |
| S. Palm | $2,500,000.00 | $1,514,632.00 | $985,368.00 | $11,529.00 | $2,833.00 |
| | | Total: | $19,417,932.00 | $35,704.00 | $17,152.00 |
| | | Archway Debt: | $15,241,093.00 | | |
| | | | $1,300,000.00 | | |
| | | | $2,646,348.96 | | |
| | | | $125,000.00 | | |
| | | Total: | $19,312,441.96 | | |

**Non-Archway Collateral:**

| Property | Value | Liens | Post-Petition Monthly Cash Collateral |
|---|---|---|---|
| Canfield | $2,000,000.00 | $363,480.00 | $6,900.00 |
| Bagley | $2,500,000.00 | $728,121.00 | $5,550.00 |
| Roxbury | $2,800,000.00 | $2,090,481.00 | $13,672.00 |

**EXHIBIT 9 - Page 55**

1

## DECLARATION OF SUSAN HALEVY

2      I, Susan Halevy, hereby declare as follows:

3      1.      I make this declaration in support of the *Motion by Affected Debtors for Entry of an*

4  *Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)* (the "<u>Motion</u>").

5  Terms not defined herein shall have the same meanings ascribed to them in the Motion. I am a

6  debtor in these jointly administered Bankruptcy Cases.

7      2.      With the passing of my husband David in 2023, I am the sole beneficial owner of

8  the Halevy Trust, in addition to 100% of community property I owned with David.  I own 100% of

9  341 S. Canon LLC and as such I have the authority to grant a security interest in the real property

10  owned by 341 S. Canon LLC, located at 341 S. Canon, Beverly Hills, CA 90212 (the "Property").

11      3.      The Property currently has a voluntary first lien of $1,300,000 to Chase Bank. I

12  estimate the current value of the Property to be $2,600,000.

13      4.      If the Bankruptcy Court requires a replacement lien for the use of any of the Debtors'

14  cash collateral in these jointly administered cases, 341 S. Canon LLC consents to granting a

15  replacement lien to those secured creditors for the diminution in value that results from the Debtors'

16  use of cash collateral.

17

18      I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct.

20      Executed on this 7th day of June, 2024, at ___Los Angeles___, California.

21

22

23  
SUSAN HALEVY

24

25

26

27

28

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

1

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## DECLARATION OF DANIEL HALEVY

I, Daniel Halevy, hereby declare as follows:

1.      I make this declaration in support of the *Motion by Affected Debtors for Entry of an Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)* (the "Motion"). Terms not defined herein shall have the same meanings ascribed to them in the Motion. I am debtors in these jointly administered Bankruptcy Cases.

2.      I am the 100% owner and operator of Almighty Builders, LLC ("Almighty Builders"). Pre-petition, I have provided property management services as needed to the properties owned and operated by Seaton, Colyton, and SLA (the "Properties"), either directly or through Almighty Builders. Historically, Almighty Builders provided general contracting services for the Properties. On average, I provide at least 40 hours per week of my time and the resources of Almighty Builders toward managing the Properties. During these Bankruptcy Cases, Almighty Builders is proposed to perform all of the property management services required for the Properties.

3.      For Seaton and Colyton, Almighty Builders will regularly perform the following management services:

- Repairs and Maintenance:
  - Daily inspection and monitoring of the properties (including weekends);
  - Respond to alarms or security calls regarding the property at all times;
  - Perform any and all repairs to the properties whether due to normal wear and tear or vandalism;
  - Oversee the cleaning and maintenance all restrooms and common areas and all empty spaces and parking lot area;
  - Coordinate maintenance with various contractors, third party inspectors, and tradesman such as roofers, HVAC, fire alarm and fire sprinklers, reg 4 testers, plumbers, electricians, elevator technicians and low voltage installers, trash service companies, and phone internet providers;
  - Meet, coordinate, and communicate with insurance inspectors, and various city officials such as LAFD, LADBS LADWP, SOCAL gas employees.

- Tenant Improvements:
  - ○ Coordinate TI's with tenants;
  - ○ Perform landlord work required as part of lease agreements;
  - ○ Obtain quotes for landlord TI work and supervise the construction;
  - ○ Attend tenant construction meetings to ensure TI's are done correctly;
  - ○ Supervision of Tenant's TI's design and construction;
  - ○ Work closely with tenants' consultants to facilitate smooth transitions.
- Tenant Relations:
  - ○ Supervise the moving in and out of tenants;
  - ○ Interface with tenants in an effort to maintain good tenant relations between tenants and landlord;
  - ○ Handle all tenant requests and complaints;
  - ○ Collection of rents and eviction efforts if necessary, including the serving of three day notices and the like, and appearance at trial if necessary in any landlord-tenant litigation;
- Marketing and Leasing:
  - ○ Retain broker(s) to market and lease space in the property;
  - ○ Meet prospective tenants and walk them through the buildings;
  - ○ Negotiate leases;
  - ○ Represent the buildings for short-term pop-up rentals and film shoots.

4.      For SLA, Almighty Builders regularly performs the following management services:

- Repairs and Maintenance:
  - ○ Daily inspection and monitoring of the property (including weekends);
  - ○ Respond to alarms or security calls regarding the property at all times;
  - ○ Perform any and all repairs to the property whether due to normal wear and tear or vandalism;

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

- o   Oversee the cleaning and maintenance all restrooms and common areas and all empty spaces and parking lot area;
- o   Coordinate maintenance with various contractors.
- Tenant Improvements:
  - o   Coordinate TI's with tenants;
  - o   Perform landlord work required as part of lease agreements.
- Tenant Relations:
  - o   Supervise the moving in and out of tenants;
  - o   Interface with tenants in an effort to maintain good tenant relations between tenants and landlord;
  - o   Handle all tenant requests and complaints;
  - o   Collection of rents and eviction efforts if necessary, including the serving of three day notices and the like, and appearance at trial if necessary in any landlord-tenant litigation;
- Marketing and Leasing:
  - o   Retain broker(s) to market and lease space in the property;
  - o   Meet prospective tenants and walk them through the buildings;
  - o   Negotiate leases;
  - o   Represent the buildings for short-term pop-up rentals and film shoots.

5.     Prior to the Debtors' bankruptcy filings, I provided these services directly to the Debtors and was compensated fairly on a monthly albeit irregular basis. Post-petition, I will provide these same services through Almighty Builders. I believe $10,000 per month for services provided to Seaton/Colyton and $3,000 per month for services provided to SLA is a fair rate for the services provided.

/ / /

/ / /

/ / /

/ / /

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

-60-
DEBTORS' MOTION FOR USE OF CASH COLLATERAL

1    I declare under penalty of perjury under the laws of the United States of America that the

2 foregoing is true and correct.

3    Executed on this 7th day of June, 2024, at _____, California.

Los Angeles

4

5    _____

6    DANIEL HALEVY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF DERRICK TALERICO

2

I, Derrick Talerico, hereby declare as follows:

3

1.      I am an attorney duly admitted to practice law in the state of California and am

4

admitted inter alia to the United States District Court for the Central District of California, and

5

therefore to practice in the United States Bankruptcy Court for the Central District of California.

6

2.      I submit this declaration in support of the *Motion by Affected Debtors for Entry of*

7

*an Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)* (the "<u>Motion</u>").

8

Terms not defined herein shall have the same meanings ascribed to them in the Motion.

9

3.      In connection with the foregoing Motion, I have contacted KDM's counsel, David

10

Vallas, to discuss the Seaton's and Colyton's use of KDM's cash collateral.  Mr. Vallas has

11

informed me that KDM consents to the use of its cash collateral for the expenses set forth in the

12

monthly cash flow attached to the Gomperts Declaration as Exhibit 1, with the exception of the

13

$10,000 management fee.

14

15

I declare under penalty of perjury under the laws of the United States of America that the

16

foregoing is true and correct.

17

Executed on this 7th day of June, 2024, at Los Angeles, California.

18

19

20

 */s/ Derrick Talerico*
Derrick Talerico

21

22

23

24

25

26

27

28

DEBTORS' MOTION FOR USE OF CASH COLLATERAL

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
    11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(C)(2); DECLARATIONS OF ALAN GOMPERTS, SUSAN HALEVY, DANIEL HALEVY AND DERRICK TALERICO IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) June 7, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF Service List

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

See attached US Mail Service List

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 7, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent Zurzolo              (via personal delivery)
United States Bankruptcy Court
255 E Temple St Suite 1360
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 7, 2024 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Seaton Investments, LLC – Jointly Administered

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Corporate Debtors Seaton Investment, LLC, Colyton Investments, LLC, Broadway Avenue Investments, LLC, Negev Investments, LLC, SLA Investments, LCC.</u>: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com
- <u>Attorneys for Individual Debtors Alan Gomperts, Daniel Halevy, Susan Haley</u>: **Zev Shechtman, Carol Chow, Turner Falk**: zev.shechtman@salu.com; zshechtman@ecf.inforuptcy.com; carol.chow@saul.com; easter.santamaria@saul.com; turner.falk@saul.com
- <u>Attorneys for Creditor Korth Direct Mortgage, Inc.</u>: **Tanya Behnam**: tbehnam@polsinelli.com, tanyabehnam@gmail.com; ccripe@polsinelli.com; ladocketing@polsinelli.com
- <u>Attorneys for Creditor Archway Real Estate Income Fund I SPE I, LLC</u>: **Michael G. Fletcher, Bruce D. Poltrock, Gerrick Warrington**: mfletcher@frandzel.com; gwarrington@frandzel.com; bpoltrock@frandzel.com; sking@frandzel.com; achase@frandzel.com
- <u>Courtesy NEF/Interested Party</u>: **Todd S Garan**: ch11ecf@aldridgepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Jacqueline L James**: jjames@hrhlaw.com
- <u>Courtesy NEF/Interested Party Avi Muhtar</u>: **Avi Edward Muhtar**: amuhtar@eaccidents.com
- <u>Courtesy NEF/Interested Party</u>: **Jennifer C Wong**: bknotice@mccarthyholthus.com; jwong@ecf.courtdrive.com
- <u>US Trustee's Office</u>: ustpregion16.la.ecf@usdoj.gov; **Kelly L. Morrison**: Kelly.l.morrison@usdoj.gov
- 

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**