Michael Gerard Fletcher (State Bar No. 070849)
  mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
  gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor ARCHWAY
REAL ESTATE INCOME FUND I SPE I, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:24-bk-12079-VZ |
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |
| Debtors and Debtors-in-Possession. | 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ |
| Affects: | Chapter 11 |
| ☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☐ Broadway Avenue Investments, LLC<br>☒ SLA Investments, LLC<br>☒ Negev Investments, LLC<br>☒ Alan Gomperts<br>☒ Daniel Halevy<br>☒ Susan Halevy | **OBJECTION BY ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC TO MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2)** |
| | Date:    June 20, 2024<br>Time:    11:00 a.m.<br>Crtrm.:    1368<br>    255 E. Temple Street<br>    Los Angeles, CA 90012 |
| | Hon. Vincent P. Zurzolo |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## <u>TABLE OF CONTENTS</u>

I.      Introduction ........................................................................................................5

II.     Background .........................................................................................................6

        A.      The Broadway Loan ................................................................................6

        B.      Broadway Loan Defaults .........................................................................6

        C.      The Settlement Agreement ......................................................................6

        D.      Three New Loans ....................................................................................7

                1.      The Negev Loan ...........................................................................7

                2.      The SLA Loan ..............................................................................7

                3.      The Guarantor Loan .....................................................................8

        E.      Further Defaults ......................................................................................9

        F.      The Debtors File Chapter 11 Bankruptcy Cases ...................................10

        G.      Archway requests sequestration and an accounting of cash collateral ..........10

        H.      The Cash Collateral Motion ..................................................................10

        I.      Amounts Owed ......................................................................................10

III.    Argument ..........................................................................................................11

        A.      Archway has valid and perfected liens on the rents generated by the SLA,
                Greenfield, and Palm Properties ............................................................11

        B.      Archway has valid and perfected liens on the room revenue generated by
                the Foxdale Property motel ....................................................................12

        C.      The Debtors should account for any unauthorized use of cash collateral ...........13

        D.      The Debtors' proposal for "adequate protection" is inadequate. ...........14

                1.      The Debtors' budget and cashflows do not provide sufficient detail ..........14

                2.      The proposed management fee is improper without disclosures. ............15

                3.      The value of the Replacement Collateral lacks evidentiary support. ........16

                4.      The proposed replacement lien does not cover rents/room revenue. ..........16

                5.      Archway's petition date collateral position is eroding. .........16

        E.      The Court should award additional forms of adequate protection. ...........17

IV.     Conclusion ........................................................................................................18

OBJECTION TO MOTION TO USE CASH COLLATERAL

## Table of Authorities

**Page(s)**

**Federal Cases**

*In re CHA Hawaii, LLC,*
 426 B.R. 828 (Bankr. D. Haw. 2010)..................................................................13

*Cothran v. United States,*
 45 B.R. 836 (S.D. Ga. 1984) ..........................................................................13

*Freightliner Mkt. Dev. Corp. v. Silver Wheel Freightlines, Inc.,*
 823 F.2d 362 (9th Cir. 1987)......................................................................13, 14

*In re Hewett,*
 32 B.R. 605 (Bankr. W.D. Wash. 1983) .........................................................13

*In re Hotel Sierra Vista Ltd. P'ship,*
 112 F.3d 429 (9th Cir. 1997)......................................................................13, 14

*Matter of Lafayette Dial, Inc.,*
 92 B.R. 798 (Bankr. N.D. Ind. 1988) ..............................................................13

**Federal Statutes**

11 U.S.C. § 101(5) ...........................................................................................17

11 U.S.C. § 327 ................................................................................................15

11 U.S.C. § 328 ................................................................................................15

11 U.S.C. § 330 ................................................................................................15

11 U.S.C. § 361 ...........................................................................................14, 17

11 U.S.C. § 363(a)................................................................................10, 12, 13

11 U.S.C. § 363(c)(2)......................................................................................5, 13

11 U.S.C. § 363(c)(4) .......................................................................................13

11 U.S.C. § 363(e).......................................................................................14, 17

11 U.S.C. § 363(p) ...........................................................................................11

11 U.S.C. § 363(p)(1) .......................................................................................14

11 U.S.C. § 364 .............................................................................................5, 15

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1

**State Statutes**

2

Cal. Civ. Code § 2938(b) ......................................................................................... 12, 13

3

**Rules**

4

Federal Rules of Evidence Rule 1006 ........................................................................ 17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   Secured Creditor Archway Real Estate Income Fund I SPE I, LLC ("Archway") objects to

2   the use of its cash collateral—rents and motel room revenue—as sought in the *Motion by Affected*

3   *Debtors for Entry of an Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C.*

4   *§ 363(c)(2)* ("Cash Collateral Motion") (Dkt. 87) filed by Seaton Investments, LLC ("Seaton"),

5   Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA

6   Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton,

7   Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Alan"), Daniel

8   Halevy ("Daniel"), and Susan Halevy ("Susan" and collectively with Alan and Daniel, the

9   "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

**I.    Introduction**

11   The Debtors owe Archway about $20 million in secured loan obligations, which is close to

12   the collateral values that the Debtors are stating in their motion and schedules. Archway's

13   collateral secures payment of all of Archway's debt, and consists of commercial and residential

14   real property, some of which is generating rents. The Debtors seek permission to use such rents

15   from rental properties, and room revenue generated by a motel, as cash collateral.

16   Archway has requested that the Debtors sequester cash collateral and provide an

17   accounting of any postpetition cash collateral use. To date, Archway has not received such

18   accounting, and the Court has not entered an order permitting cash collateral use.

19   Archway does not necessarily oppose the use of rents (and the room revenue generated

20   from the motel) *to maintain and preserve the Subject Properties*. But, the cashflows and budgets

21   attached to the motion—which indicate that the "net income" will be used to fund claimed

22   ordinary course expenses of insiders, including the debtors *and their family members*—are vague

23   and lack sufficient detail. No "budget motions" have been filed by these individual chapter 11

24   debtors, and no § 364 DIP lending motions have been filed either.

25   The Debtors should not be granted a blank check.

26   If the Court grants cash collateral use, the Court should set an interim hearing, and require

27   the Debtors to provide Archway with an accounting of postpetition cash collateral use, and grant

28   Archway additional forms of adequate protection as requested herein.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## II.    Background

The following section provides the factual background concerning the Broadway Loan as well as the three New Loans made by Archway to the Debtors, as relevant to the Cash Collateral Motion.

### A.    The Broadway Loan

On July 21, 2021, Archway made a business loan to Broadway in the principal amount of $16,942,500.00 ("Broadway Loan"). *See* Declaration of Bobby Khorshidi at ¶ 7. The Broadway Loan is evidenced, in part, by a Loan Agreement ("Broadway Loan Agreement"), Promissory Note, Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, Assignment of Rents and Leases against the real property located at 737 South Broadway, Los Angeles, California 90014 ("Broadway Property"), Continuing Guaranty of Alan, Daniel, and David Halevy (now deceased) ("David" and collectively with Alan and Daniel, the "Broadway Guarantors"), along with other documents executed in connection with the Broadway Loan (collectively, the "Broadway Loan Documents"). Khorshidi Decl., ¶ 7.

### B.    Broadway Loan Defaults

Later, Broadway and Broadway Guarantors defaulted under the terms of the Broadway Loan Documents, including, without limitation, failing to obtain a certificate of occupancy by January 21, 2022, for the Broadway Property, as required by Section 5.1(o) of the Broadway Loan Agreement, and by failing to pay the Broadway Loan obligation in full as of the scheduled maturity date, August 1, 2022 (collectively, "Existing Defaults"). Khorshidi Decl., ¶ 8.

### C.    The Settlement Agreement

In connection with the Existing Defaults, and at Broadway's request, Broadway and Archway entered into that certain Settlement and Loan Modification Agreement on April 19, 2023 ("Settlement Agreement"). Among other things, the Settlement Agreement extended the maturity date of the Broadway Loan to December 1, 2023, at which time the entire principal under the Broadway Loan plus all accrued and unpaid interest and other amounts would be due and payable as provided under the Settlement Agreement. The Existing Defaults otherwise remained uncured. Khorshidi Decl., ¶ 7.

1

### D.    Three New Loans

On April 19, 2023, concurrently with the execution and delivery of the Settlement Agreement, Archway made three new loans in the aggregate amount of $4,000,000.00 (collectively, the "New Loans" and together with the Broadway Loan, the "Loans"), as described below.

### 1.    The Negev Loan

Pursuant to the Settlement Agreement, Archway made a new loan to Negev Investments, LLC ("Negev") in the principal amount of $1,300,000.00 ("Negev Loan"), secured by the real property commonly known as 12800 Foxdale Drive, Desert Hot Springs, California ("Foxdale Property"). The Negev Loan is evidenced by, among other things, a Loan Agreement ("Negev Agreement"), a Promissory Note ("Negev Note"), a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Negev DOT"), an Assignment of Leases and Rents ("Negev AOR" and collectively with other loan documents executed in connection with the Negev Loan, the "Negev Loan Documents"). Khorshidi Decl., ¶ 11; Exhs. 2–4.

Archway perfected its liens against the Foxdale Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording the Negev DOT in the Riverside County Recorders' Office, on April 20, 2023, which recording was assigned document number 2023-0113225. Archway further perfected its liens against, among other things, revenues, rents, issues, profits, income, and proceeds generated from the Foxdale Property, including from the motel located on the Foxdale Property, by, among other things, recording the Negev AOR in the Riverside County Recorders' Office, on April 20, 2023, which recording was assigned document number 2023-0113226. Khorshidi Decl., ¶ 12.

### 2.    The SLA Loan

Pursuant to the Settlement Agreement, Archway made second new loan to SLA Investments, LLC ("SLA") in the principal amount of $125,000.00 ("SLA Loan"), secured by the real property commonly known as 1040 S. Los Angeles Street, Los Angeles, California ("SLA Property"). Khorshidi Decl., ¶ 14.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

The SLA Loan is evidenced by, among other things, a Loan Agreement ("SLA Agreement"), a Promissory Note ("SLA Note"), a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("SLA DOT"), an Assignment of Leases and Rents ("SLA AOR" and collectively with other loan documents executed in connection with the SLA Loan, the "SLA Loan Documents"). Khorshidi Decl., ¶ 15; Exhs. 5–7.

Archway perfected its liens against the SLA Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording the SLA DOT in the Los Angeles County Recorders' Office, on April 21, 2023, which recording was assigned document number 20230258318. Archway further perfected its liens against, among other things, revenues, rents, issues, profits, income, and proceeds generated from the SL Property by, among other things, recording the SLA AOR in the Los Angeles County Recorders' Office, on April 21, 2023, which recording was assigned document number 20230258319. Khorshidi Decl., ¶ 16.

### 3.    The Guarantor Loan

Pursuant to the Settlement Agreement, Archway made a third new loan to, in relevant part, (a) Susan, as trustee of the Halevy Family Trust dated September 6, 2010 ("Halevy Trust"); (b) Alan and Sharon Gomperts ("Sharon"), as trustees of the Gomperts and Halevy Family Trust ("G&H Trust"); and (c) Daniel in the principal amount of $2,575,000.00 ("Guarantor Loan"). Khorshidi Decl., ¶ 18.

The Halevy Trust and G&H Trust were at the time, and are currently, self-settled, revocable trusts. Khorshidi Decl., ¶ 19. Susan is the sole beneficial owner of the Halevy Trust. *See* Declaration of Susan Halevy, Dkt. 87 at 57 ¶ 2.

The Guarantor Loan is secured by the real property commonly known as 3538 Greenfield Avenue, Los Angeles, California, owned by G&H Trust ("Greenfield Property"); 133 S. Palm Drive, Beverly Hills, California, owned by Halevy Trust ("Palm Property"); and 8561 Horner Street, Los Angeles, California, owned by Daniel ("Horner Property" and collectively with the Greenfield and Palm Properties, the "Guarantor Properties" and collectively with the Broadway Property, the "Properties"). Khorshidi Decl., ¶ 20.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

The Guarantor Loan is evidenced by, among other things, a Loan Agreement ("Guarantor Agreement"), a Promissory Note ("Guarantor Note"), three separate Deeds of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded against the Guarantor Properties (defined below as the "Guarantor DOTs" and collectively with other loan documents executed in connection with the Guarantor Loan, the "Guarantor Loan Documents" and collectively with the Broadway, Negev, and SLA Loan Documents, the "Loan Documents"). Khorshidi Decl., ¶ 21; Exhs. 8–10.

Archway perfected its liens against the Greenfield Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Greenfield DOT") in the Los Angeles County Recorders' Office, on April 24, 2023, which recording was assigned document number 20230261978. Khorshidi Decl., ¶ 22.

Archway perfected its liens against the Palm Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Palm DOT") in the Los Angeles County Recorders' Office, on April 24, 2023, which recording was assigned document number 20230259824. Khorshidi Decl., ¶ 23.

Archway perfected its liens against the Horner Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Horner DOT" and collectively with the Greenfield and Horner DOTs, the "Guarantor DOTs") in the Los Angeles County Recorders' Office, on April 24, 2023, which recording was assigned document number 20230259819. Khorshidi Decl., ¶ 24.

### E.    Further Defaults

On December 1, 2023, each one the Loans matured, and the entire principal balances of each of the Loan, plus all accrued and unpaid interest and other amounts, became due and payable to Archway as provided under the Loan Documents. Khorshidi Decl., ¶ 26.

F. **The Debtors File Chapter 11 Bankruptcy Cases**

On March 18, 2024, the Individual Debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Central District of California, commencing three of the instant bankruptcy cases. The next day, on March 19, 2024, chapter 11 petitions were filed on behalf of each of the Corporate Debtors, commencing the instant corporate bankruptcy cases.

G. **Archway requests sequestration and an accounting of cash collateral.**

On May 9, 2024, Archway requested sequestration of the rents, issues, and profits generated from the Properties. *See* Declaration of Michael Gerard Fletcher, Exh. 11. To date, the Debtors have not provided the requested accounting, or confirmed that they have sequestered cash collateral. Fletcher Decl., at ¶ 5.

H. **The Cash Collateral Motion**

On June 7, 2024, the Debtors filed the Cash Collateral Motion, which, among other things, seeks permission to use postpetition rental income cash collateral generated by SLA, Palm, and Greenfield Properties, and room revenue generated by the Foxdale (collectively, the "Subject Properties"). Per the Cash Collateral Motion, these four Subject Properties are the only Archway-loan-related Properties generating cash collateral under 11 U.S.C. § 363(a). Specifically, the Cash Collateral Motion provides that the Broadway and Horner Properties are not generating any postpetition rents, and they are therefore excluded from the Debtors' instant motion. *See* Cash Collateral Motion, Dkt. 87 at 16:11–15.

I. **Amounts Owed**

As of June 11, 2024, the Debtors owe Archway the following amounts under their respective loan obligations:

**Broadway Loan**

> Principal Balance of not less than $15,241,093.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $780,259.29
> Default Interest (12/1/23-6/11/2024) of not less than $698,126.73
> Legal Advances of not less than $199,820.40
> Balance as of June 11, 2024, is not less than $16,919,299.42 (Per Diem $7,620.55)

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Negev Loan**

> Principal Balance of not less than $1,300,000.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $66,552.78
> Default Interest (12/1/23-6/11/2024) of not less than $59,547.22
> Balance as of June 11, 2024, is not less than $1,426,100.00 (Per Diem $650.00)

**SLA Loan**

> Principal Balance of not less than $125,000.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $6,399.31
> Default Interest (12/1/23-6/11/2024) of not less than $5,725.69
> Balance as of June 11, 2024, is not less than $137,125.00 (Per Diem $62.50)

**Guarantor Loan**

> Principal Balance of not less than $2,575,000.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $131,825.69
> Default Interest (12/1/23-6/11/2024) of not less than $117,949.31
> Balance as of June 11, 2024, is not less than $2,824,775.00 (Per Diem $1,287.50)

**Combined Totals**

> Principal Balances of not less than $19,241,093.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $985,037.07
> Default Interest (12/1/23-6/11/2024) of not less than $881,348.95
> Legal Advances of not less than $199,820.40
> Balance as of June 11, 2024, is not less than $21,307,299.42
> Per Diem $9,620.55

Khorshidi Decl., ¶ 29.

Archway has not received any payments from the Debtors since well before the Loans matured in December of 2023. Khorshidi Decl., ¶ 30.

## III.    Argument

As discussed below, Archway objects to the Cash Collateral Motion, requests an accounting of postpetition cash collateral expenditures, and requests further forms of adequate protection.

### A.    Archway has valid and perfected liens on the rents generated by the SLA, Greenfield, and Palm Properties.

A creditor asserting an interest in cash collateral has the burden to prove the validity, priority, and extent of such interest, while the debtor seeking to use cash collateral has the burden to demonstrate that such interest is adequately protected. *See* 11 U.S.C. § 363(p).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  Here, the Debtors seek to use the rents generated from the SLA, Greenfield, and Palm

2 Properties, to pay postpetition monthly expenses associated with these properties, but also to pay

3 personal expenses of the Debtors and their families. The Debtors do not seem to dispute (a) that

4 Archway holds interests in such rents as cash collateral (*see* Cash Collateral Motion at 8:23–25),

5 or (b) that the Debtors owe Archway about $20 million as of the petition date (*see* Cash Collateral

6 Motion at 7:13–15).

7  As set forth in the Khorshidi Declaration and exhibits thereto, the Debtors granted

8 Archway security interests in, among other things, all rents generated from the Properties,

9 including, as relevant here, the Subject Properties, to secure repayment of the entire outstanding

10 indebtedness owed by the various Debtors under the Loans provided by Archway. *See* Khorshidi

11 Decl. Exhs. 6–7 (SLA Property), Exh. 9 (Greenfield Property) Exh. 10 (Palm Property); *see also*

12 Khorshidi Decl. ¶ 29 (reflecting amounts owed which are subject to Archway's perfected liens).

13 Under California law, Archway's security interests in such rents are valid and perfected, as

14 evidenced by Archway's recorded assignments of rents. *See id. See also* Cal. Civ. Code § 2938(b)

15 (providing that the act of recording an assignment of rents fully perfects the assignee's interest in

16 such rents under California law). Such postpetition rents constitute Archway's cash collateral. *See*

17 11 U.S.C. § 363(a) (defining "cash collateral" as including "rents").

18  Accordingly, the rents from the Subject Properties constitute Archway's cash collateral.

19 **B.** **Archway has valid and perfected liens on the room revenue generated by the**

20  **Foxdale Property motel.**

21  With respect to the room revenue generated by the Foxdale Property motel, the Debtors

22 state that they seek authorization to use such room revenue "as if it was cash collateral and provide

23 adequate protection to the extent deemed appropriate by the Court." Cash Collateral Motion at 11

24 n. 2.

25  As demonstrated in the Khorshidi Declaration and exhibits, the Debtors granted Archway

26 security interests in, among other things, all motel room revenues generated from the Properties,

27 including the Foxdale Property, to secure repayment of the entire outstanding indebtedness owed

28 to Archway as set forth under the Loan Documents. *See* Khorshidi Decl. Exh. 3–4 (Foxdale

1   Property); *see* Khorshidi Decl. ¶ 29 (reflecting amounts owed which are subject to Archway's

2   perfected liens). Archway perfected such security interests by recording assignments of rents and

3   room revenues in the counties in which such real property is located. *See id.*; s*ee also* Cal. Civ.

4   Code § 2938(b).

5       Like the rents generated from the Subject Properties, the room revenue generated by the

6   Foxdale Property motel also constitutes Archway's cash collateral and is treated the same as rents.

7   *See In re Hotel Sierra Vista Ltd. P'ship*, 112 F.3d 429, 432 (9th Cir. 1997) (citation omitted); 11

8   U.S.C. § 363(a) (defining "cash collateral" to include rents as well as "fees, charges, accounts or

9   other payments for the use or occupancy of rooms … in hotels, motels, or other lodging properties

10  subject to a security interest as provided in section 552(b) of this title…"); § 552(b)(2).

11      Accordingly, Archway has a valid, perfected interests in the rents generated from the

12  Foxdale Property motel, which the Debtors seek to use. These room revenues constitute

13  Archway's cash collateral.

14      **C.    The Debtors should account for any unauthorized use of cash collateral.**

15      A debtor in possession may not use a creditor's cash collateral without first getting either:

16  (a) consent of each creditor with an interest in collateral; or (b) court authorization, granted after

17  notice and hearing. *See* 11 U.S.C. § 363(c)(2). Absent consent or a court order, the debtor in

18  possession as an affirmative duty to sequester and account for cash collateral in its possession,

19  custody, or control. *See* 11 U.S.C. § 363(c)(4). Affirmative, express consent is required. *See*

20  *Freightliner Mkt. Dev. Corp. v. Silver Wheel Freightlines, Inc.*, 823 F.2d 362, 368 (9th Cir. 1987).

21  Courts impose a variety of sanctions for unauthorized use of cash collateral. *See, e.g.*, *In re CHA*

22  *Hawaii, LLC*, 426 B.R. 828, 837 (Bankr. D. Haw. 2010) (granting secured creditor liens on

23  unencumbered property, a superpriority administrative claim, and first-priority lien on additional

24  cash due to debtor's unauthorized postpetition use of cash collateral); *Matter of Lafayette Dial,*

25  *Inc.*, 92 B.R. 798, 801–802 (Bankr. N.D. Ind. 1988) (granting relief from stay); *In re Hewett*, 32

26  B.R. 605, 607 (Bankr. W.D. Wash. 1983) (converting case to chapter 7); *Cothran v. United States*,

27  45 B.R. 836, 838 (S.D. Ga. 1984) (dismissing case).

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Here, Archway has not consented to the use of its cash collateral, and the Court has not

2    authorized such use. Archway has requested sequestration and an accounting of any postpetition

3    use of its cash collateral. *See* Fletcher Decl. Exh. 11. To date, Archway has not received any

4    accounting. *See id.* at ¶ 5. If the Debtors have used Archway's cash collateral, and such use

5    prevents Archway from tracing the proceeds, equity and fairness would require that the Debtors

6    bear the burden of such tracing. *See Freightliner Mkt. Dev. Corp.*, 823 F.2d at 369 (citation

7    omitted). *Cf. Hotel Sierra Vista ltd. P'Ship*, 112 F.3d at 432 (declining to shift the burden to the

8    debtor because Congress had, at the time in 1994, recently amended the definition of cash

9    collateral to include room revenues).

10    Archway requests that the Court require the Debtors to provide an accounting of any

11    postpetition use of Archway's cash collateral, including, but not limited to, the rents and room

12    revenues, which are the subject of the instant Cash Collateral Motion. To the extent any of

13    Archway's cash collateral has not be sequestered or has been used postpetition without

14    authorization, Archway reserves the right to requestion additional relief from this Court, including

15    requesting additional forms of adequate protection at a continued interim hearing on cash

16    collateral use.

17    **D.      The Debtors' proposal for "adequate protection" is inadequate.**

18    If a creditor does not consent to a debtor's use of cash collateral, the Court may authorize

19    cash collateral use, but only to the extent that the court determines that the creditor's interest in the

20    collateral is adequately protected. *See* 11 U.S.C. § 363(e). Adequate protection is not defined in

21    the Code, but § 361 provides three non-exclusive methods as examples of adequate protection:

22    (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the

23    indubitable equivalent of the secured creditor's interest. 11 U.S.C. § 361. The burden of proof is

24    on the debtor to demonstrate that the secured creditor is adequately protected for the purpose of

25    using its cash collateral. 11 U.S.C. § 363(p)(1).

26    **1.      The Debtors' budget and cashflows do not provide sufficient detail.**

27    Here, the Debtors state that the secured creditors' collateral increases on a dollar-for-dollar

28    basis as the Debtors collect rent postpetition and that, therefore, the adequate protection required

1   for the use of such cash collateral is equal to the cash collateral proposed to be used. Cash

2   Collateral Motion at 18:17–19. The Debtors explain that Archway is also adequately protected "by

3   limiting the use of cash collateral to the attached budgets and cash flows." Cash Collateral Motion

4   at 19:27–28. But the budgets and cashflows attached to the motion lack sufficient detail. The

5   motion requests permission to use "net income" (above and beyond property maintenance, upkeep,

6   insurance, etc.) to fund ordinary living expenses of the Debtors and their families. But the

7   Individual Debtors have not filed any "budget motions" under § 1115(a), seeking approval of

8   ordinary course expenditures. And, therefore, Archway cannot tell what expenditures, exactly, are

9   being contemplated for the Individual Debtors and their families.

10        Also, as drafted, the motion would seem to permit the Debtors to use net income of *one*

11   Individual Debtor to fund expenses of *another* Individual Debtor. *See* Cash Collateral Motion at

12   14:19–20; 15:12–13. If so, such inter-case gifting or, perhaps, lending would be improper. The

13   Cash Collateral Motion does not purport to be a § 364 motion for approval of DIP lending

14   between and among the estates of the Individual Debtors. Simply put, more detail is required in

15   the budgets and cashflows, including, specifically, Exhibit 9 the "cash collateral budget."

16        **2.      The proposed management fee is improper without disclosures.**

17        The Debtors also seek permission to use Archway's cash collateral to fund management

18   fees to a property manager—and apparent insider—Almighty Builders, Inc. The Debtors state that

19   the proposed management fees for such arrangement are "fair" and, if not performed by Almighty

20   Builders, would need to be performed by some other similar management company at a rate likely

21   more than that charged by Almighty Builders. See Cash Collateral Motion at 11:8–11. The only

22   evidence provided to support this contention is Alan's declaration, which states his belief that it

23   would take many months for a new property manager to get up to speed, that Almighty Builders

24   provides a "tremendous value" to the Debtors, and that the management fees are "fair and

25   equitable in all respects." Alan Decl., Dkt. 87 at 38:1–6. But no disclosure of disinterestedness has

26   been made, and the Debtors do not address whether or when they will seek employment of

27   Almighty Builders under § 327. Such employment would seem to be a prerequisite to

28   compensation of Almighty Builders under §§ 328 or 330.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

3.     **The value of the Replacement Collateral lacks evidentiary support.**

The Debtors also offer Archway and KDM a replacement lien on the real property located at 341 South Cannon in Beverly Hills, California ("Replacement Collateral"). Susan's declaration states that she is the 100% owner of the LLC that owns the Replacement Collateral and that she estimates the value of the Replacement Collateral to be $2,600,000.00, subject to a $1,300,000.00 voluntary lien. *See* Dkt. 87 at 60 of 67. The motion states that there is $866,667.00 of equity to be pledged to support such a replacement lien, in which Archway and KDM would share *pari passu* priority to the extent of any diminution of value in their respective cash collateral. The Court should certainly grant this proffer of adequate protection to Archway. But, notably, the evidentiary basis for such proffer is lacking. No appraisal of the Replacement Collateral is provided, nor is any documentary evidence supporting the existing liens on the Replacement Collateral.

4.     **The proposed replacement lien does not cover rents/room revenue.**

The Debtors also offer Archway a replacement lien on "post-petition accounts receivable to the same extent and with the same validity of their pre-petition liens." But the motion fails to explain why the use of rents and room revenues calls for a replacement lien on "accounts receivable." The Court should certainly grant Archway a replacement lien that is apples-to-applies with the rents and room revenues generated postpetition (as requested below). As drafted, however, the proposed replacement lien appears to be limited to "accounts" or perhaps "general intangibles" under Article 9, which may nor may not be what is intended by the Debtors. Either way, the Court should grant Archway a replacement lien on all postpetition cash collateral, including specifically rents and room revenues as requested in the motion.

5.     **Archway's petition date collateral position is eroding.**

Notably, the Debtors state that Archway is oversecured by a thin margin of about $100,000.00. *See* Exhibit 9. Assuming this is accurate, this "equity cushion" is insufficient. In sum, the Debtors have provided insufficient evidence of the adequate protection of Archway's petition date collateral position, which seems to be eroding on a postpetition basis at the rate of almost $10,000.00 per day. *See* Khorshidi Decl., 8:4.

Accordingly, the Debtors' proffers of adequate protection are inadequate.

**E. The Court should award additional forms of adequate protection.**

Section 363(e) provides that an entity that has an interest in property used, sold leased or proposed to be used, sold or leased may at any time request that the court shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection. Adequate protection is a flexible concept. *See* 11 U.S.C. § 361; *see also* 11 U.S.C. § 101(5) (providing that "'or' is not exclusive").

Here, if the Court approves the Debtors' request to use Archway's cash collateral, such used should be approved on an interim basis only, pending a further interim or final hearing, and should be subject to, without limitation, the following forms of additional adequate protection:

- Requiring the Debtors to provide a detailed accounting of all postpetition cash collateral use ("Accounting").

- Granting Archway a § 507(b) super-priority administrative claim in an amount equal to (a) any diminution in Archway's petition date collateral position, and (b) the amount of any unauthorized postpetition use of Archway's cash collateral ("Super-Priority").

- Permitting Archway, its counsel, and its experts immediate access to all of the Debtors' current and historical books and records as well as access to the Subject Properties for inspection, during normal business hours ("Access").

- Imposing a bar on any payments by the Debtors to any insiders or those related to insiders or their entities ("No Insider Payments").

- Denying authorization for payment of pre-petition claims (other than for non-insider wages of salaried employees), including, but not limited to, for rent, trade vendors, and non-salaried employees ("Prepetition Ban").

- Requiring the Debtors to provide a detailed budget of proposed cash collateral expenditures, which reflects line items showing exactly how cash collateral is proposed to be expended ("Detailed Budget").

- Requiring the Debtor being to produce to the Bank or make available for inspection and copying by the Bank prior to the continued interim or final hearing on cash collateral use: (a) all back-up supporting documentation for the cashflows and cash collateral budget, (b) any documentation, including appraisals, which might support such cashflows and budget; and (c) all bank account and DIP account activity, limited to the month immediately preceding the bankruptcy filing as well as postpetition (to date) (collectively, the "Production").[1]

---

[1] Archway also requests such back-up pursuant to Rule 1006 of the Federal Rules of Evidence ("FRE"). The cashflows and budgets attached to the Cash Collateral Motion constitute summaries, charts, and/or calculations of financial writings, recordings, or photographs, which are being offered to prove content, within the ambit of FRE 1006.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

OBJECTION TO MOTION TO USE CASH COLLATERAL

- Requiring the Debtors to make periodic cash payments to Archway in an amount not less than the monthly interest accruing on the Debtors' prepetition loan obligations to Archway (collectively, the "Payments").

- Granting Archway automatically-perfected replacement liens on, and security interests in, all of the respective Debtors' tangible and intangible prepetition and postpetition property (retroactive as of the petition date) with the same validity, priority, and extent that Archway had in such prepetition collateral as of the petition date. Archway should not be required to file or record financing statements, notices of lien, or similar instruments in any jurisdiction or to take any other action in order to validate and perfect these replacement liens and security interests ("Replacement Liens").

- Granting Archway other adequate protection as the Court may deem appropriate ("Other Adequate Protection" and collectively with Access, No Insider Payments, Prepetition Ban, Detailed Budget, Protection, Payments, and Replacement Liens, "Additional Adequate Protection").

Archway expressly reserves the right to request further, additional, and/or other forms of adequate protection, in addition to the adequate protection proffered by the Debtors and the Additional Adequate Protection in the future, as necessary.

## IV.    Conclusion

Archway objects to certain aspects of the Debtors' motion, but it does not oppose the use of cash collateral to pay maintenance, upkeep, repairs, insurance, and other expenses necessary to preserve and provide for upkeep of the Subject Properties—so long as it is provided adequate protection, which is not demonstrated by what is being offered by the Debtors. The Court should set a further interim hearing on cash collateral and grant Archway the Additional Adequate Protection as requested herein. In the interim, the Debtors should provide Archway with an accounting of all postpetition cash collateral use, pending a further interim hearing on cash collateral use.

DATED:  June 17, 2024                    FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                        MICHAEL GERARD FLETCHER
                                        GERRICK M. WARRINGTON


                                        By:      /s/ Gerrick M. Warrington
                                        _____
                                        GERRICK M. WARRINGTON
                                        Attorneys for Secured Creditor ARCHWAY
                                        REAL ESTATE INCOME FUND I SPE I, LLC

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

A true and correct copy of the foregoing (underline concurrently-filed documents) document entitled (*specify*):

**OBJECTION BY ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC TO MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2);**

**DECLARATION OF BOBBY KHORSHIDI IN SUPPORT OF OBJECTION BY ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC TO MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2); and**

**DECLARATION OF MICHAEL GERARD FLETCHER IN SUPPORT OF OBJECTION BY ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC TO MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2).**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) June 17, 2024  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 17, 2024 (prior to noon), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Personal Delivery (Early Morning Before Noon):**
The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, **Bin outside of Suite 1360**
Los Angeles, CA 90012-3332

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 17, 2024 | Annette Chase | /s/ Annette Chase |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com,
  tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com

- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com,
  easter.santamaria@saul.com

- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email

- Counsel to Archway: Michael G Fletcher    mfletcher@frandzel.com,
  sking@frandzel.com

- Counsel to Party in Interest: Todd S. Garan    ch11ecf@aldridgepite.com,
  TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com

- Counsel to Party in Interest: Jacqueline L James    jjames@hrhlaw.com

- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov

- Counsel to Party in Interest: Avi Edward Muhtar    amuhtar@crownandstonelaw.com

- Counsel to Archway: Bruce D Poltrock    bpoltrock@frandzel.com, achase@frandzel.com

- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com,
  maraki@wztslaw.com,sfritz@wztslaw.com

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

- Counsel to Archway: Gerrick Warrington    gwarrington@frandzel.com,
  achase@frandzel.com

- Counsel to Party in Interest: Jennifer C Wong    bknotice@mccarthyholthus.com,
  jwong@ecf.courtdrive.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR E-MAIL</u>**

**Served By Email:**

- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com

- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com, easter.santamaria@saul.com

- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email

- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov

- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**