Michael Gerard Fletcher (State Bar No. 070849)
  mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
  gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor ARCHWAY
REAL ESTATE INCOME FUND I SPE I, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:24-bk-12079-VZ |
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |
| Debtors and Debtors-in-Possession. | 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ |
| Affects: | Chapter 11 |
| ☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☐ Broadway Avenue Investments, LLC<br>☒ SLA Investments, LLC<br>☒ Negev Investments, LLC<br>☒ Alan Gomperts<br>☒ Daniel Halevy<br>☒ Susan Halevy | **DECLARATION OF BOBBY KHORSHIDI IN SUPPORT OF OBJECTION BY ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC TO MOTION BY AFFECTED DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2)** |
| | Date:       June 20, 2024<br>Time:       11:00 a.m.<br>Crtrm.:     1368<br>                255 E. Temple Street<br>                Los Angeles, CA 90012 |
| | Hon. Vincent P. Zurzolo |

I, Bobby Khorshidi, declare:

1.    I am the Manager of AOL GP, LLC, a Delaware limited liability company ("AOL") who is the general partner of secured creditor, Archway Real Estate Income Fund I SPE I, LLC, a Delaware limited liability company ("Archway").

2.    If called as a witness, I could and would competently testify to all facts within my personal knowledge, except where stated upon information and belief.

3.    This declaration is submitted in support of Archway's Objection (Dkt. *pending*) to the *Motion by Affected Debtors for Entry of an Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)* ("Cash Collateral Motion") (Dkt. 87) filed by Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Alan"), Daniel Halevy ("Daniel"), and Susan Halevy ("Susan" and collectively with Alan and Daniel, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

## Custodian of Records

4.    I am one of the custodians of the books, records, and files of Archway as to those books, records, and files that pertain to loans and extensions of credit given to the Debtors as set forth in this Declaration and in these jointly-administered bankruptcy cases.

5.    I have personally worked on such books, records, and files, and as to the facts set forth in this Declaration, I know such facts to be true of my own knowledge or I have gained knowledge of them from the business records of Archway on behalf of Archway, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Archway's business at or near the time of the acts, conditions, or events to which they relate.

6.    Any such document was prepared in the ordinary course of business of Archway by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such acts, conditions, or events.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**The Broadway Loan**

7.      On July 21, 2021, Archway made a business loan to Broadway in the principal amount of $16,942,500.00 ("Broadway Loan"). The Broadway Loan is evidenced, in part, by a Loan Agreement ("Broadway Loan Agreement"), Promissory Note, Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, Assignment of Rents and Leases, Continuing Guaranty of Alan, Daniel, and David Halevy (now deceased) ("David" and collectively with Alan and Daniel, the "Broadway Guarantors"), along with other documents executed in connection with the Broadway Loan (collectively, the "Broadway Loan Documents").

**Broadway Loan Defaults**

8.      Later, Broadway and Broadway Guarantors defaulted under the terms of the Broadway Loan Documents, including, without limitation, failing to obtain a certificate of occupancy by January 21, 2022, for the Broadway Property, as required by Section 5.1(o) of the Broadway Loan Agreement, and by failing to pay the Broadway Loan obligation in full as of the scheduled maturity date, August 1, 2022 (collectively, "Existing Defaults").

**The Settlement Agreement**

9.      In connection with the Existing Defaults, and at Broadway's request, Broadway and Archway entered into that certain Settlement and Loan Modification Agreement on April 19, 2023 ("Settlement Agreement"). Among other things, the Settlement Agreement extended the maturity date of the Broadway Loan to December 1, 2023, at which time the entire principal under the Broadway Loan plus all accrued and unpaid interest and other amounts would be due and payable as provided under the Settlement Agreement. The Existing Defaults otherwise remained uncured. A true and correct copy of the Settlement Agreement is attached as **Exhibit 1.**

**Three New Loans**

10.     On April 19, 2023, concurrently with the execution and delivery of the Settlement Agreement, Archway made three new loans in the aggregate amount of $4,000,000.00 (collectively, the "New Loans" and together with the Broadway Loan, the "Loans"), as described below.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**The Negev Loan**

11.     Pursuant to the Settlement Agreement, Archway made a new loan to Negev Investments, LLC ("Negev") in the principal amount of $1,300,000.00 ("Negev Loan"), secured by the real property commonly known as 12800 Foxdale Drive, Desert Hot Springs, California ("Foxdale Property"). The Negev Loan is evidenced by, among other things, a Loan Agreement ("Negev Agreement"), a Promissory Note ("Negev Note"), a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Negev DOT"), an Assignment of Leases and Rents ("Negev AOR" and collectively with other loan documents executed in connection with the Negev Loan, the "Negev Loan Documents").

12.     Archway perfected its liens against the Foxdale Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording the Negev DOT in the Riverside County Recorders' Office, on April 20, 2023, which recording was assigned document number 2023-0113225. Archway further perfected its liens against, among other things, revenues, rents, issues, profits, income, and proceeds generated from the Foxdale Property, including from the motel located on the Foxdale Property, by, among other things, recording the Negev AOR in the Riverside County Recorders' Office, on April 20, 2023, which recording was assigned document number 2023-0113226.

13.     True and correct copies of the Negev Note, DOT (and recorded UCC-1), and AOR are attached as **Exhibits 2, 3, and 4,** respectively.

**The SLA Loan**

14.     Pursuant to the Settlement Agreement, Archway made second new loan to SLA Investments, LLC ("SLA") in the principal amount of $125,000.00 ("SLA Loan"), secured by the real property commonly known as 1040 S. Los Angeles Street, Los Angeles, California ("SLA Property").

15.     The SLA Loan is evidenced by, among other things, a Loan Agreement ("SLA Agreement"), a Promissory Note ("SLA Note"), a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("SLA DOT"), an Assignment of Leases and Rents

1  ("SLA AOR" and collectively with other loan documents executed in connection with the SLA

2  Loan, the "SLA Loan Documents").

3      16.    Archway perfected its liens against the SLA Property, including rents, profits,

4  proceeds, leases, and subleases, by, among other things, recording the SLA DOT in the Los

5  Angeles County Recorders' Office, on April 21, 2023, which recording was assigned document

6  number 20230258318. Archway further perfected its liens against, among other things, revenues,

7  rents, issues, profits, income, and proceeds generated from the SL Property by, among other

8  things, recording the SLA AOR in the Los Angeles County Recorders' Office, on April 21, 2023,

9  which recording was assigned document number 20230258319.

10      17.    True and correct copies of the SLA Note, DOT (and recorded UCC-1), and AOR

11  are attached as **Exhibits 5, 6, and 7,** respectively.

**The Guarantor Loan**

13      18.    Pursuant to the Settlement Agreement, Archway made a third new loan to, in

14  relevant part, (a) Susan, as trustee of the Halevy Family Trust dated September 6, 2010 ("Halevy

15  Trust"); (b) Alan and Sharon Gomperts ("Sharon"), as trustees of the Gomperts and Halevy

16  Family Trust ("G&H Trust"); and (c) Daniel in the principal amount of $2,575,000.00 ("Guarantor

17  Loan").

18      19.    The Halevy Trust and G&H Trust were at the time, and are currently, self-settled,

19  revocable trusts. Susan is the sole beneficial owner of the Halevy Trust. See Declaration of Susan

20  Halevy, Dkt. 87 at 57 ¶ 2.

21      20.    The Guarantor Loan is secured by the real property commonly known as 3538

22  Greenfield Avenue, Los Angeles, California, owned by G&H Trust ("Greenfield Property"); 133

23  S. Palm Drive, Beverly Hills, California, owned by Halevy Trust ("Palm Property"); and 8561

24  Horner Street, Los Angeles, California, owned by Daniel ("Horner Property" and collectively with

25  the Greenfield and Palm Properties, the "Guarantor Properties").

26      21.    The Guarantor Loan is evidenced by, among other things, a Loan Agreement

27  ("Guarantor Agreement"), a Promissory Note ("Guarantor Note"), three separate Deeds of Trust,

28  Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded against the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Guarantor Properties (defined below as the "Guarantor DOTs" and collectively with other loan documents executed in connection with the Guarantor Loan, the "Guarantor Loan Documents" and collectively with the Broadway, Negev, and SLA Loan Documents, the "Loan Documents").

22.    Archway perfected its liens against the Greenfield Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Greenfield DOT") in the Los Angeles County Recorders' Office, on April 24, 2023, which recording was assigned document number 20230261978.

23.    Archway perfected its liens against the Palm Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Palm DOT" and together with Greenfield DOT, the "Subject Guarantor DOTs") in the Los Angeles County Recorders' Office, on April 24, 2023, which was recording assigned document number 20230259824.

24.    Archway perfected its liens against the Horner Property, including rents, profits, proceeds, leases, and subleases, by, among other things, recording that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Horner DOT") in the Los Angeles County Recorders' Office, on April 24, 2023, which recording was assigned document number 20230259819.

25.    True and correct copies of the Guarantor Note and Subject Guarantor DOTs (and recorded UCC-1s) are attached as **Exhibits 8, 9, and 10,** respectively.

**Further Defaults**

26.    On December 1, 2023, each one the Loans matured, and the entire principal balances of each of the Loan, plus all accrued and unpaid interest and other amounts, became due and payable to Archway as provided under the Loan Documents.

**The Debtors File Chapter 11 Bankruptcy Cases**

27.    On March 18, 2024, the Individual Debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Central District of California, commencing three of the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

instant bankruptcy cases. The next day, on March 19, 2024, chapter 11 petitions were filed on behalf of each of the Corporate Debtors, commencing the instant corporate bankruptcy cases.

### The Cash Collateral Motion

28.     On June 7, 2024, the Debtors filed the Cash Collateral Motion, which, among other things, seeks permission to use postpetition rent and room revenue generated by the Foxdale, SLA, Palm, and Greenfield Properties. Per the Cash Collateral Motion, these four properties are the only Archway-loan-related properties generating cash collateral under 11 U.S.C. § 363(a). Specifically, the Cash Collateral Motion provides that the Broadway and Horner Properties are not generating any postpetition rents. *See* Cash Collateral Motion, Dkt. 87 at 16:11–15.

29.     As of June 11, 2024, the Debtors owe Archway the following amounts under their respective loan obligations:

**Broadway Loan**

> Principal Balance of not less than $15,241,093.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $780,259.29
> Default Interest (12/1/23-6/11/2024) of not less than $698,126.73
> Legal Advances of not less than $199,820.40
> Balance as of June 11, 2024, is not less than $16,919,299.42
> Per Diem $7,620.55

**Negev Loan**

> Principal Balance of not less than $1,300,000.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $66,552.78
> Default Interest (12/1/23-6/11/2024) of not less than $59,547.22
> Balance as of June 11, 2024, is not less than $1,426,100.00
> Per Diem $650.00

**SLA Loan**

> Principal Balance of not less than $125,000.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $6,399.31
> Default Interest (12/1/23-6/11/2024) of not less than $5,725.69
> Balance as of June 11, 2024, is not less than $137,125.00
> Per Diem $62.50

**Guarantor Loan**

> Principal Balance of not less than $2,575,000.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $131,825.69
> Default Interest (12/1/23-6/11/2024) of not less than $117,949.31
> Balance as of June 11, 2024, is not less than $2,824,775.00
> Per Diem $1,287.50

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Combined Totals**

> Principal Balances of not less than $19,241,093.00
> Accrued Interest (12/1/23-6/11/2024) of not less than $985,037.07
> Default Interest (12/1/23-6/11/2024) of not less than $881,348.95
> Legal Advances of not less than $199,820.40
> Balance as of June 11, 2024, is not less than $21,307,299.42
> Per Diem $9,620.55

30.    Archway has not received any payments from the Debtors since well before the Loans matured in December of 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on this 14 day of June, 2024, at Los Angeles, California.

_____
Bobby Khorshidi

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# Exhibit 1

# Exhibit 1

## SETTLEMENT AND LOAN MODIFICATION AGREEMENT

This SETTLEMENT AND LOAN MODIFICATION AGREEMENT ("Agreement"), is dated as of April 19, 2023, by and among BROADWAY AVENUE INVESTMENTS LLC, a California limited liability company ("Borrower"), ALAN GOMPERTS ("Alan"), an individual, DANIEL HALEVY ("Daniel"), an individual, and DAVID HALEVY ("David", an individual together with Alan and Daniel, collectively and individually hereinafter referred to as "Guarantor"), on the one hand, and ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company ("Lender"), on the other hand, with respect to the following facts, matters and issues. Borrower and Guarantor together when referred to with Lender shall be collectively hereinafter referred to as the "Parties."

### RECITALS

A.      Lender has heretofore made a loan (the "Broadway Loan") to Borrower in the original maximum principal sum of Sixteen Million Nine Hundred Forty-Two Thousand Five Hundred and No/100 Dollars ($16,942,500.00) evidenced by, among other things, (i) that certain Promissory Note dated July 21, 2021 (together with any and all amendments thereto or modifications thereof, the "Note"), in the original principal face amount of $16,942,500.00, executed by Borrower to and in favor of Lender, and (ii) that certain Loan Agreement dated July 21, 2021, by and between Borrower and Lender (together with any and all amendments thereto or modifications thereof, the "Loan Agreement").

B.      As security for, among other things, the indebtedness and obligations under the Broadway Loan, Borrower, as trustor, executed and delivered to and in favor of Lender, as beneficiary, that certain  Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated July 23, 2021, and recorded on July 26, 2021, as Instrument No. 20211142009 in the Official Records of Los Angeles County, California (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), encumbering, without limitation, certain real property more particularly described in **Exhibit "A"** attached hereto and incorporated herein by this reference (as more particularly described therein, the "Property").

C.      Payment and performance of Borrower's indebtedness and obligations in connection with the Broadway Loan was and is guaranteed by Guarantor pursuant to a Continuing Guaranty executed by Guarantor and dated as of July 21, 2021 (the "Continuing Guaranty").

D.      Pursuant to the Deed of Trust, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in the Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Broadway Loan and the Note.  The Deed of Trust Collateral and any other collateral securing the indebtedness and obligations under the Broadway Loan shall be collectively referred to as the "Collateral." Lender's security interest in the Collateral was and is perfected under applicable law.

E.      This Agreement, the Note, Loan Agreement, Deed of Trust, Continuing Guaranty, and all other agreements, instruments and other documents executed by Borrower or Guarantor

in connection with the Broadway Loan shall at times hereinafter be referred to collectively as the "Broadway Loan Documents." Any and all terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

  F. Lender alleges that Borrower and Guarantor defaulted under the terms of the Broadway Loan Documents by, among other things, failing to obtain a certificate of occupancy for the Property by January 21, 2022 and failing to pay the Loan off in full as of August 1, 2022, the maturity date (collectively hereinafter the "defaults").

  G. On September 28, 2022, Lender filed its Verified Complaint for Breach of Guaranty against Guarantor in the Los Angeles County Superior Court entitled *Archway Real Estate Income Fund I SPE I, LLC, Plaintiff v. Alan Gomperts, et al., Defendants* Case Number 22STCV31742 (the "Litigation").

  H. On August 30, 2022, Lender caused to be commenced non-judicial foreclosure proceedings through the filing of a notice of default ("NOD") as instrument no. 20220859022 in the Official Records of Los Angeles County, California. The NOD is still pending.

  I. The Parties now desire to modify the Broadway Loan Documents, resolve and settle the Litigation, and rescind the NOD, subject to the terms and conditions set forth herein.

## AGREEMENT

  NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

  1. Recitals. The recitals are incorporated herein by this reference as are all exhibits attached hereto. Borrower and Guarantor, and each of them, represent and warrant to Lender that the factual information recited above is true and correct. Except as specified herein, all of the terms and conditions of the Broadway Loan Documents, and each of them, shall remain in full force and effect. In the event of any conflict or inconsistency between the terms, conditions, and provisions of this Agreement and the Broadway Loan Documents, the terms, conditions, and provisions of this Agreement shall prevail.

  2. Reaffirmation. This Agreement is, in part, a reaffirmation of the obligations and indebtedness of Borrower and Guarantor to Lender as evidenced by the Broadway Loan Documents. Therefore, Borrower and Guarantor each represent, warrant, covenant, and agree, that except as specified herein, all of the terms and conditions of the Broadway Loan Documents are in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

  3. Acknowledgments.

  A. Borrower and Guarantor, and each of them, acknowledge the validity, priority and extent of the Broadway Loan Documents and acknowledge that the following sums are owed to the Lender as of April 19, 2023:

| | | | |
|---|---|---|---|
| (1) | Principal balance in the amount of | $16,942,500.00 | |
| (2) | Non-default interest in the amount of | $1,171,385.63 | |
| (3) | Default interest ("Default Interest") in the amount of | $1,656,129.46 | |
| (4) | Late charges ("Late Charges") in the amount of | $0.00 | |
| (5) | Legal and Trustee fees and costs ("Legal/Trustee Fees") in the amount of | $65,000.00 | (FRBC) |
| | | $30,000.00 | (TC) |
| | | $16,489.00 | (Trustee) |
| (6) | GRAND TOTAL ("Amounts Owed") | $19,881,504.09 | |

In addition, interest continues to accrue at the rate of $8,471.25 per day, inclusive of default interest (the "Per Diem").

B.     Borrower and Guarantor, and each of them, acknowledge and confirm that neither Borrower nor Guarantor has any valid offset or defense to the Amounts Owed, obligations, and liability under the Broadway Loan Documents.

4.     New Loans.

A.     Concurrently with the execution of this Agreement, Lender shall make three (3) new loans in the aggregate amount of $4,000,000.00 (collectively, "New Loans"), as follows:

(1)     A loan to _Negev Investments, LLC ("Negev") in the principal amount of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000.00) ("Negev Loan"), secured by the real property commonly known as 12800 Foxdale Drive, Desert Hot Springs, California ("Foxdale Property") and guaranteed by David.  The guaranty shall be secured by his membership interest in Negev.  The documents and instruments evidencing the Negev Loan are identified in Exhibit "B-1" attached hereto;

(2)     A loan to SLA Investments, LLC ("SLA") in the principal amount of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00) ("SLA Loan"), secured by the real property commonly known as 1040 S. Los Angeles Street, Los Angeles, California ("Los Angeles Property") and guaranteed by David, Sue Halevy ("Sue"), Alan, Sharon Gomperts a/k/a Sharon Halevy ("Sharon") and Daniel.  The guaranty shall be secured by David, Sue, Alan, Sharon and Daniel's membership interest in SLA.  The documents and instruments evidencing the SLA Loan are identified in Exhibit "B-2" attached hereto; and

(3)     A loan to David, David Halevy and Sue Halevy, as trustees of the Halevy Family Trust dated September 6, 2010 ("D&S Trust"), Alan, Alan Gomperts and Sharon Gomperts, as trustees of the Gomperts and Halevy Family Trust ("G&H Trust") and Daniel in the principal amount of Two Million Five Hundred Seventy-Five Thousand and No/100 Dollars

($2,575,000.00) ("Guarantor Loan"), secured by the real property commonly known as 3538 Greenfield Avenue, Los Angeles, California, owned by G&H Trust, 133 S. Palm Drive, Beverly Hills, California, owned by D&S Trust, and 8561 Horner Street, Los Angeles, California, owned by Daniel. The documents and instruments evidencing the Guarantor Loan are identified in Exhibit "B-3" attached hereto.

      B.     The proceeds of the New Loans ("New Loans Proceeds") shall be disbursed and allocated as provided in the Negev Loan, SLA Loan and Guarantor Loan, as more particularly described in Exhibit "C" attached hereto, and shall be used for the creation of an interest reserve for the New Loan, payment of past due amounts owed by Broadway to Lender under the Broadway Loan Documents, creation of an interest reserve for the Broadway Loan and to pay certain fees and costs. To the extent that the New Loans Proceeds are insufficient to make all payments or deposits required pursuant to this Agreement, the Negev Loan, SLA Loan and Guarantor Loan, or any of them, Guarantor shall be required to do so, from their own funds, concurrently with the Settlement Closing (as herein defined).

     5.     <u>Amendments to Broadway Loan</u>.

    Upon Settlement Closing:

      A.     The Maturity Date under the Broadway Loan shall be extended to December 1, 2023, at which time the entire principal balance under the Broadway Loan plus all accrued and unpaid interest thereon shall be due and payable as provided under the Broadway Loan Documents. From and after the Settlement Closing, any and all references in the Note, Loan Agreement, and the other Broadway Loan Documents to a maturity date of "August 1, 2022" shall be replaced with "December 1, 2023."

      B.     The obligations of Borrower to obtain the Certificate of Occupancy on the Property no later than January 21, 2022 pursuant to Section 5.1(a) of the Loan Agreement is hereby amended to be required as soon as is reasonably practicable in the best efforts of Borrower, but in any event no later than the Maturity Date.

     6.     <u>Interest Reserve Deposit</u>. Concurrently with the Settlement Closing, Guarantor shall deposit the sum of $892,874.03 (the "<u>Interest Reserve Shortfall</u>") into the Interest Reserve. The Interest Reserve Shortfall shall not bear interest. Borrower continues to authorize Lender, on a monthly basis, to disburse from the Interest Reserve the amount of interest accrued and unpaid to Lender under the terms of Section 12(b) of the Loan Agreement without further authorization on the part of Borrower. Such disbursements by Lender may be made by such means (including, as shall be satisfactory to Lender, in its sole and absolute discretion. Notwithstanding the Interest Reserve, Borrower remains liable and obligated to pay all accrued and unpaid interest when it is due and payable, in the event that the amounts in the Interest Reserve are insufficient to do so.

     7.     <u>Conditions Precedent to Settlement Closing</u>. The obligations of Lender hereunder are expressly conditioned upon the following having occurred, or Lender having received on or prior to April 19, 2023 ("<u>Settlement Closing</u>"), all of the following amounts, documents, and

instruments in form and content satisfactory to Lender, in its sole and absolute discretion, opinion, and judgment:

       A.      This Agreement, fully executed by Borrower and Guarantor;

       B.      The closing of the Negev Loan;

       C.      The closing of the SLA Loan;

       D.      The closing of the Guarantor Loan;

       E.      Payment of the Legal/Trustee Fees;

       F.      Payment and/or deposit of any additional monies required pursuant to Section 6, above;

       G.      At Borrower's expense, endorsements to Lender's existing policy of title insurance insuring the continuing priority of the lien of the Deed of Trust in a first priority position; and

       H.      A Memorandum of Modification to the Deed of Trust, fully executed by Borrower and notarized for recording purposes.

      8.    <u>Rescission of NOD; Dismissal of Action</u>.  Upon the Settlement Closing:

       A.      Lender will cause the NOD to be rescinded, subject to the right of Lender to cause to a new notice of default to be recorded in the event there is any default under this Agreement or any of the other Broadway Loan Documents subsequent to the Settlement Closing. Further, as long as there is no default under this Agreement or any of the other Broadway Loan Documents from and after the date of this Agreement, interest on the Broadway Loan shall accrue and be payable at the non-default rate of interest provided for in the Note.  Furthermore, upon the Settlement Closing, Lender shall waive its right to collect the Default Interest and Late Charges.

       B.      Lender will cause to be filed with the Court a dismissal without prejudice of the Litigation, subject to the right of Lender to commence a new action or proceeding against Guarantor and any other parties, as determined by Lender, if there is a default under this Agreement or any of the other Broadway Loan Documents by which Guarantor is bound.

      9.    <u>Representations and Warranties of Borrower and Guarantor</u>.  Borrower and Guarantor hereby represent and warrant to Lender and covenant and agree with Lender as follows:

       A.      Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Agreement.  The execution and delivery of this Agreement by Borrower and Guarantor and the consummation by Borrower and Guarantor of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower and Guarantor.  This Agreement is a valid and binding obligation of

Borrower and Guarantor, enforceable against Borrower and Guarantor in accordance with its terms.

B.    Neither the execution and delivery of this Agreement by Borrower and Guarantor, or either of them, nor the consummation by Borrower and Guarantor of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower and Guarantor, or either of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower or Guarantor is a party, by which Borrower or Guarantor is bound or to which any of Borrower's or Guarantor's property or assets is subject.

C.    There are no actions, suits or proceedings pending, or to the knowledge of Borrower or Guarantor, threatened against or affecting Borrower or Guarantor, in relation to its obligations to Lender or involving the validity and enforceability of this Agreement, or any of the other Broadway Loan Documents, as applicable, at law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower or Guarantor, or the ability of Borrower or Guarantor to perform their obligations to Lender.

D.    Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, and each of them, contained in the Broadway Loan Documents are true, correct and complete in all material respects as of the date of this Agreement.

10.    <u>Revival of Obligation.</u>

A.    Borrower and Guarantor acknowledge and agree that in the event that the payment of money, this Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" or "voidable" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor to Lender shall automatically be revived, reinstated and restored as though such Voidable Transfer had never been made to Lender.

B.    Nothing set forth herein is an admission that such Voidable Transfer has occurred.  Borrower and Guarantor expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor shall again be liable for any deficiency resulting from such settlement as provided in this Agreement.

11.    <u>Waiver of Certain Bankruptcy Rights.</u>

Borrower and Guarantor acknowledge and agree that but for Lender entering into this Agreement with Borrower and Guarantor, Lender would have continued to diligently pursue all of its rights and remedies under the Broadway Loan Documents, at law and in equity, against Borrower and Guarantor. As an additional inducement to and material consideration for Lender agreeing to the modifications and extension provided in this Agreement, Borrower and Guarantor agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 11) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Broadway Loan Documents with respect to the Collateral, including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender with respect to the Collateral, and Lender shall thereafter be entitled to exercise all of its rights and remedies under the Broadway Loan Documents with respect to the Collateral, subject, however, to the terms and conditions of this Agreement. Borrower and Guarantor acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Agreement are valuable consideration for such waiver. As used in this Section 11, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and Guarantor, or either of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or either of them, any action where Borrower and Guarantor, or either of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower and Guarantor, or either of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies with respect to the Collateral under the Broadway Loan Documents.

12.    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of Borrower and Guarantor and their respective successors, assigns, directors, officers, shareholders, partners, accountants, heirs, executors, administrators, trustees and trustees in bankruptcy.

13.    Release by Borrower and Guarantor.

A.    Borrower and Guarantor, on behalf of themselves, their respective successors and assigns, and each of them, do hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or either of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing, in whole or in part, on or before the date of this Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or

in connection with the Recitals above, the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and Guarantor, or either of them, to Lender, or the lending arrangements between Lender and Borrower and Guarantor, all individually and collectively.

(1)     As to the matters released herein, Borrower and Guarantor expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her, would have materially affected his or her settlement with the debtor or released party."

(2)     Borrower and Guarantor expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein.  In connection with such waiver and relinquishment, Borrower and Guarantor acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true.  Nevertheless, it is the intention of Borrower and Guarantor, through this Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed.  In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

B.     Borrower and Guarantor are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released.  Borrower and Guarantor shall indemnify, defend and hold Lender and each of the other Released Parties, and each of them, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

14.     <u>No Joint Venture, Management or Control</u>.  Notwithstanding any provision of this Agreement and/or of the Broadway Loan Documents:

A.     Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower, Guarantor or any other Person;

B.    Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower or Guarantor; and

C.    Borrower and Guarantor, or either of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them acknowledge and agree that Lender does not manage or control them in any way.

15.    <u>No Further Commitments to Lend</u>.    Borrower and Guarantor agree and acknowledge that Lender will not and has no obligation to advance, provide or loan any further or additional monies or credit to Borrower and the obligation of Lender to advance any further sums to Borrower under the Broadway Loan Documents has been terminated thereunder. Borrower and Guarantor further agree and acknowledge that Lender will not and has no obligation to further extend the time for payment of any obligations owing to or arising in favor of Lender by Borrower and Guarantor, or either of them.

16.    <u>Miscellaneous</u>.

A.    Section headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

B.    This Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C.    This Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D.    This Agreement is not a novation, nor, except as expressly provided in this Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Broadway Loan Documents. Nothing contained in this Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower and Guarantor, or either of them, of any default heretofore or hereafter occurring under or in connection with the other Broadway Loan Documents. In the event there is a conflict in any term, condition or provision of this Agreement, on the one hand, and the Loan Agreement or any of the other Broadway Loan Documents, on the other hand, the terms, conditions and provisions of this Agreement are to control.

E.    Borrower and Guarantor hereby further represent and warrant as follows:

(1)    Borrower and Guarantor have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Agreement and prior to the execution of this Agreement by Borrower and Guarantor, their attorneys reviewed this Agreement and discussed this Agreement with them and have made all desired changes;

(2)     Except as expressly stated in this Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by Borrower or Guarantor;

(3)     Borrower and Guarantor do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Agreement except as expressly stated in this Agreement;

(4)     The terms of this Agreement are contractual and not a mere recital;

(5)     This Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower; and

(6)     This Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and Borrower and Guarantor acknowledge that Lender is expressly relying on the finality of this Agreement as a substantial, material factor inducing Lender's execution of this Agreement.

F.     This Agreement and any and all documents executed in connection herewith are entered into and made to be performed in Los Angeles County, California, and in the event that litigation is instituted in connection with this Agreement, and any and all documents executed in connection herewith, it shall be instituted in the Courts for Los Angeles County, California. This Agreement shall be construed under the laws of the State of California.

G.     Upon indefeasible payment and performance in full of the Broadway Loan Documents, Lender shall provide Borrower the <u>Limited Release</u> in the form of Exhibit "D" attached hereto.

H.     The waiver of any existing or future default by any party to this Agreement or of any of the terms of this Agreement shall not be deemed a waiver of any future default or term. No waiver of any other provisions hereof shall be deemed or constitute a waiver of any other provision, and no waiver of any type shall be binding unless evidenced by a writing signed by the party making waiver.

17.    <u>JUDICIAL REFERENCE</u> – The parties hereby agree that any claims, controversies, disputes, or questions of interpretation, whether legal or equitable, arising out of, concerning or related to this Agreement and ANY MATTER RELATED THERETO, shall be heard by a single referee by consensual general judicial reference pursuant to the provisions of California Code of Civil Procedure sects 638 et seq., who shall determine all issues of fact or law and to report a statement of decision. The referee shall also have the power to hear and determine proceedings for ancillary relief, including, but not limited to, applications for attachment, issuance of injunctive relief, appointment of a receiver, and/or claim and delivery. The costs of the proceeding shall be borne equally by the parties to the dispute, subject to the discretion of the referee to allocate such costs based on a determination as to the prevailing party(ies) in the proceeding. Notwithstanding the foregoing, the judicial reference provided herein shall not apply to the New Loans. *By initialing below the parties acknowledge that they have read and understand the foregoing Judicial Reference provisions and understand that they are waiving their right to a jury trial.*

The parties below have initialed this section to further indicate their awareness and acceptance of each and every provision hereof.

| | | |
|---|---|---|
| Borrower's Initials | Alan's Initials | Daniel's Initials |
| David's Initials | Guarantor's Initials | Lender's Initials |

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement on the date and year first written above.

**BORROWER:**

BROADWAY AVENUE INVESTMENTS LLC.
a California limited liability company

By: _____
Name: Alan Gomperts
Its: Manager

**GUARANTOR:**

_____
ALAN GOMPERTS, an individual

_____
DANIEL HALEVY, an individual

_____
DAVID HALEVY, an individual, by Daniel Halevy as his attorney in fact


**LENDER:**

ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,
A Delaware limited liability company

By: _____
Name: Bobby Khorshidi
Title: Authorized Signer

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF LOS ANGELES, CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF BLOCK 25 OF THE HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF BROADWAY, 80 FEET WIDE, WITH THE DIVIDING LINE ESTABLISHED BY AGREEMENT AND DEED BETWEEN THE LOS ANGELES TRUST COMPANY AND NIAGARA BUILDING COMPANY, RECORDED DECEMBER 11, 1908 IN BOOK 3568, PAGE 93 OF DEEDS, RECORDS OF SAID COUNTY, SAID INTERSECTION BEING DISTANT NORTH 37° 48' EAST ALONG SAID NORTHWESTERLY LINE, 180.47 FEET, MORE OR LESS, FROM THE NORTHERLY LINE OF 8TH STREET, 60 FEET WIDE, AS SHOWN ON MAP OF A RESUBDIVISION OF A PORTION OF BLOCK 25, HUBER TRACT, RECORDED IN BOOK 5, PAGE 15 OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER; THENCE NORTH 37° 48' EAST ALONG SAID NORTHWESTERLY LINE, 60 FEET, MORE OR LESS, TO THE MOST EASTERLY CORNER OF LOT 4 IN SAID BLOCK 25 OF HUBER TRACT; THENCE NORTH 52° 12' WEST ALONG THE NORTHEASTERLY LINE OF SAID LOT 4, A DISTANCE OF 165 FEET, MORE OR LESS, TO THE MOST NORTHERLY CORNER OF SAID LOT 4; THENCE SOUTH 37° 48' WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 4 AND OF LOT 3 OF BLOCK 25 OF SAID HUBER TRACT, 60 FEET, MORE OR LESS, TO SAID DIVIDING LINE; THENCE SOUTH 52° 12' EAST, ALONG SAID DIVIDING LINE, 165 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

APN: 5144-014-030

022

**EXHIBIT "B-1"**
**NEGEV LOAN**

1. Loan Agreement
2. Promissory Note
3. Assignment of Leases and Rents
4. Security Instrument -Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
5. Guaranty
6. Borrower's Closing Certificate
7. Borrower's Resolutions
8. Building Laws Indemnity Agreement
9. Hazardous Materials Indemnity Agreement
10. Undelivered Items Letter
11. Pledge and Security Agreement

023

## EXHIBIT "B-2"
## SLA LOAN

1.  Promissory Note
2.  Loan Agreement
3.  Security Instrument -Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
4.  Assignment of Leases and Rents
5.  Guaranty
6.  Hazardous Materials Indemnity Agreement
7.  Building Laws Indemnity Agreement
8.  Borrowers Incumbency Certificate and Resolutions
9.  Borrower's Closing Certificate
10. Undelivered Items letter
11. Pledge Agreement

024

**EXHIBIT "B-3"**
**G&H LOAN**

1. Promissory Note
2. Loan Agreement
3. Security Instrument (Greenfield) - Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
4. Security Instrument (Horner Street) - Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
5. Security Instrument (Palm Drive) - Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
6. Hazardous Materials Indemnity Agreement
7. Building Laws Indemnity Agreement
8. Borrower's Closing Certificate
9. Undelivered Items letter

025

# EXHIBIT "C"
## ALLOCATION OF NEW LOANS PROCEEDS

| SLA Loan | | | Negev Loan | | | Guarantor Loan | |
|---|---|---|---|---|---|---|---|
| Sources | | | Sources | | | Sources | |
| Loan | $ 125,000.00 | | Loan | $ 1,300,000.00 | | Loan | $ 2,575,000.00 |
| Total Sources | $ 125,000.00 | | Total Sources | $ 1,300,000.00 | | Total Sources | $ 2,575,000.00 |
| | | | | | | | |
| Uses | | | Uses | | | Uses | |
| Interest Reserve SLA Loan | $ 6,927.08 | | Interest Reserve Negev Loan | $ 72,041.67 | | Interest Reserve Guarantor Loan | $ 142,697.92 |
| Per Diem SLA Loan (4/19-5/1) | $ 395.83 | | Per Diem Negev Loan (4/19-5/1) | $ 4,116.67 | | Per Diem Guarantor Loan (4/19-5/1) | $ 8,154.17 |
| Back Pay Broadway (4/19) | $ 36,605.80 | | Back Pay Broadway (4/19) | $ 380,700.33 | | Back Pay Broadway (4/19) | $ 754,079.50 |
| Per Diem Broadway Loan (4/19-5/1) | $ 1,508.23 | | Per Diem Broadway Loan (4/19-5/1) | $ 15,685.62 | | Per Diem Broadway Loan (4/19-5/1) | $ 31,069.60 |
| 8-Month IR Broadway Loan | $ 26,394.08 | | 8-Month IR Broadway Loan | $ 274,498.44 | | 8-Month IR Broadway Loan | $ 543,718.05 |
| Paydown Broadway Loan | $ 53,168.97 | | Paydown Broadway Loan | $ 552,957.28 | | Paydown Broadway Loan | $ 1,095,280.76 |
| | | | | | | | |
| Total Uses | $ 125,000.00 | | Total Uses | $ 1,300,000.00 | | Total Uses | $ 2,575,000.00 |

# EXHIBIT "D"
## LIMITED RELEASE

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company ("Lender"), hereby releases:

     a.     BROADWAY AVENUE INVESTMENTS LLC, a California limited liability company ("Borrower") from all contractual liability and obligations under the Note and any of the other Loan Documents executed by Borrower in favor of Lender, except as otherwise provided in this Limited Release ("Release").

     b.     ALAN GOMPERTS ("Alan"), DANIEL HALEVY ("Daniel") and DAVID HALEVY ("David," and together with Alan and Daniel, individually and collectively, "Guarantor") from all contractual liability and obligations under the Continuing Guaranty and any of the other Loan Documents executed by Guarantor in favor of Lender, except as otherwise provided in this Release.

     1.     Notwithstanding the foregoing, the Release shall not apply to and hereby excludes Borrower's obligations and liability under (a) that certain Hazardous Materials Indemnity Agreement, dated July 21, 2021 by Borrower in favor of Lender, (b) Guarantor's obligations and liabilities under clause (g) of "Recourse Amounts" under Section 1 Definitions of the Continuing Guaranty, and (c) any other obligations, liability or indemnity contained in any Loan Document that survives repayment of the Note and any other obligations under the Loan Documents.

     2.     Borrower and Guarantor acknowledge and agree that in the event that all or any part of any payment or credit that reduces or pays off the Note or any other obligation under the Loan Documents is declared by a court of competent jurisdiction  declared to be "fraudulent" or "voidable" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then this Release shall be null and void, and of no force and effect, unless and until the Note and any such obligations under the Loan Obligations are indefeasibly paid in full.

     3.     Any capitalized term not expressly defined in this Release shall have the meaning ascribed to it in that certain Settlement and Loan Modification Agreement by and among Borrower, Guarantor and Lender, dated as of April __, 2023.

This Release is executed by the undersigned as of the ___ day of _____, 202_.

ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company

By:_____
Name:_____
Title:_____

# Exhibit 2

# Exhibit 2

# PROMISSORY NOTE

$1,300,000.00                                                                   As of April __, 2023

FOR VALUE RECEIVED, **NEGEV INVESTMENTS, LLC**, a California limited liability company ("*Borrower*"), promises and agrees to pay to the order of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company ("*Lender*"), in lawful money of the United States of America, the principal sum of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000.00) (the "*Loan*"), or so much thereof as may be advanced and outstanding under the Loan Agreement of even date herewith between Borrower and Lender (the "*Loan Agreement*"), with interest on the unpaid principal sum owing thereunder at the rate or rates or in the amounts computed in accordance with the Loan Agreement, together with all other amounts due Lender under the Loan Agreement, all payable in the manner and at the time or times provided in the Loan Agreement. Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Loan Agreement.

If not sooner due and payable in accordance with the Loan Agreement, Borrower shall pay to Lender all amounts due and unpaid under the Loan Agreement dated as of the date hereof, or on any earlier Maturity Date as set forth in the Loan Agreement. Unless otherwise specified in writing by Lender, all payments hereunder shall be paid to Lender at its office located at 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan. Lender reserves the right to require any payment on this Note, whether such payment is a regular installment, prepayment or final payment, to be by wired federal funds or other immediately available funds.

Borrower, co-makers, sureties, endorsers and guarantors, and each of them, expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER, except as otherwise provided in the Loan Agreement or other Loan Documents; such parties are and shall be jointly, severally, directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder or in connection with any right, lien, interest or property at any and all times had or existing as security for any amount called for hereunder.

This Promissory Note ("*Note*") evidences a portion of the advances made, interest due and all amounts otherwise owed to Lender under the Loan Agreement. This Note is executed in conjunction with the Loan Agreement and is secured by the liens and security interests created under the Loan Documents (including those arising under the Security Instrument). Reference is made to the Loan Agreement for provisions relating to repayment of the indebtedness evidenced by this Note, including mandatory repayment, acceleration following default, late charges, default rate of interest, limitations on interest, and restrictions on prepayment.

Lender reserves the right, at Lender's sole expense, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this Note or this debt or the debt evidenced hereby.

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents. Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be

construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents.  If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Loan, or on acceleration of the maturity of the Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation.  Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Loan without the payment of the Prepayment Premium (or, if the Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Loan.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Loan.

**WAIVER OF TRIAL BY JURY.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**THIS WRITTEN NOTE ALONG WITH THE LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

This Note shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

EXECUTED as of the date first written above.

**BORROWER:**

**NEGEV INVESTMENTS, LLC,**
a California limited liability company

By: _____
Name: Daniel Halevy
Title: Authorized Signatory

# Exhibit 3

# Exhibit 3

DOC # 2023-0112525
09/23/2022 04:56 PM Fees: $217.00
Page 1 of 23
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: KAREN #277

**RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE**

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

3COA764 - 02          *(space above this line for recorder's use only)*

---

**NEGEV INVESTMENTS, LLC**, as grantor
(Borrower) *A CALIFORNIA LIMITED LIABILITY COMPANY*

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, as beneficiary

(collectively, Lender)

---

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

---

Dated:          April 14, 2023

Address:        The Sandpiper
                12800 Foxdale Drive
                Desert Hot Springs, CA 92240

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE. TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN RIVERSIDE COUNTY, CALIFORNIA, MORE
PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY INSTRUMENT.

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of April 14, 2023, by **NEGEV INVESTMENTS, LLC**, a California limited liability company ("*Borrower*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company, as beneficiary ("*Lender*").

This instrument is made in connection with a loan in the amount of $1,300,000.00 as evidenced by the Loan Agreement.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Borrower's obligations under the Loan Documents, Borrower hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Borrower further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Borrower's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Borrower's right, title and interest in and to the Additional Land.

### GRANTING CLAUSE THREE

All of Borrower's right, title and interest in and to the Improvements.

### GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Borrower in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

### GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Borrower in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In connection with Equipment which is leased to Borrower or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Borrower in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

1

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Borrower from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Borrower now has or may hereafter acquire in the Real Property or any part thereof.

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:36    Desc
Affidavit Declaration of Bobby Khorshidi    Page 36 of 204

Doc #2023-0113285    Page 4 of 23

### GRANTING CLAUSE TWELVE

All rights which Borrower now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

### GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

### GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Borrower hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender of the Indebtedness at the time and in the manner provided for its payment in the Note and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Borrower shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the Note and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Borrower represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Borrower warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Borrower's expense.

Borrower acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:56    Desc
Affidavit Declaration of Bobby Khorshidi    Page 37 of 204

DOC #2023 0113285    Page 5 of 23

AND Borrower represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
## **Definitions and Loan Documents**

1.1    <u>Loan Documents</u>. All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument. All covenants in the Loan Documents are covenants running with the Land.

1.2    <u>Definitions</u>. Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement. Each of the below capitalized terms has the following meaning:

"***737 S Broadway Borrower***" means **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company.

"***737 S Broadway Loan***" means that Loan made to 737 S Broadway Borrower in an amount equal to $16,9420,500.00.

"***737 S Broadway Loan Documents***" means the loan agreement, the 737 S Broadway Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the 737 S Broadway Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing 737 S Broadway Loan Documents.

"***737 S Broadway Property***" means the property located at 737 S. Broadway, Los Angeles, CA 90014.

"***737 S Broadway Security Instrument***" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by 737 S Broadway Borrower, in favor of the Trustee for the benefit of Lender concerning the 737 S Broadway Property.

"***Additional Land***" means all additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"***Collateral***" means the Property and all of Borrower's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Borrower's assets.

"***Equipment***" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Borrower or in which Borrower has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Borrower or in which Borrower has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"***Foreclosure Statute***" has the meaning set forth in <u>Section 4.2</u> below.

"***Greenfield PH Borrower***" means, collectively, (i) Alan Gomperts, and Sharon Halevy, as Trustees of The Gomperts and Halevy Family Trust ("**G&H Trust**"), (ii) David Halevy and Sue Halevy, as Trustees of the Halevy Family Trust dated September 8, 2010 ("**D&S Trust**"),, and (iii) Daniel Halevy

"***Greenfield PH Loan***" means that Loan made to Greenfield PH Borrower in an amount equal to

$2,575,000.00.

"***Greenfield PH Loan Documents***" means the loan agreement, the Greenfield PH Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Greenfield PH Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Greenfield PH Loan Documents.

"***Greenfield PH Property***" means, collectively, the property located at (i) 3538 Greenfield Avenue, Los Angeles, CA, (ii), 8561 Horner Street, Los Angeles, CA 90035 and (iii) 133 South Palm Dr, Apt 0005, Beverly Hills, CA 90212.

"***Greenfield PH Security Instrument***" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by Greenfield PH Borrower, in favor of Lender concerning the Greenfield PH Property.

"***Improvements***" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"***Land***" the real property or properties described on ***Exhibit A*** attached hereto.

"***Loan Agreement***" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"***Payment Notice***" means Lender's notice to Tenant of an Event of Default Period.

"***Personal Property***" means all (i) Awards, (ii) Leases, (iii) all of Borrower's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Borrower, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"***Property***" means the Real Property and the Personal Property.

"***Real Property***" means, collectively, (i) the Land (as legally described in ***Exhibit A*** annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Borrower's interest in any lands adjoining the Land, (vii) all water and all of Borrower's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"***Security Instrument***" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"***South Los Angeles Borrower***" means SLA Investments LLC, a California limited liability company.

"***South Los Angeles Loan***" means that Loan made to South Los Angeles Borrower in an amount equal to $125,000.00.

"***South Los Angeles Loan Documents***" means the loan agreement, the South Los Angeles Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying,

securing, governing or relating to the South Los Angeles Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing South Los Angeles Loan Documents.

"*South Los Angeles Property*" means the property located at 1040 S Los Angeles Street, Los Angeles, CA 90015.

"*South Los Angeles Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by South Los Angeles Borrower, in favor of the Trustee for the benefit of Lender concerning the South Los Angeles Property.

"*Termination Date*" means day on which Borrower fully pays the Indebtedness and performance all of Borrower's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3     Terms Generally; References and Titles.  References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided. All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument. Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation". Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person. Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4     Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment.  For the Indebtedness and other good and valuable consideration, Borrower absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent.  Borrower does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Borrower agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents.  Borrower shall hold the Rents, or a

6

portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to Borrower herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and assigned by Borrower the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper. It is further the intent of Borrower and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Borrower or property of any estate of Borrower as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Borrower.

2.2    <u>Application of Rent</u>.

(a)    Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Borrower (or its designee). Borrower shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan. Unless Lender otherwise agrees, Borrower must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)    After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing. Tenant is relieved of its obligations to pay Borrower under any Lease to the extent of all Rent Tenant pays to Lender.

(c)    Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness. The assignment in <u>Section 2.1</u> above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)    Lender may, at its option and without impairing its rights under the assignment in this <u>Section 2.1</u>, release any Rent Lender receives to Borrower.

(e)    As between Borrower, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in <u>Section 2.1</u> above is absolute, unconditional and presently effective. Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Borrower or any Person claiming through or under Borrower.

(f)    Lender is not required to institute legal proceedings to enforce the terms of this <u>Section</u>.

2.3    <u>No Third Party Beneficiary</u>. The assignment in <u>Section 2.1</u> above is not made for the benefit of any Person other than Lender.

2.4    <u>Release and Termination</u>. The assignment in <u>Section 2.1</u> above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**<u>Leases</u>**

3.1    <u>Intentionally Omitted.</u>

3.2    <u>Approval</u>. Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3    <u>Terms</u>. Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's

7

leasehold interest to Lender's liens and security interests. Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4    <u>Lender's Preapproval</u>. Notwithstanding <u>Section 3.2</u> above and subject to <u>Sections</u> **Error! Reference source not found.** and <u>3.3</u> above, Borrower may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)    are with Tenants who are not affiliated with Borrower;

(b)    do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)    do not afford Tenants any termination rights;

(d)    are an arm's length transaction on economic terms conforming to current market conditions;

(e)    have a market rental rate; and

(f)    do not contain any rights of first refusal or options to purchase.

## ARTICLE IV.
## Remedies

4.1    <u>Possession</u>. During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Borrower's interference, any rights which Borrower has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property. If Lender rents any of the Property, Lender will do so for the account of Borrower, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property. Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses. All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs. If Lender elects to take possession of the Property, then Borrower will quietly surrender possession of the Property. If Borrower fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Borrower.

4.2    <u>Foreclosure</u>. Borrower grants Trustee on behalf of Lender a power of sale. During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "***Foreclosure Statute***"). If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute. In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3    <u>Receiver</u>. In addition to all other remedies in the Loan Documents, at law or in equity, during an Event of Default Period, (a) without notice to any Borrower Party, (b) whether or not Borrower is solvent, (c) whether or not a Borrower Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents. Borrower irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver. During a receivership for the Property, Borrower irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the Loan Documents, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute. Any money Lender advances in

connection with a receivership will be Additional Costs. This **Section** is an express condition upon which the Loan is made.

4.4     Proceeds of Sale. The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Borrower) as required by Applicable Law.

4.5     Lender as Purchaser. Lender may purchase the Property at any foreclosure sale. In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code. During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC. In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Borrower to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Borrower as provided in the Loan Agreement ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the Loan Documents or to take possession of, hold or prepare the Collateral for transfer.

4.7     Delivery of Possession After Foreclosure. Immediately after a Transfer Event, Borrower and any Person claiming any Collateral interest by, through or under Borrower, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee. Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental. If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

## ARTICLE V.
### **Miscellaneous**

5.1     Successor Trustee. Lender may remove Trustee, or Trustee may resign, at any time with or without cause. If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee. Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date. Lender may appoint a single or multiple substitute trustees to act instead of the original trustee. If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees. Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the

9

successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds. Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2    Authorization to File Financing Statement. Borrower authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral. If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Borrower or words of similar effect.

5.3    Fixture Filing. This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement: Borrower is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4    Dealing with Successor. If Borrower no longer owns the Collateral, then Lender may, without notice to Borrower, deal with Borrower's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Borrower, without in any way vitiating or discharging Borrower's liability under the Loan Documents or for the Indebtedness. Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the Loan Documents or as Lender hereafter agrees in writing.

5.5    Subrogation. If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Borrower's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released. However, the terms and provisions of the Loan Documents will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6    Application of Indebtedness. If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7    Agents. Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8    Transfer Recitals. All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

To Lender:              Archway Real Estate Income Fund I SPE I, LLC
                        1875 Century Park East. Suite #900
                        Los Angeles, CA 90067
                        Attention: Joshua Kohan
                        Phone: (310) 893-5277

Foxdale – Security Instrument

Email: joshua@archwayfund.com

with a copy to:            Thompson Coburn LLP
                           10100 Santa Monica Blvd., Suite 500
                           Los Angeles, CA 90067
                           Attention: Joshua Mogin
                           Phone: (310) 282-2520
                           Email: jmogin@thompsoncoburn.com

To Indemnitor:             Negev Investments, LLC
                           257 S. Linden Drive
                           Beverly Hills CA 90212
                           Attnetion: David Halevy
                           Phone: (310) 666-2885
                           Email: danhalevy@gmail.com

with a copy to             Locke Lord LLP
                           300 S. Grand Ave., Suite 2600
                           Los Angeles, CA 90071
                           Attention: David S. Kupetz
                           Phone: (213) 687-6774
                           Email: David.Kupetz@lockelord.com

Trustee:                   Fidelity National Title
                           555 S. Flower Street, Suite 4420
                           Los Angeles, CA 90071
                           Attention: JB Jennings
                           Phone: (213) 452-7100
                           Email: JB.Jennings@fnf.com

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
## **Concerning the Trustee**

6.1      <u>Trustee's Fees</u>.  Borrower shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2      <u>Substitute Trustee</u>.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Borrower agrees to the foregoing for itself, its successors and assigns.

6.3      <u>Power of Sale</u>.

(a)      Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Borrower obligated to pay the Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)      At any such public sale, Trustee may execute and deliver in the name of Borrower to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in

any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the Note and other secured indebtedness is paid in full.  If the Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)    In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Borrower, or to the person or entity lawfully entitled thereto.

(e)    In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Borrower, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4    Acceptance by Trustee.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5    Acts of Trustee.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6    No Liability of Trustee.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct.  The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other

13

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:56    Desc
Affidavit Declaration of Bobby Khorshidi    Page 47 of 204

DOC #2023-0113285    Page 15 of 23

moneys (except to the extent required by law or under the Loan Documents), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7    Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Borrower.

6.8    Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9    Ratification.  Borrower hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

ARTICLE VII.
**State Law Provisions**

7.1    Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other Loan Documents.

7.2    Full Reconveyance.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3    Dwellings.  No portion of the proceeds of the Loan shall be used by Borrower to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4    Civil Code.  Borrower represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5    Indemnity; Expenses.  Borrower will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Borrower, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Borrower shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6    Supplemental Environmental Provisions.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code

Foxdale – Security Instrument
047

of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment and any other rights and remedies permitted by law. Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7    Foreclosure By Power of Sale.

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)    Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Borrower such notice of default and election to sell as is then required by law. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)    Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8    Separate Sales. The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9    Release of and Resort to Collateral. Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior lien and security interest in and to the Property. For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    Waiver of Redemption, Notice and Marshalling of Assets. To the fullest extent permitted by law, Borrower hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Borrower by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement,

Foxdale – Security Instrument
048

valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    Discontinuance of Proceedings.    If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Borrower and Lender shall be restored to their former positions with respect to the Indebtedness, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

7.12    No Mortgagee in Possession.    Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the Loan Documents, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.    With the approval of Lender, Trustee shall have the right to take any and all of the following actions: (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Borrower will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.    All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.    Trustee may resign by the giving of notice of such resignation in writing to Lender. If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to

16

appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Borrower hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law. Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16    Perfection of Appointment. Should any deed, conveyance, or instrument of any nature be required from Borrower by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Borrower.

7.17    Succession Instruments. Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    No Representation by Trustee or Lender. By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

7.19    Border Zone. To Borrower's knowledge, Borrower represents to Lender that, as of the date hereof, the Property has not been designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be designated as Border Zone Property.

ARTICLE VIII.
**Cross Default And Cross Collateralization.**

8.1    737 S Broadway. In addition to the obligations herein, Borrower shall also be subject to the payment and performance of all obligations secured by:

17

(a)     The 737 S Broadway Security Instrument made by 737 S Broadway Borrower made in connection the 737 S Broadway Loan, which 737 S Broadway Security Instrument secures a lien on the 737 S Broadway Property;

(b)     In addition to the obligations secured by the 737 S Broadway Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)     An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under 737 S Broadway Security Instrument and the 737 S Broadway Loan.

(d)     An Event of Default under the 737 S Broadway the Security Instrument or the 737 S Broadway Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)     Borrower waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the 737 S Broadway Security Instrument or the exercise of Borrower's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Borrower makes this waiver for itself, for all persons and entities claiming through or under Borrower and for persons and entities who may acquire a lien or security interest on all or any part of the 737 S Broadway Loan and Collateral described in the 737 S Broadway Security Instrument or herein.

8.2     Greenfield PH.  In addition to the obligations herein, Borrower shall also be subject to the payment and performance of all obligations secured by:

(a)     The Greenfield PH Security Instrument made by Greenfield PH Borrower made in connection the Greenfield PH Loan, which Greenfield PH Security Instrument secures a lien on the Greenfield PH Property;

(b)     In addition to the obligations secured by the Greenfield PH Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)     An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under Greenfield PH Security Instrument and the Greenfield PH Loan.

(d)     An Event of Default under the Greenfield PH the Security Instrument or the Greenfield PH Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)     Borrower waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the Greenfield PH Security Instrument or the exercise of Borrower's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Borrower makes this waiver for itself, for all persons and entities claiming through or under Borrower and for persons and entities who may acquire a lien or security interest on all or any part of the Greenfield PH Loan and Collateral described in the Greenfield PH Security Instrument or herein.

8.3    <u>South Los Angeles</u>.  In addition to the obligations herein, Borrower shall also be subject to the payment and performance of all obligations secured by:

(a)    The South Los Angeles Security Instrument made by South Los Angeles Borrower made in connection the South Los Angeles Loan, which South Los Angeles Security Instrument secures a lien on the South Los Angeles Property;

(b)    In addition to the obligations secured by the South Los Angeles Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)    An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under South Los Angeles Security Instrument and the South Los Angeles Loan.

(d)    An Event of Default under the South Los Angeles the Security Instrument or the South Los Angeles Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)    Borrower waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the South Los Angeles Security Instrument or the exercise of Borrower's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Borrower makes this waiver for itself, for all persons and entities claiming through or under Borrower and for persons and entities who may acquire a lien or security interest on all or any part of the South Los Angeles Loan and Collateral described in the South Los Angeles Security Instrument or herein.

8.4    <u>Payoff</u>. Notwithstanding anything to the contrary contained herein, Borrower shall not pay off the this Loan while the 737 S Broadway Loan, the Greenfield PH Loan or the South Los Angeles Loan remain outstanding.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:50    Desc
Affidavit Declaration of Bobby Khorshidi    Page 53 of 204

DOC #2023-0113285    Page 21 of 23

Borrower has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**BORROWER:**

**NEGEV INVESTMENTS, LLC,**
a California limited liability company

By: _____
Name: Daniel Halevy
Title:  Authorized Signatory

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:56    Desc
Affidavit Declaration of Bobby Khorshidi    Page 54 of 204

DOC #2023-0113285    Page 22 of 23

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ⎽⎽Los Angeles⎽⎽⎽

On ⎽⎽April 17⎽⎽⎽, 2023, before me, ⎽ALAN KABAKER⎽⎽ (a notary public), personally appeared ⎽⎽Daniel Halevy⎽⎽, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽ (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC ● CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

## EXHIBIT A

### LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 5, 6, 7 AND 8 OF THE KILEEN TRACT, IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 33, PAGE 71 OF MAPS, IN THE OFFICE OF COUNTY RECORDER OF SAID COUNTY.

APN: 642-082-001

EXHIBIT A
TO
SECURITY INSTRUMENT

DOC # 2023-0113257
04/26/2023 04:56 PM Fees: $21.00
Page 1 of 6
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: KAREN #277

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME *THOMPSON COBURN LLP*

STREET ADDRESS *10100 SANTA MONICA BLVD., #500*

CITY, STATE &
ZIP CODE *LOS ANGELES, CA 90067*

SPACE ABOVE FOR RECORDER'S USE ONLY

## UCC - FINANCING STATEMENT

### Title of Document

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| Joshua Mogin  (310) 282-2520 |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |
| jmogin@thompsoncoburn.com |

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Joshua Mogin
Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| Negev Investments, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 257 S. Linden Drive | Beverly Hills | CA | 90212 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| Archway Real Estate Income Fund I SPE I, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1875 Century Park East, Suite #900 | Los Angeles | CA | 90067 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See Schedule I attached.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| --- | --- |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Riverside County, California

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **Negev Investments, LLC** | |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| | |
|---|---|
| 13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut ☐ covers as-extracted collateral ☑ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: **See Exhibit A attached.** |

17. MISCELLANEOUS:
**Riverside County, California**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

# FINANCING STATEMENT
## SCHEDULE I

This financing statement covers the following types (or items) of property (the "*Collateral Property*"):

      1)      **Land**. All of Debtor's right, title and interest in and to the Land.

      2)      **Additional Land**. All of Debtor's right, title and interest in and to the Additional Land.

      3)      **Improvements**. All of Debtor's right, title and interest in and to the Improvements.

      4)      **Easements**. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Debtor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

      5)      **Equipment**. All right, title and interest in and to the Equipment and the right, title and interest of Debtor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In connection with Equipment which is leased to Debtor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Debtor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

      6)      **Awards**. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

      7)      **Leases**. All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of

1

creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

8)      **Insurance Proceeds**. All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

9)      **Tax Awards**. All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

10)     **Right to Appear**. The right, in the name of and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Debtor from any source whatsoever.

11)     **Accounts**. All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Debtor now has or may hereafter acquire in the Real Property or any part thereof.

12)     **Indemnification**. All rights which Debtor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

13)     **Plans**. All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

14)     **Proceeds**. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Capitalized terms not defined herein are as defined in Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by Debtor in favor of Secured Party.

2

Schedule 1 to UCC

## EXHIBIT A

### LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 5, 6, 7 AND 8 OF THE KILEEN TRACT, IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 33, PAGE 71 OF MAPS, IN THE OFFICE OF COUNTY RECORDER OF SAID COUNTY.

APN: 642-082-001

# Exhibit 4

# Exhibit 4

DOC # 2023-0113256
06/23/2023 04:56 PM Fees: $51.00
Page 1 of 10
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: KAREN #277

**RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE**

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

300970024·02            *(space above this line for recorder's use only)*

**NEGEV INVESTMENTS, LLC**, as assignor

(Borrower)

to

**ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, as assignee

(Lender)

## ASSIGNMENT OF LEASES AND RENTS

Dated:        April 14, 2023

Address:      The Sandpiper
              12800 Foxdale Drive
              Desert Hot Springs, CA 92240

**Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.**

## ASSIGNMENT OF LEASES AND RENTS

This Assignment of Leases and Rents (this "**Agreement**") is executed as of April 14, 2023, by **NEGEV INVESTMENTS, LLC**, a California limited liability company ("**Borrower**"), as assignor, whose address for notice is 257 S. Linden Drive, Beverly Hills CA 90212, Attention: David Halevy, to **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company ("**Lender**"), as assignee, whose address for notice is 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan.

**RECITALS:** *☀ UNRECORDED LEASES .*

A.     This Agreement is made in connection with a loan in the principal sum of $1,300,000.00 (the "**Loan**") made by Lender to Borrower pursuant to that certain loan agreement, dated as of the date hereof between Borrower and Lender (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower to Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Note**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

B.     The Note is secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Security Instrument**") made by Borrower for the benefit of Lender.

C.     Borrower desires to further secure the payment of the Indebtedness and the performance of all of its Obligations under the Note, the Security Instrument, the Loan Agreement and the other Loan Documents.

D.     This Assignment is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents is secured hereby, and each and every term and provision of the Loan Agreement,  the Note and the Security Instrument, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Assignment.

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Agreement:

## AGREEMENT:

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1.     <u>Assignment</u>. Borrower unconditionally assigns to Lender all of Borrower's right, title and interest in and to: (a) all rents, revenues, liquidated damages following defaults under the Leases, issues, profits, income and proceeds due or to become due from tenants of the project located on the real property described on <u>Exhibit A</u> attached to this Agreement (the real property and project, collectively, the "**Property**"), including rentals and all other payments of any kind under the Leases for using, leasing, licensing, possessing, operating from, rendering in, selling or otherwise enjoying the Property (collectively, the "**Rents**"); (b) all of Borrower's claims and rights (the "**Bankruptcy Claims**") to the

payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code; and (c) any and all other rights of Borrower in and to the items set forth in subsections (a) through (b) above, and all amendments, modifications, replacements, renewals, proceeds and substitutions thereof. This Agreement is an absolute assignment to Lender and not an assignment as security for the performance of the obligations under the Loan Documents (defined below), or any other indebtedness, and such absolute assignment is presently and immediately effective. Notwithstanding the foregoing, the absolute assignment contained herein shall not itself reduce the obligations owing to Lender under the Loan Documents unless and until Lender actually receives the Rents and such Rents are applied by Lender to such obligations pursuant to Section 4 below. For purposes of this Agreement, "*Leases*" means all leases, subleases, occupancy agreements, licenses, concessions, rental contracts and other agreements (written or oral) now or hereafter existing relating to the use or occupancy of the Property, together with all guarantees, letters of credit and other credit support, modifications, extensions and renewals thereof (whether before or after the filing by or against Borrower of any petition of relief under the Bankruptcy Code) and all related security and other deposits. Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period (as defined in the Loan Agreement), the license granted to Borrower herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and assigned by Borrower the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its discretion shall deem proper. It is further the intent of Borrower and Lender that the Rents hereby absolutely assigned are no longer, during the term of the Security Instrument, property of Borrower or property of any estate of Borrower as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Borrower.

      2.    <u>Rights of Lender</u>. During an Event of Default (as defined in the Loan Agreement), Lender shall have the right, power and authority to: (a) notify any person that all Rents are to be paid directly to Lender, whether or not Lender has commenced or completed foreclosure or taken possession of the Property; (b) settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents; (c) enforce payment of Rents, prosecute any action or proceeding, and defend against any claim with respect to Rents; (d) enter upon, take possession of and operate the Property; (e) lease all or any part of the Property; and/or (f) perform any and all obligations of Borrower under the Leases and exercise any and all rights of Borrower therein contained to the full extent of Borrower's rights and obligations thereunder, with or without the bringing of any action or the appointment of a receiver. At Lender's request during an Event of Default, Borrower shall deliver a copy of this Agreement to each tenant under a Lease and to each manager and managing agent or operator of the Property. Borrower irrevocably directs any tenant, manager, managing agent, or operator of the Property, without any requirement for notice to or consent by Borrower, to comply with all demands of Lender under this Agreement and to turn over to Lender on demand all Rents which it receives. Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to Borrower herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. If the Event of Default is cured, as determined by Lender in its sole and absolute discretion, the license granted to Borrower shall be reinstated. Lender is hereby granted and assigned by Borrower the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the

3

Foxdale - Assignment of Leases and Rents

revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its discretion shall deem proper.  It is further the intent of Borrower and Lender that the Rents hereby absolutely assigned are no longer, during the term of the Security Instrument, property of Borrower or property of any estate of Borrower as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Borrower.

3.       No Obligation or Liability.  Notwithstanding Lender's rights hereunder, Lender shall not be obligated to perform, and Lender does not undertake to perform, any obligation, duty or liability with respect to the Leases, Rents or Property on account of this Agreement. Lender shall have no responsibility on account of this Agreement for the control, care, maintenance or repair of the Property, for any waste committed on the Property, for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property, except to the extent caused by the gross negligence, intentional or willful misconduct, fraud, by Lender.  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default (other than for gross negligence, intentional or willful misconduct, or fraud by Lender its employees and agents).  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender.  Neither the acceptance by Lender of this Agreement, nor the granting of any other right, power, privilege or authority in this Assignment, nor the exercise of any of the aforesaid, will at any time thereafter, obligate Lender (a) to appear in or defend any action or proceeding relating to the Leases, the Rents or the remainder of the Property, (b) to take any action hereunder, (c) to expend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any Lease, (d) to assume any obligation or responsibility for any deposits which are not physically delivered to Lender or (e) to assume any obligation or responsibility for any injury or damage to person or property sustained in or about the Property. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

4.       Right to Apply Rents.   At any time an Event of Default by Borrower exists, Lender shall have the right, but not the obligation, to use and apply any Rents received by Lender pursuant to the terms hereof in such order and such manner as Lender may determine for:

(a)       Enforcement or Defense. The payment of costs and expenses of enforcing or defending the terms of this Agreement or the rights of Lender hereunder, and collecting any Rents;

(b)       Loan Payments. Interest, principal or other amounts payable pursuant to (i) the Loan Agreement; (ii) the Note in the original principal amount of $1,300,000.00; (iii) the Security Instrument (as defined in the Loan Agreement); (iv) all other documents and instruments evidencing, governing and securing the loan evidenced by the Note and (v) any and all modifications, amendments or extensions thereof or replacements or substitutions therefor (the Loan Agreement, the Note, the Security Instrument, such other documents and instruments, and such modifications, amendments, extensions, replacements, and substitutions thereof being herein collectively called the "**Loan Documents**"); and

(c)       Operating Expenses. Payment of costs and expenses of the operation and maintenance of the Property, including (i) rentals and other charges payable by Borrower under any ground lease or other agreement affecting the Property; (ii) electricity, telephone, water and other utility costs, taxes, assessments, water charges and sewer rents and other utility and governmental charges levied, assessed or imposed against the Property; (iii) insurance premiums; (iv) costs and expenses with respect to any litigation affecting the Property, the Leases or the

Rents; (v) wages and salaries of employees, commissions of agents and attorneys' fees and expenses; and (vi) all other carrying costs, fees, charges, reserves, and expenses whatsoever relating to the Property.

After the payment of all such costs and expenses and after Lender has established such reserves as it, in its sole and absolute discretion, deems necessary for the proper management of the Property, Lender shall apply all remaining Rents received by it to the reduction of the Loan.

5.    No Waiver. The exercise or nonexercise by Lender of the rights granted in this Agreement or the collection and application of Rents by Lender or its agent shall not be a waiver of any default by Borrower under this Agreement or any other Loan Document. No action or failure to act by Lender with respect to any obligations of Borrower under the Loan Documents, or any security or guaranty given for the payment or performance thereof, shall in any manner affect, impair or prejudice any of Lender's rights and privileges under this Agreement, or discharge, release or modify any of Borrower's duties or obligations hereunder.

6.    Term. This Agreement shall continue in full force and effect until (a) all amounts due under the Loan Documents are paid in full, and (b) all other obligations of Borrower under the Loan Documents are fully satisfied.

7.    Appointment. Borrower irrevocably appoints Lender its true and lawful attorney-in-fact, which appointment is coupled with an interest, to exercise any or all of the rights or powers described herein with the same force and effect as if exercised by Borrower, and Borrower ratifies and confirms any and all acts done or omitted to be done by Lender, its agents, servants, employees or attorneys in, to or about the Property.

8.    Liability of Lender. Lender shall not in any way be liable to Borrower for any action or inaction of Lender, its employees or agents under this Agreement (other than for gross negligence, intentional or willful misconduct, or fraud by Lender, its employees and agents).

9.    Indemnification. Borrower shall indemnify, defend and hold harmless Lender from and against all liability, loss, damage, cost or expense which it may incur under this Agreement or under any of the Leases, including any claim against Lender by reason of any alleged obligation, undertaking, action, or inaction on its part to perform or discharge any terms, covenants or conditions of the Leases or with respect to Rents, and including reasonable attorneys' fees and expenses, **INCLUDING LIABILITY, LOSS, DAMAGE, COST OR EXPENSE ARISING OR ALLEGED TO HAVE ARISEN FROM LENDER'S NEGLIGENCE OR STRICT LIABILITY**, but excluding any claim arising from Lender's gross negligence, intentional or willful misconduct, or fraud. Any amount covered by this indemnity shall be payable on demand, and shall bear interest from the date of demand until the same is paid by Borrower to Lender at a rate equal to the Default Rate (as defined in the Loan Agreement).

10.    Modification. This Agreement may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of such change is sought.

11.    Bankruptcy.

(a)    Upon or at any time after the occurrence of a Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions,

applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

      (b)    If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

      12.    <u>Authority</u>. Borrower represents and warrants that it has full power and authority to execute and deliver this Agreement and the execution and delivery of this Agreement has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

      13.    <u>Liability</u>. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

      14.    <u>Headings, Etc</u>. The headings and captions of various paragraphs of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

      15.    <u>Notices</u>. Any notice required or permitted to be given under this Agreement shall be (a) in writing, (b) sent in the manner set forth in the Loan Agreement, and (c) effective in accordance with the terms of the Loan Agreement.

      16.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of Lender and its successors and assigns and shall be binding on Borrower and its successors and assigns.

      17.    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State where the Property is located and the applicable laws of the United States of America.

      18.    <u>Conflict</u>. If any conflict or inconsistency exists between the absolute assignment of the Rents and the Leases in this Agreement and the assignment of the Rents and Leases as security in the Security Instrument, the terms of this Agreement shall control.

      19.    <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

      20.    **<u>NO ORAL AGREEMENTS</u>. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Foxdale - Assignment of Leases and Rents

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

7

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:56    Desc
Affidavit Declaration of Bobby Khorshidi    Page 70 of 204

Doc #2023-0113286    Page 8 of 10

EXECUTED as of the date first written above.


**BORROWER:**

**NEGEV INVESTMENTS, LLC,**
a California limited liability company

By: _____
Name: Daniel Halevy
Title:  Authorized Signatory

## ACKNOWLEDGEMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *LOS ANGELES*:

On *APRIL 17*____, 20*23* before me, *ALAN KABAKER*_____ (a notary public), personally appeared ___*DANIEL HALEVY*_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC ● CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

NOTARY PAGE TO
ASSIGNMENT OF LEASES AND RENTS

Case 2:24-bk-12079-VZ    Doc 99-1    Filed 06/17/24    Entered 06/17/24 10:22:56    Desc
Affidavit Declaration of Bobby Khorshidi    Page 72 of 204

DOC #2023-0113286   Page 10 of 10

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 5, 6, 7 AND 8 OF THE KILEEN TRACT, IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 33, PAGE 71 OF MAPS, IN THE OFFICE OF COUNTY RECORDER OF SAID COUNTY.

APN: 642-082-001

EXHIBIT A TO
ASSIGNMENT OF LEASES AND RENTS

# Exhibit 5

# Exhibit 5

# PROMISSORY NOTE

$125,000.00                                                                    As of April 14, 2023

FOR VALUE RECEIVED, **SLA INVESTMENTS, LLC**, a California limited liability company ("*Borrower*"), promises and agrees to pay to the order of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company ("*Lender*"), in lawful money of the United States of America, the principal sum of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00) (the "*Loan*"), or so much thereof as may be advanced and outstanding under the Loan Agreement of even date herewith between Borrower and Lender (the "*Loan Agreement*"), with interest on the unpaid principal sum owing thereunder at the rate or rates or in the amounts computed in accordance with the Loan Agreement, together with all other amounts due Lender under the Loan Agreement, all payable in the manner and at the time or times provided in the Loan Agreement. Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Loan Agreement.

If not sooner due and payable in accordance with the Loan Agreement, Borrower shall pay to Lender all amounts due and unpaid under the Loan Agreement dated as of the date hereof, or on any earlier Maturity Date as set forth in the Loan Agreement. Unless otherwise specified in writing by Lender, all payments hereunder shall be paid to Lender at its office located at 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan. Lender reserves the right to require any payment on this Note, whether such payment is a regular installment, prepayment or final payment, to be by wired federal funds or other immediately available funds.

Borrower, co-makers, sureties, endorsers and guarantors, and each of them, expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER, except as otherwise provided in the Loan Agreement or other Loan Documents; such parties are and shall be jointly, severally, directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder or in connection with any right, lien, interest or property at any and all times had or existing as security for any amount called for hereunder.

This Promissory Note ("*Note*") evidences a portion of the advances made, interest due and all amounts otherwise owed to Lender under the Loan Agreement. This Note is executed in conjunction with the Loan Agreement and is secured by the liens and security interests created under the Loan Documents (including those arising under the Security Instrument). Reference is made to the Loan Agreement for provisions relating to repayment of the indebtedness evidenced by this Note, including mandatory repayment, acceleration following default, late charges, default rate of interest, limitations on interest, and restrictions on prepayment.

Lender reserves the right, at Lender's sole expense, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this Note or this debt or the debt evidenced hereby.

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents.  Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be

construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents.  If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Loan, or on acceleration of the maturity of the Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation.  Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Loan without the payment of the Prepayment Premium (or, if the Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Loan.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Loan.

**WAIVER OF TRIAL BY JURY.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**THIS WRITTEN NOTE ALONG WITH THE LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

This Note shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

2

South Los Angeles - Promissory Note

EXECUTED as of the date first written above.

**BORROWER:**

**SLA INVESTMENTS, LLC**,
a California limited liability company

By: _____
Name: Alan Gomperts
Title: Manager

# Exhibit 6

# Exhibit 6



**This page is part of your document - DO NOT DISCARD**



## 20230258318



**Pages:**
**0025**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/21/23 AT 08:00AM**

| | |
|---|---:|
| FEES: | 164.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 389.00 |



**L E A D S H E E T**



202304210110074

**00023378634**



014032443

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

30099765-DZ

E442318

RECORDING REQUESTED BY
Fidelity National Title Company

AND WHEN RECORDED MAIL TO:

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

30097265-02
_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
### SECURITY AGREEMENT AND FIXTURE FILING

RECORDING REQUESTED BY
Fidelity National Title Company

AND WHEN RECORDED MAIL TO:

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

30097265-DZ

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
## SECURITY AGREEMENT AND FIXTURE FILING

**RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE**

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

3009765-DZ                    *(space above this line for recorder's use only)*

**SLA INVESTMENTS, LLC**, as grantor
(Borrower)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, as beneficiary

(collectively, Lender)

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

| | |
|---|---|
| Dated: | April 14, 2023 |
| Address: | 1040 S Los Angeles Street
Los Angeles, CA 90015 |

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE. TO THE EXTENT THE GOODS ARE FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY LOCATED IN RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY INSTRUMENT.

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of April 14, 2023, by **SLA INVESTMENTS, LLC**, a California limited liability company ("*Borrower*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, a Delaware limited liability company, as beneficiary ("*Lender*").

This instrument is made in connection with a loan in the amount of $125,000.00 as evidenced by the Loan Agreement.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Borrower's obligations under the Loan Documents, Borrower hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Borrower further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Borrower's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Borrower's right, title and interest in and to the Additional Land.

### GRANTING CLAUSE THREE

All of Borrower's right, title and interest in and to the Improvements.

### GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Borrower in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

### GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Borrower in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In connection with Equipment which is leased to Borrower or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Borrower in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

### GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

### GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

### GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

### GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

### GRANTING CLAUSE TEN

The right, in the name of and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Borrower from any source whatsoever.

### GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Borrower now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Borrower now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Borrower hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender of the Indebtedness at the time and in the manner provided for its payment in the Note and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Borrower shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the Note and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Borrower represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Borrower warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Borrower's expense.

Borrower acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

3

AND Borrower represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
### Definitions and Loan Documents

1.1     _Loan Documents_.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2     _Definitions_.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

"*737 S Broadway Borrower*" means **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company.

"*737 S Broadway Loan*" means that Loan made to 737 S Broadway Borrower in an amount equal to $16,9420,500.00.

"*737 S Broadway Loan Documents*" means the loan agreement, the 737 S Broadway Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the 737 S Broadway Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing 737 S Broadway Loan Documents.

"*737 S Broadway Property*" means the property located at 737 S. Broadway, Los Angeles, CA 90014.

"*737 S Broadway Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by 737 S Broadway Borrower, in favor of the Trustee for the benefit of Lender concerning the 737 S Broadway Property.

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Borrower's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Borrower's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Borrower or in which Borrower has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Borrower or in which Borrower has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in Section 4.2 below.

"*Foxdale Borrower*" means Negev Investments, LLC, a California limited liability company.

"*Foxdale Loan*" means that Loan made to Foxdale Borrower in an amount equal to $1,300,000.00.

"*Foxdale Loan Documents*" means the loan agreement, the Foxdale Security Instrument, the

environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Foxdale Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Foxdale Loan Documents.

"*Foxdale Property*" means the property located at property known as "The Sandpiper" and located at 12800 Foxdale Drive, Desert Hot Springs, CA 92240.

"*Foxdale Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by Foxdale Borrower, in favor of the Trustee for the benefit of Lender concerning the Foxdale Property.

"*Greenfield PH Borrower*" means, collectively, (i) Alan Gomperts, and Sharon Halevy, as Trustees of The Gomperts and Halevy Family Trust ("*G&H Trust*"), (ii) David Halevy and Sue Halevy, as Trustees of the Halevy Family Trust dated September 8, 2010 ("*D&S Trust*"),, and (iii) Daniel Halevy

"*Greenfield PH Loan*" means that Loan made to Greenfield PH Borrower in an amount equal to $2,575,000.00.

"*Greenfield PH Loan Documents*" means the loan agreement, the Greenfield PH Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Greenfield PH Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Greenfield PH Loan Documents.

"*Greenfield PH Property*" means, collectively, the property located at (i) 3538 Greenfield Avenue, Los Angeles, CA, (ii), 8561 Horner Street, Los Angeles, CA 90035 and (iii) 133 South Palm Dr, Apt 0005, Beverly Hills, CA 90212.

"*Greenfield PH Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by Greenfield PH Borrower, in favor of Lender concerning the Greenfield PH Property.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Borrower's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Borrower, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions

and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Borrower's interest in any lands adjoining the Land, (vii) all water and all of Borrower's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Borrower fully pays the Indebtedness and performance all of Borrower's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3    Terms Generally; References and Titles.    References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided. All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument. Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation". Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person. Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations. References to any statute or act, without additional reference, refer to federal statutes and acts of the United States. References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4    Prepayment Premium.    Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

## ARTICLE II.
## Assignment of Leases and Rents

2.1    Assignment.    For the Indebtedness and other good and valuable consideration, Borrower absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent. Borrower does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Borrower agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to

6

Borrower herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and assigned by Borrower the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper. It is further the intent of Borrower and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Borrower or property of any estate of Borrower as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Borrower.

2.2     Application of Rent.

(a)          Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Borrower (or its designee). Borrower shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan. Unless Lender otherwise agrees, Borrower must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)          After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing. Tenant is relieved of its obligations to pay Borrower under any Lease to the extent of all Rent Tenant pays to Lender.

(c)          Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness. The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)          Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Borrower.

(e)          As between Borrower, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective. Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Borrower or any Person claiming through or under Borrower.

(f)          Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3     No Third Party Beneficiary. The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4     Release and Termination. The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.<br>Leases

3.1     Intentionally Omitted.

3.2     Approval. Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3     Terms. Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests. Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

7

3.4    Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Borrower may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)    are with Tenants who are not affiliated with Borrower;

(b)    do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)    do not afford Tenants any termination rights;

(d)    are an arm's length transaction on economic terms conforming to current market conditions;

(e)    have a market rental rate; and

(f)    do not contain any rights of first refusal or options to purchase.

## ARTICLE IV.
### Remedies

4.1    Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Borrower's interference, any rights which Borrower has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Borrower, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Borrower will quietly surrender possession of the Property.  If Borrower fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Borrower.

4.2    Foreclosure.  Borrower grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3    Receiver.  In addition to all other remedies in the Loan Documents, at law or in equity, during an Event of Default Period, (a) without notice to any Borrower Party, (b) whether or not Borrower is solvent, (c) whether or not a Borrower Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Borrower irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Borrower irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the Loan Documents, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

South Los Angeles– Security Instrument

4.4     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

FIRST, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; SECOND, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and THIRD, the remainder, if any, paid to any Person (including Borrower) as required by Applicable Law.

4.5     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Borrower to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Borrower as provided in the Loan Agreement ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the Loan Documents or to take possession of, hold or prepare the Collateral for transfer.

4.7     Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Borrower and any Person claiming any Collateral interest by, through or under Borrower, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
Miscellaneous

5.1     Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and

9

deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds. Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

     5.2    Authorization to File Financing Statement. Borrower authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral. If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Borrower or words of similar effect.

     5.3    Fixture Filing. This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement: Borrower is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

     5.4    Dealing with Successor. If Borrower no longer owns the Collateral, then Lender may, without notice to Borrower, deal with Borrower's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Borrower, without in any way vitiating or discharging Borrower's liability under the Loan Documents or for the Indebtedness. Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the Loan Documents or as Lender hereafter agrees in writing.

     5.5    Subrogation. If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Borrower's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released. However, the terms and provisions of the Loan Documents will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

     5.6    Application of Indebtedness. If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

     5.7    Agents. Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

     5.8    Transfer Recitals. All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

     5.9    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

     To Lender:        Archway Real Estate Income Fund I SPE I, LLC
                        1875 Century Park East. Suite #900
                        Los Angeles, CA 90067
                        Attention: Joshua Kohan
                        Phone: (310) 893-5277
                        Email: joshua@archwayfund.com

with a copy to:                Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

To Indemnitor:           SLA Investments, LLC
257 S. Linden Drive
Beverly Hills CA 90212
Attnetion: Alan Gomperts
Phone: (310) 666-2885
Email: danhalevy@gmail.com

with a copy to             Locke Lord LLP
300 S. Grand Ave., Suite 2600
Los Angeles, CA 90071
Attention: David S. Kupetz
Phone: (213) 687-6774
Email: David.Kupetz@lockelord.com

Trustee:                   Fidelity National Title
555 S. Flower Street, Suite 4420
Los Angeles, CA 90071
Attention: JB Jennings
Phone: (213) 452-7100
Email: JB.Jennings@fnf.com

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above.  Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

ARTICLE VI.
**Concerning the Trustee**

6.1    <u>Trustee's Fees</u>.  Borrower shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2    <u>Substitute Trustee</u>. Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof. Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded. Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise. Borrower agrees to the foregoing for itself, its successors and assigns.

6.3    <u>Power of Sale</u>.

(a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located. Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Borrower obligated to pay the Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)    At any such public sale, Trustee may execute and deliver in the name of Borrower to the purchaser a conveyance of the Property or any part of the Property in fee simple. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the Note and other secured indebtedness is paid in full. If the Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Borrower, or to the person or entity lawfully entitled thereto.

(e)     In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Borrower, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4     <u>Acceptance by Trustee</u>.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5     <u>Acts of Trustee</u>.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6     <u>No Liability of Trustee</u>.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct.  The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the Loan Documents), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     <u>Trustee Powers</u>.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Borrower.

6.8     <u>Priority</u>.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9    Ratification.  Borrower hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

## ARTICLE VII.
## State Law Provisions

7.1    Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other Loan Documents.

7.2    Full Reconveyance.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3    Dwellings.  No portion of the proceeds of the Loan shall be used by Borrower to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4    Civil Code.  Borrower represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5    Indemnity; Expenses.  Borrower will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Borrower, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Borrower shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6    Supplemental Environmental Provisions.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and

14

other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     Foreclosure By Power of Sale.

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)     Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Borrower such notice of default and election to sell as is then required by law. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)     Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8     Separate Sales. The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9     Release of and Resort to Collateral. Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior lien and security interest in and to the Property. For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    Waiver of Redemption, Notice and Marshalling of Assets. To the fullest extent permitted by law, Borrower hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Borrower by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    Discontinuance of Proceedings. If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Borrower

and Lender shall be restored to their former positions with respect to the Indebtedness, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

7.12    No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the Loan Documents, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Borrower will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any

16

superior officer of the corporation.  Borrower hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16    Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Borrower by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Borrower.

7.17    Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

7.19    Border Zone.  To Borrower's knowledge, Borrower represents to Lender that, as of the date hereof, the Property has not been designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be designated as Border Zone Property.

ARTICLE VIII.
**Cross Default And Cross Collateralization.**

8.1    737 S Broadway.  In addition to the obligations herein, Borrower shall also be subject to the payment and performance of all obligations secured by:

(a)    The 737 S Broadway Security Instrument made by 737 S Broadway Borrower made in connection the 737 S Broadway Loan, which 737 S Broadway Security Instrument secures a lien on the 737 S Broadway Property;

(b)    In addition to the obligations secured by the 737 S Broadway Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)     An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under 737 S Broadway Security Instrument and the 737 S Broadway Loan.

(d)     An Event of Default under the 737 S Broadway the Security Instrument or the 737 S Broadway Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)     Borrower waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the 737 S Broadway Security Instrument or the exercise of Borrower's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Borrower makes this waiver for itself, for all persons and entities claiming through or under Borrower and for persons and entities who may acquire a lien or security interest on all or any part of the 737 S Broadway Loan and Collateral described in the 737 S Broadway Security Instrument or herein.

8.2     <u>Greenfield PH</u>.  In addition to the obligations herein, Borrower shall also be subject to the payment and performance of all obligations secured by:

(a)     The Greenfield PH Security Instrument made by Greenfield PH Borrower made in connection the Greenfield PH Loan, which Greenfield PH Security Instrument secures a lien on the Greenfield PH Property;

(b)     In addition to the obligations secured by the Greenfield PH Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)     An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under Greenfield PH Security Instrument and the Greenfield PH Loan.

(d)     An Event of Default under the Greenfield PH the Security Instrument or the Greenfield PH Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)     Borrower waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the Greenfield PH Security Instrument or the exercise of Borrower's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Borrower makes this waiver for itself, for all persons and entities claiming through or under Borrower and for persons and entities who may acquire a lien or security interest on all or any part of the Greenfield PH Loan and Collateral described in the Greenfield PH Security Instrument or herein.

8.3     <u>Foxdale</u>.  In addition to the obligations herein, Borrower shall also be subject to the payment and performance of all obligations secured by:

(a)     The Foxdale Security Instrument made by Foxdale Borrower made in connection the Foxdale Loan, which Foxdale Security Instrument secures a lien on the Foxdale Property;

(b)     In addition to the obligations secured by the Foxdale Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

18

(c)    An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under Foxdale Security Instrument and the Foxdale Loan.

(d)    An Event of Default under the Foxdale the Security Instrument or the Foxdale Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)    Borrower waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the Foxdale Security Instrument or the exercise of Borrower's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Borrower makes this waiver for itself, for all persons and entities claiming through or under Borrower and for persons and entities who may acquire a lien or security interest on all or any part of the Foxdale Loan and Collateral described in the Foxdale Security Instrument or herein.

8.4    <u>Payoff</u>.  Notwithstanding anything to the contrary contained herein, Borrower shall not pay off the this Loan while the 737 S Broadway Loan, the Greenfield PH Loan or the Foxdale Loan remain outstanding.

## [REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

Borrower has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**BORROWER:**

**SLA INVESTMENTS, LLC**,
a California limited liability company

By: _____
Name: Alan Gomperts
Title: Manager

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

101

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *Los Angeles*

On *APRIL 17*_____, 202*3*, before me, *ALAN KABAKER*_____ (a notary public), personally appeared *ALAN GOMPERTS*_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

```
ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023
```

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

## EXHIBIT A

Legal Description of Land

**THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:**

**LOT 4 IN BLOCK 4 OF THE O.W. CHILD'S TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 6, PAGE 378 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**APN: 5145-020-057**

EXHIBIT A
TO
SECURITY INSTRUMENT



**This page is part of your document - DO NOT DISCARD**





## 20230258320



**Pages:
0007**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/21/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 29.00 |



**L E A D S H E E T**



202304210110074

00023378636



014032443

**SEQ:
03**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**



30099765-DZ

E442318

104

FOR REFERENCE ONLY

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME THOMPSON COBURN LLP

STREET ADDRESS

10100 SANTA MONICA BLVD., #500

CITY, STATE &
ZIP CODE

LOS ANGELES, CA 90067

SPACE ABOVE FOR RECORDER'S USE ONLY

UCC - FINANCING STATEMENT

Title of Document

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME *Thompson Coburn LLP*

STREET ADDRESS
*10100 Santa Monica Blvd., #500*

CITY, STATE &
ZIP CODE
*Los Angeles, CA 90067*

_____
SPACE ABOVE FOR RECORDER'S USE ONLY

## UCC - Financing Statement

### Title of Document

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Joshua Mogin  (310) 282-2520

**B. E-MAIL CONTACT AT FILER (optional)**
jmogin@thompsoncoburn.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Joshua Mogin
Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SLA Investments, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 257 S. Linden Drive | Beverly Hills | CA | 90212 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Archway Real Estate Income Fund I SPE I, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1875 Century Park East, Suite #900 | Los Angeles | CA | 90067 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See Schedule I attached.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Los Angeles County, California

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| SLA Investments, LLC |

OR

| 9b. INDIVIDUAL'S SURNAME | | |
| --- | --- | --- |
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
| --- | --- | --- | --- | --- |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| --- | --- | --- | --- | --- |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: |
| --- | --- |
| | ☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing |
| 15. Name and address of a RECORD OWNER of real estate described in Item 16 (if Debtor does not have a record interest): | 16. Description of real estate: **See Exhibit A attached.** |

17. MISCELLANEOUS:
**Los Angeles County, California**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

108

**FINANCING STATEMENT**
**SCHEDULE I**

This financing statement covers the following types (or items) of property (the "*Collateral Property*"):

1)      **Land**. All of Debtor's right, title and interest in and to the Land.

2)      **Additional Land**. All of Debtor's right, title and interest in and to the Additional Land.

3)      **Improvements**. All of Debtor's right, title and interest in and to the Improvements.

4)      **Easements**. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Debtor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

5)      **Equipment**. All right, title and interest in and to the Equipment and the right, title and interest of Debtor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In connection with Equipment which is leased to Debtor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Debtor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

6)      **Awards**. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

7)      **Leases**. All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of

1

Schedule I to UCC

creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

8) **Insurance Proceeds**. All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

9) **Tax Awards**. All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

10) **Right to Appear**. The right, in the name of and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Debtor from any source whatsoever.

11) **Accounts**. All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Debtor now has or may hereafter acquire in the Real Property or any part thereof.

12) **Indemnification**. All rights which Debtor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

13) **Plans**. All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

14) **Proceeds**. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Capitalized terms not defined herein are as defined in Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by Debtor in favor of Secured Party.

2

Schedule 1 to UCC

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 4 IN BLOCK 4 OF THE O.W. CHILD'S TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 6, PAGE 378 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5145-020-057

Exhibit 7

Exhibit 7



**This page is part of your document - DO NOT DISCARD**





# 20230258319

**Pages: 0012**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/21/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 94.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 94.00 |

## PCOR SURCHARGE $20.00



**L E A D S H E E T**



202304210110074

**00023378635**



014032443

**SEQ:
02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**



30099765-DZ

E442318

RECORDING REQUESTED BY
Fidelity National Title Company

AND WHEN RECORDED MAIL TO:

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

3c5957265-02

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF LEASES AND RENTS

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

**RECORDING REQUESTED BY**
Fidelity National Title Company

**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

30597265-02

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF LEASES AND RENTS

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

**RECORDING REQUESTED BY**
**FIDELITY NATIONAL TITLE**

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

3009765-DZ                *(space above this line for recorder's use only)*


**SLA INVESTMENTS, LLC**, as assignor

(Borrower)

to

**ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, as assignee

(Lender)

_____

**ASSIGNMENT OF LEASES AND RENTS**

_____

Dated:              April 14, 2023

Address:         1040 S Los Angeles Street
                    Los Angeles, CA 90015

**Exempt from fee per GC 27388.1'(a) (1);**
**fee cap of $225.00 reached.**

## ASSIGNMENT OF LEASES AND RENTS

This Assignment of Leases and Rents (this "**Agreement**") is executed as of April 14, 2023, by **SLA INVESTMENTS, LLC**, a California limited liability company ("**Borrower**"), as assignor, whose address for notice is 264 S. Oakhurst Drive, Beverly Hills CA 90212, Attention: Alan Gomperts, to **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, a Delaware limited liability company ("**Lender**"), as assignee, whose address for notice is 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan.

### RECITALS: *UNRECORDED LEASES*

A.     This Agreement is made in connection with a loan in the principal sum of $125,000.00 (the "**Loan**") made by Lender to Borrower pursuant to that certain loan agreement, dated as of the date hereof between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower to Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Note**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

B.     The Note is secured by that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Security Instrument**") made by Borrower for the benefit of Lender.

C.     Borrower desires to further secure the payment of the Indebtedness and the performance of all of its Obligations under the Note, the Security Instrument, the Loan Agreement and the other Loan Documents.

D.     This Assignment is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents is secured hereby, and each and every term and provision of the Loan Agreement,  the Note and the Security Instrument, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Assignment.

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Agreement:

### AGREEMENT:

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1.     <u>Assignment</u>. Borrower unconditionally assigns to Lender all of Borrower's right, title and interest in and to: (a) all rents, revenues, liquidated damages following defaults under the Leases, issues, profits, income and proceeds due or to become due from tenants of the project located on the real property described on <u>Exhibit A</u> attached to this Agreement (the real property and project, collectively, the "**Property**"), including rentals and all other payments of any kind under the Leases for using, leasing, licensing, possessing, operating from, rendering in, selling or otherwise enjoying the Property (collectively, the "**Rents**"); (b) all of Borrower's claims and rights (the "**Bankruptcy Claims**") to the

2

payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code; and (c) any and all other rights of Borrower in and to the items set forth in subsections (a) through (b) above, and all amendments, modifications, replacements, renewals, proceeds and substitutions thereof. This Agreement is an absolute assignment to Lender and not an assignment as security for the performance of the obligations under the Loan Documents (defined below), or any other indebtedness, and such absolute assignment is presently and immediately effective. Notwithstanding the foregoing, the absolute assignment contained herein shall not itself reduce the obligations owing to Lender under the Loan Documents unless and until Lender actually receives the Rents and such Rents are applied by Lender to such obligations pursuant to Section 4 below. For purposes of this Agreement, "*Leases*" means all leases, subleases, occupancy agreements, licenses, concessions, rental contracts and other agreements (written or oral) now or hereafter existing relating to the use or occupancy of the Property, together with all guarantees, letters of credit and other credit support, modifications, extensions and renewals thereof (whether before or after the filing by or against Borrower of any petition of relief under the Bankruptcy Code) and all related security and other deposits. Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period (as defined in the Loan Agreement), the license granted to Borrower herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and assigned by Borrower the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its discretion shall deem proper. It is further the intent of Borrower and Lender that the Rents hereby absolutely assigned are no longer, during the term of the Security Instrument, property of Borrower or property of any estate of Borrower as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Borrower.

2.    <u>Rights of Lender</u>. During an Event of Default (as defined in the Loan Agreement), Lender shall have the right, power and authority to: (a) notify any person that all Rents are to be paid directly to Lender, whether or not Lender has commenced or completed foreclosure or taken possession of the Property; (b) settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents; (c) enforce payment of Rents, prosecute any action or proceeding, and defend against any claim with respect to Rents; (d) enter upon, take possession of and operate the Property; (e) lease all or any part of the Property; and/or (f) perform any and all obligations of Borrower under the Leases and exercise any and all rights of Borrower therein contained to the full extent of Borrower's rights and obligations thereunder, with or without the bringing of any action or the appointment of a receiver. At Lender's request during an Event of Default, Borrower shall deliver a copy of this Agreement to each tenant under a Lease and to each manager and managing agent or operator of the Property. Borrower irrevocably directs any tenant, manager, managing agent, or operator of the Property, without any requirement for notice to or consent by Borrower, to comply with all demands of Lender under this Agreement and to turn over to Lender on demand all Rents which it receives. Lender grants to Borrower a revocable license to operate and manage the Property and to collect the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to Borrower herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. If the Event of Default is cured, as determined by Lender in its sole and absolute discretion, the license granted to Borrower shall be reinstated. Lender is hereby granted and assigned by Borrower the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the

3

South Los Angeles - Assignment of Leases and Rents

revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its discretion shall deem proper. It is further the intent of Borrower and Lender that the Rents hereby absolutely assigned are no longer, during the term of the Security Instrument, property of Borrower or property of any estate of Borrower as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Borrower.

3.      No Obligation or Liability. Notwithstanding Lender's rights hereunder, Lender shall not be obligated to perform, and Lender does not undertake to perform, any obligation, duty or liability with respect to the Leases, Rents or Property on account of this Agreement. Lender shall have no responsibility on account of this Agreement for the control, care, maintenance or repair of the Property, for any waste committed on the Property, for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property, except to the extent caused by the gross negligence, intentional or willful misconduct, fraud, by Lender.  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default (other than for gross negligence, intentional or willful misconduct, or fraud by Lender its employees and agents).  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. Neither the acceptance by Lender of this Agreement, nor the granting of any other right, power, privilege or authority in this Assignment, nor the exercise of any of the aforesaid, will at any time thereafter, obligate Lender (a) to appear in or defend any action or proceeding relating to the Leases, the Rents or the remainder of the Property, (b) to take any action hereunder, (c) to expend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any Lease, (d) to assume any obligation or responsibility for any deposits which are not physically delivered to Lender or (e) to assume any obligation or responsibility for any injury or damage to person or property sustained in or about the Property. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

4.      Right to Apply Rents.  At any time an Event of Default by Borrower exists, Lender shall have the right, but not the obligation, to use and apply any Rents received by Lender pursuant to the terms hereof in such order and such manner as Lender may determine for:

(a)      Enforcement or Defense. The payment of costs and expenses of enforcing or defending the terms of this Agreement or the rights of Lender hereunder, and collecting any Rents;

(b)      Loan Payments. Interest, principal or other amounts payable pursuant to (i) the Loan Agreement; (ii) the Note in the original principal amount of $125,000.00; (iii) the Security Instrument (as defined in the Loan Agreement); (iv) all other documents and instruments evidencing, governing and securing the loan evidenced by the Note and (v) any and all modifications, amendments or extensions thereof or replacements or substitutions therefor (the Loan Agreement, the Note, the Security Instrument, such other documents and instruments, and such modifications, amendments, extensions, replacements, and substitutions thereof being herein collectively called the "*Loan Documents*"); and

(c)      Operating Expenses. Payment of costs and expenses of the operation and maintenance of the Property, including (i) rentals and other charges payable by Borrower under any ground lease or other agreement affecting the Property; (ii) electricity, telephone, water and other utility costs, taxes, assessments, water charges and sewer rents and other utility and governmental charges levied, assessed or imposed against the Property; (iii) insurance premiums; (iv) costs and expenses with respect to any litigation affecting the Property, the Leases or the

Rents; (v) wages and salaries of employees, commissions of agents and attorneys' fees and expenses; and (vi) all other carrying costs, fees, charges, reserves, and expenses whatsoever relating to the Property.

After the payment of all such costs and expenses and after Lender has established such reserves as it, in its sole and absolute discretion, deems necessary for the proper management of the Property, Lender shall apply all remaining Rents received by it to the reduction of the Loan.

5.    No Waiver. The exercise or nonexercise by Lender of the rights granted in this Agreement or the collection and application of Rents by Lender or its agent shall not be a waiver of any default by Borrower under this Agreement or any other Loan Document. No action or failure to act by Lender with respect to any obligations of Borrower under the Loan Documents, or any security or guaranty given for the payment or performance thereof, shall in any manner affect, impair or prejudice any of Lender's rights and privileges under this Agreement, or discharge, release or modify any of Borrower's duties or obligations hereunder.

6.    Term. This Agreement shall continue in full force and effect until (a) all amounts due under the Loan Documents are paid in full, and (b) all other obligations of Borrower under the Loan Documents are fully satisfied.

7.    Appointment. Borrower irrevocably appoints Lender its true and lawful attorney-in-fact, which appointment is coupled with an interest, to exercise any or all of the rights or powers described herein with the same force and effect as if exercised by Borrower, and Borrower ratifies and confirms any and all acts done or omitted to be done by Lender, its agents, servants, employees or attorneys in, to or about the Property.

8.    Liability of Lender. Lender shall not in any way be liable to Borrower for any action or inaction of Lender, its employees or agents under this Agreement (other than for gross negligence, intentional or willful misconduct, or fraud by Lender, its employees and agents).

9.    Indemnification. Borrower shall indemnify, defend and hold harmless Lender from and against all liability, loss, damage, cost or expense which it may incur under this Agreement or under any of the Leases, including any claim against Lender by reason of any alleged obligation, undertaking, action, or inaction on its part to perform or discharge any terms, covenants or conditions of the Leases or with respect to Rents, and including reasonable attorneys' fees and expenses, **INCLUDING LIABILITY, LOSS, DAMAGE, COST OR EXPENSE ARISING OR ALLEGED TO HAVE ARISEN FROM LENDER'S NEGLIGENCE OR STRICT LIABILITY**, but excluding any claim arising from Lender's gross negligence, intentional or willful misconduct, or fraud. Any amount covered by this indemnity shall be payable on demand, and shall bear interest from the date of demand until the same is paid by Borrower to Lender at a rate equal to the Default Rate (as defined in the Loan Agreement).

10.    Modification. This Agreement may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of such change is sought.

11.    Bankruptcy.

(a)    Upon or at any time after the occurrence of a Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions,

5

applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)    If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

12.    <u>Authority</u>. Borrower represents and warrants that it has full power and authority to execute and deliver this Agreement and the execution and delivery of this Agreement has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

13.    <u>Liability</u>. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

14.    <u>Headings, Etc</u>. The headings and captions of various paragraphs of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

15.    <u>Notices</u>. Any notice required or permitted to be given under this Agreement shall be (a) in writing, (b) sent in the manner set forth in the Loan Agreement, and (c) effective in accordance with the terms of the Loan Agreement.

16.    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of Lender and its successors and assigns and shall be binding on Borrower and its successors and assigns.

17.    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of the State where the Property is located and the applicable laws of the United States of America.

18.    <u>Conflict</u>. If any conflict or inconsistency exists between the absolute assignment of the Rents and the Leases in this Agreement and the assignment of the Rents and Leases as security in the Security Instrument, the terms of this Agreement shall control.

19.    <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which shall constitute one document.

20.    **<u>NO ORAL AGREEMENTS</u>. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

7

South Los Angeles - Assignment of Leases and Rents

EXECUTED as of the date first written above.


**BORROWER:**

**SLA INVESTMENTS, LLC,**
a California limited liability company

By: _____
Name: Alan Gomperts
Title: Manager

# ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *LOS ANGELES*:

On *APRIL 17*        , 20*23* before me, *ALAN KABAKER*              (a notary public), personally appeared *ALAN GOMPERTS*     , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC ● CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

NOTARY PAGE TO
ASSIGNMENT OF LEASES AND RENTS

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 4 IN BLOCK 4 OF THE O.W. CHILD'S TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 6, PAGE 378 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: **5145-020-057**

# Exhibit 8

# Exhibit 8

# PROMISSORY NOTE

$2,575,000.00                                                              As of April 14, 2023

FOR VALUE RECEIVED, (i) **ALAN GOMPERTS**, and **SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust** ("**G&H Trust**"), (ii) **DAVID HALEVY** and **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("**D&S Trust**"),, and (iii) **DANIEL HALEVY**, an individual ("**DH**") (G& H Trust, D&S Trust and DH are collectively, referred to herein as, "**Borrower**"), promises and agrees to pay to the order of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company ("**Lender**"), in lawful money of the United States of America, the principal sum of Two Million Five Hundred Seventy -Five Thousand and No/100  Dollars ($2,575,000.00) (the "**Loan**"), or so much thereof as may be advanced and outstanding under the Loan Agreement of even date herewith between Borrower and Lender (the "**Loan_Agreement**"), with interest on the unpaid principal sum owing thereunder at the rate or rates or in the amounts computed in accordance with the Loan Agreement, together with all other amounts due Lender under the Loan Agreement, all payable in the manner and at the time or times provided in the Loan Agreement. Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Loan Agreement.

If not sooner due and payable in accordance with the Loan Agreement, Borrower shall pay to Lender all amounts due and unpaid under the Loan Agreement dated as of the date hereof, or on any earlier Maturity Date as set forth in the Loan Agreement. Unless otherwise specified in writing by Lender, all payments hereunder shall be paid to Lender at its office located at 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan. Lender reserves the right to require any payment on this Note, whether such payment is a regular installment, prepayment or final payment, to be by wired federal funds or other immediately available funds.

Borrower, co-makers, sureties, endorsers and guarantors, and each of them, expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER, except as otherwise provided in the Loan Agreement or other Loan Documents; such parties are and shall be jointly, severally, directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder or in connection with any right, lien, interest or property at any and all times had or existing as security for any amount called for hereunder.

This Promissory Note ("**Note**") evidences a portion of the advances made, interest due and all amounts otherwise owed to Lender under the Loan Agreement. This Note is executed in conjunction with the Loan Agreement and is secured by the liens and security interests created under the Loan Documents (including those arising under the Security Instrument). Reference is made to the Loan Agreement for provisions relating to repayment of the indebtedness evidenced by this Note, including mandatory repayment, acceleration following default, late charges, default rate of interest, limitations on interest, and restrictions on prepayment.

Lender reserves the right, at Lender's sole expense, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this Note or this debt or the debt evidenced hereby.

Greenfield PH - Promissory Note

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents. Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Loan, or on acceleration of the maturity of the Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation. Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Loan without the payment of the Prepayment Premium (or, if the Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Loan. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Loan.

**WAIVER OF TRIAL BY JURY. TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**THIS WRITTEN NOTE ALONG WITH THE LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

This Note shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

EXECUTED as of the date first written above.

**BORROWER:**

**ALAN GOMPERTS, Trustee of**
**The Gomperts and Halevy Family Trust**

**SHARON HALEVY, Trustee of**
**The Gomperts and Halevy Family Trust**

**DAVID HALEVY, Trustee of**
**the Halevy Family Trust dated September 8, 2010,**
**by Daniel Halevy as his attorney in fact**

**SUE HALEVY, Trustee of**
**the Halevy Family Trust dated September 8, 2010**

**DANIEL HALEVY, an individual**

# Exhibit 9

# Exhibit 9



**This page is part of your document - DO NOT DISCARD**



## 20230261978



**Pages:
0028**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/24/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 173.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 398.00 |



**L E A D S H E E T**



202304240110096

**00023381847**



014034482

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

30097266-DZ

E662318

**RECORDING REQUESTED BY**
Fidelity National Title Company


**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

3D972660 DZ

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
## SECURITY AGREEMENT AND FIXTURE FILING

RECORDING REQUESTED BY
Fidelity National Title Company

AND WHEN RECORDED MAIL TO:

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

30097266·DZ

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
## SECURITY AGREEMENT AND FIXTURE FILING

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

30097266-02
APN: 4252-017-007

*(space above this line for recorder's use only)*

**ALAN GOMPERTS**, and **SHARON HALEVY, as Trustees of The Gomperts and Halevy Family**
**Trust**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, as beneficiary

(collectively, Lender)

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

| | |
|---|---|
| Dated: | April 14, 2023 |
| Address: | 3538 Greenfield Avenue<br>Los Angeles, CA 90034 |

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN RIVERSIDE COUNTY, CALIFORNIA, MORE
PARTICULARLY DESCRIBED ON EXHIBIT A ATTACHED TO THIS SECURITY INSTRUMENT.

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of April 14, 2023, by **ALAN GOMPERTS**, and **SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company, as beneficiary ("*Lender*").

This Security Instrument is made in connection with that certain Loan Agreement (the "*Loan Agreement*"), between (i) **ALAN GOMPERTS**, and **SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **DAVID HALEVY** and **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **DANIEL HALEVY,** an individual ("*DH*") (G& H Trust, D&S Trust and DH are collectively, referred to herein as, "*Borrower*") and Lender, and the Promissory Note (the "*Note*") described in the Loan Agreement, in the original principal amount of $2,575,000.00 in evidence of the loan (the "*Loan*") made by Lender to Borrower..

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Borrower's obligations under the Loan Documents, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

### GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

### GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

### GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In

connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

### GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

### GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

### GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

### GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

### GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

### GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender of the Indebtedness at the time and in the manner provided for its payment in the Note and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the Note and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
## **Definitions and Loan Documents**

1.1   <u>Loan Documents</u>.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2   <u>Definitions</u>.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

*"737 S Broadway Borrower"* means **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company.

*"737 S Broadway Loan"* means that Loan made to 737 S Broadway Borrower in an amount equal to $16,9420,500.00.

*"737 S Broadway Loan Documents"* means the loan agreement, the 737 S Broadway Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the 737 S Broadway Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing 737 S Broadway Loan Documents.

*"737 S Broadway Property"* means the property located at 737 S. Broadway, Los Angeles, CA 90014.

*"737 S Broadway Security Instrument"* means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by 737 S Broadway Borrower, in favor of the Trustee for the benefit of Lender concerning the 737 S Broadway Property.

*"Additional Land"* means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

*"Collateral"* means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

*"Equipment"* means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

*"Foreclosure Statute"* has the meaning set forth in <u>Section 4.2</u> below.

*"Foxdale Borrower"* means Negev Investments, LLC, a California limited liability company.

*"Foxdale Loan"* means that Loan made to Foxdale Borrower in an amount equal to $1,300,000.00.

*"Foxdale Loan Documents"* means the loan agreement, the Foxdale Security Instrument, the

environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Foxdale Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Foxdale Loan Documents.

"*Foxdale Property*" means the property located at property known as "The Sandpiper" and located at 12800 Foxdale Drive, Desert Hot Springs, CA 92240.

"*Foxdale Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by Foxdale Borrower, in favor of the Trustee for the benefit of Lender concerning the Foxdale Property.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*South Los Angeles Borrower*" means SLA Investments LLC, a California limited liability company.

"*South Los Angeles Loan*" means that Loan made to South Los Angeles Borrower in an amount equal to $125,000.00.

"*South Los Angeles Loan Documents*" means the loan agreement, the South Los Angeles Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the South Los Angeles Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing South Los Angeles Loan Documents.

"*South Los Angeles Property*" means the property located at 1040 S Los Angeles Street, Los

5

Angeles, CA 90015.

"*South Los Angeles Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by South Los Angeles Borrower, in favor of the Trustee for the benefit of Lender concerning the South Los Angeles Property.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

    1.3    Terms Generally; References and Titles. References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided. All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument. Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation". Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person. Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations. References to any statute or act, without additional reference, refer to federal statutes and acts of the United States. References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

    1.4    Prepayment Premium. Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

    2.1    Assignment. For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent. Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents. Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and

6

assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper. It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2     Application of Rent.

(a)        Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee). Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan. Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)        After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing. Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)        Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness. The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)        Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)        As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective. Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)        Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3     No Third Party Beneficiary. The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4     Release and Termination. The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1     Intentionally Omitted.

3.2     Approval.  Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3     Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests. Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4     Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)            are with Tenants who are not affiliated with Trustor;

(b)            do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)            do not afford Tenants any termination rights;

(d)            are an arm's length transaction on economic terms conforming to current market conditions;

(e)            have a market rental rate; and

(f)            do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Remedies**

4.1     Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3     Receiver.  In addition to all other remedies in the Loan Documents, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the Loan Documents, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

8

4.4     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

**FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the Loan Documents or to take possession of, hold or prepare the Collateral for transfer.

4.7     Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

## ARTICLE V.
## **Miscellaneous**

5.1     Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and

deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds. Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

   5.2   Authorization to File Financing Statement. Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral. If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

   5.3   Fixture Filing. This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement: Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

   5.4   Dealing with Successor. If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the Loan Documents or for the Indebtedness. Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the Loan Documents or as Lender hereafter agrees in writing.

   5.5   Subrogation. If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released. However, the terms and provisions of the Loan Documents will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

   5.6   Application of Indebtedness. If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

   5.7   Agents. Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

   5.8   Transfer Recitals. All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

   5.9   Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

   To Lender:          Archway Real Estate Income Fund I SPE I, LLC
                       1875 Century Park East. Suite #900
                       Los Angeles, CA 90067
                       Attention: Joshua Kohan
                       Phone: (310) 893-5277
                       Email: joshua@archwayfund.com

| with a copy to: | Thompson Coburn LLP |
| | 10100 Santa Monica Blvd., Suite 500 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Mogin |
| | Phone: (310) 282-2520 |
| | Email: jmogin@thompsoncoburn.com |

| To Trustor: | c/o Alan Gomperts |
| | 264 S. Oakhurst Drive |
| | Beverly Hills CA 90212 |
| | Phone: (310) 621-5350 |
| | Email: alangomperts@hotmail.com |

| with a copy to | Locke Lord LLP |
| | 300 S. Grand Ave., Suite 2600 |
| | Los Angeles, CA 90071 |
| | Attention: David S. Kupetz |
| | Phone: (213) 687-6774 |
| | Email: David.Kupetz@lockelord.com |

| Trustee: | Fidelity National Title |
| | 555 S. Flower Street, Suite 4420 |
| | Los Angeles, CA 90071 |
| | Attention: JB Jennings |
| | Phone: (213) 452-7100 |
| | Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

### ARTICLE VI.
### Concerning the Trustee

6.1    Trustee's Fees. Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2    Substitute Trustee. Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services

rendered by Trustee in accordance with the terms hereof. Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded. Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise. Trustor agrees to the foregoing for itself, its successors and assigns.

     6.3    <u>Power of Sale</u>.

     (a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located. Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

     (b)    At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the Note and other secured indebtedness is paid in full. If the Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

     (c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)      In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)      In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4    <u>Acceptance by Trustee</u>. Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law. Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5    <u>Acts of Trustee</u>. From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof. Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies. Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6    <u>No Liability of Trustee</u>. The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine. All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the Loan Documents), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7    <u>Trustee Powers</u>. Trustee may exercise any of its powers through appointment of attorney-in-fact or agents. Trustee may select and employ legal counsel at the expense of Trustor.

6.8    <u>Priority</u>. All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9    <u>Ratification</u>. Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

# ARTICLE VII.
## State Law Provisions

7.1    Conflicts. This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other Loan Documents.

7.2    Full Reconveyance. Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3    Dwellings. No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed. No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4    Civil Code. Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5    Indemnity; Expenses. Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument. The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property. Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6    Supplemental Environmental Provisions. In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7    Foreclosure By Power of Sale.

14

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)    Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law. Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)    Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8    <u>Separate Sales</u>. The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9    <u>Release of and Resort to Collateral</u>. Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior lien and security interest in and to the Property. For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    <u>Waiver of Redemption, Notice and Marshalling of Assets</u>. To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    <u>Discontinuance of Proceedings</u>. If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall

Greenfield PH (Greenfield)– Security Instrument

waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

7.12   No Mortgagee in Possession.   Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the Loan Documents, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13   Concerning the Trustee.   With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14   Retention of Money.   All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15   Successor Trustees.   Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered

and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16    <u>Perfection of Appointment</u>.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17    <u>Succession Instruments</u>.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    <u>No Representation by Trustee or Lender</u>.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

7.19    <u>Border Zone</u>.  To Trustor's knowledge, Trustor represents to Lender that, as of the date hereof, the Property has not been designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be designated as Border Zone Property.

ARTICLE VIII.
**Cross Default And Cross Collateralization.**

8.1    <u>737 S Broadway</u>.  In addition to the obligations herein, Trustor shall also be subject to the payment and performance of all obligations secured by:

(a)    The 737 S Broadway Security Instrument made by 737 S Broadway Borrower made in connection the 737 S Broadway Loan, which 737 S Broadway Security Instrument secures a lien on the 737 S Broadway Property;

(b)    In addition to the obligations secured by the 737 S Broadway Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)    An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under 737 S Broadway Security Instrument and the 737 S Broadway Loan.

17

(d)     An Event of Default under the 737 S Broadway the Security Instrument or the 737 S Broadway Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)     Trustor waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the 737 S Broadway Security Instrument or the exercise of Trustor's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the 737 S Broadway Loan and Collateral described in the 737 S Broadway Security Instrument or herein.

8.2     <u>South Los Angeles</u>.  In addition to the obligations herein, Trustor shall also be subject to the payment and performance of all obligations secured by:

(a)     The South Los Angeles Security Instrument made by South Los Angeles Borrower made in connection the South Los Angeles Loan, which South Los Angeles Security Instrument secures a lien on the South Los Angeles Property;

(b)     In addition to the obligations secured by the South Los Angeles Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)     An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under South Los Angeles Security Instrument and the South Los Angeles Loan.

(d)     An Event of Default under the South Los Angeles the Security Instrument or the South Los Angeles Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)     Trustor waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the South Los Angeles Security Instrument or the exercise of Trustor's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the South Los Angeles Loan and Collateral described in the South Los Angeles Security Instrument or herein.

8.3     <u>Foxdale</u>.  In addition to the obligations herein, Trustor shall also be subject to the payment and performance of all obligations secured by:

(a)     The Foxdale Security Instrument made by Foxdale Borrower made in connection the Foxdale Loan, which Foxdale Security Instrument secures a lien on the Foxdale Property;

(b)     In addition to the obligations secured by the Foxdale Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)     An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under Foxdale Security Instrument and the Foxdale Loan.

(d)      An Event of Default under the Foxdale the Security Instrument or the Foxdale Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)      Trustor waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the Foxdale Security Instrument or the exercise of Trustor's rights and remedies hereunder. Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate. Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the Foxdale Loan and Collateral described in the Foxdale Security Instrument or herein.

8.4      Payoff. Notwithstanding anything to the contrary contained herein, Trustor shall not pay off the this Loan while the 737 S Broadway Loan, the Greenfield PH Loan or the Foxdale Loan remain outstanding.

ARTICLE IX.<br>
<strong>Additional Security</strong>

9.1      Additional Security – Obligations Secured by Additional Mortgages. In addition to the obligations secured by this Security Instrument and described as obligations herein, this Security Instrument shall also secure the payment and performance of all obligations secured by that certain Deeds of Trust, Security Agreement and Fixture Filing made by Borrower, as Borrower, for the benefit of Lender, its successors and assigns forever, as beneficiary, dated as of the date hereof (collectively ,the "*Additional Security Instrument*") with respect to the properties more commonly known as the addresses set forth on the Property Schedule attached as Exhibit B under "*Additional Properties*."

9.2      Secured Payment and Performance. In addition to the obligations secured by the Additional Security Instrument, the Additional Security Instrument shall also secure the payment and performance of all obligations secured by this Security Instrument.

9.3      Cross Default. An Event of Default under any of the Additional Security Instrument, as defined therein, shall, at Lender's option, constitute an Event of Default under this Security Instrument. An Event of Default under this Security Instrument shall, at Lender's option, constitute an Event of Default under the Additional Security Instrument.

9.4      Waiver of Marshalling. Trustor waives all rights to have all or part of the Property described in this Security Instrument and/or the Additional Security Instrument marshalled upon any foreclosure of this Security Instrument or any foreclosure of the Additional Security Instrument. Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of, the Property described in any of said Additional Security Instruments as a whole or in separate parcels, in any order that Lender may designate. Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the Property described in either of said Additional Security Instrument, or on any interest therein.

9.5      Additional Representations and Warranties of Trustor.

(a)      Trustor represents and warrants that the lien of the Additional Security Instrument is a first lien on each of the properties described therein and covered thereby and that the provisions of this Security Instrument will not cause intervening liens to become prior to the lien of any of the Additional Security Instrument. If any intervening lien exists or hereafter arises, Trustor shall cause

19

the same to be released or subordinated to the lien of the Additional Security Instrument, without limiting any other right or remedy available to Lender.

(b)     Trustor further warrants that Trustor has no legal or equitable claim against any Trustor named in the Additional Security Instrument which would be prior to the lien of the Additional Security Instrument, or which would entitle Trustor to a judgment entitling Trustor to an equitable lien on all or any portion of that property prior in lien to the Additional Security Instrument.

(c)     Except as supplemented and/or modified by this Security Instrument, all of the terms, covenants and conditions of the Additional Security Instrument and the other loan documents executed in connection therewith shall remain in full force and effect.

(d)     Trustor and Lender acknowledge and agree that: this Security Instrument shall constitute a lien or charge upon only that property described herein as the "*Property*;" and the Additional Security Instrument shall constitute liens or charges upon only that property described therein as the "*Property*."

9.6     <u>Release</u>. This Security Instrument shall not be released until all the entire Loan in paid in full.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

Greenfield PH (Greenfield)– Security Instrument

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

_____
**ALAN GOMPERTS, Trustee of
The Gomperts and Halevy Family Trust**

_____
**SHARON HALEVY, Trustee of
The Gomperts and Halevy Family Trust**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _LOS ANGELES_

On _APRIL 17_, 2023 before me, _ALAN KABAKER_ (a notary public), personally appeared _SHARON HALEVY_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _LOS ANGELES_

On _APRIL 17_, 2023 before me, _ALAN KABAKER_ (a notary public), personally appeared _ALAN GOMPERTS_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _LOS ANGELES_ )

On _APRIL 17, 2023_ before me, _ALAN KABAKER, NOTARY PUBLIC_
(insert name and title of the officer)

personally appeared _SHARON HALEVY_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC ● CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 195 OF TRACT NO. 10516, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 159, PAGES 18 TO 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXHIBIT A
TO
SECURITY INSTRUMENT

## **EXHIBIT B**

## **PROPERTY**

3538 Greenfield Avenue, Los Angeles, CA 90034

## **ADDITIONAL PROPERTIES**

133 South Palm Dr, Apt 0005, Beverly Hills, CA 90212

8561 Horner Street, Los Angeles, CA 90035

EXHIBIT B
TO
SECURITY INSTRUMENT

**This page is part of your document - DO NOT DISCARD**



## 20230261979



**Pages:**
**0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/24/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 29.00 |



**L E A D S H E E T**



202304240110096

**00023381848**



014034482

**SEQ:**
**02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

30097266-DZ

E442318

160

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME THOMPSON COBURN LLP

STREET ADDRESS
10100 SANTA MONICA BLVD., #500

CITY, STATE &
ZIP CODE
LOS ANGELES, CA 90067

3009726-02

SPACE ABOVE FOR RECORDER'S USE ONLY

## UCC - FINANCING STATEMENT

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME *Thompson Coburn LLP*

STREET ADDRESS *10100 Santa Monica Blvd., #500*

CITY, STATE &
ZIP CODE *Los Angeles, CA 90067*

*3009766-02*

SPACE ABOVE FOR RECORDER'S USE ONLY

## UCC - Financing Statement

### Title of Document

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Joshua Mogin  (310) 282-2520

B. E-MAIL CONTACT AT FILER (optional)
jmogin@thompsoncoburn.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Joshua Mogin
Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ALAN GOMPERTS, and SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Alan Gomperts, 264 S. Oakhurst Drive | Beverly Hills | CA | 90212 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DAVID HALEVY and SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010 | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Alan Gomperts, 264 S. Oakhurst Drive | Beverly Hills | CA | 90212 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Archway Real Estate Income Fund I SPE I, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1875 Century Park East, Suite #900 | Los Angeles | CA | 90067 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See Schedule I attached.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Los Angeles County, California

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| ALAN GOMPERTS, and SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust |

OR

| 9b. INDIVIDUAL'S SURNAME |
| --- |
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
| --- |

OR

| 10b. INDIVIDUAL'S SURNAME |
| --- |
| **HALEVY** |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| **DANIEL** |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| c/o David Halevy, 257 S. Linden Drive | Beverly Hills | CA | 90212 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
| --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

**See Exhibit A attached.**

17. MISCELLANEOUS:
**Los Angeles County, California**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

**FINANCING STATEMENT**
**SCHEDULE I**

This financing statement covers the following types (or items) of property (the "*Collateral Property*"):

1)   **Land**. All of Debtor's right, title and interest in and to the Land.

2)   **Additional Land**. All of Debtor's right, title and interest in and to the Additional Land.

3)   **Improvements**. All of Debtor's right, title and interest in and to the Improvements.

4)   **Easements**. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Debtor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

5)   **Equipment**. All right, title and interest in and to the Equipment and the right, title and interest of Debtor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In connection with Equipment which is leased to Debtor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Debtor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

6)   **Awards**. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

7)   **Leases**. All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of

1

Schedule I to UCC

creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

8)      **Insurance Proceeds**. All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

9)      **Tax Awards**. All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

10)     **Right to Appear**. The right, in the name of and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Debtor from any source whatsoever.

11)     **Accounts**. All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Debtor now has or may hereafter acquire in the Real Property or any part thereof.

12)     **Indemnification**. All rights which Debtor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

13)     **Plans**. All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

14)     **Proceeds**. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Capitalized terms not defined herein are as defined in Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by Debtor in favor of Secured Party.

2

Schedule 1 to UCC

## EXHIBIT A

### Legal Description of Land

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 195 OF TRACT NO. 10516, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 159, PAGES 18 TO 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# Exhibit 10

# Exhibit 10



**This page is part of your document - DO NOT DISCARD**



## 20230259824



**Pages:**
**0027**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/24/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 170.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 395.00 |



**L E A D S H E E T**



202304240110008

00023380271



014033488

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

30097266C-D2

E442318

169

RECORDING REQUESTED BY
Fidelity National Title Company

AND WHEN RECORDED MAIL TO:

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

30097266.D2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
SECURITY AGREEMENT AND FIXTURE FILING

**RECORDING REQUESTED BY**
Fidelity National Title Company

**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LL
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attn: Joshua Morgan

30097266C·D2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS
## SECURITY AGREEMENT AND FIXTURE FILING

**RECORDING REQUESTED BY**
**FIDELITY NATIONAL TITLE**

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

30097266C-D2
APN: 4331-018-029

*(space above this line for recorder's use only)*

**DAVID HALEVY** and **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, as beneficiary

(collectively, Lender)

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

| | |
|---|---|
| Dated: | April 14, 2023 |
| Address: | 133 South Palm Dr, Apt 0005
Beverly Hills, CA 90212 |

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY LOCATED IN RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY INSTRUMENT.

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of April 14, 2023, by **DAVID HALEVY** and **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, a Delaware limited liability company, as beneficiary ("*Lender*").

This Security Instrument is made in connection with that certain Loan Agreement (the "*Loan Agreement*"), between (i i) **ALAN GOMPERTS**, and **SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **DAVID HALEVY** and **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **DANIEL HALEVY**, an individual ("*DH*") (G& H Trust, D&S Trust and DH are collectively, referred to herein as, "*Borrower*") and Lender, and the Promissory Note (the "*Note*") described in the Loan Agreement, in the original principal amount of $2,575,000.00 in evidence of the loan (the "*Loan*") made by Lender to Borrower..

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Borrower's obligations under the Loan Documents, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

### GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

### GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

### GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform

Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender of the Indebtedness at the time and in the manner provided for its payment in the Note and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the Note and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of

Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
### Definitions and Loan Documents

1.1    <u>Loan Documents</u>.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2    <u>Definitions</u>.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

"*737 S Broadway Borrower*" means **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company.

"*737 S Broadway Loan*" means that Loan made to 737 S Broadway Borrower in an amount equal to $16,9420,500.00.

"*737 S Broadway Loan Documents*" means the loan agreement, the 737 S Broadway Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the 737 S Broadway Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing 737 S Broadway Loan Documents.

"*737 S Broadway Property*" means the property located at 737 S. Broadway, Los Angeles, CA 90014.

"*737 S Broadway Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by 737 S Broadway Borrower, in favor of the Trustee for the benefit of Lender concerning the 737 S Broadway Property.

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in <u>Section 4.2</u> below.

4

"*Foxdale Borrower*" means Negev Investments, LLC, a California limited liability company.

"*Foxdale Loan*" means that Loan made to Foxdale Borrower in an amount equal to $1,300,000.00.

"*Foxdale Loan Documents*" means the loan agreement, the Foxdale Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Foxdale Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Foxdale Loan Documents.

"*Foxdale Property*" means the property located at property known as "The Sandpiper" and located at 12800 Foxdale Drive, Desert Hot Springs, CA 92240.

"*Foxdale Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by Foxdale Borrower, in favor of the Trustee for the benefit of Lender concerning the Foxdale Property.

"*South Los Angeles Borrower*" means SLA Investments LLC, a California limited liability company.

"*South Los Angeles Loan*" means that Loan made to South Los Angeles Borrower in an amount equal to $125,000.00.

"*South Los Angeles Loan Documents*" means the loan agreement, the South Los Angeles Security Instrument, the environmental indemnity agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the South Los Angeles Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing South Los Angeles Loan Documents.

"*South Los Angeles Property*" means the property located at 1040 S Los Angeles Street, Los Angeles, CA 90015.

"*South Los Angeles Security Instrument*" means each deed of trust, mortgage, assignment of leases and rents, security agreement and fixture filing executed by South Los Angeles Borrower, in favor of the Trustee for the benefit of Lender concerning the South Los Angeles Property.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3    Terms Generally; References and Titles.  References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided. All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument. Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation". Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person. Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations. References to any statute or act, without additional reference, refer to federal statutes and acts of the United States. References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4    Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1    Assignment.  For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent. Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents. Trustor shall hold the Rents, or a

6

portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper. It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2    Application of Rent.

(a)    Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee). Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan. Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)    After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing. Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)    Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness. The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)    Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)    As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective. Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)    Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3    No Third Party Beneficiary. The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4    Release and Termination. The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1    Intentionally Omitted.

3.2    Approval. Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3    Terms. Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's

7

leasehold interest to Lender's liens and security interests. Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4     Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)          are with Tenants who are not affiliated with Trustor;

(b)          do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)          do not afford Tenants any termination rights;

(d)          are an arm's length transaction on economic terms conforming to current market conditions;

(e)          have a market rental rate; and

(f)          do not contain any rights of first refusal or options to purchase.

## ARTICLE IV.
### Remedies

4.1     Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3     Receiver.  In addition to all other remedies in the Loan Documents, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the Loan Documents, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in

connection with a receivership will be Additional Costs. This *Section* is an express condition upon which the Loan is made.

4.4     Proceeds of Sale. The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

**FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5     Lender as Purchaser. Lender may purchase the Property at any foreclosure sale. In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code. During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC. In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the Loan Documents or to take possession of, hold or prepare the Collateral for transfer.

4.7     Delivery of Possession After Foreclosure. Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee. Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental. If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1     Successor Trustee. Lender may remove Trustee, or Trustee may resign, at any time with or without cause. If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee. Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date. Lender may appoint a single or multiple substitute trustees to act instead of the original trustee. If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees. Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the

9

successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds. Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

     5.2    <u>Authorization to File Financing Statement</u>.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

     5.3    <u>Fixture Filing</u>.  This Security Instrument is a financing statement filed as a fixture filing.  For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

     5.4    <u>Dealing with Successor</u>.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the Loan Documents or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the Loan Documents or as Lender hereafter agrees in writing.

     5.5    <u>Subrogation</u>.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the Loan Documents will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

     5.6    <u>Application of Indebtedness</u>.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

     5.7    <u>Agents</u>.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

     5.8    <u>Transfer Recitals</u>.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

     5.9    <u>Notices</u>.  Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email.  All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

To Lender:         Archway Real Estate Income Fund I SPE I, LLC
                   1875 Century Park East. Suite #900
                   Los Angeles, CA 90067
                   Attention: Joshua Kohan
                   Phone: (310) 893-5277

Email: joshua@archwayfund.com

with a copy to:   Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

To Trustor:   c/o David Halevy
257 S. Linden Drive
Beverly Hills CA 90212
Phone: (310) 666-2885
Email: danhalevy@gmail.com

with a copy to   Locke Lord LLP
300 S. Grand Ave., Suite 2600
Los Angeles, CA 90071
Attention: David S. Kupetz
Phone: (213) 687-6774
Email: David.Kupetz@lockelord.com

Trustee:   Fidelity National Title
555 S. Flower Street, Suite 4420
Los Angeles, CA 90071
Attention: JB Jennings
Phone: (213) 452-7100
Email: JB.Jennings@fnf.com

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
## Concerning the Trustee

6.1  Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

11

6.2    <u>Substitute Trustee</u>. Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof. Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded. Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise. Trustor agrees to the foregoing for itself, its successors and assigns.

6.3    <u>Power of Sale</u>.

(a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located. Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)    At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the Note and other secured indebtedness is paid in full. If the Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)    In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)    In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4    <u>Acceptance by Trustee</u>.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5    <u>Acts of Trustee</u>.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6    <u>No Liability of Trustee</u>.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the Loan Documents), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7    <u>Trustee Powers</u>.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8    <u>Priority</u>.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     Ratification. Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

## ARTICLE VII.
## State Law Provisions

7.1     Conflicts. This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other Loan Documents.

7.2     Full Reconveyance. Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     Dwellings. No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed. No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     Civil Code. Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     Indemnity; Expenses. Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument. The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property. Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     Supplemental Environmental Provisions. In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other

amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     Foreclosure By Power of Sale.

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)     Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law. Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)     Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8     Separate Sales. The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do. A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9     Release of and Resort to Collateral. Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior lien and security interest in and to the Property. For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10     Waiver of Redemption, Notice and Marshalling of Assets. To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Loan Documents, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11     Discontinuance of Proceedings. If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor

and Lender shall be restored to their former positions with respect to the Indebtedness, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

7.12    No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the Loan Documents, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any

16

superior officer of the corporation. Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law. Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16    Perfection of Appointment. Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17    Succession Instruments. Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    No Representation by Trustee or Lender. By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

7.19    Border Zone. To Trustor's knowledge, Trustor represents to Lender that, as of the date hereof, the Property has not been designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property to be designated as Border Zone Property.

ARTICLE VIII.
**Cross Default And Cross Collateralization.**

8.1    737 S Broadway. In addition to the obligations herein, Trustor shall also be subject to the payment and performance of all obligations secured by:

(a)    The 737 S Broadway Security Instrument made by 737 S Broadway Borrower made in connection the 737 S Broadway Loan, which 737 S Broadway Security Instrument secures a lien on the 737 S Broadway Property;

(b)    In addition to the obligations secured by the 737 S Broadway Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)    An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under 737 S Broadway Security Instrument and the 737 S Broadway Loan.

(d)    An Event of Default under the 737 S Broadway the Security Instrument or the 737 S Broadway Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)    Trustor waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the 737 S Broadway Security Instrument or the exercise of Trustor's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the 737 S Broadway Loan and Collateral described in the 737 S Broadway Security Instrument or herein.

8.2    South Los Angeles.  In addition to the obligations herein, Trustor shall also be subject to the payment and performance of all obligations secured by:

(a)    The South Los Angeles Security Instrument made by South Los Angeles Borrower made in connection the South Los Angeles Loan, which South Los Angeles Security Instrument secures a lien on the South Los Angeles Property;

(b)    In addition to the obligations secured by the South Los Angeles Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)    An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under South Los Angeles Security Instrument and the South Los Angeles Loan.

(d)    An Event of Default under the South Los Angeles the Security Instrument or the South Los Angeles Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)    Trustor waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the South Los Angeles Security Instrument or the exercise of Trustor's rights and remedies hereunder.  Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate.  Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the South Los Angeles Loan and Collateral described in the South Los Angeles Security Instrument or herein.

8.3    Foxdale.  In addition to the obligations herein, Trustor shall also be subject to the payment and performance of all obligations secured by:

(a)    The Foxdale Security Instrument made by Foxdale Borrower made in connection the Foxdale Loan, which Foxdale Security Instrument secures a lien on the Foxdale Property;

(b)    In addition to the obligations secured by the Foxdale Security Instrument shall also secure the payment and performance of all obligations secured by this Loan.

(c)    An Event of Default under the Note, the Security Instrument or any of the other Loan Documents shall constitute an Event of Default under Foxdale Security Instrument and the Foxdale Loan.

(d)    An Event of Default under the Foxdale the Security Instrument or the Foxdale Loan shall constitute an Event of Default under this Security Instrument and the Loan.

(e)    Trustor waives all rights to have all or part of the Collateral described herein and the Land marshalled upon any foreclosure of the Foxdale Security Instrument or the exercise of Trustor's rights and remedies hereunder. Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of the Land and Collateral described in either or both of said security instruments as a whole or in separate parcels, in any order that Lender may designate. Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the Foxdale Loan and Collateral described in the Foxdale Security Instrument or herein.

8.4    _Payoff_. Notwithstanding anything to the contrary contained herein, Trustor shall not pay off the this Loan while the 737 S Broadway Loan, the Greenfield PH Loan or the Foxdale Loan remain outstanding.

ARTICLE IX.
**Additional Security**

9.1    _Additional Security – Obligations Secured by Additional Mortgages_. In addition to the obligations secured by this Security Instrument and described as obligations herein, this Security Instrument shall also secure the payment and performance of all obligations secured by that certain Deeds of Trust, Security Agreement and Fixture Filing made by Borrower, as Borrower, for the benefit of Lender, its successors and assigns forever, as beneficiary, dated as of the date hereof (collectively ,the "**_Additional Security Instrument_**") with respect to the properties more commonly known as the addresses set forth on the Property Schedule attached as Exhibit B under "**_Additional Properties_**."

9.2    _Secured Payment and Performance_. In addition to the obligations secured by the Additional Security Instrument, the Additional Security Instrument shall also secure the payment and performance of all obligations secured by this Security Instrument.

9.3    _Cross Default_. An Event of Default under any of the Additional Security Instrument, as defined therein, shall, at Lender's option, constitute an Event of Default under this Security Instrument. An Event of Default under this Security Instrument shall, at Lender's option, constitute an Event of Default under the Additional Security Instrument.

9.4    _Waiver of Marshalling_. Trustor waives all rights to have all or part of the Property described in this Security Instrument and/or the Additional Security Instrument marshalled upon any foreclosure of this Security Instrument or any foreclosure of the Additional Security Instrument. Lender shall have the right to sell, and any court in which foreclosure proceedings may be brought shall have the right to order a sale of, the Property described in any of said Additional Security Instruments as a whole or in separate parcels, in any order that Lender may designate. Trustor makes this waiver for itself, for all persons and entities claiming through or under Trustor and for persons and entities who may acquire a lien or security interest on all or any part of the Property described in either of said Additional Security Instrument, or on any interest therein.

9.5    _Additional Representations and Warranties of Trustor_.

(a)     Trustor represents and warrants that the lien of the Additional Security Instrument is a first lien on each of the properties described therein and covered thereby and that the provisions of this Security Instrument will not cause intervening liens to become prior to the lien of any of the Additional Security Instrument. If any intervening lien exists or hereafter arises, Trustor shall cause the same to be released or subordinated to the lien of the Additional Security Instrument, without limiting any other right or remedy available to Lender.

(b)     Trustor further warrants that Trustor has no legal or equitable claim against any Trustor named in the Additional Security Instrument which would be prior to the lien of the Additional Security Instrument, or which would entitle Trustor to a judgment entitling Trustor to an equitable lien on all or any portion of that property prior in lien to the Additional Security Instrument.

(c)     Except as supplemented and/or modified by this Security Instrument, all of the terms, covenants and conditions of the Additional Security Instrument and the other loan documents executed in connection therewith shall remain in full force and effect.

(d)     Trustor and Lender acknowledge and agree that: this Security Instrument shall constitute a lien or charge upon only that property described herein as the "*Property*;" and the Additional Security Instrument shall constitute liens or charges upon only that property described therein as the "*Property*."

9.6     <u>Release</u>. This Security Instrument shall not be released until all the entire Loan in paid in full.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

20

Greenfield PH (Palm Drive)– Security Instrument

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

_____

**DAVID HALEVY, Trustee of
the Halevy Family Trust dated September 8, 2010,
by Daniel Halevy as his attorney in fact**

_____

**SUE HALEVY, Trustee of
the Halevy Family Trust dated September 8, 2010**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *LOS ANGELES*

On *APRIL 17*_____, 20*23*, before me, *ALAN KABAKER*_____ (a notary public), personally appeared _*DANIEL H/H LEVY*_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF *LOS ANGELES*

On *APRIL 17*_____, 20*23*, before me, *ALAN KABAKER*_____ (a notary public), personally appeared _*SUE H/H LEVY*_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ALAN KABAKER
COMM. # 2307449
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. OCT. 28, 2023

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

# EXHIBIT A

LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 1118 TRACT 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXHIBIT A
TO
SECURITY INSTRUMENT

## EXHIBIT B

## PROPERTY

133 South Palm Dr, Apt 0005, Beverly Hills, CA 90212

## ADDITIONAL PROPERTIES

3538 Greenfield Avenue, Los Angeles, CA,

8561 Horner Street, Los Angeles, CA 90035

EXHIBIT B
TO
SECURITY INSTRUMENT



**This page is part of your document - DO NOT DISCARD**





# 20230259825

**Pages:**
**0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/24/23 AT 08:00AM**

|  |  |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 29.00 |



**L E A D S H E E T**



202304240110008

00023380272



014033488

**SEQ:**
**02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

30097266C-D2

E442318

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME _THOMPSON COBURN LLP_

STREET ADDRESS
_10100 SANTA MONICA BLVD., #500_

CITY, STATE &
ZIP CODE
_LOS ANGELES, CA 90067_

30097266C-D2

SPACE ABOVE FOR RECORDER'S USE ONLY

UCC - FINANCING STATEMENT

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME _THOMPSON COBURN LLP_

STREET ADDRESS
_10100 SANTA MONICA BLVD., #500_

CITY, STATE &
ZIP CODE
_LOS ANGELES, CA 90067_

_30097266C-D2_

**SPACE ABOVE FOR RECORDER'S USE ONLY**

_UCC - FINANCING STATEMENT_

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225.00 reached.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Joshua Mogin  (310) 282-2520

**B. E-MAIL CONTACT AT FILER (optional)**
jmogin@thompsoncoburn.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Joshua Mogin
Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| DAVID HALEVY and SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010 | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| c/o David Halevy, 257 S. Linden Drive | Beverly Hills | CA | 90212 | | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ALAN GOMPERTS, and SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| c/o Alan Gomperts, 264 S. Oakhurst Drive | Beverly Hills | CA | 90212 | | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Archway Real Estate Income Fund I SPE I, LLC | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 1875 Century Park East, Suite #900 | Los Angeles | CA | 90067 | | USA |

4. COLLATERAL: This financing statement covers the following collateral:
See Schedule I attached.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Los Angeles County, California

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

---

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| | 9a. ORGANIZATION'S NAME |
| | DAVID HALEVY and SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010 |
| OR | 9b. INDIVIDUAL'S SURNAME |
| | FIRST PERSONAL NAME |
| | ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

10. DEBTOR'S NAME: Provide (10a or 10b) only **one** additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | |
|---|---|
| | 10a. ORGANIZATION'S NAME |
| OR | 10b. INDIVIDUAL'S SURNAME |
| | **HALEVY** |
| | INDIVIDUAL'S FIRST PERSONAL NAME |
| | **DANIEL** |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o David Halevy, 257 S. Linden Drive | Beverly Hills | CA | 90212 | USA |

---

11. ☐ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only **one** name (11a or 11b)

| | | | |
|---|---|---|---|
| | 11a. ORGANIZATION'S NAME | | |
| OR | 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) — SUFFIX |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

---

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

---

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

**See Exhibit A attached.**

---

17. MISCELLANEOUS:
**Los Angeles County, California**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

**FINANCING STATEMENT**
**SCHEDULE I**

This financing statement covers the following types (or items) of property (the "*Collateral Property*"):

1)      **Land**. All of Debtor's right, title and interest in and to the Land.

2)      **Additional Land**. All of Debtor's right, title and interest in and to the Additional Land.

3)      **Improvements**. All of Debtor's right, title and interest in and to the Improvements.

4)      **Easements**. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Debtor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

5)      **Equipment**. All right, title and interest in and to the Equipment and the right, title and interest of Debtor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument. In connection with Equipment which is leased to Debtor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Debtor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

6)      **Awards**. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

7)      **Leases**. All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of

1

creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

8) **Insurance Proceeds**. All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

9) **Tax Awards**. All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

10) **Right to Appear**. The right, in the name of and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Debtor from any source whatsoever.

11) **Accounts**. All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Debtor now has or may hereafter acquire in the Real Property or any part thereof.

12) **Indemnification**. All rights which Debtor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

13) **Plans**. All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

14) **Proceeds**. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Capitalized terms not defined herein are as defined in Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed by Debtor in favor of Secured Party.

2

Schedule I to UCC

## EXHIBIT A

### Legal Description of Land

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 1118 TRACT 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.