Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| In re | Lead Case No. 2:24-bk-12079-VZ |
|---|---|
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |
| Debtors and Debtors-in-Possession. | 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ |
| Affects: | Chapter 11 |
| ☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☒ Broadway Avenue Investments, LLC<br>☐ SLA Investments, LLC<br>☐ Negev Investments, LLC<br>☐ Alan Gomperts<br>☐ Daniel Halevy<br>☐ Susan Halevy | **REPLY IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:   October 29, 2024<br>Time:  10:30 a.m.<br>Crtrm.: 1368<br>           255 E. Temple Street<br>           Los Angeles, CA 90012<br><br>Hon. Vincent P. Zurzolo |

TABLE OF CONTENTS

Page

I. Introduction ................................................................................................................... 4

II. Discussion ..................................................................................................................... 5

    A. The Court did not extend the 90-day SARE deadline—explicitly or implicitly. ............................................................................................................... 5

    B. The Court should terminate the stay under § 362(d)(3). ............................................ 7

    C. Broadway cannot prove that a successful reorganization within a reasonable time is "assured." ......................................................................................................... 8

    D. The DIP loan's priming feature is impermissible. ..................................................... 9

    E. Broadway cannot show that that its proposed "visionary plan" is feasible .............. 11

    F. Broadway cannot demonstrate that the amended plan is being proposed in good faith. ................................................................................................................. 12

    G. The Court should terminate the stay for "cause" under § 362(d)(1). ....................... 13

III. Conclusion ................................................................................................................... 14

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

2
REPLY IN SUPPORT OF ARCHWAY'S MOTION FOR RELIEF FROM STAY

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Heather Apartments Ltd. P'ship*,
  366 B.R. 45 (Bankr. D. Minn. 2007) ............................................................................. 5

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
  761 F.2d 1374 (9th Cir. 1985) ..................................................................................... 11

*In re RYYZ, LLC*,
  490 B.R. 29 (Bankr. E.D.N.Y. 2013) ........................................................................ 7, 8

*In re Sun Valley Newspapers, Inc.*,
  171 B.R. 71 (B.A.P. 9th Cir. 1994) ............................................................................... 8

*United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd.*,
  484 U.S. 365 (1988) .................................................................................................... 13

**State Cases**

*Berg & Berg Enterprises, LLC v. Boyle*,
  178 Cal. App. 4th 1020 (2009) ................................................................................... 12

**Federal Statutes**

11 U.S.C. § 361 ................................................................................................................. 13

11 U.S.C. § 362(d)(1) ................................................................................................. 13, 14

11 U.S.C. § 362(d)(2) ............................................................................................. 8, 9, 10

11 U.S.C. § 362(d)(3) ................................................................................................ 5, 7, 8

11 U.S.C. § 362(g)(2) ........................................................................................................ 8

11 U.S.C. § 1127(a) ........................................................................................................... 8

**Rules**

Fed. R. Bankr. P. 4001(a)(3) ............................................................................................ 14

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 362.07[3][a] ................................................................... 13

Secured creditor, Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC ("Archway"), submits this Reply in support of its *Motion for Relief From Automatic Stay* ("Motion") (Dkt. 213) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

## I.    Introduction

Over **200 days** have elapsed, and there is still no effective reorganization in prospect.

The Joint Plan is patently-unconfirmable.

It was filed late—after the 90-day SARE deadline.

Exclusivity has elapsed.

None of these deadlines were extended.

No amended plan has been filed.

No payments have been made to Archway since well before last December. There is no certificate of occupancy for the Broadway Property. There are no financials for the purportedly "creditworthy" tenants.

There is no evidence to showing that a successful reorganization within a reasonable time is possible, much less *assured* as required.

Instead of complying with his fiduciary duties and making a mandatory cash call on Broadway's members—tapping into their some **$60 million in net worths**—Mr. Gomperts on behalf of Broadway is proposing an apparent amended "visionary plan" that is contingent on a DIP loan that seeks to **prime Archway** with no showing of adequate protection, effectively shifting all risk of failure on Archway.

The Court should grant relief from stay.

## II. Discussion

Broadway did not address all of Archway's arguments in its Motion. But, as to the arguments it did address, Archway provides the following analysis. As analyzed below, the Court should reject the Opposition's arguments and grant the relief sought in the Motion in full.

### A. The Court did not extend the 90-day SARE deadline—explicitly or implicitly.

Section 362(d)(3) requires relief from stay when, in pertinent part, 90 days have elapsed from the order for relief and the debtor has not started paying contract rate interest or filed a plan that has a reasonable possibility of being confirmed. The Court may extend this 90-day SARE deadline "*for cause* by order entered within that 90-day period." 11 U.S.C. § 362(d)(3) (emphasis added). The burden of establishing "cause" is on the party seeking to extend the deadline. *See In re Heather Apartments Ltd. P'ship*, 366 B.R. 45, 50 (Bankr. D. Minn. 2007). "Cause" is not defined in the Bankruptcy Code. "[C]ourts should measure the existence of cause … by referring to the purpose of [§ 362(d)(3)]." *Id.* at 47. The purpose of the 90-day SARE deadline was to prevent unfair delay in SARE cases, to expedite meritorious reorganizations, and to compensate the mortgagee for the time-value of its investment. *See id.* at 49–50 (citations omitted). Accordingly, the party seeking to extend the deadline must present evidence of "something extraordinary in the circumstances, something that tips the equities of a case outside the balance that Congress envisioned and then reinforced by establishing the [90-day SARE deadline]." *Id.* at 47–48.

Here, nobody—not Broadway, the Debtors, or anyone else—has ever filed any type of a motion or made any explicit request to extend the SARE deadline. Nobody has attempted to provide evidence of, or demonstrate, "cause" to extend the SARE deadline. The Court has never made any finding of "cause" nor has the Court explicitly or implicitly extended the SARE deadline.

But Broadway now claims that the Court—**implicitly, sua sponte, and without any evidence of "cause"**—extended the SARE deadline when it entered its *Order After Initial Status Conference in Chapter 11 Case* ("Scheduling Order") (Dkt. 83). Broadway explains that because

the Court set a December 11, 2024, disclosure statement hearing, it also must have also intended to extend the SARE deadline to 42 days before that date.

This is incorrect for several reasons.

First, the Scheduling Order does not extend the SARE deadline—explicitly or implicitly. It does not even mention the SARE deadline (or any plan filing deadline). The Scheduling Order merely sets a disclosure statement hearing, along with other dates. Contrary to Broadway's contention, the Scheduling Order did not set an October 31, 2024, plan filing deadline. *Compare* Opposition at 4:6–8 ("The Order…set the Joint Debtor's deadline to file a plan and disclosure statement on October 31, 2024….") *with* Scheduling Order (reflecting no plan or disclosure statement filing deadline). Broadway is assuming the Court set an October 31, 2024, plan deadline because that is about 42 days before the disclosure statement hearing. But that assumption is unfounded, as shown by the transcript of the May 9, 2024, status conference ("Transcript"). *See, generally*, Declaration of Gerrick M. Warrington at Exh. 25.

In advance of the status conference, the Debtors filed a Status Report (Dkt. 48). In the Status Report, the Debtors acknowledged that they intended to comply with the SARE deadline. *See* Status Report at 9:5–6 ("The Debtors estimate the filing of their Joint Plan and Disclosure Statement, and Motion for Order Determining Adequacy of Disclosure Statement *by June 18, 2024*.") (emphasis added). At the status conference, the Debtors' counsel confirmed that there was nothing to change or add to the Status Report. *See* Transcript at 6:25–7:3.

Each time the SARE deadline was mentioned, the Court made it quite clear that the Debtors must comply with the statute. *See* Transcript at 12:18–13:2 (Debtors' Counsel: "we have a July -- not July 16th, but we have a fairly near-term deadline to file a plan and disclosure … statement …" Court: "You can take that up with Congress because the way they wrote the statute..." Debtors' Counsel: "Okay." Court: "and you will -- and I'm sure you will comply with the statute which tells you to file a plan…" Debtors' Counsel: "Understood.").

When the Court set a disclosure statement hearing after the claim objection hearing deadline, the Debtors' counsel requested that the claim objection hearing deadline be "without prejudice to … requests for extension if needs arise …." Transcript at 14:1–2. The Court

1  responded, again being very clear, stating that "*all deadlines*, except the ones that the Code and

2  the rules say you can't change, … *if there's cause*, then you bring a motion or a stipulation to

3  extend the deadline" (Transcript at 14:7–11 (emphasis added)).

4      After the status conference, the Court entered the Scheduling Order, setting a December

5  11, 2024, disclosure statement hearing.

6      Later, the 90-day SARE deadline expired without being extended. No plan was filed by

7  that deadline. No showing of "cause" to extend the SARE deadline has ever been attempted. No

8  written or oral motion or stipulation was ever made to extend the SARE deadline. No notice or

9  opportunity to be heard on the issue of "cause" has ever been given. Not at the status conference

10 or at any time up to and including the present time. The Court certainly did not sua sponte and/or

11 implicitly grant an extension of the 90-day SARE deadline at the status conference or in the

12 Scheduling Order. Accordingly, the Debtors, including Broadway, have failed to extend the SARE

13 deadline, and that deadline has now expired.

14     Accordingly, the Court should reject Broadway's argument that the Court extended the

15 SARE deadline. No plan was filed during the SARE deadline, and as discussed below, the plan

16 that was eventually filed is patently unconfirmable.

17     **B.**    **The Court should terminate the stay under § 362(d)(3).**

18     The Debtors do not dispute that Broadway is a SARE debtor within the meaning of

19 § 101(51B). Nor do they dispute that no payments have been made to Archway or any other

20 lienholders on the Broadway Property.

21     As for the defective and late-filed Joint Plan, it is patently unconfirmable. The Debtors

22 make no effort to defend it. In fact, they acknowledge that it is "an early outline" (Opposition at

23 2:15), "a preliminary plan …," which the Debtors filed "with the idea of previewing to their

24 creditors their intent to restructure, to facilitate negotiation and the ultimate proposal of a

25 consensual plan" (Opposition 4:15–17). They admit that they "never intended [it] to be a plan to

26 be voted upon and proposed for confirmation." Opposition at 6:1–2.

27     Instead, the Debtors claim they are "currently finalizing" another plan—a "visionary

28 plan"—which they intend to file by October 31, 2024, after the hearing on the Motion. Opposition

at 6:4; 3:1. But SARE debtors are not allowed to circumvent § 362(d)(3) by filing a token plan and then amending it after the fact. Such a loophole would nullify the text and purpose of the SARE statutes. *See In re RYYZ, LLC*, 490 B.R. 29, 38 (Bankr. E.D.N.Y. 2013) ("To be sure, a debtor may not file a token plan within the 90–day period and then defend a lift stay motion by arguing that its late-filed amended plan can be confirmed. While 11 U.S.C. § 1127(a) allows a debtor to file an amended plan, this general provision cannot be used as an end-run around the more specific language in Section 362(d)(3)."). Instead, the Debtors must demonstrate that the Joint Plan that they actually filed—not some *other* plan—has a reasonable possibility of being confirmed within a reasonable time. *See id.* at 37 ("Section 362(d)(3)(A) requires a debtor to show its hand 30 days *before* the expiration of the exclusivity period, and *that plan* must have a reasonable possibility of being confirmed within a reasonable time.").

Well over **200 days** have elapsed from Broadway's petition date. No plan was filed during the 90-day SARE deadline. Exclusivity elapsed back in July. None of these deadlines were extended. And yet, nothing other than a token and patently-unconfirmable plan is on file. The Debtors will be unable to prove any *timely* reorganization is in prospect.

All of the elements for stay relief under § 362(d)(3) have been met. The Court should, for the reasons herein and as stated in the Motion and accompanying filings, terminate the stay under § 362(d)(3).

### C. Broadway cannot prove that a successful reorganization within a reasonable time is "assured."

Broadway admits that there is no equity in the Property. *See* Opposition at 5:26–27. Accordingly, Archway is entitled to relief from stay under § 362(d)(2) unless Broadway can prove that there is "a reasonable possibility of a successful reorganization within a *reasonable time*." *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 376 (1988)). *See also* 11 U.S.C. § 362(g)(2).

Although a relief from stay hearing should not be converted into a confirmation hearing, the debtor must show that "a proposed or contemplated plan is not patently unconfirmable and has

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

a realistic chance of being confirmed." *Sun Valley Newspapers*, 171 B.R. at 75 (citation omitted). The burden is a "moving target" that gets more difficult to prove as the bankruptcy case progresses. *Id.* (citation omitted). "After the expiration of the exclusivity period, the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is **assured**." *Id.* (citation and internal quotation marks omitted) (emphasis added).

Here, exclusivity has expired. Therefore, Broadway has an extremely high burden to show that a successful reorganization within a reasonable time is "assured." But the Joint Plan, which was filed late and is defective, is patently unconfirmable and has no chance of being confirmed. And Broadway's amended plan has not been filed and, as described, is also patently-unconfirmable, as discussed herein.

Broadway claims that its amended plan will be "based on a 15-year lease with options to extend that is contingent only upon this Court's approval of a $4 million DIP loan that does not seek to prime any secured creditor." Opposition at 6:6–8. Per Broadway, "With the Lease and DIP Loan in place, there is a reasonable possibility of a successful reorganization within a reasonable time." Opposition at 6:10–12. In support, Broadway presents two documents—a term sheet ("Term Sheet") and a Lease Agreement ("Lease"). But no motion to approve DIP financing has been filed. No DIP credit agreement is provided. No motion to approve the Lease has been filed. The Lease purports to be guarantied, but the guaranty is not signed and the purported guarantor, Levav Group, LLC, is also listed as a Lessee. *Compare* Dkt. 220 at 64 (listing Levav as guarantor) *with* Dkt. 220 at 17 (listing Levav as Lessee). A lessee's guaranty of *its own* obligations under a lease is illusory. No information, financials, or other admissible evidence is provided to establish the purported "creditworthiness" of the proposed lessees (or Lease "guarantor" for that matter).

In short, the evidence provided by Broadway is insufficient to meet its burden to prove that a successful reorganization within a reasonable time is assured.

**D.    The DIP loan's priming feature is impermissible.**

A court may authorizing a priming lien only if (a) the debtor-in-possession is unable to obtain such credit otherwise and (b) there is adequate protection to existing lienholders to-be-

1  primed. The debtor-in-possession has the burden of proof on the issue of adequate protection. *See*

2  11 U.S.C. § 364(d)(2).

3        Here, Broadway asserts that the DIP loan "does not seek to prime any secured creditor."

4  Opposition at 6:8. But, per the Term Sheet, the proposed DIP loan ***does*** *seek to prime* Archway's

5  first-position security interests in general intangibles.

6        The Term Sheet states that Broadway is granting the DIP Lender a "Priority Lien" on

7  (a) grant money for tenant improvements to the Property from the City of Los Angeles to

8  Broadway, and (b) revenue generated by Broadway from operation of in/out-patient behavioral

9  health therapy programs conducted on the Property. But Archway already holds first-position

10 perfected liens on all such general intangibles, including proceeds thereof. *See* Broadway Deed of

11 Trust at 2 (reflecting Broadway's grant to Archway of, among other things, "All … accounts

12 receivable, … intangibles, contract rights, … both in law and in equity, which [Broadway] now

13 has or may hereafter acquire in the Real Property or any part thereof); Broadway Deed of Trust at

14 3 ("All … contracts, subcontracts, service contracts, management contracts, … and other

15 agreements, … approvals, consents, permits, special permits, licenses and rights, whether

16 governmental or otherwise, respecting the use, occupation, development, construction and/or

17 operation of the Real Property or any part thereof or the activities conducted thereon or therein, or

18 otherwise pertaining to the Real Property or any part thereof."); Broadway Deed of Trust at 3

19 ("All proceeds, products, offspring, rents and profits from any of the foregoing, including, without

20 limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or

21 replacement of any of the foregoing…").

22       Archway perfected its interests in such collateral and proceeds by filing UCC-1 financing

23 statement on July 29, 2021, with the California Secretary of State, which filing was assigned filing

24 number U210071454128. *See* Supplemental Request for Judicial Notice, Exh. 24 (tracking the

25 same language in the Broadway Deed of Trust, Suppl. Khorshidi Decl., Dkt. 213-3, Exh. 2).

26       Broadway apparently assumed Archway did not have a perfected security interest in these

27 general intangibles and proceeds. And it has made no effort to meet its burden under § 364(d)(2)

28 to show that Archway is adequately protected in spite of such priming.

1  Broadway does not contest valuation, which reflects that Archway is significantly under-secured on the Broadway Loan. *See* Opposition at 5:26–27. Broadway has not paid anything to Archway since well before December of last year, and it admits that "the Property is vacant" (Gomperts Declaration at 9:3), not generating any income, and that "Taxes have not been paid" (Gomperts Declaration at 9:1). This all tends to show that Archway's petition-date collateral position is being **further eroded**—before the proposed priming lien is even taken into consideration.

Accordingly, the amended plan, which has not yet been filed and which hinges on a defective DIP loan with an improper priming lien component is patently-unconfirmable.

### E.  Broadway cannot show that that its proposed "visionary plan" is feasible.

The purpose of the feasibility requirement "is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (citation omitted).

Here, Broadway points to its "visionary plan," which is not in the record. Broadway contends that "The Lease is backed by a creditworthy tenant and projects plan payments to Archway that are both fair and feasible." Opposition at 6:8–9. The Declaration of Alan Gomperts repeats this phrase. *See* Gomperts Declaration at 9:10–11 ("The Lease is backed by a creditworthy tenant and projects plan payments to Archway that are fair and feasible.").

But Broadway provides no evidence to support or substantiate these statements. No financials or other evidence showing the purported "creditworthiness" of the proposed tenant or Lease "guarantor" are provided. No amended plan is provided. No plan projections are provided. There is no way to determine whether the proposed amended plan payments are fair and equitable or whether they provide the present value of Archway's secured claim. There is no evidence showing the likelihood that Broadway will receive requisite permitting, a certificate of occupancy, and/or grant funding from the City or projections as to when that might happen. There is no showing as to the timing or possibility of obtaining a certificate of occupancy. The only means of implementation is apparently proposed DIP loan, but there is no evidence that shows the

likelihood that the DIP loan will be approved. There is no evidence of the necessary adequate protection of Archway's perfected interests which are proposed to be primed by the DIP loan. This is critical because the entire amended plan appears contingent upon a DIP loan that contains an impermissible priming feature.

Accordingly, Broadway has not met its burden to show that the amended plan is feasible.

### F. Broadway cannot demonstrate that the amended plan is being proposed in good faith.

Broadway does not contest the fact that Mr. Gomperts did not make a mandatory capital call on Broadway's members at a time when Broadway was insolvent. Instead, Broadway asserts that "Archway has no basis for turning a contractual obligation between members to an operating agreement into a fiduciary duty to creditors that requires a limited liability company to obtain additional equity to pay creditor claims should the company become insolvent." Opposition at 5:10–13.

But under California's Trust Fund Doctrine, directors and officers of an insolvent corporation owe certain fiduciary duties to creditors of the corporation. *See Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1040–41 (2009). And here, it is undisputed that Mr. Gomperts was an officer of Broadway and a guarantor of the Broadway Loan from Archway in September of 2023 when he began transferring properties from his self-settled revocable trust, the G&H Trust, to the Gomperts-LLCs. Two months later, the Broadway Loan matured, and a few months later, the Debtors filed bankruptcy petitions. None of this appears to be disputed. And yet, Mr. Gomperts has not disclosed these transfers on his schedules or Statement of Financial Affairs. Mr. Gomperts's fiduciary duties to Archway under the Trust Fund Doctrine are continuing and ongoing. If Broadway will not raise these breaches of fiduciary duty, someone else can. Mr. Gomperts's failure to make a mandatory capital call is exacerbated by the combined $60 million in net worths that Broadway's members—which include Mr. Gomperts, Ms. Halevy, and Mr. Halevy—disclosed to Archway just prior to Mr. Gomperts transferring his self-settled trust's properties to the Gomperts-LLCs.

These facts are not being disputed by Broadway, and they impact directly on

§ 1129(a)(3)'s good faith requirement. Strikingly, Mr. Gomperts is the would-be-proposed-post-confirmation fiduciary—a disbursing agent under the Joint Plan. *See* Joint Plan at § III.E. (Because the amended plan has not been filed and its details are not available, it is unclear whether it will propose to appoint Mr. Gomperts as a post-confirmation fiduciary to the estates.)

As for Ms. Halevy, the Opposition does not deny that she transferred the Canon Drive Property to her a wholly-owned SPE just prior to the Archway loan maturing and then hypothecated it via a $1.3 million deed of trust. Instead, the Opposition explains that this "was done to obtain financing that was used to pay creditors at a time when Broadway was in compliance with its loan terms with Archway." Opposition at 5:14–16. But this ignores financial covenants in Archway's loan documents, not to mention the looming maturity. The Opposition also stops short of disclosing which creditors were paid with those proceeds, how much, when, what for, etc. It also does not explain whether the transfer was made as a "gift" or for reasonable equivalent value or whether the amended plan intends to avoid and recover this transfer for the benefit of the estate.

These breaches of fiduciary duties and fraudulent transfers are against the backdrop of Mr. Gomperts, Ms. Halevy, and Mr. Halevy providing Archway with personal financial statements reflecting their combined **$60 million net worths** just about one month prior to these transfers occurring.

Instead of complying with fiduciary duties requiring Broadway's officers, like Mr. Gomperts, to make a mandatory cash call to tap into the **substantial unencumbered net worths** of its members, including Mr. Gomperts himself, Ms. Halevy, and Mr. Halevy, the Debtors are proposing an apparent amended plan that is contingent on a DIP loan that would **prime Archway** with no showing of adequate protection, effectively shifting all risk of failure on Archway.

That cannot be a good faith plan.

G. **The Court should terminate the stay for "cause" under § 362(d)(1).**

Archway is entitled to adequate protection with regard to any diminution of its petition date collateral position occasioned by the automatic stay. *See* 11 U.S.C. § 361; *Timbers*, 484 U.S.

at 378–79. Lack of adequate protection constitutes "cause" for relief from stay under 11 U.S.C. § 362(d)(1). Bad faith also constitutes "cause" for relief from stay under § 362(d)(1). *See* 3 COLLIER ON BANKRUPTCY ¶ 362.07[3][a] (Richard Levin & Henry J. Sommer, eds., 16th Ed.) (citations omitted).

Here, although Broadway states that the Property is being maintained, it provides no other admissible evidence that tends to meet its burden to prove that Archway is adequately protected. In fact, it admits that *ad valorem* property taxes are not being paid. These taxes have continued to accrue and to degrade Archway's petition date collateral position.

In addition to the issues already addressed above, the inability to file a timely plan within the 90-day SARE period or to file a plan that has any realistic possibility of being confirmed constitutes further "cause" for relief from stay.

Accordingly, the Court should terminate the stay under § 362(d)(1) for "cause" including lack of adequate protection.

### III. Conclusion

For these reasons, the Court should terminate the stay and waive the 14-day stay applicable under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

DATED: October 22, 2024

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
GERRICK M. WARRINGTON

By:     /s/ Gerrick M. Warrington
GERRICK M. WARRINGTON
Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

A true and correct copy of the foregoing document entitled (*specify*): REPLY IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY; DECLARATION OF GERRICK M. WARRINGTON IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY; REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY; EVIDENTIARY OBJECTIONS TO DECLARATION OF ALAN D. GOMPERTS IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 22, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Counsel to Party in Interest: Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- Counsel to Party in Interest: Jacquelyn H Choi    jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com
- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com, easter.santamaria@saul.com
- Counsel to Party in Interest: Robert F Conte    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Counsel to Individual Debtors: Ryan Coy    ryan.coy@saul.com, hannah.richmond@saul.com
- Counsel to Party in Interest: Christopher Cramer    secured@becket-lee.com
- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email
- Counsel to Archway: Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com
- Counsel to Party in Interest: Todd S. Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Counsel to Party in Interest: Richard Girgado    rgirgado@counsel.lacounty.gov
- Counsel to Party in Interest: Jacqueline L James    jjames@hrhlaw.com
- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Counsel to Party in Interest: Avi Edward Muhtar    amuhtar@crownandstonelaw.com
- Counsel to Archway: Bruce D Poltrock    bpoltrock@frandzel.com, achase@frandzel.com
- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com
- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Counsel to Archway: Gerrick Warrington    gwarrington@frandzel.com, achase@frandzel.com
- Counsel to Party in Interest: Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page.

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 22, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Overnight Delivery, Early Morning:**

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1360
255 E. Temple Street
Los Angeles, CA 90012-3332

**Email:**

**Counsel to Corporate Debtors:**
Derrick Talerico     dtalerico@wztslaw.com

**Counsel to Individual Debtors:**
Zev Shechtman     Zev.Shechtman@saul.com
Turner Falk     turner.falk@saul.com
Ryan Coy     ryan.coy@saul.com

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 22, 2024 | Annette Chase | /s/ Annette Chase |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

REPLY IN SUPPORT OF ARCHWAY'S MOTION FOR RELIEF FROM STAY