Michael Gerard Fletcher (State Bar No. 070849)
  mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
  gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:24-bk-12079-VZ |
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |
|     Debtors and Debtors-in-Possession. | 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ |
| Affects: | Chapter 11 |
| ☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☒ Broadway Avenue Investments, LLC<br>☐ SLA Investments, LLC<br>☐ Negev Investments, LLC<br>☐ Alan Gomperts<br>☐ Daniel Halevy<br>☐ Susan Halevy | **ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITION TO AMENDED MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE** |
| | Date:     November 19, 2024<br>Time:    11:00 a.m.<br>Crtrm.:  1368<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |
| | Hon. Vincent P. Zurzolo |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# TABLE OF CONTENTS

**Page**

I.    Introduction ...........................................................................................................5

II.   Background on Broadway's "Team." ...................................................................6

    A.    Mr. Bombola Recently Pilfered Assets from a Federal Receivership Estate............6

    B.    Schwarcz, the CEO of Proposed Tenant DMB, Also Has a Checkered Past.............9

    C.    The Levav Group LLC's Principal is Not Paying His Debts. ................................10

    D.    Honor Enterprise Funding LLC's Principal has Many Customer Grievances.........11

III.  Background on the Archway Loan and Mr. Gomperts's Fiduciary Duties. .........................11

    A.    Archway Makes a $17 Million Loan to Broadway. ...............................................11

    B.    Broadway and the Guarantors Default Under the Broadway Loan.........................12

    C.    The Parties Restructure the Broadway Loan. .......................................................13

    D.    Archway Makes Three New Loans as part of the Restructure................................13

    E.    Broadway's Members, including Mr. Gomperts, Ms. Halevy, and
       Mr. Halevy, Provide Verified Personal Financial Statements to Archway
       Reflecting Over $60 Million in Net Worths..........................................................13

    F.    The Archway Loan Obligations Mature.................................................................14

    G.    The Debtors file Chapter 11 Petitions. ................................................................14

    H.    The Corporate Debtors Self-Designate as "Single Asset Real Estate"
       Debtors.................................................................................................................14

    I.    Archway's files Proofs of Claim. .........................................................................14

    J.    Broadway Now Owes Archway Over $18 million. ................................................14

    K.    Mr. Gomperts is Required to Make a Capital Call on Broadway's Members. ........14

    L.    Broadway is, and Has Been, Insolvent..................................................................15

    M.    Mr. Gomperts Contemplated it, but Never Made the Mandatory Capital
       Call.......................................................................................................................15

    N.    Broadway's Members Disclose Multi-Million Dollar Net Worths on
       Schedules..............................................................................................................15

    O.    Archway Moves for Relief From Stay. ..................................................................15

IV.   Discussion ............................................................................................................16

A.  Broadway Has Not Disclosed Material Facts Concerning the Proposed Lease............................................................................................16

B.  The Lease Terms are Improper. ..........................................................18

C.  Broadway Has Not Met its Burden to Demonstrate Adequate Protection. ...............19

D.  Service of the Lease Motion is Defective. ...........................................20

E.  Notice of the Lease Motion is Also Defective. .....................................21

V.  Conclusion............................................................................................21

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

ARCHWAY'S OPPOSITION TO BROADWAY LEASE MOTION

**FRANDZEL ROBINS BLOOM & CSATO, L.C.**
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Page(s)**

**Federal Cases**

*In re AWTR Liquidation Inc.*,
    548 B.R. 300 (Bankr. C.D. Cal. 2016) .................................................. 16

*In re Baroni*,
    643 B.R. 253 (Bankr. C.D. Cal. 2022) .................................................. 20

*In re Ephedra Prod. Liab. Litig.*,
    329 B.R. 1 (S.D.N.Y. 2005) .................................................................. 20

*In re Wilde Horse Enters., Inc.*,
    136 B.R. 830 (Bankr. C.D. Cal. 1991) ................................................. 16

**State Cases**

*Berg & Berg Enterprises, LLC v. Boyle*,
    178 Cal. App. 4th 1020 (2009) ............................................................. 16

**Federal Statutes**

11 U.S.C. § 101(51B) ................................................................................. 14

11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(3) ............................................... 15

11 U.S.C. § 363(b)(1) ................................................................................. 16

11 U.S.C. § 363(e) ...................................................................................... 19

11 U.S.C. § 363(p)(1) ................................................................................. 19

**Rules**

Fed. R. Bankr. P. 2002(c)(1) ..................................................................... 21

Fed. R. Bankr. P. 4001(b)(1)(A) ............................................................... 20

Fed. R. Bankr. P. 6004(a) .......................................................................... 21

Fed. R. Bankr. P. 7004(b)(3) ..................................................................... 20

Fed. R. Bankr. P. 9014(b) .......................................................................... 20

Rule 7004 .................................................................................................... 20

Rule 7004(b) ............................................................................................... 20

Rule 9014 .................................................................................................... 20

ARCHWAY'S OPPOSITION TO BROADWAY LEASE MOTION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   Secured creditor, Archway Broadway Loan SPE, LLC, a Delaware limited liability

2   company, successor in interest to Archway Real Estate Income Fund I REIT, LLC ("Archway"),

3   submits this opposition ("Opposition") to the *Amended Motion of Debtor and Debtor in*

4   *Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Enter into Post-*

5   *Petition Lease* ("Lease Motion") (Dkt. 248) filed in the lead case of those jointly-administered

6   debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway

7   Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev

8   Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the

9   "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and

10  Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual

11  Debtors" and collectively with the Corporate Debtors, the "Debtors").

12  **I.      Introduction**

13  Broadway originally filed the Lease Motion and companion DIP Loan Motion on an

14  expedited basis in response to Archway's motion for relief from stay. The Court denied

15  Archway's motion for relief from stay without prejudice, indicating at the hearing that the Lease

16  and the Loan appear to have changed things.

17  On the face of things, Broadway and Mr. Gomperts are telling the Court that they have

18  assembled a righteous "team" of proposed tenants and a DIP lender that is lined-up to imminently

19  assure the effective and feasible reorganization of Broadway.

20  **But something is "off" here.**

21  If this Lease and DIP Loan are the "major win" that Broadway and Mr. Gomperts claim

22  they are, why have they not disclosed any information about the proposed tenants and DIP lender?

23  Archway has been asking Broadway for this information for some time now, but nothing has been

24  provided.

25  **Why is this basic information not being disclosed?**

26  Archway has served discovery to uncover the truth about these basic matters, but in the

27  meantime, it did some internet sleuthing of its own.

28  What it found is disturbing.

1    Just based on publicly-available information on the internet, Archway has uncovered

2    information showing that the owners and controllers of these proposed tenants and DIP lender

3    have skeletons in their closets, which include criminal convictions for **money laundering**

4    conspiracy, **disbarment** proceedings, federal **contempt** proceedings for **theft of receivership**

5    **assets**, **fraud** in connection real property and lease transactions, and the use of **shell entities** to

6    effectuate these misdeeds.

7    This raises serious questions about Mr. Gomperts's competency to manage Broadway's

8    estate. If he *didn't* know about his teams' misdeeds, that is a gross mismanagement of this estate

9    and a complete failure of competency. If he *did* know, then he should have never brought these

10    motions in the first place—or, at the very least, he should have *disclosed* this highly material

11    information to the Court and parties in interest.

12    This highlights Mr. Gomperts's conflict of interests, which seem to be motivating or at

13    least clouding his decision-making. He owes a continuing fiduciary duty to insolvent Broadway

14    *and its creditors* to avoid self-dealing and unduly risking estate assets. He also has a continuing

15    fiduciary duty to make a mandatory capital call on Broadway's members who have **over $60**

16    **million in <u>net</u> assets** to fund these very same capital improvements to the Broadway Property.

17    The Court should deny this ill-considered lease motion and the companion DIP Loan

18    Motion, which separately endangers Archway and this estate.

19    **II.    Background on Broadway's "Team."**

20    Not much is disclosed about the "team" that Broadway and Mr. Gomperts has assembled

21    to execute on this Lease and DIP Loan "Project." Dkt. 248 at 5:27–28. But Archway's internet

22    search reveals the following:

23    **A.    Mr. Bombola Recently Pilfered Assets from a Federal Receivership Estate.**

24    Broadway's "team" is led by Steve Bombola aka "Steven Francis Bombola"—the central

25    promoter of these Lease and DIP Loan transactions. Mr. Bombola is the "Managing Member" of

26    proposed tenant Zenith Healthcare Management, LLC dba Broadway Community Care Centers,

27    an entity that is not registered to do business in California. Per the Lease Motion, Mr. Bombola's

28    company, Zenith, is in charge of receiving funds from government agencies, including grant

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    money, on behalf of Broadway, which he is supposed to use to fund tenant improvements to the

2    Broadway Property.

3     Public records reveal that Mr. Bombola has used this same government-funding business

4    model before, but in Oklahoma. *See* Janelle Stecklein and Renee Fite, *With investment from*

5    *governor, Adair County business to create jobs, expand operations*, CNHI News Oct 12, 2021

6    Available at https://www.cnhinews.com/article_a20ee36c-2b95-11ec-8222-5ff3e0eb549a.html

7    (reflecting interview with Mr. Bombola where he discussed his role in obtaining government

8    funding on behalf of an Oklahoma manufacturing company named CSR Worldwide OK, Inc.).

9     CSR Worldwide OK, Inc. ("CSR") and its affiliate, CSR-OK Real Estate Holding

10   Company, LLC ("CSR-OK" and together with CSR, the "CSR Debtors"), were owned and

11   controlled by Mr. Bombola and one David Schwarcz (more on him below). The CSR Debtors

12   owed about $6 million to Bank of Hays for commercial loans secured by the CSR Debtors' assets.

13   *See* CSR Schedule D 23-80391 Dkt. 1 (E.D. Okla. Bankr.). Mr. Bombola guaranteed those loan

14   obligations. *See* CSR Schedule H 23-80391 Dkt. 1 (E.D. Okla. Bankr.).

15    In May 2023, Bank of Hays sued the CSR Debtors and Mr. Bombola in a state court action

16   commenced in Adair County, Oklahoma (*Bank of Hays v. CSR Worldwide OK, Inc., et al.*, Adair

17   County District Court, State of Oklahoma, Case No. CJ-23-36), seeking appointment of a receiver,

18   among other things ("State Court Action").

19    In June 2023, the CSR Debtors filed chapter 11 bankruptcy cases, which cases were later

20   dismissed for failure to insure property of the estate. Case 23-80391 (E.D. Okla. Bankr.) Dkt. 1 at

21   67, Dkt. 142; Case 23-80390 (E.D. Okla. Bankr.) Dkt. 1 at 42, Dkt. 98.

22    The State Court Action was removed to the United States District Court for the Eastern

23   District of Oklahoma in June 2023 and became a federal receivership action ("Receivership

24   Action"). *See* Case 6:23-cv-00196-DES, Petition, Dkt. 1 (E.D. Okla.).

25    In October 2023, the District Court entered an order appointing the CSR Debtor's former

26   chief restructuring officer, David R. Payne, as Receiver ("Receiver") over the CSR Debtors and

27   their assets in the Receivership Action ("Receivership Order"). 6:23-cv-00196 (E.D. Okla.)

28   Dkt. 24.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017–2427
(323) 852–1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   Per a declaration of the Receiver:

2       On the evening of May 21, 2024, Mr. Bombola contacted the Receiver to inform him that

3   "the [CSR Debtors] had removed property from the Facility since the Bank of Hays … was

4   unwilling to accept the [CSR Debtors'] offer to buy the assets." 6:23-cv-00196 (E.D. Okla.)

5   Dkt. 71-1 at ¶ 7. The Receiver then asked Mr. Bombola to provide information on the removed

6   assets. *Id.* At the end of that week, Mr. Bombola had not provided the requested information. *Id.*

7   Instead, Mr. Bombola represented to the Receiver that "there was nothing taken from the plant."

8   *Id.* This was contrary to information the Receiver had from the CRS Debtors' counsel. *Id.*

9       On May 29, 2024, the Receiver conducted an inspection of the CSR Debtors' facility. *Id.* at

10  ¶ 8. The Receiver's key was not working so he called the CSR Debtors' CEO who happened to be

11  next door at a "marijuana grow house…which was operated by some or all of the [CSR Debtors']

12  principals." *Id.* Per the Receiver, the grow house property is titled in the name of an entity, which

13  on information is owned by, among others, Mr. Bombola and one "David Schwartz" who "holds

14  himself to be the [CSR Debtors'] general counsel." *Id.* at n. 5. The Receiver then entered the

15  property and observed that assets were missing and that certain equipment had been moved and/or

16  disconnected from the line configurations existing for business operations. *See id.* at ¶ 10.

17      The Receiver later confirmed with Mr. Bombola's counsel that Mr. Bombola, among

18  others, had removed assets from the Facility between May 13 and May 19, 2024, without

19  notifying or obtaining consent from the Receiver or the District Court. *Id.* at ¶¶ 12–14. CSR

20  Debtor revenues were also diverted from the estate and into a comingled account. *Id.* at ¶¶ 20–25.

21      On July 3, 2024, the Magistrate Judge for the Eastern District of Oklahoma entered an

22  order holding Mr. Bombola in contempt of the Receivership Order ("Contempt Order")

23  (6:23-cv-00196-DES Dkt. 84). In the Contempt Order, the Court found that:

24      Steven Francis Bombola … **willfully violated** the Receivership Order by, inter alia,
        (a) **diverting proceeds** of tolling operations from the Receiver's custody and
25      control and into a bank account controlled by defendant Central States
        Reprocessing LLC …; and (b) **entering** the Facility … and **removing tangible**
26      **assets** involving the respective business operations of defendants CSR Worldwide
        OK, Inc. and CSR-OK Real Estate Holding Company, LLC….

27

28  Contempt Order at ¶ 1 (emphasis added).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    In the Contempt Order, the Magistrate Judge ordered Mr. Bombola to purge his contempt

2    by, among other things, returning the stolen receivership assets, indemnifying the Receiver and the

3    receivership estate from all operating liabilities, and reimbursing the Receiver for his costs

4    incurred in connection with this willful contempt. *See* Contempt Order at ¶ 6. The Court retained

5    jurisdiction to sanction Mr. Bombola if he did not comply. *See id.* at 6.

6    It is unknown whether Mr. Bombola has, in fact, purged this contempt or not.

7    **B.    Schwarcz, the CEO of Proposed Tenant DMB, Also Has a Checkered Past.**

8    The DMB Fund is a company run by David Schwarcz, its CEO.

9    According to a California disciplinary proceeding from November of 2020:

10    Schwarcz used to be a California lawyer until he was convicted for his participation in a

11    **money laundering conspiracy—a felony that got him disbarred**. *See, generally*, *Matter of*

12    *Schwarcz*, No. 17-C-00851, 2020 WL 6892001 (Cal. Bar Ct. Nov. 6, 2020). This money

13    laundering conspiracy involved the trafficking of narcotics, i.e., cocaine. *See id.* at n. 7. The

14    disciplinary panel gave "substantial weight" to aggravating factors, including Schwarcz's prior

15    misconduct of "improperly entering into business transactions with a client," failing to fully

16    disclose terms of transactions to his clients, "significant client harm and multiple acts of

17    wrongdoing." *Id.* at *5. The panel found that he did not learn from these prior ethical breaches

18    and, instead, "he proceeded to commit serious criminal acts in 2010." *Id.* at *6. The panel

19    observed that the trial court had assigned significant aggravation because of Schwarcz's "failure to

20    recognize his wrongdoing suggests possible recidivism." *Id.* (citation omitted). The panel found

21    that Schwarcz had "a brazen willingness to commit serious criminal acts at a time when he was

22    under scrutiny by the State Bar for other alleged misconduct. Such behavior reinforces our view

23    that *Schwarcz may continue to commit misconduct in the future*." Id. at *10 (emphasis added).

24    Schwarcz's "accountant," Judy Cox, and his "business partner," Steve Gold, testified on

25    his behalf at the California disciplinary hearing. *Id.* at *7. These names are familiar.

26    One "Steve Gold" signed the Lease as Secretary for DMB (Dkt. 248 at 45) and provided a

27    declaration in support of the Lease Motion (Dkt. 250 at 1–2). The name "Judy Cox" also appears

28    on the Lease signature line for DMB. *See* Dkt. 248 at 46. "Judy Cox" is also the CFO of DMB.

ARCHWAY'S OPPOSITION TO BROADWAY LEASE MOTION

Schwarcz was represented in a related District Court disbarment proceeding by George A. Shohet, a California attorney who is entitled to notice under the Lease. *See* Lease § 15.01, Dkt. 248 at 37. Shohet was also subject to disciplinary action and suspended multiple times by the California State Bar, most recently in 2021. Schwarcz was disbarred from the United States District Court for the Central District of California on February 22, 2022.

Going even further back in time, according to an unpublished Ninth Circuit BAP memorandum:

In 2006, a California jury in the matter of *Lederman v. Schwarcz*, California Superior Court Case no. BC 307709 found Schwarcz liable for breach of contract, breach of fiduciary duty, concealment, and conversion, awarding the plaintiff $2,718,936 in economic damages and $2,000,000 in damages for emotional distress, plus punitives. *In re Schwarcz*, No. BAP CC-06-1386-PAMAB, 2007 WL 7540970, at *3 (B.A.P. 9th Cir. Aug. 29, 2007). The Superior Court avoided Schwarcz's fraudulent transfers of real property, and made the following comments to Schwarcz's counsel:

> Don't you understand what your client [Schwarcz] has done is very, very wrong? It's fraudulent.... Your client has committed fraud. He's taken advantage of this lady and taken all of her property from her, all of [her] worldly possessions except [what] she was able to move.... So this lady has suffered for six years, six years from the time she entered into this transaction; six years.... I'm telling you what I have seen in this case. *In the 30 years I've been on this bench I've never seen such outrageous and e[g]regious conduct by an attorney. It is the wors[t] case I've ever seen.* I don't think there's a reported case in the books that would show what this, your client has done in this case in all the books. What your client has done.

*Id.* (first alteration added) (quoting Tr. Hr'g 12:24–13:25 (April 13, 2006)) (emphasis added).

After judgment was entered against him, Schwarcz filed chapter 11 in the United States Bankruptcy Court for the Central District of California, commencing case number 2:06-bk-11930-AA. He was then sued for non-dischargeability, but later settled.

**C.    The Levav Group LLC's Principal is Not Paying His Debts.**

The final proposed tenant is the Levav Group LLC, which is managed and owned by one Ahron Stock. Again, Broadway has not disclosed any information about Levav. Not much information is available, but a Google search of "Ahron Stock" reflects he has a civil judgment against him within the last few years. Levav is a proposed guarantor, but such a guaranty would be

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  illusory. Therefore, the "guaranty" is a sham. The address listed for Levav Group, 1702 S.

2  Robertson Blvd. 261 Los Angeles, CA 90035, is a mailbox store, not an actual physical address.

3     **D.     Honor Enterprise Funding LLC's Principal has Many Customer Grievances.**

4        And finally, the proposed DIP Lender, Honor Enterprise Funding LLC ("Honor") is yet

5  another entity involved in these transactions that is not registered to do business in California,

6  much less the holder of a California finance lender license. Honor is managed by one Kirk Gill. Its

7  sole member is the Kirk Gill Trust.

8        Public records reveal the following about Mr. Gill:

9        In 2004, the Ohio Department of Commerce issued a *Notice of Intent to Deny Application*

10  *for Securities Salesperson License* based on customer allegations of fraud, unsuitable trades,

11  churning accounts, breach of fiduciary duties, and unauthorized trading, against Mr. Gill. *See,*

12  *generally*, *In the Matter of: Kirk J. Gill*, 2004 WL 832137, at *2. Based on these allegations, the

13  Department of Commerce alleged that Mr. Gill was "not of good business repute." *Id.* at 2.

14        A search of the website for FINRA, the Financial Industry Regulatory Authority, which

15  regulates member brokerage firms doing business in the United States, reveals a list of customer

16  grievances against Mr. Gill.

17  **III.     Background on the Archway Loan and Mr. Gomperts's Fiduciary Duties.**

18        The following section sets forth the basic background facts on the prepetition Archway

19  loan transactions and Mr. Gomperts's fiduciary duties, which are relevant to the Opposition.

20     **A.     Archway Makes a $17 Million Loan to Broadway.**

21        On July 21, 2021, Archway made a business loan to Broadway, an entity managed and 1/3

22  owned by Mr. Gomperts, in the principal amount of $16,942,500.00 ("Broadway Loan"). The

23  Broadway Loan is evidenced, in part, by a Promissory Note ("Broadway Note") whereby

24  Broadway promised, among other things, to pay Archway the principal amount of $16,942,500.00,

25  plus interest, costs, fees, and other charges as set forth therein.

26        In connection with the Broadway Loan, Broadway executed and delivered to Archway that

27  certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing

28  ("Deed of Trust"), whereby Broadway granted Archway a first-position lien on the property as

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   described therein, which includes that certain real property located at 737 South Broadway, Los

2   Angeles, CA 90014 ("Property"). Archway caused the Deed of Trust to be recorded in the Los

3   Angeles County Recorder's Office on July 26, 2021, which recording was assigned document

4   number 20211142009. Broadway also executed and delivered an Assignment of Rents and Leases

5   ("AOR") dated July 23, 2021, which Archway caused to be recorded in the Los Angeles County

6   Recorder's Office on July 26, 2021, which recording was assigned document number

7   20211142010.

8       Archway's Deed of Trust reflects Broadway's grant to Archway of security interests in,

9   among other things, Broadway's personal property assets, including "All … accounts receivable,

10  … intangibles, contract rights, … both in law and in equity, which [Broadway] now has or may

11  hereafter acquire in the Real Property or any part thereof…. All … contracts, subcontracts, service

12  contracts, management contracts, … and other agreements, … approvals, consents, permits,

13  special permits, licenses and rights, whether governmental or otherwise, respecting the use,

14  occupation, development, construction and/or operation of the Real Property or any part thereof or

15  the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part

16  thereof…. All proceeds, products, offspring, rents and profits from any of the foregoing,

17  including, without limitation, those from sale, exchange, transfer, collection, loss, damage,

18  disposition, substitution or replacement of any of the foregoing…." Deed of Trust at 1–3.

19      Archway perfected its interests in such personal property collateral and proceeds by filing

20  UCC-1 financing statement on July 29, 2021, with the California Secretary of State, which filing

21  was assigned filing number U210071454128.

22      The AOR grants Archway a security interest in all rents, issues, profits, income, and

23  proceeds of or from tenants of the Broadway Property, among other things. *See* AOR at § 1.

24  **B.    Broadway and the Guarantors Default Under the Broadway Loan.**

25      Later, Broadway and the Broadway Loan guarantors defaulted under the terms of the

26  Broadway Loan Documents, including, without limitation, failing to obtain a certificate of

27  occupancy by January 21, 2022, for the Property, as required by Section 5.1(o) of the Broadway

28

ARCHWAY'S OPPOSITION TO BROADWAY LEASE MOTION

Loan Agreement, and by failing to pay the Broadway Loan obligation in full as of the scheduled maturity date, August 1, 2022 (collectively, "Existing Defaults").

**C.** **The Parties Restructure the Broadway Loan.**

In connection with the Existing Defaults, and at Broadway's request, Broadway, the Broadway Loan guarantors, and Archway entered into that certain Settlement and Loan Modification Agreement on April 19, 2023 ("Settlement Agreement").

Among other things, the Settlement Agreement extended the maturity date of the Broadway Loan to December 1, 2023, at which time the entire principal under the Broadway Loan plus all accrued and unpaid interest and other amounts would be due and payable as provided under the Settlement Agreement. The Existing Defaults otherwise remained uncured.

**D.** **Archway Makes Three New Loans as part of the Restructure.**

As part of the restructure, Archway made three additional loans—(1) a loan in the principal amount of $1,300,000.00 to Negev ("Negev Loan"), (2) a loan in the principal amount of $125,000.00 to SLA (guarantied by Mr. Gomperts, Ms. Halevy, and Mr. Halevy, among others) ("SLA Loan"), and (3) a loan in the principal amount of $2,575,000.00 to Ms. Halevy's self-settled inter-vivos revocable trust, the Halevy Family Trust, dated September 8, 2010 ("Halevy Trust"), Mr. Gomperts's self-settled inter-vivos revocable trust, the Gomperts and Halevy Family Trust ("G&H Trust"), and to Mr. Halevy ("Guarantor Loan" and collectively with the Negev and SLA Loans, the "New Loans").

Each of the New Loans are evidenced by loan documents and collateral pledges. Such collateral pledges cross-collateralize the Broadway Loan as, among other thigs, third-party accommodation pledges in support of the Broadway Loan as well as each of the other New Loans.

**E.** **Broadway's Members, including Mr. Gomperts, Ms. Halevy, and Mr. Halevy, Provide Verified Personal Financial Statements to Archway Reflecting Over $60 Million in Net Worths.**

In or around August 21, 2023, Mr. Gomperts, Ms. Halevy, and Mr. Halevy provided Archway with verified personal financial statements reflecting over $60 million in combined net worths.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**F.      The Archway Loan Obligations Mature.**

On December 1, 2023, the Broadway Loan, as well as the three other New Loans described in the Settlement Agreement, matured without being paid in full, which constituted, among other things, a maturity default under the applicable Broadway Loan Documents.

**G.      The Debtors file Chapter 11 Petitions.**

On March 18, 2024, the Individual Debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the Central District of California, commencing three of the instant bankruptcy cases.

The next day, on March 19, 2024, Broadway and the other Corporate Debtors filed chapter 11 petitions, commencing the relevant corporate bankruptcy cases.

**H.      The Corporate Debtors Self-Designate as "Single Asset Real Estate" Debtors.**

On Broadway's petition, just as the other Corporate Debtors, it self-designated this as a single asset real estate case as defined in 11 U.S.C. § 101(51B). *See* Chapter 11 Petition 2:24-bk-12081-VZ Dkt. 1 at ¶ 7.

**I.      Archway's files Proofs of Claim.**

On July 15, 2024, Archway filed its proofs of claim in the respective bankruptcy cases of the debtor-obligors. Each proof of claim for the New Loans reflects the cross-collateralization aspects of that claim, including the cross-collateralization of the Broadway Loan.

**J.      Broadway Now Owes Archway Over $18 million.**

Broadway now owes Archway over $18 million, and it has not received any payments from the Debtors since well before the Loans matured in December of 2023.

**K.      Mr. Gomperts is Required to Make a Capital Call on Broadway's Members.**

Mr. Gomperts is the manager and a 33.33% owner of Broadway. *See* SOFA 2:24-bk-12081-VZ Dkt. 22 at 19. Ms. Halevy and Mr. Halevy are the other two 33.33% owners of Broadway. *See id.* Broadway's Operating Agreement ("Operating Agreement") requires Mr. Gomperts, as manager, to make a capital call ("Mandatory Capital Call") on Broadway's members, including himself, if Broadway needs additional cash for its operations or capital expenditures. *See* Operating Agreement at § 2.1.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**L.    Broadway is, and Has Been, Insolvent.**

Broadway is insolvent. *See* 2:24-bk-12081-VZ Dkt. 22 at 1.

Broadway has been insolvent since well before the time of the April 2023 Settlement Agreement.

**M.    Mr. Gomperts Contemplated it, but Never Made the Mandatory Capital Call.**

At around the time of the December 2023 Broadway Loan maturity, Mr. Gomperts discussed the Mandatory Capital Call with Broadway's other members, Ms. Halevy and Mr. Halevy. *See* Transcript of May 4, 2024, Meeting of Creditors at 16:19–24.

He never made the cash call notice as required in the Operating Agreement. *See* Transcript at 16:2–5. His explanation for not doing so was that "There was not enough *cash* to pay off the loan. No one, none of the members, had *cash* available to pay off the loan." Transcript at 16:6–9 (emphasis added).

**N.    Broadway's Members Disclose Multi-Million Dollar Net Worths on Schedules.**

Per his schedules, Mr. Gomperts has a net worth of $6,853,400.43. *Compare* Summary of Assets 2:24-bk-12074-VZ Dkt. 43 (reflecting $31,794,942.39 in assets) *with* Summary of Liabilities (reflecting $19,739,004.00 in liabilities).

And although it may not be reflected on the schedules for Mr. Gomperts, Ms. Halevy, or Mr. Halevy, or values may be listed as "unknown" for various entities listed, they provided personal financial statements to Archway in August of 2023 showing over $60 million in net worths.

**O.    Archway Moves for Relief From Stay.**

Over 230 days have elapsed this this single asset real estate case was filed. On October 8, 2024, Archway moved for relief from stay under §§ 362(d)(1), (d)(2), and (d)(3). *See* Dkt. 213. Broadway opposed the stay relief motion on October 15, arguing that relief from stay should be denied because a reorganization was in prospect based on the Lease and DIP Loan. *See, generally*, Dkt. 220. On October 22, Archway filed its reply (Dkt. 231), pointing out among other things that Broadway had not filed any motions to approve the DIP Loan or Lease.

1    Two days later, on October 24, Broadway filed the DIP Loan and Lease Motions. *See*

2    Dkts. 233 and 237. The Court denied Broadway's applications for orders shortening time

3    (Dkts. 236, 242) seeking expedited hearings on the DIP and Lease Motions for October 29,

4    concurrently with the Archway stay relief motion. *See* Dkts. 243, 244.

5    At the hearing on October 29, the Court denied Archway's Motion for Relief from Stay.

6    The Court indicated that Broadway's applications for orders shortening time, which had been filed

7    a few days prior to the hearing, seeking expedited hearings to the DIP Loan and Lease tended to

8    show, at least at that point in time, that something could be mounted by Broadway to show a

9    reasonable prospect of reorganization within a reasonable time, based on the DIP Loan and Lease

10   which were being proposed.

11   As discussed below, the DIP Loan and Lease should not be approved.

12   **IV.    Discussion**

13   The following sections analyze and discuss the applicable legal standards and issues raised

14   by the motion.

15   **A.    Broadway Has Not Disclosed Material Facts Concerning the Proposed Lease.**

16   A debtor-in-possession, after notice and a hearing, may lease property of the estate outside

17   the ordinary course of business under certain circumstances and if certain requirements are met.

18   *See* 11 U.S.C. § 363(b)(1). Although § 363(b) entails a debtor-in-possession's exercise of its

19   sound business judgment—the business judgment rule is not unfettered and it is subject to

20   principles of good faith which include disclosure of relevant facts and circumstances surrounding

21   the proposed transactions. *See In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D.

22   Cal. 1991) (discussing these principles in the context of a sale motion). Under California's trust

23   fund doctrine directors of insolvent corporation owe creditors a fiduciary duty to, among other

24   things, avoid self-dealing and unduly risking corporate assets. *Berg & Berg Enterprises, LLC v.*

25   *Boyle*, 178 Cal. App. 4th 1020, 1041 (2009). Such fiduciary duties constitute an exception to the

26   business judgment rule. *See In re AWTR Liquidation Inc.*, 548 B.R. 300, 318, 324 (Bankr. C.D.

27   Cal. 2016) (providing that the business judgment rule is subject to scrutiny for possible self-

28   dealing) (citations omitted).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Here, these lease and loan transactions do not meet the business judgment rule standard.

2  Mr. Gomperts has a conflict of interests, and he either has not done his due diligence as the

3  manager of a debtor in possession or, much worse, he knew about all of the nefarious deeds of

4  these proposed tenants and ignored them.

5    At the very least, he is not disclosing all the material facts that the Court and creditors need

6  to vet these transactions, and the Court should deny the motion.

7    Mr. Gomperts is Broadway's manager and 1/3 owner. Although Broadway is utterly

8  insolvent and in dire need of capital, Mr. Gomperts has been sitting on over **$28 million in *net***

9  ***worth***. In the over-230 days since this single asset real estate case was filed, Mr. Gomperts has

10  failed to fund capital infusions to Broadway or to make the mandatory capital call on himself or

11  Broadway's other members (his mother in law or brother in law, all of whom have combined net

12  worths of over $60 million per financial statements provided to Archway in August of last year).

13    He owes fiduciary duties to Broadway's creditors, including Archway, to avoid self-

14  dealing and unduly risking corporate assets. Instead of complying with these duties and funding

15  the $4 million DIP loan himself, he is urging the Court to approve a DIP Loan and Lease

16  involving various third parties—**without any *disclosure*** about who these third parties are and

17  what their financial wherewithal is. Without *full* disclosure of the material aspects of these

18  transactions, the Court and creditors cannot determine whether Mr. Gomperts is complying with

19  his fiduciary duties to Broadway and its creditors, all of which are exceptions to the business

20  judgment rule.

21    For some time now, Archway has been requesting from Broadway the financials of

22  proposed lease tenants and/or guarantors. But—inexplicably—no financials have been provided.

23  Archway has now sought formal discovery to uncover this basic information, which should have

24  been disclosed long ago and in the motions themselves. If Mr. Gomperts has this critical

25  information, why has he not disclosed it to Archway or the Court? If he does not, why has he not

26  done his due diligence to vet these transactions before asking the Court to approve them? He is the

27  proposed post-confirmation plan fiduciary, and the plan itself hinges on these transactions being

28  approved. This is not an appropriate exercise of his fiduciary duties, and he cannot skate through

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

ARCHWAY'S OPPOSITION TO BROADWAY LEASE MOTION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    on the business judgment rule. Mr. Gomperts is acting as if he has nothing to lose, which raises

2    larger issues about—at the very least—his competence and ability to manage this estate.

3         Broadway is claiming that this Lease—with these proposed tenants and this DIP Lender—

4    is being made based on Mr. Gomperts's business judgment, in good faith and in the best interests

5    of the estate. But **none of the above was disclosed** to the Court, the United States Trustee, the

6    SEC, or to any of the creditors or other parties in interest that have an interest in this case. This

7    lack of disclosure raises very serious questions about Mr. Gomperts's competence as an estate

8    fiduciary, his gross mismanagement of this estate, his lack of due diligence, his own self-dealing,

9    and potentially, much worse.

10        The Court should deny these motions.

11        **B.    The Lease Terms are Improper.**

12        Even if the tenants were creditworthy (they are not) and if the Court were to ignore the

13   foregoing nefarious misdeeds, the Court should still not approve the Lease because it contains

14   terms which are impermissible.

15        First, the Lease commencement and rent payments are all contingent on Broadway

16   "securing a timely certificate of occupancy." Lease § 4.03. It is undisputed that there is no

17   certificate of occupancy. And there is no disclosure or evidence as to the likelihood or timing of

18   Broadway obtaining a certificate of occupancy. There is also no indication as to what "timely"

19   means. For the past **nine years,** Broadway has failed to obtain a certificate of occupancy.

20        Next, Broadway's business plan contemplates Mr. Bombola securing grants from

21   governmental agencies, and if they do not, the tenants are responsible for all sums due under the

22   "LW expense." Broadway is asking the Court to trust Mr. Bombola's entity, Zenith, with these

23   government grant funds, as Zenith (Bombola's entity) is the party that will supposedly be

24   accepting grant money and then paying it to Broadway to cover LW Expenses. Mr. Bombola

25   cannot be trusted, as evidenced by the Contempt Order, which sanctions he is paying out as a

26   requirement to purge his contempt.

27        The tenant entities also have no financial track record or financial wherewithal, and they

28   are being run by individuals who have highly questionable motivations. There is no explanation

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   for how the DIP Loan interest payments will be funded each month. *See* Dkt. 255 at 6 ("Monthly

2   interest payments are due on the 1st of each month"). Will Broadway be seeking to use Archway's

3   cash collateral? Do the proposed tenants have $4 million in liquidity on their books to reimburse

4   Broadway if they do not secure the grant money? Can Mr. Bombola fund these expenses while

5   concurrently funding his contempt sanctions for stealing and then dissipating receivership assets?

6   How will the proposed tenants sustain their operations if they do not receive the grants?

7          Finally, the DIP Loan from Honor is a Letter of Intent—not a loan commitment. Honor is

8   not licensed to lend in California according to The Department of Financial Protection and

9   Innovation. In fact, Honor is merely a loan broker, not a lender itself. The term sheet has already

10  expired.

11         **C.     Broadway Has Not Met its Burden to Demonstrate Adequate Protection.**

12         The court "shall prohibit or condition such … lease as is necessary to provide adequate

13  protection of [an entity that has an interest in property proposed to be leased]." 11 U.S.C. § 363(e).

14  The debtor-in-possession has the burden to prove adequate protection. 11 U.S.C. § 363(p)(1).

15         Broadway cannot meet its burden to demonstrate that Archway is adequately protected.

16  Archway holds a first-position perfected lien against the Property, rents derived from the Property,

17  and all personal property rights of Broadway related to the Property, among other things. *See*

18  Broadway Deed of Trust, AOR, UCC-1. Archway has requested and continues to request adequate

19  protection of its interests.

20         The Property is single-asset-real-estate, well over **230 days** have elapsed since the petition

21  date, and Archway is significantly undersecured on the Broadway Property. Broadway assumes

22  that Archway has no protectable interests, but this is incorrect.

23         Archway holds prepetition perfected liens on the Property, rents, and all personal property

24  rights Broadway as evidenced by its recorded Deed of Trust, Assignment of Rents, Security

25  Agreement, and filed UCC-1 financing statement. Accordingly, Broadway is required to

26  demonstrate—with admissible *evidence*—that Archway's perfected interests are adequately

27  protected by a defective lease to questionable individuals and entities who lack any financial

28  resources to fund even the most basic requirements under the lease. Moreover, the Lease Motion

1   effectively seeks permission to use Archway's cash collateral, although not denominating the

2   request as a cash collateral motion.

3        **D.    Service of the Lease Motion is Defective.**

4        Contested matters are governed by Rule 9014, which requires the same manner of service

5   as a summons and complaint under Rule 7004. Fed. R. Bankr. P. 9014(b). A contested matter

6   arises as soon as opposition is "known or reasonably foreseeable." *In re Ephedra Prod. Liab.*

7   *Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) (citing Fed. R. Bankr. P. 9014 advisory committee note). *See*

8   *also* Fed. R. Bankr. P. 9014 advisory committee note ("Whenever there is an actual dispute, other

9   than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a

10  contested matter…. Even when an objection is not formally required, there may be a dispute."). A

11  formal written objection is not required to create a contested matter. *See In re Baroni*, 643 B.R.

12  253, 299 (Bankr. C.D. Cal. 2022).

13       Here, Broadway did not serve the Lease Motion properly. The Lease Motion is a contested

14  matter. The Lease Motion was filed while Archway's Motion for Relief from Automatic Stay

15  (Dkt. 213) was pending and was clearly in response to Archway's Reply (Dkt. 231) in support of

16  its motion for relief from stay. Accordingly, Broadway knew or reasonably should have

17  anticipated at the time it filed the Lease Motion that Archway opposed the relief sought. The

18  Lease Motion also seeks relief that, if granted, would entail the authorization for use of Archway's

19  cash collateral and proceeds thereof, which is an independent reason why the motion a contested

20  matter. *See* Fed. R. Bankr. P. 4001(b)(1)(A).

21       Broadway was required to serve the Lease motion in the same manner as a summons and

22  complaint, but it did not do so. Rule 7004(b) requires service on a domestic corporation by first

23  class mail postage prepaid "to the attention of an officer, a managing or general agent, or to any

24  other agent authorized by appointment or by law to receive service of process…." Fed. R. Bankr.

25  P. 7004(b)(3). But here, Broadway did not provide such service to several domestic corporate

26  creditors, including: Alta Fire Pro, California Refrigeration & Supply, Commune Events, Inc., RG

27  Fire Inc, Sienna Rose Inc, and Southern California Edison. Broadway also failed to serve the

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Lease Motion on any of the proposed tenants or even the DIP Lender. These are all necessary

2    parties, entitled to service in the same manner as a summons and complaint.

3        **E.**    **Notice of the Lease Motion is Also Defective.**

4        A notice of lease other than in the ordinary course of business under § 363(b) must, among

5    other things, "include … *the terms and conditions of any private sale* …." Fed. R. Bankr. P.

6    2002(c)(1) (emphasis added); *see also* Fed. R. Bankr. P. 6004(a).

7        Here, the Lease contains a continuing right of first refusal ("ROFR") in favor of the

8    proposed tenants, DMB, Zenith, and Levav Group. *See* Lease at Art. XIX Dkt. 248 at 42. The

9    ROFR prohibits Broadway from selling the Property without permitting the proposed tenants to

10    invoke the ROFR and acquire the Property as part of a private sale pursuant to the ROFR. *See id.*

11    But the terms of the ROFR are not disclosed in the Lease Motion Notice.

12    **V.**    **Conclusion**

13        For the reasons set forth above, the Court should deny the Lease Motion.

14    DATED: November 5, 2024        FRANDZEL ROBINS BLOOM & CSATO, L.C.

15

16            By:      /s/ Gerrick M. Warrington

17                GERRICK M. WARRINGTON
            Attorneys for Secured Creditor

18                ARCHWAY BROADWAY LOAN SPE, LLC

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

A true and correct copy of the foregoing document entitled (*specify*): **ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITION TO AMENDED MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE;**

**OMNIBUS DECLARATION OF BOBBY KHORSHIDI IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO: MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**OMNIBUS DECLARATION OF GERRICK M. WARRINGTON IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO: MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO: MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; and**

**EVIDENTIARY OBJECTIONS TO AMENDED DECLARATION OF ALAN D. GOMPERTS IN SUPPORT OF: (1) MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. SECTION 364; AND (2) MOTION OF DEBTOR TO ENTER INTO POST-PETITION LEASE**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>November 5, 2024</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Counsel to Party in Interest: Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- Counsel to Party in Interest: Jacquelyn H Choi    jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com
- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com, easter.santamaria@saul.com
- Counsel to Party in Interest: Robert F Conte    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Counsel to Individual Debtors: Ryan Coy    ryan.coy@saul.com, hannah.richmond@saul.com
- Counsel to Party in Interest: Christopher Cramer    secured@becket-lee.com
- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email
- Counsel to Archway: Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com

- Counsel to Party in Interest: Todd S. Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Counsel to Party in Interest: Richard Girgado    rgirgado@counsel.lacounty.gov
- Counsel to Party in Interest: Jacqueline L James    jjames@hrhlaw.com
- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Counsel to Party in Interest: Avi Edward Muhtar    amuhtar@crownandstonelaw.com
- Counsel to Archway: Bruce D Poltrock    bpoltrock@frandzel.com, achase@frandzel.com
- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com
- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Counsel to Archway: Gerrick Warrington    gwarrington@frandzel.com, achase@frandzel.com
- Counsel to Party in Interest: Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>November 5, 2024</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Overnight Delivery, Early Morning:**

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1360
255 E. Temple Street
Los Angeles, CA 90012-3332

**Email:**

**Counsel to Corporate Debtors:**
Derrick Talerico    dtalerico@wztslaw.com

**Counsel to Individual Debtors:**
Zev Shechtman    Zev.Shechtman@saul.com
Turner Falk    turner.falk@saul.com
Ryan Coy    ryan.coy@saul.com

**United States Trustee:**
Kelly L Morrison
Office of the US Trustee
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017
Email: kelly.l.morrison@usdoj.gov

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 5, 2024 | Annette Chase | /s/ Annette Chase |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

ARCHWAY'S OPPOSITION TO BROADWAY LEASE MOTION