Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br>     Debtors and Debtors-in-Possession.<br><br>Affects:<br><br>☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☒ Broadway Avenue Investments, LLC<br>☐ SLA Investments, LLC<br>☐ Negev Investments, LLC<br>☐ Alan Gomperts<br>☐ Daniel Halevy<br>☐ Susan Halevy | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br><br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S RENEWED MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:     December 10, 2024<br>Time:     10:30 a.m.<br>Crtrm.:   1368<br>              255 E. Temple Street<br>              Los Angeles, CA 90012<br><br>Hon. Vincent P. Zurzolo |

5398935v2 | 101415-0002

1

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Page

I.   Introduction ............................................................................................................. 4

II.   Background ............................................................................................................. 5

    A.   The Court Denies Archway's Original Motion for Relief From Stay Based on Broadway's Lease and Loan Motions. ............................................... 6

    B.   Archway Uncovers New Information Concerning the Proposed Tenants. ................ 7

    C.   Archway Serves Discovery on the Proposed Tenants, But They Duck Service. ............................................................................................................ 7

    D.   Broadway's Counsel Confirms What Was Known and Not Known. ....................... 7

    E.   Broadway Promptly Withdraws the Lease/Loan Motions After Being Exposed. ........................................................................................................... 8

III.   Discussion ............................................................................................................... 8

    A.   The Court should grant relief from stay under § 362(d)(2). .................................... 8

        1.   There is no equity in the Property. ................................................................ 9

        2.   No effective reorganization within a reasonable time is "in prospect." .......................................................................................................... 9

    B.   The Court should waive the 14-day stay imposed by Rule 4001(a)(3). ............... 11

IV.   Conclusion ............................................................................................................ 11

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Sun Valley Newspapers, Inc.*,
 171 B.R. 71 (B.A.P. 9th Cir. 1994) ................................................................................. 8, 9

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
 484 U.S. 365 (1988) ............................................................................................................ 8

**State Cases**

*Berg & Berg Enterprises, LLC v. Boyle*,
 178 Cal. App. 4th 1020 (2009) .......................................................................................... 10

**Federal Statutes**

11 U.S.C. § 362(d)(2) ............................................................................................................ 6, 7

11 U.S.C. § 362(g) ..................................................................................................................... 8

11 U.S.C. § 364 ......................................................................................................................... 5

**Rules**

Fed. R. Bankr. P. 4001(a)(3) ................................................................................................... 10

**Other Authorities**

9 Collier on Bankruptcy ¶ 4001.05 ...................................................................................... 10

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

## I.      Introduction[1]

In previous dueling motions, Broadway's main secured creditor Archway moved to lift the stay. And Broadway countered, not once but twice, with companion motions to approve a lease and DIP financing associated with that lease. Broadway had an obligation to present to this Court admissible evidence that confirmation of its plan is now "assured" based on a lease that is feasible and adequately protects Archway.

Instead, it presented to this Court Mr. Schwarcz—a felon convicted in connection with a money laundering conspiracy involving narcotics.

Knowingly.

Twice.

And, Broadway has now admitted not only to that prior knowledge that one of the prime movers of its "assured" plan, Mr. Schwarcz, is a felon and disbarred lawyer, but also that *it did not know* that the other prime promoter, Mr. Bombola, who supposedly was to orchestrate the finances and handle all of the money, has been found in contempt by the United States District Court for the Eastern District of Oklahoma *for stealing assets* from a receivership just earlier this year.[2]

The Court denied Archway's original motion for relief from stay without prejudice, based on the proposed lease and loan that Broadway had presented to the Court as a "huge win for Broadway." Under the proposed lease, the proposed tenants Zenith and DMB—run by

---

[1] Secured creditor, Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC ("Archway"), submits this Memorandum of Points and Authorities in support of its Renewed Motion for Relief From Automatic Stay ("Motion") (Dkt. pending) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

[2] Under a surprisingly similar structure. It is an interesting question of what is worse: **knowingly presenting** to this Court a convicted criminal, a money launderer, or **not knowing** that a federal court has found that the other main promoter in this lease arrangement was in contempt for stealing assets from a federal receivership and then lying to the receiver about it?

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Mr. Schwarcz and Mr. Bombola—were supposed to be responsible for collecting government grant money and using it to pay Archway under the plan. Archway had been asking for financials for the proposed tenants for months, without anything being provided.

This was puzzling. So, Archway did some internet sleuthing. It turns out that the proposed tenants have some skeletons in their closets.

Just a few months ago, Mr. Bombola (manager of Zenith) was held in contempt by a federal court for **stealing assets from a federal receivership** estate and then lying to the Receiver about it. Mr. Schwarcz (CEO of DMB) was convicted in connection with **criminal money laundering conspiracy** connected to narcotics sales—a felony which got him disbarred.

Broadway's manager, Mr. Gomperts, knew about Schwarcz's checkered past *before* he filed the Lease Motion (in fact, the plan was to hide Mr. Schwarcz's connections to DMB). And Mr. Gomperts had no clue about Mr. Bombola, even though that information was readily available on the internet and which Archway found within a matter of hours on a Friday afternoon.

Meanwhile the tenants and DIP lender (who also has a significant list of FINRA complaints) are ducking service of Archway's discovery.

In short, this entire lease concept has been exposed as the unworkable and foundationless sham that it is. Archway now renews its motion to lift the stay. Broadway admits that there is no equity.

Caught red-handed with the charade involving the criminals and thief-contemnors Mr. Schwarcz and Mr. Bombola, Broadway tried to withdraw its lease and DIP financing motions. The Court however nonetheless denied those motions this morning.

Archway renews its call for the Court to terminate the stay.

**II.    Background**

The full background of this matter is set forth in the Supplemental Declaration of Bobby Khorshidi.

The following reflects the relevant new information since the Court denied Archway's Original Motion.

### A. The Court Denies Archway's Original Motion for Relief From Stay Based on Broadway's Lease and Loan Motions.

On October 8, 2024, Archway filed a Motion for Relief from Stay as to the Broadway Property ("Original Motion") (Dkt. 213).

The following week, Broadway filed an opposition ("Opposition") (Dkt. 220) stating that it had developed a "visionary plan" that was "eminently confirmable" based on a DIP loan ("Loan") and long-term lease of the Broadway Property ("Lease"). *See* Opposition at 3:1–4. Broadway touted the reorganization plan, based on the Lease and Loan, as follows:

> The plan will be based upon a 15-year lease with options to extend that is contingent only upon this Court's approval of a $4 million DIP loan that does not seek to prime any secured creditor. The Lease is backed by a creditworthy tenant and projects plan payments to Archway that are both fair and feasible.

Opposition Dkt. 220 6:6–9.

Archway filed a reply ("Reply") (Dkt. 231), pointing out, among other things, that no motions to approve the Lease or Loan had been filed.

Two days after the Reply was filed, Broadway filed motions to approve the Lease and Loan (Dkts. 233, 237), along with applications for orders shortening time ("OSTs") (Dkts. 236, 242).

The Court denied the OSTs (Dkts. 243, 244), but, the day before the hearing on Archway's Original Motion, Broadway filed two noticed motions—(1) an *Amended Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Enter into Post-Petition Lease* (Dkt. 248) ("Lease Motion") and (2) *an Amended Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. Section 364* (Dkt. 253) ("Loan Motion").

The Lease Motion sought approval of a Lease with three tenants—Zenith Healthcare Management, LLC dba Broadway Community Care Centers ("Zenith"), The DMB Fund ("DMB"), and Levav Group LLC ("Levav" and collectively, the "Proposed Tenants"). The Loan Motion sought to approve a DIP loan from Honor Enterprise Funding LLC ("DIP Lender").

At the hearing on October 29, the Court denied Archway's Original Motion, indicating that under § 362(d)(2), Broadway had met its burden to show an effective reorganization in prospect based on the Lease and Loan, which were at that time being proposed pending hearings on the Lease and Loan Motions set for November 19, 2024. *See* Declaration of Gerrick M. Warrington ("Warrington Declaration") Exh. 9.

### B.    Archway Uncovers New Information Concerning the Proposed Tenants.

On November 5, 2024, Broadway filed oppositions to the Lease and Loan Motions. *See* Dkts. 279 ("Lease Opposition") and 280 ("Loan Opposition").

In the Lease Opposition, Archway exposed significant new information (collectively, "New Information") concerning the troubling backgrounds of Broadway's "team"—i.e., the Proposed Tenants and DIP Lender—which background included:

- Zenith's principal, Steve Bombola, being held in **contempt**—in July 2024—for **stealing assets** from a federal receivership and then lying to the Receiver about it.
- DMB's principal, David Schwarcz, being convicted in a **money laundering conspiracy**—a felony that got him disbarred.

*See, generally*, Warrington Declaration.

None of this New Information was ever disclosed by Broadway.

### C.    Archway Serves Discovery on the Proposed Tenants, But They Duck Service.

On November 12, 2024, Archway issued subpoenas to the Proposed Tenants and DIP Lender, seeking information related to the Lease and Loan Motions.

Efforts by the registered process servers were unsuccessful because either the address was a mailbox store (Levav), or the person said it was the wrong address (Levav, DMB), that they have never heard of the entity being served (Zenith), or they simply did not answer (DMB, Honor).

### D.    Broadway's Counsel Confirms What Was Known and Not Known.

In the morning of November 12, 2024, the deadline for Broadway to file its replies in support of the Lease and Loan Motions, Broadway's counsel, Mr. Derrick Talerico, spoke with Archway's counsel, Mr. Gerrick Warrington, on the phone. Warrington Decl., ¶ 25. During that call, Mr. Talerico told Mr. Warrington that he and Broadway's manager, Mr. Gomperts, had

learned about Mr. Schwarcz's problematic past about a month ago—*prior to* Broadway's filing the Lease and Loan Motions. Warrington Decl., ¶ 26.

Mr. Talerico explained that when they learned about Mr. Schwarcz's troubling past, they had him "remove himself" as an officer of DMB. Warrington Decl., ¶ 27. Indeed, the records of the California Secretary of State reflect that on November 5, 2024, at 9:11 a.m. (*prior to* Archway filing its Lease Opposition, which was filed at around 5:00 p.m. that day), a Statement of Information was filed that removed Mr. Schwarcz and replaced him with Judy Cox as CEO. Warrington Decl., ¶ 29; Exh. 27.

Mr. Talerico went on to explain that, although he and Mr. Gomperts knew about Mr. Schwarcz, they did not know about Mr. Bombola's misdeeds. Warrington Decl., ¶ 28. That was a surprise to them. But all of this New Information was obtained by Archway using internet searches of **publicly available sources** over the course of a few hours on a Friday evening prior to the opposition deadline to the Lease and Loan Motions. *See* Warrington Decl., ¶¶ 5–21.

E.    **Broadway Promptly Withdraws the Lease/Loan Motions After Being Exposed.**

After Mr. Talerico's call with Mr. Warrington, Broadway withdrew the Lease and Loan Motions (*see* Dkts. 292, 293), stating that Broadway will be filing future motions to approve "a lease without all of the proposed lessees in the current Lease…." Dkt. 292 at n. 1.

III.    **Discussion**

The following section sets forth the relevant legal standard and applies that standard to the relevant facts, which analysis demonstrates that Archway is entitled to the relief it seeks.

A.    **The Court should grant relief from stay under § 362(d)(2).**

Section 362(d)(2) provides that "the court shall grant relief from the stay ... (2) with respect to a stay of an act against property under subsection (a) of this section, if-- (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization…."

While "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property[,] ... the party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g). Accordingly, the party opposing the relief from a stay bears the burden to

demonstrate that such property is necessary to an effective reorganization. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988). The party opposing relief from stay must demonstrate "that the property is essential for an effective reorganization *that is in prospect*. This means ... that there must be a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 375–76 (citations and internal quotation marks omitted). The burden of proof "is a 'moving target which is more difficult to attain as the Chapter 11 case progresses." *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (B.A.P. 9th Cir. 1994) (citation omitted). "In the early stage of the case, the burden of proof ... is satisfied if the debtor can offer sufficient evidence to indicate that a successful reorganization within a reasonable time is plausible. Near the expiration of the exclusivity period, the debtor must demonstrate that a successful reorganization within a reasonable time is probable. ***After the expiration of the exclusivity period, the debtor must offer sufficient evidence to indicate that a successful reorganization within a reasonable time is assured.*** Regardless of the amount of time a case has been pending, if the evidence indicates that a successful reorganization within a reasonable time is impossible, the court must grant relief from the stay." *Id.* (emphasis added) (citations and internal quotation marks omitted).

### 1.     There is no equity in the Property.

Here, Broadway admits that there is no equity in the Property. Per Broadway's schedules, as of the petition date, the Property is worth $11.5 million, and Archway is owed over $15 million. The actual amounts owed to Archway are much greater, but it does not appear to be contested that the Property is significantly underwater.

### 2.     No effective reorganization within a reasonable time is "in prospect."

Exclusivity has expired, and Broadway must, therefore, demonstrate with admissible evidence that it is "**assured**" that a successful reorganization within a reasonable time is in prospect. *See Sun Valley Newspapers, Inc.*, 171 B.R. at 75 (citations omitted).

Broadway cannot meet this very heavy burden. This single-asset-real-estate case has been pending for **over 245 days**. Archway's treatment under Broadway's amended plan ("Amended Plan") (Dkt. 267) **hinges entirely** on a long-term lease of the Broadway Property.

1   But the Lease and Loan Motions have been *withdrawn*. And the Amended Plan itself along with circumstances surrounding the withdrawals of the Lease and Loan Motions demonstrate that no effective reorganization within a reasonable time is in prospect.

Mr. Gomperts and his counsel ***knew*** about Mr. Schwarcz's criminal conviction for money laundering and disbarment **prior to filing the Lease Motion**. They did not disclose that information. Instead, they tried to conceal it by having Mr. Schwarcz remove himself as CEO by filing an amended Statement of Information on November 5, 2024. By erasing Mr. Schwarcz's connection to the proposed tenant DMB, nobody would know about his conviction related to *money laundering conspiracy* connected to narcotics.

Just as bad, or perhaps worse, Mr. Gomperts failed to do any due diligence to vet Zenith or Mr. Bombola, its manager who is presently—*right now*—is supposed to be purging his contempt under a federal contempt order for his personal involvement in *stealing assets* from a federal receivership and then *lying to the Receiver about it*. Had the Court approved the Lease, Zenith and DMB would have been the ones entrusted with *handling government grant funding purportedly used* **to fund plan payments to Archway**. *See* Lease § 4.06.3(B) and (D), Dkt. 220 at 21 of 77.

The Amended Plan is not feasible, does not have an adequate means of implementation, and is not being proposed in good faith.

It proposes to install **Mr. Gomperts** as the post-confirmation fiduciary to these jointly-administered estates. But Mr. Gomperts has an *actual*—not a potential—conflict of interest, and it is clearly influencing his judgment and decision-making in this case. Not only does he owe fiduciary duties to this bankruptcy estate, but he also owes fiduciary duties to *creditors* of Broadway to avoid dissipating, endangering, or unduly risking corporate assets. *See Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1040–41 (2009) (providing that officers of insolvent corporations owe fiduciary duties to creditors). He is required to make a mandatory capital call under Broadway's Operating Agreement on the members of Broadway, including himself and Ms. And Mr. Halevy, to fund capital improvements to the Broadway Property from their over $60 million in net worths. Instead of fulfilling these duties, he is bending over

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

backwards to get Court approval of a Lease with **whomever** darkens his doorway—even untrustworthy characters like Mr. Schwarcz and Mr. Bombola and the shell entities they control.

He has now gone so far as to withhold material information **from the Court** and creditors and then conspired to conceal it and cover-it-up by having Mr. Schwarcz remove his connections to DMB from the public record.

This has gone way too far.

### B. The Court should waive the 14-day stay imposed by Rule 4001(a)(3).

Rule 4001(a)(3) accords a 14-day stay of an order granting relief from stay, "unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The stay allows time to seek a stay pending appeal. *See* 9 COLLIER ON BANKRUPTCY ¶ 4001.05 (R. Levin & H. J. Sommer eds., 16th ed.).

Here, the Court should waive the stay, as there would be a very low chance of obtaining a stay pending appeal.

## IV. Conclusion

As analyzed herein, the Court should grant the Renewed Motion in full.

DATED: November 19, 2024              FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                       MICHAEL GERARD FLETCHER
                                       GERRICK M. WARRINGTON


                                       By:      /s/ Gerrick M. Warrington
                                            GERRICK M. WARRINGTON
                                            Attorneys for Secured Creditor
                                            ARCHWAY BROADWAY LOAN SPE, LLC