Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:24-bk-12079-VZ |
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |
| Debtors and Debtors-in-Possession. | 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ |
| Affects: | Chapter 11 |
| ☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☒ Broadway Avenue Investments, LLC<br>☐ SLA Investments, LLC<br>☐ Negev Investments, LLC<br>☐ Alan Gomperts<br>☐ Daniel Halevy<br>☐ Susan Halevy | **DECLARATION OF GERRICK M. WARRINGTON IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S RENEWED MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:     December 10, 2024<br>Time:     10:30 a.m.<br>Crtrm.:   1368<br>             255 E. Temple Street<br>             Los Angeles, CA 90012<br><br>Hon. Vincent P. Zurzolo |

I, Gerrick M. Warrington, declare:

1.    I am a partner at Frandzel Robins Bloom & Csato, L.C., counsel of record for secured creditor Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("Archway"). If called as a witness, I could and would competently testify to all facts within my personal knowledge, except where stated upon information and belief.

2.    This declaration is submitted in support of Archway's *Renewed Motion for Relief From Automatic Stay* ("Motion") (Dkt. *pending*) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

**Compliance with Local Rule 9013-1(*l*)**

3.    The following section constitutes my certification and compliance with Local Rule 9013-1(*l*), which requires each party and attorney seeking renewed relief, that was previously denied, to present to the judge a declaration of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior motion including the following:

a.    date of the prior motion: October 8, 2024 (date of filing)

b.    identity of the judge to whom the prior motion was made: Judge Zurzolo

c.    ruling, decision or order on the prior motion: denied (*see* Dkt. 274)

d.    new or different facts and circumstances claimed to exist, which either did not exist or were not shown upon the prior motion: see below.

e.    new or different law or legal precedent claimed to exist, which either did not exist or were not shown upon the prior motion: not applicable.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**The Court denied Archway's prior Motion for Relief from Stay.**

4.      On October 29, 2024, I appeared in person at the hearing on Archway's original Motion for Relief from Stay. At that time, my recollection was that the Court indicated that it would have granted the Original Motion until it saw the Lease and Loan Motions. Later, I requested the transcript of the hearing, which I have now reviewed and which confirms my recollection. A true and correct copy of the transcript is attached hereto as **Exhibit 9.**

**Zenith**

5.      On November 1, 2024, I searched the California Secretary of State's website for the name "Zenith Healthcare Management" and "Broadway Community Care Centers" and different versions of those names. The results of those searches reflected no "hits" or that no such entities are registered in California.

**Steve Bombola**

6.      On November 1, 2024, I searched Google for the name "Steve Bombola." The results of that search produced various "hits."

7.      One such hit was a CNHI News article dated October 12, 2021, written by Janelle Stecklein and Renee Fite entitled, *With investment from governor, Adair County business to create jobs, expand operations*, which I printed to PDF. A true and correct copy of that PDF is attached as **Exhibit 10**.

8.      Another hit revealed references to the chapter 11 bankruptcy cases of CSR Worldwide OK, Inc. ("CSR") and its affiliate, CSR-OK Real Estate Holding Company, LLC ("CSR-OK" and together with CSR, the "CSR Debtors"), filed in the United States Bankruptcy Court for the Eastern District of Oklahoma, case numbers 23-80391 and 23-80390, respectively. I went to PACER and printed docket number 1 from CSR's case, a true and correct copy of which is attached as **Exhibit 11**.

9.      Another hit revealed a federal receivership action over CSR pending in the United States District Court for the Eastern District of Oklahoma. I went to PACER and printed docket numbers 3, 71, and 84, which are a Notice of Removal, a Contempt Motion against among others

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Mr. Bombola, and a Contempt Order against, among others, Mr. Bombola. True and correct copies of these documents are attached as **Exhibits 12–14**.

### The DMB Fund

10.     On November 1, 2024, I searched the California Secretary of State's website and printed to PDF the Articles of Incorporation for The DMB Fund, as well as the then-most recent Statement of Information, true and correct copies of which are attached, respectively, as **Exhibits 15, 16**. I later pulled an updated Statement of Information dated as of November 5, 2024, which removed Mr. Schwarcz as CEO. *See below.*

11.     On November 1, 2024, I searched Google for the name "David Schwarcz." The results of that search produced various "hits."

12.     One such hit was a November 6, 2020, Opinion and Order disbarring him. I pulled the Westlaw version of the Opinion and Order that I found on Google and printed that to PDF. A true and correct copy of that PDF is attached as **Exhibit 17**.

13.     I also searched PACER and found a District Court Disbarment Order, a true and correct copy of which is attached as **Exhibit 18**.

14.     I also searched Westlaw and found Mr. Schwarcz referenced in an unpublished memorandum by the Ninth Circuit BAP, a true and correct copy of which is attached as **Exhibit 19**.

### George Aaron Shohet

15.     On November 1, 2024, I went to the website for the California State Bar and searched for "George Shohet." I then printed that webpage to PDF. A true and correct copy of that PDF is attached as **Exhibit 20**.

### The Levav Group

16.     On November 1, 2024, I searched the California Secretary of State's website for the name "Levav Group." I printed the most recent Statement of Information to PDF, a true and correct copy of which is attached as **Exhibit 21**.

17.     On November 1, 2024, I searched Google for the name "Ahron Stock," and found a reference to a civil judgment against him. I had my paralegal pull the judgment, a true and correct copy of which is attached as **Exhibit 22**.

### Honor Enterprise Funding

18.     On November 1, 2024, I searched the California Secretary of State's website for the name "Honor Enterprise Funding," and different versions of that name. The results of those searches reflected no "hits" or that no such entities are registered in California.

19.     I then searched Google and found an Arizona entity on Arizona's Secretary of State's website. I printed the Articles of Incorporation and most recent Statement of Information, true and correct copies of which are attached, respectively, as **Exhibits 23 and 24**.

### Kirk J. Gill

20.     On November 1, 2024, I searched Google for "Kirk Gill," and found a Notice of Intent to Deny Securities Salesperson License from the State of Ohio, Department of Commerce. I then went to Westlaw and printed that document to PDF, a true and correct coy of which is attached hereto as **Exhibit 25**.

21.     I then searched the website for FINRA, the Financial Industry Regulatory Authority, for the name "Kirk Gill." That search resulted in several "hits," which I printed to PDF. A true and correct copy of that PDF is attached as **Exhibit 26**.

### Archway Opposes Lease and Loan Motions; Issues Discovery

22.     On November 5, 2024, Archway filed opposition to the Lease and Loan Motions, pointing out the above problems. *See* Dkts. 279, 280.

23.     Archway also served discovery that same day, including document requests to Broadway and subpoenas to the Proposed Tenants and DIP Lender.

24.     Efforts to serve the Proposed Tenants and DIP Lender have failed, as set forth in the accompanying declarations of the process server, true and correct copies of which are attached hereto as **Exhibits 27–30**.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Broadway's Counsel Confirms What Was Known and Not Known.**

25.    In the morning of November 12, 2024, the deadline for Broadway to file its replies in support of the Lease and Loan Motions, I spoke with Mr. Derrick Talerico, Broadway's counsel of record, on the phone.

26.    During that call, Mr. Talerico told me that he and Broadway's manager, Mr. Gomperts, had actually learned about Mr. Schwarcz's problematic past about a month ago (which would be prior to Broadway's filing the Lease and Loan Motions).

27.    Mr. Talerico explained that when they learned about Mr. Schwarcz's problematic past, they had him "remove himself" as an officer of DMB.

28.    Mr. Talerico went on to explain that, although he and Mr. Gomperts knew about Mr. Schwarcz, they did not know about Mr. Bombola's misdeeds. He said that was a surprise to them.

29.    After my call with Mr. Talerico, I checked the records of the California Secretary of State, which reflect that on November 5, 2024, at 9:11 a.m. (*prior to* Archway filing its Lease Opposition, which was filed at around 5:00 p.m. that day), a Statement of Information was filed that removed Mr. Schwarcz and replaced him with Judy Cox as CEO. A true and correct copy of that Statement of Information is attached as **Exhibit 31**.

**Broadway Withdraws the Lease and Loan Motions**

30.    Subsequently, on November 12, 2024, Broadway withdrew both the Lease and Loan Motions. *See* Dkts. 292, 293.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on this 19th day of November, 2024, at Los Angeles, California.

/s/ Gerrick M. Warrington
Gerrick M. Warrington

# EXHIBIT 9

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 2:24-bk-12079-VZ |
| | ) | CHAPTER  11 |
| | ) | |
| SEATON INVESTMENTS, LLC, | ) | Los Angeles, California |
| | ) | |
| | ) | Tuesday, October 29, 2024 |
| Debtor. | ) | |
| | ) | 10:30 a.m. |

JOINTLY ADMINISTERED WITH:
2:24-bk-12074-VZ (ALAN GOMPERTS);
2:24-bk-12075-VZ (DANIEL HALEVY);
2:24-bk-12076-VZ (SUSAN HALEVY);
2:24-bk-12080-VZ (COLYTON INVESTMENTS, LLC);
2:24-bk-12081-VZ (BROADWAY AVENUE INVESTMENTS, LLC);
2:24-bk-12082-VZ (SLA INVESTMENTS, LLC);
2:24-bk-12091-VZ (NEGEV INVESTMENTS, LLC)
AFFECTS: BROADWAY AVENUE INVESTMENTS, LLC


#2.00  MOTION FOR RELIEF FROM STAY [E-F][DKT.NO.213]

BEFORE THE HONORABLE VINCENT P. ZURZOLO,
UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:          See Page 2


Court Recorder [ECRO]:   Shemainee Carranza
                         855 460-9641

Transcribed by:       Exceptional Reporting Services, Inc.
                      P.O. Box 8365
                      Corpus Christi, TX 78468
                      361 949-2988



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

GW-008

2

**APPEARANCES:**


For Debtors:                    DERRICK TALERICO, ESQ.
                                Weintraub Zolkin Talerico & Selth
                                11766 Wilshire Boulevard
                                Suite 730
                                Los Angeles, CA 90025
                                310-207-1494

Also present:                   ALAN GOMPERTS

                                RYAN COY, ESQ.
                                Saul Ewing
                                1888 Century Park East
                                Suite 1500
                                Los Angeles, CA 90067
                                310-255-6168


For Creditors:                  GERRICK WARRINGTON, ESQ.
                                PAIGE S. POUPART, ESQ.
                                Frandzel Robins Bloom & Csato
                                1000 Wilshire Boulevard
                                19th Floor
                                Los Angeles, CA 90017

                                TANYA BEHNAM, ESQ.
                                Polsinelli
                                2049 Century Park East
                                Suite 2900
                                Los Angeles, CA 90067
                                310-556-1801

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 10 of 227

3

1    **Los Angeles, California; Tuesday, October 29, 2024; 10:35 a.m.**

2                              --oOo--

3         **THE COURT:**  Number 2 on the 10:30 calendar is Archway

4    Broadway Loan SPE versus Seaton Investments and Related

5    Debtors.

6         May I have an appearance on behalf of the moving

7    party first?

8         **MR. WARRINGTON:**  Good morning, Your Honor.  Gerrick

9    Warrington of Frandzel Robins Bloom and Csato on behalf of

10   Archway Broadway Loan SPE, LLC, the movant.  I'm here with my

11   associate Paige Poupart.

12        **THE COURT:**  Okay, good morning.

13        Okay.  On behalf of the respondents, please?

14        **MR. TALERICO:**  Good morning, Your Honor.  Derrick

15   Talerico on behalf of Debtor Broadway and also with me in court

16   is Alan Gomperts, the debtor's principal.

17        **THE COURT:**  Okay, good morning.

18        **MR. GOMPERTS:**  Good morning.

19        **THE COURT:**  And let's see.  Do we have an appearance

20   on behalf of Korth Direct Mortgage?

21      (No audible response)

22        Recorder is that –

23        **MS. BEHNAM:**  Good morning, Your Honor.

24        **THE COURT:**  There we go.  Go ahead, Counsel.

25        **MS. BEHNAM:**  Good morning, Your Honor.  Tanya Behnam

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 11 of 227

4

1   with Polsinelli, LLP on behalf of Korth Direct Mortgage.

2           **THE COURT:**  Okay.  And anyone appearing on behalf of

3   the remaining debtors?

4           **MR. COY:**  Yes, hello, Your Honor.  Ryan Coy by phone,

5   appearing on behalf of Alan Gomperts, Daniel Halevy and Susan

6   Halevy, the individual debtors in the jointly administered

7   case.

8           **THE COURT:**  Okay, good morning.

9           All right.  Mr. Warrington, is there anything you'd

10  like to add in support of your motion?

11          **MR. WARRINGTON:**  Good morning, Your Honor.  At this

12  time I have nothing to add to the moving papers.  I'm happy to

13  respond to any presentation today and answer any questions that

14  the Court may have.

15          **THE COURT:**  I have no questions.  Okay, thank you

16  very much.

17          **MR. WARRINGTON:**  Thank you, Your Honor.

18          **THE COURT:**  Mr. Talerico -- well let me first ask, is

19  there anyone appearing at the hearing today in support of the

20  motion besides the moving party?

21      (No audible response)

22          No.  Okay.  Mr. Talerico?

23          **MR. TALERICO:**  Thank you, Your Honor.  I'm not

24  looking to repeat what was in the papers but --

25          **THE COURT:**  Thank you.

5

1          **MR. TALERICO:**  -- just to highlight three -- well,

2    there were three grounds on which the motion was brought.  And

3    on D-1 for cause, bad faith, we don't believe there's really --

4    there is no bad faith at all.  The main three points were that

5    there were transfers of property by Mr. Gomperts and by Sue

6    Halevy prior to the bankruptcy.  Those properties were

7    transferred in both cases to wholly-owned LLCs, not away from

8    or hidden from creditors.  And none of those properties were

9    collateral of Archway.

10          In the case of Mr. Gomperts' three properties, those

11   transfers were made on advice of CPA for tax purposes.  It

12   turned out not to be of any benefit and they were transferred

13   back to his name prior to the bankruptcy.

14          In the case of Sue Halevy, she still owns -- wholly

15   owns the LLC to which that property was transferred which was

16   not collateral.

17          The other third ground that seemed to be a big point

18   for bad faith was the failure of this debtor, Broadway, to make

19   a capital call prepetition for its members to infuse equity

20   into the debtor in order to pay creditor claims.  And that is

21   accurate in that no capital call was made but as we point out

22   in the papers, that was a term in the operating agreement,

23   agreement among the members, about sharing costs and investment

24   when those calls were made.  It was not a (inaudible) fiduciary

25   duty that was breached for the benefit of creditors.

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 13 of 227

6

1          On D-2, whether there is equity in the property and

2    whether there is a -- whether the property is necessary for an

3    effective reorganization, we all agree there's no equity in the

4    property.

5          As to whether the property is necessary for the

6    reorganization, as Your Honor has probably seen and I know Your

7    Honor has seen because of the shortened notice papers that were

8    filed last week, we understand the reasons why those were

9    denied, we want to put forth to demonstrate to the Court that

10   the reorganization that is in process is not just some fantasy.

11   It is very real and very now.  Signed lease for 15 years, DIP

12   loan commitment for four million dollars that doesn't prime

13   anybody.  Those papers have now been refiled, re-noticed on

14   regular notice to be heard by this court on the 19th of

15   November.  Those things don't need to wait for a plan, we're

16   ready to go now.  Four million dollars into the debtor, 15-year

17   long-term lease.  That will assuredly allow for a plan to be

18   confirmed on fair and reasonable terms based on the DIP money

19   coming in and the income to be generated by the long-term

20   lease.

21          And then finally on the single-asset real estate

22   issue, in this we look mostly to our -- what occurred at the

23   status conference where dates were set.  And arguably there was

24   -- admittedly there was some issue and discussion amongst

25   Debtor's counsel of what was required following that hearing.

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 14 of 227

7

1          And looking back at the timing of the discussions

2    there, what seemed to only make sense was that the Court did

3    not expect and was not requiring a plan of disclosure statement

4    to be filed within the 90-day single asset real estate

5    restriction.  Reason being follow the discussion from the

6    hearing, Mr. Shechtman who represents the individual debtors,

7    at some point towards the end of the hearing, asked Your Honor

8    for clarification to be clear.

9          The Court wants -- and this is a quote:

10         "The Court wants the hearings on claim objections to

11         occur before confirmation of the plan or before

12         approval of the disclosure statement before we file

13         the disclosure statement."

14         And the Court's response was:

15         "To me the disclosure statement makes much more sense

16         and much easier for creditors to understand when we

17         know what the allowed claims are."

18         And following on that the Court indicated:

19         "So it makes much more sense in reality, in my

20         experience, that we know what the claims are before

21         you prepare a disclosure statement, before it's

22         prepared.

23         "And in these cases you're going to be using my

24         mandatory form, combined disclosure statement and

25         plan."

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 15 of 227

8

1          So looking back on that and reflecting on it, it seem

2     to be there was actually a conclusion at that hearing that from

3     the Court this is the schedule we are to follow.  We prepare a

4     plan of disclosure statement after the hearing -- if there are

5     any -- on claim objections.  So that is what we followed and

6     that's -- we're prepared to follow, keeping the schedule to

7     file our plan of disclosure statement timely for the schedule

8     that's set, disclosure statement hearing on December 11th which

9     requires us to file our plan of disclosure statement jointly in

10    two days.  So that is how the debtors have proceeded.

11          And I have no further comments at this point.

12          **THE COURT:**  Okay, thanks a lot.

13          **MR. TALERICO:**  Thank you.

14          **THE COURT:**  Ms. Behnam, do you wish to be heard?

15          **MS. BEHNAM:**  No, Your Honor, thank you.

16          **THE COURT:**  Mr. Coy, do you wish to be heard?

17          **MR. COY:**  I have nothing in addition to what

18    Mr. Talerico said.

19          **THE COURT:**  Okay, thanks.

20          Okay.  Mr. Warrington, do you wish to make a reply?

21          **MR. WARRINGTON:**  Thank you, Your Honor.

22          I think everything that was raised by Mr. Talerico

23    was addressed in our reply and moving paper so I have nothing

24    to add.

25          **THE COURT:**  Okay, thanks a lot.

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 16 of 227

9

1            First I need to rule on the evidentiary objections

2   that were interposed.  I refer to the numbers of the

3   objections.

4            Number 1, sustained.

5            Number 2, sustained.

6            Number 3, overruled.

7            Number 4, overruled.

8            Five, sustained.

9            Six, overruled.

10           Seven, overruled.

11           Okay.  Let's turn to the three grounds for relief

12  from stay asserted at Motion for Relief from Stay.  Let's deal

13  with the most mechanical one first, D-3.

14           Whoever wrote it did not -- either didn't understand

15  bankruptcy practice or didn't want to understand bankruptcy

16  practice.  That may be a bold conclusion to state but I'm happy

17  to make it because of my experience.  It just doesn't -- it

18  wasn't written artfully.  Let me put it that way.

19           The statute reads very plainly that a plan has to be

20  filed.  It could be a one-page document that says, "This is our

21  plan, we're going to pay our creditors back."  I suppose

22  someone could say that would be an act of bad faith and then if

23  that's before me I'll adjudicate that.  But the point being is

24  the only thing that has to happen is a plan has to be filed

25  within the first 90 days or payment's commenced.

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 17 of 227

10

1          Clearly whoever drafted that language either it was

2    drafted by counsel for secured creditors and lobbyists for

3    secured creditors or it was assisted by those folks.  But they

4    didn't think it through very carefully.

5          There are obviously options then so debtors in that

6    circumstance can either commence payments, they can ask to

7    extend the deadline, or they can file a plan.

8          A plan was filed here timely.  Is it the plan that

9    debtors are likely to pursue?  No.  But it was filed.  So it

10   satisfied the mechanical requirements of D-3.

11         With regards to attempting to read the tea leaves of

12   my status conference order, I offered this as advice.  I tried

13   to precise and I tried to be inclusive of everything I mean

14   when I say "This is the deadline and this is what I'm doing."

15   So if you are asked -- if one were to ask me, "Are you

16   extending the deadline under 362(d)(3)?"  Then I would have

17   addressed that question and said no.  And I wasn't.  So I just

18   want to be clear as we go forward in our lives.  That's not

19   what I mean to do when I set deadlines at a status conference

20   in a Chapter 11 case.

21         So fails under D-3.

22         D-1.  D-1, the moving party is arguing that there is

23   cause.  We can include the two-word anti-honorific "bad faith"

24   because the debtors transferred properties beforehand and also

25   because the debtors didn't turn to their equity infusers and

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 18 of 227

11

1   say "give us more money to pay creditors".  I imagine that if

2   the latter were an instance of bad faith, that a large

3   percentage of Chapter 11 cases have been filed in bad faith in

4   this country.  So I don't find that to be an instance of bad

5   faith.

6           Transfers?  When you hear the word "transfers" of

7   property before bankruptcy, it definitely raises a red flag and

8   one needs to look at it carefully.  I have looked at the

9   evidence carefully.  I do not see that these transfers were

10  done with the purpose of evading scrutiny of the bankruptcy

11  process, which is when you get down to it, that's what cause

12  for bad faith related to transfers of property is about.

13  That's not the case here.

14          So I find the motion fails under D-1.

15          D-2.  As asserted by counsel for the respondent,

16  nobody is arguing equity so there is no equity.  Burden shifts

17  to the debtor.

18          And I have to say, very rare -- and we're past the

19  four months of the first four months of the case so the burden

20  shifts.  The Supreme Court has said the first four months you

21  get a breathing spell.  And the Supreme Court has also been

22  very helpful in defining what that the second leg of 362(d)(2)

23  means; i.e. necessary for an effective reorganization.  If one

24  were to say that that means only that the property is required

25  or needed by the debtor, well that's almost always true.  So

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 19 of 227

12

1   that's not what that means.  The Supreme Court has made it

2   plain it means that a feasible reorganization can be mounted

3   within a reasonable period of time.  And I think that's almost

4   a direct quote from *Timbers of Inwood*.

5          So before I received the application for the order

6   shortening time on approval of the financing arrangement, the

7   debtors were at a loss on that element but they have shown me

8   that there is a feasible reorganization that can be mounted

9   within a reasonable period of time.  Does that mean that the

10  plan will be confirmed?  I don't know.  Maybe not.  But the

11  point is they have to show that there is something that can be

12  mounted and it's feasible and within a reasonable time and

13  they've done that.

14         So the motion is denied.

15         My findings of fact and conclusions of law are on the

16  record.  Please file a very simple propose lodged -- lodge a

17  very simple proposed order denying the motion without

18  prejudice.

19       **(Attorneys thank the Court)**

20         Mr. Warrington?

21       **MR. WARRINGTON:**  Your Honor, may I be heard briefly

22  on D-3?

23       **THE COURT:**  No.

24       **MR. WARRINGTON:**  There's an error in the dates.

25       **THE COURT:**  You can pursue whatever remedy you'd

13

1    like.

2         **MR. WARRINGTON:**  I appreciate that, Your Honor.

3         **THE COURT:**  Okay, thanks a lot.

4         **MR. WARRINGTON:**  Thank you.

5      **(Proceeding adjourned at 10:49 a.m.)**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

14

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **November 5, 2024**

          **Signed**                                          **Dated**

              *TONI HUDSON, TRANSCRIBER*

# EXHIBIT 10

https://www.cnhinews.com/article_a20ee36c-2b95-11ec-8222-5ff3e0eb549a.html

# With investment from governor, Adair County business to create jobs, expand operations

By Janelle Stecklein and Renee Fite/ CNHI News
Oct 12, 2021

**1 of 2**

‹  ›



Brigitte Beavers
Renee Fite/ The Stilwell Democrat Journal

WATTS, Okla. — Oklahoma's governor has invested $500,000 from a discretionary business recruitment account to help a fledgling manufacturing facility bolster production and increase employment opportunities for residents living in one of the state's poorest counties.

11/3/24, 5:00 PM    Northwestern Oklahoma town, governor, filed County, awaits tax credit jobs, expanding-jobs | cnhinews.com

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 24 of 227

Gov. Kevin Stitt awarded the funds from the state's Quick Action Closing Fund to a plastic pellet manufacturer that last year purchased a shuttered 59,000-square-foot plant and some of the remaining machinery inside. The plant, located about 200 miles northeast of Oklahoma City, sits on about 60 acres.

In return, CSR Worldwide OK Inc. must create 45 new direct jobs in Watts with an average wage of at least $34,385 per year. The company must maintain those jobs for least six full calendar quarters by Dec. 31, 2028, according to the contract obtained by CNHI Oklahoma through an open records request.

The projected public benefit of the project includes 60 new jobs with an average salary of $34,423 and an overall capital investment of $7.2 million, according to the contract.

"This money was a godsend," CSR President Steven Bombola said. "It came at the right time, the right amount. What that money has enabled us to do was build a foundation, and then from there be able to increase production (and) hire people."

Bombola said they used the funds to order some additional machinery and hire and retain about eight employees. He said that CSR also received a tax credit from an economic development corporation — independent of the state — that awards federal tax dollars to companies that create jobs in poor, rural counties.

He said the investment allowed the company, which has plants in Texas and Nebraska, to expedite processes that would normally take a year.

The company recycles plastic waste into pellets, which are then sold to customers who make items like outdoor decking furniture, lumber and roofing materials. Companies are buying the product as fast they can make it, he said.

He said the plant currently runs 24 hours, five days a week, but will start operating 24/7 when the machinery arrives in Oklahoma. Like many other products, CSR's machinery has faced shipping delays, but should be in Oklahoma within the next few weeks, Bombola said.

Once production ramps up, CSR hopes to triple the number of people it employs in Watts, potentially creating 45 jobs. They currently employ slightly more than a dozen people.

11/3/24, 5:02 PM   With investment from governor, Adair County business to expand jobs, expand operations | cnhinews.com

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 25 of 227

Bombola said they selected the Adair County town because it's located in the middle of their suppliers and their customers. The area has proven to have a reliable workforce and the support of the Cherokee Nation, he said.

Oklahoma also has "the most business-friendly environment," Bombola said.

"We were just dumbfounded," he said. "Why isn't every state like this? Wanting to bring in manufacturing, wanting to bring in hands-on type labor, wanting to improve, wanting to grow. It's just amazing, just amazing."

Carly Atchison, a spokeswoman for Stitt, said that "per the contract, the investment was made to provide dozens of good-paying jobs at a manufacturing facility in rural Oklahoma."

"One of Oklahoma's most important business sectors is manufacturing, and thanks to Gov. Stitt's vision to make Oklahoma the best state in the nation for business and his commitment to keep our low-tax, low-cost environment, more manufacturers than ever before are eyeing Oklahoma while existing companies are choosing to expand right here in state," she added.

The Governor's Quick Action Closing Fund, created by the Legislature in 2011, contains millions in legislatively appropriated funds that Oklahoma governors can spend at their discretion to help attract and retain high-impact businesses that provide jobs and the potential for economic growth.

Amy Blackburn, a Department of Commerce spokeswoman, said the closing fund expenditures are made at the governor's discretion, but "a significant amount of research" typically occurs first to ensure the expenditure will have  a positive impact on the state.

Adair County Commissioner Larry Wood, whose district includes Watts, said any business that brings 60 jobs to the area is going to benefit the surrounding areas. He said if CSR hires 40 people, they'll be the largest employer in town.

"Adair County needs something like that," he said. "Watts needs something like that. Watts used to be a booming little town. (It's) kind of gone by the wayside. But with a new waterpark going in and CSR coming in, there's going to be jobs that are readily available, I think, for the people in Adair County. So it's a good deal."

Wood also serves as the chair of the Eastern Oklahoma Development District, which is involved in different economic projects in seven counties. The group is not involved with the CSR project.

11/3/24, 5:00 PM

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 26 of 227

Construction is also underway in Watts on a 30-acre whitewater park located on the Oklahoma-Arkansas border. Construction on the $33 million facility is expected to wrap up in 2023. The facility is expected to draw 85,000 visitors a year.

"I think it's great," said Brigitte Beavers, Watts town clerk. "Bringing more jobs to Watts is just what we need. I believe since the (waterpark), there will be even more things coming in. Hopefully it will be a booming town just like way back when."

*Janelle Stecklein covers the Oklahoma Statehouse for CNHI's newspapers and websites. Reach her at [jstecklein@cnhinews.com](mailto:jstecklein@cnhinews.com).*

Janelle Stecklein

# EXHIBIT 11

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Eastern District of Oklahoma

Case number (if known): _____    Chapter ___11___

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy 06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | |
|---|---|
| **1. Debtor's name** | CSR Worldwide OK, Inc. |
| **2. All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names | |
| **3. Debtor's federal Employer Identification Number (EIN)** | 8 5 – 1 6 0 6 8 9 7 |

**4. Debtor's address**

**Principal place of business**

473617 E 610 Rd
Number        Street

Watts, OK 74964-6512
City                    State    ZIP Code

Adair
County

**Mailing address, if different from principal place of business**

Number        Street

P.O. Box

City                    State    ZIP Code

**Location of principal assets, if different from principal place of business**

Number        Street

City                    State    ZIP Code

| | |
|---|---|
| **5. Debtor's website (URL)** | |
| **6. Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) <br><br> ☐ Partnership (excluding LLP) <br><br> ☐ Other. Specify: _____ |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 1 of 83
GW-028

Debtor ___CSR Worldwide OK, Inc._____   Case number *(if known)* _____
      Name

**7. Describe debtor's business**

*A. Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. §101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. §781(3))

☑ None of the above

*B. Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

*C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See*
http://www.uscourts.gov/four-digit-national-association-naics-codes .

____  ____  ____  ____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first subbox. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply:*

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☑ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
                                       MM / DD / YYYY

          District _____ When _____ Case number _____
                                         MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes. Debtor _____ Relationship _____

       District _____ When _____

                                       MM / DD / YYYY

       Case number, if known _____

Official Form 201    Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Voluntary Petition for Non-Individuals Filing for Bankruptcy
Document    Page 2 of 83           page **2**
GW-029

| Debtor | CSR Worldwide OK, Inc. | Case number *(if known)* |
|---|---|---|
| | Name | |

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

| Number | Street |
|---|---|

_____
City    State    ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds?**

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49    ☑ 50-99    ☐ 1,000-5,000    ☐ 5,001-10,000    ☐ 25,001-50,000    ☐ 50,000-100,000
☐ 100-199    ☐ 200-999    ☐ 10,001-25,000    ☐ More than 100,000

**15. Estimated assets**

☐ $0-$50,000    ☑ $1,000,001-$10 million    ☐ $500,000,001-$1 billion
☐ $50,001-$100,000    ☐ $10,000,001-$50 million    ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000    ☐ $50,000,001-$100 million    ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million    ☐ $100,000,001-$500 million    ☐ More than $50 billion

---

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Voluntary Petition for Non-Individuals Filing for Bankruptcy
Document    Page 3 of 83

Debtor    CSR Worldwide OK, Inc.
       Name

Case number (if known) _____

| **16. Estimated liabilities** | ☐ $0-$50,000 | ☑ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- ■ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.
- ■ I have been authorized to file this petition on behalf of the debtor.
- ■ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___06/06/2023___
       MM/ DD/ YYYY

**X** _/s/ Troy Don Burgess_        _Troy Don Burgess_
Signature of authorized representative of debtor     Printed name

Title _____CEO_____

**18. Signature of attorney**

**X** ___/s/ Ron Brown___     Date _06/06/2023_
Signature of attorney for debtor           MM/ DD/ YYYY

_Ron Brown_
Printed name

_Brown Law Firm PC_
Firm name

_715 S. Elgin Ave_
Number      Street

_Tulsa_         _OK_    _74120_
City               State    ZIP Code

_(918) 585-9500_       _ron@ronbrownlaw.com_
Contact phone               Email address

_16352_          _OK_
Bar number             State

| Form **1120** | | **U.S. Corporation Income Tax Return** | | OMB No. 1545-0123 |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2021 or tax year beginning , ending ▶ Go to *www.irs.gov/Form1120* for instructions and the latest information. | | **2021** |

| A Check if: | | Name | B Employer identification number |
|---|---|---|---|
| 1a Consolidated return (attach Form 851) | | **CSR WORLWIDE OK, INC** | |
| b Life/nonlife consolidated return | **TYPE OR PRINT** | Number, street, and room or suite no. If a P.O. box, see instructions. | C Date incorporated |
| 2 Personal holding co. (attach Sch. PH) | | **4121 NW 37TH STREET** | **01/01/2020** |
| 3 Personal service corp. (see instructions) | | City or town, state, or province, country, and ZIP or foreign postal code | D Total assets (see instructions) |
| 4 Schedule M-3 attached X | | **LINCOLN          NE 68521** | $ **11,591,025** |

| E Check if: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change |
|---|

**Income**

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a | 770,315 |
| b | Returns and allowances | 1b | |
| c | Balance. Subtract line 1b from line 1a | 1c | 770,315 |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | 169,315 |
| 3 | Gross profit. Subtract line 2 from line 1c | 3 | 601,000 |
| 4 | Dividends and inclusions (Schedule C, line 23) | 4 | |
| 5 | Interest | 5 | 60,312 |
| 6 | Gross rents | 6 | |
| 7 | Gross royalties | 7 | |
| 8 | Capital gain net income (attach Schedule D (Form 1120)) | 8 | |
| 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 9 | |
| 10 | Other income (see instructions—attach statement) | 10 | |
| 11 | **Total income.** Add lines 3 through 10 ▶ | 11 | 661,312 |

**Deductions (See instructions for limitations on deductions.)**

| | | | |
|---|---|---|---|
| 12 | Compensation of officers (see instructions—attach Form 1125-E) ▶ | 12 | |
| 13 | Salaries and wages (less employment credits) | 13 | 476,139 |
| 14 | Repairs and maintenance | 14 | 616,310 |
| 15 | Bad debts | 15 | |
| 16 | Rents | 16 | 138,460 |
| 17 | Taxes and licenses | 17 | 111,115 |
| 18 | Interest (see instructions) | 18 | 326,634 |
| 19 | Charitable contributions | 19 | |
| 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | |
| 21 | Depletion | 21 | |
| 22 | Advertising | 22 | 1,281 |
| 23 | Pension, profit-sharing, etc., plans | 23 | |
| 24 | Employee benefit programs | 24 | |
| 25 | Reserved for future use | 25 | |
| 26 | Other deductions (attach statement) **See Stmt 1** | 26 | 539,364 |
| 27 | **Total deductions.** Add lines 12 through 26 ▶ | 27 | 2,209,303 |
| 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 | −1,547,991 |
| 29a | Net operating loss deduction (see instructions) | 29a | |
| b | Special deductions (Schedule C, line 24) | 29b | |
| c | Add lines 29a and 29b | 29c | |

**Tax, Refundable Credits, and Payments**

| | | | |
|---|---|---|---|
| 30 | **Taxable income.** Subtract line 29c from line 28. See instructions | 30 | −1,547,991 |
| 31 | Total tax (Schedule J, Part I, line 11) | 31 | 0 |
| 32 | Reserved for future use | 32 | |
| 33 | Total payments and credits (Schedule J, Part III, line 23) | 33 | |
| 34 | Estimated tax penalty. See instructions. Check if Form 2220 is attached ▶ ☐ | 34 | |
| 35 | **Amount owed.** If line 33 is smaller than the total of lines 31 and 34, enter amount owed | 35 | |
| 36 | **Overpayment.** If line 33 is larger than the total of lines 31 and 34, enter amount overpaid | 36 | |
| 37 | Enter amount from line 36 you want: Credited to 2022 estimated tax ▶          Refunded ▶ | 37 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Signature of officer **TROY BURGESS** | Date | Title **PRESIDENT** | May the IRS discuss this return with the preparer shown below? See instructions. X Yes ☐ No |
|---|---|---|---|

**Paid Preparer Use Only**

| | | | |
|---|---|---|---|
| Print/Type preparer's name **Robert Lewicki** | Preparer's signature | Date **02/08/23** | Check ☐ if self-employed | PTIN |
| Firm's name ▶ **Dana F. Cole & Company LLP** | | | Firm's EIN ▶ |
| Firm's address ▶ **1248 O St Ste 500** **Lincoln, NE  68508-1424** | | | Phone no. **402-479-9300** |

For Paperwork Reduction Act Notice, see separate instructions.
DAA

Form **1120** (2021)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:

CSR Worldwide, Inc.,                                                   Case No.
                                                                      Chapter 11 Sub V
                          Debtor.

**STATEMENT REGARDING CASH-FLOW STATEMENT
REQUIRED UNDER 11 U.S.C. § 1116(1)**

      CSR Worldwide, Inc. ("**Debtor**") submits to the Court their statement regarding

submission of a cash-flow statement as required under 11 U.S.C. § 1116(1).  In support, Debtor

shows the Court as follows:

      1.     Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States

Bankruptcy Code on June 6, 2023, at which time an Order for Relief was entered by the Court.

      2.     Debtor manages its financial affairs under the authority of Title 11 of Chapter 11

of the United States Code.

      3.     11 U.S.C. § 1116(1) requires a debtor-in-possession in a small business Chapter

11 case to file with the court within seven (7) days after the order for relief:

> **(A)** its most recent balance sheet, statement of operations, cash-
> flow statement, and Federal income tax return; or
> **(B)** a statement made under penalty of perjury that no balance
> sheet, statement of operations, or cash-flow statement has been
> prepared and no Federal tax return has been filed;[1]

      4.     As of the date of the filing of the petition in the above-styled bankruptcy case,

Debtors have not completed or otherwise prepared a cash-flow statement.

      5.     The Debtor's most recent Balance Sheet, Statement of Operations and Federal

---

[1] 11 U.S.C. § 1116(1)(A)-(B).

1

GW-033

Income Tax Return are attached to the Petition as required by statute.

DATED: June 6, 2023.

Respectfully submitted,
**Brown Law Firm, P.C.**, by:


/s/ Ron D. Brown
Ron D. Brown, OBA #16352
R. Gavin Fouts, OBA #33738
715 S. Elgin Ave
Tulsa, OK 74120
(918) 585-9500
(866) 552-4874 fax
ron@ronbrownlaw.com
gavin@ronbrownlaw.com
*Attorneys for the Debtor*

2

GW-034

7:32 AM

06/05/23

Accrual Basis

# CSRWorldwide OK, Inc.
# Balance Sheet
### As of June 5, 2023

|  | Jun 5, 23 |
|---|---|
| **ASSETS** |  |
| **Current Assets** |  |
| **Checking/Savings** |  |
| **Arvest #42091763** | -5,337.05 |
| **CSR Holdings Real Estate #0341** | 8,646.00 |
| **Frontier Bank #4510017499** | -13,428.76 |
| **Total Checking/Savings** | -10,119.81 |
| **Accounts Receivable** |  |
| **Accounts Receivable** | 1,255.10 |
| **Total Accounts Receivable** | 1,255.10 |
| **Other Current Assets** |  |
| **Inventory Asset** | 111,771.38 |
| **Undeposited Funds** | 14,000.00 |
| **Total Other Current Assets** | 125,771.38 |
| **Total Current Assets** | 116,906.67 |
| **Fixed Assets** |  |
| **Furniture and Equipment** |  |
| **2020 Furniture & Equipment** | 5,821,302.77 |
| **2021** | 403,436.74 |
| **2022** | 18,087.50 |
| **Building** | 65,563.11 |
| **Total Furniture and Equipment** | 6,308,390.12 |
| **Total Fixed Assets** | 6,308,390.12 |
| **Other Assets** |  |
| **Closing Costs** | 566,607.00 |
| **Escrow Fees** | 41,941.07 |
| **Lender Fee** | 65,250.00 |
| **Total Other Assets** | 673,798.07 |
| **TOTAL ASSETS** | **7,099,094.86** |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Accounts Payable** |  |
| **Accounts Payable** | 878,889.37 |
| **Total Accounts Payable** | 878,889.37 |
| **Other Current Liabilities** |  |
| **Bank of Hays LOC  #5122** | 600,000.00 |
| **Blue Bridge Financial LLC** | 215,242.30 |
| **Hot Loan-Zahav Asset Manzahav** | 17,450.00 |
| **Payroll Liabilities** |  |
| **Federal Withholding Taxes** | 39,740.54 |
| **Medicare Withholding Taxes** | 14,898.50 |
| **Social Security WithholdinTaxes** | 63,704.03 |
| **State Withholding Taxes** | 12,302.01 |
| **Total Payroll Liabilities** | 130,645.08 |
| **USDA Bank Of Hays #4879** | 5,288,688.92 |
| **Total Other Current Liabilities** | 6,252,026.30 |
| **Total Current Liabilities** | 7,130,915.67 |
| **Total Liabilities** | 7,130,915.67 |

GW-035

**7:32 AM**

**06/05/23**

**Accrual Basis**

## CSRWorldwide OK, Inc.
# Balance Sheet
### As of June 5, 2023

|  | Jun 5, 23 |
|---|---|
| **Equity** | |
|    Additional Paid-In Capital | 150,000.00 |
|    Equity | 1,478,076.51 |
|    Retained Earnings | -1,304,104.55 |
|    Net Income | -355,792.77 |
| **Total Equity** | -31,820.81 |
| **TOTAL LIABILITIES & EQUITY** | **7,099,094.86** |

Page 2

6:21 PM

06/02/23

Accrual Basis

# CSRWorldwide OK, Inc.
## Profit & Loss
### January through December 2022

|  | Jan - Dec 22 |
| --- | --- |
| **Ordinary Income/Expense** | |
| **Income** | |
| **Miscellaneous Income** | 2,866.47 |
| **Professional Serv/Grant Income** | 4,984.01 |
| **Sales** | |
| **Rental Income** | 700.00 |
| **Sales - Other** | 845,216.67 |
| **Total Sales** | 845,916.67 |
| **Scrap Metal Income** | 1,880.00 |
| **Total Income** | 855,647.15 |
| **Cost of Goods Sold** | |
| **Cost of Goods Sold** | 118,079.59 |
| **Freight and Shipping Costs** | 124,866.29 |
| **T-GOGS** | 22.93 |
| **Total COGS** | 242,968.81 |
| **Gross Profit** | 612,678.34 |
| **Expense** | |
| **Administrative Expenses** | 9,405.44 |
| **Advertising and Promotion** | 4,576.66 |
| **Automobile Expense** | |
| **Fuel,Gas** | 2,155.06 |
| **Total Automobile Expense** | 2,155.06 |
| **Bad Debt** | 3,611.65 |
| **Bank Service Charges** | 3,143.94 |
| **Building Expenses** | -1,361,611.40 |
| **Dues and Subscriptions** | 129.00 |
| **Electrical Expense** | -238,815.39 |
| **Equipment Expense** | -121,648.00 |
| **Insurance Expense** | 61,848.64 |
| **Interest Expense** | |
| **Pacifica Interest Expense** | 59,940.00 |
| **Interest Expense - Other** | 270,830.37 |
| **Total Interest Expense** | 330,770.37 |
| **Late Fees** | 496.11 |
| **Meals and Entertainment** | 1,682.83 |
| **Misc Expense** | 16,564.60 |
| **Office Supplies** | 3,925.36 |
| **Packaging** | 7,428.62 |
| **Payroll Expenses** | |
| **Payroll Taxes** | 120,193.91 |
| **Payroll Expenses - Other** | 607,148.74 |
| **Total Payroll Expenses** | 727,342.65 |
| **Professional Fees** | 272,358.78 |
| **Rent Expense** | 141,957.24 |
| **Repairs and Maintenance** | |
| **Building** | 32,523.40 |
| **Extruders** | 20,580.00 |
| **grinders/shredders** | 23,981.55 |
| **Repairs and Maintenance - Other** | 975,120.97 |
| **Total Repairs and Maintenance** | 1,052,205.92 |
| **Shop Supplies** | 97,769.13 |

**6:21 PM**

**06/02/23**

**Accrual Basis**

**CSRWorldwide OK, Inc.**
# Profit & Loss
**January through December 2022**

|  | Jan - Dec 22 |
|---|---|
| **Taxes** | |
| **Pacifica Taxes** | 6,000.00 |
| **Personal Property Taxes** | 0.00 |
| **Vehicles Taxes/Reg** | 710.18 |
| **Total Taxes** | 6,710.18 |
| **Travel Expense** | 56,999.99 |
| **Utilities** | 140,708.88 |
| **Total Expense** | 1,219,716.26 |
| **Net Ordinary Income** | -607,037.92 |
| **Other Income/Expense** | |
| **Other Income** | |
| **Interest Income** | 90,468.00 |
| **Total Other Income** | 90,468.00 |
| **Net Other Income** | 90,468.00 |
| **Net Income** | **-516,569.92** |

7:35 AM

06/05/23

Accrual Basis

# CSRWorldwide OK, Inc.
# Profit & Loss
## January 1 through June 5, 2023

|  | Jan 1 - Jun 5, 23 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Miscellaneous Income** | 2,591.34 |
| **Sales** | 430,864.68 |
| **Scrap Metal Income** | 153.00 |
| **Total Income** | 433,609.02 |
| **Cost of Goods Sold** | |
| **Cost of Goods Sold** | 172,725.20 |
| **Freight and Shipping Costs** | 10,290.28 |
| **Total COGS** | 183,015.48 |
| **Gross Profit** | 250,593.54 |
| **Expense** | |
| **Administrative Expenses** | 16,000.00 |
| **Advertising and Promotion** | 329.00 |
| **Automobile Expense** | |
| **Fuel,Gas** | 430.30 |
| **Total Automobile Expense** | 430.30 |
| **Bank Service Charges** | 4,865.38 |
| **Cleaning Expense** | 82.00 |
| **Computer and Internet Expenses** | 318.51 |
| **Electrical Expense** | 11,016.00 |
| **Equipment Expense** | 1,031.63 |
| **Insurance Expense** | 2,174.12 |
| **Interest Expense** | 26,285.48 |
| **Late Fees** | 434.58 |
| **Legal Fees** | 839.80 |
| **Meals and Entertainment** | 140.36 |
| **Misc Expense** | 2,100.00 |
| **Office Supplies** | 3,615.96 |
| **Payroll Expenses** | |
| **Payroll Taxes** | 42,978.02 |
| **Penalties** | 150.30 |
| **Payroll Expenses - Other** | 194,728.55 |
| **Total Payroll Expenses** | 237,856.87 |
| **Payroll Expenses0** | 2,378.96 |
| **Piper Airplane Fuel** | 0.00 |
| **Plant Maintenance** | 795.00 |
| **Professional Fees** | 2,850.00 |
| **Rent Expense** | 2,597.86 |
| **Repairs and Maintenance** | |
| **Building** | 180.00 |
| **Extruders** | 31,682.50 |
| **Yard Eq** | 16,400.00 |
| **Repairs and Maintenance - Other** | 58,044.16 |
| **Total Repairs and Maintenance** | 106,306.66 |
| **Shop Supplies** | 27,242.30 |
| **Taxes** | |
| **Franchise Tax** | 14,526.00 |
| **Taxes - Other** | 2,043.75 |
| **Total Taxes** | 16,569.75 |

GW-039

7:35 AM

06/05/23

Accrual Basis

# CSRWorldwide OK, Inc.
# Profit & Loss
### January 1 through June 5, 2023

|  | Jan 1 - Jun 5, 23 |
| --- | --- |
| Tools | 437.10 |
| Travel Expense | 31,720.97 |
| Utilities | 107,967.72 |
| **Total Expense** | 606,386.31 |
| **Net Ordinary Income** | -355,792.77 |
| **Net Income** | **-355,792.77** |

Page 2

GW-040

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | CSR Worldwide OK, Inc. |
| United States Bankruptcy Court for the: | Eastern District of Oklahoma |
| Case number (if known): | |

☐ Check if this is an amended filing

## Official Form 206A/B

## Schedule A/B: Assets — Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1: Cash and cash equivalents

1. Does the debtor have any cash or cash equivalents?
   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

2. **Cash on hand** _____

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1 Arvest Bank-Overdrawn | Checking account | 763 | $0.00 |
| 3.2 Frontier Bank | Checking account | 7499 | $1,263.63 |

4. **Other cash equivalents** *(Identify all)*
   **None**

5. **Total of Part 1**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

   $1,263.63

### Part 2: Deposits and prepayments

6. Does the debtor have any deposits or prepayments?
   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**
   Description, including name of holder of deposit

   | 7.1 Ozark Electic | $10,000.00 |
   |---|---|

Case 23-80391    Doc 1    Filed 08/06/23    Entered 08/06/23 09:47:02    Desc Main
Document    Page 14 of 83

GW-041

Debtor    **CSR Worldwide OK, Inc.**                                    Case number *(if known)* _____
          Name

---

7.2 **Processing Technologies Int'l, LLC** _____    **$187,000.00**

**8.    Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
       Description, including name of holder of prepayment

       **None**

**9.    Total of Part 2**                                                              **$197,000.00**
       Add lines 7 through 8 (including amounts on any additional sheets). Copy the total to line 81.

---

**Part 3:** Accounts receivable

---

**10.   Does the debtor have any accounts receivable?**
       ☐ No. Go to Part 4.
       ☑ Yes. Fill in the information below.

|  |  | Current value of debtor's interest |
| --- | --- | --- |

**11.   Accounts Receivable**

11a. 90 days old or less:    **$1,255.10** − **$0.00**    = ..... →    **$1,255.10**
                          face amount    doubtful or uncollectible accounts

11b. Over 90 days old:    _____ − _____    = ..... →    _____
                          face amount    doubtful or uncollectible accounts

**12.   Total of Part 3**                                                              **$1,255.10**
       Current value on lines 11a + 11b = line 12. Copy the total to line 82.

---

**Part 4:** Investments

---

**13.   Does the debtor own any investments?**
       ☐ No. Go to Part 5.
       ☑ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- |

**14.   Mutual funds or publicly traded stocks not included in Part 1**
       Name of fund or stock:

       **None**

**15.   Non-publicly traded stock and interests in incorporated and unincorporated
       businesses, including any interest in an LLC, partnership, or joint venture**
       Name of fund or stock:                        % of
                                                     ownership:

---

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
                Document    Page 15 of 83
                                                     GW-042

Debtor    **CSR Worldwide OK, Inc.**                                         Case number *(if known)* _____
          Name

|  | 95% membership interest (950 units) in CSR-OK Real Estate Holding Company, LLC | Value is computed at $0 because liabilities exceed the assets. This information provided on this non-filing entity is not designed to be | | |
|---|---|---|---|
| 15.1 | a full disclosure for the entity _____ | 100.00% | _____ | **$0.00** |

**16.** Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1

Describe:

**None**

**17.** Total of Part 4

Add lines 14 through 16 (including any additional sheets). Copy the total to line 83.                              **$0.00**

---

**Part 5:**  Inventory, excluding agriculture assets

---

**18.** Does the debtor own any inventory (excluding agriculture assets)?
☐ No. Go to Part 6.
☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19.** Raw materials | | | | |
| 19.1 Inventory | MM / DD / YYYY | (Unknown) | | $60,000.00 |
| **20.** Work in progress | | | | |
| None | | | | |
| **21.** Finished goods, including goods held for resale | | | | |
| 21.1 Inventory | MM / DD / YYYY | $111,771.38 | | $80,000.00 |
| **22.** Other inventory or supplies | | | | |
| None | | | | |

**23.** Total of Part 5

Add lines 19 through 22 (including any additional sheets). Copy the total to line 84.                              $140,000.00

**24.** Is any of the property listed in Part 5 perishable?
☑ No
☐ Yes

**25.** Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?
☑ No
☐ Yes

Debtor   **CSR Worldwide OK, Inc.**                              Case number *(if known)*
      Name

---

**26.** Has any of the property listed in Part 5 been appraised by a professional within the last year?
☑ No
☐ Yes

---

**Part 6:**  Farming and fishing-related assets (other than titled motor vehicles and land)

---

**27.** **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**
☑ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**28.** **Crops — either planted or harvested**

    **None**

**29.** **Farm animals** *Examples:* Livestock, poultry, farm-raised fish

    **None**

**30.** **Farm machinery and equipment** (Other than titled motor vehicles)

    **None**

**31.** **Farm and fishing supplies, chemicals, and feed**

    **None**

**32.** **Other farming and fishing-related property not already listed in Part 6**

    **None**

**33.** **Total of Part 6**
Add lines 28 through 32. Copy the total to line 85.                **$0.00**

**34.** **Is the debtor a member of an agricultural cooperative?**
☑ No
☐ Yes. Is any of the debtor's property stored at the cooperative?
    ☐ No
    ☐ Yes

**35.** **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**
☑ No
☐ Yes

**36.** **Is a depreciation schedule available for any of the property listed in Part 6?**
☑ No
☐ Yes

---

Case 23-80391   Doc 1   Filed 06/06/23   Entered 06/06/23 09:47:02   Desc Main
Document   Page 17 of 83

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* _____ |
|---|---|---|
| | Name | |

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**
☑ No
☐ Yes

---

**Part 7:**  Office furniture, fixtures, and equipment; and collectibles

---

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**
☐ No. Go to Part 8.
☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture** | | | |
| **None** | | | |
| **40. Office fixtures** | | | |
| **None** | | | |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| 41.1 Fixtures & Equipment leased from CSR-OK Real Estate Holding Company, LLC | $0.00 | | $0.00 |
| **Additional Page Total** - *See continuation page for additional entries* | | | $500,000.00 |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| **None** | | | |
| **43. Total of Part 7** Add lines 39 through 42. Copy the total to line 86. | | | $500,000.00 |

**44. Is a depreciation schedule available for any of the property listed in Part 7?**
☑ No
☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

---

**Part 8:**  Machinery, equipment, and vehicles

---

Case 23-80391     Doc 1     Filed 06/06/23     Entered 06/06/23 09:47:02     Desc Main
Document     Page 18 of 83
GW-045

Debtor    **CSR Worldwide OK, Inc.**                                    Case number *(if known)* _____
          Name

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**
☐ No. Go to Part 9.
☑ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 **1997 Ford F-150** | (Unknown) | | $1,000.00 |

**48. Watercraft, trailers, motors, and related accessories** *Examples*: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

**None**

**49. Aircraft and accessories**

**None**

**50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

**None**

| | |
|---|---|
| **51. Total of Part 8**<br>Add lines 47 through 50. Copy the total to line 87. | $1,000.00 |

**52. Is a depreciation schedule available for any of the property listed in Part 8?**
☑ No
☐ Yes

**53. Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 9: | Real Property |
|---|---|

**54. Does the debtor own or lease any real property?**
☐ No. Go to Part 10.
☑ Yes. Fill in the information below.

| General description<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has interest**

GW-046

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* |
|---|---|---|
| | Name | |

| | | | | |
|---|---|---|---|---|
| 55.1 | **Real property leased from CSR-OK Real Estate Holding Company, LLC** __473617 E 610 Rd Watts, OK 74964-6512__ | __Lease__ | __$0.00__ | __$0.00__ |

**56. Total of Part 9**

Add the current value on lines 55.1 through 55.3 and entries from any addition sheets. Copy the total to line 88.    __$0.00__

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No
☐ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No
☐ Yes

---

**Part 10:    Intangibles and Intellectual Property**

---

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets** | | | |
| 60.1 **Right to use protein processing patent of Troy Don Burgess** | __(Unknown)__ | | __$5,000.00__ |
| **61. Internet domain names and websites** | | | |
| 61.1 **https://:csrwwink.com** | __(Unknown)__ | | __$0.00__ |
| **62. Licenses, franchises, and royalties** | | | |
| **None** | | | |
| **63. Customer lists, mailing lists, or other compilations** | | | |
| 63.1 **Recycling Customer List** | __(Unknown)__ | | __$0.00__ |
| **64. Other intangibles, or intellectual property** | | | |
| **None** | | | |
| **65. Goodwill** | | | |
| **None** | | | |

**66. Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.    __$5,000.00__

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 20 of 83

Debtor    __CSR Worldwide OK, Inc.__                     Case number *(if known)* _____

        Name

**67.** **Do your lists or records include personally identifiable information of customers?** (as defined in 11 U.S.C. §§ 101(41A) and 107)

☑ No

☐ Yes

**68.** **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No

☐ Yes

**69.** **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 11: | All other assets |
| --- | --- |

**70.** **Does the debtor own any other assets that have not yet been reported on this form?**

☐ No. Go to Part 12.

☑ Yes. Fill in the information below.

|  | Current value of debtor's interest |
| --- | --- |

**71.** **Notes receivable**

Description (include name of obligor)

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Promissory Note dated June 17, 2021 payable by CSR-Watts Investment Fund, LLC in the amount of | $5,244,400.00 | - | $0.00 | => | $5,244,400.00 |
| 71.1 $5,244,400 | Total face amount | | doubtful or uncollectible amount | | |

**72.** **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

**None**

**73.** **Interests in insurance policies or annuities**

**None**

**74.** **Causes of action against third parties (whether or not a lawsuit has been filed)**

| | |
| --- | --- |
| Lawsuit in the United States District Court for the Eastern District of Oklahoma, Case No. 20-cv-474-RAW, against Oldcastle APG, Inc., Moistureshield, Inc. PPL Acquisition Group VII, LLC, Aaron Equipment Company, and William | $1,700,800.00 |
| 74.1 __Hassles__ | |

| Nature of Claim | Breach of Contract, Breach of Warranty of Description, Breach of Warranty of Fitness for a Particular Purpose, Breach of Warranty in Deed, Common Fraud, Constructive Fraud, Fraudulent Inducement, Tortious Interference with Contract, and Negligence |
| --- | --- |
| Amount Requested | $1,700,800.00 |

**75.** **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

Debtor    **CSR Worldwide OK, Inc.**

Name                                                          Case number *(if known)*

---

**None**

76. **Trusts, equitable or future interests in property**

    **None**

77. **Other property of any kind not already listed** *Examples:* Season tickets,
    country club membership

    **Project Management Agreement with CSR-OK Real Estate**                    _____ **(Unknown)**
    77.1 **Holding Company**

78. **Total of Part 11**                                                        _____ **$6,945,200.00**
    Add lines 71 through 77. Copy the total to line 90.

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
    ☑ No
    ☐ Yes

---

GW-049

Debtor   **CSR Worldwide OK, Inc.**
Name

Case number *(if known)*

| | | |
|---|---|---|
| **Part 12:** | Summary | |

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $1,263.63 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $197,000.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $1,255.10 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $140,000.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; collectibles.** *Copy line 43, Part 7.* | $500,000.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $1,000.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*............................................................... | → | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $5,000.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $6,945,200.00 | |
| 91. **Total.** Add lines 80 through 90 for each column...... 91a. | $7,790,718.73 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92 ................................................................... | | $7,790,718.73 |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 23 of 83

Debtor   **CSR Worldwide OK, Inc.**                                          Case number *(if known)* _____

Name

███  **Additional Page**

| General description | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **41.** **Office equipment -** *Continued* | | | |
| 41.2  **PTi Model G6000 Extrusion Pelletizing System** | **(Unknown)** | | **$500,000.00** |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 24 of 83

GW-051

Fill in this information to identify the case:

Debtor name ___CSR Worldwide OK, Inc.___

United States Bankruptcy Court for the: ___Eastern___ District of ___Oklahoma___
(State)

Case number (if known): _____

☐ Check if this is an
amended filing

Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property
12/15

**Be as complete and accurate as possible.**

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

|  | *Column A* Amount of claim Do not deduct the value of collateral. | *Column B* Value of collateral that supports this claim |
| --- | --- | --- |

**2.1** **Creditor's name**
Bank of Hays

**Creditor's mailing address**
Attn: Brandon Brough
1000 West 27th
Hays, KS 67601

**Creditor's email address, if known**
bprough@bankofhays.com

**Date debt was incurred** ___6/17/2021___

**Last 4 digits of account number** _4_ _8_ _7_ _9_

**Do multiple creditors have an interest in the same property?**
☐ No
☑ Yes. Specify each creditor, including this creditor, and its relative priority.
For Accounts Receivable: 1) Zahav Asset Management, LLC; **2) Bank of Hays**; For PTi Model G6000 Extrusion Pelletizing System: 1) Blue Bridge Financial, LLC; **2) Bank of Hays**

**Describe debtor's property that is subject to a lien**
Accounts Receivable, Inventory, Inventory, Frontier Bank, Lawsuit in the United States District Court for the Eastern District of Oklahoma, Case No. 20-cv-474-RAW, against Oldcastle APG, Inc., Moistureshield, Inc. PPL Acquisition Group VII, LLC, Aaron Equipment Company, and William Hassles, Arvest Bank-Overdrawn, PTi Model G6000 Extrusion Pelletizing System

**Describe the lien**
Commercial Loan

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

Column A: $5,660,945.66
Column B: $2,343,318.73

**Remarks:** Amount is disputed because collateral owned by Cherokee Nation Business LLC was recovered.

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**  $6,577,773.69

GW-052

| Debtor | CSR Worldwide OK, Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

## Part 1:     Additional Page

|  | Column A **Amount of claim** Do not deduct the value of collateral. | Column B **Value of collateral that supports this claim** |
|---|---|---|

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

**2.2** **Creditor's name**

Bank of Hays

**Describe debtor's property that is subject to a lien**

$600,000.00      unknown

**Creditor's mailing address**

Attn: Brandon Brough

1000 West 27th

Hays, KS 67601

**Describe the lien**

Line of Credit

**Creditor's email address, if known**

bprough@bankofhays.com

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Date debt was incurred**     4/11/22

**Is anyone else liable on this claim?**

☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**Last 4 digits of account number**     5 1 2 2

**As of the petition filing date, the claim is:**
Check all that apply.

☑ Contingent
☑ Unliquidated
☑ Disputed

**Do multiple creditors have an interest in the same property?**

☑ No
☐ Yes. Have you already specified the relative priority?

    ☐ No.   Specify each creditor, including this creditor, and its relative priority.

      _____

    ☐ Yes. The relative priority of creditors is specified on lines _____

---

Official Form 206D      Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**      page _2_ of _6_

Debtor     CSR Worldwide OK, Inc.                                    Case number (if known) _____
           Name

| Part 1: | Additional Page |
|---------|-----------------|

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|

**2.3** **Creditor's name**

Blue Bridge Financial, LLC

**Creditor's mailing address**

11921 Freedom Drive Suite 1130

Reston, VA 20190

**Creditor's email address, if known**

financing@bluebridgefinancial.com

**Date debt was incurred**     2/21/2022

**Last 4 digits of account number**     3  9  4  9

**Do multiple creditors have an interest in the same property?**

☐ No

☑ Yes. Have you already specified the relative priority?

  ☐ No.  Specify each creditor, including this creditor, and its relative priority.

  _____

  ☑ Yes. The relative priority of creditors is specified on lines  2.1

**Describe debtor's property that is subject to a lien**

PTi Model G6000 Extrusion Pelletizing System

**Describe the lien**

Purchase Money for Equipment

**Is the creditor an insider or related party?**

☑ No
☐ Yes

**Is anyone else liable on this claim?**

☐ No
☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

Column A: $299,378.03     Column B: $500,000.00

GW-054

| Debtor | CSR Worldwide OK, Inc. | Case number (if known) | |
|---|---|---|---|
| | Name | | |

---

| **Part 1:** | Additional Page | | Column A | Column B |
|---|---|---|---|---|

| | | | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** |

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

**2.4** **Creditor's name**

Zahav Asset Management, LLC

**Creditor's mailing address**

234 Cedarhurst Ave Apt 21b

Cedarhurst, NY 11516-1608

**Creditor's email address, if known**

info@zahavassetmgmt.com

**Date debt was incurred** _4/26/2023_

**Last 4 digits of account number** _4_ _8_ _9_ _7_

**Do multiple creditors have an interest in the same property?**

☐ No

☑ Yes. Have you already specified the relative priority?

   ☐ No. Specify each creditor, including this creditor, and its relative priority.

   _____

   ☑ Yes. The relative priority of creditors is specified on lines _2.1_

**Describe debtor's property that is subject to a lien**

Accounts Receivable

**Describe the lien**

Factoring Agreement

**Is the creditor an insider or related party?**

☑ No

☐ Yes

**Is anyone else liable on this claim?**

☐ No

☑ Yes. Fill out Schedule H: Codebtors (Official Form 206H).

**As of the petition filing date, the claim is:**

Check all that apply.

☐ Contingent

☐ Unliquidated

☑ Disputed

| | $17,450.00 | $1,255.10 |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 28 of 83
GW-055

| Debtor | CSR Worldwide OK, Inc. | Case number (if known) | |
|--------|------------------------|------------------------|--|
| | Name | | |

| **Part 2:** | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

**List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.**

**If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.**

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| Thomas A. Creekmore <br> Hall, Estill, et al. <br> 512 E 2nd St Ste1200 <br> Tulsa, OK 74120 | Line 2. _1_ | __ __ __ __ |
| Thomas A. Creekmore <br> Hall, Estill, et al. <br> 512 E 2nd St Ste1200 <br> Tulsa, OK 74120 | Line 2. _2_ | __ __ __ __ |
| Green Country Law Group, PLLC <br> Attn: Jared A. DeSilvey <br> 312 Court St <br> Muskogee, OK 74401 | Line 2. _3_ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |
| | Line 2. __ | __ __ __ __ |

GW-057

Form 206D | Official Part 2 of **Schedule D: Creditors Who Have Claims Secured by Property** | page _5_ of _6_

Debtor     CSR Worldwide OK, Inc.                                      Case number (if known) _____
           Name

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| _____<br>_____<br>_____ | Line 2. __ | __ __ __ __ |

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | CSR Worldwide OK, Inc. |

United States Bankruptcy Court for the:

Eastern District of Oklahoma

Case number (if known): _____

☐ Check if this is an
amended filing

## Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507)

   ☐ No. Go to Part 2.

   ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | **Priority creditor's name and mailing address**<br>Internal Revenue Service<br>Po Box 7346<br>Philadelphia, PA 19101-7346<br><br>**Date or dates debt was incurred**<br><br>**Last 4 digits of account number** ___ ___ ___ ___<br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) **(8)** | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the Claim:**<br>Federal Withholding Taxes<br><br>**Is the claim subject to offset?**<br>☑ No<br>☐ Yes | | $39,740.54 | $39,740.54 |
| **2.2** | **Priority creditor's name and mailing address**<br>Internal Revenue Service<br>Po Box 7346<br>Philadelphia, PA 19101-7346<br><br>**Date or dates debt was incurred**<br><br>**Last 4 digits of account number** ___ ___ ___ ___<br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) **(8)** | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the Claim:**<br>Medicare Withholding Taxes<br><br>**Is the claim subject to offset?**<br>☑ No<br>☐ Yes | | $14,898.50 | $14,898.50 |

Debtor   **CSR Worldwide OK, Inc.**

Name

Case number *(if known)*

---

**Part 1:** Additional Page

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $63,704.03 | $63,704.03 |
|---|---|---|---|---|

**2.3**

Priority creditor's name and mailing address

Internal Revenue Service

Po Box 7346

Philadelphia, PA 19101-7346

Date or dates debt was incurred

Last 4 digits of account number ___ ___ ___ ___

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) **(8)**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the Claim:
 Social Security Withholding Taxes

Is the claim subject to offset?
☑ No
☐ Yes

$63,704.03          $63,704.03

---

**2.4**

Priority creditor's name and mailing address

Oklahoma Tax Commission

2501 N. Lincoln Blvd

Oklahoma City, OK 73103-0000

Date or dates debt was incurred

Last 4 digits of account number ___ ___ ___ ___

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) **(8)**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the Claim:
 State Withholding Taxes

Is the claim subject to offset?
☑ No
☐ Yes

$12,302.01          $12,302.01

---

GW-061

Debtor    **CSR Worldwide OK, Inc.**          Case number *(if known)* _____
       Name

**Part 2:**   List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | **Amount of claim** |
|---|---|---|

**3.1** Nonpriority creditor's name and mailing address
**ACEC**

3401 Kelley Hwy

Fort Smith, AR 72914

Date or dates debt was incurred    7/2/21

Last 4 digits of account number    S   I   N   G

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:   Vendor

Is the claim subject to offset?
☑ No
☐ Yes

**Amount of claim: $1,533.00**

---

**3.2** Nonpriority creditor's name and mailing address
**ADG Solutions**

4508 - B9 Bibb Blvd

Tucker, GA 30084

Date or dates debt was incurred    9/16/2021

Last 4 digits of account number    2   0   3   6

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:   Vendor

Is the claim subject to offset?
☑ No
☐ Yes

**Amount of claim: $1,175.00**

---

**3.3** Nonpriority creditor's name and mailing address
**Airgas USA, LLC (C067)**

1404 S Pleasant St

Springdale, AR 72764-6225

Date or dates debt was incurred    3/9/2022

Last 4 digits of account number    1   0   9   9

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim:   Vendor

Is the claim subject to offset?
☑ No
☐ Yes

**Amount of claim: unknown**

---

**3.4** Nonpriority creditor's name and mailing address
**Allied Dies Inc**

800 Cashman Drive

Chippewa Falls, WI 54729

Date or dates debt was incurred    2/8/2023

Last 4 digits of account number    w   i   d   e

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:   Vendor

Is the claim subject to offset?
☑ No
☐ Yes

**Amount of claim: $28,682.50**

Case 23-80391    Doc 1    Filed 05/05/23    Entered 05/05/23 09:47:02    Desc Main
Document    Page 35 of 83

GW-062

Debtor     **CSR Worldwide OK, Inc.**                                    Case number *(if known)* _____
       Name

## Part 2:  Additional Page

---

**3.5** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | unknown
---|---|---|---

**Alternative Plastics**

**12579 Pioneer Ln.**

**Gentry, AR 72734**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Date or dates debt was incurred     4/6/2022

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number     1  9  7  3

---

**3.6** Nonpriority creditor's name and mailing address

**Boyd Metals**

**P.O. Box 819**

**Fort Smith, AR 72902**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Date or dates debt was incurred     6/8/2021

**Is the claim subject to offset?**
☑ No
☐ Yes

unknown

Last 4 digits of account number     2  2  5  5

---

**3.7** Nonpriority creditor's name and mailing address

**Bunting Magnetics**

**Po Box 468**

**Newton, KS 67114-0468**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Date or dates debt was incurred     4/4/2022

**Is the claim subject to offset?**
☑ No
☐ Yes

$5,850.50

Last 4 digits of account number     R  0  0  2

---

**3.8** Nonpriority creditor's name and mailing address

**Central States Reprocessing, LLC**

**4121 Nw 37th St**

**Lincoln, NE 68524**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Date or dates debt was incurred     _____

**Is the claim subject to offset?**
☑ No
☐ Yes

unknown

Last 4 digits of account number     ___ ___ ___ ___

---

GW-063

Debtor     **CSR Worldwide OK, Inc.**                                      Case number *(if known)* _____
           Name

---

| **Part 2:** | Additional Page |
|---|---|

---

**3.9** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **$615.00**

**Cold Shot Chillers**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**14343 Interdrive East**

**Houston, TX 77032**

**Basis for the claim:** Vendor

Date or dates debt was incurred     8/26/2021        **Is the claim subject to offset?**
☑ No
Last 4 digits of account number      7   5   4   2     ☐ Yes

---

**3.10** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **unknown**

**Covenant Insurance Services, LLC**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**807 N Jim Thorpe Blvd.**

**Prague, OK 74864**

**Basis for the claim:** Insurance Premiums

Date or dates debt was incurred     Unknown          **Is the claim subject to offset?**
☑ No
Last 4 digits of account number     ___  ___  ___  ___     ☐ Yes

---

**3.11** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **$2,850.00**

**Dana F. Cole & Company, LLP**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**1248 O St Ste 500**

**Lincoln, NE 68508-1424**

**Basis for the claim:** Professional Services

Date or dates debt was incurred     4/21/2023        **Is the claim subject to offset?**
☑ No
Last 4 digits of account number      4   6   1   1     ☐ Yes

---

**3.12** | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **$22,047.99**

**David Hanf**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**7309 Rye Hill Rd E**

**Fort Smith, AR 72916**

**Basis for the claim:** Wages

Date or dates debt was incurred     03/10/2023        **Is the claim subject to offset?**
☑ No
Last 4 digits of account number      1   0   2   3     ☐ Yes

---

GW-064

Debtor   **CSR Worldwide OK, Inc.**                                       Case number *(if known)* _____

   Name

---

**Part 2:** Additional Page

---

**3.13** Nonpriority creditor's name and mailing address

**Duffy Trading**

**2931 Francis Scott Key Highway**

**Taneytown, MD 21787**

Date or dates debt was incurred    9/15/2022

Last 4 digits of account number    2  2  5  6

As of the petition filing date, the claim is:                              unknown
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

---

**3.14** Nonpriority creditor's name and mailing address

**Floyds Metal Buildings & Construction**

**187 County Road 514**

**Berryville, AR 72616**

Date or dates debt was incurred    _____

Last 4 digits of account number    __ __ __ __

As of the petition filing date, the claim is:                              unknown
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

---

**3.15** Nonpriority creditor's name and mailing address

**Forward Brokerage, LLC**

**Po Box 310**

**Altoona, PA 16603-0310**

Date or dates debt was incurred    11/17/2022

Last 4 digits of account number    2  8  1  5

As of the petition filing date, the claim is:                              $1,880.00
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

---

**3.16** Nonpriority creditor's name and mailing address

**Green Quest**

**440 J St**

**Lincoln, NE 68508**

Date or dates debt was incurred    7/20/2022

Last 4 digits of account number    4  2  7  2

As of the petition filing date, the claim is:                              unknown
*Check all that apply.*
☑ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

---

Debtor    **CSR Worldwide OK, Inc.**                                    Case number *(if known)* _____
_____
Name

---

**Part 2:** Additional Page

---

| **3.17** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$91,056.92** |

Greenview Materials. Inc.

1800 W Rogers Ave

Appleton, WI 54914-5001

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Vendor

Date or dates debt was incurred    1/5/2022

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number    1  2  9  0

---

| **3.18** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$4,661.09** |

Herbold Meckesheim USA

Resource Recycling Systems Inc.

130 Industrial Drive

North Smithfield, RI 02896

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Vendor

Date or dates debt was incurred    12/29/2021

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number    3  0  2  5

---

| **3.19** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **unknown** |

Hugg & Hall Equipment Co.

P.O. Box 194110

Little Rock, AR 72219-4110

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Vendor

Date or dates debt was incurred    5/2/2022

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number    9  1  6  8

---

| **3.20** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$7,737.03** |

J.B. Hunt Transport, Inc.

Po Box 847977

Dallas, TX 75284-7977

☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** Vendor

Date or dates debt was incurred    7/28/2022

**Is the claim subject to offset?**
☑ No
☐ Yes

Last 4 digits of account number    9  2  8  0

---

GW-066

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**3.21** Nonpriority creditor's name and mailing address

Larkin Mechanical Company

507 E Main Street

Siloam Springs, AR 72761

Date or dates debt was incurred    5/19/2022

Last 4 digits of account number    1  9  8  8

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
- ☑ No
- ☐ Yes

$236.25

---

**3.22** Nonpriority creditor's name and mailing address

Latham, Steele, Lehman, Keele, Ratcliff,

1515 E 71st Street Ste 200

Tulsa, OK 74136-0000

Date or dates debt was incurred    2021-2023

Last 4 digits of account number    n  o  w  n

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:  Attorney Fees

Is the claim subject to offset?
- ☑ No
- ☐ Yes

unknown

---

**3.23** Nonpriority creditor's name and mailing address

Linder Recyclingtech America LLC

152 Walker Road

Statesville, NC 28625

Date or dates debt was incurred    11/12/2021

Last 4 digits of account number    3  6  8  6

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
- ☑ No
- ☐ Yes

unknown

---

**3.24** Nonpriority creditor's name and mailing address

LLT Industries

3045 S 44th St

Lincoln, NE 68506-3329

Date or dates debt was incurred    9/30/2021

Last 4 digits of account number    2  1  0  9

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:  Shipping

Is the claim subject to offset?
- ☑ No
- ☐ Yes

unknown

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* |
|---|---|---|
| | Name | |

## Part 2: Additional Page

**3.25** | Nonpriority creditor's name and mailing address
**LRS**

848 E Highway 264

Springdale, AR 72764-8210

Date or dates debt was incurred    5/31/2022

Last 4 digits of account number    1  3  9  0

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

unknown

---

**3.26** | Nonpriority creditor's name and mailing address
**Mark Industries, Inc.**

715 Main St

Cassville, MO 65625

Date or dates debt was incurred    7/22/2022

Last 4 digits of account number    9  9  2  0

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

unknown

---

**3.27** | Nonpriority creditor's name and mailing address
**Muehlstein**

1900 Summit Tower Blvd Ste 900

Orlando, FL 32810

Date or dates debt was incurred    7/28/2022

Last 4 digits of account number    2  0  1  4

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

unknown

---

**3.28** | Nonpriority creditor's name and mailing address
**Pipelife Jet Stream**

1700 S Lincoln St

Siloam Springs, AR 72761

Date or dates debt was incurred    1/4/2023

Last 4 digits of account number    __ __ __ __

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

$49,285.99

Case 23-80391    Doc 1    Filed 07/06/23    Entered 07/06/23 09:47:02    Desc Main
Document    Page 41 of 83

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* |
|---|---|---|
| | Name | |

## Part 2: Additional Page

**3.29** Nonpriority creditor's name and mailing address

Processing Technologies Intl, LLC

2655 White Oak Circle

Aurora, IL 60502

Date or dates debt was incurred   6/15/2022

Last 4 digits of account number   0  5  3  9

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Equipment Purchases

Is the claim subject to offset?
☑ No
☐ Yes

unknown

---

**3.30** Nonpriority creditor's name and mailing address

R & R Express Logistics

PO Box Box 72124

Cleveland, OH 44192

Date or dates debt was incurred   2/15/2022

Last 4 digits of account number   0  9  2  1

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  Shipping

Is the claim subject to offset?
☑ No
☐ Yes

$33,075.00

---

**3.31** Nonpriority creditor's name and mailing address

REI Subsidiary CDE 22, LLC

c/o REI Development Corp.

2912 Enterprise Dr

Durant, OK 74701-1954

Date or dates debt was incurred   6/17/2021

Last 4 digits of account number   a  n  —  A

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim:  Guaranty

Is the claim subject to offset?
☐ No
☑ Yes

unknown

---

**3.32** Nonpriority creditor's name and mailing address

REI Subsidiary CDE 22, LLC

c/o REI Development Corp.

2912 Enterprise Dr

Durant, OK 74701-1954

Date or dates debt was incurred   6/17/2021

Last 4 digits of account number   a  n  —  B

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

Basis for the claim:  Guaranty

Is the claim subject to offset?
☑ No
☐ Yes

unknown

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* |
|---|---|---|
| | Name | |

---

| **Part 2:** | Additional Page |
|---|---|

---

**3.33**

**Nonpriority creditor's name and mailing address**

Sherwin Williams Co

101 W. Prospect Ave

Cleveland, OH 44115

Date or dates debt was incurred ___4/23/2022___

Last 4 digits of account number ___3___ ___0___ - ___4___

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** ___Vendor___

**Is the claim subject to offset?**
☑ No
☐ Yes

___unknown___

---

**3.34**

**Nonpriority creditor's name and mailing address**

Smurfit Kappa

9709 Hwy 271 South

Fort Smith, AR 72908

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** ___Vendor___

**Is the claim subject to offset?**
☑ No
☐ Yes

___unknown___

---

**3.35**

**Nonpriority creditor's name and mailing address**

Star Mechanical Supply

P.O. Box

Springdale, AR 72765

Date or dates debt was incurred ___5117227___

Last 4 digits of account number ___7___ ___3___ ___6___ ___1___

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** ___Vendor___

**Is the claim subject to offset?**
☑ No
☐ Yes

___unknown___

---

**3.36**

**Nonpriority creditor's name and mailing address**

Swank's Welding

58566 S. 700 Road

Watts, OK 74964

Date or dates debt was incurred ___2021___

Last 4 digits of account number ___5___ ___0___ ___0___ ___1___

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

**Basis for the claim:** ___Vendor___

**Is the claim subject to offset?**
☑ No
☐ Yes

___$4,200.00___

---

| Debtor | **CSR Worldwide OK, Inc.** | Case number *(if known)* |
|--------|---------------------------|--------------------------|
|        | Name                      |                          |

## Part 2: Additional Page

**3.37** Nonpriority creditor's name and mailing address
**Sylvane, Inc.**

245 Hembree Park Dr Ste 124

Roswell, GA 30076-5702

Date or dates debt was incurred

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

unknown

---

**3.38** Nonpriority creditor's name and mailing address
**System Scale**

4393 West 96th Street

Indianapolis, IN 46268

Date or dates debt was incurred

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

unknown

---

**3.39** Nonpriority creditor's name and mailing address
**Total Recycling Paper & Plastic**

PO Box 1970

Lowell, AR 72745

Date or dates debt was incurred    6/16/2022

Last 4 digits of account number    7  9  0  4

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

$28,589.36

---

**3.40** Nonpriority creditor's name and mailing address
**Uline**

Attn: Accounts Receivable

Po Box 88741

Chicago, IL 60680-1741

Date or dates debt was incurred    7/26/2022

Last 4 digits of account number    5  9  7  5

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:  Vendor

Is the claim subject to offset?
☑ No
☐ Yes

$2,685.84

Debtor  **CSR Worldwide OK, Inc.**
_____
Name

Case number *(if known)* _____

---

**Part 2:** Additional Page

---

**3.41** Nonpriority creditor's name and mailing address

**Unishippers**

**PO Box 21228 Dept 57**

**Tulsa, OK 74121-0000**

Date or dates debt was incurred _____

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim: _____

Is the claim subject to offset?
- ☑ No
- ☐ Yes

$521.16

---

**3.42** Nonpriority creditor's name and mailing address

**VSC Fire & Security**

**P.O. Box 1659**

**Rogers, AR 72756**

Date or dates debt was incurred    4/8/2022

Last 4 digits of account number    5  8  6  6

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim: Vendor

Is the claim subject to offset?
- ☑ No
- ☐ Yes

unknown

---

**3.43** Nonpriority creditor's name and mailing address

**Watts Public Works Authority**

**220 Second St.**

**Watts, OK 74964**

Date or dates debt was incurred    4/3/2023

Last 4 digits of account number ___ ___ ___ ___

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim: _____

Is the claim subject to offset?
- ☑ No
- ☐ Yes

$481.13

---

**3.44** Nonpriority creditor's name and mailing address

**Wholesale Electric Supply**

**P O BOX 1258**

**Texarkana, TX 75504**

Date or dates debt was incurred    11/17/2021

Last 4 digits of account number    6  4  4  8

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim: Vendor

Is the claim subject to offset?
- ☑ No
- ☐ Yes

unknown

---

Debtor   **CSR Worldwide OK, Inc.**

Case number *(if known)* _____

Name

---

| Part 2: | Additional Page |

---

**3.45** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | unknown
| | *Check all that apply.*
| **Wintech Windows** | ☐ Contingent
| | ☐ Unliquidated
| **15 Old Stonebreak Rd** | ☑ Disputed
| **Ballston Spa, NY 12020-4900** | **Basis for the claim:** Vendor
| | **Is the claim subject to offset?**
| Date or dates debt was incurred   1/26/2023 | ☑ No
| Last 4 digits of account number   0  3  2  9 | ☐ Yes

---

**3.46** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $22,177.50
| | *Check all that apply.*
| **W-J Inc.** | ☐ Contingent
| | ☐ Unliquidated
| **34180 Solon Road** | ☑ Disputed
| **Solon, OH 44139** | **Basis for the claim:** Vendor
| | **Is the claim subject to offset?**
| Date or dates debt was incurred   2/28/2022 | ☑ No
| Last 4 digits of account number   0  3  7  1 | ☐ Yes

---

Debtor   __CSR Worldwide OK, Inc.__                                  Case number *(if known)* _____
               Name

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---|---|

**4.** **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| 4.1  **Arvest Bank**<br>**502 South Main**<br>**Tulsa, OK 74103-0000** | Line **3.31**<br>☐ Not listed. Explain _____ | ___ ___ ___ ___ |
| 4.2  **Arvest Bank**<br>**502 South Main**<br>**Tulsa, OK 74103-0000** | Line **3.32**<br>☐ Not listed. Explain _____ | ___ ___ ___ ___ |
| 4.3  **Charles Greenough**<br>**McAfee & Taft, P.C.**<br>**2 W 2nd St Ste 1100**<br>**Tulsa, OK 74103** | Line **3.31**<br>☐ Not listed. Explain _____ | ___ ___ ___ ___ |
| 4.4  **Charles Greenough**<br>**McAfee & Taft, P.C.**<br>**2 W 2nd St Ste 1100**<br>**Tulsa, OK 74103** | Line **3.32**<br>☐ Not listed. Explain _____ | ___ ___ ___ ___ |

GW-074

Debtor    **CSR Worldwide OK, Inc.**
_____    Case number *(if known)* _____
Name

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |

**5.    Add the amounts of priority and nonpriority unsecured claims.**

|  |  |  | **Total of claim amounts** |
|---|---|---|---|
| 5a. | **Total claims from Part 1** | 5a. | **$130,645.08** |
| 5b. | **Total claims from Part 2** | 5b. + | **$309,341.26** |
| 5c. | **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | **$439,986.34** |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 48 of 83
GW-075

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | CSR Worldwide OK, Inc. |
| United States Bankruptcy Court for the: | Eastern District of Oklahoma |
| Case number (if known): | Chapter 11 |

☐ Check if this is an
amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                          12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

1. Does the debtor have any executory contracts or unexpired leases?

   ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| **2.1** | State what the contract or lease is for and the nature of the debtor's interest | Commercial Lease of Real Estate and Equipment | CSR-OK Real Estate Holding Company, LLC |
| | | Contract to be ASSUMED | c/o CSR Worldwide OK, Inc. |
| | State the term remaining | 0 months | 473617 E 610 Rd |
| | List the contract number of any government contract | | Watts, OK 74964 |
| **2.2** | State what the contract or lease is for and the nature of the debtor's interest | Commercial Lease of 30 acres pasture land access for yearly payment of $700 | Cash, Stan |
| | | Contract to be ASSUMED | PO Box Box 444 |
| | State the term remaining | 0 months | Watts, OK 74964 |
| | List the contract number of any government contract | | |
| **2.3** | State what the contract or lease is for and the nature of the debtor's interest | | |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| **2.4** | State what the contract or lease is for and the nature of the debtor's interest | | |
| | State the term remaining | | |
| | List the contract number of any government contract | | |

GW-076

Fill in this information to identify the case:

Debtor name         **CSR Worldwide OK, Inc.**

United States Bankruptcy Court for the:         **Eastern**         District of         **Oklahoma**

(State)

Case number (If known): _____

☐ Check if this is an
   amended filing

Official Form 206H

## Schedule H: Codebtors
12/15

**Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively.
Attach the Additional Page to this page.**

---

**1.  Does the debtor have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2.  In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors,
Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the
creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing address** | **Name** | *Check all schedules that apply:* |
| 2.1 | Bombola, Steven Francis | 2900 Catalpa St <br> Street <br><br> Newport Beach, CA 92660-3221 <br> City        State        ZIP Code | Bank of Hays <br><br><br> Blue Bridge Financial, LLC <br><br><br> Zahav Asset Management, LLC | ☑ D ☐ E/F ☐ G <br><br> ☑ D ☐ E/F ☐ G <br><br> ☑ D ☐ E/F ☐ G |
| 2.2 | Burgess, Troy Don | 8505 Nw 126th St <br> Street <br><br> Malcolm, NE 68402-9779 <br> City        State        ZIP Code | Bank of Hays <br><br><br> Blue Bridge Financial, LLC <br><br><br> Zahav Asset Management, LLC | ☑ D ☐ E/F ☐ G <br><br> ☑ D ☐ E/F ☐ G <br><br> ☑ D ☐ E/F ☐ G |
| 2.3 | Central States Reprocessing, LLC | 4121 Nw 37th St <br> Street <br><br> Lincoln, NE 68524 <br> City        State        ZIP Code | Bank of Hays <br><br><br> Blue Bridge Financial, LLC | ☑ D ☐ E/F ☐ G <br><br> ☑ D ☐ E/F ☐ G |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 50 of 83

GW-077

| Debtor | **CSR Worldwide OK, Inc.** | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

| ■ | Additional Page if Debtor Has More Codebtors |
|---|---|

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing address** | **Name** | *Check all schedules that apply:* |
| | | | Zahav Asset Management, LLC | ☑ D ☐ E/F ☐ G |
| 2.4 | Cherokee Nation Businesses LLC | 777 W Cherokee St _____ Street Attn: Chuck Garrett _____ Catoosa, OK 74015-3235 _____ City          State          ZIP Code | Bank of Hays | ☑ D ☐ E/F ☐ G |
| 2.5 | CSR-OK Real Estate Holding Company, LLC | 473617 E 610 Rd _____ Street c/o CSR Worldwide OK, Inc. _____ Watts, OK 74964 _____ City          State          ZIP Code | REI Subsidiary CDE 22, LLC REI Subsidiary CDE 22, LLC | ☐ D ☑ E/F ☐ G ☐ D ☑ E/F ☐ G |
| 2.6 | Pacifica Consultants, Inc | 1000 N GVR Ste 653 _____ Street _____ Henderson, NV 89074 _____ City          State          ZIP Code | Zahav Asset Management, LLC | ☑ D ☐ E/F ☐ G |
| 2.7 | USDA Rural Business Services for Oklahoma | 100 Usda Ste 108 _____ Street _____ Stillwater, OK 74074-2651 _____ City          State          ZIP Code | Bank of Hays | ☑ D ☐ E/F ☐ G |

| Official Form 206H | Schedule H: Codebtors | page 2 of 2 |
|---|---|---|

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 51 of 83

GW-078

**Fill in this information to identify the case:**

Debtor name _____ CSR Worldwide OK, Inc. _____

United States Bankruptcy Court for the:
_____ Eastern District of Oklahoma _____

Case number (if known): _____    Chapter ___11___

☐ Check if this is an
amended filing

## Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals

**12/15**

| Part 1: | Summary of Assets |

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   **1a. Real Property:**
   Copy line 88 from *Schedule A/B*.................................................................... | $0.00 |

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*.................................................................. | $7,790,718.73 |

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*.................................................................... | $7,790,718.73 |

| Part 2: | Summary of Liabilities |

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*................. | $6,577,773.69 |

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*....................................... | $130,645.08 |

   **3b. Total amount of claims of non-priority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*....................... | + $309,341.26 |

4. **Total liabilities**................................................................................................ | $7,017,760.03 |
   Lines 2 + 3a + 3b

GW-079

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | CSR Worldwide OK, Inc. |
| United States Bankruptcy Court for the: | Eastern District of Oklahoma |
| Case number (if known): | |

☐ Check if this is an amended filing

## Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1: Income

**1. Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:** From 01/01/2023 to Filing date<br>MM/ DD/ YYYY | ☑ Operating a business<br>☑ Other _____ | $433,609.02 |
| **For prior year:** From 01/01/2022 to 12/31/2022<br>MM/ DD/ YYYY     MM/ DD/ YYYY | ☑ Operating a business<br>☑ Other _____ | $845,216.67 |
| **For the year before that:** From 01/01/2021 to 12/31/2021<br>MM/ DD/ YYYY     MM/ DD/ YYYY | ☑ Operating a business<br>☑ Other _____ | $770,315.00 |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:** From 01/01/2023 to Filing date<br>MM/ DD/ YYYY | | |
| **For prior year:** From 01/01/2022 to 12/31/2022<br>MM/ DD/ YYYY     MM/ DD/ YYYY | | |
| **For the year before that:** From 01/01/2021 to 12/31/2021<br>MM/ DD/ YYYY     MM/ DD/ YYYY | | |

| Debtor | CSR Worldwide OK, Inc. | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

**3.** **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| **3.1.** David Hanf <br> Creditor's name <br> 7309 Rye Hill Rd E <br> Street <br><br> Fort Smith, AR 72916 <br> City   State   ZIP Code | 3/22/23 <br> 3/24/23 <br> 4/7/23 <br> 5/17/23 <br> 5/23/23 <br> 5/31/23 | $28,184.02 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ☑ Other Wages and reimbursement |
| **3.2.** Envision/Tamko <br> Creditor's name <br> P.O. Box 37 <br> Street <br><br> Mount Joy, PA 17552 <br> City   State   ZIP Code | 5/17/23 | $16,232.00 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☑ Suppliers or vendors <br> ☐ Services <br> ☐ Other _____ |
| **3.3.** IST Technologies <br> Creditor's name <br> 9900 Spectrum Drive <br> Street <br><br> Austin, TX 78717 <br> City   State   ZIP Code | 3/8/23 <br> 4/20/23 | $33,311.34 | ☐ Secured debt <br> ☑ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ☐ Other _____ |
| **3.4.** Ogre Village Management, LLC <br> Creditor's name <br> 472539 E 610 Rd <br> Street <br><br> Watts, OK 74964 <br> City   State   ZIP Code | 4/4/23 <br> 4/21/23 | $14,700.00 | ☐ Secured debt <br> ☑ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ☐ Other _____ |
| **3.5.** Oklahoma Tax Commission <br> Creditor's name <br> 2501 N. Lincoln Blvd <br> Street <br><br> Oklahoma City, OK 73103-0000 <br> City   State   ZIP Code | 3/15/23 <br> 4/3/23 <br> 4/5/23 <br> 4/6/23 <br> 5/18/23 | $16,880.42 | ☐ Secured debt <br> ☐ Unsecured loan repayments <br> ☐ Suppliers or vendors <br> ☐ Services <br> ☑ Other Taxes |

GW-081

Debtor    CSR Worldwide OK, Inc.
          Name

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 82 of 227

Case number (if known)

| 3.6. | Ozarks Electric Cooperative | 3/30/23 | $72,062.94 | ☐ Secured debt |
|---|---|---|---|---|
| | Creditor's name | | | ☐ Unsecured loan repayments |
| | PO Box 848 | 5/11/23 | | ☑ Suppliers or vendors |
| | Street | | | ☐ Services |
| | | 3/7/23 | | ☐ Other _____ |
| | Fayetteville, AR 72702-0000 | | | |
| | City          State    ZIP Code | | | |

| 3.7. | Pacifica Consultants, Inc | 4/28/23 | $13,000.00 | ☐ Secured debt |
|---|---|---|---|---|
| | Creditor's name | | | ☐ Unsecured loan repayments |
| | 1000 N GVR Ste 653 | | | ☐ Suppliers or vendors |
| | Street | | | ☑ Services |
| | | | | ☐ Other _____ |
| | Henderson, NV 89074 | | | |
| | City          State    ZIP Code | | | |

| 3.8. | Byrne, Shawn M | 3/7/23 | $11,894.00 | ☐ Secured debt |
|---|---|---|---|---|
| | Creditor's name | | | ☐ Unsecured loan repayments |
| | 948 Oakwood Dr | 3/22/23 | | ☐ Suppliers or vendors |
| | Street | | | ☐ Services |
| | | 4/7/23 | | ☑ Other Wages |
| | Castle Rock, CO 80104 | 5/17/23 | | |
| | City          State    ZIP Code | | | |
| | | 5/31/23 | | |

| 3.9. | Zahav Asset Management, LLC | 5/1/23 | $1,400.00 | ☐ Secured debt |
|---|---|---|---|---|
| | Creditor's name | | | ☐ Unsecured loan repayments |
| | 234 Cedarhurst Ave Apt 21b | 5/4/23 | | ☐ Suppliers or vendors |
| | Street | | | ☐ Services |
| | | 5/5/23 | | ☑ Other Factoring Agreement |
| | Cedarhurst, NY 11516-1608 | 5/8/23 | | |
| | City          State    ZIP Code | | | |
| | | 5/9/23 | | |
| | | 5/10/23 | | |
| | | 5/11/23 | | |
| | | 5/12/23 | | |
| | | 5/15/23 | | |
| | | 5/16/23 | | |
| | | 5/17/23 | | |
| | | 5/18/23 | | |
| | | 5/19/23 | | |
| | | 5/20/23 | | |
| | | 5/22/23 | | |
| | | 5/24/23 | | |
| | | 5/25/23 | | |
| | | 5/26/23 | | |
| | | 5/30/23 | | |

Debtor  CSR Worldwide OK, Inc.                                    Case number (if known)
        Name

|  |  |  |  |
|---|---|---|---|
|  | 5/31/23 |  |  |
| 3.10. Durrett, Kreston M | 3/7/23 | $14,104.26 | ☐ Secured debt |
| Creditor's name |  |  | ☐ Unsecured loan repayments |
| 807 Rachael Court | 3/22/23 |  | ☐ Suppliers or vendors |
| Street |  |  | ☐ Services |
|  | 4/7/23 |  | ☑ Other Wages |
| Siloam Springs, AR 72761 | 5/17/23 |  |  |
| City            State    ZIP Code |  |  |  |
|  | 5/31/23 |  |  |
| 3.11. ANS Concrete | 5/16/23 | $15,400.00 | ☐ Secured debt |
| Creditor's name |  |  | ☐ Unsecured loan repayments |
| PO Box Box 702 |  |  | ☐ Suppliers or vendors |
| Street |  |  | ☑ Services |
|  |  |  | ☐ Other |
| Siloam Springs, AR 72761 |  |  |  |
| City            State    ZIP Code |  |  |  |

**4.  Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or co-signed by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. |  |  |  |
| Creditor's name |  |  |  |
| Street |  |  |  |
| City            State    ZIP Code |  |  |  |
| **Relationship to debtor** |  |  |  |

**5.  Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☐ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1. Multi-Craft Contractors, Inc. | Garnishment of funds held in Arvest Bank Acct. | 2/10/2023 | $8,799.00 |
| Creditor's name | No. *1763 |  |  |
| P.O. Box 1760 |  |  |  |
| Street |  |  |  |
| Springdale, AR 72765 |  |  |  |
| City            State    ZIP Code |  |  |  |

GW-083

Debtor    CSR Worldwide OK, Inc.
          _____    Case number _(if known)_ _____
          Name

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| 6.1. Creditor's name _____ Street _____ City          State   ZIP Code | XXXX– __ __ __ __ | _____ | _____ |

---

| **Part 3:** | Legal Actions or Assignments |
|---|---|

### 7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | Blue Bridge Financial, Inc. v. CSR Worldwide OK, Inc., et al. **Case number** 23-CV-78-GLJ | Civil | United States District Court for the Eastern District of Oklahoma Name Po Box 607 Street Muskogee, OK 74402-0607 City          State   ZIP Code | ☑ Pending ☐ On appeal ☐ Concluded |
| 7.2. | Bank of Hays, et al. v. CSR Worldwide OK, Inc., et al. **Case number** CJ-2023-36 | Civil | Adair County District Court Name PO Box 426 Street Stilwell, OK 74960-0000 City          State   ZIP Code | ☑ Pending ☐ On appeal ☐ Concluded |
| 7.3. | Central States Reprocessing, LLC, et al. v. Oldcastle APG, Inc., et al. **Case number** 20-CV-474-RAW | Civil | United States District Court for the Eastern District of Oklahoma Name Po Box 607 Street Muskogee, OK 74402-0607 City          State   ZIP Code | ☑ Pending ☐ On appeal ☐ Concluded |

---

Debtor    CSR Worldwide OK, Inc.
     Name                                              Case number *(if known)*

| 7.4. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | Central States Reprocessing, LLC, et al. v. Oldcastle APG, Inc., et al. | Civil (removed to United States District Court for Eastern District of Oklahoma, Case No. 20-CV-474-RAW) | Adair County District Court<br>Name<br>PO Box 426<br>Street<br>Stilwell, OK 74960-0000<br>City  State  ZIP Code | ☑ Pending<br>☐ On appeal<br>☐ Concluded |
| | **Case number**<br>CJ-2020-56 | | | |

| 7.5. | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| | Multi-Craft Contractors, Inc. v. CSR Worldwide, Inc., et al. | Civil | Circuit Court of Washington County, State of Arkansas<br>Name<br>280 N College Ave<br>Street<br>Fayetteville, AR 72701<br>City  State  ZIP Code | ☐ Pending<br>☐ On appeal<br>☑ Concluded |
| | **Case number**<br>72CV-23-46 | | | |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| 8.1. | Custodian's name and address | Description of the property | Value |
|---|---|---|---|
| | Custodian's name<br>_____<br>Street<br>_____<br>City  State  ZIP Code | **Case title**<br>_____<br>**Case number**<br>_____<br>**Date of order or assignment**<br>_____ | Court name and address<br>_____<br>Name<br>_____<br>Street<br>_____<br>City  State  ZIP Code |

---

**Part 4:**   Certain Gifts and Charitable Contributions

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| 9.1. | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| | Recipient's name<br>_____<br>Street<br>_____<br>City  State  ZIP Code<br>**Recipient's relationship to debtor**<br>_____ | | | |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 58 of 83
GW-085

Debtor _____ Case number (if known)_____

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 86 of 227

CSR Worldwide OK, Inc.
Name

| Part 5: | Certain Losses |

**10.  All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss | Date of loss | Value of property lost |
|---|---|---|---|
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | | |
| 10.1. _____ | _____ | _____ | _____ |

| Part 6: | Certain Payments or Transfers |

**11.  Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

❑ None

| 11.1. | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| | Brown Law Firm P.C. | (for 2 related bankruptcies) | 06/02/2023 | $15,000.00 |

| Address |
|---|
| 715 S. Elgin Ave.<br>Street |
| Tulsa, OK 74120-0000<br>City                    State       ZIP Code |

| Email or website address |
|---|
| |

| Who made the payment, if not debtor? |
|---|
| Troy Burgess |

**12.  Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| 12.1. | Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|---|
| | _____ | _____ | _____ | _____ |
| | Trustee | | | |
| | _____ | | | |

Official Form 207          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**          page 7

Debtor   CSR Worldwide OK, Inc.
          Name                                                    Case number *(if known)*

### 13. Transfers not already listed on this statement

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None

| 13.1. | Who received the transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| | TSD Rental, LLC | 9.61 Acres located at 472559 S 610 Rd, Watts, OK 74964 in Adair County. | June 23, 2021 | $400,000.00 |
| | **Address** | | | |
| | 472559 S 610 Rd<br>Street | | | |
| | | | | |
| | Watts, OK 74964<br>City          State     ZIP Code | | | |
| | **Relationship to debtor** | | | |
| | None | | | |

| 13.2. | Who received the transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| | CSR-OK Real Estate Holding Company, LLC | 50.48 acres of real property located at 473617 E 610 Rr, Watts, OK 74964 | June 23, 2021 | $800,000.00 |
| | **Address** | | | |
| | 473617 E 610 Rd<br>Street | | | |
| | c/o CSR Worldwide OK, Inc. | | | |
| | Watts, OK 74964<br>City          State     ZIP Code | | | |
| | **Relationship to debtor** | | | |
| | Affiliate | | | |

## Part 7: Previous Locations

### 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| | Address | Dates of occupancy |
|---|---|---|
| 14.1. | _____<br>Street | From _____ To _____ |
| | _____ | |
| | _____<br>City          State     ZIP Code | |

Official Form 207          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**          page 8

Debtor ___CSR Worldwide OK, Inc._____   Case number *(if known)*_____
        Name

| Part 8: | Health Care Bankruptcies |
|---|---|

**15.  Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
—diagnosing or treating injury, deformity, or disease, or
—providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1. _____<br>Facility name | _____ | _____ |
| _____<br>Street | | |
| _____<br>City          State     ZIP Code | **Location where patient records are maintained**(if different from facility address). If electronic, identify any service provider.<br>_____<br>_____ | **How are records kept?**<br>*Check all that apply:*<br>☐ Electronically<br>☐ Paper |

| Part 9: | Personally Identifiable Information |
|---|---|

**16.  Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. _____

Does the debtor have a privacy policy about that information?

☐ No

☐ Yes

**17.  Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b) or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN:  _ _ – _ _ _ _ _ _ _ |

Has the plan been terminated?

☐ No

☐ Yes

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18.  Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

Official Form 207                          **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                          page 9

GW-088

Debtor   CSK Worldwide OK, Inc.
Name

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 89 of 227

Case number (if known)

| 18.1 | Arvest Bank | XXXX– 1  4  1  4 | ☑ Checking | 1/3/2023 | $11,385.90 |
| | Name | | ☐ Savings | | |
| | 502 South Main | | ☐ Money market | | |
| | Street | | ☐ Brokerage | | |
| | Tulsa, OK 74103-0000 | | ☐ Other | | |
| | City        State      ZIP Code | | _____ | | |

### 19. Safe deposit boxes

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| 19.1 | Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|---|
| | | | | ☐ No |
| | Name | | | ☐ Yes |
| | Street | | | |
| | | **Address** | | |
| | City        State      ZIP Code | | | |

### 20. Off-premises storage

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| 20.1 | Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|---|
| | Don's Repair | | Bobcat | ☐ No |
| | Name | | | ☑ Yes |
| | Street | | | |
| | | **Address** | | |
| | City        State      ZIP Code | | | |

## Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

### 21. Property held for another

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| Central States Reprocessing, LLC | 473617 East 610 Rd | (1) 18720A Used 37" x 61" | $950,000.00 |
| Name | | Herbold Granulator, Model SMS | |
| 4121 Nw 37th St | Watts, OK 74964 | 80/160 and (2) a 2000 China | |
| Street | | Made Grinder 100 HP With | |
| Lincoln            NE      68524 | | Control Panel | |
| City        State      ZIP Code | | | |

Debtor  CSR Worldwide OK, Inc.                                    Case number *(if known)*
         Name

| Part 12: | Details About Environmental Information |
| --- | --- |

For the purpose of Part 12, the following definitions apply:

- ■  *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- ■  *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- ■  *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
| --- | --- | --- | --- |
| | | | ☐ Pending |
| **Case number** | Name | | ☐ On appeal |
| | Street | | ☐ Concluded |
| | City          State    ZIP Code | | |

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
| --- | --- | --- | --- |
| Name | Name | | |
| Street | Street | | |
| City          State    ZIP Code | City          State    ZIP Code | | |

**24.  Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
| --- | --- | --- | --- |
| Name | Name | | |
| Street | Street | | |
| City          State    ZIP Code | City          State    ZIP Code | | |

Official Form 207                    **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                    page 11

Debtor    CSR Worldwide OK, Inc.
       Name
                                                  Case number *(if known)*

**Part 13:**   Details About the Debtor's Business or Connections to Any Business

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1.   CSR-OK Real Estate Holding Company, LLC<br>Name<br>473617 E 610 Rd<br>Street<br>c/o CSR Worldwide OK, Inc.<br>Watts, OK 74964<br>City     State     ZIP Code | Real Estate and Equipment Holding Company | EIN: 8 1 – 3 4 6 1 6 7 7 |

Dates business existed

From 4/23/2021    To Present

**26. Books, records, and financial statements**

26a.   List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1.   Forked Pine Consulting, LLC<br>Name<br>126 Falcon Lane<br>Street<br><br>Lyons, CO 80540<br>City     State     ZIP Code | From 4/23/2021    To Present |
| 26a.2.   Dana F. Cole & Company LLP<br>Name<br>1248 O St Ste 500<br>Street<br><br>Lincoln, NE 68508-1424<br>City     State     ZIP Code | From _____ To _____ |

26b.   List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26b.1.   Forked Pine Consulting, LLC<br>Name<br>126 Falcon Lane<br>Street<br><br>Lyons, CO 80540<br>City     State     ZIP Code | From _____ To _____ |

26c.   List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

GW-092

Debtor CSK Worldwide OK, Inc.
Name

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 93 of 227
Case number (if known)

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. Forked Pine Consulting, LLC | |
| Name | |
| 1248 O St | |
| Street | |
| | |
| Lincoln, NE 68508-1424 | |
| City                State                ZIP Code | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 26d.1. Bank of Hays |
| Name |
| 1000 West 27th |
| Street |
| Attn: Brandon Brough |
| Hays, KS 67601 |
| City                State                ZIP Code |

| Name and address |
|---|
| 26d.2. Arvest Bank |
| Name |
| 801 John Barrow Road Suite 516 |
| Street |
| c/o Rachel Hart |
| Little Rock, AR 72205 |
| City                State                ZIP Code |

| Name and address |
|---|
| 26d.3. REI Subsidiary CDE 22, LLC |
| Name |
| 2912 Enterprise Dr |
| Street |
| c/o REI Development Corp. |
| Durant, OK 74701-1954 |
| City                State                ZIP Code |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| Bank of Hays | March 2023 | $0.00 |

| Name and address of the person who has possession of inventory records |
|---|
| 27.1. Bank of Hays |
| Name |
| 1000 West 27th |
| Street |
| Attn: Brandon Brough |
| Hays, KS 67601 |
| City                State                ZIP Code |

GW-093

Debtor  CSR Worldwide OK, Inc.
Name

Case number *(if known)* _____

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Burgess, Troy Don | 8505 Nw 126th St Malcolm, NE 68402-9779 | Chief Executive Officer, Shareholder | 65.00% |
| Bombola, Steven Francis | 2900 Catalpa St Newport Beach, CA 92660-3221 | President, Shareholder | 30.00% |
| David Schwarcz | 2350 Castle Heights Ave Los Angeles, CA 90034-1050 | Secretary, Shareholder | 5.00% |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| _____ | _____ | _____ | From _____ <br> To _____ |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1. Burgess, Troy Don <br> Name <br> 8505 Nw 126th St <br> Street <br><br> Malcolm, NE 68402-9779 <br> City            State        ZIP Code | $500.00 <br> $3,000.00 <br> $2,500.00 | 4/6/23 <br> 5/19/23 <br> 5/24/23 | Expense Reimbursement |

| Relationship to debtor |
|---|
| Chief Executive Officer |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| _____ | EIN: __ __ – __ __ __ __ __ __ __ |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| _____ | EIN: __ __ – __ __ __ __ __ __ __ |

| Part 14: | Signature and Declaration |
|---|---|

Official Form 207    Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    page 14

Debtor    CSR Worldwide OK, Inc.
          Name                                              Case number (if known) _____

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____06/06/2023_____
             MM/ DD/ YYYY

**X** /s/ Troy Don Burgess_____        Printed name _____Troy Don Burgess_____
   Signature of individual signing on behalf of the debtor

   Position or relationship to debtor _____CEO_____


**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☑ No
☐ Yes

| Fill in this information to identify the case: |
| --- |
| Debtor name                 CSR Worldwide OK, Inc. |
| United States Bankruptcy Court for the: |
| Eastern District of Oklahoma |
| Case number (if known): _____ |

☐ Check if this is an amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Allied Dies Inc<br>800 Cashman Drive<br>Chippewa Falls, WI 54729 | (715) 720-1872<br>accounting@allied-dies.com | Vendor | Disputed | | | $28,682.50 |
| 2 | Bank of Hays<br>Attn: Brandon Brough<br>1000 West 27th<br>Hays, KS 67601 | (785) 621-5571<br>bprough@bankofhays.com | Commercial Loan | Contingent<br>Disputed<br>Unliquidated | $5,660,945.66 | $2,343,318.73 | $3,618,260.06 |
| 3 | Bank of Hays<br>Attn: Brandon Brough<br>1000 West 27th<br>Hays, KS 67601 | (785) 621-5571<br>bprough@bankofhays.com | Line of Credit | Contingent<br>Disputed<br>Unliquidated | | | $600,000.00 |
| 4 | Bunting Magnetics<br>Po Box 468<br>Newton, KS 67114-0468 | (316) 284-2020<br>newton@buntingmagnetics.com | Vendor | Disputed | | | $5,850.50 |
| 5 | Dana F. Cole & Company, LLP<br>1248 O St Ste 500<br>Lincoln, NE 68508-1424 | (402) 479-9300<br>services@danacole.com | Professional Services | Disputed | | | $2,850.00 |
| 6 | David Hanf<br>7309 Rye Hill Rd E<br>Fort Smith, AR 72916 | | Wages | Disputed | | | $22,047.99 |
| 7 | Greenview Materials. Inc.<br>1800 W Rogers Ave<br>Appleton, WI 54914-5001 | (636) 432-1144<br>accounting@gvmat.com | Vendor | Disputed | | | $91,056.92 |
| 8 | Herbold Meckesheim USA<br>Resource Recycling Systems Inc.<br>130 Industrial Drive<br>North Smithfield, RI 02896 | (401) 597-5500<br>info@herboldusa.com | Vendor | Disputed | | | $4,661.09 |

| Debtor | CSR Worldwide OK, Inc. | | | | Case number *(if known)* | | |
|---|---|---|---|---|---|---|---|
| | Name | | | | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9  Internal Revenue Service Po Box 7346 Philadelphia, PA 19101-7346 | | Social Security Withholding Taxes | | | | $63,704.03 |
| 10  Internal Revenue Service Po Box 7346 Philadelphia, PA 19101-7346 | | Federal Withholding Taxes | | | | $39,740.54 |
| 11  Internal Revenue Service Po Box 7346 Philadelphia, PA 19101-7346 | | Medicare Withholding Taxes | | | | $14,898.50 |
| 12  J.B. Hunt Transport, Inc. Po Box 847977 Dallas, TX 75284-7977 | (800) 643-3622 x51759 AR_Customer_Remits@jbhunt.com | Vendor | Disputed | | | $7,737.03 |
| 13  Oklahoma Tax Commission 2501 N. Lincoln Blvd Oklahoma City, OK 73103-0000 | | State Withholding Taxes | | | | $12,302.01 |
| 14  Pipelife Jet Stream 1700 S Lincoln St Siloam Springs, AR 72761 | (479) 524-5151 andy.hall@generalshale.com | Vendor | Disputed | | | $49,285.99 |
| 15  R & R Express Logistics PO Box Box 72124 Cleveland, OH 44192 | (800) 223-8973 billing@shipgt.com | Shipping | Disputed | | | $33,075.00 |
| 16  Swank's Welding 58566 S. 700 Road Watts, OK 74964 | (479) 238-3706 swankswelding2009@yahoo.com | Vendor | Disputed | | | $4,200.00 |
| 17  Total Recycling Paper & Plastic PO Box 1970 Lowell, AR 72745 | (479) 770-6502 cathy.benton@totalen.net | Vendor | Disputed | | | $28,589.36 |
| 18  Uline Attn: Accounts Receivable Po Box 88741 Chicago, IL 60680-1741 | (888) 884-6910 customer.service@uline.com | Vendor | Disputed | | | $2,685.84 |
| 19  W-J Inc. 34180 Solon Road Solon, OH 44139 | (440) 248-8282 | Vendor | Disputed | | | $22,177.50 |
| 20  Zahav Asset Management, LLC 234 Cedarhurst Ave Apt 21b Cedarhurst, NY 11516-1608 | (514) 464-1700 info@zahavassetmgmt.com | Factoring Agreement | Disputed | $17,450.00 | $1,255.10 | $16,194.90 |

Case 23-80391    Doc 1    Filed 06/06/23    Entered 06/06/23 09:47:02    Desc Main
Document    Page 70 of 83

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Eastern District of Oklahoma

**In re**  CSR Worldwide OK, Inc.

Case No. _____

**Debtor**

Chapter _____ 11 _____

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept ................................................................................. $15,000.00

Prior to the filing of this statement I have received ..................................................................... $15,000.00

Balance Due ...................................................................................................................................... $0.00

2.  The source of the compensation paid to me was:

☐ Debtor        ☑ Other (specify)   Troy Burgess _____

3.  The source of compensation to be paid to me is:

☐ Debtor        ☑ Other (specify)   Troy Burgess and Debtor _____

4.  ☐  I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☑  I have agreed to share the above-disclosed compensation with a other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

NOTE; Troy Burgess paid a total of $15,000 for both chapter 11 filings, including CSR Worldwide Inc. and CSR-OK Real Estate Holdings, LLC There $30 in wire fees deducted and court's filing fees.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a.  Analysis of the debtor' s financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b.  Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

d.  Note: Disclosure of Compensation includes payments for 2 bankruptcy cases. Counsel will seek fee application for all post-petition fees.

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following services:

B2030 (Form 2030) (12/15)

CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

| 06/06/2023 | /s/ Ron Brown |
|---|---|
| Date | Ron Brown |
| | *Signature of Attorney* |

Bar Number: 16352
Brown Law Firm PC
715 S. Elgin Ave
Tulsa, OK 74120
Phone: (918) 585-9500

Brown Law Firm PC
*Name of law firm*

Page 2 of 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF OKLAHOMA**
**OKMULGEE DIVISION**

IN RE: **CSR Worldwide OK, Inc.**                           CASE NO

                                                           CHAPTER **11**


### VERIFICATION OF CREDITOR MATRIX

The above named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.


Date _____06/06/2023_____        Signature _____/s/ Troy Don Burgess_____
                                                           Troy Don Burgess, CEO

ACEC
3401 Kelley Hwy
Fort Smith, AR 72914

ADG Solutions
4508 - B9 Bibb Blvd
Tucker, GA 30084

Airgas USA, LLC (C067)
1404 S Pleasant St
Springdale, AR 72764-6225

Allied Dies Inc
800 Cashman Drive
Chippewa Falls, WI 54729

Alternative Plastics
12579 Pioneer Ln.
Gentry, AR 72734

Arvest Bank
502 South Main
Tulsa, OK 74103-0000

Bank of Hays
Attn: Brandon Brough
1000 West 27th
Hays, KS 67601

Blue Bridge Financial, LLC
11921 Freedom Drive Suite 1130
Reston, VA 20190

Steven Francis Bombola
2900 Catalpa St
Newport Beach, CA 92660-3221


Boyd Metals
P.O. Box 819
Fort Smith, AR 72902


Bunting Magnetics
Po Box 468
Newton, KS 67114-0468


Troy Don Burgess
8505 Nw 126th St
Malcolm, NE 68402-9779


Stan Cash
PO Box Box 444
Watts, OK 74964


Central States Reprocessing, LLC
4121 Nw 37th St
Lincoln, NE 68524


Charles Greenough
McAfee & Taft, P.C.
2 W 2nd St Ste 1100
Tulsa, OK 74103


Cherokee Nation Businesses LLC
Attn: Chuck Garrett
777 W Cherokee St
Catoosa, OK 74015-3235

Cold Shot Chillers
14343 Interdrive East
Houston, TX 77032

Covenant Insurance Services,
LLC
807 N Jim Thorpe Blvd.
Prague, OK 74864

CSR-OK Real Estate Holding
Company, LLC
c/o CSR Worldwide OK, Inc.
473617 E 610 Rd
Watts, OK 74964

Dana F. Cole & Company, LLP
1248 O St Ste 500
Lincoln, NE 68508-1424

David Hanf
7309 Rye Hill Rd E
Fort Smith, AR 72916

Duffy Trading
2931 Francis Scott Key Highway
Taneytown, MD 21787

Floyds Metal Buildings &
Construction
187 County Road 514
Berryville, AR 72616

Forward Brokerage, LLC
Po Box 310
Altoona, PA 16603-0310

Green Country Law Group,
PLLC
Attn: Jared A. DeSilvey
312 Court St
Muskogee, OK 74401

Green Quest
440 J St
Lincoln, NE 68508

Greenview Materials. Inc.
1800 W Rogers Ave
Appleton, WI 54914-5001

Herbold Meckesheim USA
Resource Recycling Systems Inc.
130 Industrial Drive
North Smithfield, RI 02896

Hugg & Hall Equipment Co.
P.O. Box 194110
Little Rock, AR 72219-4110

Internal Revenue Service
Po Box 7346
Philadelphia, PA 19101-7346

J.B. Hunt Transport, Inc.
Po Box 847977
Dallas, TX 75284-7977

Larkin Mechanical Company
507 E Main Street
Siloam Springs, AR 72761

Latham, Steele, Lehman,
Keele, Ratcliff,
1515 E 71st Street Ste 200
Tulsa, OK 74136-0000


Linder Recyclingtech America
LLC
152 Walker Road
Statesville, NC 28625


LLT Industries
3045 S 44th St
Lincoln, NE 68506-3329


LRS
848 E Highway 264
Springdale, AR 72764-8210


Mark Industries, Inc.
715 Main St
Cassville, MO 65625


Muehlstein
1900 Summit Tower Blvd Ste 900
Orlando, FL 32810


Oklahoma Tax Commission
2501 N. Lincoln Blvd
Oklahoma City, OK 73103-0000


Pacifica Consultants, Inc
1000 N GVR Ste 653
Henderson, NV 89074

Pipelife Jet Stream
PO Box 190
Siloam Springs, AR 72761

Processing Technologies Intl,
LLC
2655 White Oak Circle
Aurora, IL 60502

R & R Express Logistics
PO Box Box 72124
Cleveland, OH 44192

REI Subsidiary CDE 22, LLC
c/o REI Development Corp.
2912 Enterprise Dr
Durant, OK 74701-1954

Sherwin Williams Co
101 W. Prospect Ave
Cleveland, OH 44115

Smurfit Kappa
9709 Hwy 271 South
Fort Smith, AR 72908

Star Mechanical Supply
P.O. Box
Springdale, AR 72765

Swank's Welding
58566 S. 700 Road
Watts, OK 74964

Sylvane, Inc.
245 Hembree Park Dr Ste 124
Roswell, GA 30076-5702


System Scale
4393 West 96th Street
Indianapolis, IN 46268


Thomas A. Creekmore
Hall, Estill, et al.
512 E 2nd St Ste1200
Tulsa, OK 74120


Total Recycling Paper &
Plastic
PO Box 1970
Lowell, AR 72745


Uline
Attn: Accounts Receivable
Po Box 88741
Chicago, IL 60680-1741


Unishippers
PO Box 21228 Dept 57
Tulsa, OK 74121-0000


USDA Rural Business Services
for Oklahoma
100 Usda Ste 108
Stillwater, OK 74074-2651


VSC Fire & Security
P.O. Box 1659
Rogers, AR 72756

Watts Public Works Authority
220 Second St.
Watts, OK 74964


Wholesale Electric Supply
P O BOX 1258
Texarkana, TX 75504


Wintech Windows
15 Old Stonebreak Rd
Ballston Spa, NY 12020-4900


W-J Inc.
34180 Solon Road
Solon, OH 44139


Zahav Asset Management, LLC
234 Cedarhurst Ave Apt 21b
Cedarhurst, NY 11516-1608

# United States Bankruptcy Court
## Eastern District of Oklahoma

In re **CSR Worldwide OK, Inc.**      Case No. _____

               Debtor(s)      Chapter     **11**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for _____**CSR Worldwide OK, Inc.**_____ in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

**DRS Holdings, LLC**
**6310 San Vincente Blvd. Ste. 360**
**Los Angeles, CA 90048**

☐ None [*Check if applicable*]

|  |  |
|---|---|
| **06/06/2023** | **/s/ Ron Brown** |
| Date | **Ron Brown** |
|  | Signature of Attorney or Litigant |
|  | Counsel for **CSR Worldwide OK, Inc.** |
|  | **Bar Number: 16352** |
|  | **Brown Law Firm PC** |
|  | **715 S. Elgin Ave** |
|  | **Tulsa, OK 74120** |
|  | **Phone: (918) 585-9500** |
|  | **Email: ron@ronbrownlaw.com** |

1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF OKLAHOMA**
**OKMULGEE DIVISION**

IN RE:                                                                  CHAPTER **11**
**CSR Worldwide OK, Inc.**

DEBTOR(S)                                                              CASE NO

## LIST OF EQUITY SECURITY HOLDERS

| Registered Name of Holder of Security Last Known Address or Place of Business | Class of Security | Number Registered | Kind of Interest Registered |
|---|---|---|---|
| **Troy Don Burgess** 8505 NW 126th Street Malcolm, NE 68402 | Regular Shares | 520 | |
| **Steven Bombola** 2900 Catalpa St. Newport Beach, CA 92660 | Regular Shares | 301 | |
| **Filder, LLC** 21 Eye Street San Rafael, CA 94901 | Regular Shares | 80 | |
| **DRS Holdings, LLC** 6310 San Vincente Blvd. Ste. 360 Los Angeles, CA 90048 | Regular Shares | 199 | |
| **South Wind Financial** 6470 W Desert Inn Rd Las Vegas, NV 89146 | Regular Shares | 10 | |
| **David Schwarcz** 473617 East 610 Road Watts, Ok 74964 | Regular Shares | 199 | |

### DECLARATION UNDER PENALTY OF PERJURY
### ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the _____ **CEO** _____ of the _____ **Nonpublic Corporation** _____
named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true
and correct to the best of my information and belief.

Date: **06/06/2023** _____       Signature: /s/ Troy Don Burgess _____
                                                          *Troy Don Burgess, CEO*

GW-110

# Notice Recipients

District/Off: 1086–7          User: admin                      Date Created: 6/7/2023

Case: 23–80391               Form ID: pdf017                  Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

smg          US Security and Exchange Commission          175 W. Jackson Boulevard          Chicago, IL 60604

                                                                                    TOTAL: 1

# EXHIBIT 12

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BANK OF HAYS and REI** | ) | |
| **SUBSIDIARY CDE 22, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.** ___23-CV-196-DES___ |
| **vs.** | ) | |
| | ) | |
| **CSR WORLWIDE OK, INC.; et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>NOTICE OF REMOVAL</u>

Defendant the United States of America *ex rel*. the United States Department of Agriculture gives notice of the removal of the above-entitled action from the District Court of Adair County, Oklahoma, to the United States District Court for the Eastern District of Oklahoma.

1.     On May 15, 2023, Plaintiffs filed an action in state court entitled *Bank of Hays and REI Subsidiary CDE 22, LLC, Plaintiffs, vs. CSR Worldwide OK, Inc., et al., Defendants*, in Adair County District Court, State of Oklahoma, Case No. CJ-23-36.

2.     On May 18, 2023, Defendant the United States was served with summons and a copy of the Petition.

3.     This action is an action against the United States of America, *ex rel*. the United States Department of Agriculture and is therefore removable by the United States under 28 U.S.C. §§ 1441(a) and 1442(a).  No bond is required by the United States as set forth in 28 U.S.C. § 2679(d)(2).

4.     This action has been removed within 30 days of service as required in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 529 U.S. 344, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999).

5.     Copies of all papers and pleadings filed in the state court case and a copy of the

docket sheet are attached to this notice as Exhibits 1 - 16.

6.     A copy of this Notice of Removal is being served on Plaintiffs' counsel of record.

7.     A copy of this Notice of Removal is being filed this date with the Clerk of the

District Court of Adair County, Oklahoma.

DATED:  June 13, 2023.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

/s/ *Michael J. O'Malley*
Michael J. O'Malley, OBA #22252
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
(918) 684-5100
(918) 684-5130
Michael.O'Malley@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of June 2023, I electronically transmitted the attached

document to the Clerk of Court using the ECF System for filing and transmittal of Notice of

Electronic Filing to the Following ECF registrants:


 /s/ Michael J. O'Malley
Michael J. O'Malley, OBA #22252
Assistant United States Attorney

# EXHIBIT 13

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 117 of 227
6:23-cv-00196-DES   Document 71   Filed in ED/OK on 06/26/24   Page 1 of 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

<table>
<tr>
<td>

**BANK OF HAYS** *et al.*,
                **Plaintiffs,**

**vs.**

**CSR Worldwide OK, Inc.,** *et al.*,

                **Defendants.**

</td>
<td>

**Case No. 23-CV-196-DES**

</td>
</tr>
</table>

**MOTION TO HOLD CERTAIN DEFENDANTS**
**IN CONTEMPT AND FOR WRIT OF ASSISTANCE**

Bank of Hays (the "**Bank**") moves the Court pursuant to Rule 70 (d) and (e) Fed. R. Civ.

P. to enter its order(s) granting the relief request below, and in support states as follows:

1.      As used herein,

(a) defendants CSR Worldwide OK, Inc. ("**CSR** WW") and CSR-OK Real Estate Holding

Company, LLC ("**CSR-OK**") are collectively referred to as the "**Borrowers**;"

(b) defendant Steven Francis Bombola is referred to as "**Bombola**;"

(c) defendant Troy Don Burgess is referred to as "**Burgess**,"

(d) defendant Central States Reprocessing LLC is referred to as "**Central States**;"

(e) the Borrowers, Bombola, Burgess, and Central States are collectively referred to as the

"**Subject Defendants**;"

(f) David R. Payne, in his capacity as the duly appointed and acting receiver of the

Borrowers and the "Receivership Assets" under this Court's *Order Appointing Receiver* [doc. 24])

entered by this Court October 13, 2023 (the "**Receiver Order**"), is referred to as the "**Receiver**;"

and

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 118 of 227
6:23-cv-00196-DES    Document 71    Filed in ED/OK on 06/26/24    Page 2 of 6

(g) The *Declaration of Receiver* attached hereto as **Exhibit 1** signed under penalty of perjury by the Receiver is referred to as the "**Payne Declaration**"). Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Payne Declaration.

2.    By this motion, the Bank moves the Court to enter:

(a) an order or orders holding (i) such of the Subject Defendants as is appropriate, and (ii) such other persons and entities as subsequently may be identified, in contempt for knowing and willful violation of the Receiver Order; and

(b) a Writ of Assistance in restoring to the Receiver all Receivership Assets removed from the Receiver's custody and control.

**Factual Background**.

3.    In intentional, knowing, and willful violation of the Receiver Order, Receivership Assets (as defined in the Receiver Order) consisting of Plant Equipment and Materials Inventory have been removed from the Borrowers' plant facility in Watts, Oklahoma, and Tolling Revenues have been diverted from the Receiver's custody and control (and into a bank account maintained and controlled by defendant Central States). While the Bank presently is unaware of the precise location of the removed Plant Equipment and Materials Inventory and is unaware of the specific identity of the party or parties who caused those assets to be removed from the Receiver's custody and control, it is without question that the Subject Defendants **do** know such location and identities. *See* email from Subject Defendants' counsel Nicholas R. Grillot attached to the Payne Declaration as Exhibit B (the "Grillot Email").

4.    Defendants Bombola and Burgess are direct or indirect owners or executive officers (or both) of one or both of the Borrowers, and defendant Burgess is an owner and executive officer of Central States.

5.    As reflected in the Payne Declaration, the Receiver believes that the removed Receivership Assets were removed by one of more of the Subject Defendants or by one or more

20392931.1:011777.00001

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 119 of 227
6:23-cv-00196-DES    Document 71    Filed in ED/OK on 06/26/24    Page 3 of 6

of the Subject Defendants' control persons, affiliates, employees, or agents, or by some combination thereof. *See* Payne Declaration, ¶¶ 5-14.

6.      Paragraph 4 of the Payne Declaration lists material provisions of the Receiver Order that have been violated by the removal of the Plant Equipment and Materials Inventory from the Facility and the deposit of Tolling Revenues into an account controlled by defendant Central States. Every person (whether individually or in the capacity as control person of an entity) having knowledge of the Receiver Order is bound to comply therewith, upon penalty of contempt for noncompliance. *See* Receiver Order at ¶ 34. Each of the Subject Defendants is unquestionably charged with knowledge of the Receiver Order. *See, e.g.,* the Subject Defendants' verified motion to vacate the Receiver Order filed herein at docket no. 53 (verified by Burgess).

7.      As reflected in paragraph 5 of the Payne Declaration, the Receivership Assets removed from the Watts plant facility unquestionably were "tangible assets [involved with] the Mortgagors' respective business operations, and thus constituted Receivership Assets. *See* Receiver Order at ¶ 3(b).

8.      While the Grillot Email expresses Mr. Grillot's "understanding that the equipment and machinery listed in the February 2023 appraisal the Bank obtained is still at the Watts facility," such understanding is incorrect. In the Payne Declaration, the Receiver makes clear from his personal knowledge (obtained from serving both as Chief Restructuring Office of the Borrowers during their respective bankruptcy cases, and as Receiver herein) that all of the raw material inventory was the Bank's collateral; that raw material inventory existed within the Watts plant facility when he inspected the plant facility prior to May 29, 2024; and that as of May 29, 2024, no raw material inventory was located within the plant facility. *See* Payne Declaration at ¶ 5. The Receiver also testifies that at least some of the equipment removed from the plant facility was

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 120 of 227
6:23-cv-00196-DES    Document 71    Filed in ED/OK on 06/26/24    Page 4 of 6

known to be claimed by the Bank and others as collateral securing the Mortgagors' obligations owed to the Bank and other claimants. *Id*. at ¶ 18. As evidenced by the Mortgagors' respective bankruptcy schedules attached to the Payne Declaration, the Mortgagors collectively scheduled the value of their equipment at amounts in excess of $6,3000,000. *See Payne Declaration*, Annex 6A and 6B. Additionally, paragraph 6 of the Payne Declaration notes that in excess of $137,000 of Tolling Revenue was diverted from the Receiver's control and was deposited into an account maintained by Central States (and that over $59,000 of such deposits were used to offset overdrafts in the Central States account).

9.      But even if the Subject Defendants truly believed that the items removed from the Watts plant facility did not constitute collateral claimed by the Bank and others, <u>all items of equipment located in the Facility were "Receivership Assets" as contemplated by the Receiver Order</u>. *See* Receiver Order, ¶ 3(b) ("[The Receivership Assets include (without limitation)] all tangible assets involving the Mortgagors' respective business operations. . .). Thus, removal of those items (even if the items were not owned by the Mortgagors) nonetheless was a knowing and willful violation of the Receivership Order's injunctions against "directly or indirectly transferring, dissipating or otherwise disposing of any Estate property and proceeds thereof, or from otherwise transferring, concealing, destroying or making any other disposition of any personal or corporate assets that are Estate property, . . . and any other Estate real or personal property possessed or controlled by any Mortgagor Parties, without prior authorization from this Court (s*ee* Receiver Order at ¶ 12), and  "any act to obtain possession of or to exercise control over the Estate or any property thereof" (s*ee* Receiver Order at ¶ 20).

10.     For over three weeks, the Receiver has requested substantive information from the Subject Defendants (*see* Payne Declaration, Exhibits A-1 and A-2), including evidence of third-

20392931.1:011777.00001

GW-120

GW-120

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 121 of 227
6:23-cv-00196-DES    Document 71    Filed in ED/OK on 06/26/24    Page 5 of 6

party ownership of assets removed from the Facility. Substantive responses have been minimal, at best. *See* Payne Declaration, ¶ 19.

<u>Requests for Relief.</u>

A.      Pursuant to Rule 70(e) Fed. R. Civ. P., the Bank requests the Court to (1)  enter an order (i) setting a hearing on this Motion on July 2, 2024, or as soon thereafter as is possible,  (ii) **requiring each of the Subject Defendants to appear in-person** at that emergency hearing to show cause why the respective Subject Defendants should not be held in contempt for their knowing and willing violations of the Receiver Order; and (2) at the conclusion of such hearing, issue an appropriate order of contempt to such of the Subject Defendants (and such other persons and entities as subsequently may be identified) as the Court deems appropriate.

B.      Pursuant to Rule 70(d) Fed. R. Civ. P., the Bank requests the Court to issue a Writ of Assistance directing the U.S. Marshals Services or other appropriate agency to assist the Receiver in retrieving all Receivership Assets removed from the Receiver's custody and control.

**WHEREFORE**, the Bank moves the Court to grant the relief requested in Request for Relief paragraphs (A) and (B), and for all other appropriate relief.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**

*s/Thomas A. Creekmore III*
Thomas A. Creekmore III, OBA #2011
521 East 2nd Street, Suite 1200
Tulsa, Oklahoma 74120
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
tcreekmore@hallestill.com
***Counsel for Plaintiff Bank of Hays***

5

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 122 of 227
6:23-cv-00196-DES   Document 71   Filed in ED/OK on 06/26/24   Page 6 of 6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2024, I electronically transmitted this document to parties receiving notice under the Court's ECF System.

/s/ *Thomas A. Creekmore III*
Thomas A. Creekmore III

20392931.1:011777.00001

GW-122

GW-122

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 123 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 1 of 23

## IN THE UNITED STATES DISTRICT COURT
## EASTERN SISTRICT OF OKLAHOMA

| | |
|---|---|
| **Bank of Hays,** *et al.,*<br><br>Plaintiffs,<br><br>vs.<br><br>**CSR Worldwide OK, Inc.,** *et al.,*<br><br>Defendants. | **Case No. 23-CV-196-DES** |

### Declaration of Receiver

David R. Payne ("Declarant"), pursuant to 28 U.S.C. § 1746, declares as follows:

1.      My name is David R. Payne ("**Receiver**"). I am over the age of twenty-one and I am competent in all respects to make this Declaration. I am the duly appointed and acting Receiver of the assets of **CSR Worldwide OK, Inc. ("CSR WW")** and **CSR-OK Real Estate Holding Company, LLC ("CSR-OK")** (each, a "**Borrower**" and collectively, the "**Borrowers**"). Unless otherwise stated herein, I have personal knowledge of all facts set forth in this Declaration, and all statements made herein are true and correct to the best of my knowledge and belief.

2.      On October 13, 2023, this Court entered its *Order Appointing Receiver* [**Doc. 24**] (the "**Receiver Order**"), which pursuant to 12 O.S. § 1551 appointed me as Receiver of the Borrowers and the Receivership Assets (as defined in the Receiver Order), effective upon my filing of a Receiver's Bond (as defined in the Receiver Order) and my Receiver's Oath required by 12 O.S. § 1553.

3.      On October 18, 2023, I filed the Receiver's Bond [**Doc. 25**] and the Receiver's Oath [**Doc. 25-1**] and have since that time been the duly appointed and acting Receiver of the Borrowers and the Receivership Assets.

4.      The Receiver Order specifically states the following:

3.      The Receiver is appointed under the authority of the Court as authorized under § 1551, and has been qualified, and is hereby ordered, authorized. and directed to immediately take possession and control of all Receivership Assets. The Receivership Assets include (without limitation):

a.      the real property described on **Exhibit A** hereto, together with all fixtures and improvements thereon or thereto, and all rights pertaining thereto[1] (emphasis in original);

---

[1] Which includes the "**Facility**" (as defined in ¶ 5 of this Declaration).

1

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 124 of 227
6:23-cv-00196-DES   Document 71-1   Filed in ED/OK on 06/26/24   Page 2 of 23

    **b.**       **all tangible assets involving the Mortgagors' respective business operations**[2] (emphasis added); * * *

    **e.**       **all books, records and documents related** to all Receivership Assets and the Mortgagors' respective business operations (emphasis added); ***

    4.    . . . [T]he Receiver is ordered and authorized to manage the Receivership Assets to the best advantage of the Mortgagors' respective business operations, and to **collect and receive all accrued or accruing revenues, collections, accounts, income, profits, and proceeds therefrom (all of such items are collectively referred to herein as the "Estate")** (emphasis added). ***

    8.    . . . Upon the Receiver's written request, the Mortgagors shall provide the Receiver with a complete accounting for and explanation of all transfers by the respective Mortgagors of money and other property.

    9.    In the event that any parties to this case, **or any subsidiaries or affiliates of any such parties, now possess or ever possessed assets that are now or ever were owned by either of the Mortgagors, those parties shall provide to the Receiver a detailed list of the asset(s) now possessed or previously possessed by them** (and, to the extent possession of such asset(s) has been transferred by any of such parties, the identity of the transferee of the asset(s) and the consideration received for such transfer). All such assets shall be included in the Estate to the maximum extent allowed by law (emphasis added). ***

    11.    The parties to this case **and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Receiver in the performance of the Receiver's duties** subject to such person's or entity's valid assertion of a recognized privilege. ***The cooperation and assistance shall include, but not be limited to, the turnover of any and all Estate property, providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities*** of the Receiver under this Order; providing any password required to access any computer or electronic files in any medium; turning over any assets (including cash and tangible assets); and advising all persons who owe money to the Mortgagors that ***all debts should be paid directly to the Receiver*** (bold emphasis in original; bold and italicized emphasis added).

    12.    The Mortgagors and all **subsidiaries, affiliates, managers, members, shareholders, directors, officers, employees, agents, independent contractors and other natural or legal entities acting in**

---

[2] Which includes Materials Inventory and Plant Equipment (as those terms are defined in ¶ 5 of this Declaration).

20394314.1:011777.00001

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 125 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 3 of 23

concert with them (collectively, the "Mortgagor Parties")[3] are **hereby enjoined from directly or indirectly transferring, dissipating or otherwise disposing of any Estate property and proceeds thereof, or from otherwise transferring, concealing, destroying or making any other disposition of any personal or corporate assets that are Estate property, including without limitation** Estate funds in bank or brokerage accounts, Estate automobiles, and any **other Estate real or personal property possessed or controlled by any Mortgagor Parties without prior authorization from this Court** (emphasis added).* * *

20.    In order to promote judicial efficiency, **all persons who receive actual or constructive notice of this Order are enjoined in any way from disturbing or in any way interfering with the Receiver's administration of the Estate** or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve the Receiver or the Estate **unless such person or persons first obtains the permission of the Court or the Receiver. All parties to this case, all Mortgagor Parties, and all other persons and entities given notice of this Order are hereby enjoined from any and all of the following:** . . . **(2) any act to obtain possession of or to exercise control over the Estate or any property thereof** . . . (emphasis added). * * *

22.    . . . [Any] and all creditors of the Mortgagor Parties, and **all parties in interest that claim a right, title, or interest in the Receivership Assets, are directed to file any civil or probate actions regarding the Mortgagor Parties or the Receivership Assets in the United States District Court for the Eastern District of Oklahoma** and all such actions shall be consolidated with this case. * * *

26.    Excluding only the Plaintiffs, **all persons and entities**, including banks, controlling possession of any property of the Estate **shall cooperate with the Receiver at the reasonable directions thereof**. Upon presentation of this Order all persons or entities (excluding only the Plaintiffs), including banks, shall turn over to the Receiver all funds, operating bank accounts, and safety deposit boxes related to or associated with the Mortgagors without delay and delete all designated signors on the bank accounts existing prior to entry of this Order. (Emphasis added.) * * *

34.    ***ALL PERSONS HAVING NOTICE OF THIS ORDER ARE HEREBY ADVISED THAT THE TERMS OF THIS ORDER, INCLUDING BUT NOT LIMITED TO THE INJUNCTIVE RELIEF GRANTED HEREIN, SHALL BE ENFORCEABLE BY CONTEMPT AS***

---

[3] Bombola and Burgess are managers and members of the Mortgagors. CSR is owned and managed by Burgess and, as reflected below, Tolling Revenues (as defined in ¶ 5 of this Declaration) were deposited into a bank account owned and controlled by CSR. The Receiver thus believes that Burgess, Bombola, and CSR are "Mortgagor Parties" as that term is defined by the Receiver Order.

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 126 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 4 of 23

**WELL AS ANY OTHER MEANS AUTHORIZED BY LAW**. (Emphasis in original.)

5.      Both as Receiver of the Receivership Assets and as the Borrowers' Chief Restructuring Officer during the Borrowers' respective bankruptcy cases, I am knowledgeable of the Receivership Assets as defined in paragraph 3 of the Receiver Order that are utilized in the Borrowers' "**Business Operations**". Among the assets used in the Borrowers' Business Operations are: (a) waste materials inventory; (b) processed materials subject to billing for tolling services (collectively the waste materials and processed materials shall be referred to as the "**Materials Inventory**"); (c) equipment used in the Business Operations to process the Materials Inventory ("**Plant Equipment**"); (d) funds due and/or collected and/or received from "**All Accrued or Accruing Revenues**" as defined in paragraph 4 of the Receiver Order ("**Tolling Revenues**"); and (e) all "**Books, Records and Documents**" related to the respective Business Operations as defined in paragraph 3(e) of the Receiver Order ("**Records**"). Prior to May 29, 2024, I have inspected the Borrowers' Watts plant ("**Facility**") and observed therein such Materials Inventory and Plant Equipment.

6.      I am also familiar with the representations made by the Borrowers in their respective Official Form 206A/B (Schedule A/B) ("**Schedules**") and Official Form 207 (Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy) ("**SOFA**") filed under penalties of perjury with the U.S. Bankruptcy Court on June 6, 2023 (relevant pages of which are attached hereto as **Annex 6A-6D**).

A.      As reflected in Item 41.1 of Schedule B filed by CSR-OK WW (*see* Annex 6-A, p. 1 of 3), CSR-OK stated under penalty of perjury that it owned the assets listed on pp. 2-3 of Annex 6-A (collectively, the "**CSR-OK Equipment**"), and that the CSR-OK Equipment had a current value in excess of $5.8 million.

B.      As reflected in item 41.1 of Schedule B filed by CSR WW (*see* Annex 6-B, p. 1 of 2), CSR WW stated under penalty of perjury that it leased the CSR-OK Equipment from CSR-OK.

C.      As reflected in Item 41.2 of Schedule B filed by CSR WW (*see* Annex 6-B, p. 2 of 2), CSR-OK also stated under penalty of perjury that it owned a "PTi Model G6000 Extrusion Pelletizing System" having a current value of $500,000.

D.      As reflected in Item 21 of CSR WW's SOFA (*see* Annex 6-C, p. 1), CSR WW identifies under penalty of perjury only two (2) equipment items ("**Asset Items**") of the Plant Equipment held or controlled by CSR WW that was owned by another entity. Specifically, CSR WW identified that it held or controlled the following property owned by defendant Central States Reprocessing, LLC: (i) 100 HP China Grinder with control panel; and (ii) Herbold Granulator.

7.      On the evening of May 21, 2024, Steve Bombola, one of the Borrowers' principals and guarantors, contacted me to inform me that the Borrowers had removed property from the Facility since the Bank of Hays ("**Secured Lender**") was unwilling to accept the Borrowers' offer to buy the assets. I requested that Mr. Bombola provide to me the following information ("**Asset Removal Information**"): (i) a list and descriptions of each item of property; (ii) the time and date

4

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 127 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 5 of 23

the property was removed; (iii) which Defendants' employees and third party vendors/haulers participated in the removal of property; (iv) copies of all loading tickets, bills of lading and invoices evidencing the hauling of property from the Facility to its destination; and (v) photographs of all property that had been removed. By week's end (through May 25, 2024) Mr. Bombola had not provided any of the Asset Removal Information; rather, Mr. Bombola represented to me that what he had represented to me on May 21, 2024, was in "error" and "there was nothing taken from the plant". This representation is directly contrary to the representations received from Borrowers' counsel on May 31, 2021 (described below). Thereafter, I proceeded to coordinate a joint inspection of the Facility with the Secured Lender and the United States Department of Agriculture[4] ("**USDA**").

8.      On May 29, 2024, I arranged to meet representatives of (a) the Secured Lender, (b) defendant, USDA, and (c) a third-party auctioneer at the Borrowers' Facility to inspect inventory, equipment and other collateral located in that plant. When I arrived, I discovered that my key to the gate and the office at the plant was not fully functioning.

9.      I therefore placed a call to the Borrowers' representative, Troy Burgess, who said that he was directly adjacent to the Facility at a marijuana grow house property known as OGRE Village ("**Grow House Property**")[5] which is operated by some or all of the Borrowers' principals. Mr. Burgess said that he would proceed to the front of the Facility to open the gate and office.

10.     Upon entering the Facility with Mr. Burgess on May 29, 2024, I observed that the ordinary levels of Materials Inventory and certain items of the Plant Equipment were no longer present at the Facility. I also observed that certain Plant Equipment had been moved and/or disconnected from the line configurations existing and present for the Business Operations. Mr. Burgess acknowledged to me at that time that certain items of property had been removed from the Facility based upon discussions with and/or upon disclosure to the Borrowers' counsel who had the appropriate Asset Removal Information.

11.     After directing Mr. Burgess to surrender his keys and to not return to the Facility, I placed a call to and left a voice message with Nicholas Grillot (counsel for the Borrowers and affiliated guarantor defendants Central States Reprocessing LLC, Troy Don Burgess, and Steven Francis Bombola).

12.     I next telephoned Bank of Hays' counsel Thomas Creekmore and relayed the details described in paragraphs 7-11 above. Mr. Creekmore shortly thereafter returned my call and announced that he was placing me in a conference call with Messrs. Creekmore and Grillot.

13.     Mr. Grillot informed Mr. Creekmore and me that he had learned on May 28, 2024, that some items that had been located in the Facility had been removed by one or more of his clients or their affiliates or agents.

---

[4] Paragraph 20 of the Petition filed herein [**Doc. 2-2**] alleges that USDA conditionally guaranteed a portion of the Borrowers' obligations to plaintiff Bank of Hays. Declarant has been informed and thus believes that USDA has satisfied all or part of that guaranty obligation.

[5] The Grow House Property is titled in the name of TSD Rentals, LLC which on information is owned by Burgess, Bombola and David Schwartz (the latter of which holds himself to be the Borrowers' general counsel).

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 128 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 6 of 23

14.     On May 31, 2024, I was informed by counsel for the Borrowers that the Borrowers' principals and guarantors undertook and conducted actions to remove ("**Property Removal Actions**") twenty-one (21) Asset Items located at the Facility which were utilized in the Mortgagors' respective **Business Operations** as defined in the Receiver Order. According to Borrowers' counsel, the Property Removal Actions were conducted between May 13 through May 19, 2024. The Borrowers did not notify the Receiver of their intentions, nor did the Borrowers provide any supporting records in accordance with paragraphs 4 and 9 of the Receiver Order to support their Property Removal Actions before the Asset Items were removed. The Borrowers did not request the consent of the Receiver nor this court to perform Property Removal Actions at the Facility in accordance with paragraphs 12, 20 and 22 of the Receiver Order.

15.     Attached as **Exhibit A-1 and A-2** is a list of items/information that I demanded to be provided by Mr. Grillot's clients.

16.     Attached as **Exhibit B** is correspondence received from Mr. Grillot in preliminary response to those demands.

17.     Attached as **Exhibit C** is a (partial) list of Receivership Assets that I believe have been removed from the Facility and/or not turned over to the Receiver for proper management, oversight and administration in accordance with the Receiver Order.

18.     Based on my review of loan documents, appraisals, and collateral lists provided to me by the Secured Lender, and filings made in this case, I believe that (a) certain Materials Inventory not tolled for customers and removed from the Facility, together with Tolling Revenues that were not turned over to the Receiver, are claimed by the Secured Lender to be collateral securing obligations owed to the Secured Lender by one or both of the Borrowers; and (b) some or all of the Plant Equipment removed from the Facility is claimed by one or more of the Secured Lender, plaintiff REI Subsidiary CDE 22, LLC, and defendant Blue Bridge Financial, Inc. to be collateral securing obligations owed to those parties by one or both of the Borrowers.

19.     Three (3) weeks after requesting information from the Defendants' counsel, I received a partial production and related accounting from the Defendants and their control persons of the Tolling Revenues, Materials Inventory and Plant Equipment that was diverted from the custody of the Receiver and/or removed from the Facility. Defendants' counsel provided bills of lading, bank account statements and a listing of receipts and disbursements for the Borrower that relates to Tolling Revenues. To date, Defendants' counsel has not provided any documentation of ownership and title to the Plant Equipment. I will undertake a more complete forensic review of the Tolling Revenues, Materials Inventory and/or Plant Equipment that have been misappropriated and/or removed from the Receivership Estate and report to the Court and parties once the Defendants have produced the records and documents requested which are designated as Receivership Assets.

20.     The bank account statements produced by Defendants' counsel report that the Tolling Revenues generated from use of the Plant Equipment were not deposited into a Borrower's bank account. Rather, Tolling Revenues were deposited into mingled account (acct. no ending 1592) ("**Shared Operating Account**") held in the name of guarantor Defendant Central States Reprocessing, LLC.

20394314.1:011777.00001

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 129 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 7 of 23

21.    The Shared Operating Account includes receipts and disbursements for Central States Reprocessing, OGRE Village, the Borrowers and potential other legal entities. During my initial review of the Shared Operating Account, I observed that this account is regularly over drafted. I also observed that numerous deposits from invoicing the Borrower's Tolling Revenues were applied to existing overdraft balances present at the time of such deposits. A summary of Tolling Revenue deposits fully or partially consumed to repay the overdraft balances in the Shared Operating Account are summarized below:

| Deposit Sale | Tolling Revenue | Application to Existing Overdraft |
|---|---|---|
| 10/12/2023 | $10,028.00 | $20,178.94 |
| 11/28/2023 | 12,984.00 | 11,147.95 |
| 12/6/2023 | 9,713.36 | 12,109.19 |
| 12/18/2023 | 28,968.50 | 8,455.96 |
| 2/8/2024 | 7,178.40 | 13,631.83 |
| 4/9/2024 | 34,860.00 | 18,491.43 |
| 4/11/2024 | 27,569.14 | 6,998.43 |
| 5/3/2024 | 5,810.00 | 15,641.12 |
| Total | $137,111.40 | |
| Less Amounts Not Applied to Overdrafts | (59,287.87) | |
| Revenue Collections Applied To Bank Overdrafts | $ 77,823.53 | |

22.    Based upon my review of the Shared Operating Account and other documents, it appears that the Defendants have not paid all the obligations they became liable for. A comprehensive forensic review to trace and potentially segregate activities between three (3) or more legal entities is expected to be time consuming and costly.

23.    The lack of a separate bank account to conduct the Borrowers' business operations coupled with a lack of maintaining an accounting ledger has materially contributed to the cost of administering the Receivership Estate.

24.    Additionally, the actions to divert and/or remove Tolling Revenues, Materials Inventory and Plant Equipment has directly caused the Receiver to incur significant time and expense that the Receiver Order attempted to avoid and has dissipated the net assets of the Receivership Estate.

20394314.1:011777.00001

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 130 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 8 of 23

25.    Had the Defendants turned over the Tolling Revenues to the Receiver, the Receivership Estate could have reasonably conducted limited operations while an orderly sale process was undertaken. The Defendants' conduct to mingle and not turn over Tolling Revenue proceeds and perform Property Removal Actions has culminated in closure of the business operations.

26.    I am aware that this Declaration is intended to be used by the Secured Lender's counsel in support of a motion to be filed by the Secured Lender seeking an order of contempt and a writ of assistance.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 26, 2024.

_____
David R. Payne
"Declarant"

20394314.1:011777.00001

GW-130

GW-130

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 131 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 9 of 23

Exhibit A-1
List of Items Requested

1. Name of the item;

2. A general description of the item;

3. When the item was removed from the Facility;

4. How the item was removed from the Facility;

5. Who removed it from the Facility;

6. Where the item is now, if known;

7. To the extent my clients know, why the item was removed from the Facility;

8. Bills of Lading from Tolling Work;

9. Invoices for Tolling Work;

10. For assets labeled as Items 1 through 21 (as disclosed by Borrowers' counsel on May 29, 2024) that were removed from the Facility, provide the data set forth on Exhibit B-2;

11. All tolling revenues and receipts from billing tolling services that were the direct result and proceeds for use of the Plant Equipment;

12. All bank account statements documenting the deposits of tolling revenues and the use/disposition (without Receiver authorization) of tolling revenues;

13. Utility bills for the Borrowers' affiliates, OGRE Village, LLC and TSD Rentals, LLC (the Facility has liens and piping interconnected to these affiliates that can impact utility costs);

14. Disclosure regarding whether or not the Borrowers' counsel represents OGRE Village and/or TSD Rentals; and

15. All closing documents, bank account statements and related documents evidencing the disposition of the net sales proceeds from $400,000 property sale by the debtor to TSG Rentals, LLC.


[Note: The QuickBooks general ledger provided by the Borrowers is wholly incomplete and does not include sufficient relevant accounting entries to reasonably determine revenues, expenses, assets and liabilities.]

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 132 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 10 of 23

Exhibit A-2
List of Items Requested

1. Name of party that transported Items 1, 2 and 3l; produce loading tickets and hauling invoices.

2. For Items 5, 6, 7, 8, 9: Provide name of customer, primary contact name at customer and contact number; provide name and contract/driver person for "Third Party Truck" for Items 5, 6, 7; provide tag and VIN # for "CSR Truck for Items 8, 9.

3. For Items 5, 6, 7, 8, 9: Provide weight, number of sacks, loading tickets and hauling invoices.

4. For Items 5, 6, 7, 8, 9: Provide CSR Worldwide OK's invoices for all tolling work performed from October 2023 to May 2024 for HDPE Repo, PP Repo, HDPE Regrind and HDPE Regrind/Shred products; provide weights and prices.

5. For Item 10 – Provide tag # and VIN for Central States Reprocessing Truck.

6. Provide purchase and/or title documentation skid steer, hand tools, 3 Semi Trailers, Transformers, Miscellaneous Equipment, Cargo Trailer and Plywood, claimed to be owned by affiliates and/or principals of the Borrowers.

7. Title, keys and location of 1997 Ford F-150 and equipment described as "Bobcat" held by third party in debtors' Schedule of Assets.

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 133 of 227
6:23-cv-00196-DES   Document 71-1   Filed in ED/OK on 06/26/24   Page 11 of 23

Exhibit B

**David R. Payne**

| | |
|---|---|
| **From:** | Grillot, Nicholas R. <ngrillot@hinklaw.com> |
| **Sent:** | Friday, May 31, 2024 12:12 PM |
| **To:** | Tom Creekmore; David R. Payne |
| **Cc:** | Hohstadt, Tammy J. |
| **Subject:** | Bank of Hays, et al v. CSR Worldwide OK, Inc., et al (Case #23 CV 196 / E.D. Okla) - Update |
| **Attachments:** | Layout Drawing of CSRWW Watts, Plant.pdf; CSR Worldwide 2023_Bank of Hays_Prough_MEO 3950 4D_INV_DH-Capital Assets.pdf |

Tom & David –

I'm following up our conversation on Wednesday and the email I sent to provide you an update with where I'm at in getting information and documentation regarding items that have left the Watts' plan since the receivership was established on October 13, 2023.

First, I've gotten all the bills of lading for the tolling work that was done since October 2023 through May 9, 2024. That was the only work performed since the establishment of the receivership of which I'm aware and the proceeds were used to pay wages and utilities. The .pdf files are larger and there is several of them. So I'd propose to send them to you through a DropBox link so that you can access them. That would also allow for additional documents to be included in the file and provided to you. Is that an acceptable approach?

Second, I'm told that there are several items which belonged to customers located in the Watts plant which customers retrieved after the most recent cessation of operations. My clients are in the process of providing information and documentation to me related to these items. Once I get this information and documentation, I'll organize it and produce it to you both.

From what I understand, I believe these items likely make up the bulk of the property that is being claimed as missing. However, without knowing what items are believed to be missing, it is difficult to zero in on more precise information and documentation to address your concerns.

Third, my client is in the process of providing me a list of items (including the customer items I mentioned in the previous paragraph) that have left the facility since October 13, 2023. This list doesn't include the customer's materials which were pelletized for the customer and sent back. Those materials are identified in the bills of lading that I will be sending you.

As for each item included in that list, my clients will be providing the following information:

1. Name of the item;
2. A general description of the item;
3. When the item was removed from the facility;
4. How the item was removed from the facility;
5. Who removed it from the facility;
6. Where the item is now, if known; and
7. To the extent my clients know, why the item was removed from the facility.

My client has provided me this information on some items, but is still in the process of completing it. I'm told that I should have a complete list to provide to you by the end of the day or tomorrow. Even if I don't have a completed list, I'll provide you with that list I have no later than tomorrow and let you know whether or not I've been told it is complete

1

GW-133

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 134 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 12 of 23

Exhibit B

or if there are additional items that still need to be included. I'm also working on getting documentation regarding each of those items, which I'll process and produce as soon as I'm able. If there is any additional information you'd like to be included in that list, please let me know and I'll work on getting it added.

Lastly, attached please find a schematic of the plant which has been cross-referenced with the machinery and equipment list from the February 2023 appraisal that shows the location of the items listed in that appraisal. This schematic should provide you with sufficient information to verify what property remains at the Watts' facility.

Again, I'll continue to provide information and documentation as I received it and able to process it. In the meantime, let me know if you have any questions or concerns regarding any of the information in this email or in the documents I've included in the DropBox file.





**Nicholas R. Grillot** | Member
Hinkle Law Firm LLC
1617 N. Waterfront Pkwy, Suite 400 | Wichita, KS 67206-6639
p 316.660.6211 | f 316.660.6523 | ngrillot@hinklaw.com
hinklaw.com

*This communication contains confidential information which is legally privileged. The information is intended only for the use of the recipient named. If you have received this e-mail in error, please immediately notify us by telephone at 316.267.2000 or reply to this e-mail. You are hereby notified that any disclosure, copying, distributions or the taking of any action in reliance of the contents of this information is strictly prohibited. The information herein provided is not legal advice nor does it constitute the establishment of an attorney-client relationship.*

*Pursuant to federal regulations imposed on practitioners who render tax advice (Circular 230), we are required to advise you that any tax advice contained herein is not intended or written to be used for the purpose of avoiding tax penalties that may be imposed by the IRS.*

*This law firm is a debt relief agency It helps people file for bankruptcy relief under the Bankruptcy Code.*

*This communication is from a debt collector. Any information obtained will be used for that purpose.*

2

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 135 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 13 of 23



GW-135

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 136 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 14 of 23

# Exhibit B

| Item # | Description | Make | Model | Serial Number | Useful Life | Condition | FMV | OLV | FLV |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Kimbell Gin Machinery-Blower | | KGM030 | | 10 years | Good | 10,000 | 7,000 | 3,000 |
| 2 | Kimbell Carbon Steel Tank-11 ft cone bottom | | | | 10 years | Good | 5,000 | 4,000 | 2,000 |
| 3 | Rapid Granulator | Rapid | 2442-11 | 30444 | 10 years | Good | 8,300 | 6,000 | 3,000 |
| 4 | Super sack loader | KGM | Cyclone Tank | SO644 | 10 years | Good | 10,000 | 7,000 | 3,000 |
| 5 | Torquemaster Single Screw Extruder | Prodex | TMH 600-30 | 73-215 | 10 years | Good | 13,500 | 10,000 | 4,000 |
| 6 | Pelletting Cutting Head | Gala | 7 | 962239 | 10 years | Good | 75,000 | 55,000 | 23,000 |
| 7 | Hot Oil Unit | Sterlco | G9016 | 95 E 5468 | 5 year | Fair | 5,500 | 4,000 | 1,700 |
| 8 | Baltimore Air Cool Chiller | | VT0107 | UO64440001 | 10 years | Good | 5,000 | 4,000 | 2,000 |
| 9 | Carbon Steel Wash Basin | 6 bottom discharges | | | 5 year | Fair | 7,500 | 5,000 | 2,000 |
| 10 | Carbon Steel Wash Basin | 12 bottom discharges | | | 5 years | Good | 9,700 | 7,000 | 5,000 |
| 11 | South Silo #8 | Imperial Industries | | I-25894D-2 | 5 years | Good | 15,000 | 11,000 | 5,000 |
| 12 | South Silo #14 | Imperial Industries | | I-46495-2 | 5 years | Good | 15,000 | 11,000 | 5,000 |
| 13 | South Silo #13 | Imperial Industries | | I-46495-1 | 5 years | Good | 15,000 | 11,000 | 5,000 |
| 14 | South Silo #2 | Peabody TecTank | | | 5 years | Good | 13,000 | 9,000 | 4,000 |
| 15 | South Silo #6 | Imperial Industries | | I-25940-1 | 5 years | Good | 13,000 | 9,000 | 4,000 |
| 16 | South Silo #3 | Peabody TecTank | | | 5 years | Good | 13,000 | 9,000 | 4,000 |
| 17 | South Silo #4 | Peabody TecTank | | 6-81976 | 5 years | Good | 13,000 | 9,000 | 4,000 |
| 18 | North Silo #2 | Imperial Industries | | | 5 years | Good | 17,000 | 12,000 | 5,000 |
| 19 | North Silo #1 | Imperial Industries | | | 5 years | Good | 15,000 | 11,000 | 5,000 |
| 20 | North Quarantine Silo #2 | Peabody TecTank | | 65119 | 5 years | Good | 16,000 | 12,000 | 5,000 |
| 21 | North Quarantine Silo #1 | Peabody TecTank | | 65113 | 5 years | Good | 16,000 | 12,000 | 5,000 |
| 22 | North Blending Silo | Columbian TecTank | | 94082 | 5 years | Good | 15,000 | 11,000 | 5,000 |
| 23 | North Silo #3 | Peabody TecTank | | | 5 years | Good | 19,000 | 14,000 | 6,000 |
| 24 | North Silo #2 | Peabody TecTank | | 40810 | 5 years | Good | 19,000 | 14,000 | 6,000 |
| 25 | North Silo #1 | Peabody TecTank | | 40809 | 5 years | Good | 19,000 | 14,000 | 6,000 |
| 26 | Southland Solutions Blower | Roots Rotary Lobe Blower | 418 Ram-J | 11510924090 | 5 years | Good | 7,500 | 5,000 | 2,000 |
| 27 | Southland Solutions Blower | Roots Rotary Lobe Blower | 418 Ram-J | 606929032 | 5 years | Good | 7,500 | 5,000 | 2,000 |
| 28 | Southland Solutions Blower | Roots Rotary Lobe Blower | 616 Ram-J | 401971242 | 5 years | Good | 5,000 | 4,000 | 2,000 |
| 29 | Dust Collector | MAC | 54AV516 | 142162-004-1 | 5 years | Good | 6,400 | 5,000 | 2,000 |
| 30 | Air Compressor - skid mounted | Sullair | LS-200S | 200604330001 | 10 years | Good | 56,000 | 41,000 | 17,000 |
| 31 | Air Compressor - horizontal tank mount | Sullair | LS-10 | 003-107779 | 10 years | Good | 6,000 | 4,000 | 2,000 |
| 32 | Air Compressor - horizontal tank mount | Sullair | LS-10 | 003-100256 | 10 years | Good | 6,000 | 4,000 | 2,000 |
| 33 | Refrigerated Air Dryer | VanAir Systems | EMD 330A | 08H-007552 | 10 years | Good | 7,500 | 5,000 | 2,000 |
| 34 | Refrigerated Air Dryer | Ingersoll Rand | DXR 750A | 9530XR2871 | 10 years | Good | 10,000 | 7,000 | 3,000 |
| 35 | Floor mounted platform scale-5,000 lb capacity | WeighTronics | WI-125 | 75027 | 10 years | Good | 500 | 350 | 200 |
| 36 | Shredder including conveyors | Lindner | Meteor 2000 | 1424 | 10 years | Good | 1,650,000 | 1,205,000 | 512,000 |
| 37 | Shredder | Lindner | 1800 | 1379 | 10 years | Good | 400,000 | 292,000 | 124,000 |
| 38 | Man Lift | JLG | 1930ES | 200071986 | 10 years | Good | 8,110 | 6,000 | 3,000 |
| 39 | Forklift | Clark | ECS25 | E350227 | 10 years | Good | 16,000 | 11,000 | 4,000 |
| 40 | Gator | Kawasaki | 4010 Diesel | | 10 years | Good | 7,900 | 6,000 | 2,000 |
| 41 | Forklift | Caterpillar | 2EP6000 | FN4384342 | 10 years | Good | 14,000 | 10,000 | 4,000 |
| 42 | Forklift | Prim Mover | PR40 | 10877 | 10 years | Good | 7,200 | 5,000 | 2,000 |
| 43 | Refrigerated Trailers-12 qty-$10,000 each | Great Dane/Utility | | | 10 years | Good | 120,000 | 88,000 | 37,000 |
| 44 | Cooling Tower | SPX Max | | | 10 years | Fair | 27,000 | 20,000 | 8,000 |
| 45 | Water Treating Equipment | Hart and Carter | | | 10 years | Fair | 45,000 | 35,000 | 14,000 |
| 46 | Electric Articulating Boom Lift | JLG | E450AJ | 300166783 | 10 years | Good | 11,000 | 8,000 | 2,000 |
| 47 | Diesel Articulating Boom Lift | Genie | Z-60/34 | 26013-12305 | 10 years | Good | 40,000 | 29,000 | 12,000 |
| 48 | Belt Conveyor | Banda | 36" x 19'5" TransportAdora | | 10 years | Good | 3,000 | 2,000 | 1,000 |
| 49 | Belt Conveyor | Banda | 32" x 17'8" TransportAdora | | 10 years | Good | 3,000 | 2,000 | 1,000 |
| 50 | PTI Sheetline-Chill rolls | PTI Sheetline | R683018 | 4365/871 | 10 years | Good | 120,000 | 88,000 | 37,000 |

Exhibit B

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 137 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 15 of 23

| # | Description | Manufacturer | Model | Serial | Date | Condition | Life | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 51 | Winder | Parkinson | 86-1017 | | | Good | 10 years | 25,000 | 18,000 | 8,000 |
| 52 | Forklift | Caterpillar | 2EP6000 | | | Fair | 10 years | 30,000 | 22,000 | 9,000 |
| 53 | Used Stuffing Extrusion Line,Screen changer, Pelletizer w/ temp control panel | Ram/MGB/Beringer | 6"/6"/WRP-35 | | | Good | 10 years | 70,000 | 51,000 | 22,000 |
| 54 | Used Engineering Guillotine | MGB | 48" | | | Good | 10 years | 5,700 | 4,000 | 2,000 |
| 55 | 2010 Granulator w/ cross cutting cheveron Rotor & hopper & screen | Herbold | SMS80/160 SX7-2 | | 9/10/2008 | Good | 10 years | 90,000 | 66,000 | 28,000 |
| 56 | Single Screw Extruder w/ air cooled barrel &temp control | Davis-Termatic III 350S | 5H30 | | | Good | 10 years | 13,000 | 9,000 | 4,000 |
| 57 | Multi-Aspirator | Kice | 5H30 | 264688-2 | | Good | 10 years | 5,500 | 4,000 | 2,000 |
| 58 | Industrial Magnet | Industrial Magnet | 7'11" x 7'9" x 3'5" | 01-MG-01 | | Good | 10 years | 10,000 | 7,000 | 3,000 |
| 59 | Soft Start Panel 350-HP Custom Built-Granulator | WEG | Nema 4 | | | Good | 10 years | 10,000 | 7,000 | 3,000 |
| 60 | Welder | Millermatic | 252 MIG | | | Good | 10 years | 2,200 | 2,000 | 1,100 |
| 61 | Vertical Milling Machine | Super Max | YC-1 | | | Poor | 5 years | 2,000 | 1,000 | 800 |
| 62 | Vertical Milling Machine | Super Max | YC-1 | | | Poor | 5 years | 2,000 | 1,000 | 800 |
| 63 | Pelletizer | Killion | | 210 5462F | | Good | 10 years | 1,500 | 1,000 | 400 |
| 64 | Rotary Dryer | Gala Industries | 16.3/DW Stainless Steel | | | Good | 10 years | 10,000 | 7,000 | 3,000 |
| 65 | Underwater Pelllitzer w/ control | Gala Industries | AS-PAC-7 | | | Good | 10 years | 9,000 | 7,000 | 3,000 |
| 66 | Underwater Pelllitzer w/ control | Gala Industries | 2 HP | | | Good | 10 years | 7,000 | 5,000 | 2,000 |
| 67 | 6' Reconditions Extruder | Union | | | | Good | 10 years | 145,000 | 106,000 | 45,000 |
| 68 | Co-Extrusion Die Block | EDI | Accuflow | 05-24413 | | Good | 10 years | 20,000 | 15,000 | 6,000 |
| 69 | Torque AC Drive | | P1-05200-HFUF | | | Good | 10 years | 9,000 | 6,850 | 3,000 |
| 70 | Rotary Die Cutter w/ Greene Line Stacker | Corfine | 66 x 110 | | | Good | 10 years | 40,000 | 29,000 | 12,000 |
| 71 | Extrusion pelletizing system | PTI | G6000 | | | Good | 10 years | 560,000 | 409,000 | 174,000 |
| 72 | CFO 25 Melt Filter | | | | | Good | 10 years | 225,000 | 164,000 | 70,000 |
| | | | | | | | Total | 4,288,000 | 3,124,000 | 1,330,000 |

GW-137

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 138 of 227
6:23-cv-00196-DES   Document 71-1   Filed in ED/OK on 06/26/24   Page 16 of 23

Exhibit C

1. All daily production/throughput/usage reports.
2. All tolling revenues and receipts from billing tolling services that were the direct result and proceeds for use of the Plant Equipment.
3. All bank account statements documenting the deposits of tolling revenues and the use/disposition (without Receiver authorization) of tolling revenues.
4. All Books, Records and Documents related to items 1, 2 and 3 above.
5. China Grinder, Blades and Kice Grinder Processing System located in the northeast corner of the Facility.(A)
6. Two (2) Air Compressors
7. Various Water-Cooled Chillers
8. Three (3) or more Semi-Trailers
9. Various Transformers: 480 to 120 75 KVA
10. Various Electrical Panels, Motors and Hopper Equipment
11. Cargo Trailer: 8X16
12. Various Computer Equipment
13. Various Hand Tools
14. Melt Flow Tester
15. Steel and Tubular Materials
16. PVC Conduit and Fittings for Electrical (Note: The Facility is interconnected to the Defendants' Affiliate OGRE Village Grow House Property by an Electrical Panel and Conduit located on the west side in the Electrical Room of the Facility).
17. Great Dane Refrigerated Trailers (12 Counted in June 2023): several units not observed as present – will require a VIN reconciliation
18. Lincoln Diesel Welder
19. Steel Gun Safe
20. Gas Grill
21. Plywood Materials
22. Chemicals
23. Customer Materials held for Toll Billings – HDPE Regrind, PP Film, HDPE Track Cuts

(A) Disclosed as held for third party owner in SOFA, Item 21 filed 6/6/23 by Borrowers' representative, Troy Burges.

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 139 of 227
6:23-cv-00196-DES   Document 71-1   Filed in ED/OK on 06/26/24   Page 17 of 23

ANNEX 6-A

Debtor **CSR-OK Real Estate Holding Company, LLC**                  Case number *(if known)* _____
　　　　Name

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture** | | | |
| None | | | |
| **40. Office fixtures** | | | |
| None | | | |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| 41.1  Fixtures and Equipment \| See attached Exhibit | $6,308,390.12 | | $5,808,390.12 |
| **42. Collectibles** *Examples*: Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| None | | | |
| **43. Total of Part 7** | | | $5,808,390.12 |
| Add lines 39 through 42. Copy the total to line 86. | | | |

**44. Is a depreciation schedule available for any of the property listed in Part 7?**
☑ No
☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

| **Part 8:** | **Machinery, equipment, and vehicles** |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**
☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| None | | | |
| **48. Watercraft, trailers, motors, and related accessories** *Examples*: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |

Official Form 206A/B                    Schedule A/B: Assets — Real and Personal Property                    page 5

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 140 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 18 of 23

Equipment List

| Year | Make | Model | Serial Number |
|------|------|-------|---------------|
| 2007 | Lindner | Meteor 2200 | 1424 |
| 2007 | Lindner | Komet 1800 | 1379 |
| | Kice Industries | 5H30 | 264688-2 |
| Unknown | Unknown | Unknown | Unknown |
| 2009 | Meri | PLB 2000 | 2105 |
| 2013 | JLG | E450AJ | 300166783 |
| Unknown | Ace | 60" Downstroke | 8710 |
| 2008 | Herbold | SMS 80/160-SX7-2 | 13356 |
| 2009 | Meri | PLB 2000 | Unknown |
| Unknown | Bunting Magnetics | | 9098073-2-01 |
| 2012 | Unknown | Gylotine | N7149 |
| Unknown | Bunting Magnetics | | 9081543-4-01 |
| 2022 | ADG | CFO25 | 12468-01 |
| 2022 | Nordson/Xaloy | WRP-35S | VB 1093 |
| 2022 | Cold Shot Chiller | CSWC-120-A | M101421-1 |
| Unknown | Rotex | 242 A MS | 27314 |
| Unknown | Gradall | 534D-9 | 644091 |
| Unknown | JLG | Model # 1932E3 | Unknown |
| Unknown | Gala | Unknown | 962239 |
| Unknown | Prodex | TMH 600-30 | 73-215 |
| Unknown | Plastics Processing | HL-9 | HL9128170921 |
| Unknown | Gala | 12.3 ECLN | 962239 |
| Unknown | Rotex | 11PS ASSS | R198078A |
| Unknown | Spin-Away Dryer | Order #E9322 | 126-94 |
| Unknown | Prodex | 600C-24 | 1282 |
| 2010 | Herbold | SMS 80/160-SX7-2 | 13357 |
| Unknown | Crown Products Inc | Unknown | EX-4113 |
| Unknown | Crown Forklift | 40FCTT-188 | 1A163118 |
| Unknown | Caterpillar | Unknown | C140469 |
| 2013 | Genie | Z-60 | Z6013-12305 |
| Unknown | Hyster | Unknown | D005D022736 |
| Unknown | Gibson | Unknown | Unknown |
| Unknown | JLG | Unknown | 4069LE |
| Unknown | JLG | Unknown | Unknown |
| 2007 | Metler Toledo | 78J3000000V4A00 | C221111234 |
| Unknown | Harrel | Unknown | Unknown |
| Unknown | Davis-Standard | 350S | 91154C |
| Unknown | Welex | Unknown | 71247296 |
| Unknown | Davis-Standard | Unknown | S9942 |
| Unknown | Case | Unknown | Unknown |
| 2007 | Unknown | Unknown | Unknown |
| Unknown | Unknown | Unknown | Unknown |
| Unknown | PTI | Unknown | Unknown |
| | PTI | | |

Miscellanous Small Pieces of Equipment and tools

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 141 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 19 of 23

**Notes/Add-Ons**

Large Shredder

Small Shredder

PVC Air Scrubber

Small PVC Grinder

Incline conveyor belt to Large Shredder

Electric Knuckle Lift

Downstroke Baler

Grinder

Outfeed conveyer from Large Shredder

Transfer Conveyor Belt

Plastic Roll Gylotine

Transfer Conveyor Belt

PTI Screen Changer Line 3

Pelletizer Line 3

Chiller Line 3

Pellet Shaker Line 3

Material Handler

Scissor Lift

Pelletizer Line 1

Extruder Line 1

Vacuum Transfer

Gala Dryer Line 1

Pellet Shaker Line 2

Spin Dryer Line 2

Extruder Line 2

Grinder

Extruder Line 6

Small Electric Forklift

Small Electric Forklift

Diesel Knuckle Lift

7000# Diesel Forklift

Extruder Line 4

Scissor Lift

Large Scissor Lift

Full Length Truck Scale

 Extruder Line #9

Extruder Line #7 Thermatic III

Extruder Line #10

Extruder Line #8

Skid Steer

Wash Line

15 Silos with Scales

PTI Slip Sheet Line

Extruder Line #6

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 142 of 227
6:23-cv-00196-DES   Document 71-1   Filed in ED/OK on 06/26/24   Page 20 of 23

ANNEX 6-B

Debtor  **CSR Worldwide OK, Inc.**                    Case number *(if known)* _____
         Name

---

**37.  Has any of the property listed in Part 6 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---------|-------------------------------------------------------------|

**38.  Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**
☐ No. Go to Part 8.
☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---------------------|---------------------------------------------|-----------------------------------------|------------------------------------|

**39.  Office furniture**

    **None**

**40.  Office fixtures**

    **None**

**41.  Office equipment, including all computer equipment and communication systems equipment and software**

| | | | |
|---|---|---|---|
| 41.1  Fixtures & Equipment leased from CSR-OK Real Estate Holding Company, LLC | $0.00 | | $0.00 |

    **Additional Page Total** - *See continuation page for additional entries*                    $500,000.00

**42.  Collectibles** *Examples*: Antiques and figurines; paintings, prints or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

    **None**

**43.  Total of Part 7**
Add lines 39 through 42. Copy the total to line 86.                                        $500,000.00

**44.  Is a depreciation schedule available for any of the property listed in Part 7?**
☑ No
☐ Yes

**45.  Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---------|-------------------------------------|

---

Official Form 206A/B                    Schedule A/B: Assets — Real and Personal Property                    page 5

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 143 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 21 of 23

Debtor    **CSR Worldwide OK, Inc.**    Case number *(if known)*
　　　　　　Name

## Additional Page

| General description | Net book value of debtor's interest | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| | (Where available) | | |
| **41.  Office equipment -** *Continued* | | | |
| 41.2  **PTi Model G6000 Extrusion Pelletizing System** | (Unknown) | | $500,000.00 |

Debtor  CSR Worldwide OK, Inc.                                          Case number *(if known)*
         _____
         Name

| 18.1 | Arvest Bank | XXXX– 1  4  1  4 | ☑ Checking | 1/3/2023 | $11,385.90 |
|------|-------------|------------------|-------------|----------|------------|

Name

502 South Main
Street
☐ Savings
☐ Money market
☐ Brokerage

Tulsa, OK 74103-0000
City        State    ZIP Code
☐ Other
_____

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| 19.1 | Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|------|------------------------------------------|-----------------------------------|------------------------------|-----------------------------|
| | Name | | | ☐ No |
| | Street | | | ☐ Yes |
| | | Address | | |
| | City          State    ZIP Code | | | |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| 20.1 | Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|------|----------------------------|-----------------------------------|------------------------------|-----------------------------|
| | Don's Repair | | Bobcat | ☐ No |
| | Name | | | ☑ Yes |
| | Street | | | |
| | | Address | | |
| | City          State    ZIP Code | | | |

---

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---------------------------|--------------------------|------------------------------|-------|
| Central States Reprocessing, LLC | 473617 East 610 Rd | (1) 18720A Used 37" x 61" | $950,000.00 |
| Name | | Herbold Granulator, Model SMS | |
| 4121 Nw 37th St | Watts, OK 74964 | 80/160 and (2) a 2000 China | |
| Street | | Made Grinder 100 HP With | |
| Lincoln          NE      68524 | | Control Panel | |
| City          State    ZIP Code | | | |

---

Official Form 207                Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                page **10**

GW-144

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 145 of 227
6:23-cv-00196-DES    Document 71-1    Filed in ED/OK on 06/26/24    Page 23 of 23

| Debtor | CSR-OK Real Estate Holding Company, LLC | | Case number *(if known)* | |
| | Name | | | |

| 20.1 | Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|---|
| | Don's Tractor and Equipment Repair<br>Name | _____ | Bobcat under repair | ☐ No |
| | 65503 S 4760 Rd<br>Street | _____ | _____ | ☑ Yes |
| | | **Address** | _____ | |
| | Westville, OK 74965<br>City          State     ZIP Code | _____ | _____ | |

---

**Part 11:**  Property the Debtor Holds or Controls That the Debtor Does Not Own

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| _____<br>Name | _____ | _____ | _____ |
| _____<br>Street | _____ | _____ | |
| _____<br>City          State     ZIP Code | _____ | _____ | |

---

**Part 12:**  Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No

☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| _____ | _____<br>Name | _____ | ☐ Pending |
| **Case number** | _____<br>Street | _____ | ☐ On appeal |
| _____ | _____ | _____ | ☐ Concluded |
| | _____<br>City          State     ZIP Code | _____ | |

---

GW-145

# EXHIBIT 14

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 147 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 1 of 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **BANK OF HAYS** *et al.*,<br><br>                       **Plaintiffs,**<br><br>**vs.**<br><br>**CSR Worldwide OK, Inc.,** *et al.*,<br><br>                       **Defendants.** | **Case No. 23-CV-196-DES** |

<u>**ORDER ON MOTION TO HOLD CERTAIN DEFENDANTS IN CONTEMPT**</u>

    This matter came on for hearing before the Court on July 2, 2024 (the "<u>**Contempt Hearing**</u>"), on Bank of Hays' (the "<u>**Bank**</u>") motion (doc. 71) the "<u>**Motion**</u>") pursuant to Rule 70 (d) and (e) Fed. R. Civ. P. to hold certain defendants identified in the Motion to be in contempt for the intentional, knowing, and willful violation of this Court's *Order Appointing Receiver* (doc. 24) entered by this Court on October 13, 2023 (the "<u>**Receiver Order**</u>"), and for a writ of assistance. The Court, having reviewed the Motion (including the Declaration of David R. Payne attached thereto at docket entry 71-1 (the "<u>**Payne Declaration**</u>")), the docket in this case; the responses to the Motion filed herein (doc. nos. 77, 78, 81, and 82); having received evidence and heard testimony on this matter (doc. 83); and being otherwise advised, **FINDS** and **ORDERS** as follows:

    1.    Defendants Steven Francis Bombola ("<u>**Bombola**</u>") and Troy Don Burgess ("<u>**Burgess**</u>," and together with Bombola, the "<u>**Contemnors**</u>") willfully violated the Receivership Order by, *inter alia*, (a) diverting proceeds of tolling operations from the Receiver's custody and control and into a bank account controlled by defendant Central States Reprocessing LLC ("<u>**Central States**</u>"); and (b) entering the <u>**Facility**</u> (as defined in the Payne Declaration at ¶ 5) and removing tangible assets involving the respective business operations of defendants CSR

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 148 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 2 of 7

Worldwide OK, Inc. and CSR-OK Real Estate Holding Company, LLC (collectively, the "**Borrowers**," and together with the Contemnors and Central States, the "**Subject Defendants**").

2. As a result of their willful violations of the Receiver Order, the Contemnors are in civil contempt of this Court, and grounds exist to issue a Writ of Assistance as prayed for in the Motion.

3. The Receiver incurred $25,600 of fees and costs ("**Receiver Liabilities**") arising from the Contemnors' contumacious conduct, which fees and costs would not have been incurred by the Receiver absent the contumacious conduct.

4. Although the Receiver testified that the Borrowers' assets were more valuable if Borrowers' business was operational, the Contemnors operated the Borrowers' business without the consent required by the Receiver Order. As a result, any and all operational costs Borrowers' business incurred from October 13, 2023, to May 29, 2024, were not incurred by the Receivership Estate.  All unpaid costs incurred during the operation of the Borrowers' business during the time frame set forth above are collectively referred to herein as "**Operating Liabilities**," and include, without limitation:

  (i) obligations owed to Ozark Electric, Culligan, Frost Oil, and all employees or contractors involved in such business operations; and

  (ii) all FICA, FUTA, and other applicable taxes or charges associated with wages or other sums paid or payable to the employees and contractors referenced in subparagraph 4(B)(1).

5. Receiver Liabilities and Operating Liabilities are collectively referred to herein as "**Contempt Liabilities**."

6. The Contemnors may purge their contempt by fully and timely accomplishing the following:

2

GW-148

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 149 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 3 of 7

A.      Subject Defendants will reimburse the Receiver for the costs and expenses caused by the contemptuous actions in the amount of $25,600.00 ("Receiver Costs") in the following manner:

(i)      On or before August 31, 2024, deliver the sum of USD $12,000.00 in collected funds to the Receiver in partial compensation for and payment of Receiver Liabilities;

(ii)      On or before October 31, 2024 deliver the sum of USD $6,800.00 to the Receiver in partial compensation for and payment of Receiver Costs; and

(iii)      On or before December 31, 2024 deliver the sum of USD $6,800.00 to the Receiver in full and final satisfaction of the Receiver Costs.

(iv)      At any time between the entry of this Order and December 31, 2024, Subject Defendants may include Non-Turnover Items (defined below) in any sale conducted by the Receiver and use the proceeds from sale of those Non-Turnover Items obligations under in subsection (ii) or (iii) above.

B.      Within 14 days after entry of this Order ("**Inspection Period**"), Subject Defendants must

(i)      either (a) give the Receiver access to inspect any of the items identified in the Subject Defendants' Exhibit 6 received into evidence by the Court at the Contempt Hearing ("**Exhibit 6**") (excluding only the tolling materials that belong to Borrowers' customers identified as Items 5, 6, 7, 8, and 9 ("**Tolling Materials**")) that were removed from the Facility (collectively, "**Non-Tolling Items**") or (b) provide the Receiver evidence satisfactory to the Receiver of ownership of all Non-Tolling Items in the form of titles, bills of sale, insurance certificates, depreciation schedules, UCC financing statements, or similar business records. Any travel -related expense incurred by the Receiver, in addition to reasonable compensation for the Receiver's estimated fees, to be incurred in connection with the Receiver's inspection of Non-Tolling Items must be either paid in advance by Subject Defendants or in a manner otherwise satisfactory to the Receiver.

(ii)      Within 3 days after expiration the Inspection Period, the Court directs the Receiver to provide the Subject Defendants a report which identifies the Non-Tolling Items the Receiver requests the Subject Defendants turn over ("**Turnover Report**"). Subject Defendants must either return all items identified in the Turnover Report to the Facility ("**Turnover Items**") at the Subject Defendants' expense no later than 14

3

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 150 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 4 of 7

days after their receipt of the Turnover Report ("**Turnover Period**") or make other arrangements regarding those items which is satisfactory to the Receiver.

(iii)    Within 7 days after expiration of the Turnover Period, the Court directs the Receiver to file a notice that the Receiver (A) has been given access to the Non-Tolling Items; (B) has received sufficient records regarding ownership of the Non-Tolling Items; and (C) has either (1) received possession of the Turnover Items or (2) that the Subject Defendants have made other satisfactory arrangements with him regarding any Turnover Items listed in the Turnover Report that have not been delivered to the Receiver. The Receiver's notice shall specifically designate any Non-Tolling Items as to which the Receiver believes that the Subject Defendants **have not** provided satisfactory evidence of ownership by non-Borrowers, and the Court shall retain jurisdiction to resolve any such issues of disputed ownership.

C.    On or before August 9, 2024, or within 14 days after the entry of this Order, whichever is later, the Subject Defendants shall execute and deliver to the Receiver a form of agreement (in form and content reasonably satisfactory to the Subject Defendants and to the Receiver) by which the Subject Defendants:

(i)    jointly and severally, irrevocably, and unconditionally indemnify the Receiver and the receivership estate against liability for any and all Operating Liabilities and hold the Receiver harmless of and from all Operating Liabilities; and

(ii)    at Subject Defendants' discretion, designate and agree to deliver to the Facility at Subject Defendants' sole expense  any Non-Tolling Items that the Receiver did not request to be turned over in the Turnover Report, and agree that any of the designated Non-Tolling Items may be listed for sale and sold at auction together with Receivership Estate assets, with the net proceeds of sale of the designated Non-Tolling Items being distributed as follows:

(A)    Net proceeds of auction sale of the designated Non-Tolling Items that the Receiver agrees do not belong to the Receivership Estate shall be retained by the Receiver and applied in payment of Receiver Costs, Receiver Liabilities, and Operating Liabilities in that order until Receiver Costs, Receiver Liabilities, and Operating Liabilities have been fully paid.

(B)    Net proceeds of auction sale of Non-Tolling Items that the Receiver believes may belong to the Receivership Estate shall be retained by the Receiver *in custodia legis* pending further order of the Court or agreement by the Receiver and the Subject Defendants regarding disposition of such sales proceeds.

4

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 151 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 5 of 7

The Contemnors shall file a notice with the Court upon the execution and delivery of the agreement required by this subsection.

        D.        Produce to the Receiver each of the following on or before August 9, 2024:

        (i)        the complete identity of and contact information for the "Buyer" referenced in ¶ 34 of the Subject Defendants' response filed at docket entry 81 (together with all known Buyer affiliates and agents (including all attorneys, accountants, brokers, and other professionals known to the Subject Defendants)); and

        (ii) (A) all correspondence of any type between all Subject Defendants and the Buyer, (B) all proposals, business plans, term sheets, and all diligence materials provided to or by the Buyer, (C) full disclosure of any compensation to be paid to any Subject Defendant by the Buyer upon consummation of a contemplated transaction with the Buyer, if any, (D) full disclosure of any Subject Defendant's immediate or future equity participation in the Buyer (or any other entity to be formed by or related to the Buyer) upon consummation of a contemplated transaction with the Buyer, if any, and (E) Contemnors' agreement that the Receiver and any retained auctioneer may freely discuss with the Buyer a potential stalking horse or other bid at an auction sale of Receivership assets.

The foregoing shall be verified under oath by both Contemnors to be true, accurate, and complete to the best of their respective knowledge.

        E.     The Subject Defendants will provide, at their sole expense, reasonable assistance to the Receiver and his auctioneer and other professionals in arranging/rearranging personal property and equipment remaining in the Facility to maximize the auction sale value thereof.

        **IT IS THEREFORE ORDERED** that defendants Bombola and Burgess are in civil contempt of this Court.

        **IT IS FURTHER ORDERED** that if the Subject Defendants shall timely perform each of the acts described in subparagraphs 6(A) – (D) of this Order, the Contemnors shall be deemed to have purged their contempt; provided, however, that each of the Subject Defendants shall remain fully bound to timely and meaningfully meet their obligations described in subparagraph 6(E) of this Order. If the Subject Defendants fail to timely perform each of the acts described in paragraph 6 of this Order, the Court reserves the right to (a) determine that the Contemnors' contempt has

20416408.3:011777.00001

GW-151

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 152 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 6 of 7

not been purged, and to fully reinstate the contempt decree against the Contemnors; and (b) issue a Writ of Assistance as prayed for in the Motion.[1]

**IT IS FURTHER ORDERED** that this Order constitutes a money judgment against the Subject Defendants for the Receiver Costs set forth in subparagraph 6(A), which is stayed pending the timely repayment of the Receiver Costs under the terms of subparagraph 6(A); however, if timely payments are not made, said judgment shall be fully enforceable by the Receiver without further order of the Court and the Receiver is authorized to take any and all enforcement action of said judgment as allowed by applicable law.

**IT IS FURTHER ORDERED** that the Receiver shall not be required to file separate suit, but instead, is authorized to take action to enforce the indemnity obligations contemplated in subparagraph 6(C)(i), should it be necessary to do so, by filing a motion before this Court requesting payment of any such obligations, and providing the Subject Defendants the opportunity to object to said request within 14 days of the filing of any such motion as provided for under the Court's Local Rules.

**IT IS FURTHER ORDERED** that the Subject Defendants' failure to fully and timely comply with this Order may result in such sanctions as the Court deems appropriate.

**DATED** July 29 , 2024.

_____
**D. Edward Snow**
**United States Magistrate Judge**

---

[1] The Court has determined that it will not be necessary to issue a Writ of Assistance if the Subject Defendants fully and timely comply the terms of this Order.

20416408.3:011777.00001

GW-152

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 153 of 227
6:23-cv-00196-DES    Document 84    Filed in ED/OK on 07/03/24    Page 7 of 7

APPROVED FOR ENTRY:

*s/Thomas A. Creekmore III*
Thomas A. Creekmore III, OBA #2011
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
521 East Second Street, Suite 1200
Tulsa, Oklahoma 74120
Telephone (918) 594-0400
Facsimile (918) 594-0505
tcreekmore@hallestill.com

*Attorneys for Bank of Hays*

*s/Nicholas Grillot*
Nicholas R. Grillot, KS #22054, pro hac vice
HINKLE LAW FIRM LLC
1617 N. Waterfront Pkwy, Suite 400
Wichita, Kansas 67206-6639
Phone: (316) 660-6211 / Fax: (316) 660-6523
Email: ngrillot@hinklaw.com

And

Jennifer Ary Brown, OBA #22475
FRANDEN | FARRIS | QUILLIN
  GOODNIGHT | ROBERTS + WARD
Two West 2nd Street, Suite 900
Tulsa, Oklahoma 74103
Tel:    918/583-7129
Fax:    918/584-3814
jary@tulsalawyer.com

*Counsel for Subject Defendants*

7

# EXHIBIT 15

2:914756

FILED
IN THE OFFICE OF THE
SECRETARY OF STATE
OF THE STATE OF CALIFORNIA

## ARTICLES OF INCOPORATION

MAR 15 2007

### I.

The name of this corporation is THE DMB FUND.

### II.

A. This corporation is a nonprofit MUTUAL BENEFIT COPORATION organized under the Nonprofit Mutual Benefit Corporation law. The purpose of this corporation is to engage in any lawful act or.activity, other than credit union business, for which a corporation may be organized under such law.

B. The specific purpose of this corporation is to educate, assist, help and promote awareness for health issues, concerns, and laws for general population and to support those that are afflicted by such physical infirmities and diseases.

### III.

The name and address in the State of California of this corporation's initial agent for service of process is:

### DAVID R. SCHWARCZ
### 499 NORTH CANON DRIVE
### BEVERLY HILLS, CA 90210

### IV.

Notwithstanding any of the above statements of purposes and powers, this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the specific purposes of this corporation.

### V.

The address of the business office is 499 North Canon Drive, Bevely Hills, Ca 90210.

DMB FUND

By  _____
    David R. Schwarez, Incorporator

# EXHIBIT 16

BA20231275388



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CA NONPROFIT CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20231275388

Date Filed: 8/15/2023

| Entity Details | |
|---|---|
| Corporation Name | THE DMB FUND |
| Entity No. | 2914756 |
| Formed In | CALIFORNIA |

**Street Address of California Principal Office of Corporation**

| | |
|---|---|
| Street Address of California Office | 2350 CASTLE HEIGHTS AVENUE
LOS ANGELES, CA 90034 |

**Mailing Address of Corporation**

| | |
|---|---|
| Mailing Address | 2350 CASTLE HEIGHTS AVENUE
LOS ANGELES, CA 90034 |
| Attention | |

**Officers**

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| DAVID SCHWARCZ | 2350 CASTLE HEIGHTS AVENUE
LOS ANGELES, CA 90034 | Chief Executive Officer |
| Judy Cox | 2350 Castle Heights Avenue
Los Angeles, CA 90034 | Secretary, Chief Financial Officer |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

**Agent for Service of Process**

| | |
|---|---|
| Agent Name | JUDY COX |
| Agent Address | 2350 CASTLE HEIGHTS AVENUE
LOS ANGELES, CA 90034 |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

**Electronic Signature**

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*David Schwarcz*                    08/15/2023
_____        _____
Signature                          Date

GW-158    Page 1 of 1

B2034-4007  08/15/2023  10:02 AM Received by California Secretary of State

# EXHIBIT 17

Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)

2020 WL 6892001
Only the Westlaw citation is currently available.
PUBLIC MATTER—NOT
DESIGNATED FOR PUBLICATION
Review Department of the
State Bar Court of California.

In the MATTER OF David Richard
SCHWARCZ, State Bar No. 152896.

17-C-00851
|
Filed November 6, 2020

OPINION AND ORDER

PURCELL, P. J.

**\*1** David Richard Schwarcz pleaded guilty in federal court to conspiring to supervise and operate an unlicensed money transmitting business, a felony that may or may not involve moral turpitude. Schwarcz knew that the funds transferred were proceeds from illegal activities and he used his law firm's trust account in the process. The hearing judge found moral turpitude in the facts and circumstances surrounding the conviction and recommended disbarment. Schwarcz committed this crime while his first disciplinary case was pending against him.

Schwarcz seeks review. He argues that the hearing judge relied on inadmissible evidence to find moral turpitude. He also requests more mitigation, less aggravation, and an actual suspension with credit for time spent on interim suspension. The Office of Chief Trial Counsel of the State Bar (OCTC) did not appeal but supports the disbarment recommendation.

Upon independent review (Cal. Rules of Court, rule 9.12), we find (1) the facts and circumstances surrounding the conviction involved moral turpitude; (2) Schwarcz's mitigation is not compelling; and (3) disbarment is the proper discipline given his serious misconduct, the applicable disciplinary standards, the aggravating circumstances, and comparable case law.

## I. FACTUAL BACKGROUND

### A. Overview of Admissible Evidence that Establishes the Record for Review

Schwarcz's central argument on review is that the hearing judge relied on inadmissible evidence. OCTC did not call any witnesses at trial and instead presented documents from Schwarcz's criminal case. Included were items such as the written plea agreement, Schwarcz's and the United States Attorney's Office's (USAO) sentencing memoranda, and transcripts from his plea and sentencing hearings. Schwarcz argues that the hearing judge relied heavily on the USAO's sentencing memorandum, which he contends is merely argument and contains multiple levels of inadmissible hearsay and unproven factual allegations. OCTC counters that Schwarcz stipulated to admit these documents for all purposes. We find the record does not establish the broad stipulation for admission that OCTC asserts. [1]

[1] The parties filed a July 12, 2019 pretrial Stipulation as to Facts and Admission of Documents (Stipulation), but reserved the right to argue the weight that should be given to each exhibit. At the disciplinary trial, the parties agreed to the authenticity of documents OCTC had obtained from the Public Access of Court Electronic Records service, but did not agree that the documents would be admitted for all purposes. Schwarcz also objected to admission of certain documents in his closing trial brief. Admissibility of the documents for all purposes was not established at trial.

Some documents from the criminal case are clearly admissible in disciplinary matters, such as guilty pleas and plea agreements. (See Bus. & Prof. Code, § 6101, subd. (a) [conviction is conclusive evidence of guilt]; 📁 *Chadwick v. State Bar* (1989) 49 Cal.3d 103, 110 [criminal conviction, including guilty plea, is conclusive proof attorney committed all acts necessary to constitute offense].) Accordingly, we rely only on Schwarcz's signed plea agreement and transcript excerpts from his plea and sentencing hearings that

Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)

address his guilty plea, along with his testimony from the discipline trial. [2]

[2]    We need not determine whether hearsay statements contained in any other documents are admissible because we do not rely on them. (Rules Proc. of State Bar, rule 5.104 (D) [hearsay evidence may supplement or explain other evidence, but over timely objection will not support finding unless it would be admissible over objection in civil actions].)

**B. The Plea Agreement**

**\*2**  In December 2015, Schwarcz was arrested and indicted in the United States District Court for the Southern District of New York for participation in a money laundering conspiracy. A superseding indictment was filed in March 2016. On November 28, 2016, a second superseding indictment was filed, charging Schwarcz with money laundering in violation of ⚑title 18 United States Code (U.S.C.) section 1956 (counts one and two), and an illegal money transmitting conspiracy in violation of title 18 U.S.C. sections 371 and ⚑1960 (count three).

On January 13, 2017, Schwarcz signed a six-page plea agreement with the USAO, agreeing to plead guilty to count three. [3]  (*United States v. David Schwartz a/k/a "David Schwarcz,"* No. 1:15-cr-00835.) Count three alleges in relevant part:

- From 2009 through 2011, Schwarcz, Robert Rimberg, and others, known and unknown, "unlawfully, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other" to violate ⚑title 18 U.S.C. section 1960;

- As a part and an object of the conspiracy, Schwarcz and coconspirators "willfully and knowingly would and did conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business affecting interstate and foreign commerce," in violation of ⚑title 18 U.S.C. section 1960; and

- Two overt acts were listed—that in or about December 2010 and in furtherance of the conspiracy, in violation of title 18 U.S.C. section 371 (1) Rimberg and an unnamed coconspirator accepted approximately $1 million in United States currency, and (2) Schwarcz sent and assisted in sending wires transferring the approximately $1 million to different bank accounts.

Schwarcz also stipulated in the plea agreement to a two-level enhancement under the United States Sentencing Guidelines because he "knew or believed that the funds were *proceeds of unlawful activity*." (Emphasis added.) [4]

[3]    Title 18 U.S.C. section 371 provides that it is a crime for two or more persons to conspire to commit any offense against the United States. It requires that at least one of these persons do an act to affect the object of the conspiracy. ⚑Title 18 U.S.C. section 1960 provides that it is a crime to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business.

[4]    The plea agreement reserved Schwarcz's right to challenge the applicability of this enhancement, but he did not do so. We reject his argument that he did not agree to the enhancement because he reserved the right to challenge it. The agreement does not support this.

**C. The Plea Hearing**

The plea hearing was held on January 13, 2017, the same day Schwarcz signed his plea agreement. The federal district court judge marked a copy of the agreement as an exhibit. The judge asked a series of questions to confirm that Schwarcz intended to plead guilty, that he was in fact guilty, that he understood the consequences of his plea, including that he was giving up certain constitutional rights, that his plea was knowing and voluntary, and that there was an independent basis for his plea. Under oath, Schwarcz answered these questions in the affirmative. He also acknowledged that he had been provided sufficient

Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)

time to discuss the case with his lawyer and was satisfied with his legal representation.

The judge discussed the substance of count three of the second superseding indictment, including the overt acts. He stated that those acts were alleged to be in furtherance of the conspiracy as follows: (a) in or around December 2010, Schwarcz's coconspirators accepted approximately $1 million, and (b) Schwarcz sent and assisted in sending wire transfers of approximately $1 million. The judge then inquired of Schwarcz, "Do you understand that is what you were charged with in Count Three of the indictment?" Schwarcz answered "Yes."

 **\*3** Before the judge took the plea, he asked Schwarcz to describe his participation in the charged crime. Schwarcz stated:

> In late 2010 and early 2011, I agreed with others to transfer funds as part of a money transfer business and I understood that the transfers would be in exchange for a fee. The money transfer business that I agreed to conduct and did conduct was not licensed under state or federal law. As part of this agreement, which I knew to be unlawful at the time, I transferred approximately $2,334,000 [*sic*] [5] in December 2010.

[5]    This amount was a typographical error in the plea transcript; the actual amount Schwarcz agreed as part of his plea that he personally transferred was approximately $234,000.

To establish venue, the USAO affirmed that "there were acts by [Schwarcz's] coconspirators that occurred in the Southern District of New York," including "a drop-off of a million dollars in cash that occurred in Manhattan," and "wires that were initiated in Manhattan." After the judge inquired, Schwarcz's attorney added that the acts were in furtherance

of the conspiracy and involved coconspirators. The judge asked Schwarcz, "[A]re you prepared to accept that for purposes of your plea?" Schwarcz answered "Yes." Further, Schwarcz acknowledged that if a coconspirator commits an overt act in furtherance of the conspiracy in the venue alleged, any member can be prosecuted for that offense in that venue. At the conclusion of the hearing, the judge found Schwarcz had knowingly and voluntarily waived his constitutional right to trial and other associated rights. The judge accepted Schwarcz's guilty plea to count three and adjudged him guilty. A sentencing hearing was set.

**D. The Sentencing Hearing**

Schwarcz appeared for sentencing on January 25, 2018. He expressed his remorse and discussed his personal and family issues. He assured the judge that those circumstances did not excuse his criminal conduct. The judge found that the offense was serious and the facts to which Schwarcz pleaded showed that the money transmitting business was a means to transform the proceeds of illicit activity to apparently legal resources, which furthered the illicit activity. The judge sentenced Schwarcz to imprisonment in a federal prison for a term of 366 days and, upon his release, to a supervised release for one year with standard conditions. A $6,000 fine and $100 special assessment were imposed. The USAO dismissed the two remaining counts in the second superseding indictment.

**II. STATE BAR COURT PROCEEDINGS**

On April 5, 2017, OCTC transmitted evidence of Schwarcz's conviction to the Review Department. On April 26, we placed Schwarcz on interim suspension from the practice of law effective May 22, pending final disposition of this proceeding. (Bus. & Prof. Code §§ 6101, 6102; [6] Cal. Rules of Court, rule 9.10; Rules Proc. of State Bar, rules 5.341 & 5.342.) On March 9, 2018, Schwarcz waived finality of the conviction. On March 22, we referred the matter to the Hearing Department to determine whether the facts and circumstances surrounding the conviction involved moral turpitude or other misconduct warranting

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 163 of 227

Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)

discipline. (Bus. & Prof. Code, § 6102, subd. (e); Rules Proc. of State Bar, rule 5.344.)

6       All further references to sections are to the Business and Professions Code unless otherwise noted.

**\*4** On July 12, 2019, the parties filed the Stipulation. Trial was held on September 5 and 6. Posttrial briefs were filed. The hearing judge issued his decision on December 2, 2019.

### III. FACTS AND CIRCUMSTANCES SURROUNDING SCHWARCZ'S CONVICTION INVOLVED MORAL TURPITUDE

In attorney disciplinary proceedings, "the record of [an attorney's] conviction [is] conclusive evidence of guilt of the crime of which he or she has been convicted." (Bus. & Prof. Code, § 6101, subd. (a); ⚑ *In re Gross* (1983) 33 Cal.3d 561, 567.) Since Schwarcz's conviction does not establish moral turpitude per se, any finding of moral turpitude must be made after considering the facts and circumstances of the conviction. (Bus. & Prof. Code, § 6102, subd. (e).) We are not restricted to examining elements of the crimes but must look at the whole course of misconduct. (*In the Matter of Oheb* (Review Dept. 2006) 4 Cal. State Bar Ct. Rptr. 920, 935.)

The facts and circumstances surrounding Schwarcz's conviction, as a coconspirator, involved moral turpitude because they clearly fit within the definition of moral turpitude as set forth by the California Supreme Court: "Criminal conduct not committed in the practice of law or against a client reveals moral turpitude if it shows a deficiency in any character trait necessary for the practice of law (such as trustworthiness, honesty, fairness, candor, and fidelity to fiduciary duties) or if it involves such a serious breach of a duty owed to another or to society, or such a flagrant disrespect for the law or for societal norms, that knowledge of the attorney's conduct would be likely to undermine public confidence in and respect for the legal profession." (⚑ *In re Lesansky* (2001) 25 Cal.4th 11, 16.) Schwarcz has shown deficiencies in his

character, including a lack of trustworthiness, honesty, and fidelity to his fiduciary duties.

Schwarcz argues no admissible evidence proves moral turpitude. He asserts that the factual basis for his guilty plea is limited, as it is "predicated on his agreement to make one transfer of funds, his lack of an appropriate license, and knowledge that the conduct was unlawful." He contends that he knew the unlicensed transfer was illegal, but he did not know the transferred funds were proceeds from unlawful activity. He submits that his conduct did not amount to moral turpitude.

We reject Schwarcz's request to limit his wrongdoing to his illegal transfer of $234,000. His plea agreement establishes the contrary. First, he stipulated that he conspired to operate an illegal money transmitting business. Second, as overt acts in furtherance of the conspiracy, he stipulated that he sent and assisted in sending wire transfers of approximately $1 million. Third, he stipulated to the sentencing enhancement that stated he knew or believed that the transfers were proceeds of unlawful activity.

At the hearings in federal court, Schwarcz confirmed his participation in the crime. He stated at his plea hearing that he had (1) conspired with others to make "transfers" of money, in the plural, (2) expected to receive a fee for the transfers, and (3) personally transferred $234,000 illegally. In determining the sentence, the judge noted that Schwarcz's misconduct was serious and he had pleaded to facts that showed the money transmitting business was a means to transform the proceeds of illicit activity to apparently legal resources.

**\*5** Schwarcz's actions surrounding his conviction were dishonest and demonstrate such a flagrant disrespect for the law that knowledge of his misconduct would likely undermine public confidence in and respect for the legal profession. (⚑ *In re Lesansky, supra,* 25 Cal.4th at p. 16.) He also abused his position of trust and dishonored his fiduciary duties by using his law firm's trust account to facilitate the transfer of illegal funds—something a non-attorney could not do. (Cf. *In the Matter of Kreitenberg* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 469, 474 [moral turpitude found where attorney used trust account to

avoid paying income taxes due on legal fees].) The totality of his misconduct is clearly contrary to honesty and good principles and involves moral turpitude. (*Stanford v. State Bar* (1940) 15 Cal.2d 721, 727–728 ["act of an attorney which is contrary to honesty and good morals is conduct involving moral turpitude"].) [7]

[7]   We do not go as far as the hearing judge to find that Schwarcz knew the illegal proceeds were specifically from narcotics trafficking, i.e., cocaine, or that he engaged in money laundering. That Schwarcz conspired to illegally transfer $1 million gained from *any* unlawful activity is dishonest conduct that involves moral turpitude.

### IV. AGGRAVATION AND MITIGATION

Standard 1.5 of the Standards for Attorney Sanctions for Professional Misconduct [8] requires OCTC to establish aggravating circumstances by clear and convincing evidence. [9] Standard 1.6 requires Schwarcz to meet the same burden to prove mitigation.

[8]   All further references to standards are to the Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.

[9]   Clear and convincing evidence leaves no substantial doubt and is sufficiently strong to command the unhesitating assent of every reasonable mind. (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 552.)

### A. Aggravation

#### 1. Prior Record of Discipline (Std. 1.5(a))

Standard 1.5(a) provides that a prior record of discipline may be an aggravating factor. The hearing judge found that Schwarcz's prior discipline was aggravating but did not assign a specific weight. We assign substantial weight.

In 1999, Schwarcz committed misconduct in one client matter. Disciplinary charges were filed on July 19, 2006. [10] Years later, in December 2013,

Schwarcz stipulated to violating former rule 3-300 of the California Rules of Professional Conduct by improperly entering into business transactions with a client. [11] He failed to fully disclose the terms and conditions of the transactions and did not notify his client of her right to seek independent legal advice. The stipulation cited significant client harm and multiple acts of wrongdoing as aggravating, and good character, cooperation for entering into a pretrial stipulation, no prior record of discipline, and consideration for the passage of time since the misconduct, as mitigating. On April 11, 2014, the Supreme Court imposed the stipulated discipline, which included a 60-day actual suspension. (S216108 (State Bar Court No. 04-O-14445).)

[10]   We take judicial notice of this date. (Rules Proc. of State Bar, rule 5.156(B); Evid. Code § 452.)

[11]   All further references to rules are to the former California Rules of Professional Conduct that were in effect until November 1, 2018, unless otherwise noted.

Schwarcz argues that the hearing judge failed to credit all the mitigating circumstances in the prior discipline. We disagree. The judge correctly listed each mitigating circumstance recited in the stipulation. But we agree with his argument that the mitigation counterbalances the aggravation of the prior record, and that the past misconduct is not the same type of misconduct as in the present case.

**\*6** Even so, the timing of Schwarcz's prior discipline case as it relates to his present misconduct outweighs these considerations. He was on notice since 2006 that his first case had been filed and he was facing discipline. As a result, he should have been on high alert regarding his ethical responsibilities. Yet he proceeded to commit serious criminal acts in 2010—four years after his discipline case was filed and three years before he resolved it by stipulation. Schwarcz clearly failed to appreciate his professional ethical obligations. We assign substantial aggravation for his prior record of discipline.

#### 2. Indifference (Std. 1.5(k))

*Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)*

The hearing judge found that Schwarcz's misconduct was aggravated by denying the full extent of his involvement in the conspiracy. (Std. 1.5(k) [indifference toward rectification or atonement for consequences of misconduct is aggravating factor].) The judge assigned significant aggravation because Schwarcz's failure to recognize his wrongdoing suggests possible recidivism. (*In the Matter of Layton* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 366, 380 [lack of insight into misconduct causes concern that attorney will repeat misdeeds and is substantial factor in discipline recommendation].) We agree and assign substantial weight. Schwarcz repeatedly testified at the discipline trial that he did not know the funds he transferred were from unlawful activities, yet his plea agreement and the plea and sentencing hearings prove otherwise. Though the law does not require full penitence, it does mandate that an attorney accept responsibility for his or her misconduct and come to grips with his or her culpability. (*In the Matter of Katz* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 502, 511.) Schwarcz has not done this. [12]

[12]   The hearing judge found Schwarcz lacked candor at trial for his denial, but properly did not assign aggravation under standard 1.5(l) because he relied on these facts to assign aggravation for indifference under standard 1.5(k).

**B. Mitigation**

**1. No Mitigation for Extreme Emotional Difficulties or Mental Disabilities (Std. 1.6(d))**
Standard 1.6(d) provides that mitigation may be assigned for extreme emotional difficulties or physical or mental disabilities if (1) the attorney suffered from them at the time of the misconduct; (2) they are established by expert testimony as being directly responsible for the misconduct; and (3) they no longer pose a risk that the attorney will commit future misconduct. The hearing judge assigned "slight mitigating credit." Schwarcz argues he is entitled to greater credit because he had "diminished capacity" at the time of his misconduct and was "unable to appreciate conduct that should have alerted him to make further inquiry before agreeing to transfer the funds." We assign no mitigation credit because

Schwarcz did not prove the requirements of the standard.

Schwarcz presented Lyndsay Elliott, Psy.D., a clinical and forensic psychologist. Dr. Elliott was hired to conduct a sentencing evaluation. She interviewed Schwarcz in 2017 for four hours, prepared a 23-page report for his sentencing hearing, and testified at the disciplinary trial. Dr. Elliott testified that Schwarcz had suffered various profound traumas throughout his life, beginning in childhood. She opined that he suffered from, among other things, untreated psychological trauma comprised of post-traumatic stress disorder, chronic complex post-traumatic stress, battered child syndrome, abuse, and mood disorder consisting of depression and cognitive impairment. Her report, admitted into evidence at trial, states that his untreated trauma has led to diminished cognitive and emotional functioning that affected his capacity to use sound judgment, made him susceptible to others, and rendered him unable to foresee the likely consequences of his actions. Dr. Elliott also opined that Schwarcz suffered from extreme emotional difficulties as opposed to a mental disability but did not treat him for these problems and could not state whether he suffered from them at the time of the misconduct. We find that neither Dr. Elliott's testimony nor her report demonstrates Schwarcz suffered from extreme emotional difficulties or mental disabilities at the time of his misconduct in 2009 or 2010.

**\*7**   Next, Schwarcz did not establish that the emotional difficulties Dr. Elliott described were directly responsible for his criminal misconduct. While the doctor found some connection, or that the difficulties were a "contributing factor," she could not confirm a "direct" connection. Dr. Elliott also explained that she knew little about Schwarcz's criminal actions as she does not question her clients about the offense when preparing sentencing reports.

Finally, Schwarcz did not establish that his emotional difficulties no longer pose a risk of future misconduct. We acknowledge his credible testimony about his participation in the Lawyers Assistance Program since December 2016, his therapy sessions, and his report of greater self-awareness. He urges us to consider the statement made by Richard A. Gottfried, J.D., M.B.A., M.A., his current therapist. Dr. Elliott interviewed

*Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)*

Mr. Gottfried for her evaluation and included in her report that he had affirmed Schwarcz is dedicated to his recovery and "has been fully involved in the psychotherapy process." But when pointedly asked whether Schwarcz still posed a risk of future misconduct, Dr. Elliott could not offer an opinion.

We agree with the hearing judge that Dr. Elliott's role in this proceeding is limited. She was hired to prepare a sentencing evaluation for federal court and therefore focused on the impact a prison sentence would have on Schwarcz's family and business responsibilities. Dr. Elliott met with Schwarcz only one time in 2017, was not his treating psychologist, and had little information about the facts and circumstances of his conviction. The overall evidence does not establish mitigation under standard 1.6(d) by clear and convincing evidence.

### 2. Cooperation with State Bar (Std. 1.6(e))

The hearing judge did not address standard 1.6(e), which affords mitigation for spontaneous candor and cooperation displayed to the State Bar. Schwarcz waived finality of his conviction. He also entered into a pretrial Stipulation that contained a limited set of mostly procedural facts and authorized admission of documents, reserving the right to argue the weight to be assigned to them. These actions were not spontaneous, nor did they save significant judicial time or resources. Noting also that Schwarcz did not admit to culpability —that the facts and circumstances surrounding his conviction involved moral turpitude—we assign limited mitigating weight for his cooperation. (*In the Matter of Johnson* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 179, 190 ["more extensive weight in mitigation is accorded those who, where appropriate, willingly admit their culpability as well as the facts"].)

### 3. No Mitigation for Extraordinary Good Character (Std. 1.6(f))

Schwarcz is entitled to mitigation if he establishes "extraordinary good character attested to by a wide range of references in the legal and general communities, who are aware of the full extent of the misconduct." (Std. 1.6(f).) Five witnesses testified at trial, three of whom also submitted copies of their character letters prepared in 2017 for the federal court sentencing. Schwarcz provided copies of another

three federal court character letters: from his sister, his attorney in the present proceeding, and a friend who is also a business associate. The witnesses who testified included Schwarcz's accountant Judy Cox, friend and business partner Steve Mark Gold (writer and animation producer), attorneys and friends Benjamin Gluck and Lionel Glancy, and Rabbi David Sochet. [13] The witnesses have known Schwarcz for various periods of time, some for decades. They uniformly testified that he was empathetic, honest, client-oriented, and zealous about integrity, but that he had made a serious "mistake" by committing a crime.

[13]    Ms. Cox, Mr. Gold, and Mr. Glancy submitted copies of their sentencing letters.

**\*8** The hearing judge assigned no mitigation credit for extraordinary good character because he found that, at best, one or possibly two of the witnesses were aware of the full extent of Schwarcz's misconduct. We agree. While each witness knew generally about the criminal conviction, most did not know Schwarcz had stipulated in his plea agreement that the money transferred was from illegal activity. Though we give serious consideration to character evidence from attorneys (*In the Matter of Brown* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 309, 319), they must be informed about the full extent of the misconduct to receive such consideration.

We reject Schwarcz's argument that good character witnesses need only have a "basic understanding" of the misconduct—the standard requires an awareness of the full extent of the misconduct. Here, each witness lacked critical information, most importantly that Schwarcz's conspiracy to transfer the money involved funds obtained illegally. Accordingly, we do not find that the witnesses established his extraordinary good character under standard 1.6(f).

### 4. No Mitigation for Remorse and Recognition of Wrongdoing (Std. 1.6(g))

Standard 1.6(g) provides mitigation for "prompt objective steps, demonstrating spontaneous remorse and recognition of the wrongdoing and timely atonement." The hearing judge assigned no mitigation credit. We agree.

Schwarcz argues that he is entitled to mitigation for remorse because he entered a plea to the crime, recognized his wrongdoing, and participated in treatment. At his federal court hearings in 2017 and 2018, and his disciplinary trial in 2019, he stated he was remorseful. But his statements of contrition were made years after he committed the crime and at a time when he faced serious consequences with federal authorities and the State Bar. The Supreme Court has stated that expressing remorse is "an elementary moral precept which, standing alone, deserves no special consideration in determining the appropriate discipline." (*Hipolito v. State Bar* (1989) 48 Cal.3d 621, 627, fn. 2.)

**5. Pro Bono Work and Community Service**

Pro bono work and community service are mitigating circumstances. (*Calvert v. State Bar* (1991) 54 Cal.3d 765, 785.) Schwarcz argues that he should receive mitigation for "his long-term involvement with his pro bono and community work." But in his briefs on review, he did not specify the details of his work or explain why they entitle him to mitigation.

In our independent review of the record, however, we find evidence of Schwarcz's pro bono and volunteer work. Rabbi Sochet, a character witness, testified that Schwarcz was involved in the synagogue, including leading a class as director of adult studies for about six months; Schwarcz confirmed this in his testimony. Dr. Elliott's report contains a summary of the community service activities that Schwarcz reported to her, including serving as president of a synagogue (1996-2006), volunteering at a food bank (2006-2013) and for the Jewish Burial Society (no dates), serving on the board for a non-profit (2015-present), and providing pro bono assistance to low-income clients, including marital dissolution cases (no dates).

Though the quantity and quality of these services are commendable, the evidence lacks specificity, was primarily uncorroborated, and did not reflect recent activity other than his service at the non-profit. We therefore assign moderate, but not full, mitigation credit. (*Rose v. State Bar* (1989) 49 Cal.3d 646, 667 [mitigation for legal abilities, dedication, and zeal in pro bono work]; see *In the Matter of Shalant* (Review

Dept. 2005) 4 Cal. State Bar Ct. Rptr. 829, 840 [limited weight given for community service where evidence based solely on attorney's testimony making extent of service unclear].)

## V. DISBARMENT IS THE
## NECESSARY DISCIPLINE

**\*9** Our role is not to punish Schwarcz for his crime—the federal court has done so by sentencing him in the criminal proceeding. Instead, our purpose is to recommend appropriate professional discipline, considering the goals of the discipline system. (*In re Brown* (1995) 12 Cal.4th 205, 217 ["the aim of attorney discipline is not punishment or retribution; rather, attorney discipline is imposed to protect the public, to promote confidence in the legal system, and to maintain high professional standards"].) Our discipline standards guide us whenever possible, and we balance all relevant factors, including mitigating and aggravating circumstances, on a case-by-case basis, to ensure that the discipline imposed is consistent with the purposes of discipline. (*In re Young* (1989) 49 Cal.3d 257, 266–267 & fn. 11.) The hearing judge recommended disbarment. Schwarcz urges an actual suspension with credit for the more than three years he has been on interim suspension since May 22, 2017.

Given our finding of moral turpitude in the facts and circumstances, we apply the version of standard 2.15(b) in effect at the time of the disciplinary trial. It calls for disbarment as the presumed sanction for a felony conviction in which the surrounding facts and circumstances involve moral turpitude, unless the most compelling mitigating circumstances clearly predominate. [14] Schwarcz established mitigation only for cooperation (limited) and pro bono work and community service (moderate). The total weight of these factors is not compelling. [15] Nor does the mitigation clearly predominate over Schwarcz's serious criminal misconduct and the aggravating factors of a prior record of discipline and his indifference, to which we assigned substantial weight. Under these circumstances, the presumed sanction is disbarment.

**14**  The standards were revised in 2019. Current standard 2.15(a) provides that summary disbarment is the sanction when a hearing judge finds that the facts and circumstances surrounding a felony conviction involve moral turpitude. The standard mirrors the new mandate of Business and Professions Code section 6102, subdivision (c)(2), which became effective on January 1, 2019. Section 6102 is not retroactive and therefore applies only where the crime underlying the conviction occurred after the statute's effective date. Schwarcz's crime occurred before January 1, 2019, so the current standard does not apply. (*In the Matter of Jebbia* (Review Dept. 1999) 4 Cal. State Bar Ct. Rptr. 51, 54 [summary disbarment statute not applied retroactively].)

**15**  Cf. 🚩*In the Matter of Field* (Review Dept. 2010) 5 Cal. State Bar Ct. Rptr. 171, 185 (compelling mitigation in non-conviction case where attorney provided extraordinary demonstration of good character, consisting of 36 character witnesses, including judges, attorneys, public officials, law enforcement personnel, community leaders, and friends, and an impressive record of participation in pro bono and community service activities).

In addition to the standards, we look to comparable case law. (*Snyder v. State Bar* (1990) 49 Cal.3d 1302, 1310–1311.) Like the hearing judge, we find guidance in *In re Berman* (1989) 48 Cal.3d 517. Berman pleaded guilty to a violation of title 18 U.S.C. section 371 (conspiracy) to illegally transport monetary instruments. The facts surrounding the conviction showed that Berman used his legal skills to propose a plan to launder money he believed were the proceeds of illegal drug sales. He also intended to give false information to banks to obtain loans and lines of credit for his company. The Supreme Court held that Berman's fraudulent intent constituted moral turpitude and found that he did not uphold the high ethical standards of honesty and integrity required of attorneys. He was disbarred. Like Berman, Schwarcz participated in a conspiracy involving proceeds that he believed were garnered from illegal activity, though we do not make a finding of the specific illegal activity.

And, like Berman, Schwarcz used his position as an attorney to transfer a large amount of money through his firm's trust account.

**\*10**  Schwarcz argues that *Berman* is inapplicable due to the different type of evidence presented in that case. He asserts that the moral turpitude finding in *Berman* was supported by direct evidence, including the testimony of a federal agent. Schwarcz characterizes the evidence in his case as uncorroborated and inadmissible hearsay. As noted, his argument on review is meritless as we rely on clearly admissible evidence consisting of Schwarcz's plea agreement, the transcript in federal court related to his plea, and his testimony at the disciplinary trial.

Schwarcz also argues that his discipline should be based only on his conviction for conspiring to conduct an illegal money transmitting business. But we are obligated to consider, and we have, his entire course of conduct to determine moral turpitude in the facts and circumstances surrounding the conviction. (*In the Matter of Miller* (Review Dept. 2008) 5 Cal. State Bar Ct. Rptr. 110, 115 ["wide ambit of facts surrounding the commission of a crime is appropriate to consider in a conviction referral proceeding"].) It is the misconduct, not the conviction, that warrants discipline. (🚩*In re Gross, supra*, 33 Cal.3d at p. 566.)

Schwarcz contends that he has profoundly changed his life over the past several years and is mindful of the issues that led him to make poor choices. We must consider, however, that his criminal misconduct involved dishonesty and moral turpitude. In the practice of law, honesty is absolutely fundamental. Without it, "the profession is worse than valueless in the place it holds in the administration of justice." (*Tatlow v. State Bar* (1936) 5 Cal.2d 520, 524; see 🚩*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 292 ["It is critical to both the bench and the bar that we be able to rely on the honesty of counsel"].) Further, it is concerning that Schwarcz engaged in the present criminal misconduct while his first discipline case was pending. This reveals a brazen willingness to commit serious criminal acts at a time when he was under scrutiny by the State Bar for other alleged misconduct. Such behavior reinforces our view

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 169 of 227

Matter of Schwarcz, Not Reported in Cal.Rptr. (2020)

that Schwarcz may continue to commit misconduct in the future.

Disbarments have been the rule rather than the exception in disciplinary matters for serious crimes where the facts and circumstances involve moral turpitude. (*In re Crooks* (1990) 51 Cal.3d 1090, 1101.) Schwarcz's case is no exception. Here, disbarment is in line with the applicable discipline standard and comparable case law. A lesser discipline would not adequately protect the public and the courts, and surely would not uphold confidence in the legal profession.

(⚑ *In the Matter of Burns* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 406, 416 [discipline system is responsible for preserving integrity of legal profession as well as protection of public].)

## VI. RECOMMENDATION

For the foregoing reasons, we recommend that David Richard Schwarcz be disbarred from the practice of law and that his name be stricken from the roll of attorneys admitted to practice law in California.

We further recommend that he comply with rule 9.20 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of that rule, within 30 and 40 days, respectively, after the effective date of the Supreme Court order in this matter.

We further recommend that costs be awarded to the State Bar in accordance with section 6086.10, such costs being enforceable as provided in section 6140.7 and as a money judgment. Unless the time for payment of discipline costs is extended pursuant to subdivision (c) of section 6086.10, costs assessed against a member who is actually suspended or disbarred must be paid as a condition of reinstatement or return to active status.

## VII. MONETARY SANCTIONS

 **\*11**  The court does not recommend the imposition of monetary sanctions as all the misconduct in this matter occurred prior to April 1, 2020, the effective date of rule 5.137 of the Rules of Procedure of the State Bar, which implements Business and Professions Code section 6086.13. (See *In the Matter of Wu* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 263, 267 [rules of statutory construction apply when interpreting Rules Proc. of State Bar]; ⚑ *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208–1209 [absent express retroactivity provision in statute or clear extrinsic sources of intended retroactive application, statute should not be retroactively applied]; ⚑ *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841 [where retroactive application of statute is ambiguous, statute should be construed to apply prospectively]; ⚑ *Fox v. Alexis* (1985) 38 Cal.3d 621, 630–631 [date of offense controls issue of retroactivity].)

## VIII. ORDER

The order that David Richard Schwarcz be involuntarily enrolled as an inactive attorney of the State Bar pursuant to section 6007, subdivision (c) (4), effective December 5, 2019, will remain in effect pending consideration and decision of the Supreme Court on this recommendation.

WE CONCUR:

McGILL, J.

HONN, J.

**All Citations**

Not Reported in Cal.Rptr., 2020 WL 6892001

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 18

Case 2:24-bk-12079-VZ   Doc 298-3   Filed 11/19/24   Entered 11/19/24 16:53:28   Desc
Declaration of Gerrick Warrington   Page 171 of 227
Case 2:21-ad-00461-PSG   Document 2   Filed 02/22/22   Page 1 of 2   Page ID #:3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

In the Disciplinary Matter of

David R Schwarcz

California State Bar #  152896

CASE NO:  2:21−ad−00461−PSG

ORDER OF DISBARMENT

On December 10, 2021, the Court issued an Order to Show Cause why the attorney named above should not be disbarred from the Bar of this Court, pursuant to Local Rule 83−3.2, as a result of his or her disbarment by the Supreme Court of California, resignation from the State Bar with charges pending, or enrollment as an involuntary inactive member of the State Bar with cases pending in this Court. A written response to the Order to Show Cause was due thirty days from the date the Order was issued. The Court has received no response that contests the imposition of discipline.

IT IS THEREFORE ORDERED that the attorney named above is hereby disbarred from the practice of law in this Court pursuant to Local Rule 83−3.2.1.

As provided by Local Rule 83−3.2.4, the attorney disbarred by this Order will be reinstated to the Bar of this Court upon proof of his or her reinstatement as an

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 172 of 227
Case 2:21-ad-00461-PSG    Document 2    Filed 02/22/22    Page 2 of 2    Page ID #:4

1  active member in good standing with the State Bar.

2       An attorney registered to use the Court's Electronic Case Filing System

3  (ECF) who is disbarred by this Court will not have access to file documents

4  electronically until the attorney is reinstated to the Bar of this Court.

5

6

7

Date: February 22, 2022

8                 PHILIP S. GUTIERREZ

9           CHIEF UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GW-172

# EXHIBIT 19

2007 WL 7540970

2007 WL 7540970
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States Bankruptcy Appellate Panel
of the Ninth Circuit.

In re David SCHWARCZ and
Caroline Schwarcz, Debtors.
Official Committee of Creditors
Holding Unsecured Claims, Appellant,
v.
Helene Lederman, Appellee.

Nos. CC–06–1386–PaMaB, LA 06–11930–AA.
|
Argued and Submitted on July 27, 2007.
|
Filed Aug. 29, 2007.

Appeal from the United States Bankruptcy Court for the Central District of California, Honorable Alan Ahart, Bankruptcy Judge, Presiding.

Before: PAPPAS, MARLAR[2] and BRANDT, Bankruptcy Judges.

[2]   Hon. James M. Marlar, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

**MEMORANDUM**[1]

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (*see* Fed. R.App. P. 32.1), it has not precedential value. *See* 9th Cir. BAP Rule 8013–1BAP Rule 8013–1.

 *1  This is an appeal of a supplemental order granting relief from stay entered in Debtors' chapter 11[3] case to allow entry and enforcement of a state court judgment. We AFFIRM.

[3]   Unless otherwise indicated, all chapter, section and rule references are to

the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**FACTS**

David and Caroline Schwarcz (together, "Debtors" and individually "David" and "Caroline") filed a chapter 11 petition on May 10, 2006. Pursuant to § 1102(a)(1), the U.S. Trustee appointed a committee of unsecured creditors ("the Committee") on July 3, 2006. Debtors' schedules list two residential properties: the "Hillcrest Property," valued at $3,700,000, and the "Beverly Hills Condo," valued at $830,000.

Appellee Helene Lederman ("Lederman") had acquired the Hillcrest Property by quitclaim deed in 1991 from her ex-husband as part of a divorce settlement. Lederman alleges that her husband accumulated a number of debts both before and after their divorce that resulted in judgment liens against the Hillcrest Property, but that she was unaware of these liens until 1999.

Lederman alleges that she was contacted by Caroline in 1999 through a mutual acquaintance. At a meeting with Debtors, they told Lederman that they were acquainted with liens on the Hillcrest Property because David, a lawyer, was representing one of the lienholders. They warned Lederman she was in imminent danger of losing the Hillcrest Property. In subsequent meetings and telephone conversations, David suggested that he could save Lederman's equity interest in the Hillcrest Property, but would only help if she transferred the property to the Debtors. David offered her $750,000 to transfer the Hillcrest Property immediately, but allegedly told Lederman that if she would wait and trust him, Debtors could eventually pay her $1.5 million or even more for her interest in the property. It was always Lederman's understanding, however, that she would be paid at least $125,000 by Debtors at the time of transfer of the property, with the balance (somewhere between $625,000 and $1 .375 million, or possibly more) paid in installments over time.

Lederman agreed to retain David as her attorney in March 1999. At a meeting between Lederman and David, they reviewed a retainer agreement which

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 7540970

included a provision that "In full consideration for [David's] services, including negotiating with third parties on client's behalf trial and appellate work, client has agreed to enter into the Purchase and Sale Agreement for the Hillcrest Property." Lederman believes she signed this agreement, but that David did not give her a copy.

On March 28, 1999, David sent Lederman a "Written Informed Consent to Transact Business with Client Concerning the Purchase of [Hillcrest Property]." According to Lederman, the consent letter described a complex arrangement whereby Debtors would purchase the Hillcrest Property, and that Lederman expected to receive at least $750,000 for her interest in the property. If she did not, the consent letter purportedly provided that Lederman "had the right to accept a lesser amount or instruct the Law Offices of David R. Schwarcz to proceed with appropriate legal action in an effort to negotiate a satisfaction of the relevant liens [of creditors on the property]."

*2  On or about April 21, 1999, Lederman agreed to meet Debtors to execute the various documents relating to the transfer of the Hillcrest Property. When Lederman arrived at the meeting, she learned for the first time that she would be transferring the Hillcrest Property to a "dummy corporation" owned by Debtors called "FRNY." David directed her to sign a Side Agreement and Grant Deed [4] transferring the Hillcrest Property to FRNY, which she did. When Lederman asked David about the remaining documents concerning the transfer of the Hillcrest Property, including the purchase agreement and the promissory note and the $125,000 initial cash payment by which Debtors would purchase the Hillcrest Property, David informed her that he was pressed for time but would get the remaining documents and money to her later.

[4]    The executed grant deed was recorded in the official records of Los Angeles County on June 18, 1999, as instrument 991127646.

At some point shortly after Lederman signed the grant deed, David told Lederman that it would be foolish for Debtors to pay Lederman the minimum $125,000 initial payment on the property in cash because Lederman "should not have any assets in her own name." Instead, David advised Lederman that

Debtors should use this money as a down payment on another residence that Lederman would move into after vacating the Hillcrest Property. David indicated that Caroline should hold legal title to the new property because Caroline had a better credit rating and Lederman should not have any assets in her own name. David allegedly assured Lederman that Caroline would transfer title to Lederman after Lederman resolved her debt problems.

Lederman located and selected the Beverly Hills Condo as suitable for her purposes. As agreed, Debtors purchased the Beverly Hills Condo making a $125,000 down payment with legal title vested in Caroline. After the closing, David told Lederman that Lederman should sign a lease agreement with Caroline. Although the lease indicated that Lederman was only a tenant, David told Lederman that it was necessary for her protection. Lederman signed the lease.

Over the next two years, Lederman acknowledges that David provided legal services to her in an effort to negotiate a reduction of the liens against the Hillcrest Property. She repeatedly pressed him to deliver the promissory note securing Debtors' obligation for payment on the Hillcrest Property. On or about October 3, 2000, David made a payment to Lederman of $60,000, but he refused to give her the promissory note because Lederman should not have assets in her name and that the promissory note would be an asset vulnerable to creditors. For that reason, the $60,000 was made payable to Providential, another corporation David controlled, with Lederman having drawing rights on an account at Providential.

Debtors allegedly told Lederman they needed to refinance the Hillcrest Property before they could pay Lederman the sums they owed her, and Lederman states that Debtors repeatedly informed her that they were unable to refinance. In fact, Lederman would discover later that Debtors had secured a loan on the Hillcrest Property for $312,000 on May 23, 2000, and another on January 9, 2003, for $1,140,000.

*3  The record does not detail the events that led Lederman to file suit against Debtors in Los Angeles Superior Court, [5] *Lederman v. Schwarcz,* Case no. BC 307709. In that action, on October 13, 2005, Lederman filed a Verified Sixth Amended

In re Schwarcz, Not Reported in B.R. (2007)
2007 WL 7540970

Complaint including eleven counts against Debtors for, among other things, breach of contract for failure to pay a minimum of $750,000 for the Hillcrest Property and for failure to transfer the Beverly Hills Condo to her; breach of fiduciary duty against David under the purchase agreement and under the attorney-client relationship; negligent and intentional misrepresentation; fraud; rescission of contract; unjust enrichment; and conversion. Lederman also sought equitable relief for quiet title of the Hillcrest Property and Beverly Hills Condo in her name.

5   There is an unexplained entry in Debtors' Schedule B, listing a judgment against Lederman in the amount of $69,720.00. We are unable to determine from the record any details on this debt. However, there appears to have been an argument made in the state court action by Debtors for an offset of some unidentified debt owed by Lederman to Debtors against Lederman's award, which was rejected by the state court.

The state action culminated in a jury trial. On March 29, 2006, the jury rendered its verdict in favor of Lederman for breach of contract, breach of fiduciary duty, concealment, and conversion, awarding her $2,718,936 in economic damages and $2,000,000 in damages for emotional distress. On March 30, 2006, the jury returned a second verdict in favor of Lederman for $500 in punitive damages. Then, on April 13, 2006, after a hearing, the state court ruled on Lederman's claims for equitable relief. The state court voided the conveyances pursuant to which Debtors obtained title to the Hillcrest Property and Beverly Hills Condo and quieted titled to them in Lederman's name. The trial judge court was particularly scathing in comments made to Debtors' attorney concerning Debtors' actions:

> Don't you understand what your client has done is very, very wrong? It's fraudulent.... Your client has committed fraud. He's taken advantage of this lady and taken all of her property from her, all of [her] worldly possessions except [what] she was able to move.... So this

lady has suffered for six years, six years from the time she entered into this transaction; six years.... I'm telling you what I have seen in this case. In the 30 years I've been on this bench I've never seen such outrageous and e[g]regious conduct by an attorney. It is the wors[t] case I've ever seen. I don't think there's a reported case in the books that would show what this, your client has done in this case in all the books. What your client has done.

Tr. Hr'g 12:24—13:25 (April 13, 2006). The judge directed Lederman to prepare a proposed judgment, which was lodged on April 24, 2006. Debtors filed an objection to the form of the judgment on May 4, 2006. Then, as noted above, on May 10, 2006, Debtors filed their chapter 11 petition. On May 12, 2006, Debtors filed a notice in state court concerning the filing of the chapter 11 petition and the automatic stay.

On May 30, 2006, the state court conducted a hearing regarding Debtors' objection to the proposed judgment. After reviewing the notice of bankruptcy filing by Debtors, the state court issued an Order to Show Cause why the judgment should not be entered, with a hearing on the OSC set for July 28, 2006. [6]

6   It is not clear why the state court, having acknowledged receipt of the notice of the bankruptcy filing, decided it was appropriate to issue the show cause order and schedule a hearing in what was apparently a clear violation of the automatic stay. *In re Pettit,* 217 F.3d 1072, 1080 (9th Cir.2000) (signing or entry of orders by a judge does not fall within the "ministerial act" exception to the automatic stay). However, as discussed below, the state court did not enter the judgment until after the stay had been modified by the bankruptcy court, likely rendering the state court's earlier stay violations harmless.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 7540970

**\*4** On July 14, 2006, Lederman filed a Motion for Relief from Stay (the "Original Motion") in the bankruptcy court. Lederman's Original Motion sought relief from the stay so that the state court could enter the judgment. Debtors opposed stay relief. The Committee did not file an objection but one creditor who was a member of the committee, Gerry Burk, did. The bankruptcy court held a hearing on the Original Motion on August 9, 2006. Counsel for Lederman, Debtors and the Committee were present. None of the parties to this appeal provided the Panel with a transcript of this hearing, nor is that transcript in the docket of the bankruptcy case. However, all parties agree that the bankruptcy court granted the Original Motion. They disagree, however, as to the effect and extent of the court's rulings at the hearing. For example, Debtors suggest in their Objection to Lederman's Order that:

> At the hearing, the Court ruled that Lederman's Motion would be granted and that Lederman would be granted relief from the automatic stay for the limited purpose of proceeding to judgment in the State Action. No other relief was granted, and Mr. Kogan [attorney for the Committee] clarified on the record that relief was limited to only entry of judgment in the state action, but not enforcement or execution on any such judgment.

In the Declaration of David Weinstein, attached to Lederman's Reply to Debtors' Objection to Lederman Order, Lederman responds that:

> The court stated on the record that Mrs. Lederman's Stay Motion would be granted and the stay should be vacated. Upon question by Mr. Kogan as to the parameters of the relief

from stay, the Court repeated that the Stay Motion would be granted to the fullest extent of relief sought in it.

The proposed order submitted by Lederman to the bankruptcy court (the "Lederman Order") provided:

> Movant may proceed in the non-bankruptcy forum to final judgment (including any appeals) in accordance with applicable non-bankruptcy law. A judgment substantially in the form presented with the motion for Relief from Stay as it might be modified by the state court, may be signed, entered and put into effect, so long as no execution is made against property of the estate. Execution against insurance, such as malpractice insurance of the Debtor, to the extent it exists, may be pursued under applicable non-bankruptcy law and rules of practice. Eviction of the debtors, if authorized by the state court, is permitted.

The copy of this proposed order in the record bears a handwritten notation by the bankruptcy judge that "This order was not signed. AMA."

Debtors filed an objection to the Lederman Order arguing that it provided relief beyond what was requested in the Original Motion, and did not accord with the bankruptcy court's ruling at the hearing. Debtors provided an alternative order for the bankruptcy court's consideration.

On August 25, 2006, the bankruptcy court entered an abbreviated version of Debtors' proposed order:

 **\*5** Movant may proceed in
the non-bankruptcy forum to
final judgment (including any
appeals) in accordance with
applicable non-bankruptcy law.
A judgment substantially in the
form presented with the motion
for Relief from Stay as it might
be modified by the state court,
may be signed and entered.

The bankruptcy court apparently agreed with Debtors
that the provisions suggested by Lederman authorizing
execution against malpractice insurance and allowing
eviction of Debtors should be omitted. However, the
bankruptcy court in its own handwriting and initials
deleted the Debtors' proposed restriction that "so long
as no execution is made against property of the estate
and such judgment does not affect the property of the
estate."

Neither party appealed the August 25, 2006, order.
However, counsel for Lederman felt uncertain about
the scope of this order and filed a Supplemental Motion
for Relief from Stay. At the same time, Lederman filed
a Motion [for an order] Shortening Time for hearing
the Supplemental Motion, in which Lederman alleges
that three areas in the August 25, 2006, order should
be supplemented. In particular, Lederman sought a
clarification that she could:

(I) move the state court
to record whatever judgment
the state court enters; (ii)
enforce whatever judgment the
state court enters to effectuate
the obvious purpose of the
judgment to immediately return
title, ownership in all respects
and possession of the Properties
to Mrs. Lederman; and (iii)
cause the Debtors' eviction
from the Properties should
the state court award Mrs.
Lederman possession of the

Properties and the Debtors fail
to properly evacuate.

Lederman also requested permission to pursue a claim
against Debtors' malpractice insurance.

Both the Committee and the Debtors filed objections
to the Supplemental Motion. They argued that
the Supplemental Motion did not contain any
new factual information, did not contain any new
documents, and was merely a disguised motion for
reconsideration. The Committee and Debtors objected
to the Supplemental Motion because it sought the same
relief as the Original Motion.

On September 13, 2006, the state court signed and
entered Lederman's proposed judgment (hereafter
the "State Court Judgment") awarding Lederman
$4,718,936 in compensatory damages, $500 in
punitive damages, voiding *ab initio* the purported sale
of the Hillcrest Property by Lederman to Debtors,
quieting title in both the Hillcrest Property and Beverly
Hills Condo to Lederman in fee simple absolute, and
directing Debtors to vacate the properties.

The bankruptcy court heard arguments on the
Supplemental Motion on September 27, 2006. After
hearing arguments of all counsel, the court announced
its decision:

I'm going to rule at this point.
I am satisfied that the creditor
has made the appropriate
showing here. I'm going to
grant the motion as follows:
Number one, I will allow
them to pursue the applicable
insurance.... Secondly, I will
grant the moving party the
ability to enforce the judgment
that was entered only as
against the real property, to wit,
possession, whatever it takes,
only as against the real property,
cannot collect on any money
judgment, cannot obtain any

*In re Schwarcz,* Not Reported in B.R. (2007)
2007 WL 7540970

additional liens against other
assets, et cetera, et cetera.

*6 Tr. Hr'g 7:16—8:4 (September 27, 2006). A
Supplemental Order was entered by the court on
October 16, 2006, which recites:

> [Lederman] may proceed in
> the non-bankruptcy forum to
> final judgment (including any
> appeals) in accordance with
> applicable non-bankruptcy law.
> Furthermore, the judgment
> signed by the state court
> may be entered, recorded,
> executed upon and put into
> effect as to title, ownership,
> possession, and all other rights
> in, to and against the two
> parcels of property affected by
> that judgment [the Hillcrest
> Property and Beverly Hills
> Condo]. No execution may be
> made against property of the
> estate. However, [Lederman]
> may also proceed against
> insurance, such as malpractice
> insurance of the Debtor, to the
> extent it exists. Eviction of the
> Debtors, if authorized by the
> state court, is permitted.

The Committee filed a timely notice of appeal of the
Supplemental Order on October 25, 2006. [7]

[7]    Debtors appealed the State Court Judgment
to the California Court of Appeals. We are
unaware of whether there has been any
decision by the appellate court. Debtors
vacated and surrendered the keys to the
Hillcrest Property and the Beverly Hills
Condo to Lederman.

On April 18, 2007, the bankruptcy court granted the
motion of the U.S. Trustee to convert Debtors' case
to a case under chapter 7 based upon their failure to
timely file a proposed plan of reorganization. On April
26, 2007, John J. Menchaca was appointed to serve as
chapter 7 trustee in that case ("Trustee").

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to
28 U.S.C. §§ 1334 and 157(b)(2)(G). We have
jurisdiction pursuant to 28 U.S.C. § 158.

## ISSUE [8]

[8]    In its opening brief, the Committee also lists
as an issue on appeal whether the bankruptcy
court erred in allowing the state court to
evict the debtors. We do not address this
issue. First, no stay pending appeal was
entered, and this issue was likely mooted
before the Committee filed its opening
brief when Debtors vacated the Hillcrest
Property and surrendered the keys to both
the Hillcrest Property and the Beverly Hills
Condo. Second, neither the Committee in its
opening brief nor Trustee in the Reply Brief
argue this issue, nor was it discussed during
oral argument before the Panel.

Whether the bankruptcy court abused its discretion in
granting Lederman's Supplemental Motion for Relief
from Stay.

## STANDARD OF REVIEW

We review the bankruptcy court's decision granting a
motion for relief from stay for abuse of discretion. *In
re Umali,* 345 F.3d 818, 822 (9th Cir.2003); *Duvar
Apt. v. FDIC (In re DuVar Apt.),* 205 B.R. 196 (9th
Cir.BAP1996).

## DISCUSSION

### A.

In re Schwarcz, Not Reported in B.R. (2007)

2007 WL 7540970

*Trustee and the Committee*

First, we note a novel procedural concern about the parties to this appeal.

After the Committee filed its notice of appeal and opening brief, the bankruptcy court converted Debtors' case from chapter 11 to chapter 7. As discussed below, most case law holds that a chapter 11 creditors' committee is effectively dissolved upon conversion. But in this instance, while the Committee initially prosecuted the appeal, the trustee appointed in Debtors' converted chapter 7 case filed the reply brief. In that brief, Trustee claims he is empowered to pursue the appeal as the "assignee" of the rights of the Committee, as well as in his status as the successor to Debtors, who he argues were also "parties" to the appeal. In particular, Trustee argues that the Committee has agreed to execute an assignment of its interests in the appeal to Trustee, although no such assignment by the Committee has apparently been executed nor included in the record. Trustee also asserts that the former debtors-in-possession joined in the appeal. There is also nothing in the record to evidence any such joinder. [9]

[9]    The notice of appeal filed by the Committee listed the Committee as the sole appellant, Lederman as the sole appellee, and Debtors as a "party in interest." Debtors' attorney did not sign the notice of appeal. Debtors did join in a motion filed in the bankruptcy court for stay pending appeal. However, their pleading joining in that motion argues that the bankruptcy court should stay the Supplemental Order pending outcome of a dischargability proceeding pending in the bankruptcy court, not this appeal.

Although chapter 11 expressly provides for the creation of an unsecured creditors' committee, § 1102(a), and bestows "party in interest" standing on that committee, § 1109(b), the Bankruptcy Code is silent concerning the status of the committee upon conversion of the bankruptcy case to another chapter. Nevertheless, a significant number of courts agree with Lederman's contention that a creditors' committee loses its powers upon conversion. *See, e.g .,*

*Official Comm. Of Unsecured Creditors v. Belgravia Paper Co. (In re Great Northern Paper Co.),* 299 B.R. 1, 5 (D.Me.2003) ("Once the Chapter 11 case was converted to a Chapter 7 case, the Committee ceased to exist; the Committee's attorney therefore had no authority to make an assignment, nor did the Committee have any rights to assign."); *In re World Health Alternatives, Inc.,* 344 B.R. 265, 268 (M.D.Fla.2006) (citing *Great Northern Paper* ); *In re Parks Jaggers Aerospace Co.,* 129 B.R. 265, 268 (M.D.Fla.1991); *Unsecured Creditors Comm. Of Butler Group, Inc. V. Butler (In re Butler),* 94 B.R. 291, 295 (Bankr.N.D.Tex.1989); *In re Kel–Wood Timber Products Co.,* 88 B.R. 91, 94 (Bankr.E.D.Va.1988); *see also,* 4 NORTON BANKR.L & PRAC.2D § 78:10.5 Since the bankruptcy court entered its order converting Debtors' case to chapter 7 on April 18, 2007, as of that date, according to this line of cases, the Committee was effectively dissolved.

**\*7** However, based upon our research, no federal appellate court has ruled conclusively regarding the status and rights of a chapter 11 creditors' committee following conversion of the case to chapter 7. Trustee does not contest Lederman's argument that, upon conversion, the Committee was dissolved and could not continue with this appeal, [10] and so we need not review that question. And since there is nothing in the record to support Trustee's argument that the (by-then) dissolved Committee "assigned" its right to pursue this appeal to him, we also need not address the efficacy of such a transaction in this context. [11]

[10]    In Lederman's brief, she argues that, because of the conversion, the Committee was dissolved and therefore may not pursue this appeal. However, since Trustee did not appear in this appeal until he filed the reply brief, Lederman had no opportunity to brief the issue of Trustee's status.

[11]    We note that one circuit has ruled that a chapter 7 trustee succeeds *only* to the rights of the debtor-in-possession. *Hill v. Akamai Technologies, Inc. (In re MS55, Inc.),* 477 F.3d 1131, 1138 (10th Cir.2007). In other words, the only rights of the creditors'

In re Schwarcz, Not Reported in B.R. (2007)

2007 WL 7540970

committee that a trustee may assert are those derived from either the debtor or the bankruptcy estate. *Id.*

> The Committee may not act on behalf of, or with rights derivative of, the debtor-in-possession or estate without permission of the bankruptcy court. *Liberty Mut. Ins. Co. v. Official Creditors' Comm. Of Spaulding Composites, Inc.,* 207 B.R. 899, 904 (9th Cir.BAP1997). In this case, it is undisputed that the bankruptcy court never authorized the Committee to act on behalf of Debtors or the bankruptcy estate.

Finally, we are not persuaded by Trustee's argument that he succeeded to the debtors-in-possession's status as an appellant in this appeal. As a general rule, we do not question the authority of a chapter 7 trustee to succeed to the rights of the debtor-in-possession in a converted chapter 11 case. Upon conversion, the chapter 7 trustee becomes the sole representative of the estate. § 323(a). The trustee succeeds to the rights, responsibilities and liabilities of the estate and debtor-in-possession. *Dobin v. Presidential Fin. Corp. (In re Cybridge Corp.),* 312 B.R. 262 (D.N.J.2004). But here, in spite of Trustee's claims that Debtors "joined" in the appeal, and therefore that Trustee may substitute for Debtors as an appellant, the record contains nothing to establish that this joinder occurred. [12] Absent such, we cannot say that Trustee stands as a matter of right in the shoes of the former debtor-in-possession in this appeal, whatever those rights may have been.

[12]    We note that, had Trustee moved to substitute himself for the Committee pursuant to Fed. R.App. P. 43(b), there is some authority that would allow us to grant the substitution. *Malick v. Int'l Bhd. Of Elec. Workers,* 814 F.2d 674, 679 (D.C.Cir.1987)(appellate court may substitute for a deceased party under Appellate Rule 43(b) a party that could have joined in the appeal). However, Trustee has not moved for substitution under Fed. R.App. P. 43(b), and we are unsure of our authority to act sua sponte on this question. *Alabama Power Co. v. ICC,*

852 F.2d 1361, 1366 (D.C.Cir.1988) (motion for substitution required when substitution is contested).

> We also note that Rule 6009 would likely not allow a trustee to appear in an appeal in place of creditors on his own initiative and without court or panel approval. While Rule 6009 allows a trustee to appear in the place of a debtor, it does not allow a trustee to step into a creditor's shoes when, as here, the creditor is acting only in the interests of some but not all creditors. *Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1348–49 (7th Cir.1987).

In short, we are skeptical regarding Trustee's status in this appeal. However, because we affirm the decision of the bankruptcy court on the merits, we do not consider it necessary to examine whether Trustee is a proper appellant here.

B.

*The bankruptcy court did not
abuse its discretion in granting the
Supplemental Motion for Relief from Stay.*

Neither the Committee nor Trustee have argued that the bankruptcy court abused its discretion by concluding that sufficient cause existed to grant Lederman's Original Motion and relief from the automatic stay.

Moreover, neither the Committee nor Trustee have questioned the propriety of the provisions of the bankruptcy court's order granting the Original Motion entered on August 25, 2006. In part, that order clearly provided that "A judgment substantially in the form presented with the motion for Relief from Stay as it might be modified by the state court, may be signed and entered." The form of judgment that had been proposed by Lederman to the state court, which the bankruptcy court had before it at the time it entered the order granting the Original Motion, included a provision quieting title in Lederman to both properties. In other words, neither the Committee nor Trustee challenge the bankruptcy court's exercise of discretion to allow the state court to enter a judgment

In re Schwarcz, Not Reported in B.R. (2007)
2007 WL 7540970

providing that Lederman held fee simple title to the two properties and quieting ownership to them in her.

**\*8** Instead, the Committee and Trustee target the bankruptcy court's Supplemental Order. In particular, Trustee argues that the bankruptcy court abused its discretion in granting the Supplemental Motion in three ways: (1) an adversary proceeding in the bankruptcy court was required to determine ownership of the Hillcrest Property and Beverly Hills Condo; (2) the Supplemental Motion was merely a disguised motion for reconsideration and did not fulfill the requirements for such motions; and (3) the granting of the Supplemental Motion violated the local bankruptcy rules of the Central District of California. It is not obvious that, had the motion been styled as one for clarification rather than supplemental, any of these issues would have arisen.

In its Opening Brief at p. 20, the Committee cites numerous cases, including our own, for the proposition that:

> The Bankruptcy Court has jurisdiction over all "core" proceedings, which include, but are not limited to, matters concerning the administration of the Debtors' estate and other proceedings affecting the liquidation of assets of the estate. 28 U .S.C. § 157(b)(2)(A) & (O). Accordingly, the State Court does not have authority to determine what constitutes property of the estate and dispose of the Debtors' properties.

But the Ninth Circuit has cautioned against the precise argument made here by the Committee and Trustee. The property dispute in this appeal was fully tried and adjudicated in a state court and dealt principally with state law causes of action, *i.e.,* breach of contract and breach of fiduciary duty. The claims raised by Lederman in the state action are founded upon state law

and could "not have been commenced in a court of the United States absent jurisdiction under [the bankruptcy provisions]." 28 U.S.C. § 1334(c)(2). As the court of appeals ruled, to characterize such litigation as a core proceeding within the exclusive jurisdiction of the bankruptcy court would raise constitutional problems under *Marathon,* given the state litigation's common law nature. "We have held that a court should avoid characterizing a proceeding as core if to do so would raise constitutional problems. The apparent broad reading that can be given to § 157(b)(2) should be tempered by the *Marathon* decision." *Christensen v. Ward (In re Tucson Estates, Inc.),* 917 F.2d 1162, 1166 (9th Cir.1990).

Although not specifically cited, the Committee and Trustee appear to rely on 28 U.S.C. § 1334(d): "The district court in which a case under chapter 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." In *Tucson Estates,* again, the court of appeals cautioned against giving this provision too broad a scope.

> Congress did not intend this provision to reach ... broadly.... The provision's purpose was to eliminate the jurisdictional distinctions between property in the possession and property not in the possession of the bankruptcy court. See 124 CONG. REC. 11, 108, 17, 408, 17, 425 (1978); 1 COLLIER BANKRUPTCY MANUAL § 23.00 (1978). Courts in applying the provision defer to state courts in many cases that concern estate property.

**\*9** *Tucson Estates,* 917 F.2d at 1166.

A bankruptcy court "shall" grant relief from the automatic stay "for cause." § 362(d)(1). Where

In re Schwarz, Not Reported in B.R. (2007)
2007 WL 7540970

a bankruptcy court may exercise discretionary abstention in deciding issues in favor of an imminent state court action involving the same issues, cause may exist for lifting the stay as to the state court action." 🚩 *In re Castlerock Properties,* 781 F.2d 159, 163 (9th Cir.1986). The *Tucson Estates* court listed the criteria that bankruptcy courts should apply in discretionary abstention:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 🚩 § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted core proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

912 F.2d at 1167. Because the Committee and Trustee have not provided us with a transcript of the hearing at which the bankruptcy court explained its reasons for granting the Original Motion, we cannot precisely determine if the bankruptcy court actually applied any of these twelve criteria in its analysis. We have previously warned litigants that "failure to provide an adequate record may be grounds for affirmance." *In re Burkhart,* 84 B.R. 658 (9th Cir.BAP1988). However, on this record, it would appear that factors 1, 2, 4, 5, 7, 9 and 11 favor stay relief and none strongly support the contrary. We conclude, therefore, that the bankruptcy court had sufficient support in the record to grant the Supplemental Motion and to allow the state court to enter and enforce its judgment.

The Committee also cites Rule 7001(2) for the proposition that "a proceeding to determine the validity, priority, or other interest in property" is an adversary proceeding. We have no quarrel with this notion that, if the bankruptcy court were to decide the contest over who owned these properties, an adversary proceeding would be the required procedure. However, the Committee insists that "the effect of the Bankruptcy Court's ruling and the Supplemental Order was to make a determination of an interest in the properties, which is only appropriately made in an adversary proceeding." Committee's Opening Br. at 19. We disagree with this suggestion because it fails to recognize that the motions before the bankruptcy court were not to "make a determination of an interest in properties," but only to obtain a ruling as to *where* that determination would be made.

**\*10** The Committee and Trustee refer to a several cases in arguing that the bankruptcy court should not grant stay relief when that action would also determine the merits of claims affecting property of the estate. For example, in 🚩 *In re Colrud,* 45 B.R. 169 (Bankr.D.Ak.1984), a creditor sought to lift the stay to allow a judicial foreclosure sale. The *Colrud* court modified the automatic stay to provide adequate protection for the creditor by increasing the interest rate payable on a note. In a footnote in its decision, on which Trustee relies, the bankruptcy court opined that the question of whether debtors owned a particular property and whether the creditor was in fact a creditor

In re Schwarz, Not Reported in B.R. (2007)
2007 WL 7540970

of the estate could not be litigated in a context of a motion to lift stay.

Trustee also cites two of our opinions to support his position. In ⚑*In re Lutz,* 219 B.R. 837, 841 (9th Cir.BAP1998), we determined that it was improper for a bankruptcy court to make a determination of a setoff claim pursuant to § 362(a)(7) in the context of a motion for relief from stay. And in ⚑*In re Boni,* 240 B.R. 381 (9th Cir.BAP1999), the Panel reversed a bankruptcy court's grant of a motion to annul the stay to allow entry of a state court action against the debtor, where the court also ruled that the judgment in the state court was nondischargeable.

As can be seen, all three cases cited by Trustee for the proposition that the bankruptcy court should not modify the stay where to do so would allow another court to determine claims affecting the property of the estate deal with decisions that implicated substantive rights under title 11. In the two cases decided by the Panel, we reversed bankruptcy courts that, in orders modifying the automatic stay, also ruled on the merits of underlying claims where such rulings should have been determined in the bankruptcy court in the context of an adversary proceeding. Thus, they do not support Trustee's general argument that the court should not lift the stay when that action might also affect the merits of claims affecting property of the estate. They only stand for the proposition that the court should not modify the stay where the effect of the court's order also determines other substantive rights under title 11 that are within the exclusive jurisdiction of the bankruptcy court. As discussed above, the determination of property rights under the facts of this case is not within the exclusive jurisdiction of the bankruptcy court.

In short, Trustee's fundamental premise that the bankruptcy court has "exclusive" jurisdiction, or even some nebulous form of preferred jurisdiction, over the property involved in the state court action, is flawed. In this context, an adversary proceeding in the bankruptcy court was not the only fashion in which issues involving ownership of these properties could be determined. [13]

[13] At oral argument, both Trustee and Lederman seemed concerned that the bankruptcy court's decision may be interpreted as determining the parties' substantive rights in the Hillcrest and Beverly Hills properties. However, we conclude that, in its orders, the bankruptcy court made no such determination. The court merely modified the automatic stay to allow the parties to exercise whatever rights they may have under otherwise applicable law.

The other two arguments advanced by the Committee and Trustee, that the Supplemental Motion was merely a disguised motion for reconsideration and that the bankruptcy court's order approving the Supplemental Motion violated the local bankruptcy rules, also lack merit.

**\*11** Lederman never asked the bankruptcy court to "reconsider" nor sought to overturn the order granting the Original Motion. Every reference in Lederman's pleadings and in counsel's comments at the hearings emphasized that the Supplemental Motion was designed to obtain a clarification of the authority of the state court to enter and enforce its judgment. The Supplemental Motion did not seek "a substantive change of mind by the court," a requirement in our circuit to construe a motion as one for reconsideration under Fed.R.Civ.P. 59(e). [14] ⚑*Miller v. Transamerican Press, Inc.,* 709 F.2d 524, 526 (9th Cir.1983). Since the Supplemental Motion never attempted to undo, overturn or "substantive[ly] change" the original order, it is not a disguised motion for reconsideration and there is no need to apply the requirements of case law interpreting Fed.R.Civ.P. 59 to the Supplemental Motion. [15] In our view, the Supplemental Motion merely sought a more detailed statement of the relief the bankruptcy court intended to grant in the order disposing of the Original Motion.

[14] This rule is made applicable in bankruptcy cases by Rule 9023.

[15] When applicable, to obtain relief under Rule 59, the movant must show 1) the motion is necessary to correct manifest errors of law or fact upon which a judgment is based; 2) the moving party presents newly discovered

In re Schwarcz, Not Reported in B.R. (2007)
2007 WL 7540970

evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law. 🚩 *Turner v. Burlington N. Santa Fe R. Co.,* 338 F.3d 1058, 1063 (9th Cir.2003).

Finally, the bankruptcy court's order approving the Supplemental Motion also did not violate the local bankruptcy rules of the Central District of California. Local Bankruptcy Rule 1001–1(b)Central District of California. Local Bankruptcy Rule 1001–1(b) provides that: "The Local Bankruptcy Rules ... shall be applied uniformly throughout this District *unless otherwise ordered by the Court in a particular matter.*" (Emphasis added.). Since the local rules allow an individual bankruptcy judge to opt out of the rules in a particular matter, it cannot be an abuse of discretion for the court to fail to enforce its own discretionary rules. *Price v. Lehtinen (In re Lehtinen),* 332 B.R. 404, 411 (9th Cir.BAP2005).

The procedural arguments raised by the Committee and Trustee do not convince us that the bankruptcy court abused its discretion. To the contrary, what the bankruptcy court faced was the simple question whether the automatic stay should be modified to allow a state court to enter and enforce a judgment resolving issues fully adjudicated prior to the bankruptcy filing. It granted the Original Motion and entered an order allowing the entry of judgment. However, when Lederman persuaded the bankruptcy court that its order required clarification, it granted the Supplemental Motion providing that the state court could not only enter a judgment, but that the judgment could be enforced as to the properties as well.

### CONCLUSION

We AFFIRM the supplemental order of bankruptcy court.

**All Citations**

Not Reported in B.R., 2007 WL 7540970

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

GW-185

# EXHIBIT 20



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

For Office Use Only

**-FILED-**

File No.: BA20241117044

Date Filed: 6/11/2024

| Entity Details | |
|---|---|
| Limited Liability Company Name | LEVAV GROUP, LLC |
| Entity No. | 202003110378 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of LLC | |
|---|---|
| Principal Address | 1702 S. ROBERTSON BLVD 261 LOS ANGELES, CA 90035 |

| Mailing Address of LLC | |
|---|---|
| Mailing Address | 1702 S. ROBERTSON BLVD 261 LOS ANGELES, CA 90035 |
| Attention | |

| Street Address of California Office of LLC | |
|---|---|
| Street Address of California Office | 1702 S. ROBERTSON BLVD 261 LOS ANGELES, CA 90035 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
|---|---|
| ◼ Ahron Stock | 1702 S. ROBERTSON BLVD 261 LOS ANGELES, CA 90035 |

| Agent for Service of Process | |
|---|---|
| Agent Name | Ahron Stock |
| Agent Address | 1702 S. ROBERTSON BLVD 261 LOS ANGELES, CA 90035 |

| Type of Business | |
|---|---|
| Type of Business | CONSULTING |

| Email Notifications | |
|---|---|
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
|---|---|
| ◼ ahron stock | 1702 S. ROBERTSON BLVD 261 LOS ANGELES, CA 90035 |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

B2808-1896 06/11/2024 12:33 PM Received by California Secretary of State

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Ahron Stock*
————————————————————
Signature

*06/11/2024*
————————————————————
Date

B2808-1897 06/11/2024 12:33 PM Received by California Secretary of State

# EXHIBIT 21


# The State Bar *of California*

**George Aaron Shohet #112697**
License Status: Active

Address: George A Shohet A Professional Corporati, 269 S. Beverly Dr., Ste 1800, Beverly Hills, CA 90212
Phone: 310-452-3176 | Fax: 310-452-2270
Email: georgeshohet@gmail.com | Website: Not Available

## More about This Attorney ▲

**CLA Sections:**                       None

The California Lawyers Association (CLA) is an independent organization and is not part of the State Bar of California.

**Self-Reported Practice Areas:**

Note: The State Bar does not verify the accuracy of this content and makes no warranties regarding experience or competence in practice areas. The State Bar encourages those seeking legal help to search Certified Specialists, use Certified Lawyer Referral Services, search through LawHelpCA.org, and use the State Bar's online public information to complement this information.

- Administrative Law
- Alternative Dispute Resolution
- Antitrust & Trade Regulation
- Appellate Practice
- Banking Law
- Bankruptcy
- Business Law
- Class Actions
- Commercial Law
- Constitutional Law
- Contracts
- Corporate Law
- Criminal Law
- Debtor & Creditor
- Education Law
- Elder Law
- Government
- Insurance
- Intellectual Property
- Labor & Employment
- Legal Malpractice

- Litigation
- Mergers & Acquisitions
- Personal Injury
- Professional Liability
- Real Estate
- Securities
- Trusts & Estates
- White Collar Crime
- Workers Compensation

**Additional Languages Spoken:**

- By the attorney: Spanish
- By staff: Spanish

**Law School:** Loyola Law School; Los Angeles CA

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|------|------------------|--------------|-------------------------|
| Present | Active | | |
| 7/16/2021 | Active | | |
| 7/7/2021 | Not eligible to practice law in CA | Discipline w/actual suspension 18-C-13540 ⓘ | |
| 2/12/2020 | | Disciplinary charges filed in State Bar Court 20-O-30009 ⓘ | |
| 2/20/2019 | Active | | |
| 9/24/2018 | Not eligible to practice law in CA | Interim suspension after conviction 18-C-13540 ⓘ | |
| 8/7/2018 | | Conviction record transmitted to State Bar Court 18-C-13540 ⓘ | |
| 12/19/1983 | Admitted to the State Bar of California | | |

**State Bar Court Cases**
**The listing below is partial, as the State Bar Court is transitioning to online dockets. Please refer to the License Status, Disciplinary and Administrative History section above for a record of discipline cases. Case dockets and documents may be available using the State Bar Court Search for a Case feature; see instructions below.**

| Effective Date ⓘ | Case Number | Description ⓘ |
|------------------|-------------|---------------|
| 2/20/2019 | 18-C-13540 | Order Terminating Suspension [PDF] |
| 9/24/2018 | 18-C-13540 | Interim Suspension Order [PDF] |

Here is what you need to know to access discipline documents in public cases:

Documents are added to the State Bar Court's online docket as events occur.

**Search for a Case**

To search for a case, please copy the case number displayed above and click Search for a Case. In the search box, paste the complete case number. If the case number begins with "19" or higher, you must add the prefix SBC to the case number, e.g., SBC [CASE NUMBER]. If a case number begins with 18 or lower, there's no need to add SBC.

Most public case records since 2000 are available through search. Older case records are available on request. The State Bar Court began posting public discipline documents online in 2005.

NOTE: Only Published Opinions may be cited or relied on as precedent in State Bar Court proceedings.

DISCLAIMER: Any posted Notice of Disciplinary Charges, Conviction Transmittal or other initiating document, contains only allegations of professional misconduct. The licensee is presumed to be innocent of any misconduct warranting discipline until the charges have been proven.

**Additional Information:**
- About the disciplinary system

Copyright © 2024 The State Bar of California

  

# EXHIBIT 22

Electronically FILED by Superior Court of California, County of Los Angeles on 11/29/2021 04:03 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Choi, Deputy Clerk

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 194 of 227

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| Erin E. Patterson, SBN 262285     Thomas J. Sebourn, SBN 279272<br>Jason W. Tang, SBN 314337     Nicholas J. Babilis, SBN 291676<br>Patrick J. Layman, SBN 59643     Carina M. Jordan, SBN 302099<br>Shane T. Wate, SBN 302738<br>Suttell & Hammer, APC<br>P.O. Box C-90006<br>Bellevue, WA 98009<br>TELEPHONE NO. (888) 788-8355       FAX NO. (425) 453-3239<br>ATTORNEY FOR: JPMorgan Chase Bank, N.A. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 9425 Penfield Avenue, Room 1200<br>CITY AND ZIP CODE: Chatsworth CA 91311<br>BRANCH NAME: NORTH VALLEY DIST, CHATSWORTH COURTHOUSE | |
| PLAINTIFF: JPMorgan Chase Bank, N.A.<br>DEFENDANT: AHRON STOCK | |

| JUDGMENT<br>**[X] By Clerk  [X] By Default**  [ ] After Trial<br>**[ ] By Court**  [ ] On Stipulation  [ ] Defendant did not Appear at Trial | **CASE NUMBER:**<br>21CHLC34951 |
|---|---|

## JUDGMENT

### 1. [X] BY DEFAULT

    a. Defendant was properly served with a copy of the summons and complaint.

    b. Defendant failed to answer the complaint or appear and defend the action within the time allowed.

    c. Defendant's default was entered by the clerk upon plaintiff's application.

    d. **[X] Clerk's Judgment** (Code Civ. Proc., §585 (a)).  Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.

    e. **[ ] Court's Judgment** (Code Civ. Proc., §585 (b)). This court considered

        (1) [ ] Plaintiff's testimony and other evidence

        (2) [ ] Plaintiff's written declaration (Code Civ. Proc., §585 (d)).

### 2. [ ] ON STIPULATION

    a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case.  The court approved the stipulated judgment and

    b. [ ] the signed written stipulation was filed in the case.

    c. [ ] the stipulation was stated in open court [     ] the stipulation was stated on the record

### 3. [ ] AFTER COURT TRIAL

    a. The case was tried on (*date and time*):

    before (*name of Judicial Officer*):

    b. Appearances by:

    [ ] Plaintiff (*each name*):        [ ] Plaintiff's attorney (*each name*):

        (1)                 (1)

        (2)                 (2)

    [ ] Continued on Attachment 3b

    [ ] Defendant (*each name*):       [ ] Defendant's attorney (*each name*):

        (1)                 (1)

        (2)                 (2)

    [ ] Continued on Attachment 3b

    c. [ ] Defendant did not appear in trial.  Defendant was properly served with notice of trial.

    d. [ ] A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was requested.

| Form Adopted for Optional Use<br>Judicial Council of California<br>JUD-100 [Rev. January 1, 2002] | **JUDGMENT** | Code of Civil Procedure §§ 585, 664.6<br><br>GW-194 |
|---|---|---|

| | |
|---|---|
| PLAINTIFF: JPMorgan Chase Bank, N.A.<br>DEFENDANT: AHRON STOCK | CASE NUMBER: 21CHLC34951 |

## JUDGMENT IS ENTERED AS FOLLOWS BY: [  ] THE COURT    [X] THE CLERK

4. [  ] Stipulated Judgment.  Judgment is entered according to the stipulation of the parties.

5. **PARTIES.** Judgment is

a. [X] for Plaintiff (*each name*):
JPMorgan Chase Bank, N.A.
and against Defendant (*name*):
AHRON STOCK
b. [  ] for defendant (*each name*):

c. [  ] for cross-complainant (*each name*):

and against cross-defendant (*name each*):

d. [  ] for cross-defendant (*each name*):

6. **AMOUNT.**

a. [X] Defendant named in item 5a. above
must pay plaintiff on the complaint:

| | |
|---|---|
| (1) [X] Damages | $11447.03 |
| (2) [  ] Prejudgment<br>interest at the annual<br>rate of 0.00% | $0.00 |
| (3) [  ] Attorney's Fees | $0.00 |
| (4) [X] Costs | $0.00 |
| (5) [  ] Other (*specify*): | $0.00 |
| (3) TOTAL | $11447.03 |

c. [  ] Cross-complainant named in item 5c must pay
cross complainant on the cross-complaint

| | |
|---|---|
| (1) [  ] Damages | $ |
| (2) [  ] Prejudgment<br>interest at the<br>annual rate of<br>_____% | $ |
| (3) [  ] Attorney's Fees | $ |
| (4) [  ] Costs | $ |
| (5) [  ] Other (*specify*): | $ |
| (3) TOTAL | $ |

b. [  ] Plaintiff to receive nothing from
Defendant named in 5b
[  ] Defendant named in item 5b to
recover costs $
[  ] and attorney fees $

d. [  ] Cross-complainant to receive nothing
from cross-defendant named in item 5d
[  ] Cross recover defendant named in
item 5d to recover costs $
[  ] and attorney fees $

7. [  ] Other (*specify*):$0.00

Date: _____

Date: __11/29/2021_____

Sherri R. Carter Executive Officer / Clerk of Court

[  ] _____
JUDICIAL OFFICER

☑ Clerk, by _____J. Choi_____, Deputy

| [SEAL] | **CLERK'S CERTIFICATE** (optional) |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court.<br><br>Date:_____ Clerk, by _____, Deputy |

JUD-100 [Rev. January 1, 2002]                    **JUDGMENT**

# EXHIBIT 23

GW-196

Arizona Corporation Commission – RECEIVED: 7/26/2023    25072615239986
Arizona Corporation Commission – FILED: 7/26/2023

DO NOT WRITE ABOVE THIS LINE; RESERVED FOR ACC USE ONLY.

# ARTICLES OF AMENDMENT
*Read the Instructions L015i*

1.  **ENTITY NAME** – give the exact name of the LLC as currently shown in A.C.C. records:

Honor Enterprise Funding, LLC

## CHECK THE BOX NEXT TO EACH CHANGE BEING MADE AND
## COMPLETE THE REQUESTED INFORMATION FOR THAT CHANGE.

2.  ☐  **ENTITY NAME CHANGE** – type or print the exact NEW name of the LLC in the space below:

3.  ☑  **MEMBERS CHANGE (CHANGE IN MEMBERS)** – *see Instructions L015i* – **Use one block per person** -
To REMOVE a member - list the name only of the member being removed and check "Remove member."
To ADD  a member - list the name and address of the member being added and check "Add member."
To CHANGE ADDRESS only - list the name and NEW address and check "Address change."
To CHANGE NAME of existing member - list the current name, then the NEW name, and check "Name change."
If more space is needed, complete and attach the Amendment Attachment for Member form L044.

| 1. | 2. |
|---|---|
| Kirk Gill | |
| Name currently shown in ACC records | Name currently shown in ACC records |
| | Kirk Gill Trust |
| NEW Name | NEW Name |
| 7548 E Felicity Place | 4651 E Coachlight Lane |
| Address 1 | Address 1 |
| | |
| Address 2 (optional) | Address 2 (optional) |
| Tucson   AZ   85750 | Tucson   AZ   85718 |
| City   State or Province   Zip | City   State or Province   Zip |
| UNITED STATES | UNITED STATES |
| Country | Country |
| ☐ Address change   ☐ Add member | ☐ Address change   ☑ Add member |
| ☐ Name change   ☑ Remove member | ☐ Name change   ☐ Remove member |
| 3. | 4. |
| Name currently shown in ACC records | Name currently shown in ACC records |
| NEW Name | NEW Name |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| City   State or Province   Zip | City   State or Province   Zip |
| Country | Country |
| ☐ Address change   ☐ Add member | ☐ Address change   ☐ Add member |
| ☐ Name change   ☐ Remove member | ☐ Name change   ☐ Remove member |

L015.009
Rev: 5/2020

Arizona Corporation Commission - Corporations Division
Page 1 of 3

**4.** ☑ **MANAGERS CHANGE (CHANGE IN MANAGERS) –** Use one block per person –
To REMOVE a manager - list the name only of the manager being removed and check "Remove manager."
To ADD a manager - list the name and address of the manager being added and check "Add manager."
To CHANGE ADDRESS only - list the name and NEW address and check "Address change."
To CHANGE NAME of existing manager - list the current name, then the NEW name, and check "Name change."
If more space is needed, complete and attach the Amendment Attachment for Managers form L043.

| 1. | | | 2. | | |
|----|----|----|----|----|----|
| Name currently shown in ACC records | | | Name currently shown in ACC records | | |
| Kirk Gill | | | | | |
| NEW Name | | | NEW Name | | |
| | | | | | |
| Address 1 | | | Address 1 | | |
| 4651 E Coachlight Lane | | | | | |
| Address 2 (optional) | | | Address 2 (optional) | | |
| Tucson | AZ | 85718 | | | |
| City        State or Province   Zip | | | City       State or Province   Zip | | |
| UNITED STATES | | | | | |
| Country | | | Country | | |
| ☐ Address change   ☑ Add manager | | | ☐ Address change   ☐ Add manager | | |
| ☐ Name change   ☐ Remove manager | | | ☐ Name change   ☐ Remove manager | | |

**5.** ☑ **MANAGEMENT STRUCTURE CHANGE –** *see Instructions L015i* – check only one box below and follow instructions. **All persons will be listed on the appropriate Attachment form.**

  ☑ CHANGING TO *MANAGER*-MANAGED LLC – complete and attach the Manager Structure Attachment form L040. *The filing will be rejected if it is submitted without the attachment.*

  ☐ CHANGING TO *MEMBER*-MANAGED LLC – complete and attach the Member Structure Attachment form L041. *The filing will be rejected if it is submitted without the attachment.*

**6.** ☐ **STATUTORY AGENT CHANGE – NEW AGENT APPOINTED –** *see Instructions L015i:*

| 6.1 *REQUIRED* – give the **name** (can be an individual or an entity) **and *physical or street address*** (not a P.O. Box) in Arizona of the NEW statutory agent: | 6.2 *REQUIRED* – mailing address in Arizona of NEW Statutory Agent, if different from street address (can be a P.O. Box): ☐ Check box if same as street address. |
|---|---|
| Statutory Agent Name (required) | |
| Attention (optional) | Attention (optional) |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| City         State    Zip | City         State    Zip |

  **6.3** *REQUIRED* – the Statutory Agent Acceptance form M002 must be submitted along with these Articles of Amendment.

**7.** ☑ **STATUTORY AGENT ADDRESS CHANGE – ADDRESS OF CURRENT STATUTORY AGENT –** complete 7.1 and 7.2:

| 7.1 **NEW *physical or street address*** (not a P. O. Box) in Arizona of the existing statutory agent: | 7.2 **NEW mailing address** in Arizona of the existing statutory agent (can be a P.O. Box): |
|---|---|
| Attention (optional) | Attention (optional) |
| 4651 E Coachlight Lane | |
| Address 1 | Address 1 |
| Address 2(optional)   AZ   85718 | Address 2 (optional) |
| City   Tucson   State   Zip | City         State    Zip |

**8.** ☑ **PRINCIPAL ADDRESS CHANGE:**

**8.1** Is the NEW principal address the same as the street address of the statutory agent?

☑ Yes – go to number 9 and continue

☐ No – go to number 8.2 and continue

**8.2** If you answered "No" to number 8.1, give the **NEW principal address** (can be outside of Arizona and can be a P.O. Box.)

| | | |
|---|---|---|
| Attention (optional) | | |
| Address 1 | | |
| Address 2 (optional) | | |
| City | State or Province | Zip |
| Country | | |

**9.** ☐ **ENTITY TYPE CHANGE –** if changing entity type, check one and follow instructions:

☐ Changing to a PROFESSIONAL LLC – number 10 must also be completed.

☐ Changing to a NON-PROFESSIONAL LLC (professional LLC becoming a regular LLC).

**10.** ☐ **PROFESSIONAL SERVICES CHANGE –** describe the **NEW** type of professional services the professional LLC will render: _____

**11.** ☐ **OTHER AMENDMENT –** if an amendment was made that was not addressed by the check boxes on this form, then you must attach to these Articles of Amendment a complete copy of the LLC's written amendment.

**SIGNATURE:**    By checking the box marked "I accept" below, I acknowledge *under penalty of law* that this document together with any attachments is submitted in compliance with Arizona law.

☑ I ACCEPT

| Kirk Gill | 07/24/2023 |
|---|---|
| Signature      Printed Name | Date (mm/dd/yy) |

**REQUIRED –** check only one and fill in the corresponding blank if signing for an entity:

| ☒   I am an **individual** authorized to sign this document. | ☐   I am signing on behalf of an **entity** that is authorized to sign this document. |
|---|---|

**Expedited or Same Day/Next Day services are available for an additional fee – see Instructions or Cover sheet for prices.**

| Filing Fee: $25.00 (regular processing) All fees are nonrefundable - see Instructions. | Mail:   Arizona Corporation Commission - Examination Section 1300 W. Washington St., Phoenix, Arizona 85007 |
|---|---|
| | Fax:   602-542-4100 |

Please be advised that A.C.C. forms reflect only the **minimum** provisions required by statute. You should seek private legal counsel for those matters that may pertain to the individual needs of your business. All documents filed with the Arizona Corporation Commission are **public record** and are open for public inspection. If you have questions after reading the Instructions, please call 602-542-3026 or (within Arizona only) 800-345-5819.

Case 2:24-bk-12079-VZ    Doc 298-3    Filed 11/19/24    Entered 11/19/24 16:53:28    Desc
Declaration of Gerrick Warrington    Page 200 of 227

23072615239986

DO NOT WRITE ABOVE THIS LINE; RESERVED FOR ACC USE ONLY.

# MANAGER STRUCTURE ATTACHMENT

**1. ENTITY NAME** – give the exact name of the LLC (foreign LLCs – give name in domicile state or country):

Honor Enterprise Funding, LLC

**2. MANAGERS/MEMBERS** - give the name and address of each and every **manager** *and* list all **members who own 20% or more** of the profits or capital of the LLC. **Use one block per person**. Check the appropriate box or boxes below each person listed. If more space is needed, use another Manager Structure Attachment form.

| 1. Kirk Gill | 2. Kirk Gill Trust |
|---|---|
| Name | Name |
| 4651 E Coachlight Lane | 4651 E Coachlight Lane |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| Tucson   AZ   85718 | Tucson   AZ   85718 |
| City   State or Province   Zip | City   State or Province   Zip |
| UNITED STATES | UNITED STATES |
| Country | Country |
| ☑ Manager   ☐ Member owning 20% or more | ☐ Manager   ☑ Member owning 20% or more |
| 3. | 4. |
| Name | Name |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| City   State or Province   Zip | City   State or Province   Zip |
| Country | Country |
| ☐ Manager   ☐ Member owning 20% or more | ☐ Manager   ☐ Member owning 20% or more |
| 5. | 6. |
| Name | Name |
| Address 1 | Address 1 |
| Address 2 (optional) | Address 2 (optional) |
| City   State or Province   Zip | City   State or Province   Zip |
| Country | Country |
| ☐ Manager   ☐ Member owning 20% or more | ☐ Manager   ☐ Member owning 20% or more |

# EXHIBIT 24

# LLC - STATEMENT OF CHANGE

## OF PRINCIPAL ADDRESS OR STATUTORY AGENT

### ENTITY INFORMATION

**ENTITY NAME:**          HONOR ENTERPRISE FUNDING LLC
**ENTITY ID:**            L22428170
**ENTITY TYPE:**          Domestic LLC

### STATUTORY AGENT INFORMATION

**STATUTORY AGENT NAME:**      KIRK GILL

**PHYSICAL ADDRESS:**      4651 East Coachlight Lane, TUCSON, AZ 85718
**MAILING ADDRESS:**       4651 E COACHLIGHT LANE, TUCSON, AZ 85718

### PRINCIPAL ADDRESS

4651 E COACHLIGHT LANE, TUCSON, AZ 85718

### SIGNATURES

Statutory Agent: Kirk Gill - 01/24/2024

# EXHIBIT 25

2004 WL 832137 (Ohio Dept.Comm.)

Department of Commerce, Division of Securities

State of Ohio

IN THE MATTER OF: KIRK J. GILL

Order No. 04-072
CRD Number 2291503
March 23, 2004

**NOTICE OF INTENT TO DENY APPLICATION FOR SECURITIES SALESPERSON LICENSE**

**NOTICE OF OPPORTUNITY FOR HEARING**

**DIVISION ORDER**

**\*1**  WHEREAS, the Ohio Division of Securities (hereinafter alternatively referred to as "Division") is charged with the responsibility for protecting investors and finds that this Order is necessary or appropriate in the public interest or for the protection of investors, and is consistent with the purposes fairly intended by the Ohio Securities Act, Revised Code Chapter 1707;

WHEREAS, the Division has reviewed the application for licensing as a securities salesperson in accordance with the Ohio Securities Act of Kirk J. Gill (hereinafter "Applicant") whose address is 4651 E. Coachlight Lane, Tucson, AZ 85718;

WHEREAS, on or about February 27, 2004, the Division received the securities salesperson license application of Applicant which had been filed pursuant to Revised Code section 1707.16 by the submission of a Form U-4 to the Central Registration Depository of the National Association of Securities Dealers Regulation, Inc. (NASDR);

WHEREAS, Applicant stated in the application described above that the dealer which employs or intends to employ Applicant is Citigroup Global Markets Inc., 333 W. 34 th St., 7 th floor, New York, NY 10001, an Ohio-licensed securities dealer;

WHEREAS, the Division alleges as follows:

(1) That on or about August 21, 2001, customer Richard W. Haskell, individually, and as trustee of Richard Haskell Trust, filed a complaint in arbitration with the NASD, Case No. 01-04254, alleging that Applicant committed fraud, was negligent, breached the account contract, effected trades in unsuitable securities and effected unnecessary trades to maximize commissions. On August 11, 2003, the matter was settled for $15,000.00.

(2) That on or about February 17, 2002, customers Robert and Susan Andreas filed a complaint in arbitration with the NASD, Case No. 02-00574, alleging that Applicant effected unsuitable trades in securities and churned the account. On October 27, 2003, the matter was settled for $65,000.00.

(3) That on or about March 5, 2002, customers Albert and Elsie Baker filed a complaint in arbitration with the NASD, Case No. 02-01108, alleging that Applicant effected unsuitable trades in securities and churned the account. On January 7, 2003, the matter was settled for $71,896.00.

GW-204

(4) That on or about April 30, 2002, customer Charles R. McClelland filed a complaint in arbitration with the NASD, Case No. 02-01989, alleging that Applicant effected unsuitable trades in securities and churned the account. The customer alleged damages of $122,954.00. The matter is pending.

(5) That on or about May 6, 2002, customers Mark P. Wood and Loretta A. Wood filed a complaint in arbitration with the NASD, Case No. 02-02023, alleging that Applicant effected unsuitable trades in securities and churned the account. The customer alleged damages of $238,846.63. The matter is pending.

 **\*2**  (6) That on or about November 18, 2002, customer Bobbie McClean filed a complaint in arbitration with the NASD, Case No. 02-06770, alleging that Applicant breached the account contract, effected trades in unsuitable securities, effected unauthorized trades, and breached his fiduciary duty. The customer alleged damages of $500,000.00. The matter is pending.

(7) That on or about October 4, 2002, customer Ella Mary Lewis, filed a complaint in arbitration with the NASD, Case No. 02-05525, alleging that Applicant effected trades in unsuitable securities. On December 23, 2003, the matter was settled for $16,500.00.

WHEREAS, based on the foregoing, the Division alleges that Applicant is not of "good business repute" as that term is used in Administrative Code Rule 1301:6-3-19(D)(9) and Revised Code section 1707.19(A)(1).

THEREFORE, IT IS ORDERED THAT, pursuant to Revised Code Chapter 119, Applicant is hereby notified that thirty (30) days from the date of mailing of this Notice, the Division, pursuant to Revised Code section 1707.19(A)(1), intends to issue an Order to DENY the application for an Ohio securities salesperson license of Applicant.

FURTHER, IT IS ORDERED THAT, pursuant to Revised Code Chapter 119, Applicant is hereby notified that Applicant is entitled to an adjudicative hearing. If Applicant wishes to request such hearing, the request must be made in writing and must be received in the offices of the Division within thirty (30) days from the date of mailing of this Notice. At the hearing, Applicant and the Division may appear in person, by their attorneys, or together with their attorneys, or they may present their position, arguments, or contentions in writing, and that at the hearing they may present evidence and examine witnesses appearing for and against them.

FURTHER, IT IS ORDERED THAT, if no hearing is timely requested, an Order to DENY the application for an Ohio securities salesperson license of Applicant may be issued.

WITNESS MY HAND AND THE OFFICIAL SEAL OF THIS DIVISION at Columbus, Ohio this 23 day of March, A.D. 2004.

Deborah L. Dye Joyce
Commissioner of Securities

2004 WL 832137 (Ohio Dept.Comm.)

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 26



< Back to Results                                    ⬇ Detailed Report    ✉ Share

**KIRK J GILL**

KIRK GILL

CRD#: 2291503

(PR) Previously Registered
Broker

(PR) Previously Registered
Investment Adviser ⓘ

The representative was
previously registered both as a
broker and as an investment
adviser. Visit IAPD for more
information on this individual's
investment adviser record.

GO TO SEC SITE

18

Disclosures

26 Years of Experience

6 Firms

4

Exams Passed

0

State Licenses

Disclosure(s)

View By: Date ▼

9/17/2020        Customer Dispute    Settled                    ∧

Allegations

CLIENTS' ATTORNEY ALLEGED UNSUITABILITY WITH RESPECT TO ENERGY
SECURITY INVESTMENTS - DECEMBER 2013 THROUGH MARCH 2016.

Damage Amount Requested

$238,316.00

Settlement Amount

$125,000.00

| | | | |
|---|---|---|---|
| 3/21/2019 | Customer Dispute | Settled | ⌃ |

Allegations

CLAIMANTS ALLEGE, INTER ALIA, UNSUITABILITY WITH RESPECT TO INVESTMENTS - DEC 2013 - MAR 2016

Damage Amount Requested

$500,000.00

Settlement Amount

$130,000.00

| | | | |
|---|---|---|---|
| 1/11/2019 | Customer Dispute | Settled | ⌃ |

Allegations

Claimants allege, inter alia, unsuitability with respect to energy stocks - 2011 to 2016

Settlement Amount

$14,999.00

| | | |
|---|---|---|
| 5/23/2018 | Employment Separation After Allegations | ⌃ |

Firm Name

FIRST FINANCIAL EQUITY CORPORATION

Termination Type

Permitted to Resign

Allegations

Failure to agree to stipulations in updated heightened supervision plan.

Broker Comment

The permitted to resign posted on my Form U-5 by First Financial Equity Corporation (FFEC) is false. I voluntarily resigned prior to any discussion of me separating from the company. The disclosure about not agreeing to the stipulation of a revamped heightened supervision plan are false as well. I had been on heightened supervision for 21 months without issue or written reprimand. The heightened supervision plan was supposed to end on June 30, 2018. On April 5, 2018, I was presented with an updated supervision plan, even though I had no infractions with the previous plan. The new plan introduced the idea of using fee-based accounts which had a higher turnover than 2% on a commission basis, limited the combination of preferred, fixed index annuities and non-traded products to 25%. In an attempt to honor the new heightened supervision plan, I called me customers and offered them fee-based accounts. Out of approximately 21 clients, three returned letters opting not to go into a fee-based account. These people were then called by firm management who pressured the clients to switch to fee-based accounts. I expressed concern about the use of these types of tactics. Contrary to what FFEC states, I may have asked for changes in the updated plan, but in no way did I say that I would not execute it. However, after the pressuring of some of my clients by the firm to establish fee-based accounts, I simply had enough and resigned. On April 23, 2018, I went to meet with firm management. Prior to the meeting, I left a resignation letter in the office because I was fed up with the inaccurate information, the mistreatment of my clients and the discriminatory and harassing treatment I received. That is what factually happened and I believe that FFEC should be forced to remove the inaccurate information noted on my Form U-5 Termination Notice.

| 5/21/2018 | Customer Dispute | Settled | ∧ |

Allegations

Client verbally complained about an over concentration in oil stocks. January, 2014 to January, 2018.

Settlement Amount

$38,265.71

GW-209

3/15/2018             Customer Dispute   Settled                              ∧

Allegations

CLAIMANT ALLEGED, INTER ALIA, UNSUITABILITY OF INVESTMENTS- 2009 TO
2016

Damage Amount Requested

$901,369.78

Settlement Amount

$185,000.00

8/2/2017              Customer Dispute   Settled                              ∧

Allegations

Claimants alleged, inter alia, unsuitability with respect to investments 2013-2016

Damage Amount Requested

$2,000,000.00

Settlement Amount

$275,000.00

Broker Comment

Mr. Gill was not personally named in this matter. Recommendations reflected
Morgan Stanley's research and strategy. Mr. Gill has not been involved in any
aspect of the legal proceedings.

3/1/2017              Customer Dispute   Settled                              ∧

Allegations

Claimants allege, inter alia, unsuitability with respect to investments in accounts
- 2010-2016

Damage Amount Requested

$500,000.00

Settlement Amount

$150,000.00

Broker Comment

Mr. Gill was not personally named in this matter and did not contribute to the settlement. Recommendations reflected Morgan Stanley's research and strategy. Mr. Gill was not involved in any aspect of the legal proceedings and is pursuing expungement on the matter.

| 8/3/2016 | Customer Dispute | Settled | ⌃ |

Allegations

Claimants allege, inter alia, that from August 2011 to November 2015 the FA made unsuitable recommendations in the client's account.

Damage Amount Requested

$500,000.00

Settlement Amount

$195,000.00

Broker Comment

Mr. Gill was not personally named in this matter. Recommendations reflected Morgan Stanley's research and strategy. Mr. Gill has not been involved in any aspect of the legal proceedings.

| 7/13/2016 | Customer Dispute | Settled | ⌃ |

Allegations

Claimants alleged, inter alia, unsuitability with respect to investments in accounts - 2014-2015.

Settlement Amount

$50,000.00

Broker Comment

Mr. Gill was not personally named in this matter. Recommendations reflected Morgan Stanley's research and strategy. Mr. Gill was not involved in any aspect of the legal proceeding and did not contribute to the settlement. Mr. Gill is pursuing this matter be expunged from his record.

| 7/8/2016 | Customer Dispute | Settled | ∧ |

Allegations

Claimant alleged, inter alia, unsuitability with respect to investments in accounts - 2014-2015.

Settlement Amount

$32,500.00

Broker Comment

Mr. Gill was not personally named in this matter. Recommendations reflected Morgan Stanley's research and strategy. Mr. Gill has not been involved in any aspect of the legal proceedings.

| 6/27/2016 | Customer Dispute | Settled | ∧ |

Allegations

Claimant alleges, inter alia, that from 2010 to March 2016 the FA unsuitably over-concentrated her investments in high risk equities.

Damage Amount Requested

$361,536.88

Settlement Amount

$21,000.00

Broker Comment

Mr. Gill was not personally named in this matter. Recommendations reflected Morgan Stanley's research and strategy. Mr. Gill was not involved in any aspect

of the legal proceeding and did not contribute to the settlement. Mr. Gill is pursuing this matter be expunged from his record.

| 7/2/2015 | Customer Dispute | Settled | ∧ |

### Allegations

CLAIMANT ALLEGES, INTER ALIA, THAT FROM 2007 TO NOVEMBER 2014 THE FA MADE UNSUITABLE RECOMMENDATIONS IN THE CLIENT'S ACCOUNT.

### Damage Amount Requested

$300,000.00

### Settlement Amount

$80,000.00

### Broker Comment

Broker followed firm approved strategy. Broker was dismissed from all claims and contributed zero to settlement.

| 1/7/2014 | Customer Dispute | Denied | ∧ |

### Allegations

CLIENT ALLEGED THAT THE INVESTMENTS PURCHASED IN THEIR MANAGED ACCOUNT DID NOT MEET THEIR STATED INVESTMENT OBJECTIVES. 2012. DAMAGES UNSPECIFIED.

| 12/18/2013 | Customer Dispute | Denied | ∧ |

### Allegations

CLIENT ALLEGES FA DID NOT ADVISE HIM THAT THE STOCKS HE WAS RECOMMENDING WERE VOLATILE AND HIGH RISK INVESTMENTS - MARCH 2013 - DECEMBER 2013.

### Damage Amount Requested

$100,000.00

Broker Comment

REPRESENTATIVE DENIES ALL CLAIMS MADE BY THE CLIENT. A REVIEW OF
THE CLIENT'S PORTFOLIO REFLECTS AN OVERALL GAIN DURING THE TIME
PERIOD REPRESENTATIVE SERVED AS FINANCIAL ADVISOR.

| 8/8/2012 | Customer Dispute | Settled | ∧ |

Allegations

CLAIMANT ALLEGES, INTER ALIA, THAT IN 2011 THE FINANCIAL ADVISOR
MADE UNSUITABLE INVESTMENTS IN HIS ACCOUNTS.

Damage Amount Requested

$85,000.00

Settlement Amount

$10,000.00

Broker Comment

THE ALLEGATIONS MADE IN THE STATEMENT OF CLAIM ARE WITHOUT MERIT
AND, IN FACT, ARE FALSE. INDEED, THE DOCUMENTS CLAIMANT HIMSELF
ATTACHED TO THE STATEMENT OF CLAIM EVIDENCE THAT MR. GILL KNEW
HIS CUSTOMER, MADE RECOMMENDATIONS BASED ON INFORMATION
PROVIDED BY CLAIMANT, AND THAT CLAIMANT WAS WELL-INFORMED ABOUT
ALL INVESTMENTS RECOMMENDED. CLAIMANT MADE AN INFORMED
DECISION TO INVEST. MR. GILL STRENUOUSLY DENIES ALL ALLEGATIONS
AND WILL PURSUE ALL ACTIONS NECESSARY TO CLEAR THE MATTER FROM
HIS RECORD.

| 11/18/2002 | Customer Dispute | Settled | ∧ |

Allegations

ALLEGED UNSUITABLE AND UNAUTHORIZED INVESTMENTS, BREACH OF
CONTRACT AND BREACH OF FIDUCIARY DUTY BTWN. 3/01-9/02.

Damage Amount Requested

$500,000.00

Settlement Amount

$30,000.00

Broker Comment

THE CLAIM AGAINST THE BROKER WAS DISMISSED. CLAIMANT,[REDACTED]
SIGNED AN AFFIDAVIT ON FEB. 27, 2004 IN WHICH SHE STATED THAT THE
LOSSES SHE SUSTAINED WERE NOT THE FAULT OF KIRK GILL AND HE DID
NOT ENGAGE IN ANY IMPROPER OR ILLEGAL CONDUCT. SHE THEN DIRECTED
HER ATTORNEYS TO DISMISS WITH PREJUDICE ALL CLAIMS AGAINST GILL
AND STIPULATE THAT ALL SUCH INFORMATION BE EXPUNGED, DELETED AND
ERASED FROM HIS CRD RECORD.

| 7/22/2002 | Customer Dispute | Denied | ⌃ |

Allegations

CLIENT ALLEGED MISREPRESENTATION, BREACH OF FIDUCIARY DUTY, AND
THAT THE INVESTMENTS PURCHASED IN HIS ACCOUNT WERE UNSUITABLE.
ALLEGED DAMAGES UNSPECIFIED. 2001-2002

Broker Comment

NO MONENARY RELEIF REQUESTED. CLAIM DENIED

Examination(s)

■ **State Securities Law Exam**

| IA | Series 65 - Uniform Investment Adviser Law Examination | Dec 14, 1999 |
| B | Series 63 - Uniform Securities Agent State Law Examination | Nov 20, 1992 |

■ **General Industry/Products Exam**

| B | SIE - Securities Industry Essentials Examination | Oct 1, 2018 |
| B | Series 7 - General Securities Representative Examination | Dec 9, 1992 |

Additional information including this individuals professional designations is available in the Detailed Report.

✓ Previous Registration(s)

|  | | Name | Location |
|---|---|---|---|
| B | 06/06/2018 - 08/20/2019 | TAYLOR CAPITAL MANAGEMENT INC. (CRD#:43559) | Tucson, AZ |
| B | 03/31/2016 - 06/07/2018 | FIRST FINANCIAL EQUITY CORPORATION (CRD#:16507) | Tucson, AZ |
| B | 06/01/2009 - 04/14/2016 | MORGAN STANLEY (CRD#:149777) | TUCSON, AZ |
| B | 07/13/2007 - 06/01/2009 | MORGAN STANLEY & CO. INCORPORATED (CRD#:8209) | TUCSON, AZ |
| B | 02/20/2001 - 07/30/2007 | CITIGROUP GLOBAL MARKETS INC. (CRD#:7059) | TUCSON, AZ |
| B | 12/11/1992 - 03/08/2001 | MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED (CRD#:7691) | NEW YORK, NY |

**Additional Information**

The content of this summary, and the available detailed report, is governed by FINRA Rule 8312, and is primarily based on information filed on uniform registration forms. Rule 8312, amendments to the rule and notices related to U.S. Securities and Exchange Commission approval orders, can be viewed here.

State regulators are governed by their public records laws (not FINRA Rule 8312), and may provide information not in BrokerCheck, including information no longer required to be reported or updated on uniform registration forms due, for example, to its age or final disposition. You may contact your state regulator to request this additional information.

Click here for more information about how to check on an investment professional.

B    Broker

A brokerage firm, also called a broker-dealer, is in the business of buying and selling securities –
stocks, bonds, mutual funds, and certain other investment products – on behalf of its customer (as
broker), for its own bank (dealer), or both.
Individuals who work for broker-dealers - the sales personnel are commonly referred to as brokers.


IA    Investment Adviser

An investment adviser is paid for providing advice about securities to clients. In addition, some
investment advisers manage investment portfolios and offer financial planning services.
It is common for a financial professional to act as both a broker and an investment adviser.
Because of this, we include investment advisers on BrokerCheck, and provide links to the SEC's
Investment Adviser Public Disclosure (IAPD) website so you can research further.


  Previously Registered

A Previously Registered broker or brokerage firm is not currently licensed to act as a broker (buying
and selling securities on behalf of customers) or as an investment adviser (providing advice about
securities to clients). They may still be able to offer other investment-related services if properly
licensed to do so. Click here to learn more.


  Disclosures

Disclosures can be customer complaints or arbitrations, regulatory actions, employment
terminations, bankruptcy filings and certain civil or criminal proceedings that they were a part of.


Use of the BrokerCheck site is subject to
BrokerCheck Terms of Use

©2024 FINRA, All Rights Reserved

FINRA is a registered trademark of the Financial Industry
Regulatory Authority, Inc.

Privacy  |  Legal

# EXHIBIT 27

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*  *FOR COURT USE ONLY*

**Gerrick M. Warrington,Esq  SBN:  294890**
**FRANDZEL ROBINS BLOOM & CSATO**
**1000 Wilshire Boulevard, 19th Floor   Los Angeles, CA 90017**

TELEPHONE NO.: **(323) 852-1000**                                      FAX NO.:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

STREET ADDRESS: **255 E. TEMPLE ST.**

CITY AND ZIP CODE: **LOS ANGELES, CA 90012**

REFERENCE NUMBER:

**101415-0002**

Plaintiff(s):  **In re SEATON INVESTMENTS, LLC, et al.**

Defendant(s):

| **DECLARATION OF DILIGENCE** | CASE NUMBER:<br>**2:24-bk-12079-VZ** |
|---|---|

I received the within assignment for filing and/or service on  November 5, 2024 and that after due and diligent effort I have not been able to serve said person.I attempted service on this servee on the following dates and times:

Servee:    **Zenith Healthcare Management, LLC**

Documents:    **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMITINSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

Address:    **5030 Campus Drive**
**Newport Beach, CA 92660-2102**

As enumerated below:

**11/7/2024 -- 3:41 PM**          5030 Campus Drive
**Business**                            Newport Beach, CA 92660-2102
Company at address is the Horowitz Group. Per office administrator Jennifer, she has never heard of subject company or agent. They are the only company located in this building.



County:  **Orange**
Registration No.:  **1530**
**Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**

I declare under penalty of perjury under the laws of the State of California that I am over the age of 18, not a party to this action and that the foregoing is true and correct.  This declaration was executed on 11/15/2024.

Signature:_____

**Frank Harrigan**

## DECLARATION OF DILIGENCE

Order#: LA581238/DilFormat.mdl

GW-219

# EXHIBIT 28

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: *FOR COURT USE ONLY*
**Gerrick M. Warrington,Esq  SBN:  294890**
**FRANDZEL ROBINS BLOOM & CSATO**
**1000 Wilshire Boulevard, 19th Floor   Los Angeles, CA 90017**

TELEPHONE NO.: **(323) 852-1000**                    FAX NO.:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

STREET ADDRESS: **255 E. TEMPLE ST.**

CITY AND ZIP CODE: **LOS ANGELES, CA 90012**

REFERENCE NUMBER:

**101415-0002**

Plaintiff(s): In re SEATON INVESTMENTS, LLC, et al.

Defendant(s):

| **DECLARATION OF DILIGENCE** | CASE NUMBER: **2:24-bk-12079-VZ** |
|---|---|

I received the within assignment for filing and/or service on  November 5, 2024 and that after due and diligent effort I have not been able to serve said person.I attempted service on this servee on the following dates and times:

Servee:   **The DMB Fund**

Documents:   **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMITINSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

Address:   **2350 Castle Heights Ave**
**Los Angeles, CA 90034-1050**

As enumerated below:

**11/8/2024 -- 2:04 PM Home**     2350 Castle Heights Ave Los Angeles, CA 90034-1050
Per David, Judy Cox does not live here.

**11/9/2024 -- 10:18 AM Home**     2350 Castle Heights Ave Los Angeles, CA 90034-1050
Cars in driveway, rang doorbell nobody answered

**11/13/2024 -- 2:14 PM Home**     2350 Castle Heights Ave Los Angeles, CA 90034-1050
Same car in driveway. Rang doorbell several times, but nobody answered.

County:  **Los Angeles**
Registration No.:  **3267**
**Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**

I declare under penalty of perjury under the laws of the State of California that I am over the age of 18, not a party to this action and that the foregoing is true and correct.  This declaration was executed on 11/15/2024.

Signature:_____

**Alfredo Ricardo Paz**

**DECLARATION OF DILIGENCE**

Order#: LA581237/DilFormat.mdl

GW-221

# EXHIBIT 29

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* *FOR COURT USE ONLY*

**Gerrick M. Warrington,Esq  SBN:  294880**
**FRANDZEL ROBINS BLOOM & CSATO**
**1000 Wilshire Boulevard, 19th Floor  Los Angeles, CA 90017**

TELEPHONE NO.: **(323) 852-1000**                              FAX NO.:

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

STREET ADDRESS: **255 E. TEMPLE ST.**

CITY AND ZIP CODE: **LOS ANGELES, CA 90012**

REFERENCE NUMBER:
**101415-0002**

Plaintiff(s):  **In re SEATON INVESTMENTS, LLC, et al.,**
Defendant(s):

| **DECLARATION OF DILIGENCE** | CASE NUMBER:<br>**2:24-bk-12079-VZ** |
|---|---|

I received the within assignment for filing and/or service on  November 5, 2024 and that after due and diligent effort I have not been able to serve said person.I attempted service on this servee on the following dates and times:

Servee:  **Levav Group LLC**

Documents:  **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMITINSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

Address:  **1702 S Robertson Blvd # 261**
**Los Angeles, CA 90035**

As enumerated below:

**11/6/2024 -- 10:37 AM**      1702 S Robertson Blvd # 261
**Business**      Los Angeles, CA 90035
Arrived at address which appears to be a small PO box shipping store. The sign in the door stated it was open at 10:30. However it was past 10:30 at the time of arrival and the business was still closed.

**11/7/2024 -- 2:40 PM**      1702 S Robertson Blvd # 261
**Business**      Los Angeles, CA 90035
Returned to business which is open this time and spoke to the employee who informed me that in fact PO box number 261 is being used by Ahron Stock.

**11/11/2024 -- 10:35 AM**      8759 Airdrome St
**Home**      Los Angeles, CA 900353415
Arriveed at the property and knocked onn the front door loudly several times and rang the doorbell. The intercom was answered by a female's voice stating the individual we are attempting to serve used to live at this address. However no longer resides at this address and she has no further information on him.

County:  **Los Angeles**
Registration No.:  **2018032404**
**Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**

I declare under penalty of perjury under the laws of the State of California that I am over the age of 18, not a party to this action and that the foregoing is true and correct.  This declaration was executed on 11/15/2024.

Signature:_____

**Robert Brooks**

**DECLARATION OF DILIGENCE**

Order#: LA581243/DilFormat.mdl

GW-223

# EXHIBIT 30

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address): *(FOR COURT USE ONLY)*

**Gerrick M. Warrington,Esq  SBN: 294890**
**FRANDZEL ROBINS BLOOM & CSATO**
**1000 Wilshire Boulevard, 19th Floor   Los Angeles, CA 90017**

TELEPHONE NO.: **(323) 852-1000**                    FAX NO.:

E-MAIL ADDRESS: *(Optional)*:

ATTORNEY FOR *(Name)*:

**USBC/LOS ANGELES/CENTRAL DISTRICT OF CA**

STREET ADDRESS: **255 E. TEMPLE ST.**

CITY AND ZIP CODE: **LOS ANGELES, CA 90012**

REFERENCE NUMBER:

**101415-0002**

Plaintiff(s):  **In re SEATON INVESTMENTS, LLC, et al.**
Defendant(s):

| **DECLARATION OF DILIGENCE** | CASE NUMBER: **2:24-bk-12079-VZ** |
|---|---|

I received the within assignment for filing and/or service on  November 5, 2024 and that after due and diligent effort I have not been able to serve said person.I attempted service on this servee on the following dates and times:

Servee:   **Honor Enterprise Funding LLC**

Documents:   **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMITINSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

Address:   **4651 E Coachlight Ln**
**Tucson, AZ 857186934**

As enumerated below:

**11/6/2024 -- 3:56 PM**        4651 E Coachlight Ln
**Home**                Tucson, AZ 857186934
No answer at the door. There were dogs barking inside.

**11/7/2024 -- 7:15 PM**        4651 E Coachlight Ln
**Home**                Tucson, AZ 857186934
LIGHTS ON,  DOG BARKING,  NO ANSWER.



County:  **Pima**
Registration No.:  **PM528**
**Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**

I declare under penalty of perjury under the laws of the State of California that I am over the age of 18, not a party to this action and that the foregoing is true and correct.  This declaration was executed on 11/15/2024.

Signature: _____

**Darin Clark**

## DECLARATION OF DILIGENCE

**Order#: LA581256/DilFormat.mdl**

GW-225

# EXHIBIT 31



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CA NONPROFIT CORPORATION**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20241959031 |
| Date Filed: 11/5/2024 |

---

**Entity Details**

| | |
| --- | --- |
| Corporation Name | THE DMB FUND |
| Entity No. | 2914756 |
| Formed In | CALIFORNIA |

**Street Address of California Principal Office of Corporation**

| | |
| --- | --- |
| Street Address of California Office | 2350 CASTLE HEIGHTS AVENUE LOS ANGELES, CA 90034 |

**Mailing Address of Corporation**

| | |
| --- | --- |
| Mailing Address | 2350 CASTLE HEIGHTS AVENUE LOS ANGELES, CA 90034 |
| Attention | |

**Officers**

| Officer Name | Officer Address | Position(s) |
| --- | --- | --- |
| Judy Cox | 2350 Castle Heights Avenue Los Angeles, CA 90034 | Secretary, Chief Financial Officer |
| ➕ Steve Gold | 36501 WINDTREE CIRCLE PALMDALE, CA 93550 | Chief Executive Officer |

☒ The entity's bylaws allow the CEO (President) to be the Secretary or CFO (Treasurer).

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
| --- | --- | --- | --- |
| None Entered | | | |

**Agent for Service of Process**

| | |
| --- | --- |
| Agent Name | JUDY COX |
| Agent Address | 2350 CASTLE HEIGHTS AVENUE LOS ANGELES, CA 90034 |

**Email Notifications**

| | |
| --- | --- |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Electronic Signature**

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

| *Steve Gold* | *11/05/2024* |
| --- | --- |
| Signature | Date |