Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
David B. Zolkin (State Bar No. 155410
dzolkin@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

Counsel to Debtor Seaton Investments, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br>Debtors and Debtors In Possession.<br><br>☐ Affects All Debtors.<br>☒ Affects Seaton Investments, LLC<br>☐ Affects Colyton Investments, LLC<br>☐ Affects Broadway Avenue Investments, LLC<br>☐ Affects SLA Investments, LLC<br>☐ Affects Negev Investments, LLC<br>☐ Affects Alan Gomperts<br>☐ Affects Daniel Halevy<br>☐ Affects Susan Halevy | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ;<br>2:24-bk-12082-VZ; 2:24-bk-12091-VZ;<br>2:24-bk-12074-VZ; 2:24-bk-12075-VZ and<br>2:24-bk-12076-VZ<br><br>Chapter 11<br><br>**MOTION OF DEBTOR AND DEBTOR IN POSSESSION SEATON INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:<br>Date:    December 12, 2024<br>Time:    11:00 a.m.<br>Crtrm:   1368<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

-1-
DEBTOR'S MOTION FOR DIP FINANCING

Debtor, Seaton Investments, LLC ("Seaton"), hereby files this *Motion of Debtor And Debtor In Possession For Order Authorizing The Debtor To Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364* ("Motion"). In support of the Motion, the Debtor represents as follows:

## I.    GENERAL BACKGROUND

On March 18, 2024 (the "Individual Petition Date") and on March 19, 2024 (the "Corporate Petition Date"), each of the above-captioned jointly administered debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court. The Debtors continue to operate and manage their affairs as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court entered an order on April 1, 2024 for the Debtors' cases to be jointly administered [Dkt. 16]. No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in the Bankruptcy Cases.

On April 1, 2024, the Court entered an order; (1) setting July 16, 2024 as the claims bar date; (2) setting September 20, 2024 as the last date for a hearing to be held on objections to claims; and (3) setting December 12, 2024 as the date for a hearing on a motion for approval of adequacy of disclosure statement.

## II.    STATEMENT OF FACTS

### A.    Jurisdiction and Venue

This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

/ / /

/ / /

### B. The Cases and the Debtor

The Individual Debtors are family and operate a family business together. Debtor Susan Halevy is mother to debtor Daniel Halevy and three other non-debtor children, including Sharon Gomperts, wife of debtor Alan Gomperts.

Susan's husband, David Halevy (deceased), together with Daniel and Alan, and on occasion non-debtor Simon Harkham, invest in and operate real estate properties, including debtors Seaton, Broadway and SLA. Upon David Halevy's passing in 2023, his interests, to the extent they were not community property, passed to Susan via the Halevy Trust (defined below). As such, Susan Halevy is now the owner – direct, beneficial, equitable, or otherwise – of all interests in the various Debtors previously owned by David Halevy.

These Bankruptcy Cases present two real estate investments that require a restructuring to address defaults on their senior loans: (1) the buildings at 440 Seaton Street, Los Angeles, CA, 90013 (the "Seaton Building"), and 421 Colyton Street, Los Angeles, CA, 90013 (the "Colyton Building"), which together are operated as an economic unit (the "Seaton/Colyton Buildings") and are owned by Debtors Seaton and Colyton, respectively; and (2) the building at 737 S. Broadway, Los Angeles, CA, 90014 (the "Broadway Building"), owned by Debtor Broadway.

The Individual Debtors have each jointly and severally guaranteed (1) certain debt owed to KDM California LLC ("KDM") on account of KDM's $37.1 million in principal amount loaned jointly to Seaton and Colyton and secured by the Seaton/Colyton Buildings, and (2) approximately $19.1 million of loans made by Archway Capital ("Archway") on account of the Broadway Building (the "Broadway Loans"). The Individual Debtors' guaranty liability to Archway is bifurcated into secured and unsecured tranches. Approximately $15 million of Archway's Broadway Loans are made directly to Broadway and guaranteed by the Individual Debtors without collateral. Approximately $4 million of Archway's Broadway Loans are made pursuant to three loans to related entities or groups and are secured by pledges of various real properties owned by the Individual Debtors, 1040 S. Los Angeles Street, Los Angeles, CA (owned and pledged by SLA), and 12800 Foxdale Drive, Desert Hot Springs, CA (owned and pledged by Negev).

Seaton was formed in March 2010 for the purpose of acquiring, developing, and operating the Seaton Building. Seaton's membership consists of: (1) the Halevy Family Trust dated September 6, 2010 (the "Halevy Trust," Susan Halevy, beneficial owner); (2) the Gomperts and Halevy Family Trust (the "G&H Trust," Alan Gomperts and Sharon Gomperts, beneficial owners of community property); (3) Daniel Halevy; and (4) Simon Harkham.

Colyton was formed in June 2011 for the purpose of acquiring, developing, and operating the Colyton Building. Colyton is owned 100% by Susan Halevy as the beneficiary of the Halevy Trust. The Seaton/Colyton Buildings are adjacent to each other and together form a jigsaw of structures that are operated by Seaton and Colyton as a single economic unit. They also share overhead costs and are held out to the market as a common opportunity for the lease of commercial space.

In or about 2018, Seaton's members determined the Seaton Building needed a full structural upgrade in order to compete for top-of-the-market tenants in the burgeoning downtown arts district. Seaton took out a series of construction and bridge loans to finance a full modernization of the Seaton Building. The Seaton Building upgrade and development was a many years undertaking requiring careful and intensive coordination with the City of Los Angeles to preserve historical structures and to benefit from programs designed to reward historical preservation.

The investment in the Seaton Building attracted a multi-decade letter-of-intent from WeWork to lease an entire structure (100%) of the Seaton Building. Unfortunately, when WeWork experienced financial difficulties in 2019, the WeWork LOI was withdrawn, and Seaton was in the unenviable position of looking for a major anchor tenant to replace WeWork (or multiple smaller tenants) as the country entered the COVID lockdown. Having invested over $20 million into the Seaton Building, Seaton pushed forward with completion of the Seaton Building upgrades.

In or about April 2021, Seaton refinanced its outstanding loans with KDM. KDM, Seaton, and Colyton entered into a $35.1 million loan that consolidated all of their then outstanding loans and that provided additional working capital for Seaton and Colyton (the "KDM First Loan") to complete the Seaton Building remodel. KDM required the KDM First Loan to be a joint obligation of both Seaton and Colyton, reflecting their operation as a single economic unit. As part of its

diligence, KDM obtained a third-party valuation of the Seaton/Colyton Buildings by Bowery that valued the Seaton/Colyton Buildings as a single economic unit and concluded their current combined projected value to be $64.4 million as of February 17, 2021 (upon completion of upgrades) and $70.2 million as of August 17, 2021 (stabilized).

In January 2022, behind on both the completion of their remodel and lease-up due to the impact of the extended COVID shutdown, Seaton and Colyton closed on a supplementary $2 million loan from KDM (the "KDM Second Loan") for additional capital needed to complete work required for the issuance of a certificate of occupancy by the City of Los Angeles. In connection with the KDM Second Loan, David Halevy (now deceased, and therefore as to Susan Halevy only an in rem obligation against community assets now owned by Susan Halevy via the Halevy Trust), Daniel Halevy, and Alan Gomperts provided personal guarantees to KDM (together, the "KDM Guarantors").

Unfortunately, the KDM Second Loan was not sufficient to allow Seaton and Colyton to avoid defaults caused by the COVID pandemic. Because of prolonged COVID-19 related shutdowns and work-at-home orders, and, in particular, the closure of the Los Angeles Department of Building and Safety (the "LADBS") and the remote work-only status of all of its plan checkers for a protracted period, LADBS building plan approvals were severely slowed and took far longer than anticipated. This, and a stagnant leasing market, led to Seaton's and Colyton's defaults on the KDM First Loan and the KDM Second Loan in 2023.

Seaton did eventually obtain a certificate of occupancy on the remodeled structure in January 2024. As of the Petition Date, 47% of the Seaton/Colyton Buildings are leased and negotiations are in-process for leases on the remaining 53% of the Seaton/Colyton Buildings. After hitting a market low in the fourth quarter of 2023, commercial real estate has experienced a modest recovery and the Debtors expect the market to continue to strengthen over the coming months and years. As of the Petition Date, the outstanding debt owed to KDM totals $36,240,750 on account of the KDM First Loan and $2,091,840 on account of the KDM Second Loan.

/ / /

/ / /

### C. The Bankruptcy

Seaton's pre-petition efforts to lease-up the Property continued post-petition. On or around the time of the Petition Date, Broadway began exploring an opportunity to lease it's entire building to a health and mental wellness group that would provide medical and social services to the Los Angeles homeless and transient population, in-line with directives from the City to address the issues and needs of this popoulation (the "Broadway Project"). What began as a possibility quickly developed into a full-on effort to put together the people, providers, and structure needed to make the Broadway Project a reality.

Broadway introduced the team working on the Broadway Project to Seaton and the Broadway team deterined it could successfully run a project similar to the Broadway Project at the Seaton Property (the "Seaton Project").

Seaton has now assembled a team that is ready to immediately execute on the Seaton Project and have medical and social services up and running at the Property in a matter of months. To this end, Seaton has obtained a commitment from New Millennia Group to provide a $4 million DIP loan (the "DIP Loan") to Seaton to fund the Seaton Project and an executed 15-year lease from the operators and managers of the Seaton Project. With the approval of the motions for the proposed DIP loan and whole-building lease, Seaton's ability to confirm a plan of reorganization will be assured.

### D. DIP Loan Terms

As explained above, Seaton seeks post-petition financing to be used to fund the Seaton Project and for administrative costs of Seaton's bankruptcy. The DIP Loan would not prime any existing secured liens but would be secured only by grants, subsidies, and other government and NGO incentives applied for and received post-petition ("Incentives") and any assets acquired with the proceeds of the DIP Loan ("Personal Property"). New Millennia Group ("New Millennia") has agreed to fund the DIP Loan. The Debtor believes the cost of the DIP Loan is fair and reasonable. Attached as **Exhibit 1** to the Declaration of Marcus Naulin (the "Naulin Declaration"), is a true and correct copy of the loan agreement setting forth the material terms of the DIP Loan. The terms of the DIP Loan are summarized as follows:

i. Amount: $4 million principal loan;

ii. Origination fee: 6%

iii. Diligence fee: $10,000

iv. Term: 12 months

v. Interest rate: 12%

vi. Loan amortization: interest only payments

vii. Interest reserve: 4 months

viii. Security interest: (i) grants, subsidies, and other government and NGO incentives paid to Seaton; (ii) personal property acquired with proceeds of the Loan.

## II. LEGAL ARGUMENT

"Section 364(c) provides that, if the trustee (here DIP) is unable to obtain unsecured credit allowable as an administrative expense under § 503(b)(1), the court may authorize obtaining of credit or incurring of debt (1) with priority over any or all administrative expenses, (2) secured by a lien on otherwise unencumbered property of the estate, or (3) secured by a junior lien on property." *In re Tamarack Resort, LLC*, 2010 Bankr. LEXIS 3680, *34.

To obtain financing secured by a lien on property of the estate that is not otherwise subject to a lien pursuant to section 364(c)(2), the trustee must "demonstrate that it has reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b)." *See In re Ames Dept. Stores Inc.*, 115 B.R. 34, 37 (Bankr S.D.N.Y. 1990).

Courts will evaluate the facts and circumstances of a debtor's case and will accord significant weight to the necessity for obtaining financing so long as it does not run afoul of the provisions and policies underlying the Bankruptcy Code. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n. (In re Snow Shoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); *Ames*, 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not

contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

The traditional test for evaluating requests under Section 364(c) is: (1) the debtor cannot obtain unsecured administrative credit; (2) the credit is necessary to preserve the assets of the estate; and (3) the terms of the credit are fair and reasonable. *In re Crouse Group, Inc.,* 71 B.R. 544 Bankr.E.D.Pa. 1987).

### 1.  The Debtor Cannot Obtain any Other Sources Unsecured Financing and the DIP Loan Terms are Fair and Reasonable

Seaton has tried and cannot obtain unsecured administrative credit due to its current lack of equity in the Property, current lack of income, and current bankruptcy status, as set forth in the Declaration of Alan Gomperts filed concurrently herewith. Seaton cannot qualify for unsecured debt or debt with an administrative priority. New Millennia is currently the only lender Seaton has been able to locate who is willing to provide the DIP Loan. New Millennia is unique as a lender in that it understands the Seaton Project and is therefore willing to lend on the business plan presented by the Seaton Project, without taking a lien against the Property. Seaton struggled to obtain a DIP Loan that did not require priming existing liens and is quite fortunate to have secured a DIP Loan that does not seek to subordinate existing lienholders. Considering the specialized use for the DIP Loan to fund the Seaton Project, current lack of income, and bankruptcy status, Seaton believes the terms of the DIP Loan are fair and reasonable including a reasonable. Based upon the foregoing, the Court can conclude that financing is not available to the Debtor on an unsecured basis.

### 2.  The DIP Loan Is Necessary to Preserve the Assets of the Estate

As explained above, Seaton does not currently generate revenue. Its sole asset is a commercial building that has no tenants. The DIP Loan and the full-building lease (approval sought by separate motion) will allow Seaton to generate cash flow (rent) that will allow Seaton to confirm a plan that can pay secured liens in full, pay the costs of administration, and potentially provide a return for unsecured creditors. Absent the DIP Loan, the value of the Property (and hence the value of the Seaton estate) is far less than the secured lien on the Property. The Seaton Project – made

possible by the DIP Loan and Lease – will turn what could be an administratively insolvent case into a successful restructure.

### III. PROCEDURAL REQUIREMENTS

In compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Rule 4001-2 of the Local Bankruptcy Rules ("LBR"), the Debtor has completed and filed Form 4001.2 Finance Statement with the Motion.

### IV. CONCLUSION

For the reasons set forth herein, Seaton respectfully requests that the Court enter an order:

1. Granting the Motion in its entirety;
2. Authorizing the Debtor to enter into the DIP Loan with New Millennia Group;
3. Authorizing New Millennia to file UCC-1 financing statements and take such other steps as New Millennia may deem necessary to perfect a lien on Incentives and Personal Property; and
4. Granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: November 21, 2024        **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By: */s/ Derrick Talerico*
         Derrick Talerico
Counsel to Debtor Seaton Investments, LLC