Michael Gerard Fletcher (State Bar No. 070849)
  mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
  gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br>    Debtors and Debtors-in-Possession.<br><br>Affects:<br><br>☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☒ Broadway Avenue Investments, LLC<br>☐ SLA Investments, LLC<br>☐ Negev Investments, LLC<br>☐ Alan Gomperts<br>☐ Daniel Halevy<br>☐ Susan Halevy | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br><br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ<br><br>Chapter 11<br><br>**ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITION TO RENEWED MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE**<br><br>Date:    December 12, 2024<br>Time:    11:00 a.m.<br>Crtrm.:   1368<br>         255 E. Temple Street<br>         Los Angeles, CA 90012<br><br>Hon. Vincent P. Zurzolo |

# TABLE OF CONTENTS

**Page**

I.   Introduction ...................................................................................................................5

II.  Background ....................................................................................................................6

   A.   Broadway has now "deleted" certain bad actors, but its nondisclosure persists. ...............................................................................................................6

   B.   What wasn't and still isn't being disclosed by Broadway and Mr. Gomperts. ..........6

   C.   Archway is trying to uncover what Broadway is not disclosing. .............................10

III. Discussion ....................................................................................................................10

   A.   Broadway has not disclosed material facts regarding these transactions. ................10

   B.   The proposed transactions are not being made in good faith. ..................................11

   C.   The Lease is not in the best interests of the estate. ..................................................13

   D.   If approved, Broadway would be in immediate breach of the DIP Loan. ................14

   E.   Broadway has not met its burden to demonstrate adequate protection. ...................14

   F.   Service of the Lease Motion is defective. .................................................................15

   G.   Notice of the Lease Motion is also defective. ..........................................................16

   H.   Broadway failed to provide timely notice of the Renewed Lease Motion. ..............16

IV.  Conclusion ...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AWTR Liquidation Inc.*,
   548 B.R. 300 (Bankr. C.D. Cal. 2016) ........................................................................... 11

*In re Baroni*,
   643 B.R. 253 (Bankr. C.D. Cal. 2022) ........................................................................... 15

*In re Ephedra Prod. Liab. Litig.*,
   329 B.R. 1 (S.D.N.Y. 2005) ........................................................................................... 15

*In re Wilde Horse Enters., Inc.*,
   136 B.R. 830 (Bankr. C.D. Cal. 1991) ............................................................. 10, 11, 12

**State Cases**

*Berg & Berg Enterprises, LLC v. Boyle*,
   178 Cal. App. 4th 1020 (2009) ...................................................................................... 11

**Federal Statutes**

11 U.S.C. § 363(b) .......................................................................................................... 10, 11, 15

11 U.S.C. § 363(b)(1) .............................................................................................................. 10

11 U.S.C. § 363(e) .................................................................................................................... 14

11 U.S.C. § 363(p)(1) ............................................................................................................... 14

11 U.S.C. § 364 .......................................................................................................................... 6

**State Statutes**

Cal. Civ. Proc. Code § 708.320(a) ........................................................................................... 13

**Rules**

Fed. R. Bankr. P. 2002(c)(1) .................................................................................................... 15

Fed. R. Bankr. P. 4001(b)(1)(A) .............................................................................................. 15

Fed. R. Bankr. P. 6004(a) .................................................................................................. 15, 16

Fed. R. Bankr. P. 7004 ............................................................................................................. 14

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Fed. R. Bankr. P. 7004(b)(3) ................................................................................................. 15

Fed. R. Bankr. P. 7004(b) ...................................................................................................... 15

Fed. R. Bankr. P. 9014 .................................................................................................... 14, 15

Fed. R. Bankr. P. 9014(b) ...................................................................................................... 14

Local Rule 9013-1(d) ............................................................................................................ 16

Local Rule 9013-1(*l*) .............................................................................................................. 9

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  Secured creditor, Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC ("Archway"), submits this opposition ("Lease Opposition") to the *Renewed Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Enter into Post-Petition Lease* ("Renewed Lease Motion") (Dkt. 310) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

## I. Introduction

Broadway has whitewashed these lease and loan transactions, but the underlying problem remains the same. The Court denied the prior lease and loan motions after Broadway attempted to withdraw them. This occurred immediately after Archway revealed that Broadway's "team" was composed of a disbarred felon convicted of narcotics money laundering and a thief who—just a few months ago—was held in contempt for stealing assets from a federal receivership and lying to the receiver about it. Within the span of only a few weeks, Broadway has refiled these same lease and loan motions, except it has deleted the names of the bad actors. No explanation is given. No disclosure of these bad actors' current involvement or connections to the current players is given.

The silence is deafening.

Aside from this, the lease is not in the best interests of the estate. There is no lease guarantor. There are no financials for the proposed tenants or disclosure of the financial track record of the proposed tenants who operate out of a mailbox store. There is no explanation about how Broadway will fund the $240,000.00 DIP loan fee which is due on closing, much less the interest payments or seven-figure balloon payment due in one year. Rent obligations don't even start until a certificate of occupancy is obtained—a feat that has eluded Broadway for a decade.

The Court should, once again, deny these renewed motions.

## II. Background

The following background section sets forth the most relevant facts concerning these Renewed Lease and Loan Motions.

### A. Broadway has now "deleted" certain bad actors, but its nondisclosure persists.

Last week, on November 19, 2024, the Court denied the Original Lease and Loan Motions without prejudice and asked that Broadway lodge orders to that effect. *See* Tentative Rulings for 11/19/2024. Broadway has apparently yet to lodge orders to that effect.

A few days later, Broadway deleted Mr. Steve Bombola and Mr. David Schwarcz, among others, from the Lease and re-filed essentially the same original motions as "renewed" motions. A comparison of the original motions and the renewed motions reflects that essentially the two sets of motions are identical, except for the deletion of the bad actors and their entities.

But just as before, there is no disclosure as to Mr. Bombola and/or Mr. Schwarcz involvement behind the scenes. There is no disclosure as to the connections between and among Mr. Bombola and/or Mr. Schwarcz and/or Mr. Ahron Stock. There is also no disclosure of the financials of the proposed tenants, Levav Group, LLC or The DMB Fund.

The Renewed Lease Motion purports to attach Levav Group's financials, but the documents attached are not financial statements *of Levav Group*—they are other companies with no apparent connection to Levav Group.

The renewed motions also fail to set forth the material facts and circumstances surrounding the Court's denial of their prior original motions, as required by Local Rule 9013-1(*l*).

### B. What wasn't and still isn't being disclosed by Broadway and Mr. Gomperts.

Archway originally moved for relief from the automatic stay (Dkt. 213) ("Original MRAS") back on October 8, 2024. The Court denied the Original MRAS without prejudice based on Broadway's *Amended Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Enter into Post-Petition Lease* (Dkt. 248) ("Original Lease Motion") and *Amended Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. Section 364* (Dkt. 253) ("Original Loan Motion" and together with the

Original Lease Motion, the "Original Motions"), which were filed on October 28, 2024, the day before the hearing on the Original MRAS.

In the Original Motions, Broadway announced that it had "assembled a team" that was ready to execute on a project to lease the entire Broadway Property and to provide medical and social services to Los Angeles homeless and transient population. Lease Motion at 5:20–28. Per Mr. Gomperts, Broadway had developed this project "over the prior 6 months" (Lease Motion at 7:9–10) and the lease and loan would make Broadway's ability to confirm a plan of reorganization "assured." Lease Motion at 6:3–5.

Broadway and Mr. Gomperts presented its "team"—including Mr. Schwarcz and Mr. Bombola and the proposed lease with entities controlled by them—as a "huge win for Broadway." Original Lease Motion at 6:14.

As presented to the Court, Mr. Schwarcz's and Mr. Bombola's entities—DMB and Zenith respectively—were responsible for handling government grant money to be paid to the tenants and then remitted to Broadway in the form of rent under the lease. *See* Bombola Decl., Dkt. 249 at 2:9–13.

However, Mr. Gomperts did not disclose to the Court that he has done essentially no due diligence on Mr. Bombola and that—perhaps worse—he knew about Mr. Schwarcz's misdeeds before filing the Original Motions.

A quick Google search of the name "Bombola" brings up numerous lawsuits involving him and his companies, including an ongoing federal receivership where Mr. Bombola was just recently held in contempt for stealing receivership assets and proceeds though his shell company and lying to the receiver about it. *See* Warrington Decl. Exh. 11. This scheme by Mr. Bombola began by his applying for government grant money to purportedly help Oklahoma's "poorest counties." Warrington Decl. Exh. 1. It ended up in two bankruptcy cases, a federal receivership, and multiple lawsuits against Mr. Bombola. *See* Warrington Decl., GERR-061. Apparently, Mr. Gomperts was completely *unaware* of Mr. Bombola's misdeeds or of the fact that he had numerous creditors pursuing him at the time. Warrington Decl. ¶¶ 22–26. All of this information, however, was readily available on the internet. *See, generally*, Warrington Decl.

The same goes for Mr. David Schwarcz. A quick Google search for Mr. Schwarcz reveals that he was a California lawyer, but that he was disbarred in 2021. Further inquiry reveals that he was disbarred because of his felony conviction in connection with money laundering connected to narcotics.

Mr. Bombola and Mr. Schwarcz are—or at lease were—intimately connected to these lease and loan transactions and to each other. Although Mr. Schwarcz "removed" himself as CEO of DMB on November 5, the day before that, he and Mr. Bombola formed Zenith Management, LLC—an entity running out of Mr. Schwarcz's home at 2350 Castle Heights Avenue, in Los Angeles, California. Zenith was the name of the proposed tenant that Broadway has now "removed" from these transactions because of their connections with Mr. Bombola.

But the connections between and among Mr. Schwarcz and his company, DMB, and Mr. Bombola, remain. The Renewed Motions provide no explanation for or disclosure about these bizarre last-minute actions including the changing of DMB's CEO, the removal of Mr. Schwarcz and Zenith, or the creation of a new Zenith entity that is being run by both Mr. Bombola together with Mr. Schwarcz. Warrington Decl. Exhs. 23, 24.

The new "front man" for DMB is Mr. Steve Gold. Again, nothing is disclosed about him or his connections to Mr. Schwarcz and Mr. Bombola. An internet search shows that Mr. Gold has longstanding connections with Mr. Schwarcz. For example, Mr. Gold is the manager of FRNY LLC, which was described by the California Court of Appeal as Mr. Schwarcz's "dummy corporation," in connection with a fraudulent scheme perpetrated by Mr. Schwarcz involving fraud in connection real property and leasing transactions. Warrington Decl., Exh. 22, 25. In fact, Mr. Gold testified on behalf of Mr. Schwarcz in connection with his disbarment proceedings. Warrington Decl., GERR-150.

Broadway has not disclosed the connections between and among Mr. Schwarcz, Mr. Bombola, Mr. Gold, and the other proposed tenant, Levav Group or its principal Mr. Stock.

Prior to filing the Original Lease and Loan Motions, Mr. Gomperts was *aware* of Mr. Schwarcz's misdeeds, but he failed to disclose those to the Court or parties in interest. Warrington Decl., ¶¶ 22–26. Mr. Schwarcz used to be the CEO of The DMB Fund—the proposed

tenant under the current Lease. But, on November 5, 2024, based on discussions with Mr. Gomperts, among others, Mr. Schwarcz removed himself as CEO of DMB. Warrington Decl., ¶ 26; Exh. 23. None of this was ever disclosed by Broadway or Mr. Gomperts to the Court.

Although almost all mentions of Mr. Bombola and his company, Zenith, have been "removed" from the motions, no disclosure of his continue involvement in these transactions, if any, has been made by Broadway or Mr. Gomperts.

The "renewed" motions still do not disclose the extent of Mr. Bombola's and/or Mr. Schwarcz's involvement, behind the scenes, in these proposed renewed lease and loan transactions.

And yet, from the beginning, Mr. Bombola was the key promoter of these lease and loan transactions. On July 10, 2024, Archway and its counsel met with Mr. Gomperts and Broadway's counsel along with Mr. Bombola in an in-person settlement meeting. Warrington Decl., ¶ 8. At that meeting, Mr. Bombola did not disclose that just the week prior he had been held in contempt of a federal receivership order because of his theft of receivership assets. Warrington Decl., ¶ 9. Later, on September 25, 2024, Mr. Bombola called Archway's counsel and stated his apparent interest in buying the Broadway Property for $5 million. Warrington Decl., ¶ 10. This was very odd to Archway, given that Mr. Bombola Archway does not own the Property, and Archway declined to entertain further inquiries.

Not much is known about Mr. Ahron Stock, the manager of Levav Group. Warrington Decl., Exh. 18. Public sources reflect that last year he was a defendant in a federal RICO lawsuit, claiming that Mr. Stock was part of a criminal enterprise whereby he and others used alter-ego identities to commit unlawful and fraudulent activities in connection with lending transactions. Warrington Decl., Exh. 20. The RICO action was apparently settled last year, but it is unknown— and not at all disclosed by Broadway—what Mr. Stock's liabilities are under that settlement or other judgments against him. The internet also shows that Mr. Stock has a civil judgment against him entered three years ago. Warrington Decl., Exh. 19.

No judgments have been disclosed by Broadway or Mr. Gomperts, and it is unclear whether Mr. Stock has other judgments against him.

Mr. Stock is also apparently connected with Mr. Schwarcz, as Mr. Stock is the manager of Tipul Group LLC, an entity that is co-owned and/or co-managed by Eli Schwarcz, who is, upon information and belief, a close relative of Mr. Schwarcz. *See* Warrington Decl., Exh. 21 at GERR-223.

### C. Archway is trying to uncover what Broadway is not disclosing.

In an effort to uncover the truth about these transactions, Archway has served renewed discovery on Broadway, the proposed tenants, Levav Group and DMB, as well as others, including and the new proposed DIP lender, New Millennia Group.

## III. Discussion

The following sections analyze and discuss the applicable legal standards and issues raised by the motion.

### A. Broadway has not disclosed material facts regarding these transactions.

A debtor-in-possession, after notice and a hearing, may lease property of the estate outside the ordinary course of business under certain circumstances and if certain requirements are met. *See* 11 U.S.C. § 363(b)(1). Although § 363(b) entails a debtor-in-possession's exercise of its sound business judgment—the business judgment rule is not unfettered and it is subject to principles of good faith which include disclosure of relevant facts and circumstances surrounding the proposed transactions. *See In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) (discussing these principles in the context of a sale motion).

Here, Broadway has failed to disclose highly relevant facts and circumstances surrounding the proposed scheme involving the various bad actors and these proposed lease and loan transactions. The Court denied Broadway's prior lease and loan motions after Broadway attempted to withdraw or dismiss those voluntarily. This was all after Archway presented evidence demonstrating that the proposed tenants were connected to nefarious individuals who included Mr. Schwarcz, a disbarred felon convicted in a narcotics money laundering conspiracy a few years ago, and Mr. Bombola, a thief who pilfered assts just a few months ago from a federal receivership and lied to the receiver about it.

It has now become known that Mr. Gomperts knew about Mr. Schwarcz's problematic past and misdeeds even before Broadway filed he prior lease and DIP loan motions. In fact, Mr. Gomperts tried to conceal Mr. Schwarcz's connections to DMB by conspiring with him to have his name removed as CEO of DMB. This occurred on the morning of November 5, 2024—before Archway even filed its oppositions which provided evidence of Mr. Schwarcz's misdeeds. The day before, Mr. Bombola and Mr. Schwarcz formed Zenith Management, LLC, the name of the proposed tenant that Broadway removed. The connections between and among Mr. Bombola, Mr. Schwarcz, and Mr. Stock are not being disclosed.

Now, Broadway is doubling down on its own coverup. It is apparently telling the Court that DMB is now run by Mr. Gold, not Mr. Schwarcz. No explanation for this last-minute switch is given. Broadway has provided no disclosure of whether Mr. Schwarcz is still involved in this transactions or what Mr. Gold's new involvement is. There is no disclosure about Mr. Gold's connections to Mr. Schwarcz or Mr. Stock's connections to Mr. Schwarcz.

The coverup has not been explained by Broadway, but it should be—this is the sole asset of Broadway's estate. Broadway is proposing the bind this estate in a 15-year lease of substantially all of the assets of this Broadway estate with parties who have no track record, no financials, and no evidence of financial wherewithal—and who *still* are connected to nefarious actors. Broadway should disclose who—exactly—are these various proposed tenants.

Given the damning evidence against Mr. Schwarcz and Mr. Bombola and given Mr. Gomperts complete failure of his fiduciary duties of disclosure to this estate to and compounded by his duping the Court and everyone else and then covering it up, Broadway should be required to disclose much more than what it has.

Archway served discovery to attempt to uncover more about what is going on; however, the proposed tenants have been evading service. *See* Warrington Decl., Exh. 20–21. This does not have any of the hallmarks of a good faith lease and loan transaction.

**B.    The proposed transactions are not being made in good faith.**

"[T]he court and the creditors can only make an 'articulated business' judgment regarding the prudence of the sale where there has been a full disclosure of the details of the proposed sale

by its proponent.…The essential purpose served by disclosure is to ensure that parties in interest are not left entirely at the mercy of the debtor and others having special influence over debtor." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (discussing disclosure requirements in connection with § 363(b) sale). Self-dealing is an exception to the business judgment rule. *See In re AWTR Liquidation Inc.*, 548 B.R. 300, 318, 324 (Bankr. C.D. Cal. 2016) (providing that the business judgment rule is subject to scrutiny for possible self-dealing) (citations omitted).

Here, Broadway is not proceeding in good faith. The manager of this debtor in possession is, Mr. Gomperts. He has a major conflict of interests. Mr. Gomperts owes fiduciary duties, as manager of the debtor in possession, to the estate. He and Broadway's other members also have duties under Broadway's operating agreement to fund these capital improvements to the Broadway Property. Moreover, Mr. Gomperts owes fiduciary duties to creditors to avoid unduly risking insolvent Broadway's corporate assets. *See Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1041 (2009).

By presenting, now on multiple occasions, a lease connected with nefarious bad actors, while not disclosing anything, he is breaching his fiduciary duties. We now know that—even *before* he filed his prior lease motion—he knew about Mr. Schwarcz's recent conviction in relation to a criminal money laundering conspiracy re narcotics—i.e., cocaine. In fact, he hatched a plan with Mr. Schwarcz to take him off the public corporate records connected to DMB—a coverup that occurred before Archway filed its opposition to the prior lease and loan motions. On top of this, Mr. Gomperts apparently did *no* due diligence on Mr. Bombola prior to filing the previous lease and loan motions, so he had no clue about Mr. Bombola's recent misdeeds, including his theft earlier this year from a federal receivership and his contempt for doing that and lying to the receiver about it. Mr. Schwarcz and Bombola's entities were—and are currently—the ones entrusted with handling government grant proceeds to be paid to Broadway.

None of this was disclosed in this renewed motion, which violates Local Rule 9013-1(*l*), but it also fails to disclose material information necessary for the Court, the United States Trustee, and parties in interest to vet these proposed transactions.

The Court should deny.

### C. The Lease is not in the best interests of the estate.

"In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e. it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (citation omitted).

Here, the Lease is not in the best interests of the estate. There is no lease guarantor. There are no financials for the proposed tenants who operate out of a mailbox store. (The financials attached to the renewed motion are not those of Levav Group.) There is no disclosure of the financial wherewithal or track record of the proposed tenants. There is no explanation about how Broadway will fund the $240,000.00 DIP loan fee which is due on closing (Loan Agreement Dkt. 307-1 at 6), much less the debt service payments or seven-figure balloon payment which is due in one year (Loan Agreement Dkt. 307-1 at 7 and 36). Rent payments do not commence until Broadway obtains a certificate of occupancy (Lease § 4.03.)—a feat which has eluded Broadway for almost a decade. No evidence is provided to show the likelihood of any of Broadway obtaining a certificate of occupancy, much less any benefit being realized by Broadway's estate as a result of this proposed lease. Instead, the lease and loan, if approved, would result in Broadway immediately being in default and incurring damages including attorney's fees against the estate.

Moreover, even if Broadway did obtain a certificate of occupancy and the proposed tenants were solvent and able to fund rent, such payments would be in danger of being intercepted by judgment creditors of the tenants' principals. This creates real problems for Broadway's estate if the lease is approved. For example, Levav's principal, Mr. Stock, has at least one judgment against him and may have others. Under California's Enforcement of Judgments Law, any such judgment creditors may seek a charging order against the membership interests in the proposed tenants. Such a charging order would create a permanent lien on such membership interests. *See* Cal. Civ. Proc. Code § 708.320(a). Any such lien would interfere with the proposed tenants'

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

obligations under the Renewed Lease, including its/their obligations to handle operational revenues and to pay rent to Broadway.

The Court should deny because the Lease is not in the best interests of the estate.

### D. If approved, Broadway would be in immediate breach of the DIP Loan.

Broadway represents in the DIP Loan Agreement that no right of first refusal exists in favor of any tenant under the Lease. *See* DIP Loan Agreement at § 3.1(u) (providing that Broadway represents that "No tenant…. has an option, right of first offer, or right of first refusal, to purchase any Property, any portion thereof or any interest therein.").

This representation by Mr. Gomperts on behalf of Broadway is false. *See* Lease at Art. XIX Dkt. 310 at 42 (reflecting the proposed tenants' right of first refusal).

The same goes for Mr. Gomperts's representation on behalf of Broadway that Broadway is the free and clear owner of all personal property that "is used in, and is reasonably necessary to, the operation of the Property." DIP Loan Agreement at § 3.1(z). This is false. Archway has a perfected lien on all rents generated by the Property. *See* Broadway Deed of Trust and AOR.

If the Lease is approved, Broadway will immediately be in breach, entitling the DIP Lender to sue Broadway and tack on attorney's fees. *See* DIP Loan Agreement at § 5.1(d) (providing that a false representation constitutes an "Event of Default" triggering remedies like acceleration, default interest, late charges, attorney's fees and costs).

The Court should not approve the Lease.

### E. Broadway has not met its burden to demonstrate adequate protection.

The court "shall prohibit or condition such … lease as is necessary to provide adequate protection of [an entity that has an interest in property proposed to be leased]." 11 U.S.C. § 363(e). The debtor-in-possession has the burden to prove adequate protection. 11 U.S.C. § 363(p)(1).

Broadway cannot meet its burden to demonstrate that Archway is adequately protected. Archway has requested and continues to request adequate protection of its interests.

The Property is single-asset-real-estate, well over **250 days** have elapsed since the petition date, and Archway is significantly undersecured on the Broadway Property. Broadway assumes that Archway has no protectable interests, but this is incorrect.

Archway holds prepetition perfected liens on the Property, rents, and all personal property rights Broadway as evidenced by its recorded Deed of Trust, Assignment of Rents, Security Agreement, and filed UCC-1 financing statement. Accordingly, Broadway is required to demonstrate—with admissible *evidence*—that Archway's perfected interests are adequately protected by a defective lease to questionable individuals and entities who lack any financial resources to fund even the most basic requirements under the lease. Moreover, the Lease Motion effectively seeks permission to use Archway's cash collateral, although not denominating the request as a cash collateral motion.

### F. Service of the Renewed Lease Motion is defective.

Contested matters are governed by Rule 9014, which requires the same manner of service as a summons and complaint under Rule 7004. Fed. R. Bankr. P. 9014(b). A contested matter arises as soon as opposition is "known or reasonably foreseeable." *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) (citing Fed. R. Bankr. P. 9014 advisory committee note). *See also* Fed. R. Bankr. P. 9014 advisory committee note ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter…. Even when an objection is not formally required, there may be a dispute."). A formal written objection is not required to create a contested matter. *See In re Baroni*, 643 B.R. 253, 299 (Bankr. C.D. Cal. 2022).

Here, Broadway did not serve the Lease Motion properly. The Lease Motion is a contested matter. Broadway knew or reasonably should have anticipated at the time it filed the Lease Motion that Archway opposed the relief sought. The Lease Motion also seeks relief that, if granted, would entail the authorization for use of Archway's cash collateral and proceeds thereof, which is an independent reason why the motion a contested matter. *See* Fed. R. Bankr. P. 4001(b)(1)(A).

Broadway was required to serve the Lease motion in the same manner as a summons and complaint, but it did not do so. Rule 7004(b) requires service on a domestic corporation by first class mail postage prepaid "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process…." Fed. R. Bankr. P. 7004(b)(3). But here, Broadway did not provide such service to several domestic corporate

creditors, including: Alta Fire Pro, California Refrigeration & Supply, Commune Events, Inc., RG Fire Inc, Sienna Rose Inc, and Southern California Edison. Broadway also failed to serve the Lease Motion on any of the proposed tenants or even the DIP Lender. These are all necessary parties, entitled to service in the same manner as a summons and complaint.

Because service is defective, the Court should deny.

### G. Notice of the Renewed Lease Motion is also defective.

A notice of lease other than in the ordinary course of business under § 363(b) must, among other things, "include … *the terms and conditions of any private sale* …." Fed. R. Bankr. P. 2002(c)(1) (emphasis added); *see also* Fed. R. Bankr. P. 6004(a).

Here, the Lease contains a continuing right of first refusal ("ROFR") in favor of the proposed tenants, DMB and Levav. *See* Lease at Art. XIX Dkt. 310 at 42. The ROFR prohibits Broadway from selling the Property without permitting the proposed tenants to invoke the ROFR and acquire the Property as part of a private sale pursuant to the ROFR. *See id.* But the terms of the ROFR are not disclosed in the Lease Motion Notice.

Accordingly, notice is defective.

### H. Broadway failed to provide timely notice of the Renewed Lease Motion.

Local Rule 9013-1(d) provides that a motion on regular notice "The must be filed and served not later than 21 days before the hearing date designated in the notice…."

Here, Broadway filed and served the Renewed Lease Motion on November 22, 2024, which provides only 20 days' notice, not 21 days' notice as required by Local Rule 9013-1(d).

## IV. Conclusion

For the reasons set forth above, the Court should deny the Renewed Lease Motion.

DATED: November 27, 2024            FRANDZEL ROBINS BLOOM & CSATO, L.C.

By:    /s/ Gerrick M. Warrington
     GERRICK M. WARRINGTON
     Attorneys for Secured Creditor
     ARCHWAY BROADWAY LOAN SPE, LLC

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

A true and correct copy of the foregoing document entitled (*specify*):

**ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITION TO RENEWED MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE**

**OMNIBUS DECLARATION OF BOBBY KHORSHIDI IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO: RENEWED MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**OMNIBUS DECLARATION OF GERRICK M. WARRINGTON IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO: RENEWED MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; and**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO: MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364.**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>November 27, 2024</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Counsel to Party in Interest: Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- Counsel to Party in Interest: Jacquelyn H Choi    jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com
- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com, easter.santamaria@saul.com
- Counsel to Party in Interest: Robert F Conte    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Counsel to Individual Debtors: Ryan Coy    ryan.coy@saul.com, hannah.richmond@saul.com
- Counsel to Party in Interest: Christopher Cramer    secured@becket-lee.com
- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email
- Counsel to Archway: Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com
- Counsel to Party in Interest: Todd S. Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Counsel to Party in Interest: Richard Girgado    rgirgado@counsel.lacounty.gov
- Counsel to Party in Interest: Jacqueline L James    jjames@hrhlaw.com
- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Counsel to Party in Interest: Avi Edward Muhtar    amuhtar@crownandstonelaw.com
- Counsel to Archway: Bruce D Poltrock    bpoltrock@frandzel.com, achase@frandzel.com
- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com
- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com

---

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Counsel to Archway: Gerrick Warrington    gwarrington@frandzel.com, achase@frandzel.com
- Counsel to Party in Interest: Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 27, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Overnight Delivery, Early Morning:**

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1360
255 E. Temple Street
Los Angeles, CA 90012-3332

**Email:**

**Counsel to Corporate Debtors:**
Derrick Talerico    dtalerico@wztslaw.com

**Counsel to Individual Debtors:**
Zev Shechtman    Zev.Shechtman@saul.com
Turner Falk    turner.falk@saul.com
Ryan Coy    ryan.coy@saul.com

**United States Trustee:**
Kelly L Morrison
Office of the US Trustee
915 Wilshire Blvd., Ste. 1850
Los Angeles, CA 90017
Email: kelly.l.morrison@usdoj.gov

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 27, 2024 | Annette Chase | /s/ Annette Chase |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |