1  Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
2  Gerrick M. Warrington (State Bar No. 294890)
gwarrington@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
4  Los Angeles, California 90017-2427
Telephone: (323) 852-1000
5  Facsimile: (323) 651-2577

6  Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                **LOS ANGELES DIVISION**

11

12  In re                                    Lead Case No. 2:24-bk-12079-VZ

13  SEATON INVESTMENTS, LLC, *et al.*,       Jointly Administered with Case Nos.:

14          Debtors and Debtors-in-          2:24-bk-12080-VZ; 2:24-bk-12081-VZ;
            Possession.                      2:24-bk-12082-VZ; 2:24-bk-12091-VZ;
15                                           2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and
                                             2:24-bk-12076-VZ
16
    Affects:
17                                           Chapter 11

18  ☐ All Debtors                            **DECLARATION OF BOBBY**
    ☐ Seaton Investments, LLC               **KHORSHIDI IN SUPPORT OF**
    ☐ Colyton Investments, LLC              **ARCHWAY BROADWAY LOAN SPE,**
19  ☐ Broadway Avenue Investments, LLC       **LLC'S MOTION FOR RELIEF FROM**
    ☐ SLA Investments, LLC                  **STAY TO PROCEED IN A NON-**
20  ☐ Negev Investments, LLC                **BANKRUPTCY FORUM**
    ☐ Alan Gomperts
21  ☒ Daniel Halevy                         Date:     January 7, 2024
    ☒ Susan Halevy                          Time:     10:30 a.m.
22                                           Crtrm.:   1368
                                                       255 E. Temple Street
23                                                     Los Angeles, CA 90012

24                                           Hon. Vincent P. Zurzolo

25

26

27

28

I, Bobby Khorshidi, declare:

1.    I am a director of Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC, a Delaware limited liability company, who is a manager of secured creditor, Archway Broadway Loan SPE, LLC, a Delaware limited liability company ("Archway").

2.    If called as a witness, I could and would competently testify to all facts within my personal knowledge, except where stated upon information and belief.

3.    This declaration is submitted in support of Archway's Oppositions to the *Motion for Relief from the Automatic Stay to Proceed in a Non-Bankruptcy Forum* ("Motion") (Dkt. pending) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

**The Broadway Loan**

4.    On July 21, 2021, Archway made a business loan to Broadway, an entity managed and 1/3 owned by Mr. Gomperts, in the principal amount of $16,942,500.00 ("Broadway Loan"). The Broadway Loan is evidenced, in part, by a Promissory Note ("Broadway Note") whereby Broadway promised, among other things, to pay Archway the principal amount of $16,942,500.00, plus interest, costs, fees, and other charges as set forth therein, as well as a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Deed of Trust"). Pursuant to the Deed of Trust, Broadway granted Archway a first-position lien on the property as described therein, which includes that certain real property located at 737 South Broadway, Los Angeles, CA 90014 ("Property"). Archway caused the Deed of Trust to be recorded in the Los Angeles County Recorder's Office on July 26, 2021, which recording was assigned document number 20211142009. Broadway also executed and delivered an Assignment of Rents and Leases

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

("AOR") dated July 23, 2021, which Archway caused to be recorded in the Los Angeles County Recorder's Office on July 26, 2021, which recording was assigned document number 20211142010. Archway perfected its interests in such personal property collateral and proceeds by filing UCC-1 financing statement on July 29, 2021, with the California Secretary of State, which filing was assigned filing number U210071454128.

5. In connection with the Broadway Loan, Mr. Gomperts, Mr. Halevy, and the Decedent entered into an omnibus, unlimited and continuing guaranty ("Broadway Guaranty") of, among other things, Broadway's obligations to Archway under the Broadway Loan Documents.

6. True and correct copies of the Broadway Note, with allonge, and Broadway Guaranty are attached as **Exhibits 1–2**, respectively.

**Broadway and the Guarantors Default Under the Broadway Loan.**

7. Later, Broadway and the Broadway Loan guarantors defaulted under the terms of the Broadway Loan Documents, including, without limitation, failing to obtain a certificate of occupancy by January 21, 2022, for the Property, as required by Section 5.1(o) of the Broadway Loan Agreement, and by failing to pay the Broadway Loan obligation in full as of the scheduled maturity date, August 1, 2022 (collectively, "Existing Defaults").

**The Parties Restructure the Broadway Loan.**

8. In connection with the Existing Defaults, and at Broadway's request, Broadway, the Broadway Loan guarantors, which include the Decedent, and Archway entered into that certain Settlement and Loan Modification Agreement on April 19, 2023 ("Settlement Agreement").

9. A true and correct copy of the Settlement Agreement is attached as **Exhibit 3**.

10. Among other things, the Settlement Agreement extended the maturity date of the Broadway Loan to December 1, 2023, at which time the entire principal under the Broadway Loan plus all accrued and unpaid interest and other amounts would be due and payable as provided under the Settlement Agreement. The Existing Defaults otherwise remained uncured.

**Archway Makes Three New Loans as part of the Restructure.**

11. As part of the restructure, Archway made three additional loans—(1) a loan in the principal amount of $1,300,000.00 to Negev ("Negev Loan"), (2) a loan in the principal amount of

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

$125,000.00 to SLA (guarantied by Mr. Gomperts, Ms. Halevy, and Mr. Halevy, among others) ("SLA Loan"), and (3) a loan in the principal amount of $2,575,000.00 to Ms. Halevy's and Decedent's self-settled inter-vivos revocable trust, the Halevy Family Trust, dated September 8, 2010 ("Halevy Trust"), Mr. Gomperts's self-settled inter-vivos revocable trust, the Gomperts and Halevy Family Trust ("G&H Trust"), and to Mr. Halevy ("Guarantor Loan" and collectively with the Negev and SLA Loans, the "New Loans").

12.    Each of the New Loans are evidenced by loan documents and collateral pledges. Such collateral pledges cross-collateralize the Broadway Loan as, among other thigs, third-party accommodation pledges in support of the Broadway Loan as well as each of the other New Loans.

**Mr. David Halevy dies.**

13.    On June 3, 2023, non-debtor decedent, Mr. David Halevy ("Decedent"), died. A true and correct copy of the Affidavit of Death is attached as **Exhibit 4**.

14.    At the time of his death, the Decedent was the record owner, as co-trustee of the Halevy Trust, of the real property located at 341 S. Canon Drive, in Beverly Hills, CA 90212 ("Canon Drive Property").

**Cannon LLC is Revived**

15.    On September 5, 2023, Ms. Halevy caused a Statement of Information to be filed with the California Secretary of State on behalf of Cannon LLC, a true and correct copy of which is attached as **Exhibit 5**.

**Ms. Halevy Transfers the Canon Drive Property to Cannon LLC then Hypothecates It.**

16.    On September 26, 2023, Ms. Halevy as Trustee of the Halevy Trust caused to be recorded a Grant Deed transferring the Canon Drive Property from Decedent's Trust to Defendant Cannon Drive LLC ("Canon Grant Deed"), a true and correct copy of which is attached as **Exhibit 6**. That same day, a $1.3 million deed of trust was recorded against the Canon Drive Property, a true and correct copy of which is attached as **Exhibit 7**.

17.    It is unknown where the proceeds of this $1.3 million loan went.

**The Archway Loan Obligations Mature.**

18.     On December 1, 2023, the Broadway Loan, as well as the three other New Loans described in the Settlement Agreement, matured without being paid in full, which constituted, among other things, a maturity default under the applicable Broadway Loan Documents.

**The Probate Action is commenced.**

19.     On February 21, 2024, Mr. Halevy commenced a probate action on behalf of Decedent and Decedent's Estate in Los Angeles Superior Court as case number 24STPB01963 ("Probate Action").

**Mr. Halevy is the personal representative of Decedent's Estate.**

20.     Mr. Halevy is the Personal Representative of Decedent's Estate pursuant to the Letters of Administration issued February 20, 2024, in the Decedent's Estate Proceeding.

**The Debtors file bankruptcy.**

21.     On March 18 and 19, 2024, the Individual and Corporate Debtors filed voluntary chapter 11 bankruptcy petitions, commencing in the instant bankruptcy cases, which are now jointly-administered under the lead case of Seaton Investments, LLC ("Bankruptcy Case").

**Archway files its Creditor's Claim in the Probate Action.**

22.     On May 30, 2024, Archway filed its creditor's claim ("Creditor's Claim") in an amount not less than $18,327141.08 in the Probate Action and served it on, among others, Mr. Halevy. A true and correct copy of the Creditor's Claim, without exhibits, is attached as **Exhibit 8**.

23.     Archway then served its Creditor's Claim in Mr. Halevy as personal representative of the Decedent's estate. A true and correct copy of the proof of service is attached as **Exhibit 9**.

**Archway files the Complaint, thereby deeming the claim rejected.**

24.     On October 14, 2024, Archway filed its adversary complaint ("Adversary Complaint") (2:24-ap-01241-VZ Adv. Dkt. 1) against Ms. Halevy, individually and in her capacity as Trustee of the Halevy Trust; Cannon LLC; Mr. Halevy, in his capacity as Personal Representative of the Decedent's Estate, and not in his individual capacity (collectively, the "Defendants").

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

25.     The Complaint was filed in the lead Bankruptcy Case, commencing adversary proceeding number 2:24-ap-01241-VZ.

26.     Archway subsequently served the Complaint on, among others, Defendants.

**Defendants move to dismiss the Complaint.**

27.     On November 14, 2024, Defendants, through their proposed counsel, filed a Motion to Dismiss the Complaint ("Motion to Dismiss") (2:24-ap-01241-VZ Adv. Dkt. 9), seeking to dismiss the Complaint in its entirety without leave to amend.

28.     Archway opposed (Adv. Dkt. 12), and the Defendants filed a reply (Adv. Dkt. 13).

29.     In the briefing on the Motion to Dismiss, the Defendants took the position that the automatic stay does not apply to Archway's commencing an action on its Creditor's Claim in a non-bankruptcy forum. *See* Reply Adv. Dkt. 13 at § II.A.3. The Defendants also contended that if the stay applied, "Plaintiff apparently violated the automatic stay by filing its Creditor's Claim in the first place without appropriate relief." Reply at 6:28–7:2.

**The Court abstains.**

30.     On December 12, 2024, the Court entered its order abstaining under 28 U.S.C. § 1334(c)(1) permissive abstention. At the December 5, 2024, hearing on the Defendants' motion to dismiss, the Court made findings that (a) "Nearly all the issues raised in this complaint turn…on state law" (Transcript of Motion to Dismiss Hearing at 9:11–14, Adv. Dkt. 18 at 22 of 26 "Transcript"); (b) there is a pending action in the form of the Probate Action (Transcript at 9:15–16); (c) there are jury trial rights (Transcript at 9:17–19); (d) the claims arise from actions taken by Mr. and/or Ms. Halevy on behalf of non-debtor entities (Transcript at 9:20–22); and (e) the determination would have minimal impact on the bankruptcy estate (Transcript at 9:23–25).

31.     The Court then concluded that it was appropriate, given these findings, for the court to abstain. A true and correct copy of the transcript of the hearing is attached as **Exhibit 10**.

**Custodian of Records**

32.     I am one of the custodians of the books, records, and files of Archway as to those books, records, and files that pertain to loans and extensions of credit given to the Debtors as set forth in this Declaration and in these jointly-administered bankruptcy cases.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

33.     I have personally worked on such books, records, and files, and as to the facts set forth in this Declaration, I know such facts to be true of my own knowledge or I have gained knowledge of them from the business records of Archway on behalf of Archway, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Archway's business at or near the time of the acts, conditions, or events to which they relate.

34.     Any such document was prepared in the ordinary course of business of Archway by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such acts, conditions, or events.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on this ___ day of December, 2024, at Los Angeles, California.

_____

Bobby Khorshidi

DECLARATION OF BOBBY KHORSHIDI

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1

# PROMISSORY NOTE

$16,942,500.00                                                           As of July 21, 2021

FOR VALUE RECEIVED, **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("*Borrower*"), promises and agrees to pay to the order of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,** a Delaware limited liability company ("*Lender*"), in lawful money of the United States of America, the principal sum of Sixteen Million Nine Hundred Forty-Two Thousand Five Hundred and No/100  Dollars ($16,942,500.00) (the "*Loan*"), or so much thereof as may be advanced and outstanding under the Loan Agreement of even date herewith between Borrower and Lender (the "*Loan Agreement*"), with interest on the unpaid principal sum owing thereunder at the rate or rates or in the amounts computed in accordance with the Loan Agreement, together with all other amounts due Lender under the Loan Agreement, all payable in the manner and at the time or times provided in the Loan Agreement. Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Loan Agreement.

If not sooner due and payable in accordance with the Loan Agreement, Borrower shall pay to Lender all amounts due and unpaid under the Loan Agreement dated as of the date hereof, or on any earlier Maturity Date as set forth in the Loan Agreement. Unless otherwise specified in writing by Lender, all payments hereunder shall be paid to Lender at its office located at 16 N. Marengo Avenue, Suite 212, Pasadena, California 91101, Attention: Chuck Ng. Lender reserves the right to require any payment on this Note, whether such payment is a regular installment, prepayment or final payment, to be by wired federal funds or other immediately available funds.

Borrower, co-makers, sureties, endorsers and guarantors, and each of them, expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER, except as otherwise provided in the Loan Agreement or other Loan Documents; such parties are and shall be jointly, severally, directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder or in connection with any right, lien, interest or property at any and all times had or existing as security for any amount called for hereunder.

This Promissory Note ("*Note*") evidences a portion of the advances made, interest due and all amounts otherwise owed to Lender under the Loan Agreement. This Note is executed in conjunction with the Loan Agreement and is secured by the liens and security interests created under the Loan Documents (including those arising under the Security Instrument). Reference is made to the Loan Agreement for provisions relating to repayment of the indebtedness evidenced by this Note, including mandatory repayment, acceleration following default, late charges, default rate of interest, limitations on interest, and restrictions on prepayment.

Lender reserves the right, at Lender's sole expense, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this Note or this debt or the debt evidenced hereby.

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents.  Neither this Note, the Loan Agreement nor any of the other Loan Documents shall be

construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this Note and the other Loan Documents.  If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Loan, or on acceleration of the maturity of the Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation.  Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Loan without the payment of the Prepayment Premium (or, if the Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Loan.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Loan.

**WAIVER OF TRIAL BY JURY.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, EACH OF BORROWER AND LENDER (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

**THIS WRITTEN NOTE ALONG WITH THE LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

This Note shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

EXECUTED as of the date first written above.

**BORROWER:**

**BROADWAY AVENUE INVESTMENTS LLC,**
a California limited liability company

By: _____
Name: Alan Gomperts
Title: Manager

## ALLONGE

FOR VALUE RECEIVED, the undersigned, **ARCHWAY REAL ESTATE INCOME FUND I REIT, LLC fka ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, a Delaware limited liability company ("***Archway***"), the original payee under that certain Promissory Note, dated as of July 21, 2021, in the original principal amount of $16,942,500.00, made by **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("***Borrower***"), and payable to the order of Archway (the "***Note***"), to which this endorsement is affixed, absolutely assigns, transfers, endorses, negotiates, and sets over to and makes payable to the order of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company ("("***Archway Broadway***"), its successors and assigns, the Note, without recourse, representation or warranty of any kind, except as and to the extent set forth in the Assignment of Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing from Archway to Archway Broadway, dated on or about the hereof.  This assignment includes the Note, all interest, principal, and other sums due or to become due under the Note, and all other rights of any nature accrued or to accrue under the Note.

Dated:  September 30, 2024

**ARCHWAY REAL ESTATE INCOME FUND I REIT, LLC**, **formerly known as ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,**
a Delaware limited liability company

By: _____
Name: Bobby Khorshidi, a.k.a. Babak Khorshidi
Title: Authorized Officer and Agent

# EXHIBIT 2

## CONTINUING GUARANTY

**ALAN GOMPERTS**, an individual, **DANIEL HALEVY**, an individual, and **DAVID HALEVY**, an individual ("*Guarantor*"), executed this Continuing Guaranty (this "*Guaranty*") on July __, 2021 (the "*Effective Date*") in favor of **ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC**, a Delaware limited liability company ("*Lender*").

BACKGROUND RECITALS

A.        Lender and **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("*Borrower*") have entered into the Loan Agreement (the "*Loan Agreement*"), dated as of the date hereof governing (among other things) the Loan in the amount of $16,942,500.00 (the "*Loan*").

B.        The Loan is secured in part by that certain deed of trust lien given by the Borrower to the Lender (the "*Security Instrument*"), and more particularly described in the Loan Agreement. The Security Instrument encumbers Borrower's interest in and to the "Property" described in the Security Instrument (the "*Property*").

C.        Lender would not have entered into the Loan Agreement or made the Loan to Borrower without Guarantor making and delivering this Guaranty.

Therefore, Guarantor (1) acknowledges the receipt and sufficiency of good and adequate consideration for making this Guaranty, and (2) agrees as follows:

1.        Definitions.  Capitalized terms not otherwise defined in this Guaranty will have the meanings set forth in the Loan Agreement.  Within this Guaranty, words of any gender include all other genders and words in the singular number include the plural, unless the context otherwise requires.  The following terms have the following meanings:

"*Bankruptcy Event*" means any of the following events:  (i) any Borrower Party files a petition for relief under Applicable Bankruptcy Law; (ii) any party (other than Lender) files an involuntary petition for relief under Applicable Bankruptcy Law against any Borrower Party and such petition is not dismissed within 90 days after being filed; (iii) a court of competent jurisdiction enters an order for relief under any Applicable Bankruptcy Law which is related in any way to a petition filed under (i) or (ii) above; (iv) any Borrower Party, at any time, requests or consents to any composition, rearrangement, extension, reorganization or other relief of any debtor; (v) any Borrower Party (A) is generally not paying its debts as they become due, (B) is insolvent, (C) fraudulently transfers any of its assets to the detriment of any of its creditors, (D) makes an assignment for the benefit of creditors, or (E) admits in writing that it is unable to pay its debts as they become due; or (vi) a receiver, trustee or custodian is appointed for, or takes possession of, all or substantially all of a Borrower Party's assets or any of the Property, either in a proceeding a Borrower Party brings, or any other Person (except for Lender) brings against a Borrower Party, and any such appointment is not discharged or such possession is not terminated within 60 days after commencing, or the Borrower Party consents to or acquiesces in such appointment or possession (unless such consent or acquiescence is in connection with any Lender initiated proceeding).  A Bankruptcy Event may exist even if an Event of Default cannot be declared because of Applicable Bankruptcy Law.

"*Conveyance Event*" means that (1) legal or equitable title to any part of, or any interest in, the Collateral is vested in any Person other than Borrower or Lender, or (2) Borrower creates or permits any lien (except for the lien for Taxes which are not delinquent), security interest or other encumbrance against or covering the Collateral.

"*Enforcement Costs*" means all reasonable attorneys' fees, legal expenses and other costs Lender incurs to collect or enforce the Guaranteed Obligations or the Loan Documents.

1

"*Guaranteed Obligations*" means all (a) 100% of the Indebtedness and Interest, and/or (b) the operating costs of the Property, and/or (c) Enforcement Costs, and/or (d) Recourse Amounts.

"*Indebtedness*" means all obligations, liabilities and indebtedness of Borrower arising under the Loan Documents (including all Additional Costs).

"*Interest*" means all accrued and unpaid interest on the Principal Amount.

"*Loan Documents*" means the Loan Agreement, the Security Instrument, the Hazardous Materials Indemnity Agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Loan Documents.

"*Liquid Assets*" means unencumbered (a) cash on hand or on deposit (including certificates of deposit which mature in less than twelve months) in commercial banks operating in the United States, (b) readily marketable securities issued by the United States, and (c) readily marketable commercial paper rated A-1 by Standard & Poor's Corporation (or a similar rating by any similar organization that rates commercial paper).

"*Recourse Amounts*" any loss, damage, cost, expense, liability, claim or other obligation (including attorneys' fees and costs reasonably incurred), causes of action, suits, claims, demands and judgments of any nature or description whatsoever, which may be imposed upon, incurred by or awarded against Lender or any affiliate thereof as a result of, arising out of or in connection with the following:

    (a)    misapplication or misappropriation of Rents, security deposits, or other income, issues, profits and revenues derived from the Property at any time an Event of Default by Borrower exists, provided that any prepaid rent paid more than 1 month in advance as of the date of an Event of Default hereunder by Borrower shall be considered to have been collected after the event of Borrower's default;

    (b)    fraud or material misrepresentation of Borrower or Guarantor;

    (c)    (i) misapplication or misappropriation of any insurance policies by reason of damages, loss or destruction to any portion of the Property or the Improvements thereon to the full extent of such misapplied or misappropriated proceeds, or (ii) the misapplication or misappropriation of proceeds or awards resulting from the condemnation or taking in lieu of condemnation of any portion of the Property, to the full extent of such misapplied or misappropriated proceeds or awards;

    (d)    intentional physical waste of the Property or any portion thereof, and all costs, including reasonable attorney's fees, incurred by Lender to repair or remediate such intentional physical waste, to the full extent of the actual loss incurred by Lender as a result thereof;

    (e)    any taxes, assessments or insurance premiums, to the extent not covered by amounts paid into escrow by Borrower to Lender, for which Borrower is liable under the Note, the Security Instrument or any other loan document executed in connection therewith, but only to the extent that Revenue from the Property is sufficient to pay such taxes, assessments or insurance premiums;

2

(f)     failure to pay charges for labor or materials or other charges that can create liens on any portion of the Property;

(g)     loss arising under the Hazardous Materials Indemnity Agreement executed by Borrower in favor of Lender, or Borrower's breach of the hazardous substances covenants, warranties or representation provisions contained in the Security Instrument or other loan documents executed in connection with the Note and Security Instrument, which loss is not caused by Lender after Lender takes title to the Property;

(h)     loss by fire or casualty to the extent not compensated by insurance proceeds collected by Lender;

(i)     any loss resulting from any Guarantor (or any Person comprising any Guarantor), Borrower or any Affiliate of any of the foregoing, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with the Guaranty, the Note, the Security Instrument or any other Loan Document, seeking a defense, judicial intervention or injunctive or other equitable relief of any kind, or asserting in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the Loan, but only if and to the extent that a court of competent jurisdiction determines that such claims were frivolous (i.e., without any merit) and in bad faith; and

(j)     all costs and fees, including without limitation, reasonable attorneys' fees incurred by Lender in the enforcement of subparagraphs (a) through (j) above.

Notwithstanding the foregoing, Recourse Events shall mean the full amount of the Indebtedness upon the occurrence of either of the following events (the "*Full Recourse Events*"):

(a)     a Bankruptcy Event;

(b)     Borrower fails to obtain Lender's prior consent to any subordinate financing secured by the Property; or

(c)     a Conveyance Event; or

(d)     Borrower fails to comply with the "single purpose entity/separateness" covenants set forth in Section 4.1(b) of the Loan Agreement beyond the expiration of all applicable notice cure periods. and such failure results in (or is cited as a factor by a court of competent jurisdiction) the substantive consolidation of Borrower with another Person; or

(e)     Borrower fails to comply with the cash management provisions set forth in Section 6.1 and Section 6.2 of the Loan Agreement beyond the expiration of all applicable notice cure periods.

3

"*Transfer Event*" means the conveyance of any Collateral to Lender or another Person through a foreclosure (or deed in lieu), receivership, bankruptcy or other voluntary or involuntary Borrower action.

2.    Inducement. Guarantor has an economic investment or interest in Borrower, and an interest in the success of the Property, and Guarantor will substantially benefit from Lender's agreement to make the Loan to Borrower.

3.    Guaranty. In order to induce Lender to make the Loan to Borrower, Guarantor absolutely, unconditionally and irrevocably guarantees and agrees to pay and perform the Guaranteed Obligations. Notwithstanding anything to the contrary in this Guaranty or any of the other Loan Documents, Guarantor will be liable for all of the Indebtedness and the Enforcement Costs if a Conveyance Event, or a Bankruptcy Event, occurs.

4.    Waivers.

(a)    Guarantor, with respect to the Guaranteed Obligations and the Indebtedness, waives: (i) **PRESENTMENT FOR PAYMENT**; (ii) **DEMAND**; (iii) **NOTICE OF DEMAND, DISHONOR AND NONPAYMENT**; (iv) **NOTICE OF INTENTION TO ACCELERATE**; (v) **NOTICE OF ACCELERATION**; (vi) **NOTICE OF DISPOSITION OF COLLATERAL**; (vii) **THE DEFENSE OF IMPAIRMENT OF COLLATERAL**; (viii) **THE RIGHT TO A COMMERCIALLY REASONABLE SALE OF COLLATERAL**; (ix) **PROTEST AND NOTICE OF PROTEST**; and (x) **AND DILIGENCE IN COLLECTING, AND BRINGING SUIT AGAINST ANY OTHER PARTY**.

(b)    Lender is not obligated to notify Guarantor of (i) Lender's acceptance of this Guaranty, (ii) any credit extended on the faith of this Guaranty, or (iii) Borrower's failure to pay or perform any Indebtedness which constitutes Guaranteed Obligations. Lender is not obligated to use diligence in preserving any Person's liability for the Indebtedness or the Guaranteed Obligations. Lender is not obligated to use diligence in bringing suit to enforce collection, or performance, of the Indebtedness or the Guaranteed Obligations.

(c)    Guarantor waives **ALL DEFENSES GIVEN OR REDUCTIONS IN THE GUARANTEED OBLIGATIONS AVAILABLE TO SURETIES OR GUARANTORS AT LAW OR IN EQUITY** other than the actual payment and performance of the Guaranteed Obligations, including **ALL DEFENSES BASED UPON QUESTIONS AS TO (i) THE VALIDITY, LEGALITY OR ENFORCEABILITY OF THE INDEBTEDNESS OR THE GUARANTEED OBLIGATIONS, OR (ii) THE VALUE OF ANY COLLATERAL**. Guarantor is primarily liable under this Guaranty.

(d)    At any time, Lender may, in its sole discretion, without Guarantor's prior consent, and without impairing, modifying, releasing or otherwise affecting Guarantor's liability under this Guaranty:

(i)    alter, compromise, accelerate, renew, extend, or change the time or manner for the payment of, the Indebtedness;

(ii)    increase or reduce the rate of interest on the Indebtedness;

(iii)    take, surrender, exchange, withdraw, subordinate, alter, modify or eliminate security;

(iv)    (1) add, release, discharge, or (2) settle or compromise with, any Borrower Party or other Person liable for the Indebtedness or the Guaranteed Obligations;

(v)    make any change to the Loan Documents or the manner in which Lender does business with Borrower; or

4

(vi)     apply any moneys received from Borrower or any other source, or from any security or collateral, in the manner Lender determines, without being required to marshal securities or assets or to apply any part of the moneys or security to any particular part of the Guaranteed Obligations.

Lender is not required to retain, hold, protect, exercise due care with respect thereto, perfect security interests in or otherwise assure or safeguard any security for the Indebtedness or the Guaranteed Obligations; and Guarantor's obligations under this Guaranty and any other Loan Documents will not be affected by, and Guarantor will not have any recourse from, Lender's failure (x) to do any of the foregoing with respect to any security for the Indebtedness or the Guaranteed Obligations, or (y) to exercise or not exercise any right or remedy of Lender under the Loan Documents, at law or in equity.

5.     <u>Guaranty Absolute</u>. Guarantor's liability under this Guaranty is absolute, and will not be modified, released or impaired, for any reason, including because:

(a)     any Person (including any Borrower Party) dies, or is or becomes incapacitated, disabled, dissolved or terminated;

(b)     Lender fails to file or enforce a claim against the estate (either in administration, bankruptcy or other proceeding) of any Borrower Party or another Person;

(c)     Lender cannot recover the Indebtedness from any Borrower Party or another Person for any reason, including any statute of limitations or Applicable Bankruptcy Law;

(d)     Any Borrower Party or another Person is entitled to any defense, setoff or counterclaim related to the Loan, the Indebtedness or the Guaranteed Obligations;

(e)     a Conveyance Event or a Transfer Event occurs;

(f)     Borrower Party (other than Guarantor) or another Person liable for the payment or performance of Indebtedness or the Guaranteed Obligations is released or discharged by operation of law or otherwise (other than a discharge resulting from the payment of the Indebtedness);

(g)     this Guaranty or any other Loan Document is modified, extended, amended, released or waived; or

(h)     Lender fails to give Guarantor notice of an Event of Default under any Loan Document.

6.     <u>Subordination</u>. Until the Indebtedness is repaid in full (and including all interest accruing, after any Bankruptcy Event, on the Indebtedness):

(a)     Guarantor subordinates all rights to repayment of any current or future indebtedness from Borrower to Guarantor to Lender's prior right to receive or require payment in full of the Indebtedness.

(b)     Guarantor shall not accept any payment or satisfaction of any indebtedness of Borrower to Guarantor.

(c)     Guarantor shall not accept any security for any indebtedness of Borrower to Guarantor.

(d)     If Guarantor receives any payment, satisfaction or security for any indebtedness of Borrower to Guarantor, then Guarantor shall immediately deliver the payment, satisfaction or security to Lender. Lender will apply the payment, satisfaction or security as set forth in the Loan Agreement. Guarantor will hold any payment, satisfaction or security Guarantor receives in trust for Lender until the payment, satisfaction or security is delivered to Lender.

7.     <u>Waiver of Right of Subrogation</u>. To the fullest extent permitted by Applicable Law, Guarantor waives all rights at law or in equity to seek subrogation, contribution, indemnification or any

other form of reimbursement or repayment from any Borrower Party or any other guarantor of, or any other party secondarily liable for, the payment or performance of the Indebtedness or the Guaranteed Obligations until the Indebtedness has been paid and performed in full.  When the Indebtedness has been indefeasibly paid and fully performed, Guarantor will be subrogated to the rights of Lender against Borrower and any endorsers, sureties or other guarantors to the extent of the payments that Guarantor makes on the Guaranteed Obligations.

8.     No Usury.  Lender and Guarantor intend that this Guaranty and the other Loan Documents strictly comply with applicable usury law.  Therefore, Lender and Guarantor agree that: (i) none of the terms of this Guaranty or the other Loan Documents create a contract to pay for the use, forbearance or detention of money, or interest at a rate in excess of the Maximum Rate; and (ii) no Person (including any Borrower Party) will ever be obligated or required to pay interest on the Indebtedness or any other sums due under the Loan Documents at a rate in excess of the Maximum Rate.  Lender expressly disavows any intention to charge or collect excessive unearned interest or finance charges on any portion of the Indebtedness.  If at any time the interest received for the Guaranteed Obligations exceeds the Maximum Rate, then Lender will, at its option, either refund to Guarantor the amount of the excess or credit the amount of the excess against the Guaranteed Obligations.  Guarantor agrees that the Loan and the Guaranty are not usurious and agrees that if, at any time, Guarantor believes that the Loan or the Guaranty is usurious, it shall give Lender (a) notice of the condition and (b) 60 days in which to make an appropriate refund or other adjustment, if necessary, to correct the condition.

9.     Representations and Warranties.  On the Effective Date, Guarantor represents to Lender that:

(a)     Guarantor (i) is solvent, (ii) is not bankrupt and (ii) has no outstanding liens, garnishments, bankruptcies or court actions which could cause Guarantor to become insolvent or bankrupt.  No Bankruptcy Event has occurred.

(b)     Each Guarantor financial statement previously delivered to Lender was prepared in accordance with an Approved Accounting Method or GAAP and completely, correctly and fairly presents the financial condition and the results of operations of each Guarantor on the date and for the period covered by the financial statements.  All other reports, statements and other data that any Guarantor furnished to Lender in connection with the Loan are true and correct in all material respects and do not omit any fact or circumstance necessary to ensure that the statements are not misleading.  Since the date of the last financial statements each Guarantor delivered to Lender, no event, act, condition or liability has occurred or exists, which has had, or may reasonably be expected to have, a material adverse effect upon (a) Guarantor's business, condition (financial or otherwise) or operations, or (b) Guarantor's ability to perform or satisfy, or Lender's ability to enforce, any of the Guaranteed Obligations.  For the purposes of Subsection 9(a) and 9(b), "Guarantor" includes any joint ventures, managing member or general partner of Guarantor.

(c)     There are no suits or proceedings (including condemnation) pending, or to Guarantor's knowledge threatened, against or affecting any Guarantor, another Borrower Party or the Collateral, or involving the validity, enforceability or priority of this Guaranty or any of the Loan Documents.

(d)     If Guarantor is not a natural person, then Guarantor: (i) is duly organized, validly existing, and in good standing, under the laws of the jurisdiction of its formation; (ii) is duly qualified, authorized to do business, and in good standing, in every jurisdiction (other than the jurisdiction of its formation) in which it must be qualified; and (iii) has the power and authority to own its other assets and transact its present or proposed business.

(e)     Guarantor has the requisite power and authority to execute, deliver and carry out the terms and provisions of this Guaranty, and has taken all necessary actions to authorize its execution, delivery and performance of the Guaranteed Obligations.  Guarantor has duly executed and delivered this Guaranty, and each other Loan Document to which it is a party or under which

6

it is obligated.  Each obligation under this Guaranty or any other Loan Document constitutes, Guarantor's legal, valid and binding obligation, enforceable in accordance with the Loan Document's terms, except to the extent enforcement of any Loan Document is subject to the effect of (i) Applicable Bankruptcy Law, or (ii) general principles of equity.

(f)  Guarantor's execution, delivery and performance of this Guaranty and the other Loan Documents, and compliance with the terms and provisions of this Guaranty and the other Loan Documents, will not (i) contravene any Applicable Law, (ii) conflict or be inconsistent with or result in any breach of any term, covenant, condition or provision of, or constitute a default under, the terms of any other instrument to which Guarantor is a party or by which Guarantor is bound or may be subject, or (iii) violate any term of Guarantor's certificate of formation or other documents and agreements governing Guarantor's existence, management or operation. Guarantor is not required to obtain any Person's consent to execute, deliver or perform this Guaranty or the other Loan Documents.

(g)  Guarantor is intimately familiar with Borrower, the Collateral and Borrower's business operations and financial condition.

10.  <u>Covenants</u>.  Guarantor absolutely and unconditionally covenants that:

(a)  Guarantor shall pay and perform the Guaranteed Obligations even if, for any reason, (i) Borrower does not pay or perform the Indebtedness or any other Borrower obligations under the Loan Documents, or (ii) the Indebtedness or the Guaranteed Obligations are disaffirmed or terminated (except for payment and performance in full).

(b)  Guarantor will remain liable for the Guaranteed Obligations regardless of whether Borrower is (for any reason) liable for any portion of the Indebtedness or the Guaranteed Obligations.

(c)  Guarantor will at all times remain intimately familiar with Borrower, the Collateral and Borrower's business operations and financial condition.

(d)  Guarantor will remain liable for the Guaranteed Obligations regardless of whether Borrower's organizational structure changes.

(e)  Notwithstanding any prior reduction or termination of this Guaranty, Guarantor will remain liable for, and (after Lender's demand) pay to Lender, the amount of any prior Indebtedness payment that Lender must (for any reason) pay to Borrower or any other Person.

(f)  Guarantor will not (i) benefit from, (ii) be able to direct the application of, or (iii) have any right to participate in, any Collateral.

(g)  Guarantor will remain obligated under this Guaranty for the Guaranteed Obligations even if Guarantor loses (for any reason) any right against (i) any Borrower Party or other Person, or (ii) the Collateral.

(h)  Lender is not required to pursue any remedies against any Person or the Collateral before demanding that Guarantor pay or perform the Guaranteed Obligations.

(i)  Lender may maintain an action on this Guaranty without joining any other Borrower Party or bringing a separate action against a Borrower Party.

(j)  Until all Indebtedness is indefeasibly repaid, Guarantor shall maintain (a) at least $2,000,000.00 of Liquid Assets (the "*Liquidity Requirement*"), and (b) a tangible net worth of at least $16,942,500.00 (the "*Net Worth Requirement*").  Guarantor will provide Lender with evidence (which may include a certificate), satisfactory to Lender in its discretion, establishing Guarantor's satisfaction of the Liquidity Requirement and the Net Worth Requirement within 60 days after the end of each calendar quarter.

11.    <u>Financial Statements and Reports</u>.    Guarantor shall deliver to Lender all financial statements, reports and certificates, if any, required under the Loan Agreement.

12.    <u>Multiple Guarantors</u>. If there are more than one Guarantor, then this <u>Section 12</u> is in effect. Unless the context clearly indicates otherwise, all references to "*Guarantor*" mean either or any Guarantor.

(a)    **Joint Liability**.    Lender may sue any Guarantor, jointly or individually, without impairing Lender's rights against each Guarantor under this Guaranty.  Lender may compromise with any Guarantor or any other Person for any sum Lender sees fit.  Lender may release any Guarantor or any other Person from any liability for the Indebtedness or the Guaranteed Obligations without impairing Lender's right to demand and collect the balance of the Indebtedness or the Guaranteed Obligations from any Guarantor or other Person.  No compromise or release will, except as specifically set forth in this Guaranty, impair Guarantors' rights amongst themselves.

(b)    **Disputes**.  Each Guarantor shall indemnify, defend and hold Lender harmless from and against any Claim Lender may suffer arising from any dispute between Guarantors, **INCLUDING THOSE CLAIMS ACTUALLY OR ALLEGEDLY ARISING FROM LENDER'S SOLE, COMPARATIVE OR CONTRIBUTORY NEGLIGENCE, OR STRICT LIABILITY,** unless a court of competent jurisdiction determines in a final non-appealable judgment that the Claim actual resulted from the intentional misconduct or gross negligence of Lender.

13.    <u>Revival and Reinstatement</u>.  This Guaranty remains in full force and effect during any Bankruptcy Event.  Notwithstanding the full payment and performance of the Obligations and the Guaranteed Obligations, this Guaranty will be reinstated in full force and effect immediately upon the occurrence of any Bankruptcy Event. If any prior payment or performance of the Obligations or Guaranteed Obligations is rescinded or reduced, or Lender must otherwise restore or return any prior payment or performance of the Obligations or Guaranteed Obligations, then the Guaranteed Obligations will be reinstated to the extent of the payment or performance actually rescinded, reduced, restored or returned.

14.    <u>Rights Cumulative</u>.  Lender's rights under this Guaranty, at law and in equity are cumulative.  Until the Indebtedness is paid and performed in full and this Guaranty is terminated, Lender may exercise, as many times and as often as Lender elects (in its discretion) any rights under this Guaranty, at law and in equity.  This Guaranty does not diminish or discharge Lender's rights under any prior or future guaranty by Guarantor in favor of Lender.

15.    <u>Notices</u>.  Any notice or communication required or permitted under this Guaranty must be made in writing and sent by (a) personal delivery, (b) expedited delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, addressed as follows:

To Lender:

Archway Real Estate Income Fund I SPE I, LLC
16 N. Marengo Avenue, Suite 212
Pasadena, California 91101
Attention: Chuck Ng
Phone: (310) 779-6505
Email: cng@oakhurstfunds.com

with a copy to:

Raines Feldman LLP
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 440-4100
Email: jmogin@raineslaw.com

To Guarantor:

Alan Gomperts

8

264 S. Oakhurst Drive
Beverly Hills CA 90212
Phone: (310) 621-5350
Email: alangomperts@hotmail.com

Daniel Halevy
133 S. Palm Drive
Beverly Hills CA 90212
Phone: (310) 467-4703
Email: danhalevy@gmail.com

David Halevy
257 S. Linden Drive
Beverly Hills CA 90212
Phone: (310) 666-2885
Email: danhalevy@gmail.com

with a copy to          Feldman Berman Schwartz LLP
20750 Ventura Blvd., Ste. 201
Woodland Hills, CA 91364
(818) 707-1465 ext. 3
Attention: Craig Berman
cberman@fbsllp.com

or to such other address as Lender or Guarantor may designate in writing and deliver in accordance with this Section. Any change of address will be effective on the 5th Business Day after notice is given pursuant to the terms of this Section. Any notice or communication sent in accordance with this Section will be deemed to be given (i) at the time of personal delivery, or (ii) if sent by delivery service or mail, as of the date of the first attempted delivery at the address and in the manner provided in this Section. Guarantor consents to Lender recording any telephone communications between Lender and Guarantor.

16.    Applicable Law. The Laws of the **STATE OF CALIFORNIA** (without giving effect to its principles of conflicts of law) and of the **UNITED STATES** will govern and control this Guaranty. If any provision of this Guaranty or the application thereof to any person or circumstance, for any reason and to any extent, shall be invalid or unenforceable, neither the remainder of this Guaranty nor the application of such provision to any other persons or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law.

17.    Consent to Forum. **GUARANTOR IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN LOS ANGELES COUNTY, CALIFORNIA OVER ANY PROCEEDING ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS. BORROWER AGREES THAT, IN ADDITION TO ANY METHOD OF SERVICE UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING RELATING TO THE LOAN DOCUMENTS AND FILED IN ANY STATE OR FEDERAL COURT SITTING IN LOS ANGELES COUNTY, CALIFORNIA MAY BE SENT AND GIVEN AS SET FORTH IN SECTION 15 ABOVE.**

18.    Waiver of Jury Trial. **GUARANTOR WAIVES ANY RIGHT TO A JURY TRIAL CONCERNING ANY DISPUTE ARISING FROM OR IN CONNECTION WITH THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS. GUARANTOR HAS BEEN ADVISED BY COMPETENT COUNSEL IN CONNECTION WITH THIS WAIVER.**

9

19.     Counterparts.  The Loan Documents may be executed in any number of counterparts with the same effect as if all signers executed the same instrument.  All counterparts of each Loan Document must be construed together and will constitute one instrument.

20.     Modification or Termination.  This Guaranty may only be amended, modified or terminated by a written instrument executed by Lender and Guarantor.  Guarantor agrees that it will be bound by any written amendment or modification of the Loan Documents, with or without notice to Guarantor, and Guarantor's obligations under this Guaranty and the other Loan Documents will not be impaired because of any such amendment or modification.

21.     Successors and Assigns; Unenforceability of Certain Provisions, Headings.  The terms of this Guaranty are binding on Guarantor and its heirs, devisees, representatives, successors and assigns and inure to the benefit of Lender and all of its transferees, credit participants, successors and assignees.  The headings in this Guaranty are for convenience only and will not limit or otherwise affect any of the terms of this Guaranty.  If any part of the Loan Documents is unenforceable or invalid, then that part of the Loan Documents will be removed from the Loan Documents.  All remaining portions of the Loan Documents will remain enforceable and valid.

22.     Damage Waiver.  Guarantor agrees that Lender will not be liable to Guarantor, any other Borrower Party or any other Person for any punitive, exemplary or consequential damages which may actually or allegedly arise from this Guaranty, the Loan, the other Loan Documents or the Collateral, **INCLUDING ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES ACTUALLY OR ALLEGEDLY ARISING FROM THE ORDINARY, CONTRIBUTORY, COMPARATIVE OR SOLE NEGLIGENCE, GROSS NEGLIGENCE OR STRICT LIABILITY, OF ANY BORROWER PARTY OR LENDER.**  The foregoing waiver does not limit or otherwise impair the terms of any other waiver or indemnity in the Loan Agreement.

23.     Assignment.  Lender may assign, sell or offer to assign or sell interests in the Loan or any portion of the Loan Documents (including this Guaranty) and disseminate to any purchaser, assignee or prospective purchaser or assignee any information Lender has pertaining to the Loan or this Guaranty, including credit information on Borrower Parties and any of their respective principals.  If Lender makes any assignment or sells any interest in the Loan or this Guaranty, then Guarantor shall make all modifications, at Lender's or its purchaser's or assignee's expense, to this Guaranty as will facilitate Lender's sale or assignment, provided that no modification will materially add to Guarantor's obligations under this Guaranty or the other Loan Documents.

24.     Imaging.  Except for the Note, Lender may image and destroy the executed, original Loan Documents. Except for the Note, Guarantor waives any right it has, or may have in the future, to claim that the imaged copies of the Loan Documents are not originals or the best evidence of the Loan Documents.

25.     Time.  Time is of the essence for this Guaranty and the other Loan Documents.

26.     California Provisions.  In addition to the waivers set forth elsewhere in this Guaranty:

(a)     Guarantor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Guaranty and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

(b)     Guarantor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Guarantor under the following sections of the California Civil Code:  Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of

10

the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

(c)     Guarantor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Guarantor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil Code, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

(d)     Guarantor waives any defense that Guarantor may have by reason of the failure of Lender to provide Guarantor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

(e)     Guarantor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

(f)     Guarantor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Guarantor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of guarantors or sureties thereunder.

(g)     Guarantor waives all rights and defenses that Guarantor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(i)     The creditor (Lender) may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by the debtor.

(ii)     If the creditor forecloses on any real property collateral pledged by the debtor:  (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from the debtor.

(h)     This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Guarantor has read and is familiar with the entirety of such provisions.

27.     Entire Agreement.   The Loan Documents constitute the entire understanding and agreement between Borrower, Guarantor and Lender with respect to the transactions arising in connection with the Loan and this Guaranty.  The Loan Documents supersede all prior written or oral understandings and agreements between Borrower, Guarantor and Lender with respect to the Loan and this Guaranty.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK SIGNATURE PAGE FOLLOWS]

Guarantor has executed this Guaranty to be effective on the Effective Date.

**GUARANTOR:**

_____
ALAN GOMPERTS, an individual

_____
DANIEL HALEVY, an individual

_____
DAVID HALEVY, an individual

SIGNATURE PAGE TO
CONTINUING GUARANTY

# EXHIBIT 3

### SETTLEMENT AND LOAN MODIFICATION AGREEMENT

This SETTLEMENT AND LOAN MODIFICATION AGREEMENT ("Agreement"), is dated as of April 19, 2023, by and among BROADWAY AVENUE INVESTMENTS LLC, a California limited liability company ("Borrower"), ALAN GOMPERTS ("Alan"), an individual, DANIEL HALEVY ("Daniel"), an individual, and DAVID HALEVY ("David", an individual together with Alan and Daniel, collectively and individually hereinafter referred to as "Guarantor"), on the one hand, and ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company ("Lender"), on the other hand, with respect to the following facts, matters and issues. Borrower and Guarantor together when referred to with Lender shall be collectively hereinafter referred to as the "Parties."

### RECITALS

A.      Lender has heretofore made a loan (the "Broadway Loan") to Borrower in the original maximum principal sum of Sixteen Million Nine Hundred Forty-Two Thousand Five Hundred and No/100 Dollars ($16,942,500.00) evidenced by, among other things, (i) that certain Promissory Note dated July 21, 2021 (together with any and all amendments thereto or modifications thereof, the "Note"), in the original principal face amount of $16,942,500.00, executed by Borrower to and in favor of Lender, and (ii) that certain Loan Agreement dated July 21, 2021, by and between Borrower and Lender (together with any and all amendments thereto or modifications thereof, the "Loan Agreement").

B.      As security for, among other things, the indebtedness and obligations under the Broadway Loan, Borrower, as trustor, executed and delivered to and in favor of Lender, as beneficiary, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated July 23, 2021, and recorded on July 26, 2021, as Instrument No. 20211142009 in the Official Records of Los Angeles County, California (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), encumbering, without limitation, certain real property more particularly described in **Exhibit "A"** attached hereto and incorporated herein by this reference (as more particularly described therein, the "Property").

C.      Payment and performance of Borrower's indebtedness and obligations in connection with the Broadway Loan was and is guaranteed by Guarantor pursuant to a Continuing Guaranty executed by Guarantor and dated as of July 21, 2021 (the "Continuing Guaranty").

D.      Pursuant to the Deed of Trust, Borrower granted to and in favor of Lender a first priority security interest in and lien upon certain real and personal property described in the Deed of Trust (the "Deed of Trust Collateral"), to secure, without limitation, payment and performance of the indebtedness and obligations under and in connection with the Broadway Loan and the Note.  The Deed of Trust Collateral and any other collateral securing the indebtedness and obligations under the Broadway Loan shall be collectively referred to as the "Collateral." Lender's security interest in the Collateral was and is perfected under applicable law.

E.      This Agreement, the Note, Loan Agreement, Deed of Trust, Continuing Guaranty, and all other agreements, instruments and other documents executed by Borrower or Guarantor

in connection with the Broadway Loan shall at times hereinafter be referred to collectively as the "Broadway Loan Documents." Any and all terms used but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

F.     Lender alleges that Borrower and Guarantor defaulted under the terms of the Broadway Loan Documents by, among other things, failing to obtain a certificate of occupancy for the Property by January 21, 2022 and failing to pay the Loan off in full as of August 1, 2022, the maturity date (collectively hereinafter the "defaults").

G.     On September 28, 2022, Lender filed its Verified Complaint for Breach of Guaranty against Guarantor in the Los Angeles County Superior Court entitled *Archway Real Estate Income Fund I SPE I, LLC, Plaintiff v. Alan Gomperts, et al., Defendants* Case Number 22STCV31742 (the "Litigation").

H.     On August 30, 2022, Lender caused to be commenced non-judicial foreclosure proceedings through the filing of a notice of default ("NOD") as instrument no. 20220859022 in the Official Records of Los Angeles County, California. The NOD is still pending.

I.     The Parties now desire to modify the Broadway Loan Documents, resolve and settle the Litigation, and rescind the NOD, subject to the terms and conditions set forth herein.

## AGREEMENT

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1.     Recitals. The recitals are incorporated herein by this reference as are all exhibits attached hereto. Borrower and Guarantor, and each of them, represent and warrant to Lender that the factual information recited above is true and correct. Except as specified herein, all of the terms and conditions of the Broadway Loan Documents, and each of them, shall remain in full force and effect. In the event of any conflict or inconsistency between the terms, conditions, and provisions of this Agreement and the Broadway Loan Documents, the terms, conditions, and provisions of this Agreement shall prevail.

2.     Reaffirmation. This Agreement is, in part, a reaffirmation of the obligations and indebtedness of Borrower and Guarantor to Lender as evidenced by the Broadway Loan Documents. Therefore, Borrower and Guarantor each represent, warrant, covenant, and agree, that except as specified herein, all of the terms and conditions of the Broadway Loan Documents are in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

3.     Acknowledgments.

A.     Borrower and Guarantor, and each of them, acknowledge the validity, priority and extent of the Broadway Loan Documents and acknowledge that the following sums are owed to the Lender as of April 19, 2023:

| | | |
|---|---|---|
| (1) | Principal balance in the amount of | $16,942,500.00 |
| (2) | Non-default interest in the amount of | $1,171,385.63 |
| (3) | Default interest ("Default Interest") in the amount of | $1,656,129.46 |
| (4) | Late charges ("Late Charges") in the amount of | $0.00 |
| (5) | Legal and Trustee fees and costs ("Legal/Trustee Fees') in the amount of | $65,000.00 (FRBC)<br>$30,000.00 (TC)<br>$16,489.00 (Trustee) |
| (6) | GRAND TOTAL ("Amounts Owed") | $19,881,504.09 |

In addition, interest continues to accrue at the rate of $8,471.25 per day, inclusive of default interest (the "Per Diem").

B.    Borrower and Guarantor, and each of them, acknowledge and confirm that neither Borrower nor Guarantor has any valid offset or defense to the Amounts Owed, obligations, and liability under the Broadway Loan Documents.

4.    New Loans.

A.    Concurrently with the execution of this Agreement, Lender shall make three (3) new loans in the aggregate amount of $4,000,000.00 (collectively, "New Loans"), as follows:

(1)    A loan to Negev Investments, LLC ("Negev") in the principal amount of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000.00) ("Negev Loan"), secured by the real property commonly known as 12800 Foxdale Drive, Desert Hot Springs, California ("Foxdale Property") and guaranteed by David. The guaranty shall be secured by his membership interest in Negev. The documents and instruments evidencing the Negev Loan are identified in Exhibit "B-1" attached hereto;

(2)    A loan to SLA Investments, LLC ("SLA") in the principal amount of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00) ("SLA Loan"), secured by the real property commonly known as 1040 S. Los Angeles Street, Los Angeles, California ("Los Angeles Property") and guaranteed by David, Sue Halevy ("Sue"), Alan, Sharon Gomperts a/k/a Sharon Halevy ("Sharon") and Daniel. The guaranty shall be secured by David, Sue, Alan, Sharon and Daniel's membership interest in SLA. The documents and instruments evidencing the SLA Loan are identified in Exhibit "B-2" attached hereto; and

(3)    A loan to David, David Halevy and Sue Halevy, as trustees of the Halevy Family Trust dated September 6, 2010 ("D&S Trust"), Alan, Alan Gomperts and Sharon Gomperts, as trustees of the Gomperts and Halevy Family Trust ("G&H Trust") and Daniel in the principal amount of Two Million Five Hundred Seventy-Five Thousand and No/100 Dollars

($2,575,000.00) ("Guarantor Loan"), secured by the real property commonly known as 3538 Greenfield Avenue, Los Angeles, California, owned by G&H Trust, 133 S. Palm Drive, Beverly Hills, California, owned by D&S Trust, and 8561 Horner Street, Los Angeles, California, owned by Daniel. The documents and instruments evidencing the Guarantor Loan are identified in Exhibit "B-3" attached hereto.

      B.    The proceeds of the New Loans ("New Loans Proceeds") shall be disbursed and allocated as provided in the Negev Loan, SLA Loan and Guarantor Loan, as more particularly described in Exhibit "C" attached hereto, and shall be used for the creation of an interest reserve for the New Loan, payment of past due amounts owed by Broadway to Lender under the Broadway Loan Documents, creation of an interest reserve for the Broadway Loan and to pay certain fees and costs. To the extent that the New Loans Proceeds are insufficient to make all payments or deposits required pursuant to this Agreement, the Negev Loan, SLA Loan and Guarantor Loan, or any of them, Guarantor shall be required to do so, from their own funds, concurrently with the Settlement Closing (as herein defined).

      5.    <u>Amendments to Broadway Loan</u>.

    Upon Settlement Closing:

      A.    The Maturity Date under the Broadway Loan shall be extended to December 1, 2023, at which time the entire principal balance under the Broadway Loan plus all accrued and unpaid interest thereon shall be due and payable as provided under the Broadway Loan Documents. From and after the Settlement Closing, any and all references in the Note, Loan Agreement, and the other Broadway Loan Documents to a maturity date of "August 1, 2022" shall be replaced with "December 1, 2023."

      B.    The obligations of Borrower to obtain the Certificate of Occupancy on the Property no later than January 21, 2022 pursuant to Section 5.1(a) of the Loan Agreement is hereby amended to be required as soon as is reasonably practicable in the best efforts of Borrower, but in any event no later than the Maturity Date.

      6.    <u>Interest Reserve Deposit</u>. Concurrently with the Settlement Closing, Guarantor shall deposit the sum of $892,874.03 (the "<u>Interest Reserve Shortfall</u>") into the Interest Reserve. The Interest Reserve Shortfall shall not bear interest. Borrower continues to authorize Lender, on a monthly basis, to disburse from the Interest Reserve the amount of interest accrued and unpaid to Lender under the terms of Section 12(b) of the Loan Agreement without further authorization on the part of Borrower. Such disbursements by Lender may be made by such means (including, as shall be satisfactory to Lender, in its sole and absolute discretion. Notwithstanding the Interest Reserve, Borrower remains liable and obligated to pay all accrued and unpaid interest when it is due and payable, in the event that the amounts in the Interest Reserve are insufficient to do so.

      7.    <u>Conditions Precedent to Settlement Closing</u>. The obligations of Lender hereunder are expressly conditioned upon the following having occurred, or Lender having received on or prior to April 19, 2023 ("<u>Settlement Closing</u>"), all of the following amounts, documents, and

instruments in form and content satisfactory to Lender, in its sole and absolute discretion, opinion, and judgment:

     A.     This Agreement, fully executed by Borrower and Guarantor;

     B.     The closing of the Negev Loan;

     C.     The closing of the SLA Loan;

     D.     The closing of the Guarantor Loan;

     E.     Payment of the Legal/Trustee Fees;

     F.     Payment and/or deposit of any additional monies required pursuant to Section 6, above;

     G.     At Borrower's expense, endorsements to Lender's existing policy of title insurance insuring the continuing priority of the lien of the Deed of Trust in a first priority position; and

     H.     A Memorandum of Modification to the Deed of Trust, fully executed by Borrower and notarized for recording purposes.

8.     <u>Rescission of NOD; Dismissal of Action</u>.  Upon the Settlement Closing:

     A.     Lender will cause the NOD to be rescinded, subject to the right of Lender to cause to a new notice of default to be recorded in the event there is any default under this Agreement or any of the other Broadway Loan Documents subsequent to the Settlement Closing. Further, as long as there is no default under this Agreement or any of the other Broadway Loan Documents from and after the date of this Agreement, interest on the Broadway Loan shall accrue and be payable at the non-default rate of interest provided for in the Note.  Furthermore, upon the Settlement Closing, Lender shall waive its right to collect the Default Interest and Late Charges.

     B.     Lender will cause to be filed with the Court a dismissal without prejudice of the Litigation, subject to the right of Lender to commence a new action or proceeding against Guarantor and any other parties, as determined by Lender, if there is a default under this Agreement or any of the other Broadway Loan Documents by which Guarantor is bound.

9.     <u>Representations and Warranties of Borrower and Guarantor</u>.  Borrower and Guarantor hereby represent and warrant to Lender and covenant and agree with Lender as follows:

     A.     Borrower and Guarantor, and each of them, have full legal right, power and authority to enter into and perform this Agreement.  The execution and delivery of this Agreement by Borrower and Guarantor and the consummation by Borrower and Guarantor of the transactions contemplated hereby have been duly authorized by all necessary action by or on behalf of Borrower and Guarantor.  This Agreement is a valid and binding obligation of

Borrower and Guarantor, enforceable against Borrower and Guarantor in accordance with its terms.

B.    Neither the execution and delivery of this Agreement by Borrower and Guarantor, or either of them, nor the consummation by Borrower and Guarantor of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower and Guarantor, or either of them, or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower or Guarantor is a party, by which Borrower or Guarantor is bound or to which any of Borrower's or Guarantor's property or assets is subject.

C.    There are no actions, suits or proceedings pending, or to the knowledge of Borrower or Guarantor, threatened against or affecting Borrower or Guarantor, in relation to its obligations to Lender or involving the validity and enforceability of this Agreement, or any of the other Broadway Loan Documents, as applicable, at law or in equity, or before or by any Governmental Agency, or which could have a material adverse effect on the financial condition, operations, properties, assets, liabilities or earnings of Borrower or Guarantor, or the ability of Borrower or Guarantor to perform their obligations to Lender.

D.    Borrower and Guarantor, and each of them, hereby reaffirm and confirm that the representations and warranties of Borrower and Guarantor, and each of them, contained in the Broadway Loan Documents are true, correct and complete in all material respects as of the date of this Agreement.

10.    <u>Revival of Obligation.</u>

A.    Borrower and Guarantor acknowledge and agree that in the event that the payment of money, this Agreement, or the grant of collateral should for any reason subsequently be declared to be "fraudulent" or "voidable" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then as to that which is repaid or restored pursuant to any such Voidable Transfer (including all costs, expenses and attorneys' fees of Lender related thereto, including, without limitation, relief from stay or similar proceedings), the liability of Borrower and Guarantor to Lender shall automatically be revived, reinstated and restored as though such Voidable Transfer had never been made to Lender.

B.    Nothing set forth herein is an admission that such Voidable Transfer has occurred. Borrower and Guarantor expressly acknowledge that Lender may rely upon advice of counsel, and if so advised by counsel, may, in the exercise of Lender's sole opinion and judgment, settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement, Borrower and Guarantor shall again be liable for any deficiency resulting from such settlement as provided in this Agreement.

11.    <u>Waiver of Certain Bankruptcy Rights.</u>

Borrower and Guarantor acknowledge and agree that but for Lender entering into this Agreement with Borrower and Guarantor, Lender would have continued to diligently pursue all of its rights and remedies under the Broadway Loan Documents, at law and in equity, against Borrower and Guarantor. As an additional inducement to and material consideration for Lender agreeing to the modifications and extension provided in this Agreement, Borrower and Guarantor agree that in the event a Bankruptcy or Judicial Action (as hereinafter defined in this Section 11) is commenced which subjects Lender to any stay in the exercise of Lender's rights and remedies under the Broadway Loan Documents with respect to the Collateral, including, but not limited to, the automatic stay imposed by Section 362 of the United States Bankruptcy Code (individually and collectively, "Stay"), then Borrower and Guarantor irrevocably consent and agree that such Stay shall automatically be lifted and released against Lender with respect to the Collateral, and Lender shall thereafter be entitled to exercise all of its rights and remedies under the Broadway Loan Documents with respect to the Collateral, subject, however, to the terms and conditions of this Agreement. Borrower and Guarantor acknowledge that each is knowingly, voluntarily, and intentionally waiving each of such party's rights to any Stay and agrees that the benefits provided to Borrower and Guarantor under the terms of this Agreement are valuable consideration for such waiver. As used in this Section 11, the term "Bankruptcy or Judicial Action" shall mean any voluntary or involuntary case filed by or against Borrower and Guarantor, or either of them, under the United States Bankruptcy Code, or any voluntary or involuntary petition in composition, readjustment, liquidation, or dissolution, or any state and federal bankruptcy law action filed by or against Borrower and Guarantor, or either of them, any action where Borrower and Guarantor, or either of them, are adjudicated as bankrupt or insolvent, any action for dissolution of Borrower and Guarantor, or either of them, or any action in furtherance of any of the foregoing, or any other action, case, or proceeding that has the effect of staying (or in which a stay is being obtained against) the enforcement by Lender of its rights and remedies with respect to the Collateral under the Broadway Loan Documents.

12.    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of Borrower and Guarantor and their respective successors, assigns, directors, officers, shareholders, partners, accountants, heirs, executors, administrators, trustees and trustees in bankruptcy.

13.    Release by Borrower and Guarantor.

A.    Borrower and Guarantor, on behalf of themselves, their respective successors and assigns, and each of them, do hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower and Guarantor, or either of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing, in whole or in part, on or before the date of this Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or

in connection with the Recitals above, the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and Guarantor, or either of them, to Lender, or the lending arrangements between Lender and Borrower and Guarantor, all individually and collectively.

(1)    As to the matters released herein, Borrower and Guarantor expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her, would have materially affected his or her settlement with the debtor or released party."

(2)    Borrower and Guarantor expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein.  In connection with such waiver and relinquishment, Borrower and Guarantor acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true.  Nevertheless, it is the intention of Borrower and Guarantor, through this Agreement, to fully, finally and forever release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed.  In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

B.    Borrower and Guarantor are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or any entity claims or other matters herein released.  Borrower and Guarantor shall indemnify, defend and hold Lender and each of the other Released Parties, and each of them, harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

14.    <u>No Joint Venture, Management or Control</u>.  Notwithstanding any provision of this Agreement and/or of the Broadway Loan Documents:

A.    Lender is not and shall not be construed to be a partner, joint venture, alter ego, manager, controlling person or other business associate or participant of any kind of Borrower, Guarantor or any other Person;

B.      Lender shall not be deemed responsible to perform or participate in any acts, omissions, or decisions of Borrower or Guarantor; and

C.      Borrower and Guarantor, or either of them, do not have any claims, causes of action or defenses to their obligations to Lender based on any allegations of management or control exercised by Lender. Borrower and Guarantor, and each of them acknowledge and agree that Lender does not manage or control them in any way.

15.      <u>No Further Commitments to Lend.</u>  Borrower and Guarantor agree and acknowledge that Lender will not and has no obligation to advance, provide or loan any further or additional monies or credit to Borrower and the obligation of Lender to advance any further sums to Borrower under the Broadway Loan Documents has been terminated thereunder. Borrower and Guarantor further agree and acknowledge that Lender will not and has no obligation to further extend the time for payment of any obligations owing to or arising in favor of Lender by Borrower and Guarantor, or either of them.

16.      <u>Miscellaneous.</u>

A.      Section headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

B.      This Agreement may be executed in one or more counterparts but all of the counterparts shall constitute one agreement; provided, however, this Agreement shall not be effective and enforceable unless and until it is executed by all parties hereto.

C.      This Agreement and the other documents and instruments executed in connection therewith constitute the product of the negotiation of the parties hereto and the enforcement hereof shall be interpreted in a neutral manner, and not more strongly for or against any party based upon the source of the draftsmanship hereof.

D.      This Agreement is not a novation, nor, except as expressly provided in this Agreement, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers or rights set forth in the Broadway Loan Documents.  Nothing contained in this Agreement shall be deemed to constitute a waiver by Lender of any required performance by Borrower and Guarantor, or either of them, of any default heretofore or hereafter occurring under or in connection with the other Broadway Loan Documents.  In the event there is a conflict in any term, condition or provision of this Agreement, on the one hand, and the Loan Agreement or any of the other Broadway Loan Documents, on the other hand, the terms, conditions and provisions of this Agreement are to control.

E.      Borrower and Guarantor hereby further represent and warrant as follows:

(1)      Borrower and Guarantor have received, or have had the opportunity to receive, independent legal advice from attorneys of each of their choice with respect to the advisability of executing this Agreement and prior to the execution of this Agreement by Borrower and Guarantor, their attorneys reviewed this Agreement and discussed this Agreement with them and have made all desired changes;

(2)    Except as expressly stated in this Agreement, neither Lender nor any other person or entity has made any statement or representation to Borrower or Guarantor regarding facts relied upon by Borrower or Guarantor;

(3)    Borrower and Guarantor do not rely upon any statement, representation or promise of Lender or any other person or entity in executing this Agreement except as expressly stated in this Agreement;

(4)    The terms of this Agreement are contractual and not a mere recital;

(5)    This Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by Borrower; and

(6)    This Agreement and the releases contained herein are intended to be final and binding against Borrower and Guarantor, and Borrower and Guarantor acknowledge that Lender is expressly relying on the finality of this Agreement as a substantial, material factor inducing Lender's execution of this Agreement.

F.    This Agreement and any and all documents executed in connection herewith are entered into and made to be performed in Los Angeles County, California, and in the event that litigation is instituted in connection with this Agreement, and any and all documents executed in connection herewith, it shall be instituted in the Courts for Los Angeles County, California. This Agreement shall be construed under the laws of the State of California.

G.    Upon indefeasible payment and performance in full of the Broadway Loan Documents, Lender shall provide Borrower the Limited Release in the form of Exhibit "D" attached hereto.

H.    The waiver of any existing or future default by any party to this Agreement or of any of the terms of this Agreement shall not be deemed a waiver of any future default or term. No waiver of any other provisions hereof shall be deemed or constitute a waiver of any other provision, and no waiver of any type shall be binding unless evidenced by a writing signed by the party making waiver.

17.    JUDICIAL REFERENCE – The parties hereby agree that any claims, controversies, disputes, or questions of interpretation, whether legal or equitable, arising out of, concerning or related to this Agreement and ANY MATTER RELATED THERETO, shall be heard by a single referee by consensual general judicial reference pursuant to the provisions of California Code of Civil Procedure sects 638 et seq., who shall determine all issues of fact or law and to report a statement of decision. The referee shall also have the power to hear and determine proceedings for ancillary relief, including, but not limited to, applications for attachment, issuance of injunctive relief, appointment of a receiver, and/or claim and delivery. The costs of the proceeding shall be borne equally by the parties to the dispute, subject to the discretion of the referee to allocate such costs based on a determination as to the prevailing party(ies) in the proceeding. Notwithstanding the foregoing, the judicial reference provided herein shall not apply to the New Loans. ***By initialing below the parties acknowledge that they have read and understand the foregoing Judicial Reference provisions and understand that they are waiving their right to a jury trial.***

The parties below have initialed this section to further indicate their awareness and acceptance of each and every provision hereof.

| | | |
|---|---|---|
| Borrower's Initials | Alan's Initials | Daniel's Initials |
| David's Initials | Guarantor's Initials | Lender's Initials |

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Agreement on the date and year first written above.

**BORROWER:**

BROADWAY AVENUE INVESTMENTS LLC.
a California limited liability company

By: _____
Name: Alan Gomperts
Its: Manager

**GUARANTOR:**

_____
ALAN GOMPERTS, an individual

_____
DANIEL HALEVY, an individual

_____
DAVID HALEVY, an individual, by Daniel Halevy as his attorney in fact


**LENDER:**
ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,
A Delaware limited liability company

By: _____
Name: Bobby Khorshidi
Title: Authorized Signer

039

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF LOS ANGELES, CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF BLOCK 25 OF THE HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF BROADWAY, 80 FEET WIDE, WITH THE DIVIDING LINE ESTABLISHED BY AGREEMENT AND DEED BETWEEN THE LOS ANGELES TRUST COMPANY AND NIAGARA BUILDING COMPANY, RECORDED DECEMBER 11, 1908 IN BOOK 3568, PAGE 93 OF DEEDS, RECORDS OF SAID COUNTY, SAID INTERSECTION BEING DISTANT NORTH 37° 48' EAST ALONG SAID NORTHWESTERLY LINE, 180.47 FEET, MORE OR LESS, FROM THE NORTHERLY LINE OF 8TH STREET, 60 FEET WIDE, AS SHOWN ON MAP OF A RESUBDIVISION OF A PORTION OF BLOCK 25, HUBER TRACT, RECORDED IN BOOK 5, PAGE 15 OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER; THENCE NORTH 37° 48' EAST ALONG SAID NORTHWESTERLY LINE, 60 FEET, MORE OR LESS, TO THE MOST EASTERLY CORNER OF LOT 4 IN SAID BLOCK 25 OF HUBER TRACT; THENCE NORTH 52° 12' WEST ALONG THE NORTHEASTERLY LINE OF SAID LOT 4, A DISTANCE OF 165 FEET, MORE OR LESS, TO THE MOST NORTHERLY CORNER OF SAID LOT 4; THENCE SOUTH 37° 48' WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 4 AND OF LOT 3 OF BLOCK 25 OF SAID HUBER TRACT, 60 FEET, MORE OR LESS, TO SAID DIVIDING LINE; THENCE SOUTH 52° 12' EAST, ALONG SAID DIVIDING LINE, 165 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

APN: 5144-014-030

**EXHIBIT "B-1"**
**NEGEV LOAN**

1. Loan Agreement
2. Promissory Note
3. Assignment of Leases and Rents
4. Security Instrument -Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
5. Guaranty
6. Borrower's Closing Certificate
7. Borrower's Resolutions
8. Building Laws Indemnity Agreement
9. Hazardous Materials Indemnity Agreement
10. Undelivered Items Letter
11. Pledge and Security Agreement

## EXHIBIT "B-2"
## SLA LOAN

1. Promissory Note
2. Loan Agreement
3. Security Instrument -Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
4. Assignment of Leases and Rents
5. Guaranty
6. Hazardous Materials Indemnity Agreement
7. Building Laws Indemnity Agreement
8. Borrowers Incumbency Certificate and Resolutions
9. Borrower's Closing Certificate
10. Undelivered Items letter
11. Pledge Agreement

## EXHIBIT "B-3"
## G&H LOAN

1. Promissory Note
2. Loan Agreement
3. Security Instrument (Greenfield) - Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
4. Security Instrument (Horner Street) - Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
5. Security Instrument (Palm Drive) - Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
6. Hazardous Materials Indemnity Agreement
7. Building Laws Indemnity Agreement
8. Borrower's Closing Certificate
9. Undelivered Items letter

# EXHIBIT "C"
# ALLOCATION OF NEW LOANS PROCEEDS

| SLA Loan | | | Negev Loan | | | Guarantor Loan | |
|---|---|---|---|---|---|---|---|
| Sources | | | Sources | | | Sources | |
| Loan | $ 125,000.00 | | Loan | $ 1,300,000.00 | | Loan | $ 2,575,000.00 |
| Total Sources | $ 125,000.00 | | Total Sources | $ 1,300,000.00 | | Total Sources | $ 2,575,000.00 |
| | | | | | | | |
| Uses | | | Uses | | | Uses | |
| Interest Reserve SLA Loan | $ 6,927.08 | | Interest Reserve Negev Loan | $ 72,041.67 | | Interest Reserve Guarantor Loan | $ 142,697.92 |
| Per Diem SLA Loan (4/19-5/1) | $ 395.83 | | Per Diem Negev Loan (4/19-5/1) | $ 4,116.67 | | Per Diem Guarantor Loan (4/19-5/1) | $ 8,154.17 |
| Back Pay Broadway (4/19) | $ 36,605.80 | | Back Pay Broadway (4/19) | $ 380,700.33 | | Back Pay Broadway (4/19) | $ 754,079.50 |
| Per Diem Broadway Loan (4/19-5/1) | $ 1,508.23 | | Per Diem Broadway Loan (4/19-5/1) | $ 15,685.62 | | Per Diem Broadway Loan (4/19-5/1) | $ 31,069.60 |
| 8-Month IR Broadway Loan | $ 26,394.08 | | 8-Month IR Broadway Loan | $ 274,498.44 | | 8-Month IR Broadway Loan | $ 543,718.05 |
| Paydown Broadway Loan | $ 53,168.97 | | Paydown Broadway Loan | $ 552,957.28 | | Paydown Broadway Loan | $ 1,095,280.76 |
| | | | | | | | |
| Total Uses | $ 125,000.00 | | Total Uses | $ 1,300,000.00 | | Total Uses | $ 2,575,000.00 |

044

## EXHIBIT "D"
## LIMITED RELEASE

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company ("Lender"), hereby releases:

      a.      BROADWAY AVENUE INVESTMENTS LLC, a California limited liability company ("Borrower") from all contractual liability and obligations under the Note and any of the other Loan Documents executed by Borrower in favor of Lender, except as otherwise provided in this Limited Release ("Release").

      b.      ALAN GOMPERTS ("Alan"), DANIEL HALEVY ("Daniel") and DAVID HALEVY ("David," and together with Alan and Daniel, individually and collectively, "Guarantor") from all contractual liability and obligations under the Continuing Guaranty and any of the other Loan Documents executed by Guarantor in favor of Lender, except as otherwise provided in this Release.

1.      Notwithstanding the foregoing, the Release shall not apply to and hereby excludes Borrower's obligations and liability under (a) that certain Hazardous Materials Indemnity Agreement, dated July 21, 2021 by Borrower in favor of Lender, (b) Guarantor's obligations and liabilities under clause (g) of "Recourse Amounts" under Section 1 Definitions of the Continuing Guaranty, and (c) any other obligations, liability or indemnity contained in any Loan Document that survives repayment of the Note and any other obligations under the Loan Documents.

2.      Borrower and Guarantor acknowledge and agree that in the event that all or any part of any payment or credit that reduces or pays off the Note or any other obligation under the Loan Documents is declared by a court of competent jurisdiction declared to be "fraudulent" or "voidable" within the meaning of any state, federal or foreign law relating to fraudulent conveyances, preferential or otherwise voidable or recoverable, in whole or in part, for any reason, under the United States Bankruptcy Code or any other federal, foreign or state law (collectively referred to herein as "Voidable Transfer"), and Lender is required to pay or restore any such Voidable Transfer, or any portion thereof, then this Release shall be null and void, and of no force and effect, unless and until the Note and any such obligations under the Loan Obligations are indefeasibly paid in full.

3.      Any capitalized term not expressly defined in this Release shall have the meaning ascribed to it in that certain Settlement and Loan Modification Agreement by and among Borrower, Guarantor and Lender, dated as of April __, 2023.

This Release is executed by the undersigned as of the ___ day of _____, 202_.

ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company

By:_____

Name:_____

Title:_____

# EXHIBIT 4



**This page is part of your document - DO NOT DISCARD**

## 20230643326

 

**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/25/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 49.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 49.00 |

**PCOR SURCHARGE $20.00**



**L E A D S H E E T**



202309250120005

00023803020



014291598

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

*E441953*

**2135805**
047



RECORDING REQUESTED BY:
Stewart Title of California, Inc.

AND WHEN RECORDED MAIL TO:

Halevy Family Trust
c/o Sue Halevy, Surviving Trustee
341 S. Canon Dr.
Beverly Hills, CA  90212

Title Order No.: 2135805
Escrow No.: 02-040468-AC

SPACE ABOVE THIS LINE FOR RECORDERS USE

## AFFIDAVIT - DEATH OF TRUSTEE

State of California            )
County of Los Angeles    )  ss

**Exempt from fee per GC 27388.1 and 27388.2; Document transfers real property that is a residential dwelling to an owner-occupier.**

Sue Halevy, of legal age, being first duly sworn, deposes and says:

**1.** That David Halevy, the decedent mentioned in the attached certified copy of Certificate of Death is the same person as David Halevy named as the Trustee in that certain Declaration of Trust dated September 8, 2010 executed by David Halevy and Sue Halevy as Trustor(s).

**2.** At the time of the demise of the decedent, the decedent was the record owner, as Trustee, of real property commonly known as 341 S. Canon Dr., Beverly Hills, CA  90212, which property is described in a Deed executed by David Halevy and Sue Halevy, as Grantor(s) recorded on September 22, 2016, as Instrument No. 20161153679 of Official Records in the office of the County Recorder of Los Angeles County.  Said property is shown on Exhibit "A" attached hereto.

**3.** I am the named successor Trustee under the above referenced Trust, which was in effect at the time of the death of the decedent mentioned in paragraph 1 above, and which has not been revoked and I hereby consent to act as such.

**4.** There is no Federal Estate Tax due as a result of the death of said decedent.

Signature _____    Dated _Sep 21_____, 20_23_

Sue Halevy, Surviving Trustee    * Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
COUNTY OF _Los Angeles_   )ss

Subscribed and sworn to (or affirmed) before me on this _21st_ day of _September_
20_23___, by _Sue Halevy_____
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me

Signature _Jackie Padilla_ (Seal)

JACKIE PADILLA
Notary Public - California
Los Angeles County
Commission # 2421859
My Comm. Expires Oct 17, 2026

048

## EXHIBIT 'A'

Lot 1887 of Tract No. 6380, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 69, Pages 11 to 20 inclusive of Maps, in the Office of the County Recorder of said County.

# State of California
## Secretary of State

This Certificate is not valid for use anywhere within the United States of America, its territories or possessions.

**APOSTILLE**
(Convention de La Haye du 5 octobre 1961)

| | |
|---|---|
| **1. Country:** <br> Pays / País | United States of America |
| **This public document** <br> Le présent acte public / El presente documento público | |
| **2. has been signed by** <br> a été signé par <br> ha sido firmado por | *Muntu Davis, M.D.* |
| **3. acting in the capacity of** <br> agissant en qualité de <br> quien actúa en calidad de | *Health Officer* |
| **4. bears the seal / stamp of** <br> est revêtu du sceau / timbre de <br> y está revestido del sello / timbre de | *County of Los Angeles,  State of California* |

**Certified**
Attesté / Certificado

| | | | |
|---|---|---|---|
| **5. at** <br> à / en | Sacramento, California | **6.the** <br> le / el día | *31st day of July 2023* |
| **7. by** <br> par / por | Secretary of State, State of California | | |
| **8. Nº** <br> sous nº <br> bajo el número | *32676* | | |
| **9. Seal / stamp:** <br> Sceau / timbre: <br> Sello / timbre: | | **10. Signature:** <br> Signature: <br> Firma: | |

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears
This Apostille does not certify the content of the document for which it was issued.
To verify the issuance of this Apostille, see: apostille-search.sos.ca.gov/.
**This certificate does not constitute an Apostille under the Hague Convention of 5 October 1961, when it is presented in a country which is not a party to the Convention. In such cases, the certificate should be presented to the consular section of the mission representing that country.**

---

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire de l'acte a agi et, le cas échéant, l'identité du sceau ou timbre dont cet acte public est revêtu.
Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise
Cette Apostille peut être vérifiée à l'adresse suivante: apostille-search.sos.ca.gov/.
Ce certificat ne constitue pas une Apostille en vertu de la Convention de La Haye du 5 Octobre 1961, lorsque présenté dans un pays qui n'est pas partie à cette Convention. Dans ce cas, le certificat doit être présenté à la section consulaire de la mission qui représente ce pays.

---

Esta Apostilla certifica únicamente la autenticidad de la firma, la calidad en que el signatario del documento haya actuado y, en su caso, la identidad del sello o timbre del que el documento público está revestido.
Esta Apostilla no certifica el contenido del documento para el cual se expidió.
Esta Apostilla se puede verificar en la dirección siguiente: apostille-search.sos.ca.gov/.
Este certificado no constituye una Apostilla en virtud del Convenio de La Haya de 5 de octubre de 1961 cuando se presenta en un país que no es parte del Convenio. En estos casos, el certificado debe ser presentado a la sección consular de la misión que representa a ese país.

Sec/State Form NP-40 SAC (rev. 01/2021)



# COUNTY OF LOS ANGELES
## DEPARTMENT OF PUBLIC HEALTH

**CERTIFICATE OF DEATH**

| 1. NAME OF DECEDENT-FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| DAVID | | HALEVY |

| 6. AGE Yrs. | 7. DATE OF DEATH |
|---|---|
| 89 | 06/03/2023 |

| 8. SEX |
|---|
| M |

| 10. SOCIAL SECURITY NUMBER | 12. MARITAL STATUS |
|---|---|
| 2860 | MARRIED |

| 17. USUAL OCCUPATION | 18. KIND OF BUSINESS OR INDUSTRY |
|---|---|
| BUILDER | REAL ESTATE |

| 20. DECEDENT'S RESIDENCE (Street and number or location) |
|---|
| LINDEN DRIVE |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | STATE/FOREIGN COUNTRY |
|---|---|---|---|
| BEVERLY HILLS | LOS ANGELES | 90212 | CA |

| 26. NAME OF INFORMANT-RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS |
|---|---|
| DANIEL HALEVY, SON | 257 S. LINDEN DRIVE, BEVERLY HILLS, CA 90212 |

CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

This is a true certified copy of the record filed in the County of Los Angeles Department of Public Health if it bears the Registrar's signature in purple ink.



Health Officer and Registrar

DATE ISSUED

JUN 22 2023

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

\* 0 0 3 9 2 1 2 8 5 \*





ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT 5

Case 2:21-cr-00118-TPNZ   Doc 357-2   Filed 09/20/24   Page 53 of 104
Declaration of Bobby Khorshidi   Page 53 of 104
BA20231403266



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20231403266

Date Filed: 9/5/2023

| Entity Details | |
|---|---|
| Limited Liability Company Name | 341 SOUTH CANNON LLC |
| Entity No. | 202130910155 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of LLC | |
|---|---|
| Principal Address | 257 S. LINDEN DRIVE<br>BEVERLY HILLS, CA 90212 |

| Mailing Address of LLC | |
|---|---|
| Mailing Address | 257 S. LINDEN DRIVE<br>BEVERLY HILLS, CA 90212 |
| Attention | |

| Street Address of California Office of LLC | |
|---|---|
| Street Address of California Office | None |

Manager(s) or Member(s)

| Manager or Member Name | Manager or Member Address |
|---|---|
| ⊞ Sue Halevy | 257 S. LINDEN DRIVE<br>BEVERLY HILLS, CA 90212 |

| Agent for Service of Process | |
|---|---|
| Agent Name | CRAIG BERMAN |
| Agent Address | 20750 VENTURA BLVD., STE. 201<br>WOODLAND HILLS, CA 91364 |

| Type of Business | |
|---|---|
| Type of Business | Real Estate |

| Email Notifications | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Chief Executive Officer (CEO)

| CEO Name | CEO Address |
|---|---|
| None Entered | |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

**Electronic Signature**

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Alan Gomperts*                                    *09/05/2023*

Signature                                          Date

053

# EXHIBIT 6



**This page is part of your document - DO NOT DISCARD**



## 20230646027



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/26/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 102.00 |



**L E A D S H E E T**



202309260110018

00023806620



014293751

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

2135805

055

**RECORDING REQUESTED BY:**
Stewart Title of California, Inc.

**WHEN RECORDED MAIL DOCUMENT AND
TAX STATEMENTS TO:**

341 South Cannon LLC
257 S. Linden Drive
Beverly Hills, CA 90212

THIS SPACE FOR RECORDER'S USE ONLY:

| | | |
|---|---|---|
| **Title Order No.:** 2135805 | | **Escrow No.:** 02-040468-AC |
| **AP#:** 4331-005-011 | **GRANT DEED** | |

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

"This conveyance transfers an interest into or out of a Living Trust, R & T 11930."

### DOCUMENTARY TRANSFER TAX is $0.00

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area    [X] City of Beverly Hills **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Sue Halevy, as Surviving Trustee of the Halevy Family Trust, dated September 8, 2010**

hereby GRANT(s) to:

**341 South Cannon LLC, a California limited liability company**

the real property in the City of Beverly Hills, County of Los Angeles, State of California, described as:

Lot 1887 of Tract No. 6380, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 69, Pages 11 to 20 inclusive of Maps, in the Office of the County Recorder of said County.

**Also Known as:** 341 S. Canon Dr., Beverly Hills, CA 90212

**DATED: September 20, 2023**

**Signature Page attached hereto
and made a part hereof**

MAIL TAX STATEMENTS AS DIRECTED ABOVE:

**Title Order No.:  2135805**          **Escrow No.:  02-040468-AC**          **AP#: 4331-005-011**

## SIGNATURE PAGE

**Title of Document:  GRANT DEED**

**Date of Document:  September 20, 2023**

Sue Halevy, as Surviving Trustee of the Halevy Family
Trust, dated September 8, 2010

By:
Sue Halevy, Surviving Trustee

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF  Los Angeles
On Sept. 21 2023
before me, Jackie Padilla,
A Notary Public personally appeared
Sue Halevy

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature Jackie Padilla                    (Seal)

JACKIE PADILLA
Notary Public - California
Los Angeles County
Commission # 2421859
My Comm. Expires Oct 17, 2026

057

# EXHIBIT 7



**This page is part of your document - DO NOT DISCARD**

## 20230646028





**Pages:
0025**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/26/23 AT 08:00AM**

| | |
|---|---|
| FEES: | 164.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 314.00 |



**L E A D S H E E T**



202309260110018

**00023806621**



014293751

**SEQ:
02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

2135805
059

RECORDING REQUESTED BY:
STEWART TITLE OF CALIFORNIA INC

AND WHEN RECORDED MAIL TO:

**VIG PRIVATE LENDING**

8383 WILSHIRE BLVD SUITE 430

BEVERLY HILLS, CA 90211

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILINGS

AND SECURITY AGREEMENT ; REQUEST FOR NOTICE

Exempt from fee per GC27388.1;
Fee cap of $225 reached

*This page is added to provide adequate space for recording information.*

060

WHEN RECORDED, RETURN TO:

VIG Private Lending, Inc.
8383 Wilshire Blvd, Ste 430
Beverly Hills, CA 90211

Property ID No.: 4331-005-011

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILINGS, AND SECURITY AGREEMENT

Exempt from fee per GG27388.1;
Fee cap of $225 reached

**Note Amount:**         **$1,300,000.00**
**Property Address:**      **341 S Canon Drive, Beverly Hills, CA 90212**

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE CALIFORNIA UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filings, and Security Agreement (the "Security Instrument" or "Deed of Trust") is made as of September 20, 2023, among 341 South Cannon LLC, a California limited liability company ("Borrower"), whose address is 257 South Linden Drive, Beverly Hills, CA 90212; Stewart Title of California, Inc., as trustee ("Trustee"); and Eastern Financial Mortgage Corporation, a Florida Corporation as to an undivided 650,000.00/1,300,000.00 interest; and Yarden Consulting LLC, a Delaware limited liability company as to an undivided 650,000.00/1,300,000.00 interest as beneficiary (collectively, "Lender"), whose address is c/o VIG Private Lending, Inc, 8383 Wilshire Blvd, Ste 430, Beverly Hills, CA 90211.

## TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Security Instrument, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property. Borrower further

Deed of Trust

Borrower's Initials: [signature]

061

irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

### DEFINITIONS.

**1.**     **Definitions.** For purposes of this Security Instrument, each of the following terms shall have the following respective meanings:

**1.1**     "**Attorney Fees.**" Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

**1.2**     "**Borrower.**"

1.2.1.   The named Borrower in this Security Instrument;

1.2.2.   The obligor under the Note, whether or not named as Borrower in this Security Instrument; and

1.2.3.   Subject to any limitations of assignment as provided for in the Loan Documents, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

All references to Borrower in the remainder of the Loan Documents shall mean the obligor under the Note.

**1.3**     "**Event of Default.**" An Event of Default as defined in the Loan Agreement.

**1.4**     "**Fixtures.**" All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located, including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

**1.5**     "**Governmental Authority.**" Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

**1.6**     "**Governmental Requirements.**" Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.7**     "**Impositions.**" All real estate and personal property taxes; water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.8**     "**Improvements.**" Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or

Deed of Trust

Borrower's Initials: _____

supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Security Instrument.

    **1.9**    **"Indebtedness."** The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

    1.9.1.    The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

    1.9.2.    The Loan Agreement;

    1.9.3.    This Security Instrument and all other Loan Documents;

    1.9.4.    All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

    1.9.5.    Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the Security Instrument; and

    1.9.6.    Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

    **1.10**    **"Land."** The real estate or any interest in it described in Exhibit "A" attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

    **1.11**    **"Leases."** Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

    **1.12**    **"Lender."** The named Lender in this Security Instrument and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Security Instrument, whether or not named as Lender in this Security Instrument, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

    **1.13**    **"Loan."** The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

    **1.14**    **"Loan Agreement."** The Loan and Security Agreement given by Borrower evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments thereto.

    **1.15**    **"Loan Documents."** Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

    **1.16**    **"Mortgaged Property."** The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as:    **341 S Canon Drive, Beverly Hills, CA 90212**

Deed of Trust

Borrower's Initials:

**Property ID No.: 4331-005-011**

together with:

1.16.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.16.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.16.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.16.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.16.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.16.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.16.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.16.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit "A" attached to this Security

Deed of Trust

Borrower's Initials: $\mathcal{B}H$

Instrument (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.16.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.16.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.16.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.16.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.16.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.16.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.16.15. All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.17    "Note."** The Secured Note payable by Borrower to the order of Lender in the principal amount of **One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00), which matures on October 1, 2024,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

**1.18    "Obligations."** Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Security Instrument whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the

Deed of Trust

Borrower's Initials: _____

instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and any guarantor of the Loan, which is not secured by this Security Instrument.

**1.19** "**Permitted Encumbrances.**" At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.20** "**Person.**" Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.21** "**Personalty.**" All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

**1.22** "**Rents.**" All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.23** "**Uniform Commercial Code.**" The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.

**1.24** "**Water Rights.**" All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Loan Agreement and Note, dated of even date herewith between Borrower and Lender.

Deed of Trust

Borrower's Initials: _BH_

**UNIFORM COVENANTS**

**2.      Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Security Instrument; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

**3.      Use of Mortgaged Property.** Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.      Condemnation and Insurance Proceeds.**

**4.1      Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims

Deed of Trust

Borrower's Initials: ___

of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**4.2    Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

4.2.1.    Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Loan Agreement, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

4.2.2.    If fewer than all conditions (a) through (i) above are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this Section to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) above shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**4.3    Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**4.4    Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may

Deed of Trust

Borrower's Initials: _DH_

become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

**4.5    Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**4.6    Cure of Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

**5.    Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property. with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 5(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**6.    Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of

Deed of Trust

Borrower's Initials: _____

069

all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. Any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Loan Agreement, the Note and this Security Instrument, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**7.** **Right to Collect and Receive Rents.** Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of trustee's sale proceedings under this Security Instrument or judicial foreclosure, shall neither injure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental

Deed of Trust

Borrower's Initials. _B H_

Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

**8.**    **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this Section, Lender may apply or release the balance of any funds received by it under this Section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this Section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**9.**    **Defense of Security Instrument; Litigation.** Borrower represents and warrants that this Security Instrument creates a second position lien and security interest against the Mortgaged Property. Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents. Despite any other provision of this Security Instrument, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if Lender and Trustee elect not to do so, Borrower shall commence, appear in,

Deed of Trust

Borrower's Initials: _____

prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.

**10.     Borrower's Failure to Comply With Security Instrument.** If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Agreement, the Note or this Security Instrument, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

**11.     Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender and Trustee shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Security Instrument or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

**12.     Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

**13.     Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement

Deed of Trust

Borrower's Initials: _D H_

072

or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

**14.     Fixture Filing.** This Security Instrument constitutes a financing statement filed as a fixture filing under Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

**15.     Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

**16.     Default.** Any Event of Default, as defined in the Loan Agreement, shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any event which, with any required lapse of time or notice, may constitute an Event of Default, whether or not any such requirement for notice or lapse of time has been satisfied).

**17.     Acceleration on Transfer or Encumbrance.**

**17.1     Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance), transfers possession, or alienates all or any portion of the Mortgaged Property, or any of Borrower's interest in the Mortgaged Property, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**17.2     Replacement Personalty.** Notwithstanding anything to the contrary herein, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such

Deed of Trust

Borrower's Initials: _DH_

replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

**17.3    Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance prohibition shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Loan Agreement and the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**18.    Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

**19.    Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this Section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this Section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**20.    Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the

Deed of Trust

Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

**21.** **Prepayment.** If the Loan Documents provide for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under the Loan Documents and Lender has declared all sums secured by this Security Instrument immediately due and payable.

**22.** **Governing Law: Consent to Jurisdiction and Venue.** This Security Instrument is made by Lender and accepted by Borrower in the State of California except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Mortgaged Property under the Loan Documents shall be governed by and construed according to the laws of the state in which the Mortgage Property is situated. To the fullest extent permitted by the law of the state in which the Mortgaged Property is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which the Mortgaged Property is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be Los Angeles County, California, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: _O H_

**23.** **Taxation of Security Instrument.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Security Instrument.

**24.** **Mechanic's Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanic's, laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**25.** **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**26.** **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, any notice required to be provided in this Security Instrument shall be given in accordance with the Loan Agreement.

Deed of Trust

Borrower's Initials: _O H_

075

**27.**    **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

**28.**    **Remedies Are Cumulative.** Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**29.**    **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

**30.**    **Delegation of Authority.** Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**31.**    **Funds for Taxes and Insurance.** If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Security Instrument as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits,

Deed of Trust

and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**32.    General Provisions.**

**32.1    Successors and Assigns.** Except as otherwise expressly provided herein, this Security Instrument applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Security Instrument.

**32.2    Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

**32.3    Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**32.4    Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**32.5    Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

**33.    Dispute Resolution: Waiver of Right to Jury Trial.**

**33.1    ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**33.2    WAIVER OF RIGHT TO JURY TRIAL.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS: _OH_

**33.3    PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in the Section above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in the Section above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission of the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in the Section above.

**33.4    Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

Deed of Trust

Borrower's Initials: _OH_

**33.5    Loan Agreement.** This Security Instrument is subject to the provisions of the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Security Instrument, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

## NON-UNIFORM COVENANTS.

Notwithstanding anything to the contrary elsewhere in this Security Instrument, Borrower and Lender further covenant and agree as follows:

**34.    Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Security Instrument immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Security Instrument, and documents evidencing any additional advances or expenditures secured by this Security Instrument. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Security Instrument, together with any other sums secured by this Security Instrument, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Security Instrument, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Security Instrument, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

Deed of Trust

Borrower's Initials: _O H_

**35.     Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Security Instrument, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Security Instrument of any pending sale under any other Security Instrument or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Security Instrument, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**36.     Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Security Instrument to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Security Instrument, or (b) the lien of this Security Instrument on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Security Instrument, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Security Instrument; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument.

**37.     Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Security Instrument to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Security Instrument. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Security Instrument.

**38.     Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Security Instrument, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Security Instrument, the book and page or instrument or document number at which, and the county or counties in which, this Security Instrument is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Security Instrument, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this Section for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

**39.     Assignment of Rents.** This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

**40.     Waiver of Right of Offset.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

Deed of Trust

Borrower's Initials. _O H_

Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this Section shall not exceed the value of the relief granted to the other party. The defense provided by this Section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this Section by the assignment or death of the other. For the purposes of this Section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

41.     **California Business & Professions Code § 10238 Notice.** If there are multiple beneficiaries to this Security Instrument, the provisions of California Business & Professions Code Section 10238(i) and California Civil Code Section 2941.9 may control the actions to be taken by the beneficiaries. Section 10238(i) provides "[t]he holders of more than 50 percent of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with Section 2941.9 of the Civil Code in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure."

**[Signatures Follow]**

Deed of Trust

Borrower's Initials: _____

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date first written above.

**BORROWER:**

**341 SOUTH CANNON LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

By: _____

Daniel Halevy, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __California__ )

County of __Los Angeles__ )

On __Sept. 21 2023__ before me, __Jackie Padilla__ , Notary Public
_Date_ ................................ _Here Insert Name of the Officer_

Personally Appeared __Daniel Halevy__
.................................... _Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __CA__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JACKIE PADILLA
Notary Public - California
Los Angeles County
Commission # 2421859
My Comm. Expires Oct 17, 2026

Signature _____
_Signature of Notary Public_

Deed of Trust

Borrower's Initials: __DH__

EXHIBIT "A"
LEGAL PROPERTY DESCRIPTION

Deed of Trust

Borrower's Initials. _O H_

# EXHIBIT "A"

## LEGAL DESCRIPTION

Order No.: 2135805
Escrow No.: 2135805

The land referred to herein is situated in the State of California, County of Los Angeles, City of Beverly Hills and described as follows:

Lot 1887 in Tract No. 6380 in the City of Beverly Hills, County of Los Angeles, as per Map recorded in Book 69, Pages 11 to 20 inclusive of Maps, in the Office of the County Recorder of Los Angeles County, California.

APN: 4331-005-011

(End of Legal Description)

# EXHIBIT 8

DE-172

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|

ADAM L. STRELTZER, ESQ.    CBN175075    424-652-8010
ADAM L. STRELTZER, ATTORNEY AT LAW    Fax 424-652-2296
1801 CENTURY PARK EAST, SUITE 2400
LOS ANGELES    CA    90067

ATTORNEY FOR *(Name):* ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES

STREET ADDRESS: 111 N. HILL ST.

MAILING ADDRESS:

CITY AND ZIP CODE: LOS ANGELES, CA 90012

BRANCH NAME: CENTRAL DISTRICT-STANLEY MOSK COURTHOUSE

FOR COURT USE ONLY:
Electronically FILED by
Superior Court of California,
County of Los Angeles
5/30/2024 9:48 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Morales, Deputy Clerk

ESTATE OF *(Name):*

DAVID HALEVY

DECEDENT

| **CREDITOR'S CLAIM** | CASE NUMBER: |
|---|---|
| | 24STPB01963 |

You must file this claim with the court clerk at the court address above before the LATER of (a) four months after the date letters (authority to act for the estate) were first issued to the personal representative, or (b) sixty days after the date the *Notice of Administration* was given to the creditor, if notice was given as provided in Probate Code section 9051. You must also mail or deliver a copy of this claim to the personal representative and his or her attorney. A proof of service is on the reverse.

**WARNING:** Your claim will in most instances be invalid if you do not properly complete this form, file it on time with the court, and mail or deliver a copy to the personal representative and his or her attorney.

1. Total amount of the claim: $ 18,327,141.08
2. Claimant *(name):* ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC
   a. ☐ an individual
   b. ☐ an individual or entity doing business under the fictitious name of *(specify):*
   c. ☐ a partnership. The person signing has authority to sign on behalf of the partnership.
   d. ☐ a corporation. The person signing has authority to sign on behalf of the corporation.
   e. ☒ other (specify): Delaware Limited Liability Company
3. Address of claimant *(specify):* 1875 Century Park East, Suite 900, Los Angeles, CA 90067

4. Claimant is ☒ the creditor ☐ a person acting on behalf of creditor *(state reason):*
   Authorized Officer and Agent of ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a
   Delaware Limited Liability Company

5. ☐ Claimant is ☐ the personal representative ☐ the attorney for the personal representative.
6. I am authorized to make this claim which is just and due or may become due. All payments on or offsets to the claim have been credited. Facts supporting the claim are ☒ on reverse ☒ attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 29, 2024

Bobby Khorshidi a.k.a. Babak Khorshidi    ▶
Authorized Officer and Agent
(TYPE OR PRINT NAME AND TITLE)                        (SIGNATURE OF CLAIMANT)

**INSTRUCTIONS TO CLAIMANT**

A. On the reverse, itemize the claim and show the date the service was rendered or the debt incurred. Describe the item or service in detail, and indicate the amount claimed for each item. Do not include debts incurred after the date of death, except funeral claims.

B. If the claim is not due or contingent, or the amount is not yet ascertainable, state the facts supporting the claim.

C. If the claim is secured by a note or other written instrument, the original or a copy must be attached *(state why original is unavailable.)* If secured by mortgage, deed of trust, or other lien on property that is of record, it is sufficient to describe the security and refer to the date or volume and page, and county where recorded. *(See Prob. Code, § 9152.)*

D. Mail or take this original claim to the court clerk's office for filing. If mailed, use certified mail, with return receipt requested.

E. Mail or deliver a copy to the personal representative and his or her attorney. Complete the *Proof of Mailing or Personal Delivery* on the reverse.

F. The personal representative or his or her attorney will notify you when your claim is allowed or rejected.

G. Claims against the estate by the personal representative and the attorney for the personal representative must be filed within the claim period allowed in Probate Code section 9100. See the notice box above.

(Continued on reverse)

Form Approved by the
Judicial Council of California
DE-172 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**CREDITOR'S CLAIM**
**(Probate)**

CEB
www.ceb.com

Probate Code, §§ 9000 et seq., 9153

085

| ESTATE OF *(Name)*: | CASE NUMBER: |
|---|---|
| DAVID HALEVY                                    DECEDENT | 24STPB01963 |

## FACTS SUPPORTING THE CREDITOR'S CLAIM
[X] See attachment *(if space is insufficient)*

| Date of item | Item and supporting facts | Amount claimed |
|---|---|---|
| 07/21/2021 | LOAN OBLIGATION:<br>Principal funding                        $ 16,942.500.00<br> - Less all payments and credits (from 07/21/2021-06/02/2023)<br> + Plus all interest and charges (from 07/21/2021-06/02/2023)<br>                                        Subtotal: | <br><br><br><br>14,517,141.08 |
| 04/14/2023 | NEW LOAN OBLIGATIONS:<br>Principal funding                        $ 4,000,000.00<br> - Less all payments and credits (from 04/14/2023-06/02/2023)<br> + Plus all interest and charges (from 04/14/2023-06/02/2023)<br>                        Negev Guaranty subtotal:<br>                SLA Continuing Guaranty subtotal:<br>                Personal Guarantors Loan subtotal:<br><br><br>(SEE ATTACHMENT) | <br><br><br><br>119,062.50<br>2,452,687.50<br>1,238,250.00 |
| | **TOTAL:** | $ 18,327,141.08 |

PROOF OF  [X] MAILING  [ ] PERSONAL DELIVERY   TO PERSONAL REPRESENTATIVE
*(Be sure to mail or take the original to the court clerk's office for filing)*

1. I am the creditor or a person acting on behalf of the creditor.  At the time of mailing or delivery I was at least 18 years of age.
2. My residence or business address is *(specify)*:
   300 Corporate Pointe, Suite 320, Culver City, CA 90230
3. I mailed or personally delivered a copy of this *Creditor's Claim* to the personal representative as follows *(check either a or b below)*:
   a. [X]  **Mail**.  I am a resident of or employed in the county where the mailing occurred.
      (1) I enclosed a copy in an envelope AND
         (a) [ ]  **deposited** the sealed envelope with the United States Postal Service with the postage fully prepaid.
         (b) [X]  **placed** the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices.  I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.
      (2) The envelope was addressed and mailed first-class as follows:
         (a) Name of personal representative served: Daniel Halevy
         (b) Address on envelope: 8561 Horner St., Los Angeles, CA 90035
             COPY: David Soffer, Soffer Law Group, 345 N. Maple Dr #386, Beverly Hills, CA 90210
         (c) Date of mailing: May 30, 2024
         (d) Place of mailing *(city and state)*: Culver City, California
   b. [ ]  **Personal delivery**.  I personally delivered a copy of the claim to the personal representative as follows:
      (1) Name of personal representative served:
      (2) Address where delivered:

      (3) Date delivered:
      (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: May 30 , 2023

. . . . . .    Adam L. Streltzer    . . . . . . .
(TYPE OR PRINT NAME OF CLAIMANT)

▶  
(SIGNATURE OF CLAIMANT)

| Estate of | Case Number |
|---|---|
| DAVID HALEVY | 24STPB01963 |

**Attachment to**
**CREDITOR'S CLAIM (DE-172)**

Decedent:      David Halevy ("**Decedent**")
Date of Death:   June 3, 2023

The Decedent owned an interest in Broadway Avenue Investments LLC ("**Broadway Borrower**"). For value received, claimant Archway Real Estate Income Fund I SPE I, LLC, a Delaware limited liability company ("**Claimant Archway**") made a loan to the Broadway Borrower in the principal amount of $16,942,500.00, on July 21, 2021 ("**Loan Obligation**"). The Loan Obligation is evidenced in part by a loan agreement, promissory note, continuing guaranty (discussed below), and any and all other documents or instruments executed by Broadway Borrower in favor of Claimant Archway in connection with the Loan Obligation, which are hereinafter referred to individually and collectively as the "**Loan Obligation Documents**."

To induce Claimant Archway to make the Loan Obligation, Alan Gomperts ("**Alan**"), Daniel Halevy ("**Daniel**"), and the Decedent executed and delivered to Claimant Archway a continuing guaranty of the Loan Obligation on July 21, 2021 ("**Continuing Guaranty**"). Pursuant to the terms of the Continuing Guaranty, the guarantors Alan, Daniel, and the Decedent, jointly and severally, and absolutely and unconditionally, guaranteed to Claimant Archway the prompt payment of all sums owed by Broadway Borrower to Claimant Archway pursuant to the Loan Obligation in accordance with the terms of the Loan Obligation Documents. A true and correct copy of the Continuing Guaranty is attached hereto as **Exhibit 1** and incorporated herein by this reference. Alan, Daniel, and the Decedent shall sometimes hereinafter collectively be referred to as the "**Broadway Guarantors**."

The Broadway Borrower and Broadway Guarantors defaulted under the terms of the Loan Obligation Documents, including, without limitation, pursuant to Section 5.1(o) of the loan agreement whereunder the Broadway Borrower was required to obtain a certificate of occupancy by January 21, 2022, for the Broadway Property but failed to do so and by failing to pay the Loan Obligation in full as of the scheduled maturity date, August 1, 2022.

In connection with the default, and at Broadway Borrower's request, Broadway Borrower and Claimant Archway executed that certain Settlement and Loan Modification Agreement on April 14, 2023 ("**Broadway Settlement Agreement**"),

| Estate of | Case Number |
|---|---|
| DAVID HALEVY | 24STPB01963 |

which among other things, extended the maturity date of the Loan Obligation to December 1, 2023, at which time the entire principal under the Loan Obligation plus all accrued and unpaid interest thereon would be due and payable as provided under the Loan Obligation Documents, and also the Loan Obligation principal balance was reduced from $16,942,500 to $15,241,093. The defaults otherwise remained uncured. A true and correct copy of the Broadway Settlement Agreement is attached as **Exhibit 2** and incorporated herein by this reference. The Broadway Settlement Agreement was not a novation, release, or modification of any of the terms, conditions, warranties, waivers, or rights set forth in the Loan Obligation Documents.

Concurrently with the execution of the Broadway Settlement Agreement, Claimant Archway made three (3) new loans in the aggregate amount of $4,000,000.00 (collectively "**New Loan Obligations**"), including the following:

> (A)    A loan to Negev Investments, LLC ("**Negev**") in the principal amount of $1,300,000.00) ("**Negev Loan**"), secured by the real property commonly known as 12800 Foxdale Drive, Desert Hot Springs, California. This loan is personally guaranteed by the Decedent, secured by the Decedent's membership interest in Negev ("**Negev Guaranty**"). A true and correct copy of the Negev Guaranty is attached hereto as **Exhibit 3** and incorporated by this reference.

> (B)    A new loan in the principal amount of $125,000.00 to an entity named SLA Investments, LLC, California limited liability company ("**SLA Borrower**"), secured by the real property commonly known as 1040 S. Los Angeles Street, Los Angeles, California. For value received, and to induce Claimant Archway to make the New Loan Obligations, Alan, Daniel, Decedent, and Decedent's spouse Sue Halevy executed and delivered to Claimant Archway a Continuing Guaranty dated April 14, 2023 ("**SLA Continuing Guaranty** "). Pursuant to the terms of the Second Continuing Guaranty, Alan, Daniel, Decedent, and Sue, jointly and severally, and absolutely and unconditionally, guaranteed to Claimant Archway the prompt payment of all sums owed pursuant to the New Loan Obligations. A true and correct copy of the SLA Continuing Guaranty is attached hereto as **Exhibit 4** and incorporated by this reference.

| Estate of | Case Number |
|-----------|-------------|
| DAVID HALEVY | 24STPB01963 |

   (C) A new loan to the Decedent, David Halevy and Sue Halevy, as trustees of the Halevy Family Trust dated September 6, 2010 ("**D&S Trust**"), Alan, Alan Gomperts and Sharon Gomperts, as trustees of the Gomperts and Halevy Family Trust ("**G&H Trust**") and Daniel in the principal amount of $2,575,000.00 ("**Personal Guarantors Loan**"), secured by the real property commonly known as 3538 Greenfield Avenue, Los Angeles, California, owned by G&H Trust, 133 S. Palm Drive, Beverly Hills, California, owned by D&S Trust, and 8561 Horner Street, Los Angeles, California, owned by Daniel. A true and correct cop of the Personal Guarantors Loan documents are collectively attached as **Exhibit 5** and incorporated by this reference.

Taking into account all payments, credits, interest, and charges, the balance due by the Decedent owed to Claimant Archway, as of the date of the Decedent's death June 3, 2023, is the following:

| | | |
|---|---:|---:|
| Loan Obligation: | $ | 14,517.141.08 |
| New Loan Obligations: | | |
| *Negev Guaranty* | | 119,062.50 |
| *SLA Continuing Guaranty* | | 2,452,687.50 |
| *Personal Guarantors Loan* | | 1,238,250.00 |
| TOTAL: | $ | **18,327,141.08** |

| Estate of | Case Number |
|---|---|
| DAVID HALEVY | 24STPB01963 |

**Attachment to**
**CREDITOR'S CLAIM (DE-172)**

**Copies of Documents In Support of Creditor's Claim**

# EXHIBIT 9

| ESTATE OF *(Name):* | | CASE NUMBER: |
|---|---|---|
| DAVID HALEVY | DECEDENT | 24STPB01963 |

## FACTS SUPPORTING THE CREDITOR'S CLAIM
### [X] See attachment *(if space is insufficient)*

| Date of item | Item and supporting facts | Amount claimed |
|---|---|---|
| | LOAN OBLIGATION: | |
| 07/21/2021 | Principal funding                          $ 16,942.500.00 | |
| | - Less all payments and credits (from 07/21/2021-06/02/2023) | |
| | + Plus all interest and charges (from 07/21/2021-06/02/2023) | |
| | Subtotal: | 14,517,141.08 |
| | NEW LOAN OBLIGATIONS: | |
| 04/14/2023 | Principal funding                          $ 4,000,000.00 | |
| | - Less all payments and credits (from 04/14/2023-06/02/2023) | |
| | + Plus all interest and charges (from 04/14/2023-06/02/2023) | |
| | Negev Guaranty subtotal: | 119,062.50 |
| | SLA Continuing Guaranty subtotal: | 2,452,687.50 |
| | Personal Guarantors Loan subtotal: | 1,238,250.00 |
| | | |
| | (SEE ATTACHMENT) | |
| | **TOTAL:** | **$** 18,327,141.08 |

**PROOF OF** [X] **MAILING** [ ] **PERSONAL DELIVERY    TO PERSONAL REPRESENTATIVE**
*(Be sure to mail or take the original to the court clerk's office for filing)*

1. I am the creditor or a person acting on behalf of the creditor.  At the time of mailing or delivery I was at least 18 years of age.
2. My residence or business address is *(specify):*
   300 Corporate Pointe, Suite 320, Culver City, CA 90230
3. I mailed or personally delivered a copy of this *Creditor's Claim* to the personal representative as follows *(check either a or b below):*
   a. [X] **Mail**. I am a resident of or employed in the county where the mailing occurred.
      (1) I enclosed a copy in an envelope AND
         (a) [ ] **deposited** the sealed envelope with the United States Postal Service with the postage fully prepaid.
         (b) [X] **placed** the envelope for collection and mailing on the date and at the place shown in items below following
              our ordinary business practices. I am readily familiar with this business' practice for collecting and
              processing correspondence for mailing. On the same day that correspondence is placed for collection and
              mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed
              envelope with postage fully prepaid.
      (2) The envelope was addressed and mailed first-class as follows:
         (a) Name of personal representative served: Daniel Halevy
         (b) Address on envelope: 8561 Horner St., Los Angeles, CA 90035
              COPY: David Soffer, Soffer Law Group, 345 N. Maple Dr #386, Beverly Hills, CA 90210
         (c) Date of mailing: May 30, 2024
         (d) Place of mailing *(city and state):* Culver City, California
   b. [ ] **Personal delivery**. I personally delivered a copy of the claim to the personal representative as follows:
      (1) Name of personal representative served:
      (2) Address where delivered:

      (3) Date delivered:
      (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: May 30 , 2023

. . . . . . . . Adam L. Streltzer . . . . . . . . .          ▶          
        (TYPE OR PRINT NAME OF CLAIMANT)                                        (SIGNATURE OF CLAIMANT)

# EXHIBIT 10

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 2:24-bk-12079-VZ |
| | ) | CHAPTER  11 |
| | ) | |
| SEATON INVESTMENTS, LLC, | ) | Los Angeles, California |
| | ) | |
| | ) | Thursday, December 5, 2024 |
| Debtor. | ) | |
| | ) | 11:00 a.m. |
| ARCHWAY BROADWAY LOAN SPE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO: 2:24-ap-01241 |
| vs. | ) | ADVERSARY |
| | ) | |
| THE HALEVY FAMILY TRUST DATED SEPTEMBER 8, 2010, ET AL, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |


#12.00   MOTION TO DISMISS COMPLAINT
FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER
JURISDICTION [DKT.NO.9]


BEFORE THE HONORABLE VINCENT P. ZURZOLO,
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:          See Page 2

Court Recorder [DECRO]:  Tom Bock
                         855 460-9641

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 8365
                       Corpus Christi, TX 78468
                       361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES**:


For Movants:                    RYAN COY, ESQ.
                                ZEV SHECHTMAN, ESQ.
                                Saul Ewing
                                1888 Century Park East
                                Suite 1500
                                Los Angeles, CA 90067
                                310-255-6168


For Respondent:                 GERRICK WARRINGTON, ESQ.
                                Frandzel Robins Bloom & Csato
                                1000 Wilshire Boulevard
                                19th Floor
                                Los Angeles, CA 90017

3

1    __Los Angeles, California; Thursday, December 5, 2024; 11:37 a.m.__

2                               --oOo--

3          **THE COURT:**  So Number 12 is next.  And that's a

4    motion to dismiss a complaint or for other related relief in

5    the Archway Broadway Loan versus Halevy and other parties,

6    adversary proceeding.

7          Can I please have an appearance on behalf of the

8    Movant first?

9          **MR. COY:**  Good morning, Your Honor.  Ryan Coy and my

10   colleague Zev Shechtman from Saul Ewing on behalf of the

11   Movant.

12         **THE COURT:**  Good morning.  And on behalf of the

13   respondent?

14         **MR. WARRINGTON:**  Good morning, Your Honor.  Gerrick

15   Warrington for the plaintiff, Archway Broadway Loan SPE, LLC.

16         **THE COURT:**  Good morning.  Okay.  Who's going to make

17   oral argument?  Mr. Coy?

18         **MR. COY:**  Myself, Your Honor.

19         **THE COURT:**  All right.  Please come to the lectern

20   and do so.

21         **MR. COY:**  Your Honor, the Movants seek to dismiss the

22   complaint for three reasons.  The first reason being that we

23   believe that the complaint is time barred by the plain language

24   of the complaint.

25         In the complaint, the Plaintiff states a date of

4

1  rejection as of July 5th, 2024.  Per the statutory language,

2  this deemed rejected date is equivalent to the date of giving a

3  notice of rejection.  And under Probate Code Section 9353, the

4  notice of rejection begins the 90-day statute of limitation

5  under the statute.  And the complaint was filed over 90 days

6  after that date.

7         The statute does not make an exception for a deemed

8  rejected date.  And in the opposition the Plaintiff cites

9  caselaw saying that filing a complaint is conclusive evidence

10 of the date of when a probate claim is deemed rejected.

11        However, the caselaw actually supports the Movant's

12 position because the caselaw says in absence of other proof.

13 We would submit to Your Honor that there is other proof, the

14 factual admission in the complaint of the July 5th deemed

15 rejected date.  This goes to supporting that the statute of

16 limitations would have began to run on that date and the

17 conclusive evidence of filing the complaint would not be

18 controlling since there's an earlier date that's identified.

19        Further, the automatic stay does not apply to non-

20 debtors under the circumstances.  There's an argument that

21 there's a tolling of the potential statute of limitations

22 because of the automatic stay.  However, if the automatic stay

23 did apply, then we would submit and argue that there's -- that

24 the creditor claim that was filed without any relief from the

25 automatic stay on May 30th would have potentially been void by

5

1   failing to seek relief before filing that creditor's claim.

2        The Defendants, the Movants did not identify this

3   July 5th date, the Plaintiff did.  And caselaw says -- caselaw

4   and the statute support this argument.

5        The second argument would be that there's a lack of

6   subject matter jurisdiction.  The probate exception we believe

7   would apply under the circumstances.

8        While the Plaintiff states that this is a claim to

9   seek determination of assets of the bankruptcy estate, we

10  really believe that this is -- the true heart of what is

11  happening is trying to seek a determination of what are assets

12  of the probate estate.

13       Based on --

14       **THE COURT:**  Isn't that just one side of the coin or

15  the other?

16       **MR. COY:**  I think it could be.  I think there's --

17  there could be reasonable arguments I think on both sides but I

18  think that it's the circumstances and the context around the

19  complaint.  And this probate claim and all of these issues stem

20  from a claim that was deemed rejected through a probate

21  proceeding I think go to showing that this probate exception

22  likely applies to at least some of the claims if not all of the

23  claims.

24       However, if Your Honor determines that there is

25  subject matter jurisdiction because of the request to make a

Case 2:24-bk-12079-VZ   Doc 357-2   Filed 12/17/24   Entered 12/17/24 16:51:48   Desc
Declaration of Bobby Khorshidi    Page 99 of 104

6

1    determination about bankruptcy estate assets, we believe that

2    Your Honor should exercise the discretionary abstention

3    principles and the doctrine of discretionary abstention.

4           The opposition says that the core issue is, again, a

5    determination of the bankruptcy estate assets but really this

6    is about the rejected claim in the probate proceeding.  And

7    this point is ignored as well as the fact that the complaint

8    could have been brought in state court which is also not

9    acknowledged in the opposition.

10          We believe that the factors under -- the 12 factors

11   to exercise discretionary abstention which are detailed in the

12   motion strongly support the Court's exercise of discretionary

13   abstention under the circumstances.

14          There's really not a strong argument I believe made

15   in the opposition against discretionary abstention other than

16   really hanging the hat on the that there's a request for the

17   bankruptcy court to make a determination under 541 of what is

18   property of the estate.

19          But even if that was the case and the Court does what

20   the Plaintiff wishes, which is to determine that the

21   unidentified assets that are requested to be identified in the

22   complaint are determined to not be property of the bankruptcy

23   estate, then it would beg even further question of why this

24   court would exercise its jurisdiction on the remaining claims.

25          And so because of the nature and the context of what

Case 2:24-bk-12079-VZ   Doc 357-2   Filed 12/17/24   Entered 12/17/24 16:51:48   Desc
Declaration of Bobby Khorshidi    Page 100 of 104

7

1   the Plaintiff is asking the Court to do to determine that this

2   doesn't belong in the bankruptcy case, I think is even further

3   of a basis in addition to the factors that we discuss and argue

4   in the motion and the reply for why this court should exercise

5   discretionary abstention and dismiss the complaint.

6          Thank you, Your Honor.

7          **THE COURT:**  Thank you very much.

8          Okay.  Mr. Warrington?

9          **MR. WARRINGTON:**  Thank you, Your Honor.  Gerrick

10  Warrington for the plaintiff, Archway Broadway Loan SPE.

11         I have two points.

12         The first point is that the Defendants' claim here is

13  that the Plaintiff made an affirmative election in its own

14  complaint to reject its claim retroactively, essentially a

15  self-defeating act, a forfeiture.  But the complaint doesn't

16  say that.

17         They point to the defined term "rejection date" but

18  that is a defined term.  It does not occur anywhere else in the

19  complaint.  It certainly doesn't make an affirmative election.

20  So construed in the light most favorable to the Plaintiff, the

21  Court should reject that argument.

22         The second point is that even if the Defendants'

23  interpretation were correct, Section 108(c) would toll the

24  statute of limitations.

25         The Defendants assert that Section 108(c) doesn't

Case 2:24-bk-12079-VZ   Doc 357-2   Filed 12/17/24   Entered 12/17/24 16:51:48   Desc
Declaration of Bobby Khorshidi   Page 101 of 104

8

1    apply because the automatic stay doesn't apply but under the

2    Ninth Circuit's fair contemplation test it certainly does

3    apply.

4           Archway's claims arose prepetition.  We've pointed

5    out that the common nucleus of operative fact all arise from

6    prepetition guarantees of the decedent.

7           I can address the subject matter jurisdiction

8    arguments as well if the Court would like but those were the

9    two arguments I wanted to present at least.

10          **THE COURT:**  Thank you very much.

11          Do you wish to make a reply, Mr. Coy?

12          **MR. COY:**  Just briefly, Your Honor.

13          The Plaintiff argues that the claim only arose

14   prepetition but the claim as is clearly identified on the

15   complaint and is stated in the title of the complaint, this

16   claim is based on a rejected probate claim.

17          If the claim in the probate case, which was filed on

18   May 30th, post-petition, was not rejected and was accepted by

19   the person or representative, the complaint's claims wouldn't

20   be supported.  So I would dispute that the relief from stay did

21   apply because if relief from stay did apply then it would beg

22   the question of why or how did the Plaintiff file and serve its

23   probate claim at post-petition if the automatic stay did apply

24   to the probate claim being rejected based on the complaint.

25          And so I think that these arguments kind of requires

9

1   some getting into the probate code and understanding this.  And

2   I think that some of these issues I understand may not be

3   brought before Your Honor very often but it's I think a further

4   basis for why the complaint should be time barred based on the

5   plain language of the complaint and also why there's strong

6   support for discretionary abstention under the circumstances.

7         Thank you.

8         **THE COURT:**  Okay.  Thank you both very much.

9         There are several remedies sought in this motion.

10  One makes sense to me and I'll tell you why I think so.

11        Nearly all the issues raised in this complaint turn

12  -- apart from the assertion that it's a request to figure out

13  what is estate property and what is not, they nearly all turn

14  on state law.

15        There's an action that's pending in state court, the

16  probate action is pending.

17        The claims that are set forth in the complaint in

18  this adversary proceeding, there clearly is a right to a jury

19  trial as to some of those claims.

20        The claims for relief that pertain to the actions

21  taken by the Defendant Debtors are almost all with regards to

22  actions taken on behalf of non-debtor entities.

23        The determination here I think would have a minimal

24  impact on the bankruptcy estate and to the extent there is an

25  impact on the estate and that it affects the interests of the

Case 2:24-bk-12079-VZ   Doc 357-2   Filed 12/17/24   Entered 12/17/24 16:51:48   Desc
Declaration of Bobby Khorshidi   Page 103 of 104

10

1    Plaintiffs, they have filed proofs of claim.  And although

2    there may be some issues that are -- I wouldn't say identical

3    -- at least related between the issues that are set forth in

4    the proofs of claim and in this action, they -- that doesn't

5    necessarily mean they have to be tried or considered or

6    adjudicated together with the proofs of claim.

7            So you may have guessed by my recitation in my

8    findings of fact and conclusions of law, I find that it is

9    appropriate under 28 USC Section 1334(c)(1) to abstain from

10   hearing this adversary proceeding.

11           My findings of fact and conclusions of law are on the

12   record.  I ask the moving parties' counsel to prepare a

13   proposed form of order consistent with my findings of fact and

14   conclusions of law.  Please share it with counsel for the

15   respondent before lodging it with the Court.

16           Thank you very much.

17        **(Proceeding adjourned at 11:48 a.m.)**

18

19

20

21

22

23

24

25

Case 2:24-bk-12079-VZ   Doc 357-2   Filed 12/17/24   Entered 12/17/24 16:51:48   Desc
Declaration of Bobby Khorshidi   Page 104 of 104

11

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **December 10, 2024**

        **Signed**                                    **Dated**


*TONI HUDSON, TRANSCRIBER*