Michael Gerard Fletcher (State Bar No. 070849)
    mfletcher@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
    gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | Lead Case No. 2:24-bk-12079-VZ |
|---|---|
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |
| Debtors and Debtors-in-Possession. | 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and 2:24-bk-12076-VZ |

Affects:

☐ All Debtors
☐ Seaton Investments, LLC
☐ Colyton Investments, LLC
☒ Broadway Avenue Investments, LLC
☐ SLA Investments, LLC
☐ Negev Investments, LLC
☐ Alan Gomperts
☐ Daniel Halevy
☐ Susan Halevy

Chapter 11

**ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:**

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND**

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364**

Date:        February 25, 2025
Time:        11:00 a.m.
Crtrm.:      1368
             255 E. Temple Street
             Los Angeles, CA 90012

Hon. Vincent P. Zurzolo

**TABLE OF CONTENTS**

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Page**

I.    INTRODUCTION ...................................................................................................6

II.   BACKGROUND ....................................................................................................6

    A.    Archway makes a $16,942,500.00 bridge loan to Broadway.........................6

    B.    Broadway fails to obtain a certificate of occupancy within six months....................7

    C.    The parties enter into the Settlement Agreement. ..........................................7

    D.    The Individual Debtors are required to fund capital improvements. ..............7

    E.    The Individual Debtors have significant net worths. .....................................7

    F.    The loan obligations mature. ........................................................................7

    G.    The Debtors file chapter 11. .........................................................................7

    H.    Archway files its proofs of claim. ................................................................8

    I.    The Debtors owe Archway about $23 million. ..............................................8

    J.    The Debtors seek approval of multiple leases without disclosing key facts............8

    K.    The Court terminates the stay as to Broadway. ............................................8

    L.    The Court sets an OSC re dismissal; emphasizes cooperation in discovery.............8

    M.    Broadway files Lease and Loan Motions. .....................................................9

    N.    Still no disclosure of the financials of the proposed tenant or its "designee."...........9

    O.    Archway issues subpoenas to the Proposed Tenants.....................................10

    P.    Archway immediately attempts to serve the Proposed Tenants, among others. ..............................................................................................10

    Q.    Archway propounds document requests on Broadway. ...............................11

    R.    Archway makes a FRE 1006 request on Broadway......................................11

    S.    To date, no discovery has been provided. ...................................................11

III.   DISCUSSION ......................................................................................................11

    A.    The Bankruptcy Code prohibits approval of the Lease...............................11

    B.    There is insufficient evidence for the Court to approve the Lease...........................12

    C.    The Lease is a sub-rosa plan. ......................................................................15

ARCHWAY'S OMNIBUS OBJECTIONS TO LEASE AND LOAN MOTIONS

1    D.    The Court should not approve the DIP Loan. ............................................................16

2    E.    Notice and service of the Lease and Loan Motions were defective.........................18

3    IV.    CONCLUSION ...........................................................................................................19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

ARCHWAY'S OMNIBUS OBJECTIONS TO LEASE AND LOAN MOTIONS

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Federal Cases**

*In re Ames Dep't Stores, Inc.*,
  115 B.R. 34 (Bankr. S.D.N.Y. 1990) ........................................ 16

*In re Baroni*,
  643 B.R. 253 (Bankr. C.D. Cal. 2022) ...................................... 17

*In re Chevy Devco*,
  78 B.R. 585 (Bankr. C.D. Cal. 1987) ................................... 15, 16

*In re Def. Drug Stores, Inc.*,
  145 B.R. 312 (B.A.P. 9th Cir. 1992) ........................................ 14

*In re Diocese of Camden*,
  653 B.R. 722 (Bankr. D.N.J. 2023) .......................................... 12

*In re Ephedra Prod. Liab. Litig.*,
  329 B.R. 1 (S.D.N.Y. 2005) ................................................... 17

*In re Latam Airlines Grp. S.A.*,
  620 B.R. 722 (Bankr. S.D.N.Y. 2020) ....................................... 14

*In re Swedeland Dev. Group, Inc.*,
  16 F.3d 552 (3d Cir. 1994) ..................................................... 15

*In re Swedeland Dev. Group, Inc.*,
  552 F.3d at 564 .................................................................. 16

**Federal Statutes**

11 U.S.C. § 362 ..................................................................... 11

11 U.S.C. § 362(d)(2) ............................................................. 11

11 U.S.C. § 363(b) .............................................................. 11, 12

11 U.S.C. § 363(d)(2) .......................................................... 11, 12

11 U.S.C. § 363(e) ................................................................. 16

11 U.S.C. § 363(p)(1) ............................................................. 16

11 U.S.C. § 364 ................................................................. 6, 14

11 U.S.C. § 364(c) ................................................................. 16

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

ARCHWAY'S OMNIBUS OBJECTIONS TO LEASE AND LOAN MOTIONS

11 U.S.C. § 364(d)(1)(B) ........................................................................................................... 15

11 U.S.C. § 364(d)(2) ................................................................................................................. 15

**Rules**

Fed. R. Bankr. P. 2002(c)(1) ...................................................................................................... 18

Fed. R. Bankr. P. Rule 4001 ....................................................................................................... 15

Fed. R. Bankr. P. 4001(c)(1)(A) ................................................................................................ 17

Fed. R. Bankr. P. 6004(a) ........................................................................................................... 18

Fed. R. Bankr. P. 7004 ............................................................................................................... 17

Fed. R. Bankr. P. 9014 ......................................................................................................... 10, 17

Fed. R. Bankr. P. 9014(b) ........................................................................................................... 17

Fed. R. Bankr. P. 9014(c) ........................................................................................................... 15

Fed. R. Evid. 1006 ...................................................................................................................... 11

Local Rule 9013-1(*l*) ................................................................................................................. 14

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 363.04 ....................................................................................... 11

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

ARCHWAY'S OMNIBUS OBJECTIONS TO LEASE AND LOAN MOTIONS

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## I.    INTRODUCTION[1]

We are now on **day 331**, and after multiple leases and multiple motions to approve such leases, there are

**still**

***no***

**tenant**

**financials.**

We don't even know *who* the tenant will be.

***Still*** no certificate of occupancy or evidence as to when we might expect a CO or TCO.

***Still*** no construction budget, architectural renderings, or construction timeline.

***Still*** no evidence connecting the dots between a multi-million-dollar DIP loan with a priming lien and tenant improvements.

***Still*** no evidence of adequate protection.

The Court should put an end to this gambit.

## II.    BACKGROUND

### A.    Archway makes a $16,942,500.00 bridge loan to Broadway.

In July 2021, Archway made a $16,942,500.00 bridge loan to Broadway ("Broadway Loan"). The Loan Agreement specifies that it is an Event of Default if Broadway fails to obtain a certificate of occupancy for the Broadway Property within 6 months. *See* Loan Agreement at § 5.1(o).

---

[1] Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC ("Archway"), submits this Objection ("Objection") to the *Motion Of Debtor And Debtor In Possession Broadway Avenue Investments, LLC For Order Authorizing Debtor To Enter Into Post-Petition Lease* ("Lease Motion") (Dkt. 420) and the companion *Motion Of Debtor And Debtor In Possession Broadway Avenue Investments, LLC For Order Authorizing Debtor To Obtain Post-Petition Financing Pursuant To 11 U.S.C. § 364* ("Loan Motion") (Dkt. 418) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors").

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**B.      Broadway fails to obtain a certificate of occupancy within six months.**

By January of 2022, Broadway had failed to obtain a certificate of occupancy as required under the Loan Agreement. By August of 2022, the Broadway Loan matured.

**C.      The parties enter into the Settlement Agreement.**

In April of 2023, the parties entered into a Settlement Agreement, extending the maturity to December 1, 2023.

As part of the Settlement Agreement, Archway and the Individual Debtors entered into three New Loans, evidenced by loan documents and additional collateral pledges. Such collateral pledges cross-collateralize the Broadway Loan as, among other thigs, third-party accommodation pledges in support of the Broadway Loan as well as each of the other New Loans.

**D.      The Individual Debtors are required to fund capital improvements.**

Broadway's operating agreement ("Operating Agreement") contains a mandatory capital call provision that requires Mr. Gomperts to make a cash call notice on Broadway's members, himself, Ms. Halevy, and his brother-in-law, Mr. Halevy—the "Individual Debtors."

**E.      The Individual Debtors have significant net worths.**

In August of 2023, the Individual Debtors provided Archway with personal financial statements stating that they had over $60 million in net worths.

The mandatory capital call provision in Broadway's Operating Agreement, along with the guaranties of the Individual Debtors (not to mention their personal financial statements reflecting the over $60 million in net assets), formed part of the basis for Archway's decision to make the bridge loan to Broadway in the first place.

**F.      The loan obligations mature.**

In December of 2023, all four of the Loans matured, triggering maturity defaults.

**G.      The Debtors file chapter 11.**

In March of 2024, the Debtors filed chapter 11 bankruptcy petitions, designating Broadway, Negev, and SLA as single asset real estate debtors.

**H.      Archway files its proofs of claim.**

In July, 2024, Archway filed its proofs of claim, reflecting, among other things, the cross-collateralization provisions in the loan documents.

**I.      The Debtors owe Archway about $23 million.**

As of September 2024, the Debtors owe Archway about $23 million.

The last payment Archway received was well before the December 2023 maturity.

**J.      The Debtors seek approval of multiple leases without disclosing key facts.**

Beginning in October of 2024, the Debtors have filed multiple motions to approve multiple leases with multiple different tenants. *See* Dkts. 237, 248, 310. All such motions were either not prosecuted, withdrawn, or denied. *See* Dkts. 251, 391.

The prior lease motions were supported by Steve Bombola who was, at the time, involved in contempt proceedings in an Oklahoma federal receivership where he was held in contempt for stealing receivership assets and lying to the receiver about it. *See, generally*, Declaration of Gerrick M. Warrington Dkt. 330-2. Mr. Bombola and David Schwarcz (an officer of DMB at the time, until he was removed), were involved in the failed use of government funds in connection with the Oklahoma entity that later filed bankruptcy and were moved into the federal receivership where Mr. Bombola was held in contempt. *See id.* Mr. Schwarcz was an officer of DMB up until November of 2024, when he was removed as DMB's CEO per the California Secretary of State's website and replaced by Judy Cox. *See id.*

None of the these misdeeds were ever disclosed by the Debtors.

**K.      The Court terminates the stay as to Broadway.**

On December 10, 2024, the Court granted Archway's motion for relief from stay as to the Broadway Property, terminating the stay as to Broadway and the estate, and providing that Archway may foreclose as soon as April 11, 2025. *See* RFS Order ("RFS Order") (Dkt. 364).

**L.      The Court sets an OSC re dismissal; emphasizes cooperation in discovery.**

Upon terminating the stay, the Court set an OSC re dismissal. *See* Dkt. 367. In response to the OSC, the Debtors filed multiple other leases in January 2025. *See, e.g.*, Dkt. 397, 412. No

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

redlines were provided, but as discussed below the two prior leases contain provisions that are significantly different than the current Lease. *See* Warrington Decl. Exh. 7 (redline).

At the OSC hearing, the Court continued the OSC re dismissal to February 27, 2025, and emphasized that the proposed tenants must cooperate in providing financial information, as that will be a crucial fact in determining feasibility.

**M.      Broadway files Lease and Loan Motions.**

On February 4, 2025, Broadway filed the Lease and Loan Motions. The Lease provides that the proposed tenants are DMB and View Behavioral Health, LLC ("VBH") or its designee. Lease Dkt. 421-4 at 6 of 110. The Lease Motion does not provide financials for DMB or VBH, and it does not identify the "designee."

A declaration filed in connection with the Lease Motion attaches a letter dated June 9, 2024, from Simon Financial, Inc. ("Simon"), which refers to VBH as well as three purported subsidiaries of VBH: Collaborative Neuroscience Network LLC dba Oceanview Adult Psychiatric Hospital ("CNN"), View Behavioral Health Colton, LLC ("VBHC"), and View Behavioral Health Colton 2 LLC ("VBHC2" and collectively with CNN and VBHC, the "VBH Subsidiaries").

**N.      <u>Still</u> no disclosure of the financials of the proposed tenant or its "designee."**

The Plan hinges on approval of a Lease and DIP Loan, prior versions of which were previously denied *twice* by the Court. The Debtors have never provided any financials for their proposed tenants, despite multiple, repeated, and ongoing requests for such financials by Archway and its counsel.

The current Lease says that the tenant will be VHB—***or its designee***. Lease Dkt. 421-4 at 6 of 110. The Debtors do not state who the "designee" will be, nor do they provide financials for this mystery tenant or for VBH for that matter.

Under the current Lease, DMB—the same entity connected with Mr. Schwarcz—is supposed to be responsible for handling government grant money and paying that over to Broadway. *See* Lease at § 4.06.3.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**O.      Archway issues subpoenas to the Proposed Tenants.**

The next day, on February 5, 2025, Archway issued discovery under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including subpoenas to DMB and VBH (together, the "Proposed Tenants"), as well as the VBH Subsidiaries, seeking, among other things, documents related to their _**current**_ financial wherewithal.

On February 6, 2025, Archway issued additional subpoenas to the CEO of VBH and the VBH Subsidiaries, Jack Stephens ("Stephens"). Archway also issued subpoenas to Simon, the DIP Lender, and a contractor listed in connection with the Broadway Property, Almighty Builders Inc. ("Almighty"). Of note, Almighty appears to be an FTB-suspended entity.

Archway issued subpoenas to the addresses for the Proposed Tenants as reflected on the California Secretary of State's website. But, as discussed below, those efforts were unsuccessful.

**P.      Archway immediately attempts to serve the Proposed Tenants.**

Immediately after Archway issued the subpoenas, it directed its attorney service to have a registered process server personally serve the subpoena immediately on a rush basis on the Proposed Tenants.

None of the efforts to serve the Proposed Tenants were successful.

As for VBH and the VBH Subsidiaries, the process server reported that the address attempted was bad and that the person to was there stated that VBH had not been at that address _for the past two years_. Again, this is the address for service of process on VBH as per the California Secretary of State and is the same address listed on the Lease. _See_ Warrington Decl., Exh. 8.

As for DMB, the process server stated "No answer at the home, I can see the lights on inside the home, television on. I rang the doorbell and waited but no one came out." Warrington Decl., Exh. 8 (Declaration of Esmeralda Pech). On follow-up, the process server reports: "I spoke to John Doe (male, Caucasian, gray hair, 50's, 5'6, 175lbs, glasses), and he said we had the wrong address. _The subject is unknown and does not live here._" Warrington Decl., Exh. 8 (emphasis added).

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Q.     Archway propounds document requests on Broadway.**

On February 6, 2025, Archway propounded requests for production of documents ("RFPs") on Broadway, seeking, among other things, documents related to the Lease, the progress toward obtaining a certificate of occupancy, and the Proposed Tenants' financial wherewithal. The response deadline for the RFPs is March 10, 2025.

**R.     Archway makes a FRE 1006 request on Broadway.**

On February 7, 2025, Archway served Broadway with a request under Rule 1006 of the Federal Rules of Evidence for production of copies of the documents underlying the summary/chart attached as Exhibit 1 to the Declaration of Daniel Halevy (Dkt. 421-2 at 5). To date, no such production has been made.

**S.     To date, no discovery has been provided.**

Despite significant and immediate attempts to serve the Proposed Tenants (at least those whose names have been disclosed), no discovery responses or documents have been provided.

## III.     DISCUSSION

The following sections analyze and discuss the applicable legal standards and issues raised by the motion.

**A.     The Bankruptcy Code prohibits approval of the Lease.**

Section 363(d)(2) of the Bankruptcy Code provides that a debtor-in-possession may, among other things, lease property of the estate under § 363(b) "**only to the extent not inconsistent with** any relief granted under subsection … (d) … of section 362." 11 U.S.C. § 363(d)(2) (emphasis added). *See also* 3 COLLIER ON BANKRUPTCY ¶ 363.04 (Richard Levin & Henry J. Sommer eds. 16th ed.) ("[A]ny use, sale or lease of property outside of the ordinary course of business is limited by any stay relief previously granted, even if the use, sale or lease is not itself objected to.").

Here, on December 19, 2024, the Court entered an order granting Archway relief from the automatic stay under § 362(d)(2). *See* RFS Order (Dkt. 364). The RFS Order terminated the stay as to Broadway and its bankruptcy estate. *See id.*

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    But now, Broadway is asking the Court to approve a **15-year lease** of the Broadway

2   Property under § 363(b). The Lease is inconsistent with the relief granted under the RFS Order.

3    If approved, the Lease would impair Archway's rights, including its rights to foreclose and

4   sell the Broadway Property. *See* Lease § 1.11(c) (purporting to give the tenant an up to $5.7

5   million reimbursement right from any foreclosure or consensual sale proceeds and to record

6   instruments which establish this reimbursement rights). *See* Declaration of Bobby Khorshidi ¶ 19.

7   This would chill bidding at the foreclosure sale and any subsequent sale. If approved, it would

8   purportedly force Archway to become a "Successor Lessor," subordinating its rights further. *See*

9   Lease Art. XII (providing that the Lease shall remain in effect and bind Archway post-

10  foreclosure). *See* Khorshidi Decl., ¶ 19. The Lease would also prevent Archway from obtaining a

11  rents and profits receiver to take possession of the rents, as permitted under its loan documents and

12  applicable state law. *See* Deed of Trust at § 2.1 (providing that Archway is entitled to possession

13  of rents and the appointment of a receiver to collect rents upon Broadway's default).

14    Accordingly, § 363(d)(2) prohibits Broadway from obtaining approval of the Lease, and

15  the Court deny such request.

16    **B.    Broadway has not met its burden to approve the Lease.**

17    The proponent of a lease outside of the ordinary course bears the burden of demonstrating,

18  at minimum, that there is not only a sound business purpose, but also that the terms are fair,

19  adequate notice has been provided, and the parties are acting in good faith. *See In re Diocese of*

20  *Camden*, 653 B.R. 722, 740 (Bankr. D.N.J. 2023) (citations omitted).

**No Tenant Financials**

22    Here, Broadway has **still** not provided any evidence of the Proposed Tenants' financial

23  wherewithal to perform under the Lease. It is not even clear who the tenant will be—the Lease

24  defines "Lessee" to include VBH **or** its "designee." There are no financials for VBH or this

25  mystery "designee."

**No Certificate of Occupancy**

27    Broadway and Mr. Gomperts claim that the Lease will begin generating full $200,000.00

28  in rent "in *month seven* of the Lease" sufficient to fund a plan of reorganization. Gomperts Decl.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Dkt. 721-1 at 5:4 (emphasis added). But they admit that under the Lease, the Lessee's full rent

2    obligations do not commence until Broadway obtains a certificate of occupancy ("CO").

3        To that point, Mr. Halevy announces that "All of the issues standing in the way of

4    obtaining a certificate of occupancy have been addressed." Halevy Decl., Dkt. 421-2 8:14–15. He

5    goes on to state that he is scheduling fire alarm and backup generator inspections with LAFD for

6    early February after which "we will be ready for a final building walk-through for a certificate of

7    occupancy." Halevy Decl., 8:17–19.

8        But there's a problem.

9        Nowhere does Broadway address the fact that their proposed use of the Broadway Property

10   is **different** than their currently permitted uses. And there is no evidence that Broadway has even

11   started the 1–2 year process of converting the existing retail/office use to a behavioral health

12   treatment use. *See* Declaration of Kimberlina Whettam ¶ 6–8. This change of use process—which

13   has not even begun based on public records—requires an entirely different permit than the existing

14   one. *See id.* at ¶ 9. In addition, a formal Plan Check submittal is required as well as outside agency

15   review and clearances, and approval by City Planning to comply with the Broadway Community

16   Design Overlay ("CDO") and Community Plan Implementation Overlay ("CPIO"). *See id.* at ¶ 10.

17   There are no records indicating any previous change in use from office/retail to the proposed use.

18   *Id.* at ¶ 11. This 1–2 year process does not even include processing delays due to the January fires

19   or the prioritization of affordable housing or the 2028 Olympics. *See id.* at ¶ 16.

20       So, Broadway's assumed timing—a CO in early February—is completely untethered to

21   reality.

22       Mr. Gomperts's testimony that the full $200,000.00 in rent will start in "month seven of

23   the Lease" is also erroneous. The Lease provides that rent obligations do not start until **_six months_**

24   **_after_** a CO or TCO is obtained. *See* Lease § 1.13(a), (b). More specifically, if Broadway obtains a

25   TCO, then six months **later**, the Lessee is supposed to start paying only $75,000.00 per month for

26   the "Lower Floors"—not the full $200,000.00 per month. The full rent does not kick-in until six

27   months **after** a full CO is obtained. *Compare* Lease § 1.05 *with* §§ 1.13(a), (b). If Mr. Gomperts'

28   testimony were correct, Broadway would already have a CO in hand by the hearing date or shortly

1   thereafter since the Debtors' plan projections assume that Broadway will have a full CO by March

2   2025. *See* Dkt. 427 at 41. But there is ***no credible evidence*** to support any timing on the CO/TCO.

3   In actuality, the timeline for Broadway obtain a CO is completely hopeless as it relates its plan and

4   the Lease itself. *See* Whettam Declaration.

5       At the relief from stay hearing in December, Broadway's counsel reported that Broadway

6   *already* had a TCO. But what was not explained at that time was that the existing TCO is *for retail*

7   *and office purposes*—a GAP store and offices—not suitable for the proposed in-patient/out-patient

8   drug treatment as proposed under the Lease. *See, generally*, Whettam Decl. Such a change in use

9   from retail/office to medical, social services, and in-patient/out-patient drug-treatment would

10  require a new permit and a new TCO. *See id.* ¶¶ 8–9. This would take a significant amount of

11  time—at least 1–2 years at best, given the current state of affairs. *See id.* at ¶ 6.

**No Evidence of Construction Budget, Timeline, etc.**

13      There is also ***still*** no evidence that the DIP Loan will cover the cost needed to build out the

14  basement, first floor, and/or second floor. There are no architectural renderings, construction

15  budgets, timeline, or budget. There are no declarations from any architect or construction

16  manager.

**No Evidence of Broadway's Financial Abilities**

18      There is no evidence concerning the likelihood that Broadway will be able to repay the

19  DIP Loan in full on its one-year maturity. There is no evidence of the likelihood of grant funding.

20  There is no evidence that Broadway will be able to fund the debt service payments to the DIP

21  Lender. The Broadway MORs reflect it will not be able to meet these debt service obligations.

**No Evidence of Zoning Compliance**

23      The Lease entails changing the use of the Broadway Property from retail/office to

24  providing medical and social services on both an in-patient and out-patient basis, including the

25  Lessee obtaining the requisite licenses to operate a residential behavioral health facility on the

26  Upper Floors and converting Floors 7 and 8 into a licensed psychiatric health facility. *See* Lease at

27  §§ 1.11, 4.03. But there is no evidence of plans, architectural drawings, or other efforts to bring

28  the Broadway Property into compliance with the zoning code and Community Plan for the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  Downtown Los Angeles community, called DTLA 2040, which took effect February 6, 2025. *See*

2  Declaration of Ryan Leaderman. At a minimum, to allow the proposed use at the Broadway

3  Property that the Lease Motion and Lease contemplates, a Downtown CPIO clearance, building

4  permit, and application for a change of use would be necessary. *See id.*

5  In short, none of the deficiencies that have existed in the past lease motions and renewed

6  lease motions have been cured, and yet further problems have arisen.[2]

7  The Court should deny the Lease and Loan Motions for this reason alone.

8  **C.    The Lease is a sub-rosa plan.**

9  "A debtor cannot enter into a transaction that would amount to a sub rosa plan of

10  reorganization or an attempt to circumvent the chapter 11 requirements for confirmation of a plan

11  of reorganization." *In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 812 (Bankr. S.D.N.Y. 2020)

12  (citations and internal quotation marks omitted). "The bankruptcy court cannot, under the guise of

13  section 364, approve financing arrangements that amount to a plan of reorganization but evade

14  confirmation requirements." *In re Def. Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)

15  (citations omitted).

16  Here, Broadway's Lease and Loan Motions seek approval of **major transactions** that

17  should only be approved through the strictures of a chapter 11 plan process, with Archway having

18  full discovery rights, including experts. Broadway seeks to bind creditors of *all* the Debtors'

19  estates to a 15-year lease, a priming loan, and subject to a purchase option, which is not served

20  properly or otherwise disclosed in the Rule 4001 statement as required. *See* Lease Art. XVII.

21  Not only were these motions ***not served on all the Debtors' creditors***, but also Broadway

22  has made no effort to disclose the key risks associated with these transactions. In a chapter 11 plan

23  scenario, the Debtors—all of them, not just Broadway—would be required to disclose to the

24  creditors of each one of their estates—not just Broadway's creditors, but all creditors—adequate

25  information concerning these lease and loan transactions under § 1125(a).

26  _____

27  ___[2] There has also been no effort to comply with local rule 9013-1(*l*), which failure "is
grounds for the court to set aside any order or ruling made on the subsequent motion and subjects

28  the offending party or attorney to sanctions."

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    The Debtors, which include the members of Broadway, are attempting to rush these

2  motions through, all while sidestepping the creditor protections of disclosure, voting, and best

3  interests (without adequate notice or due process). Then, they claim they will rush through a

4  cramdown confirmation in the span of only a few *weeks*. Archway, however, has rights under Rule

5  9014(c) to discovery, including expert witnesses. The Lease and Loan Motions—which do not

6  provide sufficient due process in the first place—foist all of the risk of failure on Archway. Courts

7  simply do not allow such gambling in violation of Code protections. *See In re Chevy Devco*, 78

8  B.R. 585, 590 (Bankr. C.D. Cal. 1987) ("In this case the secured creditor is being made to

9  subordinate so that those with lower priority can potentially make a profit. This is not to be

10  allowed.").

11    The Court should not permit the Debtors, through Broadway, to preempt and dictate the

12  terms of a future plan—without any of the due process safeguards entailed in a plan process. As

13  discussed more fully below, this failure of notice is compounded by the Loan Motion, which

14  entails guaranties from the Individual Debtors—without any notice to the creditors of their estates.

**D.    The Court should not approve the DIP Loan.**

16    A court may authorize a priming lien only if (a) the debtor-in-possession is unable to

17  obtain such credit otherwise and (b) there is adequate protection to existing lienholders to-be-

18  primed. The touchstone of any motion to borrow is that the preexisting secured debt be adequately

19  protected. *See* 11 U.S.C. § 364(d)(1)(B); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d

20  Cir. 1994). The debtor bears the burden of proof on this issue. *See* 11 U.S.C. § 364(d)(2). *See also*

21  11 U.S.C. § 363(e). To suffice, the "proposal should provide the pre-petition secured creditor with

22  the same level of protection it would have had if there had not been post-petition financing." *In re*

23  *Swedeland Dev. Group, Inc.*, 552 F.3d at 564. The "law does not support the proposition that a

24  creditor … undersecured by many millions of dollars, may be adequately protected when a

25  superpriority lien is created without the provision of additional collateral by the debtor." *Id.* at

26  567. The court "shall prohibit or condition such … lease as is necessary to provide adequate

27  protection of [an entity that has an interest in property proposed to be leased]." 11 U.S.C. § 363(e).

28  The debtor-in-possession has the burden to prove adequate protection. 11 U.S.C. § 363(p)(1). The

1    court may not approve it "unless the debtor demonstrates that it has reasonably attempted, but

2    failed, to obtain unsecured credit under sections 364(a) or (b)." *In re Ames Dep't Stores, Inc.*, 115

3    B.R. 34, 37 (Bankr. S.D.N.Y. 1990). Moreover, under § 364(c), the Debtor must show that (a) the

4    DIP loan is not being used to "leverage the bankruptcy process and powers" or to "benefit a party-

5    in-interest" as opposed to the bankruptcy estate. *Id.* at 40.

6    **Broadway May Not Prime Archway's Undersecured Lien Position**

7    Here, Broadway is gambling with other people's money. Its managers have fiduciary

8    duties to fund these capital improvements—themselves from their tens of millions in net assets—

9    pursuant to the Operating Agreement and applicable state law. The Lease and Loan transactions

10   seek to further undermine Archway's undersecured collateral position in Broadway by, among

11   other things, priming Archway's deed of trust. There is no credible evidence of adequate

12   protection, despite Archway's repeated and continued requests for same. There is no credible

13   evidence that the Lessee will be able to meet its debt service obligations under the Lease. By

14   permitting a priming lien, Archway's lien position would be subject to being extinguished upon a

15   foreclosure by the DIP lender. Courts generally will not approve a priming lien where an existing

16   lien is underwater without proof that the existing lienholder is "given something equivalent to that

17   which it would receive if it were voluntarily making a mixed secured/unsecured loan in a junior

18   position." *In re Chevy Devco*, 78 B.R. at 588. Broadway points to the Lease as evidence ipso facto

19   of adequate protection. Courts have rejected similar arguments where "potential success" is "more

20   fantasy than expectation." *Id.* at 589.

21   **No Evidence of Adequate Protection**

22   The only evidence cited in support of Broadway's claim of adequate protection for the

23   priming lien is the Declaration of Chris Maling ("Maling"). *See* Loan Motion at § II.B. But Maling

24   is not a licensed appraiser. *See* Warrington Decl., ¶ 18. And his testimony does not show that

25   Archway is adequately protected. In fact, it carefully states only that "***if*** the loan is made and the

26   lease is executed ***by a tenant with the financial ability to perform on the lease***, the estimate [sic]

27   the value of the Property will be $17,000,000." Maling Decl., Dkt. 421-3 at ¶ 5 (emphasis added).

28   But he stops short of saying whether the Lessee has the financial ability to perform. Archway's

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    own appraiser provided a $17.1 million appraisal last year, which would tend to show that the

2    proposed plan cannot be confirmed, as Broadway has no ability to pay the present value of

3    Archway's secured claim with deferred cash payments. *See* Declaration of Peter Meyers.

**No Notice to Individual Debtors' Creditors**

5    The DIP Loan also requires guaranties of Broadway's members (*see* LOI at Dkt. 421-5 at

6    5, requiring guarantees of the burrower's members), *but its members are themselves debtors in*

7    *other bankruptcy cases* before this Court. The members/Individual Debtors have not requested

8    permission to incur debt outside the ordinary course. No such motions were ever filed. Nor have

9    they given ***any notice*** to their creditors of their proposal to saddle their estates with multi-million

10   dollars in guaranty debt. This is a significant failure of notice and due process.

11   Accordingly, the Court should deny the Loan Motion.

12   **E.    Notice and service of the Lease and Loan Motions were defective.**

13   Contested matters are governed by Rule 9014, which requires the same manner of service

14   as a summons and complaint under Rule 7004. Fed. R. Bankr. P. 9014(b). A contested matter

15   arises as soon as opposition is "known or reasonably foreseeable." *In re Ephedra Prod. Liab.*

16   *Litig.*, 329 B.R. 1, 7 (S.D.N.Y. 2005) (citing Fed. R. Bankr. P. 9014 advisory committee note). *See*

17   *also* Fed. R. Bankr. P. 9014 advisory committee note ("Whenever there is an actual dispute, other

18   than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a

19   contested matter…. Even when an objection is not formally required, there may be a dispute."). A

20   formal written objection is not required to create a contested matter. *See In re Baroni*, 643 B.R.

21   253, 299 (Bankr. C.D. Cal. 2022). *See also* Fed. R. Bankr. P. 4001(c)(1)(A) (providing that a DIP

22   loan motion is a contested matter).

23   Here, Broadway did not serve the Lease Motion (Dkt. 420), the Loan Motion (Dkt. 418),

24   or supporting declarations (Dkt. 421) *on anyone other than the NEF list*. Moreover, the Notices

25   of Lease and Loan Motions (Dkts. 422, 423) do not contain any of the material terms of the

26   Motions. The Lease contains significant terms, which should be set forth in a full disclosure

27   statement, including terms which purport to bind all of the Debtors' estates, including a Purchase

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    Option. *See* Lease Art. XVII. Such material provisions must be included in the notices for these

2    motions. *See* Fed. R. Bankr. P. 2002(c)(1); Fed. R. Bankr. P. 6004(a).

3          This is a significant failure of notice.

4          Moreover, the Notices were served incorrectly on Capital One because the address was not

5    to the attention of an officer or agent. Broadway also failed to serve the Lease Motion on any of

6    the proposed tenants or even the DIP Lender. These are all necessary parties, entitled to service in

7    the same manner as a summons and complaint.

8    **IV.    CONCLUSION**

9          For the reasons stated above, the Court should deny the Lease and Loan Motions.

10   DATED:  February 11, 2025              FRANDZEL ROBINS BLOOM & CSATO, L.C.

11

12                                         By:    ___/s/ Gerrick M. Warrington_____
                                                  GERRICK M. WARRINGTON
13                                                Attorneys for Secured Creditor
                                                  ARCHWAY BROADWAY LOAN SPE, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

A true and correct copy of the foregoing document entitled (*specify*):

**ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**DECLARATION OF BOBBY KHORSHIDI IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**DECLARATION OF GERRICK M. WARRINGTON IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**DECLARATION OF KIMBERLINA WHETTAM IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**DECLARATION OF RYAN MICHAEL LEADERMAN IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364;**

**DECLARATION OF PETER MEYERS;**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; and**

**EVIDENTIARY OBJECTIONS IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OMNIBUS OBJECTIONS TO:  MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE; AND MOTION OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364.**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 11, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See service list.

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 11, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Overnight (Early Morning Delivery):**

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1360
255 E. Temple Street
Los Angeles, CA 90012-3332

**Email:**

Derrick Talerico    dtalerico@wztslaw.com
Zev Shechtman    Zev.Shechtman@saul.com
Ryan Coy    ryan.coy@saul.com
Kelly L Morrison kelly.l.morrison@usdoj.gov

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 11, 2025 | Annette Chase | /s/ Annette Chase |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

- Counsel to Party in Interest: Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- Counsel to Party in Interest: Jacquelyn H Choi    jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com
- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com, easter.santamaria@saul.com
- Counsel to Party in Interest: Robert F Conte    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Counsel to Individual Debtors: Ryan Coy    ryan.coy@saul.com, hannah.richmond@saul.com
- Counsel to Party in Interest: Christopher Cramer    secured@becket-lee.com
- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email
- Counsel to Archway: Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com
- Counsel to Party in Interest: Todd S. Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Counsel to Party in Interest: Richard Girgado    rgirgado@counsel.lacounty.gov
- Counsel to Party in Interest: Jacqueline L James    jjames@hrhlaw.com
- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Counsel to Party in Interest: Avi Edward Muhtar    amuhtar@crownandstonelaw.com
- Counsel to Archway: Bruce D Poltrock    bpoltrock@frandzel.com, achase@frandzel.com
- Counsel to Party in Interest: Lovee D Sarenas    lovee.sarenas@dinsmore.com, wendy.yones@dinsmore.com
- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com
- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Counsel to Archway: Gerrick Warrington    gwarrington@frandzel.com, achase@frandzel.com
- Counsel to Party in Interest: Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**