1  Michael Gerard Fletcher (State Bar No. 070849)
    mfletcher@frandzel.com
2  Gerrick M. Warrington (State Bar No. 294890)
    gwarrington@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard, Nineteenth Floor
4  Los Angeles, California 90017-2427
   Telephone: (323) 852-1000
5  Facsimile: (323) 651-2577

6  Attorneys for Secured Creditor
   ARCHWAY BROADWAY LOAN SPE, LLC

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                 **LOS ANGELES DIVISION**

11

12 | In re | Lead Case No. 2:24-bk-12079-VZ |
|---|---|
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: |

13

14         Debtors and Debtors-in-
               Possession.

Lead Case No. 2:24-bk-12079-VZ

Jointly Administered with Case Nos.:

2:24-bk-12080-VZ; 2:24-bk-12081-VZ;
2:24-bk-12082-VZ; 2:24-bk-12091-VZ;
2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and
2:24-bk-12076-VZ

Affects:

☐ All Debtors
☐ Seaton Investments, LLC
☐ Colyton Investments, LLC
☒ Broadway Avenue Investments, LLC
☐ SLA Investments, LLC
☐ Negev Investments, LLC
☐ Alan Gomperts
☐ Daniel Halevy
☐ Susan Halevy

Chapter 11

**OMNIBUS DECLARATION OF GERRICK M. WARRINGTON IN SUPPORT OF ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITIONS TO:**

**MOTIONS OF DEBTOR AND DEBTOR IN POSSESSION BROADWAY AVENUE INVESTMENTS, LLC FOR ORDERS AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION LEASE AND AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364**

Date:       February 25, 2025
Time:       11:00 a.m.
Crtrm.:     1368
            255 E. Temple Street
            Los Angeles, CA 90012

Hon. Vincent P. Zurzolo

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

I, Gerrick M. Warrington, declare:

1.    I am a partner at Frandzel Robins Bloom & Csato, L.C., counsel of record for secured creditor Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("Archway"). If called as a witness, I could and would competently testify to all facts within my personal knowledge, except where stated upon information and belief.

2.    This declaration is submitted in support of Archway Broadway Loan SPE, LLC's Omnibus Objections to Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364 ("DIP Motion") (Dkt. 418) and Motion of Debtor and Debtor in Possession Broadway Avenue Investments, LLC for Order Authorizing Debtor to Enter into Post-Petition Lease ("Lease Motion") (Dkt. 421) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors") concerning that certain real property located at 737 South Broadway, in Los Angeles, California ("Broadway Property").

**Redline Comparison of Leases**

3.    I had my secretary prepare a redline comparison between the lease at Dkt. 412 and the Lease at Dkt. 421-4. A true and correct copy of that redline comparison is attached as **Exhibit 7**.

**Discovery Efforts**

4.    On February 5, 2025, Archway issued discovery under Rule 9014 of the Federal Rules of Bankruptcy Procedure, including subpoenas to The DMB Fund ("DMB") and View Behavioral Health, LLC ("VBH," and together, the "Proposed Tenants"), as well as the VBH

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  Subsidiaries, seeking, among other things, documents related to their current financial

2  wherewithal.

3       5.      On February 6, 2025, Archway issued additional subpoenas to the CEO of VBH

4  and the VBH Subsidiaries, Jack Stephens ("Stephens").

5       6.      Archway also subpoenaed Simon, the DIP Lender, and a contractor listed in

6  connection with the Broadway Property, Almighty Builders Inc. ("Almighty").

7       7.      Archway issued these subpoenas to the addresses on the California Secretary of

8  State's website. But, as discussed below, those efforts were unsuccessful.

9      **Attempts to Serve DMB**

10       8.      On February 6 and 7, a process server attempted to serve Judy Cox, the CEO and

11  agent for service of process of DMB at the address listed on the Secretary of State's website, 2350

12  Castle Heights Avenue, Los Angeles, CA 90034; however, those attempts were unsuccessful.

13       9.      On her first attempt to serve Ms. Cox, the process server states, in her affidavit of

14  due diligence, that "There was no answer at the home. I can see the lights and television were on

15  inside the home. I rang the doorbell and waited but no one came out."

16       10.     On a subsequent attempt to serve Ms. Cox, the process server states: "I spoke to

17  John Doe (male, Caucasian, gray hair, 50's, 5'6, 175lbs, glasses), and he said we had the wrong

18  address. The subject is unknown and does not live here."

19       11.     I also Googled the address listed on the Lease for DMB, 9854 National Boulevard,

20  Los Angeles, CA 90034, which appears to be a mailbox store in Cheviot Hills.

21      **Attempts to Serve VBH and the VBH Subsidiaries**

22       12.     In attempting to serve VBH and the VBH Subsidiaries at the addresses listed for

23  them on the California Secretary of State's website (the same address listed on the Lease), on

24  February 6, 2025, according to the process server, "The business is no longer at this address.

25  According to Anita Johnson, who works with Optum Health Care, the subject moved out two

26  years ago."

27       13.     True and correct copies of the declarations of the process server are attached hereto,

28  collectively, as **Exhibit 8**.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Almighty is FTB Suspended**

14.     On February 11, 2025, I checked the California Secretary of State's website, which reflects that Almighty is "Suspended-FTB."

**Archway propounds document requests on Broadway**

15.     On February 6, 2025, Archway propounded requests for production of documents ("RFPs") on Broadway, seeking, among other things, documents related to the Lease, the progress toward obtaining a certificate of occupancy, and the Proposed Tenants' financial wherewithal. The response deadline for the RFPs is March 10, 2025.

**Archway makes a FRE 1006 request on Broadway**

16.     On February 7, 2025, Archway served Broadway with a request under Rule 1006 of the Federal Rules of Evidence for production of copies of the documents underlying the summary/chart attached as Exhibit 1 to the Declaration of Daniel Halevy (Dkt. 421-2 at 5). To date, no such production has been made.

**To date, no discovery has been provided.**

17.     As of the signing of this Declaration, no discovery responses have been provided and the attempts to serve the Proposed Tenants and DIP Lender have been unsuccessful.

**Maling**

18.     On February 11, 2025, I reviewed the California Department of Consumer Affairs, Bureau of Real Estate Appraiser's website and searched for the last name "Maling." I received a message that "0 record(s) returned."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on this 11th day of February, 2025, at Los Angeles, California.

/s/ Gerrick M. Warrington
Gerrick M. Warrington

# Exhibit 7

# Exhibit 7


GERRICK-005

LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Lease") is made as of ~~January~~February ___, 2025 (the "Effective

Date"), by and among Broadway Avenue Investments, LLC, a California limited liability

company ~~("Lessor" or "Landlord")~~. whose address is 737 South Broadway, Los Angeles, ~~Ca~~California, 90014 ("Lessor"), on ~~90014~~the one hand, and The DMB Fund, a California not for profit corporation d/b/a Broadway Community Care

 Centers ("BCCC~~"~~") and View Behavioral Health, LLC, a California ~~Limited Liability~~limited ~~Company("View")~~liability company (or its designee; hereafter, "VBH"), jointly and severally (collectively, the

"Lessee~~"~~, ~~whose address is 9854~~on the other hand. (The addresses for BCCC and VBH are provided under their ~~National Boulevard, 362,~~ respective signatures to this Lease, below.)~~Los Angeles, CA 90034.~~

Capitalized terms not defined herein shall have the ~~the~~ meanings set forth in Exhibit A hereto.

In consideration of the mutual covenants and agreements herein contained, Lessor and Lessee hereby covenant and agree as follows:

ARTICLE I

BASIC LEASE TERMS

Section 1.01. Property. The street address of the improved real property is 737 South Broadway, Los Angeles, ~~Ca~~California, 90014, and its legal description is set forth on Exhibit B ~~attached~~ attached hereto and incorporated herein (the "Property"). The Property includes a eight (8) story building, a basement, and all other fixtures and improvements thereat. By this Lease, Lessee hereby leases from Lessor the entire Property.

Section 1.02. Initial Term Expiration Date~~—~~. The term of Lease shall commence on ~~January,~~February _____, 2025 and shall continue for a period of fifteen (15) years (to and including ~~January~~ February ___, 2040 ~~(the~~, as set forth under Section 3.01, below; the "Initial Term~~")~~")). unless the term of this Lease is extended in

 accordance with ~~Article I~~Section 1.03 and ~~Article III~~Section 3.02 ~~here.~~ below.

Section 1.03. Extension Option~~—By or before January 31, 2040, Lessee shall notify Lessor in writing that~~. Lessee ~~desires~~has the right to extend ~~the~~this Lease for an additional five (5) year term

 (commencing February ___, 2040 up to including ~~January 31~~February 28, 2045~~.~~). as set forth under Section 3.02, below.

Section 1.04. Term Expiration Date (if fully extended~~)—January~~). Upon timely written notice given by Lessee pursuant to Section 3.03, the term of this Lease shall be automatically extended five (5) more years, expiring on February ____, 2045. (the "Extended Term").

Section 1.05. Monthly ~~Rental—$25,000~~Rent. Subject to Rent Adjustment and Rent Abatement as set forth under Sections 1.06, 1.13 and such other provisions set forth under Article IV, below, Lessee

shall pay Lessor monthly ~~base~~ rent ~~at the rate of $25,000.00~~ per floor~~, as set forth in Article~~ for the basement, ground floor/
~~IV and Exhibit "C" attached hereto and incorporated herein by this reference.~~
first floor, and second floor (collectively, the "Lower Floors"), and $125,000 for the third through
eighth floors (collectively, the "Upper Floors"), such rent being hereafter referred to as the "Base Monthly Rent."

Section 1.06. Rental Adjustment~~—Three~~. Base Monthly Rent shall be increased by three percent (3%) per annum. commencing with the second (2nd) year of the Initial Term, as set forth under Section 4.02, below.

Section 1.07. Adjustment Date~~—January~~ The first Adjustment Date (as such term is defined under Section 4.02, below) is February ___, 2026~~.~~, and each subsequent Adjustment Date shall be the one (1) year anniversary of said date throughout the Initial Term and any Extended Term.

STEPHENS DECL. - EXHIBIT 1 - Page 22
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 6 of 110
2

Section 1.08. Guarantor~~—N/A~~. Lessor shall not require any third party guarantor as a condition of this Lease.

Section 1.09. Letter of Credit~~—No~~. Lessee shall not be required to furnish a letter of credit or other form of security or collateral to Lessor as a condition of this Lease.

Section 1.10. Lessor Tax Identification No. ~~————~~Lessor's Federal Tax ID Number is 46-3312843.

Section 1.11. Tenant Improvements~~—~~. Except as set forth in ~~Article IV,~~ Section 4.06, and under Article XVII. Lessee at its sole expense shall be responsible for all tenant improvements, as follows:

(a) Lessor shall be responsible for obtaining a certificate of occupancy ("CO") or temporary certificate of occupancy ("TCO") for the Lower Floors (as set forth under Section 4.03, below); and Lessor shall be responsible for constructing all tenant improvements in the Lower Floors (the Lessor's Work, as set forth under Section 4.06.1), and to bear the cost therefor (the LW Expenses, as set forth under Section 4.06.2).

(b) Lessor shall be responsible for obtaining a CO for the Upper Floors (as set forth under Section 4.03, below). Additionally, subject to the provisions under Section 4.03(a), tenant improvements shall be constructed on Floors 7 and 8 of the Upper Floors sufficient for such Floors to be used by VBH as a licensed psychiatric health facility ("PHF"). The cost for developing the PHF on Floors 7 and 8 shall be borne by Lessee (subject to reimbursement pursuant to subdivision (c), below).

(c) VBH shall be entitled to reimbursement of the costs incurred in developing the PHF, up to a maximum sum of $5,700,000.00 (the "PHF Reimbursement"). The PHF Reimbursement shall be paid to VBH either as: (i) a credit toward its purchase of the Property pursuant to VBH's exercise of its Purchase Option (set forth under Article XVII, below); (ii) proceeds disbursed upon any foreclosure or other forced sale of the Property to a third party; or (iii) proceeds disbursed at closing upon Lessor's voluntary sale of the Property to a third party (it being understood and agreed ~~upon tenant improvements.~~that, by executing this Lease, Lessor covenants and agrees that it
~~EXHIBIT 1~~

GERRICK-007

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 7 of 61
2

shall not transfer or convey the Property to any third party except in a transaction which provides
for the PHF Reimbursement to be paid to VBH at closing). Lessor consents to the recording of
any and all instruments on title to the Property which VBH reasonably requires in order to
establish
record notice of its right to the PHF Reimbursement.
(d) Except as provided under subdivisions (a) through (c), above, Lessee shall
not make any tenant improvements, alterations or utility installations to the
Property without
Lessor's prior written consent, which consent shall not be unreasonably withheld. Lessee shall
not make or permit any roof
penetrations and/or install anything on the roof without the prior
written approval of Lessor. Lessor
may, as a precondition to granting such approval, require
Lessee to utilize a contractor chosen
and/or approved by Lessor (which approval may not be unreasonably
withheld). Any alterations or utility installations that Lessee shall desire to make, and which
require
and which require the consent of the Lessor, shall be presented to Lessor in written form with
detailed plans.
Consent shall be deemed conditioned upon Lessee's: (i) acquiring all applicable
governmental
permits, (ii) furnishing Lessor with copies of both the permits and the plans and
specifications
prior to commencement of the work, and (iii) compliance with all conditions of said
permits and all
other requirements of applicable Governmental Authority, in a prompt and
expeditious manner.
Any alterations or utility installations shall be performed in a workmanlike
manner with good and
STEPHENS DECL. - EXHIBIT 1 - Page 23
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 7 of 110
3
sufficient materials. Lessee shall promptly upon completion furnish Lessor
with as-built plans and
specifications.
(e) Except as provided otherwise under subdivisions (a) through (c), above,
Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have
been
furnished to or for Lessee at or for use on the Property, which claims are or may be secured by
by any mechanic's or materials' lien against the Property or any interest therein. Lessee shall
give
Lessor not less than ten (10) days' notice prior to the commencement of any work in, or about the

5472837v1 5472842v1 | 101415-0002

GERRICK-008

~~the~~ Property, and Lessor shall have the right to post notices of non-responsibility. If Lessee shall contest the validity of any such lien, claim or demand, then Lessee shall, at its sole ~~expenses~~ expense, defend and protect itself, Lessor and the Property against the same and shall pay and satisfy any such adverse judgment that may be rendered thereof before the enforcement thereof. If Lessor shall require, Lessee shall promptly furnish a ~~surety~~ mechanic's lien release bond in an amount ~~equal~~ sufficient to ~~one hundred fifty percent (150%) of the amount of~~ cause such contested lien~~, claim or demand, indemnifying Lessor against liability for the same. If Lessor elects~~ to ~~participate in any such action, Lessee shall pay Lessor's attorneys' fees and costs~~ be released.

Section 1.12. Ownership Removal; Surrender or Restoration.

(a) Ownership. Subject to Lessor's right to require removal or elect ownership as hereinafter provided, all ~~Alterations~~ alterations and ~~Utility Installations~~ utility installations made by Lessee shall be the property of Lessee, but considered a part of the Premises. Lessor may, at any time, elect in writing ~~writing~~ to be the owner of all or any specified part of the lessee owned alterations and utility installations.

Unless otherwise instructed, all Lessee owned alterations and utility installations shall, at the expiration or termination of this Lease, become the property of Lessor and be surrendered by Lessee with the Premises.

(b) Removal. By delivery to Lessee written notice from Lessor not earlier than ninety (90) and not later than thirty (30) days prior to the end of the term of this Lease, Lessor may require that any and all of Lessee ~~Owned Alterations~~ owned alterations or ~~Utility Installations~~ utility installations be removed by the expiration or termination of this Lease. Lessor may require the removal at any time of all or any part of any Lessee ~~Owned Alterations~~ owned alterations or ~~Utility Installations~~ utility installations made without the required consent.

Section 1.13 ~~Rental~~ Rent Abatement~~.~~. Lessee's obligation to pay Lessor ~~hereby agrees to abate base monthly rental~~ Base Monthly Rent ~~at month 1 through~~ and ~~including month 6 of the first year of the Lease.~~ all other Monetary Obligations shall be excused and abated, as follows (Lessee's right to "Rent Abatement"):

(a) As to the Lower Floors, Lessee shall ~~begin~~ have a right to Rent Abatement for a ~~payment of Rental~~ period commencing on the ~~first (1st) calendar day of~~ Effective Date and ending first six (6) months after Lessor secures a CO or TCO for the ~~seventh (7th) month of~~ Lower Floors (in conformance with Lessor's obligations under Section 4.03, below).

~~5472837v1~~5472842v1 | 101415-0002

(b) As to the ~~Lease.~~ Upper Floors, Lessee shall have a right to Rent Abatement for a ~~Thereafter, Rental shall be due~~ period commencing on ~~or before~~ the Effective Date and ending first ~~(1st) of each~~ six (6) months after Lessor secures a CO for the Upper Floors (in conformance with Lessor's obligations under Section 4.03, below).

(c) In the event any period for Rent Abatement ends on a date which is not the first (1st) day of a calendar month, the pro rata sum of Base Monthly Rent otherwise due for the remainder of that month. shall be included in Lessee's payment of Base Monthly Rent for the

~~EXHIBIT 1~~

~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~

~~Main Document Page 8 of 61~~

~~3~~

subsequent month.

Section 1.14 – Security Deposit. Concurrently with executing this Lease, Lessee shall deposit two (2) months of Base Monthly Rent as a security deposit with the ~~Landlord~~ Lessor (the "Security

STEPHENS DECL. - EXHIBIT 1 - Page 24

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc

Jack Stephens Declaration and Exhibits Page 8 of 110

4

Deposit"). In the event this Lease is terminated pursuant to Sections 1.15 or 4.03(a), Lessor shall return the full Security Deposit to Lessee within five (5) business days.

Section 1.15 Lessee's Right of Early Termination. Notwithstanding the foregoing provisions or any other provision herein, Lessee shall have the right, in its sole and absolute discretion, to terminate this Lease in the event Lessor fails to secure a CO for the Upper Floors within twelve (12) months of the Effective Date, as set forth under Section 4.03(a), below. If Lessee intends to exercise such right of termination, Lessee shall cause written notice of the same to be delivered to Lessor, receipt of which shall signify termination of this Lease. Any termination pursuant to this Section 1.15 may be exercised by VBH on behalf of Lessee, BCCC hereby granting to VBH the irrevocable right to exercise termination on its behalf, and at VBH's sole and absolute discretion, pursuant to this Section 1.15.

Section 1.16 Contingent Upon Bankruptcy Court Approval. Lessor and Lessee acknowledge that this Lease is subject to approval by the U.S. Bankruptcy Court in such legal action affecting Lessor and/or the Property. As such, irrespective of Lessor and Lessee executing this Lease, this Lease shall be null and void unless and until requisite approval by the U.S. Bankruptcy Court is given.

ARTICLE II

LEASE OF PROPERTY

Section 2.01. Lease. In consideration of Lessee's payment of all Monetary Obligations ~~Obligations~~ and Lessee's performance of all other obligations hereunder, and subject to Lessee's early termination rights under Section 1.15, above, Lessor hereby leases to Lessee, and Lessee hereby takes and hires, the Property, "AS IS" and "WHERE IS" and with all faults without any representation or warranty by Lessor, (other than Lessor warranting to Lessee that, as of the Effective Date, there are no third parties in possession of any portion of the Property and the

~~5472837v1~~5472842v1 | 101415-0002

Property is free and clear of any and all tenants, invitees, licensees, squatters, and others), and subject to the existing state of
title, the parties in possession, any statement of facts which an accurate survey or physical inspection might reveal, and all Legal Requirements now or hereafter in effect.

ARTICLE III

LEASE TERM; EXTENSION

Section 3.01. Initial Term. The initial term of this Lease ("Initial Term") shall commence (as such term is defined under Section 1.02,
above) shall commence as of the Effective Date and shall expire at midnight on the date set forth in Section 1.02, unless
terminated sooner as provided in this Lease and as may be extended as provided herein. The
time period during which this Lease shall actually be in effect, including any Extension Extended Term, is
referred to as the "Lease Term."

Section 3.02. Extension. Unless this Lease has expired or has been sooner terminated, or an Event of Default has occurred and is continuing at the time any extension option is exercised, Lessee shall have the right and option (, (an "Extension Option") to extend the Initial Lease
Term for the Property for one (1) additional successive period of five (5) years (, (an "Extension Extended Term"), as defined
under Section 1.04, above), pursuant to the terms and conditions of this Lease then in effect.

Section 3.03. Notice of Exercise. Lessee may only exercise the Extension Options by giving written notice thereof to Lessor of its election to do so no later than eighty (80) days prior to the expiration of the then-current Lease Term. If written notice of the exercise of any Extension
Option is not received by Lessor by the applicable dates described above, then this Lease shall

STEPHENS DECL. - EXHIBIT 1 - Page 25
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 9 of 110
5

terminate automatically and without notice on the last day of the Initial Term or, if applicable, the last day of the Extension Extended Term then in effect. Upon the request of Lessor or Lessee, the parties
hereto will, at the expense of Lessee, execute and exchange an instrument in recordable form setting forth the extension of the Lease Term in accordance with Section 3.02. In order to exercise
any Option under this Lease, Lessee shall be in good standing under all provisions of this Lease.

Section 3.04. Removal of Personal Property. At any time, Lessee may remove from the Property any personal property belonging to Lessee. Lessee shall repair any damage caused by such removal. Lessee shall, at the expiration of the Lease Term, leave the Property in broom clean condition and all fixtures and utility systems in good working order and the building in good
repair. Any property of Lessee left on the Property on the tenth day following the expiration of the
Lease Term shall be deemed abandoned by Lessee and, at Lessor's option, be disposed of by

5472837v1 5472842v1 | 101415-0002

Lessor in accordance with all Legal Requirements.

EXHIBIT 1

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 9 of 61

4

ARTICLE IV

RENTAL, OTHER MONETARY OBLIGATIONS; IMPROVEMENTS

Section 4.01. Monthly ~~Rental~~Rent. During the Lease Term, on or before the first (1st) day of each

calendar month, but subject to Rent Abatement and other provisions herein, Lessee shall
pay in advance the Base Monthly ~~Rental~~Rent then in effect.

Section 4.02. Adjustments. During the Lease Term (including any ~~Extension~~Extended Term), on
the first Adjustment Date and on each Adjustment Date thereafter, the Base Annual Rental shall
increase by an amount equal to the Rental Adjustment which shall be an annual increase of three
(3%) per cent of the Base ~~Rent or Ninety (90%) Per Cent of the market rent for said
location~~Annual Rent; _provided, however_, that in no event shall Base Annual
~~whichever is greater; provided, however, that in no event shall Base Annual~~Rental be reduced
as a result of the application of the Rental Adjustment.

Section 4.03. ~~Rental Fee. Subject to~~ Securing Occupancy and Use of Lower and Upper Floors.
Lessor is
responsible for securing a ~~timely certificate of occupancy~~ CO or
~~temporary certificate of occupancy ("~~TCO")~~ for the ~~first 3 floors, and~~ Lower Floors, in
accordance with Exhibit C
attached
hereto and incorporated by this reference. ~~Lessee shall pay a monthly payment of
Seventy-Five Thousand ($75,000.00) Dollars on the 1st day of Month 7 of the Lease. Lessee
further agrees to pay a monthly payment of One Hundred,~~ and ~~Twenty-Five ($125,000.00)
Dollars~~
~~for floors 4 through 8 inclusive (the "Upper Floors") once~~Lessor ~~secures the CO~~is responsible
for ~~the Upper~~
~~Floors. .Thereafter the monthly rent payment~~ securing a CO for the ~~combined first 3 floors and
the Upper Floors~~
~~shall be $200,000 plus the yearly increase of 3% from Exhibit "C" in accordance with Section
1.06.~~
~~Lessee shall NOT be responsible for any rental payments for the first three (3) floors which
includes the basement, ground floor, and first floor until a valid TCO is secured. Likewise,
Lessee~~
~~shall not be obligated to rent on the Upper Floors until the CO is secured.~~
~~A.~~Upper Floors. Lessor shall exercise all reasonable and diligent efforts to secure such CO's
and/or
TCO as promptly as possible, subject also to the following provisions:
(a) Failure to Secure Certificate of Occupancy~~.~~ If, after reasonable and
diligent effort
. Lessee fails to secure the requisite license(s) to operate a residential behavioral
health facility on

GERRICK-012

~~floors 5-8 (collectively~~ the "Upper Floors"), then Lessor and Lessee shall jointly make all efforts to secure

~~secure the lease(s) for~~ a sublease with a suitable sub-tenant, whereby a third party will sublet the Upper Floors ~~to a suitable tenant and all rental income derived~~ from Lessee (revenues therefrom ~~shall~~ to be ~~credited towards Lessee's~~ used by Lessee toward payment of Base Monthly ~~Rental. Lessor will secure the CO for~~ Rent for the ~~the entire building~~ Upper Floors, with any excess to be retained by Lessee in the normal course). Further, Lessor shall, within twelve (12) months of the ~~commencement of Lease. If the~~ Effective Date, secure CO's sufficient to permit Lessee's occupancy of both the Lower Floors and the Upper Floors and, if Lessor fails to do so, then Lessee ~~to timely secure the CO, Lessee~~ may, at its sole and absolute discretion ~~may.~~ terminate the entire Lease

without any further obligations.

If Lessee intends to exercise such right of termination, Lessee shall cause written notice of the same to be delivered to Lessor, receipt of which shall signify termination of this Lease. Any termination pursuant to this Section 4.03(a) may be exercised by VBH on behalf of Lessee, BCCC hereby granting to VBH the irrevocable right to exercise termination on its behalf, and at VBH's sole and absolute discretion, pursuant to this Section 4.~~04. Rentals~~05(a).

(b) Acceptance of Lessor Improvements. The provisions of this Section 4.03 are subject to Lesse's right of acceptance set forth under Section 4.06.4, below.

Section 4.04. Annual Rent to be Net to Lessor. The Base Annual Rental payable hereunder shall be net to Lessor, ~~so that this Lease shall yield to Lessor the Rentals specified during the Lease Term,~~ and all costs and obligations of every kind and nature whatsoever relating to the

Property as required in this Lease shall be performed and paid by ~~Lessee. Specifically, Lessee~~ Lessee. Subject to Lessee's right of Rent Abatement, Lessee shall pay or reimburse Lessor all Property Taxes, Lessor's insurance premiums, equipment

maintenance, building, roof, structural,

and utility repair and maintenance costs and all utilities on ~~the Property.~~ the Property (the sum of which Lessor estimates to be approximately $128,000 per year; the actual sum to be based on invoices, receipts and other materials regularly maintained by Lessor and available for inspection by Lessee upon reasonable request). Lessee shall perform all of its obligations under this Lease at its sole cost ~~and~~

and expense. All Base Monthly ~~Rental~~Rent and all other Monetary Obligations which Lessee is required ~~to~~

to pay hereunder shall be the unconditional obligation of Lessee and shall be payable in full when

GERRICK-013

due and payable, without notice or demand, and without any setoff, abatement (except as expressly set forth in this Lease), deferment, deduction or counterclaim whatsoever.

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 10 of 61~~
~~5~~

Section 4.05 Use of Premises~~—~~. Lessee shall occupy and use the Property comprising of approximately 75,000 useable square feet for the treatment of the under-privileged population including without limitation "Behavioral Health Treatment" of adolescents and adults including without limitation the unhoused people, Skid Row population, veterans and all those in need of mental and behavioral and social services for both outpatient and inpatient services.

Section 4.06 Lessor's Work.

Section 4.06.1 Lessor~~,~~ is responsible for constructing all Lower Floor tenant improvements according to Lessee's plans and specifications ("Lessor's Work"). Lessee shall be responsible for developing the plans, designs and specifications for Lessor's Work at Lessee's sole expense. Lessor shall be responsible for procuring all permits and government approvals, procuring and managing all contractors performing such work, performing all administrative oversight, and any and all other obligations in connection with Lessor's Work at Lessor's sole expense; provided, however, that expenses incurred by Lessor in performance of Lessor's Work shall be subject to reimbursement ~~of all "LW Expenses" as herein defined~~in accordance with Sections 4.06.2 and 4.06.2, below.

~~shall perform the work to floors of the building on the Property designated~~
~~Basement, First Floor and only to those Second floor per the plans/schematics~~
~~prepared by Jila Kohan, Architect, and attached hereto as Exhibit E and~~
~~incorporated herein by this reference.~~

Section 4.06.2 For purposes of this Lease, "LW Expenses" shall include and not ~~be~~ be limited to any and all expenses incurred directly or indirectly ~~—~~by Lessor in the furtherance of ~~Landlord's Work and the proposed Use by Lessee, including but not~~ ~~limited to labor, labor overhead, materials, supplies, contractor's profit, subcontractors~~ ~~costs, construction management fees and insurance, permits and~~ ~~regulatory licensing fees, loan fees, escrow, title insurance costs, interest,~~ ~~attorneys', architects and accountants' fees~~Lessor's Work, the cost for which ~~shall not exceed~~ ~~four million~~ ~~Dollars ($4,000,000) (collectively~~ being hereafter referred to as the ~~"~~TI Budget~~")" (estimated to be~~ $2,300,000.00, subject to increase or decrease depending on actual costs incurred). Lessor shall be solely responsible to ~~secure~~fund the ~~"~~TI Budget~~"~~ and shall also be solely responsible for the repayment of the funds with any accrued interest thereon if such funds were secured by way of a loan~~,~~ or other financing.

Section 4.06.3 ~~Upon receipt of funds~~Lessor shall be entitled to reimbursement of the LW Expenses from ~~any and all~~ federal, state, county or city agency

GERRICK-014

(as more fully defined in ¶4.06.3 (C) below, funds received by BCCC shall reimburse Lessor for all

LW Expenses, as follows:

(Ai) On the first (1st) and fifteenth (15th) day of each calendar month, Lessor Lessor shall submit to Lessee invoices setting forth in reasonable detail LWthe LW Expenses incurred by Expenses incurred by Lessor during the prior invoice period.

(Bii) Within three (3) business days of receipt thereof, BCCC shall submit the invoice for payment to the relevant "Governmental Agency" (as herein such term is defined below-).).

(Ciii) Immediately upon receipt by Lessee, LesseeBCCC, BCCC shall remit to Lessor any and all corresponding sums received by Lessee or it's managers or affiliates from any and all federal,

STEPHENS DECL. - EXHIBIT 1 - Page 27
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 11 of 110
7

state, county or city agency including but not limited to Los Angeles Housing Department, Los Angeles County Development Authority, Los Angeles Homeless Authority, or U.S. Department of Housing and Urban Development, all (collectively, "Governmental Agencies") in reimbursement of reimbursement of LW Expenses, the improvements or use of the Property.

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 11 of 61
6

(iv) Notwithstanding the foregoing, Lessor, BCCC and VBH shall adhere to any and all statutes, regulations, ordinance, rules, policies, procedures and all other legal, ethical and administrative requirements (collectively, "Regulatory Provisions") in connection with the matters set forth in this Section 4.06.3. BCCC shall not receive or disburse funds from Governmental Agencies if doing so would violate any Regulatory Provisions; and Lessor shall not be entitled to reimbursement of LW Expenses if doing so would violate Regulatory Provisions. VBH expresses no opinion as to compliance with Regulatory Provisions and relies on the expertise and experience of Lessor and BCCC in their adherence to Regulatory Provisions.

Section 4.06.4 Lessee shall have the right to inspect any and all improvements constructed by Lessor pursuant to this Section 4.06 and may reject any or all of said construction if Lessee reasonably determines the construction to be defective or fails to conform with the requirements for Lessee's use. In such event, Lessee shall give Lessor written notice of the same and identify those aspects of Lessor's construction and/or the constructed improvements which are unsatisfactory. Lessor shall be responsible for promptly making all due and reasonable corrections to the same; provided, however, that Lessor shall not be responsible for defects or

GERRICK-015

conditions unrelated to Lessor's Work, and further provided that Lessor shall be granted a reasonable period of time to correct and/or cure any defects or deficient conditions so identified by Lessee. If, following notice by Lessee, Lessor has failed to cure or correct, within a reasonable period of time, any defect(s) or deficient condition(s) which it is responsible for, then Lessee shall be entitled to Rent Abatement in proportion to the area impacted by the defect(s) or deficient condition(s).

Section 4.07 Wire Transfer. Payments of the Base Monthly ~~Rental~~Rent and all other Monetary Obligations payable to Lessor hereunder shall be paid in immediately available funds to the ~~the~~ account identified on Exhibit C attached hereto, or to any other account as Lessor may from time to time designate to Lessee. Each such payment shall be made by Lessee by wire or other electronic transfer of funds, or automatic debit from an account designated by Lessee if so, elected by Lessee. Lessee shall continue to pay all Rental and other Monetary Obligations in such a manner unless otherwise directed by Lessor. Notwithstanding the foregoing, in the event that Lessee fails, more than twice during any calendar year, to pay the Base Monthly ~~Rental~~Rent or any monetary obligation by wire or other electronic transfer of funds when due and such failure continues for three (3) Business Days after such amounts were due, Lessee shall deliver to Lessor a complete Authorization Agreement – Pre-Arranged Payments in the form provided by Lessor together with a voided check for account verification, establishing arrangements whereby payments of the Base Monthly ~~Rental~~Rent and any Monetary obligations are transferred by Automated ~~Clearing~~ Clearing House Debit initiated by Lessor.

Section 4.08. Late Charges; Default Interest. Any delinquent payment that is not paid within five (5) days of the date it was due shall, in addition to any other remedy of Lessor, incur a ~~incur a~~ late charge of five percent (5%) (which late charge is intended to compensate Lessor for the cost of handling and processing such delinquent payment and should not be considered interest) and bear interest at the Default Rate, such interest to be computed from and including the date such payment was due through and including the date of the payment; *provided, however,* in no event shall Lessee be obligated to pay a sum of late charge and interest rate higher than the maximum

Formatted: Font: Italic

GERRICK-016

GERRICK-017

**Formatted:** Font: Italic

legal rate then in effect.

STEPHENS DECL. - EXHIBIT 1 - Page 28

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 12 of 110

8

Section 4.09. Holdover. If Lessee remains in possession of the Property after the termination of the ~~Lease~~ Lease or the expiration of the Term hereof, Lessee, at Lessor's option and within Lessor's sole discretion, may be deemed a tenant at will and shall continue to pay Rentals and other Monetary Obligations in the amounts herein provided (prorated for partial months), except that the Base Monthly ~~Rental~~Rent shall be automatically increased to one hundred fifty percent (150%) of the last Base Monthly ~~Rental~~Rent payable under this Lease, and Lessee shall comply with all the terms of this Lease; *provided that* nothing herein nor the acceptance of Rental by Lessor shall be deemed a consent to such holding over. Lessee shall defend, indemnify, protect and hold the Indemnified Parties harmless from and against any and all Losses resulting from Lessee's failure to surrender possession upon the expiration of the Lease Term.

ARTICLE V

REPRESENTATIONS AND WARRANTIES OF LESSEE

The representations and warranties of Lessee contained in this Article V are being made to induce Lessor to enter into this Lease, and Lessor has relied, and will continue to rely, upon such representations and warranties. Each Lessee represents and warrants to Lessor as follows:

Section 5.01. Organization, Authority and Status of Lessee. ~~Lessee has~~BCCC and VBH have each been duly organized or formed, ~~is~~are validly existing and in good standing under the laws of ~~its~~ their state of formation and ~~is~~are qualified ~~as a foreign corporation~~ to do business in the state in which the Property is located. All necessary and appropriate action has been taken to authorize the execution, delivery ~~and~~ and performance by ~~Lessee~~BCCC and VBH of this Lease and of the other documents, instruments and agreements provided for herein. ~~Lessee is not, and if Lessee is~~Neither BCCC nor VBH are a "disregarded entity," the owner of such

54728376.5/28262v1 10415-0002

1

disregarded entity is not, a "nonresident alien," "foreign corporation," "foreign partnership,"
"foreign trust," "foreign estate," or any other "person" that is not a "United States Person" as those

terms are defined in the Code and the regulations promulgated thereunder. The Person who has
executed this Lease on behalf of Lessee is duly authorized to do so.

Section 5.02. Enforceability. This Lease constitutes the legal, valid and binding
obligation of Lessee, enforceable against Lessee in accordance with its terms, except as such
enforcement may be limited by final non-appealable judgment in bankruptcy, insolvency,
reorganization, arrangement, moratorium or other applicable laws relating to or affecting the rights
of creditors generally.

Section 5.03. Litigation. There are no suits, actions, proceedings or investigations
pending against or involving Lessee or the Property before any arbitrator or Governmental
Authority which might reasonably result in any Material Adverse Effect.

Section 5.04. Absence of Breaches or Defaults. To Lessee's knowledge, Lessee is not
not in material default under any document, instrument or agreement by which Lessee or the Property
is subject or bound, which has had, or could reasonably be expected to result in, a Material
Adverse Effect. To Lessee's knowledge, the authorization, execution, delivery and performance
of this Lease and the documents, instruments and agreements provided for herein will not result
in any breach of or default under any document, instrument or agreement to which Lessee or the
Property is subject or bound, which has had, or could reasonably be expected to result in, a
Material Adverse Effect. References to "Lessee's knowledge" and phrases of similar import shall
refer only to the current actual (not constructive) knowledge of Lessee, with a reasonable duty of
inquiry and shall not be construed, by imputation or otherwise, to refer to the knowledge of any
other officer, agent, manager, representative or employee of Lessee or any affiliate thereof.
Lessee hereby represents and warrants to Lessor that the foregoing person is the officer or

STEPHENS DECL. - EXHIBIT 1 - Page 29
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 13 of 110
9

employee of Lessee most likely to have personal knowledge of the matters covered by the
representations and warranties set forth in this Lease.

Section 5.05. Compliance with OFAC Laws. Lessee is not an individual or entity whose
property or interests are subject to being blocked under any of the OFAC Laws or is otherwise in

**Formatted:** Font: Italic

5472837v15472842v1 | 101415-0002

GERRICK-018

violation of any of the OFAC Laws; *provided, however*, that the representation contained in this
sentence shall not apply to any Person to the extent such Person's interest is in or through a U.S.
Publicly Traded Entity.

Section 5.06. Solvency. There are no contemplated, pending or threatened Insolvency
Event or similar proceedings, whether voluntary or involuntary, affecting Lessee or any Lessee
Entity.

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 13 of 61~~
~~8~~

ARTICLE VI
TAXES AND ASSESSMENTS; UTILITIES; INSURANCE

Section 6.01. Taxes.

~~(a)~~ Lessee shall pay to the Lessor, prior to the earlier of delinquency
or the
accrual of interest on the unpaid balance, all taxes and assessments of every type or
nature
assessed against or imposed upon the Property, Lessee or Lessor during the
Lease Term related
to or arising out of this Lease and the activities of the parties
hereunder, including without
limitation, (i) all taxes or assessments upon the Property or
any part thereof and upon any
personal property, trade fixtures and improvements located
on the Property, whether belonging
to Lessor or Lessee, or any tax or charge levied in lieu
of such taxes and assessments; (ii) all
taxes, charges, license fees and or similar fees
imposed by reason of the use of the Property by
Lessee; (iii) all excise, franchise,
transaction, privilege, license, sales, use and other taxes upon
the Rental or other
Monetary Obligations hereunder, the leasehold estate of either party or the
activities of
either party pursuant to this Lease; and (iv) all franchise, privilege or similar taxes of
Lessor calculated on the value of the Property or on the amount of capital apportioned to the
Property. Notwithstanding the foregoing, nothing herein shall require Lessee to pay any tax, levy,
charge or other sum owed by Lessor for matters unrelated to Lessor's ownership of the Property.

Section 6.02. Utilities. Lessee shall contract, in its own name at its sole expense, for
and pay when due all charges for the connection and use of water, gas, electricity, telephone,
garbage collection, sewer use, fire and other safety systems and other utility services supplied to
the Property during the Lease Term. Under no circumstances shall Lessor be responsible for any
interruption of any utility service.

Section 6.03. Insurance.

6.03.1 Lessor's Insurance. Lessor shall obtain and maintain the following insurance
coverage throughout the Term of the Lease ("Lessor's Insurance"):

~~5472837v1~~5472842v1 | 101415-0002

**Formatted:** Font: Italic

(a) Property insurance "the equivalent of causes of loss – special form"
covering the full replacement cost of the building, the parking area (if any), common area
improvements and any and all improvements installed in, on or upon the Property and affixed
thereto (but excluding Lessee's fixtures, furnishings, equipment, personal property or other
elements of Lessee's property), less a commercially reasonable deductible if Lessor so chooses;
provided, however, Lessor shall not be obligated to insure any furniture, equipment, trade
fixtures,
machinery, goods, or supplies which Lessee may keep or maintain in the Property or any
alteration, addition, or improvement which Lessee may make upon the Property;
(b) Fire insurance and extended coverage, with deductibles and the form and

STEPHENS DECL. - EXHIBIT 1 - Page 30

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 14 of 110

10

endorsements as selected by Lessor, on the building, the parking area (if any), common area
improvements and any and all improvements installed in, on or upon the Property and affixed
thereto (but excluding Lessee's fixtures, furnishings, equipment, personal property or other
elements of Lessee's property);
(c) Commercial general liability insurance, which shall be in such amount as
Lessor so determines and shall be in addition to, and not in lieu of, any insurance required to be
maintained by Lessee.
(d) During any period in which Lessor (or Lessor's contractor(s), agent(s),
consultant(s) or others acting on Lessor's behalf) is constructing tenant improvements or
engaging in other construction or other renovation in the building or elsewhere on the Property,
builder's risk insurance covering against all risks of loss or damage to the building under
construction or renovation, with coverage equal to the full estimated construction cost, naming
the Lessee as an additional insured with full rights of recovery under the policy. Said policy shall
be maintained throughout the construction or renovation period and shall include coverage for
perils such as fire, windstorm, vandalism, and theft, subject to standard policy exclusions.
(e) Lessor may, but is not obligated to, maintain such other insurance and
additional coverages as it may deem necessary, including, but not limited to, flood insurance,
earthquake insurance and rent loss insurance, provided, that, maintaining such insurance is
consistent with the then-prevailing practices of institutional and prudent owners of first-class
properties comparable to the Property in the same general geographical area in which the
Property is located.
6.03.2 Insurance Premiums as Operating Expenses. The premiums for Lessor's
Insurance shall be included as part of Lessor's operating expenses payable by Lessee. Lessee
shall also reimburse Lessor for any increased premiums or additional insurance that Lessor
reasonably deems necessary as a result of Lessee's use of the Property.
6.03.3 Waiver of Subrogation. Lessor waives any and all rights of recovery against
Lessee for or arising out of damage to, or destruction of the Property to the extent that Lessor's
property insurance policies then in force insure against such damage or destruction and permit
such waiver and only to the extent of insurance proceeds actually received by Lessor for such
damage or destruction. Lessee waives any and all rights of recovery against Lessor for or arising
out of damage to or destruction of any property of Lessee to the extent that Lessee's property

5472837v15472842v1 | 101415-0002

insurance policies then in force or the policies required by this Lease, whichever is broader, insure
against such damage or destruction.

6.03.4 Lessee's Insurance.

(a) Coverage. Throughout the Lease Term, Lessee shall maintain, with
respect to the Property, at its sole expense, the following types and amounts of insurance:
("Lessee's Insurance"):

(i) Insurance against loss or damage to personal property under an "all
risk" or "special form" insurance policy, which shall include coverage against all
risks of direct
physical loss, including but not limited to loss by fire, lightning, wind,
terrorism, and other risks
normally included in the standard ISO special form Such
insurance shall be in amounts not less
than 100% of the full insurable replacement
cost values (without deduction for depreciation), with
an agreed amount
endorsement or without any coinsurance provision; provided, however, Lessee
shall have until one (1) Business Day after the Effective Date to procure the insurance. Such
insurance. Such policy shall have a waiver of subrogation in favor of Lessee and
Lessor.

STEPHENS DECL. - EXHIBIT 1 - Page 31
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 15 of 110
11

(ii) Commercial general liability insurance, including products and
completed operation liability, covering Lessor and Lessee against bodily injury liability, property
liability, property damage liability and personal and advertising injury, including
without limitation any liability arising
out of the ownership, maintenance, repair,

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 14 of 61
9

condition or operation of the Property or adjoining
ways, streets, parking lots or
sidewalks. Such insurance policy or policies shall contain a broad
form contractual
liability endorsement under which the insurer agrees to insure Lessee's
obligations
under Article X hereof to the extent insurable, and a "severability of interest" clause
or
endorsement which precludes the insurer from denying the claim of Lessee or
Lessor because of
the negligence or other acts of the other, shall be in amounts
of not less than $2,000,000 per

5472837v15472842v1 | 101415-0002

GERRICK-021

occurrence for bodily injury and property damage,
and $2,000,000 general aggregate per location,
and shall be of form and
substance satisfactory to Lessor. Such limits of insurance can be acquired through
Commercial General liability and Umbrella liability policies.
(iii) Workers' compensation and Employers Liability insurance with
statutorily mandated limits covering all persons employed by Lessee on the Property in Property in connection with any work done on or about the Property for which
claims for death or bodily injury
could be asserted against Lessor, Lessee or the
Property.
(iv) Business interruption insurance including Rental Value Insurance
payable to Lessor at all locations for a period of not less than twelve (12) months. Such insurance Such insurance is to follow the form of the real property "all risk" or "special form"
coverage and is not to contain
a co-insurance clause. Such insurance is to have
a minimum of 180 days of extended period of
indemnity.
(v) To the extent Lessee has had an increase in hazard at the Property
or
a change of operations, such additional and/or other insurance and in such
amounts as at the
time is customarily carried by prudent owners or tenants with
respect to improvements and
personal property similar in character, location and
use and occupancy to the Property.
(b) Insurance Provisions. All insurance policies of Lessee's Insurance shall, where reasonably available
in the marketplace, shall:
(i) provide for a waiver of subrogation by the insurer as to claims
against
Lessor, its employees and agents under the commercial general liability,
auto liability, umbrella
and worker's compensation policies;
(ii) be primary and provide that any "other insurance" clause in the
insurance policy shall exclude any policies of insurance maintained by Lessor and the insurance the insurance policy shall not be brought into contribution with insurance
maintained by Lessor under the
commercial general liability, auto liability, umbrella
and worker's compensation policies;
(iii) contain deductibles not to exceed $150,000 (except for flood and
earthquake);
(iv) contain a standard non-contributory mortgagee clause or
endorsement in favor of any Lender designated by Lessor;
EXHIBIT 1

5472837v15472842v1 | 101415-0002

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 15 of 61

10

(v) provide that the policy of insurance shall not be terminated,
cancelled
or amended without at least thirty (30) days' prior written notice to Lessor
(ten (10) days for
nonpayment) and to any Lender covered by any standard
mortgagee clause or endorsement;

STEPHENS DECL. - EXHIBIT 1 - Page 32
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 16 of 110

12

(vi) be in amounts sufficient at all times to satisfy any coinsurance
requirements thereof;
(vii) except for workers' compensation insurance referred to in
Section 6.03(a)(iii) above, name Lessor and any Lessor Affiliate or Lender requested by Lessor,
requested by Lessor, as an "additional insured" with respect to liability insurance,
and as an "additional named insured"
or "additional insured" with respect to real
property and rental value insurance, as appropriate and
as their interests may
appear;
(viii) be issued by insurance companies licensed to do business in the
states where the Property is located, and which are rated no less than A-X by Best's Insurance
Best's Insurance Guide or are otherwise approved by Lessor.
(c) Additional Obligations. It is expressly understood and agreed that (i) if
any insurance policy of Lessee's Insurance required hereunder, or any part thereof, shall expire, be
withdrawn, become
void by breach of any condition thereof by Lessee, or become void or in
jeopardy by
reason of the failure or impairment of the capital of any insurer, Lessee shall
immediately
obtain new or additional insurance reasonably satisfactory to Lessor and any Lender
designated by Lessor; (ii) the minimum limits of insurance coverage set forth in this Section
6.03.4
6.03 shall not limit the liability of Lessee for its acts or omissions as provided in this Lease;
(iii) Lessee
shall procure policies for all insurance for periods of not less than one year
and shall provide to
Lessor and any servicer or Lender of Lessor certificates of insurance
or, upon Lessor's request,
duplicate originals of any property insurance policies
evidencing that insurance satisfying the
requirements of this Lease is in effect at all times;

5472837v1 5472842v1 | 101415-0002

(iv) Lessee shall pay as they become due all
premiums for the insurance required by this
Section 6.03.4; (v) in the event that Lessee fails to
comply with any of the requirements set
forth in this Section 6.03.4, within ten (10) days of the
giving of written notice by Lessor to
Lessee, (A) Lessor shall be entitled to procure such insurance;
and (B) any sums
expended by Lessor in procuring such insurance shall be Additional Rental and shall be
shall be repaid by Lessee, together with interest thereon at the Default Rate, from the time of
payment by Lessor until fully paid by Lessee immediately upon written demand therefor by
Lessor;
by Lessor; and (vi) Lessee shall maintain all insurance policies required in this Section
6.03.4 not to be
cancelled, invalidated or suspended on account of the conduct of Lessee,
its officers, directors,
managers, members, employees or agents, or anyone acting for
Lessee or any subtenant or other
occupant of the Property, and shall comply with all policy
conditions and warranties at all times to
avoid a forfeiture of all or a part of any insurance
payment.
(d) Blanket Policies. Notwithstanding anything to the contrary in this Section
6.03.4, any insurance which Lessee is required to obtain pursuant to this Section 6.03.4 may
be
carried under a "blanket" policy or policies covering other properties or liabilities of
Lessee
provided that such "blanket" policy or policies otherwise comply with the provisions
EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 16 of 61
11
of this Section
6.03.4. In addition, the limits of liability set forth above may be met with an
umbrella policy.
Section 6.04. Tax Impound. Lessee to pay to Lessor on the first day of each month the
amount that Lessor reasonably estimates will be necessary in order to accumulate with Lessor
sufficient funds in an impound account (which shall not be deemed a trust fund) (the "Reserve")
for Lessor to pay any and all Real Estate taxes for the Property for the ensuing twelve (12)
months,
or, if due sooner, Lessee shall pay the required amount immediately upon Lessor's demand
therefor. Lessor shall, upon prior written request of Lessee, provide Lessee with evidence
reasonably satisfactory to Lessee that payment of the Real Estate Taxes was made in a timely
fashion. In the event that the Reserve does not contain sufficient funds to timely pay any Real
Estate Taxes, upon Lessor's written notification thereof, Lessee shall, within five (5) Business
STEPHENS DECL. - EXHIBIT 1 - Page 33

5472837v15472842v1 | 101415-0002

GERRICK-024

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 17 of 110
13

Days of such notice, provide funds to Lessor in the amount of such deficiency. Lessor shall pay or cause to be paid directly to the applicable taxing authorities any Real Estate Taxes then due and payable for which there are funds in the Reserve; *provided, however,* that in no event shall Lessor be obligated to pay any Real Estate Taxes in excess of the funds held in the Reserve, and Lessee shall remain liable for any and all Real Estate Taxes, including fines, penalties, interest or additional costs imposed by any taxing authority (unless incurred as a result of Lessor's failure to timely pay Real Estate Taxes for which it had funds in the Reserve). Lessee shall cooperate fully with Lessor in assuring that the Real Estate Taxes are timely paid. Lessor may deposit all Reserve funds in accounts insured by any federal or state agency and may commingle such funds with other funds and accounts of Lessor. Interest or other gains from such funds, if any, shall be the sole property of Lessor. Upon an Event of Default, in addition to any other remedies, Lessor may apply all impounded funds in the Reserve against any sums due from Lessee to Lessor. Lessor shall give to Lessee an annual accounting showing all credits and debits to and from such impounded funds received from Lessee. Promptly after any Event of Default has been cured, Lessor will release any unapplied Reserve funds to Lessee.

ARTICLE VII

MAINTENANCE; ALTERATIONS – LESSEE NEEDS TO INSPECT - AGREED

Section 7.01. Condition of Property; Maintenance. Except as to improvements which Lessor is required to construct pursuant to Section 4.06 and elsewhere, Lessee hereby accepts the
Property or its suitability for its business use as set forth in Section 4.04 A2.01 "AS IS" and "WHERE
IS" with no representation or warranty of Lessor as to the condition thereof. Subject to Lessor's obligations under Section 4.06, Lessee shall, at its
sole cost and expense, be responsible for
(a) keeping all of the building, structures and
improvements existing or erected on the Property in
good order and repair, free from actual or
constructive waste; (b) the repair or reconstruction of any building, structures or improvements any building, structures or improvements erected on the Property damaged or destroyed by a
Casualty as described in Article XI;
(c) subject to Section 7.02, making all necessary structural,
non-structural, exterior and interior
repairs and replacements to any building, structures or
improvements erected on the Property;
(d) operating the Property in accordance with Legal
Requirements; (e) (i) using commercially
reasonable efforts to ensure that no party encroaches
upon the Property, (ii) protecting,
defending, indemnifying, releasing and holding the Indemnified
Parties harmless from and against
any and all claims and Losses arising out of or in any way
relating to any encroachments and/or

activities upon the Property caused by any Person; and (iii) prosecuting to the extent desired by

Lessee any claims that Lessee seeks to bring against any Person relating to Lessee's use and

possession of the Property; and (f) paying all operating costs of the Property in the ordinary course

of business. Except as provided otherwise under Section 4.06, and subject to the provisions therein, Lessee waives any right to require Lessor to maintain, repair or rebuild all or any

EXHIBIT 1

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc Main Document Page 17 of 61

12

part of the Property or make repairs at the expense of Lessor pursuant to any Legal Requirements

at any time in effect. Notwithstanding the foregoing, Lessor warrants to Lessee that it is not aware of, nor is it in possession of any reports, studies or other documents pertaining to (i) the existence of any Hazardous Materials or Regulated Substances in, on or under

the Property, or (ii) Releases in, on or under the Property; and (iii) Lessor represents to Lessee that it is not aware of any condition in, on or under the Property which violates Environmental Law.

Section 7.02. Alterations and Improvements. During the Lease Term, Lessee shall not not alter the exterior, structural, plumbing or electrical elements of the Property in any manner without

the prior written consent of Lessor, which consent shall not be unreasonably withheld or conditioned; *provided, however*, upon fifteen business days prior written notice to the Lessor, Lessee may undertake nonstructural alterations to the Property, individually, costing less than

STEPHENS DECL. - EXHIBIT 1 - Page 34

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc Jack Stephens Declaration and Exhibits Page 18 of 110

14

$5,000 without Lessor's prior written consent. If Lessor's consent is required hereunder and Lessor consents to the making of any such alterations, the same shall be made by Lessee at Lessee's sole expense by a licensed insured contractor and according to plans and specifications approved by Lessor and subject to such other conditions as Lessor shall reasonably require. Any work at any time commenced by Lessee on the Property shall be prosecuted diligently to completion, shall be of good workmanship and materials and shall comply fully with all the terms

of this Lease and all Legal Requirements. Upon completion of any alterations individually costing

$5,000 or more, Lessee shall promptly provide Lessor with evidence of full payment to all laborers

and materialmen contributing to the alterations. Additionally, upon completion of any such alterations, Lessee shall promptly provide Lessor with (a) an architect's certificate certifying the alterations to have been completed in conformity with the plans and specifications (if the

5472837v1 5472842v1 | 101415-0002

Formatted: Font: Italic

alterations are of such a nature as would require the issuance of such a certificate from the architect); (b) a certificate of occupancy (if the alterations are of such a nature as would require the issuance of a certificate of occupancy); and (c) any other documents or information reasonably requested by Lessor. Lessee shall keep the Property free from any liens arising out of any work performed on, or materials furnished to, the Property. For any work of improvement initiated by Lessee, Lessee shall execute and file or record timely, as appropriate, a "Notice of Non-Responsibility," or any equivalent notice permitted under applicable Law in the state where the Property is located which provides that Lessor is not responsible for the payment of any costs or expenses relating to the additions or alterations. Any addition to or alteration of the Property shall be deemed a part of the Property and belong to Lessor, and Lessee shall execute and deliver to Lessor such instruments as Lessor may require evidencing the ownership by Lessor of such addition or alteration.

Section 7.03. Encumbrances. During the Lease Term, Lessor shall have the right to grant easements on, over, under and above the Property without the prior consent of Lessee, provided that such easements will not materially interfere with Lessee's use of the Property. Lessee shall comply with and perform all obligations of Lessor under all easements, declarations, covenants, restrictions and other items of record now or hereafter encumbering the Property. Lessee shall not grant any easements on, over, under or above the Property, without Lessor's prior written consent which may be withheld in Lesor's sole and absolute discretion.

Formatted: Font: Italic

Section 7.04 Lessor Access; Showing Premises Repairs. Lessor and Lessor's agents shall have the right to enter the premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable prior notice for the purpose of showing the same to prospective purchasers, lenders, or tenants, and making such alterations, repairs, improvements or additions to the premises as lessor may deem necessary or desirable and the erecting, using and maintaining of utilities, services, pipes and conduits through the premises. all such activities shall be without abatement of rent or liability to Lessee.

ARTICLE VIII
USE OF THE PROPERTY; COMPLIANCE

Section 8.01. Use.

(a) Use. Except for the Permitted Subleases (defined and described in Section 14.04 below), during the Lease Term, the Property shall be used solely for the use herein use herein provided. Except during periods when a Property is untenantable due to

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 18 of 61
13

Casualty or
Condemnation (and provided that Lessee continues to strictly comply with the
other terms and
conditions of this Lease), and except for the Permitted Subleases, Lessee
shall at all times during
the Lease Term occupy the Properties and shall diligently operate
its business on the Properties.

Section 8.02. Compliance. Lessee's use and occupation of the Property, and the

STEPHENS DECL. - EXHIBIT 1 - Page 35
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc

5472837v15472842v1 | 101415-0002

GERRICK-027

Jack Stephens Declaration and Exhibits Page 19 of 110
15

condition thereof, shall, at Lessee's sole cost and expense, comply fully with all Legal
Requirements and all restrictions, covenants and encumbrances of record, and any owner
obligations under such Legal Requirements, or restrictions, covenants and encumbrances of
record, with respect to the Property, in either event, the failure with which to comply could have
a

Material Adverse Effect. Subject to the foregoing, Lessee shall comply with all Legal
Requirements relating to anti-terrorism, trade embargos, economic sanctions, Anti-Money
Laundering Laws, and the Americans with Disabilities Act of 1990, as such act may be amended
from time to time, and all regulations promulgated thereunder, as it affects the Property now or
hereafter in effect. Lessee shall obtain, maintain and comply with all required licenses and
permits, both governmental and private, to use and operate the Property. Upon Lessor's written
request from time to time during the Lease Term, Lessee shall certify in writing to Lessor that
Lessee's representations, warranties and obligations under Article V and this Section 8.02 remain
true and correct and have not been breached. Lessee shall immediately notify Lessor in writing if
if any of such representations, warranties or covenants are no longer true or have been breached
or if Lessee has a reasonable basis to believe that they may no longer be true or have been
breached. In connection with such an event, Lessee shall comply with all Legal Requirements
and directives of Governmental Authorities and, shall, provide to Lessor copies of all notices,
reports and other communications exchanged with, or received from, Governmental Authorities
relating to such an event. Lessee shall also reimburse Lessor for all Costs incurred by Lessor in
evaluating the effect of such an event on the Property and this Lease, in obtaining any necessary
license or approvals from Governmental Authorities, and in complying with all Legal
Requirements

applicable to Lessor as the result of the existence of such an event and for any penalties or fines
imposed upon Lessor as a result thereof. Notwithstanding anything to the contrary in this Lease,
Lessee shall not be required to perform alterations to the Property with respect to conditions that
have been "grandfathered". Lessee will use its best efforts to prevent any act or condition to exist
on or about the Property that will materially increase any insurance rate thereon, except when
such acts are required in the normal course of its business and Lessee shall pay for such increase.
Lessee agrees that it will defend, indemnify and hold harmless the Indemnified Parties from and
against any and all Losses caused by, incurred or resulting from Lessee's failure to comply with
its obligations under this Section.

Section 8.03. Environmental.

(a) Covenants. Lessee covenants to Lessor during the Lease Term, subject
(i) Lessee covenants to Lessor during the Lease Term, subject to the
limitations of subsection (ii) below, as follows:

(Ai) All uses and operations on or of the Property, whether by
Lessee or

any other Person, shall be in compliance with all Environmental
Laws and permits issued pursuant

thereto.

EXHIBIT 1

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 19 of 61

5472837v15472842v1 | 101415-0002

~~14~~

(~~B~~(ii)) There shall be no Releases in, on, under or from the Property.

(~~C~~iii) There shall be no Hazardous Materials or Regulated Substances in, on or under the Property.

(~~D~~iv) Lessee shall keep the Property or cause the Property to be kept free and clear of all Environmental Liens, whether due to any act or omission of Lessee or any other Person.

(~~E~~v) Lessee shall not act or fail to act or allow any other tenant, occupant, guest, customer or other user of the Property to act or fail to act in any way that (1) materially

STEPHENS DECL. - EXHIBIT 1 - Page 36
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 20 of 110

16

increases a risk to human health or the environment, (2) poses an unreasonable or unacceptable risk of harm to any Person or the environment (whether on or off the Property), (3) has a Material Adverse Effect, (4) is contrary to any material requirement set forth in the insurance policies maintained by Lessee or Lessor, (5) constitutes a public or private nuisance or constitutes waste, (6) violates any covenant, condition, agreement or easement applicable to the Property, or (7) would result in any reopening or reconsideration of any prior investigation or causes a new investigation by a Governmental Authority having jurisdiction over the Property; *provided, however*, nothing herein shall prohibit Lessee from using Hazardous Materials in the normal course of its business in accordance with Environmental Laws.

(~~F~~vi) Lessee shall, at its sole cost and expense, fully and expeditiously cooperate in all activities pursuant to this Section 8.03, including but not limited to providing all relevant information and making knowledgeable persons available for interviews.

(b) Notification Requirements. Lessee shall immediately notify Lessor in

> **Formatted:** Font: Italic
>
> **Formatted:** Font: Italic

GERRICK-029

writing upon Lessee obtaining actual knowledge of (i) any Releases or Threatened Releases in, Releases in, on, under or from the Property, or migrating towards the Property; (ii) any
non-compliance with
any Environmental Laws related in any way to the Property; (iii) any
actual or potential
Environmental Lien or activity use limitation on the Property; (iv) any
required or proposed
Remediation of environmental conditions relating to the Property
required by applicable
Governmental Authorities; and (v) any written or oral notice or other
communication of which
Lessee becomes aware from any source whatsoever (including
but not limited to a Governmental
Authority) relating in any way to Hazardous Materials,
Regulated Substances or above or below
ground storage tanks, or Remediation thereof,
at or on the Property, or any actual or potential
administrative or judicial proceedings in
connection with anything referred to in this Section.
Lessee shall, upon Lessor's written
request, deliver to Lessor a certificate stating that Lessee is
and has been in full
compliance with all of the environmental representations, warranties and
covenants in this
Lease.
(c) Remediation. Lessee shall, at its sole cost and expense, and without
limiting any other provision of this Lease, effectuate any Remediation required of it by any
Governmental Authority of any condition (including, but not limited to, a Release or Threatened
EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 20 of 61
15
Threatened Release) in, on, under or from the Property and take any other reasonable
action deemed required
of it by any Governmental Authority for protection of human health
or the environment. Should
Lessee fail to undertake any required Remediation in
accordance with the preceding sentence,
Lessor, after written notice to Lessee and
Lessee's failure to immediately undertake such
Remediation, shall be permitted to
complete such Remediation, and all Costs incurred in
connection therewith shall be paid
by Lessee. Any Cost so paid by Lessor, together with interest
at the Default Rate, shall
be deemed to be Additional Rental hereunder and shall be immediately

5472837v15472842v1 | 101415-0002

GERRICK-030

due from Lessee
to Lessor.
(d) Indemnification. Lessee shall, at its sole cost and expense, protect,
defend, indemnify, release and hold harmless each of the Indemnified Parties from and against
against any and all Losses, including, but not limited to, all Costs of Remediation (whether
or not
performed voluntarily), arising out of or in any way relating to any Environmental
Laws, Hazardous
Materials, Regulated Substances, above or below ground storage tanks,
or other environmental
matters in violation of this Lease concerning the Property. It is
expressly understood and agreed
that Lessee's obligations under this Section that arose
during the Lease Term shall survive the
expiration or earlier termination of this Lease for
any reason.
(e) Right of Entry. In the event that Lessor has a reasonable basis to believe

STEPHENS DECL. - EXHIBIT 1 - Page 37
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 21 of 110
17

that a Release or a violation of any Environmental Law has occurred, Lessor and any
other Person
designated by Lessor, including but not limited to any receiver, any
representative of a
Governmental Authority, and any environmental consultant, shall have
the right, but not the
obligation, to enter upon the Property at all reasonable times to
assess any and all aspects of the
environmental condition of the Property and its use,
including but not limited to conducting any
environmental assessment or audit (the scope
of which shall be determined in Lessor's sole and
absolute discretion) and taking samples
of soil, groundwater or other water, air, or building
materials, and conducting other invasive
testing. Lessee shall cooperate with and provide access
to Lessor and any other Person
designated by Lessor. Any such assessment or investigation shall
be at Lessee's sole
cost and expense. Such entry shall be subject to the terms of Section 9.02 hereof.
hereof.
(f) Survival. The obligations of Lessee and the rights and remedies of Lessor
under this Section 8.03 that arose during the Lease Term shall survive the termination, expiration
expiration and/or release of this Lease.
ARTICLE IX

5472837v15472842v1 | 101415-0002

GERRICK-031

ADDITIONAL COVENANTS

Section 9.01. Performance at Lessee's Expense. Lessee acknowledges and confirms that Lessor may collect its attorneys' fees, costs and expenses in connection with (a) any extension, renewal, modification, amendment and termination of this Lease requested by Lessee, (b) any release or substitution of Property requested by Lessee; (c) the procurement of consents, waivers and approvals with respect to the Property or any matter related to this Lease requested by Lessee; (d) the review of any assignment or sublease or proposed assignment or sublease or the preparation or review of any subordination or non-disturbance agreement requested by Lessee; (e) the collection, maintenance and/or disbursement of reserves created under this Lease

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 21 of 61
16

or the other Transaction Documents (following an Event of Default); and (f) inspections required to make certain determinations under this Lease following Lessor's reasonable belief of a breach under this Lease.

Section 9.02. Inspection. Lessor and its authorized representatives shall have the right, at all reasonable times and upon giving reasonable prior notice (except in the event of an emergency, in which case no prior notice shall be required), to enter the Property or any part thereof and inspect the same. Lessee hereby waives any claim for damages for any injury or inconvenience to or interference with Lessee's business, any loss of occupancy or quiet enjoyment of the Property and any other loss occasioned by such entry in accordance with this section, but, subject to Section 10.01. Any entry by Lessor and Lessor's agents shall not impair the operations on the Property more than reasonably necessary and shall comply with all reasonable security measures of the occupants of the Property.

Section 9.03. Financial Information.

(a) Financial Statements. Within thirty (30) days after the end of eachthe fiscal quarteryear and within sixty (60) days after the end of each fiscal year of Lessee and Lessee
Reporting
Entities, Lessee shall deliver to Lessor (i) complete consolidated financial
statements that
consolidate Lessee and Lessee Reporting Entities, including a balance
sheet, profit and loss
statement, statement of stockholders' equity and statement of cash
flows and all other related
schedules for the fiscal period then ended, such statements to
detail separately interest expense,
income taxes, non-cash expenses, non-recurring
expenses, operating lease expense and current
portion of long-term debt – capital leases;
(ii) income statements for the business at the Property;

STEPHENS DECL. - EXHIBIT 1 - Page 38
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 22 of 110
18

and (iii) the supplemental financial

5472837v15472842v1 | 101415-0002

GERRICK-032

information set forth on Schedule 9.03. All such financial statements shall be prepared in
accordance with GAAP and shall be certified to be accurate and complete by an officer or
director of each Lessee Reporting Entity. In the event that Lessee's business at the
Property is ordinarily consolidated with other business for financial statements purposes,
a separate profit and loss statement shall be provided showing separately the sales, profits
and losses pertaining to the Property with interest expense, income taxes, non-cash expenses, non-recurring expenses and operating lease expense (rent), with the basis for allocation of overhead or other charges being clearly set forth in accordance with Schedule 9.03. 9.03. The financial statements delivered to Lessor need not be audited, but Lessee shall deliver to
Lessor copies of any audited financial statements of the Lessee Reporting Entities which may be
prepared, as soon as they are available.
(b) Other Information. Notwithstanding any provision contained herein, upon request at any time, Lessee will provide to Lessor, at no additional cost or expense to Lessee, Lessee, any and all financial information and/or financial statements of Lessee Reporting Entities (and in
the form or forms) as reasonably requested by Lessor including, but not limited to, as requested
by Lessor in connection with Lessor's filings with or disclosures to the Securities and Exchange
Commission or other Governmental Authority. Lessor shall hold all of the information described
in this Section 9.03 confidentially.
Section 9.04. OFAC Laws. Upon receipt of notice or upon actual knowledge thereof, Lessee shall immediately notify Lessor in writing if Lessee is a Person whose property or interests
are subject to being blocked under any of the OFAC Laws, or is otherwise in violation of any of the OFAC Laws, or is under investigation by any Governmental Authority for, or has been charged
EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 22 of 61
17
with, or convicted of, drug trafficking, terrorist-related activities or any violation of the Anti-Money
Laundering Laws, has been assessed civil penalties under these or related Laws, or has had funds seized or forfeited in an action under these or related Laws; *provided, however*, that the covenant in this Section 9.04 shall not apply to any Person to the extent such Person's interest is in or through a U.S. Publicly Traded Entity.
Section 9.05. Estoppel Certificate. At any time, and from time to time, each shall,

**Formatted:** Font: Italic

5472837v1 5472842v1 | 101415-0002

GERRICK-033

promptly and in no event later than ten (10) business days after a request from the other party or any Lender or mortgagee of Lessor, execute, acknowledge and deliver to the other or such Lender

or mortgagee, as the case may be, a certificate in the reasonable form supplied by the other party, certifying: (a) that Lessee has accepted the Property; (b) that this Lease is in full force and effect and has not been modified (or if modified, setting forth all modifications), or, if this Lease is not in

full force and effect, the certificate shall so specify the reasons therefor; (c) the commencement and expiration dates of the Lease Term; (d) the date to which the Rentals have been paid under this Lease and the amount thereof then payable; (e) whether, to the actual knowledge, without inquiry, of the certifying party, there are then any existing defaults by the other party in the performance of its obligations under this Lease, and, if there are any such defaults, specifying the nature and extent thereof; (f) that no notice has been received by it of any default under this Lease

which has not been cured, except as to defaults specified in the certificate; (g) the capacity of the Person executing such certificate, and that such Person is duly authorized to execute the same on behalf of the certifying party; (h) that neither Lessor nor any Lender or mortgagee has actual involvement in the management or control of decision making related to the operational aspects or the day-to-day operation of the Property, including any handling or disposal of Hazardous Materials or Regulated Substances; and (i) any other information reasonably requested by the requesting party or any Lender or mortgagee, as the case may be.

STEPHENS DECL. - EXHIBIT 1 - Page 39
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 23 of 110

19

ARTICLE X
RELEASE AND, INDEMNIFICATION, CONDEMNATION AND CASUALTY
Section 10.01. RELEASE AND INDEMNIFICATION. Release and Indemnification.
LESSEE AGREES TO USE AND
OCCUPY THE PROPERTY AT ITS OWN RISK AND HEREBY RELEASES LESSOR AND
LENDER AND THEIR RESPECTIVE AGENTS AND EMPLOYEES FROM ALL CLAIMS
FOR
ANY DAMAGE OR INJURY TO THE FULL EXTENT PERMITTED BY LAW. LESSEE
AGREES
THAT LESSOR SHALL NOT BE RESPONSIBLE OR LIABLE TO
LESSEE OR LESSEE'S
EMPLOYEES, AGENTS, CUSTOMERS, LICENSEES OR INVITEES
FOR BODILY INJURY,
PERSONAL INJURY OR PROPERTY DAMAGE OCCASIONED BY THE
ACTS OR OMISSIONS
OF THE LESSEE OR ANY OTHER PERSON. LESSEE AGREES THAT
ANY EMPLOYEE OR
AGENT TO WHOM THE PROPERTY OR ANY PART THEREOF SHALL
BE ENTRUSTED BY
OR ON BEHALF OF LESSEE SHALL BE ACTING AS LESSEE'S AGENT
WITH RESPECT TO

THE PROPERTY OR ANY PART THEREOF, AND NEITHER LESSOR
NOR ITS LENDER NOR
LESSOR'S OR LENDER'S AGENTS, EMPLOYEES OR
CONTRACTORS SHALL BE LIABLE
FOR ANY LOSS OF OR DAMAGE TO THE PROPERTY OR ANY PART THEREOF.
LESSEE
CAUSED BY THE NEGLIGENT ACTS, OMISSIONS OR WILLFUL MISCONDUCT OF
SUCH
PERSONS. LESSEE SHALL INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS
EACH OF THE
INDEMNIFIED PARTIES FROM AND LESSOR, ITS LENDER, ITS AGENTS, EMPLOYEES
AND CONTRACTORS FROM AND
AGAINST ANY AND ALL LOSSES CAUSED BY,
INCURRED OR RESULTING FROM
LESSEE'S NEGLIGENCE OR WILLFUL MISCONDUCT,
OR FROM ANY BREACH OF,
DEFAULT UNDER, OR FAILURE TO PERFORM, ANY TERM OR
PROVISION OF THIS LEASE
BY LESSEE, ITS OFFICERS, EMPLOYEES, AGENTS OR
CONTRACTORS. IT IS EXPRESSLY
UNDERSTOOD AND AGREED THAT LESSEE'S
EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 23 of 61
18
OBLIGATIONS UNDER THIS SECTION AS
TO LIABILITY THAT AROSE DURING THE LEASE
TERM SHALL SURVIVE THE EXPIRATION
OR EARLIER TERMINATION OF THIS LEASE FOR
ANY REASON WHATSOEVER.
ARTICLE XI
CONDEMNATION AND CASUALTY
Condemnation and Casualty

Section 11.01 10.02. Notification. Lessee shall promptly give Lessor written notice of its actual knowledge of (a) any Condemnation of the Property, (b) the commencement of any proceedings or negotiations which might result in a Condemnation of the Property, and (c) any Casualty to the
Property or any part thereof. Such notice shall provide a general description of the nature and extent of such Condemnation, proceedings, negotiations, or Casualty, and shall include copies of any documents or notices received in connection therewith. Thereafter, Lessee shall promptly send Lessor copies of all notices, correspondence and pleadings relating to any such Condemnation, proceedings, negotiations, or Casualty.

Section 11.02 10.03. Total Condemnation. In the event of a Condemnation of all or substantially all of the Property, and if as a result of such Condemnation: (i) access to the Property
to and from the publicly dedicated roads adjacent to the Property as of the Effective Date is

GERRICK-035

GERRICK-036

**Formatted:** Font: Italic

permanently and materially impaired such that Lessee no longer has access to such dedicated road and no alternate arrangement that complies with Legal Requirements and is acceptable to Lessee is reached; or (ii) the Condemnation includes a portion of the building such that the remaining portion is unsuitable for its use as a Permitted Facility, as determined by Lessee in the exercise of good faith business judgment (and Lessee provides to Lessor an officer's certificate executed by an officer of Lessee certifying to the same) (each such event, a "Total Condemnation"), then, in such event:

(a) Termination of Lease. On the date of the Total Condemnation, all obligations of either party hereunder shall cease; *provided, however,* that Lessee's obligations to ~~obligations to~~ the Indemnified Parties under any indemnification provisions of this Lease and Lessee's obligation to pay Rental and all other Monetary Obligations (whether payable to Lessor or a third party)

STEPHENS DECL. - EXHIBIT 1 - Page 40
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 24 of 110
20

accruing under this Lease prior to the date of termination shall survive such termination. If the date of such Total Condemnation is other than the first day of a month, the Rental for the month in which such Total Condemnation occurs shall be apportioned based on the date of the Total Condemnation.

(b) Net Award. Subject to Section 11.07 below, Lessor shall be entitled to receive the entire Net Award in connection with a Total Condemnation without deduction for any ~~for any~~ estate vested in Lessee by this Lease, and Lessee hereby expressly assigns to Lessor all of its right, title and interest in and to every such Net Award and agrees that Lessee shall not be entitled to any Net Award or other payment for the value of Lessee's leasehold interest in this Lease.

Section ~~11.03~~ 10.04. Partial Condemnation or Casualty. In the event of a Condemnation which is not a Total Condemnation (each such event, a "Partial Condemnation"), or in the event of a Casualty:

(a) Net Awards. All Net Awards shall be paid to Lessor.

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 24 of 61~~
~~19~~

(b) Continuance of Lease. This Lease shall continue in full force and effect upon the following terms:

(i) All Rental and other Monetary Obligations due under this Lease shall ~~shall~~ continue unabated; provided, however, that all Base Rent and other amounts due to Lessor under ~~this Lease shall be abated to the extent any Partial Condemnation or Casualty renders the~~

Property partially or entirely unusable or otherwise interferes with Lessee's occupancy. The amount of such abatement shall be in proportion with the area of the Property so impacted, and the period of abatement shall end when such area is no longer impacted (which may be signified by the issuance of certificates of occupancy, clearances, or other authorizations issued by responsible authorities, depending on the circumstances). *(By way of example, in the event fifteen percent (15%) of the Property is rendered uninhabitable due to Casualty, Base Rent and other amounts due to Lessor shall be abated by a factor of fifteen percent (15%) until the condition has been remedied and the corresponding portion of the Property is habitable.)*

(ii) Lessee shall promptly commence and diligently prosecute
restoration
of the Property to the same condition, as nearly as practicable, as prior to the Partial
~~to the Partial~~ Condemnation or Casualty as approved by Lessor. Subject to the
terms and provisions of the
Mortgage and upon the written request of Lessee
(accompanied by evidence reasonably
satisfactory to Lessor that such amount has
been paid or is due and payable and is properly part
of such costs, and that Lessee
has complied with the terms of Section 7.02 in connection with the
restoration),
Lessor shall promptly make available in installments within thirty (30) days of
Lessee's request, subject to reasonable conditions for disbursement imposed by Lessor, an
~~Lessor, an~~ amount up to but not exceeding the amount of any Net Award received
by Lessor with respect to
such Partial Condemnation or Casualty. Prior to the
disbursement of any portion of the Net Award
with respect to a Casualty, Lessee
shall provide evidence reasonably satisfactory to Lessor of
Lessee's incurring
restoration expenses by Lessee up to the amount of the insurance deductible
applicable to such Casualty. Lessor shall be entitled to keep any portion of the Net Award which
~~Award which~~ may be in excess of the cost of restoration, and Lessee shall bear all
additional Costs of such
restoration in excess of the Net Award.
(c) Lessee Election To Terminate Lease. Notwithstanding the foregoing, in
the event of a Casualty during the final two (2) years of the Lease Term and Lessee reasonably
~~reasonably~~ determines that it shall take longer than one hundred and eighty (180) days to
fully repair the

STEPHENS DECL. - EXHIBIT 1 - Page 41
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 25 of 110
21

Property and such determination is supported by a written certificate from
Lessee's contractor,
architect or engineer, then Lessee shall have the option of
terminating this Lease by providing

~~5472837v1~~5472842v1 | 101415-0002

written notice thereof to Lessor within thirty (30) days
of the date of such determination, but in any
event, no more than sixty (60) days from the
date of the Casualty. Upon Lessee's election to
terminate this Lease, all obligations of
either party hereunder shall cease; *provided, however*, that

Formatted: Font: Italic

Lessee's obligations to the
Indemnified Parties under any indemnification provisions of this Lease
and Lessee's
obligation to pay Rental and all other Monetary Obligations (whether payable to
Lessor or
a third party) accruing under this Lease prior to the date of termination shall survive
such
termination.

Section ~~11.04~~10.05. Temporary Taking. In the event of a Condemnation of all or any part of
the Property for a temporary use (a "Temporary Taking"), this Lease shall remain in full force
and
effect without any reduction of Base Annual Rental, Additional Rental or any other Monetary
Obligation payable hereunder. Except as provided below, Lessor shall be entitled to the entire
Net Award for a Temporary Taking, unless the period of occupation and use by the condemning
authorities shall extend beyond the date of expiration of this Lease, in which event the Net Award
made for such Temporary Taking shall be apportioned between Lessor and Lessee as of the date
of such expiration. At the termination of any such Temporary Taking, Lessee will, at its own cost
and expense and pursuant to the provisions of Section 7.02, promptly commence and complete
restoration of the Property. If a taking is estimated to last longer than the lesser of twelve (12)
months and the remainder of the Lease Term (as it may be extended by Lessee), the taking shall

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 25 of 61~~
~~20~~

be considered as a Partial Condemnation or Total Condemnation, as applicable, rather than a
Temporary Taking.

Section ~~11.05~~10.06. Adjustment of Losses. Any loss under any property damage insurance
required to be maintained by Lessee with respect to the real property shall be paid to Lessor. Any
Net Award relating to a Total Condemnation or a Partial Condemnation shall be paid to Lessor.
Notwithstanding the foregoing or any other provisions of this Section ~~11~~10.05 to the contrary, if
at
the time of any Condemnation or any Casualty or at any time thereafter an Event of Default shall
have occurred and be continuing, Lessor is hereby authorized and empowered but shall not be
obligated, in the name and on behalf of Lessee and otherwise, to file and prosecute Lessee's
claim, if any, for a Net Award on account of such Condemnation or such Casualty and to collect
such Net Award and apply the same to the curing of such Event of Default and any other then
existing Event of Default under this Lease and/or to the payment of any amounts owed by Lessee
to Lessor under this Lease, in such order, priority and proportions as Lessor in its discretion shall
deem proper.

Section ~~11.06~~10.07. Lessee Obligation in Event of Casualty. During all periods of time

~~5472837v1~~5472842v1 | 101415-0002

following a Casualty, Lessee shall take reasonable steps to ensure that the Property is secure and does not pose any risk of harm to any adjoining property and Persons (including owners or occupants of such adjoining property).

Section ~~11.07~~10.08. Lessee Awards and Payments. Notwithstanding any provision contained in this Article ~~XII~~, Lessee shall be entitled to claim and receive any award or payment from the condemning authority expressly granted for the taking of any personal property owned by Lessee, any insurance proceeds with respect to any personal property owned by Lessee, the interruption of its business and relocation expenses (subject, however, to the provisions of Section 6.03(a)(iv) above).

STEPHENS DECL. - EXHIBIT 1 - Page 42
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 26 of 110
22

ARTICLE XI
~~ARTICLE XII~~

DEFAULT, CONDITIONAL LIMITATIONS,
REMEDIES AND MEASURE OF DAMAGES

Section ~~12~~11.01. Event of Default. Each of the following shall be an event of default by Lessor and/or Lessee under this Lease (each, an "Event of Default"):

(a) if any representation or warranty of Lessor or Lessee set forth in this Lease is
intentionally false in any material respect when made, or if Lessor or Lessee renders any intentionally materially false statement or account when made;

(b) if any Rental or other Monetary Obligation due under this Lease is not paid when due if such failure continues for more than five (5) days after written notice from Lessor; ~~Lessor;~~ *provided, however*, Lessee shall only be required to provide such notice and cure
period twice in
any twelve (12) month period; and further provided that any delay in the
payment of Rental as a
result of a technical error in the ACH Method of Payment process
shall not constitute an Event of
Default hereunder so long as the same is corrected within
two (2) Business Days of the date that
Lessee receives notice thereof; and *provided,
further*, that any technical error in the ACH Method
of Payment process caused by
Lessor's bank or servicer shall not constitute an Event of Default
hereunder;

~~EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 26 of 61
21~~

(c) if Lessee fails to pay, prior to delinquency, any taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against the Property, if
~~if~~such failure continues for more than five (5) days past delinquency; *provided, however*,
Lessor

shall only be required to provide such cure period twice in any twelve (12) month
period;
(d) except as set forth in Section 8.01, if Lessee vacates or abandons the
Property;
(e) if there is an Insolvency Event affecting Lessee;
(f) if Lessee fails to observe or perform any of the other covenants, conditions
or obligations of Lessee in this Lease; *provided, however*, if any such failure does not involve the
~~involve the~~ payment of any Monetary Obligation, does not place the Property or any rights
or property of
Lessor in immediate jeopardy, and is within the reasonable power of Lessee
to promptly cure, all
as determined by Lessor in its reasonable discretion, then such failure
shall not constitute an
Event of Default hereunder, unless otherwise expressly provided
herein, unless and until Lessor
shall have given Lessee notice thereof and a period of
thirty (30) days shall have elapsed, during
which period Lessee may correct or cure such
failure, upon failure of which an Event of Default
shall be deemed to have occurred
hereunder without further notice or demand of any kind being
required. If such failure
cannot reasonably be cured within such thirty (30) day period, as
determined by Lessor in
its reasonable discretion, and Lessee is diligently pursuing a cure of such
failure, then
Lessee shall have a reasonable period to cure such failure beyond such thirty
(30)-day
period. If Lessee shall fail to correct or cure such failure within such period, an Event of
Default shall be deemed to have occurred hereunder without further notice or demand of any
kind
~~any kind~~ being required;
(g) if a final, non-appealable judgment is rendered by a court against Lessee
which has a Material Adverse Effect, and is not discharged or provision made for such discharge
~~discharge~~ within ninety (90) days from the date of entry thereof;

STEPHENS DECL. - EXHIBIT 1 - Page 43
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 27 of 110
23

(h) if Lessee shall be liquidated or dissolved or shall begin proceedings
towards its liquidation or dissolution;
(i) if the estate or interest of Lessee in the Property shall be levied upon or
attached in any proceeding and such estate or interest is about to be sold or transferred or such
~~or such~~ process shall not be vacated or discharged within ninety (90) days after it is made;
(j) if there is an "Event of Default" or other breach or default by Lessee under
any of the other Transaction Documents, after the passage of all applicable notice and cure or

~~5472837v1~~5472842v1 | 101415-0002

**Formatted:** Font: Italic

GERRICK-040

cure or grace periods; *provided, however*, in the event that this Lease has been the subject
of a
Securitization has not been the subject of the same Securitization or any series
relating to such
Securitization, an "Event of Default" under such Other Agreement shall
not constitute an Event of
Default under this Lease.

Section 1211.02. Remedies. Upon the occurrence of an Event of Default, with or without
notice or demand, except as otherwise expressly provided herein or such other notice as may be
required by statute and cannot be waived by Lessee, Lessor shall be entitled to exercise, at its

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 27 of 61
22

option, concurrently, successively, or in any combination, all remedies available at Law or in
equity, including, without limitation, any one or more of the following:
(a) to terminate this Lease, whereupon Lessee's right to possession of the
Property shall cease and this Lease, except as to Lessee's liability, shall be terminated;
(b) in accordance with applicable Law, upon five (5) Business Days' notice to
Lessee setting forth (x) Lessor's intent to re-enter and take possession of the Property and expel
and expel Lessee and those claiming under or through Lessee, and (y) Lessee's
concurrent opportunity to
cure, and following a termination of this Lease, to (i) re-enter
and take possession of the Property
(or any part thereof), any or all personal property or
fixtures of Lessee upon the Property and, to
the extent permissible, permits and other
rights or privileges of Lessee pertaining to the use and
operation of the Property, and (ii) expel Lessee and those claiming under or through Lessee,
expel Lessee and those claiming under or through Lessee, without being deemed guilty
in any manner of trespass or becoming liable for any loss or damage
resulting therefrom,
without resort to legal or judicial process, procedure or action. No notice from Lessor
Lessor hereunder or under a forcible entry and detainer statute or similar Law shall constitute an
election by Lessor to terminate this Lease unless such notice specifically so states. If Lessee
Lessee shall, after default, voluntarily give up possession of the Property to Lessor, deliver
to Lessor or
its agents the keys to the Property, or both, such actions shall be deemed to
be in compliance
with Lessor's rights and the acceptance thereof by Lessor or its agents
shall not be deemed to
constitute a termination of the Lease. Lessor reserves the right
following any re-entry and/or
reletting to exercise its right to terminate this Lease by giving
Lessee written notice thereof, in
which event this Lease will terminate;

GERRICK-041

(c) to bring an action against Lessee for any damages sustained by Lessor or
any equitable relief available to Lessor and to the extent not prohibited by applicable Law, and
and upon a termination of this Lease, dispose of any personal property and fixtures in
accordance
with the Laws prevailing at the time and place of such seizure or to remove
all or any portion of
such property and cause the same to be stored in a public warehouse
or elsewhere at Lessee's
sole expense, without becoming liable for any loss or damage
resulting therefrom in compliance
with all Legal Requirements;
(d) except to the extent prohibited by applicable law, to relet the Property or
any part thereof for such term or terms (including a term which extends beyond the original
Lease
Lease STEPHENS DECL. - EXHIBIT 1 - Page 44
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 28 of 110
24
Term), at such rentals and upon such other terms as Lessor, in its sole discretion,
may determine,
with all proceeds received from such reletting being applied to the Rental
and other Monetary
Obligations due from Lessee in such order as Lessor may, in its sole
discretion, determine, which
other Monetary Obligations include, without limitation, all
repossession costs, brokerage
commissions, attorneys' fees and expenses, alteration,
remodeling and repair costs and
expenses of preparing for such reletting. Except to the
extent required by applicable Law, Lessor
shall have no obligation to relet the Property or
any part thereof and shall in no event be liable for
refusal or failure to relet the Property or
any part thereof, or, in the event of any such reletting, for
refusal or failure to collect any
rent due upon such reletting, and no such refusal or failure shall
operate to relieve Lessee
of any liability under this Lease or otherwise to affect any such liability.
Lessor reserves
the right following any re-entry and/or reletting to exercise its right to terminate this Lease
this Lease by giving Lessee written notice thereof, in which event this Lease will terminate as
specified in said notice;
EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 28 of 61
23

5472837v15472842v1 | 101415-0002

GERRICK-042

(e) except to the extent prohibited by applicable Law, upon a termination of this Lease, to accelerate and recover from Lessee all Rental and other Monetary ~~Obligations due~~ Obligations due and owing and scheduled to become due and owing under this Lease both before and after the date of such breach for the entire original scheduled Lease Term, subject to the terms of California Civil Code 1951.2;

(f) to recover from Lessee all Costs paid or incurred by Lessor as a result of such breach, regardless of whether or not legal proceedings are actually commenced, ~~subject to~~ subject to Section 1951.2 of the California Civil Code;

(g) to immediately or at any time thereafter, and with or without notice, at Lessor's sole option but without any obligation to do so, correct such breach or default ~~and charge~~ and charge Lessee all Costs incurred by Lessor therein. Any sum or sums paid by Lessor, together with interest at the Default Rate, shall be deemed to be Additional Rental hereunder and shall be immediately due from Lessee to Lessor. Any such acts by Lessor in correcting Lessee's breaches or defaults hereunder shall not be deemed to cure said breaches or defaults or constitute any waiver of Lessor's right to exercise any or all remedies set forth herein;

(h) to immediately or at any time thereafter, and with or without notice, except as required herein, set off any money of Lessee held by Lessor under this Lease against ~~any sum~~ any sum owing by Lessee hereunder;

(i) Without limiting the generality of the foregoing or limiting in any way the rights of Lessor under this Lease or otherwise under applicable Laws, at any time after ~~the~~ the occurrence, and during the continuance, of an Event of Default, Lessor shall be entitled to apply for and have a receiver appointed under applicable Law by a court of competent jurisdiction (by *ex parte* motion for appointment without notice) in any action taken by Lessor to enforce its rights and remedies hereunder in order to protect and preserve Lessor's interest under this Lease or in the Property, and in connection therewith, LESSEE HEREBY IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER AFTER THE OCCURRENCE, AND DURING THE CONTINUANCE, OF AN EVENT OF DEFAULT; and/or

(j) to seek any equitable relief available to Lessor, including, without limitation, the right of specific performance.

| Formatted: Font: Italic |

~~5472837v1~~5472842v1 | 101415-0002

Section 1211.03. Cumulative Remedies. All powers and remedies given by Section 12.02
STEPHENS DECL. - EXHIBIT 1 - Page 45
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 29 of 110
25

to Lessor, subject to applicable Law, shall be cumulative and not exclusive of one another or of
any other right or remedy or of any other powers and remedies available to Lessor under this
Lease, by judicial proceedings or otherwise, to enforce the performance or observance of the
covenants and agreements of Lessee contained in this Lease, and no delay or omission of Lessor
to exercise any right or power accruing upon the occurrence of any Event of Default shall impair
any other or subsequent Event of Default or impair any rights or remedies consequent thereto.
Every power and remedy given by this Section or by Law to Lessor may be exercised from time
to time, and as often as may be deemed expedient, by Lessor, subject at all times to Lessor's
right in its sole judgment to discontinue any work commenced by Lessor or change any course of
action undertaken by Lessor.

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 29 of 61
24
Section 12.04. Lessee Waiver. Except as otherwise set forth herein, Lessee hereby
expressly waives, for itself and all Persons claiming by, through and under Lessee, including
creditors of all kinds, (a) intentionally deleted; (b) the benefits of any present or future Legal
Requirement that exempts property from liability for debt or for distress for rent; (c) any present
or future Legal Requirement relating to notice or delay in levy of execution in case of eviction of
a tenant for nonpayment of rent; and (d) any lien rights which may arise pursuant to any present
or future Legal Requirement.
ARTICLE XIII
ARTICLE XII
MORTGAGE, SUBORDINATION AND ATTORNMENT

Section 1312.01. No Liens. Lessor's interest in this Lease and/or the Property shall not be
subordinate to any liens or encumbrances placed upon the Property by or resulting from any act
of Lessee, and nothing herein contained shall be construed to require such subordination by
Lessor. NOTICE IS HEREBY GIVEN THAT LESSEE IS NOT AUTHORIZED TO PLACE OR
ALLOW TO BE PLACED ANY LIEN, MORTGAGE, DEED OF TRUST, DEED TO SECURE
DEBT, SECURITY INTEREST OR ENCUMBRANCE OF ANY KIND UPON ALL OR ANY
PART
OF THE PROPERTY OR LESSEE'S LEASEHOLD INTEREST THEREIN, AND ANY SUCH
PURPORTED TRANSACTION SHALL BE VOID.

Section 1312.02. Subordination. This Lease at all times shall automatically be subordinate
to the lien of any and all Mortgages now or hereafter placed upon the Property by Lessor, and
Lessee covenants and agrees to execute and deliver, upon demand, such further reasonable
instruments subordinating this Lease to the lien of any or all such Mortgages as shall be desired
by Lessor, or any present or proposed mortgagees under trust deeds, upon the condition that this
Lease shall continue and Lessee shall have the right to remain in possession of the Property
under the terms of this Lease, notwithstanding any default in any or all such Mortgages, or after
the foreclosure of such Mortgages, so long as no Event of Default shall have occurred and be

5472837v15472842v1 | 101415-0002

GERRICK-044

continuing. Notwithstanding the foregoing, (a) on the Effective Date, Lessor, Lessee and any lenders of the Property shall enter into a subordination and non-disturbance agreement in form approved by such lender and reasonably satisfactory to Lessee providing for recognition of Lessee's interests under this Lease in the event of a foreclosure of the Mortgage and memorializing the subordination of this Lease to the lien of such Mortgage and (b) the subordination of this Lease to a future Mortgage shall be conditioned upon Lessee's receipt from any such lender of such a recognition agreement. Explain the process

Section 1312.03. Attornment. In the event any purchaser or assignee of any Lender at a foreclosure sale acquires title to the Property, or in the event that any Lender or any purchaser or assignee otherwise succeeds to the rights of Lessor as landlord under this Lease, Lessee shall attorn to Lender or such purchaser or assignee, as the case may be (a "Successor Lessor"), and recognize the Successor Lessor as lessor under this Lease, and, subject to the provisions of this Article XIII, this Lease shall continue in full force and effect as a direct lease between the Successor Lessor and Lessee, provided that the Successor Lessor shall only be liable for any obligations of Lessor under this Lease which accrue after the date that such Successor Lessor acquires title. The foregoing provision shall be self-operative and effective without the execution of any further instruments.

EXHIBIT 1

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 30 of 61

25

Section 1312.04. Execution of Additional Documents. Although the provisions in this
STEPHENS DECL. - EXHIBIT 1 - Page 46
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 30 of 110

26

Article XIII shall be self-operative and no future instrument of subordination shall be required, upon request by Lessor, Lessee shall execute and deliver such additional reasonable instruments as may be reasonably required for such purposes.

Section 1312.05. Notice to Lender. Lessee shall give written notice to any Lender having a recorded lien upon the Property or any part thereof of which Lessee has been provided written notice of any breach or default by Lessor of any of its obligations under this Lease before exercising its remedies hereunder and give such Lender at least thirty (30) days beyond any notice period to which Lessor might be entitled to cure such default before Lessee may exercise any remedy with respect thereto.

ARTICLE XIVXIII

ASSIGNMENT

Section 1413.01. Assignment by Lessor. As a material inducement to Lessor's willingness to enter into the transactions contemplated by this Lease (the "Transaction") and the other Transaction Documents, Lessee hereby agrees that Lessor may, from time to time and at any time and without the consent of Lessee, engage in all or any combination of the following, or enter into agreements in connection with any of the following or in accordance with requirements

that may be imposed by applicable securities, tax or other Laws: (a) the sale, assignment, grant, conveyance, transfer, financing, re-financing, purchase or re-acquisition of the Property, this Lease or any other Transaction Document, Lessor's right, title and interest in this Lease or any

5472837v15472842v1 | 101415-0002

GERRICK-045

other Transaction Document, the servicing rights with respect to any of the foregoing, or participations in any of the foregoing; or (b) a Securitization and related transactions. Without in any way limiting the foregoing, the parties acknowledge and agree that Lessor, in its sole discretion, may assign this Lease or any interest herein to another Person in order to maintain Lessor's or any of its Affiliates' status as a REIT. In the event of any such sale or assignment other than a security assignment, Lessee shall attorn to such purchaser or assignee (so long as Lessor and such purchaser or assignee notify Lessee in writing of such transfer and such purchaser or assignee expressly assumes in writing the obligations of Lessor hereunder from and after the date of such assignment). At the request of Lessor, Lessee will execute such documents confirming the sale, assignment or other transfer and such other agreements as Lessor may reasonably request, provided that the same do not increase the liabilities and obligations or decrease the rights of Lessee hereunder. Provided the assignee assumes the same in writing, Lessor shall be relieved, from and after the date of such transfer or conveyance, of liability for the

performance of any obligation of Lessor contained herein, except for obligations or liabilities accrued prior to such assignment or sale. Explain

Section ~~14~~13.02. No Assignment by Lessee.

(a) Lessee acknowledges that Lessor has relied both on the business experience and creditworthiness of Lessee and upon the particular purposes for which Lessee ~~Lessee~~ intends to use the Property in entering into this Lease. Lessee shall not assign, transfer, convey,

pledge or mortgage this Lease or any interest herein or any interest in Lessee, whether by

operation of Law or otherwise, without the prior written consent of Lessor, which shall not be

unreasonably withheld. At the time of any assignment of this Lease which is approved by Lessor,

the assignee shall assume all of the obligations of

~~EXHIBIT 1~~

~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc Main Document Page 31 of 61~~

~~26~~

Lessee accruing thereafter under this Lease pursuant to a written assumption agreement in form and substance reasonably acceptable to Lessor. Such assignment of this Lease pursuant to Section 14.02 shall not relieve Lessee of its obligations respecting this Lease unless otherwise agreed to by Lessor. Any assignment, transfer, conveyance, pledge or mortgage in violation of this Section 14.02 shall be voidable at the sole

STEPHENS DECL. - EXHIBIT 1 - Page 47
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc Jack Stephens Declaration and Exhibits Page 31 of 110

27

option of Lessor.

~~5472837v1~~5472842v1 | 101415-0002

Any consent to an assignment given by Lessor hereunder shall not be deemed a consent a consent to any subsequent assignment.

(b) Notwithstanding anything to the contrary contained in this Section 14.02 and provided that no Event of Default has occurred and is continuing at the time of the proposed proposed assignment or other transfer, and provided further that any assignee agrees to assume all of Lessee's obligations under this Lease accruing thereafter, Lessee shall have the right to assign or otherwise transfer all, but not less than all, of its interest in, to and under this Lease without Lessor's consent to (i) an Affiliate of Lessee, (ii) a successor to Lessee by merger or any entity which purchases or otherwise acquires all or substantially all of the assets or equity interests of Lessee in a bona fide sale for fair market value, or (iii) a Qualified Operator (each, a "Permitted Transfer"). A "Qualified Operator" shall mean a Person who, following the consummation of the assignment contemplated herein, for two (2) consecutive years immediately prior to the date of assignment or transfer, (A) has a CFCCR (defined below) of at least 2.5x; (B) generates EBITDAR (defined below) of at least $7,280,000, and (C) has a Lease Adjusted Leverage (defined below) of no more than 5.0x; *provided, however*, that Lessee may satisfy the foregoing conditions of a Qualified Qualified Operator by providing, or causing to be provided, a guaranty agreement, in form and substance reasonably acceptable to and approved by Lessor, in writing, which guaranty shall be shall be from an entity that meets the requirements of (A), (B) and (C) set forth in this Section 14.02(b). In the event that Lessee effects a Permitted Transfer pursuant to clause (iii), Lessee shall be released from any liability arising under this Lease from and after the date of such assignment. In the event that Lessee effects a Permitted Transfer pursuant to clauses (i) or (ii), Lessee shall not be released from liability under this Lease.

For purposes hereof:

"*CFCCR*" means, with respect to the twelve month period of time immediately preceding the date of determination, the ratio calculated for such period of time, each as determined in accordance with GAAP, of (i) the sum of Consolidated Net Income (excluding noncash (excluding non-cash income), Depreciation and Amortization, Interest Expense, income taxes, Operating Lease Expense and non-cash expenses to (ii) the sum of Operating Lease Expense (excluding non-cash noncash

*[Formatted: Font: Italic]*

*[Formatted: Font: Italic]*

rent adjustments), scheduled principal payments of
long term Debt, scheduled maturities of
Capital Leases, dividends paid in cash and
Interest Expense (excluding non-cash interest
expense and amortization of non-cash
financing expenses). For purposes of calculating the
CFCCR, the following terms shall be
defined as set forth below:
"*Capital Lease*" shall mean all leases of any property, whether real,
personal or

mixed, by a Person, which leases would, in conformity with GAAP, be
required to be accounted
for as a capital lease on the balance sheet of such
Person. The term "Capital Lease" shall not
include any operating lease.

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 32 of 61
27

"*Consolidated Net Income*" shall mean with respect to the period of
determination,
the net income or net loss of a Person. In determining the amount
of Consolidated Net Income,
(i) adjustments shall be made for nonrecurring gains
and losses or non-cash items allocable to
the period of determination, (ii)
deductions shall be made for, among other things, Depreciation
and Amortization,
Interest Expense, Operating Lease Expense, and (iii) no deductions shall be made
made for income taxes or charges equivalent to income taxes allocable to the period of
determination, as determined in accordance with GAAP.

"*Debt*" shall mean with respect to a Person, and for the period of determination (i)
determination (i) indebtedness for borrowed money, (ii) subject to the limitation set
forth in sub item (iv) below,
STEPHENS DECL. - EXHIBIT 1 - Page 48
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 32 of 110
28

obligations evidenced by bonds, indentures, notes or
similar instruments, (iii) obligations under
leases which should be, in accordance
with GAAP, recorded as Capital Leases, and (iv)
obligations under direct or indirect
guarantees in respect of, and obligations (contingent or
otherwise) to purchase or
otherwise acquire, or otherwise to assure a creditor against loss in

| Formatted: Font: Italic |
| Formatted: Font: Italic |
| Formatted: Font: Italic |

respect of,
indebtedness or obligations of others of the kinds referred to in clauses (i) through
(iv)
above, except for guaranty obligations of such Person, which, in conformity
with GAAP, are not
included on the balance sheet of such Person.

"*Depreciation and Amortization*" shall mean the depreciation and amortization ~~amortization~~ accruing during any period of determination with respect to a Person,
as determined in
accordance with GAAP.

"*Interest Expense*" shall mean for any period of determination, the sum of
all
interest accrued, or which should be accrued in respect of all Debt of a Person,
as determined in
accordance with GAAP.

"*Operating Lease Expense*" shall mean the sum of all payments and
expenses
incurred by a Person, under any operating leases during the period of
determination, as
determined in accordance with GAAP.

"*EBITDA*" means for the twelve (12) month period ending on the date of
determination, the sum of a Person's net income (loss) for such period plus, in each case to the ~~to the~~ extent previously deducted in calculating net income (loss): (i) income taxes, (ii)
interest payments
on all of its debt obligations (including any borrowings under short term
credit facilities), (iii) all
non-cash charges including depreciation and amortization, and (iv)
Non-Recurring Items (defined
below).

"*EBITDAR*" means the sum of a Person's EBITDA and its total land and building
rent for the twelve (12) month period ending on the date of determination.

"*Lease Adjusted Leverage*" means with respect to a Person, as of any applicable
date, the sum of (i) ten (10) times such Person's total land and building rent for the twelve (12)
~~(12)~~ month period ending on the date of determination, and (ii) the total current balance of
such
Person's total Debt obligations (including any borrowings under short term credit
facilities) on
such date, divided by EBITDAR.

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 33 of 61~~
~~28~~

"*Non-Recurring Items*" shall mean with respect to a Person, items of the sum
(whether positive or negative) of revenue minus expenses that, in the judgment of Lessor, are ~~are~~ unusual in nature, occur infrequently and are not representative of the ongoing or
future earnings

~~5472837v1~~5472842v1 | 101415-0002

GERRICK-049

or expenses of such Person.

Section ~~14~~13.03. No Sale of Assets. Except for a transaction that includes an assignment
as set forth in Section 14.02(b), without the prior written consent of Lessor, Lessee shall not sell
all or substantially all of Lessee's assets. Any sale of Lessee's assets in violation of Section
14.03,
~~14.03,~~ shall be voidable at the sole option of Lessor. Any consent to the sale of Lessee's assets
given
by Lessor hereunder shall not be deemed a consent to any subsequent sale of Lessee's
assets.

Section ~~14~~13.04. Subletting.

(a) Lessee shall not sublet any or all of the Property without the prior written
consent of Lessor, which consent may not be unreasonably withheld by Lessor. Additionally, in
~~its sole~~

STEPHENS DECL. - EXHIBIT 1 - Page 49
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 33 of 110
29
the event Lessee fails to secure the requisite license(s) to operate a residential behavioral health
facility on the Upper Floors (as set forth under Section 4.03(a), above, then Lessee shall have the
absolute ~~discretion~~right to sublet the Upper Floors to a sub-tenant of its selection.
~~and any such purported subletting shall be void.~~

(b) Lessee covenants and agrees that: (1) Lessee shall observe and timely
perform all of its obligations as the landlord or sublandlord under each Permitted Sublease in
~~in~~compliance with the terms thereof; (2) Lessee shall promptly provide Lessor with any
notice of
material default received by Lessee from any Subtenant or any notice of material
default sent by
Lessee to any Subtenant; (3) upon Lessor's request, Lessee shall furnish
Lessor with any and all
information requested by Lessor reasonably necessary for a
determination of the status of any
Permitted Sublease; and (4) upon Lessor's request,
Lessee shall provide Lessor with copies of
any and all Permitted Subleases and/or
amendments thereto.

ARTICLE ~~XV~~XIV

NOTICES

Section ~~15~~14.01. Notices. All notices, demands, designations, certificates, requests,
offers, consents, approvals, appointments and other instruments given pursuant to this Lease
shall be in writing and given by any one of the following: (a) hand delivery; (b) express
overnight
delivery service; or (c) certified or registered mail, return receipt requested, and shall be deemed
to have been delivered upon (i) receipt, if hand delivered; (ii) the next Business Day, if delivered
by a reputable express overnight delivery service; or (iii) the third Business Day following the
day
of deposit of such notice with the United States Postal Service, if sent by certified or registered

GERRICK-050

mail, return receipt requested. Notices shall be provided to the parties and addresses (or electronic mail addresses) specified below:

If to Lessee: Broadway Community Care Centers and ~~Zenith Healtheare, LLC~~ View Behavioral Health, LLC or its Designee

9854 National Boulevard,

Los Angeles, Ca 90034

With a copy to: George Shohet, Esq.

269 South Beverly Drive

~~EXHIBIT 1~~

~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc Main Document Page 34 of 61~~

~~29~~

Beverly Hills, Ca 90212

~~Tel No.: 310-452-317~~

and to:

View Behavioral Health LLC

Attn: Jack Stephens

2600 Redondo Ave., Suite 500

Long Beach, CA 90806

With a copy to: Matthew M. Gorman

The Gorman Law Firm

1055 E. Colorado Blvd., Suite 500

Pasadena, CA 91106

If to Lessor: Broadway Avenue Investments, LLC

264 S Oakhurst Drive

Beverly Hills, Ca 90212

ATTN: Alan Gomperts

STEPHENS DECL. - EXHIBIT 1 - Page 50

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc Jack Stephens Declaration and Exhibits Page 34 of 110

30

With a copy to: N/A

or to such other address or such other person as either party may from time-to-time hereafter specify to the other party in a notice delivered in the manner provided above.

ARTICLE ~~XVI~~XV

INTENTIONALLY OMITTED

ARTICLE ~~XVII~~XVI

MISCELLANEOUS

Section ~~17~~16.01. Force Majeure. Any prevention, delay or stoppage due to strikes, lockouts, acts of God, enemy or hostile governmental action, civil commotion, fire or other casualty beyond the control of the party obligated to perform (each, a "Force Majeure Event") shall excuse the performance by such party for a period equal to any such prevention, delay or stoppage, expressly excluding, however, the obligations imposed upon Lessee with respect to Rental and other Monetary Obligations to be paid hereunder and provided that Lessee's termination rights shall not be delayed as a result of any Force Majeure Event.

Section 1716.02. No Merger. There shall be no merger of this Lease nor of the leasehold
estate created by this Lease with the fee estate in or ownership of the Property by reason of the
fact that the same person, corporation, firm or other entity may acquire or hold or own, directly
or
indirectly, (a) this Lease or the leasehold estate created by this Lease or any interest in this Lease
or in such leasehold estate, and (b) the fee estate or ownership of the Property or any interest in
such fee estate or ownership. No such merger shall occur unless and until all persons,
corporations, firms and other entities having any interest in (i) this Lease or the leasehold estate
created by this Lease, and (ii) the fee estate in or ownership of the Property or any part thereof
sought to be merged shall join in a written instrument effecting such merger and shall duly record
the same.

Section 1716.03. Interpretation. Lessor and Lessee acknowledge and warrant to each
other that each has been represented by independent counsel and has executed this Lease after
being fully advised by said counsel as to its effect and significance. This Lease shall be
interpreted
and construed in a fair and impartial manner without regard to such factors as the party which
prepared the instrument, the relative bargaining powers of the parties or the domicile of any
party.
Whenever in this Lease any words of obligation or duty are used, such words or expressions
shall
have the same force and effect as though made in the form of a covenant.

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 35 of 61
30

Section 1716.04. Intentionally Omitted.
Section 1716.05. Disclosures.
(a) Securities Act or Exchange Act. The parties agree that, notwithstanding
any provision contained in this Lease, any party (and each employee, representative or other
other agent of any party) may disclose to any and all persons, without limitation of any
kind, any matter
required under the Securities Act or the Exchange Act.
(b) Lessor Advertising and Related Publications. Lessee hereby consents
to the use by Lessor of, and Lessor is hereby expressly permitted to use, pictures of the Property,
Property, STEPHENS DECL. - EXHIBIT 1 - Page 51
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 35 of 110
31
and basic Transaction information, but expressly excluding Lessee's confidential
information,
solely in connection with Lessor's sales, advertising, and press release
materials, including on
Lessor's website.
(c) Public Disclosures. Except as required by Law, neither Lessor nor
Lessee
shall make any public disclosure, including press releases or any form of media

5472837v15472842v1 | 101415-0002

GERRICK-052

release, of this
Lease Agreement or any transactions relating hereto without the prior
written consent of the other
party, except that any party may disclose such information to
its accountants, lawyers, advisors
and current and prospective investors, lenders and
business partners and as required in litigation
between the parties.

Section ~~17~~16.06. Attorneys' Fees. In the event of any judicial or other adversarial proceeding concerning this Lease, to the extent permitted by Law, the prevailing party shall be entitled to recover all of its reasonable attorneys' fees and other Costs in addition to any other relief to which it may be entitled. In addition, the prevailing party shall, upon demand, be entitled to all attorneys' fees and all other Costs incurred in the preparation and service of any notice or demand hereunder, whether or not a legal action is subsequently commenced.

Section ~~17~~16.07. Memorandum of Lease. Concurrently with the execution of this Lease, Lessor and Lessee are executing a memorandum of lease in recordable form, indicating the names and addresses of Lessor and Lessee, a description of the Property, the Lease Term, but omitting Rentals and such other terms of this Lease as Lessor and Lessee may not desire to disclose to the public; provided, however, neither party will record the memorandum without the consent of the other party. Further, upon Lessor's request, Lessee agrees to execute and acknowledge a termination of lease and/or quitclaim deed in recordable form to be held by Lessor
until the expiration or sooner termination of the Lease Term.

Section ~~17~~16.08. No Brokerage. Lessor and Lessee represent and warrant to each other that they have not engaged any broker concerning the leasing of the Property. Each of Lessor and Lessee agrees to protect, indemnify, save and keep harmless the other, against and from all liabilities, claims, losses, Costs, damages and expenses, including attorneys' fees, arising out of, resulting from or in connection with their breach of the foregoing warranty and representation.

Section ~~17~~16.09. Waiver of Jury Trial and Certain Damages. LESSOR AND LESSEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER
MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY AND ALL ISSUES PRESENTED
IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER OF THE
~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 36 of 61~~
~~31~~

PARTIES HERETO AGAINST THE OTHER OR ITS SUCCESSORS WITH RESPECT TO ANY
MATTER ARISING OUT OF OR IN CONNECTION WITH THIS LEASE, THE RELATIONSHIP
OF LESSOR AND LESSEE, LESSEE'S USE OR OCCUPANCY OF THE PROPERTY, AND/OR

~~5472837v1~~5472842v1 | 101415-0002

ANY CLAIM FOR INJURY OR DAMAGE, OR ANY EMERGENCY OR STATUTORY
REMEDY.
THIS WAIVER BY THE PARTIES HERETO OF ANY RIGHT EITHER MAY HAVE TO A
TRIAL
BY JURY HAS BEEN NEGOTIATED AND IS AN ESSENTIAL ASPECT OF THEIR
BARGAIN.
FURTHERMORE, LESSOR AND LESSEE HEREBY KNOWINGLY, VOLUNTARILY AND
INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO SEEK PUNITIVE,
CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES FROM THE OTHER PARTY
AND
ANY OF THE AFFILIATES, OFFICERS, DIRECTORS, MEMBERS, MANAGERS OR
EMPLOYEES OF LESSOR OR LESSEE, AS APPLICABLE, OR ANY OF THEIR
SUCCESSORS
WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION,
PROCEEDING,
CLAIM OR COUNTERCLAIM BROUGHT WITH RESPECT TO ANY MATTER ARISING
OUT OF
OR IN CONNECTION WITH THIS LEASE OR ANY DOCUMENT CONTEMPLATED
HEREIN OR

STEPHENS DECL. - EXHIBIT 1 - Page 52
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 36 of 110
32

RELATED HERETO. THE WAIVER BY LESSOR AND LESSEE OF ANY RIGHT EITHER
MAY
HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES
HAS
BEEN NEGOTIATED BY THE PARTIES HERETO AND IS AN ESSENTIAL ASPECT OF
THEIR
BARGAIN.
Section 1716.10. Securitizations. As a material inducement to Lessor's willingness to
enter into the Transactions contemplated by this Lease and the other Transaction Documents,
Lessee hereby acknowledges and agrees that Lessor may, from time to time and at any time (i)
act or permit another Person to act as sponsor, settler, transferor or depositor of, or a holder of
interests in, one or more Persons or other arrangements formed pursuant to a trust agreement,
indenture, pooling agreement, participation agreement, sale and servicing agreement, limited
liability company agreement, partnership agreement, articles of incorporation or similar
agreement or document; and (ii) permit one or more of such Persons or arrangements to offer
and sell stock, certificates, bonds, notes, other evidences of indebtedness or securities that are
directly or indirectly secured, collateralized or otherwise backed by or represent a direct or
indirect
interest in whole or in part in any of the assets, rights or properties described in Section 14.01 of
this Lease, in one or more Persons or arrangements holding such assets, rights or properties, or
any of them (collectively, the "Securities"), whether any such Securities are privately or publicly
offered and sold, or rated or unrated (any combination of which actions and transactions
described in both clauses (i) and (ii) in this paragraph, whether proposed or completed, are

referred to in this Lease as a "Securitization"). Lessee shall cooperate fully with Lessor and any
Affected Party with respect to all reasonable requests and due diligence procedures, provided
that such cooperation shall be at no additional cost or expense to Lessee so long as Lessee is
not otherwise required to provide such information to Lessor pursuant to the other provisions of
this Lease and such information is held confidentially, except as required to be disclosed by Law.

Section ~~17~~16.11. Intentionally omitted.

Section ~~17~~16.12. Time is of the Essence; Computation. Time is of the essence with
respect to each and every provision of this Lease. If any deadline provided herein falls on a non-
Business Day, such deadline shall be extended to the next day which is a Business Day.

Section ~~17~~16.13. Waiver and Amendment. No provision of this Lease shall be deemed
waived or amended except by a written instrument unambiguously setting forth the matter
waived

or amended and signed by the party against which enforcement of such waiver or amendment is

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 37 of 61
32

sought. Waiver of any matter shall not be deemed a waiver of the same or any other matter on
any future occasion. No acceptance by Lessor of an amount less than the Rental and other
Monetary Obligations stipulated to be due under this Lease shall be deemed to be other than a
payment on account of the earliest such Rental or other Monetary Obligations then due or in
arrears nor shall any endorsement or statement on any check or letter accompanying any such
payment be deemed a waiver of Lessor's right to collect any unpaid amounts or an accord and
satisfaction.

Section ~~17~~16.14. Successors Bound. Except as otherwise specifically provided herein,
the terms, covenants and conditions contained in this Lease shall bind and inure to the benefit of
the respective heirs, successors, executors, administrators and assigns of each of the parties
hereto.

Section ~~17~~16.15. Captions. Captions are used throughout this Lease for convenience of
reference only and shall not be considered in any manner in the construction or interpretation
hereof.

STEPHENS DECL. - EXHIBIT 1 - Page 53
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 37 of 110
33

Section ~~17~~16.16. Other Documents. Each of the parties agrees to sign such other and
further documents as may be necessary or appropriate to carry out the intentions expressed in
this Lease.

Section ~~17~~16.17. Entire Agreement. This Lease and any other instruments or agreements
referred to herein, constitute the entire agreement between the parties with respect to the subject
matter hereof, and there are no other representations, warranties or agreements except as herein
provided.

Section ~~17~~16.18. Forum Selection; Jurisdiction; Venue; Choice of Law. For purposes
of any action or proceeding arising out of this Lease, the parties hereto expressly submit to the
jurisdiction of all federal and state courts located in the county and state where the Property is
located. Lessee consents that it may be served with any process or paper by registered mail or

GERRICK-055

by personal service within or without the state where the Property is located in accordance with applicable Law. Furthermore, Lessee waives and agrees not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding, is improper. This Lease shall be governed by, and construed with, the Laws of the applicable state in which the Property is located, without giving effect to any state's conflict of Laws principles.

Section 17.16.19. Counterparts. This Lease may be executed in one or more counterparts, each of which shall be deemed an original. Furthermore, the undersigned agrees that transmission of this Lease via e-mail in a ".pdf" or other electronic format shall be deemed transmission of the original Lease for all purposes.

Section 17.16.20. Reasonable Consents and Costs. Whenever this Lease requires an approval, consent, determination or judgment by either Lessor or Lessee, unless another standard is expressly set forth, such approval, consent, determination or judgment and any conditions imposed thereby shall be reasonable and shall not be unreasonably withheld or delayed. Any expenditure by a party permitted or required under this Lease, for which such party demands reimbursement from the other party, shall be limited to the fair market value of the goods

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 38 of 61
33

and services involved, shall be reasonably incurred, and shall be substantiated by documentary evidence available for inspection and review by the other party.

ARTICLE XVIIIXVII

VBH OPTION TO PURCHASE

Section 17.01. Option to Purchase. In consideration of the mutual covenants hereinafter set forth, Lessor grants to VBH an option to purchase the Property (the "Purchase Option") on the terms and conditions set forth under this Article XVII.

Section 17.02. Duration of Option. The Purchase Option shall be effective on January 1, 2026 and shall expire upon the termination of this Lease (the "Option Term").

Section 17.03. Exercise of Option. Provided that Lessee is not otherwise in default under any provision of this Lease, VBH may exercise the Purchase Option at any time during the Option Term by causing written notice of the same to be delivered to Lessor. Such written notice shall include a proposed, unsigned purchase-sale agreement, which shall be in the form of the California Association of Realtors Commercial Property Purchase Agreement and Joint Escrow Instructions (C.A.R. Form CAP), or an agreement of like form and type (which Lessor and VBH

STEPHENS DECL. - EXHIBIT 1 - Page 54

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 38 of 110
34

hereby consent to for use in coordinating any purchase of the Property by VBH; the "Purchase Agreement"). The date the Purchase Agreement is delivered to Lessor shall be the "Option Exercise Date."

Section 17.04. Terms of Purchase Agreement. VBH shall cause all terms in the Purchase Agreement to be filled out prior to delivery to Lessor; provided, however, that such

terms: (i) shall not provide for an escrow shorter than thirty (30) days; (ii) shall provide that VBH

is purchasing the Property "as-is" and "where-is," without representation or warranty by Lessor as

to its condition; and (iii) shall not require Lessor to bear escrow, title insurance, closing costs, or other expenses relevant or incidental to the sale. Further, the purchase price stated in the Purchase Agreement as so delivered by VBH to Lessor shall be blank.

Section 17.05. Purchase Price. Upon delivery of the Purchase Agreement, Lessor and VBH shall thereafter determine the purchase price according to the following procedures:

(a) Within ten (10) business days of delivery of the Purchase Agreement to Lessor, VBH and Lessor shall jointly select an Appraiser (as defined under Section 17.05, below) to appraise the Property for its highest and best use (as of the Option Exercise Date). Such appraisal shall be completed within thirty (30) calendar days of the date the Appraiser is selected, full and complete copies of which shall be provided by the Appraiser to both Lessor and to VBH. The appraised value stated therein shall be the price which VBH shall pay Lessor for the Property;

provided, however, that the purchase price shall not be less than the Price Floor (as such term is defined under subdivision (c), below.

(b) In the event VBH and Lessor cannot agree on an Appraiser within the ten (10) day period under subdivision (a), above, then within five (5) business days of the expiration of said ten (10) day period, VBH and Lessor shall each designate their own Appraiser to appraise the Property and each shall deliver written notice of its selection to the other. Appraisals by each such Appraiser shall thereafter be completed within thirty (30) calendar days of the date written notice of selection was given; full and complete copies of each such appraisal shall be provided to Lessor and to VBH. The average of the appraised value stated in each such appraisal shall be the price which VBH shall pay Lessor for the Property; provided, however, that the purchase price

shall not be less than the Price Floor (as defined under subdivision (c), below). In the event either Lessor or VBH fails to designate an Appraiser within the five (5) day period stated herein, then the sale price for the Property shall be based only on the appraisal competed by the Appraiser which was timely selected. Further, in the event any selected Appraiser fails to compete his/her appraisal with the thirty (30) calendar day period stated herein, the corresponding appraisal shall be disregarded and the sale price for the Property shall be based on the appraisal completed within said thirty (30) day period.

(c) As used herein, the "Price Floor" is the lowest price which VBH may purchase the Property for pursuant to its exercise of the Purchase Option. The Price Floor shall be equal to one hundred and five percent (105%) of Lessor's total Indebtedness in the Property. "Indebtedness" shall be determined in the following manner: (i) Lessor shall disclose the balance then due under each promissory note, loan agreement, and/or other debt instrument which is secured by a deed of trust or other security instrument recorded against the Property as of the Option Exercise Date; and (ii) the sum of all such balances shall be Lessor's Indebtedness in the Property. Lessor hereby consents to disclose to VBH any and all deeds of trusts, security instruments, promissory notes, loan agreements, and other debt instruments, along with all related statements and other records retaliating thereto, for the purpose of verifying and/or authenticating Lessor's Indebtedness (provided, however, that all such materials disclosed to STEPHENS DECL. - EXHIBIT 1 - Page 55

5472837v1~5472842v1 | 101415-0002

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 39 of 110

35

VBH shall maintained by VBH as confidential, and shall not be disclosed by VBH to any third party
without Lessor's prior written consent; and further provided that VBH shall cause all such
materials to either be returned to Lessor or, at VBH's option, destroyed upon the close of
escrow).

(d) Notwithstanding the provisions under subdivisions (a) and (b), above,
Lessor and VBH may elect to set the purchase price for the Property by mutual consent, in which
case the mutually selected sale price shall be memorialized in writing signed by Lessor and
VBH;
provided, however, that neither Lessor nor VBH shall be required to set the purchase price by
mutual consent and either may decline to entertain the same (in which event the sale price shall
be set through the appraisal procedures under either subdivision (a) or (b), above).

(e) Upon determining the purchase price according to the foregoing
procedures, the same shall be entered into the Purchase Agreement. Lessor and VBH shall
thereafter proceed to complete the purchase and sale of the Property according to the terms and
provisions stated in the Purchase Agreement.

Section 17.06. Qualifications of Appraiser. For purpose of this Article XVII, "Appraiser"
means an appraiser meeting the statutory requirements under Section 170(f)(11)(E) of the
Internal Revenue Code and final Treasury Regulations issued on July 27, 2018 (T.D. 9836), or
any amended or supplemental version thereof in effect as of the Option Exercise Date.

Section 17.07. Escrow and Closing. Lessor and VBH shall utilize an escrow for
coordinating purchase and sale of the Property. The Purchase Agreement, with purchase price
entered according to the provisions above, shall be deposited with the escrow officer; Lessor and
VBH shall execute escrow instructions and execute any and all other documents and other
instruments necessary to cause escrow to close, purchase funds to be disbursed, and the
Property transferred and conveyed to VBH, in accordance therewith. Lessor and VBH shall
likewise instruct the escrow to credit the PHF Reimbursement toward VBH's payment of the
purchase price, pursuant to the requirements under Section 1.11(c), above.

Section 17.08. Lease Termination and Close of Escrow. This Lease shall terminate
concurrently with the close of escrow. The Security Deposit shall be credited toward VBH's
purchase of the Property. Any credits and/or debits relating to owed and/or unpaid Base Rent and
other Monetary Obligations shall be processed through such closing; Lessor and VBH shall
likewise make such additional deposits to escrow as may be necessary to properly account for
the same.

ARTICLE XVIII Deleted
ARTICLE XIX

RIGHT OF FIRST REFUSAL

Section 19 18.01. Offer. Subject to the terms and conditions set forth in this Article XIX, if
Lessor desires to sell any Property and receives a bona fide written offer from Lessee or a third
party which
party which offer is in all respects acceptable to Lessor, Lessor shall deliver a complete copy of such bona
fide third party offer to Lessee if applicable ("Third Party Offer"). Within fifteen (15)

5472837v1 5472842v1 | 101415-0002

GERRICK-058

days of Lessee's receipt
of such Third Party Offer from Lessor, and a written statement of Lessor's desire to sell the
Property in accordance with such Third Party Offer, Lessee shall have the right to deliver an offer
to Lessor ("Purchase Offer") to purchase Lessor's interest in any such Property for the amount of
and on the same terms as the bona fide third party offer to purchase such Property (the "Subject
Purchase Price"). Lessor and Lessee shall complete such purchase, subject to the satisfaction
of each of the terms and conditions set forth in Section 19.02 below. Except as set forth in
Sections ~~19~~18.02, ~~19~~18.04 and ~~19~~18.06 below, Lessor shall not sell the Property

STEPHENS DECL. - EXHIBIT 1 - Page 56
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 40 of 110
36

to a third party without
providing a Third Party Offer to Lessee.
Section ~~19~~18.02. Conditions Precedent
(a) The purchase of Lessor's interest in a Property pursuant to this Article ~~XIX~~XVIII
shall be subject to the fulfillment of all of the following terms and conditions: (1) no Event
of Default
shall have occurred and be continuing under this Lease at the time Lessee
delivers the Purchase
Offer; (2) Lessee shall have paid to Lessor the Subject Purchase
Price, together with all Rental
and other Monetary Obligations then due and payable under
this Lease as of the date of the
closing of such purchase; (3) in addition to payment of the
Subject Purchase Price, Lessee shall
have satisfied its obligations under Section ~~19~~18.03
below; and (4) the date of the closing of such
purchase shall occur on the next scheduled
Base Monthly ~~Rental~~Rent payment date that is ninety (90)
days following Lessor's receipt of
the Purchase Offer.
(b) On the date of the closing of the purchase of a Property pursuant to this
Section (the "Purchase Closing Date"), subject to satisfaction of the foregoing conditions: (1) this
~~(1) this~~ Lease shall be deemed terminated; *provided, however,* such termination shall not
limit Lessee's
obligations to Lessor under any indemnification provisions of this Lease and
Lessee's obligations
to pay any Rental or Monetary Obligations (whether payable to

> **Formatted:** Font: Italic

GERRICK-059

Lessor or a third party) accruing
under this Lease with respect to such Property prior to
the Purchase Closing Date shall survive
the termination of this Lease; and (2) Lessor shall
convey such Property to Lessee "as is" by grant
deed, free and clear of all liens and
encumbrances except as provided in Section 18.02, and
without representation or
warranty.

EXHIBIT 1

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 39 of 61

34

Section ~~19~~18.03. Costs. If Lessee delivers a Purchase Offer, Lessee shall be solely
responsible for the payment of all Costs resulting from any proposed purchase pursuant to this
Article ~~XIX~~XVIII, regardless of whether the purchase is consummated, including, without
limitation, to
the extent applicable, the cost of title insurance and endorsements, including, survey charges,
stamp taxes, mortgage taxes, transfer taxes and fees, escrow and recording fees, taxes imposed
on Lessor as a result of such purchase, the attorneys' fees of Lessee and the reasonable
attorneys' fees and expenses of counsel to Lessor.

Section ~~19~~18.04. Termination of Right. NOTWITHSTANDING ANYTHING TO THE
CONTRARY, LESSEE'S RIGHTS UNDER THIS ARTICLE ~~XIX~~XVIII SHALL TERMINATE
AND BE
NULL AND VOID AND OF NO FURTHER FORCE AND EFFECT (a) WITH RESPECT TO
THE
THIRD PARTY OFFER IN QUESTION, IF LESSEE FAILS TO EXERCISE THE RIGHT
GRANTED PURSUANT TO THIS ARTICLE, AND THE SALE TO THE THIRD PARTY
PURCHASER IS CONSUMMATED ON THE SUBSTANTIALLY THE SAME TERMS AS
PROVIDED IN THE THIRD PARTY OFFER PROVIDED TO LESSEE; (b) IF THIS LEASE
TERMINATES OR THE LEASE TERM EXPIRES; (c) IF THE PROPERTY IS SOLD OR
TRANSFERRED PURSUANT TO THE EXERCISE OF A PRIVATE POWER OF SALE OR
JUDICIAL FORECLOSURE OR ACCEPTANCE OF A DEED IN LIEU THEREOF; OR (d)
WITH
RESPECT TO THE THIRD PARTY OFFER IN QUESTION, IF ANY EVENT OF DEFAULT
SHALL
HAVE OCCURRED AND BE CONTINUING UNDER THE LEASE AT THE TIME LESSEE
DELIVERS THE PURCHASE OFFER. IN ANY SUCH EVENT, LESSEE SHALL EXECUTE
A
QUITCLAIM DEED OR SUCH OTHER DOCUMENTS AS LESSOR SHALL REASONABLY
REQUEST EVIDENCING THE TERMINATION OF ITS RIGHT UNDER THIS ARTICLE
~~XIX~~XVIII. IF
LESSEE DOES NOT PROVIDE A PURCHASE OFFER AND LESSOR DESIRES TO SELL
THE
PROPERTY ON TERMS MATERIALLY MORE FAVORABLE (TO THE PROSPECTIVE
PURCHASER) THAN THOSE SET FORTH IN THE THIRD PARTY OFFER PROVIDED TO

~~5472837v1~~5472842v1 | 101415-0002

GERRICK-060

LESSEE, THE TERMS OF THIS ARTICLE XIXXVIII SHALL AGAIN APPLY AND LESSOR SHALL

PROVIDE LESSEE WITH A THIRD PARTY OFFER WITH SUCH TERMS THAT ARE MORE

FAVORABLE TO THE PROSPECTIVE PURCHASER. SUBJECT TO THE TERMINATION PROVISIONS ABOVE, LESSEE'S RIGHTS UNDER THIS ARTICLE XIXXVIII SHALL BE CONTINUING THROUGHOUT THE LEASE TERM.

Section 1918.05. Attornment. If Lessee does not deliver its Purchase Offer to purchase the Property and the Property is transferred to a third-party purchaser, Lessee will attorn to any third-party purchaser as Lessor so long as such third-party purchaser and Lessor notify Lessee in writing of such transfer. At the request of Lessor, Lessee will execute such documents confirming the agreement referred to above and such other agreements as Lessor may reasonably request, provided that such agreements do not increase the liabilities and obligations of Lessee hereunder.

Section 1918.06. Exclusions. The provisions of this Article XIXXVIII shall not apply to or prohibit (i) any mortgages or other hypothecation of Lessor's interest in the Property; (ii) any sale

of the Property pursuant to a private power of sale under or judicial foreclosure of any mortgage or other security instrument or device to which Lessor's interest in the Property is now or hereafter

subject; (iii) any transfer of Lessor's interest in the Property to a mortgagee or other holder of a security interest therein or their designees by deed in lieu of foreclosure; (iv) any transfer of the Property to any Affiliate of Lessor; (v) any transfers of interests in Lessor by any member, shareholder, partner or other owner to any other member, shareholder, partner or other owner; and (vi) any transfers to any Person to whom Lessor sells all or substantially all of its assets.

EXHIBIT 1
Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc
Main Document Page 40 of 61
35

*[Remainder of page intentionally left blank; signature page(s) to follow]*

IN WITNESS WHEREOF, Lessor and Lessee have entered into this Lease as of the date first above written.

LESSOR:

Broadway Avenue Investments, LLC

By:

Name: Alan Gomperts

Title: Managing Member

SIGNATURES CONTINUED ON NEXT PAGE

Formatted: Font: Italic

~~IN WITNESS WHEREOF, Lessor and Lessee have entered into this Lease as of the date first above written.~~

LESSEES:

The DMB Fund, a California not for profit
corporation dba "Broadway Community Care
Centers"
By:
Name: Steve Gold
Title: Secretary
Address: 9854 National Boulevard
Los Angeles, CA 90034
View Behavioral Health, LLC
a California limited liability company
By:
Name: Jack Stephens
Title: CEO
Address: 2600 Redondo Ave., Suite 500
Long Beach, CA 90806
STEPHENS DECL. - EXHIBIT 1 - Page 59
Case 2:24-bk-12079-VZ Doc ~~412~~421-4 Filed ~~01/29~~02/04/25 Entered ~~01/29~~02/04/25 ~~11:13:26~~23:53:01 Desc
~~Main Document~~Jack Stephens Declaration and Exhibits Page ~~42~~43 of ~~61~~110

EXHIBITS

Exhibit A: Defined Terms
Exhibit B: Legal Description and Street Address of the Property
Exhibit C: Base Rent Escalated and Supplemental Rental Fees
~~Exhibit E: Plans/Schematics prepared by Jila Kohan, Architect.~~
STEPHENS DECL. - EXHIBIT 1 - Page 60
Case 2:24-bk-12079-VZ Doc ~~412~~421-4 Filed ~~01/29~~02/04/25 Entered ~~01/29~~02/04/25 ~~11:13:26~~23:53:01 Desc
~~Main Document~~Jack Stephens Declaration and Exhibits Page ~~43~~44 of ~~61~~110
1

EXHIBIT A

DEFINED TERMS

The following terms shall have the following meanings for all purposes of this Lease:

"*Additional Rental*" has the meaning set forth in Sections 4.03, 4.04, and 4.06.03

"*Adjustment Date*" has the meaning set forth in Section 1.07.

"*Affected Party*" means each direct or indirect participant or investor in a proposed or completed Securitization, including, without limitation, any prospective owner, any rating agency
or any party to any agreement executed in connection with the Securitization.

"*Affiliate*" means any Person which directly or indirectly controls, is under common control with or is controlled by any other Person. For purposes of this definition, "controls," "under common control with," and "controlled by" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or otherwise.

**Formatted:** Font: Italic
**Formatted:** Font: Italic
**Formatted:** Font: Italic
**Formatted:** Font: Italic

GERRICK-062

"*Anti-Money Laundering Laws*" means all applicable Laws, regulations and government guidance on the prevention and detection of money laundering, including, without limitation, (a) 18 U.S.C. §§ 1956 and 1957; and (b) the Bank Secrecy Act, 31 U.S.C. §§ 5311 et seq., and its implementing regulations, 31 CFR Part 103.

"*Base Annual Rental*" shall mean twelve (12) times the base monthly rental.

"*Base Monthly* ~~Rental~~*Rent*" means an amount equal to 1/12 of the applicable Base Annual Rental.

"*Business Day*" means a day on which banks located in Santa Barbara, California are not required or authorized to remain closed.

"*Casualty*" means any loss of or damage to any property included within or related to the Property caused by a force majeure event.

"*Code*" means the Internal Revenue Code of 1986, as the same may be amended from time to time.

"*Condemnation*" means a Taking and/or a Requisition.

"*Costs*" means all actual, reasonable, out of pocket costs and expenses incurred by a Person, including, without limitation, reasonable attorneys' fees and expenses, court costs, expert witness fees, costs of tests and analyses, expert fees, travel and accommodation expenses, deposition and trial transcripts, copies and other similar costs and fees, brokerage fees, escrow fees, title insurance premiums, appraisal fees, stamp taxes, recording fees and transfer taxes or fees, as the circumstances require.

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 44 of 61~~

"*Default Rate*" means 12% per annum or the highest rate permitted by Law, whichever is
STEPHENS DECL. - EXHIBIT 1 - Page 61
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 45 of 110
less.

"*Effective Date*" has the meaning set forth in the introductory paragraph of this Lease.

"*Environmental Laws*" means federal, state and local Laws, ordinances, common law requirements and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees having the effect of Law in effect now or in the future and including all amendments, that relate to Hazardous Materials, Regulated Substances, USTs, and/or the protection of human health or the environment, or relating to liability for or Costs of Remediation or prevention of Releases, and apply to Lessee and/or the Property.

"*Environmental Liens*" means any liens and other encumbrances imposed pursuant to any Environmental Law.

"*Event of Default*" has the meaning set forth in Section 12.01.

"*Exchange Act*" means the Securities Exchange Act of 1934, as amended.

"*Extension Option*" has the meaning set forth in Section 3.02.

"~~*Extension*~~*Extended Term*" has the meaning set forth in Section 3.02.

"*Fair Market Value*" has the meaning set forth in Section 18.06.

"*Force Majeure Event*" has the meaning set forth in Section 17.01.

"*GAAP*" means generally accepted accounting principles, consistently applied from period to period.

~~5472837v1~~5472842v1 | 101415-0002

GERRICK-063

"*Governmental Authority*" means any governmental authority, agency, department, commission, bureau, board, instrumentality, court or quasi-governmental authority of the United States, any state or any political subdivision thereof with authority to adopt, modify, amend, interpret, give effect to or enforce any federal, state and local Laws, statutes, ordinances, rules or regulations, including common law, or to issue court orders.

"*Hazardous Materials*" includes: (a) petroleum, oil, petroleum products, flammable substances, explosives, radioactive materials, hazardous wastes or substances, toxic wastes or substances or any other materials, contaminants or pollutants, for which liability or standards of conduct can be imposed pursuant to Environmental Law, or are defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances," "contaminants," "pollutants," or words of similar import under any Environmental Laws, including, but not limited to: (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.; (ii) the Hazardous Materials Transportation Act, as amended, 49 U.S.C. § 5101, et seq.; (iii) the Resource Conservation and Recovery Act, as amended, 42 U.S.C. § 6901, et seq.; and (iv) regulations adopted pursuant to the aforesaid Laws; (b) asbestos in any form which is friable, urea formaldehyde foam insulation, transformers or other equipment which contain dielectric fluid

containing levels of polychlorinated biphenyls in excess of fifty (50) parts per million;

~~EXHIBIT 1~~
~~Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc~~
~~Main Document Page 45 of 61~~

(c) underground storage tanks; and (d) any other chemical, material or substance, exposure to

STEPHENS DECL. - EXHIBIT 1 - Page 62
Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc
Jack Stephens Declaration and Exhibits Page 46 of 110

which is prohibited, limited or regulated by any Governmental Authority.

"*Indemnified Parties*" means Lessor, its members, managers, officers, directors, shareholders, partners, employees, affiliates, subsidiaries, or lenders or their respective successors and assigns, including, but not limited to, any successors by merger, consolidation or acquisition of all or a substantial portion of the assets and business of Lessor.

"*Initial Term*" has the meaning set forth in Section 1.02.

"*Insolvency Event*" means (a) a Person's (i) failure to generally pay its debts as such debts become due; (ii) admitting in writing its inability to pay its debts generally; or (iii) making a general

assignment for the benefit of creditors; (b) any proceeding being instituted by or against any Person (i) seeking to adjudicate it bankrupt or insolvent; (ii) seeking liquidation, dissolution, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its

debts under any Law relating to bankruptcy, insolvency, or reorganization or relief of debtors; or (iii) seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar

official for it or for any substantial part of its property, and in the case of any such proceeding instituted against any Person, either such proceeding shall remain undismissed for a period of one hundred twenty (120) days or any of the actions sought in such proceeding shall occur; or (c) any Person taking any corporate action to authorize any of the actions set forth above in this

~~5472837v1~~5472842v1 | 101415-0002

definition.

"*Law(s)*" means any constitution, statute, rule of law, code, ordinance, order, judgment, decree, injunction, rule, regulation, policy, requirement or administrative or judicial determination,

| Formatted: Font: Italic |

even if unforeseen or extraordinary, of every duly constituted Governmental Authority, court or agency, now or hereafter enacted or in effect.

"*Lease Term*" means the Initial term and the additional term pursuant to the extension option set forth in Section 1.03.

| Formatted: Font: Italic |

"*Legal Requirements*" means the requirements of all present and future Laws (including, without limitation, Environmental Laws and Laws relating to accessibility to, usability by, and discrimination against, disabled individuals), all judicial and administrative interpretations thereof,

| Formatted: Font: Italic |

including any judicial order, consent, decree or judgment, and all covenants, restrictions and conditions now or hereafter of record which may be applicable to Lessee or to the Property, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or restoration of the Property, even if compliance therewith necessitates structural changes or improvements or results in interference with the use or enjoyment of the Property.

"*Lender*" means any lender in connection with any loan secured by Lessor's interest in the Property, and any servicer of any loan secured by Lessor's interest in the Property.

| Formatted: Font: Italic |

"*Lessee Entity*" or "*Lessee Entities*" means individually or collectively, as the context may require, Lessee and all Affiliates thereof.

| Formatted: Font: Italic |
| Formatted: Font: Italic |

"*Lessee Reporting Entities*" means Lessee.

| Formatted: Font: Italic |

"*Lessor Entity*" or "*Lessor Entities*" means individually or collectively, as the context may require, Lessor and all Affiliates of Lessor.

| Formatted: Font: Italic |
| Formatted: Font: Italic |

STEPHENS DECL. - EXHIBIT 1 - Page 63

"*Losses*" means any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, Costs, diminutions in value, fines, penalties, interest, charges, fees, judgments, awards, amounts paid in settlement and damages of whatever kind or nature, inclusive of bodily injury and property damage to third parties

| Formatted: Font: Italic |

(including, without limitation, attorneys' fees and other Costs of defense).

"*Material Adverse Effect*" means a material adverse effect on (a) the Property, including without limitation, the operation of the Property and/or the value of the Property; (b) the contemplated business, condition, worth or operations of Lessee; (c) Lessee's ability to perform its obligations under this Lease; or (d) Lessor's interests in the Property, this Lease or the other Transaction Documents.

| Formatted: Font: Italic |

"*Monetary Obligations*" means all Rental and any and all other sums payable or reimbursable by Lessee under this Lease to Lessor, to any third party on behalf of Lessor, or to any Indemnified Party.

| Formatted: Font: Italic |

"*Mortgage*" means, collectively, the mortgages, deeds of trust or deeds to secure debt, assignments of rents and leases, security agreements and fixture filings executed by Lessor for the benefit of Lender with respect to the Property, as such instruments may be amended, modified, restated or supplemented from time to time and any and all replacements or

| Formatted: Font: Italic |

substitutions.

"*Net Award*" means (a) the entire award payable with respect to a Property by reason of a Condemnation whether pursuant to a judgment or by agreement or otherwise; or (b) the entire proceeds of any insurance required under Section 6.03(a)(i) with respect to real property (but not Lessee's personal property) payable with respect to a Property, as the case may be, and in either case, less any Costs incurred by Lessor in collecting such award or proceeds.

"*OFAC Laws*" means Executive Order 13224 issued by the President of the United States, and all regulations promulgated thereunder, including, without limitation, the Terrorism Sanctions Regulations (31 CFR Part 595), the Terrorism List Governments Sanctions Regulations (31 CFR Part 596), the Foreign Terrorist Organizations Sanctions Regulations (31 CFR Part 597), and the Cuban Assets Control Regulations (31 CFR Part 515), and all other present and future federal, state and local Laws, ordinances, regulations, policies, lists (including, without limitation, the Specially Designated Nationals and Blocked Persons List) and any other requirements of any Governmental Authority (including without limitation, the U.S. Department of the Treasury Office of Foreign Assets Control) addressing, relating to, or attempting to eliminate, terrorist acts and acts of war, each as supplemented, amended or modified from time to time after the Effective Date, and the present and future rules, regulations and guidance documents promulgated under any of the foregoing, or under similar Laws, ordinances, regulations, policies or requirements of other states or localities.

"*Partial Condemnation*" has the meaning set forth in Section 11.03.

"*Permitted Amounts*" shall mean, with respect to any given level of Hazardous Materials or Regulated Substances, that level or quantity of Hazardous Materials or Regulated Substances in any form or combination of forms which does not constitute a violation of any Environmental Laws and is customarily employed in, or associated with, similar businesses located in the state where the Property is located.

STEPHENS DECL. - EXHIBIT 1 - Page 64
Case 2:24-bk-12079-VZ Doc 412421-4 Filed 01/2902/04/25 Entered 01/2902/04/25 11:13:2623:53:01 Desc
Main DocumentJack Stephens Declaration and Exhibits Page 4748 of 61110

"*Permitted Encumbrances*" shall mean recorded easements, restrictions, liens and encumbrances affecting the Property.

"*Permitted Sublease*" has the meaning set forth in Section 14.04.

"*Person*" means any individual, partnership, corporation, limited liability company, trust, unincorporated organization, Governmental Authority or any other form of entity.

"*Personalty*" means any and all "goods" (excluding "inventory," and including, without limitation, all "equipment," "fixtures," appliances and furniture (as "goods," "inventory," "equipment" and "fixtures" are defined in the applicable Uniform Commercial Code then in effect in the applicable jurisdiction)) from time to time situated on or used in connection with the Property, whether now owned or held or hereafter arising or acquired, together with all replacements and substitutions therefore and all cash and non-cash proceeds (including insurance proceeds and any title and UCC insurance proceeds) and products thereof, and, in the case of tangible collateral, together with all additions, attachments, accessions, parts, equipment and repairs now or hereafter attached or affixed thereto or used in connection therewith.

5472837v15472842v1 | 101415-0002

"*Price Index*" means the Consumer Price Index which is designated for the applicable month of determination as the United States City Average for All Urban Consumers, All Items, Not Seasonally Adjusted, with a base period equaling 100 in 1982 - 1984, as published by the United States Department of Labor's Bureau of Labor Statistics or any successor agency. In the event that the Price Index ceases to be published, its successor index measuring cost of living as published by the same Governmental Authority which published the Price Index shall be substituted and any necessary reasonable adjustments shall be made by Lessor and Lessee in order to carry out the intent of Section 4.02. In the event there is no successor index measuring cost of living, Lessor shall reasonably select an alternative price index measuring cost of living that will constitute a reasonable substitute for the Price Index.

"*Property*" means that parcel or parcels of real estate legally described on Exhibit B attached hereto, all rights, privileges, and appurtenances associated therewith, and all buildings, fixtures and other improvements now or hereafter located on such real estate (whether or not affixed to such real estate).

"*Real Estate Taxes*" has the meaning set forth in Section 6.01.

"*Regulated Substances*" means "petroleum" and "petroleum-based substances" or any similar terms described or defined in any of the Environmental Laws and any applicable federal, state, county or local Laws applicable to or regulating USTs.

"*REIT*" means a real estate investment trust as defined under Section 856 of the Code.

"*Release*" means any presence, release, deposit, discharge, emission, leaking, spilling, seeping, migrating, injecting, pumping, pouring, emptying, escaping, dumping, disposing or other
movement of Hazardous Materials, Regulated Substances or USTs or any Threatened Release.

"*Remediation*" means any response, remedial, removal, or corrective action, any activity to cleanup, detoxify, decontaminate, contain or otherwise remediate any Hazardous Materials, Regulated Substances or USTs, any actions to prevent, cure or mitigate any Release, any action to comply with any Environmental Laws or with any permits issued pursuant thereto, any

STEPHENS DECL. - EXHIBIT 1 - Page 65
Case 2:24-bk-12079-VZ Doc 412421-4 Filed 01/2902/04/25 Entered 01/2902/04/25 11:13:2623:53:01 Desc
Main DocumentJack Stephens Declaration and Exhibits Page 4849 of 61110
inspection, investigation, study, monitoring, assessment, audit, sampling and testing, laboratory or other analysis, or any evaluation relating to any Hazardous Materials, Regulated Substances or USTs.

"*Rental*" means, collectively, the Base Annual Rental, the Additional Rental and Taxes and assessments; pursuant to Section 6.01 utilities; insurance..

"*Rental Adjustment*" means an amount equal to the lesser of (a) 2% of the Base Annual Rental in effect immediately prior to the applicable Adjustment Date, or (b) 1.25 multiplied by the
product of (i) the percentage change between the Price Index for the month which is two months prior to the Effective Date or the Price Index used for the immediately preceding Adjustment Date,
as applicable, and the Price Index for the month which is two months prior to the applicable Adjustment Date; and (ii) the then current Base Annual Rental.

"*Requisition*" means any temporary requisition or confiscation of the use or occupancy of the Property by any Governmental Authority, civil or military, whether pursuant to an agreement

with such Governmental Authority in settlement of or under threat of any such requisition or confiscation, or otherwise.

"*Reserve*" has the meaning in Section 6.04.

"*Securities*" has the meaning set forth in Section 17.10.

"*Securities Act*" means the Securities Act of 1933, as amended.

"*Securitization*" has the meaning set forth in Section 17.10.

"*Subtenant*" has the meaning set forth in Section 14.04.

"*Successor Lessor*" has the meaning set forth in Section 13.03.

"*Taking*" means any taking or damaging of all or a portion of the Property (i) in or by condemnation or other eminent domain proceedings pursuant to any Law, general or special; (ii) by reason of any agreement with any condemnor in settlement of or under threat of any such condemnation or other eminent domain proceeding; or (iii) by any other means. The Taking shall be considered to have taken place as of the date actual physical possession is taken by the condemnor.

"*Temporary Taking*" has the meaning set forth in Section 11.04.

"*Threatened Release*" means a substantial likelihood of a Release which requires action to prevent or mitigate damage to the soil, surface waters, groundwaters, land, stream sediments, surface or subsurface strata, ambient air or any other environmental medium comprising or surrounding the Property which may result from such Release.

"*Total Condemnation*" has the meaning set forth in Section 11.02.

"*Transaction*" has the meaning set forth in Section 14.01.

EXHIBIT 1

Case 2:24-bk-12079-VZ Doc 412 Filed 01/29/25 Entered 01/29/25 11:13:26 Desc Main Document Page 49 of 61

"*Transaction Documents*" means this Lease, the Memorandum of Lease, the Letter of

STEPHENS DECL. - EXHIBIT 1 - Page 66

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc Jack Stephens Declaration and Exhibits Page 50 of 110

Credit and any Subordination, Nondisturbance and Attornment Agreement.

"*U.S. Publicly Traded Entity*" means an entity whose securities are listed on a national securities exchange or quoted on an automated quotation system in the United States or a wholly-owned subsidiary of such an entity.

"*USTs*" means any one or combination of tanks and associated product piping systems used in connection with storage, dispensing and general use of Regulated Substances.

STEPHENS DECL. - EXHIBIT 1 - Page 67

Case 2:24-bk-12079-VZ Doc 421-4 Filed 02/04/25 Entered 02/04/25 23:53:01 Desc Jack Stephens Declaration and Exhibits Page 51 of 110

GERRICK-068

# Exhibit 8



GERRICK-069

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| Gerrick M. Warrington<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Blvd., 19th Floor<br>Los Angeles, CA 90017<br><br>Telephone No: 323-852-1000<br><br>Attorney For: Archway Broadway Loan SPE, LLC | |

Ref. No. or File No.:
101415-0002

Insert name of Court, and Judicial District and Branch Court:
UNITED STATES BANKRUPTCY COURT Central District Of California

Plaintiff: In re SEATON INVESTMENTS, LLC, et al
Defendant:

| **AFFIDAVIT OF DUE DILIGENCE** | Hearing Date:<br>March 10, 2025 | Time:<br>10:00 am | Dept/Div: | Case Number:<br>2:24-bk-12079-VZ |
|---|---|---|---|---|

1. I, Frank Hernandez 2023270296, Los Angeles County, and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject View Behavioral Health-Colton LLC c/o Conrad Nilo as follows:

2. *Documents:* Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)

| **Attempt Detail** |
|---|

1) Unsuccessful Attempt by: Frank Hernandez (2023270296, Los Angeles County) on: Feb 6, 2025, 1:31 pm PST at 2600 Redondo Avenue, Signal Hill, CA 90806
The business is no longer at this address. According to Anita Johnson, who works with Optum Health Care, the subject moved out two years ago.

*3. Person Who Served Papers:*

Recoverable cost Per CCP 1033.5(a)(4)(B)

  a. Frank Hernandez (2023270296, Los Angeles County)

  **b. FIRST LEGAL**

    1517 W. Beverly Blvd.

    LOS ANGELES, CA 90026

  c. (213) 250-1111

  **d.** *The Fee for Service was:* $50.25

  **e.** I am: A Registered California Process Server

4. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

02/07/2025
_____
(Date)

_____
(Signature)



**AFFIDAVIT OF
DUE DILIGENCE**

*12660789*
*(17098293)*

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| Gerrick M. Warrington<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Blvd., 19th Floor<br>Los Angeles, CA 90017<br>Telephone No: 323-852-1000 | | |
| Attorney For: Archway Broadway Loan SPE, LLC | Ref. No. or File No.:<br>101415-0002 | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| UNITED STATES BANKRUPTCY COURT Central District Of California |

| Plaintiff: In re SEATON INVESTMENTS, LLC, et al |
|---|
| Defendant: |

| **AFFIDAVIT OF DUE DILIGENCE** | Hearing Date:<br>March 10, 2025 | Time:<br>10:00 am | Dept/Div: | Case Number:<br>2:24-bk-12079-VZ |
|---|---|---|---|---|

1.  I, Frank Hernandez 2023270296, Los Angeles County, and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject View Behavioral Health-Colton II LLC c/o Conrad Nilo as follows:

2.  *Documents:* Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)

| Attempt Detail |
|---|

1) Unsuccessful Attempt by: Frank Hernandez (2023270296, Los Angeles County) on: Feb 6, 2025, 1:31 pm PST at 2600 Redondo Avenue, Signal Hill, CA 90806
The business is no longer at this address. According to Anita Johnson, who works with Optum Health Care, the subject moved out two years ago.

*3. Person Who Served Papers:*

   a. Frank Hernandez (2023270296, Los Angeles County)

   **b. FIRST LEGAL**

     1517 W. Beverly Blvd.

     LOS ANGELES, CA 90026

   c. (213) 250-1111

Recoverable cost Per CCP 1033.5(a)(4)(B)

   **d.** *The Fee* for Service was: $50.25

   **e.** I am: A Registered California Process Server

4.  *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

02/07/2025

(Date)               (Signature)



**AFFIDAVIT OF
DUE DILIGENCE**

*12660685
(17098286)*

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| Gerrick M. Warrington<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Blvd., 19th Floor<br>Los Angeles, CA 90017 | | |
| Telephone No: 323-852-1000 | | |
| Attorney For: Archway Broadway Loan SPE, LLC | Ref. No. or File No.:<br>101415-0002 | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| UNITED STATES BANKRUPTCY COURT Central District of California |

| Plaintiff: In re SEATON INVESTMENTS, LLC, et al., |
|---|
| Defendant: |

| AFFIDAVIT OF DUE DILIGENCE | Hearing Date:<br>March 10, 2025 | Time:<br>10:00 a.m. Pacific Time | Dept/Div: | Case Number:<br>2:24-bk-12079-VZ |
|---|---|---|---|---|

1. I, Frank Hernandez 2023270296, Los Angeles County , and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject View Behavioral Health, LLC as follows:

2. *Documents:* Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)

| **Attempt Detail** |
|---|

1) Unsuccessful Attempt by: Frank Hernandez (2023270296, Los Angeles County) on: Feb 6, 2025, 1:31 pm PST at 2600 Redondo Avenue, Signal Hill, CA 90806
The business is no longer at this address. According to Anita Johnson, who works with Optum Health Care, the subject moved out two years ago.

*3. Person Who Served Papers:*
  a. Frank Hernandez (2023270296, Los Angeles County)
  **b. FIRST LEGAL**
    1517 W. Beverly Blvd.
    LOS ANGELES, CA 90026
  c. (213) 250-1111

Recoverable cost Per CCP 1033.5(a)(4)(B)

  **d.** *The Fee* for Service was: $248.52
  **e.** I am: A Registered California Process Server

4. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

_____02/07/2025_____
*(Date)*

_____
*(Signature)*



**AFFIDAVIT OF**
**DUE DILIGENCE**

*12660677*
*(17098274)*

| Attorney or Party without Attorney:<br>Gerrick M. Warrington<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Blvd., 19th Floor<br>Los Angeles, CA 90017<br>Telephone No: 323-852-1000 | | For Court Use Only |
|---|---|---|
| Attorney For: Archway Broadway Loan SPE, LLC | Ref. No. or File No.:<br>101415-0002 | |
| Insert name of Court, and Judicial District and Branch Court:<br>UNITED STATES BANKRUPTCY COURT Central District of California | | |
| Plaintiff: In re SEATON INVESTMENTS, LLC, et al.,<br>Defendant: | | |

| AFFIDAVIT OF DUE DILIGENCE | Hearing Date:<br>March 10, 2025 | Time:<br>10:00 a.m. Pacific Time | Dept/Div: | Case Number:<br>2:24-bk-12079-VZ |
|---|---|---|---|---|

1. I, Esmeralda Pech 2015248418, Los Angeles, and any employee or independent contractors retained by FIRST LEGAL are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on subject The DMB Fund, Attn: Judy Cox, Agent for Service of Process as follows:

2. *Documents:* Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)

| Attempt Detail |
|---|

1) Unsuccessful Attempt by: Esmeralda Pech (2015248418, Los Angeles) on: Feb 6, 2025, 6:02 pm PST at 2350 Castle Heights Avenue, Los Angeles, CA 90034
There was no answer at the home. I can see the lights and television were on inside the home. I rang the doorbell and waited but no one came out.

2) Unsuccessful Attempt by: Esmeralda Pech (2015248418, Los Angeles) on: Feb 7, 2025, 11:17 am PST at 2350 Castle Heights Avenue, Los Angeles, CA 90034
I spoke to John Doe (male, Caucasian, gray hair, 50's, 5'6, 175lbs, glasses), and he said we had the wrong address. The subject is unknown and does not live here.



| Attorney or Party without Attorney:<br>Gerrick M. Warrington<br>FRANDZEL ROBINS BLOOM & CSATO, L.C.<br>1000 Wilshire Blvd., 19th Floor<br>Los Angeles, CA 90017<br>Telephone No: 323-852-1000 | | For Court Use Only |
|---|---|---|
| Attorney For: Archway Broadway Loan SPE, LLC | Ref. No. or File No.:<br>101415-0002 | |
| Insert name of Court, and Judicial District and Branch Court:<br>UNITED STATES BANKRUPTCY COURT Central District of California | | |
| Plaintiff: In re SEATON INVESTMENTS, LLC, et al.,<br>Defendant: | | |

| **AFFIDAVIT OF DUE DILIGENCE** | Hearing Date:<br>March 10, 2025 | Time:<br>10:00 a.m. Pacific Time | Dept/Div: | Case Number:<br>2:24-bk-12079-VZ |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

3. *Person Who Served Papers:*
   a. Esmeralda Pech (2015248418, Los Angeles)
   **b. FIRST LEGAL**
      1517 W. Beverly Blvd.
      LOS ANGELES, CA 90026
   c. (213) 250-1111

   **d.** *The Fee* for Service was: $244.07
   **e.** I am: A Registered California Process Server

4.   *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.*

02/07/2025
_____
*(Date)*

_____
*(Signature)*



**AFFIDAVIT OF
DUE DILIGENCE**

*12661071
(17098307)*
Page 2 of 2