1 | Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
2 | Gerrick M. Warrington (State Bar No. 294890)
gwarrington@frandzel.com
3 | FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
4 | Los Angeles, California 90017-2427
Telephone: (323) 852-1000
5 | Facsimile: (323) 651-2577

6 | Attorneys for Secured Creditor
ARCHWAY BROADWAY LOAN SPE, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br>　　　　Debtors and Debtors-in-Possession.<br><br>Affects:<br><br>☐ All Debtors<br>☐ Seaton Investments, LLC<br>☐ Colyton Investments, LLC<br>☒ Broadway Avenue Investments, LLC<br>☒ SLA Investments, LLC<br>☒ Negev Investments, LLC<br>☒ Alan Gomperts<br>☒ Daniel Halevy<br>☒ Susan Halevy | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br><br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ;<br>2:24-bk-12082-VZ; 2:24-bk-12091-VZ;<br>2:24-bk-12074-VZ; 2:24-bk-12075-VZ; and<br>2:24-bk-12076-VZ<br><br>Chapter 11<br><br>**ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITION TO MOTION TO APPROVE ADEQUACY OF DISCLOSURE STATEMENT**<br><br>Date:　　February 27, 2025<br>Time:　　11:00 a.m.<br>Crtrm.:　1368<br>　　　　　255 E. Temple Street<br>　　　　　Los Angeles, CA 90012<br><br>Hon. Vincent P. Zurzolo |

# **TABLE OF CONTENTS**

**Page**

I. DISCUSSION ...........................................................................................................4

    A. The Remaining Debtors haven't provided adequate notice of the February-DS. ..................................................................................................4

    B. The February-DS describes a plan that is patently unconfirmable. ..........5

    C. The February-DS does not contain adequate information. .......................6

        1. How will Broadway fund the plan?...............................................6

        2. What if the Lease/Loan Motions are denied?................................7

        3. How will Broadway deal with Archway's relief from stay?.........7

        4. The plan doesn't address cramdown, and the timeline doesn't work. ...........7

        5. How will Broadway pay the DIP loan at maturity or balloon payment? ......................................................................................8

        6. What about Archway's claims against Mr. Gomperts?................8

        7. What about Archway's pending litigation against Mr. and Ms. Halevy?..........................................................................................8

        8. What about the prepetition fraudulent transfer?............................9

        9. Why does the plan not disclose the Archway's cross-collateralization? .............................................................................9

        10. The plan does not address the failure of adequate protection. ......9

        11. What is the evidentiary basis for the projections?........................9

II. CONCLUSION ........................................................................................................9

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Arnold*,
    471 B.R. 578 (Bankr. C.D. Cal. 2012)................................................................................5

*In re Bonham*,
    229 F.3d 750 (9th Cir. 2000)..............................................................................................5

*In re County of Orange*,
    219 B.R. 543 (Bankr. C.D. Cal. 1997)...............................................................................6

*In re Fuelling*,
    601 B.R. 665 (Bankr. N.D. Iowa 2019)..............................................................................8

*Huntington Banks of Michigan v. Felcor/LAX Holdings LP*,
    9 Fed. Appx. 669 (9th Cir. 2001).......................................................................................6

*In re Las Vegas Monorail Co.*,
    462 B.R. 795 (D. Nev. 2011)..............................................................................................8

*Official Comm. Of Unsecured Creditors v. Michelson (In re Michelson)*,
    141 B.R. 715 (Bankr. E.D. Cal. 1992)...............................................................................6

*Matter of Transwest Resort Properties, Inc.*,
    881 F.3d 724 (9th Cir. 2018) (Friedland, J., concurring)...................................................5

**State Cases**

*Berg & Berg Enterprises, LLC v. Boyle*,
    178 Cal. App. 4th 1020 (2009)..........................................................................................8

**Federal Statutes**

11 U.S.C. § 1125 ......................................................................................................................6

11 U.S.C. § 1125(b) ............................................................................................................ 4, 6

28 U.S.C. § 959(b) ...................................................................................................................8

**Rules**

Fed. R. Bankr. P. 3017(a)(1)(A)................................................................................................4

Fed. R. Bankr. P. 9014 ..............................................................................................................7

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## I. DISCUSSION[1]

As discussed below, the Court should deny approval of the DS-Motion.

### A. The Remaining Debtors haven't provided adequate notice of the February-DS.

"An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, *after notice and a hearing*, by the court as containing adequate information." 11 U.S.C. § 1125(b). Under Rule 3017(a)(1)(A) of the Federal Rules of Bankruptcy Procedure, a plan proponent must, in pertinent part, give at least 28 days' notice of the hearing on a disclosure statement. Fed. R. Bankr. P. 3017(a)(1)(A). The local rules augment this by requiring 42 days' notice on a motion to approve a disclosure statement. *See* LBR 3017-1(a) ("A hearing on a motion for approval of a disclosure statement must not be set on less than 42 days notice, unless the court, for good cause shown, prescribes a shorter period.").

Here, the DS-Motion seeks approval of the February-DS, which was filed on February 6, 2025. *See* Dkt. 426 at 55 of 56. But no notice of hearing **for the February-DS** has ever been given. The notice of hearing ("Notice") (Dkt. 427 at 70) attached to the DS-Motion is for a ***different disclosure statement*** which was filed back in January ("January-DS") (Dkt. 398). *See* Notice of Hearing Dkt. 399. *See also* DS-Motion, Dkt. 427 at 70 (referring to "a Disclosure Statement and Plan of Reorganization … filed as docket entry # 398").

---

[1] Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC ("Archway"), submits this Opposition ("Opposition") to the *Notice of Motion and Motion to Approve Adequacy of Disclosure Statement* ("DS-Motion") (Dkt. 427), which seeks approval of that certain *Disclosure Statement and Plan of Reorganization Dated February 6, 2025* ("February-DS") (Dkt. 426) filed in the lead case of those jointly-administered debtors, Seaton Investments, LLC ("Seaton"), Colyton Investments, LLC ("Colyton"), Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev" and collectively with Seaton, Colyton, Broadway and SLA, the "Corporate Debtors") and Alan Gomperts ("Mr. Gomperts"), Daniel Halevy ("Mr. Halevy"), and Susan Halevy ("Ms. Halevy" and collectively with Mr. Gomperts and Mr. Halevy, the "Individual Debtors" and collectively with the Corporate Debtors, the "Debtors" and excluding Seaton and Colyton, the "Remaining Debtors").

1 No redline is provided, and it is unclear what changes, exactly, were made. Per the Declaration of Derrick Talerico, the February-DS amends and replaces the January-DS "to include reference to the pending motions to approve the Broadway lease and related post-petition financing and amends the projections for Broadway." Talerico Decl., Dkt. 427 at 68 of 79 at 9:20–22. As described, these would be material changes for which no notice has been provided.

The Court should deny the DS-Motion for this reason alone.

### B. The February-DS describes a plan that is patently unconfirmable.

"[W]here a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan." *In re Arnold*, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012) (citations omitted).

Here, the Plan is patently unconfirmable because it constitutes a de facto substantive consolidation. The proposed plan effectively merges the estates of the Reorganized Debtors, disregarding their separateness entirely. The plan proposes to the Corporate Debtors' debts via a lease-up of Broadway. *See* Exhibit D Projections Dkt. 427 at 34–36 (Negev debt "Paid By Broadway"); 37–50 (SLA debt "paid off through Broadway Loan"). The plan does not differentiate between the estates of these Corporate Debtors. The plan entails the Individual Debtors guaranteeing a multi-million dollar DIP loan to Broadway, which is purportedly supposed to result in feasible plan payments via rental revenue income stream. *See* DIP Loan Motion at Dkt. 421-5 at 5 of 7 (reflecting "Personal Guarantee required from all members of [Broadway]."). Broadway's members are the Individual Debtors, but they have never sought approval of such DIP financing.

Moreover, there has not been any disclosure of whether substantive consolidation is even appropriate or fair to all creditors under the applicable test. *See In re Bonham*, 229 F.3d 750, 765–66 (9th Cir. 2000) (setting forth the appropriate test for substantive consolidation). Because the plan here does not delineate between and among separate debtor-creditor relationships, it constitutes an impermissible de facto substantive consolidation, without any assessment of whether substantive consolidation is appropriate. This is impermissible. *See Matter of Transwest Resort Properties, Inc.*, 881 F.3d 724, 732 (9th Cir. 2018) (Friedland, J., concurring).

1  The Court should deny because the February-DS describes a plan that causes an
2  impermissible de facto substantive consolidation.

3  **C.    The February-DS does not contain adequate information.**

4  Section 1125(b) requires a court to find that the disclosure statement contains "adequate
5  information" before a debtor is allowed to solicit its plan. 11 U.S.C. § 1125. Section 1125(a)(1)
6  defines "adequate information" as information which is of the kind, and in sufficient detail, that
7  would enable a hypothetical investor typical of the holders of claims or interests of the relevant
8  class to make an informed judgment about the plan. *Id.*; *Huntington Banks of Michigan v.*
9  *Felcor/LAX Holdings LP*, 9 Fed. Appx. 669, 670 (9th Cir. 2001) (quoting *Official Comm. Of*
10 *Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 725 (Bankr. E.D. Cal. 1992)).
11 The purpose of the disclosure statement is to "give all creditors a source of information which
12 allows them to make an informed choice regarding approval or rejection of a plan." *In re County*
13 *of Orange*, 219 B.R. 543, 560 (Bankr. C.D. Cal. 1997) (quoting *Duff v. United States Trustee (In*
14 *re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir. BAP 1996)). The plan proponent bears
15 the ultimate burden of persuasion on the requirement of adequate disclosure such that the plan
16 proponent has "an incentive … to make full, candid, and complete disclosure." *Michelson*, 141
17 B.R. at 720.

18  **1.    How will Broadway fund the plan?**

19 The plan projections state that Broadway will start funding $118,888.00 in monthly
20 interest payments to Archway beginning *in September 2025*. *See* Exhibit D Dkt. 427 at 41 of 79.
21 In turn, the February-DS states that plan payments will be sourced from rent income from the
22 Broadway lease, which will purportedly begin in "month 7 of the lease," once Broadway secures a
23 certificate of occupancy. *See* February-DS at § V.E. ("The Broadway tenant is not required to start
24 paying rent *in month 7 of the lease* unless the building has a certificate of occupancy.") (emphasis
25 added).

26 But the proposed lease provides that the Lessee is not required to pay any rent until *six*
27 *months after* Broadway secures a certificate of occupancy. *See* Lease § 1.13(a), (b) Dkt. 421-4 at 8
28 of 110. Moreover, per the lease, a temporary certificate of occupancy won't generate enough rent

Case 2:24-bk-12079-VZ    Doc 434    Filed 02/13/25    Entered 02/13/25 17:41:48    Desc
Main Document    Page 7 of 11

to fund Archway's interest payments, much less the DIP lender's 11% interest payments of $36,667.00 per month. *See* Lease §§ 1.05 (reflecting that even if Broadway obtains a TCO, that only means the Lessee will be required to pay $75,000.00 per month, whereas a full CO is required for Lessee to be required to start paying $200,000.00 per month). Because the projections assume rent of $200,000.00 per month starts in September 2025, i.e., "Month 7 of the lease," that means that Broadway must have its CO in hand at the time of the disclosure statement hearing.

What if that doesn't happen?

### 2. What if the Lease/Loan Motions are denied?

There are good reasons to deny the lease and loan motions. *See, generally*, Archway Omnibus Opposition to Lease and Loan Motions, Dkt. 429. The January-DS stated that "If the DIP loan and lease are not approved …, Broadway <u>will</u> not be able to meet its plan payments." Dkt. 398 at 11 (emphasis added). But the February-DS changes this to state "If the DIP loan and lease are not approved …, Broadway <u>may</u> not be able to meet its plan payments." Dkt. 427 at 21 (emphasis added).

### 3. How will Broadway deal with Archway's relief from stay?

The Court has terminated the stay as to Archway in the Broadway case as to Broadway and its estate, which means that Archway may currently exercise any and all remedies available to it, including, for example, suing Broadway in state court to obtain a rents and profits receiver, except that Archway may not foreclose until April 11, 2025. *See* RFS Order Dkt. 364. There is no disclosure of the risks that might pose on the use of Broadway rents for a purported reorganization. There is also no disclosure of the risk that the Court could deny the pending DIP Loan and Lease Motions, which Archway has opposed. *See* Dkts. 418, 420, 429.

### 4. The plan doesn't address cramdown, and the timeline doesn't work.

Archway plans to object to confirmation of the plan, effectively blocking confirmation in this single asset real estate case due to the lack of an impaired consenting class, and, relatedly, whether the plan constitutes a de facto substantive consolidation. *See, supra*, § I.B.

Although Archway cannot foreclose until April 11, 2025, the proposed "cramdown" timeline does not permit enough time for Archway to exercise its discovery rights under Rule

7
ARCHWAY'S OBJECTION TO DEBTORS' DISCLOSURE STATEMENT AND PLAN

9014, which Archway fully intends to use, including written and oral depositions of parties and experts on topics ranging from feasibility to the appropriate discount rate, among others.

### 5. How will Broadway pay the DIP loan at maturity or balloon payment?

The February-DS doesn't mention the likelihood of any sale or refinancing proposed. "[A]ny plan that includes a balloon payment to a creditor is suspect of confirmation unless there is proof of circumstances likely to produce a bucket of cash at just the right time to make the payment." *In re Fuelling*, 601 B.R. 665, 675 (Bankr. N.D. Iowa 2019) (citation omitted); *In re Las Vegas Monorail Co.*, 462 B.R. 795, 800–802 (D. Nev. 2011) (holding that debtor was required to provide "credible evidence" about the likelihood of obtaining any future refinancing and that even a drop-dead provision is not, by itself, sufficient to save a plan from being in-feasible).

### 6. What about Archway's claims against Mr. Gomperts?

The February-DS doesn't mention Archway's breach of fiduciary duty claims against Mr. Gomperts for failing to make a mandatory capital call on all members of Broadway as required by § 2.1 of Broadway's Operating Agreement. *See* Archway Proof of Claim 7, case number 2:24-bk-12074-VZ, at 5.

The February-DS is also silent as to Archway's claims against Mr. Gomperts for breach of fiduciary duties owed by to Archway under California's Trust Fund Doctrine. *See* Archway Proof of Claim 7, case number 2:24-bk-12074-VZ, at 5. *See Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1041 (2009) (discussing California's trust fund doctrine whereby directors of insolvent corporate entities owe fiduciary duties to creditors of the insolvent corporate debtor including the duty to avoid self-dealing and unduly risking corporate assets); 28 U.S.C. § 959(b) ("[A] debtor in possession, shall manage and operate the property in his possession … according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.").

### 7. What about Archway's pending litigation against Mr. and Ms. Halevy?

There is pending litigation by Archway against Ms. Halevy, in her capacity as Trustee of the Halevy Family Trust Dated September 8, 2010 ("Halevy Trust"); 341 South Cannon LLC, a California limited liability company ("Cannon LLC"); Mr. Halevy, in his capacity as Personal

Representative of the estate of nondebtor David Halevy, which is pending in Los Angeles Superior Court. Why isn't this disclosed?

### 8. What about the prepetition fraudulent transfer?

Are the Remaining Debtors intending to seek recovery from Cannon LLC of the putatively fraudulent transfer of real property from Ms. Halevy to the LLC that occurred on September 26, 2023, only 125 days before Ms. Halevy filed chapter 11? The February-DS does not disclose where the $1.3 million in financing obtained on 341 S. Canon Drive, Beverly Hills, California, pursuant to Mr. Halevy's granting of a deed of trust in favor of a private lender prepetition, went.

### 9. Why does the plan not disclose the Archway's cross-collateralization?

The February-DS does not disclose the existence of cross-collateralization provisions in the Archway/Broadway Loan Documents and the impact of such third party accommodation pledges have on the plan. *See, e.g.*, Archway Proof of Claim 2, case number 2:24-bk-12081-VZ, at 5.

### 10. The plan does not address the failure of adequate protection.

How will the Remaining Debtors prove that Archway is adequately protected despite the priming lien they are proposing? The February-DS does not address Archway's superpriority claim for failure of adequate protection, including, as to Broadway, under § 507(b).

### 11. What is the evidentiary basis for the projections?

What is the source and/or accounting methods for the financial projections attached to the plan?

## II. CONCLUSION

For these reasons, the Court should deny the DS-Motion.

DATED: February 13, 2025                    FRANDZEL ROBINS BLOOM & CSATO, L.C.

By:      /s/ Gerrick M. Warrington
         GERRICK M. WARRINGTON
         Attorneys for Secured Creditor
         ARCHWAY BROADWAY LOAN SPE, LLC

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

A true and correct copy of the foregoing document entitled (*specify*):

**ARCHWAY BROADWAY LOAN SPE, LLC'S OPPOSITION TO MOTION TO APPROVE ADEQUACY OF DISCLOSURE STATEMENT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 13, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Counsel to Party in Interest: Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Counsel to KDM: Tanya Behnam    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- Counsel to Party in Interest: Jacquelyn H Choi    jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com
- Counsel to Individual Debtors: Carol Chow    Carol.Chow@saul.com, easter.santamaria@saul.com
- Counsel to Party in Interest: Robert F Conte    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- Counsel to Individual Debtors: Ryan Coy    ryan.coy@saul.com, hannah.richmond@saul.com
- Counsel to Party in Interest: Christopher Cramer    secured@becket-lee.com
- Counsel to Individual Debtors: Turner Falk    turner.falk@saul.com, tnfalk@recap.email
- Counsel to Archway: Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com
- Counsel to Party in Interest: Todd S. Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- Counsel to Party in Interest: Richard Girgado    rgirgado@counsel.lacounty.gov
- Counsel to Party in Interest: Jacqueline L James    jjames@hrhlaw.com
- Trial Counsel to U.S. Trustee: Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Counsel to Party in Interest: Avi Edward Muhtar    amuhtar@crownandstonelaw.com
- Counsel to Archway: Bruce D Poltrock    bpoltrock@frandzel.com, achase@frandzel.com
- Counsel to Individual Debtors: Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com
- Counsel to Corporate Debtors: Derrick Talerico    dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Counsel to Archway: Gerrick Warrington    gwarrington@frandzel.com, achase@frandzel.com
- Counsel to Party in Interest: Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

ARCHWAY'S OBJECTION TO DEBTORS' DISCLOSURE STATEMENT AND PLAN

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 13, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Overnight Delivery (Early Morning):**

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1360
255 E. Temple Street
Los Angeles, CA 90012-3332

**Email:**

**Counsel to Corporate Debtors:**
Derrick Talerico     dtalerico@wztslaw.com

**Counsel to Individual Debtors:**
Zev Shechtman     Zev.Shechtman@saul.com
Turner Falk     turner.falk@saul.com
Ryan Coy     ryan.coy@saul.com

**United States Trustee:**
Kelly L Morrison kelly.l.morrison@usdoj.gov

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| February 13, 2025 | Annette Chase | /s/ Annette Chase |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

ARCHWAY'S OBJECTION TO DEBTORS' DISCLOSURE STATEMENT AND PLAN