Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN
TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

Counsel to Debtors Broadway Avenue
Investments, LLC, SLA Investments, LLC,
and Negev Investments, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br>               Debtors and Debtors in Possession. | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.: 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ and 2:24-bk-12076-VZ<br><br>Chapter 11 |
| ☐ Affects All Debtors.<br>☐ Affects Seaton Investments, LLC (*Dismissed*)<br>☐ Affects Colyton Investments, LLC (*Dismissed*)<br>☒ Affects Broadway Avenue Investments, LLC<br>☒ Affects SLA Investments, LLC<br>☒ Affects Negev Investments, LLC<br>☒ Affects Alan Gomperts<br>☒ Affects Daniel Halevy<br>☒ Affects Susan Halevy | **MOTION TO APPROVE SETTLEMENT AGREEMENT WITH ARCHWAY BROADWAY LOAN SPE, LLC UNDER RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; DECLARATIONS OF ALAN D. GOMPERTS AND DERRICK TALERICO IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:         August 19, 2025<br>Time:        11:00 a.m.<br>Courtroom:  1368<br>                255 E. Temple Street<br>                Los Angeles, CA 90012 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  STATEMENT OF FACTS ................................................................2

    A.  Jurisdiction and Venue...........................................................2

    B.  Background and Current Status ............................................2

        1.  Debtor's Business .........................................................2
        2.  Bankruptcy Filing ........................................................2
        3.  Current Status...............................................................3
        4.  Broadway Background...................................................3
        5.  Negev Investments, LLC Background.........................5
        6.  SLA Investments, LLC Background............................5
        7.  The Individual Guarantors ..........................................6

II.  SUMMARY OF SETTLEMENT ................................................6

III.  THE SETTLEMENT IS IN THE BEST INTEREST OF THE
ESTATES AND SHOULD BE APPROVED UNDER THE
STANDARD SET BY THE NINTH CIRCUIT ...........................9

    A.  Legal Standard .......................................................................9

    B.  Argument ................................................................................10

IV.  CONCLUSION..............................................................................12

DECLARATION OF ALAN D. GOMPERTS.......................................14

DECLARATION OF DERRICK TALERICO............................................17

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Am. W. Airlines, Inc. v. City of Phoenix (In re Am. W. Airlines, Inc.),*
    214 B.R. 382 (Bankr. D. Ariz. 1997) .................................................................... 10

*Goodwin v. Mickey Thompson Entm't Grp., Inc.*
*(In re Mickey Thompson Entm't Grp., Inc.),*
    292 B.R. 415 (9th Cir. BAP 2003) ...................................................................... 9

*In re Lee Way Holding Co.,*
    120 B.R. 881 (Bankr. S.D. Ohio 1990) ............................................................... 10

*Martin v. Kane (In re A & C Props.),*
    784 F.2d 1377 (9th Cir. 1986) ...................................................................... 9, 10

*Newman v. Stein,*
    464 F.2d 689 (2d Cir.) *cert. denied sub nom.*
    *Benson v. Newman,* 409 U.S. 1039 (1972) ........................................................ 9

*Protective Committee of independent Stockholders*
  *of TMT Trailer Ferry, Inc. v. Anderson,*
    390 U.S. 414 (1968) .......................................................................................... 9

*U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.),*
    669 F.2d 1325 (9th Cir. 1982) ............................................................................ 9

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),*
    839 F.2d 610 (9th Cir. 1988) .............................................................................. 9


**STATUTES**

28 U.S.C. § 157 ................................................................................................................ 2

28 U.S.C. § 157(b)(2)(A) ................................................................................................. 2

28 U.S.C. § 157(b)(2)(M) ................................................................................................ 2

28 U.S.C. § 157(b)(2)(O) ................................................................................................. 2

28 U.S.C. § 1334 .............................................................................................................. 2

28 U.S.C. § 1408 .............................................................................................................. 2

28 U.S.C. § 1409 .............................................................................................................. 2

Fed. R. Bankr. P. 9019 ..................................................................................................... 2

Fed. R. Bankr. P. 9019(a) ................................................................................................ 9

Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), Negev Investments, LLC ("Negev," together with Broadway and SLA, the "Corporate Debtors"), Susan Halevy ("Susan" or "Susan Halevy"), Daniel Halevy ("Daniel" or "Daniel Halevy"), and Alan Gomperts ("Alan" or "Alan Gomperts," together with Susan and Daniel, the "Individual Debtors," and the Individual Debtors, collectively with the Corporate Debtors, the "Debtors"), the debtors and debtors-in-possession in the pending jointly administered chapter 11 bankruptcy cases herein (the "Cases"), hereby submit this *Motion to Approve Settlement Agreement and Supporting Documents with Archway Broadway Loan SPE, LLC* ("Motion") pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 9019.

## I.    **STATEMENT OF FACTS**

### A.    **Jurisdiction and Venue**

The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### B.    **Background and Current Status**

#### 1.    **Debtors' Business**

The Individual Debtors are family and operate a family business together. Debtor Susan Halevy is mother to debtor Daniel Halevy and three other non-debtor children, including Sharon Gomperts, wife of debtor Alan Gomperts.

Before these Cases were filed, Susan's husband, David Halevy (deceased), together with Daniel and Alan, and on occasion non-debtor Simon Harkham, invested in and operated real estate properties. Upon David Halevy's passing in 2023, his interests, to the extent they were not community property, passed to Susan via the Halevy Trust (defined below). As such, Susan Halevy is now the owner – direct, beneficial, equitable, or otherwise – of all interests in the various Debtors previously owned by David Halevy.

#### 2.    **Bankruptcy Filing**

On March 18, 2024 (the "Individual Petition Date") and on March 19, 2024 (the "Corporate Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the

2

Bankruptcy Code with the Court. The Debtors continue to operate and manage their affairs as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in the Cases.

These Cases involved two real estate investments that required a restructuring to address defaults on their senior loans: (1) the buildings at 440 Seaton Street, Los Angeles, CA, 90013 (the "Seaton Building"), and 421 Colyton Street, Los Angeles, CA, 90013 (the "Colyton Building"), which together are operated as an economic unit (the "Seaton/Colyton Buildings") and are owned by Debtors Seaton Investments, LLC, ("Seaton") and Colyton Investments, LLC ("Colyton"), respectively; and (2) the building at 737 S. Broadway, Los Angeles, CA, 90014 (the "Broadway Building"), owned by Debtor Broadway. By an order of the Court entered on March 6, 2025, through a settlement with secured lender KDM California LLC ("KDM"), the Seaton and Colyton bankruptcy cases were dismissed.

### 3.    Current Status

As of December 2024, Archway Broadway Loan SPE, LLC ("Archway") was granted relief from the automatic stay as to the Broadway Building, effective immediately for foreclosure noticing purposes and effective April 11, 2025 for a foreclosure sale. The Debtors have intensely negotiated with Archway through the year, culminating in an in-person settlement meeting on May 5, 2025. At that meeting, the Debtors and Archway (together, the "Parties") reached an agreement on material terms for a "global" settlement (the "Settlement") to resolve all disputes between the Parties and to secure Archway's support for a plan of reorganization. Since May 5, 2025, Archway has been drafting more than twenty original documents to implement the terms of the Settlement. Those documents are still in process but the Parties expect to file a supplement to this Motion prior to the hearing on this Motion to present these settlement documents to the Court for approval.

### 4.    Broadway Background

Broadway was formed in July 2013 for the purpose of acquiring, developing, and operating the Broadway Building. Broadway's membership consists of: (1) the Halevy Trust (Susan Halevy,

beneficial owner); (2) the G&H Trust (Alan Gomperts and Sharon Gomperts, beneficial owners of community property); and (3) Daniel Halevy.

Broadway acquired the Broadway Building in 2013. The Broadway Building is an eight-story structure. At the time it was acquired by Broadway, only the ground floor was habitable. Broadway understands the seven higher floors have not been occupied since the 1950s. In 2015, Broadway entered into a 15-year lease with The GAP for the ground floor of the Broadway Building and developed a plan to remodel and modernize the entire Broadway Building to make every floor habitable and available to lease to commercial tenants.

A majority of the intensive remodel and modernization of the Broadway Building took place between 2015 and 2020.  The improvements that were performed included the rehabilitation of the façade of the first three floors of the Broadway Building per the guidance of the Cultural Heritage Commission, installation of a fire and life safety system throughout the building, modernization of the elevator, installation of an HVAC system, fire pump and sprinkler system, emergency backup generator and replacement and installation of electric and plumbing systems throughout the building. In March 2020, after first confirming the full term of its lease, The GAP exercised a one-time early termination provision on its lease as the uncertainty of COVID began to take hold.

With an end to the remodel and modernization in sight, Broadway refinanced its outstanding loans with a single loan from Archway in July 2021, in the original principal amount of $16,942,500 (the "Broadway Loan"). The Broadway Loan was guaranteed by David Halevy, Daniel Halevy, and Alan Gomperts.

The Broadway Loan matured on August 1, 2022.  After Archway commenced an action for breach against the guarantors and filed a notice of default to begin foreclosure on the Broadway Building, the parties agreed to a restructure (the "Broadway Restructure") that extended the maturity date of the Broadway Loan to December 1, 2023, affirmed the balance due under the Broadway Loan in the principal amount of $15,241,093, and called for $4 million in new loans (the "New Loans") from Archway to benefit the Broadway Loan and the Broadway Building. By way of three loan agreements, the New Loans were made: (1) to Negev for $1,300,000 (the "Negev Loan"); (2) to SLA for $125,000 (the "SLA Loan"); and (3) jointly to David Halevy, the Halevy Trust, Alan Gomperts,

the G&H Trust, and Daniel Halevy for $2,575,000 (the "Guarantor Loan"). The Negev Loan was secured by the real property located at 12800 Foxdale Drive, Desert Hot Springs, California, and was guaranteed by David Halevy, with the guaranty secured by David Halevy's membership interests in Negev. The SLA Loan was secured by the real property located at 1040 S. Los Angeles Street and was guaranteed by David Halevy, Susan Halevy, Alan Gomperts, and Daniel Halevy, with the guarantees secured by the guarantors' membership interests in SLA. The Guarantor Loans were secured by the following real property: (1) 3538 Greenfield Avenue, Los Angeles, California (owned by the G&H Trust); (2) 133 S. Palm Drive, Beverly Hills, California (owned by the Halevy Trust); and (3) 8561 Horner Street, Los Angeles, California (owned by Daniel Halevy). The $4 million of proceeds from the New Loans were distributed exclusively for the benefit of Archway and the Broadway Loan, with $1,701,407.01 applied to pay down the balance of the Broadway Loan.

As of the Petition Date, the outstanding debt owed to Archway is not less than $15,663,398 on the Broadway Loan, not less than $1,336,020 on the Negev Loan, not less than $128,958 on the SLA Loan, and not less than $2,646,348.96 on the Guarantor Loan.

### 5.    Negev Investments, LLC Background

Negev owns a motel located at 12800 Foxdale Drive, Desert Hot Springs, CA (the "Motel"). The Motel has 26-rooms with five natural spring water pools. It has been operated by Seapiper Inn, Inc. ("Seapiper") since 2014. Negev is owned by the Halevy Trust. Seapiper is not a debtor in these proceedings. Negev became a borrower of Archway by the Broadway Restructure in 2023 as set forth above. As of the Petition Date, the outstanding balance owed on the Negev Loan is not less than $1,336,020.

### 6.    SLA Investments, LLC Background

SLA was formed in 2009 for the purpose of acquiring, developing, and operating commercial real property located at 1040 South Los Angeles Street, Los Angeles, CA ("SLA Building"). As of the Petition Date, 13 of 18 spaces are leased. SLA's membership consists of: (1) the Halevy Trust; (2) the G&H Trust; (3) Daniel Halevy; and (4) Simon Harkham. SLA became a borrower of Archway by the Broadway Restructure in 2023 as set forth above. As of the Petition Date, the outstanding balance owed on the SLA Loan is not less than $128,958.

### 7.    The Individual Guarantors

Susan Halevy (not directly but via her interest in the community property of David Halevy), the Halevy Trust, Alan Gomperts, the G&H Trust, and Daniel Halevy are guarantors of the Archway debt as follows:

- Broadway Loan in the principal amount of not less than $15,241,093, jointly and severally: the community assets and probate estate of David Halevy (deceased), Alan Gomperts, and Daniel Halevy;

- Negev Loan in the principal amount of not less than $1,300,000.00: Susan Halevy (not directly but via her sole ownership of community property);

- SLA Loan in the principal amount of not less than $125,000.00: David Halevy (deceased), Susan Halevy, Alan Gomperts, and Daniel Halevy.

Susan Halevy (not directly but via her interest in the community property of David Halevy), the Halevy Trust, Alan Gomperts, the G&H Trust, and Daniel Halevy are also jointly and severally liable on the Guarantor Loan, which is in the principal amount of not less than $2,575,000 as of the Petition Date.

The Broadway and SLA properties are jointly managed by Daniel Halevy (daily property management through Almighty Builders, Inc.) and Alan Gomperts (financial management).

## II.    SUMMARY OF SETTLEMENT

On May 5, 2025, the Parties met to finalize material terms of a global settlement. That meeting was successful, and the Parties agreed to the material terms necessary to allow Archway to support a proposed lease of the Broadway Building. The material terms of the Parties' settlement (subject to, and as more specifically set forth within, the Settlement Documents) are as follows:

- Debt. Archway's debt is composed of (i) principal; (ii) contract interest through the date of settlement; and (iii) fees, including attorneys' fees, and costs. Default interest will be waived, subject to default provisions.

- Lease. Broadway enters lease (the "VBH Lease") with View Behavioral Health, LLC ("VBH");

a. Rent Lock Box / DACA to collect rents with disbursements as agreed by the Parties;

b. SNDA signed by Archway;

c. Jack Stephens provides "bad boy" guaranty;

- <u>Interest</u>. Interest at 7% with forbearance on accrual and payment until the VBH Lease payments begin;

- <u>Canon</u>. Sue Halevy to market and sell the real property located at 341 S. Canon (the "Canon Property"), and Archway to remove the *lis pendens* on the Canon property. The sale proceeds from the sale of Canon shall be distributed to a reserve account to be used for VBH Lease commitments, except for an agreed-upon carve-out which shall be released to Sue Halevy for restructuring and/or living expenses for herself and Daniel Halevy as she deems appropriate.

- <u>Collateral</u>.

  a. Archway maintains all existing liens on collateral, including real property: Broadway Ave; S. Los Angeles Street; Foxdale Drive; Greenfield Ave; Palm Drive; Horner Street.

  b. New collateral: Canfield (Alan Gomperts); Bagley (Alan Gomperts); 50% interest in Roxbury (Sue Halevy).

- <u>Tiered Foreclosure</u>. In the event of a default, Archway may proceed to foreclose against collateral in three tiers, without foreclosing from property in a successive tier until first conducting non-judicial foreclosure auctions of all properties in the prior tier:

  a. Tier 1: Broadway, S. Los Angeles, Foxdale/Negev

  b. Tier 2: Greenfield, Palm, Bagley, Canfield, Roxbury

  c. Tier 3: Horner

These material terms are not the exclusive terms of the Parties' settlement, which will be set forth in full in the Settlement Documents. The Settlement Documents are anticipated to include the following documents (the "Settlement Documents"):

- Master Settlement Agreement;
- A-Note;
- B-Note;
- Memorandum of Modification, notarized for recording purposes;
- Alan/Sue Guaranty;
- Canfield Deed of Trust;
- Bagley Deed of Trust;
- Roxbury Deed of Trust;
- Roxbury Pledge;
- Roxbury UCC-1;
- Broadway/VBH Lease;
- SNDA;
- Bad Boy Guaranty;
- Rent Lock Box Account Agreement;
- Rent Lock Box Account Pledge Agreement;
- DACA;
- Canon Sale Listing Agreement;
- Canon Sale Proceeds Reserve Account Agreement;
- Canon Sale Proceeds Reserve Account Pledge Agreement;
- Canon Sale Proceeds Reserve Account DACA; and
- Stipulation for Entry of Judgment.

The Settlement Documents are not filed with this Motion as Archway is drafting the Settlement Documents and has not yet presented the drafts to the Debtors. Broadway expects to receive the Master Settlement Agreement on July 10 and the remainder of the Settlement Documents the week of July 14. Broadway expects the Settlement Documents can be negotiated and finalized prior to the scheduled August 19 hearing on this Motion and filed with the Court in a supplement declaration in support of the Motion. This Motion is presented now, due to the dual exigencies of demonstrating a viable

1  restructuring and commitment to settlement to the Court and also demonstrating the Parties'

2  commitment to VBH.

3  **III.    THE SETTLEMENT IS IN THE BEST INTEREST OF THE ESTATES AND SHOULD BE APPROVED UNDER THE STANDARD SET BY THE NINTH CIRCUIT**

4

5  **A.    Legal Standard**

6  Federal Rule of Bankruptcy Procedure 9019 provides that "[o]n motion by the trustee and after

7  notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

8  The Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving

9  compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620

10  (9th Cir. 1988); *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp.,*

11  *Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

12  The Court is not required to conduct an exhaustive investigation into the validity, nor a mini

13  trial on the merits of the claims sought to be compromised as a precondition to approving the

14  Agreement. *U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

15  The Court need only find that the settlement was negotiated in good faith and is reasonable, fair and

16  equitable. *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *see also*

17  *Protective Committee of independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S.

18  414, 424 (1968) (establishing "fair and equitable" standard for approval of compromises in

19  bankruptcy).

20  In evaluating the fairness of a proposed compromise, the Ninth Circuit has instructed courts to

21  consider four factors, namely: (a) the probability of success in the litigation; (b) the difficulties, if any,

22  to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the

23  expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the

24  creditors and a proper deference to their reasonable views. *Woodson*, 839 F.2d at 620 (quoting *A & C*

25  *Props.*, 784 F.2d at 1381). Consideration of these factors does not require the Court to decide the

26  questions of law and fact raised in the controversies sought to be settled, or to determine whether the

27  settlement presented is the best one that could possibly have been achieved. Rather, the Court need

28  only canvass the issues to determine whether the settlement falls "below the lowest point in the zone

of reasonableness." *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir.), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972). Finally, although the Court should give deference to the reasonable views of creditors, it is well established that compromises are favored in bankruptcy. *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990); *see also A & C Props.*, 784 F.2d at 1381 ("The law favors compromise and not litigation for its own sake."); *Am. W. Airlines, Inc. v. City of Phoenix (In re Am. W. Airlines, Inc.)*, 214 B.R. 382, 386 (Bankr. D. Ariz. 1997) ("The law favors compromise.").

## B.    Argument

Based on these principles and application of the *A & C Props.* factors, the Settlement should be approved. It was negotiated in good faith and is reasonable, fair, equitable, and in the best interest of creditors and the Debtors' estates. If approved, the Settlement will resolve a multitude of complex and uncertain litigation.

### (i)    Complexity of the Litigation Involved

As it applies to this compromise, the "litigation" at issue would be (i) state court litigation concerning the David Halevy Estate; (ii) approval of the VBH Lease; and (iii) opposition to a plan of reorganization. The litigation required absent the Settlement would be particularly complex.

There are two proceedings in state court: administration of the David Halevy Estate and an action commenced by Archway following the dismissal of an action first brought in this Case concerning the nature of the community assets of Sue and David Halevy, the Halevy Trust, and in particular, the Canon Property. Sue Halevy contends the Canon Property is appropriately owned by Canon LLC (wholly owned by Sue Halevy) or belongs in the bankruptcy estate of Sue Halevy directly. Archway argues the Canon Property should be administered for its benefit in the probate estate of David Halevy. Sue Halevy holds that Canon was transferred to Canon LLC pre-petition in exchange for fair value (100% ownership of Canon LLC) and as such, she has the authority to dissolve Canon LLC and absorb Canon directly into her bankruptcy estate should she choose to do so. Archway contends that Canon was jointly owned by David and Sue Halevy, and as such it could not be owned by Sue Halevy or Canon LLC until it is administered through David Halevy's probate estate for the benefit of his creditors (namely Archway). Archway is also pursuing causes of action for breach of

1   fiduciary duty and fraudulent intent to transfer, among others. Sue Halevy has yet to file counter claims

2   in but would challenge the right of Archway to enforce certain of its liens. This litigation will require

3   months of discovery and motion practice and involve complex issues of ownership and examination

4   of the history of the loans and transactions among the Parties.

5          Litigation over the approval of the VBH Lease will also be complex. As the Court has already

6   seen from earlier litigation involving Broadway's efforts to obtain lease approval, Archway has

7   employed a meticulous examination and attack on Broadway's lease proposals. Although Broadway

8   has negotiated a lease with VBH that does not involve all of the same issues Archway raised in

9   opposition to prior Broadway lease efforts, the litigation on a motion to approve the current proposed

10  tenant will not be routine. The Debtors are certain Archway's opposition to the current proposed tenant

11  and lease will require numerous depositions and an evidentiary hearing with reems of documents and

12  expert testimony.

13         Whether the VBH Lease precedes confirmation of a plan or is part of a plan, confirmation

14  litigation is also expected to be laborious in both the discovery that will be required in advance of

15  confirmation and the confirmation hearing itself. The Parties can be expected to litigate over the value

16  of every component of Archway's collateral – which also relates to the Canon Action, the degree to

17  which Archway is under or over secured as applied across the Debtors' estates, the amount of post-

18  petition interest and attorneys' fees Archway is entitled to, if any, and the feasibility of the plan, among

19  other issues.

20         The complexity of litigation factor weighs heavily in favor of approval of the Settlement.

21                 (ii)      Probability of Success in Litigation

22         The state court litigation is currently stayed informally while the Parties have been negotiating

23  this Settlement. But should this Settlement fall through or not be approved by the Court, the hold on

24  the State Court litigation will dissolve and the Canon litigation will expand. How this litigation might

25  resolve is entirely uncertain. Although the Debtors believe they are more likely to prevail, Archway

26  similarly favors its prospects of success. As such, a neutral assessment of the litigation – as it currently

27  stands – would likely conclude all matters in dispute cannot be assessed other than as 50/50

28  propositions. Considering the uncertainty of outcome of all of the litigation at hand and yet to come,

1  resolving all of these matters to avoid the risk of success or failure weighs heavily in favor of approval

2  of the Settlement.

3           (iii)    Difficulties in the Matter of Collection

4           Other than unarticulated claims the Debtors may hold against Archway, there are no issues for

5  collection that bear weight in approval of the Settlement. This factor is neutral.

6           (iv)    Paramount Interest of the Creditors

7           The Settlement is the gateway to a plan that can maximize return to creditors. Without the

8  Settlement, the results for creditors could be devastating. The Debtors anticipate many months of

9  intense litigation over the VBH Lease, confirmation of a joint plan, and the state court litigation. The

10  state court litigation would likely be pending for one to two years. The cost of attorneys' fees on both

11  sides would be astronomical. Broadway's efforts to delay foreclosure could fail and Archway could

12  foreclose on the Broadway Building. This would wipe out value for all of the Debtors' creditors. In a

13  foreclosure, the Broadway Building likely sells for a credit bid that will leave well over $10 million

14  in deficiency claims that would then consume the collateral pledged by the other Debtors and

15  overwhelm the pool of unsecured claims. With the value created by the Settlement for the Broadway

16  Building, the Broadway Building and Archway's other collateral can continue to generate income for

17  the Debtors' estates and fund plan payments on a joint plan that can be confirmed in the coming

18  months.

19  **VI.    <u>CONCLUSION</u>**

20          The Debtors' Cases have been long and difficult. If this Settlement proposed by this Motion is

21  approved, creditor recovery will be maximized and Broadway has an opportunity to capture equity.

22  The Debtors', with the support of Archway, ask the Court to approve the Settlement, authorize the

23  Debtors to enter into the Settlement Documents, and set these Cases on a path to confirmation.

24  Dated:  July 10, 2025                    WEINTRAUB ZOLKIN TALERICO & SELTH LLP

25

26                                          By:    _/s/ Derrick Talerico_____
                                                   Derrick Talerico
27                                          Attorneys for Debtors Broadway Avenue Investments, LLC,
                                            SLA Investments, LLC, and Negev Investments, LLC
28                        -and-

SAUL EWING LLP

By:_____
        Zev Shechtman
Attorneys for Debtors Alan Gomperts, Daniel Halevy, and
Susan Halevy

## DECLARATION OF ALAN D. GOMPERTS

I, Alan D. Gomperts, hereby declare as follows:

1.      I am the managing member of Seaton Investments, LLC. I am a manager of Broadway Avenue Investments, LLC and SLA Investments, LLC. I am an authorized representative of Colyton Investments, LLC, and Negev Investments, LLC.

2.      I make this declaration in support of the Debtors' *Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC Under Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion").  Terms not defined herein shall have the same meanings ascribed to them in the Motion.

3.      On May 5, 2025, the Parties met to finalize material terms of a global settlement. That meeting was successful, and the Parties agreed to the material terms necessary to allow Archway to support a proposed lease at of the Broadway Building. The material terms of the Parties' settlement (subject to, and as more specifically set forth within, the Settlement Documents) are as follows:

- Debt. Archway's debt is composed of (i) principal; (ii) contract interest through the date of settlement; and (iii) fees, including attorneys' fees, and costs. Default interest will be waived, subject to default provisions.

- Lease. Broadway enters lease (the "VBH Lease") with View Behavioral Health, LLC ("VBH");

  - a.  Rent Lock Box / DACA to collect rents with disbursements as agreed by the Parties;

  - b.  SNDA signed by Archway;

  - c.  Jack Stephens provides "bad boy" guaranty;

- Interest. Interest at 7% with forbearance on accrual and payment until the VBH Lease payments begin;

- Canon. Sue Halevy to market and sell Canon Property, and Archway to remove the *lis pendens* on the Canon property. The sale proceeds from the sale of Canon shall be distributed to a reserve account to be used for VBH Lease commitments, except for an

1  agreed-upon carve-out which shall be released to Sue Halevy for restructuring and/or

2  living expenses for herself and Daniel Halevy as she deems appropriate.

3  • <u>Collateral</u>.

4      a. Archway maintains all existing liens on collateral, including real property:

5      Broadway Ave; S. Los Angeles Street; Foxdale Drive; Greenfield Ave; Palm

6      Drive; Horner Street.

7      b. New collateral: Canfield (Alan Gomperts); Bagley (Alan Gomperts); 50%

8      interest in Roxbury (Sue Halevy).

9  • <u>Tiered Foreclosure</u>. In the event of a default, Archway may proceed to foreclose against

10     collateral in three tiers, without foreclosing from property in a successive tier until first

11     conducting non-judicial foreclosure auctions of all properties in the prior tier:

12     a. Tier 1: Broadway, S. Los Angeles, Foxdale/Negev

13     b. Tier 2: Greenfield, Palm, Bagley, Canfield, Roxbury

14     c. Tier 3: Horner

15  4.    These material terms are not the exclusive terms of the Parties' settlement, which will

16  be set forth in full in the Settlement Documents. The Settlement Documents are anticipated to include

17  the following documents (the "Settlement Documents"):

18  • Master Settlement Agreement;

19  • A-Note;

20  • B-Note;

21  • Memorandum of Modification, notarized for recording purposes;

22  • Alan/Sue Guaranty;

23  • Canfield Deed of Trust;

24  • Bagley Deed of Trust;

25  • Roxbury Deed of Trust;

26  • Roxbury Pledge;

27  • Roxbury UCC-1;

28  • Broadway/VBH Lease;

- SNDA;
- Bad Boy Guaranty;
- Rent Lock Box Account Agreement;
- Rent Lock Box Account Pledge Agreement;
- DACA;
- Canon Sale Listing Agreement;
- Canon Sale Proceeds Reserve Account Agreement;
- Canon Sale Proceeds Reserve Account Pledge Agreement;
- Canon Sale Proceeds Reserve Account DACA; and
- Stipulation for Entry of Judgment.

5. Debtors and Archway toiled in good faith over many months through counsel and at times directly to negotiate every aspect of the settlement. The settlement is a hard-earned compromise that is reasonable, fair, equitable, and in the best interest of creditors and the Debtors' estates. The alternative to the If approved, the Settlement will resolve a multitude of complex and uncertain litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of July, 2025, at Los Angeles, California.

ALAN GOMPERTS

16

## DECLARATION OF DERRICK TALERICO

I, Derrick Talerico, hereby declare as follows:

1.      I am an attorney duly admitted to practice law in the state of California and am admitted inter alia to the United States District Court for the Central District of California, and therefore to practice in the United States Bankruptcy Court for the Central District of California. I have personal knowledge of the facts stated herein and knowledge based on business records of my law practice and of my law firm Weintraub Zolkin Talerico & Selth LLP (the "Firm").

2.      I am the general bankruptcy counsel for Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), and Negev Investments, LLC ("Negev;" and, collectively with Broadway, and SLA, the "Corporate Debtors"), the above-captioned corporate chapter 11 debtors and debtors-in-possession.

3.      I make this declaration in support of the Debtors' *Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC Under Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion").  Terms not defined herein shall have the same meanings ascribed to them in the Motion.

4.      The Settlement Documents are not filed with this Motion as Archway is drafting the Settlement Documents and has not yet presented the drafts to the Debtors. Broadway expects to receive the Master Settlement Agreement on July 10 and the remainder of the Settlement Documents the week of July 14. Broadway expects the Settlement Documents can be negotiated and finalized prior to the scheduled August 19 hearing on this Motion and filed with the Court in a supplement declaration in support of the Motion. This Motion is presented now, due to the dual exigencies of demonstrating a viable restructuring and commitment to settlement to the Court and also demonstrating the Parties' commitment to VBH.

5.      As it applies to this compromise, the "litigation" at issue would be (i) state court litigation concerning the David Halevy Estate; (ii) approval of the VBH Lease; and (iii) opposition to a plan of reorganization. The litigation required absent the Settlement would be particularly complex.

6.      There are two proceedings in state court:  administration of the David Halevy Estate and an action commenced by Archway following the dismissal of an action first brought in this Case

17

concerning the nature of the community assets of Sue and David Halevy, the Halevy Trust, and in particular, the Canon Property. Sue Halevy contends the Canon Property is appropriately owned by Canon LLC (wholly owned by Sue Halevy) or belongs in the bankruptcy estate of Sue Halevy directly. Archway argues the Canon Property should be administered for its benefit in the probate estate of David Halevy. Sue Halevy holds that Canon was transferred to Canon LLC pre-petition in exchange for fair value (100% ownership of Canon LLC) and as such, she has the authority to dissolve Canon LLC and absorb Canon directly into her bankruptcy estate should she choose to do so. Archway contends that Canon was jointly owned by David and Sue Halevy, and as such it could not be owned by Sue Halevy or Canon LLC until it is administered through David Halevy's probate estate for the benefit of his creditors (namely Archway). Archway is also pursuing causes of action for breach of fiduciary duty and fraudulent intent to transfer, among others. Sue Halevy has yet to file counter claims in but would challenge the right of Archway to enforce certain of its liens. This litigation will require months of discovery and motion practice and involve complex issues of ownership and examination of the history of the loans and transactions among the Parties.

7.     Litigation over the approval of the VBH Lease will also be complex. As the Court has already seen from earlier litigation involving Broadway's efforts to obtain lease approval, Archway has employed a meticulous examination and attack on Broadway's lease proposals. Although Broadway has negotiated a lease with VBH that does not involve all of the same issues Archway raised in opposition to prior Broadway lease efforts, the litigation on a motion to approve the current proposed tenant will not be routine. The Debtors are certain Archway's opposition to the current proposed tenant and lease will require numerous depositions and an evidentiary hearing with reems of documents and expert testimony.

8.     Whether the VBH Lease precedes confirmation of a plan or is part of a plan, confirmation litigation is also expected to be laborious in both the discovery that will be required in advance of confirmation and the confirmation hearing itself. The Parties can be expected to litigate over the value of every component of Archway's collateral – which also relates to the Canon Action, the degree to which Archway is under or over secured as applied across the Debtors' estates, the

amount of post-petition interest and attorneys' fees Archway is entitled to, if any, and the feasibility of the plan, among other issues.

9.      The state court litigation is currently stayed informally while the Parties have been negotiating this Settlement. But should this Settlement fall through or not be approved by the Court, the hold on the State Court litigation will dissolve and the Canon litigation will expand. How this litigation might resolve is entirely uncertain. Although the Debtors believe they are more likely to prevail, Archway similarly favors its prospects of success. As such, a neutral assessment of the litigation – as it currently stands – would likely conclude all matters in dispute cannot be assessed other than as 50/50 propositions. Considering the uncertainty of outcome of all of the litigation at hand and yet to come, resolving all of these matters to avoid the risk of success or failure weighs heavily in favor of approval of the Settlement.

10.      The Settlement is the gateway to a plan that can maximize return to creditors. Without the Settlement, the results for creditors could be devastating. The Debtors anticipate many months of intense litigation over the VBH Lease, confirmation of a joint plan, and the state court litigation. The state court litigation would likely be pending for one to two years. The cost of attorneys' fees on both sides would be astronomical. Broadway's efforts to delay foreclosure could fail and Archway could foreclose on the Broadway Building. This would wipe out value for all of the Debtors' creditors. In a foreclosure, the Broadway Building likely sells for a credit bid that will leave well over $10 million in deficiency claims that would then consume the collateral pledged by the other Debtors and overwhelm the pool of unsecured claims. With the value created by the Settlement for the Broadway Building, the Broadway Building and Archway's other collateral can continue to generate income for the Debtors' estates and fund plan payments on a joint plan that can be confirmed in the coming months.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 10th day of July, 2025, at Los Angeles, California.

DERRICK TALERICO

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*):  Declaration of Auriel Streit in Support of Debtors **Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC Under Rule 9019 of the Federal Rules of Bankruptcy Procedure; Declarations of Alan D. Gomperts and Derrick Talerico in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 10, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF Service List

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 10, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent Zurzolo                    (via Priority Mail)
United States Bankruptcy Court
255 E Temple St Suite 1360
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 10, 2025 | Martha E. Araki | /s/ Martha E. Araki |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Seaton Investments, LLC – Jointly Administered

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Attorneys for Corporate Debtors Seaton Investment, LLC, Colyton Investments, LLC, Broadway Avenue Investments, LLC, Negev Investments, LLC, SLA Investments, LCC.: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- Attorneys for Individual Debtors Alan Gomperts, Daniel Halevy, Susan Haley: **Zev Shechtman, Carol Chow, Turner Falk, Ryan Coy**: zev.shechtman@saul.com; zshechtman@ecf.inforuptcy.com; carol.chow@saul.com; easter.santamaria@saul.com; turner.falk@saul.com; ryan.coy@saul.com
- Attorneys for Creditor First Foundation Bank: **Scott R Albrecht**: scott.albrecht@sgsattorneys.com; jackie.nguyen@sgsattorneys.com
- Attorneys for Creditor Korth Direct Mortgage, Inc.: **Garrick Vanderfin, Tanya Behnam**: gvanderfin@polsinelli.com, tbehnam@polsinelli.com; tanyabehnam@gmail.com; ladocketing@polsinelli.com; zyoung@polsinelli.com; ccripe@polsinelli.com
- Attorneys for Creditor Los Angeles County Treasurer and Tax Collector: **Jacquelyn H Choi**: jacquelyn.choi@rimonlaw.com; docketingsupport@rimonlaw.com
- Attorneys for Creditor United States of America on behalf of the Internal Revenue Service: **Robert F Conte**: robert.conte@usdoj.gov; caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- Courtesy NEF/Interested Party: **Christopher Cramer**: secured@becket-lee.com
- Attorneys for Creditor Harvest Small Business Finance, LLC: **Christopher Crowell**: ccrowell@hrhlaw.com
- Attorneys for Creditors Archway Real Estate Income Fund I SPE I, LLC, Archway Broadway Loan SPE, LLC, fka Archway Real Estate Income Fund I REIT, LLC, Archway Real Estate Income Fund, and Plaintiff Archway Broadway Loan SPE, LLC: **Michael G. Fletcher, Bruce D. Poltrock, Paige Selina Poupart, Gerrick Warrington**: mfletcher@frandzel.com; ppoupart@frandzel.com; gwarrington@frandzel.com; bpoltrock@frandzel.com; sking@frandzel.com; achase@frandzel.com
- Attorneys for Creditors NewRez LLC d/b/a Shellpoint Mortgage Servicing, Wells Fargo National Bank West: **Todd S Garan**: ch11ecf@aldridgepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- Attorneys for Creditor Los Angeles County Treasurer and Tax Collector: **Richard Girgado**: rgirgado@counsel.lacounty.gov
- Attorneys for Creditor Harvest Small Business Finance, LLC: **Jacqueline L James**: jjames@buchalter.com; gvidales@buchalter.com
- Courtesy NEF/Interested Party Avi Muhtar: **Avi Edward Muhtar**: amuhtar@crownandstonelaw.com
- Attorneys for Creditor UrbanLime Real Estate: **Lovee D Sarenas**: lovee.sarenas@dinsmore.com; wendy.yones@dinsmore.com
- Attorneys for Creditor AIRE Ancient Baths Los Angeles, LLC: **David B Shemano**: dshemano@shemanolaw.com
- Attorneys for Creditor Wells Fargo Bank, N.A.: **Jennifer C Wong**: bknotice@mccartyholthus.com; jwong@ecf.courtdrive.com
- US Trustee's Office: ustpregion16.la.ecf@usdoj.gov; **Kelly L. Morrison**: Kelly.l.morrison@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**