## PROMISSORY NOTE
### (California)

**US $805,000.00**                                                                          **June 15, 2016**

FOR VALUE RECEIVED, the undersigned, **DANIEL HALEVY** (together with such party's or parties' successors and assigns, "**Borrower**"), jointly and severally (if more than one) promises to pay to the order of **ATHAS CAPITAL GROUP, INC., a California corporation**, the principal sum of **EIGHT HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $805,000.00)**, with interest on the unpaid principal balance, as hereinafter provided.

1.      **Defined Terms.**

(a)      In addition to defined terms found elsewhere in this Note, as used in this Note, the following definitions shall apply:

**Adjustable Interest Rate**:  From the Disbursement Date to and excluding the First Rate Change Date, the Adjustable Interest Rate shall be **8.99 percent (8.99%)** per annum.  From and after each Rate Change Date until the next Rate Change Date, the Adjustable Interest Rate shall be the sum of (i) the Current Index, and (ii) the Margin, subject to the Interest Rate Limitations.

**Business Day**:  Any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

**Current Index**:  The published Index that is effective forty-five (45) days before the applicable Rate Change Date.

**Default Rate**:  The rate of **eighteen percent (18%)** per annum.  However, at no time will the Default Rate exceed the Maximum Interest Rate.

**Disbursement Date**:  The date of the initial disbursement of Loan proceeds hereunder.

**First Payment Change Date: August 1, 2019**.

**First Payment Due Date: August 1, 2016**.

**First Rate Change Date: July 1, 2019**.

**Indebtedness**:  The principal of, interest on, or any other amounts due at any time under, this Note, the Mortgage (other than the Environmental Indemnity) or any other Loan Document (other than any guaranty), including prepayment premiums, late charges, default interest, and advances to protect the security of the Mortgage under Section 12 of the Mortgage or any other applicable provision of the Mortgage or any other Loan Document or as permitted by law.

**Index**:  The average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market, commonly known as "Six Month LIBOR", as published by *The Wall Street Journal.* If the Index or the information to calculate the Index or Current Index becomes unavailable, Lender will choose a new Index and Current Index based upon comparable information.  The selection of an alternate Index and Current Index shall be made in Lender's sole discretion.  Lender will give Borrower notice of such selection.

Prepared by LoanDocSolutions®
California Promissory Note

**EXHIBIT 1**

**Interest Rate Limitations**: The Adjustable Interest Rate on the First Rate Change Date shall not be greater than **10.99 percent (10.99%)** per annum nor less than **8.99 percent (8.99%)** per annum. After the First Rate Change Date, and throughout the remaining term of this Note: (A) the Adjustable Interest Rate will never be increased or decreased on any single Rate Change Date by more than **1 percent (1%)** from the Adjustable Interest Rate previously in effect; and (B) the Adjustable Interest Rate will never be greater than **14.99 percent (14.99%)** per annum nor less than **8.99 percent (8.99%)** per annum. Such interest rate limitation shall not be deemed to limit the Default Rate at any time such Default Rate is applicable pursuant to Section 8.

**Lender**: The holder(s) from time to time of this Note.

**Loan**: The loan evidenced by this Note.

**Margin**: **7.95 percent (7.95%)**.

**Maturity Date**: The earlier of (i) **July 1, 2046**, and (ii) the date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document.

**Maximum Interest Rate**: The rate of interest that results in the maximum amount of interest allowed by applicable law.

**Mortgage**: That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of the date of this Note, executed by Borrower to or for the benefit of Lender and securing this Note, which Mortgage encumbers certain real property commonly known as **8561 Horner Street, Los Angeles, CA 90035**.

**Original Amortization Period**: A period of **three hundred sixty (360)** full consecutive calendar months.

**Payment Change Date**: The first day of the month following each Rate Change Date until this Note is repaid in full.

**Payment Due Date**: The First Payment Due Date and any subsequent date on which a monthly installment of interest or principal and interest is due and payable pursuant to Section 3.

**Prepayment Premium End Date**: **July 1, 2019**.

**Prepayment Premium Period**: The period during which, if a prepayment of principal occurs, a prepayment premium will be payable by Borrower to Lender. The Prepayment Premium Period is the period from the Disbursement Date to and excluding the Prepayment Premium End Date.

**Property Jurisdiction**: The jurisdiction in which the Land is located.

**Rate Change Date**: The First Rate Change Date and that day of the month every **sixth (6th)** month thereafter until this Note is repaid in full.

**Remaining Amortization Period**: As of the applicable Payment Change Date, the Original Amortization Period minus the number of scheduled monthly installments of principal and interest that have elapsed since the date of this Note prior to the Payment Change Date.

(b)    "**Event of Default**" and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Mortgage.

**EXHIBIT 1**
Page 15

2.      **Address for Payment.** All payments due under this Note shall be payable at **FCI LENDER SERVICES, INC., P.O. Box 27370, Anaheim, CA 92809-0112**, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

3.      **Payments.**

(a)      Interest will accrue on the outstanding principal balance of this Note at the Adjustable Interest Rate, subject to the provisions of Section 8.

(b)      Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Each monthly payment of principal and interest will first be applied to pay in full interest due, and the balance of the monthly payment paid by Borrower will be credited to principal.

(c)      Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Disbursement Date. If the Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date. The Payment Due Date for the first monthly installment payment under Section 3(d) of interest only or principal and interest, as applicable, will be the First Payment Due Date set forth in Section 1(a). Except as provided in this Section 3(c) and in Section 10, accrued interest will be payable in arrears.

(d)      Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, principal and accrued interest shall be payable by Borrower in consecutive monthly installments due and payable on the first day of each calendar month. The amount of the initial monthly installment of principal and interest payable pursuant to this Section 3(d) shall be **SIX THOUSAND FOUR HUNDRED SEVENTY-ONE AND 42/100 DOLLARS (U.S. $6,471.42).** The amount of the monthly installment of principal and interest payable pursuant to this Section 3(d) shall change each time the Adjustable Interest Rate changes, commencing on the First Payment Change Date and on each subsequent Payment Change Date. The new monthly installment of principal and interest commencing on each Payment Change Date until the next Payment Change Date shall be calculated so as to equal the monthly payment amount which would be required to repay the unpaid principal balance of this Note as of the first day of the month immediately preceding the Payment Change Date at the Adjustable Interest Rate, in equal consecutive monthly payments, commencing with the Payment Change Date, over the Remaining Amortization Period.

(e)      All remaining Indebtedness, including all principal and interest, shall be due and payable by Borrower on the Maturity Date. All payments under this Note shall be made in immediately available U.S. funds. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any accrued interest remaining past due for **thirty (30)** days or more, at Lender's discretion, may be added to and become part of the unpaid principal balance of this Note and any reference to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Any amount added to principal pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of principal and interest. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of **$25.00** (but not more than the maximum amount allowed by law) for each such event.

(f)      Lender shall provide Borrower with notice of the amount of each monthly installment due under this Note. However, if Lender has not provided Borrower with prior notice of the monthly payment due on any Payment Due Date, then Borrower shall pay on that Payment Due Date an amount equal to the monthly installment payment for which Borrower last received notice. If Lender at any time determines that Borrower has paid one or more monthly installments in an incorrect amount because of the operation of the preceding sentence, or because Lender has miscalculated the Adjustable Interest Rate or has otherwise miscalculated the amount of any monthly installment, then Lender shall give notice to Borrower of such determination. If such determination discloses that Borrower has paid less than the full amount due for the period for which the determination was made, Borrower, within **thirty (30)** calendar days after receipt of the notice from Lender, shall pay to Lender the full amount of the deficiency. If such determination discloses that Borrower has paid more than the full amount due for the period for which the determination was made, then the amount of the overpayment shall be credited to the next installment(s) of

**EXHIBIT 1**
Page 16

interest only or principal and interest, as applicable, due under this Note (or, if an Event of Default has occurred and is continuing, such overpayment shall be credited against any amount owing by Borrower to Lender).

(g)     In accordance with Section 14, interest charged under this Note cannot exceed the Maximum Interest Rate If the Adjustable Interest Rate at any time exceeds the Maximum Interest Rate, resulting in the charging of interest hereunder to be limited to the Maximum Interest Rate, then any subsequent reduction in the Adjustable Interest Rate shall not reduce the rate at which interest under this Note accrues below the Maximum Interest Rate until the total amount of interest accrued hereunder equals the amount of interest which would have accrued had the Adjustable Interest Rate at all times been in effect.

**4.     Application of Payments.**  If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

**5.     Security.**  The Indebtedness is secured by, among other things, the Mortgage and reference is made to the Mortgage for other rights of Lender as to collateral for the Indebtedness.  The Mortgage contains the following provision which provides for the acceleration of the Indebtedness upon certain Transfers:

> **"21.     TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER [NO RIGHT TO TRANSFER].**
>
> (a)     **"Transfer"** means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity.  For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.
>
> (b)     "Transfer" does not include: (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the Bankruptcy Code, or (iii) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.
>
> (c)     The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of this Section 21 to the contrary:
>
> (i)     a Transfer to which Lender has consented;
>
> (ii)    a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person;
>
> (iii)   the grant of a leasehold interest in an individual dwelling unit, so long as such leasehold interest (A) is for a term of two years or less, (B) does not contain an option to purchase and (C) is otherwise in accordance with the terms of this Instrument;
>
> (iv)    a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender;
>
> (v)     the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within 60 days of the date of creation; and
>
> (vi)    if Borrower is a housing cooperative, corporation or association, the Transfer of more than 49 percent of the shares in the housing cooperative or the assignment of more than 49 percent of the occupancy agreements or leases relating thereto by tenant shareholders of the housing cooperative or association to other tenant shareholders.

**EXHIBIT 1**

(d)      The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(i)      a change of Borrower's name, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

(ii)     a change of the form of Borrower not involving a transfer of Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that: (A) UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender, (B) Lender has been provided, in advance, for Lender's review and approval, all proposed filings, amendments and other documents pertaining to such change in form, and (C) Borrower shall pay for attorneys' fees, and other out of pocket costs of Lender for the review of such documents and any filings, including any title endorsement costs if Lender in its discretion requires an endorsement or endorsements to Lender's title policy;

(iii)    the merger of Borrower with another entity when Borrower is the surviving entity,

(iv)     a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person; and

(v)      the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses, including Attorneys' Fees and Costs, incurred by Lender in connection with reviewing Borrower's request.

(e)      The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(i)      a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in Section 16 of this Instrument);

(ii)     if Borrower is a limited partnership, a Transfer of (A) any general partnership interest, or (B) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

(iii)    if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

(iv)     if Borrower is a limited liability company, (A) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (B) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (C) a change of a nonmember manager;

(v)      if Borrower is a corporation, (A) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (B) if the outstanding voting stock in Borrower is held by 100 or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of 5% or more of that stock;

(vi)     if Borrower is a trust, (A) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, (B) the termination or revocation of the trust, or (C) the removal, appointment or substitution of a trustee of Borrower; and

(vii)    a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of Sections 21(e)(i) through (vi) above.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21."

6.      **Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Section 10, and all other amounts payable under this Note and any

**EXHIBIT 1**
Page 18

other Loan Document, shall at once become due and payable, at the option of Lender, without any prior notice to Borrower (except if notice is required by applicable law, then after such notice).  Lender may exercise this option to accelerate regardless of any prior forbearance.  For purposes of exercising such option, Lender shall calculate the prepayment premium as if prepayment occurred on the date of acceleration.

**7.      Late Charge.**

(a)      If any installment of interest or principal and interest or other amount payable under this Note, the Mortgage or any other Loan Document is not received in full by Lender within **five (5)** days after the installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to **ten percent (10%)** of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted).

(b)      Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses.  Borrower agrees that the late charge payable pursuant to this Section 7 represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment.  The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 8.

**8.      Default Rate.**

(a)      So long as (i) any monthly installment under this Note remains past due for **thirty (30)** days or more or (ii) any other Event of Default has occurred and is continuing, then notwithstanding anything in Section 3 to the contrary, interest under this Note shall accrue on the unpaid principal balance from the Payment Due Date of the first such unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at the Default Rate.

(b)      From and after the Maturity Date, the unpaid principal balance and all accrued interest shall continue to bear interest at the Default Rate until and including the date on which the entire principal balance is paid in full.

(c)      Borrower acknowledges that (i) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (ii) during the time that any monthly installment under this Note is delinquent for **thirty (30)** days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (iii) it is extremely difficult and impractical to determine those additional costs and expenses.  Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for **thirty (30)** days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk.  Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan.  During any period that the Default Rate is in effect the additional interest accruing over and above the rate provided for in Section 1(a) shall be immediately due and payable in addition to the regularly scheduled principal and interest payments.

**9.      Full Recourse Personal Liability.**  Borrower shall have full recourse personal liability under this Note, the Mortgage and all other Loan Documents for the repayment of the Indebtedness and for the payment and performance of any and all other obligations of Borrower under this Note, the Mortgage and all other Loan Documents.

**10.      Voluntary and Involuntary Prepayments.**

(a)      Any receipt by Lender of principal due under this Note prior to the Maturity Date, other than principal required to be paid in monthly installments pursuant to Section 3, constitutes a prepayment of principal under this Note.  Without limiting the foregoing, any application by Lender, prior to the Maturity Date, of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note constitutes a prepayment under this Note.

**EXHIBIT 1**

(b)      Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Payment Due Date so long as Borrower designates the date for such prepayment in a notice from Borrower to Lender given at least **thirty (30)** days prior to the date of such prepayment. If a Payment Due Date (as defined in Section 1(a)) falls on a day which is not a Business Day, then with respect to payments made under this Section 10 only, the term "Payment Due Date" shall mean the Business Day immediately preceding the scheduled Payment Due Date.

(c)      Notwithstanding Section 10(b), Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day other than a Payment Due Date if Borrower provides Lender with the notice set forth in Section 10(b) and meets the other requirements set forth in this Section 10(c). Borrower acknowledges that Lender has agreed that Borrower may prepay principal on a Business Day other than a Payment Due Date only because Lender shall deem any prepayment received by Lender on any day other than a Payment Due Date to have been received on the Payment Due Date immediately following such prepayment and Borrower shall be responsible for all interest that would have been due if the prepayment had actually been made on the Payment Due Date immediately following such prepayment.

(d)      Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "**Partial Prepayment**") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to Section 10(e), based on the amount being prepaid, shall be due and payable to Lender upon demand. In order to voluntarily prepay all or any part of the principal of this Note, Borrower must also pay to Lender, together with the amount of principal being prepaid, (i) all accrued and unpaid interest due under this Note, plus (ii) all other sums due to Lender at the time of such prepayment, plus (iii) any prepayment premium calculated pursuant to Section 10(e), to the extent such prepayment premium does not exceed the Maximum Interest Rate.

(e)      Except as provided in Section 10(f), a prepayment premium shall be due and payable by Borrower in connection with any prepayment of principal under this Note during the Prepayment Premium Period. The prepayment premium shall be **five percent (5%)** of the amount of principal being prepaid for any prepayments occurring during the Prepayment Premium Period.

(f)      Notwithstanding any other provision of this Section 10, no prepayment premium shall be payable with respect to (i) any prepayment made after the expiration of the Prepayment Premium Period or (ii) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Mortgage.

(g)      Unless Lender agrees otherwise in writing, a permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments.

(h)      Borrower recognizes that any prepayment of any of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from an Event of Default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in this Note represents a reasonable estimate of the damages Lender will incur because of a prepayment. Borrower further acknowledges that any prepayment premium provisions of this Note are a material part of the consideration for the Loan, and that the terms of this Note are in other respects more favorable to Borrower as a result of Borrower's voluntary agreement to the prepayment premium provisions.

11.      **Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay: (a) all expenses and costs, including Attorneys' Fees and Costs incurred by Lender or any Loan Servicer as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents (whether or not any lawsuit or other proceeding is instituted), including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding; and (b) all expenses and costs, including Attorneys' Fees and Costs, incurred by Lender or any Loan Servicer in connection with the servicing of the Loan, including without limitation responding to requests from Borrower, and expenses and costs incurred in connection with potential defaults or other legal questions regarding the Loan

**12.     Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Mortgage, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

**13.     Waivers.** Borrower and all endorsers and guarantors of this Note and all other third party obligors waive presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness and any other amount due under any of the Loan Documents.

**14.     Loan Charges.** Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the Maximum Interest Rate. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of this Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of this Note.

**15.     Purpose of Indebtedness.** Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for agricultural, personal, family, or household purposes.

**16.     Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

**17.     Governing Law.** This Note shall be governed by the laws of the Property Jurisdiction.

**18.     Construction.** The captions and headings of the Sections of this Note are for convenience only and shall be disregarded in construing this Note. Any reference in this Note to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Note or to a Section of this Note. All Exhibits attached to or referred to in this Note are incorporated by reference in this Note. Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Note includes the plural and use of the plural includes the singular. As used in this Note, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Note shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Note or any other Loan Document), and (b) any reference in this Note to any Person shall be construed to include such Person's successors and assigns.

**19.     Notices; Written Modifications.**

(a)     All notices, demands and other communications required or permitted to be given pursuant to this Note shall be given in accordance with Section 31 of the Mortgage.

(b)     Any modification or amendment to this Note shall be ineffective unless in writing signed by the party sought to be charged with such modification or amendment.

**EXHIBIT 1**
Page 21

20.    **Consent to Jurisdiction and Venue.**  Borrower agrees that any controversy arising under or in relation to this Note may be litigated in the Property Jurisdiction.  The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies that shall arise under or in relation to this Note. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise. However, nothing in this Note is intended to limit any right that Lender may have to bring any suit, action or proceeding relating to matters arising under this Note in any court of any other jurisdiction.

21.    **Counterparts.**  This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

22.    **California Law Provisions.**  If a guarantor is liable for only a portion of the Indebtedness, Borrower hereby waives its rights under California Civil Code Section 2822(a) to designate the portion of the Indebtedness that shall be satisfied by Borrower's partial payment.

**IN WITNESS WHEREOF**, and in consideration of Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered by its duly-authorized representative under seal (where applicable).  Where applicable law so provides or allows, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

BORROWER:

DANIEL HALEVY

**EXHIBIT 1**
Page 22

## CALIFORNIA PREPAYMENT PREMIUM WAIVER
### (Waiver of California Civil Code Section 2954.10)

This CALIFORNIA PREPAYMENT PREMIUM WAIVER ("**Agreement**") is made as of **June 15, 2016**, in connection with a real estate loan to be made by **ATHAS CAPITAL GROUP, INC., a California corporation**, its successors and/or assigns ("**Lender**") to **DANIEL HALEVY** ("**Borrower**"), which loan shall be evidenced by a Promissory Note of even date herewith in the amount of **EIGHT HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $805,000.00)** (the "**Note**") and secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith (the "**Mortgage**") upon the real property located at **8561 Horner Street**, **Los Angeles, CA 90035**. All capitalized terms used herein and not otherwise defined herein shall have the meaning set forth in the Mortgage.

1.      Borrower is aware of and understands California Civil Code Section 2954.10, which provides as follows:
"**2954.10.    Acceleration of maturity date; penalty for prepayment.**    An obligee which accelerates the maturity date of the principal and accrued interest, pursuant to contract, on any loan secured by a mortgage or deed of trust on real property or an estate for years therein, upon the conveyance of any right, title, or interest in that property, may not claim, exact, or collect any charge, fee, or penalty for any prepayment resulting from that acceleration.
The provisions of this section shall not apply to a loan other than a loan secured by residential real property or any interest therein containing four units or less, in which the obligor has expressly waived, in writing, the right to repay in whole or part without penalty, or has expressly agreed, in writing, to the payment of a penalty for prepayment upon acceleration. For any loan executed on or after January 1, 1984, any such waiver or agreement shall be separately signed or initialed by the obligor and its enforcement shall be supported by evidence of a course of conduct by the obligee of individual weight to the consideration in that transaction for the waiver or agreement."

2.      Borrower has read and understands the provisions of the Note and Mortgage, including the provisions which provide, in general, that if the Note is accelerated because of the occurrence of any Event of Default (including without limitation any transfer or encumbrance of the Mortgaged Property without Lender's consent), the prepayment premium described in the Note will be imposed and collected upon prepayment of the loan. Borrower acknowledges that it understands and is familiar with the nature and effect of the Note and other Loan Documents, including the above-described provisions. Borrower further acknowledges that if any such Event of Default occurs, the resulting actual damages to Lender would be difficult to measure and that the payment of the prepayment premium described in the Note is a reasonable estimate of such damages. Borrower hereby initials below to indicate its understanding of these provisions, and specifically its waiver of the provisions of Section 2954.10 of the California Civil Code.

### BORROWER'S INITIALS: _DH_

3.      Borrower agrees that Lender will grant the subject loan to Borrower only if Borrower agrees to the loan acceleration and prepayment premium provisions set forth in the Note and to the waivers contained in this Agreement. Borrower further agrees and recites conclusively that Borrower and Lender each have given individual weight to the consideration given by Lender for this Agreement on the part of Borrower, which consideration is the granting of the subject loan described above.

4.      Furthermore, Borrower conclusively recites and agrees that with respect to the subject loan, the prepayment provisions described in the Note are reasonable, valid and also binding on Borrower, its successors and assigns, and this recitation and agreement may be conclusively relied upon by Lender and the successors and assigns of Lender.

5.      This Agreement may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Agreement.

**BORROWER:**

_____
**DANIEL HALEVY**

Prepared by LoanDocSolutions®
California Prepayment Premium Waiver
Loa█████████

**EXHIBIT 1**
Page 23

**Allonge to $ 805,000.00 Promissory Note dated June 15, 2016**
executed by **Daniel Halevy**, as Borrower
in favor of **ATHAS CAPITAL GROUP, INC., a California corporation**, as Lender

PAY TO THE ORDER OF **THE RAMA FUND, LLC, a California limited liability company**, WITHOUT RECOURSE

Dated as of:  June 21, 2016

ATHAS CAPITAL GROUP, INC.,
a California corporation

By:
Name:      Kevin O'Shaughnessy
Title:         COO

**EXHIBIT 1**
Page 24

# ALLONGE

LOAN NUMBER

BORROWERS(S)        : Daniel Halevy

PROPERTY ADDRESS    : 8561 Horner Street, Los Angeles, CA 90035

NOTE/LOAN AMOUNT    : $805,000.00

NOTE/LOAN DATE      : June 15, 2016

PAY TO THE ORDER OF: _____ WITHOUT RECOURSE

Dated as of: **September 2, 2016**

**THE RAMA FUND LLC,**
**a California limited liability company**

By _____

**Alim Kassam**

**Managing Member**

**EXHIBIT 1**

**This page is part of your document - DO NOT DISCARD**



**20160719122**



Pages:
0027

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/22/16 AT 08:00AM**

| | |
|---|---:|
| FEES: | 136.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 136.00 |

**EXHIBIT 2**

## FIDELITY NATIONAL TITLE

*RECORDING REQUESTED BY*
*AND WHEN RECORDED MAIL TO:*

ATHAS CAPITAL GROUP, INC.
26901 Agoura Road
Suite #250
Calabasas, CA 91301

Tax Parcel Number(s): 4303-032-017

Space Above for Recorder's Use

**DEED OF TRUST,**
**ASSIGNMENT OF RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

**(CALIFORNIA)**

ATTENTION COUNTY RECORDER: THIS INSTRUMENT IS INTENDED TO BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING PURSUANT TO SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE. PORTIONS OF THE GOODS COMPRISING A PART OF THE MORTGAGED PROPERTY ARE OR ARE TO BECOME FIXTURES RELATED TO THE LAND DESCRIBED IN EXHIBIT "A" HERETO. THIS INSTRUMENT IS TO BE FILED FOR RECORD IN THE RECORDS OF THE COUNTY WHERE DEEDS OF TRUST ON REAL PROPERTY ARE RECORDED AND SHOULD BE INDEXED AS BOTH A DEED OF TRUST AND AS A FINANCING STATEMENT COVERING FIXTURES. THE MAILING ADDRESSES OF BORROWER (DEBTOR) AND LENDER (SECURED PARTY) ARE SPECIFIED IN PARAGRAPH A OF THIS INSTRUMENT.

A. THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Instrument**") is dated as of **June 15, 2016**, and is given by **DANIEL HALEVY, a married man as his sole and separate property**, whose address is **133 South Palm Drive, Apt 5, Beverly Hills, CA 90212**, as trustor ("**Borrower**"), to **FIDELITY NATIONAL TITLE COMPANY, a California corporation**, as trustee ("**Trustee**"), for the benefit of **ATHAS CAPITAL GROUP, INC., a California corporation**, whose address is **26901 Agoura Road, Suite #250, Calabasas, CA 91301**, as beneficiary ("**Lender**").

B. Borrower in consideration of the Indebtedness and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the Mortgaged Property, including the Land located in **Los Angeles** County, State of **California** and described in Exhibit "A" attached to this Instrument.

C. TO SECURE TO LENDER the repayment of the Indebtedness evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on the earlier of (i) **July 1, 2046**, and (ii) the date on which the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise pursuant to the Loan

California Deed of Trust

**EXHIBIT 2**

Documents or the exercise by Lender of any right or remedy under any Loan Document (the "**Maturity Date**"), in the principal amount of **EIGHT HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $805,000.00)**, and all renewals, extensions and modifications of the Indebtedness, the payment of all sums advanced by or on behalf of Lender to protect the security of this Instrument under Section 12, and the performance of the covenants and agreements of Borrower contained in the Loan Documents (other than the Environmental Indemnity and any guaranty).

      D.      Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered, except as shown on the Schedule of Title Exceptions. Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

**Covenants.** In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

      1.      **DEFINITIONS.** The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

      (a)      "**Assignment**" means, collectively, the provisions of Sections 3 and 4 of this Instrument relating to the assignment of rents and leases affecting the Mortgaged Property.

      (b)      "**Attorneys' Fees and Costs**" means (i) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable (whether or not any lawsuit or other proceeding is instituted), including costs of Lender's and Loan Servicer's allocable costs of in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; and (iii) investigatory fees. As used in this Instrument and in the Note, "Attorneys' Fees and Costs" shall include those awarded by an appellate court.

      (c)      "**Bankruptcy Code**" means the United States Bankruptcy Code, 11 U.S.C. Section 101 <u>et seq.</u>, as amended from time to time.

      (d)      "**Borrower**" means all Persons identified as "Borrower" in paragraph A of this Instrument, together with their successors and assigns.

      (e)      "**Borrower Certificate**" means that certain Borrower Certificate dated the same date as this Instrument, executed by Borrower in favor of Lender.

      (f)      "**Collateral Agreement**" means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

      (g)      "**Controlling Entity**" means an entity which owns, directly or indirectly through one or more intermediaries, (A) a general partnership interest or a Controlling Interest of the limited partnership interests in Borrower (if Borrower is a partnership or joint venture), (B) a manager's interest in Borrower or a Controlling Interest of the ownership or membership interests in Borrower (if Borrower is a limited liability company), or (C) a Controlling Interest of any class of voting stock of Borrower (if Borrower is a corporation).

      (h)      "**Controlling Interest**" means (i) 51 percent or more of the ownership interests in an entity, or (ii) a percentage ownership interest in an entity of less than 51 percent, if the owner(s) of that interest actually direct(s) the business and affairs of the entity without the requirement of consent of any other party.

      (i)      "**Environmental Indemnity**" means, collectively, the provisions of Sections 18 and 51 of this Instrument.

      (j)      "**Environmental Permit**" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

      (k)      "**Event of Default**" means the occurrence of any event listed in Section 22.

      (l)      "**Fixtures**" means all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment;

California Deed of Trust                                          Page 2

**EXHIBIT 2**

fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves; microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(m)    "**Governmental Authority**" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property or over Borrower.

(n)    "**Hazardous Materials**" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

(o)    "**Hazardous Materials Laws**" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 et seq., the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., as amended by the Superfund Amendments Reauthorization Act of 1986, the Materials Transportation Act, 49 U.S.C. Section 1801 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

(p)    "**Impositions**" and "**Imposition Deposits**" are defined in Section 7(a).

(q)    "**Improvements**" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(r)    "**Indebtedness**" means the principal of, interest on, and all other amounts due at any time under, the Note, this Instrument (other than the Environmental Indemnity) or any other Loan Document (other than any guaranty), including prepayment premiums, late charges, default interest, and advances to protect the security of this Instrument under Section 12 of this Instrument or any other applicable provision of this Instrument or any other Loan Document or as permitted by law.

(s)    "**Initial Owners**" means, with respect to Borrower or any other entity, the Person(s) that (i) on the date of the Note, or (ii) on the date of a Transfer to which Lender has consented, own in the aggregate 100% of the ownership interests in Borrower or that entity.

(t)    "**Land**" means the land described in Exhibit "A".

(u)    "**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

(v)    "**Lender**" means the entity identified as "Lender" in paragraph A of this Instrument, or any subsequent holder of the Note.

(w)    "**Loan**" means the loan evidenced by the Note and secured by this Instrument.

(x)    "**Loan Documents**" means the Note, this Instrument, the Assignment, the Borrower Certificate, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Plans, and any other documents now or in the future executed by Borrower, any guarantor or any other Person in connection with the Loan, as such documents may be amended from time to time.

(y)    "**Loan Servicer**" means the entity that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to service the Loan

California Deed of Trust                                                                                                                   Page 3

**EXHIBIT 2**

for the benefit of Lender.  Unless Borrower receives notice to the contrary, the Loan Servicer is the entity identified as "Lender" in paragraph A of this Instrument.

(z)      "**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Loan; (12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all Imposition Deposits) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

(aa)     "**Mortgaged Property UCC Collateral**" means any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof.

(bb)     "**Note**" means the Promissory Note described in paragraph C of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

(cc)     "**O&M Plan**" shall have the meaning as defined in Section 18 of this Instrument.

(dd)     "**Person**" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

(ee)     "**Personalty**" means all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental

California Deed of Trust                                                                                                          Page 4

**EXHIBIT 2**
Page 30

permits relating to any activities on the Land and including subsidy or similar payments received from any sources, including a Governmental Authority; and (vii) any rights of Borrower in or under letters of credit.

(ff) "**Property Insurance**" is defined in Section 19.

(gg) "**Property Jurisdiction**" is defined in Section 30(a).

(hh) "**Rents**" means all rents, revenues and other income of the Land or the Improvements, whether now due, past due, or to become due, and deposits forfeited by tenants.

(ii) "**Schedule of Title Exceptions**" means title exceptions approved by Lender and shown in the schedule of exceptions to coverage in the title policy issued to Lender contemporaneously with the recordation of this Instrument and insuring Lender's interest in the Mortgaged Property.

(jj) "**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

(kk) "**Transfer**" is defined in Section 21.

2. **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**

(a) This Instrument is also a security agreement under the Uniform Commercial Code for the Mortgaged Property UCC Collateral, and Borrower, as debtor, hereby grants to Lender, as secured party, a security interest in the Mortgaged Property UCC Collateral. Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Without limiting the generality of the foregoing, Borrower authorizes Lender to file any financing statement that describes the collateral as "all assets" of Borrower, or words to similar effect. Borrower shall pay all filing costs and all costs and expenses of any record searches for financing statements and/or amendments that Lender may require. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the Mortgaged Property UCC Collateral. Unless Borrower gives notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower shall not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property UCC Collateral is stored, held or located. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Mortgaged Property UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

3. **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

(a) As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b) After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and

California Deed of Trust                 Page 5

**EXHIBIT 2**

payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures.  So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument.  From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid.  Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice.  Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.  Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c)  Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the Loan), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two months prior to the due dates of such Rents.  Borrower shall not collect or accept payment of any Rents more than two (2) months prior to the due dates of such Rents.

4.  **ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.**

(a)  As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.  It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases.  Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.  For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1.  However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)  Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend or terminate any Lease.  Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the preceding sentence to exercise all rights, power and authority under Leases shall automatically terminate.  Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)  Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements.  The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses.  Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property.  Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property.  The

California Deed of Trust                                                                                                      Page 6

**EXHIBIT 2**
Page 32

execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)        Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)        Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect. All Leases shall be on forms approved by Lender, shall be for initial terms of at least six months and not more than two years, and shall not include options to purchase.

(f)        Borrower shall not receive or accept Rent under any Lease for more than two (2) months in advance.

5.        **PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS; PREPAYMENT PREMIUM.** Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents. Borrower shall pay a prepayment premium in connection with certain prepayments of the Indebtedness, including a payment made after Lender's exercise of any right of acceleration of the Indebtedness, as provided in the Note.

6.        **FULL RECOURSE PERSONAL LIABILITY.** Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the payment and performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

7.        **DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.**

(a)        Unless this requirement is waived in writing by Lender, or as otherwise provided in this Section, Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount estimated by Lender to be sufficient to accumulate with Lender the entire sum required to pay, when due, the items marked "COLLECT" below, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate. Lender will not initially require Borrower to make Imposition Deposits with respect to any items marked "DEFERRED" or "NOT APPLICABLE" below.

| | |
|---|---|
| [COLLECT] | Property Insurance premiums or other insurance premiums required by Lender under Section 19 |
| [COLLECT] | Taxes |
| [DEFERRED] | water and sewer charges (that could become a lien on the Mortgaged Property) |
| [DEFERRED] | assessments or other charges (that could become a lien on the Mortgaged Property) |

The amounts deposited under the preceding sentence are collectively referred to in this Instrument as the **"Imposition Deposits"**. The obligations of Borrower for which the Imposition Deposits are required are collectively referred to in this Instrument as **"Impositions"**. The amount of the Imposition Deposits shall be sufficient to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added. Lender shall maintain records indicating how much of the monthly Imposition Deposits and how much of the aggregate Imposition Deposits held by Lender are held for the purpose of paying Taxes, insurance premiums and each other Imposition.

(b)        Imposition Deposits shall be held by Lender or in a bank, credit union or other financial institution designated by Lender. Lender shall apply the Imposition Deposits to pay Impositions so long as no Event of Default has occurred and is continuing. Unless applicable law requires, Lender shall not be required to pay Borrower any interest, earnings or profits on the Imposition Deposits. As additional security for all of Borrower's obligations under this Instrument (other than the Environmental Indemnity) and the other Loan Documents (other than any guaranty), Borrower hereby pledges and grants to Lender a security interest in the Imposition Deposits and all proceeds of, and all interest and dividends on, the Imposition Deposits. Any amounts deposited with Lender under this Section 7 shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Lender for that purpose under Section 7(e).

(c)        If Lender receives a bill or invoice for an Imposition, Lender shall pay the Imposition from the Imposition Deposits held by Lender. Lender shall have no obligation to pay any Imposition to the extent it exceeds Imposition Deposits then

California Deed of Trust                                                                                                           Page 7

**EXHIBIT 2**

held by Lender. Lender may pay an Imposition according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the Imposition.

(d)     If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender, plus at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, the excess shall be credited against future installments of Imposition Deposits. If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition is less than the amount reasonably estimated by Lender to be necessary, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, Borrower shall pay to Lender the amount of the deficiency within 15 days after notice from Lender.

(e)     If an Event of Default has occurred and is continuing, Lender may apply any Imposition Deposits, in any amounts and in any order as Lender determines, in Lender's discretion, to pay any Impositions or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Lender shall refund to Borrower any Imposition Deposits held by Lender.

(f)     If Lender does not collect an Imposition Deposit with respect to an Imposition either marked "DEFERRED" in Section 7(a) or pursuant to a separate written waiver by Lender, then at least thirty (30) days before the date each such Imposition is due, or on the date this Instrument requires each such Imposition to be paid, Borrower must provide Lender with proof of payment of each such Imposition for which Lender does not require collection of Imposition Deposits. Lender may revoke its deferral or waiver and require Borrower to deposit with Lender any or all of the Imposition Deposits listed in Section 7(a), regardless of whether any such item is marked "DEFERRED" in such section, upon notice to Borrower, (i) if Borrower does not timely pay any of the Impositions as required by this Instrument, (ii) if Borrower fails to provide timely proof to Lender of such payment as required by this Instrument, or (iii) at any time from and after the occurrence of an Event of Default or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

(g)     In the event of a Transfer prohibited by or requiring Lender's approval under Section 21, Lender's waiver or deferral of the collection of any Imposition Deposit in this Section 7 may be modified or rendered void by Lender at Lender's sole option and discretion by notice to Borrower and the transferee(s) as a condition of Lender's approval of such Transfer.

8.     **COLLATERAL AGREEMENTS.** Borrower shall deposit with Lender such amounts as may be required by any Collateral Agreement and shall perform all other obligations of Borrower under each Collateral Agreement.

9.     **APPLICATION OF PAYMENTS.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

10.     **COMPLIANCE WITH LAWS AND ORGANIZATIONAL DOCUMENTS.**

(a)     Borrower shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, fair housing, zoning and land use; and Leases. Borrower also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits.

(b)     Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 10.

(c)     Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property. Borrower represents and warrants to Lender that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.

(d)     Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the Property Jurisdiction.

(e)     If Borrower is not a natural person: (A) Borrower, and any Sub-Entity, shall maintain its existence as long as any portion of the Indebtedness remains unpaid; and (B) Borrower shall give written notice to Lender within ten (10) days after any dissolution or event triggering dissolution of Borrower or any Sub-Entity (which shall constitute an Event of Default under

California Deed of Trust                                                                                   Page 8

**EXHIBIT 2**
Page 34

clause (A) of this sentence).  As used in this Section 10, "Sub-Entity" shall include any managing or controlling entities, including any of the following that is not a natural person: (i) any manager or member of a limited liability company and any Sub-Entity thereof, (ii) any general partner of a general or limited partnership or limited liability partnership and any Sub-Entity thereof.  To the extent not in conflict with the provisions of this Instrument and the other Loan Documents, Borrower shall at all times comply with its organizational documents, including but not limited to its partnership agreement (if Borrower is a partnership), its by-laws (if Borrower is a corporation or housing cooperative corporation or association) or its operating agreement (if Borrower is a limited liability company, joint venture or tenancy-in-common).  If Borrower is not a natural person, then: (A) Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the state or commonwealth of Borrower's formation; (B) if the state or commonwealth of Borrower's formation is not the Property Jurisdiction, Borrower shall register or qualify as a foreign entity in the Property Jurisdiction and maintain such registration or qualification in good standing; (C) Borrower shall promptly provide Lender with copies of any amendments or supplements to Borrower's and any Sub-Entity's organizational documents; and (D) within ten (10) days after request by Lender, Borrower shall furnish evidence satisfactory to Lender that Borrower and any Sub-Entity is/are in good standing in its/their state(s) or commonwealth(s) of organization, and, if different, the Property Jurisdiction.

11.    USE OF PROPERTY.  Unless required by applicable law, Borrower shall not (a) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property was being used at the time this Instrument was executed, (b) convert any individual dwelling unit or common area to commercial use, (c) convert, in whole or in part, any non-residential income producing units to non-income producing units, (d) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (e) establish any condominium or cooperative regime with respect to the Mortgaged Property.  Borrower acknowledges that Lender has not agreed to grant any partial releases or reconveyances of any portion of the Mortgaged Property, and that the release and reconveyance of the lien of this Instrument shall only be granted by Lender upon full repayment of the Indebtedness.

12.    PROTECTION OF LENDER'S SECURITY.

(a)    If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (1) payment of fees and out of pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 19, (4) payment of amounts which Borrower has failed to pay under Sections 15 and 17, and (5) advances made by Lender to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "**Prior Lien**").

(b)    Any amounts disbursed by Lender under this Section 12, or under any other provision of this Instrument that treats such disbursement as being made under this Section 12, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "**Default Rate**", as defined in the Note.

(c)    Nothing in this Section 12 shall require Lender to incur any expense or take any action.

13.    INSPECTION.  Lender, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time.  Borrower shall within five (5) days after written request by Lender provide the name, phone number, address and email address of a contact person for Borrower or for a property management company managing the Mortgaged Property to arrange such inspection.  Such contact person shall meet Lender's inspector(s) at the Mortgaged Property at the time specified by Lender and shall provide Lender's inspector(s) with access to all areas of the Mortgaged Property as Lender's inspector's may require to complete such inspection.  At any time when an Event of Default has occurred and is continuing, the cost of such inspections shall be paid by Borrower upon written demand by Lender and if not paid within thirty (30) days after such written demand, and, until paid, shall be added to and constitute a part of the Indebtedness as provided in Section 12.

California Deed of Trust

Page 9

**EXHIBIT 2**

**14.   BOOKS AND RECORDS; FINANCIAL REPORTING.**

(a)   Borrower shall keep and maintain at all times at the Mortgaged Property or the management agent's offices, and upon Lender's request shall make available at the Mortgaged Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property, and copies of all written contracts, Leases, and other instruments which affect the Mortgaged Property. The books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b)   Borrower and any guarantor(s) (as applicable) shall furnish to Lender all of the following.

(1)   within 120 days after the end of each fiscal year of Borrower, a statement of income and expenses for Borrower and any guarantor(s) for that fiscal year, a statement of changes in financial position of Borrower and any guarantor(s) for that fiscal year and, a balance sheet showing all assets and liabilities of Borrower and any guarantor(s) as of the end of that fiscal year;

(2)   within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Borrower and any Controlling Entity and the interest held by each, if Borrower or a Controlling Entity is a corporation, all officers and directors of Borrower and the Controlling Entity, and if Borrower or a Controlling Entity is a limited liability company, all managers who are not members; and

(3)   within thirty (30) days after filing, copies of all federal and state income tax returns filed by Borrower and any guarantor(s) (or, if Borrower or any guarantor is a "disregarded entity" for federal tax purposes, the federal and state returns filed by the owner of Borrower or such guarantor).

(c)   Each of the statements, schedules, documents, items and reports required by Section 14(b) shall be certified to be complete and accurate by each individual Borrower, an individual (or individuals) having authority to bind each entity Borrower and (for guarantor information and documents) each guarantor, and shall be in such form and contain such detail as Lender may reasonably require. Lender may, at Lender's discretion, require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

(d)   In the event Borrower or any guarantor(s) (as applicable) fails to deliver such statements, schedules, documents, items and reports within the time frames provided in Section 14(b) above, then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Borrower shall pay a late charge equal to two percent (2%) of the monthly payment amount for each late submission of financial reports to compensate Lender or its servicer for the additional administrative expense caused by such failure or delay whether or not Borrower is entitled to any notice and opportunity to cure such failure prior to the exercise of any of the remedies. Such late charge shall be charged each month that any financial statements remain delinquent. The late charge shall be immediately payable from Borrower upon demand by Lender and, until paid, shall be added to and constitute a part of the Indebtedness as provided in Section 12. In no event shall the financial statement late charge constitute a cure of Borrower's or any guarantor's (as applicable) default in failing to provide financial statements, nor limit Lender's remedies as a result of such default. In addition to such financial statement late charge and any other remedies which may be available to Lender as a result of such Event of Default, Lender shall have the right: (1) to increase the interest rate under the Note to the Default Rate provided for in the Note as long as such financial statements remain delinquent, and (2) to have Borrower's or any guarantor's (as applicable) books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness as provided in Section 12.

(e)   If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

(f)   Borrower authorizes Lender to obtain a credit report on Borrower at any time.

**15.   TAXES; OPERATING EXPENSES.**

(a)   Subject to the provisions of Section 15(c) and Section 15(d), Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

(b)   Subject to the provisions of Section 15(c), Borrower shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

(c)   As long as no Event of Default exists and Borrower has timely delivered to Lender any bills or premium notices that it has received, Borrower shall not be obligated to pay Taxes, insurance premiums or any other individual Imposition

California Deed of Trust

Page 10

**EXHIBIT 2**
Page 36

to the extent that sufficient Imposition Deposits are held by Lender for the purpose of paying that specific Imposition. If an Event of Default exists, Lender may exercise any rights Lender may have with respect to Imposition Deposits without regard to whether Impositions are then due and payable. Lender shall have no liability to Borrower for failing to pay any Impositions to the extent that any Event of Default has occurred and is continuing, insufficient Imposition Deposits are held by Lender at the time an Imposition becomes due and payable or Borrower has failed to provide Lender with bills and premium notices as provided above.

(d)    Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (1) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (2) the Mortgaged Property is not in danger of being sold or forfeited, (3) Borrower deposits with Lender reserves sufficient to pay the contested Imposition, if requested by Lender, and (4) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Borrower to pay the contested Imposition.

(e)    Borrower shall promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments in accordance with Section 7(f).

**16.    LIENS; ENCUMBRANCES.** Borrower acknowledges that the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "**Lien**") on the Mortgaged Property (other than the lien of this Instrument and the liens and encumbrances reflected on the Schedule of Title Exceptions) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "**Transfer**" which constitutes an Event of Default under Section 21 of this Instrument.

**17.    PRESERVATION, MANAGEMENT AND MAINTENANCE OF MORTGAGED PROPERTY.** Borrower (a) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (b) shall not abandon the Mortgaged Property, (c) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (d) shall keep the Mortgaged Property in good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, (e) shall provide for professional management of the Mortgaged Property by a residential rental property manager satisfactory to Lender under a contract approved by Lender in writing, and (f) shall give notice to Lender of and, unless otherwise directed in writing by Lender, shall appear in and defend any action or proceeding purporting to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument. Borrower shall not (and shall not permit any tenant or other Person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of tangible Personalty.

**18.    ENVIRONMENTAL HAZARDS.**

(a)    Except for matters covered by a written plan of operations and maintenance approved in writing by Lender (an "**O&M Plan**") or matters described in Section 18(b), Borrower shall not cause or permit any of the following:

(1)    the presence, use, generation, release, treatment, processing, storage (including storage in above ground and underground storage tanks), handling, or disposal of any Hazardous Materials on or under the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property;

(2)    the transportation of any Hazardous Materials to, from, or across the Mortgaged Property;

(3)    any occurrence or condition (including soil and groundwater conditions) on the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property, which occurrence or condition is or may be in violation of Hazardous Materials Laws; or

(4)    any violation of or noncompliance with the terms of any Environmental Permit with respect to the Mortgaged Property or any property of Borrower that is adjacent to the Mortgaged Property.

The matters described in clauses (1) through (4) above are referred to collectively in this Section 18 as "**Prohibited Activities or Conditions**".

(b)    Prohibited Activities and Conditions shall not include the safe and lawful use and storage of quantities of (1) pre-packaged supplies, cleaning materials and petroleum products customarily used in the operation and maintenance of comparable properties, (2) cleaning materials, personal grooming items and other items sold in pre-packaged containers for consumer use and used by tenants and occupants of residential dwelling units in the Mortgaged Property; and (3) petroleum products used in the operation and maintenance of motor vehicles from time to time located on the Mortgaged Property's parking

California Deed of Trust                                                                                                              Page 11

**EXHIBIT 2**

areas, so long as all of the foregoing are used, stored, handled, transported and disposed of in compliance with Hazardous Materials Laws.

(c)      Borrower shall take all commercially reasonable actions (including the inclusion of appropriate provisions in any Leases executed after the date of this Instrument) to prevent its employees, agents, and contractors, and all tenants and other occupants from causing or permitting any Prohibited Activities or Conditions.  Borrower shall not lease or allow the sublease or use of all or any portion of the Mortgaged Property to any tenant or subtenant for nonresidential use by any user that, in the ordinary course of its business, would cause or permit any Prohibited Activity or Condition.

(d)      If an O&M Plan has been established with respect to Hazardous Materials, Borrower shall comply in a timely manner with, and cause all employees, agents, and contractors of Borrower and any other Persons present on the Mortgaged Property to comply with the O&M Plan. All costs of performance of Borrower's obligations under any O&M Plan shall be paid by Borrower, and Lender's out-of-pocket costs incurred in connection with the monitoring and review of the O&M Plan and Borrower's performance shall be paid by Borrower upon demand by Lender.  Any such out-of-pocket costs of Lender which Borrower fails to pay promptly shall become an additional part of the Indebtedness as provided in Section 12.

(e)      Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing:

(1)      Borrower has not at any time engaged in, caused or permitted any Prohibited Activities or Conditions;

(2)      to the best of Borrower's knowledge after reasonable and diligent inquiry, no Prohibited Activities or Conditions exist or have existed;

(3)      except to the extent previously disclosed by Borrower to Lender in writing, the Mortgaged Property does not now contain any underground storage tanks, and, to the best of Borrower's knowledge after reasonable and diligent inquiry, the Mortgaged Property has not contained any underground storage tanks in the past. If there is an underground storage tank located on the Mortgaged Property which has been previously disclosed by Borrower to Lender in writing, that tank complies with all requirements of Hazardous Materials Laws;

(4)      Borrower has complied with all Hazardous Materials Laws, including all requirements for notification regarding releases of Hazardous Materials.  Without limiting the generality of the foregoing, Borrower has obtained all Environmental Permits required for the operation of the Mortgaged Property in accordance with Hazardous Materials Laws now in effect and all such Environmental Permits are in full force and effect;

(5)      no event has occurred with respect to the Mortgaged Property that constitutes, or with the passing of time or the giving of notice would constitute, noncompliance with the terms of any Environmental Permit;

(6)      there are no actions, suits, claims or proceedings pending or, to the best of Borrower's knowledge after reasonable and diligent inquiry, threatened that involve the Mortgaged Property and allege, arise out of, or relate to any Prohibited Activity or Condition;

(7)      Borrower has not received any complaint, order, notice of violation or other communication from any Governmental Authority with regard to air emissions, water discharges, noise emissions or Hazardous Materials, or any other environmental, health or safety matters affecting the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property;

(8)      there are no liens arising under or pursuant to any Hazardous Materials Laws affecting the Mortgaged Property and there are no facts, circumstances, or conditions that could reasonably be expected to restrict, encumber, or result in the imposition of special conditions under any Hazardous Materials Law with respect to the ownership, occupancy development, use, or transferability of the Mortgaged Property;

(9)      there has been no written environmental audit, investigation, assessment, review, sampling or analysis conducted by Borrower of the Mortgaged Property which in any such case has not been delivered to Lender prior to the date hereof; and

(10)     at the time of acquiring the Mortgaged Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Mortgaged Property consistent with good commercial or

California Deed of Trust                                                                                                      Page 12

**EXHIBIT 2**

customary practice and no evidence or indication came to light which would suggest that the Mortgaged Property has been or is now being used for any Prohibited Activities or Conditions.

The representations and warranties in this Section 18 shall be continuing representations and warranties that shall be deemed to be made by Borrower throughout the term of the Loan, until the Indebtedness and all obligations under this Section 18 have been paid in full.

 (f) Borrower shall promptly notify Lender in writing upon the occurrence of any of the following events:

  (1) Borrower's discovery of any Prohibited Activity or Condition;

  (2) Borrower's receipt of or knowledge of any complaint, order, notice of violation or other communication from any Governmental Authority or other Person with regard to present or future alleged Prohibited Activities or Conditions or any other environmental, health or safety matters affecting the Mortgaged Property or any other property of Borrower that is adjacent to the Mortgaged Property; and

  (3) any representation or warranty in this Section 18 becomes untrue after the date of this Agreement.

Any such notice given by Borrower shall not relieve Borrower of, or result in a waiver of, any obligation under this Instrument, the Note, or any other Loan Document.

 (g) Borrower shall pay promptly the costs of any environmental inspections, tests or audits ("**Environmental Inspections**") required by Lender in connection with any foreclosure or deed in lieu of foreclosure, or as a condition of Lender's consent to any Transfer under Section 21, or required by Lender following a reasonable determination by Lender that Prohibited Activities or Conditions may exist. Any such costs incurred by Lender (including the fees and out-of-pocket costs of attorneys and technical consultants whether incurred in connection with any judicial or administrative process or otherwise) which Borrower fails to pay promptly shall become an additional part of the Indebtedness as provided in Section 12. The results of all Environmental Inspections made by Lender shall at all times remain the property of Lender and Lender shall have no obligation to disclose or otherwise make available to Borrower or any other party such results or any other information obtained by Lender in connection with its Environmental Inspections. Lender hereby reserves the right, and Borrower hereby expressly authorizes Lender, to make available to any party, including any prospective bidder at a foreclosure sale of the Mortgaged Property, the results of any Environmental Inspections made by Lender with respect to the Mortgaged Property. Borrower consents to Lender notifying any party (either as part of a notice of sale or otherwise) of the results of any of Lender's Environmental Inspections. Borrower acknowledges that Lender cannot control or otherwise assure the truthfulness or accuracy of the results of any of its Environmental Inspections and that the release of such results to prospective bidders at a foreclosure sale of the Mortgaged Property may have a material and adverse effect upon the amount which a party may bid at such sale. Borrower agrees that Lender shall have no liability whatsoever as a result of delivering the results of any of its Environmental Inspections to any third party, and Borrower hereby releases and forever discharges Lender from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the results of, the delivery of any of Lender's Environmental Inspections.

 (h) If any investigation, site monitoring, containment, clean-up, restoration or other remedial work ("**Remedial Work**") is necessary to comply with any Hazardous Materials Law or order of any Governmental Authority that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property under any Hazardous Materials Law, Borrower shall, by the earlier of (1) the applicable deadline required by Hazardous Materials Law or (2) 30 days after notice from Lender demanding such action, begin performing the Remedial Work, and thereafter diligently prosecute it to completion, and shall in any event complete the work by the time required by applicable Hazardous Materials Law. If Borrower fails to begin on a timely basis or diligently prosecute any required Remedial Work, Lender may, at its option, cause the Remedial Work to be completed, in which case Borrower shall reimburse Lender on demand for the cost of doing so. Any reimbursement due from Borrower to Lender shall become part of the Indebtedness as provided in Section 12.

 (i) Borrower shall cooperate with any inquiry by any Governmental Authority and shall comply with any governmental or judicial order which arises from any alleged Prohibited Activity or Condition.

 (j) Borrower shall indemnify, hold harmless and defend (i) Lender, (ii) any prior owner or holder of the Note, (iii) the Loan Servicer, (iv) any prior Loan Servicer, (v) the officers, directors, shareholders, partners, employees and trustees of any of the foregoing, and (vi) the heirs, legal representatives, successors and assigns of each of the foregoing (collectively, the "**Indemnitees**") from and against all proceedings, claims, damages, liabilities, obligations, demands, causes of action, losses, fines, penalties and costs (whether initiated or sought by Governmental Authorities or private parties), including fees and out of

California Deed of Trust                                 Page 13

**EXHIBIT 2**

pocket expenses of attorneys and expert witnesses, investigatory fees, and remediation costs, whether incurred in connection with any judicial or administrative process or otherwise, arising directly or indirectly from any of the following:

 (1) any breach of any representation or warranty of Borrower in this Section 18;

 (2) any failure by Borrower to perform any of its obligations under this Section 18;

 (3) the existence or alleged existence of any Prohibited Activity or Condition;

 (4) the presence or alleged presence of Hazardous Materials on or under the Mortgaged Property or any property of Borrower that is adjacent to the Mortgaged Property;

 (5) the actual or alleged violation of any Hazardous Materials Law; and

 (6) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to any Hazardous Materials.

 (k) Counsel selected by Borrower to defend Indemnitees shall be subject to the approval of those Indemnitees. However, any Indemnitee may elect to defend any claim or legal or administrative proceeding at Borrower's expense.

 (l) Borrower shall not, without the prior written consent of those Indemnitees who are named as parties to a claim or legal or administrative proceeding (a "**Claim**"), settle or compromise the Claim if the settlement (1) results in the entry of any judgment that does not include as an unconditional term the delivery by the claimant or plaintiff to Lender of a written release of those Indemnitees, satisfactory in form and substance to Lender; or (2) may materially and adversely affect Lender, as determined by Lender in its discretion.

 (m) Borrower's obligation to indemnify the Indemnitees shall not be limited or impaired by any of the following, or by any failure of Borrower or any guarantor to receive notice of or consideration for any of the following:

 (1) any amendment or modification of any Loan Document;

 (2) any extensions of time for performance required by any Loan Document;

 (3) any provision in any of the Loan Documents limiting Lender's recourse to property securing the Indebtedness, or limiting the personal liability of Borrower or any other party for payment of all or any part of the Indebtedness;

 (4) the accuracy or inaccuracy of any representations and warranties made by Borrower under this Instrument or any other Loan Document;

 (5) the release of Borrower or any other Person, by Lender or by operation of law, from performance of any obligation under any Loan Document;

 (6) the release or substitution in whole or in part of any security for the Indebtedness; and

 (7) Lender's failure to properly perfect any lien or security interest given as security for the Indebtedness.

 (n) Borrower shall, at its own cost and expense, do all of the following:

 (1) pay or satisfy any judgment or decree that may be entered against any Indemnitee or Indemnitees in any legal or administrative proceeding incident to any matters against which Indemnitees are entitled to be indemnified under this Section 18;

 (2) reimburse Indemnitees for any expenses paid or incurred in connection with any matters against which Indemnitees are entitled to be indemnified under this Section 18; and

 (3) reimburse Indemnitees for any and all expenses, including fees and out of pocket expenses of attorneys and expert witnesses, paid or incurred in connection with the enforcement by Indemnitees of their rights under this Section 18, or in monitoring and participating in any legal or administrative proceeding.

 (o) In any circumstances in which the indemnity under this Section 18 applies, Lender may employ its own legal counsel and consultants to prosecute, defend or negotiate any claim or legal or administrative proceeding and Lender, with the prior written consent of Borrower (which shall not be unreasonably withheld, delayed or conditioned) may settle or compromise any action or legal or administrative proceeding. Borrower shall reimburse Lender upon demand for all costs and expenses incurred by Lender, including all costs of settlements entered into in good faith, and the fees and out of pocket expenses of such attorneys and consultants.

 (p) The provisions of this Section 18 shall be in addition to any and all other obligations and liabilities that Borrower may have under applicable law or under other Loan Documents, and each Indemnitee shall be entitled to indemnification under this Section 18 without regard to whether Lender or that Indemnitee has exercised any rights against the Mortgaged Property or any other security, pursued any rights against any guarantor, or pursued any other rights available under

California Deed of Trust                          Page 14

**EXHIBIT 2**

the Loan Documents or applicable law. If Borrower consists of more than one Person, the obligation of those Persons to indemnify the Indemnitees under this Section 18 shall be joint and several. The obligation of Borrower to indemnify the Indemnitees under this Section 18 shall survive any repayment or discharge of the Indebtedness, any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the lien of this Instrument.

(q)　　　The obligations of Borrower under this Section 18 (i) are separate and distinct from the Indebtedness and (ii) are **not** secured by this Instrument or any other Loan Document pursuant to which Lender has been granted a security interest in any property as collateral for the repayment of the Indebtedness.

19.　　　PROPERTY AND LIABILITY INSURANCE.

(a)　　　Borrower shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire, windstorm and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time throughout the term of the Indebtedness. If Lender so requires, such insurance shall also include sinkhole insurance, mine subsidence insurance, earthquake insurance, and, if the Mortgaged Property does not conform to applicable zoning or land use laws, building ordinance or law coverage. In the event any updated reports or other documentation are reasonably required by Lender in order to determine whether such additional insurance is necessary or prudent, Borrower shall pay for all such documentation at its sole cost and expense. If any of the Improvements is located in an area that is either (i) identified by the Federal Emergency Management Agency (or any successor to that agency) ("FEMA") as an area having special flood hazards or (ii) designated by FEMA as Zone D, and if flood insurance is available in that area, Borrower shall insure such Improvements against loss by flood. If Lender so requires, such insurance shall also include business income/rental value insurance for all relevant perils to be covered in the amount required by Lender, but in no case less than the effective gross income attributable to the Mortgaged Property for the preceding 12 months, as determined by Lender in Lender's discretion. All insurance required pursuant to this Section 19(a) shall be referred to as "**Property Insurance**". All policies of Property Insurance must include a non-contributing, non-reporting mortgagee clause in favor of, and in a form approved by, Lender, and shall provide that the insurer will notify Lender in writing of cancelation of policies at least 10 days before the cancelation of the policy by the insurer for nonpayment of the premium or nonrenewal and at least 30 days before cancelation by the insurer for any other reason.

(b)　　　All premiums on insurance policies required under this Section 19 shall be paid in the manner provided in Section 7, unless Lender has designated in writing another method of payment. All such policies shall also be in a form approved by Lender. Borrower shall deliver to Lender a legible copy of each insurance policy (or duplicate original) and Borrower shall promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums. At least 30 days prior to the expiration date of a policy, Borrower shall deliver to Lender a legible copy of each renewal policy (or a duplicate original) in a form satisfactory to Lender.

(c)　　　Borrower shall maintain at all times commercial general liability insurance, workers' compensation insurance and such other liability, errors and omissions and fidelity insurance coverages as Lender may from time to time require. All policies for general liability insurance must contain a standard additional insured provision, in favor of, and in a form approved by, Lender.

(d)　　　All insurance policies and renewals of insurance policies required by this Section 19 shall be in such amounts and for such periods as Lender may from time to time require, shall be in such form and contain such endorsements as Lender may from time to time require, and shall be issued by insurance companies satisfactory to Lender.

(e)　　　Borrower shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Borrower to maintain.

(f)　　　In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 19 shall require Lender to incur any expense or take any action. Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the "**Restoration**"), or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

California Deed of Trust　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 15

**EXHIBIT 2**

(g)      Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met:  (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that there will be sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the rental income from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; and (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty.

(h)      If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

20.      **CONDEMNATION.**

(a)      Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a "**Condemnation**"). Borrower shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing.  Borrower authorizes and appoints Lender as attorney in fact for Borrower to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable.  However, nothing contained in this Section 20 shall require Lender to incur any expense or take any action. Borrower hereby transfers and assigns to Lender all right, title and interest of Borrower in and to any award or payment with respect to (i) any Condemnation, or any conveyance in lieu of Condemnation, and (ii) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

(b)      Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Borrower.  Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note, Section 7 of this Instrument or any Collateral Agreement, or change the amount of such installments.  Borrower agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

21.      **TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER [NO RIGHT TO TRANSFER].**

(a)      "Transfer" means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity.  For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

(b)      "Transfer" does not include: (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the Bankruptcy Code, or (iii) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.

(c)      The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of this Section 21 to the contrary:

(i)      a Transfer to which Lender has consented;

(ii)     a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person;

(iii)    the grant of a leasehold interest in an individual dwelling unit, so long as such leasehold interest (A) is for a term of two years or less, (B) does not contain an option to purchase and (C) is otherwise in accordance with the terms of this Instrument;

California Deed of Trust

Page 16

**EXHIBIT 2**

(iv)    a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender;

(v)    the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within 60 days of the date of creation; and

(vi)    if Borrower is a housing cooperative, corporation or association, the Transfer of more than 49 percent of the shares in the housing cooperative or the assignment of more than 49 percent of the occupancy agreements or leases relating thereto by tenant shareholders of the housing cooperative or association to other tenant shareholders.

(d)    The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(i)    a change of Borrower's name, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

(ii)    a change of the form of Borrower not involving a transfer of Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that: (A) UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender, (B) Lender has been provided, in advance, for Lender's review and approval, all proposed filings, amendments and other documents pertaining to such change in form, and (C) Borrower shall pay for attorneys' fees, and other out of pocket costs of Lender for the review of such documents and any filings, including any title endorsement costs if Lender in its discretion requires an endorsement or endorsements to Lender's title policy;

(iii)    the merger of Borrower with another entity when Borrower is the surviving entity;

(iv)    a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person; and

(v)    the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses, including Attorneys' Fees and Costs, incurred by Lender in connection with reviewing Borrower's request.

(e)    The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(i)    a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in Section 16 of this Instrument);

(ii)    if Borrower is a limited partnership, a Transfer of (A) any general partnership interest, or (B) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

(iii)    if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

(iv)    if Borrower is a limited liability company, (A) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (B) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (C) a change of a nonmember manager;

(v)    if Borrower is a corporation, (A) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (B) if the outstanding voting stock in Borrower is held by 100 or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of 5% or more of that stock;

California Deed of Trust          Page 17

**EXHIBIT 2**

(vi)    if Borrower is a trust, (A) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, (B) the termination or revocation of the trust, or (C) the removal, appointment or substitution of a trustee of Borrower; and

(vii)    a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of Sections 21(e)(i) through (vi) above.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21.

22.    EVENTS OF DEFAULT. The occurrence of any one or more of the following shall constitute an Event of Default under this Instrument:

(a)    any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document;

(b)    any failure by Borrower to maintain the insurance coverage required by Section 19 or to provide any financial information or documents required by Section 14;

(c)    [Intentionally Omitted];

(d)    fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners or managers or any guarantor in connection with (A) the application for or creation of the Indebtedness, (B) any financial statement, rent roll, or other report or information provided to Lender during the term of the Indebtedness, or (C) any request for Lender's consent to any proposed action, including a request for disbursement of funds under any Collateral Agreement;

(e)    any event or condition that under the terms of this Instrument is specified as constituting an Event of Default, including, without limitation, any Event of Default under Section 21;

(f)    the commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property;

(g)    any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in Sections 22(a) through (f)), as and when required, which continues for a period of 30 days after notice of such failure by Lender to Borrower. However, no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

(h)    any failure by Borrower or any guarantor(s) to perform any of its obligations as and when required under any Loan Document other than this Instrument which continues beyond the applicable cure period, if any, specified in that Loan Document;

(i)    any event or condition occurs that results in any other indebtedness (i.e. indebtedness other than the Indebtedness secured by this Instrument) owing by Borrower or any Borrower Affiliate (as defined below) to Lender becoming due prior to its scheduled maturity or that enables or permits (after the lapse of any applicable cure period) Lender or any trustee or agent on its behalf to cause such indebtedness to become due prior to its scheduled maturity ("**Borrower Affiliate**" means (i) any entity owned or controlled by Borrower, (ii) any entity commonly owned or controlled by the members or owners of Borrower, (iii) any guarantor of the Loan and (iv) any entity owned or controlled by one or more guarantors of the Loan);

(j)    any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(k)    should any representation or warranty contained in this Instrument, the Borrower Certificate, any other Loan Document, or any other document submitted by Borrower to Lender be or become false or misleading in any material respect;

(l)    if the Mortgaged Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

(m)    Borrower or any guarantor makes a general assignment for the benefit of creditors, voluntarily files for bankruptcy protection under the Bankruptcy Code or voluntarily becomes subject to any reorganization, receivership, insolvency proceeding or other similar proceeding pursuant to any other federal or state law affecting debtor and creditor rights, or an involuntary case is commenced against Borrower or any guarantor by any creditor (other than Lender) of Borrower or any

California Deed of Trust

Page 18

**EXHIBIT 2**
Page 44

guarantor pursuant to the Bankruptcy Code or other federal or state law affecting debtor and creditor rights to which Borrower or any guarantor voluntarily becomes subject, and is not dismissed or discharged within 60 days after filing; and

(n)     Borrower, any member, manager, officer, shareholder, general partner or trustee of Borrower, any guarantor or any member, manager, officer, shareholder, general partner or trustee of any guarantor, purports to revoke or dispute the validity of, or Borrower's or any guarantor's liability under, any of the Loan Documents or any guaranty.

23.     **REMEDIES CUMULATIVE.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

24.     **FORBEARANCE.**

(a)     Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any guarantor or any other third party obligor, to take any of the following actions:  extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Instrument, the Note, or any other Loan Document.

(b)     Any forbearance by Lender in exercising any right or remedy under the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or under the Environmental Indemnity or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender. Lender's receipt of any awards or proceeds under Sections 19 and 20 shall not operate to cure or waive any Event of Default.

25.     **LOAN CHARGES.** If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation.  The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

26.     **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document.

27.     **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

28.     **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

California Deed of Trust                                                                                          Page 19

**EXHIBIT 2**

Page 45

29.    **ESTOPPEL CERTIFICATE.** Within ten (10) days after a request from Lender, Borrower shall deliver to Lender a written statement, signed and acknowledged by Borrower, certifying to Lender or any Person designated by Lender, as of the date of such statement, (i) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (ii) the unpaid principal balance of the Note; (iii) the date to which interest under the Note has been paid; (iv) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument or any of the other Loan Documents (or, if Borrower is in default, describing such default in reasonable detail); (v) whether or not there are then existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and (vi) any additional facts requested by Lender.

30.    **GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)    This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the **"Property Jurisdiction"**).

(b)    Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue, or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.

31.    **NOTICE.**

(a)    All notices, demands and other communications (**"notice"**) under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in paragraph A of this Instrument, and shall be deemed given on the earliest to occur of (1) the date when the notice is received by the addressee; (2) the first Business Day after the notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next Business Day delivery; or (3) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this Section 31, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which Lender is not open for business.

(b)    Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 31. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this Section 31, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this Section 31 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

(c)    Any notice under the Note and any other Loan Document which does not specify how notices are to be given shall be given in accordance with this Section 31.

32.    **SALE OF NOTE; CHANGE IN SERVICER.** The Note or a partial interest in the Note (together with this Instrument and the other Loan Documents) may be sold one or more times without prior notice to Borrower. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change.

33.    **[Intentionally Omitted]**

34.    **SUCCESSORS AND ASSIGNS BOUND.** This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 21 shall constitute an Event of Default.

35.    **JOINT AND SEVERAL LIABILITY.** If more than one Person signs this Instrument as Borrower, the obligations of such Persons under this Instrument, the Note and other Loan Documents shall be joint and several.

36.    **RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.**

(a)    The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

(b)    No creditor of any party to this Instrument and no other Person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a **"Servicing Arrangement"**) between Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the

California Deed of Trust                                                                                    Page 20

**EXHIBIT 2**
Page 46

Indebtedness, (2) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

37. **SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.** The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable. If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

38. **CONSTRUCTION.** The captions and headings of the Sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." The use of one gender includes the other gender, as the context may require. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Instrument shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument or any other Loan Document), and (b) any reference in this Instrument to any Person shall be construed to include such Person's successors and assigns.

39. **LOAN SERVICING.** All actions regarding the servicing of the Loan, including the collection of payments, the giving and receipt of notice, inspections of the Mortgaged Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

40. **DISCLOSURE OF INFORMATION.** Lender may furnish information regarding Borrower or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including but not limited to trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of similar mortgage loans, as well as governmental regulatory agencies having regulatory authority over Lender. Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including but not limited to any right of privacy.

41. **NO CHANGE IN FACTS OR CIRCUMSTANCES.** All information in the application for the loan submitted to Lender (the "**Loan Application**") and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan Application are complete and accurate in all material respects. There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

42. **SUBROGATION.** If, and to the extent that, the proceeds of the Loan, or subsequent advances under Section 12, are used to pay, satisfy or discharge a Prior Lien, such Loan proceeds or advances shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

43. **BUSINESS PURPOSE.** Borrower acknowledges and agrees that the Loan is for business purposes and not for personal, family or household purposes.

44. **ACCELERATION; REMEDIES.** If an Event of Default has occurred and is continuing, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by California law or provided in this Instrument or in any other Loan Document. Borrower acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs, and costs of documentary evidence, abstracts and title reports.

California Deed of Trust                                                                                           Page 21

**EXHIBIT 2**
Page 47

If the power of sale is invoked, Lender shall execute a written notice of the occurrence of an Event of Default and of Lender's election to cause the Mortgaged Property to be sold and shall cause the notice to be recorded in each county in which the Mortgaged Property or some part of the Mortgaged Property is located. Trustee shall give notice of default and notice of sale and shall sell the Mortgaged Property according to California law. Trustee may sell the Mortgaged Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone the sale of all or any part of the Mortgaged Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Mortgaged Property at any sale and Lender or such designee will have the right to credit bid all or any part of the Indebtedness toward the purchase price at such sale.

Within a reasonable time after the sale, Trustee shall deliver to the purchaser at the sale, a deed conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including Trustee's fees not to exceed the statutory maximum therefor, Attorneys' Fees and Costs, including the cost of any trustee's sale guarantee policy and any other evidence of title; (b) to the Indebtedness in such order as Lender, in Lender's discretion, directs; and (c) the excess, if any, to the Person or Persons legally entitled to the excess.

45.   RECONVEYANCE.   Upon payment of the Indebtedness, Lender shall request Trustee to reconvey the Mortgaged Property and shall surrender this Instrument and the Note to Trustee. Trustee shall reconvey the Mortgaged Property without warranty to the Person or Persons legally entitled to the Mortgaged Property. Such Person or Persons shall pay Trustee's reasonable costs incurred in so reconveying the Mortgaged Property.

46.   SUBSTITUTE TRUSTEE.   Lender, at Lender's option, may from time to time, by a written instrument, appoint a successor trustee, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Mortgaged Property is situated, shall be conclusive proof of proper substitution of the successor trustee. The successor trustee shall, without conveyance of the Mortgaged Property, succeed to all the title, power and duties conferred upon the Trustee in this Instrument and by California law. The instrument of substitution shall contain the name of the original Lender, Trustee and Borrower under this Instrument, the book and page where this Instrument is recorded, and the name and address of the successor trustee. The procedure provided for substitution of trustee in this Instrument shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

47.   STATEMENT OF OBLIGATION.   Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the California Civil Code.

48.   SPOUSE'S SEPARATE PROPERTY.   Each Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

49.   FIXTURE FILING.   This Instrument is also a fixture filing under the Uniform Commercial Code of California.

50.   ADDITIONAL PROVISION REGARDING APPLICATION OF PAYMENTS.   In addition to the provisions of Section 9, Borrower further agrees that, if Lender accepts a guaranty of only a portion of the Indebtedness, Borrower waives its right under California Civil Code Section 2822(a), to designate the portion of the Indebtedness which shall be satisfied by a guarantor's partial payment.

51.   ADDITIONAL PROVISIONS CONCERNING ENVIRONMENTAL HAZARDS.   In addition to the provisions of Section 18:

(a)   Except for matters covered by an O&M Plan or lawful conditions expressly excluded from the definition of Prohibited Activity or Condition in Section 18(b), Borrower shall not cause or permit any lien (whether or not such lien has priority over the lien created by this Instrument) upon the Mortgaged Property imposed pursuant to any Hazardous Materials Laws. Any such lien shall be considered a Prohibited Activity or Condition.

(b)   Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing, each of the following are true:

(1)   at the time of acquiring the Mortgaged Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Mortgaged Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Mortgaged Property has been or is now being used for any Prohibited Activities or Conditions; and

(2)   the Mortgaged Property has not been designated as "hazardous waste property" or "border zone property" pursuant to former (now repealed) Article 11 (Sections 25220, et seq.) of Chapter 6.5 of Division 20 of the California Health and Safety Code.

California Deed of Trust

Page 22

**EXHIBIT 2**

The representations and warranties in this Section 51(b) shall be continuing representations and warranties that shall be deemed to be made by Borrower throughout the term of the Loan, until the Indebtedness and all obligations under Section 18 of this Instrument have been paid in full.

(c)        Without limiting any of the remedies provided in this Instrument, Borrower acknowledges and agrees that each of the provisions in Section 18 and in this Section 51 is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to the real property security (the "**Environmental Provisions**"), and that Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure ("**Section 736**") for the recovery of damages and for the enforcement of the Environmental Provisions. Pursuant to Section 736, Lender's action for recovery of damages or enforcement of the Environmental Provisions shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d, or 726(b) of the California Code of Civil Procedure.

(d)        Any reference in this Instrument or in any other Loan Document to Section 18 of this Instrument shall be construed as referring together to Section 18 and this Section 51.

**52.        WAIVER OF MARSHALLING; OTHER WAIVERS.** To the extent permitted by law, Borrower waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Mortgaged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Instrument, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code Sections 2899 and 3433. Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided by this Instrument. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of the remedies provided by this Instrument. By signing this Instrument, Borrower does not waive its rights under Section 2924c of the California Civil Code.

**53.        INTERPRETATION.** It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

**54.        FUTURE ADVANCES.** In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("**Future Advances**"), including all extensions, renewals and modifications of any such Future Advances.

**55.        AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended or corrected and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section or under Section 28 above within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

California Deed of Trust                                                                                                    Page 23

**EXHIBIT 2**

56.     **EXECUTION IN COUNTERPARTS.**  This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

57.     **PAYMENT OF CLOSING COSTS.**  If for any reason the escrow or closing agent fails to reserve and pay for all of Lender's fees, legal, documentation, appraisal, title, recording and other closing costs incurred in connection with the closing and funding of the Loan, then Borrower shall pay or reimburse Lender for any such unpaid fees or costs within ten (10) days after written demand by Lender itemizing the unpaid fees and costs. Failure of Borrower to so pay or reimburse Lender for any such unpaid fees and costs within ten (10) days after written demand by Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

58.     **CALIFORNIA LAW PROVISIONS RELATING TO INSURANCE COVERAGE.**  Borrower acknowledges that Borrower is aware of the following provision of Subdivision (a) of Section 2955.5 of the California Civil Code, which provides as follows:

"No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

59.     **NON-OWNER OCCUPIED PROPERTY.**  Throughout the term of the Loan, Borrower shall not occupy any portion of the Mortgaged Property in any manner. If Borrower is an entity other than a natural person, any persons with a direct or indirect ownership interest in Borrower shall not occupy any portion of the Mortgaged Property in any manner throughout the term of the Loan.

60.     **SCOPE OF SECURED OBLIGATIONS.**  For the avoidance of doubt, this Instrument secures only the Indebtedness and **not** any amounts due under the Environmental Indemnity or any guaranty.

**ATTACHED EXHIBIT.**  The following Exhibit is attached to this Instrument:
Exhibit "A"          Description of the Land

THIS DEED OF TRUST SECURES A VARIABLE RATE PROMISSORY NOTE. THIS DEED OF TRUST IS A FIRST DEED OF TRUST.  NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE MORTGAGED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER.  FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

**IN WITNESS WHEREOF,** Borrower has signed and delivered this Instrument under seal (where applicable) or has caused this Instrument to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this Instrument shall be deemed to be signed and delivered as a sealed instrument.

**BORROWER:**

_____
DANIEL HALEVY

California Deed of Trust                                                                                                          Page 24

**EXHIBIT 2**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California ) ss.

County of Los Angeles )

On June 15 , 2016, before me, Len Taylor , Notary Public, personally appeared DANIEL HALEVY,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

LEN TAYLOR
Commission # 2129020
Notary Public - California
Ventura County
My Comm. Expires Oct 31, 2019

Place Notary Seal Above

**EXHIBIT 2**

## EXHIBIT "A"
### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE WESTERLY 60 FEET THEREOF MEASURED ALONG THE SOUTHERLY LINE OF SAID LAND.

APN: 4303-032-017

PROPERTY ADDRESS: 8561 HORNER STREET, LOS ANGELES, CALIFORNIA 90035

California Deed of Trust
Exhibit "A" – Legal Description

Page A-1

**EXHIBIT 2**



**This page is part of your document - DO NOT DISCARD**



## 20160719123

**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**06/22/16 AT 08:00AM**

|  |  |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |

**EXHIBIT 3**

Page 53

© Data Trace Information Services LLC. Document image licensed for one-time use only. Unauthorized reproduction, disclosure, or distribution is prohibited

**FIDELITY NATIONAL TITLE**

*RECORDING REQUESTED BY*
*AND WHEN RECORDED MAIL TO:*

ATHAS CAPITAL GROUP, INC.
26901 Agoura Road
Suite #250
Calabasas, CA 91301

Tax Parcel Number(s): **4303-032-017**

Space Above for Recorder's Use

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **THE RAMA FUND, LLC, a California limited liability company**, whose address is **26901 Agoura Road, Suite #250, Calabasas, CA 91301,** all beneficial interest under that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated **June 15, 2016,** executed by **DANIEL HALEVY, a married man as his sole and separate property,** whose address is **133 South Palm Drive, Apt 5, Beverly Hills, CA 90212,** as trustor, to **FIDELITY NATIONAL TITLE COMPANY, a California** corporation, as trustee, and recorded concurrently herewith, in the Official Records of the Office of the County Recorder of **Los Angeles** County, State of **California,** describing land in said county as:

Legal description per **Exhibit "A"** attached hereto.

Together with the note or notes therein described or referred to in the original amount of **EIGHT HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $805,000.00),** the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated as of **June 15, 2016.**

**ASSIGNOR:**

ATHAS CAPITAL GROUP, INC.
a California corporation

By
KEVIN O'SHAUGHNESSY, COO

Assignment of Deed of Trust

RECORDED CONCURRENTLY HEREWITH

**EXHIBIT 3**
Page 54

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              ) ss.

County of _Los Angeles_        )

On _June 15_____, 2016, before me, _Yuki Bischoff_____, Notary Public, personally appeared KEVIN O'SHAUGHNESSY,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                     Signature of Notary Public

YUKI BISCHOFF
Notary Public - California
Los Angeles County
Commission # 2151023
My Comm. Expires Apr 28, 2020

Place Notary Seal Above

**EXHIBIT 3**
Page 55

## EXHIBIT "A"
### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE WESTERLY 60 FEET THEREOF MEASURED ALONG THE SOUTHERLY LINE OF SAID LAND.

APN: 4303-032-017

PROPERTY ADDRESS: 8561 HORNER STREET, LOS ANGELES, CALIFORNIA 90035

Assignment of Deed of Trust
Exhibit "A" – Legal Description

Page A-1

**EXHIBIT 3**
Page 56



**This page is part of your document - DO NOT DISCARD**



**20161488281**

**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/29/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |

**EXHIBIT 3**

Page 57

*RECORDING REQUESTED BY*
*AND WHEN RECORDED MAIL TO:*

VISIONET SYSTEMS INC
183 INDUSTRY DRIVE
PITTSBURGH PA 15275

Tax Parcel ▓▓▓▓▓▓▓▓▓▓

Space Above for Recorder's Use

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Verus Residential Loanco, LLC, whose address is 4660 Slater Rd., Suite 145, Eagan, MN 55122, all beneficial interest under that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated **June 15, 2016**, executed by **DANIEL HALEVY, a married man as his sole and separate property**, whose address is **133 South Palm Drive, Apt 5, Beverly Hills, CA 90212**, as trustor, to **FIDELITY NATIONAL TITLE COMPANY, a California corporation**, as trustee, and recorded on **June 22, 2016**, as Instrument No. **20160719122**, of Official Records in the Office of the County Recorder of **Los Angeles** County, State of **California**, describing land in said county as:

Legal description per **Exhibit "A"** attached hereto.

Together with the note or notes therein described or referred to in the original amount of **EIGHT HUNDRED FIVE THOUSAND AND 00/100 DOLLARS (US $805,000.00)**, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

**Dated as of September 2, 2016**

**ASSIGNOR:**

THE RAMA FUND, LLC
**A California Limited Liability Company**

By:
Name:   Alim Kassam
Title:   Managing Member

**EXHIBIT 3**
Page 58

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California　　　　　　　　　) ss.

County of __Los Angeles__　　　　　 )

On __September 2, 2016__, before me, ___Sherri Annette Comfort_____, Notary Public, personally appeared. **Alim Kassam, Managing Member of The Rama Fund, LLC, A California Limited Liability Company**

who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.



SHERRI ANNETTE COMFORT
Notary Public - California
Los Angeles County
Commission # 2151092
My Comm. Expires Apr 29, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　Signature of Notary Public

Place Notary Seal Above

**EXHIBIT 3**
Page 59

## EXHIBIT "A"
### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE WESTERLY 60 FEET THEREOF MEASURED ALONG THE SOUTHERLY LINE OF SAID LAND.

PROPERTY ADDRESS: 8561 HORNER STREET, LOS ANGELES, CALIFORNIA 90035

**EXHIBIT 3**
Page 60



**This page is part of your document - DO NOT DISCARD**



# 20170092292

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/24/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |

LPVR

## EXHIBIT 3
Page 61

Recording Requested By:
**MELISSA KILLCRECE**
After Recording Return To:
**VISIONET SYSTEMS INC.**
**183 INDUSTRY DRIVE**
**PITTSBURGH, PA 15275**
Voice: 1-(412) 927-0226
Recording Requested By: Simpifile

Tax Parcel ███████████

## Assignment of Deed Of Trust

For value received, the undersigned, hereby grants, assigns, and transfers to: **Mortgage Electronic Registration Systems, Inc.** Whose Address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 all of its right, title and interest under that certain Deed of Trust dated June 15, 2016 executed by:

Borrower: DANIEL HALEVY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPRTY

For ATHAS CAPITAL GROUP, INC., A CALIFORNIA CORPORATION, Whose Address is 26901 Agoura Road, Suite #250, Calabasas, CA 91301, in the amount of: $805,000.00, recorded 06/22/2016 as Instrument No.: 20160719122 of the Official Records of Los Angeles County, California

Property Address: 8561 HORNER STREET, LOS ANGELES, CALIFORNIA 90035
Legal Description: SEE EXHIBIT "A"

Effective date: 1-18-17

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**VERUS RESIDENTIAL LOANCO, LLC**
By Specialized Loan Servicing LLC, as Attorney in Fact

By: _____
LYNN SALICCE
VICE PRESIDENT
Visionet, as Attorney in Fact for Specialized Loan Servicing LLC

State of **PENNSYLVANIA**
County of **ALLEGHENY**

On 1/18/17 _____ before me, DeAnna L. Barton the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Lynn Salicce, VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DeAnna L. Barton, Notary Public
Scott Twp., Allegheny County
My Commission Expires April 11, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

DeAnna L. Barton
My Commission Expires: **04/11/2019**

**EXHIBIT 3**
Page 62

## EXHIBIT "A"
## DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE WESTERLY 60 FEET THEREOF MEASURED ALONG THE SOUTHERLY LINE OF SAID LAND.

PROPERTY ADDRESS: 8661 HORNER STREET, LOS ANGELES, CALIFORNIA 90035

**EXHIBIT 3**
Page 63



**This page is part of your document - DO NOT DISCARD**



# 20210087708

**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/15/21 AT 02:36PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**EXHIBIT 3**
Page 64

Recording Requested By:
**COMPUTERSHARE TITLE SERVICES**
c/o **VISIONET SYSTEMS INC.**
After Recording Return To:
**COMPUTERSHARE TITLE SERVICES**
c/o **VISIONET SYSTEMS INC.**
**111 TECHNOLOGY DRIVE**
**PITTSBURGH, PA 15275**
Voice: **1-(412) 927-0226**
Recording Requested By: Simpifile

Tax Parcel ID ███████████

## Assignment of Deed Of Trust

For value received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, hereby grants, assigns, and transfers to: **Goldman Sachs Mortgage Company** all of its right, title and interest under that certain Deed of Trust dated June 15, 2016 executed by:

Borrower: DANIEL HALEVY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

For ATHAS CAPITAL GROUP, INC., A CALIFORNIA CORPORATION, WHOSE ADDRESS IS 26901 AGOURA ROAD, SUITE #250, CALABASAS, CA 91301, in the amount of: $805,000.00, recorded 06/22/2016 as Instrument No.: 20160719122 of the Official Records of LOS ANGELES COUNTY, CALIFORNIA

Property Address: 8561 HORNER STREET, LOS ANGELES, CALIFORNIA 90035
Legal Description: SEE EXHIBIT A

Effective date: **JAN 1 3 2021**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY

Lynn Salicce ASSISTANT
VICE PRESIDENT

State of **PENNSYLVANIA**
County of **ALLEGHENY**

On **JAN 1 3 2021** before me, Travis Cousins the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Lynn Salicce, ASSISTANT VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

Commonwealth of Pennsylvania - Notary Seal
TRAVIS COUSINS - Notary Public
Washington County
My Commission Expires Jun 19, 2024
Commission Number 1373108

**Travis Cousins**
My Commission Expires: **06/19/2024**

**EXHIBIT 3**
Page 65

## EXHIBIT A
## DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE WESTERLY 60 FEET THEREOF MEASURED ALONG THE SOUTHERLY LINE OF SAID LAND.

PROPERTY ADDRESS: 8661 HORNER STREET, LOS ANGELES, CALIFORNIA 90035

**EXHIBIT 3**



**This page is part of your document - DO NOT DISCARD**



## 20210133565

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/25/21 AT 01:14PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



E502868

**EXHIBIT 3**
Page 67

Recording Requested By:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
After Recording Return To:
**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
**111 TECHNOLOGY DRIVE**
**PITTSBURGH, PA 15275**
Voice: **1-(412) 927-0226**
Recording Requested By: Simpifile

Tax Parcel ▮▮▮▮▮▮

## Assignment of Deed Of Trust

For value received, the undersigned, hereby grants, assigns, and transfers to: **GS Mortgage-Backed Securities Trust 2020-NQM1, U.S. Bank Trust National Association, not in its individual capacity but solely as Delaware Trustee** all beneficial interest under that certain Deed of Trust dated June 15, 2016 executed by:

Borrower: DANIEL HALEVY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

For ATHAS CAPITAL GROUP, INC., A CALIFORNIA CORPORATION, WHOSE ADDRESS IS 26901 AGOURA ROAD, SUITE #250, CALABASAS, CA 91301 in the amount of: $805,000.00, recorded 06/22/2016 as Instrument No.: 20160719122 of the Official Records of LOS ANGELES COUNTY, CALIFORNIA

Property Address: 8561 HORNER STREET, LOS ANGELES, CALIFORNIA 90035
Legal Description: SEE EXHIBIT A

Effective date: **JAN 1 8 2021**

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which
this certificate is attached, and not the
truthfulness, accuracy, or validity of that
document.

**GOLDMAN SACHS MORTGAGE COMPANY**
By Specialized Loan Servicing LLC, as Attorney in Fact

**SCOTT SLAGLE**
**ASSISTANT VICE PRESIDENT**

State of **PENNSYLVANIA**
County of **ALLEGHENY**
On **JAN 1 8 2021** before me, Chad Acon the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Scott Slagle, ASSISTANT VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

Commonwealth of Pennsylvania - Notary Seal
CHAD ACON - Notary Public
Allegheny County
My Commission Expires Oct 21, 2023
Commission ▮▮▮▮▮▮

**Chad Acon**
My Commission Expires: **10/21/2023**

**EXHIBIT 3**
Page 68

## EXHIBIT A
## DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE WESTERLY 60 FEET THEREOF MEASURED ALONG THE SOUTHERLY LINE OF SAID LAND.

PROPERTY ADDRESS: 8661 HORNER STREET, LOS ANGELES, CALIFORNIA 90035

**EXHIBIT 3**
Page 69




**This page is part of your document - DO NOT DISCARD**

## 20240403340



**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**06/20/24 AT 04:36PM**

| | |
|---|---:|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 97.00 |

E548

**EXHIBIT 3**

© Data Trace Information Services LLC. Document image licensed for one-time use only. Unauthorized reproduction, disclosure, or distribution is prohibited

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, LLC

[AND WHEN RECORDED MAIL TO]
Shellpoint Mortgage Servicing
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan Number ███████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

SEND ALL OTHER BORROWER OR LOAN RELATED CORRESPONDENCE TO: Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC  29603-0826, Toll-free Phone ███████

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned.GS MORTGAGE-BACKED SECURITIES TRUST 2020-NQM1, U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS DELAWARE TRUSTEE, WHOSE ADDRESS IS 60 LIVINGSTON AVE, EP-MN-WS3D, ST. PAUL, MN 55107, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS OWNER TRUSTEE FOR GS MORTGAGE-BACKED SECURITIES TRUST 2020-NQM1, WHOSE ADDRESS IS 1011 CENTRE ROAD SUITE 203 WILMINGTON, DE 19805, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by DANIEL HALEVY and recorded on 06/22/2016 as **Instrument # 20160719122** in the office of the **LOS ANGELES** County Recorder, **CA**.

Dated on 06 / 17 / 2024 (MM/DD/YYYY)
GS MORTGAGE-BACKED SECURITIES TRUST 2020-NQM1, U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS DELAWARE TRUSTEE by NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT.

By: _____
   JANALYNNE HEDDEN, TEAM LEAD

STATE OF SOUTH CAROLINA
COUNTY OF GREENVILLE
I _____ Angie Fay Chapman _____ Notary Public, do hereby certify that JANALYNNE HEDDEN, personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Witness my hand and (where an official seal is required by law) official seal, on 06 / 17 / 2024 (MM/DD/YYYY). He/she/they is/are personally known to me.

_____
Angie Fay Chapman
Notary Public - STATE OF SOUTH CAROLINA
Commission expires: 03/22/2034

**EXHIBIT 3**
Page 71

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Daniel** | | **Halevy** |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number **2:24-bk-12075-VZ**

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                        12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes. Where is the property?

1.1

**8561 Horner Street**
Street address, if available, or other description

**Los Angeles**        **CA**    **90035-3614**
City                   State     ZIP Code

**Los Angeles**
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $2,100,000.00 | $2,100,000.00 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.............................................................=>**      **$2,100,000.00**

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

**EXHIBIT 4**
Page 72

| Debtor 1 | **Daniel Halevy** | | Case number *(if known)* | **2:24-bk-12075-VZ** |
|---|---|---|---|---|

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No

■ Yes

| 3.1 | Make: **Ford** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

Model: **Ranger**

Year: **1999**

Approximate mileage: _____

Other information:

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

| | **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|---|
| | $3,000.00 | $3,000.00 |

| 3.2 | Make: **Rolls Royce** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

Model: _____

Year: **1979**

Approximate mileage: _____

Other information:

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

| | **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|---|
| | $10,000.00 | $10,000.00 |

| 3.3 | Make: **Ford** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

Model: **F250**

Year: **1986**

Approximate mileage: _____

Other information:

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

| | **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|---|
| | $4,000.00 | $4,000.00 |

| 3.4 | Make: **Honda** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|

Model: **Odyssey**

Year: **2011**

Approximate mileage: _____

Other information:

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

| | **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|---|
| | $8,000.00 | $8,000.00 |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................=>

| $25,000.00 |
|---|

| **Part 3:** | **Describe Your Personal and Household Items** |
|---|---|

| **Do you own or have any legal or equitable interest in any of the following items?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**EXHIBIT 4**

Page 73

| Debtor 1 | **Daniel Halevy** | Case number *(if known)* | **2:24-bk-12075-VZ** |

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

| General household goods | $1,000.00 |

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

| TV | $200.00 |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes. Describe.....

| General use clothing | $2,500.00 |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes. Describe.....

| Simple jewlery | $300.00 |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes. Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes. Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ................................................................................

| $4,000.00 |

Official Form 106A/B        Schedule A/B: Property        page 3

# EXHIBIT 4
Page 74

| Debtor 1 | **Daniel Halevy** | | Case number (if known) | **2:24-bk-12075-VZ** |

| **Part 4:** | **Describe Your Financial Assets** |

| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

    ■ No
    ☐ Yes.................................................................................................................

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

    ☐ No
    ■ Yes....................... Institution name:

| 17.1. | **Checking** | **Chase Ban** ▓▓▓▓ | | **$7,365.82** |

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

    ■ No
    ☐ Yes.................. Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

    ☐ No
    ■ Yes. Give specific information about them....................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| **Sienna Rose, Inc.** | **31** | % | **Unknown** |
| **820 S. Spring Street, LLC** | **31** | % | **Unknown** |
| **Commune Events, Inc.** | **100** | % | **Unknown** |
| **802 Mateo St., LLC** | **100** | % | **Unknown** |
| **Almighty Builders, Inc.** | **100** | % | **Unknown** |
| **Broadway Avenue Investments, LLC** | **33.33** | % | **Unknown** |
| **Seaton Investments, LLC** | **25** | % | **Unknown** |
| **SLA Investments, LLC** | **25** | % | **Unknown** |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

    ■ No
    ☐ Yes. Give specific information about them
    Issuer name:

| Official Form 106A/B | Schedule A/B: Property | page 4 |

**EXHIBIT 4**
Page 75

| Debtor 1 | **Daniel Halevy** | Case number *(if known)* | **2:24-bk-12075-VZ** |

**21. Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
   Type of account:                  Institution name:

**22. Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. .....................          Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............          Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............          Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**28. Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
      benefits; unpaid loans you made to someone else

■ No
☐ Yes.  Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.
      Company name:                  Beneficiary:                  Surrender or refund value:

**EXHIBIT 4**
Page 76

| Debtor 1 | Daniel Halevy | Case number *(if known)* | 2:24-bk-12075-VZ |
|---|---|---|---|

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No
☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**

■ No
☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**................................................................................................

|  |
|---|
| $7,365.82 |

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
|---|---|

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.
☐ Yes. Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.
☐ Yes. Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No
☐ Yes. Give specific information.........

**54. Add the dollar value of all of your entries from Part 7. Write that number here** ....................................

|  |
|---|
| $0.00 |

**EXHIBIT 4**
Page 77

Case 2:24-bk-12075-VZ Doc 41 Filed 05/10/24 Entered 05/10/24 10:55:33 Desc
Main Document Page 10 of 36

| Debtor 1 | **Daniel Halevy** | | | Case number *(if known)* | **2:24-bk-12075-VZ** |
|---|---|---|---|---|---|

| **Part 8:** | **List the Totals of Each Part of this Form** |
|---|---|

| 55. | **Part 1: Total real estate, line 2** .................................................................................. | | **$2,100,000.00** |
|---|---|---|---|
| 56. | **Part 2: Total vehicles, line 5** | **$25,000.00** | |
| 57. | **Part 3: Total personal and household items, line 15** | **$4,000.00** | |
| 58. | **Part 4: Total financial assets, line 36** | **$7,365.82** | |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | |
| 61. | **Part 7: Total other property not listed, line 54** | + **$0.00** | |
| 62. | **Total personal property.** Add lines 56 through 61... | **$36,365.82** | Copy personal property total | **$36,365.82** |
| 63. | **Total of all property on Schedule A/B**. Add line 55 + line 62 | | **$2,136,365.82** |

Official Form 106A/B  Schedule A/B: Property  page 7

**EXHIBIT 4**
Page 78

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Daniel Halevy** |
| | First Name      Middle Name      Last Name |
| Debtor 2 (Spouse if, filing) | |
| | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | **2:24-bk-12075-VZ** |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

| Part 1: | List All Secured Claims |
|---|---|

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim | **Column C** Unsecured portion If any |
|---|---|---|---|---|
| **2.1** **Archway Real Estate Income Fund I S** | Describe the property that secures the claim: | **$2,575,000.00** | **$2,100,000.00** | **$1,255,000.00** |
| Creditor's Name **c/o Frandzel Robins Bloom & Csato 1000 Wilshire Blvd 19th Floor Los Angeles, CA 90017** | **8561 Horner Street Los Angeles, CA 90035-3614 Los Angeles County** | | | |

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent

☐ Unliquidated

☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☑ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☑ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☑ Other (including a right to offset)    **Personal Guaranty**

Date debt was incurred _____      Last 4 digits of account number _____

**EXHIBIT 4**

Page 79

| Debtor 1 | **Daniel Halevy** | | | Case number (if known) | **2:24-bk-12075-VZ** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| | | | | | |
|---|---|---|---|---|---|
| 2.2 | **Athas Capital Group Inc.** | Describe the property that secures the claim: | $780,000.00 | $2,100,000.00 | $0.00 |
| | Creditor's Name | | | | |

**Describe the property that secures the claim:**

| 8561 Horner Street Los Angeles, CA 90035-3614 Los Angeles County |
|---|

**3990 Westerly Place
Suite 240
Newport Beach, CA
92660**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____        Last 4 digits of account number _____

| Add the dollar value of your entries in Column A on this page. Write that number here: | $3,355,000.00 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $3,355,000.00 |

**Part 2:** List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

**EXHIBIT 4**
Page 80

## LOAN DETAILS

| | |
|---|---|
| LoanID: | ▮▮▮▮▮ |
| Due Date: | 7/1/2024 |
| Current Principal Balance: | $751,371.71 |
| Escrow Balance: | ($32,691.79) |
| Unapplied Balance: | $10,084.66 |
| Late Charge Balance: | $0.00 |
| NSF Fee Balance: | $0.00 |
| Legal Fee Balance: | $285.00 |
| Accrual Balance: | $0.00 |
| Other Fees Balance: | $445.00 |
| Figure Good Thru Date: | 3/20/2026 |

## BORROWER INFO

| | |
|---|---|
| Primary Borrower Name: | HALEVY, DANIEL |
| Co Borrower Name: | |

## REINSTATEMENT FIGURES

| | |
|---|---|
| Total PITI Payments Due: | $214,762.23 |
| Default Interest Due: | |
| Total Corp Adv/Late/NSF/Atty Fees: | $730.00 |
| Unapplied Balance: | ($10,084.66) |
| Escrow Required: | $0.00 |
| Outstanding FC Fees & Costs: | $0.00 |
| **Total Reinstatement Figure\*:** | **$205,407.57** |

*\*(Total PITI + Fees + Unapplied + Escrow Required + FC Fees & Costs)*

The account may not be funded for the coming year

## PAYMENTS DUE DETAIL

| Due Date | Interest Rate | Prin & Int Pmt | Escrow Pmt | Total Payment | Principal Amount | Interest Amount | Principal Bal |
|---|---|---|---|---|---|---|---|
| 7/1/2024 | 12.967% | $8,618.64 | $1,547.54 | $10,166.18 | $499.44 | $8,119.20 | $750,872.27 |
| 8/1/2024 | 13.625% | $8,981.44 | $1,547.54 | $10,528.98 | $455.91 | $8,525.53 | $750,416.36 |
| 9/1/2024 | 13.625% | $8,981.44 | $1,547.54 | $10,528.98 | $461.09 | $8,520.35 | $749,955.27 |
| 10/1/2024 | 13.625% | $8,981.44 | $1,547.54 | $10,528.98 | $466.32 | $8,515.12 | $749,488.95 |
| 11/1/2024 | 13.625% | $8,981.44 | $1,547.54 | $10,528.98 | $471.62 | $8,509.82 | $749,017.33 |
| 12/1/2024 | 13.625% | $8,981.44 | $1,547.54 | $10,528.98 | $476.97 | $8,504.47 | $748,540.36 |
| 1/1/2025 | 13.625% | $8,981.44 | $1,547.54 | $10,528.98 | $482.39 | $8,499.05 | $748,057.97 |
| 2/1/2025 | 12.764% | $8,512.12 | $1,547.54 | $10,059.66 | $555.28 | $7,956.84 | $747,502.69 |
| 3/1/2025 | 12.764% | $8,512.12 | $1,547.54 | $10,059.66 | $561.19 | $7,950.93 | $746,941.50 |
| 4/1/2025 | 12.764% | $8,512.12 | $1,547.54 | $10,059.66 | $567.16 | $7,944.96 | $746,374.34 |
| 5/1/2025 | 12.764% | $8,512.12 | $1,547.54 | $10,059.66 | $573.19 | $7,938.93 | $745,801.15 |
| 6/1/2025 | 12.764% | $8,512.12 | $1,547.54 | $10,059.66 | $579.29 | $7,932.83 | $745,221.86 |
| 7/1/2025 | 12.764% | $8,512.12 | $1,547.54 | $10,059.66 | $585.45 | $7,926.67 | $744,636.41 |
| 8/1/2025 | 12.647% | $8,449.59 | $1,358.82 | $9,808.41 | $601.80 | $7,847.79 | $744,034.61 |
| 9/1/2025 | 12.647% | $8,449.59 | $1,358.82 | $9,808.41 | $608.14 | $7,841.45 | $743,426.47 |
| 10/1/2025 | 12.647% | $8,449.59 | $1,358.82 | $9,808.41 | $614.55 | $7,835.04 | $742,811.92 |
| 11/1/2025 | 12.647% | $8,449.59 | $1,980.69 | $10,430.28 | $621.03 | $7,828.56 | $742,190.89 |
| 12/1/2025 | 12.647% | $8,449.59 | $1,980.69 | $10,430.28 | $627.57 | $7,822.02 | $741,563.32 |
| 1/1/2026 | 12.647% | $8,449.59 | $1,980.69 | $10,430.28 | $634.19 | $7,815.40 | $740,929.13 |
| 2/1/2026 | 12.159% | $8,193.38 | $1,980.69 | $10,174.07 | $686.16 | $7,507.22 | $740,242.97 |
| 3/1/2026 | 12.159% | $8,193.38 | $1,980.69 | $10,174.07 | $693.11 | $7,500.27 | $739,549.86 |
| | | Total Payments Due: | | $214,762.23 | Count: | 21 | |

\*\*Please add any outstanding foreclosure fees and costs to this reinstatement



**EXHIBIT 5**
Page 81