Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

Counsel to Debtors Broadway Avenue
Investments, LLC, SLA Investments, LLC,
and Negev Investments, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br><br><br>Debtors and Debtors in Possession. | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ;<br>2:24-bk-12082-VZ; 2:24-bk-12091-VZ;<br>2:24-bk-12074-VZ; 2:24-bk-12075-VZ<br>and 2:24-bk-12076-VZ<br><br>Chapter 11 |
| ☐ Affects All Debtors.<br>☐ Affects Seaton Investments, LLC (*Dismissed*)<br>☐ Affects Colyton Investments, LLC (*Dismissed*)<br>☒ Affects Broadway Avenue Investments, LLC<br>☒ Affects SLA Investments, LLC<br>☒ Affects Negev Investments, LLC<br>☒ Affects Alan Gomperts<br>☒ Affects Daniel Halevy<br>☒ Affects Susan Halevy | **DECLARATION OF DERRICK TALERICO IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AGREEMENT WITH ARCHWAY BROADWAY LOAN SPE, LLC – ANCILLARY DOCUMENTS**<br><br>Hearing:<br>Date:        June 23, 2026<br>Time:        11:00 a.m.<br>Courtroom:   1368<br>             255 E. Temple Street<br>             Los Angeles, CA 90012 |

1

## <u>DECLARATION OF DERRICK TALERICO</u>

I, Derrick Talerico, hereby declare as follows:

1.    I am an attorney duly admitted to practice law in the state of California and am admitted inter alia to the United States District Court for the Central District of California, and therefore to practice in the United States Bankruptcy Court for the Central District of California. I have personal knowledge of the facts stated herein and knowledge based on business records of my law practice and of my law firm Weintraub Zolkin Talerico & Selth LLP.

2.    I am the general bankruptcy counsel for Broadway Avenue Investments, LLC, SLA Investments, LLC, and Negev Investments, LLC, the above-captioned corporate chapter 11 debtors and debtors-in-possession.

3.    On June 2, 2026, Broadway Avenue Investments, LLC ("**Broadway**"), SLA Investments, LLC ("**SLA**"), Negev Investments, LLC ("**Negev**," together with Broadway and SLA, the "**Corporate Debtors**"), Susan Halevy ("**Susan**" or "**Susan Halevy**"), Daniel Halevy ("**Daniel**" or "**Daniel Halevy**"), and Alan Gomperts ("**Alan**" or "**Alan Gomperts**," together with Susan and Daniel, the "**Individual Debtors**," and the Individual Debtors, collectively with the Corporate Debtors, the "**Debtors**"), the debtors and debtors-in-possession in the pending jointly administered chapter 11 bankruptcy cases herein (the "**Cases**"), submitted their *Motion to Approve Settlement Agreement and Supporting Documents with Archway Broadway Loan SPE, LLC* ("**Motion**") [Dkt. 666].

4.    I make this declaration in support of the Motion. Terms not defined herein shall have the same meanings ascribed to them in the Motion.

5.    The Motion seeks approval of the Settlement Agreement, attached thereto as Exhibit 1. The Settlement Agreement is modified by the First Amendment to the Settlement Agreement filed concurrently as Exhibit 1 to the *Declaration of Derrick Talerico in Support of Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC – First Amendment to Settlement Agreement*. The Settlement Agreement sets forth a global settlement (the "**Settlement**") of the claims of Archway Broadway Loan SPE, LLC, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC and its affiliates' ("**Archway**") against each of the Debtors, that have dominated the course of these Cases. The Settlement Agreement

is the basis for a confirmable joint plan that will resolve these Cases. Due to the complexity of the Settlement, the Settlement Agreement contemplates the execution, and in certain cases recording, of more than twenty documents necessary to effectuate the terms of the Settlement Agreement (the "**Ancillary Documents**").

6.      The Debtors and Archway have continued to draft, negotiate, modify, and edit the Ancillary Documents, only just arriving at the agreed form of the Ancillary Documents (subject to further modification as the Parties may agree). The Ancillary Documents are as follows and attached hereto as Exhibits 1-22, corresponding to their exhibit numbers as set forth in the Settlement Agreement:

- **Exhibit 1** - A-Note;
- **Exhibit 2** - B-Note;
- **Exhibit 3** - Broadway Memorandum of Modification, notarized for recording purposes;
- **Exhibit 4** - Amended Broadway Guaranty as to A-Note;
- **Exhibit 5** - Alan/Sue/Daniel Guaranty as to B-Note;
- **Exhibit 6** - New Canfield Deed of Trust, notarized for recording purposes;
- **Exhibit 7** - New Bagley Deed of Trust, notarized for recording purposes;
- **Exhibit 8** - New Roxbury Deed of Trust, notarized for recording purposes;
- **Exhibit 9** - Roxbury Estoppel Certificate from the others on title, notarized for recording purposes;
- **Exhibit 10** - New Palm Deed of Trust, notarized for recording purposes;
- **Exhibit 11** - New Greenfield Deed of Trust, notarized for recording purposes;
- **Exhibit 12** - New Horner Deed of Trust, notarized for recording purposes;
- **Exhibit 13** - New Canon Drive Deed of Trust, notarized for recording purposes;
- **Exhibit 14** - New Linden Deed of Trust;
- **Exhibits 15 and 16** - Certifications of Trust for D&S Trust and G&H Trust;
- **Exhibit 17** – [INTENTIONALLY DELETED]

3

- **Exhibit 18** - Roxbury Certification of Trust for the Haskell and Nurit Muhtar Revocable Trust;

- **Exhibit 19** - Roxbury Pledge and UCC-1;

- **Exhibit 20** - Guarantor Loan Modification, and one or more Memorandum of Modification of Deed of Trust each of which memorandum is notarized for recording purposes;

- **Exhibit 21** - New Oakhurst Deed of Trust, notarized for recording purposes.

- **Exhibit 22** - Canon Side Letter dated as of June 1, 2026

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of June, 2026, at Los Angeles, California.


*/s/ Derrick Talerico*
DERRICK TALERICO

4

# EXHIBIT 1

EXHIBIT 1 - Page 5

## AMENDED AND RESTATED PROMISSORY NOTE
### (A NOTE)

$11,000,000.00                                                                          As of June 1, 2026

**BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("***Borrower***"), executed that certain Promissory Note in the original amount $($16,942,500.00 (the "***Original Note***") dated as of July 21, 2021, in favor of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("***Lender***"). The Original Note, pursuant to the terms of the Settlement Agreement, dated as of June 1, 2026, is splitting into (a) this Amended and Restated Promissory Note (A Note) (the "***A Note***"), and (b) the separate Amended and Restated Promissory Note (B Note) ("***B Note***"), which Original Note is hereby amended, restated, and superseded in its entirety as follows:

FOR VALUE RECEIVED, Borrower, promises and agrees to pay to the order of Lender, in lawful money of the United States of America, the principal sum of Eleven Million and No/100 Dollars ($11,000,000.00) (the "A ***Loan***"), or so much thereof as may be advanced and outstanding under the Settlement Agreement of even date herewith between Borrower and Lender (as amended from time to time), with interest on the unpaid principal sum owing thereunder at the rate or rates or in the amounts computed in accordance with the Settlement Agreement, together with all other amounts due Lender under the Loan Agreement and Settlement Agreement, all payable in the manner and at the time or times provided in the Loan Agreement and Settlement Agreement. Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Loan Agreement and Settlement Agreement.

Borrower shall pay to Lender all amounts due and unpaid under this A Note and the Loan Agreement as set forth in the Settlement Agreement. Unless otherwise specified in writing by Lender, all payments hereunder shall be paid to Lender at its office located at 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan. Lender reserves the right to require any payment on this A Note, whether such payment is a regular installment, prepayment, or final payment, to be by wired federal funds or other immediately available funds.

Borrower, co-makers, sureties, endorsers and guarantors, and each of them, expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER, except as otherwise provided in the Loan Agreement or other Loan Documents and the Settlement Agreement; such parties are and shall be jointly, severally, directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder or in connection with any right, lien, interest or property at any and all times had or existing as security for any amount called for hereunder.

This A Note evidences a portion of the advances made, interest due, and all amounts otherwise owed to Lender under the Loan Agreement and Settlement Agreement. This A Note is executed in conjunction with the Loan Agreement and Settlement Agreement and is secured by the liens and security interests created under the Loan Documents (including those arising under the Security Instrument) and as referenced in the Settlement Agreement. Reference is made to the Loan Agreement and Settlement Agreement for provisions

5849908v3 | 101415-0002  737 S Broadway - A Note

EXHIBIT 1 - Page 6

relating to repayment of the indebtedness evidenced by this A Note, including mandatory repayment, acceleration following default, late charges, default rate of interest, limitations on interest, and restrictions on prepayment.

Lender reserves the right, at Lender's sole expense, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this A Note or this debt or the debt evidenced hereby.

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents, but subject to the limitations set forth in the Settlement Agreement. Neither this A Note, the Loan Agreement nor any of the other Loan Documents, or the Settlement Agreement shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this A Note and the other Loan Documents. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Loan, or on acceleration of the maturity of the Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation. Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Loan with (or, if the Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Loan. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Loan.

Borrower hereby agrees that any claims, controversies, disputes, or questions of interpretation, whether legal or equitable, arising out of, concerning or related to this Note and ANY MATTER RELATED THERETO, or as to any document attached or referenced herein, shall be heard by a single referee by consensual general judicial reference pursuant to the provisions of California Code of Civil Procedure § 638 et seq., who shall determine all issues of fact or law and to report a statement of decision. The referee shall also have the power to hear and determine proceedings for ancillary relief, including, but not limited to, applications for attachment, issuance of injunctive relief, appointment of a receiver, and/or claim and delivery. The costs of the proceeding shall be borne equally by the parties to the dispute, subject to the discretion of the referee to allocate such costs based on a determination as to the prevailing party(ies) in the proceeding.

**THIS WRITTEN A NOTE ALONG WITH THE LOAN AGREEMENT AND THE SETTLEMENT AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE**

5849908v3 | 101415-0002  2

737 S Broadway - A Note

**EXHIBIT 1 - Page 7**

**PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

This A Note shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles.  In the event of any conflict between the terms of this A Note and the Settlement Agreement, the terms of the Settlement Agreement shall control.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

5849908v3 | 101415-0002 3

737 S Broadway - A Note

**EXHIBIT 1 - Page 8**

EXECUTED as of the date first written above.

**BORROWER:**

**BROADWAY AVENUE INVESTMENTS LLC**,
a California limited liability company

By: _____
Name: Alan Gomperts
Title: Manager

# EXHIBIT 2

EXHIBIT 2 - Page 10

## AMENDED AND RESTATED PROMISSORY NOTE
### (B NOTE)

$10,300,000.00                                                            As of June 1, 2026

**BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("*Borrower*"), executed that certain Promissory Note in the original amount $($16,942,500.00 (the "*Original Note*") dated as of July 21, 2021, in favor of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*"). The Original Note, pursuant to the terms of the Settlement Agreement, dated as of June 1, 2026 ("*Settlement Agreement*"), is splitting into (a) this Amended and Restated Promissory Note (B Note) (the "*B Note*"), and (b) the separate Amended and Restated Promissory Note (A Note) ("A *Note*"), which Original Note is hereby amended, restated and superseded in its entirety as follows:

FOR VALUE RECEIVED, Borrower, promises and agrees to pay to the order of Lender, in lawful money of the United States of America, the principal sum of Ten Million Three Hundred Thousand and No/100 Dollars ($10,300,000.00) (the "*B Loan*"), or so much thereof as may be advanced and outstanding under the Settlement Agreement of even date herewith between Borrower and Lender (as amended from time to time), with interest on the unpaid principal sum owing thereunder at the rate or rates or in the amounts computed in accordance with the Settlement Agreement, together with all other amounts due Lender under the Loan Agreement and Settlement Agreement, all payable in the manner and at the time or times provided in the Loan Agreement and Settlement Agreement. Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Loan Agreement and Settlement Agreement.

Borrower shall pay to Lender all amounts due and unpaid under this B Note and the Loan Agreement as set forth in the Settlement Agreement. Unless otherwise specified in writing by Lender, all payments hereunder shall be paid to Lender at its office located at 1875 Century Park East. Suite #900, Los Angeles, CA 90067, Attention: Joshua Kohan. Lender reserves the right to require any payment on this B Note, whether such payment is a regular installment, prepayment, or final payment, to be by wired federal funds or other immediately available funds.

Borrower, co-makers, sureties, endorsers and guarantors, and each of them, expressly waive demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of intent to accelerate the maturity hereof, notice of the acceleration of the maturity hereof, bringing of suit and diligence in taking any action to collect amounts called for hereunder and in the handling of securities at any time existing in connection herewith, ALL OF WHICH ARE HEREBY EXPRESSLY WAIVED BY BORROWER, except as otherwise provided in the Loan Agreement or other Loan Documents and the Settlement Agreement; such parties are and shall be jointly, severally, directly and primarily liable for the payment of all sums owing and to be owing hereon, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder or in connection with any right, lien, interest or property at any and all times had or existing as security for any amount called for hereunder.

This B Note evidences a portion of the advances made, interest due, and all amounts otherwise owed to Lender under the Loan Agreement and Settlement Agreement. This B Note is executed in conjunction with the Loan Agreement and Settlement Agreement and is secured by the liens and security interests created under the Loan Documents (including those arising under the Security Instrument) and as referenced in the

5849909v2 | 101415-0002 737 S Broadway - Promissory Note

**EXHIBIT 2 - Page 11**

Settlement Agreement. Reference is made to the Loan Agreement and Settlement Agreement for provisions relating to repayment of the indebtedness evidenced by this B Note, including mandatory repayment, acceleration following default, late charges, default rate of interest, limitations on interest, and restrictions on prepayment.

Lender reserves the right, at Lender's sole expense, exercisable in Lender's sole discretion and without notice to Borrower or any other person, to sell participations, to assign its interest or both, in all or any part of this B Note or this debt or the debt evidenced hereby.

Borrower agrees to pay an effective rate of interest equal to the sum of the Interest Rate and any additional rate of interest resulting from any other charges of interest or in the nature of interest paid or to be paid in connection with the Loan and any other fees or amounts to be paid by Borrower pursuant to any of the other Loan Documents.  Neither this B Note, the Loan Agreement nor any of the other Loan Documents, or the Settlement Agreement shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with all applicable laws governing the maximum rate or amount of interest payable on the Indebtedness evidenced by this B Note and the other Loan Documents.  If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any interest or other charge or amount provided for in any Loan Document, whether considered separately or together with other charges or amounts provided for in any other Loan Document, or otherwise charged, taken, reserved or received in connection with the Loan, or on acceleration of the maturity of the Loan or as a result of any prepayment by Borrower or otherwise, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate any such violation. Amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of the Loan without the payment of the Prepayment Premium (or, if the Loan has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of the Loan Agreement and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under the Loan Agreement and any other Loan Documents reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, and any amount paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness, shall be deemed to be allocated and spread ratably over the stated term of the Loan.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Loan.

Borrower hereby agrees that any claims, controversies, disputes, or questions of interpretation, whether legal or equitable, arising out of, concerning or related to this Note and ANY MATTER RELATED THERETO, or as to any document attached or referenced herein, shall be heard by a single referee by consensual general judicial reference pursuant to the provisions of California Code of Civil Procedure § 638 et seq., who shall determine all issues of fact or law and to report a statement of decision. The referee shall also have the power to hear and determine proceedings for ancillary relief, including, but not limited to, applications for attachment, issuance of injunctive relief, appointment of a receiver, and/or claim and delivery. The costs of the proceeding shall be borne equally by the parties to the dispute, subject to the discretion of the referee to allocate such costs based on a determination as to the prevailing party(ies) in the proceeding.

**THIS WRITTEN B NOTE ALONG WITH THE LOAN AGREEMENT AND THE SETTLEMENT AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

This B Note shall be governed by and construed in accordance with the laws of the State of California without regard to conflicts of laws principles. In the event of any conflict between the terms of this B Note and the Settlement Agreement, the terms of the Settlement Agreement shall control.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

EXECUTED as of the date first written above.

**BORROWER:**

**BROADWAY AVENUE INVESTMENTS LLC**,
a California limited liability company

By: _____
Name: Alan Gomperts
Title: Manager

# EXHIBIT 3

EXHIBIT 3 - Page 15

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

ARCHWAY REAL ESTATE INCOME
 FUND I SPE I, LLC
1875 Century Park East, 9th Floor
Los Angeles, CA 90067
Attention: Joshua Kohan, Vice President

Assessor's Parcel No.  5144-014-030

_____
SPACE ABOVE FOR RECORDER'S USE ONLY

**MEMORANDUM OF SETTLEMENT AGREEMENT**

THIS MEMORANDUM OF SETTLEMENT AGREEMENT ("Memorandum") is entered into as of June 1, 2026, by and between BROADWAY AVENUE INVESTMENTS LLC, a California limited liability company ("Borrower"), on the one hand, and ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC, a Delaware limited liability company ("Lender"), on the other hand.

A.      Lender has heretofore made a loan (the "Broadway Loan") to Borrower in the original maximum principal sum of Sixteen Million Nine Hundred Forty-Two Thousand Five Hundred and No/100 Dollars ($16,942,500.00) evidenced by, among other things, (i) that certain Promissory Note dated July 21, 2021 (together with any and all amendments thereto or modifications thereof, the "Note"), in the original principal face amount of $16,942,500.00, executed by Borrower to and in favor of Lender, and (ii) that certain Loan Agreement dated July 21, 2021, by and between Borrower and Lender (together with any and all amendments thereto or modifications thereof, the "Loan Agreement").

B.      As security for, among other things, the indebtedness and obligations under the Broadway Loan, Borrower, as trustor, executed and delivered to and in favor of Lender, as beneficiary, that certain  Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated July 23, 2021, and recorded on July 26, 2021, as Instrument No. 20211142009 in the Official Records of Los Angeles County, California (together with any and all amendments thereto or modifications thereof, the "Deed of Trust"), encumbering, without limitation, certain real property more particularly described in **Exhibit "A"** attached hereto and incorporated herein by this reference (as more particularly described therein, the "Property").

C.      Lender and Borrower, among others, have entered into that certain Settlement Agreement dated as of June 1, 2026 ("2026 Settlement Agreement"), pursuant to which Lender has agreed to (i) revise the terms of repayment of the Loan, and (ii) make other changes to the Loan Documents.  All undefined capitalized terms herein shall have the same meaning ascribed to them in the 2026 Settlement Agreement.

5978733v1 | 101415-0002                    1

**EXHIBIT 3 - Page 16**

D.      This Memorandum is intended to make a matter of public record the execution of the 2026 Settlement Agreement by Borrower, Lender, and others in connection with the Loan.  Reference is made to the 2026 Settlement Agreement for the particulars thereof.

E.      This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and this Memorandum shall not be binding on any party until all parties have executed it.

IN WITNESS WHEREOF, this Memorandum is executed by Lender and Borrower as of the day and year first above written.

**BORROWER:**

BROADWAY AVENUE INVESTMENTS LLC.
a California limited liability company


By:_____
Name: Alan Gomperts
Its: Manager


**LENDER:**
ARCHWAY REAL ESTATE INCOME FUND I SPE I, LLC,
A Delaware limited liability company


By: _____
Name: Joshua Kohan
Title: Authorized Signer


[ALL SIGNATURES MUST BE ACKNOWLEDGED]

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                              ) ss
COUNTY OF _____   )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public

5978733v1 | 101415-0002                              3

**EXHIBIT 3 - Page 18**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                                        ) ss

COUNTY OF _____    )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public

**EXHIBIT 3 - Page 19**

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF LOS ANGELES, CITY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF BLOCK 25 OF THE HUBER TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 280 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF BROADWAY, 80 FEET WIDE, WITH THE DIVIDING LINE ESTABLISHED BY AGREEMENT AND DEED BETWEEN THE LOS ANGELES TRUST COMPANY AND NIAGARA BUILDING COMPANY, RECORDED DECEMBER 11, 1908 IN BOOK 3568, PAGE 93 OF DEEDS, RECORDS OF SAID COUNTY, SAID INTERSECTION BEING DISTANT NORTH 37° 48' EAST ALONG SAID NORTHWESTERLY LINE, 180.47 FEET, MORE OR LESS, FROM THE NORTHERLY LINE OF 8TH STREET, 60 FEET WIDE, AS SHOWN ON MAP OF A RESUBDIVISION OF A PORTION OF BLOCK 25, HUBER TRACT, RECORDED IN BOOK 5, PAGE 15 OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER; THENCE NORTH 37° 48' EAST ALONG SAID NORTHWESTERLY LINE, 60 FEET, MORE OR LESS, TO THE MOST EASTERLY CORNER OF LOT 4 IN SAID BLOCK 25 OF HUBER TRACT; THENCE NORTH 52° 12' WEST ALONG THE NORTHEASTERLY LINE OF SAID LOT 4, A DISTANCE OF 165 FEET, MORE OR LESS, TO THE MOST NORTHERLY CORNER OF SAID LOT 4; THENCE SOUTH 37° 48' WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 4 AND OF LOT 3 OF BLOCK 25 OF SAID HUBER TRACT, 60 FEET, MORE OR LESS, TO SAID DIVIDING LINE; THENCE SOUTH 52° 12' EAST, ALONG SAID DIVIDING LINE, 165 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

APN: 5144-014-030

EXHIBIT 3 - Page 20

# EXHIBIT 4

EXHIBIT 4 - Page 21

## AMENDED AND RESTATED CONTINUING GUARANTY (A NOTE)

**ALAN GOMPERTS,** an individual, **DANIEL HALEVY,** an individual, and **SUE HALEVY,** an individual (collectively, "***Guarantor***"), executed this Amended and Continuing Guaranty (A Note) (this "***Guaranty***") on April __, 2026 (the "***Effective Date***") in favor of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("***Lender***").

Alan Gomperts**,** an individual, Daniel Halevy**,** an individual, and **David Halevy,** an individual (collectively, "***Original Guarantor***"), executed that certain Continuing Guaranty, dated as of July 21, 2021 (this "***Original Guaranty***") on July 21, 2021, in favor of Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("***Original Lender***").  The Original Guaranty is hereby amended and restated in its entirety as follows:

BACKGROUND RECITALS

A.      Lender and **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("***Borrower***") have entered into the Loan Agreement (the "***Loan Agreement***"), dated as of the July 21, 2025 date hereof governing (among other things) the Loan in the amount of $16,942,500.00 (the "***Loan***").   The Loan was split into a and A Loan and B Loan pursuant to that certain Settlement Agreement, dated as of the date hereof (the "***Settlement Agreement***"), as evidenced by that certain (i) Amended and Restated Promissory Note (A Note) in the amount of $11,000,000.00 (the "***A Note***") and (ii) Amended and Restated Promissory Note (B Note) in the amount of $10,300,000.00 (the "***B Note***") the

B.      The A Note is secured in part by that certain deed of trust lien given by the Borrower to the Lender (the "***Security Instrument***"), and more particularly described in the Loan Agreement. The Security Instrument encumbers Borrower's interest in and to the "Property" described in the Security Instrument (the "***Property***").

C.      Lender would not have entered into the Settlement Agreement or continued the Loan to Borrower without Guarantor making and delivering this Guaranty.

Therefore, Guarantor (1) acknowledges the receipt and sufficiency of good and adequate consideration for making this Guaranty, and (2) agrees as follows:

1.      Definitions.  Capitalized terms not otherwise defined in this Guaranty will have the meanings set forth in the Loan Agreement.  Within this Guaranty, words of any gender include all other genders and words in the singular number include the plural, unless the context otherwise requires.  The following terms have the following meanings:

"***Bankruptcy Event***" means any of the following events:  (i) any Borrower Party files a petition for relief under Applicable Bankruptcy Law; (ii) any party (other than Lender) files an involuntary petition for relief under Applicable Bankruptcy Law against any Borrower Party and such petition is not dismissed within 90 days after being filed; (iii) a court of competent jurisdiction enters an order for relief under any Applicable Bankruptcy Law which is related in any way to a petition filed under (i) or (ii) above; (iv) any Borrower Party, at any time, requests or consents to any composition, rearrangement, extension, reorganization or other relief of any debtor; (v) any Borrower Party (A) is generally not paying its debts as they become due, (B) is insolvent, (C) fraudulently transfers any of its assets to the detriment of any of its creditors, (D) makes an assignment for the benefit of creditors, or (E) admits in writing that it is unable to pay its debts as they become due; or (vi) a receiver, trustee or custodian is appointed for, or takes possession of, all or substantially all of a Borrower Party's assets or any of the Property, either in a proceeding a Borrower Party brings, or any other Person (except for Lender) brings against a Borrower Party, and any such appointment is not discharged or such possession is not terminated within 60 days

5905764v2 | 101415-0002  1

after commencing, or the Borrower Party consents to or acquiesces in such appointment or possession (unless such consent or acquiescence is in connection with any Lender initiated proceeding).  A Bankruptcy Event may exist even if an Event of Default cannot be declared because of Applicable Bankruptcy Law.

"*Conveyance Event*" means that (1) legal or equitable title to any part of, or any interest in, the Collateral is vested in any Person other than Borrower or Lender, or (2) Borrower creates or permits any lien (except for the lien for Taxes which are not delinquent), security interest or other encumbrance against or covering the Collateral.

"*Enforcement Costs*" means all reasonable attorneys' fees, legal expenses and other costs Lender incurs to collect or enforce the Guaranteed Obligations or the Loan Documents.

"*Guaranteed Obligations*" means all (a) 100% of the Indebtedness under the A Note and Interest accrued under the A Note, and/or (b) the operating costs of the Property, and/or (c) Enforcement Costs, and/or (d) Recourse Amounts.

"*Indebtedness*" means all obligations, liabilities and indebtedness of Borrower arising under the Loan Documents (including all Additional Costs).

"*Interest*" means all accrued and unpaid interest on the Principal Amount.

"*Loan Documents*" means the Loan Agreement, the Security Instrument, the Hazardous Materials Indemnity Agreement, and all other instruments evidencing, guarantying, securing, governing or relating to the Loan, and all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Loan Documents.

"*Liquid Assets*" means unencumbered (a) cash on hand or on deposit (including certificates of deposit which mature in less than twelve months) in commercial banks operating in the United States, (b) readily marketable securities issued by the United States, and (c) readily marketable commercial paper rated A-1 by Standard & Poor's Corporation (or a similar rating by any similar organization that rates commercial paper).

"*Recourse Amounts*" any loss, damage, cost, expense, liability, claim or other obligation (including attorneys' fees and costs reasonably incurred), causes of action, suits, claims, demands and judgments of any nature or description whatsoever, which may be imposed upon, incurred by or awarded against Lender or any affiliate thereof as a result of, arising out of or in connection with the following:

      (a)      misapplication or misappropriation of Rents, security deposits, or other income, issues, profits and revenues derived from the Property at any time an Event of Default by Borrower exists, provided that any prepaid rent paid more than 1 month in advance as of the date of an Event of Default hereunder by Borrower shall be considered to have been collected after the event of Borrower's default;

      (b)      fraud or material misrepresentation of Borrower or Guarantor;

      (c)      (i) misapplication or misappropriation of any insurance policies by reason of damages, loss or destruction to any portion of the Property or the Improvements thereon to the full extent of such misapplied or misappropriated proceeds, or (ii) the misapplication or misappropriation of proceeds or awards resulting from the condemnation or taking in lieu of condemnation of any portion of the Property, to the full extent of such misapplied or misappropriated proceeds or awards;

(d)    intentional physical waste of the Property or any portion thereof, and all costs, including reasonable attorney's fees, incurred by Lender to repair or remediate such intentional physical waste, to the full extent of the actual loss incurred by Lender as a result thereof;

(e)    any taxes, assessments or insurance premiums, to the extent not covered by amounts paid into escrow by Borrower to Lender, for which Borrower is liable under the Note, the Security Instrument or any other loan document executed in connection therewith, but only to the extent that Revenue from the Property is sufficient to pay such taxes, assessments or insurance premiums;

(f)    failure to pay charges for labor or materials or other charges that can create liens on any portion of the Property;

(g)    loss arising under the Hazardous Materials Indemnity Agreement executed by Borrower in favor of Lender, or Borrower's breach of the hazardous substances covenants, warranties or representation provisions contained in the Security Instrument or other loan documents executed in connection with the Note and Security Instrument, which loss is not caused by Lender after Lender takes title to the Property;

(h)    loss by fire or casualty to the extent not compensated by insurance proceeds collected by Lender;

(i)    any loss resulting from any Guarantor (or any Person comprising any Guarantor), Borrower or any Affiliate of any of the foregoing, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with the Guaranty, the Note, the Security Instrument or any other Loan Document, seeking a defense, judicial intervention or injunctive or other equitable relief of any kind, or asserting in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the Loan, but only if and to the extent that a court of competent jurisdiction determines that such claims were frivolous (i.e., without any merit) and in bad faith; and

(j)    all costs and fees, including without limitation, reasonable attorneys' fees incurred by Lender in the enforcement of subparagraphs (a) through (j) above.

Notwithstanding the foregoing, Recourse Events shall mean the full amount of the Indebtedness upon the occurrence of either of the following events (the "***Full Recourse Events***"):

(a)     a Bankruptcy Event;

(b)     Borrower fails to obtain Lender's prior consent to any subordinate financing secured by the Property; or

(c)     a Conveyance Event; or

(d)     Borrower fails to comply with the "single purpose entity/separateness" covenants set forth in Section 4.1(b) of the Loan Agreement beyond the expiration of all applicable notice cure periods. and such failure results in (or is cited as a factor by a court of competent jurisdiction) the substantive consolidation of Borrower with another Person; or

(e)     Borrower fails to comply with the cash management provisions set forth in Section 6.1 and Section 6.2 of the Loan Agreement beyond the expiration of all applicable notice cure periods.

"***Transfer Event***" means the conveyance of any Collateral to Lender or another Person through a foreclosure (or deed in lieu), receivership, bankruptcy or other voluntary or involuntary Borrower action.

2.      Inducement.  Guarantor has an economic investment or interest in Borrower, and an interest in the success of the Property, and Guarantor will substantially benefit from Lender's agreement to make the Loan to Borrower.

3.      Guaranty.  In order to induce Lender to make the Loan to Borrower, Guarantor absolutely, unconditionally and irrevocably guarantees and agrees to pay and perform the Guaranteed Obligations. Notwithstanding anything to the contrary in this Guaranty or any of the other Loan Documents, Guarantor will be liable for all of the Indebtedness and the Enforcement Costs if a Conveyance Event, or a Bankruptcy Event, occurs.

4.      Waivers.

(a)     Guarantor, with respect to the Guaranteed Obligations and the Indebtedness, waives:  (i) **PRESENTMENT FOR PAYMENT**; (ii) **DEMAND**; (iii) **NOTICE OF DEMAND, DISHONOR AND NONPAYMENT**; (iv) **NOTICE OF INTENTION TO ACCELERATE**; (v) **NOTICE OF ACCELERATION**; (vi) **NOTICE OF DISPOSITION OF COLLATERAL**; (vii) **THE DEFENSE OF IMPAIRMENT OF COLLATERAL**; (viii) **THE RIGHT TO A COMMERCIALLY REASONABLE SALE OF COLLATERAL**; (ix) **PROTEST AND NOTICE OF PROTEST**; and (x) **AND DILIGENCE IN COLLECTING, AND BRINGING SUIT AGAINST ANY OTHER PARTY**.

(b)     Lender is not obligated to notify Guarantor of (i) Lender's acceptance of this Guaranty, (ii) any credit extended on the faith of this Guaranty, or (iii) Borrower's failure to pay or perform any Indebtedness which constitutes Guaranteed Obligations.  Lender is not obligated to use diligence in preserving any Person's liability for the Indebtedness or the Guaranteed Obligations.  Lender is not obligated to use diligence in bringing suit to enforce collection, or performance, of the Indebtedness or the Guaranteed Obligations.

(c)     Guarantor waives **ALL DEFENSES GIVEN OR REDUCTIONS IN THE GUARANTEED OBLIGATIONS AVAILABLE TO SURETIES OR GUARANTORS AT LAW OR IN EQUITY** other than the actual payment and performance of the Guaranteed Obligations, including **ALL DEFENSES BASED UPON QUESTIONS AS TO (i) THE VALIDITY, LEGALITY OR ENFORCEABILITY OF THE INDEBTEDNESS OR THE**

**GUARANTEED OBLIGATIONS, OR (ii) THE VALUE OF ANY COLLATERAL**. Guarantor is primarily liable under this Guaranty.

(d)        At any time, Lender may, in its sole discretion, without Guarantor's prior consent, and without impairing, modifying, releasing or otherwise affecting Guarantor's liability under this Guaranty:

(i)        alter, compromise, accelerate, renew, extend, or change the time or manner for the payment of, the Indebtedness;

(ii)        increase or reduce the rate of interest on the Indebtedness;

(iii)        take, surrender, exchange, withdraw, subordinate, alter, modify or eliminate security;

(iv)        (1) add, release, discharge, or (2) settle or compromise with, any Borrower Party or other Person liable for the Indebtedness or the Guaranteed Obligations;

(v)        make any change to the Loan Documents or the manner in which Lender does business with Borrower; or

(vi)        apply any moneys received from Borrower or any other source, or from any security or collateral, in the manner Lender determines, without being required to marshal securities or assets or to apply any part of the moneys or security to any particular part of the Guaranteed Obligations.

Lender is not required to retain, hold, protect, exercise due care with respect thereto, perfect security interests in or otherwise assure or safeguard any security for the Indebtedness or the Guaranteed Obligations; and Guarantor's obligations under this Guaranty and any other Loan Documents will not be affected by, and Guarantor will not have any recourse from, Lender's failure (x) to do any of the foregoing with respect to any security for the Indebtedness or the Guaranteed Obligations, or (y) to exercise or not exercise any right or remedy of Lender under the Loan Documents, at law or in equity.

5.        Guaranty Absolute.  Guarantor's liability under this Guaranty is absolute, and will not be modified, released or impaired, for any reason, including because:

(a)        any Person (including any Borrower Party) dies, or is or becomes incapacitated, disabled, dissolved or terminated;

(b)        Lender fails to file or enforce a claim against the estate (either in administration, bankruptcy or other proceeding) of any Borrower Party or another Person;

(c)        Lender cannot recover the Indebtedness from any Borrower Party or another Person for any reason, including any statute of limitations or Applicable Bankruptcy Law;

(d)        Any Borrower Party or another Person is entitled to any defense, setoff or counterclaim related to the Loan, the Indebtedness or the Guaranteed Obligations;

(e)        a Conveyance Event or a Transfer Event occurs;

(f)        Borrower Party (other than Guarantor) or another Person liable for the payment or performance of Indebtedness or the Guaranteed Obligations is released or discharged by operation of law or otherwise (other than a discharge resulting from the payment of the Indebtedness);

(g)        this Guaranty or any other Loan Document is modified, extended, amended, released or waived; or

(h)        Lender fails to give Guarantor notice of an Event of Default under any Loan Document.

6.        Subordination.  Until the Indebtedness is repaid in full (and including all interest accruing, after any Bankruptcy Event, on the Indebtedness):

(a)      Guarantor subordinates all rights to repayment of any current or future indebtedness from Borrower to Guarantor to Lender's prior right to receive or require payment in full of the Indebtedness.

(b)      Guarantor shall not accept any payment or satisfaction of any indebtedness of Borrower to Guarantor.

(c)      Guarantor shall not accept any security for any indebtedness of Borrower to Guarantor.

(d)      If Guarantor receives any payment, satisfaction or security for any indebtedness of Borrower to Guarantor, then Guarantor shall immediately deliver the payment, satisfaction or security to Lender.  Lender will apply the payment, satisfaction or security as set forth in the Loan Agreement.  Guarantor will hold any payment, satisfaction or security Guarantor receives in trust for Lender until the payment, satisfaction or security is delivered to Lender.

7.      <u>Waiver of Right of Subrogation</u>.  To the fullest extent permitted by Applicable Law, Guarantor waives all rights at law or in equity to seek subrogation, contribution, indemnification or any other form of reimbursement or repayment from any Borrower Party or any other guarantor of, or any other party secondarily liable for, the payment or performance of the Indebtedness or the Guaranteed Obligations until the Indebtedness has been paid and performed in full.  When the Indebtedness has been indefeasibly paid and fully performed, Guarantor will be subrogated to the rights of Lender against Borrower and any endorsers, sureties or other guarantors to the extent of the payments that Guarantor makes on the Guaranteed Obligations.

8.      <u>No Usury</u>.  Lender and Guarantor intend that this Guaranty and the other Loan Documents strictly comply with applicable usury law.  Therefore, Lender and Guarantor agree that:  (i) none of the terms of this Guaranty or the other Loan Documents create a contract to pay for the use, forbearance or detention of money, or interest at a rate in excess of the Maximum Rate; and (ii) no Person (including any Borrower Party) will ever be obligated or required to pay interest on the Indebtedness or any other sums due under the Loan Documents at a rate in excess of the Maximum Rate.  Lender expressly disavows any intention to charge or collect excessive unearned interest or finance charges on any portion of the Indebtedness.  If at any time the interest received for the Guaranteed Obligations exceeds the Maximum Rate, then Lender will, at its option, either refund to Guarantor the amount of the excess or credit the amount of the excess against the Guaranteed Obligations.  Guarantor agrees that the Loan and the Guaranty are not usurious and agrees that if, at any time, Guarantor believes that the Loan or the Guaranty is usurious, it shall give Lender (a) notice of the condition and (b) 60 days in which to make an appropriate refund or other adjustment, if necessary, to correct the condition.

9.      <u>Representations and Warranties</u>.  On the Effective Date, Guarantor represents to Lender that:

(a)      Guarantor (i) is solvent, (ii) is not bankrupt and (ii) has no outstanding liens, garnishments, bankruptcies or court actions which could cause Guarantor to become insolvent or bankrupt.  No Bankruptcy Event has occurred.

(b)      Each Guarantor financial statement previously delivered to Lender was prepared in accordance with an Approved Accounting Method or GAAP and completely, correctly and fairly presents the financial condition and the results of operations of each Guarantor on the date and for the period covered by the financial statements.  All other reports, statements and other data that any Guarantor furnished to Lender in connection with the Loan are true and correct in all material respects and do not omit any fact or circumstance necessary to ensure that the statements are not misleading.  Since the date of the last financial statements each Guarantor delivered to Lender, no event, act, condition or liability has occurred or exists, which has had, or may reasonably be expected to have, a material adverse effect upon (a) Guarantor's business, condition (financial or otherwise) or operations, or (b) Guarantor's ability to perform or satisfy, or Lender's ability to

enforce, any of the Guaranteed Obligations.  For the purposes of Subsection 9(a) and 9(b), "Guarantor" includes any joint ventures, managing member or general partner of Guarantor.

(c)	There are no suits or proceedings (including condemnation) pending, or to Guarantor's knowledge threatened, against or affecting any Guarantor, another Borrower Party or the Collateral, or involving the validity, enforceability or priority of this Guaranty or any of the Loan Documents.

(d)	If Guarantor is not a natural person, then Guarantor:  (i) is duly organized, validly existing, and in good standing, under the laws of the jurisdiction of its formation; (ii) is duly qualified, authorized to do business, and in good standing, in every jurisdiction (other than the jurisdiction of its formation) in which it must be qualified; and (iii) has the power and authority to own its other assets and transact its present or proposed business.

(e)	Guarantor has the requisite power and authority to execute, deliver and carry out the terms and provisions of this Guaranty, and has taken all necessary actions to authorize its execution, delivery and performance of the Guaranteed Obligations.  Guarantor has duly executed and delivered this Guaranty, and each other Loan Document to which it is a party or under which it is obligated.  Each obligation under this Guaranty or any other Loan Document constitutes, Guarantor's legal, valid and binding obligation, enforceable in accordance with the Loan Document's terms, except to the extent enforcement of any Loan Document is subject to the effect of (i) Applicable Bankruptcy Law, or (ii) general principles of equity.

(f)	Guarantor's execution, delivery and performance of this Guaranty and the other Loan Documents, and compliance with the terms and provisions of this Guaranty and the other Loan Documents, will not (i) contravene any Applicable Law, (ii) conflict or be inconsistent with or result in any breach of any term, covenant, condition or provision of, or constitute a default under, the terms of any other instrument to which Guarantor is a party or by which Guarantor is bound or may be subject, or (iii) violate any term of Guarantor's certificate of formation or other documents and agreements governing Guarantor's existence, management or operation.  Guarantor is not required to obtain any Person's consent to execute, deliver or perform this Guaranty or the other Loan Documents.

(g)	Guarantor is intimately familiar with Borrower, the Collateral and Borrower's business operations and financial condition.

10.	Covenants.  Guarantor absolutely and unconditionally covenants that:

(a)	Guarantor shall pay and perform the Guaranteed Obligations even if, for any reason, (i) Borrower does not pay or perform the Indebtedness or any other Borrower obligations under the Loan Documents, or (ii) the Indebtedness or the Guaranteed Obligations are disaffirmed or terminated (except for payment and performance in full).

(b)	Guarantor will remain liable for the Guaranteed Obligations regardless of whether Borrower is (for any reason) liable for any portion of the Indebtedness or the Guaranteed Obligations.

(c)	Guarantor will at all times remain intimately familiar with Borrower, the Collateral and Borrower's business operations and financial condition.

(d)	Guarantor will remain liable for the Guaranteed Obligations regardless of whether Borrower's organizational structure changes.

(e)	Notwithstanding any prior reduction or termination of this Guaranty, Guarantor will remain liable for, and (after Lender's demand) pay to Lender, the amount of any prior Indebtedness payment that Lender must (for any reason) pay to Borrower or any other Person.

(f)     Guarantor will not (i) benefit from, (ii) be able to direct the application of, or (iii) have any right to participate in, any Collateral.

(g)     Guarantor will remain obligated under this Guaranty for the Guaranteed Obligations even if Guarantor loses (for any reason) any right against (i) any Borrower Party or other Person, or (ii) the Collateral.

(h)     Lender is not required to pursue any remedies against any Person or the Collateral before demanding that Guarantor pay or perform the Guaranteed Obligations.

(i)     Lender may maintain an action on this Guaranty without joining any other Borrower Party or bringing a separate action against a Borrower Party.

(j)     Until all Indebtedness is indefeasibly repaid, Guarantor shall maintain (a) at least $2,000,000.00 of Liquid Assets (the "*Liquidity Requirement*"), and (b) a tangible net worth of at least $16,942,500.00 (the "*Net Worth Requirement*").   Guarantor will provide Lender with evidence (which may include a certificate), satisfactory to Lender in its discretion, establishing Guarantor's satisfaction of the Liquidity Requirement and the Net Worth Requirement within 60 days after the end of each calendar quarter.

11.     Financial Statements and Reports.   Guarantor shall deliver to Lender all financial statements, reports and certificates, if any, required under the Loan Agreement.

12.     Multiple Guarantors.  If there are more than one Guarantor, then this Section 12 is in effect. Unless the context clearly indicates otherwise, all references to "*Guarantor*" mean either or any Guarantor.

(a)     **Joint Liability**.  Lender may sue any Guarantor, jointly or individually, without impairing Lender's rights against each Guarantor under this Guaranty.  Lender may compromise with any Guarantor or any other Person for any sum Lender sees fit.  Lender may release any Guarantor or any other Person from any liability for the Indebtedness or the Guaranteed Obligations without impairing Lender's right to demand and collect the balance of the Indebtedness or the Guaranteed Obligations from any Guarantor or other Person.  No compromise or release will, except as specifically set forth in this Guaranty, impair Guarantors' rights amongst themselves.

(b)     **Disputes**.  Each Guarantor shall indemnify, defend and hold Lender harmless from and against any Claim Lender may suffer arising from any dispute between Guarantors, **INCLUDING THOSE CLAIMS ACTUALLY OR ALLEGEDLY ARISING FROM LENDER'S SOLE, COMPARATIVE OR CONTRIBUTORY NEGLIGENCE, OR STRICT LIABILITY**, unless a court of competent jurisdiction determines in a final non-appealable judgment that the Claim actual resulted from the intentional misconduct or gross negligence of Lender.

13.     Revival and Reinstatement.  This Guaranty remains in full force and effect during any Bankruptcy Event.  Notwithstanding the full payment and performance of the Obligations and the Guaranteed Obligations, this Guaranty will be reinstated in full force and effect immediately upon the occurrence of any Bankruptcy Event. If any prior payment or performance of the Obligations or Guaranteed Obligations is rescinded or reduced, or Lender must otherwise restore or return any prior payment or performance of the Obligations or Guaranteed Obligations, then the Guaranteed Obligations will be reinstated to the extent of the payment or performance actually rescinded, reduced, restored or returned.

14.     Rights Cumulative.  Lender's rights under this Guaranty, at law and in equity are cumulative.  Until the Indebtedness is paid and performed in full and this Guaranty is terminated, Lender may exercise, as many times and as often as Lender elects (in its discretion) any rights under this Guaranty, at law and in equity.  This Guaranty does not diminish or discharge Lender's rights under any prior or future guaranty by Guarantor in favor of Lender.

15. <u>Notices</u>.  Any notice or communication required or permitted under this Guaranty must be made in writing and sent by (a) personal delivery, (b) expedited delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, addressed as follows:

| | |
|---|---|
| To Lender: | Archway Real Estate Income Fund I SPE I, LLC<br>16 N. Marengo Avenue, Suite 212<br>Pasadena, California 91101<br>Attention: Chuck Ng<br>Phone: (310) 779-6505<br>Email: cng@oakhurstfunds.com |
| with a copy to: | Raines Feldman LLP<br>1800 Avenue of the Stars, 12th Floor<br>Los Angeles, CA 90067<br>Attention: Joshua Mogin<br>Phone: (310) 440-4100<br>Email: jmogin@raineslaw.com |
| To Guarantor: | Alan Gomperts<br>264 S. Oakhurst Drive<br>Beverly Hills CA 90212<br>Phone: (310) 621-5350<br>Email: alangomperts@hotmail.com |
| | Daniel Halevy<br>133 S. Palm Drive<br>Beverly Hills CA 90212<br>Phone: (310) 467-4703<br>Email: danhalevy@gmail.com |
| | David Halevy<br>257 S. Linden Drive<br>Beverly Hills CA 90212<br>Phone: (310) 666-2885<br>Email: danhalevy@gmail.com |
| with a copy to | Feldman Berman Schwartz LLP<br>20750 Ventura Blvd., Ste. 201<br>Woodland Hills, CA 91364<br> (818) 707-1465 ext. 3<br>Attention: Craig Berman<br>cberman@fbsllp.com |

or to such other address as Lender or Guarantor may designate in writing and deliver in accordance with this <u>Section</u>.  Any change of address will be effective on the 5th Business Day after notice is given pursuant to the terms of this <u>Section</u>.  Any notice or communication sent in accordance with this <u>Section</u> will be deemed to be given (i) at the time of personal delivery, or (ii) if sent by delivery service or mail, as of the date of the first attempted delivery at the address and in the manner provided in this <u>Section</u>.  Guarantor consents to Lender recording any telephone communications between Lender and Guarantor.

16. <u>Applicable Law</u>.  The Laws of the **STATE OF CALIFORNIA** (without giving effect to its principles of conflicts of law) and of the **UNITED STATES** will govern and control this Guaranty.  If

5905764v2 | 101415-0002  9

any provision of this Guaranty or the application thereof to any person or circumstance, for any reason and to any extent, shall be invalid or unenforceable, neither the remainder of this Guaranty nor the application of such provision to any other persons or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law.

17.     <u>Consent to Forum</u>.  **GUARANTOR IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN LOS ANGELES COUNTY, CALIFORNIA OVER ANY PROCEEDING ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS.  BORROWER AGREES THAT, IN ADDITION TO ANY METHOD OF SERVICE UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING RELATING TO THE LOAN DOCUMENTS AND FILED IN ANY STATE OR FEDERAL COURT SITTING IN LOS ANGELES COUNTY, CALIFORNIA MAY BE SENT AND GIVEN AS SET FORTH IN <u>SECTION 15</u> ABOVE.**

18.     <u>Waiver of Jury Trial</u>.  **GUARANTOR WAIVES ANY RIGHT TO A JURY TRIAL CONCERNING ANY DISPUTE ARISING FROM OR IN CONNECTION WITH THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS.  GUARANTOR HAS BEEN ADVISED BY COMPETENT COUNSEL IN CONNECTION WITH THIS WAIVER.**

19.     <u>Counterparts</u>.  The Loan Documents may be executed in any number of counterparts with the same effect as if all signers executed the same instrument.  All counterparts of each Loan Document must be construed together and will constitute one instrument.

20.     <u>Modification or Termination</u>.  This Guaranty may only be amended, modified or terminated by a written instrument executed by Lender and Guarantor.  Guarantor agrees that it will be bound by any written amendment or modification of the Loan Documents, with or without notice to Guarantor, and Guarantor's obligations under this Guaranty and the other Loan Documents will not be impaired because of any such amendment or modification.

21.     <u>Successors and Assigns; Unenforceability of Certain Provisions, Headings</u>.  The terms of this Guaranty are binding on Guarantor and its heirs, devisees, representatives, successors and assigns and inure to the benefit of Lender and all of its transferees, credit participants, successors and assignees.  The headings in this Guaranty are for convenience only and will not limit or otherwise affect any of the terms of this Guaranty.  If any part of the Loan Documents is unenforceable or invalid, then that part of the Loan Documents will be removed from the Loan Documents.  All remaining portions of the Loan Documents will remain enforceable and valid.

22.     <u>Damage Waiver</u>.  Guarantor agrees that Lender will not be liable to Guarantor, any other Borrower Party or any other Person for any punitive, exemplary or consequential damages which may actually or allegedly arise from this Guaranty, the Loan, the other Loan Documents or the Collateral, **INCLUDING ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES ACTUALLY OR ALLEGEDLY ARISING FROM THE ORDINARY, CONTRIBUTORY, COMPARATIVE OR SOLE NEGLIGENCE, GROSS NEGLIGENCE OR STRICT LIABILITY, OF ANY BORROWER PARTY OR LENDER**.  The foregoing waiver does not limit or otherwise impair the terms of any other waiver or indemnity in the Loan Agreement.

23.     <u>Assignment</u>.  Lender may assign, sell or offer to assign or sell interests in the Loan or any portion of the Loan Documents (including this Guaranty) and disseminate to any purchaser, assignee or prospective purchaser or assignee any information Lender has pertaining to the Loan or this Guaranty, including credit information on Borrower Parties and any of their respective principals.  If Lender makes any assignment or sells any interest in the Loan or this Guaranty, then Guarantor shall make all modifications, at Lender's or its purchaser's or assignee's expense, to this Guaranty as will facilitate Lender's sale or assignment, provided that no modification will materially add to Guarantor's obligations under this Guaranty or the other Loan Documents.

24.     Imaging.  Except for the Note, Lender may image and destroy the executed, original Loan Documents. Except for the Note, Guarantor waives any right it has, or may have in the future, to claim that the imaged copies of the Loan Documents are not originals or the best evidence of the Loan Documents.

25.     Time.  Time is of the essence for this Guaranty and the other Loan Documents.

26.     California Provisions.  In addition to the waivers set forth elsewhere in this Guaranty:

(a)     Guarantor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Guaranty and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

(b)     Guarantor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Guarantor under the following sections of the California Civil Code:  Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

(c)     Guarantor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Guarantor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil Code, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

(d)     Guarantor waives any defense that Guarantor may have by reason of the failure of Lender to provide Guarantor with any material facts about Borrower, including any information

respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

(e)    Guarantor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

(f)    Guarantor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Guarantor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of guarantors or sureties thereunder.

(g)    Guarantor waives all rights and defenses that Guarantor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(i)    The creditor (Lender) may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by the debtor.

(ii)    If the creditor forecloses on any real property collateral pledged by the debtor:  (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from the debtor.

(h)    This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Guarantor has read and is familiar with the entirety of such provisions.

27.    <u>Entire Agreement</u>.    The Loan Documents constitute the entire understanding and agreement between Borrower, Guarantor and Lender with respect to the transactions arising in connection with the Loan and this Guaranty.  The Loan Documents supersede all prior written or oral understandings and agreements between Borrower, Guarantor and Lender with respect to the Loan and this Guaranty.

[**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK SIGNATURE PAGE FOLLOWS**]

Guarantor has executed this Guaranty to be effective on the Effective Date.


**GUARANTOR:**

_____
**ALAN GOMPERTS,** an individual


_____
**DANIEL HALEVY,** an individual


_____
**SUE HALEVY,** an individual

# EXHIBIT 5

EXHIBIT 5 - Page 35

**THIS IS THE REAL PROPERTY SECURED GUARANTY OF THE BORROWER BROADWAY AVENUE INVESTMENTS, LLC ("BROADWAY") B NOTE,** *AND ONLY OF THE AMOUNTS OWED UNDER THAT BROADWAY B NOTE,* **PLUS THE AMOUNTS OWED UNDER SUCH OTHER NON-BROADWAY NOTES REFERENCED BELOW. THERE IS A SEPARATE UNSECURED GUARANTY OF THE BROADWAY A NOTE FROM THE SAME GUARANTORS WHICH COVERS ONLY THE AMOUNTS OWED UNDER THAT BROADWAY A NOTE. THIS REAL PROPERTY SECURED GUARANTY IS NOT INTENDED TO, AND SHALL NOT BE INTERPRETED TO, GUARANTY ANY OF THE AMOUNTS OWED BY BROADWAY UNDER THAT SEPARATE UNSECURED GUARANTY OR OF THE BROADWAY A NOTE.**

## CONTINUING GUARANTY
## (B NOTE AND OTHER OBLIGATIONS)

(i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **ALAN GOMPERTS**, an individual ("AG"); (iii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"), (iv) **SUE HALEVY**, an individual ("*SH*") and (v) **DANIEL HALEVY**, an individual ("*Daniel*" which together with G& H Trust, D&S Trust, and SH are collectively referred to herein as, "*Guarantor*") have executed this Continuing Guaranty (this "*Guaranty*") on _____, 2026 (the "*Effective Date*") in favor of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

BACKGROUND RECITALS

A.      Lender and **BROADWAY AVENUE INVESTMENTS LLC**, a California limited liability company ("*Broadway Borrower*") have entered into that certain Loan Agreement (the "*Broadway Loan Agreement*"), dated as of the July 21, 2021, governing (among other things) an extension of credit in the amount of $16,942,500.00 (the "*Broadway Loan*").   The Broadway Loan was originally evidenced, in party, by that certain Promissory Note dated July 21, 2024 (together with any and all amendments thereto or modifications thereof, the "*Original Broadway Note*").  The Original Broadway Note is being split into two (2) promissory notes pursuant to that certain Settlement Agreement, dated as of _____, 2026, by and among Borrower, Guarantor, Lender, and the other parties thereto and executed on the date hereof (the "*2026 Settlement Agreement*"), as evidenced by that certain (i) Amended and Restated Promissory Note (A Note) in the amount of Eleven Million Dollars ($11,000,000.00) (the "*Broadway A Note*") and (ii) Amended and Restated Promissory Note (B Note) in the amount of Ten Million Three Hundred Thousand Dollars ($10,300,000.00)(the "*Broadway B Note*"), as such note amounts may be adjusted from time to time pursuant to the 2026 Settlement Agreement.

B.      The Broadway A Note and Broadway B Note are secured in part by that certain deed of trust lien given by the Borrower to the Lender (the "*Broadway Security Instrument*"), and more particularly described in the Loan Agreement and in the 2026 Settlement Agreement.

C.      On April 19, 2023, Broadway, Alan, Daniel, and David Halevy ("Decedent") entered into a Settlement and Loan Modification Agreement with Archway ("*2023 Agreement*"). In connection with the 2023 Agreement, Archway made among other things (1) a $1,300,000.00 loan ("*Negev Loan*") to Negev ("*Negev Borrower*") , and (2) a $125,000.00 loan to SLA ("*SLA Borrower*").  The SLA Loan together with the Broadway Loan, and Negev Loan shall collectively constitute the "Loan." (the "*SLA Borrower,*" which together with Broadway Borrower and Negev Borrower shall collectively constitute the "*Borrower*").

D.      In connection with the Negev Loan, Negev executed and delivered to Archway certain loan documents, including, but not limited to, a Loan Agreement ("*Negev Loan Agreement*") and a Promissory Note in the principal amount of $1,300,000.00 ("*Negev Note*").  the Negev Note is secured by that certain

Deed of Trust given by Negev to lender (the "*Negev Security Instrument*"), and more particularly described in the Negev Loan Agreement and in the 2026 Settlement Agreement.

E.      In connection with the SLA Loan, SLA executed and delivered to Archway certain loan documents, including, but not limited to, a Loan Agreement ("*SLA Loan Agreement*") and a Promissory Note in the principal amount of $125,000.00 ("*SLA Note*"). The SLA Note is secured by that certain Deed of Trust given by SLA to Lender (the "*SLA Security Instrument*"), and more particularly described in the Negev Loan Agreement and in the 2026 Settlement Agreement. Alan, Daniel, Decedent, and SH each guaranteed the SLA Loan ("*SLA Loan Guaranty*").

F.      This guaranty is executed under the 2026 Settlement Agreement and is executed contemporaneously with that 2026 Settlement Agreement.

G.      Lender would not have entered into the 2026 Settlement Agreement or continued the Loan to Borrower without Guarantor making and delivering this Guaranty.

Therefore, Guarantor (1) acknowledges the receipt and sufficiency of good and adequate consideration for making this Guaranty, and (2) agrees as follows:

1.      <u>Definitions</u>.  Capitalized terms not otherwise defined in this Guaranty will have the meanings set forth in the Loan Agreement and/or the 2026 Settlement Agreement.  Within this Guaranty, words of any gender include all other genders and words in the singular number include the plural, unless the context otherwise requires.  The following terms have the following meanings:

"*Bankruptcy Event*" means any of the following events:  (i) any Borrower Party files a petition for relief under Applicable Bankruptcy Law; (ii) any party (other than Lender) files an involuntary petition for relief under Applicable Bankruptcy Law against any Borrower Party and such petition is not dismissed within 90 days after being filed; (iii) a court of competent jurisdiction enters an order for relief under any Applicable Bankruptcy Law which is related in any way to a petition filed under (i) or (ii) above; (iv) any Borrower Party, at any time, requests or consents to any composition, rearrangement, extension, reorganization or other relief of any debtor; (v) any Borrower Party (A) is generally not paying its debts as they become due, (B) is insolvent, (C) fraudulently transfers any of its assets to the detriment of any of its creditors, (D) makes an assignment for the benefit of creditors, or (E) admits in writing that it is unable to pay its debts as they become due; or (vi) a receiver, trustee or custodian is appointed for, or takes possession of, all or substantially all of a Borrower Party's assets or any of the Property, either in a proceeding a Borrower Party brings, or any other Person (except for Lender) brings against a Borrower Party, and any such appointment is not discharged or such possession is not terminated within 60 days after commencing, or the Borrower Party consents to or acquiesces in such appointment or possession (unless such consent or acquiescence is in connection with any Lender initiated proceeding).  A Bankruptcy Event may exist even if an Event of Default cannot be declared because of Applicable Bankruptcy Law.

"*Broadway Loan Documents*" mean the Broadway B Note, the Broadway Loan Agreement but only as it relates to the Broadway B Note, the Broadway Security Instrument but only as it relates to the Broadway B Note, the Hazardous Materials Indemnity Agreement executed in connection with the Broadway Loan, and all other instruments evidencing, guarantying, securing, governing or pertaining to the Broadway Loan but only as they relate to the Broadway B Note.  For clarity and the avoidance of confusion, any reference in any of the Broadway Loan Documents to "*Note*"  shall, as it pertains to this Guaranty, solely relate to the Broadway B Note.

"*Enforcement Costs*" means all reasonable attorneys' fees, legal expenses, and other costs Lender incurs to collect or enforce the Guaranteed Obligations or the Loan Documents, but subject to the terms, limitations and conditions of the 2026 Settlement Agreement.

"***Guaranteed Obligations***" means all of the Indebtedness and Interest due under (a) the Broadway B Note and the Broadway Loan and Broadway Loan Agreement, but only as they pertain to the amounts owed under the Broadway B Note, (b) the Negev Loan, Negev Loan Agreement, and Negev Note, (c) the SLA Loan, SLA Loan Agreement, SLA Note, and SLA Guaranty, (d) the Shortfall and the Shortfall Term Out under the terms, covenants, and conditions as defined and set forth in the 2026 Settlement Agreement, and (e) the  Enforcement Costs of this Guaranty. Notwithstanding the foregoing, the amounts required to be paid as Guaranteed Obligations hereunder are subject to the terms, limitations and conditions of the 2026 Settlement Agreement.

"***Indebtedness***" means all obligations, liabilities, and indebtedness of Borrower arising under the Guaranteed Obligations (including all Additional Costs).

"***Interest***" means all accrued and unpaid interest on the Principal Amount due under the Guaranteed Obligations.

"***Loan Documents***" means (i) the Broadway Loan Documents, (ii) the SLA Loan Documents, (iii) the Negev Loan Documents, and (iv) all amendments, modifications, renewals, substitutions and replacements of any of the foregoing Loan Documents.  Notwithstanding the foregoing, for the purposes of this Guaranty, the Loan Documents and this Guaranty do not include and expressly exclude the Broadway A Note, any and all amounts owed under the Broadway A Note, and any other Broadway Loan Document that is not applicable to Note B.

"***Negev Loan Documents***" means the Negev Note, the Negev Loan Agreement, the Negev Security Instruments and Hazardous Materials Indemnity Agreement executed in connection with the Negev Loan, and all other instruments evidencing guarantying, security, governing or pertaining to the Negev Loan.

"***SLA Loan Documents***" means the SLA Note, the SLA Loan Agreement, the SLA Security Instruments and Hazardous Materials Indemnity Agreement executed in connection with the SLA Loan, and all other instruments evidencing guarantying, security, governing or pertaining to the SLA Loan.

2.      Inducement.  Guarantor has an economic investment or interest in Borrower, and an interest in the success of the Property, and Guarantor will substantially benefit from Lender's agreement to continue to provide credit accommodations to Borrower, subject the terms and conditions of the 2026 Settlement Agreement.

3.      Guaranty.  In order to induce Lender to continue to maintain the Loan with Borrower, Guarantor absolutely, unconditionally, and irrevocably guarantees and agrees to pay and perform the Guaranteed Obligations.  Notwithstanding anything to the contrary in this Guaranty or any of the other Loan Documents or the 2026 Settlement Agreement, Guarantor will be liable for all of the Guaranteed Obligations, including without limitation if a Bankruptcy Event occurs.

4.      Waivers.

(a)      Guarantor, with respect to the Guaranteed Obligations and the Indebtedness, waives:  (i) **PRESENTMENT FOR PAYMENT**; (ii) **DEMAND**; (iii) **NOTICE OF DEMAND, DISHONOR AND NONPAYMENT**; (iv) **NOTICE OF INTENTION TO ACCELERATE**; (v) **NOTICE OF ACCELERATION**; (vi) **NOTICE OF DISPOSITION OF COLLATERAL**; (vii) **THE DEFENSE OF IMPAIRMENT OF COLLATERAL**; (viii) **THE RIGHT TO A COMMERCIALLY REASONABLE SALE OF COLLATERAL**; (ix) **PROTEST AND NOTICE OF PROTEST**; and (x) **AND DILIGENCE IN COLLECTING, AND BRINGING SUIT AGAINST ANY OTHER PARTY**.

(b)      Lender is not obligated to notify Guarantor of (i) Lender's acceptance of this Guaranty, (ii) any credit extended on the faith of this Guaranty, or (iii) Borrower's failure to pay or

perform any Indebtedness which constitutes Guaranteed Obligations.  Lender is not obligated to use diligence in preserving any Person's liability for the Indebtedness or the Guaranteed Obligations.  Lender is not obligated to use diligence in bringing suit to enforce collection, or performance, of the Indebtedness or the Guaranteed Obligations.

(c)      Guarantor waives **ALL DEFENSES GIVEN OR REDUCTIONS IN THE GUARANTEED OBLIGATIONS AVAILABLE TO SURETIES OR GUARANTORS AT LAW OR IN EQUITY** other than the actual payment and performance of the Guaranteed Obligations, including **ALL DEFENSES BASED UPON QUESTIONS AS TO (i) THE VALIDITY, LEGALITY OR ENFORCEABILITY OF THE INDEBTEDNESS OR THE GUARANTEED OBLIGATIONS, OR (ii) THE VALUE OF ANY COLLATERAL**. Guarantor is primarily liable under this Guaranty.

(d)      At any time, Lender may, in its sole discretion, without Guarantor's prior consent, and without impairing, modifying, releasing or otherwise affecting Guarantor's liability under this Guaranty:

(i)      alter, compromise, accelerate, renew, extend, or change the time or manner for the payment of, the Indebtedness;

(ii)      increase or reduce the rate of interest on the Indebtedness as provided in the 2026 Settlement Agreement;

(iii)      take, surrender, exchange, withdraw, subordinate, alter, modify or eliminate security;

(iv)      (1) add, release, discharge, or (2) settle or compromise with, any Borrower Party or other Person liable for the Indebtedness or the Guaranteed Obligations;

(v)      make any change to the Loan Documents or the manner in which Lender does business with Borrower; or

(vi)      apply any moneys received from Borrower or any other source, or from any security or collateral, in the manner Lender determines, without being required to marshal securities or assets or to apply any part of the moneys or security to any particular part of the Guaranteed Obligations.

Lender is not required to retain, hold, protect, exercise due care with respect thereto, perfect security interests in or otherwise assure or safeguard any security for the Indebtedness or the Guaranteed Obligations; and Guarantor's obligations under this Guaranty and any other Loan Documents will not be affected by, and Guarantor will not have any recourse from, Lender's failure (x) to do any of the foregoing with respect to any security for the Indebtedness or the Guaranteed Obligations, or (y) to exercise or not exercise any right or remedy of Lender under the Loan Documents, at law or in equity.

5.      Guaranty Absolute.  Guarantor's liability under this Guaranty is absolute, and will not be modified, released or impaired, for any reason, including because:

(a)      any Person (including any Borrower Party) dies, or is or becomes incapacitated, disabled, dissolved or terminated;

(b)      Lender fails to file or enforce a claim against the estate (either in administration, bankruptcy or other proceeding) of any Borrower Party or another Person;

(c)      Lender cannot recover the Indebtedness from any Borrower Party or another Person for any reason, including any statute of limitations or Applicable Bankruptcy Law;

(d)      Any Borrower Party or another Person is entitled to any defense, setoff or counterclaim related to the Loan, the Indebtedness or the Guaranteed Obligations;

(e)      Borrower Party (other than Guarantor) or another Person liable for the payment or performance of Indebtedness or the Guaranteed Obligations is released or discharged by operation of law or otherwise (other than a discharge resulting from the payment of the Indebtedness);

(f)      this Guaranty or any other Loan Document is modified, extended, amended, released or waived; or

(g)      Lender fails to give Guarantor notice of an Event of Default under any Loan Document.

6.      <u>Subordination</u>.  Until the Indebtedness is repaid in full (and including all interest accruing, after any Bankruptcy Event, on the Indebtedness) as permitted pursuant to the 2026 Settlement Agreement:

(a)      Guarantor subordinates all rights to repayment of any current or future indebtedness from Borrower to Guarantor to Lender's prior right to receive or require payment in full of the Indebtedness.

(b)      Guarantor shall not accept any payment or satisfaction of any indebtedness of Borrower to Guarantor.

(c)      Guarantor shall not accept any security for any indebtedness of Borrower to Guarantor.

(d)      If Guarantor receives any payment, satisfaction or security for any indebtedness of Borrower to Guarantor, if any, then Guarantor shall immediately deliver the payment, satisfaction or security to Lender.  Lender will apply the payment, satisfaction or security as set forth in the Loan Agreement.  Guarantor will hold any payment, satisfaction or security Guarantor receives in trust for Lender until the payment, satisfaction or security is delivered to Lender.

7.      <u>Waiver of Right of Subrogation</u>.  To the fullest extent permitted by Applicable Law, Guarantor waives all rights at law or in equity to seek subrogation, contribution, indemnification or any other form of reimbursement or repayment from any Borrower Party or any other guarantor of, or any other party secondarily liable for, the payment or performance of the Indebtedness or the Guaranteed Obligations until the Indebtedness has been paid and performed in full.  When the Indebtedness has been indefeasibly paid and fully performed, Guarantor will be subrogated to the rights of Lender against Borrower and any endorsers, sureties or other guarantors to the extent of the payments that Guarantor makes on the Guaranteed Obligations.

8.      <u>No Usury</u>.  Lender and Guarantor intend that this Guaranty and the other Loan Documents strictly comply with applicable usury law.  Therefore, Lender and Guarantor agree that:  (i) none of the terms of this Guaranty or the other Loan Documents create a contract to pay for the use, forbearance or detention of money, or interest at a rate in excess of the Maximum Rate; and (ii) no Person (including any Borrower Party) will ever be obligated or required to pay interest on the Indebtedness or any other sums due under the Loan Documents at a rate in excess of the Maximum Rate.  Lender expressly disavows any intention to charge or collect excessive unearned interest or finance charges on any portion of the Indebtedness.  If at any time the interest received for the Guaranteed Obligations exceeds the Maximum Rate, then Lender will, at its option, either refund to Guarantor the amount of the excess or credit the amount of the excess against the Guaranteed Obligations.  Guarantor agrees that the Loan and the Guaranty are not usurious and agrees that if, at any time, Guarantor believes that the Loan or the Guaranty is usurious, it shall give Lender (a) notice of the condition and (b) 60 days in which to make an appropriate refund or other adjustment, if necessary, to correct the condition.

9.      Representations and Warranties.  On the Effective Date, Guarantor represents to Lender that:

(a)      Guarantor (i) is solvent, (ii) is not bankrupt and (ii) has no outstanding liens, garnishments, bankruptcies or court actions which could cause Guarantor to become insolvent or bankrupt.  No Bankruptcy Event has occurred.

(b)      All reports, statements and other data that any Guarantor has furnished to Lender concerning the financial conditions of such Guarantor, the Loan, the Collateral or any of them, since the Cases were commenced are true and correct in all material respects and do not omit any fact or circumstance necessary to ensure that the statements are not misleading.  Since the date of the last financial statements each Guarantor delivered to Lender, no event, act, condition or liability has occurred or exists, which has had, or may reasonably be expected to have, a material adverse effect upon (a) Guarantor's business, condition (financial or otherwise) or operations, or (b) Guarantor's ability to perform or satisfy, or Lender's ability to enforce, any of the Guaranteed Obligations.  For the purposes of Subsection 9(a) and 9(b), "Guarantor" includes any joint ventures, managing member or general partner of Guarantor.

(c)      There are no suits or proceedings (including condemnation) pending, or to Guarantor's knowledge threatened, against or affecting any Guarantor, another Borrower Party or the Collateral, or involving the validity, enforceability or priority of this Guaranty or any of the Loan Documents.

(d)      If Guarantor is not a natural person, then Guarantor:  (i) is duly organized, validly existing, and in good standing, under the laws of the jurisdiction of its formation; (ii) is duly qualified, authorized to do business, and in good standing, in every jurisdiction (other than the jurisdiction of its formation) in which it must be qualified; and (iii) has the power and authority to own its other assets and transact its present or proposed business.

(e)      Guarantor has the requisite power and authority to execute, deliver and carry out the terms and provisions of this Guaranty, and has taken all necessary actions to authorize its execution, delivery and performance of the Guaranteed Obligations.  Guarantor has duly executed and delivered this Guaranty, and each other Loan Document to which it is a party or under which it is obligated.  Each obligation under this Guaranty or any other Loan Document constitutes, Guarantor's legal, valid and binding obligation, enforceable in accordance with the Loan Document's terms, except to the extent enforcement of any Loan Document is subject to the effect of (i) Applicable Bankruptcy Law, or (ii) general principles of equity.

(f)      Guarantor's execution, delivery and performance of this Guaranty and the other Loan Documents, and compliance with the terms and provisions of this Guaranty and the other Loan Documents, will not (i) contravene any Applicable Law, (ii) conflict or be inconsistent with or result in any breach of any term, covenant, condition or provision of, or constitute a default under, the terms of any other instrument to which Guarantor is a party or by which Guarantor is bound or may be subject, or (iii) violate any term of Guarantor's certificate of formation or other documents and agreements governing Guarantor's existence, management or operation.  Guarantor is not required to obtain any Person's consent to execute, deliver or perform this Guaranty or the other Loan Documents.

(g)      Guarantor is intimately familiar with Borrower, the Collateral and Borrower's business operations and financial condition.

10.      Covenants.  Guarantor absolutely and unconditionally covenants that:

(a)      Guarantor shall pay and perform the Guaranteed Obligations, but subject to the terms, limitations and conditions of the 2026 Settlement Agreement, even if, for any reason, (i) Borrower does not pay or perform the Indebtedness or any other Borrower obligations under the

Loan Documents, or (ii) the Indebtedness or the Guaranteed Obligations are disaffirmed or terminated (except for payment and performance in full).

(b)     Guarantor will remain liable for the Guaranteed Obligations regardless of whether Borrower is (for any reason) liable for any portion of the Indebtedness or the Guaranteed Obligations, but subject to the terms, limitations and conditions of the 2026 Settlement Agreement.

(c)     Guarantor will at all times remain intimately familiar with Borrower, the Collateral and Borrower's business operations and financial condition.

(d)     Guarantor will remain liable for the Guaranteed Obligations regardless of whether Borrower's organizational structure changes.

(e)     Notwithstanding any prior reduction or termination of this Guaranty, Guarantor will remain liable for, and (after Lender's demand) pay to Lender, the amount of any prior Indebtedness payment that Lender must (for any reason) pay to Borrower or any other Person, but subject to the terms, limitations and conditions of the  2026 Settlement Agreement.

(f)     Subject to the terms, limitations and conditions of the 2026 Settlement Agreement, Guarantor will not (i) benefit from, (ii) be able to direct the application of, or (iii) have any right to participate in, any Collateral, but subject to the terms, limitations and conditions of the  2026 Settlement Agreement.

(g)     Guarantor will remain obligated under this Guaranty for the Guaranteed Obligations even if Guarantor loses (for any reason) any right against (i) any Borrower Party or other Person, or (ii) the Collateral, but subject to the terms, limitations and conditions of the 2026 Settlement Agreement.

(h)     Lender is not required to pursue any remedies against any Person or the Collateral before demanding that Guarantor pay or perform the Guaranteed Obligations.

(i)     Lender may maintain an action on this Guaranty without joining any other Borrower Party or bringing a separate action against a Borrower Party.

(j)     [Intentionally omitted]

11.     Financial Statements and Reports.   Guarantor shall deliver to Lender all financial statements, reports and certificates, if any, required under the 2026 Settlement Agreement.

12.     Multiple Guarantors.  If there are more than one Guarantor, then this Section 12 is in effect. Unless the context clearly indicates otherwise, all references to "*Guarantor*" mean either or any Guarantor.

(a)     **Joint Liability**.  Lender may sue any Guarantor, jointly or individually, without impairing Lender's rights against each Guarantor under this Guaranty.  Lender may compromise with any Guarantor or any other Person for any sum Lender sees fit.  Lender may release any Guarantor or any other Person from any liability for the Indebtedness or the Guaranteed Obligations without impairing Lender's right to demand and collect the balance of the Indebtedness or the Guaranteed Obligations from any Guarantor or other Person.  No compromise or release will, except as specifically set forth in this Guaranty, impair Guarantors' rights amongst themselves.

(b)     **Disputes**.  Each Guarantor shall indemnify, defend and hold Lender harmless from and against any Claim Lender may suffer arising from any dispute between Guarantors, **INCLUDING THOSE CLAIMS ACTUALLY OR ALLEGEDLY ARISING FROM LENDER'S SOLE, COMPARATIVE OR CONTRIBUTORY NEGLIGENCE, OR STRICT LIABILITY**, unless a court of competent jurisdiction determines in a final non-appealable judgment that the Claim actual resulted from the intentional misconduct or gross negligence of Lender.

13. <u>Revival and Reinstatement</u>.  This Guaranty remains in full force and effect during any Bankruptcy Event.  Notwithstanding the full payment and performance of the Obligations and the Guaranteed Obligations, this Guaranty will be reinstated in full force and effect immediately upon the occurrence of any Bankruptcy Event.  If any prior payment or performance of the Obligations or Guaranteed Obligations is rescinded or reduced, or Lender must otherwise restore or return any prior payment or performance of the Obligations or Guaranteed Obligations, then the Guaranteed Obligations will be reinstated to the extent of the payment or performance actually rescinded, reduced, restored or returned.

14. <u>Rights Cumulative</u>.  Lender's rights under this Guaranty, at law and in equity are cumulative.  Until the Indebtedness is paid and performed in full and this Guaranty is terminated, Lender may exercise, as many times and as often as Lender elects (in its discretion) any rights under this Guaranty, at law and in equity.  This Guaranty does not diminish or discharge Lender's rights under any prior or future guaranty by Guarantor in favor of Lender.

15. <u>Notices</u>.  Any notice or communication required or permitted under this Guaranty must be made in writing and sent by (a) personal delivery, (b) expedited delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, addressed as follows:

|  |  |
|---|---|
| To Lender:<br>` | Archway Broadway Loan SPE, LLC<br>c/o Archway Real Estate Income Fund I REIT, LLC<br>1875 Century Park East. Suite #900<br>Los Angeles, CA 90067<br>Attention: Joshua Kohan<br>Phone: (310) 893-5277<br>Email: joshua@archwayfund.com |
| with a copy to: | Thompson Coburn LLP<br>10100 Santa Monica Blvd., Suite 500<br>Los Angeles, CA 90067<br>Attention: Joshua Mogin<br>Phone: (310) 282-2520<br>Email: jmogin@thompsoncoburn.com |
| To Guarantor: | Alan Gomperts<br>264 S. Oakhurst Drive<br>Beverly Hills CA 90212<br>Phone: (310) 621-5350<br>Email: alangomperts@hotmail.com<br><br>Daniel Halevy<br>133 S. Palm Drive<br>Beverly Hills CA 90212<br>Phone: (310) 467-4703<br>Email: danhalevy@gmail.com<br><br>Sue Halevy<br>257 S. Linden Drive<br>Beverly Hills CA 90212<br>Phone: (310) 666-2885<br>Email: danhalevy@gmail.com |

5849884v5 | 101415-0002

8

B Note and Other Obligations – Guaranty
**EXHIBIT 5 - Page 43**

with a copy to                              Weintraub Zolkin Talerico & Selth LLP
                                            1766 Wilshire Blvd Suite 730
                                            Los Angeles, CA 90025
                                            Attention: Derrick Talerico
                                            Phone (424) 500-8552
                                            Email: dtalerico@wztslaw.com

or to such other address as Lender or Guarantor may designate in writing and deliver in accordance with this Section.  Any change of address will be effective on the 5th Business Day after notice is given pursuant to the terms of this Section.  Any notice or communication sent in accordance with this Section will be deemed to be given (i) at the time of personal delivery, or (ii) if sent by delivery service or mail, as of the date of the first attempted delivery at the address and in the manner provided in this Section.  Guarantor consents to Lender recording any telephone communications between Lender and Guarantor.

16.     Applicable Law.  The Laws of the **STATE OF CALIFORNIA** (without giving effect to its principles of conflicts of law) and of the **UNITED STATES** will govern and control this Guaranty.  If any provision of this Guaranty or the application thereof to any person or circumstance, for any reason and to any extent, shall be invalid or unenforceable, neither the remainder of this Guaranty nor the application of such provision to any other persons or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law.

17.     Consent to Forum.  **GUARANTOR IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN LOS ANGELES COUNTY, CALIFORNIA OVER ANY PROCEEDING ARISING OUT OF OR RELATING TO THE LOAN DOCUMENTS.  BORROWER AGREES THAT, IN ADDITION TO ANY METHOD OF SERVICE UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING RELATING TO THE LOAN DOCUMENTS AND FILED IN ANY STATE OR FEDERAL COURT SITTING IN LOS ANGELES COUNTY, CALIFORNIA MAY BE SENT AND GIVEN AS SET FORTH IN SECTION 15 ABOVE.**

18.     **WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  GUARANTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS GUARANTY AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.**

19.     Counterparts.  The Loan Documents may be executed in any number of counterparts with the same effect as if all signers executed the same instrument.  All counterparts of each Loan Document must be construed together and will constitute one instrument.

20.     Modification or Termination.  This Guaranty may only be amended, modified or terminated by a written instrument executed by Lender and Guarantor.  Guarantor agrees that it will be

B Note and Other Obligations – Guaranty
**EXHIBIT 5 - Page 44**

bound by any written amendment or modification of the Loan Documents, with or without notice to Guarantor, and Guarantor's obligations under this Guaranty and the other Loan Documents will not be impaired because of any such amendment or modification.

21.    Successors and Assigns; Unenforceability of Certain Provisions, Headings.  The terms of this Guaranty are binding on Guarantor and its heirs, devisees, representatives, successors and assigns and inure to the benefit of Lender and all of its transferees, credit participants, successors and assignees.  The headings in this Guaranty are for convenience only and will not limit or otherwise affect any of the terms of this Guaranty.  If any part of the Loan Documents is unenforceable or invalid, then that part of the Loan Documents will be removed from the Loan Documents.  All remaining portions of the Loan Documents will remain enforceable and valid.

22.    Damage Waiver.  Guarantor agrees that Lender will not be liable to Guarantor, any other Borrower Party or any other Person for any punitive, exemplary or consequential damages which may actually or allegedly arise from this Guaranty, the Loan, the other Loan Documents or the Collateral, **INCLUDING ANY PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES ACTUALLY OR ALLEGEDLY ARISING FROM THE ORDINARY, CONTRIBUTORY, COMPARATIVE OR SOLE NEGLIGENCE, GROSS NEGLIGENCE OR STRICT LIABILITY, OF ANY BORROWER PARTY OR LENDER**.  The foregoing waiver does not limit or otherwise impair the terms of any other waiver or indemnity in the Loan Agreement.

23.    Assignment.  Lender may assign, sell or offer to assign or sell interests in the Loan or any portion of the Loan Documents (including this Guaranty) and disseminate to any purchaser, assignee or prospective purchaser or assignee any information Lender has pertaining to the Loan or this Guaranty, including credit information on Borrower Parties and any of their respective principals.  If Lender makes any assignment or sells any interest in the Loan or this Guaranty, then Guarantor shall make all modifications, at Lender's or its purchaser's or assignee's expense, to this Guaranty as will facilitate Lender's sale or assignment, provided that no modification will materially add to Guarantor's obligations under this Guaranty or the other Loan Documents.

24.    Imaging.  Except for the Note, Lender may image and destroy the executed, original Loan Documents. Except for the Note, Guarantor waives any right it has, or may have in the future, to claim that the imaged copies of the Loan Documents are not originals or the best evidence of the Loan Documents.

25.    Time.  Time is of the essence for this Guaranty and the other Loan Documents.

26.    California Provisions.  This Guaranty is entered into after an Event of Default has occurred and as such new sufficient consideration has been provided.  In addition to the waivers set forth elsewhere in this Guaranty:

(a)    Guarantor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Guaranty and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

(b)    Guarantor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Guarantor under the following sections of the California Civil Code:  Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal

designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

(c)     Guarantor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Guarantor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil Code, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

(d)     Guarantor waives any defense that Guarantor may have by reason of the failure of Lender to provide Guarantor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

(e)     Guarantor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

(f)     Guarantor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Guarantor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of guarantors or sureties thereunder.

(g)     Guarantor waives all rights and defenses that Guarantor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(i)     The creditor (Lender) may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by the debtor.

(ii)     If the creditor forecloses on any real property collateral pledged by the debtor:  (A) the amount of the debt may be reduced only by the price for which that

5849884v5 | 101415-0002                     11

collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from the debtor.

(h)    This is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Guarantor has read and is familiar with the entirety of such provisions.

27.    Entire Agreement.  The Loan Documents constitute the entire understanding and agreement between Borrower, Guarantor and Lender with respect to the transactions arising in connection with the Loan and this Guaranty.  The Loan Documents supersede all prior written or oral understandings and agreements between Borrower, Guarantor and Lender with respect to the Loan and this Guaranty.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK SIGNATURE PAGE FOLLOWS]**

Guarantor has executed this Guaranty to be effective on the Effective Date.


**GUARANTOR:**


_____
**ALAN GOMPERTS**, as Trustee of
**The Gomperts and Halevy Family Trust**


_____
**SHARON HALEVY**, as Trustee of
**The Gomperts and Halevy Family Trust**


_____
**SUE HALEVY, as Trustee of**
**the Halevy Family Trust dated September 8, 2010**


_____
**ALAN GOMPERTS**, an individual


_____
**SUE HALEVY**, an individual


_____
**DANIEL HALEVY, an individual**

# EXHIBIT 6

EXHIBIT 6 - Page 49

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____
*(space above this line for recorder's use only)*

**ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**
_____

|  |  |
|---|---|
| Dated: | July 17, 2025 |
| Address: | 2247 S Canfield Avenue |
|  | Los Angeles, CA 90034-1114 |

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY INSTRUMENT.

**EXHIBIT 6 - Page 50**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of July 17, 2025, by **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with

(A) that certain Settlement Agreement (the "***Settlement Agreement***"), by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("***Broadway***"), Negev Investments, LLC, a California limited liability company ("***Negev***"), SLA Investments, LLC, a California limited liability company ("***SLA***"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("***G&H Trust***"), Daniel Halevy, individually ("***Daniel***") and in his capacity as personal representative of the probate estate ("***Probate Estate***") of David Halevy ("***Decedent***"), and Susan Halevy, individually ("***Sue***"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "***Obligors***").  The Settlement Agreement is mad in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the Loan Agreement).

(B) the Amended and Restated Promissory Note (Note B) (the "***B Note***") described in the Loan Agreement, in the original principal amount of $5,875,000.00 in evidence of the loan (the "***Loan***") made by Lender to Broadway.

(C) the Continuing Guaranty (B Note) dates as of the date hereof, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("***G&H Trust***"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("***D&S Trust***"),, and (iii) **SUE HALEVY**, an individual ("***SH***") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "***Guarantor***"), in favor of Lender (the "***B Note Guaranty***") guaranteeing the obligations of Broadway under the B Note.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

### GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

### GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

### GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

### GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

### GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

### GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

### GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obnligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances.  This Security Instrument will have no further force or effect on the Termination Date.  Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
## Definitions and Loan Documents

1.1     <u>Loan Documents</u>.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2     <u>Definitions</u>.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future

EXHIBIT 6 - Page 54

operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in Section 4.2 below.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3     Terms Generally; References and Titles.   References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a

reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4     Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment.  For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2     Application of Rent.

(a)          Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)          After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)          Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the

6

Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)        Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)        As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)        Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3        No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4        Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1        Intentionally Omitted.

3.2        Approval.  Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3        Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4        Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)        are with Tenants who are not affiliated with Trustor;

(b)        do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)        do not afford Tenants any termination rights;

(d)        are an arm's length transaction on economic terms conforming to current market conditions;

(e)        have a market rental rate; and

(f)        do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Remedies**

4.1        Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from

7

the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2    Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3    Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

4.4    Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5    Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6    Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)    Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)    Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)    Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days

8

prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.7     <u>Delivery of Possession After Foreclosure</u>.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.<br><b><u>Miscellaneous</u></b>

5.1     <u>Successor Trustee</u>.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2     <u>Authorization to File Financing Statement</u>.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3     <u>Fixture Filing</u>.  This Security Instrument is a financing statement filed as a fixture filing.  For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4     <u>Dealing with Successor</u>.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5     <u>Subrogation</u>.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the

EXHIBIT 6 - Page 59

outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6    Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7    Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8    Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9    WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

|  |  |
|---|---|
| To Lender: ` | Archway Broadway Loan SPE, LLC<br>Archway Real Estate Income Fund I REIT, LLC<br>1875 Century Park East. Suite #900<br>Los Angeles, CA 90067<br>Attention: Joshua Kohan<br>Phone: (310) 893-5277<br>Email: joshua@archwayfund.com |
| with a copy to: | Thompson Coburn LLP<br>10100 Santa Monica Blvd., Suite 500<br>Los Angeles, CA 90067<br>Attention: Joshua Mogin<br>Phone: (310) 282-2520 |

10

|  | Email: jmogin@thompsoncoburn.com |
|---|---|
| To Trustor: | c/o Alan Gomperts<br>264 S. Oakhurst Drive<br>Beverly Hills CA 90212<br>Phone: (310) 621-5350<br>Email: alangomperts@hotmail.com |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP<br>1766 Wilshire Blvd Suite 730<br>Los Angeles, CA 90025<br>Attention: Derrick Talerico<br>Phone (424) 500-8552<br>Email: dtalerico@wztslaw.com |
| Trustee: | Fidelity National Title<br>555 S. Flower Street, Suite 4420<br>Los Angeles, CA 90071<br>Attention: JB Jennings<br>Phone: (213) 452-7100<br>Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
## Concerning the Trustee

6.1     Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint

11

such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

6.3    <u>Power of Sale</u>.

(a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)    At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)    In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes

EXHIBIT 6 - Page 62

and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)     In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4     Acceptance by Trustee.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5     Acts of Trustee.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6     No Liability of Trustee.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8     Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

## ARTICLE VII.
## State Law Provisions

7.1     Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

13

EXHIBIT 6 - Page 63

7.2     <u>Full Reconveyance</u>.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     <u>Dwellings</u>.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     <u>Civil Code</u>.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     <u>Indemnity; Expenses</u>.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     <u>Supplemental Environmental Provisions</u>.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     <u>Foreclosure By Power of Sale</u>.

(i)  Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

Canfield– B Note Security Instrument

EXHIBIT 6 - Page 64

(a)      Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)      Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8      Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9      Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10      Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11      Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12      No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the

Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

16

Canfield– B Note Security Instrument

EXHIBIT 6 - Page 66

7.16    Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17    Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

ARTICLE VIII.
**California Waiver Provisions.**

8.1    Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2    Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which

**EXHIBIT 6 - Page 67**

the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3    Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil **Code**, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4    Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5    Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6    Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7    Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)    The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)    If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8    This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

18

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.


**TRUSTOR:**


_____

**ALAN GOMPERTS**, **as Trustee of**
**The Gomperts and Halevy Family Trust**


_____

**SHARON HALEVY**, **as Trustee of**
**The Gomperts and Halevy Family Trust**


SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 6 - Page 69**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 6 - Page 70**

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

For APN/Parcel ID(s):  4302-002-021

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 45 OF TRACT NO. 13803, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 296, PAGES 20 AND 21 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

---

EXHIBIT A
TO
SECURITY INSTRUMENT

EXHIBIT 6 - Page 71

# EXHIBIT 7

EXHIBIT 7 - Page 72

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____

*(space above this line for recorder's use only)*

**ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**
_____

Dated:          July 17, 2025

Address:        2220 Bagley Avenue
                Los Angeles, CA 90034-1109

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY INSTRUMENT.

**EXHIBIT 7 - Page 73**

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY
AGREEMENT AND FIXTURE FILING**

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of July 17, 2025, by **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with

(A) that certain Settlement Agreement (the "*Settlement Agreement*"), by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"), SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The Settlement Agreement is mad in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the Loan Agreement).

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the Loan Agreement, in the original principal amount of $5,875,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) the Continuing Guaranty (B Note) dates as of the date hereof, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the obligations of Broadway under the B Note.

**W I T N E S S E T H:**

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

**GRANTING CLAUSE ONE**

All of Trustor's right, title and interest in and to the Land.

**GRANTING CLAUSE TWO**

All of Trustor's right, title and interest in and to the Additional Land.

1

**GRANTING CLAUSE THREE**

All of Trustor's right, title and interest in and to the Improvements.

**GRANTING CLAUSE FOUR**

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

**GRANTING CLAUSE FIVE**

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

**GRANTING CLAUSE SIX**

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

**GRANTING CLAUSE SEVEN**

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

2

**EXHIBIT 7 - Page 75**

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obnligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

ARTICLE I.
**Definitions and Loan Documents**

1.1 <u>Loan Documents</u>. All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument. All covenants in the Loan Documents are covenants running with the Land.

1.2 <u>Definitions</u>. Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement. Each of the below capitalized terms has the following meaning:

"***Additional Land***" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"***Collateral***" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"***Equipment***" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future

EXHIBIT 7 - Page 77

operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in <u>Section 4.2</u> below.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3    <u>Terms Generally; References and Titles</u>.    References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a

reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4     Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

## ARTICLE II.
## Assignment of Leases and Rents

2.1     Assignment.  For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2     Application of Rent.

(a)             Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)             After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)             Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the

Bagley– B Note Security Instrument

EXHIBIT 7 - Page 79

Indebtedness.  The assignment in <u>Section 2.1</u> above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)        Lender may, at its option and without impairing its rights under the assignment in this <u>Section 2.1</u>, release any Rent Lender receives to Trustor.

(e)        As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in <u>Section 2.1</u> above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)        Lender is not required to institute legal proceedings to enforce the terms of this <u>Section</u>.

2.3        <u>No Third Party Beneficiary</u>.  The assignment in <u>Section 2.1</u> above is not made for the benefit of any Person other than Lender.

2.4        <u>Release and Termination</u>.  The assignment in <u>Section 2.1</u> above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1        <u>Intentionally Omitted.</u>

3.2        <u>Approval</u>.  Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3        <u>Terms</u>.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4        <u>Lender's Preapproval</u>.  Notwithstanding <u>Section 3.2</u> above and subject to Sections **Error! Reference source not found.** and <u>3.3</u> above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)        are with Tenants who are not affiliated with Trustor;

(b)        do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)        do not afford Tenants any termination rights;

(d)        are an arm's length transaction on economic terms conforming to current market conditions;

(e)        have a market rental rate; and

(f)        do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Remedies**

4.1        <u>Possession</u>.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from

7

the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2    Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3    Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

4.4    Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

**FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5    Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6    Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)    Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)    Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)    Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days

prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.7     Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.<br><b>Miscellaneous</b>

5.1     Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2     Authorization to File Financing Statement.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3     Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing.  For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4     Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5     Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the

EXHIBIT 7 - Page 82

outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6    Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7    Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8    Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9    WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

| To Lender: | Archway Broadway Loan SPE, LLC |
| ` | Archway Real Estate Income Fund I REIT, LLC |
| | 1875 Century Park East. Suite #900 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Kohan |
| | Phone: (310) 893-5277 |
| | Email: joshua@archwayfund.com |
| | |
| with a copy to: | Thompson Coburn LLP |
| | 10100 Santa Monica Blvd., Suite 500 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Mogin |
| | Phone: (310) 282-2520 |

EXHIBIT 7 - Page 83

|  |  |
|---|---|
|  | Email: jmogin@thompsoncoburn.com |
| To Trustor: | c/o Alan Gomperts<br>264 S. Oakhurst Drive<br>Beverly Hills CA 90212<br>Phone: (310) 621-5350<br>Email: alangomperts@hotmail.com |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP<br>1766 Wilshire Blvd Suite 730<br>Los Angeles, CA 90025<br>Attention: Derrick Talerico<br>Phone (424) 500-8552<br>Email: dtalerico@wztslaw.com |
| Trustee: | Fidelity National Title<br>555 S. Flower Street, Suite 4420<br>Los Angeles, CA 90071<br>Attention: JB Jennings<br>Phone: (213) 452-7100<br>Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
## Concerning the Trustee

6.1     Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint

such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

      6.3     <u>Power of Sale</u>.

      (a)     Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

      (b)     At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

      (c)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

      (d)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes

12

**EXHIBIT 7 - Page 85**

and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)    In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4    Acceptance by Trustee.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5    Acts of Trustee.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6    No Liability of Trustee.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7    Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8    Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9    Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.


ARTICLE VII.
**State Law Provisions**

7.1    Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

EXHIBIT 7 - Page 86

7.2     <u>Full Reconveyance</u>.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     <u>Dwellings</u>.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     <u>Civil Code</u>.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     <u>Indemnity; Expenses</u>.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     <u>Supplemental Environmental Provisions</u>.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     <u>Foreclosure By Power of Sale</u>.

(i)  Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)      Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)      Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8      Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9      Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10      Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11      Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12      No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the

15

EXHIBIT 7 - Page 88

Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13   Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14   Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15   Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

EXHIBIT 7 - Page 89

7.16     Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17     Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18     No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

ARTICLE VIII.
**California Waiver Provisions.**

8.1     Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2     Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which

17

the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil **Code**, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

18

Bagley– B Note Security Instrument

EXHIBIT 7 - Page 91

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

_____

**ALAN GOMPERTS**, **as Trustee of**
**The Gomperts and Halevy Family Trust**

_____

**SHARON HALEVY**, **as Trustee of**
**The Gomperts and Halevy Family Trust**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 7 - Page 92**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 7 - Page 93**

**EXHIBIT A**

LEGAL DESCRIPTION OF LAND

For APN/Parcel ID(s):    4302-002-003

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 8 OF TRACT NO. 12780, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 263, PAGE 11 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

EXHIBIT A
TO
SECURITY INSTRUMENT

EXHIBIT 7 - Page 94

# EXHIBIT 8

EXHIBIT 8 - Page 95

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____
*(space above this line for recorder's use only)*


**SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in
interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE
I, LLC), as beneficiary

(collectively, Lender)
_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**
_____

Dated:          July 17, 2025

Address:        140 South Roxbury Drive
                Beverly Hills, CA 90212-2252


THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA,
MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY
INSTRUMENT.

**EXHIBIT 8 - Page 96**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of July 17, 2025, by **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").  Trustor has a 50% interest in the Property.

This Security Instrument is made in connection with

(A) that certain Settlement Agreement (the "*Settlement Agreement*"), by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"), SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The Settlement Agreement is mad in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the Loan Agreement).

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the Loan Agreement, in the original principal amount of $5,875,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) the Continuing Guaranty (B Note) dates as of the date hereof, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the obligations of Broadway under the B Note.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

3

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obnligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances.  This Security Instrument will have no further force or effect on the Termination Date.  Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
### Definitions and Loan Documents

1.1     Loan Documents.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2     Definitions.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future

4

operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in <u>Section 4.2</u> below.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3    <u>Terms Generally; References and Titles</u>.   References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a

reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date.  References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4     Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment.  For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender.  Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2     Application of Rent.

(a)          Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)          After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)          Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the

Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)        Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)        As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)        Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3      No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4      Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

## ARTICLE III.
## Leases

3.1      Intentionally Omitted.

3.2      Approval.  Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3      Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4      Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)        are with Tenants who are not affiliated with Trustor;

(b)        do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)        do not afford Tenants any termination rights;

(d)        are an arm's length transaction on economic terms conforming to current market conditions;

(e)        have a market rental rate; and

(f)        do not contain any rights of first refusal or options to purchase.

## ARTICLE IV.
## Remedies

4.1      Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from

7

the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

4.4     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

**FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days

prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)      Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)      prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.7      Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1      Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2      Authorization to File Financing Statement.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3      Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing.  For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4      Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5      Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the

outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6     Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7     Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8     Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9     WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

| To Lender: | Archway Broadway Loan SPE, LLC |
| ` | Archway Real Estate Income Fund I REIT, LLC |
| | 1875 Century Park East. Suite #900 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Kohan |
| | Phone: (310) 893-5277 |
| | Email: joshua@archwayfund.com |
| | |
| with a copy to: | Thompson Coburn LLP |
| | 10100 Santa Monica Blvd., Suite 500 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Mogin |
| | Phone: (310) 282-2520 |

10

Roxbury– B Note Security Instrument
EXHIBIT 8 - Page 106

Email: jmogin@thompsoncoburn.com

| | |
|---|---|
| To Trustor: | c/o Sue Halevy<br>257 S. Linden Drive<br>Beverly Hills CA 90212<br>Phone: (310) 666-2885<br>Email: danhalevy@gmail.com |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP<br>1766 Wilshire Blvd Suite 730<br>Los Angeles, CA 90025<br>Attention: Derrick Talerico<br>Phone (424) 500-8552<br>Email: dtalerico@wztslaw.com |
| Trustee: | Fidelity National Title<br>555 S. Flower Street, Suite 4420<br>Los Angeles, CA 90071<br>Attention: JB Jennings<br>Phone: (213) 452-7100<br>Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

ARTICLE VI.
**Concerning the Trustee**

6.1     Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of

11

Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise. Trustor agrees to the foregoing for itself, its successors and assigns.

    6.3    <u>Power of Sale</u>.

    (a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located. Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

    (b)    At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full. If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

    (c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

    (d)    In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the

12

outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)     In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4     <u>Acceptance by Trustee</u>.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5     <u>Acts of Trustee</u>.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6     <u>No Liability of Trustee</u>.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     <u>Trustee Powers</u>.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8     <u>Priority</u>.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     <u>Ratification</u>.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

## ARTICLE VII.
## State Law Provisions

7.1     <u>Conflicts</u>.  This <u>Article VII</u> will control any conflict between the terms of this <u>Article VII</u> and the other provisions of this Security Instrument and the other B Note Guaranty.

13

7.2 <u>Full Reconveyance</u>. Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3 <u>Dwellings</u>. No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed. No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4 <u>Civil Code</u>. Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5 <u>Indemnity; Expenses</u>. Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument. The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property. Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6 <u>Supplemental Environmental Provisions</u>. In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7 <u>Foreclosure By Power of Sale</u>.

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)    Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)    Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8    Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9    Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12    No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the

Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

16

7.16     Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17     Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18     No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

ARTICLE VIII.
**California Waiver Provisions.**

8.1     Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2     Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which

17

the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil **Code**, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

18

       Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

_____

**SUE HALEVY, Trustee of**
**the Halevy Family Trust dated September 8, 2010**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 8 - Page 115**

ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 8 - Page 116**

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

For APN/Parcel ID(s):    4328-020-015

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 431 OF TRACT NO. 7710, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4328-020-015

EXHIBIT A
TO
SECURITY INSTRUMENT

EXHIBIT 8 - Page 117

# EXHIBIT 9

**EXHIBIT 9 - Page 118**

## ESTOPPEL CERTIFICATE

To:    Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("Archway")

**Re:    140 S. Roxbury Drive, Beverly Hills, California 90212**

THIS IS TO CERTIFY THAT AS OF THE DATE HEREOF AND TO THE ACTUAL KNOWLEDGE OF THE INDIVIDUALS SIGNING THIS CERTIFICATE ON BEHALF OF THE UNDERSIGNED:

1.    The undersigned are the owners of the property located at 140 S. Roxbury Drive, Beverly Hills, California 90212 (the "Property"), as more fully described in the legal description attached hereto as Exhibit A and incorporation herein by this reference.

2.    Title to the Property is vested in David Halevy and Sue Halevy as Trustees of THE HALEVY FAMILY TRUST ("Halevy Trust"), as to an undivided 50% interest and Haskell Fuaad Muhtar and Nurit Muhtar, Trustees of THE HASKELL and NURIT MUHTAR REVOCABLE TRUST ("Haskell Trust" and together with the Halevy Trust, individually and collectively the "Owner" and/or "Owners"), as to an undivided 50% interest.

3.    There is neither a written nor an oral general partnership agreement nor a limited partnership agreement, by and between the Halevy Trust and Haskell Trust.

4.    There is neither a written nor an oral tenants-in-common agreement, by and between the Halevy Trust and Haskell Trust.

5.    There is neither a written nor an oral agreement, of any kind, concerning the ownership of the Property, other than each of the Owners owning an undivided 50% interest in the Property.

6.    There exists no default by either Owner under any agreement, obligation, or instrument relating to the ownership of the Property.

7.    The Owners acknowledge that there is no agreement or understanding between them that contains any restriction, limitation or prohibition on either Owner's right to encumber, pledge, or otherwise grant a lien upon its undivided 50% interest in the Property, including without limitation the Halevy Trust granting to Archway an encumbrance on its interests in the Property.  In that regard, the Haskell Trust consents to the Pledge and Security Agreement of even date herewith executed by the Halvey Trust in connection with it ownership interest in the Property.

5727785v3 | 101415-0002                                    1

**EXHIBIT 9 - Page 119**

The undersigned hereby represent, warrant, and acknowledge that the terms contained in this Estoppel Certificate are correct and binding against the undersigned.

The undersigned make the foregoing certifications for the benefit of Archway and their respective successors and assigns with the understanding that they shall be entitled to rely, and intend to so rely, on such certifications for estoppel purposes with regard to taking an interest in the Property.

DATED this _____ day of _____, 2026.

_____
Sue Halevy, as Trustee of THE
HALEVY FAMILY TRUST

_____
Haskell Fuaad Muhtar, as Trustee
of THE HASKELL AND NURIT
MUHTAR REVOCABLE TRUST

_____
Nurit Muhtar, as Trustee of THE
HASKELL AND NURIT
MUHTAR REVOCABLE TRUST

5727785v3 | 101415-0002                              2

**EXHIBIT 9 - Page 120**

## EXHIBIT A
## LEGAL DESCRIPTION

**For APN/Parcel ID(s):    4328-020-015**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 431 OF TRACT NO. 7710, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4328-020-015

# EXHIBIT 10

EXHIBIT 10 - Page 122

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____

*(space above this line for recorder's use only)*


**SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in
interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE
I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**
_____

Dated:          July 17, 2025

Address:        133 South Palm Dr, Apt 0005
                Beverly Hills, CA 90212


THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA,
MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY
INSTRUMENT.

**EXHIBIT 10 - Page 123**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of July 17, 2025, by **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with

(A) that certain Settlement Agreement (the "*Settlement Agreement*"), by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"), SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*"). The Settlement Agreement is mad in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the Loan Agreement).

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the Loan Agreement, in the original principal amount of $5,875,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) the Continuing Guaranty (B Note) dates as of the date hereof, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the obligations of Broadway under the B Note.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

**EXHIBIT 10**

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

3

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obnligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
### Definitions and Loan Documents

1.1    Loan Documents. All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument. All covenants in the Loan Documents are covenants running with the Land.

1.2    Definitions. Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement. Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future

operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in <u>Section 4.2</u> below.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3    <u>Terms Generally; References and Titles</u>.    References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a

5

Greenfield PH (Palm Drive)  Junior Security Instrument

EXHIBIT 10 - Page 128

reference to any Person includes the successors and assigns of the Person. Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations. References to any statute or act, without additional reference, refer to federal statutes and acts of the United States. References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4     Prepayment Premium. Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment. For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent. Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents. Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums. During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property. Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper. It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2     Application of Rent.

(a)              Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee). Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan. Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)              After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing. Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)              Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the

6

Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)     Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)     As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)     Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3     No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4     Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1     Intentionally Omitted.

3.2     Approval.  Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3     Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4     Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)     are with Tenants who are not affiliated with Trustor;

(b)     do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)     do not afford Tenants any termination rights;

(d)     are an arm's length transaction on economic terms conforming to current market conditions;

(e)     have a market rental rate; and

(f)     do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Remedies**

4.1     Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from

7

the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

4.4     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

**FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days

prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.7     Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1     Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2     Authorization to File Financing Statement.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3     Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4     Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5     Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the

outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6     Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7     Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8     Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9     WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

To Lender:              Archway Broadway Loan SPE, LLC
`                       Archway Real Estate Income Fund I REIT, LLC
                        1875 Century Park East. Suite #900
                        Los Angeles, CA 90067
                        Attention: Joshua Kohan
                        Phone: (310) 893-5277
                        Email: joshua@archwayfund.com

with a copy to:         Thompson Coburn LLP
                        10100 Santa Monica Blvd., Suite 500
                        Los Angeles, CA 90067
                        Attention: Joshua Mogin
                        Phone: (310) 282-2520

10

Greenfield PH (Palm Drive)  Junior Security Instrument

EXHIBIT 10 - Page 133

|  | Email: jmogin@thompsoncoburn.com |
|---|---|
| To Trustor: | c/o Alan Gomperts<br>264 S. Oakhurst Drive<br>Beverly Hills CA 90212<br>Phone: (310) 621-5350<br>Email: alangomperts@hotmail.com |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP<br>1766 Wilshire Blvd Suite 730<br>Los Angeles, CA 90025<br>Attention: Derrick Talerico<br>Phone (424) 500-8552<br>Email: dtalerico@wztslaw.com |
| Trustee: | Fidelity National Title<br>555 S. Flower Street, Suite 4420<br>Los Angeles, CA 90071<br>Attention: JB Jennings<br>Phone: (213) 452-7100<br>Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above.  Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

ARTICLE VI.
**<u>Concerning the Trustee</u>**

6.1     <u>Trustee's Fees</u>.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     <u>Substitute Trustee</u>.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint

11

such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

6.3     Power of Sale.

(a)     Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)     At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes

and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)    In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4    Acceptance by Trustee.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5    Acts of Trustee.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6    No Liability of Trustee.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct.  The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7    Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8    Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9    Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

ARTICLE VII.
**State Law Provisions**

7.1    Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

13

Greenfield PH (Palm Drive)  Junior Security Instrument

EXHIBIT 10 - Page 136

7.2     <u>Full Reconveyance</u>.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     <u>Dwellings</u>.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     <u>Civil Code</u>.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     <u>Indemnity; Expenses</u>.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     <u>Supplemental Environmental Provisions</u>.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     <u>Foreclosure By Power of Sale</u>.

(i)  Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

14

Greenfield PH (Palm Drive)  Junior Security Instrument

EXHIBIT 10 - Page 137

(a)      Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)      Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8      Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9      Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10      Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11      Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12      No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the

Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

16

Greenfield PH (Palm Drive)  Junior Security Instrument

EXHIBIT 10 - Page 139

7.16    <u>Perfection of Appointment</u>.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17    <u>Succession Instruments</u>.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    <u>No Representation by Trustee or Lender</u>.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

ARTICLE VIII.
**<u>California Waiver Provisions.</u>**

8.1    Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2    Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which

the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil **Code**, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

18

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

---

**SUE HALEVY, Trustee of
the Halevy Family Trust dated September 8, 2010**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 10 - Page 142**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 10 - Page 143**

## **EXHIBIT A**

LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 1118 TRACT 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXHIBIT A
TO
SECURITY INSTRUMENT

**EXHIBIT 10 - Page 144**

# EXHIBIT 11

**EXHIBIT 11 - Page 145**

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____
*(space above this line for recorder's use only)*

**SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in
interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE
I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**
_____

Dated:          July 17, 2025

Address:        140 South Roxbury Drive
                Beverly Hills, CA 90212-2252

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA,
MORE PARTICULARLY DESCRIBED ON UNDERLINE EXHIBIT A ATTACHED TO THIS SECURITY
INSTRUMENT.

**EXHIBIT 11 - Page 146**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of July 17, 2025, by **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").  Trustor has a 50% interest in the Property.

This Security Instrument is made in connection with

(A) that certain Settlement Agreement (the "*Settlement Agreement*"), by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"), SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The Settlement Agreement is mad in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the Loan Agreement).

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the Loan Agreement, in the original principal amount of $5,875,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) the Continuing Guaranty (B Note) dates as of the date hereof, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the obligations of Broadway under the B Note.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

1

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

EXHIBIT 11 - Page 148

### GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

### GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

### GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

### GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

### GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

### GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

### GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

3

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obnligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

ARTICLE I.
**Definitions and Loan Documents**

1.1    Loan Documents.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2    Definitions.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future

operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in <u>Section 4.2</u> below.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3  <u>Terms Generally; References and Titles</u>.  References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a

reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4     Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment.  For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2     Application of Rent.

(a)          Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)          After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)          Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the

Indebtedness. The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d) Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e) As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective. Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f) Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3 No Third Party Beneficiary. The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4 Release and Termination. The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1 Intentionally Omitted.

3.2 Approval. Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3 Terms. Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests. Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4 Lender's Preapproval. Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a) are with Tenants who are not affiliated with Trustor;

(b) do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c) do not afford Tenants any termination rights;

(d) are an arm's length transaction on economic terms conforming to current market conditions;

(e) have a market rental rate; and

(f) do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Remedies**

4.1 Possession. During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property. If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from

7

the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

4.4     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days

prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)      Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)      prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.7      Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1      Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2      Authorization to File Financing Statement.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3      Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing.  For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4      Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5      Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the

outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6     Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7     Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8     Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9     WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10     Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

| | |
|---|---|
| To Lender: | Archway Broadway Loan SPE, LLC |
| ` | Archway Real Estate Income Fund I REIT, LLC |
| | 1875 Century Park East. Suite #900 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Kohan |
| | Phone: (310) 893-5277 |
| | Email: joshua@archwayfund.com |
| | |
| with a copy to: | Thompson Coburn LLP |
| | 10100 Santa Monica Blvd., Suite 500 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Mogin |
| | Phone: (310) 282-2520 |

10

Roxbury– B Note Security Instrument

EXHIBIT 11 - Page 156

Email: jmogin@thompsoncoburn.com

To Trustor:  c/o Sue Halevy
257 S. Linden Drive
Beverly Hills CA 90212
Phone: (310) 666-2885
Email: danhalevy@gmail.com

with a copy to  Weintraub Zolkin Talerico & Selth LLP
1766 Wilshire Blvd Suite 730
Los Angeles, CA 90025
Attention: Derrick Talerico
Phone (424) 500-8552
Email: dtalerico@wztslaw.com

Trustee:  Fidelity National Title
555 S. Flower Street, Suite 4420
Los Angeles, CA 90071
Attention: JB Jennings
Phone: (213) 452-7100
Email: JB.Jennings@fnf.com

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

ARTICLE VI.
**Concerning the Trustee**

6.1  <u>Trustee's Fees</u>.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2  <u>Substitute Trustee</u>.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of

11

Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise. Trustor agrees to the foregoing for itself, its successors and assigns.

6.3    Power of Sale.

(a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located. Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)    At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple. In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full. If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)    In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the

outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)     In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4     Acceptance by Trustee.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5     Acts of Trustee.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6     No Liability of Trustee.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct.  The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8     Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

## ARTICLE VII.
### State Law Provisions

7.1     Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

13

7.2     <u>Full Reconveyance</u>.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     <u>Dwellings</u>.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     <u>Civil Code</u>.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     <u>Indemnity; Expenses</u>.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     <u>Supplemental Environmental Provisions</u>.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     <u>Foreclosure By Power of Sale</u>.

(i)  Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

14

(a)      Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)      Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8      Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9      Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10      Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11      Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12      No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the

Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    <u>Concerning the Trustee</u>.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    <u>Retention of Money</u>.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    <u>Successor Trustees</u>.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16     Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17     Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18     No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

ARTICLE VIII.
**California Waiver Provisions.**

8.1     Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2     Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which

17

the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil **Code**, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

---

**SUE HALEVY, Trustee of**
**the Halevy Family Trust dated September 8, 2010**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 11 - Page 165**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 11 - Page 166**

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

For APN/Parcel ID(s):    4328-020-015

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 431 OF TRACT NO. 7710, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4328-020-015

EXHIBIT A
TO
SECURITY INSTRUMENT

EXHIBIT 11 - Page 167

# EXHIBIT 12

EXHIBIT 12 - Page 168

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____
*(space above this line for recorder's use only)*

**DANIEL HALEVY (A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**), as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in
interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE
I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**
_____

| | |
|---|---|
| Dated: | July 17, 2025 |
| Address: | 8561 Horner Street |
| | Los Angeles, CA 90035 |

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA,
MORE PARTICULARLY DESCRIBED ON UNDERLINE EXHIBIT A ATTACHED TO THIS SECURITY
INSTRUMENT.

**EXHIBIT 12 - Page 169**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of July 17, 2025, by **DANIEL HALEVY (A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**) ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with

(A) that certain Settlement Agreement (the "*Settlement Agreement*"), by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"), SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The Settlement Agreement is mad in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the Loan Agreement).

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the Loan Agreement, in the original principal amount of $5,875,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) the Continuing Guaranty (B Note) dates as of the date hereof, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the obligations of Broadway under the B Note.

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

### GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

1

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

2

Greenfield PH (Horner Street)  Junior Security Instrument

EXHIBIT 12 - Page 171

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

3

Greenfield PH (Horner Street)  Junior Security Instrument

**EXHIBIT 12 - Page 172**

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obnligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

ARTICLE I.
**Definitions and Loan Documents**

1.1     Loan Documents.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents are covenants running with the Land.

1.2     Definitions.  Capitalized terms not otherwise defined below will have the meanings set forth in the Loan Agreement.  Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future

operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in Section 4.2 below.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Loan Agreement*" means the Loan Agreement, dated as of the date hereof, between Lender and Borrower.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default Period.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means day on which Trustor fully pays the Indebtedness and performance all of Trustor's obligations under the Loan Documents.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3    Terms Generally; References and Titles.    References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural. Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a

reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date.  References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

1.4    Prepayment Premium.  Unless Lender specifically waives the Prepayment Premium (as defined in the Loan Agreement) in any purported payoff statement, the Prepayment Premium is due and payable as provided in the Loan Agreement.

ARTICLE II.
**Assignment of Leases and Rents**

2.1    Assignment.  For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender.  Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default Period, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2    Application of Rent.

(a)        Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all Real Estate Taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)        After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)        Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion): (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the

Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)       Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)       As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)       Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3      No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4      Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

## ARTICLE III.
## Leases

3.1      Intentionally Omitted.

3.2      Approval.  Except as set forth below and in the Loan Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3      Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4      Lender's Preapproval.  Notwithstanding Section 3.2 above and subject to Sections **Error! Reference source not found.** and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)       are with Tenants who are not affiliated with Trustor;

(b)       do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)       do not afford Tenants any termination rights;

(d)       are an arm's length transaction on economic terms conforming to current market conditions;

(e)       have a market rental rate; and

(f)       do not contain any rights of first refusal or options to purchase.

## ARTICLE IV.
## Remedies

4.1      Possession.  During an Event of Default Period, Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from

7

the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be Additional Costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.2     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default Period, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.3     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default Period, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be Additional Costs.  This *Section* is an express condition upon which the Loan is made.

4.4     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.5     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.6     Uniform Commercial Code.  During an Event of Default Period, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in the Loan Agreement ten (10) days

prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)    Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)    prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.7    Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1    Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2    Authorization to File Financing Statement.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3    Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4    Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5    Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the

9

outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6    Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7    Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8    Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9    WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

|  |  |
|---|---|
| To Lender:<br>` | Archway Broadway Loan SPE, LLC<br>Archway Real Estate Income Fund I REIT, LLC<br>1875 Century Park East. Suite #900<br>Los Angeles, CA 90067<br>Attention: Joshua Kohan<br>Phone: (310) 893-5277<br>Email: joshua@archwayfund.com |
| with a copy to: | Thompson Coburn LLP<br>10100 Santa Monica Blvd., Suite 500<br>Los Angeles, CA 90067<br>Attention: Joshua Mogin<br>Phone: (310) 282-2520 |

10

Greenfield PH (Horner Street)  Junior Security Instrument

EXHIBIT 12 - Page 179

Email: jmogin@thompsoncoburn.com

To Trustor:          c/o Alan Gomperts
                     264 S. Oakhurst Drive
                     Beverly Hills CA 90212
                     Phone: (310) 621-5350
                     Email: alangomperts@hotmail.com

with a copy to       Weintraub Zolkin Talerico & Selth LLP
                     1766 Wilshire Blvd Suite 730
                     Los Angeles, CA 90025
                     Attention: Derrick Talerico
                     Phone (424) 500-8552
                     Email: dtalerico@wztslaw.com

Trustee:             Fidelity National Title
                     555 S. Flower Street, Suite 4420
                     Los Angeles, CA 90071
                     Attention: JB Jennings
                     Phone: (213) 452-7100
                     Email: JB.Jennings@fnf.com

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above. Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

ARTICLE VI.
**Concerning the Trustee**

6.1     Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint

11

Greenfield PH (Horner Street)  Junior Security Instrument

EXHIBIT 12 - Page 180

such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

       6.3     Power of Sale.

       (a)     Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

       (b)     At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

       (c)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

       (d)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes

and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)      In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4      Acceptance by Trustee.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5      Acts of Trustee.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6      No Liability of Trustee.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct.  The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7      Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8      Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9      Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

## ARTICLE VII.
## State Law Provisions

7.1      Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

13

Greenfield PH (Horner Street)  Junior Security Instrument

EXHIBIT 12 - Page 182

7.2     <u>Full Reconveyance</u>.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     <u>Dwellings</u>.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     <u>Civil Code</u>.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     <u>Indemnity; Expenses</u>.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     <u>Supplemental Environmental Provisions</u>.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     <u>Foreclosure By Power of Sale</u>.

(i)  Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

14

(a)    Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)    Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8    Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9    Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12    No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the

15

Greenfield PH (Horner Street)  Junior Security Instrument

**EXHIBIT 12 - Page 184**

Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13   Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14   Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15   Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16     Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17     Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18     No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

ARTICLE VIII.
**California Waiver Provisions.**

8.1     Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2     Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which

17

the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil **Code**, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

18

Greenfield PH (Horner Street)  Junior Security Instrument

**EXHIBIT 12 - Page 187**

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

 

_____

**DANIEL HALEVY (A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 12 - Page 188**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 12 - Page 189**

## **EXHIBIT A**

LEGAL DESCRIPTION OF LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXHIBIT A
TO
SECURITY INSTRUMENT

**EXHIBIT 12 - Page 190**

# EXHIBIT 13

EXHIBIT 13 - Page 191

**RECORDING REQUESTED BY**
**AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____
*(space above this line for recorder's use only)*

**341 SOUTH CANNON LLC,** a Cali, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in
interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I
SPE I, LLC), as beneficiary

(collectively, Lender)
_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**
**(B NOTE GUARANTY)**
_____

Dated:              June __, 2026

Address:            341 S. Canon Drive
                    Beverly Hills, CA 90212-4515


THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA,
MORE PARTICULARLY DESCRIBED ON UNDERLINE EXHIBIT A ATTACHED TO THIS SECURITY
INSTRUMENT.

5957885v1 | 101415-0002

**EXHIBIT 13 - Page 192**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of June ▮▮, 2026, by **341 SOUTH CANNON LLC,** a California limited liability company ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with the following:

(A) that certain Settlement Agreement (the "*2026 Settlement Agreement*"), dated as of June 1, 2026, by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"),  SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The 2026 Settlement Agreement is made in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the "*Loan Agreement*").

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the 2026 Settlement Agreement, in the original principal amount of $10,300,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) The Continuing Guaranty (B Note and Other Obligations) dated as of the date herewith, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"), and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the Guaranteed Obligations (as defined herein).  For the avoidance of doubt, this Security Instrument does not secure the A Note (as defined in the 2026 Settlement Agreement) or the Amended Broadway Guaranty as to the A Note (as defined in the 2026 Settlement Agreement).

### W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

### GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

## GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all

claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances.  This Security Instrument will have no further force or effect on the Termination Date.  Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

## ARTICLE I.
## Definitions and Loan Documents

1.1     <u>Loan Documents</u>.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents related to the Real Property are covenants running with the Land.

1.2     <u>Definitions</u>.  Capitalized terms not otherwise defined below will have the meanings set forth in the 2026 Settlement Agreement.  Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"*Applicable Law*" means all Laws, covenants, conditions and restrictions (including private restrictive covenants) and other requirements relating to or affecting Borrower, Guarantor, Lender or the Property.

"*B Note Guaranty*" shall have the meaning ascribed to it in the 2026 Settlement Agreement.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in Section 4.4 below.

"*Governmental Authority*" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank, or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supranational bodies such as the European Union or the European Central Bank).

"*Guaranteed Obligations*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Indebtedness*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Law*" means any statute, law, regulation, ordinance, rule, treaty, judgment, order, decree, permit, concession, franchise, license, agreement or other governmental restriction, or binding judicial (or tribunal) decisions of the United States or any state or political subdivision thereof, or of any foreign country or any department, province or other political subdivision thereof. All references to Law include any amendment or modification to the Law, and all regulations, rulings, and other Laws promulgated under such Law.

"*Loan*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Loan Documents*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default.

"*Permitted Encumbrances*" means encumbrances approved by Lender.

"*Person*" means a natural person, partnership, corporation (including a business trust), joint stock company, trust, unincorporated association, joint venture, limited liability company or other entity, or a government or any political subdivision or agency thereof.

"*Personal Property*" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"*Property*" means the Real Property and the Personal Property.

"*Real Property*" means, collectively, (i) the Land (as legally described in *Exhibit A* annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"*Security Instrument*" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"*Termination Date*" means the day on which the Guaranteed Obligations have been indefeasibly paid and performed in full.

"*Transfer Event*" means the transfer of title to any Collateral to a Transferee.

"*Transferee*" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"*Trustee*" means Fidelity National Title, and the successors and substitutes Lender designates.

"*Uniform Commercial Code*" or "*UCC*" means the Uniform Commercial Code of the State of California, as amended.

1.3     Terms Generally; References and Titles.   References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural.  Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment.   For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and

**EXHIBIT 13 - Page 198**

all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender.  Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

   2.2   Application of Rent.

   (a)   Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all real estate taxes, insurance premiums, maintenance and repair costs, for the Property.

   (b)   After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

   (c)   Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion):  (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

   (d)   Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

   (e)   As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

   (f)   Lender is not required to institute legal proceedings to enforce the terms of this Section.

   2.3   No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

2.4     Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

## ARTICLE III.
**Leases**

3.1     Intentionally Omitted.

3.2     Approval.   Except as set forth below and in the 2026 Settlement Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3     Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4     Lender's Preapproval.  Notwithstanding Sections 3.2 and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)          are with Tenants who are not affiliated with Trustor;

(b)          do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)          do not afford Tenants any termination rights;

(d)          are an arm's length transaction on economic terms conforming to current market conditions;

(e)          have a market rental rate; and

(f)          do not contain any rights of first refusal or options to purchase.

## ARTICLE IV.
**Event of Default; Unconsented Transfer; and Remedies**

4.1     Conditions Under Which Lender May Declare A Default By Trustor.  An Event of Default under this Security Instrument shall occur in the event that:  (a) Trustor fails to perform any other obligation required to be performed by Trustor under this Security Instrument or secured by this Security Instrument; or (b) an Event of Default ( as defined in the 2026 Settlement Agreement) occurs.

4.2     Lender's Right To Require Immediate Payment In Full.  In the event: (a) of an uncured Event of Default under this Security Instrument, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, except as permitted by the 2026 Settlement Agreement, Lender may, at its option and without further notice to any person, declare the Guaranteed Obligations together with accrued interest thereon, immediately due and payable.  As used herein, the term "transfer" includes, without limitation thereto, (i) the transfer of any general partnership or joint venture interest in Trustor or any general partner of Trustor, or change in the general partners or joint venturers of Trustor or of any general partner (if Trustor or any such general partner is a partnership or a joint venture), and the transfer of any common or voting stock in Trustor or any general partner of Trustor (if Trustor or any general partner of Trustor is a corporation), (ii) if Trustor is a limited partnership, any transfer of a limited partnership interest in a single transaction, or series of transactions, intended to transfer all or substantially all of the beneficial interest of the Property, or any part thereof, and (iii) if Trustor is not an individual, corporation, or partnership, the

transfer, directly or indirectly, of any beneficial interest in Trustor.  Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument.  No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

4.3     Possession.  During an Event of Default (as defined in the 2026 Settlement Agreement), Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be additional costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.4     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "***Foreclosure Statute***").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.5     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be additional costs.

4.6     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects or as otherwise expressly provided for in the 2026 Settlement Agreement, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.7     <u>Lender as Purchaser</u>.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.8     <u>Uniform Commercial Code</u>.  During an Event of Default, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in Section 5.10 below, ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.9     <u>Delivery of Possession After Foreclosure</u>.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.<br><b><u>Miscellaneous</u></b>

5.1     <u>Successor Trustee</u>.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2     <u>Authorization to File Financing Statement</u>.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If

Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3     Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4     Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5     Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6     Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7     Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8     Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9     WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10   Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

| | |
|---|---|
| To Lender: | Archway Broadway Loan SPE, LLC |
| ` | Archway Real Estate Income Fund I REIT, LLC |
| | 1875 Century Park East, Suite #900 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Kohan |
| | Phone: (310) 893-5277 |
| | Email: joshua@archwayfund.com |
| | |
| with a copy to: | Thompson Coburn LLP |
| | 10100 Santa Monica Blvd., Suite 500 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Mogin |
| | Phone: (310) 282-2520 |
| | Email: jmogin@thompsoncoburn.com |
| | |
| To Trustor: | 341 S Cannon LLC |
| | c/o Sue Halevy |
| | 257 S. Linden Drive |
| | Beverly Hills CA 90212 |
| | Phone: _____ |
| | Email: _____ |
| | |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP |
| | 1766 Wilshire Blvd Suite 730 |
| | Los Angeles, CA 90025 |
| | Attention: Derrick Talerico |
| | Phone (424) 500-8552 |
| | Email: dtalerico@wztslaw.com |
| | |
| Trustee: | Fidelity National Title |
| | 555 S. Flower Street, Suite 4420 |
| | Los Angeles, CA 90071 |
| | Attention: JB Jennings |
| | Phone: (213) 452-7100 |
| | Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above.  Either party may designate a change of

address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
## **Concerning the Trustee**

6.1    Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2    Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

6.3    Power of Sale.

(a)    Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)    At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any

sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)     In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4     <u>Acceptance by Trustee</u>.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5     <u>Acts of Trustee</u>.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6     <u>No Liability of Trustee</u>.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances

whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8     Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

ARTICLE VII.
**Additional Provisions**

7.1     Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

7.2     Full Reconveyance.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     Dwellings.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     Civil Code.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     Indemnity; Expenses.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument.  The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor

shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     Supplemental Environmental Provisions.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     Foreclosure By Power of Sale.

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)     Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)     Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8     Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9     Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and

prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    Waiver of Redemption, Notice and Marshalling of Assets.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    Discontinuance of Proceedings.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12    No Mortgagee in Possession.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    Concerning the Trustee.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    <u>Retention of Money</u>.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    <u>Successor Trustees</u>.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof.  If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16    <u>Perfection of Appointment</u>.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17    <u>Succession Instruments</u>.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    <u>No Representation by Trustee or Lender</u>.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender

7.19    <u>Payment By Trustor Of Taxes And Other Impositions</u>.  The term "***Taxes***" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate

taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "*Other Impositions*" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary, in Lender's sole and absolute opinion and judgment, to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least five (5) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

From and after an Event of Default, or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the B Note, until the B Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Security Instrument, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums.  In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender.  Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph 7.19, Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to utilize and apply said funds to satisfy, in whole or in part, any default by Trustor.  If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph 7.19.  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender, the latter may, without making any advance whatsoever, apply any sums held by it upon any obligation of Trustor secured hereby.  Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the above B Note and/or the B Note Guaranty, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect.  The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Security Instrument or any of the rights or powers of Lender or said Trustee under this Security Instrument or any other obligation secured hereby.

In the event of the passage, after the date of this Security Instrument, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the B Note Guaranty, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the B Note Guaranty, or this Security Instrument, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Security Instrument, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as renders the B Note Guaranty, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

7.20    <u>Trustor To Pay Ground Rents And Obligations That Could Result In Liens On The Property</u>. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Security Instrument is recorded, and to which this Security Instrument may be subordinate.  Trustor shall pay at or prior to maturity all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Security Instrument, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

7.21    <u>Trustor To Maintain Insurance</u>.  (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks as shall from time to time be required by Lender in its sole opinion and judgment as necessary to protect the security interest of Lender in the Property.  The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's sole and absolute opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the B Note, whichever is greater, (ii) business interruption insurance for losses arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in any event, such coverage shall insure Lender for loss of gross rental income and other revenues from the Property in excess of twelve (12) months, and (iii) comprehensive public liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender.  (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Security Instrument, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Security Instrument, and this amount shall

bear interest at the applicable rate of interest set forth in the B Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any foreclosure sale under this Security Instrument , Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such foreclosure sale.

7.22     Insurance Proceeds, Condemnation Proceeds And Other Recoveries.  (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Security Instrument, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 7.22. (b) All causes of action, whether accrued before or after the date of this Security Instrument, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Security Instrument, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 7.22. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding.  Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request.  (c) Settlements, awards, proceeds and damages (collectively, "*Awards*") received by Lender under the provisions of section (a) and section (b) of this paragraph 5, at the option of Lender, may be applied by Lender to the outstanding balance due on the B Note, or any other obligation secured by this Security Instrument, in such order as Lender may determine.  The Award may be used by Lender, without reducing the principal balance of the B Note or any other obligation secured by this Security Instrument, to replace, restore or reconstruct the Property to a condition satisfactory to Lender. The Award may be released to Trustor, or any such amount may be divided in any manner among any such application, use or release.  No such application, use or release of the Award shall cure or waive any default or notice of default under this Security Instrument or invalidate any act done pursuant to such notice.

7.23     Maintenance And Preservation Of The Property.

(a)     Trustor shall:  (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any fixtures, Personal Property or other items comprising the Property which may become obsolete or worn out, with fixtures, Personal Property or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Security Instrument, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed promptly in a good and workmanlike manner; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, including, without limitation, all environmental, land use, zoning, and chemical use statutes, ordinances, and codes of the United States of America, the State of California, and any locality thereof, relating to the protection of the environment and/or governing the use, storage, treatment, generation, transportation, processing, handling, production, or disposal of  hazardous substances, hazardous wastes, or toxic substances, and the rules, regulations, policies, guidelines, interpretations, decisions, orders, and directives of federal, state, and local government agencies with respect thereto, (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or

private, of any kind or character, and (C) any requirements of insurance companies and any bureau or agency which establishes standards of insurability, affecting the Property and/or pertaining to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deems necessary or appropriate to preserve and perfect the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)       Trustor shall not undertake or permit any material alterations, additions, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, fixtures or Personal Property comprising the Property, without the prior written consent of Lender. In seeking Lender's consent, Trustor will furnish to Lender, in form and substance satisfactory to Lender, in its opinion and judgment, a budget for any such work including a verifiable source of funds. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Security Instrument and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c)       Without limiting the generality of this paragraph 7.23, Trustor hereby warrants and represents to Lender and covenants with Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property, except for those which are used, stored or maintained in full and complete compliance with all such laws ("***Permitted Toxic Materials***"). Trustor further warrants and represents to Lender and covenants with Lender that Trustor does

not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property.  Trustor further warrants and represents to Lender and covenants with Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto.  ("*Toxic substances*," "*hazardous materials*" and "*hazardous wastes*" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.)  Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property.  Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)      [Reserved].

(e)      Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph 7.23.  Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct.  Lender may rely thereon without any investigation or inquiry.  By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph 7.23, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Security Instrument, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.24    Legal Actions And Payment Of Related Costs.  Trustor shall appear in and defend any action or proceeding that may, in Lender's sole judgment, adversely affect the Lender's security interest under this Security Instrument or any of the rights or powers of Lender or Trustee under this Security Instrument.  Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention.  Trustor promises and agrees to give Lender notice in writing of the pendency of any such

action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding.  Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Security Instrument.  Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph 7.22 of this Security Instrument.  If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so.  Whenever, under this Security Instrument, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand.  In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor.  All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the B Note.  As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

       7.25    <u>Lender's Rights To Inspect The Property</u>.  Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Security Instrument, including, but not limited to, Trustor's compliance with the terms of paragraph 7.23.

ARTICLE VIII.
**<u>California Waiver Provisions.</u>**

       8.1    Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

       8.2    Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain

order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil Code, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

    (a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

    (b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**

**341 SOUTH CANNON LLC,**
A California limited liability company

By: _____

Name: _____

Its: _____

5957885v1 | 101415-0002   SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 13 - Page 218**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 13 - Page 219**

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

The land referred to herein is situated in the State of California, County of Los Angeles, City of Beverly Hills and described as follows:

Lot 1887 of Tract No. 6380, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 69, Pages 11 to 20 inclusive of Maps, in the Office of the County Recorder of said County.

APN: 4331-005-011

(End of Legal Description)

# EXHIBIT 14

EXHIBIT 14 - Page 221

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____
*(space above this line for recorder's use only)*


**SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in
interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I
SPE I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING
(B NOTE GUARANTY)**
_____

| | |
|---|---|
| Dated: | June __, 2026 |
| Address: | 257 South Linden Drive |
| | Beverly Hills, CA 90212-3704 |


THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING
FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE
CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER
THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME
FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA,
MORE PARTICULARLY DESCRIBED ON <u>EXHIBIT A</u> ATTACHED TO THIS SECURITY
INSTRUMENT.

5957923v1 | 101415-0002

**EXHIBIT 14 - Page 222**

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY
AGREEMENT AND FIXTURE FILING**

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of June ██, 2026, by **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with the following:

(A) that certain Settlement Agreement (the "*2026 Settlement Agreement*"), dated as of June 1, 2026, by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"), SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("*Alan*") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*"). The 2026 Settlement Agreement is made in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the "*Loan Agreement*").

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the 2026 Settlement Agreement, in the original principal amount of $10,300,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) The Continuing Guaranty (B Note and Other Obligations) dated as of the date herewith, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"), and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the Guaranteed Obligations (as defined herein). For the avoidance of doubt, this Security Instrument does not secure the A Note (as defined in the 2026 Settlement Agreement) or the Amended Broadway Guaranty as to the A Note (as defined in the 2026 Settlement Agreement).

**W I T N E S S E T H:**

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

**GRANTING CLAUSE ONE**

All of Trustor's right, title and interest in and to the Land.

## GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.  In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all

claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

ARTICLE I.
**Definitions and Loan Documents**

1.1     Loan Documents.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents related to the Real Property are covenants running with the Land.

1.2     Definitions.  Capitalized terms not otherwise defined below will have the meanings set forth in the 2026 Settlement Agreement.  Each of the below capitalized terms has the following meaning:

"*Additional Land*" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

"***Applicable Law***" means all Laws, covenants, conditions and restrictions (including private restrictive covenants) and other requirements relating to or affecting Borrower, Guarantor, Lender or the Property.

"***B Note Guaranty***" shall have the meaning ascribed to it in the 2026 Settlement Agreement.

"***Collateral***" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"***Equipment***" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"***Foreclosure Statute***" has the meaning set forth in Section 4.4 below.

"***Governmental Authority***" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank, or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supranational bodies such as the European Union or the European Central Bank).

"***Guaranteed Obligations***" shall have the meaning ascribed to it in the B Note Guaranty.

"***Indebtedness***" shall have the meaning ascribed to it in the B Note Guaranty.

"***Improvements***" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"***Land***" the real property or properties described on ***Exhibit A*** attached hereto.

"***Law***" means any statute, law, regulation, ordinance, rule, treaty, judgment, order, decree, permit, concession, franchise, license, agreement or other governmental restriction, or binding judicial (or tribunal) decisions of the United States or any state or political subdivision thereof, or of any foreign country or any department, province or other political subdivision thereof. All references to Law include any amendment or modification to the Law, and all regulations, rulings, and other Laws promulgated under such Law.

"***Loan***" shall have the meaning ascribed to it in the B Note Guaranty.

"***Loan Documents***" shall have the meaning ascribed to it in the B Note Guaranty.

"***Payment Notice***" means Lender's notice to Tenant of an Event of Default.

"***Permitted Encumbrances***" means encumbrances approved by Lender.

"***Person***" means a natural person, partnership, corporation (including a business trust), joint stock company, trust, unincorporated association, joint venture, limited liability company or other entity, or a government or any political subdivision or agency thereof.

"***Personal Property***" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"***Property***" means the Real Property and the Personal Property.

"***Real Property***" means, collectively, (i) the Land (as legally described in ***Exhibit A*** annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"***Security Instrument***" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"***Termination Date***" means the day on which the Guaranteed Obligations have been indefeasibly paid and performed in full.

"***Transfer Event***" means the transfer of title to any Collateral to a Transferee.

"***Transferee***" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"***Trustee***" means Fidelity National Title, and the successors and substitutes Lender designates.

"***Uniform Commercial Code***" or "***UCC***" means the Uniform Commercial Code of the State of California, as amended.

1.3     Terms Generally; References and Titles.   References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural.  Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

ARTICLE II.
**Assignment of Leases and Rents**

2.1     Assignment.   For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and

all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2   Application of Rent.

(a)      Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all real estate taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)      After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)      Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion):  (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)      Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)      As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)      Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3   No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

**EXHIBIT 14 - Page 229**

2.4     Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1     Intentionally Omitted.

3.2     Approval.   Except as set forth below and in the 2026 Settlement Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3     Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4     Lender's Preapproval.  Notwithstanding Sections 3.2 and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)          are with Tenants who are not affiliated with Trustor;

(b)          do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)          do not afford Tenants any termination rights;

(d)          are an arm's length transaction on economic terms conforming to current market conditions;

(e)          have a market rental rate; and

(f)          do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Event of Default; Unconsented Transfer; and Remedies**

4.1     Conditions Under Which Lender May Declare A Default By Trustor.  An Event of Default under this Security Instrument shall occur in the event that:  (a) Trustor fails to perform any other obligation required to be performed by Trustor under this Security Instrument or secured by this Security Instrument; or (b) an Event of Default ( as defined in the 2026 Settlement Agreement) occurs.

4.2     Lender's Right To Require Immediate Payment In Full.  In the event: (a) of an uncured Event of Default under this Security Instrument, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, except as permitted by the 2026 Settlement Agreement, Lender may, at its option and without further notice to any person, declare the Guaranteed Obligations together with accrued interest thereon, immediately due and payable.  As used herein, the term "transfer" includes, without limitation thereto, (i) the transfer of any general partnership or joint venture interest in Trustor or any general partner of Trustor, or change in the general partners or joint venturers of Trustor or of any general partner (if Trustor or any such general partner is a partnership or a joint venture), and the transfer of any common or voting stock in Trustor or any general partner of Trustor (if Trustor or any general partner of Trustor is a corporation), (ii) if Trustor is a limited partnership, any transfer of a limited partnership interest in a single transaction, or series of transactions, intended to transfer all or substantially all of the beneficial interest of the Property, or any part thereof, and (iii) if Trustor is not an individual, corporation, or partnership, the

transfer, directly or indirectly, of any beneficial interest in Trustor.  Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument.  No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

4.3     Possession.  During an Event of Default (as defined in the 2026 Settlement Agreement), Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be additional costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.4     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "*Foreclosure Statute*").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.5     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be additional costs.

4.6     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects or as otherwise expressly provided for in the 2026 Settlement Agreement, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.7 _Lender as Purchaser_.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.8 _Uniform Commercial Code_.  During an Event of Default, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a) Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b) Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c) Lender may mail written notice to Trustor as provided in Section 5.10 below, ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d) Lender need not take possession of the Collateral prior to any Transfer Event; and

(e) prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.9 _Delivery of Possession After Foreclosure_.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1 _Successor Trustee_.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2 _Authorization to File Financing Statement_.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If

Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3     Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4     Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5     Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6     Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7     Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8     Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9     WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10   Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

| | |
|---|---|
| To Lender: | Archway Broadway Loan SPE, LLC |
| ` | Archway Real Estate Income Fund I REIT, LLC |
| | 1875 Century Park East, Suite #900 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Kohan |
| | Phone: (310) 893-5277 |
| | Email: joshua@archwayfund.com |
| with a copy to: | Thompson Coburn LLP |
| | 10100 Santa Monica Blvd., Suite 500 |
| | Los Angeles, CA 90067 |
| | Attention: Joshua Mogin |
| | Phone: (310) 282-2520 |
| | Email: jmogin@thompsoncoburn.com |
| To Trustor: | c/o Sue Halevy |
| | 257 S. Linden Drive |
| | Beverly Hills, CA 90212 |
| | Phone: _____ |
| | Email: _____ |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP |
| | 1766 Wilshire Blvd Suite 730 |
| | Los Angeles, CA 90025 |
| | Attention: Derrick Talerico |
| | Phone (424) 500-8552 |
| | Email: dtalerico@wztslaw.com |
| Trustee: | Fidelity National Title |
| | 555 S. Flower Street, Suite 4420 |
| | Los Angeles, CA 90071 |
| | Attention: JB Jennings |
| | Phone: (213) 452-7100 |
| | Email: JB.Jennings@fnf.com |

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above.  Either party may designate a change of

address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
### Concerning the Trustee

6.1     Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

6.3     Power of Sale.

(a)     Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)     At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any

sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)     Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)     In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)     In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4     <u>Acceptance by Trustee</u>.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5     <u>Acts of Trustee</u>.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6     <u>No Liability of Trustee</u>.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances

whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be genuine. All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     Trustee Powers. Trustee may exercise any of its powers through appointment of attorney-in-fact or agents. Trustee may select and employ legal counsel at the expense of Trustor.

6.8     Priority. All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     Ratification. Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

ARTICLE VII.
**Additional Provisions**

7.1     Conflicts. This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

7.2     Full Reconveyance. Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     Dwellings. No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed. No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     Civil Code. Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     Indemnity; Expenses. Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument. The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property. Notwithstanding the forgoing, Trustor

shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

7.6     Supplemental Environmental Provisions.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     Foreclosure By Power of Sale.

(i) Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)     Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)     Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8     Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9     Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and

prior lien and security interest in and to the Property. For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10 <u>Waiver of Redemption, Notice and Marshalling of Assets</u>. To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11 <u>Discontinuance of Proceedings</u>. If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12 <u>No Mortgagee in Possession</u>. Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13 <u>Concerning the Trustee</u>. With the approval of Lender, Trustee shall have the right to take any and all of the following actions: (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof.  If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16    Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17    Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18    No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender

7.19    Payment By Trustor Of Taxes And Other Impositions.  The term "*Taxes*" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate

taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "*Other Impositions*" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary, in Lender's sole and absolute opinion and judgment, to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least five (5) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

From and after an Event of Default, or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the B Note, until the B Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Security Instrument, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums.  In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender.  Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph 7.19, Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to utilize and apply said funds to satisfy, in whole or in part, any default by Trustor.  If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph 7.19.  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender, the latter may, without making any advance whatsoever, apply any sums held by it upon any obligation of Trustor secured hereby.  Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the above B Note and/or the B Note Guaranty, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect.  The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Security Instrument or any of the rights or powers of Lender or said Trustee under this Security Instrument or any other obligation secured hereby.

In the event of the passage, after the date of this Security Instrument, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the B Note Guaranty, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the B Note Guaranty, or this Security Instrument, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Security Instrument, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as renders the B Note Guaranty, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

7.20    <u>Trustor To Pay Ground Rents And Obligations That Could Result In Liens On The Property</u>. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Security Instrument is recorded, and to which this Security Instrument may be subordinate.  Trustor shall pay at or prior to maturity all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Security Instrument, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

7.21    <u>Trustor To Maintain Insurance</u>.  (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks as shall from time to time be required by Lender in its sole opinion and judgment as necessary to protect the security interest of Lender in the Property.  The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's sole and absolute opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the B Note, whichever is greater, (ii) business interruption insurance for losses arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in any event, such coverage shall insure Lender for loss of gross rental income and other revenues from the Property in excess of twelve (12) months, and (iii) comprehensive public liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender.  (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Security Instrument, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Security Instrument, and this amount shall

bear interest at the applicable rate of interest set forth in the B Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any foreclosure sale under this Security Instrument , Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such foreclosure sale.

7.22    <u>Insurance Proceeds, Condemnation Proceeds And Other Recoveries</u>.  (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Security Instrument, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 7.22. (b) All causes of action, whether accrued before or after the date of this Security Instrument, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Security Instrument, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 7.22. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding.  Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request.  (c) Settlements, awards, proceeds and damages (collectively, "*Awards*") received by Lender under the provisions of section (a) and section (b) of this paragraph 5, at the option of Lender, may be applied by Lender to the outstanding balance due on the B Note, or any other obligation secured by this Security Instrument, in such order as Lender may determine.  The Award may be used by Lender, without reducing the principal balance of the B Note or any other obligation secured by this Security Instrument, to replace, restore or reconstruct the Property to a condition satisfactory to Lender. The Award may be released to Trustor, or any such amount may be divided in any manner among any such application, use or release.  No such application, use or release of the Award shall cure or waive any default or notice of default under this Security Instrument or invalidate any act done pursuant to such notice.

7.23    <u>Maintenance And Preservation Of The Property</u>.

(a)    Trustor shall:  (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any fixtures, Personal Property or other items comprising the Property which may become obsolete or worn out, with fixtures, Personal Property or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Security Instrument, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed promptly in a good and workmanlike manner; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, including, without limitation, all environmental, land use, zoning, and chemical use statutes, ordinances, and codes of the United States of America, the State of California, and any locality thereof, relating to the protection of the environment and/or governing the use, storage, treatment, generation, transportation, processing, handling, production, or disposal of  hazardous substances, hazardous wastes, or toxic substances, and the rules, regulations, policies, guidelines, interpretations, decisions, orders, and directives of federal, state, and local government agencies with respect thereto, (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or

private, of any kind or character, and (C) any requirements of insurance companies and any bureau or agency which establishes standards of insurability, affecting the Property and/or pertaining to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deems necessary or appropriate to preserve and perfect the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)    Trustor shall not undertake or permit any material alterations, additions, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, fixtures or Personal Property comprising the Property, without the prior written consent of Lender.  In seeking Lender's consent, Trustor will furnish to Lender, in form and substance satisfactory to Lender, in its opinion and judgment, a budget for any such work including a verifiable source of funds.  All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Security Instrument and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c)    Without limiting the generality of this paragraph 7.23, Trustor hereby warrants and represents to Lender and covenants with Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition.  Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property, except for those which are used, stored or maintained in full and complete compliance with all such laws ("***Permitted Toxic Materials***").  Trustor further warrants and represents to Lender and covenants with Lender that Trustor does

not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property.  Trustor further warrants and represents to Lender and covenants with Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto.  ("*Toxic substances*," "*hazardous materials*" and "*hazardous wastes*" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.)  Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)      [Reserved].

(e)      Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph 7.23.  Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct.  Lender may rely thereon without any investigation or inquiry.  By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph 7.23, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Security Instrument, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.24    <u>Legal Actions And Payment Of Related Costs</u>.  Trustor shall appear in and defend any action or proceeding that may, in Lender's sole judgment, adversely affect the Lender's security interest under this Security Instrument or any of the rights or powers of Lender or Trustee under this Security Instrument.  Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention.  Trustor promises and agrees to give Lender notice in writing of the pendency of any such

action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding.  Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Security Instrument.  Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph 7.22 of this Security Instrument.  If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so.  Whenever, under this Security Instrument, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand.  In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor.  All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the B Note.  As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

7.25     Lender's Rights To Inspect The Property.  Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Security Instrument, including, but not limited to, Trustor's compliance with the terms of paragraph 7.23.

ARTICLE VIII.
**California Waiver Provisions.**

8.1     Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2     Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain

order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil Code, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

     (a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

     (b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**EXHIBIT 14 - Page 247**

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.

**TRUSTOR:**


_____

**SUE HALEVY, Trustee of
the Halevy Family Trust dated September 8, 2010**

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 14 - Page 248**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 14 - Page 249**

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

For APN/Parcel ID(s):    4328-010-015

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 592, TRACT MAP 7710, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL RIGHT, TITLE AND INTEREST IN AND TO ALL OIL, GAS, MINERAL AND OTHER HYDROCARBON SUBSTANCES WITH RIGHT OF SURFACE ENTRY, AS QUITCLAIMED IN THE DEED RECORDED JUNE 9, 1982 AS INSTRUMENT NO. 82-586528.

5957923v1 | 101415-0002

EXHIBIT A
TO
SECURITY INSTRUMENT

**EXHIBIT 14 - Page 250**

# EXHIBIT 15

EXHIBIT 15 - Page 251

## CERTIFICATION OF TRUST

This Certification of Trust ("**Certification**") is furnished and presented pursuant to California Probate Code Section 18100.5 as of June _____, 2026.  The undersigned hereby certify(ies), declare(s) and confirm(s) to Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("**Archway**")  the following:

1.      The name of the trust (the "**Trust**") is the "THE HALEVY FAMILY TRUST".

2.      The Trust was established and is evidenced by a trust agreement or declaration of trust executed on or as of September 8, 2010 (as amended, modified or restated from time to time, the "**Trust Agreement**").

3.      The Trust is currently in existence and the Trust Agreement is in full force and effect as of the date hereof.  The Trust has not been revoked, modified or amended in any manner that would cause the representations, certifications, declarations and confirmations in this Certification to be false, incorrect or misleading.

4.      The name of the duly appointed and currently acting trustee of the Trust is: Sue Halevy (the "**Trustee**").

5.      The names of the settlors of the Trust are: David Halevy and Sue Halevy (collectively, the "**Settlors**").

6.      David Halevy died June 3, 2023. The Trustee (Sue Halevy) is also the duly appointed and acting Personal Representative of his estate (Estate of David Halevy, Los Angeles County Superior Court, case no. 24STPB01963), with full authority to administer the estate under the Independent Administration of Estates Act, whose Letters Testamentary were originally issued April 10, 2024 and remain in full force and effect as of the date hereof.

7.      The Trust is a revocable trust. The undersigned, Sue Halevy, is the only person with the power to revoke the Trust.

8.      Title to Trust assets is to be taken as follows:  Sue Halevy, as Trustee of THE HALEVY FAMILY TRUST.

9.      The Trustee, acting alone, for and on behalf of the Trust, is authorized and empowered on behalf of the Trust to:

(a)      To execute and deliver to Archway that certain Settlement Agreement dated as of June 1, 2026 ("Settlement Agreement") and Estoppel (as defined hereinafter) and to perform all provisions, terms and conditions with respect to the Settlement Agreement and Estoppel;

5737568v2 | 101415-0002

**EXHIBIT 15 - Page 252**

(b)     To execute and deliver to Archway evidence of credit accommodations of the Trust, on Archway's forms, on such terms as may be agreed upon, evidencing any obligations of the Trust to Archway; to execute and deliver to Archway one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for any evidence of credit accommodations; and to execute any and all extensions, modifications and amendments in connection with any extensions of credit, loans and/or advances by Archway.  To execute that certain Hazardous Substances Indemnity Agreement in favor of Archway;

(c)     To mortgage, pledge, transfer, assign, endorse, hypothecate, or otherwise encumber and deliver to Archway, as security for the payment and/or performance of any guarantees of payment and/or performance so given by the Trust to Archway, or any other or further indebtedness of the Trust to Archway at any time owing, however the same may be evidenced, any property now or hereafter belonging to the Trust or in which the Trust now or hereafter may have an interest, including, without limitation, all real property and all personal property (tangible or intangible) of the Trust, including without limitation, all of the Trust's right, title and interest in and to Broadway Avenue Investments LLC, a California limited liability company ("Broadway").  Such property may be mortgaged, pledged, transferred, assigned, endorsed, hypothecated, or encumbered at the time such guaranties are given, such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property therefore mortgaged, pledged, transferred, endorsed, hypothecated, or encumbered;

(d)     To execute and deliver to Archway the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, assignment and other security agreements and financing statements which may be required by Archway as security for the payment and/or performance of any guarantees of payment and/or performance so given by the Trust to Archway, or any other or further indebtedness of the Trust to Archway at any time owing, however, the same may be evidenced, and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Archway any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Archway may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances;

(e)     To draw, endorse, and discount with Archway all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Trust in which the Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the account of the Trust with Archway, or to cause such other disposition of the proceeds derived therefrom as they may deem advisable; and

(f)     To do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements as he, she or it may in his, her or its discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Trustee Certificate, including, without limitation, any and all extensions, modifications, renewals or amendments in connection with the Settlement Agreement.

10.     On the date hereof, Trustee, on behalf of the Trust, is executing that certain Estoppel Certificate (the "**Estoppel**") in favor of Archway, pertaining to the Trust's interest(s) in the real

property commonly known as 140 S. Roxbury Drive, Beverly Hills, California 90212, and whose legal description is attached hereto as Exhibit A.

11.     TRUSTEE FURTHER CERTIFIES that the Trust may enter into transactions in which there are multiple borrowers on obligations to Archway and the Trust understands and agrees that, with or without notice to the Trust, discharge or release of any party or collateral securing an obligation, any extension of time for payment, any delay in enforcing any rights granted to Archway or any other action or inaction will not cause Archway to lose any of its rights against the Trust; and that Archway may modify transactions without the consent of or notice to anyone other than the party with whom the modification is made.

12.     TRUSTEE FURTHER CERTIFIES that Trustee will notify Archway in writing at Archway's address at: _____, Attention: _____ (or such other addresses as Archway may designate from time to time) prior to any (a) change in the name of the Trust, (b) change in the assumed business name(s) of the Trust, (c) change of the Trustee, or either of them, of the Trust, (d) change in any authorized signer(s), (e) conversion of the Trust to a new or different type of business entity, or (f) change in any other aspect of the Trust that directly or indirectly relates to any agreements between the Trust and Archway. No change in the name of the Trust will take effect until after Archway has been notified in writing.

13.     TRUSTEE FURTHER CERTIFIES that the person named above is the duly appointed and acting Trustee of the Trust and is duly authorized, acting alone, to act on behalf of the Trust in the manner described above; that Trustee is familiar with the purpose of the Settlement Agreement, Estoppel and any and all loans by Archway to the Trust and/or Broadway; that said Settlement Agreement, Estoppel and loans are each for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries; and, that the certifications set forth herein shall remain in full force and effect until thirty (30) days written notice of their revocation shall have been delivered to and received by Archway. Any such notice shall not affect any of the Trust's agreements or commitments in effect at the time notice is given..

14.     By execution of this Certification the undersigned, in her capacity as the Trustee of the Trust and pursuant to the power reserved to the Trustee under Article 11 of the Trust Agreement, hereby amends the Trust Agreement to the extent necessary to provide that the trustee(s) under the Trust Agreement to have the power, in the name of and on behalf of the Trust, **to guaranty loans made to third parties to pledge the Trust assets as security for loans made to Settlors (and/or) third parties**, including, without limitation, loans to be made by the Archway to Broadway.

[SIGNATURE PAGE(S) AND ACKNOWLEDGMENT(S) FOLLOW]

**EXHIBIT 15 - Page 254**

IN TESTIMONY WHEREOF, the undersigned has hereunto set her hand on ▮, 2026.

**TRUSTEE(S)**:

_____

SUE HALEVY

5737568v2 | 101415-0002                                        4

**EXHIBIT 15 - Page 255**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       ) ss
COUNTY OF _____        )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public

**EXHIBIT 15 - Page 256**

## EXHIBIT A
## LEGAL DESCRIPTION

**For APN/Parcel ID(s):    4328-020-015**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 431 OF TRACT NO. 7710, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 83, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4328-020-015

5737568v2 | 101415-0002

6

**EXHIBIT 15 - Page 257**

# EXHIBIT 16

**EXHIBIT 16 - Page 258**

## CERTIFICATION OF TRUST

This Certification of Trust ("**Certification**") is furnished and presented pursuant to California Probate Code Section 18100.5 as of June _____, 2026. The undersigned hereby certify(ies), declare(s) and confirm(s) to Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("**Archway**")  the following:

1.      The name of the trust (the "**Trust**") is the "THE GOMPERTS AND HALEVY FAMILY TRUST".

2.      The Trust was established and is evidenced by a trust agreement or declaration of trust executed on or as of December 31, 2008 (as amended, modified or restated from time to time, the "**Trust Agreement**").

3.      The Trust is currently in existence and the Trust Agreement is in full force and effect as of the date hereof.  The Trust has not been revoked, modified or amended in any manner that would cause the representations, certifications, declarations and confirmations in this Certification to be false, incorrect or misleading.

4.      The names of the duly appointed and currently acting trustees of the Trust are: Alan Gomperts and Sharon Halevy  (collectively, the "**Trustees**").

5.      The names of the settlors of the Trust are: Alan Gomperts and Sharon Halevy (collectively, the "**Settlors**").

6.      The Trust is a revocable trust. The undersigned are the only persons with the power to revoke the Trust.

7.      Title to Trust assets is to be taken as follows:  Alan Gomperts and Sharon Halevy, as Trustees of THE GOMPERTS AND HALEVY FAMILY TRUST.

8.      This Certification is signed by all of the currently acting trustee(s) and shall bind the Settlors, the current Trustee and any successor Trust trustee(s), and the current and successor Trust beneficiaries.

9.      Trustees hereby certify that the Trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this Certification of Trust to be incorrect and this Certification of Trust is being signed by the currently acting Trustees of the Trust. Trustees acknowledge and agree that Archway may require Trustees to provide copies of excerpts from the trust instrument and amendments which designate Trustees and confer upon Trustees the power to act in these transactions, and that Archway may require such further identification or legal opinion supporting Trustees' authority and power as Archway shall deem necessary and prudent.

5902905v1 | 101415-0002

**EXHIBIT 16 - Page 259**

10.     The Trustees, acting together, for and on behalf of the Trust, are authorized and empowered on behalf of the Trust to:

(a)     To execute and deliver to Archway that certain Settlement Agreement dated as of June 1, 2026 ("Settlement Agreement") and to perform all provisions, terms and conditions with respect to the Settlement Agreement;

(b)     To execute and deliver to Archway evidence of credit accommodations of the Trust, on Archway's forms, on such terms as may be agreed upon, evidencing any obligations of the Trust to Archway; to execute and deliver to Archway one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for any evidence of credit accommodations; and to execute any and all extensions, modifications and amendments in connection with any extensions of credit, loans and/or advances by Archway.  To execute that certain Hazardous Substances Indemnity Agreement in favor of Archway;

(c)     To mortgage, pledge, transfer, assign, endorse, hypothecate, or otherwise encumber and deliver to Archway, as security for the payment and/or performance of any guarantees of payment and/or performance so given by the Trust to Archway, or any other or further indebtedness of the Trust to Archway at any time owing, however the same may be evidenced, any property now or hereafter belonging to the Trust or in which the Trust now or hereafter may have an interest, including, without limitation, all real property and all personal property (tangible or intangible) of the Trust, including without limitation, all of the Trust's right, title and interest in and to Broadway Avenue Investments LLC, a California limited liability company ("Broadway").  Such property may be mortgaged, pledged, transferred, assigned, endorsed, hypothecated, or encumbered at the time such guaranties are given, such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property therefore mortgaged, pledged, transferred, endorsed, hypothecated, or encumbered;

(d)     To execute and deliver to Archway the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, assignment and other security agreements and financing statements which may be required by Archway as security for the payment and/or performance of any guarantees of payment and/or performance so given by the Trust to Archway, or any other or further indebtedness of the Trust to Archway at any time owing, however, the same may be evidenced, and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Archway any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Archway may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances;

(e)     To draw, endorse, and discount with Archway all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Trust in which the Trust may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the account of the Trust with Archway, or to cause such other disposition of the proceeds derived therefrom as they may deem advisable; and

**EXHIBIT 16 - Page 260**

(f)      To do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements as he, she or it may in his, her or its discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Trustee Certificate, including, without limitation, any and all extensions, modifications, renewals or amendments in connection with the Settlement Agreement.

11.      TRUSTEES FURTHER CERTIFY that the Trust may enter into transactions in which there are multiple borrowers on obligations to Archway and the Trust understands and agrees that, with or without notice to the Trust, discharge or release of any party or collateral securing an obligation, any extension of time for payment, any delay in enforcing any rights granted to Archway or any other action or inaction will not cause Archway to lose any of its rights against the Trust; and that Archway may modify transactions without the consent of or notice to anyone other than the party with whom the modification is made.

12.      TRUSTEES FURTHER CERTIFY that Trustees will notify Archway in writing at Archway's address at: _____, Attention: _____ (or such other addresses as Archway may designate from time to time) prior to any (a) change in the name of the Trust, (b) change in the assumed business name(s) of the Trust,  (c) change of the Trustees, or either of them, of the Trust, (d) change in any authorized signer(s), (e) conversion of the Trust to a new or different type of business entity, or (f) change in any other aspect of the Trust that directly or indirectly relates to any agreements between the Trust and Archway.  No change in the name of the Trust will take effect until after Archway has been notified in writing.

13.      TRUSTEES FURTHER CERTIFY that the persons named above are the duly appointed and acting Trustees of the Trust and are duly authorized, acting together, to act on behalf of the Trust in the manner described above; that Trustees are familiar with the purpose of the Settlement Agreement and any and all loans by Archway to the Trust and/or Broadway; that said Settlement Agreement and loans are each for a legitimate trust purpose and for the benefit of the Trust and its beneficiaries; and, that the certifications set forth herein shall remain in full force and effect until thirty (30) days written notice of their revocation shall have been delivered to and received by Archway.  Any such notice shall not affect any of the Trust's agreements or commitments in effect at the time notice is given.

14.      By execution of this Certification the undersigned, in her capacity as the Trustee(s) of the Trust and pursuant to the power reserved to the Trustee under Article 11 of the Trust Agreement, hereby amends the Trust Agreement to the extent necessary to provide that the trustee(s) under the Trust Agreement to have the power, in the name of and on behalf of the Trust, **to guaranty loans made to third parties to pledge the Trust assets as security for loans made to Settlors (and/or) third parties**, including, without limitation, loans to be made by the Archway to Broadway.

[SIGNATURE PAGE(S) AND ACKNOWLEDGMENT(S) FOLLOW]

5902905v1 | 101415-0002                                    3

**EXHIBIT 16 - Page 261**

IN TESTIMONY WHEREOF, the undersigned has hereunto set their hands on ██, 2026.

**TRUSTEE(S)**:

_____
ALAN GOMPERTS

_____
SHARON HALEVY

**EXHIBIT 16 - Page 262**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                                      ) ss
COUNTY OF _____     )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                                      ) ss
COUNTY OF _____     )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

5902905v1 | 101415-0002                                  5

EXHIBIT 16 - Page 263

Case 2:24-bk-12079-VZ    Doc 694    Filed 06/23/26    Entered 06/23/26 09:49:29    Desc
Main Document      Page 264 of 347

# EXHIBIT 17

# [Intentionally Omitted]

**EXHIBIT 17 - Page 264**

# EXHIBIT 18

EXHIBIT 18 - Page 265

**CERTIFICATION OF TRUST**

This Certification of Trust ("**Certification**") is furnished and presented pursuant to California Probate Code Section 18100.5 as of _____, 202_.  The undersigned hereby certify(ies), declare(s) and confirm(s) to Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("**Archway**")  the following:

1.      The name of the trust (the "**Trust**") is the "THE HALEVY FAMILY TRUST".

2.      The Trust was established and is evidenced by a trust agreement or declaration of trust executed on or as of _____ (as amended, modified or restated from time to time, the "**Trust Agreement**").  The Trust Agreement has not been amended or restated.

3.      The Trust is currently in existence and the Trust Agreement is in full force and effect as of the date hereof.  The Trust has not been revoked, modified or amended in any manner that would cause the representations, certifications, declarations and confirmations in this Certification to be false, incorrect or misleading.

4.      The name of the duly appointed and currently acting trustees of the Trust are: Haskell Fuaad Muhtar and Nurit Muhtar (collectively, the "**Trustee**").

5.      The names of the settlors of the Trust are: Haskell Fuaad Muhtar and Nurit Muhtar (collectively, the "**Settlor**").

6.      The Trust is a revocable trust. The undersigned are the only persons with the power to revoke the Trust.

7.      On the date hereof, Trustees, on behalf of the Trust, are executing that certain Estoppel Certificate (the "**Estoppel**") in favor of Archway.

8.      The Trustees is, acting together are, duly authorized under the terms of the Trust Agreement to execute the Estoppel, and such Estoppel shall be binding on the Trust and all Trust assets.  Further, the Trustees, acting together are, duly authorized under the terms of the Trust Agreement, to acquire, sell, convey, encumber, lease, borrow, manage and otherwise deal with interests in real and personal property in the Trust's name.

9.      This Certification is signed by all of the currently acting Trustees and shall bind the Settlor, the current Trustees and any successor Trust trustees, and the current and successor Trust beneficiaries.

10.     The undersigned hereby acknowledge(s) that Archway is acting in good faith in its receipt of this Certification, and that Archway, and any other person entering into a transaction in good faith and acting in reliance on this Certification (Archway, and any other such person, being referred to herein as a "**Recipient**"), may, pursuant to the laws of the State of

5727979v1 | 101415-0002

**EXHIBIT 18 - Page 266**

California ("**Applicable Law**"), enforce the Estoppel against the current Trustees and any successor Trust trustees, the current and successor Trust beneficiaries, and all assets of the Trust as if the representations, certifications, declarations and confirmations contained in this Certification are correct.

11.     The undersigned hereby further acknowledge(s) that any Recipient without actual knowledge that the representations, certifications, declarations and confirmations contained in this Certification are incorrect may, pursuant to Applicable Law, assume without inquiry the existence of the facts so represented, certified declared or confirmed in this Certification.

12.     The undersigned hereby further acknowledge(s) that, pursuant to Applicable Law, a Recipient's actual knowledge of the terms of the Trust and the Trust Agreement shall not be inferred solely from the fact that a copy of all or part of the Trust Agreement has been provided to or is held by such Recipient or such Recipient's agents or employees.

[SIGNATURE PAGE(S) AND ACKNOWLEDGMENT(S) FOLLOW]

**TRUSTEE(S)**:

_____

HASKELL FUAAD MUHTAR, an individual


_____

NURIT MUHTAR, an individual

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                )
                                   ) ss
COUNTY OF _____  )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                )
                                   ) ss
COUNTY OF _____  )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

# EXHIBIT 19

EXHIBIT 19 - Page 270

## PLEDGE AND SECURITY AGREEMENT

This Pledge and Security Agreement (this "Agreement") is executed and delivered as of April ___, 2026, by Sue Halevy, as Trustee of THE HALEVY FAMILY TRUST ""Pledgor"), for the benefit of ARCHWAY BROADWAY LOAN SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("Archway"), with respect to the following facts:

Recitals

A.      This Pledge Agreement is made in connection with the following:

(1)      that certain Settlement Agreement (the "Settlement Agreement"), dated as of the date herewith, by and among Archway, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("Broadway"), Negev Investments, LLC, a California limited liability company ("Negev"),  SLA Investments, LLC, a California limited liability company ("SLA"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("G&H Trust"), Daniel Halevy, individually ("Daniel") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The Settlement Agreement is made in connection with that certain Loan Agreement by and between Broadway and Archway dated July 21, 2021, as amended and modified (the "Loan Agreement").

(2)      the Amended and Restated Promissory Note (B Note) (the "*B Note*") described in the Settlement Agreement, in the original principal amount of $10,300,000.00 is evidence of the loan (the "*Loan*") executed by Broadway in favor of Archway.

(3)      The Continuing Guaranty (B Note and Other Obligations) dated as of the date herewith, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"), and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Archway (the "*B Note Guaranty*") guaranteeing the Loan and all obligations of Broadway under the B Note and all obligations of the Obligors under the Settlement Agreement.  Notwithstanding the foregoing the Guaranty (B Note) shall not guaranty the Amended and Restated Promissory Note (A Note), as defined in the Settlement Agreement.

B.      Pledgor owns a fifty percent (50%) interest in the property located 140 S. Roxbury Drive, Beverly Hills, California 90212 (the "Real Property"), as more fully described in the legal description attached hereto as Exhibit A and incorporation herein by this reference.

C.      As inducement to Archway to enter into the Settlement Agreement, and in consideration of the Loan granted to Broadway by Archway, and guaranteed by the B Note Guaranty, Pledgor is executing that certain Deed of Trust, Assignment of Leases and Rents,

**EXHIBIT 19 - Page 271**

Security Agreement and Fixture filing encumbering its ownership interest in the Real Property for the benefit of Archway concurrently therewith, desires to make this Agreement pursuant to which Pledgor shall grant a security interest in and pledge all right, title and interest in any partnership, tenancy-in-common, joint venture or other agreement with the other owner, for the benefit of Archway to secure payment and performance of indebtedness and obligations in connection with the B Note Guaranty.  All of the tangible and intangible personal property granted to Archway as set forth herein is the "Pledged Property" referred to below.

D.      The following capitalized terms shall have the following meanings as used in this Agreement:

(1)      "Agreement" means this instrument, as amended, modified or supplemented from time to time.

(2)      "Enforcement Event" is defined in Section 1.14 below.

(3)      "Event of Default" is defined in Section 4 below.

(4)      "Guaranteed Obligations" shall have the meaning ascribed to it in the B Note Guaranty.

(5)      "Other Owner" means Haskell Fuaad Muhtar and Nurit Muhtar, as Trustees of the Haskell and Nurit Muhter Revocable Trust.

(6)      "Pledged Property" means the "Pledged Property" described on Exhibit "A" attached hereto and incorporated by reference herein.

(7)      All terms not specifically defined herein which are defined in the Uniform Commercial Code ("UCC") as presently in effect in the State of California shall be construed in accordance with the definitions set forth in the UCC.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, receipt and sufficiency of which are hereby acknowledged, Pledgor, Pledged Entity and Archway hereby agree as follows:

1.      Security Interest and Covenants of Pledgor.  In order to protect Archway and its expectation that the Obligations will be timely paid in full, by liquidation of the Pledged Property, Pledgor represents, warrants, covenants and agrees for Archway's benefit, as follows, and acknowledges that Archway is relying thereon in entering into the Settlement Agreement with Obligors and Pledgor, and agree that all of such representations, warranties, covenants, and agreements are continuing in nature so long as any of the Guaranteed Obligations are outstanding:

1.1      Pledgor hereby absolutely and irrevocably assigns pledges, transfers, hypothecates and sets over to Archway, and grants Archway a continuing security interest in and to all of Pledgor's right, title and interest in and to the Pledged Property including, but not limited to, the right to hold, use and receive all payments, proceeds, and recoveries under and with respect to the Pledged Property, and the exclusive right to (a) receive and enforce the Pledged Property, (b) exercise Pledgor's decision making authority with respect to the Pledged Property, and (c) demand, receive and collect all distributions and all other proceeds with respect to the Pledged

Property, with all of the same to be applied by Archway to payment of the Guaranteed Obligations and all fees, costs, and expenses incurred by Archway in connection with the Guaranteed Obligations, and to be used by Archway in operation, liquidation, preservation and sale of the Pledged Property as collateral for the Guaranteed Obligations.  Archway's rights hereunder shall include the exclusive right to collect and receive all payments, proceeds, and recoveries under and with respect to the Pledged Property, including, without limitation, the exclusive right to enforce the provisions of any agreement (the "Entity Agreement") and other documents creating the Pledged Property in any manner Archway shall determine to be necessary or appropriate, including, without limitation, by judicial action or nonjudicial proceedings (including the right upon the occurrence of an Event of Default to appointment of a receiver to take possession of the Pledged Property), and to otherwise bill for and account to Pledgor for any and all payments, proceeds, and recoveries thereon as herein provided.  Notwithstanding the foregoing assignment, Pledgor, alone, and not Archway, shall be obligated to fulfill all of its monetary and non-monetary obligations related to the Pledged Property under the Entity Agreement.  Unless and until all Guaranteed Obligations to Archway have been fully and finally satisfied and discharged, Archway shall have the sole right to receive any and all payments, proceeds and recoveries under or in connection with the Pledged Property, and Archway shall have the right to notify Pledgor or Other Owner to make all payments under the Entity Agreement to Archway until and unless Archway shall otherwise notify Pledgor or the Other Owner in writing.

1.2     Archway shall have the right to take any and all other actions as Archway determines to be necessary or appropriate in order to establish and perfect its rights and interests in and to the Pledged Property and in all payments, proceeds, and recoveries thereon.

1.3     In exercising its rights under this Agreement, Archway shall have no duty to file or commence any action or proceeding to enforce or to pursue and enforce any provisional remedies which may be permitted by the provisions of this Agreement or by law, it being understood and agreed that Archway shall have the right to use its sole and absolute discretion in taking steps to collect on the Guaranteed Obligations and Pledged Property.

1.4     Pledgor hereby appoints Archway as Pledgor's attorney in fact, with full power of substitution, to endorse and otherwise negotiate payment in any form made to Pledgor or by any third party with respect to the Pledged Property to or for the account of Archway, subject to the provisions of this Agreement.  Pledgor, Other Owner and any third parties may conclusively rely upon all instructions, notices, requests for payment, and receipts given by Archway in connection with collection of the Pledged Property.

1.5     Pledgor hereby indemnifies, agrees to defend, releases and holds harmless Archway from and against any and all losses, damages, claims, costs, and expenses, including attorneys' fees and related costs, suffered or incurred by Pledgor as a result of any action or proceeding taken by Archway in the collection and enforcement of the provisions of the Pledged Property as herein provided, or as a result of any nonaction by Archway in connection therewith.

1.6     Pledgor will account to Archway for any and all payments, recoveries and proceeds of the Pledged Property that at any time are received by Pledgor, or by any employee, officer, shareholder, agent, attorney, or other representative of Pledgor and shall immediately upon demand, from and after an Event of Default, turn over to Archway any and all such amounts, including payments, proceeds, and recoveries in kind, to be applied to the Guaranteed Obligations.

**EXHIBIT 19 - Page 273**

1.7     Until and unless all Guaranteed Obligations have been fully and finally satisfied and discharged, any and all payments, proceeds and recoveries upon the Pledged Property received by Pledgor, or by any employee, agent, attorney, or other representative of Pledgor shall be deemed to be received and held in trust for the sole benefit of Archway, subject to the provisions of this Agreement.

1.8     Pledgor shall not transfer, assign, or convey, whether directly or indirectly, any interest in the Pledged Property nor amend, modify or terminate the Entity Agreement, or sell, transfer, assign, encumber, pledge or hypothecate, except to Archway, any asset covered by the Entity Agreement without Archway's prior written consent, which consent Archway may give or withhold in its sole discretion, opinion and judgment.

1.9     Upon Archway's actual receipt of payment in full of the Guaranteed Obligations, other than as a result of an Enforcement Event, Archway will execute and deliver to Pledgor a written reassignment of the Pledged Property, without warranty or recourse, and release and relinquish all financing statements filed in connection therewith.

1.10    After the occurrence of an Enforcement Event, all payments received by Archway from Pledgor, if any, shall be applied by Archway as follows: (a) first, to payment of all fees, costs, and expenses incurred by Archway in connection with this Agreement and any action taken by Archway in collecting or attempting to collect upon and/or enforce the obligations under the Pledged Property, including, without limitation, all attorneys' fees and related expenses; and (b) second, to the outstanding Guaranteed Obligations due, in Archway's sole and absolute discretion.

1.11    Pledgor shall maintain adequate insurance of the Real Property and against loss or damage by fire and other customary risks.

1.12    Should Pledgor at any time become aware of the occurrence of any material loss, damage, destruction, waste, presence or release of any hazardous substance, or nuisance upon or from the Real Property, Pledgor will promptly report to Archway Pledgor's findings and such other information related to such occurrence as Archway may reasonably request.

1.13    Pledgor will take all steps necessary or appropriate to maintain the perfected status and lien priority of all security for the Guaranteed Obligations.

1.14    The term "Enforcement Event" means Archway or its successor in interest becoming the owner of the Pledged Property by means of enforcement of this Agreement, or by the assigning of the Pledged Property to Archway or a third party in lieu of such enforcement.

1.15    Until the Guaranteed Obligations are paid in full, (a) Pledgor will not sell, assign, transfer or encumber its interest in the Pledged Property without Archway's prior written consent, and (b) other than as permitted in the Settlement Agreement, the Pledged Entity will not make any distributions to any person or entity, save and except Archway, with respect to the Pledged Property.

2.     <u>Representations, Warranties, Covenants and Waivers</u>.  Pledgor hereby represents and warrants to Archway, and covenants and agrees with Archway as follows, to induce Archway

to enter into the Settlement Agreement, and agrees that all of such covenants, representations, warranties and agreements are continuing in nature so long as any of the Guaranteed Obligations are outstanding:

2.1     The Pledged Property is directly, legally and beneficially owned by Pledgor free and clear of all claims, liens, pledges or joint venture interests, community property interests, and encumbrances of any kind, nature or description, legal or equitable other than those approved in writing by Archway, in the Settlement Agreement.

2.2     The Pledged Property is not subject to any restrictions relative to the transfer thereof to Archway, and all such restrictions in the Entity Agreement are, have been and shall be deemed waived, satisfied and consented to by Pledgor and the Other Owner, as to this transfer and pledge, and as to any subsequent assignment, transfer or sale of the Pledged Property or any part thereof by Archway, including, but not limited to, any transfer thereof by public or private sale under the California Commercial Code or any laws of a similar tenor in any state exercising jurisdiction over the Real Property, and as to any substitution of a third party for Pledgor upon an Enforcement Event.

2.3     The Pledged Property is duly and validly pledged to Archway, and except for the signatures of the parties hereto, no consent or approval of any other third party, was or is necessary to the validity and enforceability of this Agreement and the terms hereof.

2.4     Upon the occurrence of an Enforcement Event or a default under the terms of the Loan Documents, subject to Article 9 of the UCC, Pledgor authorizes Archway acting directly or through a receiver, to (i) store, deposit and safeguard the Pledged Property; (ii) perform any and all other acts which Archway in good faith deems reasonable and/or necessary for the protection and preservation of the Pledged Property or its value or Archway's security interest therein, including, without limitation, transferring, or arranging for the transfer of the Pledged Property to or in Archway's own name and receiving the income therefrom as additional collateral for the Guaranteed Obligations; (iii) receive all the distributions with respect to the Pledged Property, and (iv) pay any charges or expenses which Archway or the receiver deem necessary for the foregoing purposes, but without any obligation to do so.  Any obligation of Archway or receiver for reasonable care for the Pledged Property in their possession and under their direction shall be limited to the same degree of care which Archway uses for similar property owned by Archway.

2.5     Pledgor will pay all liens, charges and assessments of any nature against the Pledged Property or with respect hereto prior to said charges and/or assessments being delinquent.

2.6     Pledgor will promptly reimburse Archway on demand, for any charges, assessments or expenses paid or incurred by Archway in its discretion for the protection and preservation and maintenance of the Pledged Property and the enforcement of Archway's rights hereunder and thereunder, including, without limitation, reasonable attorneys' fees and legal expenses incurred by Archway in seeking to protect, collect or enforce its rights in the Pledged Property or otherwise hereunder.

2.7     Upon the written request of Archway, Pledgor will promptly furnish Archway with such information concerning the Real Property as Archway may from time-to-time request.

5910199v2 | 101415-0002                                    5

**EXHIBIT 19 - Page 275**

2.8 The Pledged Entity, by execution below, hereby consents to this Agreement.

2.9 Pledgor will perform such further acts and execute such additional instruments as are reasonably required by Archway to effectuate and implement this Agreement and the provisions hereof.

2.10 Archway is entitled to all of the benefits of a secured party set forth in Article 9 of the Uniform Commercial Code.

2.11 With respect to each item of Pledged Property, the same is owned by Pledgor, free from any lien, security interest, claim or encumbrance of any kind, except in Archway's favor, and Pledgor will defend the same against the claims of all persons.

2.12 Pledgor will duly pay and discharge all monetary encumbrances, taxes, assessments, contributions and governmental charges upon the Pledged Property and Real Property prior to the date on which penalties attach thereto. Pledgor shall be liable for any tax or penalty imposed or which Archway may be required to withhold or pay for any reason with respect to the Pledged Property after realizing on the collateral for the Guaranteed Obligations and Pledgor agrees to indemnify and hold Archway harmless with respect thereto, and to repay to Archway on demand the amount thereof, and until paid by Pledgor such amount shall be added to and deemed part of the Guaranteed Obligations.

3.      Events of Default

The occurrence of an Event of Default under the Settlement Agreement shall, at the sole option of Archway, constitute and be deemed an "event of default" or "Event of Default" under this Agreement.

4.      Remedies After Default

From and after the occurrence of an Event of Default, and during the continuance thereof:

4.1 In addition to all the rights and remedies of a secured party under the California Commercial Code or any laws of a similar tenor in any state exercising jurisdiction over the Real Property, Archway shall have the right (a) to appointment of a receiver to take possession of the Pledged Property, as a matter of contract right, and (b) at any time and without demand of performance or other demand, advertisement or notice of any kind (except the notice specified below of time and place of public or private sale) to or upon Pledgor or any other person (all and each of which demand, advertisements and/or notices are hereby expressly waived to the extent permitted by law), to proceed forthwith to collect, redeem, receive, appropriate, sell, or otherwise dispose of and deliver the Pledged Property or any part thereof in one or more lots at public or private sale or sales at Archway's offices or elsewhere at such prices and on such terms as Archway may deem best. The foregoing disposition(s) must be for cash or on credit or for future delivery without assumption of any credit risk by Archway, with Archway having the right to purchase all or any part of said Pledged Property so sold at any such sale or sales, public or private, free of any right or equity or redemption in Pledgor, which right or equity is hereby expressly waived or released by Pledgor. The proceeds of any such collection, redemption, recovery, receipt,

appropriation, realization, sale or other disposition, after deducting all costs and expenses of every kind incurred relative thereto or incidental to the care, safekeeping or otherwise of any and all Pledged Property or in any way relating to the rights of Archway hereunder (including, without limitation, attorneys' fees and legal expenses) shall be applied first to the satisfaction of the Guaranteed Obligations (in such order as Archway may elect and whether or not due) and then to the payment of any amounts required by applicable law, including the California UCC.  Pledgor shall be liable to Archway for the payment on demand of all such costs and expenses, together with interest at the rate set forth in the Settlement Agreement, together with any attorneys' fees if placed with an attorney for collection or enforcement.  Pledgor agrees that ten (10) days' prior notice by Archway of the date after which a private sale may take place or a public auction may be held is reasonable notification of such matters.

4.2     All of the Archway's rights and remedies, including, but not limited to, the foregoing and those otherwise arising under this Agreement, the instruments, agreements and securities comprising the Pledged Property, applicable law or otherwise, shall be cumulative and not exclusive and shall be enforceable alternatively, successively or concurrently as Archway may deem expedient.  Archway may sell or foreclose some, but not all Pledgor's interests in the Pledged Property, and hold more than one sale or foreclosure of the Pledged Property to satisfy the Guaranteed Obligations.  No failure or delay on the part of Archway in exercising any of its options, powers or rights or partial or single exercise thereof shall constitute a waiver of such option, power or right.

5.     <u>Further Assurances</u>

Pledgor agrees that at any time and from time to time upon the written request of Archway, Pledgor will execute and deliver such further documents in form satisfactory to counsel for Archway, and will take or cause to be taken such further acts as Archway may request in order to effect the purposes of this Agreement and perfect or continue the perfection of the security interest in the Pledged Property granted to Archway hereunder.

6.     <u>Miscellaneous</u>

6.1     Beyond the exercise of reasonable care to assure the safe custody of the Pledged Property while held by Archway hereunder, as provided in Section 2 hereof, Archway or Archway's agent or bailee shall have no duty or liability to protect or preserve any rights pertaining thereto.  Archway shall have no obligation or duty to return or release its security interest in the Pledged Property except upon the written request of Pledgor, at the sole expense of Pledgor and only after all Guaranteed Obligations are indefeasibly paid in full.

6.2     No course of dealing between Pledgor and Archway, nor any failure or delay by Archway to exercise any right, power or privilege under this Agreement, or any instruments and documents executed and delivered in connection therewith shall operate as a waiver hereof or thereof; nor shall any single or partial exercise of any right, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  No waiver of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Archway, and then such waiver shall be effective only in the specific instance and for the purpose for which given.

**EXHIBIT 19 - Page 277**

6.3     This Agreement may not be changed, modified or amended, in whole or in part, except by a writing signed by Pledgor and Archway.  No consent of any other party to any change, modification, amendment or termination hereof shall be required.

6.4     The provisions of this Agreement are severable, and if any clause or provision hereof or thereof shall be held invalid or unenforceable in whole or in part or in any jurisdiction, then such invalidity or unenforceability shall attach only to such clause or provision in any such jurisdiction or part hereof and shall not in any manner affect such clause or provision in any other jurisdiction or any other clause or provision in this Agreement in any jurisdiction.

6.5     This Agreement shall inure to the benefit of Archway, the parties hereto, and their respective successors and assigns, and shall be binding upon Pledgor and its successors and assigns until all of the Guaranteed Obligations have been indefeasibly paid in full.

6.6     PLEDGOR ACKNOWLEDGES THAT ARCHWAY HAS EXTENDED OR MAY IN THE FUTURE EXTEND CREDIT TO OBLIGORS, OR OTHERS IN RELIANCE ON THE UNCONDITIONAL PLEDGE OF THE PLEDGED PROPERTY AS COLLATERAL SECURITY FOR THE PAYMENT AND PERFORMANCE WHEN DUE OF EACH AND EVERY ONE OF THE GUARANTEED OBLIGATIONS, AND THE WAIVERS, WARRANTIES AND PROMISES MADE BY PLEDGOR IN THIS AGREEMENT ARE REQUIRED TO ESTABLISH THE OBLIGATIONS OF PLEDGOR TO ARCHWAY. PLEDGOR AGREES THAT EACH OF THE WAIVERS, WARRANTIES AND PROMISES SET FORTH IN THIS AGREEMENT ARE MADE WITH THE PLEDGOR'S UNDERSTANDING OF THEIR SIGNIFICANCE AND CONSEQUENCES AND THAT THEY ARE REASONABLE.  IF ANY WAIVERS, WARRANTIES AND PROMISES ARE DETERMINED TO BE CONTRARY TO ANY APPLICABLE LAW OR PUBLIC POLICY, THE SAME SHALL BE EFFECTIVE TO THE MAXIMUM EXTENT PERMITTED BY LAW.

6.7     PLEDGOR ACKNOWLEDGES THAT NEITHER ARCHWAY NOR ANY OF ARCHWAY'S OFFICERS OR EMPLOYEES OR ATTORNEYS HAVE MADE ANY PROMISE OR REPRESENTATION, WHETHER ORAL, WRITTEN OR IMPLIED, NOT INCORPORATED IN THIS AGREEMENT TO CAUSE PLEDGOR TO SIGN THIS AGREEMENT.  THIS AGREEMENT IS NOT SIGNED IN RELIANCE ON ANY PROMISE, CONDITION OR THE OCCURRENCE OF ANY EVENT AND THERE ARE NO ORAL UNDERSTANDINGS, STATEMENTS OR AGREEMENTS BETWEEN THE PARTIES WHICH HAVE NOT BEEN INCLUDED IN THIS AGREEMENT.

6.8     THE PARTIES HEREBY AGREE THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS AGREEMENT AND ALL LOAN DOCUMENTS EXECUTED BY OBLIGORS SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTS 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND

DELIVERY.  THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.  **BY INITIALING BELOW THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE FOREGOING JUDICIAL REFERENCE PROVISIONS AND UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL.**

Pledgor, Pledged Entity and Archway have initialed this Section 6.8 to further indicate their awareness and acceptance of each and every provision hereof.

_____    _____

Pledgor's Initials    Archway's Initials

7.    Governing Law.  Pledgor and Pledged Entity acknowledge and agree that the Guaranteed Obligations and this Agreement were negotiated and made in California, the Loan was funded in California, and this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California and applicable federal law.

8.    Notices.  Any notices required or contemplated under this Agreement shall be in writing and personally delivered, sent by United States mail, postage prepaid, or sent by facsimile, and addressed as follows:

To Archway:    Archway Broadway Loan SPE, LLC
`    Archway Real Estate Income Fund I REIT, LLC
    1875 Century Park East, Suite #900
    Los Angeles, CA 90067
    Attention: Joshua Kohan
    Phone: (310) 893-5277
    Email: joshua@Archwayfund.com

with a copy to:    Thompson Coburn LLP
    10100 Santa Monica Blvd., Suite 500
    Los Angeles, CA 90067
    Attention: Joshua Mogin
    Phone: (310) 282-2520
    Email: jmogin@thompsoncoburn.com

To Trustor:    c/o Susan Halevy
    _____
    _____
    _____
    Email: _____

with a copy to    Weintraub Zolkin Talerico & Selth LLP
    1766 Wilshire Blvd Suite 730
    Los Angeles, CA 90025

5910199v2 | 101415-0002    9

**EXHIBIT 19 - Page 279**

Attention: Derrick Talerico
Phone (424) 500-8552
Email: dtalerico@wztslaw.com

All notices required under this Agreement shall be personally delivered or sent by first class mail, postage prepaid, or by overnight courier, to the addresses set forth above, or sent by facsimile to the fax numbers listed above, or to such other addresses as the Archway and Pledgor may specify from time to time in writing. Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail, it will be effective three (3) calendar days after being deposited in the mails with first- class or overnight delivery; if given by facsimile when sent; or if given by personal delivery, when delivered.

9. . <u>Execution in Counterparts</u>. This Agreement may be executed in any number of counterparts, and any party hereto or thereto may execute any counterpart, each of which, when executed and delivered, will be deemed to be an original, and all of which counterparts of this Agreement, taken together will be deemed to be but one and the same instrument. The execution of this Agreement by any party or parties hereto or thereto will not become effective until counterparts hereof or thereof, as the case may be, have been executed by all the parties hereto or thereto.

[Signature page to follow.]

**EXHIBIT 19 - Page 280**

IN WITNESS WHEREOF, the undersigned have caused these presents to be duly executed and delivered as of the day and year first above written.

**PLEDGOR:**

_____
Susan Halevy, as Trustee of the
HALEVY FAMILY TRUST dated
September 6, 2010

[CONTINUES ON NEXT PAGE.]

**EXHIBIT 19 - Page 281**

**ARCHWAY:**

ARCHWAY BROADWAY LOAN SPE, LLC,
a Delaware limited liability company


By: _____
Name: Bobby Khorshidi
Title:  Director

Exhibit  "A"
Description of "Pledged Property"

Security Interest Pledged by Sue Halevy, as Trustee of THE HALEVY FAMILY TRUST

SECURED PARTY/
ARCHWAY:                            ARCHWAY BROADWAY LOAN SPE, LLC

DEBTOR
GRANTING SECURITY
INTERESTS:                          Sue Halevy, as Trustee of THE HALEVY FAMILY TRUST

PLEDGED PROPERTY/
COLLATERAL COVERED
BY THIS AGREEMENT
& UCC-1 FILING:                     All of the above-named Debtor's right, title
                                    and interest in and to:

(a)      any partnership, tenancy-in-common, joint venture or other agreement with Haskell Fauud Muhter and Nurit Muhter, as Trustees of the Haskell and Nurit Muhtar Revocable Trust concerning the real property commonly known as 140 Roxbury Drive, Beverly Hills, California.

(b)      all of Debtor's moneys, securities and other personal property and the proceeds thereof, now or hereafter held or received by, or in transit to, Secured Party from or for the Pledged Entity, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(c)      all of Debtor's books, records, ledger cards, computer programs and other property and general intangibles at any time evidencing or relating to the businesses of the Pledged Entity and its accounts ("Records"); and

(d) all proceeds of the foregoing, in any form, including, without limitation, any claims against third parties for loss or damage to or destruction of any or all of the foregoing.

5910199v2 | 101415-0002                      13

**EXHIBIT 19 - Page 283**

EXHIBIT 20

EXHIBIT 20 - Page 284

## LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT (this "*Modification Agreement*") is entered into as of April __, 2026, by and between (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"),, and (iii) **DANIEL HALEVY**, an individual ("*DH*") (G& H Trust, D&S Trust and DH are collectively, referred to herein as, "*Borrower*"), and **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*") , and is based on the following facts:

## RECITALS

A.      On April 14, 2023, Lender extended to Borrower a $2,575,000.00 (the "*Loan*").

B.      The loan documents (collectively, together with any agreements and documents being executed and delivered in connection with this Modification Agreement, being referred to herein as the "*Loan Documents*") evidencing the Loan include, but are not limited to, the following:

(1)      Promissory Note, dated April 14, 2023, in the amount of $2,575,000.00, by Borrower to Lender (as amended from time to time, collectively, the "*Note*");

(2)      Loan Agreement, dated April 14, 2023, by Borrower and Lender (as amended from time to time, collectively, the "*Loan Agreement*");

(3)      Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing made by **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust**, in favor of Assignor, in the principal amount of $2,575,000.00, dated April 14, 2023 and recorded on April 24, 2023, in the Official Records of Los Angeles County, California as Instrument #2023061978.

(4)      Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing made by **DAVID HALEVY** and **SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010,** in favor of Assignor, in the principal amount of $2,575,000.00, dated April 14, 2023 and recorded on April 24, 2023, in the Official Records of Los Angeles County, California as Instrument #20230259824.

(5)      Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing made by **DANIEL HALEVY**, an individual, in favor of Assignor, in the principal amount of $2,575,000.00, dated April 14, 2023 and recorded on April 24, 2023, in the Official Records of Los Angeles County, California as Instrument #20230259819.

(6)      Hazardous Material Indemnity Agreement, dated April 14, 2023, by Borrower in favor of Lender (the "*Environmental Indemnity*");

(7)      Building Laws Indemnity Agreement, dated April 14, 2023, by Borrower in favor of Lender;

(8)      UCC-1 Financing Statements naming Borrower, as debtor, and Lender, as secured party; and

5905788v1 | 101415-0002

**EXHIBIT 20 - Page 285**

C.      Borrower acknowledges and agrees that as of the date hereof, the committed amount of the Obligations owing to Lender under the Loan is $2,575,000.00 (herein, the "*Existing Indebtedness*"). Borrower further acknowledges and agrees that the Existing Indebtedness is valid, enforceable, unavoidable and not subject to any offsets or defenses.

D.      Borrower acknowledges that Lender is not waiving its rights under the Loan Documents or otherwise with regard to all outstanding obligations under the Loan Documents (collectively, the "*Obligations*"), except as may be specifically set forth herein.

E.      Borrower and Lender have agreed to modify certain provisions of the Loan and Loan Document.

**AGREEMENT**

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender, intending to be legally bound, agree as follows:

1.      Recitals.  Each of the Recitals set forth above are true and correct and are incorporated herein by this reference and made a part hereof.

2.      Definitions.  All capitalized terms used herein shall have the definitions given to them in Loan Agreement, unless specifically defined herein. This Modification Agreement is a Loan Document.

3.      Amendment to Loan Documents.

(a)      [Intentionally omitted].

(b)      Cross Default and Cross Collateralization.  The existing Article VI of the Loan Agreement shall be amended as follows:

(i)      The title of Article VI shall be deleted in its entirety and replaced with the following:  "Cross-Default".

(ii)      Subsections (a) and (b)  of Section 6.1 are hereby deleted in their entirety and replaced with the following:  "[Intentionally omitted]".

(iii)      Subsections (a) and (b) of Section 6.2 are hereby deleted in their entirety and replaced with the following:  "[Intentionally omitted]".

(iv)      Subsections (a) and (b) of Section 6.3 are hereby deleted in their entirety and replaced with the following:  "[Intentionally omitted]."

4.      Security Instrument.  The Security Instrument is modified to secure payment and performance of the Loan as amended to date, and all such obligations that may arise from this Modification Agreement in addition to all other indebtedness and obligations currently secured by the Security Instrument, except as modified by this Modification Agreement.

5.      Conditions Precedent.  This Modification Agreement shall become effective upon the satisfaction by Borrower of the following conditions:

(a)      Lender shall have received fully executed originals of each of the following:

**EXHIBIT 20 - Page 286**

(i)      this Modification Agreement;

(ii)      the Memorandum of Modification of Deed of Trust;

(iii)      the attached consent signed by Guarantor; and

(iv)      any other documents that Lender may require or request in accordance with this Modification Agreement.

6.      <u>No Waiver by Lender</u>.  Except as otherwise expressly set forth in this Modification Agreement, this Modification Agreement shall not constitute a waiver or modification of any of Lender's rights or remedies, and it shall not preclude the exercise of any right or remedy available to Lender at law or in equity, including any procedure necessary or appropriate to enforce any of the terms and conditions set forth in this Modification Agreement, or the Loan Documents.  Lender shall have the right to waive any of the rights, remedies, claims, powers, benefits or privileges granted in or pursuant to this Modification Agreement, or the Loan Documents, and Lender shall have no obligation or duty to any other entity or person, with respect to the exercise of Lender's rights, remedies, claims, powers, benefits and privileges.  Any delay in or failure to exercise any of Lender's rights, remedies, claims, powers, benefits or privileges shall not subject Lender to any liability to any entity, and no other entity may rely upon or in any way seek to assert as a defense to any obligation owing to Lender such delay or failure.  Such delay or failure, if any, shall not be deemed to constitute a waiver of any such right, remedy, claim, power, benefit or privilege of Lender.  All of Lender's rights with respect to all of the matters referred to in this Modification Agreement or the Loan Documents, in general, and this <u>Section 6</u> in particular, are expressly reserved.

7.      <u>No Novation; Reaffirmation</u>.  Borrower and Lender further agree that in no event shall the effect of this Modification Agreement be deemed to be a novation of the Loan Documents (including any of the Term Loan Documents, the intent of Borrower and Lender hereunder being to amend the Loan Documents and to confirm the indebtedness of Borrower under the Loan Documents as amended hereby, with all of the terms and provisions of the Loan Documents remaining in full force and effect save and except those modified by this Modification Agreement.  Each of Borrower and the Guarantor reaffirms its obligations under all Loan Documents to which it is a party.

8.      <u>Time is of the Essence</u>.  The parties agree that time is of the essence with respect to all terms and conditions set forth in this Modification Agreement.

9.      <u>Agreement Entered Freely; Supercedes All Other Agreements</u>.  The parties to this Modification Agreement have been afforded the opportunity to engage counsel with respect to this Modification Agreement, and have entered into it freely and voluntarily.  This Modification Agreement, together with the other documents entered into pursuant to or in connection herewith, is intended to be enforceable according to its written terms, is an integrated agreement, supersedes all prior or concurrent oral or written agreements or negotiations concerning the subject matter hereof, and there are no promises, oral agreements, or expectations of the parties to the contrary.

10.      <u>Legal Advice</u>.  The advice of legal counsel has either been obtained by each party, or each party has been given adequate opportunity and has been encouraged to obtain the advice of legal counsel, prior to executing this Modification Agreement and each party executes this Modification Agreement voluntarily, with full knowledge of its significance.

11.     <u>Consent and Mutual Agreement</u>.   Whenever any action may be taken pursuant to the terms and conditions of this Modification Agreement upon the prior consent of Lender, such prior consent or prior agreement must be evidenced in writing.

12.     <u>Notice</u>.   Whenever this Modification Agreement requires a party to deliver a writing to, or serve a writing upon, any other party, such writing shall be delivered or served upon each of the following:

|  |  |
|---|---|
| To Lender: ` | Archway Broadway Loan SPE, LLC<br>c/o Archway Real Estate Income Fund I REIT, LLC<br>1875 Century Park East. Suite #900<br>Los Angeles, CA 90067<br>Attention: Joshua Kohan<br>Phone: (310) 893-5277<br>Email: joshua@archwayfund.com |
| with a copy to: | Thompson Coburn LLP<br>10100 Santa Monica Blvd., Suite 500<br>Los Angeles, CA 90067<br>Attention: Joshua Mogin<br>Phone: (310) 282-2520<br>Email: jmogin@thompsoncoburn.com |
| To Borrower: | c/o Alan Gomperts<br>264 S. Oakhurst Drive<br>Beverly Hills CA 90212<br>Phone: (310) 621-5350<br>Email: alangomperts@hotmail.com |
| with a copy to | Weintraub Zolkin Talerico & Selth LLP<br>1766 Wilshire Blvd Suite 730<br>Los Angeles, CA 90025<br>Attention: Derrick Talerico<br>Phone (424) 500-8552<br>Email: dtalerico@wztslaw.com |

The parties hereto may change the address at which they are to receive notices and the telecopier number at which they are to receive telecopies hereunder, by notice in writing in the foregoing manner. All notices or demands sent in accordance with this <u>Section 12</u> shall be deemed received:  (a) if delivered in person, when delivered; (b) if delivered by telecopy, on the date of confirmation of transmission if transmitted on a business day before 4:00 p.m. (Los Angeles time) or, if not, on the next succeeding business day; (c) if delivered by overnight courier, two days after delivery to such courier properly addressed; or (d) if by U.S. Mail, four business days after depositing in the United States mail, with postage prepaid and properly addressed.

13.     <u>Counterparts</u>.   This Modification Agreement may be executed in counterparts, all of which taken together shall constitute a single document.

14.     <u>Headings</u>.   The headings in this Modification Agreement are inserted for convenience and are not a part of this Modification Agreement.

**EXHIBIT 20 - Page 288**

15.     <u>Further Assurances</u>.  Upon request of Lender to a party hereto, such party will take all reasonable actions, including execution of additional documents and agreements, necessary or appropriate to carry out the terms, conditions and intent of this Modification Agreement.

16.     <u>Successors and Assigns</u>.  This Modification Agreement shall be binding on and inure to the benefit of the parties' respective successors and assigns.

17.     <u>Cost and Expenses and Choice of Law</u>.  Borrower shall reimburse Lender for all costs and other expenses incurred by Lender and relating to advising Lender in connection with drafting, negotiating, executing and effecting this Modification Agreement.  This Modification Agreement and all transactions hereunder and/or evidenced hereby shall be governed by, construed under and enforced in accordance with the laws of the State of California.  The parties agree that all actions or proceedings arising in connection with this Modification Agreement shall be tried and litigated only in the state and federal courts located in the County of Los Angeles, State of California.  Borrower waives any right it may have to assert the doctrine of forum non conveniens or to object to such venue and hereby consents to any court ordered relief.

18.     <u>Neutral Construction</u>.  This Modification Agreement is the product of negotiation among the parties hereto and represents the jointly conceived, bargained-for and agreed upon language mutually determined by the parties to express their intentions in entering into this Modification Agreement.  Any ambiguity or uncertainty in this Modification Agreement shall be deemed to be caused by, or attributable to, all parties hereto collectively.  In any action or proceeding to enforce or interpret this Modification Agreement, this Modification Agreement shall be construed in a neutral manner, and no term or condition of this Modification Agreement shall be construed more or less favorably to any one party, or group of parties, to this Modification Agreement.  In the event any provision contained in this Modification Agreement is determined to be unenforceable by a court of competent jurisdiction, then that provision shall be deemed omitted from this Modification Agreement and the remaining provisions of this Modification Agreement shall continue to be in full force and effect.

19.     <u>WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY</u>.  BORROWER HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS AGREEMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

20.     <u>Amendments</u>.  This Modification Agreement may only be amended in writing, signed by all parties hereto.

[*Signature(s) to follow*]

This Modification Agreement is entered into as of the date set forth in the first paragraph of this Modification Agreement.

**BORROWER:**

_____
**ALAN GOMPERTS**, Trustee of
**The Gomperts and Halevy Family Trust**

_____
**SHARON HALEVY**, Trustee of
**The Gomperts and Halevy Family Trust**

_____
**SUE HALEVY, Trustee of
the Halevy Family Trust dated September 8, 2010**

_____
**DANIEL HALEVY**, an individual

**LENDER:**

**ARCHWAY BROADWAY LOAN SPE, LLC**,
 a Delaware limited liability company


        By: _____
        Name:
        Title:

RECORDING REQUESTED BY

AND WHEN RECORDED, MAIL TO:

Archway Broadway Loan SPE, LLC
Archway Real Estate Income Fund I REIT, LLC
1875 Century Park East, Suite #900
Los Angeles, CA 90067

Assessor's Parcel No(s).: 4252-017-007, 4331-018-029 and 4303-032-017

---

### MEMORANDUM OF MODIFICATION TO DEED OF TRUST

This Memorandum of Modification to Deed of Trust ("Memorandum") is dated as of the ___ day of April, 2026, and is entered into by and among (i) ARCHWAY BROADWAY LOAN SPE, LLC, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("Lender"), (ii) ALAN GOMPERTS, and SHARON HALEVY, as Trustees of The Gomperts and Halevy Family Trust ("G&H Trust"), (iii) DAVID HALEVY and SUE HALEVY, as Trustees of the Halevy Family Trust dated September 8, 2010 ("D&S Trust"), and (iv) DANIEL HALEVY, an individual ("DH", and together with G& H Trust and D&S Trust, individually and collectively, "Borrower").

Borrower and Lender heretofore entered into that certain Promissory Note dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Note"), pursuant to which Lender made a loan in the original principal amount of Two Million Five Hundred Seventy-Five Thousand and No/100 Dollars ($2,575,000.00) (the "Loan") to Borrower. The Loan is evidenced and secured, in part, by (i) that certain Deed of Trust dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Greenfield Deed of Trust"), executed by G&H Trust, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California, on April 24, 2023, as Instrument No. 20230261978, (ii) that certain Deed of Trust dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Palm Deed of Trust"), executed by D&S Trust, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California, on April 24, 2023, as Instrument No. 20230259824, and (iii) that certain Deed of Trust dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Horner Deed of Trust", together with the Palm Deed of Trust and Horner Deed of Trust, individually and collectively, the "Deed of Trust") executed by DH, as trustor, in favor of Lender, as beneficiary, and recorded in the Official Records of Los Angeles County, California, on April 24, 2023, as Instrument No. 20230259819, whereby Borrower granted to Lender junior priority trust deed liens in and to, without limitation, certain real property located in Los Angeles County, California and described in Exhibit "A" attached hereto (the "Property").

Lender, Borrower and others have entered into that certain 2026 Settlement Agreement dated April ___, 2026 ("2026 Settlement Agreement"), which, among other things, (i) modifies certain defined terms within the Deed of Trust, (ii) modifies Article VIII of the Deed of Trust

1

5910368v1 | 101415-0002

**EXHIBIT 20 - Page 293**

entitled Cross Default and Cross Collateralization, and (iii) modified certain other provisions of the Deed of Trust.

This Memorandum is intended to make a matter of public record the execution of the 2026 Settlement Agreement by Borrower, Lender and others in connection with the Loan. Reference is made to the 2026 Settlement Agreement for the particulars thereof.

This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered shall be an original, and such counterparts together shall constitute but one and the same instrument.

[Signature page to follow.]

**EXHIBIT 20 - Page 294**

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the day and year set forth above.

**BORROWER:**

_____
ALAN GOMPERTS, Trustee of
The Gomperts and Halevy Family Trust


_____
SHARON HALEVY, Trustee of
The Gomperts and Halevy Family Trust


_____
SUE HALEVY, Trustee of
the Halevy Family Trust dated September 8, 2010


_____
DANIEL HALEVY, an individual


**LENDER:**

ARCHWAY BROADWAY LOAN SPE, LLC
A Delaware limited liability company


By: _____
Name: Bobby Khorshidi
Title:   Director

**EXHIBIT 20 - Page 295**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of _____    )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature        _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of _____    )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature        _____

5910368v1 | 101415-0002                    -4-

**EXHIBIT 20 - Page 296**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                          )
County of _____          )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature          _____


A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                          )
County of _____          )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature          _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of _____        )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature        _____

## EXHIBIT "A"

### LEGAL DESCRIPTION

**3538 GREENFIELD AVENUE, LOS ANGELES, CA 90034**

For APN/Parcel ID(s): 4252-017-007

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 195 OF TRACT NO. 10516, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 159, PAGES 18 TO 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

**133 SOUTH PALM DR, APT 0005, BEVERLY HILLS, CA 90212**

For APN/Parcel ID(s): 4331-018-029

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 1118 TRACT 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 69 PAGES 11 TO 20 INCLUSIVE OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**8561 HORNER STREET, LOS ANGELES, CA 90035**

For APN/Parcel ID(s): 4303-032-017

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 192 OF TRACT NO. 7385, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 81 PAGES 72 AND 73 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

Archway Broadway Loan SPE, LLC
Archway Real Estate Income Fund I REIT, LLC
1875 Century Park East, Suite #900
Los Angeles, CA 90067

Assessor's Parcel No(s).: 642-082-001

---

### MEMORANDUM OF MODIFICATION TO DEED OF TRUST

This Memorandum of Modification to Deed of Trust ("Memorandum") is dated as of the ___ day of June, 2026, and is entered into by and among (i) ARCHWAY BROADWAY LOAN SPE, LLC, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("Lender"), and (ii) NEGEV INVESTMENTS, LLC, a California limited liability company ("Borrower").

Borrower and Lender heretofore entered into that certain Promissory Note dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Note"), pursuant to which Lender made a loan in the original principal amount of One Million Three Hundred Thousand and No/100 Dollars ($1,300,000.00) (the "Loan") to Borrower. The Loan is evidenced and secured, in part, by (i) that certain Deed of Trust dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Deed of Trust"), executed by Borrower in favor of Lender, as beneficiary, and recorded in the Official Records Riverside County, California, on April 20, 2023, as Instrument No. 2023-0113225, whereby Borrower granted to Lender a junior priority trust deed lien in and to, without limitation, certain real property located in Riverside County, California and described in Exhibit "A" attached hereto (the "Property").

Lender, Borrower and others have entered into that certain 2026 Settlement Agreement dated June 1, 2026 ("2026 Settlement Agreement"), which, among other things, (i) modifies certain defined terms within the Deed of Trust, (ii) modifies Article VIII of the Deed of Trust entitled Cross Default and Cross Collateralization, and (iii) modifies certain other provisions of the Deed of Trust.

This Memorandum is intended to make a matter of public record the execution of the 2026 Settlement Agreement by Borrower, Lender and others in connection with the Loan. Reference is made to the 2026 Settlement Agreement for the particulars thereof.

This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered shall be an original, and such counterparts together shall constitute but one and the same instrument.

[Signature page to follow.]

1

5917818v1 | 101415-0002

**EXHIBIT 20 - Page 300**

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the day and year set forth above.

**BORROWER:**

**NEGEV INVESTMENTS, LLC,**
**a California limited liability company**

By: _____
Name: Sue Halevy
Its: Authorized Signatory

**LENDER:**

ARCHWAY BROADWAY LOAN SPE, LLC
A Delaware limited liability company

By: _____
Name: Bobby Khorshidi
Title:   Director

**EXHIBIT 20 - Page 301**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of _____              )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature         _____


A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of _____              )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature         _____

5917818v1 | 101415-0002                          -3-

**EXHIBIT 20 - Page 302**

## EXHIBIT "A"

## LEGAL DESCRIPTION

**For APN/Parcel ID(s):    642-082-001**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOTS 5, 6, 7 AND 8 OF THE KILEEN TRACT, IN THE CITY OF DESERT HOT SPRINGS, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 33, PAGE 71 OF MAPS, IN THE OFFICE OF COUNTY RECORDER OF SAID COUNTY.

APN: 642-082-001

**RECORDING REQUESTED BY**
**AND WHEN RECORDED, MAIL TO:**

Archway Broadway Loan SPE, LLC
Archway Real Estate Income Fund I REIT, LLC
1875 Century Park East, Suite #900
Los Angeles, CA 90067

Assessor's Parcel No(s).: 5145-020-057

---

## MEMORANDUM OF MODIFICATION TO DEED OF TRUST

This Memorandum of Modification to Deed of Trust ("Memorandum") is dated as of the ___ day of June, 2026, and is entered into by and among (i) ARCHWAY BROADWAY LOAN SPE, LLC, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("Lender"), and (ii) SLA INVESTMENTS, LLC, a California limited liability company ("Borrower").

Borrower and Lender heretofore entered into that certain Promissory Note dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Note"), pursuant to which Lender made a loan in the original principal amount of One Hundred Twenty-Five Thousand and No/100 Dollars ($125,000.00) (the "Loan") to Borrower. The Loan is evidenced and secured, in part, by (i) that certain Deed of Trust dated as of April 14, 2023 (together with any amendments and/or addenda thereto, the "Deed of Trust"), executed by Borrower in favor of Lender, as beneficiary, and recorded in the Official Records Los Angeles County, California, on April 21, 2023, as Instrument No. 20230258318, whereby Borrower granted to Lender a junior priority trust deed lien in and to, without limitation, certain real property located in Riverside County, California and described in Exhibit "A" attached hereto (the "Property").

Lender, Borrower and others have entered into that certain 2026 Settlement Agreement dated June 1, 2026 ("2026 Settlement Agreement"), which, among other things, (i) modifies certain defined terms within the Deed of Trust, (ii) modifies Article VIII of the Deed of Trust entitled Cross Default and Cross Collateralization, and (iii) modifies certain other provisions of the Deed of Trust.

This Memorandum is intended to make a matter of public record the execution of the 2026 Settlement Agreement by Borrower, Lender and others in connection with the Loan. Reference is made to the 2026 Settlement Agreement for the particulars thereof.

This Memorandum may be executed and delivered in two or more counterparts, each of which, when so executed and delivered shall be an original, and such counterparts together shall constitute but one and the same instrument.

[Signature page to follow.]

1

5917830v1 | 101415-0002

**EXHIBIT 20 - Page 304**

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the day and year set forth above.

**BORROWER:**

**SLA INVESTMENTS, LLC,**
**a California limited liability company**

By: _____
Name: Alan Gomperts
Its: Manager

**LENDER:**

ARCHWAY BROADWAY LOAN SPE, LLC
A Delaware limited liability company

By: _____
Name: Bobby Khorshidi
Title: Director

**EXHIBIT 20 - Page 305**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
County of _____          )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature          _____


A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
County of _____          )


On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature          _____

## EXHIBIT "A"

## LEGAL DESCRIPTION

**For APN/Parcel ID(s):     5145-020-057**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 4 IN BLOCK 4 OF THE O.W. CHILD'S TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 6, PAGE 378 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5145-020-057

# EXHIBIT 21

EXHIBIT 21 - Page 308

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

_____

*(space above this line for recorder's use only)*

**ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust**, as grantor
(Trustor)

to

**FIDELITY NATIONAL TITLE**, as trustee
(Trustee)

for the benefit of

**ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC), as beneficiary

(collectively, Lender)

_____

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING
(B NOTE GUARANTY)**

_____

| | |
|---|---|
| Dated: | April __, 2026 |
| Address: | 264 South Oakhurst Drive
Beverly Hills, CA 90212-3504 |

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A DEED OF TRUST AND A FIXTURE FILING FILED AS A FINANCING STATEMENT.

THIS INSTRUMENT CONSTITUTES A FIXTURE FILING UNDER SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.  TO THE EXTENT THE GOODS ARE FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY LOCATED IN LOS ANGELES COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED ON UNDERLINE EXHIBIT A ATTACHED TO THIS SECURITY INSTRUMENT.

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing is executed as of April ▆▆, 2026, by **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*Trustor*") to **FIDELITY NATIONAL TITLE** ("*Trustee*"), for the benefit of **ARCHWAY BROADWAY LOAN SPE, LLC**, a Delaware limited liability company (successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC) ("*Lender*").

This Security Instrument is made in connection with the following:

(A) that certain Settlement Agreement (the "*2026 Settlement Agreement*"), dated as of the date herewith, by and among Lender, on the one hand, and Broadway Avenue Investments LLC, a California limited liability company ("*Broadway*"), Negev Investments, LLC, a California limited liability company ("*Negev*"),  SLA Investments, LLC, a California limited liability company ("*SLA*"), Alan Gomperts, individually ("Alan") and in his capacity as trustee of the Gomperts and Halevy Family Trust ("*G&H Trust*"), Daniel Halevy, individually ("*Daniel*") and in his capacity as personal representative of the probate estate ("*Probate Estate*") of David Halevy ("*Decedent*"), and Susan Halevy, individually ("*Sue*"), and in her capacity as trustee of the Halevy Family Trust dated September 6, 2010 ("D&S Trust" and collectively with Broadway, Negev, SLA, Alan, individually and as trustee of the G&H Trust, Daniel, individually and as personal representative of the Probate Estate of Decedent, and Sue, individually and as trustee of the D&S Trust, the "*Obligors*").  The 2026 Settlement Agreement is made in connection with that certain Loan Agreement by and between Broadway and Lender dated July 21, 2021 (the "*Loan Agreement*").

(B) the Amended and Restated Promissory Note (Note B) (the "*B Note*") described in the 2026 Settlement Agreement, in the original principal amount of $10,300,000.00 in evidence of the loan (the "*Loan*") made by Lender to Broadway.

(C) The Continuing Guaranty (B Note and Other Obligations) dated as of the date herewith, made by (i) **ALAN GOMPERTS**, and **SHARON HALEVY**, **as Trustees of The Gomperts and Halevy Family Trust** ("*G&H Trust*"), (ii) **SUE HALEVY, as Trustee of the Halevy Family Trust dated September 8, 2010** ("*D&S Trust*"), and (iii) **SUE HALEVY**, an individual ("*SH*") (G& H Trust, D&S Trust and SH are collectively, referred to herein as, "*Guarantor*"), in favor of Lender (the "*B Note Guaranty*") guaranteeing the Guaranteed Obligations (as defined herein).  For the avoidance of doubt, this Security Instrument does not secure the A Note (as defined in the 2026 Settlement Agreement) or the Amended Broadway Guaranty as to the A Note (as defined in the 2026 Settlement Agreement).

## W I T N E S S E T H:

In order to secure payment of the Indebtedness and performance of Guarantor's obligations under the B Note Guaranty, Trustor hereby irrevocably grants, bargains, sells and conveys to Trustee IN TRUST, WITH POWER OF SALE, the following property and rights, whether now owned or held or hereafter acquired and Trustor further grants to Trustee a first priority security interest in the Property.

## GRANTING CLAUSE ONE

All of Trustor's right, title and interest in and to the Land.

## GRANTING CLAUSE TWO

All of Trustor's right, title and interest in and to the Additional Land.

## GRANTING CLAUSE THREE

All of Trustor's right, title and interest in and to the Improvements.

## GRANTING CLAUSE FOUR

All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Trustor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

## GRANTING CLAUSE FIVE

All right, title and interest in and to the Equipment and the right, title and interest of Trustor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code) superior, inferior or pari passu in lien to the lien of this Security Instrument.   In connection with Equipment which is leased to Trustor or which is subject to a lien or security interest which is superior to the lien of this Security Instrument, this Security Instrument shall also cover all right, title and interest of each Trustor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

## GRANTING CLAUSE SIX

All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

## GRANTING CLAUSE SEVEN

All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all

claims as a creditor in connection with any of the foregoing) and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

## GRANTING CLAUSE EIGHT

All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

## GRANTING CLAUSE NINE

All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

## GRANTING CLAUSE TEN

The right, in the name of and on behalf of Trustor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Trustor from any source whatsoever.

## GRANTING CLAUSE ELEVEN

All cash on hand, bank accounts, accounts receivable, security deposits, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Trustor now has or may hereafter acquire in the Real Property or any part thereof.

## GRANTING CLAUSE TWELVE

All rights which Trustor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

## GRANTING CLAUSE THIRTEEN

All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

## GRANTING CLAUSE FOURTEEN

All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

WITH RESPECT to any portion of the Property which is not real estate under the laws of the State of California, Trustor hereby grants, bargains, sells and conveys the same to Lender for the purposes set forth hereunder and the references above to Trustee shall be deemed to be to Lender with respect to such portion of the Property and Lender shall be vested with all rights, power and authority granted hereunder or by law to Trustee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns for the benefit of Lender and the successors and assigns of Lender forever.

IN TRUST, WITH POWER OF SALE, to secure the payment to Lender the obligations to pay Indebtedness and performance of Guarantor's obligations under the B Note Guaranty and in this Security Instrument;

PROVIDED, HOWEVER, these presents are upon the express condition, if Trustor shall well and truly pay to Lender the Indebtedness at the time and in the manner provided in the B Note Guaranty and this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the B Note Guaranty and in the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

Trustor warrants to Trustee for the benefit of Lender, and agrees to defend title to the Property against the claims of any Person or Governmental Authority, subject to the Permitted Encumbrances. This Security Instrument will have no further force or effect on the Termination Date. Trustee on behalf of Lender will (unless otherwise required by Applicable Law) release this Security Instrument within 30 days after the Termination Date, at Trustor's expense.

Trustor acknowledges receiving good and valuable consideration, including the Indebtedness, to execute and deliver this Security Instrument.

AND Trustor represents and warrants to and covenants and agrees with Lender and Trustee as follows:

ARTICLE I.
**Definitions and Loan Documents**

1.1  <u>Loan Documents</u>.  All representations, covenants and other terms (including those terms that apply to all Loan Documents) of the other Loan Documents are, by reference, fully incorporated in this Security Instrument.  All covenants in the Loan Documents related to the Real Property are covenants running with the Land.

1.2  <u>Definitions</u>.  Capitalized terms not otherwise defined below will have the meanings set forth in the 2026 Settlement Agreement.  Each of the below capitalized terms has the following meaning:

"***Additional Land***" means all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental Deed of Trust or otherwise, be expressly made subject to the lien thereof.

**EXHIBIT 21 - Page 313**

"*Applicable Law*" means all Laws, covenants, conditions and restrictions (including private restrictive covenants) and other requirements relating to or affecting Borrower, Guarantor, Lender or the Property.

"*B Note Guaranty*" shall have the meaning ascribed to it in the 2026 Settlement Agreement.

"*Collateral*" means the Property and all of Trustor's other assets, whether now owned or hereafter acquired, including the Leases, and all proceeds from Trustor's assets.

"*Equipment*" means all machinery, equipment, fixtures, goods which are or are to become fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Trustor or in which Trustor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures.

"*Foreclosure Statute*" has the meaning set forth in Section 4.4 below.

"*Governmental Authority*" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank, or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supranational bodies such as the European Union or the European Central Bank).

"*Guaranteed Obligations*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Indebtedness*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Improvements*" means any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof.

"*Land*" the real property or properties described on *Exhibit A* attached hereto.

"*Law*" means any statute, law, regulation, ordinance, rule, treaty, judgment, order, decree, permit, concession, franchise, license, agreement or other governmental restriction, or binding judicial (or tribunal) decisions of the United States or any state or political subdivision thereof, or of any foreign country or any department, province or other political subdivision thereof. All references to Law include any amendment or modification to the Law, and all regulations, rulings, and other Laws promulgated under such Law.

"*Loan*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Loan Documents*" shall have the meaning ascribed to it in the B Note Guaranty.

"*Payment Notice*" means Lender's notice to Tenant of an Event of Default.

"*Permitted Encumbrances*" means encumbrances approved by Lender.

"*Person*" means a natural person, partnership, corporation (including a business trust), joint stock company, trust, unincorporated association, joint venture, limited liability company or other entity, or a government or any political subdivision or agency thereof.

"***Personal Property***" means all (i) Awards, (ii) Leases, (iii) all of Trustor's accounts (as defined in the UCC), goods (as defined in the UCC), fixtures, accessions (as defined in the UCC), general intangibles (as defined in the UCC), chattel paper (as defined in the UCC), investment property (as defined in the UCC) and deposits accounts (as defined in the UCC) (including any accounts opened in connection with cash management), which are ever situated on, derived from or used in connection with the Property, (iv) Additional Collateral, (v) all insurance policies covering the Property, the other Personal Property and the liability of any Trustor, Trustee or Lender, and all insurance proceeds from any of the policies, (vi) amounts deposited in the Tax and Insurance Escrow Account, and (vii) all proceeds of the Personal Property described in (i) – (vi).

"***Property***" means the Real Property and the Personal Property.

"***Real Property***" means, collectively, (i) the Land (as legally described in ***Exhibit A*** annexed to this Security Instrument), (ii) the Improvements, (iii) Leases, Rents and Awards, (iv) all fixtures, accessions and appurtenances to the Land or Improvements, (v) all easements and rights of way now or hereafter benefiting the Land, (vi) all of Trustor's interest in any lands adjoining the Land, (vii) all water and all of Trustor's water rights benefiting the Land, and (viii) all rights, estates and privileges appurtenant or incident to the foregoing.

"***Security Instrument***" means this Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, as amended, modified, restated and extended.

"***Termination Date***" means the day on which the Guaranteed Obligations have been indefeasibly paid and performed in full.

"***Transfer Event***" means the transfer of title to any Collateral to a Transferee.

"***Transferee***" means any Person, including Lender, who takes title to any Collateral after a Transfer Event.

"***Trustee***" means Fidelity National Title, and the successors and substitutes Lender designates.

"***Uniform Commercial Code***" or "***UCC***" means the Uniform Commercial Code of the State of California, as amended.

1.3    Terms Generally; References and Titles.    References in this Security Instrument to "Articles," "Sections," "Exhibits" or "Schedules" will be to the Articles, Sections, Exhibits or Schedules of this Agreement unless otherwise specifically provided.  All Exhibits and Schedules annexed to this Security Instrument are incorporated in, and are a part of, this Security Instrument for the purposes set forth in this Security Instrument.  Any term defined in this Security Instrument may be used in the singular or plural.  Words of any gender include all other genders. The terms "include," "includes," and "including" are followed by "without limitation".  Except as otherwise specified or limited in this Security Instrument, a reference to any Person includes the successors and assigns of the Person.  Unless otherwise specified all references "from" or "through" any date mean "from and including" or "through and including" the date. References to any statute or act include all related current regulations and all amendments and any successor statutes, acts and regulations.  References to any statute or act, without additional reference, refer to federal statutes and acts of the United States.  References to any agreement, instrument or document includes all schedules, exhibits, annexes and other attachments to the agreement, instrument or document.

## ARTICLE II.
## Assignment of Leases and Rents

2.1    Assignment.    For the Indebtedness and other good and valuable consideration, Trustor absolutely and unconditionally assigns and transfers to Lender (a) the Leases, (b) the Rents, and (c) any and

all guaranties of payment of the Rent.  Trustor does hereby absolutely and unconditionally assign to Lender its right, title and interest in all current and future Leases and Rents and all proceeds from the sale, cancellation, surrender or other disposition of the Leases, it being intended by Trustor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Such assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Lender. Trustor agrees to execute and deliver to Lender such additional instruments in form and substance satisfactory to Lender, as may hereafter be requested by Lender to further evidence and confirm such assignment.  Nevertheless, subject to the terms of this Section 2.1, Lender grants to Trustor a revocable license to operate and manage the Property and to collect the Rents.  Trustor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.  During an Event of Default, the license granted to Trustor herein shall be automatically revoked and Lender shall immediately be entitled to possession of all Rents, whether or not Lender enters upon or takes control of the Property.  Lender is hereby granted and assigned by Trustor the right, at its option, upon the revocation of the license granted herein to enter upon the Property in person, by agent or by court-appointed receiver to collect the Rents.  Any Rents collected after the revocation of the license herein granted may be applied toward payment of the Indebtedness in such priority and proportion as Lender in its reasonable discretion shall deem proper.  It is further the intent of Trustor and Lender that the Rents hereby absolutely assigned are no longer, during the term of this Security Instrument, property of Trustor or property of any estate of Trustor as defined in Section 541 of the Bankruptcy Code and shall not constitute collateral, cash or otherwise, of Trustor.

2.2    Application of Rent.

(a)    Each Tenant may, until Lender delivers a Payment Notice, pay Rent directly to Trustor (or its designee).  Trustor shall hold all Rent it (or its designee) receives in trust for the benefit of Lender and the Loan.  Unless Lender otherwise agrees, Trustor must first only use the Rent to satisfy obligations arising under the Loan Documents, including payment of all real estate taxes, insurance premiums, maintenance and repair costs, for the Property.

(b)    After a Tenant receives a Payment Notice, Tenant shall pay directly to Lender all Rent thereafter accruing.  Tenant is relieved of its obligations to pay Trustor under any Lease to the extent of all Rent Tenant pays to Lender.

(c)    Lender may use any Rent it receives for (in the priority and amounts as Lender determines in its discretion):  (i) (1) the expenses to operate, maintain and manage the Property, and (2) the expenses incident to taking and retaining possession of the Property and collecting Rent; and (ii) the Indebtedness.  The assignment in Section 2.1 above does not reduce the Indebtedness unless Lender actually receives Rent and applies it to the Indebtedness.

(d)    Lender may, at its option and without impairing its rights under the assignment in this Section 2.1, release any Rent Lender receives to Trustor.

(e)    As between Trustor, Lender and any other Person, except a Tenant who has not received a Payment Notice, the assignment in Section 2.1 above is absolute, unconditional and presently effective.  Lender's delivery of a Payment Notice is solely for the benefit and protection of each Tenant and does not otherwise benefit or affect Trustor or any Person claiming through or under Trustor.

(f)    Lender is not required to institute legal proceedings to enforce the terms of this Section.

2.3    No Third Party Beneficiary.  The assignment in Section 2.1 above is not made for the benefit of any Person other than Lender.

EXHIBIT 21 - Page 316

2.4     Release and Termination.  The assignment in Section 2.1 above terminates upon Lender's release of this Security Instrument.

ARTICLE III.
**Leases**

3.1     Intentionally Omitted.

3.2     Approval.    Except as set forth below and in the 2026 Settlement Agreement, no Lease (including any Lease amendments) will be effective unless approved by Lender.

3.3     Terms.  Notwithstanding the terms of any Lease made on or after the Closing Date, each Lease is subordinate to this Security Instrument and each Tenant shall, if Lender elects, execute an instrument (in form and substance acceptable to Lender in its sole discretion) subordinating the Tenant's leasehold interest to Lender's liens and security interests.  Unless Lender specifically agrees in writing, no Leases may impose obligations upon Lender or any Transferee prior to or following a Transfer Event.

3.4     Lender's Preapproval.  Notwithstanding Sections 3.2 and 3.3 above, Trustor may enter into and modify, but not terminate, Leases (except ground or master Leases) that:

(a)         are with Tenants who are not affiliated with Trustor;

(b)         do not grant Tenant's more than 1 month of free rent for each year of the lease or renewal term or any reduced Rents, except as permitted pursuant to clause (d) hereof;

(c)         do not afford Tenants any termination rights;

(d)         are an arm's length transaction on economic terms conforming to current market conditions;

(e)         have a market rental rate; and

(f)         do not contain any rights of first refusal or options to purchase.

ARTICLE IV.
**Event of Default; Unconsented Transfer; and Remedies**

4.1     Conditions Under Which Lender May Declare A Default By Trustor.  An Event of Default under this Security Instrument shall occur in the event that:  (a) Trustor fails to perform any other obligation required to be performed by Trustor under this Security Instrument or secured by this Security Instrument; or (b) an Event of Default ( as defined in the 2026 Settlement Agreement) occurs.

4.2     Lender's Right To Require Immediate Payment In Full.  In the event: (a) of an uncured Event of Default under this Security Instrument, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, except as permitted by the 2026 Settlement Agreement, Lender may, at its option and without further notice to any person, declare the Guaranteed Obligations together with accrued interest thereon, immediately due and payable.  As used herein, the term "transfer" includes, without limitation thereto, (i) the transfer of any general partnership or joint venture interest in Trustor or any general partner of Trustor, or change in the general partners or joint venturers of Trustor or of any general partner (if Trustor or any such general partner is a partnership or a joint venture), and the transfer of any common or voting stock in Trustor or any general partner of Trustor (if Trustor or any general partner of Trustor is a corporation), (ii) if Trustor is a limited partnership, any transfer of a limited partnership interest in a single transaction, or series of transactions, intended to transfer all or substantially all of the beneficial interest of the Property, or any part thereof, and (iii) if Trustor is not an individual, corporation, or partnership, the

transfer, directly or indirectly, of any beneficial interest in Trustor.  Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument.  No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

4.3     Possession.  During an Event of Default (as defined in the 2026 Settlement Agreement), Lender may (a) enter upon and take possession of the Property and (b) exercise, without Trustor's interference, any rights which Trustor has with respect to the managing, possessing, operating, leasing, protecting or preserving the Property.  If Lender rents any of the Property, Lender will do so for the account of Trustor, and Lender may deduct from the Rents all expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property.  Lender may apply any remaining Rents to the Indebtedness in any manner Lender chooses.  All costs, expenses and liabilities Lender incurs in collecting the Rents and in managing, operating, maintaining, protecting or preserving the Property, which exceed the Rents Lender actually collects from Tenants will be additional costs.  If Lender elects to take possession of the Property, then Trustor will quietly surrender possession of the Property.  If Trustor fails to quietly surrender possession of the Property, then Lender may invoke all legal remedies to dispossess Trustor.

4.4     Foreclosure.  Trustor grants Trustee on behalf of Lender a power of sale.  During an Event of Default, Trustee, if Lender directs, on behalf of Lender may exercise the power of sale and foreclose the liens and security interests created by this Security Instrument in any manner provided at law or in equity (as amended, replaced or re-codified, the "***Foreclosure Statute***").  If the Foreclosure Statute is no longer in force or effect, then, in addition to Lender's other rights at law or in equity, Lender may foreclose pursuant to the rules set forth in the last effective Foreclosure Statute.  In addition to the power of sale and non-judicial foreclosure rights granted to Trustee on behalf of Lender, if Trustee on behalf of Lender desires, then Trustee on behalf of Lender may file suit on the Indebtedness and for the foreclosure of the liens and security interests created by this Security Instrument.

4.5     Receiver.  In addition to all other remedies in the B Note Guaranty, at law or in equity, during an Event of Default, (a) without notice to any Trustor Party, (b) whether or not Trustor is solvent, (c) whether or not a Trustor Party commits fraud or mismanages the Property, (d) even if the Property is sufficient to repay the Indebtedness, or (e) without filing any proceeding other than a proceeding seeking the appointment of a receiver, Lender will be entitled to the appointment of a receiver or receivers for the Property and the Rents.  Trustor irrevocably consents to the appointment of a receiver and waives all defenses to any Lender application for a receiver.  During a receivership for the Property, Trustor irrevocably consents to (i) Lender commencing any additional proceeding to enforce any other right or remedy under the B Note Guaranty, at law or in equity, and (ii) Trustee on behalf of Lender conducting a non-judicial sale of the Collateral pursuant to the Foreclosure Statute.  Any money Lender advances in connection with a receivership will be additional costs.

4.6     Proceeds of Sale.  The proceeds of any Trustee's or receiver's sale of the Property in foreclosure of the liens evidenced by this Security Instrument will be:

> **FIRST**, applied to the payment of all costs of the sale, and a reasonable fee, to Trustee acting under Section 4.2 above; **SECOND**, applied to the Indebtedness, in the order Lender elects or as otherwise expressly provided for in the 2026 Settlement Agreement, until the Indebtedness is paid in full; and **THIRD**, the remainder, if any, paid to any Person (including Trustor) as required by Applicable Law.

4.7     Lender as Purchaser.  Lender may purchase the Property at any foreclosure sale.  In connection with any foreclosure sale, Lender may credit bid in an amount up to the Indebtedness then owed to Lender.

4.8     Uniform Commercial Code.  During an Event of Default, Lender may exercise its rights of enforcement with respect to the Collateral under the UCC.  In addition to or in substitution for Lender's UCC rights and remedies:

(a)     Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable, subject to the rights of any Tenants;

(b)     Lender may require Trustor to assemble the Collateral and make it available at the Property or any place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral;

(c)     Lender may mail written notice to Trustor as provided in Section 5.10 below, ten (10) days prior to the date of any sale of the Collateral, and such notice will constitute reasonable notice under the UCC;

(d)     Lender need not take possession of the Collateral prior to any Transfer Event; and

(e)     prior to applying Transfer Event proceeds to the Indebtedness, Lender may apply the proceeds to the reasonable expenses (including Lender's legal expenses and reasonable attorneys' fees, including allocated in-house counsel expenses) incurred to collect the Indebtedness, enforce the B Note Guaranty or to take possession of, hold or prepare the Collateral for transfer.

4.9     Delivery of Possession After Foreclosure.  Immediately after a Transfer Event, Trustor and any Person claiming any Collateral interest by, through or under Trustor, who is occupying or using the Property or other Collateral, will become the tenant or lessee of the Transferee.  Subject to the terms of the applicable Lease and to any non-disturbance and attornment agreement between Lender and a Tenant, the post-Transfer Event tenancy will be a tenancy at will, terminable at the will of either Transferee or the tenant, at a daily fair market rental.  If a Tenant fails to surrender possession of the Collateral to Transferee after Transferee's demand, then Transferee may institute and maintain an action for forcible entry and detainer of the Property.

ARTICLE V.
**Miscellaneous**

5.1     Successor Trustee.  Lender may remove Trustee, or Trustee may resign, at any time with or without cause.  If Trustee dies, resigns or is removed, then Lender may, in writing, appoint a successor or substitute trustee.  Lender may exercise its right to remove any Trustee or appoint any number of successor or substitute trustees as often as Lender desires until the Termination Date.  Lender may appoint a single or multiple substitute trustees to act instead of the original trustee.  If multiple substitute trustees are appointed, then each may act alone without the other substitute trustees.  Immediately after a successor or substitute trustee is appointed, (i) all of the Trustee's estate in and title to the Collateral vests in the successor or substitute trustee(s), (ii) the successor or substitute trustee(s) will succeed to all rights, powers, privileges and immunities conferred upon Trustee, and (iii) the prior Trustee(s) shall assign, transfer and deliver to the successor or substitute Trustee(s) all of the Collateral the prior Trustee holds.  Upon the written request of Lender or of the successor or substitute Trustee(s), the prior Trustee shall execute and deliver an instrument transferring to the successor or substitute Trustee(s) all of the estate in and title to the Collateral.

5.2     Authorization to File Financing Statement.  Trustor authorizes Lender to file in any jurisdiction a reproduction of this Security Instrument or financing statements covering the Collateral.  If

Lender desires, Lender may describe the Collateral in any financing statement as "*all assets*" of Trustor or words of similar effect.

5.3     Fixture Filing.  This Security Instrument is a financing statement filed as a fixture filing. For purposes of this Security Instrument being a financing statement:  Trustor is the debtor, Lender is the secured party, and the collateral is the Personal Property, including fixtures.

5.4     Dealing with Successor.  If Trustor no longer owns the Collateral, then Lender may, without notice to Trustor, deal with Trustor's successor in interest concerning this Security Instrument and the Indebtedness in the same manner as with Trustor, without in any way vitiating or discharging Trustor's liability under the B Note Guaranty or for the Indebtedness.  Notwithstanding the foregoing, Lender does not consent to any transfer of the Collateral, except as expressly set forth in the B Note Guaranty or as Lender hereafter agrees in writing.

5.5     Subrogation.  If Loan proceeds pay indebtedness secured by any outstanding lien, security interest or prior encumbrance against the Collateral, then Lender has advanced the proceeds at Trustor's request and Lender is subrogated to all rights, security interests and liens held by the holder of the outstanding liens, security interests or encumbrances, irrespective of whether the liens, security interests or encumbrances are released.  However, the terms and provisions of the B Note Guaranty will govern the rights and remedies of Lender and supersede the terms, provisions, rights and remedies under and pursuant to the instruments creating the original lien, security interest or encumbrance.

5.6     Application of Indebtedness.  If this Security Instrument or any of the Collateral cannot lawfully secure any of the Indebtedness or if the liens or security interests created by this Security Instrument are invalid or unenforceable as to any of the Indebtedness or any of the Collateral, then all payments made on the Indebtedness will be applied first to all of the Indebtedness which is not secured by this Security Instrument or the Collateral.

5.7     Agents.  Lender or Trustee may appoint one or more Persons as agent to perform any act necessary or incidental to any sale of the Collateral, in the name and on behalf of Lender or Trustee.

5.8     Transfer Recitals.  All statements of fact in any instrument evidencing a Transfer Event concerning (i) nonpayment of the Indebtedness, (ii) any Event of Default, (iii) acceleration of the Indebtedness, or (iv) any other matter, are prima facie evidence of the truth of the recited fact.

5.9     WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.  TRUSTOR HEREBY AGREES THAT ANY CLAIMS, CONTROVERSIES, DISPUTES, OR QUESTIONS OF INTERPRETATION, WHETHER LEGAL OR EQUITABLE, ARISING OUT OF, CONCERNING OR RELATED TO THIS SECURITY INSTRUMENT AND ANY MATTER RELATED THERETO, OR AS TO ANY DOCUMENT ATTACHED OR REFERENCED HEREIN, SHALL BE HEARD BY A SINGLE REFEREE BY CONSENSUAL GENERAL JUDICIAL REFERENCE PURSUANT TO THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE § 638 ET SEQ., WHO SHALL DETERMINE ALL ISSUES OF FACT OR LAW AND TO REPORT A STATEMENT OF DECISION. THE REFEREE SHALL ALSO HAVE THE POWER TO HEAR AND DETERMINE PROCEEDINGS FOR ANCILLARY RELIEF, INCLUDING, BUT NOT LIMITED TO, APPLICATIONS FOR ATTACHMENT, ISSUANCE OF INJUNCTIVE RELIEF, APPOINTMENT OF A RECEIVER, AND/OR CLAIM AND DELIVERY. THE COSTS OF THE PROCEEDING SHALL BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, SUBJECT TO THE DISCRETION OF THE REFEREE TO ALLOCATE SUCH COSTS BASED ON A DETERMINATION AS TO THE PREVAILING PARTY(IES) IN THE PROCEEDING.

5.10    Notices. Any notice required or permitted to be given under this Security Instrument shall be in writing and either (a) shall be mailed by certified mail, postage prepaid, return receipt requested, or (b) sent by overnight air courier service, or (c) personally delivered to a representative of the receiving party, or (d) sent by facsimile or email. All such communications shall be mailed, sent or delivered, addressed to the party for whom it is intended at its address set forth below.

To Lender:    Archway Broadway Loan SPE, LLC
`    Archway Real Estate Income Fund I REIT, LLC
1875 Century Park East, Suite #900
Los Angeles, CA 90067
Attention: Joshua Kohan
Phone: (310) 893-5277
Email: joshua@archwayfund.com

with a copy to:    Thompson Coburn LLP
10100 Santa Monica Blvd., Suite 500
Los Angeles, CA 90067
Attention: Joshua Mogin
Phone: (310) 282-2520
Email: jmogin@thompsoncoburn.com

To Trustor:    c/o Alan Gomperts
264 S. Oakhurst Drive
Beverly Hills CA 90212
Phone: (310) 621-5350
Email: alangomperts@hotmail.com

with a copy to    Weintraub Zolkin Talerico & Selth LLP
1766 Wilshire Blvd Suite 730
Los Angeles, CA 90025
Attention: Derrick Talerico
Phone (424) 500-8552
Email: dtalerico@wztslaw.com

Trustee:    Fidelity National Title
555 S. Flower Street, Suite 4420
Los Angeles, CA 90071
Attention: JB Jennings
Phone: (213) 452-7100
Email: JB.Jennings@fnf.com

Any notice so addressed and sent by United States mail or overnight courier shall be deemed to be given on the earliest of (1) when actually delivered, (2) on the first Business Day after deposit with an overnight air courier service, or (3) on the third Business Day after deposit in the United States mail, postage prepaid, in each case to the address of the intended addressee. Any notice so delivered in person shall be deemed to be given when receipted for by, or actually received by, Lender or Indemnitor, as the case may be. Notices transmitted by facsimile or email shall be deemed received on the date of transmission, provided that a confirming copy of such notice is also sent by mail, overnight courier or personal delivery, as provided above.  Either party may designate a change of address by written notice to the other by giving at least ten (10) days prior written notice of such change of address.

## ARTICLE VI.
## Concerning the Trustee

6.1     Trustee's Fees.  Trustor shall pay all costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

6.2     Substitute Trustee.  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for willful negligence or misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Lender may remove Trustee at any time or from time to time and select a successor trustee by filing the appropriate instrument in the office where this Security Instrument is recorded.  Trustor hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, with full power of substitution to file, execute and record any document required to appoint such substitute trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever, Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.  Trustor agrees to the foregoing for itself, its successors and assigns.

6.3     Power of Sale.

(a)     Upon the occurrence of an Event of Default, Trustee, or the agent or successor of Trustee, at the request of Lender, shall sell or offer for sale the Property in such portions, order and parcels as Lender may determine with or without having first taken possession of same, to the highest bidder for cash at one or more public auctions in accordance with the terms and provisions of the law of the State in which the Property is located.  Such sale shall be made at the area within the courthouse of the county in which the Property (or any portion thereof to be sold) is situated (whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any Personal Property hereby secured present at such sale) which is designated by the applicable court of such County as the area in which public sales are to take place, or, if no such area is designated, at the area at the courthouse designated in the notice of sale as the area in which the sale will take place, on such day and at such times as permitted under applicable law of the State where the Property is located, after advertising the time, place and terms of sale and that portion of the Property in accordance with such law, and after having served written or printed notice of the proposed sale by certified mail on each Trustor obligated to pay the B Note and other secured indebtedness secured by this Security Instrument according to the records of Lender in accordance with applicable law.  The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service.

(b)     At any such public sale, Trustee may execute and deliver in the name of Trustor to the purchaser a conveyance of the Property or any part of the Property in fee simple.  In the event of any sale under this Security Instrument by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold in its entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects,

Trustee may sell the Personal Property covered by this Security Instrument at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State in which the Property is located, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Property is sold or the B Note and other secured indebtedness is paid in full.  If the B Note and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Lender at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(c)    Upon any foreclosure sale or sales of all or any portion of the Property under the power herein granted, Lender may bid for and purchase the Property and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

(d)    In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith (including, without limitation, attorneys' fees and expenses), to fees and expenses of Trustee (including, without limitation, Trustee's attorneys' fees and expenses), to insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Lender), to payment of the outstanding principal balance of the Indebtedness, and to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Trustor, or to the person or entity lawfully entitled thereto.

(e)    In case Trustee shall have proceeded to enforce any right or remedy under this Security Instrument by foreclosure, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every case, Trustor, Lender and Trustee shall be restored to their former positions and the rights, powers and remedies of Lender and Trustee herein provided or arising, or existing otherwise as herein set forth shall continue as if no such proceeding had been taken.

6.4    <u>Acceptance by Trustee</u>.  Trustee accepts the Property when this Security Instrument, duly executed and acknowledged, becomes a public record as provided by law.  Trustee shall not be obligated to perform any act required hereunder unless the performance of such act is requested in writing and Trustee is reasonably indemnified against loss, cost, liability and expense.

6.5    <u>Acts of Trustee</u>.  From time to time, upon written request of Lender and without affecting the liability of any person for payment of any indebtedness or performance of the obligations secured hereby, Trustee may, without liability therefor and without notice reconvey all or any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; join in any declaration of covenants and restrictions; or join in any extension agreement or any agreement subordinating the lien or charge hereof.  Trustee may from time to time apply in any court of competent jurisdiction for aid and direction in the execution of the trust hereunder and the enforcement of the rights and remedies available hereunder, and Trustee may obtain orders or decrees directing or confirming or approving acts in the execution of said trust and the enforcement of said remedies.  Trustee has no obligation to notify any party of any pending sale or any action or proceeding unless held or commenced and maintained by Trustee under this Security Instrument.

6.6    <u>No Liability of Trustee</u>.  The Trustee shall not be liable for any error of judgment or act done by the Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except due to the Trustee's gross negligence, breach of agreement, fraud or willful misconduct. The Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by them hereunder, believed by the Trustee in good faith to be

5898640v3 | 101415-0002                          14                Oakhurst– B Note Security Instrument

**EXHIBIT 21 - Page 323**

genuine.  All moneys received by the Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law or under the B Note Guaranty), and the Trustee shall be under no liability for interest on any moneys received by the Trustee hereunder.

6.7     Trustee Powers.  Trustee may exercise any of its powers through appointment of attorney-in-fact or agents.  Trustee may select and employ legal counsel at the expense of Trustor.

6.8     Priority.  All amounts advanced by either of Lender or Trustee hereunder shall be secured by this Security Instrument with priority dating back to the date of the grant of this Security Instrument.

6.9     Ratification.  Trustor hereby ratifies and confirms every act that Trustee and its successors may lawfully do at the Property by virtue of powers granted to Trustee hereunder.

ARTICLE VII.
**Additional Provisions**

7.1     Conflicts.  This Article VII will control any conflict between the terms of this Article VII and the other provisions of this Security Instrument and the other B Note Guaranty.

7.2     Full Reconveyance.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the B Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

7.3     Dwellings.  No portion of the proceeds of the Loan shall be used by Trustor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer residential units are to be constructed.  No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.4     Civil Code.  Trustor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.5     Indemnity; Expenses.  Trustor will pay or reimburse the Trustee and the Lender for all reasonable attorneys' fees, costs and expenses incurred by either of them in any suit, action, legal proceeding or dispute of any kind in which either of them is made a party or appears as party plaintiff or defendant, affecting the Indebtedness, this Security Instrument or the interest created herein, or the Property, or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Trustor, and any such amounts paid or incurred by the Trustee or the Lender shall be added to the Indebtedness and shall be secured by this Security Instrument. The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the Indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer by trustee's conveyance of the Property.  Notwithstanding the forgoing, Trustor shall have no liability under this Section for any fees, costs or expenses arising solely from the gross negligence, fraud, or willful misconduct of Lender.

**EXHIBIT 21 - Page 324**

7.6     Supplemental Environmental Provisions.  In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law.  Lender shall have the right under Section 7.1 of this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7     Foreclosure By Power of Sale.

(i)  Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall deliver to Trustee a written declaration of default and demand for sale, and shall deposit with Trustee this Security Instrument and the B Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

(a)     Upon receipt of notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as Lender may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Trustor, Trustee or Lender, may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)     Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

7.8     Separate Sales.  The Property may be sold in one or more parcels and in such manner and order as Lender, in its sole discretion, may direct Trustee so to do.  A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

7.9     Release of and Resort to Collateral.  Lender may release, regardless of consideration and without the necessity for any notice to a consent by the holder of any subordinate lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the B Note Guaranty or their stature as a first and prior lien and security interest in and to the Property.  For payment of the Indebtedness, Lender may resort to any other security in such order and manner as Lender may elect.

7.10    <u>Waiver of Redemption, Notice and Marshalling of Assets</u>.  To the fullest extent permitted by law, Trustor hereby irrevocably and unconditionally waives and releases (i) all benefit that might accrue to Trustor by virtue of any present or future statute of limitations or law or judicial decision exempting the Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (ii) all notices of any Event of Default or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the B Note Guaranty, and (iii) any right to a marshalling of assets or a sale in inverse order of alienation.

7.11    <u>Discontinuance of Proceedings</u>.  If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the B Note Guaranty and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Trustor and Lender shall be restored to their former positions with respect to the Indebtedness, the B Note Guaranty, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default which may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the B Note Guaranty for such Event of Default.

7.12    <u>No Mortgagee in Possession</u>.  Neither the enforcement of any of the remedies under this Security Instrument nor any other remedies afforded to Lender under the B Note Guaranty, at law or in equity, shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

7.13    <u>Concerning the Trustee</u>.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the B Note Guaranty, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (iii) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence, bad faith, fraud or willful misconduct), and (iv) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.  Trustor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

7.14     Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

7.15     Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or if, for any reason, Lender, in Lender's sole discretion and with or without cause, shall prefer to appoint a substitute trustee or multiple substitute trustees, or successive substitute trustees or successive multiple substitute trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute trustee (or, if preferred, multiple substitute trustees) in succession who shall succeed (and if multiple substitute trustees are appointed, each of such multiple substitute trustees shall succeed) to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed on its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Trustor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his or her successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute trustees are appointed, each of such multiple substitute trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute trustees, whenever any action or undertaking of such substitute trustees is requested or required under or pursuant to this Security Instrument or applicable law.  Any prior election to act jointly or severally shall not prevent either or both of such multiple substitute Trustees from subsequently executing, jointly or severally, any or all of the provisions hereof.

7.16     Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Trustor by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Trustor.

7.17     Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its, his or her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in such Trustee's place.

7.18     No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the B Note Guaranty, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender

7.19     Payment By Trustor Of Taxes And Other Impositions.  The term "*Taxes*" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate

taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "**Other Impositions**" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary, in Lender's sole and absolute opinion and judgment, to protect, preserve, and defend Lender's interests hereunder.  Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least five (5) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

From and after an Event of Default, or otherwise upon written agreement between Trustor and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the B Note, until the B Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Security Instrument, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums.  In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender.  Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph 7.19, Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to utilize and apply said funds to satisfy, in whole or in part, any default by Trustor.  If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender.  Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph 7.19.  Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender, the latter may, without making any advance whatsoever, apply any sums held by it upon any obligation of Trustor secured hereby.  Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the above B Note and/or the B Note Guaranty, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect.  The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Security Instrument or any of the rights or powers of Lender or said Trustee under this Security Instrument or any other obligation secured hereby.

In the event of the passage, after the date of this Security Instrument, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the B Note Guaranty, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the B Note Guaranty, or this Security Instrument, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Security Instrument, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as renders the B Note Guaranty, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

7.20    <u>Trustor To Pay Ground Rents And Obligations That Could Result In Liens On The Property</u>. Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Security Instrument is recorded, and to which this Security Instrument may be subordinate.  Trustor shall pay at or prior to maturity all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Security Instrument, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

7.21    <u>Trustor To Maintain Insurance</u>.  (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks as shall from time to time be required by Lender in its sole opinion and judgment as necessary to protect the security interest of Lender in the Property.  The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's sole and absolute opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the B Note, whichever is greater, (ii) business interruption insurance for losses arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in any event, such coverage shall insure Lender for loss of gross rental income and other revenues from the Property in excess of twelve (12) months, and (iii) comprehensive public liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender.  (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Security Instrument, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Security Instrument, and this amount shall

bear interest at the applicable rate of interest set forth in the B Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any foreclosure sale under this Security Instrument , Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such foreclosure sale.

7.22    Insurance Proceeds, Condemnation Proceeds And Other Recoveries.  (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Security Instrument, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 7.22. (b) All causes of action, whether accrued before or after the date of this Security Instrument, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Security Instrument, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 7.22. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding.  Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request.  (c) Settlements, awards, proceeds and damages (collectively, "*Awards*") received by Lender under the provisions of section (a) and section (b) of this paragraph 5, at the option of Lender, may be applied by Lender to the outstanding balance due on the B Note, or any other obligation secured by this Security Instrument, in such order as Lender may determine.  The Award may be used by Lender, without reducing the principal balance of the B Note or any other obligation secured by this Security Instrument, to replace, restore or reconstruct the Property to a condition satisfactory to Lender. The Award may be released to Trustor, or any such amount may be divided in any manner among any such application, use or release.  No such application, use or release of the Award shall cure or waive any default or notice of default under this Security Instrument or invalidate any act done pursuant to such notice.

7.23    Maintenance And Preservation Of The Property.

(a)    Trustor shall:  (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any fixtures, Personal Property or other items comprising the Property which may become obsolete or worn out, with fixtures, Personal Property or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Security Instrument, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed promptly in a good and workmanlike manner; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, including, without limitation, all environmental, land use, zoning, and chemical use statutes, ordinances, and codes of the United States of America, the State of California, and any locality thereof, relating to the protection of the environment and/or governing the use, storage, treatment, generation, transportation, processing, handling, production, or disposal of  hazardous substances, hazardous wastes, or toxic substances, and the rules, regulations, policies, guidelines, interpretations, decisions, orders, and directives of federal, state, and local government agencies with respect thereto, (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or

private, of any kind or character, and (C) any requirements of insurance companies and any bureau or agency which establishes standards of insurability, affecting the Property and/or pertaining to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deems necessary or appropriate to preserve and perfect the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)     Trustor shall not undertake or permit any material alterations, additions, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, fixtures or Personal Property comprising the Property, without the prior written consent of Lender.  In seeking Lender's consent, Trustor will furnish to Lender, in form and substance satisfactory to Lender, in its opinion and judgment, a budget for any such work including a verifiable source of funds.  All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Security Instrument and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c)     Without limiting the generality of this paragraph 7.23, Trustor hereby warrants and represents to Lender and covenants with Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition.  Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property, except for those which are used, stored or maintained in full and complete compliance with all such laws ("***Permitted Toxic Materials***").  Trustor further warrants and represents to Lender and covenants with Lender that Trustor does

not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property.  Trustor further warrants and represents to Lender and covenants with Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto.  ("*Toxic substances*," "*hazardous materials*" and "*hazardous wastes*" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.)  Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property.  Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)    [Reserved].

(e)    Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph 7.23.  Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct.  Lender may rely thereon without any investigation or inquiry.  By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph 7.23, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Security Instrument, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.24    <u>Legal Actions And Payment Of Related Costs</u>.  Trustor shall appear in and defend any action or proceeding that may, in Lender's sole judgment, adversely affect the Lender's security interest under this Security Instrument or any of the rights or powers of Lender or Trustee under this Security Instrument.  Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention.  Trustor promises and agrees to give Lender notice in writing of the pendency of any such

action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding.  Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Security Instrument.  Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph 7.22 of this Security Instrument.  If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so.  Whenever, under this Security Instrument, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand.  In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor.  All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the B Note.  As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

7.25    <u>Lender's Rights To Inspect The Property</u>.  Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Security Instrument, including, but not limited to, Trustor's compliance with the terms of paragraph 7.23.

ARTICLE VIII.
**<u>California Waiver Provisions.</u>**

8.1    Trustor hereby waives marshaling of assets and liabilities, rights of offset, sale in inverse order of alienation, notice of acceptance of this Security Instrument and of any liability to which it applies or may apply, acceleration, presentment, demand for payment, protest, notice of non-payment, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and demands, collection suit or the taking of any other action by Lender.

8.2    Trustor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Trustor under the following sections of the California Civil Code: Section 2809 (the obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal), Section 2810 (a surety is not liable if, for any reason other than the mere personal disability of the principal, there is no liability upon the part of the principal at the time of execution of the contract, or the liability of the principal thereafter ceases), Section 2819 (a surety is exonerated if the creditor alters the original obligation of the principal without the consent of the surety), Section 2822 (a surety's right to have the principal designate the portion of any obligation to be satisfied by the surety in the event that the principal provides partial satisfaction of such obligation), Section 2845 (a surety is exonerated to the extent that the creditor fails to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue and which would lighten the surety's burden), Section 2846 (a surety may compel the principal to perform the obligation when due), Section 2847 (if a surety satisfies the principal obligation, or any part thereof, the principal is obligated to reimburse the surety for the amounts paid by the surety), Section 2850 (whenever the property of a surety is hypothecated with property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation), Section 2899 (where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in a certain

order, on the demand of any party interested) and Section 3433 (where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons).

8.3     Trustor expressly agrees not to exercise or take advantage of any rights, benefits and/or defenses which might be available to Trustor under the following California Civil Code Sections, unless and until the Guaranteed Obligations shall have been indefeasibly paid and satisfied in full:  Section 2839 (performance of the principal obligation, or an offer of such performance, duly made as provided in the Civil Code, exonerates a surety), Section 2848 (a surety, upon satisfaction of the obligation of the principal, is entitled to enforce remedies which the creditor then has against the principal and to pursue his co-sureties or other third parties after the surety has satisfied the underlying debt, or at least more than his share of it), and Section 2849 (a surety is entitled to the benefit of security held by the creditor for the performance of the principal obligation held by the creditor).

8.4     Trustor waives any defense that Trustor may have by reason of the failure of Lender to provide Trustor with any material facts about Borrower, including any information respecting the financial condition of Borrower, Borrower's ability to perform the Loan obligations or the sufficiency of Lender's security.

8.5     Trustor waives any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other Person, or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons.

8.6     Trustor waives all rights of indemnification and contribution and any other rights and defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.  Trustor hereby waives the benefits of any right of discharge under any and all statutes or other laws relating to Trustors or sureties and any other rights of Trustors or sureties thereunder.

8.7     Trustor waives all rights and defenses that Trustor may have because the debtor's (Borrower's) debt is secured by real property.  This means, among other things:

(a)     The creditor (Lender) may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

(b)     If the creditor forecloses on any real property collateral pledged by the debtor: (A) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) the creditor may collect from Trustor even if the creditor, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

8.8     This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d or 726 of the Code of Civil Procedure.  Trustor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal (Borrower) by the operation of Section 580d of the Code of Civil Procedure or otherwise.  Any summary of statutory provisions is for convenience only, and Trustor has read and is familiar with the entirety of such provisions.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

Trustor has executed this Security Instrument on the date of the below acknowledgement, but to be effective on the Closing Date.


**TRUSTOR:**


_____

**ALAN GOMPERTS**, **Trustee of**
**The Gomperts and Halevy Family Trust**


_____

**SHARON HALEVY**, **Trustee of**
**The Gomperts and Halevy Family Trust**

**EXHIBIT 21 - Page 335**

ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____

On _____ __, 20__, before me, _____ (a notary public), personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

5898640v3 | 101415-0002

SIGNATURE/NOTARY PAGE
TO
SECURITY INSTRUMENT

**EXHIBIT 21 - Page 336**

## EXHIBIT A

LEGAL DESCRIPTION OF LAND

For APN/Parcel ID(s): 4331-022-021

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 931 OF TRACT NO. 6380, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 69, PAGES 11 TO 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

5898640v3 | 101415-0002

EXHIBIT A
TO
SECURITY INSTRUMENT

**EXHIBIT 21 - Page 337**

# EXHIBIT 22

EXHIBIT 22 - Page 338

## CANON SIDE LETTER

This Side Letter ("**Side Letter**") is dated as of May ___, 2026, between Archway Broadway Loan SPE, LLC, a Delaware limited liability company, successor in interest to Archway Real Estate Income Fund I REIT, LLC fka Archway Real Estate Income Fund I SPE I, LLC ("**Archway**") and 341 South Cannon LLC, a California limited liability company ("**Cannon LLC,**" together with Archway, the "**Parties**"), with respect to the following facts, matters, and issues.

## RECITALS

A.      Daniel Halevy ("**Daniel**") is the manager of Cannon LLC.

B.      Daniel is currently a debtor in pending jointly administered bankruptcy cases (the "**Cases,**" and each a "**Case**") pending in the Central District of Los Angeles Bankruptcy Court (the "**Bankruptcy Court**") along with Broadway Avenue Investments LLC, a California limited liability company ("**Broadway**"), Negev Investments, LLC, a California limited liability company ("**Negev**"), SLA Investments, LLC, a California limited liability company ("**SLA**"), Alan Gomperts ("**Alan**"), and Susan Halevy ("**Sue**," collectively with Daniel, Alan, Broadway, Negev, and SLA, the "**Debtors**"). The Debtors' Cases are jointly administered under Case No. 2:24-bk-12079-VZ.

C.      Cannon LLC claims to own the real property located at 341 South Canon Drive, Beverly Hills, CA 90212 ("**Canon Property**").

D.      The membership interests of Cannon LLC are listed as assets in Sue's Case, but Cannon LLC itself is not a debtor in any of the Cases.

E.      Archway contests the characterization of the Cannon LLC membership interests as an asset in Sue's Case and contends the Canon Property should appropriately be administered in the probate estate ("**Probate Estate**") of David Halevy where Archway asserts a claim as a creditor of the Probate Estate (the "**Canon Dispute**").

F.      The Canon Dispute is the subject of pending litigation among Archway and Sue, in her capacity as trustee of the Halevy Family Trust dated September 6, 2010, before the Los Angeles Superior Court, Case No. 25SMCV00113 (the "**Canon Litigation**"). Archway has filed a *lis pendens* (the "***Lis Pendens***") on account of the property interest asserted in the Canon Litigation.

G.      The Parties and the Debtors have agreed to the terms of a global settlement (the "**Settlement Agreement**") to resolve the disputes between Archway on the one hand and the Debtors and Cannon LLC on the other hand, inclusive of the Canon Dispute, subject to documentation approved by the Bankruptcy Court.

H.      The Debtors intend to present the Settlement Agreement to the Bankruptcy Court for approval and propose a joint plan of reorganization that incorporates the terms of the Settlement Agreement (the "**Consensual Plan**") with the support of Archway.

1

**EXHIBIT 22 - Page 339**

I.      The Debtors have represented to Archway the following:

1.      The City of Beverly Hills has issued certain building permits on the Canon Property ("**Building Permits**") which are set to expire on May 20, 2026, unless certain minimum work is completed at the Canon Property pursuant to the Building Permits (the "**Progression Requirement**").

2.      The Building Permits are issued to Almighty Builders, Inc. ("**Almighty Builders**") as general contractor.

3.      The pouring of concrete for the foundation of a residence ("**Concrete Pour**") will satisfy the Progression Requirement that will extend the validity of the Building Permits.

4.      The cost of the materials and labor to meet the Progression Requirement (the "**Materials and Labor**") plus a standard market fee to Almighty Builders as general contractor of no more than 10% of the Materials and Labor is estimated to be between $50,000 - $60,000 (the "**Building Allowance**").

5.      Cannon LLC has the opportunity to sell the Canon Property before the Bankruptcy Court can approve the Settlement Agreement or the Consensual Plan.

6.      The Qualified Sale, as defined below, is contingent upon satisfaction of the Progression Requirement and the extension of the Building Permits.

J.      Based on the foregoing representations of Debtors, and Archway's desire to cooperate to facilitate the immediate sale of the Canon Property on terms consistent with the treatment of the proceeds from the sale of the Canon Property as set forth in the Settlement Agreement, as modified herein, the Parties are entering into this Side Letter.

**AGREEMENT**

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto do hereby promise, state, represent, warrant, and agree as follows:

1.      Recitals. The recitals above are incorporated herein by this reference.  All capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

2.      Release of *Lis Pendens*. Archway agrees to release the *Lis Pendens* to allow a Qualified Sale to occur and for the Canon Property to transfer to a Qualified Buyer free and clear of the *Lis Pendens* and any interest Archway may claim in the Canon Property, if the conditions set forth in paragraph 3 herein are satisfied prior to or contemporaneously with the closing of the Qualified Sale.

3.      Conditions for Release of *Lis Pendens*. Archway shall release the *Lis Pendens*, as set forth in paragraph 2 herein, upon the occurrence or satisfaction of the following conditions:

2

**EXHIBIT 22 - Page 340**

A.   Sale Price. The gross sale price for the Canon Property (the "**Sale Price**") is not less than $3,200,000.00.

B.   Closing Date. The sale of the Canon Property must occur no later than July 31, 2026. A buyer who closes on a sale of the Canon Property that satisfies the minimum sale price and closing date set forth herein is a "**Qualified Buyer**" and such sale is a "**Qualified Sale**."

C.   Proceeds. Subject to Section 3.D below, proceeds from a Qualified Sale (the "**Proceeds**") shall be distributed from escrow in the following priority:

(1)   Payments to encumbrance holders of record on March 18, 2024 (the "**Petition Date**") that are senior in priority to the *Lis Pendens* ("**Senior Canon Lender**"), in the actual amounts owed ("**Senior Canon Lender Payoff**"), which in no event shall exceed in the aggregate $1,320,000.00;

(2)   *Ad valorem* real property taxes estimated at $57,000;

(3)   Closing costs in an amount of not more than seven percent (7%) of the Sale Price on account of brokers' commissions plus customary escrow, title, and transfer taxes, other customary closing costs, and fees;

(4)   Payment directly to Shellpoint, the holder of the outstanding senior monetary encumbrance on the real property located at 8561 Horner Street, Los Angeles, CA 90035, to pay the actual arrearage owed to Shellpoint which as of May 1, 2026 was $235,110.37, plus regularly accruing monthly payments of $10,174.07 thereafter through the sale of the Canon Property;

(5)   Payment directly to Wells Fargo Bank, the holder of the outstanding senior monetary encumbrance on the real property located at 257 South Linden Drive, Beverly Hills, California 90212, to pay an actual arrearage in an amount not to exceed $212,625.95 as of May 15, 2026, plus regularly accruing monthly payments of $12,340.91 thereafter through the sale of the Canon Property;

(6)   Up to $50,000.00 to reimburse the party who funds the Building Allowance (anticipated to be Alan), but with evidence provided to Archway that the Building Allowance was used for the Concrete Pour;

(7)   To Sue an amount up to but not to exceed $250,000.00 (the "**Sue Allowance**");

3

**EXHIBIT 22 - Page 341**

(8)    All remaining Proceeds to be distributed to Archway on account of the Settlement Amount (the "**Archway Distribution**"), subject to Section 3.D, below.

D.    <u>Minimum Archway Distribution</u>. In no event shall the Archway Distribution be less than $1,000,000 (the "**Minimum Archway Distribution**"). Should the Proceeds be insufficient for Archway to receive the Minimum Archway Distribution, the Sue Allowance shall be reduced in an amount sufficient for Archway to receive the Minimum Archway Distribution or the Debtors shall otherwise make adjustments to the distributions in Section 3.C(3) through (7) in amounts sufficient for Archway to receive the Minimum Archway Distribution.

E.    <u>Execution of the Settlement Agreement</u>.  The Parties and the Debtors shall have executed the Settlement Agreement.

4.    <u>Application of Archway Distribution</u>. The Archway Distribution shall be applied to the Settlement Amount, and specifically the Floor Amount, per the terms of the Settlement Agreement. If for any reason the Settlement Agreement is not approved by the Bankruptcy Court, the Archway Distribution shall be applied to Archway's debt as of the Petition Date.

5.    <u>Bankruptcy Court Approval</u>. This Side Letter and its terms are not subject to Bankruptcy Court approval, however, the Debtors acknowledge that this Side Letter and it terms shall be incorporated into the Consensual Plan.

6.    <u>Miscellaneous</u>.

A.    The headings set forth herein are inserted for convenience of the Parties only and shall not be used to interpret or construe or in any way affect the meaning of the terms and provisions of this Side Letter.

B.    Except as expressly provided in this Side Letter, this Side Letter is the final written expression and complete and exclusive statement of all the agreements, conditions, promises and covenants among the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions among the Parties and/or their respective counsel with respect to the subject matter conveyed hereby. Any amendment or modification of this Side Letter, in order to be legally binding, must be in writing specifically referring to the Side Letter and signed by duly authorized representatives of all Parties hereto.

C.    This Side Letter and the rights and obligations of the Parties hereto shall be governed by and construed in accordance with the laws of the State of California. The Parties, and each of them, hereby submit to the jurisdiction of the courts of Los Angeles County, California, whether state or federal.

4

**EXHIBIT 22 - Page 342**

D.   This Side Letter may be executed and delivered in two or more counterparts, each of which when so executed and delivered, shall be either an original, or a copy of the original signature transmitted via email, and such counterparts together shall constitute but one and the same instrument and agreement, and the Side Letter shall not be binding on any Party until all Parties have executed it. Copies of the original signatures on this Side Letter which are transmitted via email shall have the same force and legal effect as original signatures, and an email signature shall be accepted by all Parties as an original signature.

[Signature page follows]

5

**EXHIBIT 22 - Page 343**

IN WITNESS WHEREOF, the Parties have executed this Side Letter on the date and year first written above.

341 SOUTH CANNON DRIVE LLC
A California limited liability company

By:_____
Name: Daniel Halevy
Its: Manager

ARCHWAY BROADWAY LOAN SPE, LLC
A Delaware limited liability company

By: _____
Name: Bobby Khorshidi
Title:  Authorized Signer

**ACKNOWLEDGED:**

BROADWAY AVENUE INVESTMENTS LLC, A California limited liability company

By:_____
Name: Alan Gomperts
Its: Manager

NEGEV INVESTMENTS LLC
A California limited liability company

By:_____
Name: Alan Gomperts
Its: Manager

SLA INVESTMENTS LLC
A California limited liability company

By:_____
Name: Alan Gomperts
Its: Manager

_____
ALAN GOMPERTS, individually

_____
SUSAN HALEVY, individually

_____
DANIEL HALEVY, individually

6

**EXHIBIT 22 - Page 344**

**EXHIBIT 22 - Page 345**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
   11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **Declaration of Derrick Talerico in Support of Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC – Ancillary Documents** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) June 23, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See attached NEF Service List

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 23, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent Zurzolo                    (via Messenger)
United States Bankruptcy Court
255 E Temple St Suite 1360
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2026 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Broadway Avenue Investments, LLC – Jointly Administered

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Corporate Debtors Broadway Avenue Investments, LLC, Negev Investments, LLC, SLA Investments, LCC.</u>: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- <u>Attorneys for Individual Debtors Alan Gomperts, Daniel Halevy, Susan Halevy</u>: **Zev Shechtman, Carol Chow, Turner Falk, Ryan Coy**: zev.shechtman@saul.com; zshechtman@ecf.inforuptcy.com; carol.chow@saul.com; easter.santamaria@saul.com; turner.falk@saul.com; ryan.coy@saul.com
- <u>Attorneys for Creditor First Foundation Bank</u>: **Scott R Albrecht**: scott.albrecht@sgsattorneys.com; jackie.nguyen@sgsattorneys.com
- <u>Attorneys for Creditor Korth Direct Mortgage, Inc.</u>: **Tanya Behnam, Garrick Vanderfin**: gvanderfin@polsinelli.com, tbehnam@polsinelli.com; tanyabehnam@gmail.com; ladocketing@polsinelli.com; zyoung@polsinelli.com; ccripe@polsinelli.com;
- <u>Attorneys for Creditor Los Angeles County Treasurer and Tax Collector</u>: **Jacquelyn H Choi**: jacquelyn.choi@rimonlaw.com; docketingsupport@rimonlaw.com
- <u>Attorneys for Creditor United States of America on behalf of the Internal Revenue Service</u>: **Robert F Conte**: robert.conte@usdoj.gov; caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- <u>Courtesy NEF/Interested Party</u>: **Christopher Cramer**: secured@becket-lee.com
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Christopher Crowell, Jessica M Simon**: ccrowell@frandzel.com; mbrandenberg@frandzel.com
- <u>Attorneys for Creditors Archway Real Estate Income Fund I SPE I, LLC, Archway Broadway Loan SPE, LLC, fka Archway Real Estate Income Fund I REIT, LLC, Archway Real Estate Income Fund, and Plaintiff Archway Broadway Loan SPE, LLC</u>: **Michael G. Fletcher, Bruce D. Poltrock, Paige Selina Poupart, Gerrick Warrington**: mfletcher@frandzel.com; ppoupart@franddzel.com; gwarrington@frandzel.com; bpoltrock@frandzel.com; sking@frandzel.com; achase@frandzel.com; autodocket@frandzel.com
- <u>Attorneys for Creditors NewRez LLC d/b/a Shellpoint Mortgage Servicing, Wells Fargo National Bank West</u>: **Todd S Garan**: ch11ecf@aldridgepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- <u>Attorneys for Creditor Los Angeles County Treasurer and Tax Collector</u>: **Richard Girgado**: rgirgado@counsel.lacounty.gov
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Jacqueline L James**: jjames@buchalter.com; gvidales@buchalter.com; docket@buchalter.com
- <u>Courtesy NEF/Interested Party Avi Muhtar</u>: **Avi Edward Muhtar**: amuhtar@crownandstonelaw.com
- <u>Attorneys for Creditor AIRE Ancient Baths Los Angeles, LLC</u>: **David B Shemano**: dshemano@shemanolaw.com
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Jessica M. Simon**: jsimon@hrhlaw.com; mgranzow@hrhlaw.com
- <u>Attorneys for Creditor Wells Fargo Bank, N.A. dba Wells Fargo Auto</u>: **Samantha White**: Samantha.white@wellsfargo.com
- <u>Attorneys for Creditor Wells Fargo Bank, N.A.</u>: **Jennifer C Wong**: bknotice@mccartyholthus.com; jwong@ecf.courtdrive.com
- <u>US Trustee's Office</u>: ustpregion16.la.ecf@usdoj.gov; **Kelly L. Morrison**: Kelly.l.morrison@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                        **F 9013-3.1.PROOF.SERVICE**