AVI E. MUHTAR (SBN 260728)
**CROWN & STONE LAW, P.C.**
407 N. Maple Drive, Ground Floor
Beverly Hills, California 90210
Telephone: (844) 240-0444
amuhtar@crownandstonelaw.com

Attorneys for HASKELL MUHTAR and
NURIT MUHTAR

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:24-bk-12079-VZ |
| SEATON INVESTMENTS, LLC, *et al.*, | Jointly Administered with Case Nos.: 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ and 2:24-bk-12076-VZ |
|       Debtors and Debtors-in-Possession. | |
| | Chapter 11 |
| ☐ Affects All Debtors<br>☐ Affects Seaton Investments, LLC (*Dismissed*)<br>☐ Affects Colyton Investments, LLC (*Dismissed*)<br>☐ Affects Broadway Avenue Investments, LLC<br>☐ Affects SLA Investments, LLC<br>☐ Affects Negev Investments, LLC<br>☐ Affects Alan Gomperts<br>☐ Affects Daniel Halevy<br>☐ Affects Susan Halevy | **HASKELL AND NURIT MUHTAR'S SUPPLEMENTAL OPPOSITION TO DEBTORS' 9019 MOTION TO APPROVE SETTLEMENT AGREEMENT WITH ARCHWAY BROADWAY LOAN SPE, LLC; DECLARATION OF AVI E. MUHTAR IN SUPPORT THEREOF**<br><br>Hearing:<br>Date:      July 21, 2026<br>Time:     11:00 a.m.<br>Courtroom.:  1368 |

1

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

**TO HON. VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, UNITED STATES TRUSTEE, THE DEBTORS, ALL CREDITORS AND INTERESTED PARTIES:**

Haskell Muhtar and Nurit Muhtar, individually and in their capacities as Trustees of the Haskell And Nurit Muhtar Revocable Trust (collectively, the "Muhtars"), hereby file this supplemental opposition to the *Motion to Approve Settlement Agreement With Archway Broadway Loan SPE, LLC Under Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Docket No. 666] (the "Motion") filed by Broadway Avenue Investments, LLC ("Broadway"), SLA Investments, LLC ("SLA"), Negev Investments, LLC ("Negev," together with Broadway and SLA, the "Corporate Debtors"), Susan Halevy ("Susan" or "Susan Halevy"), Daniel Halevy ("Daniel" or "Daniel Halevy"), and Alan Gomperts ("Alan" or "Alan Gomperts," together with Susan and Daniel, the "Individual Debtors," and the Individual Debtors, collectively with the Corporate Debtors, the "Debtors"), the debtors and debtors-in-possession in the pending jointly administered chapter 11 bankruptcy cases herein (the "Cases").

This supplemental opposition (the "Supplemental Opposition") supplements, and does not withdraw, the Muhtars' Limited Opposition to the Motion filed June 9, 2026 [Docket No. 678] (the "Initial Opposition"). It addresses the Motion as the underlying compromise now stands following the *First Amendment to Settlement Agreement* filed June 22, 2026 [Docket No. 693] (the "First Amendment," and the settlement agreement dated June 1, 2026, as modified by the First Amendment, the "Settlement"), and following the Debtors' filing of more than twenty implementing documents (the "Ancillary Documents") [Docket Nos. 694 and 705].

The Muhtars' objection arises from, and remains centered on, the provisions of the Settlement that reach the real property commonly known as 140 South Roxbury Drive, Beverly Hills, California 90212 (the "Roxbury Property"), which is the Muhtars' sole source of income: the provisions that require, contemplate, or commit the estate to pursue any encumbrance of, pledge of any interest in, or forced sale of the Roxbury Property, and that condition the Settlement's effectiveness on, or otherwise require, the Muhtars' execution of documents (collectively, the "Roxbury Provisions"). The Muhtars do not seek to dictate the terms on which the Debtors and Archway resolve their own dispute. The question before the Court, however, is whether this Motion, as presented, may be

1

approved under Rule 9019. It may not, for two independent reasons: the Roxbury Provisions are not fair and equitable to the Muhtars, and the Motion seeks to accomplish through a compromise a restructuring that is a *sub rosa* plan. Because the Court has indicated that it cannot sever the Roxbury Provisions, either defect requires that the Motion be denied.

Among other defects: because Chase will not consent to any further encumbrance, the only relief the Settlement can actually produce is a sale of the Muhtars' property; the encumbrances the Settlement requires would throw the Muhtars into an immediate, incurable default on their senior loan; the Settlement gives Archway a veto over any sale of the Roxbury Property and sweeps to Archway proceeds attributable to the Muhtars' own fifty percent interest[1]; it delegates to Archway the debtor-in-possession's fiduciary power under 11 U.S.C. § 363(h) and commits the estate to prosecute, at administrative expense, a forced-sale adversary against the non-debtor Muhtars that the Debtors do not independently seek; § 363(h) may be unavailable as a matter of law, both because the estate may hold no qualifying interest in the Roxbury Property and because the property has long been held and operated as a partnership; the detriment to the Muhtars far outweighs any benefit to the estate, and there is no benefit to the estate at all where every dollar of a sale would flow to a single secured creditor; and the operative Roxbury documents remain internally inconsistent and not ready for approval. Each is addressed below.

## I. BACKGROUND & RELEVANT FACTS

The Roxbury Property is a 16-unit apartment building. The Muhtars and the Halevy family have owned and operated the Roxbury Property together since it was acquired in 1989, more than three decades ago, sharing in its operation and in its income; the Muhtars have operated the building throughout. The Roxbury Property is the Muhtars' sole source of income. The Muhtars, now in their eighties, own and have at all times owned an undivided 50% interest. David and Susan Halevy held the other undivided 50% interest until September 2016, when they transferred it to the Halevy Family Trust (the "Halevy Trust"). Susan Halevy, as Trustee of the Halevy Trust, continues to hold that 50%

---

[1] The Muhtars anticipate that the Debtors may characterize this as a drafting error. Whether or not it was intended, it confirms that the Settlement is not ripe for approval; and, as addressed below, the Settlement separately fails to account for payment of all amounts that may become due to the senior lender on a sale of the Roxbury Property.

2



MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

interest. David Halevy passed away before the commencement of the Cases. The Muhtars are not debtors in the Cases and are not parties to the Settlement.

The Roxbury Property is encumbered by a senior deed of trust in favor of JPMorgan Chase Bank, N.A. ("Chase"), securing a loan in the original principal amount of $2,100,000, dated December 17, 2020 and recorded on January 4, 2021 as Instrument No. 20210006946 in the Official Records of Los Angeles County (the "Senior Deed of Trust"). A true and correct copy of the Senior Deed of Trust was attached as Exhibit '1' to the Declaration of Avi E. Muhtar filed in support of the Initial Opposition, and is incorporated herein by reference. Concurrently herewith, the Muhtars file a further Declaration of Avi E. Muhtar (the "Muhtar Declaration"). The Senior Deed of Trust was executed by Haskell and Nurit Muhtar, and David and Susan Halevy, as Trustees of the Halevy Trust, as borrowers, and encumbers the entirety of the Roxbury Property. The Muhtars are personally obligated on the loan it secures.

The Senior Deed of Trust expressly prohibits any further encumbrance of the Roxbury Property. Section 4.13.1 provides, in pertinent part, that "Borrower shall not [. . .] further encumber the Property or any interest therein [. . .] without first repaying in full the Note and all other sums secured hereby." The Senior Deed of Trust affords no notice or opportunity to cure a breach of Section 4.13; by its terms, such a breach is an immediate Event of Default that entitles Chase to accelerate the entire indebtedness and to exercise its power of sale against the whole of the Roxbury Property. (Senior Deed of Trust §§ 5.1.3, 5.3.)

As originally noticed, the Settlement provided for a consensual junior encumbrance of the Halevy Trust's interest, dependent on the consent of the Muhtars and of Chase. The Muhtars advised the Debtors that they would not consent. Chase, for its part, has stated that it will not consent to any further encumbrance of the Roxbury Property, and that its position is independent of whether the Muhtars or the Debtors consent. The First Amendment then recast the Roxbury treatment. As the Muhtars understand the Settlement as amended, the Halevy Trust and Susan Halevy must use best efforts to obtain the consent of Chase and the Muhtars to a new deed of trust and pledge, and, separately, the obligors commit that by a "Drop Dead Date" of March 1, 2027 one of several outcomes will occur: the consensual encumbrance will be recorded; a sale of the Roxbury Property

3

will close on terms signed by all persons claiming title; a forced sale will be accomplished through an adversary proceeding under 11 U.S.C. § 363(h) against the co-owners, including the Muhtars; or the Halevy Trust's interest will be liquidated in a transaction Archway approves. In each case, the net proceeds of the disposition are directed to Archway.

The Settlement also grants Archway new liens across numerous properties not previously encumbered in its favor, and it establishes a tiered order in which Archway may look to that collateral. The Roxbury Property is placed in the third and last tier, behind two tiers of other collateral. The new deed of trust the Settlement contemplates recording against the Roxbury Property (the "New Roxbury Deed of Trust"), as most recently filed among the Ancillary Documents, recites that it secures a guaranty of a note in the amount of $10,300,000. Although drawn to encumber only the Halevy Trust's undivided 50% interest, it would be recorded against the Roxbury Property in the Official Records, placing a recorded $10,300,000 encumbrance in the chain of title of a building in which the non-debtor Muhtars own the other undivided 50%.

The relocation of the Roxbury deliverables did not eliminate them. Even as amended, the Settlement still requires the Roxbury pledge and a UCC-1 lien against the estate's interest in the Roxbury Property: Section 15.F requires delivery of the Roxbury Pledge and UCC-1 no later than the close of any transaction that results in proceeds flowing to Susan or any other obligor, "irrespective of any other conditions in or provisions of" the Settlement, unless every person or entity claiming any interest in the Roxbury Property, including the non-party Muhtars, consents in writing to the assignment to Archway of all net proceeds. And both the Debtors and Chase have treated that pledge as a default trigger under the senior loan documents: the Debtors' counsel sought Chase's consent to the lien and the pledge specifically "in order to avoid the automatic default provisions of the Chase Deed of Trust" (Muhtar Decl. ¶ 6, Ex. '1'), and Chase's in-house counsel has stated Chase's position that the pledge without Chase's consent "would be a default under the loan documents" and that Chase does not consent. (Muhtar Decl. ¶ 9, Ex. '4'.)

The pledge requirement survived the First Amendment over the Debtors' own objection. On June 21, 2026, during the negotiation of the First Amendment, Debtors' counsel wrote to Archway's counsel that "the pledge and UCC will trigger a default on the Chase Deed of Trust" and asked that

4

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

the mechanism be replaced with one attaching to the proceeds of any monetization of the Halevy Trust's interest rather than to the property or its ownership. Archway's counsel refused, dismissing the default concern as resting on a flawed premise, and insisted that the requirement remain. Forwarding the exchange, Debtors' counsel advised the Muhtars' counsel that Archway's counsel was incorrect on that premise. The requirement remains in the Settlement as amended. (Muhtar Decl. ¶ 10, Ex. '5'.)

Finally, the Settlement is internally inconsistent as to the Roxbury deliverables. The First Amendment removes the New Roxbury Deed of Trust, the Roxbury estoppel certificate, the certification of trust for the Muhtars' revocable trust, and the Roxbury pledge and UCC-1 from the conditions precedent to effectiveness and relocates them to a set of conditions subsequent. Yet the Settlement continues, elsewhere, to list recordation of the Roxbury deed of trust as a condition precedent to the Effective Date. The instrument therefore treats recordation of the Roxbury encumbrance as both a condition precedent and a deferred, post-effectiveness obligation.

## II.  THE MOTION CANNOT BE APPROVED

"[T]he party proposing the compromise [pursuant to Federal Rule of Bankruptcy Procedure 9019] has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). In assessing that standard, the court weighs the probability of success in the litigation being compromised, the difficulties of collection, the complexity and expense of the litigation, and the paramount interest of the creditors. *Id.* A compromise may not be approved where it is not fair and equitable, and it may not be used to accomplish, outside the plan process, relief that only a chapter 11 plan may confer.

A court may not evaluate a compromise in a vacuum. Where a settlement reaches the rights of persons who are not parties to it, the court must consider their interests as well:

> [T]he Second Circuit has explicitly instructed "that when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties." *See also In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) ("Where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval . . . . [I]f third parties complain to a judge that a

CROWN & STONE
LAW, P.C.

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside.").

*In re Miami Metals I, Inc.*, 603 B.R. 531, 535 (Bankr. S.D.N.Y. 2019) (citations omitted) (alteration in original); *accord Matter of AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984) ("[L]ooking only to the fairness of the settlement as between the debtor and the settling claimant contravenes a basic notion of fairness."). The Muhtars are precisely such non-settling third parties, and their rights are squarely implicated. The Motion cannot be approved for two independent reasons: the Roxbury Provisions are not fair and equitable to the Muhtars, and the Motion seeks to accomplish through a compromise a *sub rosa* plan that Rule 9019 does not permit. Because the Court cannot sever the Roxbury Provisions, either defect requires that the Motion be denied.

Nor can the Motion be defended on standing or ripeness grounds. The Muhtars' rights are directly implicated: the Settlement conditions relief on documents drawn for their signatures, commits the estate to sue them, and sweeps proceeds of their own property. And because the Court cannot sever the Roxbury Provisions, a party with standing to oppose the Roxbury Provisions necessarily has standing to oppose approval of the Motion as presented. The objection is ripe now. Upon approval, the Settlement binds the Debtors' estates and all parties in interest (Settlement § 21) and commits the estate, immediately, to the forced-sale program and the proceeds sweep (Settlement § 10.C); binding the estate is itself the harm. And consummation would itself expose the estates to new liability: the Muhtars have advised the Debtors, in writing and without contradiction, that proceeding with the contemplated pledge would give rise to a post-petition claim for damages against the Debtors and their estates, carrying administrative expense exposure under 11 U.S.C. § 503(b). (Muhtar Decl. ¶ 8, Ex. '3'.) The Muhtars need not wait for a later adversary proceeding to be heard on a compromise that binds the estate to pursue them today.

**A.  The Settlement Is Not Fair and Equitable to the Non-Debtor Muhtars.**

**1.  Chase Will Not Consent, so the Only Relief the Settlement Can Actually Produce Is a Sale of the Muhtars' Property.**

The Settlement is drawn to appear to offer a range of outcomes for the Roxbury Property, beginning with a consensual encumbrance. That appearance is illusory. Chase, the senior lender, has stated that it will not consent to any further encumbrance of the Roxbury Property, and that its

6


CROWN & STONE
LAW, P.C.

position does not depend on what the Muhtars or the Debtors may consent to. (Muhtar Decl. ¶¶ 7, 9, Exs. '2', '4'.) The consensual-encumbrance path is therefore a dead end. Stripped of that illusory option, the Settlement offers only one real outcome: a sale of the Roxbury Property, either through a "consensual" sale that Archway must approve or through a forced sale under 11 U.S.C. § 363(h). To characterize the Settlement as offering the Muhtars a genuine range of choices is disingenuous at best. And the stakes of that single real outcome could not be higher for the Muhtars: the Roxbury Property is their sole source of income, a stabilized income property that, once sold, cannot be replaced in this market, carrying long-term, below-market financing that could not be replicated at today's rates.

**2.    The Encumbrances the Settlement Requires Would Place the Muhtars in an Immediate, Incurable Default on Their Senior Loan.**

The most concrete detriment is immediate, and it begins with a requirement, not a contingency. Even as amended, the Settlement still requires a UCC-1 lien against the estate's interest in the Roxbury Property, due no later than the close of any transaction that yields proceeds to Susan or any other obligor, irrespective of the Settlement's other conditions. (Settlement § 15.F.) The Muhtars take no position here on whether that pledge, standing alone, constitutes a default under the Senior Deed of Trust. What matters is that the Debtors themselves have treated it as one, and that Chase agrees. On June 8, 2026, Debtors' counsel wrote to Chase asking it to consent to both a junior lien in favor of Archway and a pledge of the Halevy Trust's fifty percent interest "in order to avoid the automatic default provisions of the Chase Deed of Trust." (Muhtar Decl. ¶ 6, Ex. '1'.) Chase responded the next day that it "is not willing to consent to the lien or pledge." (Muhtar Decl. ¶ 7, Ex. '2'.) Chase's in-house counsel has since restated the position in categorical terms: the pledge of the Halevy Trust's interest without Chase's consent "would be a default under the loan documents," and Chase "does not consent." (Muhtar Decl. ¶ 9, Ex. '4'.) There is no clearer admission that the encumbrances the Settlement requires trigger a default absent a consent that has been refused.

The Debtors did not merely seek Chase's consent; they tried to remove the requirement altogether, telling Archway's counsel that the pledge and UCC would trigger a default on the Chase Deed of Trust and asking that the mechanism be replaced with one attaching only to proceeds.

7



MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

Archway refused, and the requirement remains. (Muhtar Decl. ¶ 10, Ex. '5'.) The estate's own fiduciaries thus believe the requirement triggers a senior-loan default; the creditor that insisted on keeping it will not bear the consequences of that default; and the non-debtor Muhtars will.

The Settlement's only escape from the pledge is itself coercive. Under Section 15.F, the pledge may be avoided only if every person or entity claiming an interest in the Roxbury Property, including the non-party Muhtars, consents in writing to the assignment to Archway of all net proceeds of any disposition of the property. The Muhtars are thus put to a choice between an encumbrance that the Debtors and Chase alike treat as a senior-loan default and a written surrender of their own sale proceeds to a creditor to whom they owe nothing. That is coercion dressed as an option.

The New Roxbury Deed of Trust compounds the exposure. Recording it would, by itself, breach Section 4.13.1 of the Senior Deed of Trust and, the instant it is recorded, place the Muhtars in an immediate and incurable Event of Default on a loan on which they are personally obligated, entitling Chase to accelerate the entire indebtedness and to foreclose on the whole of the Roxbury Property. The Senior Deed of Trust affords no cure period for a Section 4.13 breach. (Senior Deed of Trust §§ 4.13.1, 5.1.3, 5.3.) A compromise that can be consummated on its lien path only by forcing the non-debtor Muhtars into default, and exposing their decades-old interest to foreclosure, is not fair and equitable as to them.

**3.   Archway's Veto Over Any Sale Is Neither Fair nor Necessary; the Court, Not Archway, Should Decide Whether a Sale Is Approved.**

The Settlement gives Archway a veto over any sale of the Roxbury Property: a consensual sale requires Archway's advance written approval, and the proceeds run only as Archway directs. Even a good-faith, arm's-length, open-market sale negotiated between the Debtors and the Muhtars could be blocked by Archway for any reason or no reason. There is no basis for handing one creditor that degree of control over a building it does not own and never financed. Nor does Archway need that control: on the Debtors' own valuations, Archway is amply secured by its other collateral and does not need the Roxbury Property to be paid. The Debtors have said as much themselves. In response to the Court's order to show cause, the Debtors' theory of a confirmable plan rested on the

8

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

CROWN & STONE
LAW, P.C.

Broadway property, not the Roxbury Property, and the Individual Debtors represented that they could confirm a plan from their own income and assets. [Docket No. 397.] If a sale of the Roxbury Property is proposed, this Court, not Archway, should be the final arbiter of whether that sale is fair and should be approved. Archway may submit any objection as part of that process. It should not hold a preemptive veto that can derail negotiations between the owners before the Court ever sees them. A compromise that vests that control in a single creditor, over the objection of the non-debtor owners, is not fair and equitable. *See Miami Metals*, 603 B.R. at 535; *AWECO*, 725 F.2d at 298.

**4. The Settlement Delegates the Debtor's § 363(h) Fiduciary Discretion to Archway and Commits the Estate to Litigate a Forced Sale Against Non-Debtors.**

Section 363(h) is an extraordinary power that the Bankruptcy Code confers on the trustee or debtor in possession, permitting a sale of a co-owner's interest only where, among other requirements, the benefit to the estate of a sale free of the co-owners' interests outweighs the detriment to those co-owners. 11 U.S.C. § 363(h). That power is entrusted to the estate's fiduciary because it is the fiduciary who must decide whether pursuing it serves the estate. Here, the Debtors have not exercised that judgment; they have handed it to Archway. The Settlement commits the estate to pursue a forced sale of the Muhtars' property at Archway's direction, and gives Archway approval and proceeds rights it would not otherwise have, even though, on the Debtors' own position, exercising those rights is not necessary to make Archway whole and the Debtors do not independently seek the sale. The fiduciary discretion that justifies the § 363(h) power has been contracted away to the very creditor who stands to benefit. Deference to a debtor's business judgment presupposes that the debtor exercised it; here, there is no debtor judgment to defer to.

Consider what approval would commit the estate to do. It would bind the estate to prosecute a contested § 363(h) adversary proceeding against the non-debtor Muhtars. *See* Fed. R. Bankr. P. 7001(3) (a proceeding to sell both the estate's interest and a co-owner's interest is an adversary proceeding). That litigation would be contested on the merits, on whether any benefit to the estate outweighs the detriment to the Muhtars, and it would be contested at the threshold, including on whether the estate holds any interest § 363(h) can reach and on whether § 363(h) may be invoked at all to force the sale of property that has long been held and operated as a partnership, issues addressed

9

below that may not be resolved short of an appeal. The estate would thus be committed to fund and litigate a hard, uncertain, and potentially years-long fight, at administrative expense, to reach property that was never Archway's collateral. And the estate's exposure would not end with its own fees. The Muhtars have advised the Debtors, in writing, that consummating the contemplated pledge would give rise to a claim for damages by the Muhtars against the Debtors and their estates, a post-petition obligation carrying administrative expense exposure under 11 U.S.C. § 503(b); the Debtors' counsel did not dispute the point. (Muhtar Decl. ¶ 8, Ex. '3'.) That is not a benefit to the estate; it is a cost to the estate, undertaken for the lender.

**5.  § 363(h) May Be Unavailable at the Threshold: The Estate May Hold No Qualifying Interest, and the Roxbury Property Has Been Held and Operated as a Partnership.**

Section 363(h) reaches only property in which the debtor "had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety." 11 U.S.C. § 363(h). That requirement is not satisfied merely because property finds its way into the estate; the debtor must have held the qualifying co-tenancy interest when the case commenced. Here, on the petition date, the fifty percent interest opposite the Muhtars was held not by any individual debtor but by the Halevy Trust, and a beneficial interest in a trust is not "an undivided interest as a tenant in common." The gap may be wider still. David Halevy passed away before the commencement of the Cases. If his death funded an irrevocable bypass or credit-shelter subtrust holding some or all of that fifty percent interest, that portion may not be property of any Debtor's estate at all; the trustee of any such subtrust would be a necessary party to any proceeding concerning the interest; and query what approval, if any, would be required from the probate court presiding over Mr. Halevy's estate. The Motion addresses none of this.

The § 363(h) path faces a second threshold bar. The Muhtars and the Halevy family have owned and operated the Roxbury Property together for more than three decades, sharing in its operation and in its income. Under California law, whether persons hold and operate property as a partnership does not depend solely on the form in which record title is held; it turns on whether they have associated to carry on, as co-owners, a business for profit. Property held and used in that enterprise may be partnership property regardless of how record title reads.

10

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

That matters because § 363(h) reaches only the three listed forms of co-tenancy, and tenancy in partnership is not among them. Because a partner has no right to possess partnership property and the partner's creditors cannot reach it, partnership assets are not property of the individual partner's estate, and courts uniformly refuse to permit a § 363(h) sale of property owned by a partnership in which the debtor is a partner; one court held that it lacked subject-matter jurisdiction over the property altogether. *See In re Funneman*, 155 B.R. 197, 199–201 (Bankr. W.D. Ark. 1993); *Normandin v. Normandin (In re Normandin)*, 106 B.R. 14, 15–16 (Bankr. D. Mass. 1989); *Connolly v. Nuthatch Hill Assocs. (In re Manning)*, 37 B.R. 755, 757–60 (Bankr. D. Colo. 1984), *aff'd*, 831 F.2d 205 (10th Cir. 1987); *In re Victory Pipe Craftsmen, Inc.*, 12 B.R. 822 (Bankr. N.D. Ill. 1981). The Muhtars do not ask the Court to resolve these questions now. The point is that they are live, fact-intensive threshold questions that, if resolved against the estate, would make § 363(h) unavailable and defeat a central mechanism of the Settlement. That is a reason to deny, not to approve.

**6. As a Matter of Law, a § 363(h) Sale Would Confer No Benefit on the Estate, and Any Benefit Would in Any Event Be Far Outweighed by the Detriment to the Muhtars.**

Even if § 363(h) were available, a sale could not be approved, because as a matter of law there would be no benefit to the estate from any § 363(h) sale of the Roxbury Property. The benefit to the estate must be direct; where the property is fully encumbered and the only payment from a sale would go to a secured creditor, a § 363(h) sale confers no benefit on the estate as a matter of law. *See Spear v. Crow Canyon Office Park Partners (In re Haley)*, 100 B.R. 13, 15–16 (Bankr. N.D. Cal. 1989). That is precisely this case. Under the Settlement, the entire net proceeds of any sale of the Roxbury Property are directed to Archway, and the estate would receive nothing. A sale that yields nothing for the estate and everything for a single creditor is not a benefit to the estate; it is creditor enhancement, which § 363(h)(3) does not authorize. Nor can the proponents make up the difference with intangibles: for commercial income property, the § 363(h)(3) balance is measured in economic terms, *see Calumet Farm, Inc. v. Black Chip Stables (In re Calumet Farm, Inc.)*, 150 B.R. 664, 675 (Bankr. E.D. Ky. 1992), and a sale that produces no economic benefit for the estate has nothing to place on its side of the scale. 11 U.S.C. § 363(h)(3).

The estate likewise cannot satisfy § 363(h)(2), which permits a sale only where the estate

11

CROWN & STONE
LAW, P.C.

would realize significantly more from a sale of the entire property than from a sale of the debtor's undivided interest alone; where, as here, the interest is fully encumbered and yields the estate nothing either way, that showing cannot be made. 11 U.S.C. § 363(h)(2). On the other side of the balance, the detriment to the Muhtars is severe. They would lose the Roxbury Property itself, their sole source of income and a stabilized income property that cannot be replaced in this market; they would lose the substantially below-market, long-term financing on the property, which could not be replicated at today's rates; and they would bear the tax consequences of a forced sale. They would also lose their right to cure and reinstate the senior Chase loan and, to protect their interest, would be forced to purchase the entire property. *See Haley*, 100 B.R. at 16. And the detriment cognizable under § 363(h)(3) is not limited to economic loss; courts weigh non-economic harm to the co-owners as well. *See Community Nat'l Bank & Trust Co. of N.Y. v. Persky (In re Persky)*, 893 F.2d 15, 20–21 (2d Cir. 1989). That harm here is substantial. The Muhtars are in their eighties; the Roxbury Property is not one asset in a portfolio but the building they have owned and operated for more than three decades and the income on which they live; and a forced sale would not be a neutral conversion of real estate into cash but the loss, at once, of an irreplaceable asset, of financing that cannot be replicated, and of the income stream that sustains them. Weighed against a benefit to the estate that is not merely thin but, as a matter of law, nonexistent, the § 363(h)(3) balance is not close.

**7. The Operative Roxbury Documents Are Internally Inconsistent and Not Ready for Approval, and a Chase Waiver Would Not Cure Them.**

The Roxbury Provisions are also not ready for approval. First, the proceeds definition overreaches. As drafted, the net proceeds directed to Archway are defined to include proceeds attributable to the Muhtars' fifty percent interest, not merely the Halevy Trust's half. That contravenes the co-owner's statutory right, on any § 363(h) sale, to receive its share of the proceeds according to its interest. 11 U.S.C. § 363(j). Those proceeds are not the estate's to give.

Second, the treatment of the senior debt is unrealistic and incomplete. The Settlement accounts for the Chase balance as a fixed, present figure and does not account for payment of all amounts that may become due to Chase on a sale, ignoring that the senior debt could be materially larger by the time of any sale, precisely because this transaction may itself enlarge it through the

12

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

acceleration, default interest, and prepayment charges that a default under the Senior Deed of Trust would trigger. The Settlement thus directs to a single creditor proceeds that belong in part to non-debtors, ahead of a senior obligation whose true size it understates and may itself have caused to grow.

Third, the Settlement contradicts itself on the very mechanism by which it reaches the Roxbury Property, carrying recordation of the Roxbury deed of trust in one place as a condition precedent to effectiveness and in another as a deferred, post-effectiveness obligation. The Court should not approve an instrument that is internally inconsistent on the operative Roxbury term.

Finally, the suggestion that a waiver from Chase would cure the senior-loan default does not save the Roxbury Provisions. Chase has stated that it will not consent, and the Muhtars are opposed to any such approach in any event. A unilateral waiver would not cure the internal inconsistency in the document the Court is asked to approve, and it would not change that the estate is being bound to pursue a non-debtor's property. Even with a waiver, the Muhtars would be left materially worse off: the Roxbury Property would carry a new junior encumbrance it does not bear today; their equity in a building they have owned and operated for more than three decades would, for the first time, sit behind a commercial lender they neither selected nor have any relationship with; and, by handing Archway a consensual lien, the Settlement would streamline Archway's path to reaching the fractional Roxbury interest that it could otherwise reach only by reducing its claim to judgment and pursuing enforcement remedies. A one-time waiver of a single default does none of the work needed to make the Roxbury Provisions fair; it leaves the encumbrance, and every consequence that flows from it, firmly in place.

At bottom, the Settlement would hand Archway collateral it never bargained for. When Archway extended the credit that gave rise to these Cases, the Roxbury Property was no part of its security, and it could not have been: the Muhtars were strangers to that transaction and owed Archway nothing, and their building was already subject to a senior deed of trust forbidding the very encumbrance Archway now seeks. Archway should not be permitted to obtain through a bankruptcy settlement what it could not obtain at origination, least of all from non-debtors who never agreed to stand behind its loan.

CROWN & STONE
LAW, P.C.

13

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

**B.  The Motion Seeks to Accomplish a Sub Rosa Plan and Exceeds the Scope of Rule 9019.**

A compromise under Rule 9019 resolves a discrete dispute; it may not be used to accomplish, outside the plan process, a restructuring that the Code channels through confirmation. A settlement that disposes of estate property, dictates the terms of a future plan, or rearranges creditor priorities outside a plan is an impermissible *sub rosa* plan. *See In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007); *cf. Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) (courts may not approve non-plan distributions that circumvent the Code's priority scheme).

Nor is the *sub rosa* objection abstract. Where an objector contends that approval outside a plan denies it the protections of the confirmation process, the objector must specify the protections being denied. *See In re Royal Alice Props., LLC*, 637 B.R. 465, 479 (Bankr. E.D. La. 2021). The Muhtars can. Approval of this restructuring by compromise would deny: court-approved disclosure under 11 U.S.C. § 1125 adequate to evaluate a transaction of this scale; classification and the right of impaired classes to vote under §§ 1122, 1123, and 1126; the cramdown and absolute-priority protections of § 1129(b), which the Settlement circumvents by converting Archway's disputed, possibly undersecured claim into a fully secured one through new liens on previously unencumbered properties, elevating one creditor above all others without disclosure or a vote; the best-interests test of § 1129(a)(7); the good-faith requirement of § 1129(a)(3); and the feasibility finding of § 1129(a)(11). A transaction is likewise objectionable as a *sub rosa* plan where it allocates or dictates the distribution of sale proceeds among creditors. *See In re GSC, Inc.*, 453 B.R. 132, 179–80 (Bankr. S.D.N.Y. 2011). That is exactly what the Roxbury Provisions do: they dictate that the entire net proceeds of any disposition of the Roxbury Property, including proceeds attributable to the non-debtor Muhtars' interest, run to Archway.

This Settlement is that kind of restructuring. Consider Archway's position. Either it is oversecured or it is undersecured. The Debtors' own papers value the collateral properties, exclusive of the Roxbury Property, at approximately forty-three million dollars, against roughly eleven million dollars of secured debt other than Archway's and a settlement claim in the low twenties of millions.


CROWN & STONE
LAW, P.C.

14

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

If Archway is oversecured by that margin, it does not need the Roxbury Property, and forcing the sale of a non-debtor's property adds nothing for the estate; it is pure creditor enhancement. If instead Archway contends it is undersecured, then the Settlement takes a disputed, possibly undersecured claim and, by granting Archway new liens across previously unencumbered properties, converts it into a heavily over-collateralized one, improving one creditor's position at the expense of the estate and other creditors, outside a plan, without disclosure, and without a vote. Either way, the Settlement is fair to Archway, not to the estate. The proponents therefore cannot carry their burden under *A & C Properties*, least of all on the paramount interest of the creditors: a compromise that improves one creditor's position at the expense of the estate and every other creditor serves Archway's interest, not theirs.

A compromise that disposes of interests in property across numerous parcels, rearranges collateral and priorities among a dozen properties (Settlement § 22), dictates the treatment Archway is to receive under any plan and deems any inconsistent plan to have been proposed in bad faith (Settlement § 16), binds the estate and all parties in interest upon approval (Settlement § 21), and binds the estate to prosecute litigation against non-debtors (Settlement § 10.C), is not the resolution of a discrete dispute. It is a plan in all but name, and it should be tested as one, with the disclosure and the creditor vote that a plan requires.

Finally, the Motion cannot be approved because it is the stated predicate for a plan that cannot be confirmed. A plan may be confirmed only if it is feasible, that is, only if confirmation is not likely to be followed by liquidation or the need for further reorganization. 11 U.S.C. § 1129(a)(11). The Roxbury mechanism cannot realistically be performed on the timeline the Settlement itself sets. To meet the March 1, 2027 Drop Dead Date by the forced-sale path, the Debtors would have to commence a contested § 363(h) adversary against the non-debtor Muhtars, litigate the benefit-versus-detriment balance, litigate the threshold questions whether the estate holds any qualifying interest and whether § 363(h) is available given the property's operation as a partnership (questions that may require an appeal), obtain judgment, satisfy any applicable stay period, conduct a sale, and close it. That is not a realistic schedule for a contested adversary the Muhtars will defend at every step. The Settlement also manufactures new administrative liability: as set forth above, consummating the

15

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC

CROWN & STONE
LAW, P.C.

contemplated pledge would give rise to a post-petition damages claim against the Debtors and their estates carrying administrative expense exposure under 11 U.S.C. § 503(b), and administrative claims must be paid in full at confirmation. 11 U.S.C. § 1129(a)(9)(A). Nor is the Roxbury mechanism necessary to a confirmable plan on the Debtors' own prior representations: in response to the Court's order to show cause, the Debtors' confirmable-plan theory rested on the Broadway property, and the Individual Debtors represented that they could confirm a plan from their own income and assets. [Docket No. 397.] A settlement whose central mechanism cannot plausibly be performed within its own deadline, and is unnecessary on its proponents' own account, cannot support a finding of feasibility, and a compromise that can lead only to an unconfirmable plan should not be approved as the predicate for one.

### III.  CONCLUSION

For the foregoing reasons, the Muhtars respectfully request that the Court deny the Motion and grant such other and further relief as the Court deems just and proper. The Muhtars reserve all rights, including their rights as co-owners to their share of any proceeds under 11 U.S.C. § 363(j), their right to a jury trial, and their right to be heard at any further hearing.

Dated:      July 10, 2026                          CROWN & STONE LAW, P.C.


By: */s/ Avi E. Muhtar*
    Avi E. Muhtar, Esq.
    Attorneys for HASKELL MUHTAR and
    NURIT MUHTAR

MUHTARS' SUPPLEMENTAL OPPOSITION TO MOTION TO APPROVE COMPROMISE
WITH ARCHWAY BROADWAY LOAN SPE, LLC