ZEV SHECHTMAN (BAR NO. 266280)
*Zev.Shechtman@saul.com*
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Alan Gomperts, Daniel Halevy,
Susan Halevy, Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re: SEATON INVESTMENTS, LLC, et al., <br>     *Now a dismissed case* <br><br>        Debtors and Debtors In Possession. | Lead Case No. 2:24-bk-12079-VZ <br><br> Jointly Administered with Case Nos.: <br> 2:24-bk-12080-VZ;2:24-bk-12081-VZ; <br> 2:24-bk-12082-VZ;2:24-bk-12091-VZ; <br> 2:24-bk-12074-VZ;2:24-bk-12075-VZ;  and <br> 2:24-bk-12076-VZ |

☐ Affects All Debtors.

☐ Affects Case No.: 2:24-12080-VZ
Colyton Investments, LLC -*Now a*

*dismissed case*

☐ Affects Case No.: 2:24-12081-VZ
Broadway Avenue Investments, LLC

☐ Affects 2:24-12082-VZ
SLA Investments, LLC

☐ Affects 2:24-12091-VZ
Negev Investments, LLC

☒ Affects Case No.: 2:24-12074-VZ
Alan Gomperts

☐ Affects Case No.: 2:24-12075-VZ
Daniel Halevy

☐ Affects Case No.: 2:24-12076-VZ
Susan Halevy

Chapter 11

**DEBTOR'S MOTION TO (1) CONFIRM SALE OF REAL PROPERTY COMMONLY KNOWN AS 3538 GREENFIELD AVENUE, LOS ANGELES, CALIFORNIA 90034 FREE AND CLEAR OF LIENS AND CLAIMS, AND (2) PAY REAL ESTATE BROKERS' COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ALAN GOMPERTS AND BEN KANANI IN SUPPORT THEREOF**

Date: August 4, 2026
Time: 11:00 a.m.
Place: Courtroom 1368
     255 E. Temple St.
     Los Angeles, CA 90012

58178583.4
390855-00001

Alan Gomperts, the debtor and debtor-in-possession herein ("Gomperts" or the "Debtor"), hereby moves the Court for an order (1) confirming a sale under 11 U.S.C. § 363 and Local Bankruptcy Rules 6004-1(c) and 9013-1, by the Debtor, of residential real property commonly known as 3538 Greenfield Avenue, Los Angeles, California 90034 (the "Property") to Di Nalli Consulting, LLC, or its assignee (the "Buyer"), for $1,449,000.00; and (2) authorizing the Debtor to pay real estate brokers' commissions in connection with the sale (the "Motion"). The sale is to be "as is" and "where is" with no warranty or recourse whatsoever. The Court may entertain higher and better bids at the time of the hearing on the Motion.

The Motion is based upon the contemporaneously filed Notice of Motion, this Motion, Memorandum of Points and Authorities, and accompanying Declarations of Alan Gomperts and Ben Kanani, all of which are attached hereto, the papers and pleadings in the Debtor's bankruptcy case, and such other evidence that may be presented at the hearing.

Pursuant to Local Bankruptcy Rule 6004-1(c)(3), the Debtor provides the following information:

A.      The date, time and place of the hearing on the Motion are set forth above.

B.      The Buyer is Di Nalli Consulting, LLC, or its assignee, and its address is 8537 Pickford Street, Los Angeles, CA 90035.

C.      The property to be sold consists of the Debtor's right, title, and interest in residential real property located at 3538 Greenfield Avenue, Los Angeles, California 90034, which is a single family residence (the "Property").  Per a preliminary title report dated April 21, 2026, and attached to the Motion as Exhibit "2" (the "Title Report"), title to the Property is held by the Debtor's revocable living trust, the Gomperts & Halevy Family Trust (the "Family Trust").  For all intents and purposes, the fact that the Property is held by the Family Trust does not change its identity as property of the Debtor's estate and the use of the proceeds for estate purposes.  As a community property asset, the Property is property of the Debtor's estate.

D.      The terms and conditions of the sale are that the Property is being sold "as-is," "where is," "with all faults," with no warranty by or recourse whatsoever, subject to

58178583.4
390855-00001

higher and better bids for $1,449,000.00. There are no contingencies other than Court approval.

E.      The Debtor intends to sell the Property free and clear of all liens and claims (collectively the "Subject Liens") as provided below, with all liens removed from the Property and the allowed amounts of certain liens and claims to be paid through escrow, and any disputed sums to attach to like amounts of the net sale proceeds, with the same force, effect, validity and priority that they had as of the petition date as against the Property.

1.      Real property taxes for the fiscal year 2025-2026 have been paid. The sale will be free and clear of any lien for real property taxes accrued prior to the date of the close of the sale. The Debtor will pay the real property taxes based on the proportion of the first installment period that runs through the closing date. The Buyer will be responsible for such taxes thereafter.

2.      The first position Deed of Trust in favor of Wells Fargo Bank ("WFB") that was recorded in Los Angeles County on April 29, 2011, as instrument no. 20110619428 securing an original indebtedness of $258,000 (the "First Trust Deed"), with $169,715.60 estimated outstanding as of August 6, 2026. The Debtor proposes to pay through escrow all undisputed amounts owed on the First Trust Deed. The sale will be free and clear of the First Trust Deed, and any disputed amount will not be paid but will attach to a like amount of the net sale proceeds, with the same force, effect, and validity that it had as against the Property.

3.      The second position Deed of Trust in favor Archway Real Estate Income Fund I SPE I, LLC ("Archway") that was recorded in Los Angeles County on April 24, 2023, as instrument no. 20230261978 securing an original indebtedness of $2,575,000.00. The sale will be free and clear of such lien based on the consent of Archway.

F.      The proposed sale is subject to higher and better bids. By way of the Motion, the Debtor is requesting that the Court approve the overbid procedures as set forth in the Motion.

G.      If a sale were to close by the end of August 2026, the estimated sale proceeds would be as shown in the below chart:

| Sale Price | $1,449,000.00 |
| --- | --- |

| Mortgage | ($169,715.60) |
|---|---|
| Costs of sale (6%) | ($86,940.00) |
| Capital gains taxes | ($0) |
| Projected Net Equity | $1,192,344.40 |

H.      The Debtor also seeks authority from the Court to pay total commissions to the brokers through escrow aggregating 5 percent (5%) of the selling price for the Property made payable only upon the close of sale.  The commission will be reduced to 3.5% in the event there are no other agents involved.  The seller's broker is United Real Estate Professionals, through its agent Ben Kanani (the "Broker").  The Debtor has separately filed an application to employ the Broker.  The buyer's broker is represented by Beverly & Co.

I.      The Debtor (who serves as his own accountant) estimates that there will be no federal or state capital gains tax consequences as a result of the proposed sale.

J.      Any objection to the Motion must be filed and served not later than 14 days before the date of the hearing, i.e., July 21, 2026.

K.      The Debtor also seeks a Court ruling that the party to whom the Court confirms the sale and any backup buyers are good faith purchasers for purposes of 11 U.S.C. § 363(m).  A declaration or other evidence establishing the good faith of the Buyer and any overbidder will be submitted prior to the hearing.

L.      The Debtor also seeks a waiver of the 14-day stay provided by Federal Rule of Bankruptcy Procedure 6004(h).

DATED: July 13, 2026                                SAUL EWING LLP

By: _____
ZEV SHECHTMAN
Attorneys for Alan Gomperts, Daniel Halevy, Susan Halevy, Debtors and Debtors in Possession

58178583.4
390855-00001

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.**

### STATEMENT OF FACTS

**A.      Bankruptcy Background**

This bankruptcy case was commenced on or about March 18, 2024 (the "Petition Date"), when the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Code") along with two relatives (Susan Halevy and Daniel Halevy, Mr. Gomperts's mother-in-law and brother-in-law, together, the "Individual Debtors") and five commercial properties in which the Individual Debtors held interests as of the Petition Date.

**B.      The Proposed Sale of the Property**

The property to be sold consists of the Debtor's right, title, and interest in residential real property located at 3538 Greenfield Avenue, Los Angeles, California 90034, which is a single family residence (the "Property").  Per a preliminary title report dated April 21, 2026, and attached to the Motion as Exhibit "2" (the "Title Report"), title to the Property is held by the Debtor's revocable living trust, the Gomperts & Halevy Family Trust (the "Family Trust").  For all intents and purposes, the fact that the Property is held by the Family Trust does not change its identity as property of the Debtor's estate and the use of the proceeds for estate purposes.  The balance of the sale proceeds will be used by the Debtor pursuant to the Bankruptcy Code, such as to pay obligations under its compromise with its major creditor, Archway, and/or to pay administrative expenses approved by the Court.

On May 5, 2026, Di Nalli Consulting, LLC made an offer of $1,449,000.00. The Debtor's counteroffer, which did not vary the sale price, was accepted on May 5, 2026.  A copy of the California Residential Purchase Agreement and Joint Escrow Instructions along with a bankruptcy addendum dated July 8, 2026 (collectively, the "Sale Agreement") is attached to the Declaration of Alan Gomperts as Exhibit "1."

The Sale Agreement is the highest and best offer the Debtor has received to date. Offers at higher prices were received, but they were either withdrawn, cancelled, or not pursued due to their speculative nature, i.e., they should not be viewed as offers received.

58178583.4
390855-00001

The proposed sale was reached via arms-length negotiations.

**C.    The Real Estate Broker and its Marketing Efforts for the Property**

On June 30, 2026, the Debtor filed his application to employ United Real Estate Professionals (docket no. 704), as his real estate broker (collectively, the "Broker") with an aggregate commission of 5% of the selling price for the Property made payable only upon the close of sale.  The commission will be reduced to 3.5% in the event there are no other agents involved in the sale.

Applicant engaged the Broker on or about February 1, 2026.  Following an inspection, the Broker listed the Property on the Multiple Listing Service for $1,398,000.00.  The listing information was also displayed on the Redfin and Zillow websites.  Accordingly, information about the Property was available to a large audience of brokers and potential buyers.  The Broker showed the Property to numerous potential purchasers and obtained several offers.  Applicant analyzed and discussed same with the Debtor.

The Broker will continue to market the Property pending the hearing of the Motion, and will also post the hearing date of the Motion on the Multiple Listing Service.

The Debtor is represented by United Real Estate Professionals through Ben Kanani. The Buyer is represented by Beverly & Co.

**D.    Identity of Liens and Claims against the Property**

1.    According to the Title Report, the liens and claims of record against the Property consist of the following:

(a)    Real property taxes for the fiscal year 2026-2027. The first installment is not yet due.

(b)    The first position Deed of Trust in favor of Wells Fargo Bank ("WFB") that was recorded in Los Angeles County on April 29, 2011, as instrument no. 20110619428 securing an original indebtedness of $258,000 (the "First Trust Deed").  According to the current payoff statement attached as Exhibit "3" to the Declaration of Alan Gomperts, the total amount that will be due to WFB through August 6, 2026, is approximately $169,715.60.

58178583.4
390855-00001                                                6

(c)     The second position Deed of Trust in favor Archway Real Estate Income Fund I SPE I, LLC ("Archway") that was recorded in Los Angeles County on April 24, 2023, as instrument no. 20230261978 securing an original indebtedness of $2,575,000.00.

2.     Proposed Treatment of Liens and Other Interests

The Debtor intends to sell the Property free and clear of all liens and claims (collectively the "Subject Liens") as provided below, with all liens removed from the Property and the allowed amounts of certain liens and claims to be paid through escrow, and any disputed sums to attach to like amounts of the net sale proceeds, with the same force, effect, validity and priority that they had as of the petition date as against the Property as follows:

(a)     The sale will be free and clear of any lien for real property taxes accrued prior to the date of the close of the sale. The Debtor will pay the real property taxes based on the proportion of the first installment period that runs through the closing date. The Buyer will be responsible for such taxes thereafter.

(b)     The Debtor proposes to pay through escrow all undisputed amounts owed on the First Trust Deed.  The sale will be free and clear of the First Trust Deed, and any disputed amount thereunder will not be paid but will attach to a like amount of the net sale proceeds with the same force, effect, validity and priority that it has with respect to the Property.

(c)     The sale will be free and clear of the Archway lien based on the consent of Archway.

E.     **Proposed Overbid Procedures**

The Debtor requests that the Court approve the following overbid procedures:

The proposed sale is subject to higher and better bids. Overbidders must appear at the hearing, submit an overbid not less than two business dates before the hearing in a form acceptable to the Debtor, deposit with the Debtor before the hearing a cashier's check in the amount of $44,220, i.e., 3% of the minimum overbid, payable to "Alan Gomperts, debtor and debtor-in-possession," and provide written proof of their financial ability to close escrow unconditionally in a form satisfactory to the Debtor, in the Debtor's discretion. The minimum overbid amount is $1,474,000, and bidding,

58178583.4
390855-00001

7

if any, shall proceed in increments of $10,000 or greater. The Debtor holds discretion in accepting or rejecting all overbids, subject to Court approval.

Any overbidder must timely deliver a written overbid, the deposit, and proof of ability to close unconditionally to the undersigned counsel for the Debtor at least two business days before the hearing, with all copies to be emailed, with receipt confirmed, at: Zev.Shechtman@Saul.com.

The prevailing overbidder's deposit shall be nonrefundable in the event that the Court confirms the sale to that party but, for any reason whatsoever, the party fails to close the sale timely. The overbidding party will be bound by all of the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any financing contingency, and shall close the escrow no later than the first business day which is more than 14 calendar days after the entry of an order approving the sale.

The Debtor will also propose that the Court confirm a back-up buyer so that, in the event that the prevailing buyer fails to close the sale timely, the Debtor may sell the Property to the back-up buyer for the amount of such back-up buyer's last bid.  The Debtor is authorized to hold the back-up buyer's deposit pending the closing of the sale to the prevailing bidder.  If the prevailing bidder closes the sale, the Debtor will immediately return the back-up buyer's deposit.  If the prevailing buyer fails to close the sale timely, the back-up buyer will be bound by all of the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any financing contingency, and shall close the escrow within 10 calendar days after written notice from the Debtor that the prevailing buyer has defaulted. The back-up buyer's deposit shall be nonrefundable in the event that the back-up buyer fails to close the sale timely.

F.    **Payment of Commissions to Real Estate Brokers through Escrow**

The Debtor seeks an order from the Bankruptcy Court authorizing him to pay commissions of the brokers through escrow. The Debtor proposes to pay an aggregate commission of 5% of the purchase price of the Property to the brokers as follows: 2.5% to United Real Estate Professionals as the Debtor's (seller's) broker in connection with the closing of this sale and 2.5% to Beverly & Co. as the Buyer's broker in connection with the closing of this sale.  If a sale of the Property is

58178583.4
390855-00001                                        8

confirmed as a result of a higher and better offer to overbidder(s) represented by different broker(s), then the proposed commission for the Property of 5% of the purchase price will be split 2.5% to United Real Estate Professionals and 2.5% to the broker for the successful overbidder.

The commission will be reduced to 3.5% in the event there are no other agents other than United Real Estate Professionals involved in the sale.

**G.     Good Faith Finding**

The Debtor also requests that the Court make a finding that the confirmed Buyer and any back-up bidder(s) are good-faith purchasers within the meaning of 11 U.S.C. § 363(m).

## II.

## LEGAL ARGUMENT

**A.     The Court Should Approve the Sale of the Property Free and Clear of Liens and Claims**

1.     <u>The Sale is in the Best Interest of the Debtor and Its Creditors</u>

A debtor in possession has the rights and powers of a trustee serving under Chapter 11 subject to certain limits. 11 U.S.C. § 1107.  Under the authority of the Bankruptcy Code, bankruptcy courts are authorized to permit a trustee to conduct a sale of estate property outside of the ordinary course of business if such sale is in the best interests of the bankruptcy estate and its creditors. *See, e.g., In re Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981); *In re Equity Funding Corp.*, 492 F.2d 793 (9th Cir. 1974); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

A trustee's duties in liquidating the assets of the bankruptcy estate require that the trustee sell the property of the debtor if there is sufficient equity to warrant the administration of such property.

The Debtor believes that the proposed conduct of sale of the Property is the best method by which to maximize the value of his interest in the Property.

Here, the Debtor retained a licensed real estate broker to list, market and aid him in selling the Property. The Broker listed the Property on the Multiple Listing Service, and has marketed the Property on behalf of the Debtor. With the aid of his broker, the Debtor entered into the Sale

58178583.4
390855-00001

9

Agreement to sell the Property to the Buyer for the amount of $1,449,000.00, above the original listing price. As set forth in the Declaration of Alan Gomperts, the price was arrived at following arms-length negotiations. In addition, notice of the sale of the Property will be posted on the Bankruptcy Court website.

The sale is subject to overbids, so parties wishing to purchase the Property for a higher price may do so.

As a result, the Debtor believes that the proposed sale is in the best interests of the Debtor and its creditors.

2.      The Property May Be Sold Free and Clear of Liens and Claims

Section 363(f) provides that, upon certain conditions, a trustee may sell property free and clear of a lien or interest in such property.

Section 363(f) states the conditions as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

In this case, the Debtor seeks to sell the Property free and clear of all liens and claims, except as otherwise provided. The purchase price for the Property will be at least $1,449,000.00, which is sufficient to satisfy any undisputed liens, or subject to the consent of any lienholders. 11 U.S.C. §§ 363(f)(2), (3). The Debtor seeks authority to pay the allowable and undisputed amounts for the foregoing items from escrow with disputed amounts attaching to the net sale proceeds with the same

58178583.4
390855-00001

force, effect, validity and priority that they enjoy as to the Property.

3.     Penalties

The Debtor may avoid a lien that secures a claim of a kind specified in § 726(a)(4) of the Bankruptcy Code which includes claims:

> for any . . . penalty . . . arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such . . . penalty . . . are not compensation for actual pecuniary loss suffered by the holder of such claim.

11 U.S.C. § 724(a)(4).

Pursuant to § 363(f)(4), the Property may be sold free and clear of asserted claims based on penalty charges, with those disputed amounts attaching to the net sale proceeds as provided above.

4.     Good Faith Purchaser Finding

A purchaser of property, and the Debtor, are protected from the effects of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith and the appellant fails to obtain a stay of the sale. 11 U.S.C. § 363(m). A good faith purchaser is one who buys in good faith and for value. *Ewell v. Diebert* (In re Ewell), 958 F.2d 276, 281 (9th Cir. 1992). Although the Code does not define "good faith," courts have provided guidance as to the appropriate factors to consider. *See id.* (lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd*., 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ("[t]he requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of the sale proceeding."); *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) ("[t]he purpose of Section 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith.").

Here, the Property has been and continues to be listed on the Multiple Listing Service, and notice of the Property's sale has been posted on the United States Bankruptcy Court's website.  The Debtor has negotiated in good faith with the Buyer.  Moreover, the sale is subject to overbid, and the notice of the Motion has been served on all creditors and interested parties. Evidence supporting a finding of the Buyer's good faith is included with the addendum or will be provided in supplement

as applicable to any bidder.  Thus, the Debtor requests that the Court make a finding that the confirmed Buyer(s) and any back-up buyer(s) are good faith purchasers of the Property within the meaning of § 363(m).

5.      Waiver of Stay under Federal Rule of Bankruptcy Procedure 6004(h)

Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtor requests that if the Court approves the sale proposed by this Motion, that it also waive the 14-day stay under FRBP 6004(h). In that regard, the Advisory Committee Notes to the 1999 Amendments to FRBP 6004 state that the Court "may, in its discretion, order that [the 14-day stay] is not applicable so that the property may be used, sold, or leased immediately in accordance with the order entered by the court."  The Debtor has a timeline to satisfy various obligations under a compromise with Archway.  This sale will provide some of the much needed funds and time is of the essence in closing this transaction.

### III.

### CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court:

1.      Grant the Motion;

2.      Confirm the proposed sale by the Debtor of the Property, including all of the right, title and interest of the Debtor, to the Buyer on the indicated terms, subject to any higher and more favorable bids;

3.      Approve the overbid procedures for the sale of the Property;

4.      Direct that the sale of the Property be free and clear of all liens and claims except as otherwise provided above;

5.      Authorize the Debtor to pay the costs of sale incurred in selling the Property, including the real estate brokers' commissions, escrow, title, and incidental costs of sale and maintenance or marketing of the Property for sale, through escrow;

6.      Authorize the Debtor, if he no longer disputes any of the disputed sums, in whole or in part, to pay said sums from the net sale proceeds;

58178583.4
390855-00001

7.    Make a finding that the confirmed Buyer and any backup buyer are good faith purchasers of the Property within the meaning of § 363(m) of the Code;

8.    Waive the application of the 14-day stay under Federal Rule of Bankruptcy Procedure 6004(h);

9.    Authorize the Debtor to execute documents and take such other and further action as is necessary to close the sale; and

10.    Provide such other and further relief as the Court deems just and proper.


DATED: July 13, 2026                          SAUL EWING LLP


By: _____
ZEV SHECHTMAN
Attorneys for Alan Gomperts, Daniel Halevy, Susan Halevy, Debtors and Debtors in Possession

58178583.4
390855-00001                          13

**DECLARATION OF ALAN GOMPERTS**

I, Alan Gomperts, declare and state as follows:

1.      I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true. If called as a witness, I could and would testify competently with respect to such facts.

2.      On March 18, 2024, I filed a voluntary petition commencing this Chapter 11 case in the Central District of California, case no. 2:24-bk-12074-VZ (the "Case"). I am the Chapter 11 debtor and debtor-in-possession of the Case.

3.      I own the real property commonly known as 3538 Greenfield Avenue, Los Angeles, California 90034, which is a single family residence (the "Property").  Title to the Property is held by the Debtor's revocable living trust, the Gomperts & Halevy Family Trust (the "Family Trust"). For all intents and purposes, the fact that the Property is held by the Family Trust does not change its identity as property of the Debtor's estate and the use of the proceeds for estate purposes.

4.      Attached hereto as Exhibit "2" is the Title Report dated April 21, 2026, that I received from the escrow company handling the proposed sale.

5.      I believe that the sale of the Property for $1,449,000.00, subject to overbid, is a fair price based upon evaluation and advice from my real estate broker, United Real Estate Professionals. The Buyer was procured as a result of the efforts of my real estate broker, after arms-length negotiations.

6.      Attached hereto, marked as Exhibit "1" and incorporated herein by this reference, isa true and correct copy of the complete California Residential Purchase Agreement and Joint Escrow Instructions between me and the Buyer including the addendum (the "Sale Agreement").  I have no independent knowledge of or familiarity with the Buyer.

7.      Attached as Exhibit "3' is a copy of the current payoff statement from Wells Fargo Bank referencing an unpaid principal balance due to Wells Fargo of approximately $169,715.60.

8.      Through my counsel, I have arranged for notice of the sale of the Property to be posted on the website of the United States Bankruptcy Court.

58178583.4
390855-00001

9.     Barring receipt of an overbid, I believe that the proposed sale and overbid procedures are in the best interest of my creditors and me, and should be approved.

10.     I believe that there are no capital gains taxes, federal or state, that will be due as a result of the proposed sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 13, 2026, at Los Angeles, California.

ALAN GOMPERTS

58178583.4
390855-00001                                        15

## DECLARATION OF BEN KANANI

I, Ben Kanani, declare and state as follows:

1.     I am a licensed California real estate sales agent.

2.     I have personal knowledge of the facts in this declaration and, if called as a witness, could and would testify competently to these facts.

3.     Alan Gomperts (the "Debtor") retained me to list, market and aid him in selling the Debtor's right, title, and interest in the parcel of real property commonly known as 3538 Greenfield Avenue, Los Angeles, California 90034 (the "Property").

4.     I inspected the Property and advised the Debtor in connection with its listing and sale. On or about February 3rd, 2026, we listed the Property on the Multiple Listing Service as listing number 26646991. The original listing price for the Property was $1,398,000.00.

5.     The Property was listed in the MLS, and the listing information was also displayed on the Redfin and Zillow websites. Accordingly, information about the opportunity was available to a large audience of brokers and potential buyers.

6.     There have been 78 showings of the Property and 97 phone inquiries. The offer from Di Nalli Consulting, LLC, for $1,449,000.00 was received on May 5, 2026. The Debtor's counteroffer was accepted on May 5, 2026.

7.     Based on my experience in the sale of properties in the area where the Property is located, my research into current market conditions, and the marketing history described above, I believe that the $1,449,000 offer from Di Nalli Consulting, LLC, subject to overbidding, is in the range of the current fair market value of the Property. Prior to the hearing, I will publish sale hearing information on appropriate websites to encourage overbidding and will show the Property if necessary and appropriate.

///

///

///

///

///

58178583.4
390855-00001

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 13, 2026, at Los Angeles, California.

_____
BEN KANANI

58178583.4
390855-00001

17

# Exhibit  1

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

**CALIFORNIA ASSOCIATION OF REALTORS®**

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/24)

☐ **(If checked)** This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b)  A duty of honest and fair dealing and good faith.
(c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b)  A duty of honest and fair dealing and good faith.
(c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b)  Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the  Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant *Di Nali Consulting LLC* _____ **Di Nali Consulting LLC** Date 5/5/2026
9A885DD0F993460...        E55331896BC843B...

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ **and or assignee** Date _____

Agent **Beverly & Co.** DRE Lic. # 02078273
Real Estate Broker (Firm)

By _____ *Juliet Shoham* **Moji Zucker/Juliet Shoham** DRE Lic. # **01820725** /0182275 Date 5/5/2026
F10CC9B131984C0...        (Salesperson or Broker-Associate, if any)

**AD REVISED 12/24 (PAGE 1 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210 | Phone: 3105052217 | Fax: | 3538 Greenfield
Juliet Shoham | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com |

**Exhibit 1**

19

AI Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

CIVIL §§ 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.
**2079.14. (a)** A copy of the disclosure form specified in § 2079.16 shall be provided in a real property transaction as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller before entering into a listing agreement. (2) The buyer's agent shall provide the disclosure to the buyer as soon as practicable before the execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer. **(b)** The agent providing the disclosure form specified in § 2079.16 shall obtain a signed acknowledgement of receipt from the buyer or seller except as provided in § 2079.15.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**AD REVISED 12/24 (PAGE 2 OF 2)**



**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        3538 Greenfield

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332



# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, Revised 12/25)

Date Prepared: *May 5, 2026*

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *Di Nali Consulting LLC, and or assignee* ("Buyer").
   B. **THE PROPERTY** to be acquired is *3538  Greenfield Ave*, situated in *Los Angeles* (City), *Los Angeles* (County), California, *90034* (Zip Code), Assessor's Parcel No(s). *4252-017-007* ("Property").
   **(Postal/Mailing address may be different from city jurisdiction.  Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** *United Real Estate Professionals* License Number *01102160*
   Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
   **Seller's Agent** *Ben Kanani* License Number *01878686*
   Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** *Beverly & Co.* License Number 02078273
   Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
   **Buyer's Agent** *Moji Zucker/Juliet Shoham* License Number *01820725*/01820275
   Is (check one): [X] the Buyer's Agent (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   C. [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **A** | 5, 5B (cash) | **Purchase Price** | $ *1,449,000.00* | [ ] All Cash |
| **B** | | **Close Of Escrow (COE)** | [X] *60* Days after Acceptance OR on [ ] _____ (date) | |
| **C** | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or _____ [ ] AM/ [ ] PM | |
| **D(1)** | 5A(1) | **Initial Deposit Amount** | $ *43,500.00*  ( *3.00* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _____) business days after Acceptance by wire transfer OR [ ] _____ |
| **D(2)** | 5A(2) | [ ] **Increased Deposit** | See attached Increased Deposit Addendum (C.A.R. Form IDA) | |
| **E(1)** | 5C(1) | **Loan Amount(s):** First / Interest Rate / Points / If FHA or VA checked, Deliver list of lender required repairs | $ *1,090,000.00*  ( *75.22* % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed _____% • Buyer to pay up to _____ points to obtain the rate above  17 (or _____) Days after Acceptance | Conventional or, if checked, [ ] FHA (Forms FVAC/HID attached) [ ] VA (Form FVAC attached) [ ] Seller Financing [ ] Other: _____ |
| **E(2)** | 5C(2) | **Additional Financed Amount** / Interest Rate / Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate • not to exceed _____ % • Buyer to pay up to _____ points to obtain rate above | Conventional or, if checked, [ ] Seller Financing [ ] Other: _____ |
| **E(3)** | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment | |
| **F** | 5D | **Balance of Down Payment** | $ *315,500.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *1,449,000.00* | |

© 2025, California Association of REALTORS®, Inc.

**RPA REVISED 12/25 (PAGE 1 OF 17)**

Buyer's Initials [Initial] _DML_ / [Initial] _____ Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 17)**

Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210          Phone: 3105052217          Fax:          3538 Greenfield
Juliet Shoham          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

**Exhibit 1**
**21**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034* _____ Date: *May 5, 2026* _____

| G | | SELLER PAYMENT TO COVER BUYER EXPENSES AND COSTS | | |
|---|---|---|---|---|
| G(1) | 5E | ☐ Seller Credit to Buyer | $ _____ | For closing costs |
| G(2) | | ADDITIONAL SELLER CREDIT TERMS (does not include buyer broker compensation): _____ | | |
| G(3) | 18A | ☒ Seller Payment to Compensate Buyer's Broker | Seller agrees to pay Buyer's Broker, out of transaction proceeds, __2.500__ % of the final purchase price AND, if applicable $ _____ OR, if checked ☐ $_____ . | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | Intentionally Left Blank | | |
| J | 16 | Final Verification of Condition | 5 (or _____) Days prior to COE | |
| K | 23 | Assignment Request | 17 (or _____) Days after Acceptance | |
| L | | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | Loan(s) | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency. Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | Investigation of Property | 17 (or __5__) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property | 17 (or _____) Days after Acceptance | |
| | | Buyer's right to access the Property for informational purposes is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | | Any contingency in L(1)-L(8) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR-B) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See paragraph 8I. |
| L(4) | 8D | Insurance | 17 (or _____) Days after Acceptance | |
| L(5) | 8E, 14A | Review of Seller Documents | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(6) | 8F, 13A | Preliminary ("Title") Report | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(7) | 8G, 11M | Common Interest Disclosures Per Civil Code § 4525 or Agreement | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | ☐ CR-B attached |
| L(8) | 8H, 9B(6) | Review of leased or liened items (E.g. solar panels or propane tanks) | 17 (or _____) Days after Acceptance, or 5 Days after Delivery, whichever is later | |
| L(9) | 8K | Sale of Buyer's Property Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | Time of Possession | Upon notice of recordation, OR ☐ 6 PM or _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| M(2) | 7D | Seller Occupied or Vacant units | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | 4A, 7A | Occupied units by tenants or anyone other than the Seller | Subject to tenant rights, unless primary or secondary residence in 3E(3), or Otherwise Agreed (TOPA may be used) | See 7A if TOPA is not attached. ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) attached. |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after Delivery | |
| N(3) | 11M(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 24 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | Intentionally Left Blank | | |

**RPA REVISED 12/25 (PAGE 2 OF 17)**   Buyer's Initials  /    Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   3538 Greenfield

**Exhibit 1**

22

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538  Greenfield Ave, Los Angeles, CA  90034*_____ Date: *May 5, 2026*____

| P | Items Included and Excluded |
|---|---|

**P(1)** — 9 — **Items Included - All items specified in Paragraph 9B are included and the following, if checked:**

- [X] Stove(s), oven(s), stove/oven combo(s);
- [X] Refrigerator(s);
- [ ] Wine Refrigerator(s);
- [X] Washer(s);
- [X] Dryer(s);
- [ ] Dishwasher(s);
- [ ] Microwave(s);

**Additional Items Included:**
- [ ] _____.

- [ ] Video doorbell(s);
- [ ] Security camera equipment;
- [ ] Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
- [ ] Smart home control devices;
- [ ] Wall mounted brackets for video or audio equipment;
- [ ] _____.
- [ ] _____.

- [ ] Above-ground pool(s) / [ ] spa(s);
- [X] Bathroom mirrors, unless excluded below;
- [ ] Electric car charging systems and stations;
- [ ] Potted trees/shrubs;
- [ ] _____.
- [ ] _____.

**P(2)** — **Excluded Items:**
- [ ] _____;
- [ ] _____;
- [ ] _____;

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Para #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both _____ <br> _____ <br> [ ] Provided by: *Instant NHD* | [ ] Environmental <br> [ ] Other _____ |
| **Q(2)** | | Optional Wildfire Disclosure Report <br> *Click here for Additional Report* | [ ] Buyer [ ] Seller [ ] Both _____ <br> Provided by: *Click here to select Wildfire Service Provider* | |
| **Q(3)** | | (A) *9A*_____ Report <br> (B) _____ Report | [ ] Buyer [X] Seller [ ] Both _____ <br> [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(5)** | 10A <br> 10B(2) | Government Required Point of Sale **inspections, reports** | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(6)** | 10B(2) | Government Required Point of Sale **corrective/remedial actions** | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(7)** | 19B | Escrow Fee | [ ] Buyer [ ] Seller [ ] Both _____ [X] Each to pay their own fees <br> Escrow Holder: *sellers choice not to exceed $1/1000* | |
| **Q(8)** | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both _____ <br> Title Co. (If different from Escrow Holder): _____ | |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(11)** | | City transfer tax, fees | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(12)** | 11M(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | [ ] Buyer [ ] Seller [ ] Both _____ | Unless Otherwise Agreed,  Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee.  Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both <br> _____ | |
| **Q(16)** | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(17)** | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(18)** | 10C | Home warranty plan chosen by Buyer. Coverage includes, but is not limited to: <br> _____ <br> _____ | [ ] Buyer [ ] Seller [ ] Both _____ <br> Issued by: _____ <br> [X] Buyer waives home warranty plan | If Seller or Both checked, Seller's cost not to exceed $ _____. |

| R | OTHER TERMS: _____ |
|---|---|

_____
_____
_____

**RPA REVISED 12/25 (PAGE 3 OF 17)**   Buyer's Initials  /    Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com     **3538 Greenfield**

**Exhibit 1**

23

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA  90034* _____ Date: *May 5, 2026* _____

**4.   PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A.   PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
- ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
- ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
- ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
- ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
- ☐ Mixed Use Purchase Addendum (C.A.R. Form MU-PA)    ☐ Other _____

**B.   OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
- ☐ Addendum # _____ (C.A.R. Form ADM)    ☐ Short Sale Addendum (C.A.R. Form SSA)
- ☐ Back Up Offer Addendum (C.A.R. Form BUO)    ☐ Court Confirmation Addendum (C.A.R. Form CCA)
- ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
- ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)    ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
- ☐ Other _____    ☐ Other _____

**C.   BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**
- ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)    ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
- ☒ Wire Fraud Advisory (C.A.R. Form WFA)    ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
  (Parties may also receive a privacy disclosure from their own Agent.)
- ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)    ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
- ☐ Trust Advisory (C.A.R. Form TA)    ☐ Probate Advisory (C.A.R. Form PA)
- ☐ REO Advisory (C.A.R. Form REO)    ☐ Other _____
- ☐ Other _____    ☐ Other _____

**5.   ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A.   DEPOSIT:**
(1)   **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
(2)   **RETENTION OF DEPOSIT: Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney: (i) Before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code; and (ii) Regarding possible liability and remedies if Buyer fails to deliver the deposit.**

**B.   ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

**C.   LOAN(S):**
(1)   **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.
(2)   **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.
(3)   **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
(4)   **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

**D.   BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**E.   LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6.   ADDITIONAL FINANCING TERMS:**

**A.   VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

**B.   VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.

**C.   BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date **(paragraph 3B)** even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**RPA REVISED 12/25 (PAGE 4 OF 17)**          Buyer's Initials  *DMU* / *[initial]*    Seller's Initials  *AG* / *SH*

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          3538 Greenfield

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA  90034* _____ Date: *May 5, 2026*

**7. CLOSING AND POSSESSION:**

**A. OCCUPANCY:** If Buyer intends to occupy as a primary or secondary residence (see **paragraph 3E(3)**), and unless Otherwise Agreed, such as in C.A.R. Form TOPA: **(i)** the unit Buyer intends to occupy shall be vacant at the time possession is delivered to Buyer, and **(ii)** if the Property contains more than one unit, within **3 Days** after Acceptance Buyer shall give Seller written notice of which unit Buyer intends to occupy. Occupancy may impact available financing. **Seller shall disclose to Buyer if occupied by tenants or persons other than Seller, and attach C.A.R. Form TOPA in a counter offer if not part of Buyer's offer.**

**B. CONDITION OF PROPERTY ON CLOSING:**
Unless Otherwise Agreed: **(i)** the Property shall be delivered "**As-Is**" in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; **(iii)** Except as specified in **paragraph 9C**, Seller is not responsible to repair any holes left after the removal of any wall hangings (such as pictures and mirrors), brackets, nails or other fastening devices; and **(iv)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring Legal Action, as per this Agreement, to receive reasonable costs from Seller.

**C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.**

**D. SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed: The Parties are advised to **(i)** consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and **(ii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties. Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

**E. At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

**F.** Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8. CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

**A. LOAN(S):**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR-B form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Insurance contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Insurance contingency but not the loan contingency.

(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(5) **NO LOAN CONTINGENCY:** If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**B. APPRAISAL:**

(1) This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR-B form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

(2) **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

(3) **FAIR APPRAISAL ACT NOTICE:**

(A) Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

(B) If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

**RPA REVISED 12/25 (PAGE 5 OF 17)**      Buyer's Initials ___DMU___ / ___/___      Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com        3538 Greenfield

**Exhibit 1**

25

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034*      Date: *May 5, 2026*

**C. INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property.  See **paragraph 12.**

**D. INSURANCE:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's assessment of the availability and approval of the cost for any insurance policy desired under this Agreement.

**E. REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's review and approval of Seller's documents required in **paragraph 14A.**

**F. TITLE:**
(1) This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
(2) Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**G. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(7)**, contingent upon Buyer's review and approval of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11M** ("CI Disclosures").

**H. BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY (IF APPLICABLE):** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(8)**, a contingency of this Agreement.  Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(8)**, refuses or is unable to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**I. REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**J. REMOVAL OF CONTINGENCY OR CANCELLATION:**
(1) **For any contingency specified in paragraph 3L, 8, or elsewhere, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**
(2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after Delivery of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
(3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**K. SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(9)**.

**9. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B. ITEMS INCLUDED IN SALE:**
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window) and any associated hardware and rods, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool heaters, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P(2)** or excluded by Seller in a counter offer.
(3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.
(4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
(5) Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features.  Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Seller shall de-list any devices from any personal accounts and shall cooperate with any transfer of services to Buyer. Buyer is advised to change all passwords and ensure the security of any smart home features.

**RPA REVISED 12/25 (PAGE 6 OF 17)**    Buyer's Initials  /     Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com      3538 Greenfield

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034* _____ Date: *May 5, 2026* _____

(6) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1),** shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6),** and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

C. **ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

10. **ALLOCATION OF COSTS:**
   A. **INSPECTIONS, REPORTS, TESTS AND CERTIFICATES:** Paragraphs **3Q(1), (2), (3), and (5)** only determine who is to pay for the inspection, report, test, certificate, or service mentioned; **it does not determine who is to pay for any work recommended or identified in any such document. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).** Any reports in these paragraphs shall be Delivered in the time specified in **paragraph 3N(1).**
   B. **GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**
      (1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4).** If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
      (2) **POINT OF SALE REQUIREMENTS:**
         (A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by the Party specified in **paragraphs 3Q(5) and 3Q(6)** and any such repair, shall be completed prior to final verification of Property, unless Otherwise Agreed. Defensible space compliance shall be determined as agreed in C.A.R. Form FHDS. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
         (B) Buyer shall be provided, within the time specified in **paragraph 3N(1),** unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
      (3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
      (4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.
   C. **HOME WARRANTY:**
      (1) Buyer shall choose the home warranty plan and any optional coverages. Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18).** Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer and their cost.
      (2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
   A. **TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**
      (1) Seller shall, within the time specified in **paragraph 3N(1),** Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).
      (2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

---

**RPA REVISED 12/25 (PAGE 7 OF 17)**    Buyer's Initials  / _____ Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com        3538 Greenfield

Exhibit 1

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034*                                    Date: *May 5, 2026*

(3)   Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; or **(ii)** if exempt from the obligation to provide a TDS, complete either an Exempt Seller Disclosure (C.A.R. Form ESD) or Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer.

(4)   In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**B.   LEAD DISCLOSURES:**

(1)   Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2)   Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C.   HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features on the Property of which Seller is aware that may make the home vulnerable to wildfire and flying embers; **(iii)** a list of possible low cost fire hardening retrofits identifying which ones Seller has completed; and **(iv)** a final inspection report regarding compliance with home fire hardening if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D.   DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E.   ELECTRICAL SYSTEM INSPECTION ADVICE DISCLOSURE:** For any transaction in which a TDS is required, Seller advises the Buyer as follows: "In a purchase of real property, it may be advisable to obtain an inspection by a qualified professional of the electrical system(s) of any buildings, including, but not limited to, the main service panel, the subpanel(s), and wiring. Substandard, recalled, or faulty wiring may cause a fire risk and may make it difficult to obtain property insurance. Limited electrical capacity may make it difficult to support future electrical additions to the building(s), such as solar generation, electric space heating, electric water heating, or electric vehicle charging equipment."

**F.   WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, **11D** and **11E** are prohibited by Law.

**G.   RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(5)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11A, B, C,** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**H.   TERMINATION RIGHTS:**

(1)   **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A**, **B**, **C**, **D**, or **E**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2)   **Defensible Space Compliance:** If, by the time specified in **paragraph 11G**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**I.   WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**J.   MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K.   NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period.  Agents do not have expertise in this area.)

**RPA REVISED 12/25 (PAGE 8 OF 17)**         Buyer's Initials  /          Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com         3538 Greenfield

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034*_____ Date: *May 5, 2026*

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

**M. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1) Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
(2) If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR), unless Seller has otherwise Delivered to Buyer the most current version of any such document: **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**N. SOLAR POWER SYSTEMS:** For properties with any solar panels or solar power systems, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all known information about the solar panels or solar power system. Seller shall use the Solar Advisory and Questionnaire (C.A.R. Form SOLAR).

**O. BALCONIES, EXTERIOR STAIRWAYS AND OTHER ELEVATED ELEMENTS:** For properties with any building containing 3 or more dwelling units with elevated balconies, stairways or other elements, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer the Wooden Balcony and Stairs Addendum (C.A.R. Form WBSA) and comply with its terms.

**P. KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact insurer to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
**A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").
**B.** Buyer Investigations include, but are not limited to:
(1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:
(A) A general home inspection.
(B) An inspection for lead-based paint and other lead-based paint hazards.
(C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).
(D) Any other specific inspections of the physical condition of the land and improvements.
(2) Investigation of any other matter affecting the Property, other than those that are specified as separate contingencies. Buyer Investigations do not include, among other things, an assessment of the availability and cost of general homeowner's insurance, flood insurance, and fire insurance. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.
**C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
**D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.
**E. Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
**A. PRELIMINARY REPORT:** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

**RPA REVISED 12/25 (PAGE 9 OF 17)**     Buyer's Initials  /      Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com       3538 Greenfield

Exhibit 1
29

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034*    Date: *May 5, 2026*

**B.** **CONDITION OF TITLE:** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

**C.** **DISCLOSURE TO BUYER:** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** **FEDERAL REPORTING REQUIREMENT - GEOGRAPHIC TARGETING ORDER:** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

**E.** **SELLER DELIVERY OF INFORMATION:** Seller shall, within **7 Days** after request, give Escrow Holder necessary information to clear title.

**F.** **DEED AND VESTING:** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**G.** **TITLE INSURANCE POLICY:** Buyer shall receive an "ALTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between an ALTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14.** **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR-B, CR-S or CC).**

**A.** **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible to provide to Buyer as specified in **paragraphs 7A, 9B(6), 10, 11A, 11B, 11C, 11D, 11I, 11L, 11M, 11N, 11O, 11P, 13A, 13C, 24, and, if applicable, C.A.R. Form SWPI**.

**B.** **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

  (1) Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, Reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

  (2) Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

  (3) Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR-B or CC). Buyer is advised not to remove contingencies related to review of documents until after the documents have been Delivered. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11H**.

  (4) **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of contingency is Delivered to Seller before Seller cancels, Seller may not cancel this Agreement based on that contingency pursuant to **paragraph 14C(1)**.

**C.** **SELLER RIGHT TO CANCEL:**

  (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

  (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8H**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11G**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13D**; **(ix)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 24**; **(x)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraph 29**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

  (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

**RPA REVISED 12/25 (PAGE 10 OF 17)**    Buyer's Initials  ____ / ____  Seller's Initials  ____ / ____  

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    3538 Greenfield

Exhibit 1
30

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538  Greenfield Ave, Los Angeles, CA  90034*                              Date: *May 5, 2026*

D.  **BUYER RIGHT TO CANCEL:**
   (1)  **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.
   (2)  **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.
   (3)  **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

E.  **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action.  A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, except for Close of Escrow which shall be Delivered under the terms of **paragraph 14G**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday.  If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void. However, if the notice is for multiple items, the notice shall be valid for all contingencies and contractual actions for which the Delivery of the notice is within the time permitted in the Agreement and void as to the others.  Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F.  **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1)  **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of Reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any Reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2)  **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

G.  **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

H.  **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow.  **A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.  A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3).  Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds.  Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

15. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

16. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments to third parties, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien.  Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow.  The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**RPA REVISED 12/25 (PAGE 11 OF 17)**      Buyer's Initials  /   Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          3538 Greenfield

Exhibit 1
31

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538  Greenfield Ave, Los Angeles, CA  90034* _____ Date: *May 5, 2026* _____

**18. BROKERS AND AGENTS:**

   **A. COMPENSATION:**

     (1) **Broker Compensation:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer.  The amount of compensation, if a percentage, will be based on the final purchase price.  Buyer is advised that Buyer's Broker should not receive compensation from any source in excess of the amount in the buyer representation agreement. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

     (2) **Third party beneficiary:** Seller acknowledges and agrees that Buyer's Broker is a third-party beneficiary of this Agreement and may pursue Seller for failure to pay the amount specified in this Agreement.

   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   **A. ESCROW INSTRUCTION PARAGRAPHS: The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11I, 11M(2), 13 (except 13C), 14H, 17, 18A, 19, 23, 24, 25, 28, 32,** and **33.** The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

   **B. ESCROW HOLDER GENERAL PROVISIONS:** Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2).** Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days,** shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

   **C. COPIES; STATEMENT OF INFORMATION; TAX WITHHOLDING INSTRUCTIONS:** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance.** Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11I,** Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11I.**

   **D. BROKER COMPENSATION:**

     (1) **PAYMENT:** Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A.**  If a Copy of the separate compensation agreement(s), including if applicable **paragraph 3G(3)** of this Agreement, is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). Buyer's obligation to pay Buyer's Broker shall be offset by any amount that Seller pays Buyer's Broker. Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A,** and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement.  Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

     (2) **COMPENSATION DISCLOSURE:** Escrow Holder shall provide to Buyer a closing statement or other written documentation disclosing the amount of compensation paid to Buyer's Broker. Escrow Holder shall provide to Seller a closing statement or other written documentation disclosing: **(i)** the amount of compensation paid to Seller's Broker; and **(ii)** if applicable pursuant to **paragraph 3G(3)** or other mutual instruction of the parties, the amount paid by Seller for Buyer's Broker compensation. Escrow Holder's obligation pursuant to **paragraph 19D,** is not intended to alter any preexisting practice of Escrow Holder to issue, as applicable, joint or separate closing statements.  Escrow Holder's obligation pursuant to **paragraph 19D** is independent of, but may be satisfied by, any closing statement mandated by Buyer's lender.

   **E. INVOICES:** Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

   **F. VERIFICATION OF DEPOSIT:** Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraph 5A(1) and** C.A.R. Form IDA. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

   **G. DELIVERY OF AMENDMENTS:** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**RPA REVISED 12/25 (PAGE 12 OF 17)**      Buyer's Initials  / _____      Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        3538 Greenfield

Exhibit 1

32

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034* _____ Date: *May 5, 2026*

20. **SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

21. **MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be input into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

22. **ATTORNEY FEES AND COSTS:** In any Legal Action between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

23. **ASSIGNMENT/NOMINATION:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's wholly-owned entity or trust that exists at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first obtaining Seller's separate written consent to a specified assignee (C.A.R. Form AOAA). Buyer shall, within the time specified in **paragraph 3K**, Deliver to Seller any request to assign this Agreement. Seller shall not unreasonably withhold such consent. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Seller's withholding of consent shall be deemed reasonable if: **(i)** Buyer is to receive any monetary or other consideration for the assignment; **(ii)** Buyer makes any misrepresentation(s) to Seller about any aspect of the assignment; or **(iii)** Buyer Delivers an assignment request to Seller after the time specified in **paragraph 3K.** Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is Buyer's wholly-owned entity or trust, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender stating assignee is preapproved or prequalified as specified in **paragraph 6B.** Should assignee fail to deliver such letter, Seller, after first giving assignee a Notice to Buyer to Perform, may terminate the assignment. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller. Parties shall provide any assignment agreement to Escrow Holder within **1 Day** after the assignment. Any nomination by Buyer shall be subject to the same procedures, requirements, and terms as an assignment, as specified in this paragraph.

24. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraphs 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California; and **(ii)** shall Deliver to the other Party and Escrow Holder, within **3 Days** after Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5)), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

25. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:
    A. **"Acceptance"** means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.
    B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B.**
    C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.
    D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement.  Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.
    E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.
    F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.
    G. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.
    H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.
    I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) Consistent with California Civil Code § 11, after Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or Legal Holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or Legal Holiday ("Allowable Performance Day"), and ending at 11:59 pm. "Legal Holiday" shall mean any holiday or optional bank holiday under Civil Code §§ 7 and 7.1, any holiday under Government Code § 6700. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed or any day that the lender or Escrow Holder under this Agreement is closed, the COE shall occur on the next day the Recorder's office in that County, the lender, and the Escrow Holder is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.
    J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

**RPA REVISED 12/25 (PAGE 13 OF 17)**        Buyer's Initials  /    Seller's Initials  /

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        3538 Greenfield

Exhibit 1

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538 Greenfield Ave, Los Angeles, CA 90034*          Date: *May 5, 2026*

K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other). A document, or as applicable link to a document, shall be deemed to be "in possession" if it is located in the in-box for the applicable Party or Authorized Agent; or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to the designated electronic delivery address specified in the Real Estate Broker Section, unless Otherwise Agreed in C.A.R. Form DEDA. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party (C.A.R. Form DEDA). Links could be, for example, to DropBox or Google Drive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and recipient opening, the document by link.

L. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Unless Otherwise Agreed, Buyer and Seller agree to the use of Electronic Signatures. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legal Action"** means a lawsuit or legal proceeding in arbitration or court.

O. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

P. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

Q. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

R. **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

27. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. **If at least one but not all Parties initial, a counter offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By Signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

28. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

## REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK
## PROCEED TO NEXT PAGE

**RPA REVISED 12/25 (PAGE 14 OF 17)**          Buyer's Initials  / _____     Seller's Initials  / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          3538 Greenfield

Exhibit 1
34

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538  Greenfield Ave, Los Angeles, CA  90034*      Date: *May 5, 2026*

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages):
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials _____ / _____      Seller's Initials _AG_ / _SH_

**30. MEDIATION:**
A. The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Dispute Resolution Center for Real Estate **(www.consumermediation.org)** or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences Legal Action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of Legal Action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
B. ADDITIONAL MEDIATION TERMS: **(i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**31. ARBITRATION OF DISPUTES:**
A. **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
B. **EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
C. **PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, provided the filing party concurrent with, or immediately after such filing makes a request to the court for a stay of litigation pending any applicable mediation or arbitration proceeding; or (iii) the filing of a mechanic's lien.**
D. **AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
E. **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

Buyer's Initials _____ / _____      Seller's Initials _AG_ / _SH_

**RPA REVISED 12/25 (PAGE 15 OF 17)**    Buyer's Initials _DML_ / _____    Seller's Initials _AG_ / _SH_

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com        3538 Greenfield

Exhibit 1

35

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538  Greenfield Ave, Los Angeles, CA  90034*   Date: *May 5, 2026*

**32. OFFER**
   **A.**  **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**
   **B.**  [X] **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
      (1)  **Non-Individual (entity) Buyers:** One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
      (2)  **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #):  Di Nali Consulting LLC
                                  .
      (3)  **Contractual Identity of Buyer:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
         (A)  If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
         (B)  If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
      (4)  **Legally Authorized Signer:**
         (A)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual.  See **paragraph 24** for additional terms.
         (B)  The name(s) of the Legally Authorized Signer(s) is/are:  Farbod Rezvani_____, _____.
   **C.**  The RPA has 17 pages.  Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.
   **D.**  **BUYER SIGNATURE(S):**
(Signature) By, _Di Nali Consulting LLC_    Signed by: [signature]    **Date:** 5/5/2026
Printed name of BUYER: **Di Nali Consulting LLC**  E65331896BC843B...
[X] Printed Name of Legally Authorized Signer: ___Farbod Rezvani___    Title, if applicable, Managing Member
(Signature) By, _____    **Date:** _____
Printed name of BUYER: **and or assignee**
    [ ] Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
[ ] IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**
   **A.**  **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
Seller shall return and include the entire agreement with any response.
    [ ] **Seller Counter Offer** (C.A.R. Form SCO or SMCO)
    [ ] **Back-Up Offer Addendum** (C.A.R. Form BUO)
   **B.**  [ ] **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
      (1)  **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
      (2)  **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #):  _____
                                    .
      (3)  **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
         (A)  If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
         (B)  If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
      (4)  **Legally Authorized Signer:**
         (A)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual.  See **paragraph 24** for additional terms.
         (B)  The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.
   **C.**  The RPA has 17 pages.  Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.
   **D.**  **SELLER SIGNATURE(S):**
(Signature) By, _Alan Gomperts_    **Date:** 05/05/2026
Printed name of SELLER: ___Alan Gomperts___
    [ ] Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _Sharon Halevy_    **Date:** 05/05/2026
Printed name of SELLER: Sharon Halevy
    [ ] Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
[ ] IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**RPA REVISED 12/25 (PAGE 16 OF 17)**



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com        3538 Greenfield

Exhibit 1
36

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

Property Address: *3538  Greenfield Ave, Los Angeles, CA  90034*_____    Date: *May 5, 2026*_____

---

**REAL ESTATE BROKERS SECTION**

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
4. **Agents' Signatures and designated electronic delivery address:**

   A.  Buyer's Brokerage Firm *Beverly & Co.*_____    DRE Lic. # _02078273___
       By _____ *Juliet Shoham*   *Moji Zucker/Juliet Shoham* DRE Lic. # *01820725* /01820275  Date _5/5/2026_
       By ___F10CC9B131984C0... ___DF3F28860D64458...___    DRE Lic. # _____    Date _____
       Address *9350 Wilshire Blvd. #250*_____    City *Beverly Hills*_____    State *CA*  Zip *90210*
       Email *julietshoham@gmail.com*_____    Phone # _____
       ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
       ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
       **Designated Electronic Delivery Address(es): Email above or** _____
       ☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

   B.  Seller's Brokerage Firm *United Real Estate Professionals*_____    DRE Lic. # *01102160*
       By _____    *Ben Kanani* DRE Lic. # *01878686*_____    Date 05/05/2026
       By _____    DRE Lic. # _____    Date _____
       Address *17011 Beach Blvd. #900*_____    City *Huntington Beach*_____    State *CA* Zip *92647*
       Email *benkanani@gmail.com*_____    Phone # *(310)800-7405*
       ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
       ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
       **Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent): Email above or** _____
       ☐ **Attached DEDA:** If Parties elect to have an alternative Delivery method, such method may be indicated on C.A.R. Form DEDA.

Buyer's Initials [Initial] _DML_ / [Initial] ___ Seller's Initials _AG_ / _SH_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder _____    Escrow # _____
By _____    Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** _BK_ / _____    Seller's Brokerage Firm presented this offer to Seller on 05/05/2026____ (date).
Agent or Seller Initials

---

**OFFER NOT ACCEPTED:** _____/_____    No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
Seller's Initials

---

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**RPA REVISED 12/25 (PAGE 17 OF 17)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 17 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    **3538 Greenfield**

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## FEDERAL REPORTING REQUIREMENT PURCHASE ADDENDUM
(C.A.R. Form FRR-PA, Revised 4/26)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement ("Agreement"), dated _05/05/2026_, on property known as _3538  Greenfield Ave, Los Angeles, CA  90034_, ("Property") in which _____ is referred to as ("Seller") and _____ _Di Nali Consulting LLC, and or assignee_ _____ is referred to as ("Buyer").

This addendum is to be used with a: **(i)** Residential Purchase Agreement (C.A.R. Form RPA); **(ii)** New Construction Purchase Agreement (C.A.R. Form NCPA); **(iii)** Vacant Land Purchase Agreement, if the Property will be improved with a residential dwelling with one to four units (C.A.R. Form VLPA); **(iv)** Residential Income Purchase Agreement (C.A.R. Form RIPA), where the income property contains one to four units; or **(v)** Residential Units Purchase Addendum (C.A.R. Form RU-PA), where the mixed-use property contains one to four residential units.

1. **FEDERAL REPORTING OBLIGATION:** Pursuant to rules issued by the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of the Treasury ("Treasury"), a "Reporting Person" (typically the escrow or title company responsible for closing) is required to collect, and report to the Treasury, certain information about the Buyer and Seller in the sale of certain real property for the purpose of preventing money laundering.  The reporting requirements scheduled to take effect on March 1, 2026 have been suspended due to a federal court ruling in Texas on March 19, 2026. Title and escrow companies may still be collecting, but not reporting, information because of uncertainty regarding their obligations, and the possibility of an appeal.

2. **CONDITIONS FOR WHICH THE REPORTING OBLIGATIONS APPLY:** The collection and reporting obligations apply if: **(i)** the property being purchased is real property with one to four residential units or vacant land for which the transferee intends to build residential real property with one to four units, or shares in a cooperative housing corporation; **(ii)** the buyer is a legal entity or  trust; and **(iii)** the buyer is making an "all-cash" purchase or financing the purchase through a bank or other institution that does not have an independent money laundering reporting obligation.

3. **REQUIRED REPORTING INFORMATION:** The following is a non-exclusive list of the "persons" from whom the Reporting Person is required to collect information as well as the type of information to be collected.
   A. **Buyers:** Entity Buyers, Beneficial Owners of Entity Buyers, Signing Parties of Entity Buyers, Trust Buyers, Entity Trustee of Trust Buyers, and Individual trustees and beneficial owners of Trust Buyers;
   B. **Sellers:** Individual sellers, Entity sellers, Trust Sellers, Individual and entity trustees of Trust Sellers;
   C. **Information to be collected:** Legal names, dates of birth, dates of execution of trusts, addresses, dbas, citizenship (for trustees or beneficial owners of trust buyers) taxpayer identification numbers ("TIN"), and, if applicable, account number and financial institution name from which payment is made.

4. **DELIVERY OF REQUIRED INFORMATION:**
   A. Buyer and Seller shall, within **7 Days** after receiving a request for FinCEN information from the Reporting Person for the transaction, deliver to the Reporting Person all necessary information to satisfy the reporting requirements.
   B. Buyer and Seller agree to make a good faith effort to acquire such information from any entity, beneficial owner, trustee or signing party that is not Buyer or Seller.

5. **CONSEQUENCES OF FAILURE TO PROVIDE REQUESTED INFORMATION:**
   A. The Reporting Person will not close escrow if the requested information is not provided in full, regardless of whether due from Buyer or Seller or another person on their behalf;
   B. Any Buyer or Seller who fails to provide the requested information for themselves may be in breach of contract.
   C. If the Reporting Person requires information from a related third party such as an entity, beneficial owner, signing party, or trustee, and the Reporting Person notifies a Buyer or Seller that the other has failed to provide such information, the performing Buyer or Seller may cancel after first giving the non-performing Buyer or Seller a notice to perform.

**By signing below, Buyer and Seller acknowledge that each has read, understands, has received a copy of, and agrees to the terms of this Federal Reporting Requirement Purchase Addendum.**

| | | |
|---|---|---|
| Buyer _Di Nali Consulting LLC_ <br>9A885DD0F993460... | _(signature)_ <br>E55331896BC843B... | _Di Nali Consulting LLC_ Date 5/5/2026 |
| Buyer | | _and or assignee_ Date |
| Seller _Alan Gomperts_ | | Date 05/05/2026 |
| Seller _Sharon Halevy_ | | Date 05/05/2026 |

© 2026, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FRR-PA REVISED 4/26 (PAGE 1 OF 1)**

EQUAL HOUSING OPPORTUNITY

**FEDERAL REPORTING REQUIREMENT PURCHASE ADDENDUM (FRR-PA PAGE 1 OF 1)**

Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210                    Phone: 3105052217          Fax:                    3538 Greenfield
Juliet Shoham                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 1
38

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332



# BUYER'S INVESTIGATION ADVISORY
### (C.A.R. Form BIA, Revised 6/25)

1.  **IMPORTANCE OF PROPERTY INVESTIGATION:** Unless otherwise specified in the Agreement, the physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A Broker's inspection is a limited visual inspection (see C.A.R. Form AVID), and a Broker is not qualified to conduct the investigations listed below nor will Broker conduct the investigations checked below by Buyer. For these reasons, you should conduct thorough inspections, investigations, tests, surveys and other studies (Inspections and Investigations) of the Property personally and with appropriate professionals (see C.A.R. Form SBSA), who should provide written reports of their Inspections. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If any professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2.  **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to other professionals, Broker does not guarantee their performance.

3.  **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

    A.  **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

    B.  **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

    C.  **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

    D.  **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

    E.  **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

    F.  **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

    G.  **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

    H.  **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and insurance contingencies.

    I.  **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the Property.

    J.  **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Dead bolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

    K.  **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

    L.  **UTILITIES; SEWER; INTERNET:** Availability of gas, electric, water, sewer, garbage, internet and other services. The provider and quality of service may vary by location.

    M.  **SOLAR POWER SYSTEM:** The existence of a solar power system; whether it is owned, leased, financed, or otherwise subject to obligations, such as a power purchase agreement or maintenance agreement; the condition of and costs associated with the system.

© 2025, California Association of REALTORS®, Inc.

**BIA REVISED 6/25 (PAGE 1 OF 2)**



EQUAL HOUSING OPPORTUNITY

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

| Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210 | Phone: 3105052217 | Fax: | 3538 Greenfield |
|---|---|---|---|
| Juliet Shoham | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com | | |

Exhibit 1

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

**N. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyer acknowledges that they have received a copy of this Buyer Investigation Advisory, and they have read and understand its terms. Buyer is encouraged to read it carefully.**

Buyer _Di Nali Consulting LLC_ 9A885DD0F993460...        E55331896BC843B...        **_Di Nali Consulting LLC_** Date 5/5/2026

Buyer _____ **_and or assignee_** Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BIA REVISED 6/25 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com        **3538 Greenfield**

**Exhibit 1**
**40**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
# OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 6/25)

**CALIFORNIA ASSOCIATION OF REALTORS®**

1. **BROKER AGENCY RELATIONSHIP WITH MULTIPLE PRINCIPALS:** A real estate broker ("Brokerage"), whether a corporation, partnership or sole proprietorship, may legally represent more than one buyer or seller. This multiple representation can occur through a sole proprietor Brokerage; or through a salesperson or broker acting under the Brokerage's license ("Associate Licensee"). Associate Licensees under a Brokerage's license may be working out of the same or different office locations, and may or may not know one another. Clients of the Brokerage may have similar goals and may compete against each other for the same property or the same pool of prospective buyers. Some buyers and sellers prefer to work with individual, sole proprietor brokerages, some with brokerages that have multiple licensees, and others with large brokerage companies that have multiple offices and may have a regional, statewide or a national or international presence. Each has its own advantages. It is important for buyers and sellers to understand how the Brokerage representation of multiple buyers or sellers may impact them under various situations.

   A. **MULTIPLE BUYERS:** Brokerage (individually or through any of its Associate Licensees) may work with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed by the Brokerage. Whether Brokerage is large or small, it is possible that one Associate-Licensee (agent 1) working with a buyer may not be aware that another Associate-Licensee (agent 2) is working with a different buyer who is interested in viewing or making an offer on the same property as agent 1's client, and vise-versa. Brokerage will not limit or restrict any buyer from making an offer on any specific property, whether or not the Brokerage represents other buyers interested in the same property.

   B. **MULTIPLE SELLERS:** Brokerage (individually or through its Associate Licensees) may have listings on many properties at the same time. As a result, Brokerage will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Brokerage and some may not. Brokerage will market all listed properties to all prospective buyers, whether or not Brokerage has other listed properties that may appeal to the same prospective buyers.

   C. **DUAL AGENCY IN A TRANSACTION:** California law allows a brokerage to represent both a buyer and a seller in a transaction (Civil Code § 2079 et seq.).
      (1) **Brokerage Dual Agency:** If one Associate-Licensee from the Brokerage is working with a buyer and another Associate-Licensee from the same Brokerage is working with a seller on the same transaction, the Brokerage is considered a dual agent with fiduciary duties to both buyer and seller. In that situation, each individual Associate Licensee working on the transaction is also considered a dual agent having the same knowledge and responsibility as the Brokerage.
      (2) **Single Agent Dual Agency:** Another form of dual agency occurs when an individual Associate-Licensee is working with both the buyer and seller in the same transaction. In that situation, both the Brokerage company and the individual Associate-Licensee are dual agents with fiduciary duties to each side of the transaction. There is no one approach to this situation. Some brokerages allow the single agent dual agent to continue to represent both parties, as that Associate-Licensee is the chosen agent of the principal. Some brokerages recommend that the broker or an office manager get involved if there is a dispute between the buyer and seller. Some brokerages will require that the broker or an office manager assist the Associate-Licensee with one principal or the other, even if the parties do not have a dispute. Whether one of these approaches, or another, is taken in a single agent dual agency will depend on the circumstances and the brokerage policy. Regardless of the approach, the Associate-Licensee and Brokerage shall conduct activity consistent with the terms in **paragraph 2C.**

2. **ACKNOWLEDGEMENT AND CONSENT:**
   A. **OFFERS ARE NOT NECESSARILY CONFIDENTIAL:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer to other interested buyers and agents unless all parties and their agent have signed a written confidentiality agreement, (C.A.R. Form NDA). In the absence of a signed NDA, Buyer consents to such disclosure. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy, and the instructions of the seller.
   B. **MULTIPLE BUYERS OR SELLERS:** If Seller is represented by Brokerage, Seller acknowledges that Brokerage may represent prospective buyers of Seller's property and consents to Brokerage acting as a dual agent for both Seller and buyer in that transaction. If Buyer is represented by Brokerage, Buyer acknowledges that Brokerage may represent sellers of property that Buyer is interested in acquiring and consents to Brokerage acting as a dual agent for both Buyer and seller with regard to that property.
   C. **DUAL AGENCY IN A TRANSACTION:** In the event of dual agency, Seller and Buyer agree that: **(i)** a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and **(ii)** except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Seller and Buyer should discuss with a dual agent the details and parameters of this requirement. Seller and/or Buyer consents to allowing Brokerage to act as a dual agent in a transaction.

PRBS REVISED 6/25 (PAGE 1 OF 2)

EQUAL HOUSING OPPORTUNITY

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 2)**

Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210                Phone: 3105052217        Fax:                3538 Greenfield
Juliet Shoham                              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Exhibit 1

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

**By signing below, Buyer and/or Seller acknowledge that each has received a copy of this Possible Representation of More Than One Buyer or Seller –- Disclosure and Consent, and each has read, understands, and agrees to its terms and consents to the agency possibilities disclosed.**

Buyer  *Di Nali Consulting LLC*                          *Di Nali Consulting LLC* Date 5/5/2026
   9A885DD0F993460...                 E55331896BC843B...

Buyer                                                     *and or assignee* Date _____

Seller  *Alan Gomperts*                                  Date 05/05/2026

Seller  *Sharon Halevy*                                  Date 05/05/2026

Buyer's Brokerage Firm *Beverly & Co.*                   DRE Lic # 02078273

By _____ *Juliet Shoham* _____ DRE Lic # 01820725  Date 5/5/2026
   *Moji Zucker/Juliet Shoham*                           01820275

Seller's Brokerage Firm *United Real Estate Professionals*   DRE Lic # 01102160

By _____  DRE Lic # 01878686  Date 05/05/2026
   *Ben Kanani*

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**PRBS REVISED 6/25 (PAGE 2 OF 2)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com    3538 Greenfield

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

**CALIFORNIA ASSOCIATION OF REALTORS®**

# FAIR HOUSING AND DISCRIMINATION ADVISORY
**(C.A.R. Form FHDA, Revised 12/24)**

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION**: NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2024, California Association of REALTORS®, Inc.
**FHDA REVISED 12/24 (PAGE 1 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**



| Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210 | Phone: 3105052217 | Fax: | 3538 Greenfield |
|---|---|---|---|
| Juliet Shoham | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com | | |

**Exhibit 1**



43

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332

   E.  Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

   F.  Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

   G.  Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

   H.  Denying a home loan or homeowner's insurance;

   I.  Offering inferior terms, conditions, privileges, facilities or services;

   J.  Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

   K.  Harassing a person;

   L.  Taking an adverse action based on protected characteristics;

   M.  Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

   N.  Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):

      (i)  Failing to allow that person to keep the service animal or emotional support animal in rental property,

      (ii)  Charging that person higher rent or increased security deposit, or

      (iii)  Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

   O.  Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

   A.  Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

   B.  Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

   C.  Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

   D.  Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

   E.  Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

   A.  Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

   B.  State: **https://calcivilrights.ca.gov/housing/**

   C.  Local: local Fair Housing Council office (non-profit, free service)

   D.  DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

   E.  Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.

   F.  Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

   A.  Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

   B.  An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

   C.  An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

   D.  An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

   E.  Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

   F.  Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _Di Nali Consulting LLC_   Signed by: _[signature]_   *Di Nali Consulting LLC* Date 5/5/2026

Buyer/Tenant ___9A885DD0F969400___   E55331896BC843B...   *and or assignee* Date ___

Seller/Housing Provider _Alan Gomperts_   Date 05/05/2026

Seller/Housing Provider _Sharon Halevy_   Date 05/05/2026

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FHDA REVISED 12/24 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    3538 Greenfield

**Exhibit 1**

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332



**BUYER HOMEOWNERS' INSURANCE ADVISORY**
(C.A.R. Form BHIA, 6/24)

1. **IMPORTANCE OF OBTAINING PROPERTY INSURANCE:** If the property you are purchasing is destroyed or damaged due to natural disaster or accident or some other event, insurance may be available to help with the cost of repair or rebuilding.  In the absence of property insurance, the homeowner would be responsible for the full expense.  If the property is purchased with a loan, or refinanced, the lender will require an insurance policy protecting its interest.  Insurance policies can cover damage due to one or more of the following: fire, flood, earthquake and other causes.  The policy or an insurance broker should be consulted to determine when coverage applies and whether a supplement or rider can be purchased to provide additional coverage or if a separate policy is necessary.

2. **PROPERTY INSURANCE AND PURCHASE CONTRACT TERMS:** Your real estate purchase contract may contain a contingency that gives you the right to legally cancel the agreement within a specified time if you are unable to obtain or afford property insurance. This cancellation right may be a specific contingency pertaining to insurance or may be part of an overall investigation contingency. If buyer waives or removes the applicable contingency before determining the availability and cost of property insurance, buyer is acting against the advice of broker. Additionally, if the property is part of an HOA, lenders may require and buyers will want to know that the HOA has adequate insurance to cover the areas for which the HOA is responsible.

3. **CALIFORNIA'S PROPERTY INSURANCE MARKET:** Some insurance carriers in California have stopped issuing new property insurance policies and others are limiting the number and location of new policies, due to rising replacement costs and an increase in natural disasters. These changes may affect both the availability and cost of insurance. However, over 50 insurance carriers are admitted to sell property insurance in California so it may be possible to obtain insurance even if some carriers will not write a new policy covering the property you intend to buy. An insurance broker may also be able to find a non-admitted insurance carrier offering to insure the property you intend to buy. Because locating an affordable insurance policy could take time and effort, buyers are advised to make all insurance inquiries as early in the home buying process as possible.

4. **INSURANCE CONDITIONS:** Many insurance carriers impose physical condition standards before issuing a policy, or reserve the right to cancel policies even after they are issued, if certain minimum standards are not confirmed in an inspection or otherwise.  Physical conditions standards could include, but are not limited to, prohibition of "knob and tube" electrical wiring, requirements related to piping/plumbing materials, standards related to the age and/or quality of the roof or foundation, minimal safety standards related to handrails, tripping hazards, and defensible space requirements.

5. **RESOURCES:** The California Department of Insurance (DOI) maintains a website addressing Residential Home insurance.  Resources on this State government webpage include: **(i)** Top Ten tips for Finding Residential Insurance; **(ii)** Residential Insurance Company Contact List; **(iii)** Home Insurance Finder; and **(iv)** information on other insurance issues.  The webpage also includes information on how to contact the DOI, and suggestions on what to do if you cannot find insurance.  The webpage and link to other documents is located at https://www.insurance.ca.gov/01-consumers/105-type/5-residential/index.cfm.

6. **BROKER RECOMMENDATION:** Buyer is advised to explore available property insurance options early in the home buying process and to consult with a qualified insurance professional of buyer's choosing to understand insurance availability and cost prior to removal of any related contingencies.  Real estate brokers do not have expertise in this area.

**By signing below, Buyer acknowledges that Buyer has read, understands, and has received a copy of this Buyer Homeowners' Insurance Advisory.**

Buyer _Di Nali Consulting LLC_ ⟨Signed by: 9A885DD0F993460...⟩   ⟨Signed by: E55331896BC843B...⟩   _**Di Nali Consulting LLC**_  Date 5/5/2026

Buyer _____   _**and or assignee**_  Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. a subsidiary of the California Association of REALTORS®



**BHIA 6/24 (PAGE 1 OF 1)**

**BUYER HOMEOWNERS' INSURANCE ADVISORY (BHIA PAGE 1 OF 1)**

| Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210 | Phone: 3105052217 | Fax: | 3538 Greenfield |
|---|---|---|---|
| Juliet Shoham | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com | | |

Exhibit 1
45

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332



# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Reviewed 6/25)

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:
1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Housing Providers at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Housing Provider.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Housing Provider, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks.**

The term "Housing Provider" also includes Landlord or Rental Property Owner.

**By signing below, Buyer/Tenant and Seller/Housing Provider acknowledge that each has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory, and each has read and understands its terms.**

| | | |
|---|---|---|
| Buyer/Tenant | *Di Nali Consulting LLC*  9A885DD0F993460... | *Di Nali Consulting LLC* Date 5/5/2026 |
| Buyer/Tenant | E55331896BC843B... | *and or assignee* Date _____ |
| Seller/Housing Provider | *Alan Gomperts* | Date 05/05/2026 |
| Seller/Housing Provider | *Sharon Halevy* | Date 05/05/2026 |

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**WFA REVIEWED 6/25 (PAGE 1 OF 1)**

### WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)

| | | |
|---|---|---|
| Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210 | Phone: 3105052217    Fax: | 3538 Greenfield |
| Juliet Shoham | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com | |

Exhibit 1
46

Docusign Envelope ID: 080217E9-A805-822E-825D-ACBD431FB332



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _Di Mali Consulting LLC_ ____ _Di Nali Consulting LLC_ and or assignee _____ Date _5/5/2026_

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210    Phone: 3105052217    Fax:    3538 Greenfield
Juliet Shoham    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Exhibit 1
47

Authentisign ID: B2E9F0B2-5759-F111-8FCA-002248359474



**CALIFORNIA ASSOCIATION OF REALTORS®**

# BUYER CONTINGENCY REMOVAL No. __1__
### (C.A.R. Form CR-B, Revised 6/24)

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR), ☐ Other _____ dated _05/05/2026_ , ("Agreement"), on property known as _____ *3538 Greenfield Ave, Los Angeles, CA  90034-6102* _____ ("Property"), between _____ *Di Nali Consulting LLC and/ or Assignee* _____ ("Buyer") and _____ *GOMPERTS & HALEVY FAMILY TRUST* _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. **Buyer removes ONLY the following individually checked Buyer contingencies:** (Paragraph numbers refer to C.A.R. Form RPA. Applicable paragraph numbers may be different for different forms.)
   A. ☐ Loan **(Paragraph 3L(1)** and **8A)**
   B. ☐ Appraisal **(Paragraph 3L(2)** and **8B)**
   C. Investigation of Property **(Paragraph 3L(3)**, **8C**, and **12)**
      (1) ☐ Entire Buyer's Investigation Contingency **(Paragraph 12)**
      OR (2) ☐ Only the part of the Investigation related to inspections concerning physical attributes of the Property **(Paragraph 12B(1))**
      OR (3) ☐ All Buyer Investigations other than the physical attributes **(Paragraph 12B(2))**
      OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT: ☐ Other: _____
   D. ☐ Insurance **(paragraph 3L(4)** and **8D)**
   E. Review of Seller Documents:
      (1) ☐ Review of All Seller Documents **(Paragraph 3L(5)**, **8E**, **9B(6)**, **10A**, and **11)**
      OR (2) ☐ Review of All Seller Documents, EXCEPT:
         ☐ Government Reports **(Paragraph 10A)**;
         ☐ Statutory and other Disclosures **(Paragraph 11)**;
         ☐ Other: _____
   F. ☐ Preliminary ("Title") Report **(Paragraph 3L(6)**, **8F**, and **13)**
   G. ☐ Common Interest (HOA or OA) Disclosures **(Paragraph 3L(7)**, **8G** and **11M)**
   H. ☐ Review of leased or liened items **(Paragraph 3L(8)**, **8H**, and **9B(6))**
   I. Sale of Buyer's Property **(Paragraph 3L(9)** and **8K)**
      ☐ Entering into contract for Buyer's Property      ☐ Close of Escrow on Buyer's Property
   J. ☐ Other: _____

OR 3. ☐ **ALL Buyer contingencies are removed, EXCEPT:**
      ☐ Loan Contingency **(Paragraph 3L(1)** and **8A)**;
      ☐ Appraisal Contingency **(Paragraph 3L(2)** and **8B)**;
      ☐ Insurance **(Paragraph 3L(4)** and **8D)**;
      ☐ Contingency for the Close of Buyer's Property **(Paragraph 3L(9)** and **8K)**;
      ☐ Condominium/Planned Development (HOA) Disclosures **(Paragraph 3L(7)**, **8G** and **11M)**;
      ☐ Other: _____

OR 4. ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. **Once all contingencies are removed, whether or not Buyer has satisfied themselves regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.**

   **NOTE:** If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document.

Buyer _____ *Di Nali Consulting LLC and/ or Assignee* Date _____

Buyer _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC, *a subsidiary of the California Association of REALTORS®*



EQUAL HOUSING OPPORTUNITY

**CR-B REVISED 6/24 (PAGE 1 OF 1)**

### BUYER CONTINGENCY REMOVAL (CR-B PAGE 1 OF 1)

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212                    Phone: 310-926-8469        Fax:                    3538 Greenfield
Behnam (Ben) Kanani                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com

Exhibit 1
48

DocuSign Envelope ID: E428251 6-F8D7-8ACC-8094-54CD7E9D5DFA



**CALIFORNIA ASSOCIATION OF REALTORS®**

**REQUEST FOR REPAIR No.    _2_**
(C.A.R. Form RR, Revised 12/23)

**Date Prepared:** _05/26/2026_
In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Other _____
_____ ("Agreement"),
dated    _05/05/2026_   , on property known as   **3538  Greenfield Ave, Los Angeles, CA  90034**_____ ("Property"),
between _____**Di Nali Consulting LLC and/ or Assignee**_____ ("Buyer"),
and _____**Gomberts and Halevy Family Trust**_____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1.  **BUYER REQUEST (Check all that apply): (Note: Seller has no obligation to respond to Buyer request.)**
    **A.** ☐ Buyer requests that Seller, prior to final verification of condition, repair or take the other specified action
    for each item listed below or ☐ on the attached list dated _____ :
    _____
    _____
    _____
    _____
    _____
    _____

    **B.** **(i)** ☐ **SECTION 1:** Buyer requests Seller pay to have Section 1 work completed as specified in the attached Pest Control
    Report dated _____ prepared by _____
    **(ii)** ☐ **SECTION 2:** Buyer requests Seller pay to have Section 2 work completed as specified in the attached Pest
    Control Report dated _____ prepared by _____
    **(iii)** If Buyer requests either Section 1 or Section 2 work above, Seller shall, no later than **5 (or ___ ) Days** Prior to Close of
    Escrow, Deliver to Buyer a written pest control certification showing the corrective work has been completed.
    **C.** ☒ Buyer requests that Seller credit Buyer $ _25,000.00_____ at Close of Escrow.
    (**Note:** Any credit included in this paragraph is separate from and shall not reduce or supersede any other credit in the
    Agreement unless Otherwise Agreed. Credits need to be disclosed to Buyer's lender and total contractual credits may be
    limited pursuant to the Agreement. Total credit amount may not be enough to remedy all defects or repairs.)
    **D.** ☐ Buyer requests that Seller modify the purchase price. The revised purchase price shall be $_____
2.  **Attached Reports:** A copy of the following inspection or other report is attached.
    ☐ _____   ☐ _____
    ☐ _____   ☐ _____
3.  **FHA or VA:** Buyer's FHA or VA lender requires specified actions in the appraisal or other lender documentation (if checked, ☐
    attached).
    **A.** Buyer's FHA or VA lender requires the following items to be repaired. Buyer requests that Seller repair the following items, and
    Seller (or ☐ Buyer) shall pay for any such repair: _____
    _____
    _____
    _____
    _____
    _____

    **B.** Buyer requests that Seller pay for the following costs or expenses required by the FHA or VA lender: _____
    _____
4.  If Seller agrees to all of Buyer's Requests, or some of Buyer's requests and Buyer accepts Seller's partial agreement below:
    **A.** (1)  Buyer removes the Investigation of Property Contingency (**paragraph 3L(3) and 8C**), ☐ except the following:
    _____
    OR (2) ☐ Buyer removes those contingencies identified on the attached, Signed, Contingency Removal Form (C.A.R. Form CR)
    **B.** Buyer Releases Seller from any loss, liability, expense, claim or cause of action regarding the disclosed condition of the
    Property ("Release").
5.  **EXPIRATION:** Buyer proposes this Request for Repairs (RR) which shall be deemed revoked:
    **A.** Unless by 5:00 PM on the third Day after it is signed by Buyer (or by _____ ☐ AM/ ☐ PM on _____ date) the proposed
    RR is signed by Seller and a Copy of this RR is Delivered to Buyer.
    **B.** If Buyer withdraws this Request for Repair any time prior to Seller's acceptance by communicating withdrawal to Seller or
    Seller's Agent.

© 2023, California Association of REALTORS®, Inc.
**RR REVISED 12/23 (PAGE 1 OF 2)**          Buyer's initials _____ / _____     Seller's initials _AG_ / _____

**REQUEST FOR REPAIR (RR PAGE 1 OF 2)**

Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210                Phone: 3105052217        Fax:                  3538 Greenfield
Juliet Shoham                         Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 1
49

DocuSign Envelope ID: E42B2540-F8D7-8ACC-8094-54CD7E9D5DFA

6. **EFFECT OF BUYER REQUEST:** BUYER MAKES THIS RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS RR, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

Buyer: _____  *Di Nali Consulting LLC and/ or Assignee*  Date ___5/26/2026___

Buyer: _____  Date _____

---

**SELLER RESPONSE: (check one)**

**Note to Seller:** FHA/VA. If the Parties do not reach agreement on completing the repairs and other actions specified in paragraph 3A of the Buyer FHA or VA section of Buyer Requests, Buyer's FHA or VA lender will not loan Buyer the funds needed to purchase the Property. If that happens, and there is a finance contingency that has not been removed, Buyer may cancel this Agreement (C.A.R. Form CC).

1. **Seller Agreement:**
   A. ☐ **All.** Seller agrees to all of Buyer's Requests.
   OR B. ☐ **Partial.** Seller only agrees to the following (Check all that apply)
      (1) ☐ Seller agrees to all of Buyer's Requests **except**: _____
      _____
      _____
      _____
      (2) ☒ Seller agrees to credit Buyer $__15,000.00__ at Close of Escrow.
      (3) ☐ Seller agrees, to modify the purchase price. The revised purchase price shall be $_____.
      (4) ☐ Other _____
      _____
   C. ☒ **Additional Conditions:** Seller's agreement only applies if Buyer removes those contingencies identified on the attached Contingency Removal Form (C.A.R. Form CR) by Signing and Delivering it within the time specified in **paragraph 1D** below.
   D. **Expiration of Seller's partial/conditional agreement:**
      If paragraph **1B** or **1C** is checked, Seller's agreement to the RR may be withdrawn by Seller any time prior to Buyer's agreement in writing and shall be deemed revoked unless by 5:00PM on the third Day after it is signed by Seller (or by __5.00__ ☐ AM/ ☒ PM on 05/27/26  date) AND it is re-signed by Buyer below and a copy of this RR is delivered to Seller.
   OR 2. ☐ Seller responds to Buyer's request on the attached form (C.A.R. Form RRRR).
   OR 3. ☐ Buyer's requests are not incorporated into the Agreement. Seller responds to Buyer's requests on the attached Amendment to Existing Agreement (C.A.R. Form AEA). No Seller signature is required on this RR.
   OR 4. ☐ Seller does NOT agree to any of Buyer's requests

**SELLER RESPONSE:** SELLER RESPONDS TO BUYER'S RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS SELLER RESPONSE, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

Seller: *Alan Gomperts*  *Gomberts and Halevy Family Trust*  Date ___05/26/26___

Seller: *Sharon Halevy*  Date ___05/26/26___

---

**BUYER RESPONSE TO SELLER PARTIAL/CONDITIONAL AGREEMENT:** (DO NOT sign until after Seller responds above.)

☐ Buyer accepts Seller's partial/conditional agreement
OR ☐ Buyer does NOT accept Seller's partial agreement. Buyer withdraws Request for Repair No. ____ and makes a new request in the attached Request for Repair No. _____

**BUYER RESPONSE:** BUYER RESPONDS TO SELLER'S PARTIAL AGREEMENT ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS BUYER RESPONSE, ANY PREVIOUS BUYER RESPONSE, SELLER REPLY, OR SELLER PARTIAL AGREEMENT CAN NO LONGER BE ACCEPTED.

**Note to Buyer:** FHA/VA. If the Parties do not reach agreement on completing the repairs and other actions specified in **paragraph 3A** in the FHA or VA section of Buyer Requests, and you have already removed or do remove your financing contingency, even though you may no longer be eligible for the FHA or VA loan specified in the Agreement and may not be able to get another loan to purchase the property, you could be in breach of the Agreement if you are otherwise unable to pay Seller the purchase price.

Buyer: _____  Date _____

Buyer: _____  Date _____

© 2023, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**RR REVISED 12/23 (PAGE 2 OF 2)**

**REQUEST FOR REPAIR (RR PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com  3538 Greenfield

Exhibit 1
50

DocuSign Envelope ID: E647185F-FD5A-07F68DE2-2A00-8953-81A3-640D2688DFDD



**EXTENSION OF TIME AMENDMENT No.** _1_
(C.A.R. Form ETA, Revised 12/25)

This is a proposal to amend the terms and conditions of the Purchase Agreement, OR ☐ Other _____
_____ ("Agreement"),
dated _05/05/2026_, on property known as _3538 Greenfield Ave, Los Angeles, CA 90034_ ("Property"),
in which _Di Nali Consulting LLC and/ or Assignee_ is referred to as ("Buyer")
and _Gomberts and Halevy Family Trust_ is referred to as ("Seller").

1.  **EXTENSION OF ESCROW:** The scheduled Close Of Escrow is extended to _07/27/2026_ (Date).
2.  **EXTENSION OF CONTINGENCY(IES):** The following contingency(ies), if checked, is/are extended to:
    _____ (Date) ☐ Buyer Investigation of Property Condition ☐ Loan ☐ Other _____
    _____.
3.  **OTHER EXTENSION(S):** The time for _____
    _____ is/are extended to _____ (Date).
4.  **ADDITIONAL TERMS:** __ATTACHED BUYER CONTIGENCY REMOVAL 1_____ _____
    _____
5.  **OFFER/EXPIRATION:** ☐ Buyer, ☐ Seller proposes this Extension of Time Amendment **(i)** which may be withdrawn
    by the Party initiating this proposed Amendment at any time prior to acceptance, and **(ii)** which shall be deemed
    revoked unless by 5:00 PM on the third Day after it is Signed by the initiating Party (or by _____ ☐ AM/ ☐ PM on
    _____ date) this proposed Amendment is Signed by the other Party and a Copy of this Amendment is
    Delivered to the initiating Party.

    ☒ Buyer ☐ Seller _____[signature]_____ _Di Nali Consulting LLC and/ or Assignee_ Date _5/28/2026_
    E55331896BC843B...
    ☐ Buyer ☐ Seller _____ Date _____

6.  **ACCEPTANCE:** The foregoing terms and conditions amending the existing Agreement are hereby accepted, and the
    undersigned agrees to the above terms and conditions and acknowledge receipt of a Copy of this Extension of Time
    Amendment. Upon Acceptance, this Amendment shall be deemed incorporated into the Agreement.

    ☐ Buyer ☒ Seller _Alan Gomberts_ _Gomberts and Halevy Family Trust_ Date _05/29/26_
    ☐ Buyer ☒ Seller _Sharon Halevy_ _____ Date _05/29/26_

---

EXTENSION OF TIME AMENDMENT **NOT** ACCEPTED: (_____/_____). This amendment was **NOT** accepted by
Buyer/Seller Initials
Buyer/Seller on _____ (date).

---

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**ETA REVISED 12/25 (PAGE 1 OF 1)**

**EXTENSION OF TIME AMENDMENT (ETA PAGE 1 OF 1)**

| | |
|---|---|
| Beverly & Co., 9350 Wilshire Blvd. #250 Beverly Hills CA 90210 | Phone: 3105052217    Fax:    3538 Greenfield |
| Juliet Shoham | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com |

**Exhibit 1**
51

## BANKRUPTCY ADDENDUM

Alan Gomperts, as chapter 11 debtor in possession ("Seller"), on the one hand, and Di Nali Consulting LLC or its assignee ("Buyer") on the other hand, hereby enter into this Bankruptcy Addendum dated July 7, 2026, as follows:

1. This Bankruptcy Addendum is made a part of the California Residential Purchase Agreement and Joint Escrow Instructions and associated documents between Buyer and Seller dated on or about May 5, 2026 (the "RPA" and, collectively, the "Sale Agreement"), except that if there any inconsistencies between the RPA and this Bankruptcy Addendum, this Bankruptcy Addendum shall control.

2. The Sale Agreement with respect of the Debtor's interest in 3538 Greenfield Ave, Los Angeles, CA 90034 (the "Property") is subject to higher and better bids after notice and a hearing in the United States Bankruptcy Court, Central District of California (the "Court"), under 11 U.S.C. § 363 and the rules and procedures of the Court in the case of the Seller as Debtor and Debtor in Possession, Case No. 2:24-12074-VZ, jointly administer under lead Case No. 2:24-bk-12079-VZ (the "Bankruptcy Case").

3. The sale is "AS-IS" and "WHERE-IS" "WITH ALL FAULTS" and "WITHOUT REPRESENTATIONS OR WARRANTIES."

4. There are no remaining contingencies other than Court approval.

5. No court or tribunal shall have jurisdiction over any dispute with Seller except the Court in the Bankruptcy Case, which shall have exclusive jurisdiction, without right to jury trial.

6. Buyer's only remedy if the sale to Buyer is not consummated through no fault of Buyer is a return of the Deposit. If the sale is not consummated due to an act or omission by Buyer, then Buyer shall forfeit the Deposit.

7. The Seller has sole discretion regarding the qualification of overbidders to participate in an auction, the timing of an auction, hearings and continuances thereof, determination of higher and better bids, and any other procedural aspects relating to the sale approval process, subject only to Court approval.

8. The closing of the sale currently scheduled for July 27, 2026 shall be extended by two weeks, to August 10, 2026, without prejudice to further extensions.

9. The Buyer provides the below testimony (see next page) to support a finding of good faith.

ACKNOWLEDGED AND AGREED BY BUYER:

Di Nali Consulting, LLC or assignee

58203065.1
390855-00001

**Exhibit 1**
**52**

DECLARATION OF _Farhad Rezvani_

I, _Farhad Rezvani_, declare as follows:
[name]

I am the _President_ of Di Nali Consulting, LLC ("Buyer").
[title]

I submit this declaration in support of the request to approve the sale of property located at 3538 Greenfield Ave, Los Angeles, CA 90034 (the "Property"), to Buyer, or its assignee.

I have no relationship with the Debtor, Alan Gomperts, except: _____.
[describe and prior relationship or say none, if none]

I have no relationship with the Debtor's broker or other professionals for Debtor or insiders of Debtor, except: _____.
[describe and prior relationship or say none, if none]

I have not colluded with any other bidders with respect to the purchase of the Property.

Any potential assignee of the Buyer would be a single purpose entity established by Buyer to acquire title to the Property and would have no relationships contrary to those described herein with Debtor, Debtor's broker or other professionals.

I submit this statement under penalty of perjury, under the laws of the United States of America, based on my personal knowledge, on July 8, 2026, at _Los Angeles_ California.

Signed: _____
[name]

_Farhad Rezvani_

58203065.1
390855-00001

**Exhibit 1**
**53**

**Exhibit  2**



# Preliminary Report

**File No.:** 1500-2607823-AW
**Your Reference No:** 014260-HG
**Escrow No.:** 1500-2607823
**Property Address:** 3538 Greenfield Avenue, Los Angeles, CA 90034-6102

**Title Officer:** Albert Wassif
**Escrow Officer:** Capital Trust Escrow

## Welcome to the new titleLOOK®!



titleLOOK upgrades the traditional title report experience from a static report with large zip files of supporting documents to a real-time interactive title report. With titleLOOK, you'll enjoy:

- an easy-to-use summary page of your report findings
- color-coded requirements and exceptions so you can focus on what is important
- hyperlinks directly into the documents referenced on your report
- a transparent and convenient title report experience



When you click on the above button/link to access your titleLOOK report, you will be taken to inHere, our platform designed to transform the experience of buying or selling real estate from the moment a transaction is started all the way through closing. inHere provides a safe and convenient method of delivering documents and information about your real estate transaction.

Exhibit 2
55

# PRELIMINARY REPORT

**Fidelity National Title Company**

5000 Van Nuys Blvd., Suite 500
Sherman Oaks, CA 91403

Prelim Number:

**1500-2607823**

Issuing Policies of **Fidelity National Title Insurance Company**

| | |
|---|---|
| Fidelity National Title Company<br>5000 Van Nuys Blvd., Suite 500<br>Sherman Oaks, CA 91403<br>Phone No.: 818-881-7800<br>Fax:        818-776-8528 | Title Officer.:  Albert Wassif<br>Email:          Team.Albert@fnf.com<br>Phone No.:    (818) 758-5718<br>Fax No.:        (818) 475-5013<br>File No.:        1500-2607823-AW |

Capital Trust Escrow
280 S Beverly Dr, ste 300
Beverly Hills, CA 90212
Attn:  Frances Sevilla

**Ref. No.:**   014260-HG

Property:    3538 Greenfield Avenue, Los Angeles, CA 90034-6102

In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One.  The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One.  Copies of the policy forms should be read.  They are available from the office which issued this report.

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The policy(ies) of title insurance to be issued hereunder will be policy(ies) of Fidelity National Title Insurance Company, a Florida corporation.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

Countersigned By:

*Cindy Fried*

Authorized Officer or Agent
Cindy Fried

**FIDELITY NATIONAL TITLE COMPANY**                                  **PRELIM NO. 1500-2607823**

**Effective date:  April 21, 2026 at 07:30 AM**
The form of Policy or Policies of Title Insurance contemplated by this Report is:

ALTA Homeowner's Policy of Title Insurance 2021

ALTA Loan Policy 2021

1.    The estate or interest in the Land hereinafter described or referred to covered by this Report is:

A FEE

2.    Title to said estate or interest at the date hereof is vested in:

Alan Gomperts and Sharon Halevy as Trustees of the Gomperts and Halevy Family Trust

3.    The Land referred to in this Report is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

---

Exhibit 2

57

## EXHIBIT A
### Legal Description

**For APN/Parcel ID(s):    4252-017-007**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 195 IN TRACT NO. 10516, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 159 PAGES 18 TO 20 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

PLOTTED EASEMENT

**FIDELITY NATIONAL TITLE COMPANY**                                              **PRELIM NO. 1500-2607823**

---

**EXCEPTIONS**

At the date hereof, items to be considered and exceptions to coverage in addition to the printed exceptions and exclusions in said policy form would be as follows:

1.      Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2026-2027.

2.      Any liens or other assessments, bonds, or special district liens including without limitation, Community Facility Districts, that arise by reason of any local, City, Municipal or County Project or Special District.

3.      The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

        Note: If said supplementals (if any) are not posted prior to the date of closing, this company assumes no liability for payment thereof.

4.      Water rights, claims or title to water, whether or not disclosed by the public records.

5.      Any failure to comply with the provisions and obligations of California Civil Code 2079.26 (California Assembly Bill 851).

6.      Any matters arising with regard to assessments of documentary transfer tax related to the measures below.

        NOTICE: Certain cities in Los Angeles County impose a documentary transfer tax that is in addition to the Los Angeles County documentary transfer tax of $.55 per $500 ($1.10 per $1,000) based upon the purchase price or value of the property transferred. Additional transfer tax is imposed by the following cities in Los Angeles County:

        Culver City
        Los Angeles
        Pomona
        Redondo Beach
        Santa Monica

        For details about these taxes, please contact your title officer or escrow officer. Please be advised that, in the City of Santa Monica, effective March 1, 2023, for transfers of property with a sale price or value of $8,000,000 or more, there will be a new, additional transfer tax of $5.60 per $100 ($56.00 per $1,000). In the City of Los Angeles, effective April 1, 2023, for transfers of property with a sale price or value of $5,000,000 up to $10,000,000, there will be a new, additional transfer tax of 4% of the entire sale price or value; for transfers with a sale price or value of $10,000,000 or more, there will be a new, additional transfer tax of 5.5% of the entire sale price or value.

        Effective for transactions on and after July 1, 2024, the new thresholds for ULA will be $5,150,000.00 (up from $5,000,001.00) and $10,300,000.00 (up from $10,000,001.00). Transactions above $5,150,000.00 but under $10,300,000.00 will be assessed at a 4% tax and transactions $10,300,000.00 and up will be assessed a 5.5% tax.

7.      Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract/plat;

        Purpose:            sanitary sewers, public utilities
        Affects:            the Northeast 5 feet of said land

8.      Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

        Granted to:         as therein provided
        Purpose:            conduits and pole lines

---

CLTA Preliminary Report Form - Modified (Adopted: 11.17.2006)                              Printed: 05.09.26 @ 07:17 AM
Page 4                                          CA-FT-FLVE-01500.072051-SPS-1-26-1500-2607823

**Exhibit 2**
**59**

**FIDELITY NATIONAL TITLE COMPANY**                                    **PRELIM NO. 1500-2607823**

Recording No.:      Book 15956, Page 130, of Official Records
Affects:              said land

9.      Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable laws, as set forth in the document referred to in the numbered item last above shown.
Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

10.     Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:          as therein provided
Purpose:             pole line, conduits
Recording No.:      Book 16531, Page 369, of Official Records
Affects:              said land

11.     Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon age, race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, genetic information, medical condition, citizenship, primary language, and immigration status, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable laws, as set forth in the document referred to in the numbered item last above shown.

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

12.     A deed of trust to secure an indebtedness in the amount shown below,

Amount:              $258,000.00
Dated:               April 25, 2011
Trustor/Grantor:     Alan Gomperts and Sharon Halevy, husband and wife
Trustee:             Fidelity National Title Ins Co.
Beneficiary:         Wells Fargo Bank, N.A.
Loan No:             Not shown
Recording Date:      April 29, 2011
Recording No.:       20110619428, of Official Records

13.     A deed of trust to secure an indebtedness in the amount shown below,

Amount:              $2,575,000.00
Dated:               September 8, 2010
Trustor/Grantor:     Alan Gomperts and Sharon Halevy as Trustees of the Gomperts and Halevy Family Trust
Trustee:             Fidelity National Title
Beneficiary:         Archway Real Estate Income Fund I SPE I, LLC
Loan No:             Not shown
Recording Date:      April 24, 2023
Recording No.:       20230261978, of Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:             First American Title Insurance Company
Recording Date:      December 8, 2023

**Exhibit 2**
**60**

**FIDELITY NATIONAL TITLE COMPANY**                                          **PRELIM NO. 1500-2607823**

Recording No:        20230856310, of Official Records

A Notice of Default under the terms of said deed of trust

Executed by:        First American Title Insurance Company
Recording Date:     December 8, 2023
Recording No:        20230856311, of Official Records


**END OF EXCEPTIONS**

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

Exhibit 2
61

**FIDELITY NATIONAL TITLE COMPANY**                                    **PRELIM NO. 1500-2607823**

## REQUIREMENTS

1.      In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

   Party(s):    All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE: The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

2.      Any invalidity or defect in the title of the vestees in the event that the trust referred to herein is invalid or fails to grant sufficient powers to the trustee(s) or in the event there is a lack of compliance with the terms and provisions of the trust instrument.

If title is to be insured in the trustee(s) of a trust, (or if their act is to be insured), this Company will require a Trust Certification pursuant to California Probate Code Section 18100.5.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

3.      The Company will require either (a) a complete copy of the trust agreement and any amendments thereto certified by the trustee(s) to be a true and complete copy with respect to the hereinafter named trust, or (b) a Certification, pursuant to California Probate Code Section 18100.5, executed by all of the current trustee(s) of the hereinafter named trust, a form of which is attached.

   Name of Trust:   the Gomperts and Halevy Family Trust

### END OF REQUIREMENTS

**FIDELITY NATIONAL TITLE COMPANY**                    **PRELIM NO. 1500-2607823**

## INFORMATIONAL NOTES

1.   Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

2.   Note: None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

3.   Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Residence, known as 3538 Greenfield Avenue, Los Angeles, California, to an Extended Coverage Loan Policy.

4.   NOTE: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

5.   Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

6.   Property taxes, for the fiscal year shown below are PAID.  For proration purposes the amounts were:

| | |
|---|---|
| Tax Identification No.: | 4252-017-007 |
| Fiscal Year: | 2025-2026 |
| 1st Installment: | $3,248.09 |
| 2nd Installment: | $3,248.08 |
| Exemption: | $0.00 |
| Land: | $370,117.00 |
| Improvements: | $159,982.00 |
| Personal Property: | $0.00 |
| Code Area: | 00067 |
| Bill No.: | Not shown |

7.   Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

8.   Unless this company is in receipt of WRITTEN instructions authorizing a particular policy, Fidelity Title will AUTOMATICALLY issue the American Land Title Association Homeowner's Policy (02/03/10) for all qualifying residential 1-4 properties/transactions to insure the buyer at the close of escrow.

9.   If a county recorder, title insurance company, escrow company, real estate agent or association provides a copy of the declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold faced typed and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

CLTA Preliminary Report Form - Modified  (Adopted:  11.17.2006)                    Printed:  05.09.26 @ 07:17 AM
Page 8                    CA-FT-FLVE-01500.072051-SPS-1-26-1500-2607823

Exhibit 2
63

**FIDELITY NATIONAL TITLE COMPANY**                                    **PRELIM NO. 1500-2607823**

10.   NOTE: Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition, an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An example of the required language is as follows:

   The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00, included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the successor Trustee under the Trust Deed to be paid off in full.

   In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the requirements of the revised statute.

11.   Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums, including endorsements as follows

   Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

   Line 1108 used to record the amount of the total title insurance premium, including endorsements, that is retained by the title underwriter. Fidelity National Title Insurance Company retains 12% of the total premium and endorsements.

12.   Due to the special requirements of SB 50 (California Public Resources Code Section 8560 et seq.), any transaction that includes the conveyance of title by an agency of the United States must be approved in advance by the Company's State Counsel, Regional Counsel, or one of their designees.

**END OF INFORMATIONAL NOTES**

CLTA Preliminary Report Form - Modified  (Adopted: 11.17.2006)                                Printed: 05.09.26 @ 07:17 AM
Page 9                              CA-FT-FLVE-01500.072051-SPS-1-26-1500-2607823

Exhibit 2
64

65

**Exhibit 2**
**65**

**FIDELITY NATIONAL FINANCIAL**
**CALIFORNIA PRIVACY NOTICE**

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy.  This California Privacy Notice explains how we collect, use, and disclose Personal Information, when and to whom we disclose such information, and the rights you, as a California resident ("Consumer"), have regarding your Personal Information ("California Privacy Rights"). "Personal Information" means information that identifies, relates to, describes, and is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. If FNF has collected, used, or disclosed your Personal Information in relation to a job application or employment, independent contractor, officer, owner, or director relationship with FNF, FNF's practices are discussed in our Notice at Collection for Prospective Employees, available at ***Prospective California Employees***.

Some subsidiaries maintain separate California Privacy Notices or privacy statements.  If a subsidiary has a separate California Privacy Notice, it will be available on the subsidiary's website, and this California Privacy Notice does not apply.

<u>**Collection of categories of Personal Information**</u>:

In the preceding twelve (12) months FNF has collected, and will continue to collect, the following categories of Personal Information from you:

- Identifiers such as name, address, telephone number, IP address, email address, account name, social security number, driver's license number, state identification card, passport number, financial information, date of birth, or other similar identifiers;

- Characteristics of protected classifications under California or Federal law;

- Commercial information, including records of personal property, products or services purchased, or other purchasing or consuming histories;

- Internet or other electronic network activity information including, but not limited to browsing history on FNF websites and information regarding a Consumer's interaction with an FNF website;

- Geolocation data;

- Unique biometric data used to authenticate a specific individual such as a fingerprint, retina, or iris image;

- Professional or employment information;

- Education Information.

<u>**This Personal Information is collected from the following sources**</u>:

- Information we receive from you on applications or other forms;

- Information about your transactions with FNF, our affiliates, or others;

- Information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities, or from internet service providers, data analytics providers, and social networks;

- Information from the use of our websites and mobile applications;

- Information we receive directly from you related to doing business with us.

<u>**This Personal Information is collected for the following business purposes**</u>:

- To provide products and services to you or in connection with a transaction involving you;

- To perform a contract between FNF and the Consumer;

- To improve our products and services;

- To comply with legal obligations;

- To detect and protect against fraudulent or illegal activity;

Copyright © 2026.  Fidelity National Financial, Inc.  All Rights Reserved.

Privacy Statement
SSCORPD0911.doc

Page 1

Printed:  05.09.26 @ 07:17 AM by
CA-FT-FLVE-01500.072051-1500-2607823

**Exhibit 2**
**66**

- To communicate with you about FNF or our affiliates;

- To maintain an account with FNF or our affiliates;

- To maintain the security of our systems, tools, accounts, and applications;

- To verify and authenticate identities and credentials;

- To provide, support, personalize, and develop our websites, products, and services;

- To directly market our products to consumers;

- As described to you when collecting your Personal Information or as otherwise set forth in the California Consumer Privacy Act.

**Disclosures of Personal Information for a business purpose:**

In the preceding twelve (12) months FNF has disclosed, and will continue to disclose, the categories of Personal Information listed above for a business purpose. We may disclose Personal Information for a business purpose to the following categories of third parties:

- FNF affiliates and subsidiaries;

- Non-affiliated third parties, with your prior consent;

- Businesses in connection with the sale or other disposition of all or part of the FNF business and/or assets;

- Service Providers and non-affiliated third parties such as data analytics providers;

- Law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order.

**Sale of Personal Information:**

In the preceding twelve (12) months, FNF has not sold or shared Personal Information. FNF does not sell or share Personal Information.

**Retention Periods:**

Due to the breadth and variety of data collected by FNF, it is not possible for us to provide you with a comprehensive list of timeframes during which we retain each category of Personal Information. FNF retains categories of information as reasonably necessary to satisfy the purpose for which we collect the information. This time period varies depending on the purpose for which we collected the information, the nature and frequency of our interactions and relationship with you, whether we have a legal basis to continue retaining the information, industry practices, the value and sensitivity of the information, and state and federal recordkeeping requirements.

**Personal Information of minors:**

FNF does not knowingly collect the Personal Information of minors. FNF does not sell or share the information of consumers under sixteen (16) years of age.

**Sensitive Personal Information:**

FNF does not use or disclose sensitive Personal Information for any purposes other than those specified in the California Consumer Privacy Act.

**Right to know:**

Consumers have a right to know about Personal Information collected, used, disclosed, shared, or sold, including the categories of such Personal Information, as well as the purpose for such collection, use, disclosure, sharing, or selling, categories of third parties to whom Personal Information is disclosed, shared or sold, and the specific pieces of Personal Information collected about the consumer. Consumers have the right to request FNF disclose what Personal Information it collected, used, and disclosed in the past twelve (12) months.

Copyright © 2026. Fidelity National Financial, Inc. All Rights Reserved.

**Exhibit 2**
**67**

**Right to request deletion:**

Consumers have a right to request the deletion of their Personal Information, subject to certain exceptions.

**Right to Correct:**

Consumers have the right to correct inaccurate Personal Information.

**Right to non-discrimination:**

Consumers have a right not to be discriminated against because of exercising their consumer privacy rights.  We will not discriminate against Consumers for exercising any of their California Privacy Rights.

**Privacy Requests:**

**To exercise any of your California Privacy Rights, or if acting as an authorized agent on behalf of another individual, please visit *California Privacy Request* (FNF.com/California-privacy), call us Toll Free at 888-413-1748, or write to the address at the end of this notice.**

Upon making a California Privacy Request, FNF will verify the consumer's identity by requiring an account, loan, escrow number, or other identifying information from the consumer.

The above-rights are subject to any applicable rights and obligations including both Federal and California exemptions rendering FNF, or Personal Information collected by FNF, exempt from certain CCPA requirements.

A Consumer may use an Authorized Agent to submit any CCPA request.  Authorized agents' requests will be processed like any other CCPA request, but FNF will also require the Consumer provide the agent written permission to make the request and verify his or her identity with FNF.

**FNF website services for mortgage loans:**

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites").  The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice.  The sections of this Privacy Notice describing the categories, sources, and uses of your Personal Information do not apply to the Service Websites.  The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Information.  FNF does not share Information collected through the Service Websites, except (1) as required or authorized by contract with the mortgage loan servicer or lender, or (2) as required by law or in the good-faith belief that such disclosure is necessary to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**California Privacy Notice - Effective Date:**

This California Privacy Notice was last updated on January 1, 2026.

**Contact for more information:**

For questions or concerns about FNF's California Privacy Notice and privacy practices, or to exercise any of your California Privacy Rights, please visit ***California Privacy (FNF.com/California-privacy)***, call Toll Free 888-413-1748, or contact us by mail at the below address.

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn:  Chief Privacy Officer

Copyright © 2026.  Fidelity National Financial, Inc.  All Rights Reserved.

**Exhibit 2**
**68**

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment.  Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate.  As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative.  These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount.  These discounts only apply to transactions involving services rendered by the FNF Family of Companies.  This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company.  The discount will only be applicable to the FNF Company as indicated by the named discount.

**FNF Underwritten Title Companies**
CTC - Chicago Title Company
CLTC - Commonwealth Land Title Company
FNTC - Fidelity National Title Company
FNTCCA - Fidelity National Title Company of California
TICOR - Ticor Title Company of California
LTC - Lawyer's Title Company
SLTC - ServiceLink Title Company

**Underwritten by FNF Underwriters**
CTIC - Chicago Title Insurance Company
CLTIC - Commonwealth Land Title Insurance Co.
FNTIC - Fidelity National Title Insurance Co.
NTINY - National Title Insurance of New York

**Available Discounts**

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, CLTIC, FNTIC, NTINY)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected.  The charge for a lender's policy shall be forty percent (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

**DISASTER AREA TRANSACTIONS (CTIC, CLTIC, FNTIC, NTINY)**
This rate is available for individuals or entities that were victims of a national or state disaster.  The rate can be used for a Lender's Policy (Standard or Extended), or an Owner's Policy (Standard or Homeowners coverage).  To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster.

**Exhibit 2**
**69**

## Notice of Available Discounts
(continued)

**DISASTER AREA ESCROWS (CTC, CLTC, FNTC, TICOR, LTC)**
This rate is available for individuals or entities that were victims of a national or state disaster.  The rate can be used for a loan or a sale escrow transaction.  To qualify for this rate, the applicant must, prior to the closing of the applicable transaction, make a written request, including a statement meeting the following criteria:

A.  The subject property is in a disaster area declared by the government of the United States or the State of California.

B.  The subject property was substantially or totally destroyed in the declared disaster.

C.  The subject property ownership has not changed since the time of the disaster.

The rate will be fifty percent (50%) of the applicable rate, and the transaction must be completed within sixty (60) months of the date of the declaration of the disaster.  Standard minimum charge applies based upon property type.  No other discounts or special rates, or combination of discounts or special rates, shall be applicable. Applies to a single transaction per property.

This rate is applicable to the following Zones/Counties:

Zone 1.A:  Orange County
Zone 1.B:  Riverside and San Bernardino Counties
Zone 2:  Los Angeles County
Zone 3:  Ventura County
Zone 10:  San Diego County
Zone 12:  Imperial County

If used for a sale transaction, the application of this rate assumes the charge for the Residential Sale Escrow Services (RSES) fee will be split evenly between buyer and seller.  As such and regardless of how the calculated applicable RSES will be split between the disaster victim and the other principal, the rate will be applied only to one half (1/2) of the calculated applicable RSES fee, regardless of whether the disaster victim is paying half (1/2) of the RSES fee (as is customary) or paying the entire fee.  The rate under this provision will be fifty percent (50%) of disaster victims' one half (1/2) portion only and shall not apply to any portion paid by non-disaster victim. Additional services will be charged at the normal rates.

**MILITARY DISCOUNT RATE (CTIC, CLTIC, FNTIC)**
Upon the Company being advised in writing and prior to the closing of the transaction that an active duty, honorably separated, or retired member of the United States Military or Military Reserves or National Guard is acquiring or selling an owner occupied one-to-four family property, the selling owner or acquiring buyer, as applicable, will be entitled to a discount equal to fifteen percent (15%) of the otherwise applicable rates such party would be charged for title insurance policies.  Minimum charge:  Four Hundred Twenty-Five And No/100 Dollars ($425.00)

The Company may require proof of eligibility from the parties to the transaction verifying they are entitled to the discount as described.  No other discounts or special rates, or combination of discounts or special rates, shall be applicable.

**Exhibit 2**
70

**WIRE SAFE**™ | Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions.  Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you.  DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify.  **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.**  DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols.  Make your passwords greater than eight (8) characters.  Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts.  Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

Wire Fraud Alert                                                                                                     Page 1
Original Effective Date:   5/11/2017
Current Version Date:   5/11/2017                                                                      1500-2607823
*TM and © Fidelity National Financial, Inc. and/or an affiliate.  All rights reserved*

**Exhibit 2**
71

RECORDING REQUESTED BY

Fidelity National Title Company

WHEN RECORDED MAIL TO:

ORDER NO.:  1500-2607823-AW

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**CERTIFICATION OF TRUST**
**California Probate Code Section 18100.5**

The undersigned declare(s) under penalty of perjury under the laws of the State of California that the following is true and correct:

1.  The Trust known as _____ ,
    executed on _____ , is a valid and existing trust.

2.  The name(s) of the settlor(s) of the Trust is (are): _____

    _____

3.  The name(s) of the currently acting trustee(s) is (are): _____

    _____

4.  The trustee(s) of the Trust have the following powers (initial applicable line(s)):

    _____ Power to acquire additional property.

    _____ Power to sell and execute deeds.

    _____ Power to encumber, and execute deeds of trust.

    _____ Other: _____

5.  The Trust is (check one):  ☐ Revocable  ☐ Irrevocable

    The name of the person who may revoke the Trust is: _____

6.  The number of trustees who must sign documents in order to exercise the powers of the Trust is (are):_____ ,
    whose name(s) is (are): _____

7.  Title to Trust assets is to be taken as follows: _____

8.  The Trust has not been revoked, modified or amended in any manner which would cause the representations contained herein to be incorrect.

9.  I (We) am (are) all of the currently acting trustees.

10. I (We) understand that I (we) may be required to provide copies of excerpts from the original Trust documents which designate the trustees and confer the power to act in the pending transaction.

**Exhibit 2**
**72**

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____
Print Trust Name

_____
Signature

By: _____
Print Name

Its: _____
Print Title


_____
Signature

By: _____
Print Name

Its: _____
Print Title

(Acknowledgement must be attached)

**Exhibit 2**
73

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____

County of _____

On _____ before me, _____, Notary Public,
(here insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____

County of _____

On _____ before me, _____, Notary Public,
(here insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature

Trust Certification                                                                 Printed:  05.09.26 @ 07:17 AM by
SCA0002940.doc / Updated:  03.06.23              Page 3              CA-FT-FLVE-01500.072051-1500-2607823

**Exhibit 2**
74

**Fidelity National Title Company**

**STATEMENT OF INFORMATION**
**CONFIDENTIAL INFORMATION**
**FOR YOUR PROTECTION**

**Escrow No.:** 1500-2607823

Completion of this statement expedites your application for title insurance, as it assists in establishing identity, eliminating matters affecting persons with similar names and avoiding the use of fraudulent or forged documents. Complete all blanks (please print) or indicate "none" or "N/A." If more space is needed for any item(s), use the reverse side of the form. Each party (and spouse/domestic partner, if applicable) to the transaction should personally sign this form.

## NAME AND PERSONAL INFORMATION

_____ Date of Birth _____
First Name          Middle Name          Last Name          Maiden Name
                              (If none, indicate)

Home Phone _____ Business Phone _____ Birthplace _____

Cell Phone _____ Fax _____ Email _____

Social Security No. _____ Driver's License No. _____

List any other name you have used or been known by _____

State of residence _____ I have lived continuously in the U.S.A. since _____

Are you currently married? ☐ Yes   ☐ No    Are you currently a registered domestic partner? ☐ Yes    ☐ No

If yes, complete the following information:

    Date and place of marriage _____

    Spouse/Domestic Partner _____ Date of Birth _____
            First Name          Middle Name          Last Name          Maiden Name
                   (If none, indicate)

    Home Phone _____ Business Phone _____ Birthplace _____

    Cell Phone _____ Fax _____ Email _____

    Social Security No. _____ Driver's License No. _____

    List any other name you have used or been known by _____

    State of residence _____ I have lived continuously in the U.S.A. since _____

## CHILDREN

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____
(if more space is required, use reverse side of form)

## RESIDENCES (LAST 10 YEARS)

| Number & Street | City | From (date) to (date) |
|---|---|---|
| Number & Street | City | From (date) to (date) |

(if more space is required, use reverse side of form)

## OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business Name | Address | From (date) to (date) |
|---|---|---|
| Firm or Business Name | Address | From (date) to (date) |

(if more space is required, use reverse side of form)

## SPOUSE'S/DOMESTIC PARTNER'S OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business Name | Address | From (date) to (date) |
|---|---|---|
| Firm or Business Name | Address | From (date) to (date) |

(if more space is required, use reverse side of form)

## STATEMENT OF INFORMATION
## CONFIDENTIAL INFORMATION FOR YOUR PROTECTION
(continued)

### PRIOR MARRIAGE(S) and PRIOR DOMESTIC PARTNERSHIP(S)

Any prior marriages or domestic partnerships for either person? _____ If yes, complete the following:

Prior spouse's (Party A) name: _____ Prior Spouse of Party A: _____

Marriage ended by: ☐ Death ☐ Divorce/Dissolution ☐ Nullification    Date of Death/Divorce: _____

Prior spouse's (Party B) name: _____ Prior Spouse of Party B: _____ Spouse

Marriage ended by: ☐ Death ☐ Divorce/Dissolution ☐ Nullification    Date of Death/Divorce: _____

(if more space is required, use reverse side of form)

### INFORMATION ABOUT THE PROPERTY

Buyer intends to reside on the property in this transaction: ☐ Yes    ☐ No

### Owner to complete the following items

Street Address of Property in this transaction: _____

The land is ☐ unimproved; or improved with a structure of the following type: ☐ A Single or 1-4 Family ☐ Condo Unit ☐ Other _____

Improvements, remodeling or repairs to this property have been made within the past six (6) months: ☐ Yes   ☐ No

If yes, have all costs for labor and materials arising in connection therewith been paid in full?          ☐ Yes  ☐ No

Any current loans on property? _____ If yes, complete the following:

Lender_____ Loan Amount_____ Loan Account No. _____

Lender_____ Loan Amount_____ Loan Account No. _____

The undersigned declare, under penalty of perjury, that the foregoing is true and correct.

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

_____          _____
Signature                                                           Date

_____
Print Name

_____          _____
Signature                                                           Date

_____
Print Name

(Note:  If applicable, both spouses/domestic partners must sign.)
**THANK YOU.**

**Exhibit 2**
**76**

# ATTACHMENT ONE

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE POLICY - 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy; or

    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II

(*Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here*)

Attachment One (11/04/22)

Exhibit 2

# ATTACHMENT ONE
## (CONTINUED)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE OWNER'S POLICY (02-04-22)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
       i.   the occupancy, use, or enjoyment of the Land;
       ii.  the character, dimensions, or location of any improvement on the Land;
       iii. the subdivision of land; or
       iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
       i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
       ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.
    Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7   Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law.  This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

*(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)*

Attachment One (11/04/22)

**Exhibit 2**
**78**

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (7-01-21)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i.   the occupancy, use, or enjoyment of the Land;
    ii.  the character, dimensions, or location of any improvement on the Land;
    iii. the subdivision of land; or
    iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, or regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2.  Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by You;
    b.  not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
    c.  resulting in no loss or damage to You;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
    e.  resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4.  Lack of a right:
    a.  to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
    b.  in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.
    Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5.  The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
    i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
    ii.  for any other reason not stated in Covered Risk 30.
7.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8.  Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9.  Any lien on Your Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

*   For Covered Risk 16, 18, 19 and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $  5,000.00 |

Attachment One (11/04/22)

### Exhibit 2
79

## ATTACHMENT ONE
### (CONTINUED)

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5. Failure to pay value for Your Title.

6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.

   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.

9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

Attachment One (11/04/22)

### Exhibit 2
80

# ATTACHMENT ONE
## (CONTINUED)

### ALTA OWNER'S POLICY (07-01-2021)
### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i.   the occupancy, use, or enjoyment of the Land;
    ii.  the character, dimensions, or location of any improvement on the Land;
    iii. the subdivision of land; or
    iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b.
    Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain.  Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust.  Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments, imposed or collected by a governmental authority that becomes due and payable after the Date of Policy.  Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law.  This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated.  Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE:  The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage.  In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

Attachment One (11/04/22)

**Exhibit 2**
**81**

## ATTACHMENT ONE
### (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)    the occupancy, use, or enjoyment of the Land;

    (ii)   the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)   environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.   This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a)  a fraudulent conveyance or fraudulent transfer; or

    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

*NOTE:  The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.]

7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

Attachment One (11/04/22)

**Exhibit 2**

**82**

**Exhibit 3**

WellsFargo8008693557            07/07/2026 03:36:59 PM CDT                    PAGE: 01/4

936/0320648066/XP521/1/4

July 07, 2026

**WELLS FARGO**

Attn Isis Gotlib
Capital One Escrow
888-908-0836

The Wells Fargo Home Mortgage payoff statement is enclosed.
                    Mortgagor:        Alan Gomperts
                    Co-Mortgagor:     Sharon Halevy
                    Property address: 3538 Greenfield Ave
                                      Los Angeles CA 90034
936 Loan number: 0320648066              Loan type: CONV W/O PMI

PLEASE NOTE: This notice is being provided for informational purposes
only. As a result of at least one bankruptcy case filing that included
the account referenced above, Wells Fargo Home Mortgage is not
attempting in any way to violate any provision of the United States
Bankruptcy Code or to collect a debt (deficiency or otherwise) from any
customer who is impacted by an active bankruptcy case or who has
received a discharge, where the account was not otherwise reaffirmed or
excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS
TO THESE CUSTOMERS.

The enclosed amount is needed to pay off the loan and is only good
through 08-06-26. After that time, you'll need to request a new payoff
statement because the amount will change.
This is because the loan accrues interest daily.

Please make sure to take care of these important items:
* Cancel any automatic payments right away. If you're enrolled in our
  automatic payment program, you'll need to cancel this at least five
  business days before the next scheduled withdrawal date.
* Update your mailing address by contacting us at the number below.
  We'll need your most current address to send any remaining escrow
  balance or the year-end interest statement.

We're here to help
If you have questions or need further assistance, please contact us at
1-866-234-8271, Monday - Friday, 7:00 a.m. to 10:00 p.m., or Saturday,
8:00 a.m. to 2:00 p.m. Central Time.

**Exhibit 3**
**84**

936/0320648066/XP522/2/4/0000016971560
July 07, 2026                    Page 2 - 936 Loan number 0320648066
Mortgagor:        Alan Gomperts
Co-Mortgagor:     Sharon Halevy
Property address: 3538 Greenfield Ave
                  Los Angeles CA 90034
936 Loan number:  0320648066                Loan type: CONV W/O PMI
WELLS FARGO HOME MORTGAGE - PAYOFF STATEMENT
All figures are subject to final verification by the noteholder. The
TOTAL AMOUNT OUTSTANDING of $ 169,715.60 is based on the good
through/closing date of 08-06-26. Below is a breakdown of that amount.

1.  TOTAL PRINCIPAL, INTEREST, AND OTHER AMOUNTS OUTSTANDING UNDER
NOTE/SECURITY INSTRUMENT
Note: 08-01-26 is the next payment date under Note/Security Instrument
Unpaid Principal balance                                  168,428.87
Interest as of 08-06-26                                     1,082.73
TOTAL AMOUNT OUTSTANDING UNDER NOTE/SECURITY INSTRUMENT    169,511.60
2.  ADDITIONAL CONTRACTUAL AND OTHER FEES AND CHARGES OUTSTANDING
Recording Costs                                              204.00
TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES OUTSTANDING     204.00
TOTAL AMOUNT OUTSTANDING through 08-06-26                  169,715.60

**Exhibit 3**
**85**

936/0320648066/XP522/3/4/0000016971560
July 07, 2026                    Page 3 - 936 Loan number 0320648066
WELLS FARGO HOME MORTGAGE - PAYOFF OPTIONS
* Interest will accrue on the loan until payoff funds are received.
* Funds received on weekends or holidays are applied next business day.
* Funds are applied as of the day received if made by the deadline
  listed below for the payment option selected. Otherwise, funds will be
  applied as of the next business day.
* All figures are subject to final verification by the noteholder.

HOW TO SEND THE PAYOFF
* We accept payoffs by wire transfer, phone, check, and Bill Pay.
* Financial institutions and/or mailing services may charge a fee
  for services such as wire transfers, checks, or Bill Pay.

WIRE TRANSFER -
Beneficiary Wells Fargo Bank, N.A.
Beneficiary Bank ABA: 121000248
Beneficiary Bank Acct: 4127400093
Beneficiary Bank Address: 1 Home Campus  Des Moines IA 50328
Special Information for Beneficiary:
Apply funds to: 936 loan 0320648066
Mortgagor: Alan Gomperts
Sender's Name and Phone Number
Deadline: 2:00 p.m. Central Time (Monday - Friday).

When sending funds by wire transfer, you should take steps to protect
yourself from imposter wire fraud:
* Wire fraud can occur if an imposter poses as someone you're working
  with. They may intercept emails or send you false instructions
  (in the email text or attachment) to wire funds to their account.
* To protect yourself, use only the wire instructions provided above.
  You can also confirm the instructions by calling Wells Fargo Customer
  Service. When you call, verify that the phone number you're using is
  correct by comparing it with other trusted sources of information.

PHONE - Most payoffs can be completed over the phone without charge
* Please call 1-866-234-8271 with the payoff details.
* Credit cards are not accepted.
* Deadline: 7:30 p.m. Central Time (Monday - Friday).

CASHIER'S CHECK, CERTIFIED CHECK, OTHER CHECK, or BILL PAY
* Drop off the check at a Wells Fargo branch or mail it to:
    Wells Fargo Home Mortgage
    Attn: Payoffs, MAC F2302-045
    1 Home Campus
    Des Moines IA 50328
* Deadline (drop-off only): Prior to branch closing time.
* Bill Pay transmission and mailed check delivery times vary.
* We do not accept credit card checks or temporary/starter checks.

When paying by mail or in person, please include this Payoff Coupon:
-------------------------------------------------------------
936 Loan number:  0320648066
Property address: 3538 Greenfield Ave
                  Los Angeles CA 90034

Payoff amount $ 169,715.60
Payoff amount good through 08-06-26    Amount enclosed _____

WE'RE HERE TO HELP - If you have questions or need further assistance,
please contact us at 1-866-234-8271, Monday - Friday, 7:00 a.m. to
10:00 p.m., or Saturday, 8:00 a.m. to 2:00 p.m. Central Time.

**Exhibit 3**
86

WellsFargo8008693557                07/07/2026 03:38:32 PM CDT                        PAGE: 04/4

```
936/0320648066/XP523/4/4/0000016971560
July 07, 2026                    Page 4 - 936 Loan number 0320648066
WELLS FARGO HOME MORTGAGE - ADDITIONAL PAYOFF INFORMATION

What you should know about the payoff amount:
The total amount outstanding is good through 08-06-26, or until any
activity occurs on the account. If funds are received after 08-06-26,
the payoff amount will be subject to an
additional $ 30.57 of interest per Day.

Any of the following payment activity on the account prior to 08-06-26
will change the payoff amount:
* We make disbursements from the escrow account for items due.
* If any check/electronic withdrawal previously credited to the loan
  is rejected by the financial institution from which it is drawn.

Recent escrow disbursement amounts and dates:
Real estate taxes:       $           .00        00-00-00
Homeowners Insurance     $           .00        00-00-00

Important Information:
* If the funds received are not the full payoff amount, we'll apply
  funds from the escrow account to complete the payoff.
* Interest will continue to accrue until we receive the full payment.
  This means the total payoff amount will change.
* A payoff payment received 30 days or more after the contractual
  payment due date (when a loan is past due) is at risk for negative
  credit reporting.
* After the payoff is complete, we'll release the lien on the property
  in accordance with state law. Please call us if you have any questions
  about the lien release process. You can also mail any questions or
  requests to: Wells Fargo Home Mortgage
  PO Box 10335, Des Moines, IA 50306

WE'RE HERE TO HELP - If you have questions or need further assistance,
please contact us at 1-866-234-8271, Monday - Friday, 7:00 a.m. to
10:00 p.m., or Saturday, 8:00 a.m. to 2:00 p.m. Central Time.
```

**Exhibit 3**

87

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**Saul Ewing LLP, 1888 Century Park East, Suite 1500, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*):**Debtor's Motion to (1) Confirm Sale of Real Property Commonly Known as 3538 Greenfield Avenue, Los Angeles, California 90034 Free and Clear of Liens and Claims, and (2) Pay Real Estate Brokers' Commissions; Memorandum of Points and Authorities; Declarations of Alan Gomperts and Ben Kanani in Support Thereof** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 14, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **July 14, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| **Debtor**<br>Alan Gomperts<br>264 South Oakhurst Drive<br>Beverly Hills, CA 90212 | **Buyer**<br>Di Nalli Consulting, LLC<br>8537 Pickford Street<br>Los Angeles, CA 90035 |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 14, 2026**,  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 14, 2026 | Hannah Richmond | /s/ Hannah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (continued)**</u>:

- **Scott R Albrecht**    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- **Tanya Behnam**    tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Jacquelyn H Choi**    jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com
- **Carol Chow**    Carol.Chow@saul.com, hannah.richmond@saul.com;easter.santamaria@saul.com;carol.chow@ecf.courtdrive.com;litigationdocketing@saul.com
- **Robert F Conte**    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- **Ryan Coy**    ryan.coy@blankrome.com, courtmail@blankrome.com
- **Christopher Cramer**    secured@becket-lee.com
- **Christopher Crowell**    ccrowell@frandzel.com, mbrandenberg@frandzel.com
- **Turner Falk**    turner.falk@saul.com, tnfalk@recap.email
- **Michael G Fletcher**    mfletcher@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Todd S. Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Richard Girgado**    rgirgado@counsel.lacounty.gov
- **Jacqueline L James**    jjames@buchalter.com, gvidales@buchalter.com;docket@buchalter.com;pjolley@buchalter.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Avi Edward Muhtar**    amuhtar@crownandstonelaw.com
- **Bruce D Poltrock**    bpoltrock@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Paige Selina Poupart**    Ppoupart@smsm.com, achase@frandzel.com
- **Zev Shechtman**    Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- **David B Shemano**    dshemano@shemanolaw.com
- **Jessica M. Simon**    jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Derrick Talerico**    dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Garrick Vanderfin**    gvanderfin@polsinelli.com, zyoung@Polsinelli.com;ladocketing@polsinelli.com
- **Gerrick Warrington**    gwarrington@frandzel.com, achase@frandzel.com,autodocket@frandzel.com
- **Samantha White**    samantha.white@wellsfargo.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**