Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
Paige T. Rolfe (State Bar No. 331096)
prolfe@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

Counsel to Debtors Broadway Avenue
Investments, LLC, SLA Investments, LLC,
and Negev Investments, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SEATON INVESTMENTS, LLC, *et al.*,<br><br><br>Debtors and Debtors in Possession. | Lead Case No. 2:24-bk-12079-VZ<br><br>Jointly Administered with Case Nos.:<br>2:24-bk-12080-VZ; 2:24-bk-12081-VZ;<br>2:24-bk-12082-VZ; 2:24-bk-12091-VZ;<br>2:24-bk-12074-VZ; 2:24-bk-12075-VZ<br>and 2:24-bk-12076-VZ<br><br>Chapter 11 |
| ☐ Affects All Debtors.<br>☐ Affects Seaton Investments, LLC (*Dismissed*)<br>☐ Affects Colyton Investments, LLC (*Dismissed*)<br>☒ Affects Broadway Avenue Investments, LLC<br>☒ Affects SLA Investments, LLC<br>☒ Affects Negev Investments, LLC<br>☒ Affects Alan Gomperts<br>☒ Affects Daniel Halevy<br>☒ Affects Susan Halevy | **REPLY TO HASKELL AND NURIT MUHTAR'S SUPPLEMENTAL OPPOSITION TO DEBTORS' 9019 MOTION TO APPROVE SETTLEMENT AGREEMENT WITH ARCHWAY BROADWAY LOAN SPE, LLC**<br><br>Continued Hearing:<br>Date:         July 21, 2026<br>Time:        11:00 a.m.<br>Courtroom:  1368<br>                  255 E. Temple Street<br>                  Los Angeles, CA 90012 |

1

# TABLE OF CONTENTS

**Page**

A.    THE SETTLEMENT IS FAIR AND EQUITABLE ..............................................................3

    1.    The Muhtars' Claim That Chase Will Not Consent Misidentifies the
Actual Consequence of Non-Performance on the Roxbury Provisions....................4

    2.    The Pledge and UCC-1 Argument Addresses a Condition That Has Not
Yet Occurred and That the Court Can Address If and When It Arises.....................5

    3.    Archway Does Not Hold a Veto Over Any Sale of the Roxbury Property ...............6

    4.    The Settlement Does Not Delegate Authority to File a § 363(h) Adversary
to Archway.............................................................................................................6

    5.    The Threshold Availability of § 363(h) Is Not Decided Here—The
Muhtars' Arguments on This Point Are Premature and Do Not Bear on
the Approval of the Settlement ................................................................................6

    6.    The Benefit-Versus-Detriment Analysis Under §363(h)(3) Is for a
Future Adversary Proceeding, Not This Motion......................................................7

    7.    The Alleged Inconsistencies in the Roxbury Documents Do Not
Require Denial of the Settlement .............................................................................8

B.    THE SETTLEMENT IS NOT A *SUB ROSA* PLAN...............................................................9

    1.    The Muhtars' *Sub Rosa* Argument Mischaracterizes the Nature and
Purpose of the Settlement .......................................................................................9

    2.    The Settlement's Feasibility Is Not Defeated by the Muhtars'
Speculative Timeline Arguments...........................................................................10

C.    CONCLUSION....................................................................................................................11

**TABLE OF AUTHORITIES**

**CASES**                                                                                                **Page(s)**

*Czyzewski v. Jevic Holding Corp.*,
   580 U.S. 451 (2017)...........................................................................................................10

*In re A & C Properties*,
   784 F.2d 1377 (9th Cir. 1986) .......................................................................................3, 8

*In re Braniff Airways, Inc.*,
   700 F.2d 935 (5th Cir. 1983) .......................................................................................9, 10

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007).............................................................................................10

*In re Lionel Corp.*,
   722 F.2d 1063 (2d Cir. 1983 .......................................................................................9, 10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................................3

*U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*,
   669 F.2d 1325 (9th Cir. 1982) ............................................................................................3


**STATUTES**

11 U.S.C. § 363(h) ............................................................................................2, 4, 6, 7, 8, 10

11 U.S.C. § 363(h)(3) .............................................................................................................8


**RULES**

Fed. R. Bankr. P. 9019.....................................................................................................3, 4, 7

The Muhtars' Supplemental Opposition (the "**Supplemental Opposition**") [Dkt. 713] fundamentally misreads the Settlement Agreement, as amended by the First Amendment to Settlement Agreement (the "**First Amendment**," and together with the Settlement Agreement, the "**Settlement**") [Dkt. 693] and continues to fight a battle that the First Amendment was specifically designed to moot. The Debtors negotiated and executed the First Amendment precisely to address the Muhtars' concerns as expressed in their Limited Opposition (the "**Initial Opposition**," and together with the Supplemental Opposition, the "**Opposition**") [Dkt. 678] – restructuring the Roxbury provisions so that (1) no Roxbury deliverable is a condition precedent to the effectiveness of the Settlement, (2) no term of the Settlement requires the Muhtars to sign or agree to anything, and (3) the Settlement remains fully binding and enforceable between the Debtors and Archway regardless of whether any Roxbury outcome is achieved.

Despite these modifications, the Muhtars persist in their opposition, largely on the premise that the Settlement will inevitably lead to a forced sale of the Roxbury Property under 11 U.S.C. § 363(h) and that this eventuality is so certain as to require denial of the Debtors' 9019 Motion[1] today. This argument puts the cart before the horse. The question of whether a § 363(h) adversary proceeding would be available, and whether it would succeed, is not before the Court on this motion. If a § 363(h) adversary is ever commenced, those are precisely the questions that will be litigated at that time – with the Muhtars afforded all of their rights and protections in that separate proceeding. No court must – or should – prejudge the merits and defenses of a hypothetical future adversary proceeding as a condition of approving a settlement agreement between parties who have chosen to resolve their own dispute.

Equally important, the Muhtars misapprehend the consequence of non-performance on the Roxbury provisions. The Settlement does not require a sale of the Roxbury Property for it to be valid and binding. If the Debtors fail to achieve any of the Roxbury outcomes by the Drop Dead Date of March 1, 2027, that failure is a default under the Settlement which Archway may waive, as is its right under any commercial agreement. And if Archway elects not to waive such a default, its

---

[1] Capitalized terms not defined herein shall have the definition ascribed to them in the Motion.

remedy is to foreclose on its "Collateral." Perhaps the Muhtars are concerned this could result in Archway foreclosing on Roxbury, but the Settlement defines "Collateral" to include the New Roxbury Deed of Trust **only if** the conditions of Sections 10.C and 15.F are timely satisfied. If no Roxbury deed of trust has ever been recorded because Chase has refused consent and the Muhtars have not agreed, there is simply nothing for Archway to foreclose upon vis-à-vis Roxbury. The Roxbury Property thus remains unencumbered by Archway unless and until the parties separately achieve one of the consensual outcomes – none of which requires the Muhtars' signature or consent.

The Muhtars' *sub rosa* plan argument fares no better. The Settlement resolves a genuine, complex dispute between the Debtors and Archway over more than $28 million in claims, multiple properties, two state court actions, and a pending foreclosure. It is not a plan of reorganization in disguise.

## A.      THE SETTLEMENT IS FAIR AND EQUITABLE

The applicable standard under Rule 9019 requires the Court to find that a proposed compromise is "fair and equitable" after considering: (a) the probability of success in the litigation being compromised; (b) difficulties of collection; (c) the complexity and expense of the litigation; and (d) the paramount interest of the creditors. *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). The Court is not required to conduct a mini-trial on the merits of every underlying claim or to resolve every subsidiary legal question raised by objectors. *U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). It need only determine that the settlement falls within the "lowest point in the range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972).

The majority of the Muhtars Supplemental Opposition argues that the Settlement is not "fair and equitable" *to them*. But whether a proposed settlement is "fair and equitable" and the factors employed to determine whether this standard is met are expressly creditor- and estate-centric. They ask whether the bargain is a reasonable exercise of the debtor's business judgment in light of the risks, costs, and likely returns to the estate. Rule 9019 itself is procedural and does not enlarge or create substantive rights in non-parties such as the Muhtars. There may come a time when this Court is asked to consider what is fair and equitable as to the Muhtars (perhaps in a future § 363(h) action),

but that time is not now on the 9019 Motion when the Motion does not impact or compromise any of the Muhtars' rights or interests in the Roxbury Property. The Debtors will nevertheless address the merits of each "fair and equitable" argument raised by the Supplemental Opposition.

The Muhtars' arguments, taken together, essentially ask this Court to deny a settlement agreement—which resolves substantial litigation between the Debtors and Archway—based on their speculation about what will happen years from now with respect to one property that is not even Archway's existing collateral. That is not what Rule 9019 requires. As set forth below, each of the Muhtars' seven points either misreads the Settlement or asks the Court to prejudge a hypothetical adversary proceeding that has not been filed and may never be filed.

**1.      The Muhtars' Claim That Chase Will Not Consent Misidentifies the Actual Consequence of Non-Performance on the Roxbury Provisions**

The Muhtars lead with the assertion that because Chase will not consent to any further encumbrance, the "only relief the Settlement can actually produce is a sale of the Muhtars' property." This argument conflates what the Settlement allows to happen with what the Settlement requires to happen, and misidentifies the consequence of non-performance.

The Settlement, as amended by the First Amendment, offers a menu of Roxbury outcomes prior to the Drop Dead Date: (i) a consensual deed of trust with Chase's consent; (ii) a stipulated sale order executed by all title holders; (iii) a § 363(h) adversary proceeding in which the court-ordered sale has closed; or (iv) liquidation of Sue's interest in a transaction approved by Archway. These are potential outcomes, not mandates directed at the Muhtars. If none of them occur, the consequence is a default under the Settlement – not an automatic sale. The word "default" appears in the Settlement because Archway has agreed to forbear from enforcing its remedies during the forbearance period, and the Settlement simply recognizes what happens if an obligation is not met.

Critically, a default on the Settlement's Roxbury provisions does not compel a sale of the Roxbury Property. It gives Archway the option to pursue its remedies against its "Collateral." But the Roxbury Property only becomes Collateral within the meaning of the tiered foreclosure waterfall if and when the New Roxbury Deed of Trust is actually recorded. The First Amendment places the Roxbury Property in Tier 3 "if the conditions of Sections 10.C and 15.F are timely satisfied." If

4

those conditions are never satisfied – because Chase refuses consent and the Muhtars have not agreed – the Roxbury Property never enters the collateral waterfall, and Archway has nothing to foreclose upon with respect to Roxbury.

Furthermore, the Settlement preserves Archway's right to waive any default. A sophisticated commercial lender like Archway is well capable of evaluating, at the appropriate time and in light of its overall security position, whether to call a default or to proceed without the Roxbury deed of trust. That is a decision for the future, but regardless does not end in a Roxbury sale unless the Muhtars support the sale or a *future* court order following a maybe never-to-be-filed court proceeding call for this outcome. Approving the Settlement today does not predetermine or prejudice any of these future outcomes; it simply ratifies the Debtors' decision to resolve a complex, expensive, and uncertain dispute with their largest creditor.

**2.      The Pledge and UCC-1 Argument Addresses a Condition That Has Not Yet Occurred and That the Court Can Address If and When It Arises**

The Muhtars spend considerable effort arguing that there is a required UCC-1 pledge pursuant to Section 15.F of the Settlement that would trigger a default under the Chase Deed of Trust. This argument suffers from a threshold problem: the pledge obligation under Section 15.F is not triggered by mere approval of the Settlement. It is triggered only "at the close of any transaction that results in proceeds flowing to Sue, or any other Debtor, irrespective of any other conditions in or provisions of this Agreement." This only happens if the Muhtars have consented to the lien or a Roxbury sale is authorized by a future court proceeding.

In other words, the pledge is contingent, not immediate. It does not spring into existence upon Court approval of the 9019 Motion. It arises only when and if a transaction closes that generates proceeds flowing to a Debtor. If no such transaction occurs, the pledge obligation is never triggered. Furthermore, if there were to be a sale, then the Chase Deed of Trust would be satisfied from the proceeds of the sale. So this hypothetical default on the Chase Deed of Trust would have no practical consequence because the Chase loan would be paid immediately following the default. The Muhtars are asking this Court to deny the settlement based on a hypothetical chain of events that has not occurred and would have no practical implication for the Muhtars if it did occur.

5

**3.     Archway Does Not Hold a Veto Over Any Sale of the Roxbury Property**

The Muhtars characterize the Settlement as providing Archway an approval right over any sale of the Roxbury Property. The Settlement does no such thing. The First Amendment does provide that one of the Roxbury options (option iv) is that "Sue's interests in the Roxbury Property have been liquidated in a transaction approved in writing in advance by Archway…". This provision addresses a sale of Sue's 50% ownership interest of Roxbury, not the Roxbury Property itself. This option was negotiated to provide a mechanism for Sue to monetize her interest in Roxbury *without* having to sell the Roxbury Property. The most likely buyer of Sue's 50% interest in the Roxbury Property are the Muhtars…and discussions are ongoing with the Muhtars for such a potential sale.

**4.     The Settlement Does Not Delegate Authority to File a § 363(h) Adversary to Archway**

The Muhtars argue that the Settlement "delegates the debtor-in-possession's fiduciary discretion to Archway and commits the estate to litigate a forced sale adversary against non-debtors." The Settlement does no such thing. The Muhtars posture that Archway would be controlling the potential § 363(h) adversary proceeding contrary to the will of the Debtors. Make no mistake about it, the Debtors do not want to sell Roxbury and they do not want to prosecute a § 363(h) adversary proceeding. But they also do not want to owe tens of millions of dollars to Archway, they do not want to be in bankruptcy proceedings, and they do not want to sell any of their properties or assets. But that's not the reality they face. Considering their circumstances, the Debtors choose the Settlement – within their business judgment – as the best outcome for themselves and their creditors. If a § 363(h) adversary proceeding is brought, it will be brought by the Debtors' own choosing. Archway has no right to force a § 363(h) adversary proceeding or oversee its prosecution should it be filed.

**5.     The Threshold Availability of § 363(h) Is Not Decided Here—The Muhtars' Arguments on This Point Are Premature and Do Not Bear on the Approval of the Settlement**

The Muhtars devote substantial argument to the proposition that § 363(h) may be unavailable as a threshold matter because the estate may hold no qualifying co-tenancy interest and because the

6

Roxbury Property may have been held and operated as a partnership. These are potentially interesting legal questions but they are not before the Court on this Motion.

The Settlement does not require a § 363(h) sale. As noted above, it identifies such a sale as one of four possible outcomes under the Roxbury provisions alongside consensual encumbrance, stipulated sale, and liquidation of Sue's interest in Roxbury. Whether § 363(h) would be available is a question for a future adversary proceeding, if and when such adversary is commenced. Because one of four optional future paths might face legal obstacles is not a valid reason to deny the Motion.

Moreover, the Muhtars' argument is self-defeating in a subtle but important way. They urge the Court to find today that § 363(h) would fail, and therefore to reject the Settlement. But if § 363(h) truly were unavailable, that would mean the worst-case outcome the Muhtars fear – a court-ordered forced sale – could not occur (at least not pursuant to a § 363(h) adversary proceeding). The Muhtars cannot credibly argue that the Settlement should be denied because it will lead to a § 363(h) sale but also that § 363(h) is unavailable as a matter of law.

The appropriate course is to approve the Settlement (if conditions are otherwise met) and, if a § 363(h) adversary is ever filed, to adjudicate the Muhtars' threshold defenses at that time. The Muhtars' rights are fully preserved for that proceeding, and the Court will have a full record on which to evaluate their claims. Nothing in approval of this Settlement forecloses those arguments.

**6.      The Benefit-Versus-Detriment Analysis Under § 363(h)(3) Is for a Future Adversary Proceeding, Not This Motion**

Here again, the Muhtars ask the Court to advance the merits of a § 363(h) adversary proceeding for consideration now on the 9019 Motion, rather than as part of such potential § 363(h) adversary proceeding. The Muhtars argue that as a matter of law a § 363(h) sale of the Roxbury Property would confer no benefit on the estate and that the detriment to them would be severe. These contentions, however they may fare in a future § 363(h) adversary, are irrelevant to the question of whether the Settlement should be approved under Rule 9019.

The Settlement is not a § 363(h) sale motion. It is a proposed resolution of complex litigation between the Debtors and Archway. The four *A & C Properties* factors ask this Court to assess the probability of success in that litigation, the complexity of that litigation, the difficulties of collection,

7

and the paramount interest of creditors. *A & C Properties*, 784 F.2d at 1381. None of those factors requires an assessment of whether a future § 363(h) adversary proceeding – which has not been filed and which the Settlement itself only contemplates as one of four possible optional outcomes – would satisfy § 363(h)'s prerequisites.

Put differently: the Muhtars are asking the Court to prejudge the merits of a hypothetical adversary proceeding that does not exist, in order to deny a settlement agreement that resolves genuine, pending litigation between the actual parties. That analytical inversion is not compelled by Rule 9019 or by *A & C Properties*. The benefit-versus-detriment analysis under § 363(h)(3) belongs in a § 363(h) proceeding, if one is ever filed. It does not belong in a 9019 motion to approve the Settlement.

**7.      The Alleged Inconsistencies in the Roxbury Documents Do Not Require Denial of the Settlement**

The Muhtars contend that the Settlement is internally inconsistent because it treats recordation of a Roxbury deed of trust as both a condition precedent to effectiveness and a deferred post-effectiveness obligation. They also contend that the proceeds definition sweeps in the Muhtars' own 50% interest.

The First Amendment expressly provides that in the event of any conflict or inconsistency between its terms and the original Settlement Agreement, the terms of the First Amendment shall prevail. The First Amendment removes the New Roxbury Deed of Trust, the Roxbury estoppel certificate, the Roxbury certification of trust, and the Roxbury pledge and UCC-1 from the conditions precedent to effectiveness (Section 14) and relocates them to conditions subsequent (Section 15.F). As a condition subsequent, the only time the Roxbury pledge or UCC-1 must be provided is if the Debtors choose a Roxbury option as set forth in Sections 5.F or 10.C. Section 5.F provides the Roxbury options as means by which the Linden Property may be included in Shortfall Residence Collateral and Section 10.C provides the Roxbury options as means by which Debtors may commit the value of Sue's interest in Roxbury to support payment of the Settlement Amount and avoid a default on the Settlement Agreement. If there is any residual inconsistency in the body of the original Settlement Agreement – language that predates the First Amendment – the First

8

Amendment's controlling clause resolves it in favor of the treatment set forth in the First Amendment.

As to the proceeds definition, the Settlement defines "Archway Approved Net Proceeds" as amounts flowing from the sale of properties encumbered as Archway's collateral, net of senior encumbrances, taxes, and closing costs. Any overreach in the proceeds language as applied to the Muhtars' 50% interest is properly understood as a drafting imprecision that does not affect the validity of the Settlement as between the Debtors and Archway, and that would be subject to correction – or to the Muhtars' rights under § 363(h) – in any future sale proceeding. A drafting imperfection in one provision of a lengthy commercial settlement does not require that the entire settlement be denied. The Court may address, condition, or clarify the proceeds definition as part of its approval order if it believes such clarification is appropriate. What it need not do is deny the settlement entirely on this basis. The Debtors fully support including such clarifying language in an order approving the Settlement Agreement.

**B.    THE SETTLEMENT IS NOT A *SUB ROSA* PLAN**

**1.    The Muhtars' *Sub Rosa* Argument Mischaracterizes the Nature and Purpose of the Settlement**

A settlement is an impermissible *sub rosa* plan only when it disposes of essentially all of a debtor's assets, dictates the terms of a reorganization, or otherwise circumvents the plan confirmation process in ways that deny creditors the protections of the confirmation process. *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). The Settlement here does none of these things.

The Settlement resolves a discrete and well-defined dispute: the enforceability and amount of Archway's claims against the Debtors and their estates, arising from over $28 million in asserted debt secured by the Broadway Collateral and various other properties. It is the gateway to a confirmable joint plan, not a substitute for one. The Settlement itself expressly contemplates that the Debtors will file a Consensual Plan in the Bankruptcy Court and obtain confirmation in accordance with all applicable Bankruptcy Code requirements, including disclosure, voting, and the Chapter 11

9

confirmation standards. The Settlement defines what Archway's treatment will be under that plan; it does not eliminate the plan process.

The Muhtars' *sub rosa* argument proceeds from a false premise: that because the Settlement grants Archway new liens on previously unencumbered properties and establishes a tiered collateral waterfall, it impermissibly dictates creditor priorities. But granting new security interests as part of a settlement is not the equivalent of imposing a plan over the objections of creditors. Creditors retain their rights to object to the Consensual Plan, to vote on it, and to assert all available confirmation objections. The Settlement merely resolves the threshold dispute about the amount and allowance of Archway's claim so that a confirmable plan can be constructed.

Moreover, the Muhtars have not demonstrated that approval of this Settlement, standing alone, would deny any creditor a specific protection to which they are entitled under the confirmation process. The cases they cite – *Braniff*, *Lionel*, *Iridium*, and *Jevic* – involved settlements that effectively foreclosed the plan process altogether by selling off virtually all estate assets, locking in a final distribution scheme, or distributing proceeds in a priority-skipping manner without any subsequent plan. *See In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017). None of those scenarios applies here. The Debtors' estates retain assets; a plan is expressly required and contemplated; creditors will vote; and this Court will have full confirmation jurisdiction.

> **2.     The Settlement's Feasibility Is Not Defeated by the Muhtars' Speculative Timeline Arguments**

The Muhtars argue that completing a § 363(h) adversary proceeding by the March 1, 2027 Drop Dead Date is requirement of the Settlement and the consensual plan. As discussed above, it is not. On the back of this false premise, the Muhtars conclude this presents a feasibility problem that will doom confirmation of the plan and should thus defeat approval of the Settlement. This argument again conflates the hypothetical future proceeding with the present settlement. The Drop Dead Date is a milestone for the Debtors to achieve one of the four Roxbury outcomes. If none is achieved, a default occurs, which, as discussed above, Archway may waive. The Settlement does not require a

§ 363(h) adversary or a related sale of Roxbury to conclude within the Drop Dead Date as a condition of the Settlement's validity.

More fundamentally, the Muhtars' feasibility argument is directed at the consensual plan, not at the Settlement itself. Plan feasibility is evaluated at confirmation, on a full record, not on the 9019 Motion. The Court will have ample opportunity at confirmation to assess whether the plan as proposed can realistically be implemented. Denying the Settlement today – which is the pathway to that plan – would not advance the plan feasibility analysis; it would simply eliminate the plan prospect entirely, leaving the Debtors and creditors worse off.

**C.   CONCLUSION**

The Court should approve the Motion and the Settlement Agreement as amended by the First Amendment. The Muhtars' Supplemental Opposition rests on a fundamental misreading of the Settlement: it assumes that approval of the 9019 Motion is tantamount to approving a forced sale of the Roxbury Property under § 363(h). But the Settlement does no such thing. The Settlement is a valid, negotiated resolution of a complex multi-property dispute between the Debtors and Archway. The Roxbury provisions, as restructured by the First Amendment, do not require the Muhtars to sign anything, do not require a § 363(h) sale for the Settlement to be effective, and do not create any Archway lien on the Roxbury Property unless and until consensual conditions are separately satisfied. If those conditions are not satisfied, the consequence is a potential default on the Settlement that Archway may waive. If Archway does not waive such a potential default, Archway's recourse is only to collateral that has actually been pledged and perfected.

Every argument the Muhtars raise about § 363(h) – its availability, its statutory prerequisites, the benefit-versus-detriment balance – is an argument properly reserved for a future adversary proceeding that has not been filed and may never be filed. Rule 9019 does not require this Court to resolve those questions today. The Debtors respectfully request that the Court overrule the Muhtars' Opposition, and approve the Settlement Agreement as amended by the First Amendment.

The Settlement is a Rule 9019 compromise of a genuine and substantial dispute between the Debtors and their largest creditor. It does not eliminate the plan confirmation process; it structures the path to a confirmable plan. It does not distribute estate assets outside a plan; it resolves the

11

amount and allowance of Archway's secured claim. It does not deny creditors voting rights or confirmation protections; it provides the foundation on which a plan can be built. The Settlement does not constitute a *sub rosa* plan, and the Muhtars' arguments to the contrary should be overruled.

DATED:  July 14, 2026                              WEINTRAUB ZOLKIN TALERICO & SELTH LLP


By: /s/ Derrick Talerico
                          Derrickt Talerico
Attorneys for Broadway Avenue Investments, LLC,
Negev Investments, LLC and SLA Investments, LLC
Debtors and Debtors in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

    11766 Wilshire Blvd, Suite 730, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled (*specify*): **Reply to Haskell and Nurit Muhtar's Supplemental Opposition to Debtors' 9019 Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 14, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:


See attached NEF Service List

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 14, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Pursuant to the *Order Continuing Hearing on Debtors' Motion to Approve Settlement Agreement with Archway Broadway Loan SPE, LLC* [Dkt. 702]:

The Honorable Vincent Zurzolo        (via email:  Chambers_VZurzolo@cacb.uscourts.gov)
United States Bankruptcy Court

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 14, 2026 | Martha E. Araki | /s/ Martha E. Araki |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Broadway Avenue Investments, LLC – Jointly Administered

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- <u>Attorneys for Corporate Debtors Broadway Avenue Investments, LLC, Negev Investments, LLC, SLA Investments, LCC.</u>: **Derrick Talerico**: dtalerico@wztslaw.com; maraki@wztslaw.com; sfritz@wztslaw.com; admin@wztslaw.com
- <u>Attorneys for Individual Debtors Alan Gomperts, Daniel Halevy, Susan Halevy</u>: **Zev Shechtman, Carol Chow, Turner Falk, Steven Werth**: zev.shechtman@saul.com; zshechtman@ecf.inforuptcy.com; carol.chow@saul.com; easter.santamaria@saul.com; turner.falk@saul.com; steven.werth@saul.com; hannah.richmond@saul.com; litigationdocketing@saul.com
- <u>Attorneys for Creditor First Foundation Bank</u>: **Scott R Albrecht**: scott.albrecht@gsaattorneys.com; jackie.nguyen@sgsattorneys.com
- <u>Attorneys for Creditor Korth Direct Mortgage, Inc.</u>: **Tanya Behnam, Garrick Vanderfin**: tbehnam@polsinelli.com; gvanderfin@polsinelli.com, tanyabehnam@gmail.com; ladocketing@polsinelli.com; zyoung@polsinelli.com; ccripe@polsinelli.com;
- <u>Attorneys for Creditor Los Angeles County Treasurer and Tax Collector</u>: **Jacquelyn H Choi**: jacquelyn.choi@rimonlaw.com; docketingsupport@rimonlaw.com
- <u>Attorneys for Creditor United States of America on behalf of the Internal Revenue Service</u>: **Robert F Conte**: robert.conte@usdoj.gov; caseview.ecf@usdoj.gov; usacac.tax@usdoj.gov
- <u>Attorneys for Defendants Alan Gomperts, Daniel Halevy, Susan Halevy</u>: **Ryan Coy**: ryan.coy@blankrome.com; courtmail@blankrome.com
- <u>Courtesy NEF/Interested Party</u>: **Christopher Cramer**: secured@becket-lee.com
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Christopher Crowell, Jessica M Simon**: ccrowell@frandzel.com; rsantamaria@frandzel.com
- <u>Attorneys for Creditors Archway Real Estate Income Fund I SPE I, LLC, Archway Broadway Loan SPE, LLC, fka Archway Real Estate Income Fund I REIT, LLC, Archway Real Estate Income Fund, and Plaintiff Archway Broadway Loan SPE, LLC</u>: **Michael G. Fletcher, Bruce D. Poltrock, Gerrick Warrington**: mfletcher@frandzel.com; gwarrington@frandzel.com; bpoltrock@frandzel.com; sking@frandzel.com; achase@frandzel.com; autodocket@frandzel.com
- <u>Attorneys for Creditors Metropolitan Life Insurance Company, NewRez LLC d/b/a Shellpoint Mortgage Servicing, *US Bank Trust National Association, not in its individual capacity, but solely as owner trustee for GS Mortgage-Backed Securities Trust 2020-NQM1, and* Wells Fargo National Bank West</u>: **Todd S Garan**: ch11ecf@aldridgepite.com; TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
- <u>Attorneys for Creditor Los Angeles County Treasurer and Tax Collector</u>: **Richard Girgado**: rgirgado@counsel.lacounty.gov
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Jacqueline L James**: jjames@buchalter.com; gvidales@buchalter.com; docket@buchalter.com
- <u>Attorneys for Interested Parties Avi Muhtar, and Haskell & Nurit Muhtar</u>: **Avi Edward Muhtar**: amuhtar@crownandstonelaw.com
- <u>Attorneys for Creditors Archway Real Estate Income Fund I SPE I, LLC, Archway Broadway Loan SPE, LLC, fka Archway Real Estate Income Fund I REIT, LLC, Archway Real Estate Income Fund, and Plaintiff Archway Broadway Loan SPE, LLC</u>: **Paige Selina Poupart**: ppoupart@smsm.com; achase@frandzel.com
- <u>Attorneys for Creditor AIRE Ancient Baths Los Angeles, LLC</u>: **David B Shemano**: dshemano@shemanolaw.com
- <u>Attorneys for Creditor Harvest Small Business Finance, LLC</u>: **Jessica M. Simon**: jsimon@hrhlaw.com; mgranzow@hrhlaw.com
- <u>Attorneys for Creditor Wells Fargo Bank, N.A. dba Wells Fargo Auto</u>: **Samantha White**: Samantha.white@wellsfargo.com
- <u>Attorneys for Creditor Wells Fargo Bank, N.A.</u>: **Jennifer C Wong**: bknotice@mccartyholthus.com; jwong@ecf.courtdrive.com
- <u>US Trustee's Office</u>: ustpregion16.la.ecf@usdoj.gov; **Kelly L. Morrison**: Kelly.l.morrison@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**