| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ZEV SHECHTMAN (BAR NO. 266280)<br>Zev.Shechtman@saul.com<br>SAUL EWING LLP<br>1888 Century Park East, Suite 1500<br>Los Angeles, California 90067<br>Telephone:  (310) 255-6100<br>Facsimile:  (310) 255-6200<br><br>☐ *Movant(s) appearing without an attorney*<br>☒ *Attorney for Movant(s)* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>SEATON INVESTMENTS, LLC, et al.,<br>**Now a dismissed case** | LEAD CASE NO.2:24-bk-12079-VZ |
|---|---|
| | CHAPTER: 11 |
| Debtors and Debtors In Possession<br><br>☐ Affects All Debtors.<br><br>☐ Affects Case No.: 2:24-12080-VZ<br>Colyton Investments, LLC -**Now a dismissed case**<br><br>☐ Affects Case No.: 2:24-12081-VZ<br>Broadway Avenue Investments, LLC<br><br>☐ Affects 2:24-12082-VZ<br>SLA Investments, LLC<br><br>☐ Affects 2:24-12091-VZ<br>Negev Investments, LLC<br><br>☒ Affects Case No.: 2:24-12074-VZ<br>Alan Gomperts<br><br>☐ Affects Case No.: 2:24-12075-VZ<br>Daniel Halevy<br><br>☐ Affects Case No.: 2:24-12076-VZ<br>Susan Halevy.<br>. | **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION LBR 9013-1(o)(3)** |
| | [No Hearing Required] |

1.  I am the ☐ Movant(s) or ☒ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2.  On (*date*):  06/30/2026    Movant(s) filed a motion or application (Motion) entitled: NOTICE OF APPLICATION AND APPLICATION OF DEBTOR ALAN GOMPERTS TO EMPLOY REAL ESTATE BROKER (DOC. 704)

3.  A copy of the Motion and notice of motion is attached to this declaration.

4.  On (*date*):  06/30/2026    Movant(s), served a copy of ☐ the notice of motion or ☒the Motion and notice of motion

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5.  Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6.  More than <u>17</u> days have passed after Movant(s) served the notice of motion.

7.  I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing was timely filed.

8.  No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street address, email address, or facsimile number specified in the notice of motion.

9.  Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: 07/21/2026

/s/ Zev Shechtman
Signature

Zev Shechtman
Printed name

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                    Page 2                    **F 9013-1.2.NO.REQUEST.HEARING.DEC**

# EXHIBIT A

ZEV SHECHTMAN (BAR NO. 266280)
Zev.Shechtman@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Alan Gomperts, Daniel Halevy,
Susan Halevy, Debtors and Debtors in Possession

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| In re: SEATON INVESTMENTS, LLC, et al., *Now a dismissed case* | Lead Case No. 2:24-bk-12079-VZ |
|---|---|
| Debtors and Debtors In Possession. | Jointly Administered with Case Nos.: 2:24-bk-12080-VZ; 2:24-bk-12081-VZ; 2:24-bk-12082-VZ; 2:24-bk-12091-VZ; 2:24-bk-12074-VZ; 2:24-bk-12075-VZ and 2:24-bk-12076-VZ |
| ☐ Affects All Debtors. | |
| ☐ Affects Case No.: 2:24-12080-VZ Colyton Investments, LLC -*Now a dismissed case* | Chapter 11 |
| ☐ Affects Case No.: 2:24-12081-VZ Broadway Avenue Investments, LLC | **NOTICE OF APPLICATION AND APPLICATION OF DEBTOR ALAN GOMPERTS TO EMPLOY REAL ESTATE BROKER AND TO ENTER INTO AN EXCLUSIVE LISTING AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND STATEMENTS OF DISINTERESTEDNESS** |
| ☐ Affects 2:24-12082-VZ SLA Investments, LLC | |
| ☐ Affects 2:24-12091-VZ Negev Investments, LLC | |
| ☒ Affects Case No.: 2:24-12074-VZ Alan Gomperts | **[No Hearing Required Unless Requested Under LBR 9013-1(o)]** |
| ☐ Affects Case No.: 2:24-12075-VZ Daniel Halevy | |
| ☐ Affects Case No.: 2:24-12076-VZ Susan Halevy | |

58122820.7
390855-00001

**Exhibit A**
**4**

**TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

PLEASE TAKE NOTICE that Alan Gomperts, one of the individual debtors and debtors-in-possession (the "Debtor") in these jointly administered chapter 11 cases, hereby moves for entry of an order authorizing the Debtor to employ a real estate broker, at the expense of the bankruptcy estate (the "Application").

PLEASE TAKE FURTHER NOTICE, pursuant to Local Bankruptcy Rule ("LBR") 2014-1(b)(3), of the following:

(A) Identity of Professional, and Purpose and Scope of Employment:  The professional is United Real Estate Professionals through its agent, Ben Kanani (collectively, the "Broker").  The Broker will be employed to sell the Debtor's interest in the residential real property commonly known as: 3538 Greenfield Avenue, Los Angeles, California 90034 (the "Property").

(B) Compensation:  The professional seeks compensation pursuant to 11 U.S.C. § 328.

(C) Arrangements for Compensation:  The professional's total commission is five percent (5%) of the selling price for the Property made payable only upon the close of sale.  The commission will be reduced to 3.5% in the event there are no other agents involved in the sale.

(D) Name, Address and Telephone Number of Person Who Will Provide a Copy of the Application:  A copy may be requested by contacting undersigned counsel for the Debtor.

(E) Response:  Any response and request for hearing, in the form required by LBR 9013-1(f), must be filed and served on the Applicant (and counsel), and the United States trustee not later than fourteen (14) days from the date of service of this notice.

The Debtor seeks an order approving the proposed exclusive listing agreement with the Broker for the Property on the terms set forth in Exhibit "1" attached hereto.  The Debtor further seeks authority to extend, modify (except as to increasing the commission), and terminate the listing agreement in his discretion without further notice or order of the Court.

The Application is based upon this notice, the attached Memorandum of Points and Authorities, the attached Statements of Disinterestedness from the Broker, the complete files and records of this case, and such other evidentiary matters as may be presented to the Court.

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001

2

**Exhibit A**

**5**

PLEASE TAKE FURTHER NOTICE that, pursuant to LBR 9013-1(o)(1)(A)(ii), any objection and request for hearing must be in writing and must be filed and served within fourteen (14) days after the date of mailing of this Notice, plus an additional three (3) days if this notice of motion was served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F). The response or opposition to the Application shall be filed with the Bankruptcy Court and served on the United States Trustee, at 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017, and counsel for the Debtor, Zev Shechtman, at 1888 Century Park East, Suite 1500, Los Angeles, CA 90067.

If you fail to file a written response within fourteen (14) days of the date of the service of this notice, plus an additional three (3) days if this notice of motion was served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F), the Court may treat such failure as a waiver of your right to oppose the Application and may grant the requested relief.

DATED: June 29, 2026

SAUL EWING LLP

By: _____
ZEV SHECHTMAN
Attorneys for Alan Gomperts, Daniel Halevy, Susan Halevy, Debtors and Debtors in Possession

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001

3

**Exhibit A**

**6**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Alan Gomperts, the debtor and debtor-in-possession in this case ("Applicant" or the "Debtor"), respectfully applies for authority to employ United Real Estate Professionals ("Broker"), through its agent, Ben Kanani as the Debtor's real estate broker in this case, based upon the following:

1.     This bankruptcy case was commenced on or about March 18, 2024 (the "Petition Date"), when the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Code") along with two relatives (Susan Halevy and Daniel Halevy, Mr. Gomperts's mother-in-law and brother-in-law, together, the "Individual Debtors") and five commercial properties in which the Individual Debtors held interests as of the Petition Date.

2.     The assets of the Debtor's estate include the Debtor's interest in, among other parcels of real property, the residential property commonly known as: 3538 Greenfield Avenue, Los Angeles, California 90034 (the "Property").

3.     Title to the Property is held by the Debtor's revocable living trust, the Gomperts & Halevy Family Trust (the "Family Trust").  For all intents and purposes, the fact that the Property is held by the Family Trust does not change its identity as property of the Debtor's estate and the use of the proceeds for estate purposes.

4.     It is necessary for Applicant to sell the Property in order to pay his obligations pursuant to a Chapter 11 plan.  As reflected in the exclusive listing agreement (the "Listing Agreement") attached as Exhibit "1" to the Declaration of Alan Gomperts, Applicant engaged Broker on or about February 1, 2026.  The Debtor informed Broker that Broker's employment and the ultimate sale required Bankruptcy Court approval, and the Debtor acknowledges that the Listing Agreement is ineffective absent such approval.  Attached to the Listing Agreement is a bankruptcy addendum dated June 29, 2026 stating, among other terms, that the sale and commissions, are subject to bankruptcy court approval.  The best way to market the Property is through a licensed real estate broker with experience in marketing similar properties in the area, like Broker.

5.     Applicant seeks approval of the employment of Broker as his real estate broker

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001

4

**Exhibit A**
7

because Broker is experienced in selling properties where the Property is located and Applicant has had good past experience with Broker.

6. Applicant seeks approval for employment and compensation of Broker based on a total commission of five percent (5%) of the selling price for the Property made payable only upon the close of sale. The commission will be reduced to 3.5% in the event there are no other agents involved. The listing price for the Property is $1,398,000.00. Applicant has received seven (7) offers for the Property listing since Broker started marketing the Property. The Property is currently in escrow with the highest and best offer subject to overbid. Applicant will be filing a sale motion.

7. The terms of the exclusive listing agreement for the Property are reflected in Exhibit "1" attached hereto and incorporated herein by this reference. The Debtor further seeks authority to extend, modify (except as to commission), and terminate the listing agreement in his discretion without further notice or order of the Court.

8. The Debtor believes after payment of liens and costs of sale the estate may net approximately $1,145,000.00 from the sale of the Property as follows:

Value:    $1,398,000.00 (Proposed Listing Price)

Less:  Mortgage        $169,000

Capital Gain Taxes    $0

Costs of Sale (6%)     $84,000

Projected Net Equity  $1,145,000

9. Applicant believes that the employment of Broker, through its agent Ben Kanani, is in the best interests of the estate, based on the above-stated facts. The Property will be advertised throughout Los Angeles County to increase the likelihood of overbids.

10. Applicant is informed and believes, and based thereon alleges, that the proposed Broker has no connection with the Debtor, the United States Trustee or employees of the United States Trustee, any bankruptcy judge or any other party-in-interest, that Broker is therefore disinterested and not adverse to this estate with respect to the matters upon which Broker will be engaged, except that Mr. Kanani has previously provided brokerage, including leasing, services to

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001

**Exhibit A**
**8**

the Debtor and his family. Considering its experience and quality of services, Debtor believes that the employment of Broker is in the best interests of the estate.

WHEREFORE, Applicant prays for entry of an order authorizing him to: (1) employ United Real Estate Professionals as the Debtor's real estate brokers for the Property; (2) execute an exclusive listing agreement consistent with the terms and conditions set forth in Exhibit "1" attached hereto; (3) authorize Applicant to extend, modify (except as to commission), or terminate the listing agreement in his sole discretion without further notice or order of the Court; and (4) for all other further and proper relief.

DATED: June 29, 2026

Alan Gomperts

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001                    6

**Exhibit A**
9

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014**
**(United Real Estate Professionals)**

1. Name, address and telephone number of the professional ("the Professional") submitting this Statement:

United Real Estate Professionals
17011 Beach Blvd. #900
Huntington Beach, CA 92647
Telephone No. (310) 800-7405

2. The services by the Professional in this case are (specify):

To list and aid Debtor in marketing and selling the real properties located at 3538 Greenfield Avenue, Los Angeles, California 90034.  Attached as Exhibit "2" is my biography which describes my expertise and experience.

3. The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

Five percent (5%) of the selling price for the Property (payable only upon close of sale). The commission will be reduced to 3.5% in the event there are no other agents involved.

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

N/A

5. The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

I have reviewed my files of past clients. I have previously provided brokerage services to Debtor and his family, including leasing services.

6. The following is a complete description of all of the Professional's connections with the Debtor, principals of the Debtor's, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

None.

7. The Professional is not a creditor, an equity security holder or an insider of the Debtor except as follows (specify, attaching extra pages as necessary):

None.

8. The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9. The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of any security of the

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001

7

**Exhibit A**
**10**

Debtor.

10. The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor

11. The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary).

None.

12. Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Ben Kanani
17011 Beach Blvd. #900
Huntington Beach, CA 92647
Telephone No. (310) 800-7405
benkanani@gmail.com

13. The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14. Total number of attached pages of supporting documentation:

15. After conducting or supervising the investigation described in paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that paragraphs 6 through 9 and 11 are stated on information and belief.

Executed on June ____, 2026, at Los Angeles, California.

Ben Kanani

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

58122820.7
390855-00001

8

**Exhibit A**
**11**

# EXHIBIT 1

**Exhibit A**

**12**



Authentisign ID:

CALIFORNIA
ASSOCIATION
OF REALTORS®

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/24)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
- (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
- (b) A duty of honest and fair dealing and good faith.
- (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
- (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
- (b) A duty of honest and fair dealing and good faith.
- (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
- (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
- (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant *GOMPERTS & HALEVY FAMILY TRUST*   *GOMPERTS & HALEVY FAMILY TRUST* Date 02/02/2026

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent   *UNITED REAL ESTATE PROFFESSIONALS*   DRE Lic. # *01102160*
                           Real Estate Broker (Firm)

By *Ben Kanani* _____   *Ben Kanani* DRE Lic. # *01878686* _____ Date 02/02/2026
     (Salesperson or Broker-Associate, if any)

**AD REVISED 12/24 (PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212                          Phone: 310-926-8469      Fax:                    3538 Greenfield
Behnam (Ben) Kanani                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Exhibit 1
10
Exhibit A
13

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

### CIVIL §§ 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.

**2079.14. (a)** A copy of the disclosure form specified in § 2079.16 shall be provided in a real property transaction as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller before entering into a listing agreement. (2) The buyer's agent shall provide the disclosure to the buyer as soon as practicable before the execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase.  If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer. **(b)** The agent providing the disclosure form specified in § 2079.16 shall obtain a signed acknowledgement of receipt from the buyer or seller except as provided in § 2079.15.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)

Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)

Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____

Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company.  Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**AD REVISED 12/24 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          3538 Greenfield

Exhibit 1

11

Exhibit A

14

Authentisign ID: B5172829-E1FF-F011-832E-000D3A4FF82A

CALIFORNIA
ASSOCIATION
OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
### (Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/25)

**Date Prepared:** *February 1, 2026*

1. **EXCLUSIVE RIGHT TO SELL:** *GOMPERTS & HALEVY FAMILY TRUST* ("Seller")
hereby employs and grants *UNITED REAL ESTATE PROFFESSIONALS* ("Broker")
the exclusive and irrevocable right to sell or exchange the real property described as **3538 Greenfield Ave**
situated in **Los Angeles** (City), **Los Angeles** (County), California, **90034-6102** (Zip Code),
Assessor's Parcel No. **4252-017-007** ("Property") for the Listing Period specified in **paragraph 2A(1).**

2. **TERMS OF LISTING AGREEMENT:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 7 pages. Seller is advised to read all 7 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions |
|---|---|---|---|
| **A** | | **Representation** | |
| **A(1)** | 4G | **Listing Period** **(Maximum Length)** | Beginning **02/01/2026** (date) Ending at 11:59 P.M. on **07/31/2026** (date) (Not to exceed 24 months if improved with one to four units and not owned by an entity. If Listing Period exceeds 24 months on a residential 1-4, this Agreement is void, unless Seller is a corporation, LLC, or partnership.) |
| **A(2)** | | **Listing Price** | *One Million, Three Hundred Ninety-Eight Thousand* Dollars ($*1,398,000.00* ) |
| **B** | | **Property Specific Listings** | ☐ Manufactured (mobile) home (C.A.R. Form MHLA attached) ☐ Probate, conservatorship, or guardianship (C.A.R. Form PLA attached) |
| **C** | | **Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between Seller and Broker.** See attached Broker Compensation Advisory (C.A.R. Form BCA). | |
| **C(1)** | 4B | **Compensation to Seller's Broker (only Seller's side of transaction)** | _____% of the listing price AND, if any, _____; OR ☐ $ _____; OR ☒ see attached Broker-created compensation schedule. (% above is based on purchase price if Seller and buyer sign a purchase agreement) |
| **C(2)** | 4C | ☒ **Additional Compensation to Seller's Broker if buyer is unrepresented** **(Does NOT apply to dual agency)** | _____% of the purchase price AND, if any, _____; OR ☐ $ _____; OR ☐ see attached Broker-created compensation schedule. (If Broker represents both buyer and Seller, buyer side compensation shall be specified in a separate written agreement between Broker and buyer.) |
| **C(3)** | 4D(2) | **Continuation of Right to Compensation for Broker Identified Prospective Buyers** | The Continuation Period shall be *120* calendar days after the Listing Period or any extension ("Continuation Period"). |
| **C(4)** | 4F | **Seller Obligation to Pay Previous Brokers** | Previous Listing/Other broker(s): _____ Compensation to above broker(s) owed if Property transferred to: _____ _____ |
| **C(5)** | | ☐ **Broker is paying a referral fee related to the representation of Seller.** See attached C.A.R. Form RAD. | |
| **D** | | **Items Intended to be Included and Excluded** | |
| **D(1)** | 5A | **Items Included** | ☐ _____; ☐ _____; |
| **D(2)** | 5A | **Excluded Items** | ☐ _____; ☐ _____; |
| **D(3)** | 5B | **Leased Items:** | ☐ Solar Power System(s); ☐ Alarm System(s); ☐ Propane Tank(s); ☐ Water Softener; ☐ |
| **D(4)** | 5B | **Liened Items:** | ☐ Solar Power System(s); ☐ Windows or Doors; ☐ Heating/Ventilation/Air conditioning ☐ _____; ☐ |
| **D(5)** | 5C | (a) Smart Home Features Seller prefers to Include: _____ (b) Smart Home Features Seller prefers to Exclude: _____ | |
| **E** | | **MLS and Public Marketing** | |
| **E(1)** | | **Property will be marketed in the following MLS** | Primary **CLAW** _____ Other(s): _____ | See C.A.R. Form MLSA. |
| **E(2)** | 10 | **Publication of Seller willingness to consider concessions** | If checked below: (i) Seller authorizes Broker to market that Seller is willing to consider offers asking for concessions; and (ii) no amount of the possible concession will be stated in such marketing unless Seller notifies Broker in writing of the amount. ☐ In the MLS(s) listed above, if permitted by that MLS. ☐ In any other marketing outside of the MLS |
| **E(3)** | 12A | ☐ **Seller instructs Broker not to take or use photographs in marketing, except as required by MLS rules.** | |

© 2025, California Association of REALTORS®, Inc.
**RLA REVISED 12/25 (PAGE 1 OF 7)**    Seller's Initials [G&H] / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 7)**

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212    Phone: 310-926-8469    Fax:    3538 Greenfield
Behnam (Ben) Kanani    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Exhibit 1
12

Exhibit A
15

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

Property Address: **3538 Greenfield Ave, Los Angeles, CA  90034-6102** _____ Date: **February 1, 2026**

| F | | Broker's and Seller's Duties | | |
|---|---|---|---|---|
| F(1) | 7B | Timing of Presentation of Offers | Seller instructs Broker to present all offers received as soon as practicable OR ☐ Offers shall be presented on _____ (date) or ☐ _____ days after the Property is listed as active on the MLS. | |
| F(2) | 7C | Buyer Supplemental Offer Letters (Buyer Letters) | Seller instructs Broker not to present Buyer Letters, OR ☐ Seller instructs Broker to present Buyer Letters. If Seller requests or relies on Buyer Letters, Seller is acting against Broker's advice. | |
| F(3) | 7E | Investigation Reports | ☒ Natural Hazard Disclosure<br>☐ Structural Pest Control,<br>☐ General Property Inspection,<br>☐ Homeowners Association Documents,<br>☐ Preliminary (Title) Report,<br>☐ Roof Inspection,<br>☐ Pool Inspection,<br>☐ Septic/Sewer Inspection,<br>☐ Other: _____ | Seller shall order and pay for any reports selected within **5 (or _____) days** of the Beginning Date of this Agreement |
| G | 21 | Exceptions to Ownership/Title | _____ | |
| H | | ☐ Seller intends to include a contingency to purchase a replacement property as part of any transaction (see C.A.R. Form SPRP). | | |
| I | | **Intentionally Left Blank** | | |
| J | 13, 14 | Seller Opt Outs | ☐ Keysafe/Lockbox ☐ Signs | |
| K | | Additional Terms | _____ | |

**3.   ADVISORIES AND ADDENDA:**

   **A.   Advisories**
      ☒ Broker Compensation Advisory (C.A.R. Form BCA)
      ☐ REO Advisory Listing (C.A.R. Form REOL)
      ☐ Trust Advisory (C.A.R. Form TA)
      ☐ Other: _____

   **B.   Addenda.** The addenda identified below are incorporated into this Agreement
      ☐ Short Sale Listing Addendum (C.A.R. Form SSLA)
      ☐ _____   ☐ _____

**4.   COMPENSATION TO BROKER:**

Notice: **The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker.**

   **A.   ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.

   **B.   COMPENSATION TO BROKER:** Seller agrees to pay to Broker as compensation for services under this Agreement, the amount specified in **paragraph 2C(1)**.

   **C.   OPTIONAL ADDITIONAL COMPENSATION FOR UNREPRESENTED BUYER:** Seller agrees to pay Broker the additional amount specified in **paragraph 2C(2)**, if checked, for services rendered only if the buyer is not represented by a real estate agent.  If a buyer is represented by a real estate agent, whether working through Broker or another brokerage company, then **paragraph 2C(2)** does not apply.

   **D.   COMPENSATION TERMS:** Compensation is earned, and Seller shall pay Broker as follows:

     (1)   **Completed Transaction or Seller Default:** If during the Listing Period, or any extension, Broker, any other broker, Seller, or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)

  OR (2)   **Continuation of Right to Compensation for Broker Procured Buyer(s):** If, during the Continuation Period specified in **paragraph 2C(3)**, or the same period of time after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease, or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity:
       • who physically entered and was shown the Property during the Listing Period or any extension by Broker or any other broker; or
       • for whom Broker or any other broker submitted to Seller a signed, written offer to acquire, lease exchange or obtain an option on the Property.
     Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers to Seller a written notice of the names of such Prospective Buyers (C.A.R. Form NPB).

  OR (3)   **Seller Interference with Listing:** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.

**RLA REVISED 12/25 (PAGE 2 OF 7)**    Seller's Initials _G&H_ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 7)**

Exhibit 1
13
Exhibit A
16

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

Property Address: **3538 Greenfield Ave, Los Angeles, CA  90034-6102** _____ Date: **February 1, 2026** _____

**E.   ADDITIONAL COMPENSATION TERMS:**

(1) **Buyer Breach and Seller Recovery of Damages:** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 4** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection and suit, if any.

(2) **Escrow Instructions:** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 4**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

**F.   SELLER COMPENSATION OBLIGATIONS TO OTHER BROKERS:**

(1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified in **paragraph 2C(4).**

(2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the individuals or entities specified in **paragraph 2C(4).**

(3) If the Property is sold to anyone specified in **paragraph 2C(4)** during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

**G.   MAXIMUM LISTING PERIOD: The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this Agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing Agreement, or a memorandum or notice thereof, with the county recorder.**

**5.  A.   ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
Seller intends that the items specified in **paragraph 2D** be included or excluded in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.   LEASED OR NOT OWNED ITEMS; LIENED ITEMS:** The items specified in **paragraph 2D(3)** are leased or not owned by Seller and the items specified in **paragraph 2D(4)** have been financed and a lien has been placed on the Property to secure payment. Seller will provide to the buyer, as part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**C.   SMART HOME FEATURES:** The smart home features are intended to be included or excluded as specified in **paragraph 2D(5).**

**6.   SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7.   BROKER'S AND SELLER'S DUTIES:**

**A.   BROKER RESPONSIBILITY, AUTHORITY AND LIMITATIONS:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **paragraph 7E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS and the internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.   PRESENTATION OF OFFERS:**

(1) **Strategies Affecting Delayed Offers and Buyer Broker Compensation:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire shortly, hoping that Seller will accept before the presentation date. Additionally, certain buyers may not be able or allowed to pay compensation to a buyer's broker. These buyers may request for seller to pay buyer's broker through a term in the purchase agreement or through a separate compensation agreement. Seller is advised to discuss and consider the best strategy for Seller related to the presentation of offers.

(2) (A) **Seller Instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.

OR (B) **Seller Instructs Broker not to Present Offers until a Later Time:** If checked in **paragraph 2F(1)**, Seller has elected to have Broker hold all offers and present them to Seller as specified in **paragraph 2F(1).** Broker will inform Seller that an offer has come in, but will not submit the offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller. Broker and Seller may amend this instruction by agreeing in writing.

**RLA REVISED 12/25 (PAGE 3 OF 7)**                                    Seller's Initials  *G&H* _____ / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          3538 Greenfield

Exhibit 1
14
Exhibit A
17

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

Property Address: **3538 Greenfield Ave, Los Angeles, CA  90034-6102**                                 Date: **February 1, 2026**

**C.** **BUYER SUPPLEMENTAL OFFER LETTERS (BUYER LETTERS):**

(1) **Advisory Regarding Buyer Letters:** Seller is advised of the practice of many buyers and their agents to include a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters. See C.A.R. Form FHDA for further information.

(2) (A) **Seller Instructs Broker not to Present Buyer Letters** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR (B) **Seller Instructs Broker to Present Buyer Letters:** If checked in **paragraph 2F(2)**, Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D.** **SELLER GOOD FAITH:** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 2C(4)**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E.** **INVESTIGATIONS AND REPORTS:** Seller agrees, within the time specified in **paragraph 2F(3)**, to order and, when required by the service provider, pay for all reports specified in **paragraph 2F(3)**. If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F.** **UNDISCLOSED CONDITIONS; INCOMPLETE OR INCORRECT INFORMATION:** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8.** **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9.** **AGENCY RELATIONSHIP:**

**A.** **DISCLOSURE:** Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

**B.** **SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 4F(3)**.

**C.** **POSSIBLE DUAL AGENCY:**

(1) **Disclosure and Consent in a Transaction:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Compensation is not necessarily determinative of agency.

(2) **Showing Properties:** Seller acknowledges that real estate brokers must have a written agreement in order to work with a buyer before showing properties to that buyer and that some buyers working through Broker may consider or make an offer on Seller's property. Seller consents to Broker entering into a representation agreement with a buyer, and if that buyer makes an offer on Seller's property, Broker will become a dual agent representing both that buyer and Seller.

(3) **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller – Disclosure and Consent" (C.A.R. Form PRBS).

**D.** **UNREPRESENTED BUYERS:** If a buyer is interested in viewing Seller's Property is not already represented by a real estate broker, and such buyer refuses to be represented by Broker, Seller authorizes Broker to obtain a signed document from such buyer refusing representation by Broker. Broker shall provide such buyers, at the earliest practicable time, a disclosure of non-representation, such as Buyer Non-Agency (CAR Form BNA) or Open House and Visitor Non-Agency Disclosure and Sign-In (C.A.R. Form OHNA-SI).

**E.** **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

**RLA REVISED 12/25 (PAGE 4 OF 7)**                                      Seller's Initials  _G&H_  / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com        3538 Greenfield

Exhibit 1
15
Exhibit A
18

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

Property Address: **3538 Greenfield Ave, Los Angeles, CA  90034-6102** _____ Date: **February 1, 2026** _____

**F.    TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**10.  SELLER CONCESSIONS:**

- Concessions are monetary payments that a seller agrees to contribute towards a buyer's expenses and other costs a buyer is responsible for in the transaction.
- Concessions may include, but are not limited to, costs of escrow or title, lender fees, repairs, inspections, and buyer broker compensation.
- Concessions specified in the MLS must be allowed to be used for any permissible buyer expense or cost and must not specify the concessions are to be used for broker compensation. However, a term in the buyer's offer may specify that the Seller agrees to pay compensation to a buyer's broker. Should Seller agree to do so, Broker does not represent, nor will Broker confirm, that the amount specified is owed by buyer to buyer's broker pursuant to a written agreement that covers Seller's property. In the absence of a separate agreement, Seller's contractual obligation to pay buyer's broker is independent of any obligation between buyer and buyer's broker.
- Concessions identified in an MLS listing are not promises to pay but instead indicate to a buyer that the seller will consider offers asking for concessions. Concessions specified in the MLS are not intended to be binding on Seller unless included in the accepted purchase agreement.

**11.  SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or injury to person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post a notice disclosing the existence of security devices.

**12.  PHOTOGRAPHS AND INTERNET ADVERTISING:**

**A.    OWNERSHIP AND USE OF IMAGES:** In order to effectively market the Property for sale, it is often necessary to provide photographs, virtual tours and other media to buyers. Unless checked in **paragraph 2E(3)**, Seller agrees that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties  may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the internet, neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain  available on the internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post transaction, and for Broker/Agent's business in the future.

**B.    THIRD-PARTY USE AND TAKING OF IMAGES:** Seller acknowledges that prospective buyers and/or other persons coming onto the Property may take photographs, videos, or other images of the Property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**C.    DIGITALLY ALTERED IMAGES:** If Broker uses a digitally altered image ("DAI") in an advertisement or other promotional material to market the Property, Broker must comply with Business & Professions Code § 10140.8 as follows: **(i)** by including a reasonably conspicuous statement located on or adjacent to the DAI stating that the image is altered and also clearly identifying that the original, unaltered image can be accessed via a link to a publicly-accessible internet website, URL, or QR code; and **(ii)** if the DAI is posted on an internet website controlled by Broker or Broker's agent, Broker may satisfy Broker's legal obligation by either complying with **paragraph 12C(i)** above or by including the unaltered version along with the DAI posting. For details on what qualifies as DAI – and for examples of image enhancements that are not considered DAI – see Business & Professions Code § 10140.8.

**13.  KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

**A.    Unless checked in paragraph 2J**, Seller authorizes Broker to install a keysafe/lockbox.

**B.    TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**RLA REVISED 12/25 (PAGE 5 OF 7)**                    Seller's Initials  / _____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com        3538 Greenfield

Exhibit 1
16
Exhibit A
19

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A
Property Address: *3538 Greenfield Ave, Los Angeles, CA  90034-6102*_____ Date: *February 1, 2026*_____

14. **SIGN:** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a FOR SALE/SOLD sign on the Property.

15. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

16. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 19A**.

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

A. **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 16.** (4) **Exclusions from this mediation agreement are specified in paragraph 19B.**

B. **ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

C. **ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are specified in **paragraph 2G.**

22. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

## REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

## PROCEED TO NEXT PAGE

**RLA REVISED 12/25 (PAGE 6 OF 7)**          Seller's Initials  /_____

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 6 OF 7)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          3538 Greenfield
Exhibit 1
17
Exhibit A
20

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

By signing below, Seller acknowledges that they have received a copy of this Residential Listing Agreement, and they have read, understand, and agree to its terms.

☐ **ENTITY SELLERS:** (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

(1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
_____ .

(3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
(A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
(B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**
(A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 22** for additional terms.
(B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .

**SELLER SIGNATURE(S):**
(Signature) By, _*GOMPERTS & HALEVY FAMILY TRUST*_____ Date: 02/02/2026 _____
   Printed name of SELLER: *GOMPERTS & HALEVY FAMILY TRUST*_____
   ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
   Address _____ City _____ State ____ Zip _____
   Email *alangomperts@hotmail.com*_____ Phone # _____
(Signature) By, _____ Date: _____
   Printed name of SELLER: _____
   ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
   Address _____ City _____ State ____ Zip _____
   Email _____ Phone # _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**
Real Estate Broker (Firm) *UNITED REAL ESTATE PROFFESSIONALS*_____ DRE Lic # *01102160*_____
Address _____*Authentisign*_____ City _____ State _____ Zip _____
By (Broker/Agent) *Ben Kanani*_____ *Ben Kanani* Date 02/02/2026 _____
Tel. *(310)800-7405*_____ E-mail *ben@benkanani.com*_____ DRE Lic # *01878686*_____
By (Broker/Agent) _____ Date _____
Tel. _____ E-mail _____ DRE Lic # _____

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**RLA REVISED 12/25 (PAGE 7 OF 7)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 7 OF 7)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       3538 Greenfield

Exhibit 1
18
Exhibit A
21

Authentisign ID: ████829-E1FF-F011-832E-000D3A4FF82A



# MULTIPLE LISTING SERVICE ADDENDUM
**(C.A.R. Form MLSA, Revised 12/25)**

The following terms and conditions are hereby incorporated in and made a part of the Residential Listing Agreement, ☐ Other _____
_____ ("Agreement"),
dated _____, on property known as _____ **3538 Greenfield Ave, Los Angeles, CA  90034-6102** _____
in which _____ **GOMPERTS & HALEVY FAMILY TRUST** _____ is referred to as ("Seller")
and _____ **UNITED REAL ESTATE PROFFESSIONALS** _____ is referred to as ("Broker").

1. **MULTIPLE LISTING SERVICE:**
   A. **WHAT IS AN MLS?** An MLS is an organization that brokers join to work cooperatively to benefit their clients by establishing rules of cooperation between real estate agents resulting in detailed information about properties for sale, and any resulting transaction, being made available to other agents and their clients. The MLS manages these property records to ensure their accuracy and fair distribution to agents, appraisers and consumers. The MLS also enforces rules on property access and fair advertising practices. Most residential real estate practitioners in any given area belong to an MLS. An MLS may also be part of a reciprocal or data sharing agreement in which the MLS shares the property and listing details with the real estate practitioners of other neighboring multiple listing services. Real estate agents belonging to other multiple listing services that have reciprocal or data sharing agreements with the MLS also have access to the information submitted to the MLS.
   B. **REALTOR® OWNED MLSs:** Many MLSs are REALTOR® owned and are obligated to comply with the rules promulgated by the National Association of REALTORS® ("NAR"). The rules of those MLSs provide that once a seller's listing has been publicly marketed, as defined in **paragraph 3**, the broker who has taken the listing and who belongs to a REALTOR® owned MLS shall submit information describing the price, terms, and conditions under which the seller's property is offered for sale to the MLS. REALTOR® owned MLSs will not publish offers of compensation from a seller's broker to a buyer's broker.
   C. **WHAT INFORMATION IS PROVIDED TO THE MLS AFTER SALE:** All terms of the transaction, including sales price and, if applicable, financing and concessions, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.
   D. **WHAT IS BROKER'S MLS?** Broker belongs to the Multiple Listing Service (MLS) specified in **paragraph 2E(1)** of the Agreement and possibly others.  Broker shall inform Seller if the MLS specified in **paragraph 2E(1)** of the Agreement is not the primary MLS for the geographic area of the Property. When required by **paragraph 3** of this MLSA or by the MLS, Property will be listed with the MLS(s) specified.

2. **BENEFITS OF USING AN MLS; IMPACT OF OPTING PROPERTY OUT OF AN MLS**
   A. **EXPOSURE TO BUYERS THROUGH MLS: Listing property with an MLS** exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who belong to that MLS or a reciprocating MLS. That MLS may further send the details about the property listed to internet sites that post property listings online. Exposure of a seller's property through the MLS is intended to maximize publicity of the seller's property to the marketplace of potential buyers and real estate licensees in anticipation that the more awareness there is that the seller's property is for sale, the more likely it is that the seller can achieve the goals of the listing.
   B. **IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate internet sites that are used by the public to search for property listings; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property; and **(v)** the scope of marketing will consist only of direct one-on-one promotion between the brokers and agents and their respective clients.
   C. **REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price. Limiting exposure of the Property to only the agents and clients of Broker may result in the Property being on the market for a longer period than if it was more widely exposed to the other brokers that belong to the MLS and to the public.
   D. **NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

3. **PUBLIC AND PRIVATE MARKETING OF PROPERTY; "CLEAR COOPERATION POLICY":**
   A. Unless **paragraph 3E** is checked, the MLS to which Broker will submit the listing has adopted the policy of the NAR which requires that exclusive and seller reserved listings for residential real property with one to four units and vacant lots be submitted to the MLS within 1 business day of any public marketing ("Clear Cooperation").
   B. Public marketing includes but is not limited to: Flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public.
   C. In guidance from NAR, private marketing permits all agents affiliated with Broker to engage in one-to-one promotion between these agents and their clients and one-to-one promotion with other licensees, who may communicate to their clients. (**NOTE:** Not all MLSs have implemented or follow the NAR guidance, and Seller should discuss with Broker what is allowed under MLS rules.)
   D. Different status options may be available for exclusive or seller-reserved listings taken by members of the MLS. Marketing options for listings submitted to the MLS may include: Full Exposure; Delayed Marketing, and if available by the MLS, Coming Soon (or equivalent status). The status option for listings not submitted to the MLS is usually Office Exclusive. See **paragraph 5** for further information.

© 2025, California Association of REALTORS®, Inc.
**MLSA REVISED 12/25 (PAGE 1 OF 3)**

Seller's Initials  / _____


EQUAL HOUSING
OPPORTUNITY

**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 1 OF 3)**

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212                     Phone: 310-926-8469      Fax:              3538 Greenfield
Behnam (Ben) Kanani                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Exhibit 1
19
Exhibit A
22

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

Property Address: *3538 Greenfield Ave, Los Angeles, CA  90034-6102* _____ Date: *02/01/2026* ____

**OR E.** ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** The MLSs used by Broker to market the Property do not have a Clear Cooperation Policy that applies to the Property. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

**4.** **PROPERTY LISTING INFORMATION ON THE INTERNET:** An MLS can send information about properties listed on the MLS to public real estate portals, including those operated by the MLS and additional internet sites operated by brokers and agents. MLS can also syndicate information about listed properties by providing them to various advertising outlets, increasing the exposure of the for-sale property. Seller can instruct Broker to give the MLS instructions to the contrary. Specific information that can be excluded from the internet as permitted by (or in accordance with) the MLS is as follows:

   **A.** **TOTAL INTERNET OPT OUT:** Seller may prevent the Property from being marketed on the Internet which will keep the Property in the MLS systems only for access by other brokers, their agents, and their customers, but the Property listing will NOT be displayed outside of the MLS systems on 1) real estate portals, 2) Broker's own website or social media, 3) other cooperating MLS broker or agent websites, or 4) syndication advertising sites. Seller understands that this opt out would mean consumers searching for listings on the internet will not see the Property.

   **B.** **LIMITED INTERNET INFORMATION OPT OUTS:**
      **(1)** **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the internet. Seller understands that this opt out would mean consumers searching for listings on the internet may not see the Property or the Property's address in response to their search.
      **(2)** **FEATURE OPT OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber websites, or electronic displays that display the Property listing, to have the features below. Seller understands **(i)** that these opt outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other internet sites:
         **(A)** **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
         **(B)** **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

**5.** **MARKETING OPTIONS:** An MLS may have different categories and options for marketing the property, including, but not limited to, the options in **paragraphs 5A-D:**

   **A.** **FULL EXPOSURE:**
      **(1)** The Property listing is submitted to the MLS, and it will also be made available to all subscribers and participants of the MLS ("Other Members") who may engage in one-to-one promotion with their existing or past clients, or mass market the Property to current, past, and prospective clients with the seller's consent.
      **(2)** Information about the Property will be syndicated to third party website displays that have an agreement with the MLS.
      **(3)** Other Members can use their own websites to electronically display the MLS data about the Property, and such information may be accessed by current and former clients of the brokerage as well as members of the public ("IDX").
      **(4)** Other Members can electronically display the MLS data about the Property on their own websites, but such information is only available to be seen by the Other Members' clients or those who have registered with the Other Member, but not members of the general public ("VOW").

   **B.** **DELAYED MARKETING LIMITED EXPOSURE:**
      **(1)** The Property is submitted to the MLS, and it will also be made available to Other Members who may engage in one-to-one promotion with their existing or past clients but, other than specified in (4), may not mass market the Property to current, past, or prospective clients.
      **(2)** Information about the Property will NOT be syndicated to third party website displays that have an agreement with the MLS.
      **(3)** Other Members can NOT use their own IDX websites to electronically display the MLS data about the Property.
      **(4)** Other Members can electronically display the MLS data about the Property on their own VOW websites, but such information is only available to be seen by the Other Members clients or those who have registered with the Other Member, but not members of the general public.

   **C.** **COMING SOON (OR EQUIVALENT) MARKETING:**
      Some MLSs permit a Coming Soon status, but there is no statewide definition of what that status means. Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS.

   **D.** **OFFICE EXCLUSIVE LIMITED EXPOSURE:** The Property will not be submitted to the MLS for display during the entire listing period, or another time specified by the seller. The seller's broker may engage in one-to-one promotion between any licensee working through the broker and their clients. If allowed by the MLS under the NAR guidance, other members who have received direct one-to-one promotion from a licensee with the listing brokerage firm may themselves engage in one-to-one promotion with their clients but may not mass market the Property to current, past, or prospective clients.

   **E.** **DAYS ON MARKET:** Regardless of the marketing option chosen, Seller is advised to discuss with Broker how any Days on Market calculations, or any similar tracking fields, work in the MLS in which the Property will be listed for any option above, as well as the potential impact on Seller's property.

**6.** **PHOTOGRAPHS:** Visitors entering or touring the Property may take photographs or other images ("Images"), and Broker does not have the ability to control or block the taking and use of Images. Seller can instruct Broker to publish information in the MLS limiting the taking of Images to only those persons preparing appraisal or inspection reports. Seller acknowledges that even with a limiting instruction individuals who are either unaware of the MLS limiting instructions or who have disregarded those instructions may take images of the Property.

**MLSA REVISED 12/25 (PAGE 2 OF 3)**                                Seller's Initials  / _____

**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 2 OF 3)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          **3538 Greenfield**

**Exhibit 1**

**20**

**Exhibit A**

**23**

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

Property Address: *3538 Greenfield Ave, Los Angeles, CA  90034-6102* _____ Date: *02/01/2026*

## SELLER INSTRUCTIONS TO BROKER

Seller instructs Broker to market the Property as follows: (**NOTE:** It is possible that different MLSs may be in different stages of implementing the rules set by the NAR and that not all choices below may apply or be available at the time of the listing.)

1. **PROPERTY LISTING INFORMATION ON THE INTERNET (see paragraph 4 above for more information):**
   A. ☐ **TOTAL INTERNET OPT OUT:** Seller requests that Broker advise the MLS that Seller does not want the Property to be displayed on the internet. Seller understands and acknowledges that if this option is checked, consumers who search for listings on Internet sites may not see information about the Property.
   B. **LIMITED OPT OUT:**
   (1) ☐ Property Address: Seller requests that Broker advise the MLS that Seller does not want the address of the Property to be displayed on the internet. Seller understands and acknowledges that **(i)** if this option is checked, consumers who search for listings on internet sites may not see the Property address in response to their search, and **(ii)** all requests are subject to MLS rules.
   (2) **Features Opt out:** Seller understands and acknowledges that if either or both options below are checked **(i)** this opt-out applies only to the Websites or Electronic Displays of MLS participants and subscribers who are real estate broker and agent members of an MLS; **(ii)** other Internet sites may or may not have the features set forth herein; and **(iii)** neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
      (A) ☐ **Comments and Reviews:** Seller requests that Broker advise the MLS that Seller does not want visitors to MLS participant or subscriber Websites or Electronic Displays that display the Property listing to have **(i)** the ability to write comments or reviews about Seller's Property on those sites; or **(ii)** the ability to link to another site containing such comments or reviews.
      (B) ☐ **Automated Estimate of Value:** Seller requests that Broker advise the MLS that Seller does not want MLS participant or subscriber Websites or Electronic Displays that display the Property listing **(i)** to create an automated estimate of the market value of the Property; or **(ii)** the ability to link to another site containing such automated estimate of the market value of the Property.

2. **MARKETING OPTION: (see paragraph 5 above for more information):** The marketing option selected below shall start at the beginning of the Listing Period or ☐ _____ (date), or ☐ _____.
   A. **FULL EXPOSURE:** Market the Property with full exposure to the public starting at the beginning of the Listing Period;
   OR B. ☐ **DELAYED MARKETING LIMITED EXPOSURE (only applicable if allowed by MLS):** Market the Property as a Delayed Marketing Limited Exposure. Seller understands  that even though the Property will be submitted to the MLS, the Property's data will not be syndicated to third party websites, nor be exposed through Other Member IDX websites. The Property will be available for others to see, tour and inform their clients.
   OR C. ☐ **COMING SOON (only applicable if allowed by MLS):** Market the Property under a Coming Soon policy. Broker has explained the parameters of Coming Soon and any impact it may have on marketing of the Seller's Property.
   OR D. ☐ **OFFICE EXCLUSIVE LIMITED EXPOSURE: (NOTE:** Not all MLSs have implemented or follow the NAR guidance, and Seller should discuss with Broker what is allowed under MLS rules.) Market the Property as an Office Exclusive Limited Exposure. Seller instructs Broker to EXCLUDE the Property from full dissemination by the MLS for the time period specified below. Seller certifies that Seller understands that no public marketing (**paragraph 3B**) will occur, and while the property is in office exclusive limited exposure option, the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients. If allowed by the MLS under the NAR guidance, Broker may engage in one-to one communication with other licensees who may communicate with their clients but may not mass market the Property to current, past, or prospective clients. Seller's Property may be shown to clients of agents of the Broker, but not to clients of other brokers, without triggering the obligation to place the property in the MLS. Seller understands and agrees that should any public marketing of the property occur, including showing of the Property to clients of an outside brokerage, the Property listing will be submitted to the MLS within 1 business day.
      (1) Do NOT market the Property to the public during the entire Listing Period unless Seller gives Broker written instruction otherwise;
      OR (2) ☐ Begin marketing the Property to the public under **FULL EXPOSURE** (including through the MLS) on _____ (date).

3. **OTHER INSTRUCTIONS/TERMS:** Seller and Broker may agree to additional terms and items below, but they will be subject to MLS rules and what is permitted in the MLS.
   A. **SELLER PHOTOGRAPH INSTRUCTION:**
      (1) Visitors are not restricted from taking Images of the Property;
      OR (2) ☐ Seller instructs Broker to publish in the MLS that taking of images is limited to those persons preparing appraisal or inspection reports.
   B. **OTHER INSTRUCTIONS/TERMS:** _____
      _____
      _____

**By signing below, Seller acknowledges that they have received a copy of this Multiple Listing Service Addendum, and they have read, understand, and agree to its terms.**

Seller _*GOMPERTS & HALEVY FAMILY TRUST*_ ____ *GOMPERTS & HALEVY FAMILY TRUST* Date 02/02/2026

Seller _____ Date _____

Real Estate Broker (Listing Firm) *UNITED REAL ESTATE PROFFESSIONALS* _____

By _*Ben Kanani*_ _____ *Ben Kanani* DRE Lic# *01878686* _____ Date 02/02/2026

By _____ DRE Lic# _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**MLSA REVISED 12/25 (PAGE 3 OF 3)**

**MULTIPLE LISTING SERVICE ADDENDUM (MLSA PAGE 3 OF 3)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com          3538 Greenfield

Exhibit 1
21
Exhibit A
24

Authentisign ID: 9372829-E1FF-F011-832E-000D3A4FF82A



**CALIFORNIA ASSOCIATION OF REALTORS®**

**BROKER COMPENSATION ADVISORY**
(C.A.R. Form BCA, Revised 6/25)

1. **WHEN SELLERS LIST THEIR PROPERTY FOR SALE THROUGH A REAL ESTATE BROKER THEY AGREE TO PAY THE SELLER'S BROKER WHEN ESCROW CLOSES.**

   A. **LISTING AGREEMENT COMPENSATION IS FULLY NEGOTIABLE:** When a seller enters into a listing agreement with a broker, the seller authorizes the broker to find a buyer for the seller's property and agrees to pay the seller's broker if a buyer is found who purchases the property. Compensation amounts are not fixed by law and are fully negotiable between the seller and the seller's broker. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **OPTIONAL ADDITIONAL COMPENSATION IF BUYER IS UNREPRESENTED:** A listing agreement may include optional additional compensation amounts owed to the seller's broker for situations where the broker takes on additional responsibilities or workload. Sometimes a buyer may not be working with nor want to be represented by a real estate broker. When that happens, the seller's broker is not required to represent the buyer, and the seller and seller's broker may decide that they do not want to create such a relationship. In those situations, the seller's broker is advised to use a Buyer Non-Agency (C.A.R. Form BNA) to inform the buyer that the seller's broker will be acting on behalf of the seller only, and not act as the buyer's agent, throughout the transaction. However, because the buyer is unrepresented, the seller's agent will inevitably have to do more work to facilitate the transaction. A seller may agree to compensate their broker for the additional work in such cases.

   C. **BROKER MAY REPRESENT BOTH BUYER AND SELLER; DUAL AGENCY:** California law allows a brokerage company to represent both seller and buyer in a real estate transaction. At the time the agent, on behalf of a brokerage, obtains the signature of a seller on a listing agreement, the agent will not, in most cases, know who the eventual buyer will be for a seller's property. Similarly, at the time an agent, on behalf of a brokerage, obtains the signature of a buyer on a buyer representation agreement, the agent will not, in most cases, know who the eventual seller will be for a property the buyer wants to buy. Because many individual licensees may work through one brokerage company, and some individual licensees work with many buyers and sellers, there is a possibility that the same brokerage company will represent both buyer and seller in a transaction. If licensees working through broker represent both seller and buyer, broker is allowed to receive compensation from each, provided the seller and buyer are advised of the relationship and the total amount of compensation the broker will receive.

2. **BROKER AGREEMENTS WITH BUYERS:**

   A. **BUYER REPRESENTATION COMPENSATION IS FULLY NEGOTIABLE:** When a buyer enters into a representation agreement with a broker, the buyer authorizes the broker to locate properties for the buyer to buy and agrees to pay the buyer's broker if a transaction is completed. Compensation amounts are not fixed by law and are fully negotiable. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **REQUIREMENT FOR WRITTEN AGREEMENTS:** Pursuant to a nationwide class action settlement reached by the National Association of REALTORS® (NAR), participants in Multiple Listing Services are required to have a written agreement with a buyer prior to showing a buyer a residential property or giving a buyer a tour of such a property. The agreement must identify the amount of compensation to be paid to the broker for services provided and require that the broker cannot receive any compensation in excess of the amount specified in the agreement. Pursuant to a January 1, 2025 new law in California, all licensees must have a buyer representation agreement as soon as practicable upon acting as the buyer's agent, and it must include the amount of compensation, services to be rendered, when compensation is due, and the contract termination, which may not exceed three months.

   C. **ADVANTAGES OF WRITTEN AGREEMENTS:** Buyers and their brokers benefit when the terms of their relationship and respective duties are in writing. A written agreement establishes clear, mutual expectations and helps avoid misunderstandings over the buyer and broker's duties and the amount of compensation the buyer's agent is to be paid.

© 2025, California Association of REALTORS®, Inc.
**BCA REVISED 6/25 (PAGE 1 OF 2)**


EQUAL HOUSING OPPORTUNITY

**BROKER COMPENSATION ADVISORY (BCA PAGE 1 OF 2)**

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212          Phone: 310-926-8469          Fax:          3538 Greenfield
Behnam (Ben) Kanani          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 1
22
Exhibit A
25

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

3.  **WHEN ENLISTING A REAL ESTATE BROKER TO REPRESENT THEM, BUYERS AGREE TO PAY THE BUYER'S BROKER WHEN ESCROW CLOSES, BUT THE PERSON RESPONSIBLE FOR PAYMENT MAY BE NEGOTIATED IN THE TRANSACTION:**

A.  **BUYER PAYS THE COMPENSATION PURSUANT TO A BUYER REPRESENTATION AGREEMENT:**
A buyer's broker may negotiate the amount of compensation directly with the Buyer and then document that agreement in a buyer representation agreement (C.A.R. Form BRBC or PSRA). The buyer then becomes contractually obligated to pay the broker by providing funds to escrow prior to the closing of a transaction.

B.  **SELLER PAYS THE COMPENSATION:**

(1)  **Buyer negotiates for Seller to Compensate Buyer's Broker:** A buyer may make a conditional offer to the seller by including a term in the purchase offer asking the seller to pay the buyer's broker if the buyer has already agreed to pay their own broker pursuant to a buyer representation agreement. If such a term is included in the purchase offer, the request will become one term among many that a seller may accept, reject, or negotiate by way of a counter offer. The possibility of asking the seller to pay the buyer's contractual compensation obligation option should be discussed when creating a buyer representation agreement and prior to an offer being made. Pursuant to the NAR Settlement (see **paragraph 2B**) **a buyer's broker is not permitted to receive compensation for services, from whatever source, that is greater than the amount in the buyer representation agreement.**

(2)  **Buyer's Agent negotiates an agreement directly with Seller:** If a seller is unrepresented or does not have an exclusive agency relationship with another broker, a buyer's broker may approach that seller asking the seller to sign an agreement (C.A.R. Form SP, Single Party Compensation Agreement) to pay the buyer's broker. In this situation, the seller agrees to pay the buyer's broker compensation without necessarily creating an agency relationship with the broker. When that happens, the buyer's broker is advised to use a Seller Non-Agency (C.A.R. Form SNA) to inform the seller that the buyer's broker will be acting on behalf of the buyer only, and not act as the seller's agent, throughout the transaction. However, because the seller is unrepresented, the buyer's agent will inevitably have to do more work to facilitate the transaction, which may be factored into the negotiation of the single party compensation agreement.

C.  **CHANGING PRACTICE RELATED TO A SELLER'S BROKER'S OFFER OF COMPENSATION:**

Historically, in California, many seller's brokers used a Multiple Listing Service (MLS) to make a unilateral offer to compensate a buyer's broker who procured a buyer for the seller's property. However, the nationwide NAR settlement prohibits the seller's broker from using an MLS to make such an offer of compensation. The California Association of REALTORS®' (C.A.R.) listing agreement forms no longer provide for such offers of cooperating broker compensation nor does C.A.R. include other forms in its library of forms that might facilitate such offers. Buyers and sellers must separately negotiate compensation with their respective brokers, as specified above.

**By signing below, Seller or Buyer acknowledge that they have received a copy of this Broker Compensation Advisory, and they have read and understand its terms. Seller or Buyer acknowledges they have been advised of their various options regarding compensation to be paid to real estate brokers and that any written agreement they have signed with a seller's or buyer's broker reflects a mutual understanding.**

Seller/Buyer _GOMPERTS & HALEVY FAMILY TRUST_    *GOMPERTS & HALEVY FAMILY TRUST* Date 02/02/2026

Seller/Buyer _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**BCA REVISED 6/25 (PAGE 2 OF 2)**



**BROKER COMPENSATION ADVISORY (BCA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com    **3538 Greenfield**

Exhibit 1
23
Exhibit A
26

Authentisign ID: E3XX2829-E1FF-F011-832E-000D3A4FF82A



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
OR SELLER - DISCLOSURE AND CONSENT**
(C.A.R. Form PRBS, Revised 6/25)

1. **BROKER AGENCY RELATIONSHIP WITH MULTIPLE PRINCIPALS:** A real estate broker ("Brokerage"), whether a corporation, partnership or sole proprietorship, may legally represent more than one buyer or seller. This multiple representation can occur through a sole proprietor Brokerage; or through a salesperson or broker acting under the Brokerage's license ("Associate Licensee"). Associate Licensees under a Brokerage's license may be working out of the same or different office locations, and may or may not know one another. Clients of the Brokerage may have similar goals and may compete against each other for the same property or the same pool of prospective buyers. Some buyers and sellers prefer to work with individual, sole proprietor brokerages, some with brokerages that have multiple licensees, and others with large brokerage companies that have multiple offices and may have a regional, statewide or a national or international presence. Each has its own advantages. It is important for buyers and sellers to understand how the Brokerage representation of multiple buyers or sellers may impact them under various situations.

   A. **MULTIPLE BUYERS:** Brokerage (individually or through any of its Associate Licensees) may work with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed by the Brokerage. Whether Brokerage is large or small, it is possible that one Associate-Licensee (agent 1) working with a buyer may not be aware that another Associate-Licensee (agent 2) is working with a different buyer who is interested in viewing or making an offer on the same property as agent 1's client, and vise-versa. Brokerage will not limit or restrict any buyer from making an offer on any specific property, whether or not the Brokerage represents other buyers interested in the same property.

   B. **MULTIPLE SELLERS:** Brokerage (individually or through its Associate Licensees) may have listings on many properties at the same time. As a result, Brokerage will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Brokerage and some may not. Brokerage will market all listed properties to all prospective buyers, whether or not Brokerage has other listed properties that may appeal to the same prospective buyers.

   C. **DUAL AGENCY IN A TRANSACTION:** California law allows a brokerage to represent both a buyer and a seller in a transaction (Civil Code § 2079 et seq.).

      (1) **Brokerage Dual Agency:** If one Associate-Licensee from the Brokerage is working with a buyer and another Associate-Licensee from the same Brokerage is working with a seller on the same transaction, the Brokerage is considered a dual agent with fiduciary duties to both buyer and seller. In that situation, each individual Associate Licensee working on the transaction is also considered a dual agent having the same knowledge and responsibility as the Brokerage.

      (2) **Single Agent Dual Agency:** Another form of dual agency occurs when an individual Associate-Licensee is working with both the buyer and seller in the same transaction. In that situation, both the Brokerage company and the individual Associate-Licensee are dual agents with fiduciary duties to each side of the transaction. There is no one approach to this situation. Some brokerages allow the single agent dual agent to continue to represent both parties, as that Associate-Licensee is the chosen agent of the principal. Some brokerages recommend that the broker or an office manager get involved if there is a dispute between the buyer and seller. Some brokerages will require that the broker or an office manager assist the Associate-Licensee with one principal or the other, even if the parties do not have a dispute. Whether one of these approaches, or another, is taken in a single agent dual agency will depend on the circumstances and the brokerage policy. Regardless of the approach, the Associate-Licensee and Brokerage shall conduct activity consistent with the terms in **paragraph 2C.**

2. **ACKNOWLEDGEMENT AND CONSENT:**

   A. **OFFERS ARE NOT NECESSARILY CONFIDENTIAL:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer to other interested buyers and agents unless all parties and their agent have signed a written confidentiality agreement, (C.A.R. Form NDA). In the absence of a signed NDA, Buyer consents to such disclosure. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy, and the instructions of the seller.

   B. **MULTIPLE BUYERS OR SELLERS:** If Seller is represented by Brokerage, Seller acknowledges that Brokerage may represent prospective buyers of Seller's property and consents to Brokerage acting as a dual agent for both Seller and buyer in that transaction. If Buyer is represented by Brokerage, Buyer acknowledges that Brokerage may represent sellers of property that Buyer is interested in acquiring and consents to Brokerage acting as a dual agent for both Buyer and seller with regard to that property.

   C. **DUAL AGENCY IN A TRANSACTION:** In the event of dual agency, Seller and Buyer agree that: **(i)** a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and **(ii)** except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Seller and Buyer should discuss with a dual agent the details and parameters of this requirement. Seller and/or Buyer consents to allowing Brokerage to act as a dual agent in a transaction.

**PRBS REVISED 6/25 (PAGE 1 OF 2)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 2)**

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212                                                    Phone: 310-926-8469        Fax:                        3538 Greenfield
Behnam (Ben) Kanani                              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Exhibit 1
24
Exhibit A
27

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

**By signing below, Buyer and/or Seller acknowledge that each has received a copy of this Possible Representation of More Than One Buyer or Seller –- Disclosure and Consent, and each has read, understands, and agrees to its terms and consents to the agency possibilities disclosed.**

Buyer _____ Date _____

Buyer _____ Date _____

Seller *GOMPERTS & HALEVY FAMILY TRUST*        ***GOMPERTS & HALEVY FAMILY TRUST*** Date 02/02/2026

Seller _____ Date _____

Buyer's Brokerage Firm _____ DRE Lic # _____

By _____ DRE Lic # _____ Date _____

Seller's Brokerage Firm ***UNITED REAL ESTATE PROFFESSIONALS***        DRE Lic # ***01102160***

By *Ben Kanani* _____ DRE Lic # ***01878686*** Date 02/02/2026

**Ben Kanani**

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**PRBS REVISED 6/25 (PAGE 2 OF 2)**

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com        **3538 Greenfield**

**Exhibit 1**

**25**

**Exhibit A**

**28**



Authentisign ID: ...2829-E1FF-F011-832E-000D3A4FF82A

CALIFORNIA
ASSOCIATION
OF REALTORS®

# FAIR HOUSING AND DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, Revised 12/24)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION**: NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2024, California Association of REALTORS®, Inc.
**FHDA REVISED 12/24 (PAGE 1 OF 2)**


EQUAL HOUSING OPPORTUNITY

### FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212                    Phone: 310-926-8469        Fax:                    3538 Greenfield
Behnam (Ben) Kanani                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Exhibit 1
26
Exhibit A
29

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii) Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**
   A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
   B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
   C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
   D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
   E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
   A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
   B. State: **https://calcivilrights.ca.gov/housing/**
   C. Local: local Fair Housing Council office (non-profit, free service)
   D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
   E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.
   F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
   A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
   B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
   C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
   D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
   E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
   F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _____ Date _____

Buyer/Tenant _____ Date _____

Seller/Housing Provider _GOMPERTS & HALEVY FAMILY TRUST_____    *GOMPERTS & HALEVY FAMILY TRUST* Date _____

Seller/Housing Provider _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED  BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**FHDA REVISED 12/24 (PAGE 2 OF 2)**

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          3538 Greenfield

Exhibit 1
27
Exhibit A
30

Authentisign ID: E33⬛829-E1FF-F011-832E-000D3A4FF82A



**SELLER'S ADVISORY**
**(C.A.R. Form SA, Revised 6/25)**

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to fill out the TDS form, in its entirety, honestly and completely. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task. If your property is in a high or very high fire zone, and you have to complete the TDS, you will also be responsible for disclosing compliance with defensible space laws and, depending on the Property's age, may also have to disclose if the building itself has been hardened to protect it from catching fire.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home," and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: **(i)** located within one mile of a former military ordnance location; or **(ii)** in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by § 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, fire hardening, defensible space, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code § 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property, buyer broker compensation, and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price. Should Seller agree to do so, Broker does not represent, nor will Broker confirm, that the amount specified is owed by buyer or the full amount will be used by buyer to pay for the specified purpose. In the absence of a separate agreement, Seller's contractual obligation to pay buyer's broker is independent of any obligation between buyer and a third party.

© 2025, California Association of REALTORS®, Inc.
**SA REVISED 6/25 (PAGE 1 OF 2)**



**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

| | | |
|---|---|---|
| Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212 | Phone: 310-926-8469      Fax: | 3538 Greenfield |
| Behnam (Ben) Kanani | Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com | |

Exhibit 1
28
Exhibit A
31

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A

B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

D. **Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE PROGRAM (RRP):** The RRP requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The RRP applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

F. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

A. **Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, should be disclosed to the buyer (see "Disclosures" in **paragraph 2** above). This is true even if the buyer gets their own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** _____
_____

**By signing below, Seller acknowledges that they have received a copy of this Seller's Advisory, and they have read and understand its terms.**

Seller ⟨*GOMPERTS & HALEVY FAMILY TRUST*⟩ _____ *GOMPERTS & HALEVY FAMILY TRUST* Date 02/02/2026 _____

Seller _____ Date _____

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



**SA REVISED 6/25 (PAGE 2 OF 2)**

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       3538 Greenfield

Exhibit 1
29
Exhibit A
32

Authentisign ID: E3372829-E1FF-F011-832E-000D3A4FF82A



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/22)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA"), as amended by California voters in 2020, grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, the right to know what PI is sold or shared and to whom, the right to request that the business correct or delete your PI, the right to "opt out" or stop the transfer of your PI to others, and the right to limit the use of certain PI which is considered "sensitive." You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Moreover, businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa). Additionally, the California Privacy Protection Agency is authorized to promulgate regulations which may further clarify requirements of the CCPA (cppa.ca.gov/regulations/).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _GOMPERTS & HALEVY FAMILY TRUST_____ Date 02/02/2026_____

*GOMPERTS & HALEVY FAMILY TRUST*

Buyer/Seller/Landlord/Tenant _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA REVISED 12/22 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

Teles Properties, 9470 Wilshire Blvd Los Angeles CA 90212                          Phone: 310-926-8469       Fax:                          3538 Greenfield
Behnam (Ben) Kanani                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Exhibit 1
30
Exhibit A
33

## BANKRUPTCY ADDENDUM TO RESIDENTIAL LISTING AGREEMENT DATED FEBRUARY 1, 2026

This is a bankruptcy addendum (the "Bankruptcy Addendum") to the Residential Listing Agreement dated 2/1/26 (the "Listing Agreement") between Gomperts & Halevy Family Trust ("Seller") and United Real Estate Professionals through its agent Ben Kanani (collectively, "Broker") with respect to 3538 Greenfield Ave, Los Angeles, CA 90034 (the "Property"), as follows:

1.     The Property is property of the bankruptcy estate of Alan Gomperts, chapter 11 debtor in case no. 2:24-bk-12074 (jointly administered under lead case no. 2:24-bk-12079), pending in the United States Bankruptcy Court, Central District of California (Los Angeles Division) (the "Bankruptcy Court").

2.     To the extent any terms herein are inconsistent with the Listing Agreement, this Bankruptcy Addendum shall control.

3.     The Listing Agreement is subject to Bankruptcy Court approval.

4.     The Bankruptcy Court shall have exclusive jurisdiction, without a right to jury, over the employment and compensation of Broker and the sale of the Property.

5.     The Property may not be sold, except by order of the Bankruptcy Court.

6.     The sale of the Property shall be after notice and a hearing under section 363 of the Bankruptcy Code, including opportunities for higher and better bids.

7.     The sale shall be "as-is" with no representations or warranties whatsoever.

8.     The sole remedy of any purchaser if the Seller shall be unable to consummate a transaction through no fault of purchaser shall be return of its deposit.

Agreed June 29, 2026

Seller: _____
Gomperts & Halevy Family Trust, by ALAN GOMPERTS


Broker: _____
United Real Estate Professionals, by BEN KANANI

### BANKRUPTCY ADDENDUM TO RESIDENTIAL LISTING AGREEMENT DATED FEBRUARY 1, 2026

This is a bankruptcy addendum (the "Bankruptcy Addendum") to the Residential Listing Agreement dated 2/1/26 (the "Listing Agreement") between Gomperts & Halevy Family Trust ("Seller") and United Real Estate Professionals through its agent Ben Kanani (collectively, "Broker") with respect to 3538 Greenfield Ave, Los Angeles, CA 90034 (the "Property"), as follows:

1.      The Property is property of the bankruptcy estate of Alan Gomperts, chapter 11 debtor in case no. 2:24-bk-12074 (jointly administered under lead case no. 2:24-bk-12079), pending in the United States Bankruptcy Court, Central District of California (Los Angeles Division) (the "Bankruptcy Court").

2.      To the extent any terms herein are inconsistent with the Listing Agreement, this Bankruptcy Addendum shall control.

3.      The Listing Agreement is subject to Bankruptcy Court approval.

4.      The Bankruptcy Court shall have exclusive jurisdiction, without a right to jury, over the employment and compensation of Broker and the sale of the Property.

5.      The Property may not be sold, except by order of the Bankruptcy Court.

6.      The sale of the Property shall be after notice and a hearing under section 363 of the Bankruptcy Code, including opportunities for higher and better bids.

7.      The sale shall be "as-is" with no representations or warranties whatsoever.

8.      The sole remedy of any purchaser if the Seller shall be unable to consummate a transaction through no fault of purchaser shall be return of its deposit.

Agreed June 29, 2026


Seller: _____
Gomperts & Halevy Family Trust, by ALAN GOMPERTS


Broker: _____
United Real Estate Professionals, by BEN KANANI


58153516.1
390855-00001

**Exhibit 1**
**32**
**Exhibit A**
**35**

# EXHIBIT 2

**Exhibit A**
**36**



**Exhibit 2**

**34**

**Exhibit A**

**37**





## Meet Ben Kanani

Ben Kanani has helped buyers and sellers achieve and exceed their real estate goals since 1999, with nearly half a billion dollars in sales. Before becoming a Realtor, he spent more than 10 years as an international marketing manager at Tiffany & Co., traveling the world and building an extensive network of national and international clients and contacts.

Today, Ben brings that same global perspective to luxury real estate, where his multicultural experience helps bridge cultures, customs, and clients to create the ideal transaction. As he puts it, "My strength lies in how to present and market real estate to achieve maximum value — just as you would with a magnificent Tiffany jewel."

Outside of real estate, Ben is an accomplished martial artist with more than four decades of experience and enjoys teaching for Culver City Parks and Recreation in his spare time.

— Show Less

UNITED REAL ESTAE PROFESSIONALS BRE: 02022612

## CONNECT WITH US

  

Copyright © 2023 SHOWCASED HOME - All Rights Reserved.

**Exhibit 2**

**35**

**Exhibit A**

**38**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**Saul Ewing LLP, 1888 Century Park East, Suite 1500, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*):**Notice of Application and Application of Debtor Alan Gomperts to Employ Real Estate Broker and to Enter into an Exclusive Listing Agreement; Memorandum of Points and Authorities and Statements of Disinterestedness** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 30, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 30, 2026**,  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 30, 2026 | Hannah Richmond | /s/ Hannah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

**Exhibit A**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (continued)**:

- **Scott R Albrecht**   salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- **Tanya Behnam**   tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Jacquelyn H Choi**   jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com
- **Carol Chow**   Carol.Chow@saul.com, hannah.richmond@saul.com;easter.santamaria@saul.com;carol.chow@ecf.courtdrive.com;litigationdocketing@saul.com
- **Robert F Conte**   robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- **Ryan Coy**   ryan.coy@blankrome.com, courtmail@blankrome.com
- **Christopher Cramer**   secured@becket-lee.com
- **Christopher Crowell**   ccrowell@frandzel.com, mbrandenberg@frandzel.com
- **Turner Falk**   turner.falk@saul.com, tnfalk@recap.email
- **Michael G Fletcher**   mfletcher@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Todd S. Garan**   ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Richard Girgado**   rgirgado@counsel.lacounty.gov
- **Jacqueline L James**   jjames@buchalter.com, gvidales@buchalter.com;docket@buchalter.com;pjolley@buchalter.com
- **Kelly L Morrison**   kelly.l.morrison@usdoj.gov
- **Avi Edward Muhtar**   amuhtar@crownandstonelaw.com
- **Bruce D Poltrock**   bpoltrock@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Paige Selina Poupart**   Ppoupart@smsm.com, achase@frandzel.com
- **Zev Shechtman**   Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- **David B Shemano**   dshemano@shemanolaw.com
- **Jessica M. Simon**   jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Derrick Talerico**   dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Garrick Vanderfin**   gvanderfin@polsinelli.com, zyoung@Polsinelli.com;ladocketing@polsinelli.com
- **Gerrick Warrington**   gwarrington@frandzel.com, achase@frandzel.com,autodocket@frandzel.com
- **Samantha White**   samantha.white@wellsfargo.com
- **Jennifer C Wong**   bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                             **F 9013-3.1.PROOF.SERVICE**

**Exhibit A**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**Saul Ewing LLP, 1888 Century Park East, Suite 1500, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*):**DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION [LBR 9013-1(o)(3)]** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 21, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **July 21, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Debtor**
Alan Gomperts
264 South Oakhurst Drive
Beverly Hills, CA 90212

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 21, 2026 | Hannah Richmond | /s/ Hannah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (continued)**</u>:

- **Scott R Albrecht**    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- **Tanya Behnam**    tbehnam@polsinelli.com,
  tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Jacquelyn H Choi**    jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com
- **Carol Chow**    Carol.Chow@saul.com,
  hannah.richmond@saul.com;easter.santamaria@saul.com;carol.chow@ecf.courtdrive.com;litigationdocketing@saul.com
- **Robert F Conte**    robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- **Ryan Coy**    ryan.coy@blankrome.com, courtmail@blankrome.com
- **Christopher Cramer**    secured@becket-lee.com
- **Christopher Crowell**    ccrowell@frandzel.com, mbrandenberg@frandzel.com
- **Turner Falk**    turner.falk@saul.com, tnfalk@recap.email
- **Michael G Fletcher**    mfletcher@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Todd S. Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Richard Girgado**    rgirgado@counsel.lacounty.gov
- **Jacqueline L James**    jjames@buchalter.com,
  gvidales@buchalter.com;docket@buchalter.com;pjolley@buchalter.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Avi Edward Muhtar**    amuhtar@crownandstonelaw.com
- **Bruce D Poltrock**    bpoltrock@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Paige Selina Poupart**    Ppoupart@smsm.com, achase@frandzel.com
- **Zev Shechtman**    Zev.Shechtman@saul.com,
  Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- **David B Shemano**    dshemano@shemanolaw.com
- **Jessica M. Simon**    jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Derrick Talerico**    dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Garrick Vanderfin**    gvanderfin@polsinelli.com, zyoung@Polsinelli.com;ladocketing@polsinelli.com
- **Gerrick Warrington**    gwarrington@frandzel.com, achase@frandzel.com,autodocket@frandzel.com
- **Samantha White**    samantha.white@wellsfargo.com
- **Jennifer C Wong**    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**