ZEV SHECHTMAN (BAR NO. 266280)
*Zev.Shechtman@saul.com*
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Alan Gomperts, Daniel Halevy,
Susan Halevy, Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

In re: SEATON INVESTMENTS, LLC, et al.,
***Now a dismissed case***

Debtors and Debtors In Possession.

☐ Affects All Debtors.

☐ Affects Case No.: 2:24-12080-VZ
Colyton Investments, LLC -***Now a dismissed case***

☐ Affects Case No.: 2:24-12081-VZ
Broadway Avenue Investments, LLC

☐ Affects 2:24-12082-VZ
SLA Investments, LLC

☐ Affects 2:24-12091-VZ
Negev Investments, LLC

☒ Affects Case No.: 2:24-12074-VZ
Alan Gomperts

☐ Affects Case No.: 2:24-12075-VZ
Daniel Halevy

☐ Affects Case No.: 2:24-12076-VZ
Susan Halevy

Lead Case No. 2:24-bk-12079-VZ

Jointly Administered with Case Nos.:
2:24-bk-12080-VZ; 2:24-bk-12081-VZ;
2:24-bk-12082-VZ; 2:24-bk-12091-VZ;
2:24-bk-12074-VZ; 2:24-bk-12075-VZ and
2:24-bk-12076-VZ

Chapter 11

**NOTICE OF APPLICATION AND APPLICATION OF DEBTOR ALAN GOMPERTS TO EMPLOY REAL ESTATE BROKER AND TO ENTER INTO AN EXCLUSIVE LISTING AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES AND STATEMENTS OF DISINTERESTEDNESS**

**[No Hearing Required Unless Requested Under LBR 9013-1(o)]**



SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

PLEASE TAKE NOTICE that Alan Gomperts, one of the individual debtors and debtors-in-possession (the "Debtor") in these jointly administered chapter 11 cases, hereby moves for entry of an order authorizing the Debtor to employ a real estate broker, at the expense of the bankruptcy estate (the "Application").

PLEASE TAKE FURTHER NOTICE, pursuant to Local Bankruptcy Rule ("LBR") 2014-1(b)(3), of the following:

(A) Identity of Professional, and Purpose and Scope of Employment: The professional is United Realty Group through its agent, Ben Kanani (collectively, the "Broker"). The Broker will be employed to sell the Debtor's interest in the residential real property commonly known as: 2247 Canfield Avenue, Los Angeles, California 90034 (the "Property").

(B) Compensation: The professional seeks compensation pursuant to 11 U.S.C. § 328.

(C) Arrangements for Compensation: The total commission is five percent (5%) of the selling price for the Property made payable only upon the close of sale-to be split 2.5% to the seller's broker and 2.5% to the buyer's broker. If there are no other agents involved in the sale, the Broker will receive a 3.5% commission only.

(D) Name, Address and Telephone Number of Person Who Will Provide a Copy of the Application: A copy may be requested by contacting undersigned counsel for the Debtor.

(E) Response: Any response and request for hearing, in the form required by LBR 9013-1(f), must be filed and served on the Applicant (and counsel), and the United States Trustee not later than fourteen (14) days from the date of service of this notice.

The Debtor seeks an order approving the proposed exclusive listing agreement with the Broker for the Property on the terms set forth in Exhibit "1" attached hereto. The Debtor further seeks authority to extend, modify (except as to increasing the commission), and terminate the listing agreement in his discretion without further notice or order of the Court.

The Application is based upon this notice, the attached Memorandum of Points and Authorities, the attached Statements of Disinterestedness from the Broker, the complete files and

records of this case, and such other evidentiary matters as may be presented to the Court.

PLEASE TAKE FURTHER NOTICE that, pursuant to LBR 9013-1(o)(1)(A)(ii), any objection and request for hearing must be in writing and must be filed and served within fourteen (14) days after the date of mailing of this Notice, plus an additional three (3) days if this notice of motion was served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F). The response or opposition to the Application shall be filed with the Bankruptcy Court and served on the United States Trustee, at 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017, and counsel for the Debtor, Zev Shechtman, at 1888 Century Park East, Suite 1500, Los Angeles, CA 90067.

If you fail to file a written response within fourteen (14) days of the date of the service of this notice, plus an additional three (3) days if this notice of motion was served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F), the Court may treat such failure as a waiver of your right to oppose the Application and may grant the requested relief.

DATED: November 11, 2026

SAUL EWING LLP

By: ______________________
ZEV SHECHTMAN
Attorneys for Alan Gomperts, Daniel Halevy, Susan Halevy, Debtors and Debtors in Possession

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**MEMORANDUM OF POINTS AND AUTHORITIES**

Alan Gomperts, the debtor and debtor-in-possession in this case ("Applicant" or the "Debtor"), respectfully applies for authority to employ United Realty Group ("Broker"), through its agent, Ben Kanani as the Debtor's real estate broker in this case, based upon the following:

1. This bankruptcy case was commenced on or about March 18, 2024 (the "Petition Date"), when the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Code (the "Code") along with two relatives (Susan Halevy and Daniel Halevy, Mr. Gomperts's mother-in-law and brother-in-law, together, the "Individual Debtors") and five commercial properties in which the Individual Debtors held interests as of the Petition Date.

2. The assets of the Debtor's estate include the Debtor's interest in, among other parcels of real property, the residential property commonly known as: 2247 Canfield Avenue, Los Angeles, California 90034 (the "Property").

3. Title to the Property is held by the Debtor's revocable living trust, the Gomperts & Halevy Family Trust (the "Family Trust"). For all intents and purposes, the fact that the Property is held by the Family Trust does not change its identity as property of the Debtor's estate and the use of the proceeds for estate purposes.

4. It is necessary for Applicant to sell the Property in order to pay his obligations pursuant to a Chapter 11 plan. Attached to the Listing Agreement is a bankruptcy addendum dated November 10, 2026 stating, among other terms, that the sale and commissions, are subject to Bankruptcy Court approval. The best way to market the Property is through a licensed real estate broker with experience in marketing similar properties in the area, like Broker.

5. Applicant seeks approval of the employment of Broker as his real estate broker because Broker is experienced in selling properties where the Property is located and Applicant has had good past experience with Broker.

6. Applicant seeks approval for employment and compensation of Broker based on a total commission of five percent (5%) of the selling price for the Property made payable only upon the close of sale, split evenly between the seller's broker and the buyer's broker. In the event there are no other agents involved, the Broker will be entitled to a 3.5% commission. The listing price

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

for the Property is $2,199,000.00.

7. The terms of the exclusive listing agreement for the Property are reflected in Exhibit “1” attached hereto and incorporated herein by this reference. The Debtor further seeks authority to extend, modify (except as to commission), and terminate the listing agreement in his discretion without further notice or order of the Court.

8. The Debtor believes after payment of liens and costs of sale the estate may net approximately $1,730,060.00 from the sale of the Property as follows:

| | |
|---|---|
| Value: | $2,199,000.00 (Proposed Listing Price) |
| Less: Mortgage | $337,000.00 |
| Capital Gain Taxes | $0 |
| Costs of Sale (6%) | $131,940 |
| Projected Net Equity | $1,730,060.00 |

9. Applicant believes that the employment of Broker, through its agent Ben Kanani, is in the best interests of the estate, based on the above-stated facts. The Property will be advertised throughout Los Angeles County to increase the likelihood of overbids.

10. Applicant is informed and believes, and based thereon alleges, that the proposed Broker has no connection with the Debtor, the United States Trustee or employees of the United States Trustee, any bankruptcy judge or any other party-in-interest, that Broker is therefore disinterested and not adverse to this estate with respect to the matters upon which Broker will be engaged, except that Mr. Kanani has previously provided brokerage, including leasing, services to the Debtor and his family, and has been previously engaged by the Debtor to sell property in this bankruptcy case. See prior application at docket no. 704 and order thereon at docket no. 735.. Considering its experience and quality of services, Debtor believes that the employment of Broker is in the best interests of the estate.

WHEREFORE, Applicant prays for entry of an order authorizing him to: (1) employ United Realty Group as the Debtor’s real estate brokers for the Property; (2) execute an exclusive listing agreement consistent with the terms and conditions set forth in Exhibit “1” attached hereto; (3) authorize Applicant to extend, modify (except as to commission), or terminate the listing

agreement in his sole discretion without further notice or order of the Court; and (4) for all other further and proper relief.

DATED: November 10, 2026

Alan Gomperts

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

SAUL EWING LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT**
**<u>OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014</u>**
**(United Realty Group)**

1. Name, address and telephone number of the professional ("the Professional") submitting this Statement:

   United Realty Group
   2292 Faraday Avenue, Suite 100
   Carlsbad, CA 92008-7238
   Telephone No. (310) 800-7405

2. The services by the Professional in this case are (specify):

   To list and aid Debtor in marketing and selling the real properties located at 2247 Canfield Avenue, Los Angeles, California 90034. Attached as Exhibit "2" is my biography which describes my expertise and experience.

3. The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

   Five percent (5%) of the selling price for the Property (payable only upon close of sale) split evenly between the seller's broker and the buyer's broker. United Realty Group will receive 3.5% commission in the event there are no other agents involved.

4. The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

   N/A

5. The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

   I have reviewed my files of past clients. I have previously provided brokerage services to Debtor and his family, including leasing services, and have been previously engaged by the Debtor to sell property in this bankruptcy case. See prior application at docket no. 704 and order thereon at docket no. 735.

6. The following is a complete description of all of the Professional's connections with the Debtor, principals of the Debtor's, insiders, the Debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

   None.

7. The Professional is not a creditor, an equity security holder or an insider of the Debtor except as follows (specify, attaching extra pages as necessary):

   None.

8. The Professional is not and was not an investment banker for any outstanding security of the Debtor.

9. The Professional has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of any security of the Debtor.

10. The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer, or employee of the Debtor or of any investment banker for any security of the Debtor

11. The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or any investment banker for any security of the Debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary).

None.

12. Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Ben Kanani
2292 Faraday Avenue, Suite 100
Carlsbad, CA 92008-7238
Telephone No. (310) 800-7405
benkanani@gmail.com

13. The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

N/A

14. Total number of attached pages of supporting documentation:

15. After conducting or supervising the investigation described in paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that paragraphs 6 through 9 and 11 are stated on information and belief.

Executed on November 10, 2026, at Carlsbad, California.

Ben Kanani

SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
(310) 255-6100

# EXHIBIT 1

Authentisign ID: 3[illegible]A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP

**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/24)**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant *Alan & Gomperts* *Alan & Gomperts* Date 11/10/2026

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant *Sharon Halevy* *Sharon Halevy* Date 11/10/2026

Agent *United Realty Group* DRE Lic. # *01877638*
Real Estate Broker (Firm)

By *[signature]* *Ben Kanani* DRE Lic. # *01878686* Date 11/10/2026
(Salesperson or Broker-Associate, if any)

**AD REVISED 12/24 (PAGE 1 OF 2)**

EQUAL HOUSING OPPORTUNITY



California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

**CIVIL §§ 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)**

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.

**2079.14. (a)** A copy of the disclosure form specified in § 2079.16 shall be provided in a real property transaction as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller before entering into a listing agreement. (2) The buyer's agent shall provide the disclosure to the buyer as soon as practicable before the execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer. **(b)** The agent providing the disclosure form specified in § 2079.16 shall obtain a signed acknowledgement of receipt from the buyer or seller except as provided in § 2079.15.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm ____ DO NOT COMPLETE. SAMPLE ONLY ____ License Number ______
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent ____ DO NOT COMPLETE. SAMPLE ONLY ____ License Number ______
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm ____ DO NOT COMPLETE. SAMPLE ONLY ____ License Number ______
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent ____ DO NOT COMPLETE. SAMPLE ONLY ____ License Number ______
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Authentisign ID: 2441A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
## (Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/26)

**Date Prepared:** *October 26, 2026*

1. **EXCLUSIVE RIGHT TO SELL:** *Alan & Gomperts, Sharon Halevy* ("Seller") hereby employs and grants *United Realty Group* ("Broker") the exclusive and irrevocable right to sell or exchange the real property described as *2247 Canfield Ave* situated in *Los Angeles* (City), *Los Angeles* (County), California, *90034* (Zip Code), Assessor's Parcel No. *4302-002-021* ("Property") for the Listing Period specified in **paragraph 2A(1).**

2. **TERMS OF LISTING AGREEMENT:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 7 pages. Seller is advised to read all 7 pages.

| | Para # | Paragraph Title or Contract Term | Terms and Conditions |
|---|---|---|---|
| **A** | **Representation** | | |
| **A(1)** | 4G | **Listing Period** **(Maximum Length)** | Beginning *11/10/2026* (date) Ending at 11:59 P.M. on *05/10/2027* (date) (Not to exceed 24 months if improved with one to four units and not owned by an entity. If Listing Period exceeds 24 months on a residential 1-4, this Agreement is void, unless Seller is a corporation, LLC, or partnership.) |
| **A(2)** | | **Listing Price** | *Two Million, One Hundred Ninety-Nine Thousand* Dollars ($*2,199,000.00*) |
| **B** | | **Property Specific Listings** | ☐ Manufactured (mobile) home (C.A.R. Form MHLA attached)<br>☐ Probate, conservatorship, or guardianship (C.A.R. Form PLA attached) |
| **C** | **Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between Seller and Broker.** See attached Broker Compensation Advisory (C.A.R. Form BCA). | | |
| **C(1)** | 4B | **Compensation to Seller's Broker (only Seller's side of transaction)** | *2.500* % of the listing price AND, if any, ______; OR ☐ $ ______; OR ☐ see attached Broker-created compensation schedule. (% above is based on purchase price if Seller and buyer sign a purchase agreement) |
| **C(2)** | 4C | ☒ **Additional Compensation to Seller's Broker for additional effort needed to facilitate transaction if Buyer is not represented by a real estate agent** **(Does NOT apply to dual agency)** | *1.000* % of the purchase price AND, if any, ______; OR ☐ $ ______; OR ☐ see attached Broker-created compensation schedule.<br>If Broker is not representing Buyer, Broker is advised to provide the unrepresented buyer with a Buyer Non-Agency Agreement (C.A.R. Form BNA)<br>(If Broker represents both buyer and Seller, Broker must obtain a separate written agreement with buyer that establishes the Broker's right to compensation for buyer's side of the transaction.) |
| **C(3)** | 4D(2) | **Continuation of Right to Compensation for Broker Identified Prospective Buyers** | The Continuation Period shall be *360* calendar days after the Listing Period or any extension ("Continuation Period"). |
| **C(4)** | 4F | **Seller Obligation to Pay Previous Brokers** | Previous Listing/Other broker(s): ______<br>Compensation to above broker(s) owed if Property transferred to: ______ |
| **C(5)** | | ☐ **Broker is paying a referral fee related to the representation of Seller.** See attached C.A.R. Form RAD. | |
| **D** | **Items Intended to be Included and Excluded** | | |
| **D(1)** | 5A | **Items Included** | ☐ ______; ☐ ______; |
| **D(2)** | 5A | **Excluded Items** | ☐ ______; ☐ ______; |
| **D(3)** | 5B | **Leased Items:**<br>☐ Propane Tank(s); | ☐ Solar Power System(s); ☐ Alarm System(s);<br>☐ Water Softener; ☐ ______ |
| **D(4)** | 5B | **Liened Items:**<br>☐ Heating/Ventilation/Air conditioning | ☐ Solar Power System(s); ☐ Windows or Doors;<br>☐ ______; ☐ ______ |
| **D(5)** | 5C | (a) **Smart Home Features Seller prefers to Include:** ______<br>(b) **Smart Home Features Seller prefers to Exclude:** ______ | |
| **E** | **MLS and Public Marketing** | | |
| **E(1)** | | **Property will be marketed in the following MLS** | Primary ______<br>Other(s): ______<br>See C.A.R. Form MLSA. |

© 2026, California Association of REALTORS®, Inc.

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6
Property Address: *2247 Canfield Ave , Los Angeles, CA 90034* Date: *October 26, 2026*

| | | | | |
|---|---|---|---|---|
| **E(2)** | 10 | **Publication of Seller willingness to consider concessions** | If checked below: **(i)** Seller authorizes Broker to market that Seller is willing to consider offers asking for concessions; and **(ii)** no amount of the possible concession will be stated in such marketing unless Seller notifies Broker in writing of the amount.<br>☐ In the MLS(s) listed above, if permitted by that MLS.<br>☐ In any other marketing outside of the MLS | |
| **E(3)** | 12A | ☐ **Seller instructs Broker not to take or use photographs in marketing, except as required by MLS rules.** | | |
| **F** | **Broker's and Seller's Duties** | | | |
| **F(1)** | 7B | **Timing of Presentation of Offers** | Seller instructs Broker to present all offers received as soon as practicable OR<br>☐ Offers shall be presented on ___________ (date) or ☐ _____ days after the Property is listed as active on the MLS. | |
| **F(2)** | 7C | **Buyer Supplemental Offer Letters (Buyer Letters)** | Seller instructs Broker not to present Buyer Letters, OR ☐ Seller instructs Broker to present Buyer Letters. If Seller requests or relies on Buyer Letters, Seller is acting against Broker's advice. | |
| **F(3)** | 7A, 7E | **Investigation Reports** | ☒ Natural Hazard Disclosure<br>☐ Structural Pest Control,<br>☐ General Property Inspection,<br>☐ Homeowners Association Documents,<br>☒ Preliminary (Title) Report,<br>☐ Roof Inspection,<br>☐ Pool Inspection,<br>☐ Septic/Sewer Inspection,<br>☐ Other: ______________________ | Whether ordered by Seller or broker pursuant to **paragraph 7A**, Seller shall pay for any reports selected within **5 (or _____) days** of the Beginning Date of this Agreement |
| **G** | 21 | **Exceptions to Ownership/Title** | ______________________ | |
| **H** | | ☐ **Seller intends to include a contingency to purchase a replacement property as part of any transaction (see C.A.R. Form SPRP).** | | |
| **I** | **Intentionally Left Blank** | | | |
| **J** | 13, 14 | **Seller Opt Outs** | ☐ Keysafe/Lockbox<br>☐ Signs | |
| **K** | | **Additional Terms** | ______________________<br>______________________ | |

**3. ADVISORIES AND ADDENDA:**

**A. Advisories**

☒ Broker Compensation Advisory (C.A.R. Form BCA)
☐ REO Advisory Listing (C.A.R. Form REOL)
☐ Trust Advisory (C.A.R. Form TA)
☐ Other: ______________________

**B. Addenda.** The addenda identified below are incorporated into this Agreement

☐ Short Sale Listing Addendum (C.A.R. Form SSLA)
☒ *"SEE BANKRUPTCY ADDENDUM "* ☐ ______________________

**4. COMPENSATION TO BROKER:**

**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker.**

A. **ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.

B. **COMPENSATION TO BROKER:** Seller agrees to pay to Broker, as compensation for services under this Agreement, the amount specified in **paragraph 2C(1).**

C. **OPTIONAL ADDITIONAL COMPENSATION FOR UNREPRESENTED BUYER:** If no other brokerage company is involved in the sale of Seller's property because buyer is not represented by a real estate agent, Seller agrees to pay Broker the additional amount specified in **paragraph 2C(2)**, if checked, for services rendered. Broker is advised to confirm that they are not representing the buyer by providing the unrepresented buyer with a Buyer Non-Agency Agreement (C.A.R. Form BNA).

D. **COMPENSATION TERMS:** Compensation is earned, and Seller shall pay Broker as follows:

(1) **Completed Transaction or Seller Default:** If during the Listing Period, or any extension, Broker, any other broker, Seller, or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)

OR (2) **Continuation of Right to Compensation for Broker Procured Buyer(s):** If, during the Continuation Period specified in **paragraph 2C(3)**, or the same period of time after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease, or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity:

- who physically entered and was shown the Property during the Listing Period or any extension by Broker or any other broker; or
- for whom Broker or any other broker submitted to Seller a signed, written offer to acquire, lease exchange or obtain an option on the Property.

Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers to Seller a written notice of the names of such Prospective Buyers (C.A.R. Form NPB).

OR (3) **Seller Interference with Listing:** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.

**E. ADDITIONAL COMPENSATION TERMS:**

(1) **Buyer Breach and Seller Recovery of Damages:** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under **paragraph 4** shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection and suit, if any.

(2) **Escrow Instructions:** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to **paragraph 4**, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

**F. SELLER COMPENSATION OBLIGATIONS TO OTHER BROKERS:**

(1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified in **paragraph 2C(4).**

(2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the individuals or entities specified in **paragraph 2C(4).**

(3) If the Property is sold to anyone specified in **paragraph 2C(4)** during the time Seller is obligated to compensate another broker: **(i)** Broker is not entitled to compensation under this Agreement; and **(ii)** Broker is not obligated to represent Seller in such transaction.

**G. MAXIMUM LISTING PERIOD: The maximum listing period allowed by law for residential property improved with one to four units is 24 months from the date this Agreement is made. This restriction does not apply if Seller is a corporation, LLC or partnership. It is unlawful to record or file this listing Agreement, or a memorandum or notice thereof, with the county recorder.**

**5. A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
Seller intends that the items specified in **paragraph 2D** be included or excluded in offering the Property for sale, but understands that: **(i)** the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and **(ii)** Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B. LEASED OR NOT OWNED ITEMS; LIENED ITEMS:** The items specified in **paragraph 2D(3)** are leased or not owned by Seller and the items specified in **paragraph 2D(4)** have been financed and a lien has been placed on the Property to secure payment. Seller will provide to the buyer, as part of the purchase agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**C. SMART HOME FEATURES:** The smart home features are intended to be included or excluded as specified in **paragraph 2D(5).**

**6. SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7. BROKER'S AND SELLER'S DUTIES:**

**A. BROKER RESPONSIBILITY, AUTHORITY AND LIMITATIONS:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to **(i)** order reports and disclosures including those specified in **paragraph 7E** as necessary, **(ii)** advertise and market the Property by any method and in any medium selected by Broker, including MLS, the internet, and social media, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and **(iii)** disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B. PRESENTATION OF OFFERS:**

(1) **Strategies Affecting Delayed Offers and Buyer Broker Compensation:** There are different strategies for obtaining the best offer for Seller. Seller is advised that certain buyers may prefer not to be in a competitive situation and either may not make an offer if there is an instruction that all offers will be presented at a later specified time or may try to make a "preemptive" offer that will expire shortly, hoping that Seller will accept before the presentation date. Additionally, certain buyers may not be able or allowed to pay compensation to a buyer's broker. These buyers may request for seller to pay buyer's broker through a term in the purchase agreement or through a separate compensation agreement. Seller is advised to discuss and consider the best strategy for Seller related to the presentation of offers.

(2) (A) **Seller Instructs Broker to Present Offers:** Broker agrees to present all offers received for Seller's Property, and present them to Seller as soon as possible, unless Seller gives Broker written instructions to the contrary.



**Exhibit 1**

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6


OR (B) **Seller Instructs Broker not to Present Offers until a Later Time:** If checked in **paragraph 2F(1)**, Seller has elected to have Broker hold all offers and present them to Seller as specified in **paragraph 2F(1)**. Broker will inform Seller that an offer has come in, but will not submit the offer to Seller, unless specifically instructed otherwise, in writing. Local MLS rules may impact this practice and whether it will provide any benefit to Seller. Broker and Seller may amend this instruction by agreeing in writing.

**C. BUYER SUPPLEMENTAL OFFER LETTERS (BUYER LETTERS):**

(1) **Advisory Regarding Buyer Letters:** Seller is advised of the practice of many buyers and their agents to include a Buyer Letter with an offer to try to influence a seller to accept the buyer's offer. Buyer Letters may include photos and video. Whether overt or unintentional, Buyer Letters may contain information about a buyer's protected class or characteristics. Deciding whether to accept an offer based upon protected classes or characteristics is unlawful. Broker will not review the content of Buyer Letters. See C.A.R. Form FHDA for further information.

(2) (A) **Seller Instructs Broker not to Present Buyer Letters** whether submitted with an offer or separately at a different time. Seller authorizes Broker to specify in the MLS that Buyer Letters will not be presented to Seller.

OR (B) **Seller Instructs Broker to Present Buyer Letters:** If checked in **paragraph 2F(2)**, Broker advises seller that: **(i)** Buyer Letters may contain information about protected classes or characteristics and such information should not be used in Seller's decision of whether to accept, reject, or counter a Buyer's offer; and **(ii)** if Seller relies on Buyer Letters, Seller is acting against Broker's advice and should seek the advice of counsel before doing so.

**D. SELLER GOOD FAITH:** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to **paragraph 2C(4)**, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**E. INVESTIGATIONS AND REPORTS:** Seller agrees, within the time specified in **paragraph 2F(3)**, to order and, when required by the service provider, pay for all reports specified in **paragraph 2F(3)**. If Property is located in a Common Interest Development or Homeowners Association, Seller is advised that there may be benefits to obtaining any required documents prior to entering into escrow with any buyer. Such benefits may include, but not be limited to, potentially being able to lower costs in obtaining the documents and avoiding any potential delays or complications due to late or slow delivery of such documents.

**F. UNDISCLOSED CONDITIONS; INCOMPLETE OR INCORRECT INFORMATION:** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9. AGENCY RELATIONSHIP:**

**A. DISCLOSURE:** Seller acknowledges receipt of a [X] "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

**B. SELLER REPRESENTATION:** Broker shall represent Seller in any resulting transaction, except as specified in **paragraph 4F(3)**.

**C. POSSIBLE DUAL AGENCY:**

(1) **Disclosure and Consent in a Transaction:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Compensation is not necessarily determinative of agency.

(2) **Showing Properties:** Seller acknowledges that real estate brokers must have a written agreement in order to work with a buyer before showing properties to that buyer and that some buyers working through Broker may consider or make an offer on Seller's property. Seller consents to Broker entering into a representation agreement with a buyer, and if that buyer makes an offer on Seller's property, Broker will become a dual agent representing both that buyer and Seller.

(3) **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller – Disclosure and Consent" (C.A.R. Form PRBS).

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6


D. **UNREPRESENTED BUYERS:** If a buyer is interested in viewing Seller's Property is not already represented by a real estate broker, and such buyer refuses to be represented by Broker, Seller authorizes Broker to obtain a signed document from such buyer refusing representation by Broker. Broker shall provide such buyers, at the earliest practicable time, a disclosure of non-representation, such as Buyer Non-Agency (CAR Form BNA) or Open House and Visitor Non-Agency Disclosure and Sign-In (C.A.R. Form OHNA-SI).

E. **CONFIRMATION:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

F. **TERMINATION OF AGENCY RELATIONSHIP:** Seller acknowledges and agrees that the representation duties of, and agency relationship with, Broker terminate at the expiration of this Agreement or, if it occurs first, the completion of any transaction specified in this Agreement.

**10. SELLER CONCESSIONS:**

- Concessions are monetary payments that a seller agrees to contribute towards a buyer's expenses and other costs a buyer is responsible for in the transaction.
- Concessions may include, but are not limited to, costs of escrow or title, lender fees, repairs, inspections, and buyer broker compensation.
- Concessions specified in the MLS must be allowed to be used for any permissible buyer expense or cost and must not specify the concessions are to be used for broker compensation. However, a term in the buyer's offer may specify that the Seller agrees to pay compensation to a buyer's broker. Should Seller agree to do so, Broker does not represent, nor will Broker confirm, that the amount specified is owed by buyer to buyer's broker pursuant to a written agreement that covers Seller's property. In the absence of a separate agreement, Seller's contractual obligation to pay buyer's broker is independent of any obligation between buyer and buyer's broker.
- Concessions identified in an MLS listing are not promises to pay but instead indicate to a buyer that the seller will consider offers asking for concessions. Concessions specified in the MLS are not intended to be binding on Seller unless included in the accepted purchase agreement.

**11. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or injury to person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as “nanny cams” and hidden security cameras). Seller is advised to post a notice disclosing the existence of security devices.

**12. PHOTOGRAPHS AND INTERNET ADVERTISING:**

A. **OWNERSHIP AND USE OF IMAGES:** In order to effectively market the Property for sale, it is often necessary to provide photographs, virtual tours and other media to buyers. Unless checked in **paragraph 2E(3)**, Seller agrees that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property (“Images”) for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the internet or on social media, neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the internet. Seller further assigns any rights in all Images to the Broker/Agent and agrees that such Images are the property of Broker/Agent and that Broker/Agent may use such Images for advertising, including post transaction, and for Broker/Agent's business in the future.

B. **THIRD-PARTY USE AND TAKING OF IMAGES:** Seller acknowledges that prospective buyers and/or other persons coming onto the Property may take photographs, videos, or other images of the Property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. Once Images are taken and/or put into electronic display on the internet, on social media, or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

C. **DIGITALLY ALTERED IMAGES:** If Broker uses a digitally altered image (“DAI”) in an advertisement or other promotional material to market the Property, Broker must comply with Business & Professions Code § 10140.8 as follows: **(i)** by including a reasonably conspicuous statement located on or adjacent to the DAI stating that the image is altered and also clearly identifying that the original, unaltered image can be accessed via a link to a publicly-accessible internet website, URL, or QR code; and **(ii)** if the DAI is posted on an internet website controlled by Broker or Broker's agent, Broker may satisfy Broker's legal obligation by either complying with **paragraph 12C(i)** above or by including the unaltered version along with the DAI posting. For details on what qualifies as DAI – and for examples of image enhancements that are not considered DAI – see Business & Professions Code § 10140.8.


Seller's Initials A&G / SH


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 2247 Caanfield

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6


13. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Seller further agrees that Broker, at Broker's discretion, and without further approval from Seller, shall have the right to grant access to and convey Seller's consent to access the Property to inspectors, appraisers, workers, repair persons, and other persons requiring entry to the Property in order to facilitate the sale of the Property. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox.

    **A.** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a keysafe/lockbox.

    **B.** **TENANT-OCCUPIED PROPERTY:** If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

14. **SIGN:** Unless checked in **paragraph 2J**, Seller authorizes Broker to install a FOR SALE/SOLD sign on the Property.

15. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

16. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker arising out of this Agreement, Seller and Broker are each responsible for paying their own attorney's fees and costs except as provided in **paragraph 19A.**

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

    **A.** **MEDIATION:** (1) Seller and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. (2) Mediation fees, if any, shall be divided equally among the parties involved. (3) If, for any dispute or claim to which this paragraph applies, any party (the non-mediating party) **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then if the non-mediating party is the losing party in any such action, the prevailing party in such action shall be entitled to recover attorney fees from the non-mediating party, notwithstanding the terms in **paragraph 16.** (4) **Exclusions from this mediation agreement are specified in paragraph 19B.**

    **B.** **ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

    **C.** **ARBITRATION ADVISORY: If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: **(i)** Seller is the owner of the Property; **(ii)** no other persons or entities have title to the Property; and **(iii)** Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are specified in **paragraph 2G.**

22. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).



Seller's Initials A&G / SH

EQUAL HOUSING OPPORTUNITY

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

**By signing below, Seller acknowledges that they have received a copy of this Residential Listing Agreement, and they have read, understand, and agree to its terms.**

☒ **ENTITY SELLERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1) **Non-Individual (entity) Sellers:** One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): *Gomperts & Halevy Family Trust,* ______.

(3) **Contractual Identity of Seller:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
(A) If a trust: The trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
(B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(4) **Legally Authorized Signer:**
(A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. See **paragraph 22** for additional terms.
(B) The name(s) of the Legally Authorized Signer(s) is/are: *ALAN GOMPERTS*, *SHARON HALEVY*.

**SELLER SIGNATURE(S):**

(Signature) By, *Alan & Gomperts* Date: 11/10/2026
Printed name of SELLER: *Alan & Gomperts*
☒ Printed Name of Legally Authorized Signer: *ALAN GOMPERTS* Title, if applicable, ______
Address ______ City ______ State ____ Zip ______
Email *alangomperts@hotmail.com* Phone # ______

(Signature) By, *Sharon Halevy* Date: 11/10/2026
Printed name of SELLER: *Sharon Halevy*
☒ Printed Name of Legally Authorized Signer: *SHARON HALEVY* Title, if applicable, ______
Address ______ City ______ State ____ Zip ______
Email *sharongomperts@gmail.com* Phone # ______

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *United Realty Group* DRE Lic # *01877638*
Address *2292 Faraday Ave, Suite 100* City *Carlsbad* State *CA* Zip *92008-7238*
By (Broker/Agent) *[signature]* *Ben Kanani* Date 11/10/2026
Tel. *(310)800-7405* E-mail *BENKANANI@GMAIL.COM* DRE Lic # *01878686*

By (Broker/Agent) ______ Date ______
Tel. ______ E-mail ______ DRE Lic # ______

☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2026, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# MULTIPLE LISTING SERVICE ADDENDUM

**(C.A.R. Form MLSA, Revised 12/25)**

The following terms and conditions are hereby incorporated in and made a part of the Residential Listing Agreement, ☐ Other _______ ("Agreement"), dated *10/26/2026*, on property known as *2247 Canfield Ave , Los Angeles, CA 90034* in which *Alan & Gomperts, Sharon Halevy* is referred to as ("Seller") and *United Realty Group* is referred to as ("Broker").

**1. MULTIPLE LISTING SERVICE:**

**A. WHAT IS AN MLS?** An MLS is an organization that brokers join to work cooperatively to benefit their clients by establishing rules of cooperation between real estate agents resulting in detailed information about properties for sale, and any resulting transaction, being made available to other agents and their clients. The MLS manages these property records to ensure their accuracy and fair distribution to agents, appraisers and consumers. The MLS also enforces rules on property access and fair advertising practices. Most residential real estate practitioners in any given area belong to an MLS. An MLS may also be part of a reciprocal or data sharing agreement in which the MLS shares the property and listing details with the real estate practitioners of other neighboring multiple listing services. Real estate agents belonging to other multiple listing services that have reciprocal or data sharing agreements with the MLS also have access to the information submitted to the MLS.

**B. REALTOR® OWNED MLSs:** Many MLSs are REALTOR® owned and are obligated to comply with the rules promulgated by the National Association of REALTORS® ("NAR"). The rules of those MLSs provide that once a seller's listing has been publicly marketed, as defined in **paragraph 3**, the broker who has taken the listing and who belongs to a REALTOR® owned MLS shall submit information describing the price, terms, and conditions under which the seller's property is offered for sale to the MLS. REALTOR® owned MLSs will not publish offers of compensation from a seller's broker to a buyer's broker.

**C. WHAT INFORMATION IS PROVIDED TO THE MLS AFTER SALE:** All terms of the transaction, including sales price and, if applicable, financing and concessions, **(i)** will be provided to the MLS in which the Property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS, and **(ii)** may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

**D. WHAT IS BROKER'S MLS?** Broker belongs to the Multiple Listing Service (MLS) specified in **paragraph 2E(1)** of the Agreement and possibly others. Broker shall inform Seller if the MLS specified in **paragraph 2E(1)** of the Agreement is not the primary MLS for the geographic area of the Property. When required by **paragraph 3** of this MLSA or by the MLS, Property will be listed with the MLS(s) specified.

**2. BENEFITS OF USING AN MLS; IMPACT OF OPTING PROPERTY OUT OF AN MLS**

**A. EXPOSURE TO BUYERS THROUGH MLS: Listing property with an MLS** exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who belong to that MLS or a reciprocating MLS. That MLS may further send the details about the property listed to internet sites that post property listings online. Exposure of a seller's property through the MLS is intended to maximize publicity of the seller's property to the marketplace of potential buyers and real estate licensees in anticipation that the more awareness there is that the seller's property is for sale, the more likely it is that the seller can achieve the goals of the listing.

**B. IMPACT OF OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: **(i)** Seller is authorizing limited exposure of the Property and NO marketing or advertising of the Property to the public will occur; **(ii)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; **(iii)** Information about Seller's Property will not be transmitted from the MLS to various real estate internet sites that are used by the public to search for property listings; **(iv)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property; and **(v)** the scope of marketing will consist only of direct one-on-one promotion between the brokers and agents and their respective clients.

**C. REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price. Limiting exposure of the Property to only the agents and clients of Broker may result in the Property being on the market for a longer period than if it was more widely exposed to the other brokers that belong to the MLS and to the public.

**D. NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**3. PUBLIC AND PRIVATE MARKETING OF PROPERTY; "CLEAR COOPERATION POLICY":**

**A.** Unless **paragraph 3E** is checked, the MLS to which Broker will submit the listing has adopted the policy of the NAR which requires that exclusive and seller reserved listings for residential real property with one to four units and vacant lots be submitted to the MLS within 1 business day of any public marketing ("Clear Cooperation").

**B.** Public marketing includes but is not limited to: Flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, digital communications marketing and email blasts, multi-brokerage listing sharing networks, marketing to closed or private listing clubs or groups, and applications available to the general public.

**C.** In guidance from NAR, private marketing permits all agents affiliated with Broker to engage in one-to-one promotion between these agents and their clients and one-to-one promotion with other licensees, who may communicate to their clients. (**NOTE**: Not all MLSs have implemented or follow the NAR guidance, and Seller should discuss with Broker what is allowed under MLS rules.)

**D.** Different status options may be available for exclusive or seller-reserved listings taken by members of the MLS. Marketing options for listings submitted to the MLS may include: Full Exposure; Delayed Marketing, and if available by the MLS, Coming Soon (or equivalent status). The status option for listings not submitted to the MLS is usually Office Exclusive. See **paragraph 5** for further information.

© 2025, California Association of REALTORS®, Inc.



Seller's Initials A&G / SH

EQUAL HOUSING OPPORTUNITY



California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6
Property Address: *2247 Canfield Ave , Los Angeles, CA 90034* Date: *10/26/2026*

OR E. ☐ **CLEAR COOPERATION POLICY DOES NOT APPLY:** The MLSs used by Broker to market the Property do not have a Clear Cooperation Policy that applies to the Property. Broker shall disclose to Seller and obtain Seller's consent for any instruction to not market the Property on the MLS or to the public.

4. **PROPERTY LISTING INFORMATION ON THE INTERNET:** An MLS can send information about properties listed on the MLS to public real estate portals, including those operated by the MLS and additional internet sites operated by brokers and agents. MLS can also syndicate information about listed properties by providing them to various advertising outlets, increasing the exposure of the for-sale property. Seller can instruct Broker to give the MLS instructions to the contrary. Specific information that can be excluded from the internet as permitted by (or in accordance with) the MLS is as follows:
   A. **TOTAL INTERNET OPT OUT:** Seller may prevent the Property from being marketed on the Internet which will keep the Property in the MLS systems only for access by other brokers, their agents, and their customers, but the Property listing will NOT be displayed outside of the MLS systems on 1) real estate portals, 2) Broker's own website or social media, 3) other cooperating MLS broker or agent websites, or 4) syndication advertising sites. Seller understands that this opt out would mean consumers searching for listings on the internet will not see the Property.
   B. **LIMITED INTERNET INFORMATION OPT OUTS:**
      (1) **PROPERTY OR PROPERTY ADDRESS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the internet. Seller understands that this opt out would mean consumers searching for listings on the internet may not see the Property or the Property's address in response to their search.
      (2) **FEATURE OPT OUTS:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber websites, or electronic displays that display the Property listing, to have the features below. Seller understands **(i)** that these opt outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other internet sites:
         (A) **COMMENTS AND REVIEWS:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
         (B) **AUTOMATED ESTIMATE OF VALUE:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display.

5. **MARKETING OPTIONS:** An MLS may have different categories and options for marketing the property, including, but not limited to, the options in **paragraphs 5A-D:**
   A. **FULL EXPOSURE:**
      (1) The Property listing is submitted to the MLS, and it will also be made available to all subscribers and participants of the MLS ("Other Members") who may engage in one-to-one promotion with their existing or past clients, or mass market the Property to current, past, and prospective clients with the seller's consent.
      (2) Information about the Property will be syndicated to third party website displays that have an agreement with the MLS.
      (3) Other Members can use their own websites to electronically display the MLS data about the Property, and such information may be accessed by current and former clients of the brokerage as well as members of the public ("IDX").
      (4) Other Members can electronically display the MLS data about the Property on their own websites, but such information is only available to be seen by the Other Members' clients or those who have registered with the Other Member, but not members of the general public ("VOW").
   B. **DELAYED MARKETING LIMITED EXPOSURE:**
      (1) The Property is submitted to the MLS, and it will also be made available to Other Members who may engage in one-to-one promotion with their existing or past clients but, other than specified in (4), may not mass market the Property to current, past, or prospective clients.
      (2) Information about the Property will NOT be syndicated to third party website displays that have an agreement with the MLS.
      (3) Other Members can NOT use their own IDX websites to electronically display the MLS data about the Property.
      (4) Other Members can electronically display the MLS data about the Property on their own VOW websites, but such information is only available to be seen by the Other Members clients or those who have registered with the Other Member, but not members of the general public.
   C. **COMING SOON (OR EQUIVALENT) MARKETING:**
      Some MLSs permit a Coming Soon status, but there is no statewide definition of what that status means. Seller is advised to discuss with Broker the meaning of "Coming Soon" as that term applies to the MLS in which the Property will be listed, and how any Coming Soon status will impact when and how a listing will be viewable to the public via the MLS.
   D. **OFFICE EXCLUSIVE LIMITED EXPOSURE:** The Property will not be submitted to the MLS for display during the entire listing period, or another time specified by the seller. The seller's broker may engage in one-to-one promotion between any licensee working through the broker and their clients. If allowed by the MLS under the NAR guidance, other members who have received direct one-to-one promotion from a licensee with the listing brokerage firm may themselves engage in one-to-one promotion with their clients but may not mass market the Property to current, past, or prospective clients.
   E. **DAYS ON MARKET:** Regardless of the marketing option chosen, Seller is advised to discuss with Broker how any Days on Market calculations, or any similar tracking fields, work in the MLS in which the Property will be listed for any option above, as well as the potential impact on Seller's property.

6. **PHOTOGRAPHS:** Visitors entering or touring the Property may take photographs or other images ("Images"), and Broker does not have the ability to control or block the taking and use of Images. Seller can instruct Broker to publish information in the MLS limiting the taking of Images to only those persons preparing appraisal or inspection reports. Seller acknowledges that even with a limiting instruction individuals who are either unaware of the MLS limiting instructions or who have disregarded those instructions may take images of the Property.

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

Property Address: *2247 Canfield Ave , Los Angeles, CA 90034* Date: *10/26/2026*

## SELLER INSTRUCTIONS TO BROKER

Seller instructs Broker to market the Property as follows: (**NOTE:** It is possible that different MLSs may be in different stages of implementing the rules set by the NAR and that not all choices below may apply or be available at the time of the listing.)

**1. PROPERTY LISTING INFORMATION ON THE INTERNET (see paragraph 4 above for more information):**

**A.** ☐ **TOTAL INTERNET OPT OUT:** Seller requests that Broker advise the MLS that Seller does not want the Property to be displayed on the internet. Seller understands and acknowledges that if this option is checked, consumers who search for listings on Internet sites may not see information about the Property.

**B. LIMITED OPT OUT:**

(1) ☐ Property Address: Seller requests that Broker advise the MLS that Seller does not want the address of the Property to be displayed on the internet. Seller understands and acknowledges that **(i)** if this option is checked, consumers who search for listings on internet sites may not see the Property address in response to their search, and **(ii)** all requests are subject to MLS rules.

(2) **Features Opt out:** Seller understands and acknowledges that if either or both options below are checked **(i)** this opt-out applies only to the Websites or Electronic Displays of MLS participants and subscribers who are real estate broker and agent members of an MLS; **(ii)** other Internet sites may or may not have the features set forth herein; and **(iii)** neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(A) ☐ **Comments and Reviews:** Seller requests that Broker advise the MLS that Seller does not want visitors to MLS participant or subscriber Websites or Electronic Displays that display the Property listing to have **(i)** the ability to write comments or reviews about Seller's Property on those sites; or **(ii)** the ability to link to another site containing such comments or reviews.

(B) ☐ **Automated Estimate of Value:** Seller requests that Broker advise the MLS that Seller does not want MLS participant or subscriber Websites or Electronic Displays that display the Property listing **(i)** to create an automated estimate of the market value of the Property; or **(ii)** the ability to link to another site containing such automated estimate of the market value of the Property.

**2. MARKETING OPTION: (see paragraph 5 above for more information):** The marketing option selected below shall start at the beginning of the Listing Period or ☐ ____________ (date), or ☐ ______________________________.

**A. FULL EXPOSURE:** Market the Property with full exposure to the public starting at the beginning of the Listing Period;

**OR B.** ☐ **DELAYED MARKETING LIMITED EXPOSURE (only applicable if allowed by MLS):** Market the Property as a Delayed Marketing Limited Exposure. Seller understands that even though the Property will be submitted to the MLS, the Property's data will not be syndicated to third party websites, nor be exposed through Other Member IDX websites. The Property will be available for others to see, tour and inform their clients.

**OR C.** ☐ **COMING SOON (only applicable if allowed by MLS):** Market the Property under a Coming Soon policy. Broker has explained the parameters of Coming Soon and any impact it may have on marketing of the Seller's Property.

**OR D.** ☐ **OFFICE EXCLUSIVE LIMITED EXPOSURE:** (**NOTE**: Not all MLSs have implemented or follow the NAR guidance, and Seller should discuss with Broker what is allowed under MLS rules.) Market the Property as an Office Exclusive Limited Exposure. Seller instructs Broker to EXCLUDE the Property from full dissemination by the MLS for the time period specified below. Seller certifies that Seller understands that no public marketing (**paragraph 3B**) will occur, and while the property is in office exclusive limited exposure option, the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients. If allowed by the MLS under the NAR guidance, Broker may engage in one-to one communication with other licensees who may communicate with their clients but may not mass market the Property to current, past, or prospective clients. Seller's Property may be shown to clients of agents of the Broker, but not to clients of other brokers, without triggering the obligation to place the property in the MLS. Seller understands and agrees that should any public marketing of the property occur, including showing of the Property to clients of an outside brokerage, the Property listing will be submitted to the MLS within 1 business day.

(1) Do NOT market the Property to the public during the entire Listing Period unless Seller gives Broker written instruction otherwise;

OR (2) ☐ Begin marketing the Property to the public under **FULL EXPOSURE** (including through the MLS) on __________ (date).

**3. OTHER INSTRUCTIONS/TERMS:** Seller and Broker may agree to additional terms and items below, but they will be subject to MLS rules and what is permitted in the MLS.

**A. SELLER PHOTOGRAPH INSTRUCTION:**

(1) Visitors are not restricted from taking Images of the Property;

OR (2) ☐ Seller instructs Broker to publish in the MLS that taking of images is limited to those persons preparing appraisal or inspection reports.

**B. OTHER INSTRUCTIONS/TERMS:** ______________________________

**By signing below, Seller acknowledges that they have received a copy of this Multiple Listing Service Addendum, and they have read, understand, and agree to its terms.**

Seller *Alan & Gomperts* *Alan & Gomperts* Date 11/10/2026

Seller *Sharon Halevy* *Sharon Halevy* Date __________

Real Estate Broker (Listing Firm) *United Realty Group*

By *BK* *Ben Kanani* DRE Lic# *01878686* Date 11/10/2026

By ______________________ DRE Lic# __________ Date __________

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# DISCLOSURE AND SELLER CONSENT TO POSSIBLE REPRESENTATION OF MORE THAN ONE SELLER, AND DUAL AGENCY IN A TRANSACTION

**(C.A.R. Form PRBS-S, Revised 6/26)**

1. **BROKER AGENCY RELATIONSHIP WITH MULTIPLE PRINCIPALS:** A real estate broker ("Brokerage"), whether a corporation, partnership or sole proprietorship, may legally represent more than one buyer or seller. This multiple representation can occur through a sole proprietor Brokerage; or through a salesperson or broker acting under the Brokerage's license ("Associate Licensee"). Associate Licensees under a Brokerage's license may be working out of the same or different office locations, and may or may not know one another. Clients of the Brokerage may have similar goals and may compete against each other for the same property or the same pool of prospective buyers. Some buyers and sellers prefer to work with individual, sole proprietor brokerages, some with brokerages that have multiple licensees, and others with large brokerage companies that have multiple offices and may have a regional, statewide or a national or international presence. Each has its own advantages. It is important for buyers and sellers to understand how the Brokerage representation of multiple buyers or sellers may impact them under various situations.
   A. **MULTIPLE SELLERS:** Brokerage (individually or through its Associate Licensees) may have listings on many properties at the same time. As a result, Brokerage will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Brokerage and some may not. Brokerage will market all listed properties to all prospective buyers, whether or not Brokerage has other listed properties that may appeal to the same prospective buyers.
   B. **DUAL AGENCY IN A TRANSACTION:** California law allows a brokerage to represent both a buyer and a seller in a transaction (Civil Code § 2079 et seq.).
      (1) **Brokerage Dual Agency:** If one Associate-Licensee from the Brokerage is working with a buyer and another Associate-Licensee from the same Brokerage is working with a seller on the same transaction, the Brokerage is considered a dual agent with fiduciary duties to both buyer and seller. In that situation, each individual Associate Licensee working on the transaction is also considered a dual agent having the same knowledge and responsibility as the Brokerage.
      (2) **Single Agent Dual Agency:** Another form of dual agency occurs when an individual Associate-Licensee is working with both the buyer and seller in the same transaction. In that situation, both the Brokerage company and the individual Associate-Licensee are dual agents with fiduciary duties to each side of the transaction. There is no one approach to this situation. Some brokerages allow the single agent dual agent to continue to represent both parties, as that Associate-Licensee is the chosen agent of the principal. Some brokerages recommend that the broker or an office manager get involved if there is a dispute between the buyer and seller. Some brokerages will require that the broker or an office manager assist the Associate-Licensee with one principal or the other, even if the parties do not have a dispute. Whether one of these approaches, or another, is taken in a single agent dual agency will depend on the circumstances and the brokerage policy. Regardless of the approach, the Associate-Licensee and Brokerage shall conduct activity consistent with the terms in **paragraph 2B.**
2. **ACKNOWLEDGEMENT AND CONSENT:**
   A. **BUYERS AND MULTIPLE SELLERS:** If Seller is represented by Brokerage, Seller acknowledges that Brokerage may represent prospective buyers of Seller's property and consents to Brokerage acting as a dual agent for both Seller and buyer in that transaction. Seller further acknowledges that Brokerage may represent other sellers competing for the same buyer and consents to Brokerage representing both Seller and other sellers.
   B. **DUAL AGENCY IN A TRANSACTION:** In the event of dual agency, Seller agrees that: **(i)** a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to facts relating to either the buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and **(ii)** except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties. Seller should discuss with a dual agent the details and parameters of this requirement. Seller consents to allowing Brokerage to act as a dual agent in a transaction.

**By signing below, Seller acknowledges that they have received a copy of this Disclosure and Seller Consent to Possible Representation of More Than One Seller, and Dual Agency in a Transaction, and they have read and understands its terms and consents to the agency possibilities disclosed.**

Seller *Alan & Gomperts* — ***Alan & Gomperts*** Date 11/10/2026

Seller *Sharon Halevy* — ***Sharon Halevy*** Date 11/10/2026

Seller's Brokerage Firm ***United Realty Group*** DRE Lic # ***01877638***

By *[signature]* DRE Lic # ***01878686*** Date 11/10/2026

***Ben Kanani***

© 2026, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# DISCLOSURE INFORMATION ADVISORY

**(FOR SELLERS)**
**(C.A.R. Form DIA, Revised 12/25)**

1. **INTRODUCTION:** All sellers in California are required to provide various disclosures in real property transactions. Among the disclosure requirements, sellers have an affirmative duty to disclose to buyers all material conditions, defects and/or issues known to them that might impact the value or desirability of the Property. Failing to provide those disclosures may lead to a claim or a lawsuit against you which can be very costly and time consuming. As a seller, you may be required to fill out one or more of the following: Real Estate Transfer Disclosure Statement ("TDS"); Seller Property Questionnaire ("SPQ"); Exempt Seller Disclosure ("ESD") (collectively, or individually, "Disclosure Forms"). Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.
2. **PREPARING TO COMPLETE YOUR DISCLOSURE OBLIGATIONS:**
   **A.** Read and carefully review all questions in the Disclosure Form(s) to make sure that you understand the full extent of the information that is being requested in each question.
   **B.** While a seller does not have the duty to investigate or discover unknown issues, you may have received disclosures either from the previous owner at the time of purchase or from a previous buyer who cancelled. Information about the Property may have been revealed if you posted or recorded information and material facts about the Property online (social media, blogs, personal websites, Facebook, advertisements, etc.) or received documents or correspondence from an Homeowners' Association ("HOA").
   **C.** Use any known and available documentation to refresh your memory of past and current issues, conditions, and/or problems, and then provide a copy of that paperwork with your fully completed Disclosure Forms. A seller does not have to find lost documents or speculate about what was in the documents they cannot remember. But if the documents are known and available to you, you should use them to assist you in completing the Disclosures forms.
   **D.** Allow yourself plenty of time to fully complete the Disclosure Forms.
   **E.** Your knowledge may be based upon what you have been told orally (e.g., in a conversation with a neighbor) or received in writing (such as a repair estimate, report, invoice, an appraisal, or sources as informal as neighborhood or HOA newsletters). Keep in mind that if a neighbor told you something, they are likely to tell the new owner the same information after the transaction closes.
   **F.** If you are unsure about whether something is important enough to be disclosed, you should probably disclose it. If you don't want to disclose a piece of information about the Property, think about your reasoning for why you do not want to disclose this information. If the answer is because you think a buyer will not want to buy the Property or will want to purchase at a lower price, that is exactly the reason why the fact ought to be disclosed; it materially affects the value or desirability of the Property.
3. **INSTRUCTIONS FOR COMPLETING ALL DISCLOSURE FORMS:**
   **A. DO NOT** leave any questions blank or unanswered unless the section is not applicable. Answer all questions and provide all documents, information and explanations to every "Yes" response in the blank lines or in an addendum to the Disclosure Form.
   **B.** Many questions on the Disclosure Forms ask if you "are aware" of a particular condition, fact, or item. If you do not know the answer to any question, then you are "not aware" and should answer that question "No."
   **C.** The Disclosure Forms are designed to get sellers to provide buyers with as much information as possible, and thus many of the questions on these forms may list multiple issues, conditions, or problems and/or may have subparts. It is important to address each aspect of each question and to provide precise details so that Buyers will understand the "who, what, where, when and how."
   **D.** The Disclosure Forms are written using very broad language. You should not limit the information, documents, and/or explanations that you provide Buyers.
   **E.** Be specific and provide facts for each response. Do not let subjective beliefs limit, qualify, or downplay your disclosures. Avoid words such as "never," "minor," "insignificant," "small" or "infrequent", as these terms may reflect your opinion but that opinion may not be shared by Buyers, professionals, or others. Do not speculate as to what you guess the issue is, or assume something is true without actual knowledge. State your disclosures only to the extent of what you actually know.
   **F.** Consider all issues, conditions, or problems that impact your Property, even those that are not necessarily on your Property but that are related to a neighbor's property (such as shared fences, lot-line debates) or that exist in the neighborhood (such as noise, smells, disputes with neighbors, or other nuisances).

© 2025, California Association of REALTORS®, Inc.

California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

**G.** Even if you have learned to live with an issue, condition, or problem, disclose it.

**H.** Even if you believe that an issue, condition, or problem has been repaired, resolved, or stopped, disclose the issue and what has been done, but do not speculate, predict, or guarantee the quality or effectiveness of the repair or resolution.

**I.** If there is conflicting information, data, and/or documents regarding any issue, condition or problem, disclose and identify everything.

**J.** Do not assume that you know the answer to all questions. For example, unless you personally obtained or received copies of permits, do not assume that anyone who did work on the Property obtained permits.

**K.** If you are relying on written or oral information you received from someone else, even if you disagree with that information or are unsure about its truth, disclose and identify the source of that information.

**4. COMPLETING SPECIFIC TYPES OF DISCLOSURE DOCUMENTS:**

**REAL ESTATE TRANSFER DISCLOSURE STATEMENT ("TDS") (Civil Code Section 1102.6)**

**Section I** allows sellers to incorporate and provide reports and disclosures that relate to the information requested in that Disclosure Form. Providing those "Substituted Disclosures" does not eliminate your responsibility to fully and completely disclose all information known by you that is requested in the TDS. **For the TDS to be complete, one of the three boxes provided in Section I must be checked. If no Substituted Disclosures are being provided, Seller should check the box that indicates *"No substituted disclosures for this transfer."***

**Section II A** asks you to check a series of boxes to indicate what appliances, fixtures, and other items exist on the property and asks whether any of those existing items are "not in operating condition", a term which is not defined. Consider whether the checked appliances, fixtures and items fully function as if they were new and if not, disclose any issues, limitations or problems. The TDS is not a contract, and it does not control which items must remain with the property after close of escrow. The purchase agreement determines which items must remain. However, you should be careful not to represent that the property has an amenity that the property actually does not have, so do not assume that feature is there (i.e. sewer or central air conditioning), and only check the box if you know it is a part of the property.

**Section II B** asks if you are aware of any significant defects/malfunctions in certain identified areas of the property. There is no definition for "significant defects/malfunctions". Do not assume this terminology limits what you need to disclose. If you check any of the boxes, please provide as much information as possible regarding the issues, conditions, or problems that you know about the checked areas.

**Section II C** asks sixteen questions regarding the Property and the surrounding areas. These questions are written very broadly and contain multiple issues, conditions, and/or problems. Make sure that you respond as to each issue, condition or problem. If you respond "Yes" to any question, you should provide as much information as possible about the issue.
If you are answering any of these questions "No" because you lack familiarity with the Property or the topic of any question, then you can explain the reasons, such as that you have not seen the Property in a long time or at all. This may help the buyers to understand that your "No" answer reflects the lack of awareness of the item, not that you are representing that the problem, condition or issue does not exist.

Question 16 in section II C refers to various code sections which part of a law are concerning construction defects that is widely known as SB 800 or Title 7. This law (Civil Code Sections 895-945.5) applies to residential real property built by a "Builder" and sold for the first time on or after January 1, 2003. If you have any questions about the applicability to the Property of any of the laws referenced in Question 16, or how you should answer this question, your Listing Agent recommends that you consult with a qualified California real estate attorney for advice. Your Listing Agent cannot and will not give you legal advice on these matters.

**SELLER PROPERTY QUESTIONNAIRE**

The C.A.R. Residential Purchase Agreement requires Sellers to complete an SPQ for any transaction that requires a TDS because the **TDS** does not include questions regarding everything that sellers need to disclose to buyers. One example of a question not covered in the TDS but that is on the SPQ is whether there has been a death on the Property within the last 3 years (Civil Code Section 1710.2). Another example is the requirement that sellers of single family residences built prior to January 1, 1994 (and other properties built before that date) must disclose if the Property has any noncompliant plumbing fixtures (Civil Code Sections 1101.4 and 1101.5). This includes: 1. Any toilet that uses more than 1.6 GPF; 2. Any showerhead that has a flow capacity of more than 2.5 GPM and 3. Any interior faucet that emits more than 2.2 GPM. The SPQ should be used in conjunction with the TDS to help the seller carry out the obligation to disclose known material facts and defects affecting the value or desirability of the Property. One of the questions on the SPQ (and ESD, see next section) addresses the seller's obligation to provide to the buyer any relevant documents, including reports, whether past or current, in the seller's possession.


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 2247 Caanfield

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

**EXEMPT SELLER DISCLOSURE ("ESD")**

Some sellers of real property may be legally exempt from completing the TDS. For example, probate and bankruptcy court sales and sales by governmental entities are exempt from the obligation to provide a TDS. Some property that is owned by a trust which has trustee(s) acting in the capacity of a seller may also be exempt; but not all trustee(s) are exempt. If a qualified California real estate attorney has advised you that you are exempt from completing the TDS, then you may choose not to complete that form or any supplement to the TDS, but you may still be required to complete the ESD. Being exempt from completing certain Disclosure Forms does not completely eliminate those disclosure obligations that apply to all sellers under federal, state or local laws, ordinances or regulations and/or by contractual agreement with the buyer. The seller is still obligated to disclose all known material facts that may affect the value of the property. Further, the C.A.R. Residential Purchase Agreement requires those sellers who are exempt from the TDS to fill out the ESD or SPQ. If using the ESD, pay particular attention to the "catch all" question, which asks you to disclose your awareness of any other material facts or defects affecting the property. If you have significant information about the property, you should consider using the SPQ to help flesh out the requirement to disclose all material facts.

**5. FINAL RECOMMENDATIONS:**

It is important that you fully complete any legally or contractually required Disclosure Forms. To that end, the real estate Broker, and, if different, the real estate licensee, who listed the property for sale ("Listing Broker") strongly recommend that you consider the following points when completing your Disclosure Forms:

- If you are aware of any planned or possible changes to your neighbor's property (such as an addition), or changes in the neighborhood (such as new construction or road changes) that may affect traffic, views, noise levels or other issues, conditions, or problems, disclose those plans or proposed changes even if you are not certain whether the change(s) will ever occur.
- Disclose any lawsuits, whether filed in the past, presently filed, or expected to be filed, regarding the property or the neighborhood (such as an HOA dispute), even if you believe the case has been resolved. Provide as much detail as possible about any lawsuit, including the name of the case and the County where the case was filed.
- If any disclosure that you have made becomes inadequate, incomplete, or inaccurate, or if changes occur over time, including right up until the close of escrow, you should update and correct your Disclosure Forms in a timely fashion.
- If you have any questions about the applicability of any law to the Property, your Listing Broker recommends that you consult with a qualified California real estate attorney for advice. Your Listing Broker cannot and will not tell you if any law is applicable to the Property.
- If you need help regarding what information to disclose, how to disclose it, or what changes need to be made to your Disclosure Forms, consult a qualified California real estate attorney. Your Listing Broker cannot and will not tell you what to disclose, how to disclose it, or what changes need to be made to your answers.
- While limited exceptions may exist, such as questions that may impact fair housing and discrimination laws, generally speaking, **when in doubt, the best answer to the question: "Do I need to disclose ...?" is almost always "YES, disclose it."**

**By signing below, Seller acknowledges that they have received a copy of this Disclosure Information Advisory, and they have read and understand its terms.**

Seller *Alan & Gomperts* Date 11/10/2026
Alan & Gomperts

Seller *Sharon Halevy* Date 11/10/2026
Sharon Halevy

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

Authentisign ID: 3141A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# BROKER COMPENSATION ADVISORY
(C.A.R. Form BCA, Revised 6/25)

1. **WHEN SELLERS LIST THEIR PROPERTY FOR SALE THROUGH A REAL ESTATE BROKER THEY AGREE TO PAY THE SELLER'S BROKER WHEN ESCROW CLOSES.**
   A. **LISTING AGREEMENT COMPENSATION IS FULLY NEGOTIABLE:** When a seller enters into a listing agreement with a broker, the seller authorizes the broker to find a buyer for the seller's property and agrees to pay the seller's broker if a buyer is found who purchases the property. Compensation amounts are not fixed by law and are fully negotiable between the seller and the seller's broker. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.
   B. **OPTIONAL ADDITIONAL COMPENSATION IF BUYER IS UNREPRESENTED:** A listing agreement may include optional additional compensation amounts owed to the seller's broker for situations where the broker takes on additional responsibilities or workload. Sometimes a buyer may not be working with nor want to be represented by a real estate broker. When that happens, the seller's broker is not required to represent the buyer, and the seller and seller's broker may decide that they do not want to create such a relationship. In those situations, the seller's broker is advised to use a Buyer Non-Agency (C.A.R. Form BNA) to inform the buyer that the seller's broker will be acting on behalf of the seller only, and not act as the buyer's agent, throughout the transaction. However, because the buyer is unrepresented, the seller's agent will inevitably have to do more work to facilitate the transaction. A seller may agree to compensate their broker for the additional work in such cases.
   C. **BROKER MAY REPRESENT BOTH BUYER AND SELLER; DUAL AGENCY:** California law allows a brokerage company to represent both seller and buyer in a real estate transaction. At the time the agent, on behalf of a brokerage, obtains the signature of a seller on a listing agreement, the agent will not, in most cases, know who the eventual buyer will be for a seller's property. Similarly, at the time an agent, on behalf of a brokerage, obtains the signature of a buyer on a buyer representation agreement, the agent will not, in most cases, know who the eventual seller will be for a property the buyer wants to buy. Because many individual licensees may work through one brokerage company, and some individual licensees work with many buyers and sellers, there is a possibility that the same brokerage company will represent both buyer and seller in a transaction. If licensees working through broker represent both seller and buyer, broker is allowed to receive compensation from each, provided the seller and buyer are advised of the relationship and the total amount of compensation the broker will receive.
2. **BROKER AGREEMENTS WITH BUYERS:**
   A. **BUYER REPRESENTATION COMPENSATION IS FULLY NEGOTIABLE:** When a buyer enters into a representation agreement with a broker, the buyer authorizes the broker to locate properties for the buyer to buy and agrees to pay the buyer's broker if a transaction is completed. Compensation amounts are not fixed by law and are fully negotiable. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.
   B. **REQUIREMENT FOR WRITTEN AGREEMENTS:** Pursuant to a nationwide class action settlement reached by the National Association of REALTORS® (NAR), participants in Multiple Listing Services are required to have a written agreement with a buyer prior to showing a buyer a residential property or giving a buyer a tour of such a property. The agreement must identify the amount of compensation to be paid to the broker for services provided and require that the broker cannot receive any compensation in excess of the amount specified in the agreement. Pursuant to a January 1, 2025 new law in California, all licensees must have a buyer representation agreement as soon as practicable upon acting as the buyer's agent, and it must include the amount of compensation, services to be rendered, when compensation is due, and the contract termination, which may not exceed three months.
   C. **ADVANTAGES OF WRITTEN AGREEMENTS:** Buyers and their brokers benefit when the terms of their relationship and respective duties are in writing. A written agreement establishes clear, mutual expectations and helps avoid misunderstandings over the buyer and broker's duties and the amount of compensation the buyer's agent is to be paid.

© 2025, California Association of REALTORS®, Inc.

California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

**3. WHEN ENLISTING A REAL ESTATE BROKER TO REPRESENT THEM, BUYERS AGREE TO PAY THE BUYER'S BROKER WHEN ESCROW CLOSES, BUT THE PERSON RESPONSIBLE FOR PAYMENT MAY BE NEGOTIATED IN THE TRANSACTION:**

**A. BUYER PAYS THE COMPENSATION PURSUANT TO A BUYER REPRESENTATION AGREEMENT:** A buyer's broker may negotiate the amount of compensation directly with the Buyer and then document that agreement in a buyer representation agreement (C.A.R. Form BRBC or PSRA). The buyer then becomes contractually obligated to pay the broker by providing funds to escrow prior to the closing of a transaction.

**B. SELLER PAYS THE COMPENSATION:**

(1) **Buyer negotiates for Seller to Compensate Buyer's Broker:** A buyer may make a conditional offer to the seller by including a term in the purchase offer asking the seller to pay the buyer's broker if the buyer has already agreed to pay their own broker pursuant to a buyer representation agreement. If such a term is included in the purchase offer, the request will become one term among many that a seller may accept, reject, or negotiate by way of a counter offer. The possibility of asking the seller to pay the buyer's contractual compensation obligation option should be discussed when creating a buyer representation agreement and prior to an offer being made. Pursuant to the NAR Settlement (see **paragraph 2B**) **a buyer's broker is not permitted to receive compensation for services, from whatever source, that is greater than the amount in the buyer representation agreement.**

(2) **Buyer's Agent negotiates an agreement directly with Seller:** If a seller is unrepresented or does not have an exclusive agency relationship with another broker, a buyer's broker may approach that seller asking the seller to sign an agreement (C.A.R. Form SP, Single Party Compensation Agreement) to pay the buyer's broker. In this situation, the seller agrees to pay the buyer's broker compensation without necessarily creating an agency relationship with the broker. When that happens, the buyer's broker is advised to use a Seller Non-Agency (C.A.R. Form SNA) to inform the seller that the buyer's broker will be acting on behalf of the buyer only, and not act as the seller's agent, throughout the transaction. However, because the seller is unrepresented, the buyer's agent will inevitably have to do more work to facilitate the transaction, which may be factored into the negotiation of the single party compensation agreement.

**C. CHANGING PRACTICE RELATED TO A SELLER'S BROKER'S OFFER OF COMPENSATION:**

Historically, in California, many seller's brokers used a Multiple Listing Service (MLS) to make a unilateral offer to compensate a buyer's broker who procured a buyer for the seller's property. However, the nationwide NAR settlement prohibits the seller's broker from using an MLS to make such an offer of compensation. The California Association of REALTORS®' (C.A.R.) listing agreement forms no longer provide for such offers of cooperating broker compensation nor does C.A.R. include other forms in its library of forms that might facilitate such offers. Buyers and sellers must separately negotiate compensation with their respective brokers, as specified above.

**By signing below, Seller or Buyer acknowledge that they have received a copy of this Broker Compensation Advisory, and they have read and understand its terms. Seller or Buyer acknowledges they have been advised of their various options regarding compensation to be paid to real estate brokers and that any written agreement they have signed with a seller's or buyer's broker reflects a mutual understanding.**

Seller/Buyer AuthentiSIGN *Alan & Gomperts* ______ ***Alan & Gomperts*** Date 11/10/2026

Seller/Buyer AuthentiSIGN *Sharon Halevy* ______ ***Sharon Halevy*** Date 11/10/2026

© 2025, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 2247 Caanfield

Authentisign ID: 341A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# FAIR HOUSING AND DISCRIMINATION ADVISORY

**(C.A.R. Form FHDA, Revised 12/24)**

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   **A.** FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   **B.** CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   **C.** CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   **D.** AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   **E.** OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| | | | | |
|---|---|---|---|---|
| Race (and race traits) | Color | Ancestry | National Origin | Religion |
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any Arbitrary Characteristic or Intersectionality |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   **A.** California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   **B.** Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION**: NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   **A.** Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   **B.** Refusing to rent **(i)** an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   **A.** Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   **B.** Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   **C.** "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   **D.** Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2024, California Association of REALTORS®, Inc.



California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);
F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;
G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);
H. Denying a home loan or homeowner's insurance;
I. Offering inferior terms, conditions, privileges, facilities or services;
J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;
K. Harassing a person;
L. Taking an adverse action based on protected characteristics;
M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);
N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,
   **(ii)** Charging that person higher rent or increased security deposit, or
   **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;
O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as “no children” or “English-speakers only”).
E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES**: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
B. State: **https://calcivilrights.ca.gov/housing/**
C. Local: local Fair Housing Council office (non-profit, free service)
D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**.
F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant ______________________________ Date ____________

Buyer/Tenant ______________________________ Date ____________

Seller/Housing Provider AuthentiSIGN Alan & Gomperts ______ *Alan & Gomperts* Date ____________

Seller/Housing Provider AuthentiSIGN Sharon Halevy ______ *Sharon Halevy* Date ____________

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

Authentisign ID: 34[?]80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# SELLER'S ADVISORY

**(C.A.R. Form SA, Revised 6/26)**

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.
2. **DISCLOSURES:**
   A. **GENERAL DISCLOSURE DUTIES:** You must affirmatively disclose to the buyer, in writing, all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **STATUTORY DUTIES** (For one-to-four Residential Units):
      **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to fill out the TDS form, in its entirety, honestly and completely. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task. If your property is in a high or very high fire zone, and you have to complete the TDS, you will also be responsible for disclosing compliance with defensible space laws and, depending on the Property's age, may also have to disclose if the building itself has been hardened to protect it from catching fire.
      **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home," and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      **(3)** If you know that your property is: **(i)** located within one mile of a former military ordnance location; or **(ii)** in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by § 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      **(4)** If the TDS, NHD, or lead, fire hardening, defensible space, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **DEATH AND OTHER DISCLOSURES:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code § 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **CONDOMINIUMS AND OTHER COMMON INTEREST SUBDIVISIONS:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.
3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **CONTRACT TERMS AND CONDITIONS:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property, buyer broker compensation, and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price. Should Seller agree to do so, Broker does not represent, nor will Broker confirm, that the amount specified is owed by buyer or the full amount will be used by buyer to pay for the specified purpose. In the absence of a separate agreement, Seller's contractual obligation to pay buyer's broker is independent of any obligation between buyer and a third party.
   B. **WITHHOLDING TAXES:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.
   C. **PROHIBITION AGAINST DISCRIMINATION:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

© 2026, California Association of REALTORS®, Inc.



California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Authentisign ID: 3441A80A-33DD-F111-91F2-0022482B51B6

D. **GOVERNMENT REQUIRED REPAIRS, REPLACEMENTS AND ALTERATIONS:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do not have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE PROGRAM (RRP):** The RRP requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The RRP at all times applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

F. **ALL CASH ENTITY BUYERS:** Under a Federal Law, if in force, a "Reporting Person" (typically the escrow or title company responsible for closing) is required to collect, and report to the U.S. Department of Treasury, certain information about the Buyer and Seller, when: (i) the property is a residential property with one to four units or vacant land intended to be improved with a residential dwelling with one to four units, (ii) the buyer is a legal entity or trust, and (iii) the buyer is making an all cash purchase or financing the purchase through a bank or other institution that does not have an independent money laundering reporting obligation.

G. **WHOLESALE BUYERS:** The Residential Purchase Agreement allows a buyer, within a set number of days, to assign all or part of buyer's rights to another person, with the seller's consent. A seller is allowed to withhold consent if the buyer is being paid by the other person for the assignment. Some buyers enter into a contract with the seller without any intention of purchasing the property themselves but instead as an investment that they intend to assign to another person prior to closing. If these "wholesale" buyers cannot find others willing to pay buyers an acceptable in exchange for taking buyers' place, buyers will often attempt to cancel or refuse to close escrow, whether or not buyers have legal or contractual grounds to do so. Sellers, who have lost time and the potential to sell to another buyer, often feel pressured to go along with extensions and other delays while the wholesale buyer looks for an investor to pay the buyer their desired fee. Indications that a buyer may be a wholesaler include (i) below market offers, (ii) buyer's offer indicating "or assignee" as purchaser, (iii) low deposit amount, (iv) purchasing in the name of an LLC, and (v) failure to provide proof of funds or take contractually required actions while searching for a buyer of their own.

H. **LEGAL, TAX AND OTHER IMPLICATIONS:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**

A. **PRE-SALE INSPECTIONS AND CONSIDERATIONS:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, should be disclosed to the buyer (see "Disclosures" in **paragraph 2** above). This is true even if the buyer gets their own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **OPEN HOUSE CONSIDERATIONS:** While holding an open house can be an effective way to attract buyers to a seller's home, doing so can present risks. No one can definitively know who will enter the home or for what purpose. The agent holding the open house will neither have the ability, at all times, to monitor the activity of every person coming to view your property nor to assess whether such visitors are entering the home intending to consider it for purchase or for some other reason. Some visitors will respect your real property, personal property, and possessions, while others may not do so. Read **paragraph 4D** for further information. You should discuss with your agent the benefits and risks of including open houses as part of the marketing strategy.

C. **POST-SALE PROTECTIONS:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something goes wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

D. **SAFETY PRECAUTIONS:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

E. **EXPENSES:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** ______________________________

**By signing below, Seller acknowledges that they have received a copy of this Seller's Advisory, and they have read and understand its terms.**

Seller *Alan & Gomperts* **Alan & Gomperts** Date 11/10/2026

Seller *Sharon Halevy* **Sharon Halevy** Date 11/10/2026

© 2026, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 2247 Caanfield

Authentisign ID: 344?A80A-33DD-F111-91F2-0022482B51B6

CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY

**(C.A.R. Form CCPA, Revised 6/26)**

The California Consumer Privacy Act ("CCPA")[1] provides California residents with certain rights regarding the collection and use of their personal information ("PI"). Under the CCPA, PI is defined broadly to encompass non-public information that could reasonably be linked to a particular consumer.

During the process of buying, selling, leasing, or, renting real estate, your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. This sharing of PI will likely be essential to effectively complete the transaction for which the broker is being hired.

Businesses that are subject to the CCPA are required to provide you with certain notices and allow you to exercise various rights regarding your PI. However, not all businesses are required to comply with the CCPA. Moreover, businesses that are otherwise subject to the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are subject to the CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years.

If you wish to exercise your rights under the CCPA, you should contact the applicable business directly.

You can also obtain more information about the CCPA from California Privacy Protection Agency (cppa.ca.gov).

This Advisory does not satisfy the requirements under the law, and you are advised to discuss with your broker whether the law applies to your broker, what obligations the broker's business may have, if any, and what rights you may have when it comes to your PI collected by that broker. The broker does not control other businesses that may obtain your PI in the course of your transaction.

**By signing below, you acknowledge that you have received a copy of this California Consumer Privacy Act Advisory, and you have read and understand its terms.**

Buyer/Seller/Landlord/Tenant *Alan & Gomperts* Date 11/10/2026
Alan & Gomperts

Buyer/Seller/Landlord/Tenant *Sharon Halevy* Date 11/10/2026
Sharon Halevy

[1] The CCPA can be referenced at Cal. Civ. Code §§ 1798.100 et seq. Supporting regulations can be referenced at 11 Cal. Code Regs. §§ 7000 et seq.

© 2026, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*



California Standards, Inc. (URG), 2292 Faraday Avenue, Suite 100 Carlsbad CA 92008 Phone: 8773938648 Fax: 8662220410 2247 Caanfield
Behnam Kanani Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

**BANKRUPTCY ADDENDUM TO RESIDENTIAL LISTING AGREEMENT DATED NOVEMBER 10, 2026**

This is a bankruptcy addendum (the "Bankruptcy Addendum") to the Residential Listing Agreement dated November 10, 2026 (the "Listing Agreement") between Gomperts & Halevy Family Trust ("Seller") and United Realty Group through its agent Ben Kanani (collectively, "Broker") with respect to 2247 Canfield Avenue, Los Angeles, CA 90034 (the "Property"), as follows:

1. The Property is property of the bankruptcy estate of Alan Gomperts, chapter 11 debtor in case no. 2:24-bk-12074 (jointly administered under lead case no. 2:24-bk-12079), pending in the United States Bankruptcy Court, Central District of California (Los Angeles Division) (the "Bankruptcy Court").

2. To the extent any terms herein are inconsistent with the Listing Agreement, this Bankruptcy Addendum shall control and supersede the Listing Agreement.

3. The Listing Agreement is subject to Bankruptcy Court approval.

4. The commission for the sale of the Property shall be 5% of the purchase price, to be divided 2.5% to the Broker and 2.5% to the broker representing the buyer. The commission will be reduced to 3.5% in the event that the buyer is not represented by a broker.

5. The Bankruptcy Court shall have exclusive jurisdiction, without a right to jury, over the employment and compensation of Broker and the sale of the Property and any disputes arising therefrom.

6. The Property may not be sold, except by order of the Bankruptcy Court.

7. The sale of the Property shall be after notice and a hearing under section 363 of the Bankruptcy Code, including opportunities for higher and better bids.

8. The sale shall be "as-is" with no representations or warranties whatsoever.

9. The sole remedy of any purchaser if the Seller shall be unable to consummate a transaction through no fault of purchaser shall be return of its deposit.

Agreed: November 10, 2026

Seller: ______________________
Gomperts & Halevy Family Trust, by ALAN GOMPERTS

Broker: ______________________
United Realty Group, by BEN KANANI

58904932.2
390855-00001

# EXHIBIT 2


BEN
KANANI
CBRE 01878686
310.800.7405

## Meet Ben Kanani

Ben Kanani has helped buyers and sellers achieve and exceed their real estate goals since 1999, with nearly half a billion dollars in sales. Before becoming a Realtor, he spent more than 10 years as an international marketing manager at Tiffany & Co., traveling the world and building an extensive network of national and international clients and contacts.

Today, Ben brings that same global perspective to luxury real estate, where his multicultural experience helps bridge cultures, customs, and clients to create the ideal transaction. As he puts it, "My strength lies in how to present and market real estate to achieve maximum value — just as you would with a magnificent Tiffany jewel."

Outside of real estate, Ben is an accomplished martial artist with more than four decades of experience and enjoys teaching for Culver City Parks and Recreation in his spare time.

— Show Less

UNITED REALTY GROUP CADRE: 01711679

## CONNECT WITH US

Copyright © 2023 SHOWCASED HOME - All Rights Reserved.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**Saul Ewing LLP, 1888 Century Park East, Suite 1500, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*): **Notice of Application and Application of Debtor Alan Gomperts to Employ Real Estate Broker and to Enter into an Exclusive Listing Agreement; Memorandum of Points and Authorities And Statements of Disinterestedness** served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 12, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **November 12, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Debtor**
Negev Investments LLC
Attn Susan Halevy Manager
257 S Linden Dr
Los Angeles, CA 90212-3704

**Debtor**
Alan Gomperts
264 S Oakhurst Dr
Beverly Hills, CA 90212

**Debtor**
Daniel Halevy
257 S Linden Dr
Los Angeles, CA 90212

**Debtor**
Sue Halevy
257 S Linden Dr
Beverly Hills, CA 90212

**Debtor**
Broadway Avenue Investments LLC
Attn: Alan D Gomperts Manager
264 S Oakhurst Dr
Beverly Hills, CA 90212

**Debtor**
SLA Investments LLC
Attn Alan D Gomperts Manager
264 S Oakhurst Dr
Beverly Hills, CA 90212

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __________ I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 11, 2026 | Hannah Richmond | /s/ Hannah Richmond |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Scott R Albrecht** salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- **Tanya Behnam** tbehnam@polsinelli.com, tanyabehnam@gmail.com;ccripe@polsinelli.com;ladocketing@polsinelli.com
- **Jacquelyn H Choi** jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com
- **Carol Chow** Carol.Chow@saul.com, hannah.richmond@saul.com;easter.santamaria@saul.com;carol.chow@ecf.courtdrive.com;litigationdocketing@saul.com
- **Robert F Conte** robert.conte@usdoj.gov, caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- **Ryan Coy** ryan.coy@blankrome.com, courtmail@blankrome.com
- **Christopher Cramer** secured@becket-lee.com
- **Christopher Crowell** ccrowell@hrhlaw.com
- **Bryant S Delgadillo** bryant.delgadillo@piblaw.com, rhonda.viers@piblaw.com
- **Turner Falk** turner.falk@saul.com, tnfalk@recap.email
- **Michael G Fletcher** mfletcher@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Todd S. Garan** ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Richard Girgado** rgirgado@counsel.lacounty.gov
- **Jacqueline L James** jjames@buchalter.com, gvidales@buchalter.com;docket@buchalter.com;pjolley@buchalter.com
- **Kelly L Morrison** kelly.l.morrison@usdoj.gov
- **Avi Edward Muhtar** amuhtar@crownandstonelaw.com
- **Bruce D Poltrock** bpoltrock@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Paige Selina Poupart** Ppoupart@smsm.com, achase@frandzel.com
- **Paige T Rolfe** prolfe@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- **Zev Shechtman** Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- **David B Shemano** dshemano@shemanolaw.com
- **Jessica M. Simon** jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Derrick Talerico** dtalerico@wztslaw.com, maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Garrick Vanderfin** gvanderfin@polsinelli.com, zyoung@Polsinelli.com;ladocketing@polsinelli.com
- **Gerrick Warrington** gwarrington@frandzel.com, achase@frandzel.com,autodocket@frandzel.com
- **Steven Werth** steven.werth@saul.com, swerth@ecf.courtdrive.com;hannah.richmond@saul.com;litigationdocketing@saul.com
- **Samantha White** samantha.white@wellsfargo.com
- **Jennifer C Wong** bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

2. **SERVED BY UNITED STATES MAIL**:

Los Angeles County Treasurer/Tax Collector
Attn Bankruptcy Unit
PO Box 54110
Los Angeles Ca 90054-0110

US Small Business Administration
14925 Kingsport Rd
Fort Worth, TX 76155-2243

US Small Business Administration
409 3rd St SW
Washington, DC 20416-0005

U S Small Business Administration
312 N Spring St 5th Floor
Los Angeles Ca 90012-2678

CA Dept of Tax and Fee Admin
Account Info Group MIC29
PO Box 942879
Sacramento, CA 94279-0029

Employment Development Dept
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS A-340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

802 Mateo Street LLC
Attn Daniel Halevy
802 Mateo St
Los Angeles, CA 90021-1712

Alta Fire Pro
PO Box 7007
Mission Hills, CA 91346-7007

Balboa Capital Corporation
575 Anton Blvd 12th Floor
Costa Mesa Ca 92626-7685

California Refrigeration & Supply
1926 Glendon Ave Apt 4
Los Angeles, CA 90025-4661

Deborah Feldman Esq
12466 Marsh Pointe Rd
Sarasota, FL 34238-2115

~~Deborah Feldman Esq~~
~~24611 Mulholland Hwy~~
~~Calabasas, CA 91302-2325~~
**RETURNED**

Los Angeles Dept of Water and Power
PO Box 30808
Los Angeles, CA 90030-0808

Mark Berkowitz CPA
5850 Canoga Ave, Suite 220
Woodland Hills, CA 91367-6505

Mordechai Miky Acoca
1926 Glendon Ave #4
Los Angeles, CA 90025-4661

RG Fire Inc
8721 Laurel Canyon Blvd
Sun Valley, CA 91352-2919

Sienna Rose Inc
433 Colyton St
Los Angeles, CA 90013-2210

Simply Electrical
14101 S Budlong Ave
Gardena, CA 90247-2231

Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, CA 91770

Southern California Gas
Centralized Correspondence
PO Box 1626
Monterey Park, CA 91754-8626

~~Urban Lime~~
~~915 Mateo St~~
~~Los Angeles, CA 90021-1784~~
**RETURNED**

American Express
PO Box 001
Los Angeles, CA 90096-0001

Silver Jeans
Attn Robert Silver
433 Colyton St Stes 201-203
Los Angeles, CA 90013-2210

Riverside County Tax Collector
PO Box 12005
Riverside, CA 92502-2205

Seapiper Inn Inc
264 S Oakhurst Dr
Beverly Hills, CA 90212-3504

Joshua Mogin Esq
Thompson Coburn LLP
10100 Santa Monica Blvd Ste 500
Los Angeles, CA 90067-4121

American Express
PO Box 981535
El Paso, TX 79998-1535

Athas Capital Group Inc
3990 Westerly Place Ste 240
Newport Beach, CA 92660

Jose Benssouson
2220 Bagley Ave
Los Angeles, CA 90034

Brian Boyken
133 S Palm Dr #1
Beverly Hills, CA 90212

Drexter Castillo
133 S Palm Dr #2
Beverly Hills, CA 90212

Gabrielle Chavez
133 S Palm Dr #4
Beverly Hills, CA 90212

First Foundation Bank
18101 Von Karman Ave Ste 750
Irvine, CA 92612
Attn Erica Dorsett Chief Legal Counsel

Gomperts & Halevy Family Trust
264 S Oakhurst Dr
Beverly Hills, CA 90212

Nathan Halevy
133 S Palm Dr #5
Beverly Hills, CA 90212

Halevy Family Trust
257 S Linden Dr
Beverly Hills, CA 90212

Shmuel Levy
2247 S Canfield Ave
Los Angeles, CA 90034

Perla Segla
133 S Palm Dr #4
Beverly Hills, CA 90212

Shellpoint Mortgage Servicing
A division of Newrez LLC
c/o CSC–Lawyers Incorporating Service
2710 Gateway Oaks Dr Ste 150N
Sacramento, CA 95833

Wells Fargo Auto / Wells Fargo Bank
c/o CSC-Lawyers Incorporating Service
2710 Gateway Oaks Dr Ste 150N
Sacramento, CA 95833

Adam Willmouth, Ericka Ochoa
3538 Greenfield Ave
Los Angeles, CA 90034

AIRE Ancient Baths Los Angeles LLC
88 Franklin St
New York, NY 10013

~~Sean Rudes and Monfrere~~
~~3891 Beverly Blvd #328~~
~~Los Angeles, CA 90048~~
**RETURNED**

WGW Sales Inc
555 Logan Ave
Winnipeg, MB R3A O54
CANADA